**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email:  tania.moyron@dentons.com
           van.durrer@dentons.com

John D. Beck (*pro hac vice* forthcoming)
Sarah M. Schrag (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email:  john.beck@dentons.com
           sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* forthcoming)
Amanda C. Glaubach (*pro hac vice*
forthcoming)
Eitan Blander (*pro hac vice* forthcoming)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  altogut@teamtogut.com
           aglaubach@teamtogut.com
           eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Joint Administration Requested) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**MOTION OF THE DEBTORS FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING POSTPETITION USE OF
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
SECURED PARTIES, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING
RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Powin, LLC ("Powin") and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors") under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"), in these chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby move (the "Motion")[2] this Court for entry of an interim order (substantially in the form attached hereto as **Exhibit A**, the "Interim Order") and final order (the "Final Order," and together with the Interim Order, the "Orders"): (i) authorizing the Debtors to use Cash Collateral (as defined herein); (ii) granting adequate protection, solely to the extent provided in the Orders, to the Prepetition Secured Parties (as defined herein); (iii) modifying the automatic stay imposed by section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent necessary to implement and effectuate the terms of the Orders; (iv) scheduling a hearing (the "Final Hearing") to consider approval of this Motion on a final basis; and (v) granting related relief.

In further support of the Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

As more fully explained herein, and in the First Day Declaration (as defined herein), the Debtors' access to Cash Collateral is critical to the success of these Chapter 11 Cases. Without immediate access to Cash Collateral, the administration of these Chapter 11 Cases, and efforts to stabilize and rehabilitate the Debtors' businesses, would not be possible. Specifically, the Debtors require access to Cash Collateral to satisfy payroll, pay vendors, support customer programs, meet overhead obligations, and to make payments that are necessary for the continued management, operation, and preservation of the Debtors' businesses.

---

[2] Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration (as defined herein).

US_ACTIVE\130488687

Recognizing their immediate need to access Cash Collateral, the Debtors swiftly engaged with the Prepetition Secured Parties on the consensual use of Cash Collateral in furtherance of a comprehensive restructuring transaction.  As part of these negotiations, the Debtors and the Prepetition Secured Parties discussed, among other things, a form of budget for the duration of the Chapter 11 Cases, an adequate protection package, and a restructuring timeline that would allow the Debtors to continue to use Cash Collateral while they work expeditiously to seek to restructure their businesses during the pendency of these Chapter 11 Cases.

After extended good faith and arm's length negotiations with the Prepetition Secured Parties, the Debtors reached an agreement with the Prepetition Secured Parties concerning the consensual use of Cash Collateral.  Among other things, and subject to this Court's approval, the Debtors have agreed to provide the Prepetition Secured Parties with various forms of adequate protection to protect against the postpetition diminution of value of their prepetition collateral, including Cash Collateral.  The Debtors have agreed to grant the Prepetition Secured Parties certain adequate protection payments, adequate protection liens, adequate protection superpriority administrative expense claims, and reporting, all in accordance with the budget negotiated by and between the Debtors and the Prepetition Secured Parties.  This adequate protection package was negotiated in good faith, at arm's-length, and is on market terms and consistent with the adequate protection packages in similar cases.

The proposed adequate protection package is fair and reasonable under the circumstances of these Chapter 11 Cases and ensures the Debtors are able to continue using Cash Collateral for the benefit of all parties in interest and the Debtors' estates.  Thus, for the reasons set forth herein, and in the First Day Declaration, the Debtors submit that the relief requested herein will maximize the value of the Debtors' estates for the benefit of all of the Debtors' stakeholders.

Without access to Cash Collateral, the Debtors will not have the liquidity necessary to continue operating during these Chapter 11 Cases.  As a result, the Debtors would suffer immediate and irreparable harm and would be forced to convert these cases to a Chapter 7 liquidation. In short, the Debtors' use of Cash Collateral is vital to preserve and maximize the value of their

estates.  Accordingly, the Debtors respectfully request the Court approve the relief requested herein.

## I.    JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested herein are: sections 105, 361, 362, 363, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and rules 4001-3 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## II.    BACKGROUND

A. General Background

4.      On June 9, 2025 (the "Petition Date"),[3] the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

---

[3] Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the remaining Debtors were filed shortly thereafter on June 10, 2025.

5.    Additional information regarding the Debtors, including their businesses and the events leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* (the "First Day Declaration"), filed concurrently herewith, and incorporated herein by reference.

B.  Specific Background

i.  **Concise Statement Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-3**

6.    The below chart contains a summary of the material terms of the proposed use of Cash Collateral, together with references to the applicable sections of the relevant source documents, as required by Bankruptcy Rule 4001(b) and Local Rule 4001-3.[4]

| Summary of Material Terms | |
|---|---|
| **Parties with an Interest in Cash Collateral** Bankruptcy Rule 4001(c)(1)(B) Local Rule 4001-3 | GLAS USA LLC, as administrative agent and collateral agent for the Lenders under the Loan Agreement ("Prepetition Agent"), and the lenders party to the Prepetition Loan Documents, as described in the Interim Order ("Prepetition Lenders," and together with the Prepetition Agent, the "Prepetition Secured Parties"). <br><br> Interim Order, ¶ F(1). |
| **Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii) | Subject to the provisions of the Interim Order (including the Carve-Out), the Debtors are authorized to use Cash Collateral during the period from the Petition Date through and including a Termination Date to operate the Debtors' businesses in the ordinary course and pay certain costs, fees, and expenses related to the Chapter 11 Cases, in accordance with the Approved Budget as provided in the Interim Order, and as approved by any order of this Court. <br><br> Interim Order, ¶ 2. |
| **Amount of Cash Collateral to be Used** Local Rule 4001-3 | Described in the Initial Budget, attached to the Interim Order at Exhibit 1. |

---

[4] The summaries contained in this Motion are qualified in their entirety by the provisions of the Interim Order or Final Order, as applicable.  To the extent anything in this Motion is inconsistent with the Orders, the terms of the Orders shall control.  Capitalized terms not otherwise defined in this chart shall have the meanings ascribed to them in the Interim Order.

US_ACTIVE\130488687

| Summary of Material Terms | |
|---|---|
| **Budget and Variance Reporting** Bankruptcy Rule 4001(c)(1)(B) Local Rule 4001-3 | Subject to the provisions of the Interim Order (including the Carve-Out), the Debtors are authorized to use Cash Collateral in accordance with the Approved Budget (subject to Permitted Variance) through June 30, 2025 (the "Expiration Date"). On the Friday of each week, the Debtors shall deliver a reconciliation report (the "Variance Report") to the Prepetition Lenders, in form reasonably satisfactory to the Prepetition Lenders, showing variances of budget amounts to actual amounts on a line-item basis for the period for the prior week (the "Testing Period"). The Variance Report will include (i) the variance (as compared to the applicable Approved Budget) of actual cash receipts of the Debtors for Testing Period, (ii) the variance (as compared to the applicable Approved Budget) of the operating disbursements made by the Debtors set forth in the Approved Budget for the Testing Period, and (iii) an explanation, in reasonable detail, for any material variances set forth in such Variance Report.<br><br>The Debtors shall not permit a total operating disbursement variance for any prior week to have a negative variance in excess of 15% (with negative variance meaning, for the avoidance of doubt, that actual operating disbursements are greater than the projected operating disbursements) (the variance otherwise permitted by this covenant, the "Permitted Variance").<br><br>On or before June 27, 2025, the Debtors shall deliver to the Prepetition Agent a revised cash flow forecast substantially in the format of the Initial Budget (the "Revised Budget") for a time period to be agreed between the Debtors and the Prepetition Lenders from and after the Expiration Date. If the Prepetition Lenders agree to the proposed Revised Budget, the Revised Budget will become the Approved Budget and the Debtors will be authorized to continue to use Cash Collateral in accordance with the Revised Budget and this Interim Order through a date to be agreed by the Debtors and the Prepetition Lenders. If the Prepetition Lenders (in their sole discretion) do not agree to the proposed Revised Budget, the Debtors' consensual use of Cash Collateral shall terminate on the Expiration Date.<br><br>Interim Order, ¶¶ 3-5. |
| **Termination Events** Bankruptcy Rule 4001(c)(l)(B) Local Rule 4001-3 | Subject to the Remedies Notice Period, the Debtors' right to use the Cash Collateral shall cease on the Termination Date. As used herein "Termination Events" means any of the events set forth in clauses (a) through (t) below (each such events a "Termination Event," and the date upon which such Termination Event occurs, the "Termination Date"): |

| Summary of Material Terms |
|---|

|  |  | (a) | a Final Order acceptable to the Debtors and the Prepetition Agent is not entered by the Court by 11:59 p.m. on the date that is 35 days after the Petition Date; |
|  |  | (b) | the effective date of a chapter 11 plan of one or more of the Debtors; |
|  |  | (c) | the violation of any term of this Interim Order by the Debtors that is not cured within five business days of receipt by the Debtors, counsel for the Official Committee (if appointed), and the U.S. Trustee of notice of such default, violation, or breach (which may be provided to the Debtors, counsel for the Official Committee, and the U.S. Trustee by email); |
|  |  | (d) | the entry of any order modifying, reversing, revoking, staying for a period in excess of five business days, rescinding, vacating, or amending this Interim Order without the express written consent of the Prepetition Lenders; |
|  |  | (e) | the filing by the Debtors of motion to dismiss any of the Chapter 11 Cases, or the entry of any order dismissing any of these Chapter 11 Cases (other than following the effective date of a chapter 11 plan) without the express written consent of the Prepetition Lenders, or a trustee under chapter 11 of the Bankruptcy Code or an examiner is appointed in any of the Chapter 11 Cases; |
|  |  | (f) | the filing by the Debtors of a motion to convert any of these Chapter 11 Cases to a case under chapter 7 or the entry of order converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, without the express written consent of the Prepetition Lenders; |
|  |  | (g) | the entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code) unless consented to by the Prepetition Lenders in writing; |

7

| Summary of Material Terms |
|---|

| | | |
|---|---|---|
| | (h) | the filing by the Debtors of any application, motion, or borrowing request seeking to use Cash Collateral on a non-consensual basis; |
| | (i) | the entry of an order granting another claim or lien (except for the Permitted Prior Liens) *pari passu* with or senior to (except as provided under this Interim Order) the Prepetition Liens, Adequate Protection Liens, or the Adequate Protection Superpriority Claims granted to the Prepetition Secured Parties under this Interim Order; |
| | (j) | any motion, pleading, or proceeding is filed or is commenced by any Debtor seeking, or otherwise consenting to or supporting, (i) the invalidation, subordination, or other challenge to the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims or (ii) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or any Collateral, including the Cash Collateral, or against any of the Prepetition Secured Parties; |
| | (k) | any Debtor files a motion, pleading, or proceeding that would, if the relief sought therein were granted, result in a Termination Event, and such motion, pleading, or proceeding is not dismissed or withdrawn (as applicable) within five business days after receipt by the Debtors, counsel to the Official Committee (if appointed), and the U.S. Trustee of notice (which may be by email) that the Prepetition Agent has determined that such motion, pleading, or proceeding, if the relief sought therein were granted, would give rise to such a Termination Event; |
| | (l) | the entry by this Court of an order granting relief from or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to any entities other than the Prepetition Secured Parties with respect to the Prepetition Collateral or the Collateral with a value in excess of $1,000,000 or without which the Debtors' ability to operate their business in the ordinary course would be materially and adversely affected, in either case without the written consent of the Prepetition Lenders; |
| | (m) | the failure by the Debtors to make any payment required pursuant to this Interim Order when due and such failure shall remain unremedied for more than two (2) business |

8

| Summary of Material Terms |
|---|

| | | |
|---|---|---|
| | | days after receipt by the Debtors of written notice thereof from the Prepetition Agent; |
| | (n) | the failure by the Debtors to deliver to any of the Notice Parties any of the documents or other information reasonably required to be delivered to such applicable party pursuant to this Interim Order within five business days following a request therefor from any of the Notice Parties pursuant to the terms of this Interim Order; or any such documents or other information shall contain a material misrepresentation; |
| | (o) | the Debtors' failure to comply with an Approved Budget except with respect to Permitted Variance; |
| | (p) | the failure of the Debtors to observe or perform any of the material terms or material provisions contained herein; |
| | (q) | the filing by the Debtors of a plan of liquidation or a plan of reorganization that is not conditioned upon the payment of the Prepetition Secured Obligations and the Debtors' obligations with respect to the Adequate Protection granted hereunder, in full in cash, no later than the effective date of such chapter 11 plan (unless a chapter 11 plan is filed that provides for alternative treatment with the written consent of the Prepetition Secured Parties); |
| | (r) | the Debtors sell, transfer, lease, encumber, or otherwise dispose of any portion of the Prepetition Collateral or Cash Collateral outside the ordinary course of business, other than the use of Cash Collateral pursuant to the terms of the Approved Budget (subject to the Permitted Variance) and the terms of this Interim Order, without the prior written consent of the Prepetition Lenders (and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Lenders); |
| | (s) | the entry of an order pursuant to which the Prepetition Secured Parties cease to have a valid and perfected first priority security interest in and lien on any Prepetition Collateral, junior only to any Permitted Prior Liens; or |
| | (t) | this Interim Order has been reversed, vacated, stayed, appealed or is subject to a request for re-argument, or rehearing in a way that, if granted, would be adverse to the Prepetition Secured Parties, without the express written |

| Summary of Material Terms |
|---|

| | consent (which consent may be documented by e-mail) of the Prepetition Lenders.<br><br>Interim Order, ¶ 11. |
|---|---|
| **Adequate Protection**<br>**Bankruptcy Rules**<br>4001(b)(l)(B)(iv),<br>4001(c)(1)(B)(ii)<br>Local Rule 4001-3 | Subject to the Carve-Out and Interim Order, pursuant to sections 361, 363, 363, and 507 of the Bankruptcy Code as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case, for the potential Diminution in Value of the Prepetition Collateral (including Cash Collateral), the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted the following (the liens, security interests, payments, and other obligations set forth in this paragraph 7, collectively, the "<u>Adequate Protection Obligations</u>"):<br><br>(a)    *Adequate Protection Payments*.  As adequate protection for the potential Diminution of Value of the Prepetition Secured Parties' interests in the Prepetition Collateral, the Debtors shall pay $4,000,000 to the Prepetition Agent on account of the Prepetition Secured Obligations on June 13, 2025 and each subsequent Friday; *provided* that the Prepetition Lenders may (in their sole discretion) waive, in whole or in part, the right to receive such payment and elect instead for the Debtors to retain and use such Cash Collateral subject to the terms of this Interim Order; *provided*, *further*, that during the period from the entry of the Interim Order through the Expiration Date, Powin Project LLC shall not be obligated to make such adequate protection payments (but, for the avoidance of doubt, the other Debtors shall).<br><br>(b)    *Adequate Protection Liens*.  As security for and solely to the extent of any Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral and subject in all respects to payment of the Carve-Out, the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted (effective and perfected as of the entry of this Interim Order and without the necessity of the execution by the Debtors of any security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Agent of any Collateral (as defined below)) valid, binding, continuing, enforceable, fully-perfected, nonavoidable, first-priority senior replacement liens on |

| Summary of Material Terms |
| --- |

| | | and security interests (all such liens and security interests, the "<u>Adequate Protection Liens</u>") in all Collateral (as defined below), which Adequate Protection Liens shall be subject only to any Permitted Prior Liens, but shall be senior to any and all other liens and security interests in the Collateral.<br><br>(c)    *Collateral.*  The term "<u>Collateral</u>" means all assets and properties of each of the Debtors of any kind or nature whatsoever, whether tangible or intangible, real, personal or mixed, including, without limitation, any and all cash and cash equivalents of the Debtors, deposit, securities and other accounts (together with all cash and cash equivalents, instruments and other property deposited therein or credited thereto), accounts receivables and other receivables (including those generated by intercompany transactions), rights to payment, contracts and contract rights, goods, inventory, plants, fixtures, machinery, equipment, vehicles, real property and leasehold interests, general intangibles, documents, instruments, securities, capital stock of subsidiaries, investment property, chattel paper, franchise rights, patents, tradenames, trademarks, copyrights, licenses and all other intellectual property, tax and other refunds, insurance proceeds, books and records, Causes of Action (other than Avoidance Actions), and commercial tort claims, in the case of each of the foregoing, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, any of the Debtors, whether prior to or after the Petition Date, whether owned or consigned by or to, or leased from or to, the Debtors, and wherever located, including, without limitation, each of the Debtors' rights, title and interests in (i) all Prepetition Collateral and (ii) all "Collateral" (as defined in the Prepetition Loan Documents), and all proceeds, products, offspring, and profits of each of the foregoing and all accessions to, substitutions, and replacements for, each of the foregoing, excluding Avoidance Actions but including any proceeds or property recovered, whether by judgment, settlement or otherwise, of the Debtors' Avoidance Actions (collectively, the "<u>Avoidance Action Proceeds</u>").  For the avoidance of doubt, Collateral shall include commercial tort claims, other Causes of Action and Avoidance Action Proceeds |

US_ACTIVE\130488687

| Summary of Material Terms |
|---|
| with respect to Causes of Action against current and former equity holders, officers and directors.<br><br>(d)    *Adequate Protection Superpriority Claims.* As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, including subject to the priorities set forth therein, the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted allowed superpriority administrative expense claims ahead of and senior to any and all other administrative expense claims solely to the extent of, and in an aggregate amount equal to, any Diminution in Value and subject in all respects to payment of the Carve-Out (the "<u>Adequate Protection Superpriority Claims</u>"). Subject to the Carve-Out in all respects, the Adequate Protection Superpriority Claims will not be junior to any claims and shall have priority over all administrative expense claims and other claims against each of the Debtors, now existing or hereinafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to any provision of the Bankruptcy Code solely to the extent of, and in an aggregate amount equal to, any Diminution in Value.<br><br>(e)    *Reporting.* Upon reasonable advance written notice, the Debtors shall provide the Prepetition Agent with reasonable access during business hours to the Debtors' facilities, management, books, and records required under the Prepetition Loan Documents. The Debtors shall also provide the Prepetition Agent with such other and further financial and operational reporting as the parties have agreed or may agree in writing (for which writing email shall suffice). The Debtors will also have telephonic meetings with the Prepetition Lenders on request on reasonable notice.<br><br>Interim Order, ¶ 7. |

| **Liens on Avoidance Actions**<br><br>Local Rule 4001-3 | Collateral includes all proceeds, products, offspring, and profits of each of the applicable items delineated in the Interim Order and all accessions to, substitutions, and replacements for, each of such items, excluding Avoidance Actions but including any proceeds or property recovered, whether by judgment, settlement or otherwise, of the Debtors' Avoidance Actions (collectively, the "<u>Avoidance Action</u> |

| Summary of Material Terms | |
|---|---|
| | Proceeds"). For the avoidance of doubt, Collateral shall include commercial tort claims, other Causes of Action and Avoidance Action Proceeds with respect to Causes of Action against current and former equity holders, officers and directors.<br><br>Interim Order, ¶ 7(c). |
| **Stipulation to Prepetition Liens and Claims** Bankruptcy Rule 4001(c)(1)(B)(iii)<br><br>Local Rule 4001-3 | Subject to paragraph 20 of the Interim Order, the Debtors stipulate to the validity and enforceability of the Prepetition Secured Parties' prepetition claims and prepetition liens, stipulate that there are no estate Causes of Action against the Prepetition Secured Parties, stipulate that all of the Debtors' cash is Cash Collateral and provide the Prepetition Secured Parties with releases.<br><br>Interim Order, ¶ F. |
| **Liens and Priorities** Bankruptcy Rule 4001(c)(1)(B)(iv)<br><br>Local Rule 4001-3 | Liens granted as part of adequate protection package as fully described in "Adequate Protection" portion of this chart and paragraph 7 of the Interim Order. |
| **Carve-Out** Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-3 | Payment of any amounts on account of the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall be subject and subordinate in all respects to the payment of the following (collectively, the "Carve-Out"): (i) U.S. Trustee Costs; (ii) the unpaid and outstanding reasonable fees and expenses actually incurred by Professionals on or after the Petition Date and through the day of delivery of a Remedies Notice under this Interim Order, up to the amounts set forth for each Professional in the Budget for such period, to the extent allowed by Court order and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code and any interim procedures order; (iii) the unpaid and outstanding reasonable fees and expenses actually incurred by the Professionals from or after the day following the delivery of a Remedies Notice under this Interim Order, to the extent allowed by Court order and payable under sections 326, 328, 330, and 331 of the Bankruptcy Code and any interim procedures order, in an aggregate amount not to exceed $250,000 (the "Post-Termination Carve-Out Cap"); and (iv) from or after the day following the delivery of a Remedies Notice under this Interim Order, any unpaid and outstanding amounts owed to the U.S. Trustee, in an aggregate amount not to exceed $25,000.<br><br>Interim Order, ¶ 10(b). |

US_ACTIVE\130488687

| Summary of Material Terms | |
|---|---|
| **Modification of Automatic Stay** Bankruptcy Rule 4001(c)(1)(B)(iv) | The Debtors are authorized to perform all acts and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by the Interim Order. Interim Order, ¶ 18. |
| **Challenge Period** Bankruptcy Rule 4001(c)(l)(B) Local Rule 4001-3 | The earlier of (x) 60 calendar days after entry of the Interim Order, and (y) solely for any Official Committee, 45 calendar days after the appointment of any Official Committee, (ii) any such later date as has been agreed to, in writing, by the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents, and (iii) any such later date as has been ordered by the Court for cause upon a motion timely filed and served in accordance with the Interim Order. Interim Order, ¶ 20. |
| **506(c) Waiver** Bankruptcy Rule 4001(c)(l)(B)(x) Local Rule 4001-3 | Subject to entry of the Final Order, all rights to surcharge the interests of the Prepetition Secured Parties in any Prepetition Collateral or any Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Chapter 11 Cases. Interim Order, ¶ 14. |
| **No Marshaling & Section 552(b) Waiver** Bankruptcy Rule 4001(c)(l)(B) Local Rule 4001-3 | Subject to entry of the Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral, as the case may be.  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Collateral. Interim Order, ¶ 15. |

US_ACTIVE\130488687

### ii.  Debtors' Capital Structure

#### a.  Secured Debt

7.          Prior to the Petition Date, the Debtors entered into that certain Loan Agreement, dated as of October 1, 2024 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), by and among Powin, Powin Energy Intermediate, LLC (the "Parent Pledgor"), the Subsidiary Guarantors party thereto (as such term is defined in the Loan Agreement), the Prepetition Agent, as administrative agent and collateral agent and the Lenders party thereto (as such term is defined in the Loan Agreement). Pursuant to the Loan Agreement, the Lenders provided the Debtors up to $200,000,000 in Total Commitments subject to the terms and conditions of the Loan Agreement.

8.          Under Section 9.1 of the Loan Agreement, each Loan Party (as defined therein) pledged and granted to the Prepetition Agent, for the benefit of the Lenders, a security interest in and lien on all of such Loan Party's right, title and interest in and to substantially of their assets, including such Loan Party's cash.[5]  In connection therewith, Powin entered into (i) that certain Blocked Account Control Agreement dated as of November 12, 2024, by and among Powin, the Prepetition Agent, and JPMorgan Chase Bank, N.A. and (ii) that certain Deposit Account Control Agreement, dated as of October 1, 2024, by and among Powin, Powin China Holdings 2 LLC, the Prepetition Agent, and HSBC Bank USA, National Association (together, the "Controlled Accounts").

9.          On March 24, 2025, the Prepetition Agent sent a default notice (the "Default Notice") (i) notifying Powin of the occurrence and continuation of certain events of default and (ii) terminating all Commitments and declaring all Loans, together with all other outstanding Obligations, immediately due and payable. The Prepetition Agent also exercised control over the

---

[5] On October 2, 2024, the Prepetition Agent filed UCC-1 Financing Statements with the applicable secretaries of state against each of the Loan Parties.

Controlled Accounts by issuing two separate Shifting Control Notices and notifying JPMorgan Chase Bank and HSBC Bank of such exercise.[6]

10.    On June 9, 2025, the Debtors and the Prepetition Secured Parties entered into that certain Forbearance, Support, and Joinder Agreement, a copy of which is attached hereto as **Exhibit B** (the "Forbearance Agreement").  Subject to the terms and conditions of the Forbearance Agreement and the proposed Interim Order, the Prepetition Secured Parties agreed to forbear from exercising their right, pursuant to the Control Agreements, to direct the Prepetition Agent to direct disbursements from the Controlled Accounts during the period until 11:59 p.m. (New York time) on June 11, 2025.  The Forbearance Agreement further provides for Powin to transfer certain intellectual property to Powin Project LLC ("ProjectCo"), subject to certain conditions, which would remain subject to liens of the Prepetition Secured Parties, sufficient to allow ProjectCo to perform services for customers of the Debtors.

11.    As of the Petition Date, the outstanding secured obligations under the Loan Agreement were no less than $25,612,281.51, plus any other fees, expenses, and other obligations owed under the Prepetition Loan Documents.

    b.  *Unsecured Debt*

12.    The Debtors estimate that unsecured claims against the Debtors as of the Petition Date are at least $300,000,000, including: (i) accrued, and unpaid amounts owed to the Debtors' trade vendors and customers and other unsecured debt incurred in the ordinary course of the Debtors' business, and (ii) certain ongoing or threatened litigation claims, which are disputed.  The Debtors also have certain prepetition sales tax liabilities in which they are currently reserving funds on account thereof in the amount of $5.7 million.  The Debtors intend to present a routine motion to remit sales tax collections consistent with applicable law.

---

[6] As more fully detailed in the First Day Declaration, on April 25, 2025, the Prepetition Agent exercised the Proxy and provided notice to Powin and the Parent Pledgor that, from and after the date thereof, it was exercising its rights under the Loan Agreement and the Proxy to direct the voting of all of the Parent Pledgor's held equity interests in Powin to, among other things, amend the operating agreement of Powin to provide that Powin would be a manager-managed LLC and appointed an Independent Manager of Powin.

US_ACTIVE\130488687

*c. Equity*

13.    Each of the Debtors are directly or indirectly owned by Powin, which is in turn wholly owned by Powin Energy Intermediate, LLC. Powin Energy Intermediate, LLC is wholly owned by Powin Energy Holdings, LLC, a privately held limited liability company incorporated in Delaware.

## III.    RELIEF REQUESTED

14.    The Debtors seek entry of the Orders: (i) authorizing the Debtors to use Cash Collateral; (ii) granting adequate protection, solely to the extent provided in the Orders, to the Prepetition Secured Parties; (iii) modifying the Automatic Stay to the extent necessary to implement and effectuate the terms of the Orders; (iv) scheduling a Final Hearing to consider approval of this Motion on a final basis; and (v) granting related relief.

## IV.    BASIS FOR RELIEF

A.    The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection Is Appropriate.

15.    Section 363 of the Bankruptcy Code governs the Debtors' use of estate property, including Cash Collateral. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral where "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. 362(c)(2). The Prepetition Secured Parties have, or shall be deemed to have, consented to the Debtors' use of the Cash Collateral, subject to the terms and limitations set forth in the Orders.

16.    Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral. Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the Automatic Stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as replacement liens

17

and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

17.    As set forth in the Interim Order and described above, the Debtors propose to provide the Prepetition Secured Parties with a variety of forms of adequate protection to protect against the postpetition diminution in value of their prepetition collateral (the "Prepetition Collateral"), including Cash Collateral.

18.    The Debtors submit that the proposed adequate protection is sufficient to protect the Prepetition Secured Parties from any potential diminution in value to the Prepetition Collateral during the interim period. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *see also In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor). The importance and appropriateness of allowing debtors to use cash collateral and grant adequate protection to prepetition secured parties in large chapter 11 cases has been repeatedly recognized by courts in this district, and such courts have consistently granted relief similar to the relief requested herein. *See, e.g., In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D. N.J. Oct. 16, 2023) (authorizing debtors to use cash collateral and granting adequate protection in the form of, among other things, replacement liens on prepetition collateral, superpriority administrative claims pursuant to section 507(b), and fees

and expenses); *In re Cyxtera Techs., Inc.*, No. 23-14854 (JKS) (Bankr. D.N.J. Jun. 7, 2023) (same); *Bed Bath & Beyond, Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. Apr. 24, 2023) (same); *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. Apr. 17, 2023) (same).

19.    In light of the foregoing, the Debtors submit that the proposed adequate protection is appropriate.  *First*, it is necessary to protect the Prepetition Secured Parties against any diminution in value.  Every dollar spent by the Debtors will necessarily cause a diminution that requires adequate protection.  *Second*, it is fair and appropriate under the circumstances of these Chapter 11 Cases to ensure the Debtors are able to continue using the Cash Collateral in the near term for the benefit of all parties in interest.  *Third*, the proposed adequate protection package is appropriate.  In the absence of the Prepetition Secured Parties' agreement to forbear (subject to, among other things, agreement on the Interim Order), the Prepetition Secured Parties had the ability to sweep all of the Debtors' cash.  Instead, they have made significant cash available to fund this Chapter 11 process and, as a result, the cash payments and other forms of adequate protection are fair and appropriate under the circumstances.

B.    Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm to the Debtors and Their Estates.

20.    Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on this Motion and authorize the Debtors' proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates.  *See* Fed. R. Bankr. P. 4001(b)(2).  Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

21.    The Debtors have an immediate postpetition need to use Cash Collateral.  The Debtors cannot maintain the value of their estates during the pendency of these Chapter 11 Cases

19

without access to cash.  The Debtors will use Cash Collateral to, among other things, satisfy payroll, pay vendors, support customer programs, meet overhead obligations, and to make payments that are necessary for the continued management, operation, and preservation of the Debtors' businesses.  Absent the use of Cash Collateral, the Debtors will be unable to continue to operate their businesses in the near term, or otherwise fund these Chapter 11 Cases.  In such an event the Debtors would suffer immediate and irreparable harm to their businesses and reputation, including relationships with employees, vendors, and other parties imperative to their businesses. In short, the Debtors' use of Cash Collateral is vital to preserve and maximize the value of their estates.

22.      The Debtors therefore seek immediate authority to use the Cash Collateral as set forth in this Motion and in the proposed Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).  Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and immediately access Cash Collateral on an interim basis.

C.   The Automatic Stay Should Be Modified on a Limited Basis.

23.      The proposed Interim Order provides that the Automatic Stay will be modified to permit the Debtors to grant the liens and claims described herein, to incur all liabilities and obligations to the Prepetition Secured Parties under the Interim Order, and, subject to the Carve-Out, to make certain payments to the Prepetition Secured Parties.

24.      The Debtors have determined, in an exercise of their business judgment, that such stay modification is appropriate under the circumstances, in the context of a negotiated, consensual cash collateral order.  Further, stay modifications of this kind are ordinary, and are reasonable and fair under the circumstances of these Chapter 11 Cases.  Courts in this district and others have granted similar relief in other recent chapter 11 cases.  *See, e.g., In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D. N.J. Oct. 16, 2023) (modifying the automatic stay as necessary to effectuate the terms of the order); *In re Cyxtera Techs., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 6,

2023) (same); *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. May 24, 2023) (same); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. Apr. 24, 2023) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. July 23, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *ATD Corporation*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 26, 2018) (same); *In re Charming Charlie, LLC*, No. 17-12906 (CSS) (Bankr. D. Del. Dec. 12, 2017) (same).

    D.   The ProjectCo Contribution Should Be Approved.

    25.    Section 363(b) of the Bankruptcy Code permits a debtor in possession to use assets outside of the ordinary course of business subject to certain requirements.   Here, the Debtors request approval of the transfer of certain intellectual property, rights, assets, and licenses, to ProjectCo, that are necessary for ProjectCo to provide ongoing service to the Debtors' existing and future customers, subject to the terms of the Forbearance Agreement.   Such assets will remain subject to the Prepetition Liens (as defined in the Interim Order) and the Prepetition Secured Parties will be deemed to have a continued security interest over such assets, in each case pursuant to the Interim Order.

    26.    This transfer is necessary and appropriate to enable the Debtors to effectuate their newly developed business model that contemplates sustaining the Debtors' long term servicing business line (the "LTSA Program") in a manner that preserves projects of customers during the pendency of these Chapter 11 Cases.   As more fully explained in the First Day Declaration, based on feedback from customers, the Debtors have established ProjectCo as a stand-alone entity that is removed, and can be reorganized separately, from Powin's legacy liabilities, in order to best accomplish the LTSA Program.   In short, the ProjectCo Contribution is critical to the success of the LTSA Program, which, once implemented, will allow the Debtors to proceed to market their remaining assets for sale, for the benefit of all parties in interest, including unsecured creditors.

    27.    "Transactions under [s]ection 363 [of the Bankruptcy Code] must be based upon the sound business judgment of the trustee."   *Chamberlain v. Stanziale (In re Chamberlain)*, 545 B.R. 827, 844 (D. Del. 2016) (citation omitted).   "Where the trustee articulates a reasonable basis for

the business decision, courts will generally not entertain objections." *Id.* (citation omitted). Bankruptcy courts have "considerable discretion" in deciding whether to approve a transaction under section 363(b) of the Bankruptcy Code. *Id.* (citation omitted).

28.     As set forth herein, and in the First Day Declaration, the ProjectCo Contribution is critical to the success of these Chapter 11 Cases, and inures to the benefit of all parties in interest, including unsecured creditors. Accordingly, this Court should approve the ProjectCo Contribution as a sound exercise of the Debtors' business judgment.

## V.      COMPLIANCE WITH BANKRUPTCY RULE 6003 AND WAIVER OF ANY STAY AND/OR NOTICE REQUIREMENTS

29.     The Debtors request that the Court determine that the relief requested in this Motion complies with Bankruptcy Rule 6003 and that waiver of any stay and/or notice requirements is appropriate.

30.     Bankruptcy Rule 6003 provides:

Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001. . . .

31.     The Third Circuit Court of Appeals has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed.Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).

32.     As described in the Motion, and as supported by the First Day Declaration, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors'

businesses and any delay in granting the relief requested herein could hinder the Debtors' operations and cause irreparable harm.  Furthermore, failure to receive the requested relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Authorization of the use of Cash Collateral is vital to a smooth transition into chapter 11.  Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

33.      The Debtors further seek a waiver of any stay of the effectiveness of the Orders. As set forth above, the Debtors submit that granting this Motion such that it is effective immediately is essential to prevent irreparable damage to the Debtors and their estates.

34.      Accordingly, the Debtors respectfully submit that the relief requested herein is appropriate under the circumstances and under the Bankruptcy Rules.

35.      Finally, should the Court be inclined to grant the Motion, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a).

## VI.    REQUEST FOR SCHEDULING OF FINAL HEARING

36.      As set forth herein, the Debtors request that the Court hold a hearing and enter the Interim Order on an emergency or expedited basis.  The Debtors further request, pursuant to Bankruptcy Rule 4001(b)(2), that the Court hold a hearing and enter the Final Order at a time and date that is as soon as practicable, and in no event after twenty-one days from the Petition Date, and fix a time and date prior to the Final Hearing by which parties wishing to object to the Motion must do so.

## VII.    WAIVER OF MEMORANDUM OF LAW

37.      The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## VIII.    <u>RESERVATION OF RIGHTS</u>

38.    Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted in connection with this Motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law (except with respect to any pre- or postpetition claims of the Prepetition Secured Parties); (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds (except with respect to any pre- or postpetition claims of the Prepetition Secured Parties); (c) a promise or requirement to pay any particular claim (except with respect to any pre- or postpetition claims of the Prepetition Secured Parties); (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion (except with respect to any pre- or postpetition claims of the Prepetition Secured Parties); (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates (except with respect to any liens of the Prepetition Secured Parties); or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law (except with respect to any such claims, causes of action or other rights against the Prepetition Secured Parties and their related parties, as set forth in the Interim Order).

## IX.    <u>NO PRIOR REQUEST</u>

39.    No prior request for the relief sought in this motion has been made to this or any other court.

## X.    <u>NOTICE</u>

Pursuant to Local Rule 9013-5(c), notice of this Motion shall be given to the following parties: (a) the Office of the United States Trustee; (b) counsel for the Prepetition Lenders; (c) counsel for the Prepetition Agent; and (d) the Debtors' fifty largest unsecured creditors on a consolidated basis.  As this Motion is seeking "first day" relief, within 48 hours of the entry of the Order on this Motion, the Debtors will serve copies of the Order, as required by Local Rule 9013-5(f).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## XI.    <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Orders as set forth herein; and (ii) grant the Debtors such other and further relief is just and proper under the circumstances.

*[Signature Page Follows]*

US_ACTIVE\130488687

Dated: June 10, 2025                              **TOGUT, SEGAL & SEGAL LLP**

_/s/ Frank Oswald_
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (_pro hac vice_ forthcoming)
Amanda C. Glaubach (_pro hac vice_ forthcoming)
Eitan Blander (_pro hac vice_ forthcoming)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com

- and -

**DENTONS US LLP**

Tania M. Moyron (_pro hac vice_ forthcoming)
Van C. Durrer, II (_pro hac vice_ forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (_pro hac vice_ forthcoming)
Sarah M. Schrag (_pro hac vice_ forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
        sarah.schrag@dentons.com

_Proposed Counsel for Debtors and_
_Debtors in Possession_

US_ACTIVE\130488687

**<u>EXHIBIT A</u>**

(Proposed Form of Interim Order)

US_ACTIVE\130488687

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| POWIN, LLC, *et al.*[1] | ) Case No. 25-16137 (MBK) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) (Emergency Hearing Requested) |

### INTERIM ORDER (I) AUTHORIZING POSTPETITION
### USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE
### PROTECTION TO THE PREPETITION SECURED PARTIES,
### (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Powin, LLC and each of its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105(a), 361, 362, 363, 503, 506, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 4001-3 and 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Local Rules**"), seeking entry of an interim order (this "**Interim Order**") and a Final Order (as defined below), among other things:

     (a)    authorizing the use of Cash Collateral (as defined below), pursuant to sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code on the terms and conditions set forth in this Interim Order;

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

[2] Each capitalized term that is not defined herein shall have the meaning ascribed to such terms in the Motion.

(b)      granting adequate protection, as and to the extent set forth herein, to the Prepetition Secured Parties (as defined below) to protect against any Diminution in Value (as defined below) of their interests in any Cash Collateral;

(c)      modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties (as defined below) to implement and effectuate the terms and provisions of this Interim Order;

(d)      approving, subject to paragraph 20 hereof, certain stipulations, waivers, and releases by the Debtors with respect to, *inter alia*, the Prepetition Secured Parties, the Prepetition Loan Documents, the Prepetition Liens, and the Prepetition Secured Obligations (each as defined below);

(e)      subject to entry of the Final Order, approving the waiver of the right to surcharge the Prepetition Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or otherwise as to any Prepetition Secured Parties;

(f)      subject to entry of the Final Order and to the extent set forth herein, approving the waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the Prepetition Collateral as to the Prepetition Secured Parties;

(g)      subject to entry of the Final Order and to the extent set forth herein, approving the Debtors' waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral as to any of the Prepetition Secured Parties;

(h)      scheduling a final hearing (the "**Final Hearing**") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "**Final Order**") and approving the form of notice with respect to the Final Hearing;

(i)      waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order; and

(j)      granting related relief;

all as more fully set forth in the Motion; and an interim hearing with respect to the Motion having been held on June 12, 2025 (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b) and 9014 and Bankruptcy Local Rule 9013-5 and it appearing that no other or further notice need be provided; and the Court having considered the Declaration of *Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* (the "**First Day Declaration**"), the Approved Budget (as defined below) filed and served

by the Debtors, the evidence submitted or adduced, and the statements of counsel made at the Interim Hearing; and the Court having considered the interim relief requested in the Motion; and the relief requested being reasonable, appropriate, and in the best interests of the Debtors, their creditors, their estates and all other parties in interest in the Chapter 11 Cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    *Petition Date.*  On June 9, 2025 (the "**Petition Date**"),[4] each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (this "**Court**") commencing these Chapter 11 Cases.

B.    *Debtors in Possession.*  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[4]    Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the remaining Debtors were filed shortly thereafter on June 10, 2025.

C.     ***Committee Formation.***  As of the date hereof, the United States Trustee for the District of New Jersey (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Official Committee**").

D.     ***Jurisdiction and Venue.***  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief set forth herein are sections 105(a), 361, 362, 363, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Bankruptcy Local Rules 4001-3 and 9013-5.

E.     ***Notice.***  Notice of the Motion and the Interim Hearing constitutes due, sufficient, and appropriate notice and complies with Bankruptcy Rules 4001(b) and 9014 and the Bankruptcy Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

F.     ***Debtors' Stipulations***.  In requesting the use of Cash Collateral, and in exchange for, and as a material inducement to, the consent of the Prepetition Secured Parties to the use of their Cash Collateral, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows, in each case, without prejudice to the rights of an Official Committee (if one is appointed) or any other party in interest to the extent set forth in paragraph 20 of this Interim Order (subject to the limitations set forth therein):

(1)     *Prepetition Credit Agreement.*  Pursuant to that certain Loan Agreement, dated as of October 1, 2024 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition Credit Agreement**," and together with all other agreements, documents,

instruments and certificates executed or delivered in connection therewith, including, without limitation, the Loan Documents (as defined in the Prepetition Credit Agreement), collectively, the "**Prepetition Loan Documents**"), by and among Powin Energy Intermediate LLC, as the Parent Pledgor (the "**Parent Pledgor**"), Powin, LLC, as the Borrower (the "**Prepetition Borrower**"), the subsidiary guarantors party thereto (the "**Subsidiary Guarantors**" and, together with the Parent Pledgor and Prepetition Borrower, the "**Prepetition Loan Parties**"), GLAS USA LLC, as the administrative agent and collateral agent (in such capacity, the "**Prepetition Agent**"), and the lenders party thereto (collectively, the "**Prepetition Lenders**" and, together with the Prepetition Agent, the "**Prepetition Secured Parties**), the Prepetition Lenders provided Loans (as defined in the Prepetition Credit Agreement) to the Prepetition Borrower.

(2)     *Prepetition Guaranty*.  Pursuant to Section 10 of the Prepetition Credit Agreement, the Parent Pledgor and the Subsidiary Guarantors guaranteed, on a joint and several basis, all of the Prepetition Secured Obligations (as defined below).

(3)     *Prepetition Loan Obligations.*  As of the Petition Date, the Prepetition Loan Parties were justly and lawfully indebted and liable to the Prepetition Secured Parties, without defense, counterclaim, or offset of any kind, in the outstanding principal amount of not less than $25,612,281.51 *plus* certain reimbursement obligations, fees, costs, expenses (including, without limitation, certain attorneys' fees and related fees, charges and disbursements), indemnification obligations, and any other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing or chargeable in respect thereof, in each case, to the extent provided in the Prepetition Loan Documents (collectively, the "**Prepetition Secured Obligations**").

(4)     *Prepetition Liens.*  Pursuant to the Security Documents (as defined in the Prepetition Credit Agreement), each of the Prepetition Loan Parties granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, valid and properly perfected continuing liens on and security interests (the "**Prepetition Liens**") in all Collateral (as defined in the Prepetition Credit Agreement) (collectively, the "**Prepetition Collateral**").

(5)     *Validity and Enforceability of Prepetition Secured Obligations.*  As of the Petition Date, the Prepetition Secured Obligations constitute the legal, valid, non-avoidable and binding obligations of each of the Debtors, enforceable in accordance with the terms of the Prepetition Loan Documents and (i) no portion of the Prepetition Secured Obligations and no amounts paid or payments made at any time by the Debtors to the Prepetition Secured Parties in respect of or applied to, as applicable, the Prepetition Secured Obligations, the Prepetition Loan Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment,

defense, setoff, counterclaim, avoidance, recharacterization, reclassification, disgorgement, reduction, disallowance, recovery or subordination, challenge or any other Cause of Action[5] of any kind or nature whatsoever, whether pursuant to the Bankruptcy Code, applicable non-bankruptcy law or otherwise, (ii) the Debtors do not have any claims, counterclaims, Causes of Action, defenses or setoff rights related to the Prepetition Secured Obligations or the Prepetition Loan Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code or applicable non-bankruptcy law against the Prepetition Secured Parties, and each of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees (in their respective capacities as such), and (iii) the Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(6)     *Validity and Enforceability of Prepetition Liens*.  As of the Petition Date, the Prepetition Liens (i) have been properly recorded and are valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Prepetition Collateral, (ii) are not subject to any offset, contest, objection, recovery, recoupment, reduction, defense, counterclaim, subordination, recharacterization, disgorgement, disallowance, avoidance, challenge or any other claim or Cause of Action of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or other applicable law, (iii) were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations or consideration secured or obtained thereby, and (iv) without giving effect to this Interim Order, are senior with priority over any and all other liens on or security interests in the Prepetition Collateral, subject only to liens or security interests expressly permitted under the applicable Prepetition Loan Documents, in each case, solely to the extent any such permitted liens and security interests were valid, non-avoidable, properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by

---

[5]     As used in this Interim Order, "**Causes of Action**" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, or offset of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the entry of this Interim Order, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law.

section 546(b) of the Bankruptcy Code) and are senior in priority to the Prepetition Liens (the "**Permitted Prior Liens**").[6]

(7)    *No Claims, Defenses, or Causes of Action.*  As of the date hereof, no claims, cross-claims, counterclaims, defenses or Causes of Action exist, including claims and Causes of Action arising under chapter 5 of the Bankruptcy Code or applicable state law equivalents (the "**Avoidance Actions**") or actions for recovery, recoupment, offset, setoff, disallowance, recharacterization, subordination (whether equitable, contractual, or otherwise), or disgorgement, against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees (in their respective capacities as such) with respect to, in connection with, related to, or arising from the Prepetition Secured Obligations or any of the Prepetition Loan Documents, any action or conduct of any Prepetition Secured Party in respect thereof, or any of the transactions contemplated thereunder, that may be asserted by the Debtors, their respective estates, or any other person or entity.

(8)    *Cash Collateral.*  The Debtors admit, stipulate, acknowledge and agree that any and all of the Debtors' cash, whether existing as of the Petition Date or thereafter, wherever located (including, without limitation, all cash or cash equivalents in the control of or on deposit or maintained by the Debtors in any account or accounts, any amounts generated by the sale or other disposition of Prepetition Collateral, and all income, proceeds, products, rents or profits of any Prepetition Collateral), constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (such cash and cash equivalents, the "**Cash Collateral**").

(9)    *Releases.*  Subject to the rights and limitations set forth in paragraph 20 of this Interim Order, the Debtors, on behalf of themselves and their respective estates, hereby absolutely, unconditionally and irrevocably release and forever discharge and acquit the Prepetition Secured Parties and each of their respective former, current, and future officers, directors, employees, shareholders, stockholders, equity holders, owners, members, managers, partners, principals, subsidiaries, affiliates, funds or managed accounts, agents, advisors, attorneys, accountants, investment bankers, consultants, other professionals and representatives, together with the respective successors and assigns thereof, in each case, in their respective capacities

---

[6]    Nothing contained herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing contained herein shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, and the Official Committee (if any), in each case to the extent such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien (subject to the terms of this Interim Order).  For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Prior Lien.

as such (collectively, the "**Representatives**"), from any and all claims, offsets, defenses, counterclaims, set off rights, objections, challenges, Causes of Action and/or choses in action, liabilities, losses, damages, responsibilities, disputes, remedies, actions, suits, controversies, reimbursement obligations (including, attorneys' fees), premiums, fees, costs, expenses, or judgments of every type, whether known or unknown, asserted or unasserted, fixed or contingent, pending or threatened, of any kind or nature whatsoever, whether arising at law or in equity (including, without limitation, any theory of so called "lender liability" or equitable subordination or any claim or defense asserting recharacterization, subordination, or avoidance, any claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or any other provision of the Bankruptcy Code or of applicable state or federal law, or any other claim, Cause of Action, or defense arising under the Bankruptcy Code or applicable non-bankruptcy law), in each case, arising under, in connection with, or related to the Debtors or their estates, the extent, amount, validity, enforceability, priority, security, and perfection of the Prepetition Secured Obligations, the Prepetition Liens, the Prepetition Loan Documents, and/or the transactions contemplated thereunder or hereunder, in each case, arising at any time prior to entry of this Interim Order.

G.    ***Need for Use of Cash Collateral.***  The Debtors have an immediate and critical need to use Cash Collateral on an interim basis to permit the orderly continuation of the operation of their businesses, maintain business relationships with customers, vendors, and suppliers, make payroll, pay the costs of administering the Chapter 11 Cases, and satisfy other working capital and operational needs (in each case, in accordance with and subject to this Interim Order) for the benefit of the estates and the Debtors' creditors and stakeholders, including the Prepetition Secured Parties. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtors and their successful reorganization. The Debtors do not have sufficient sources of working capital and financing to operate their business in the ordinary course of business without the use of Cash Collateral. Absent the ability to use Cash Collateral and the other Prepetition Collateral, the continued operation of the Debtors'

businesses would not be possible, and immediate and irreparable harm to the Debtors and their estates would be inevitable.

H.      ***Use of Cash Collateral.***   As a condition to their consent to the use of Cash Collateral, the Prepetition Secured Parties require, and the Debtors have agreed, that all Cash Collateral shall be used and/or applied solely for the purposes permitted in the Approved Budget (as defined below), including, without limitation, (i) to pay the costs of administration of the Chapter 11 Cases, (ii) for general corporate and working capital purposes, and (iii) to pay adequate protection payments to the extent set forth herein, in each case, in accordance with the terms and conditions of this Interim Order.

I.      ***Adequate Protection.***   The Prepetition Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, subject to the terms and conditions set forth herein. The Prepetition Secured Parties are entitled to adequate protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code for the Debtors' use of the Prepetition Collateral, including Cash Collateral, and the imposition of the automatic stay, in the case of the Adequate Protection Liens and Adequate Protection Superpriority Claims (each, as defined below), solely to the extent of any Diminution in Value (as defined below).  Based upon the Motion and the evidence presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral as contemplated herein are fair and reasonable and reflect the Debtors' prudent exercise of business judgment.  The Prepetition Lenders have expressly consented to the entry of this Interim Order and relief provided herein and pursuant to the terms of the Prepetition Loan Documents.  As adequate protection against any aggregate diminution in value of the Prepetition Secured Parties' respective liens and security interests in the Prepetition Collateral (including Cash Collateral) from and after the

Petition Date resulting from, among other things, (i) the use, sale, or lease by the Debtors of such collateral, (ii) the use of Cash Collateral by each of the Debtors on a dollar-for-dollar basis, (iii) the imposition of the automatic stay, and (iv) the imposition of the Carve-Out (as defined below) (collectively, and to the fullest extent permitted under the Bankruptcy Code or other applicable law, the "**Diminution in Value**"), the Prepetition Secured Parties are entitled to adequate protection, pursuant to sections 361, 362, and 363 of the Bankruptcy Code, as set forth in this Interim Order; *provided, however*, that nothing in this Interim Order shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral or other Prepetition Collateral other than on the terms expressly set forth in this Interim Order, or (y) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection after the date hereof.  Based on the Motion, the First Day Declaration, and other evidence filed in support of the Motion, and the record presented to the Court in connection with the Interim Hearing, the terms of the adequate protection arrangements and the use of Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral).

J.      *Consent*.  The Prepetition Lenders have consented to the Debtors' use of Prepetition Collateral (including Cash Collateral) in accordance with and subject to the terms and conditions set forth in this Interim Order and the Approved Budget, and the terms of the adequate protection provided for in this Interim Order, including that the Adequate Protection Liens and Adequate Protection Superpriority Claims (and all other liens and claims of the Prepetition Secured Parties) are subject and subordinate to the Carve-Out.

K.      ***Limitation on Charging Expenses Against Collateral***.  In light of the Prepetition

Secured Parties' agreement to subordinate their liens and claims to the Carve-Out, to consent to

the ProjectCo Contribution (as defined below), and to permit the use of their Cash Collateral as set

forth herein and in the Final Order, subject to entry of the Final Order, no costs or expenses of

administration of the Chapter 11 Cases, any case under chapter 7 of the Bankruptcy Code upon

the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or relating

to any of the foregoing and/or upon the dismissal of any of the Chapter 11 Cases or any such

successor cases (collectively, the "**Successor Cases**") shall be charged against or recovered from

any Prepetition Collateral (including Cash Collateral) pursuant to sections 105 or 506(c) of the

Bankruptcy Code or any similar principle of law, as against the Prepetition Secured Parties,

without the prior written consent of the requisite Prepetition Secured Parties (which may be

evidenced by electronic mail from counsel to the Prepetition Agent), and no such consent shall be

implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties.

L.      ***No Marshaling; 552(b) Waiver.***   In light of the Prepetition Secured Parties'

agreement to subordinate their liens and superpriority claims to the Carve-Out, to consent to the

ProjectCo Contribution, and to permit the use of their Cash Collateral as set forth herein and in the

Final Order, and subject to entry of the Final Order, (i) in no event shall the Prepetition Secured

Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to

the Prepetition Collateral or the Prepetition Secured Obligations and (ii) each of the Prepetition

Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy

Code, and, subject to entry of the Final Order, in no event shall the "equities of the case" exception

in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties or the Prepetition

Collateral.

M.      ***Proper Exercise of Business Judgment***.   Based on the Motion, the First Day
Declaration, and the record presented to the Court at the Interim Hearing, (i) the terms of adequate
protection granted to the Prepetition Secured Parties, (ii) the terms on which the Debtors may
continue to use Prepetition Collateral (including Cash Collateral), and (iii) the Cash Collateral
arrangements described herein, (a) were negotiated in good faith and at arm's length among the
Prepetition Loan Parties and the Prepetition Lenders, (b) are fair, reasonable, and the best available
to the Debtors under the circumstances, (c) reflect the Debtors' exercise of prudent business
judgment consistent with their fiduciary duties, and (d) are supported by reasonably equivalent
value and fair consideration.  Absent the ability to continue to use Cash Collateral upon the terms
set forth herein, the Debtors, their estates, their creditors, and other parties-in-interest will be
seriously and irreparably harmed.

N.      ***Initial Budget***.  The Debtors have prepared the itemized cash flow forecast set forth
on **Exhibit 1** attached hereto (the "**Initial Budget,**" as updated by the Debtors and acceptable to
the Prepetition Lenders from time to time in accordance with the terms of this Interim Order, the
"**Approved Budget**").   The Initial Budget is an integral part of this Interim Order, and the
Prepetition Lenders are relying, in part, upon the Debtors' agreement to comply, subject to
Permitted Variance (as defined below), with the Initial Budget, in determining to allow
the Debtors' use of Cash Collateral in accordance with the terms of this Interim Order.

O.      ***Good Faith***.  The parties herein have acted in good faith, at arm's length, and with
sound business judgment in connection with this Interim Order.

P.      ***Need for Immediate Entry of this Interim Order***.  The Debtors have requested
immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The permission
granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary,

essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates and creditors.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. ***Motion Granted.*** The use of Cash Collateral is hereby authorized and approved and the Motion is hereby **GRANTED** in accordance with and subject to the terms and conditions of this Interim Order. Any objections or other statements with respect to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Interim Order, are hereby denied and overruled.

2. ***Authorization to Use Cash Collateral***. Subject to the provisions of this Interim Order (including the Carve-Out), the Debtors are authorized to use Cash Collateral during the period from the Petition Date through and including a Termination Date (as defined below) to operate the Debtors' businesses in the ordinary course and pay certain costs, fees, and expenses related to the Chapter 11 Cases, in accordance with the Approved Budget as provided herein, and as approved by any order of this Court.

3. ***Approved Budget.*** Subject to the provisions of this Interim Order (including the Carve-Out), the Debtors are authorized to use Cash Collateral in accordance with the Approved Budget (subject to Permitted Variance) through June 30, 2025 (the "**Expiration Date**"). On the Friday of each week, the Debtors shall deliver a reconciliation report (the "**Variance Report**") to the Prepetition Lenders, in form reasonably satisfactory to the Prepetition Lenders, showing variances of budget amounts to actual amounts on a line-item basis for the period for the prior

week (the "**Testing Period**").  The Variance Report will include (i) the variance (as compared to the applicable Approved Budget) of actual cash receipts of the Debtors for Testing Period (as defined below), (ii) the variance (as compared to the applicable Approved Budget) of the operating disbursements made by the Debtors set forth in the Approved Budget for the Testing Period, and (iii) an explanation, in reasonable detail, for any material variances set forth in such Variance Report.

4.      The Debtors shall not permit a total operating disbursement variance for any prior week to have a negative variance in excess of 15% (with negative variance meaning, for the avoidance of doubt, that actual operating disbursements are greater than the projected operating disbursements) (the variance otherwise permitted by this covenant, the "**Permitted Variance**").

5.      On or before June 27, 2025, the Debtors shall deliver to the Prepetition Agent a revised cash flow forecast substantially in the format of the Initial Budget (the "**Revised Budget**") for a time period to be agreed between the Debtors and the Prepetition Lenders from and after the Expiration Date.  If the Prepetition Lenders agree to the proposed Revised Budget, the Revised Budget will become the Approved Budget and the Debtors will be authorized to continue to use Cash Collateral in accordance with the Revised Budget and this Interim Order through a date to be agreed by the Debtors and the Prepetition Lenders.  If the Prepetition Lenders (in their sole discretion) do not agree to the proposed Revised Budget, the Debtors' consensual use of Cash Collateral shall terminate on the Expiration Date.

6.      ***Limitations on Use of Cash Collateral.***  The Debtors shall not be permitted to make any payments on account of any prepetition debt or obligation before the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors, except: (i) with respect to the Prepetition Secured Obligations as set forth in this Interim Order; (ii) as provided in any order

in connection with any relief requested by the Debtors at the commencement of these Chapter 11

Cases, each in form and substance reasonably acceptable to the Prepetition Lenders; or (iii) any

payment made in accordance with the Approved Budget, subject to Permitted Variance.  The use

of Cash Collateral pursuant to the terms and conditions of this Interim Order and in accordance

with the Approved Budget shall not be deemed to be consent by the Prepetition Lenders to any

other or future use of Cash Collateral or to use any Cash Collateral in any amount or for any

purpose in excess of the amount set forth in the Approved Budget, subject to the Permitted

Variance.  For the avoidance of doubt, the Debtors are expressly authorized to reserve amounts for

sales tax and other similar taxes in accordance with applicable non-bankruptcy law. To the extent

such authorization requires consent, the Prepetition Secured Parties hereby consent to the Debtors'

reservation of such amounts.

7.      ***Adequate Protection for the Prepetition Secured Parties.***  Subject only to the

Carve-Out and the terms of this Interim Order, pursuant to sections 361, 363, 363, and 507 of the

Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Parties in the

Prepetition Collateral (including Cash Collateral), in each case, for the potential Diminution in

Value of the Prepetition Collateral (including Cash Collateral), the Prepetition Agent, for the

benefit of itself and the other Prepetition Secured Parties, is hereby granted the following (the

liens, security interests, payments, and other obligations set forth in this paragraph 7, collectively,

the "**Adequate Protection Obligations**"):

> (a)    *Adequate Protection Payments*.  As adequate protection for the potential
> Diminution of Value of the Prepetition Secured Parties' interests in the
> Prepetition Collateral, the Debtors shall pay $4,000,000 to the Prepetition
> Agent on account of the Prepetition Secured Obligations on June 13, 2025
> and each subsequent Friday; *provided* that the Prepetition Lenders may (in
> their sole discretion) waive, in whole or in part, the right to receive such
> payment and elect instead for the Debtors to retain and use such Cash
> Collateral subject to the terms of this Interim Order; *provided*, *further*, that

during the period from the entry of the Interim Order through the Expiration Date, Powin Project LLC ("**ProjectCo**") shall not be obligated to make such adequate protection payments (but, for the avoidance of doubt, the other Debtors shall).

(b)     *Adequate Protection Liens*.  As security for and solely to the extent of any Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral and subject in all respects to payment of the Carve-Out, the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted (effective and perfected as of the entry of this Interim Order and without the necessity of the execution by the Debtors of any security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Agent of any Collateral (as defined below)) valid, binding, continuing, enforceable, fully-perfected, nonavoidable, first-priority senior replacement liens on and security interests (all such liens and security interests, the "**Adequate Protection Liens**") in all Collateral (as defined below), which Adequate Protection Liens shall be subject only to any Permitted Prior Liens, but shall be senior to any and all other liens and security interests in the Collateral.

(c)     *Collateral*.  The term "**Collateral**" means all assets and properties of each of the Debtors of any kind or nature whatsoever, whether tangible or intangible, real, personal or mixed, including, without limitation, any and all cash and cash equivalents of the Debtors, deposit, securities and other accounts (together with all cash and cash equivalents, instruments and other property deposited therein or credited thereto), accounts receivables and other receivables (including those generated by intercompany transactions), rights to payment, contracts and contract rights, goods, inventory, plants, fixtures, machinery, equipment, vehicles, real property and leasehold interests, general intangibles, documents, instruments, securities, capital stock of subsidiaries, investment property, chattel paper, franchise rights, patents, tradenames, trademarks, copyrights, licenses and all other intellectual property, tax and other refunds, insurance proceeds, books and records, Causes of Action (other than Avoidance Actions), and commercial tort claims, in the case of each of the foregoing, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, any of the Debtors, whether prior to or after the Petition Date, whether owned or consigned by or to, or leased from or to, the Debtors, and wherever located, including, without limitation, each of the Debtors' rights, title and interests in (i) all Prepetition Collateral and (ii) all "Collateral" (as defined in the Prepetition Loan Documents), and all proceeds, products, offspring, and profits of each of the foregoing and all accessions to, substitutions, and replacements for, each of the foregoing, excluding Avoidance Actions but including  any proceeds or property recovered, whether by judgment, settlement or otherwise, of the Debtors' Avoidance Actions (collectively, the "**Avoidance Action Proceeds**").  For the avoidance of doubt, Collateral

shall include commercial tort claims, other Causes of Action and Avoidance Action Proceeds with respect to Causes of Action against current and former equity holders, officers and directors.

(d)     *Adequate Protection Superpriority Claims.*  As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, including subject to the priorities set forth therein, the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted allowed superpriority administrative expense claims ahead of and senior to any and all other administrative expense claims solely to the extent of, and in an aggregate amount equal to, any Diminution in Value and subject in all respects to payment of the Carve-Out (the "**Adequate Protection Superpriority Claims**").   Subject to the Carve-Out in all respects, the Adequate Protection Superpriority Claims will not be junior to any claims and shall have priority over all administrative expense claims and other claims against each of the Debtors, now existing or hereinafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to any provision of the Bankruptcy Code solely to the extent of, and in an aggregate amount equal to, any Diminution in Value.

(e)     *Status of Adequate Protection Liens.*  Except for the Carve-Out and as otherwise expressly permitted hereunder, the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest, or administrative claim under section 364 of the Bankruptcy Code or otherwise.

(f)     *Right to Seek Additional Adequate Protection.*  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

(g)     *Cash Management Covenant.*  The Debtors shall maintain their cash management arrangements in a manner consistent with those described in the applicable "first day" order.  Except as necessary to fund the Carve-Out after delivery of a Remedies Notice, the Debtors shall be prohibited from transferring any cash out of the Core Controlled Account (as defined in the Prepetition Credit Agreement) without the consent of the Prepetition Lenders.

(h)     *Reporting.*  Upon reasonable advance written notice, the Debtors shall provide the Prepetition Agent with reasonable access during business hours to the Debtors' facilities, management, books, and records required under the Prepetition Loan Documents.  The Debtors shall also provide the

Prepetition Agent with such other and further financial and operational reporting as the parties have agreed or may agree in writing (for which writing email shall suffice). The Debtors will also have telephonic meetings with the Prepetition Lenders on request on reasonable notice.

8.   ***Access and Information***.  Without limitation of the requirements contained in the Prepetition Loan Documents, upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtors shall permit the Prepetition Lenders and their Representatives (each of which is bound by obligations of confidentiality pursuant to a separate confidentiality agreement entered into with the Debtors) to have reasonable access to such information regarding the operations, business affairs, and financial condition of the Debtors or any of their subsidiaries, or compliance with the terms of the Prepetition Credit Agreement as the Prepetition Lenders may reasonably request, and it being understood that nothing in this paragraph 8 shall require the Debtors (or any of their advisors) to take any action that would conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege.

9.   ***ProjectCo Contribution***.  Subject to the terms and conditions of the Forbearance Agreement (as defined in the Motion), the Debtors (other than ProjectCo) are hereby authorized to transfer, assign and convey to ProjectCo all intellectual property, rights, asset and licenses necessary for ProjectCo to provide ongoing service to the Debtors' existing and future customers, with ProjectCo assuming all of the other Debtors' rights and obligations under any technology escrow agreements between any other Debtor and the Debtors' customers and the applicable Debtors other than ProjectCo entering into a services agreement with ProjectCo to provide necessary employees and related support to ProjectCo in pursuing service contracts with customers.  Upon any such transfer, assignment and/or conveyance, the Prepetition Liens shall hereby be deemed to automatically continue to be valid, binding, continuing, perfected, and

enforceable against ProjectCo with respect to such transferred, assigned and/or conveyed assets. Notwithstanding the foregoing, and without limiting the obligations of the Debtors and ProjectCo as set forth in the Forbearance Agreement, the Debtors shall be authorized and required to enter into any security documentation as reasonably requested by the Prepetition Lenders with respect to ProjectCo (including as described in the Forbearance Agreement) and the Prepetition Secured Parties are authorized to make any associated public filings.  Further, as of the Petition Date, the Prepetition Secured Parties shall be deemed to have valid, binding, continuing, perfected and enforceable liens over the equity of ProjectCo and all assets of ProjectCo that qualify as Collateral. ProjectCo shall be precluded from incurring any indebtedness other than the Prepetition Secured Obligations.

10.     ***Payment of Professionals; Carve-Out; Funding Thereof***.

(a)     *Payments of Professional Fees*. Prior to the delivery of the Remedies Notice (as defined below) under this Interim Order, the Debtors shall be permitted to pay (x) the fees and charges assessed against the estate under 28 U.S.C. § 1930 and any fees payable to the Clerk of the Court (collectively, "**U.S. Trustee Costs**") and (y) professional fees and expenses incurred by attorneys, accountants and other professionals, including ordinary course professionals, retained by the Debtors and any Committee under sections 327 or 1103(a) of the Bankruptcy Code (together, the "**Professionals**" and each, a "**Professional**"), including any expenses of the members of such Committee, (the "**Professional Fees**") solely (i) to the extent allowed by Court order and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code and any interim procedures order and (ii) in amounts not exceeding the amounts set forth in the Approved Budget for each such Professional's Professional Fee; *provided* that any fees, expenses or costs incurred by the Committee in excess of the Investigation Budget (as defined below) shall not constitute an allowable administrative expense claim, including for purposes of section 1129(a)(9)(A) of the Bankruptcy Code. For the avoidance of doubt, if a Professional's Professional Fees for a given period is less than the amount set forth in the Budget for such period, then the excess of amount under the Budget shall carry over to be included in the following period's cap.

(b)     *Carve-Out*. Payment of any amounts on account of the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superiority Claims shall be subject and subordinate

in all respects to the payment of the following (collectively, the "**Carve-Out**"): (i) U.S. Trustee Costs; (ii) the unpaid and outstanding reasonable fees and expenses actually incurred by Professionals on or after the Petition Date and through the day of delivery of a Remedies Notice under this Interim Order, up to the amounts set forth for each Professional in the Approved Budget for such period, to the extent allowed by Court order and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code and any interim procedures order; (iii) the unpaid and outstanding reasonable fees and expenses actually incurred by the Professionals from or after the day following the delivery of a Remedies Notice under this Interim Order, to the extent allowed by Court order and payable under sections 326, 328, 330, and 331 of the Bankruptcy Code and any interim procedures order, in an aggregate amount not to exceed $150,000 (the "**Post-Termination Carve-Out Cap**"); and (iv) from or after the day following the delivery of a Remedies Notice under this Interim Order, any unpaid and outstanding amounts owed to the U.S. Trustee, in an aggregate amount not to exceed $25,000.

(c)     *Funding of Carve-Out Prior to Delivery of Remedies Notice*.  Within five (5) business days of entry of this Interim Order,  the Debtors shall fund into the trust account for the Debtors' general bankruptcy counsel or other segregated reserve or escrow account not subject to the control of the Prepetition Secured Parties (the "**Carve-Out Account**") an amount equal to the total budgeted Debtor Professionals' fees, respectively, for the first two (2) weeks set forth in the Approved Budget and, thereafter, the Debtors are authorized to transfer into the Carve-Out Account on a weekly basis cash in an amount equal to the estimated Debtor Professionals' fees (excluding any restructuring, sale, success or other transaction fee of any investment bankers or financial advisors) for the next unfunded week set forth in the Approved Budget.  Thereafter, the Debtors shall use such funds held in the Carve-Out Account solely to pay Debtors' Professional fees as they become allowed and payable pursuant to interim or final orders of the Court; *provided* that in no way shall the Budget, the Carve-Out, the Carve-Out Account, the Post-Termination Carve-Out Cap, or any other provision of this Interim Order be or shall be deemed to be construed as a cap or limitation on the amount of Professional Fees due and payable by the Debtors or their estates as an administrative expense under the Bankruptcy Code.

(d)     *Funding of Carve-Out Upon Delivery of Remedies Notice*.  Upon delivery of a Remedies Notice, the Debtors shall deposit into the Carve-Out Account an aggregate amount equal to the sum of the Post-Termination Carve-Out Cap plus (solely to the extent not already deposited) all unpaid and outstanding reasonable fees and expenses actually incurred by all of the Professionals prior to the delivery of the Remedies Notice in an amount not to exceed the amounts set forth in the Approved Budget for the payment of such Professionals through the date of delivery of the Remedies Notice. The

funds in the Carve-Out Account shall be used solely to pay Professional Fees as and when allowed by order of the Court in accordance with paragraph 10(b) above. To the extent the Court does not approve any of the Professional Fees that were to be paid from funds segregated in the Carve-Out Account, or any amounts in the Carve-Out Account are ultimately not used for such purposes, such unused amounts shall be returned to the Debtors, subject to the rights, liens and claims of the Prepetition Secured Parties under this Interim Order and the Prepetition Loan Documents.

(e)     Notwithstanding the provisions of this Interim Order (including this paragraph 10), the Prepetition Secured Parties reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Approved Budget. The Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any Professional Fees, any U.S. Trustee Costs or the fees or expenses of any other party incurred in connection with these Chapter 11 Cases or any Successor Case. The appearance of any Professional Fees in the Budget are for purposes of estimated accruals only and (x) shall not be deemed an authorization for the Debtors to pay any Professional Fees absent a Court order authorizing such payment and (y) shall not, in any way, be probative (or otherwise have any impact) with respect to the allowance of the payment of any such Professional Fees or any party's right to object to the payment of such Professional Fees. This Interim Order does not, and shall not be deemed to, itself authorize the payment of any Professional Fees.

11.    ***Termination Events***.  Subject to the Remedies Notice Period (as defined herein), the Debtors' right to use the Cash Collateral pursuant to this Interim Order shall cease on the Termination Date (as defined herein).  As used herein "**Termination Events**" means any of the events set forth in clauses (a) through (t) below (each such events a "**Termination Event**," and the date upon which such Termination Event occurs, the "**Termination Date**"):

(a)     a Final Order acceptable to the Debtors and the Prepetition Agent is not entered by the Court by 11:59 p.m. on the date that is 35 days after the Petition Date;

(b)     the effective date of a chapter 11 plan of one or more of the Debtors;

(c)     the violation of any term of this Interim Order by the Debtors that is not cured within five business days of receipt by the Debtors, counsel for the Official Committee (if appointed), and the U.S. Trustee of notice of such default, violation, or breach (which may be provided to the Debtors, counsel for the Official Committee, and the U.S. Trustee by email);

(d)     the entry of any order modifying, reversing, revoking, staying for a period in excess of five business days, rescinding, vacating, or amending this Interim Order without the express written consent of the Prepetition Lenders;

(e)     the filing by the Debtors of motion to dismiss any of the Chapter 11 Cases, or the entry of any order dismissing any of these Chapter 11 Cases (other than following the effective date of a chapter 11 plan) without the express written consent of the Prepetition Lenders, or a trustee under chapter 11 of the Bankruptcy Code or an examiner is appointed in any of the Chapter 11 Cases;

(f)     the filing by the Debtors of a motion to convert any of these Chapter 11 Cases to a case under chapter 7 or the entry of order converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, without the express written consent of the Prepetition Lenders;

(g)     the entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code) unless consented to by the Prepetition Lenders in writing;

(h)     the filing by the Debtors of any application, motion, or borrowing request seeking to use Cash Collateral on a non-consensual basis;

(i)     the entry of an order granting another claim or lien (except for the Permitted Prior Liens) *pari passu* with or senior to (except as provided under this Interim Order) the Prepetition Liens, Adequate Protection Liens, or Adequate Protection Superpriority Claims;

(j)     any motion, pleading, or proceeding is filed or is commenced by any Debtor seeking, or otherwise consenting to or supporting, (i) the invalidation, subordination, or other challenge to the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims or (ii) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or any Collateral, including the Cash Collateral, or against any of the Prepetition Secured Parties;

(k)     any Debtor files a motion, pleading, or proceeding that would, if the relief sought therein were granted, result in a Termination Event, and such motion, pleading, or proceeding is not dismissed or withdrawn (as applicable) within five business days after receipt by the Debtors, counsel to the Official Committee (if appointed), and the U.S. Trustee of notice (which may be by email) that the Prepetition Agent has determined that such

motion, pleading, or proceeding, if the relief sought therein were granted, would give rise to such a Termination Event;

(l)     the entry by this Court of an order granting relief from or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to any entities other than the Prepetition Secured Parties with respect to the Prepetition Collateral or the Collateral with a value in excess of $1,000,000 or without which the Debtors' ability to operate their business in the ordinary course would be materially and adversely affected, in either case without the written consent of the Prepetition Lenders;

(m)     the failure by the Debtors to make any payment required pursuant to this Interim Order when due and such failure shall remain unremedied for more than two (2) business days after receipt by the Debtors of written notice thereof from the Collateral Agent;

(n)     the failure by the Debtors to deliver to any of the Notice Parties any of the documents or other information reasonably required to be delivered to such applicable party pursuant to this Interim Order within five business days following a request therefor from any of the Notice Parties pursuant to the terms of this Interim Order; or any such documents or other information shall contain a material misrepresentation;

(o)     the Debtors' failure to comply with an Approved Budget except with respect to Permitted Variance;

(p)     the failure of the Debtors to observe or perform any of the material terms or material provisions contained herein;

(q)     the filing by the Debtors of a plan of liquidation or a plan of reorganization that is not conditioned upon the payment of the Prepetition Secured Obligations and the Debtors' obligations with respect to the Adequate Protection granted hereunder, in full in cash, no later than the effective date of such chapter 11 plan (unless a chapter 11 plan is filed that provides for alternative treatment with the written consent of the Prepetition Secured Parties);

(r)     the Debtors sell, transfer, lease, encumber, or otherwise dispose of any portion of the Prepetition Collateral or Cash Collateral outside the ordinary course of business, other than the use of Cash Collateral pursuant to the terms of the Approved Budget (subject to the Permitted Variance) and the terms of this Interim Order, without the prior written consent of the Prepetition Lenders (and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Lenders);

(s)     the entry of an order pursuant to which the Prepetition Secured Parties cease to have a valid and perfected first priority security interest in and lien on any Prepetition Collateral, junior only to any Permitted Prior Liens; or

(t)     this Interim Order has been reversed, vacated, stayed, appealed or is subject to a request for re-argument, or rehearing in a way that, if granted, would be adverse to the Prepetition Secured Parties, without the express written consent (which consent may be documented by e-mail) of the Prepetition Lenders.

12.     ***Remedies Upon Termination Event***.   Upon the occurrence or during the continuation of a Termination Event, the Prepetition Lenders may send written notice (the "**Remedies Notice**"), email being sufficient, to counsel to the Debtors, counsel to any Official Committee (if appointed), and the U.S. Trustee (the "**Remedies Notice Parties**") that a Termination Event has occurred, and, prior to taking any enforcement action, the Prepetition Lenders shall file with the Court and seek an emergency hearing (the "**Stay Relief Hearing**") upon no less than five days' notice (unless the Debtors and the Prepetition Lenders agree to request that the Court conduct the Stay Relief Hearing on shorter notice) to the Remedies Notice Parties (the "**Remedies Notice Period**") to determine whether a Termination Event has occurred. The Debtors shall not object to the Stay Relief Hearing being held on such shortened notice. During the Remedies Notice Period, the Debtors may object to the termination of the consensual use of Cash Collateral on any basis and may seek the non-consensual use of Cash Collateral, subject to the Prepetition Secured Parties' rights to object to, or otherwise oppose, any such non-consensual use and to seek adequate protection in connection therewith. Notwithstanding anything to the contrary in the foregoing or otherwise in this Interim Order, during the Remedies Notice Period, the Debtors may use Cash Collateral to pay only such amounts set forth in the Approved Budget that the Debtors have determined in good faith are in the ordinary course and are critical to the preservation of the Debtors and their estates or are otherwise approved in advance in writing by the Prepetition Lenders. Following the Stay Relief Hearing, and upon the Court's determination that a Termination Event has occurred, the Court may fashion an appropriate remedy. Prior to entry of the relevant order, the Prepetition Lenders shall not (i) terminate, restrict and/or revoke

the Debtors' right under this Interim Order to use any Cash Collateral, (ii) freeze monies or balances in the Debtors' accounts, (iii) otherwise enforce any and all rights against the Prepetition Collateral, and (iv) take any other actions or exercise any other rights or remedies permitted under this Interim Order or applicable law.

13.    ***Payments Free and Clear***.    Pursuant to the provisions of this Interim Order, any and all payments or proceeds remitted to the Prepetition Secured Parties, pursuant to the provisions of this Interim Order or any subsequent order of this Court, shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through or on behalf of the Debtor) or section 552(b) of the Bankruptcy Code.

14.    ***Limitation on Charging Expenses Against Collateral***.    Subject to entry of the Final Order, all rights to surcharge the interests of the Prepetition Secured Parties in any Prepetition Collateral or any Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Chapter 11 Cases.

15.    ***No Marshalling; 552(b) Waiver***.    Subject to entry of the Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral, as the case may be.  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the

Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Collateral.

16.   ***Reservation of Rights of the Prepetition Secured Parties***.   Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant to this Interim Order shall not be deemed an admission that the interests of such Prepetition Secured Parties are indeed adequately protected, and is without prejudice to the right of the Prepetition Secured Parties to seek additional relief with respect to the use of Prepetition Collateral (including Cash Collateral), or to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.   Nothing herein shall be deemed to waive, modify, or otherwise impair the respective rights of the Prepetition Secured Parties under the Prepetition Loan Documents or under applicable law, and the Prepetition Secured Parties expressly reserve all of their respective rights and remedies whether now existing or hereafter arising under the Prepetition Loan Documents and/or applicable law.   Without limiting the foregoing, nothing contained in this Interim Order shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Prepetition Secured Parties for any Diminution in Value during the Chapter 11 Cases.

17.   ***Rights Preserved***.   Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the Prepetition Secured Parties under the Prepetition Loan Documents, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the

Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Interim Order.

18.    ***Modification of Automatic Stay***.  The Debtors are authorized to perform all acts and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

19.    ***Survival***.  The provisions of this Interim Order shall be binding upon any trustee appointed during the Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Chapter 11 Cases to chapter 7 cases, dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise.  The terms and provisions of and the priorities in payments, liens, and security interests granted pursuant to, this Interim Order, shall continue notwithstanding any conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the dismissal of any of the Chapter 11 Cases.  Payments made pursuant

to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in any of the Chapter 11 Cases or any Successor Case.

20.    ***Effect of Stipulations on Third Parties***.  The Debtors' stipulations, admissions, agreements, and releases contained in paragraph F of this Interim Order (collectively, the "**Stipulations**") shall be immediately binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes.  The Debtors' Stipulations shall be binding upon all other creditors, parties in interest and all of their respective successors and assigns (including without limitation, any Official Committee, if appointed) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, in all circumstances and for all purposes, unless: (a) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the earlier of (x) 60 calendar days after entry of this Interim Order, and (y) solely for any Official Committee, 45 calendar days after the appointment of any Official Committee, (ii) any such later date as has been agreed to, in writing, by the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents, and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within the time period set forth in this paragraph (the time period established by the foregoing clauses (i), (ii), and (iii), the "**Challenge Period**") (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Loan Documents, the Prepetition Secured Obligations, or the Prepetition Liens, or (B) otherwise asserting or prosecuting any claim or Cause

of Action, including any action for preferences, fraudulent transfers or conveyances, recharacterization, subordination, disgorgement, offset, objections, contests, defenses, or other challenges (collectively, the "**Challenges**") against any of the Prepetition Secured Parties or any of their Representatives (in each case, in their respective capacities as such) arising under, in connection with, or related to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Collateral, and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided, however*, as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished; *provided, further*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such Challenge or claim and any Challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released, and barred; *provided, further*, that any motion filed with the Court seeking requisite standing and authority to pursue a Challenge must include a draft complaint attached thereto.  If no such Challenge is timely and properly filed during the Challenge Period or if the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' Stipulations contained in this Interim Order shall be binding on all parties in interest, including, without limitation, the Official Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party in interest, whether acting or seeking to act on behalf of the Debtors' estates or otherwise, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases, (b) the Prepetition Secured Obligations shall constitute allowed claims, the Prepetition Loan Documents shall be deemed valid and enforceable, and the Prepetition Liens shall be deemed to be legal, valid, binding, continuing, perfected, and

enforceable, in each case, against each of the Debtors in the Chapter 11 Cases and any Successor

Cases, and (c) the Prepetition Secured Obligations, the Prepetition Liens, and the Prepetition Loan

Documents shall not be subject to any other or further claim, Cause of Action, or Challenge,

whether arising under the Bankruptcy Code or otherwise, by the Official Committee (if any), any

non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party in

interest, whether acting or seeking to act on behalf of the Debtors' estates or otherwise, including,

without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for

any of the Debtors in the Chapter 11 Cases or any Successor Cases, against any of the Prepetition

Secured Parties or any of their Representatives (in each case, in their respective capacities as such)

arising under, in connection with, or relating to the Prepetition Loan Documents, the Prepetition

Liens, or the Prepetition Secured Obligations, and each such claim, Cause of Action, or Challenge

shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during

the Challenge Period, the Stipulations shall nonetheless remain binding and preclusive (as

provided in the second sentence of this paragraph) on any Official Committee (if any), and on any

other person or entity, except to the extent that such Stipulations were expressly and successfully

challenged in such Challenge as set forth in a final, non-appealable order of court of competent

jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the

Bankruptcy Code), including the Official Committee (if any) or any other person or entity,

standing or authority to pursue any claim or Cause of Action belonging to the Debtors or their

estates and all rights to object to such standing are expressly reserved.

21.     ***Limitations on Use of Cash Collateral or Other Funds***.  Notwithstanding anything

contained in this Interim Order or any other order of the Court to the contrary, no Prepetition

Collateral, Cash Collateral, proceeds of any of the foregoing, or any other amounts may be used

(nor shall any professional fees or expenses be applied, financed, or paid in connection with), directly or indirectly, by any of the Debtors, any Official Committee or any trustee or other estate representative (including a chapter 11 or chapter 7 trustee) appointed or elected in the Chapter 11 Cases or any Successor Cases, or any other person or entity, in connection with: (a) any investigation (including by way of examinations or discovery proceedings, whether formal or informal), initiation, preparation, assertion, initiation, joining or prosecution of any claims, Causes of Action, challenges defenses, suits, counterclaims, contested matters, adversary proceedings or other litigation (whether in law or equity, for monetary, injunctive or other affirmative relief) against any of the Prepetition Secured Parties or their Representatives with respect to any transaction, occurrence, omission, action or other matter arising under, in connection with or related to this Interim Order, the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the Prepetition Loan Documents, or the transactions contemplated herein or therein, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to, or seeking to avoid, marshal, subordinate or recharacterize, in whole or in part, any of the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Obligations, the Prepetition Liens, or the Prepetition Secured Obligations or any of the obligations, liens, security interests, claims, rights granted hereunder or under the Prepetition Loan Documents, including, in each case, without limitation, any claim or Cause of Action seeking or asserting (i) so-called "lender liability", (ii) Avoidance Actions, or (iii) the modification of any of the rights, remedies, priorities, privileges, protections or benefits granted to the Prepetition Secured Parties under this Interim Order or under any of the Prepetition Loan Documents, (b) objecting to or seeking to prevent, hinder or otherwise delay any of the Prepetition

Secured Parties' assertion, enforcement, exercise of remedies or realization upon any Prepetition

Collateral in accordance with this Interim Order or the Prepetition Loan Documents, (c) seeking

or applying to the Court for authority to approve superpriority claims or grant liens or security

interests in any portion of the Prepetition Collateral that are senior to or *pari passu* with the

Adequate Protection Liens, the Adequate Protection Claims, or the Prepetition Liens, unless all

Prepetition Secured Obligations have been paid in full or as otherwise agreed in writing by the

Prepetition Agent, or (d) seeking to pay any amount on account of any claims arising before the

commencement of these Chapter 11 Cases, unless such payments are agreed to in writing by the

Prepetition Agent (or are otherwise included in the Approved Budget); *provided, however*, that no

more than $25,000 (the "**Investigation Budget**") in the aggregate may be used for fees and

expenses incurred (to the extent allowed by the Court at any time) by the Official Committee (if

any) to investigate, but not object to, challenge, prosecute or litigate (including by way of formal

discovery), the validity, enforceability, perfection and priority of the Prepetition Liens, the

Prepetition Secured Obligations, and the Prepetition Loan Documents during the Challenge Period.

22.     ***No Third-Party Rights.***  Except as explicitly provided for herein, this Interim Order

does not create any rights for the benefit of any third party, creditor, equity holder, or any direct,

indirect, or incidental beneficiary.

23.     ***Binding Effect.***  Immediately upon entry of this Interim Order by the Court, subject

to paragraph 20 of this Interim Order, the provisions of this Interim Order, including all findings

and conclusions of law herein, shall be binding upon all parties in interest in the Chapter 11 Cases

and any Successor Cases, including without limitation, the Prepetition Secured Parties, the Official

Committee (if appointed), or any other committee appointed in the Chapter 11 Cases and any

Successor Cases, and their respective successors and assigns, including any chapter 11 trustee or

chapter 7 trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtor or with respect to the property of the estate of any of the Debtors, and shall inure to the benefit of the each of the Debtors, the Prepetition Secured Parties, and their respective successors and assigns; *provided that*, except to the extent expressly set forth in this Interim Order, the Prepetition Secured Parties shall have no obligation to permit the use of Prepetition Collateral (including Cash Collateral) by any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

24.    ***Proofs of Claim***.  The Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or any of the Successors Cases in order to assert claims for payment in respect of the Adequate Protection Obligations or Prepetition Secured Obligations. The Stipulations, acknowledgments, and provisions of this Interim Order are deemed sufficient to and do constitute timely filed proofs of claim in respect of such claims arising under the Adequate Protection Obligations or Prepetition Secured Obligations against each of the applicable Debtors. Any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Chapter 11 Cases shall not apply to the Prepetition Secured Parties or the Prepetition Secured Obligations; *provided* that, notwithstanding any order entered by the Court establishing a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the Prepetition Agent (on behalf of itself and the other Prepetition Secured Parties), may (but is not required to) in its discretion file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or any Successor Cases, and any such proof of claim may (but is not required to be) filed as one consolidated master proof of claim in the Debtors' lead

Chapter 11 Case against all of the Debtors, which shall be deemed to have been filed against each and every Debtor.  Such consolidated or master proofs of claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable party, which instruments, agreements, or other documents will be provided upon reasonable written request to the Prepetition Agent.  Any proof of claim filed by or on behalf of any of the Prepetition Secured Parties shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

25.    ***Effectiveness***.  This Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

26.    ***Headings***.  The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

27.    ***Retention of Jurisdiction***.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

28.    ***Final Hearing***.  The Final Hearing shall be held on _____, 2025 at __:____ (prevailing Central Time), and any objections to the final relief sought in the Motion shall be filed with the Court no later than _____, 2025.

29.    ***Notice of Entry of Interim Order.***  The Debtors shall promptly serve copies of this

Interim Order to the parties have been given notice of the Interim Hearing, to any party that has

filed a request for notices with this Court and to any Official Committee (if appointed).


Dated: _____, 2025
          Trenton, New Jersey

_____
          UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Initial Budget**

# Illustrative Six Week Cash Flow Model

| Week # | 1 | 2 | 3 | 4 | 5 | 6 | Total |
|---|---|---|---|---|---|---|---|
| Week End | 06/13 | 06/20 | 06/27 | 07/04 | 07/11 | 07/18 | |
| Amounts in $'000s | | | | | | | |
| Servicing Receipts | - | 9,212 | - | - | - | 1,919 | 11,131 |
| Non - Servicing Receipts | 5,000 | - | - | 10,000 | 4,000 | - | 19,000 |
| | | | | | | | |
| Payroll & Benefits | (293) | (504) | (60) | (504) | (60) | (504) | (1,925) |
| Accrued PTO | - | - | - | - | - | - | - |
| Rent/Utilities | (252) | - | - | (328) | - | - | (581) |
| Software & IT | (322) | - | (147) | - | (304) | - | (773) |
| Miscellaneous | (400) | (500) | (375) | (375) | (375) | (375) | (2,400) |
| Total Operating Expenses | (1,267) | (1,004) | (582) | (1,207) | (739) | (879) | (5,679) |
| | | | | | | | |
| Professional Fees | (1,270) | (1,354) | (1,020) | (1,250) | (1,100) | (1,208) | (7,203) |
| Non-Operating Expenses | (190) | - | - | - | (189) | - | (379) |
| US Trustee Fees | (50) | - | - | (50) | - | - | (100) |
| Total Non-Operating Expenses | (1,510) | (1,354) | (1,020) | (1,300) | (1,289) | (1,208) | (7,682) |
| | | | | | | | |
| Total Expenses | (2,777) | (2,358) | (1,602) | (2,507) | (2,028) | (2,087) | (13,360) |
| | | | | | | | |
| Net Cash Flow | 2,223 | 6,854 | (1,602) | 7,493 | 1,972 | (168) | 16,771 |
| | | | | | | | |
| Total Beginning Cash Balance | 20,488 | 22,711 | 29,565 | 27,963 | 35,455 | 37,427 | 20,488 |
| Net Cash Flow | 2,223 | 6,854 | (1,602) | 7,493 | 1,972 | (168) | 16,771 |
| Total Ending Cash Balance | 22,711 | 29,565 | 27,963 | 35,455 | 37,427 | 37,259 | 37,259 |
| Less Restricted Cash (AR Control) | 10,499 | 10,499 | 10,499 | 19,749 | 23,449 | 23,449 | 23,449 |
| Total Unrestricted Cash | 12,212 | 19,066 | 17,464 | 15,706 | 13,978 | 13,810 | 13,810 |
| Less Reserves | 8,307 | 8,998 | 8,998 | 9,748 | 10,048 | 10,192 | 10,192 |
| Total Available Cash | 3,905 | 10,068 | 8,466 | 5,959 | 3,930 | 3,618 | 3,618 |
| | | | | | | | |
| Reserves | | | | | | | |
| Payroll | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| Insurance | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Sales Tax | 5,707 | 6,398 | 6,398 | 7,148 | 7,448 | 7,592 | 7,592 |
| Minimum Cash Balance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Total Reserves | 8,307 | 8,998 | 8,998 | 9,748 | 10,048 | 10,192 | 10,192 |

1

# **EXHIBIT B**

(Forbearance Agreement)

# FORBEARANCE, SUPPORT AND JOINDER AGREEMENT

## June 9, 2025

Reference is made to that certain Loan Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), dated as of October 1, 2024, among POWIN ENERGY INTERMEDIATE, LLC, a Delaware limited liability company, POWIN, LLC, a Delaware limited liability company (the "Borrower"), the Subsidiary Guarantors party thereto, the financial institutions from time to time party thereto as lenders (the "Lenders") and GLAS USA LLC, as Administrative Agent and Collateral Agent for the Lenders (in such capacities, the "Agent"). Reference is also made to the Borrower's wholly owned subsidiary, Powin Project LLC, a New Jersey limited liability company ("ProjectCo").

## RECITALS

WHEREAS, pursuant to that certain Notice of Default, dated March 24, 2025 (the "Default Notice"), the Agent (i) notified the Borrower of the occurrence and continuation of the Specified Defaults (as defined in the Default Notice and used herein with the same meaning), all of which Specified Defaults remain outstanding and (ii) terminated all Commitments and declared all Loans, together with all other outstanding Obligations, immediately due and payable;

WHEREAS, pursuant to (i) that certain Shifting Control Notice, dated March 24, 2025, the Collateral Agent exercised control of certain Controlled Accounts, and notified JPMorgan Chase Bank, N.A. of such exercise, in accordance with the Blocked Account Control Agreement dated as of November 12, 2024, by and among the Borrower, the Collateral Agent, and JPMorgan Chase Bank, N.A. and (ii) that certain Instruction – Shifting Control Notice, dated March 24, 2025, the Collateral Agent exercised control of certain Controlled Accounts, and notified HSBC Bank USA, National Association of such exercise, in accordance with the Deposit Account Control Agreement, dated as of October 1, 2024, by and among the Borrower, Powin China Holdings 2 LLC, the Collateral Agent, and HSBC Bank USA, National Association (the exercise of such rights, the "Exercise Over Controlled Accounts");

WHEREAS, the Borrower has requested that the Agent and the Lenders temporarily agree to forbear from exercising their right, pursuant to the Exercise Over Controlled Accounts, to direct the Agent to direct disbursements from the Core Controlled Account during the period (the "Forbearance Period") from the Effective Date (as defined below) until 11:59 p.m. (New York time) on June 11, 2025 (the "Forbearance Termination Date");

WHEREAS, in each case, subject to the terms and conditions herein, solely during the Forbearance Period, the Agent (acting at the direction of the Required Lenders) and the Lenders have agreed to temporarily forbear from exercising their right to direct disbursements from the Core Controlled Account;

WHEREAS, the Borrower is considering various alternatives to address the Specified Defaults, including various capital raising initiatives and the possibility of seeking relief under title 11 of the United States Code (the "Bankruptcy Code");

1

WHEREAS, in consideration of the Lenders' consent to the Borrower's continued use of the Lenders' cash collateral during the Forbearance Period, the Borrower has agreed to condition such use pursuant to a mutually-agreeable budget (the "Budget"), and, in the event of a subsequent chapter 11 petition under the Bankruptcy Code by the Borrower, a mutually-agreeable cash collateral order (the "Cash Collateral Order");

WHEREAS, the Lenders have agreed to the Borrower's request to use cash collateral pursuant to the Budget and/or the Cash Collateral Order, as the case may be;

WHEREAS, the Lenders have agreed to release liens on certain Collateral (as defined in the Loan Agreement) as may be transferred pursuant to settlement transactions with the Borrower's customers acceptable to the Lenders (the "Lien Releases"); and

WHEREAS, the Borrower recently formed ProjectCo, has requested approval to transfer certain assets to ProjectCo, and the Lenders and the Agent are willing to approve such request subject to the terms and conditions set forth herein;

NOW, THEREFORE, for and in consideration of the premises and mutual agreements herein contained and for the purposes of setting forth the terms and conditions of this forbearance, support and joinder agreement (this "Forbearance Agreement") and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be bound, hereby agree as follows:

SECTION 1.   DEFINITIONS. All capitalized terms not otherwise defined herein are used as defined in the Loan Agreement. The rules of interpretation set forth in Section 1.3 of the Loan Agreement shall apply as if fully set forth herein, *mutatis mutandis.*

SECTION 2.   FORBEARANCE.

2.1.    Effective as of the Effective Date, subject to the terms and conditions of this Forbearance Agreement and without waiving the Specified Defaults or any other Default or Event of Default that may now exist or which may occur hereafter, the Agent (acting at the direction of the Required Lenders) and the Lenders hereby agree, until the Forbearance Termination Date, to forbear from exercising their right to direct disbursements from the Core Controlled Account solely on account of the Specified Defaults; provided that the Agent and the Lenders shall be free to exercise such right arising on account of the Specified Defaults at any time on or after the Forbearance Termination Date.

2.2.    Neither the Lenders nor the Agent shall have any obligation to extend the Forbearance Period, or enter into any other waiver, forbearance, amendment or agreement, and the Lenders' and the Agent's agreement to permit any such extension, or enter into any other waiver, forbearance, amendment or agreement shall be subject to the sole and absolute discretion of the Lenders. Any agreement by the Agent and Lenders to extend the Forbearance Period, if any, or waive the occurrence of the Forbearance Termination Date must be set forth in writing and signed by the Agent and the Required Lenders. Each of the Loan Parties acknowledges and agrees that the Agent and the Lenders have not made any assurances concerning any possibility of an extension of the Forbearance Period or waiver of any occurrence of the Forbearance Termination Date. Each of the Loan Parties

2

acknowledges and agrees that the running of any statutes of limitation or doctrine of laches applicable to any claims or causes of action that the Agent or any Lender may be entitled to take or bring in order to enforce its rights and remedies against any Loan Party (or any of their respective assets) is, to the fullest extent permitted by law, tolled and suspended during the Forbearance Period.

2.3.    From and after the Forbearance Termination Date, the agreement of the Lenders and the Agent hereunder to forbear as set forth in Section 2.1 above shall immediately terminate without the requirement of any demand, presentment, protest, or notice of any kind, all of which are hereby waived by each Loan Party. Each Loan Party hereby agrees that, from and after the Forbearance Termination Date, the Lenders and the Required Lenders (by directing the Agent) may at any time, or from time to time, in their sole and absolute discretion, exercise against any Loan Party (and any property constituting Collateral under the Loan Documents) any and all of their rights, remedies, powers and privileges under the Loan Documents, including pursuant to the Exercise Over Controlled Accounts, all of which rights, remedies, powers and privileges are fully reserved by each Lender and the Agent.

2.4.    The parties hereto agree that this Forbearance Agreement shall (a) be effective only in the specific instance and for the purpose for which it is given, (b) does not apply to any Default or Event of Default other than the Specified Defaults or to any other failure by the Borrower or any other Loan Party to perform its obligations under or otherwise comply with the Loan Agreement or any other Loan Document that may exist on, or may arise after, the date hereof, (c) shall not constitute nor be deemed to constitute a forbearance by the Lenders party hereto to anything other than the specific purpose set forth herein, (d) shall not constitute a custom or course of dealing among the parties hereto and (e) shall not affect the rights of the Agent and the Lenders to demand compliance by the Loan Parties with all terms and conditions of the Loan Documents (after giving effect to this Forbearance Agreement). Except as expressly set forth herein, this Forbearance Agreement shall not by implication or otherwise limit, impair, constitute a consent to or waiver of or otherwise affect the rights and remedies of the Agent or any Lender under the Loan Agreement or any other Loan Document, and shall not alter, modify, amend or in any way affect any of the terms, conditions, obligations, covenants or agreements contained in the Loan Agreement or any other Loan Document.

SECTION 3.    <u>CONSENT FEE</u>. In exchange for entry into this Forbearance Agreement, the consensual use of cash collateral, the consent to the ProjectCo Contribution (as defined below), and the Lien Releases, the Borrower agrees to pay (or cause to be paid) to the Lenders a fee (the "<u>Consent Fee</u>") in an amount equal to $1,500,000, which Consent Fee shall be earned, due and payable in full on the date hereof and shall not be refundable under any circumstances. The Consent Fee shall be paid in kind and added to the outstanding principal amount of the Loans on the Effective Date, and all references to "Loan" or "Loans", to "Borrowing", to "principal" or the "principal amount" of the Loans, to "Obligation" or "Obligations" and other terms of like import shall include the Consent Fee.

SECTION 4.   CONSENT TO PROJECTCO CONTRIBUTION.

4.1.    The Lenders hereby consent to the Borrower transferring, assigning, and conveying to ProjectCo, upon satisfaction of the conditions set forth in Section 4.2, all intellectual property rights, assets, and licenses necessary for ProjectCo to provide ongoing services to Borrower's existing and future customers, with ProjectCo assuming all of Borrower's rights and obligations under any technology escrow agreements between Borrower and its customers and Borrower entering into services agreement with ProjectCo to provide necessary employees and related support to ProjectCo in pursuing service contracts with customers, as more fully presented to the Lenders by Huron Transaction Advisory, LLC on the date of this Forbearance Agreement (the "ProjectCo Contribution"). Without limitation of Section 4.2, the Borrower and ProjectCo hereby acknowledge and agree that any attempted transfer by the Borrower to ProjectCo of any of the property described in the immediately preceding sentence prior to the execution and delivery by ProjectCo of an Intellectual Property Security Agreement to the Agent in form and substance satisfactory to the Lenders shall be void *ab initio*.

4.2.    Prior to or simultaneously with any acquisition of assets by ProjectCo or any transfer of assets from any Loan Party to ProjectCo after the Effective Date, ProjectCo shall execute and deliver the following to the Agent, each in form and substance satisfactory to the Lenders:

(i)    a certificate representing the Pledged Ownership Interests of ProjectCo along with (A) an irrevocable proxy substantially in the form of Exhibit D-1 to the Loan Agreement and (B) an executed transfer document substantially in the form of Exhibit D-2 to the Loan Agreement;

(ii)    in the case of any acquisition or transfer of Intellectual Property, an executed Intellectual Property Security Agreement in favor of the Agent;

(iii)    supplements to each applicable Schedule to the Loan Agreement which include all information required to be provided therein with respect to, and only with respect to, ProjectCo (and the Schedules to the Loan Agreement shall, without further action, be amended on the date of such delivery to include the information contained in each such supplement); and

(iv)    resolutions or other limited liability company action of the ProjectCo (certified by a secretary (or equivalent officer) of ProjectCo), incumbency certificates of Authorized Officers of ProjectCo evidencing the identity, authority and capacity of each Authorized Officer thereof authorized to act as an Authorized Officer in connection with this Forbearance Agreement and the other Loan Documents to which ProjectCo is a party or is to be a party on the Effective Date, and true and complete copies of the organizational documents of ProjectCo (certified by a secretary (or equivalent officer) of ProjectCo).

4

SECTION 5.   <u>PROJECTCO JOINDER</u>.

5.1.   By its execution of this Forbearance Agreement, ProjectCo hereby (i) confirms that the representations and warranties contained in Sections 4.1, 4.2(d), 4.2(e), 4.4, 4.6, 4.7(a), 4.10, 4.11, 4.14, 4.15(b), 4.16, 4.17, 4.19, 4.20 and 4.22(a) of the Loan Agreement are true and correct in all material respects (other than representations and warranties which are already qualified as to Material Adverse Effect or materiality, which are true and correct in all respects) as to ProjectCo as of the Effective Date, except for representations and warranties that expressly refer to an earlier date which shall be true and correct as of such earlier date and (ii) agrees that, from and after the effective date of this Forbearance Agreement, ProjectCo shall be a party to the Loan Agreement and shall be bound as a Guarantor and as a Subsidiary Guarantor by all the provisions thereof, and shall comply with and be subject to all of the terms, conditions, covenants, agreements and obligations set forth therein and applicable to the Guarantors, including, without limitation, the guaranty of the Obligations made by the Guarantors, jointly and severally with the other Guarantors pursuant to Section 10 of the Loan Agreement, the terms of which are incorporated herein, *mutatis mutandis*; <u>provided</u> that ProjectCo shall be liable under such guaranty for the maximum amount of such liability that can be incurred thereunder without rendering such guaranty, as it relates to ProjectCo, voidable under applicable law relating to fraudulent conveyance or fraudulent transfer, and not for any greater amount. ProjectCo hereby agrees that from and after the Effective Date, each reference to a "Guarantor", a "Subsidiary Guarantor" or a "Loan Party" and each reference to the "Guarantors", the "Subsidiary Guarantors" or the "Loan Parties" in the Loan Agreement shall include ProjectCo.

5.2.   Without limiting the foregoing, ProjectCo hereby pledges and grants to the Agent (in its capacity as Collateral Agent), for the benefit of the Lenders, a security interest in and Lien on all of its right, title and interest in and to ProjectCo's Collateral. ProjectCo acknowledges and agrees that the Obligations are secured by all of the Collateral according to, and otherwise on and subject to, the terms and conditions of the Loan Agreement to the same extent and with the same force and effect as if ProjectCo had originally been one of the existing Guarantors under the Loan Agreement and had originally executed the same as such an existing Guarantor.

5.3.   ProjectCo represents and warrants to the Agent and Lenders that (a) the execution, delivery and performance of this Forbearance Agreement and each other Loan Document to which it is a party have been duly authorized by all necessary limited liability company action, and do not and will not conflict with or result in any violation or breach of or default under (or constitute an event that, with notice or lapse of time or both, would constitute a default under) or give rise to a right of termination, cancellation, modification or acceleration of any obligation, to any put or call or similar rights, or to loss of a benefit under, any provision of its Organizational Documents and (b) this Forbearance Agreement and each other Loan Document to which it is a party constitutes a legal, valid and binding obligation of ProjectCo, enforceable against its in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws affecting the enforcement of creditors' rights and subject to general equitable principles.

5.4.    ProjectCo acknowledges that (i) it has received a copy of the Loan Agreement and each other Loan Document and that it has read and understands the terms thereof and (ii) it will, independently and without reliance upon the Agent, any Lender or any of their respective Affiliates, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Loan Agreement, the other Loan Documents or any documents or agreements to be delivered thereunder.

5.5.    ProjectCo hereby authorizes the Agent or its designee to file any UCC financing statements, intellectual property, security agreements, or other instruments as the Agent (acting at the direction of the Required Lenders) may consider necessary or advisable in order to ensure that the security interest of the Agent and the Lenders in the Collateral of ProjectCo is valid and perfected.

SECTION 6.    <u>CONDITIONS PRECEDENT</u>. This Forbearance Agreement shall become effective on the date upon which each of the following conditions precedent have been deemed satisfied, or waived in writing, by the Lenders and, as applicable, the Agent (the "<u>Effective Date</u>"):

6.1.    The Agent shall have received counterparts of this Forbearance Agreement executed by the Lenders, the Borrower and the Subsidiary Guarantors (including, for the avoidance of doubt, ProjectCo);

6.2.    The representations and warranties of (i) the Borrower and the other Loan Parties contained in Section 6 hereof and (ii) the ProjectCo in Section 5.1 and Section 5.4 shall be true and correct in all material respects (other than representations and warranties which are already qualified as to materiality, which shall be true and correct in all respects) on and as of the Effective Date, as if made on and as of such date, except for representations and warranties that expressly refer to an earlier date which shall be true and correct as of such earlier date; and

6.3.    The Agent shall have received a financing statement (Form UCC-1 or equivalent) with respect to ProjectCo in proper form for filing under the UCC or other appropriate filing offices of each jurisdiction as may be necessary to perfect the security interests purported to be created by the Loan Agreement (as supplemented pursuant to this Forbearance Agreement).

SECTION 7.    <u>REPRESENTATIONS AND WARRANTIES</u>. Each Loan Party hereby represents and warrants that, as of the Effective Date:

7.1.    (a) such Loan Party has all requisite corporate or other organizational power and authority to execute, deliver and perform its obligations under this Forbearance Agreement, and (b) this Forbearance Agreement has been duly authorized, executed and delivered by all necessary corporate or limited liability company action, as applicable, on the part of such Loan Party; and

7.2.    this Forbearance Agreement constitutes legal, valid and binding obligation of such Loan Party, enforceable against it in accordance with its terms, in each case except as enforceability may be limited by applicable domestic or foreign bankruptcy, insolvency,

6

reorganization, moratorium or similar laws affecting the enforcement of creditors' rights and subject to general equitable principles.

SECTION 8.   RELEASE. Each of the Borrower and the other Loan Parties, on behalf of itself and each of its Subsidiaries and its or their successors, assigns, and agents (collectively, the "Releasing Parties"), in consideration of the Agent's and Lenders' execution and delivery of this Forbearance Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, unconditionally, freely, voluntarily and, after consultation with counsel, to the fullest extent permitted by applicable law, hereby expressly forever releases, waives and forever discharges (and further agrees not to allege, claim or pursue) any and all claims (including, without limitation, cross-claims, counterclaims, and rights of setoff and recoupment), rights, causes of action (whether direct or derivative in nature), demands, suits, costs, expenses, and damages or defense, of any nature, description, or kind whatsoever, whether arising in contract, in tort, in law, in equity or otherwise, based in whole or in part on facts or otherwise, whether known, unknown or subsequently discovered, fixed or contingent, direct or indirect, joint and/or several, secured or unsecured, due or not due, liquidated or unliquidated, asserted or unasserted, or foreseen or unforeseen, which any of the Releasing Parties might otherwise have or may have against the Agent or any of the Lenders, or each of the foregoing's respective past, present, or future affiliates, agents, principals, managers, managing members, members, stockholders, controlling persons (within the meaning of the United States federal securities or bankruptcy laws), directors, officers, employees, attorneys, consultants, advisors, trusts, trustors, beneficiaries, heirs, executors, administrators or other representatives (collectively, the "Releasees"), in each case on account of any conduct, condition, act omission, event, contract, liability, obligation, demand, covenant, promise, indebtedness, claim, right, cause of action, suit, damage, defense, judgment, circumstance or matter of any kind whatsoever which existed, arose or occurred at any time prior to the date of this Forbearance Agreement relating to any of the Loan Documents, this Forbearance Agreement and/or the transactions contemplated thereby or hereby, including any actual or alleged performance or non-performance of any of the Releasees, in each case, except to the extent arising from the fraud, gross negligence or willful misconduct of such Releasee or any of its Related Parties, in each case, as determined in a final non-appealable judgment or order of a court of competent jurisdiction (any of the foregoing, a "Claim" and collectively, the "Claims"). Each of the Releasing Parties hereby expressly acknowledges and agrees that the agreements in this paragraph are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Claims, and that with respect to such Claims, that it waives, to the fullest extent permitted by applicable law, any and all provisions, rights, and benefits conferred by any applicable U.S. federal or state law, or any principle of U.S. common law, that would otherwise limit a release or discharge of any unknown Claims pursuant to this paragraph. Furthermore, each of the Releasing Parties hereby absolutely, unconditionally and irrevocably covenants and agrees with and in favor of each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released and/or discharged by the Releasing Parties pursuant to this paragraph. In entering into this Forbearance Agreement, each Releasing Party expressly disclaims any reliance on any representations, acts, or omissions by any of the Releasees and hereby agrees and acknowledges that the validity and effectiveness of the releases set forth in this paragraph does not depend in any way on any such representation, acts and/or omissions or the accuracy, completeness, or validity thereof. Notwithstanding anything to the contrary, the provisions of this paragraph, including the foregoing release, covenant and waivers, shall survive and remain in full force and effect regardless

7

of the consummation or non-consummation of transactions contemplated hereby, the repayment or prepayment of any of the Loans or Obligations, or the termination of the Loan Agreement, this Forbearance Agreement, any other Loan Document or any provision hereof or thereof.

SECTION 9.    AGENT DIRECTION; INDEMNIFICATION. The execution and delivery of this Forbearance Agreement by the undersigned Lenders, constituting all of the Lenders, shall constitute written direction by the Lenders to the Agent to acknowledge, agree and to execute and deliver this Forbearance Agreement and all other agreements, certificates or filings expressly contemplated by, and delivered in connection with, this Forbearance Agreement subject to and in accordance with the terms hereof.

SECTION 10. MISCELLANEOUS.

10.1.   Loan Document. The parties hereto agree that (i) the Forbearance Agreement is deemed a Loan Document (as defined in the Loan Agreement) and all references to a Loan Document in the Loan Agreement and the other Loan Documents (including, without limitation, all such references in the representations and warranties in the Loan Agreement and the other Loan Documents) shall be deemed to include this Forbearance Agreement and (ii) the Consent Fee is deemed an Obligation (as defined in the Loan Agreement) and all referenced to Obligations in the Loan Agreement and the other Loan Documents (including, without limitation, all such references in the representations and warranties in the Loan Agreement and the other Loan Documents) shall be deemed to include the Consent Fee.

10.2.   References to the Loan Agreement. Upon the effectiveness of this Forbearance Agreement, each reference in the Loan Agreement to "this Agreement", "this Loan Agreement", "hereunder", "hereof", "herein", or words of like import shall mean and be a reference to the Loan Agreement as amended hereby, and each reference to the Loan Agreement in any other document, instrument or agreement executed and/or delivered in connection with the Loan Agreement shall mean and be a reference to the Loan Agreement giving effect to this Forbearance Agreement.

10.3.   Reaffirmation of Obligations. Each Loan Party hereby (i) affirms and confirms the covenants and agreements contained in each Loan Document to which it is a party, including, in each case, such covenants and agreements as in effect immediately after giving effect to this Forbearance Agreement, (ii) affirms and confirms its guarantee of (or, in the case of the Borrower, its principal obligation with respect to) the Obligations pursuant to the Loan Agreement, (iii) affirms and confirms its prior pledges and grants of Liens on the Collateral to secure the Obligations and other commitments under the Loan Agreement and the other Loan Documents to which it is a party and (iv) agrees that (x) the Loan Agreement and each Loan Document to which it is a party shall continue to be in full force and effect in accordance with and subject to the terms and conditions and such Loan Agreement and Loan Documents, after giving effect to this Forbearance Agreement and (y) all guarantees, Liens, pledges, grants and other commitments thereunder shall continue to be in full force and effect and shall secure the Obligations.

8

10.4.    <u>No Other Changes</u>. Except as expressly modified pursuant to this Forbearance Agreement, the Loan Agreement, each other Loan Document and all other documents, instruments and agreements executed and/or delivered in connection therewith shall remain in full force and effect and are hereby ratified and confirmed.

10.5.    <u>No Waiver; Reservation of Rights</u>. Neither this Forbearance Agreement, the Lenders' agreement to forbear from direct disbursements from the Core Controlled Account pursuant to Section 2 hereof or any other past forbearance or waiver, consent or amendment with respect to the Loan Documents shall constitute a forbearance with respect to, waiver or amendment of any other obligation under or in respect of the Loan Agreement and the other Loan Documents. Without limiting the generality of the foregoing, (i) the Agent and the Lenders reserve all of their rights and remedies under the Loan Agreement (including, without limitation, the right to take any or all of the actions specified in Section 8 of the Loan Agreement), the other Loan Documents and applicable law; (ii) the Agent and Lenders have not agreed to waive any existing or future Defaults or Events of Default under the Loan Agreement; (iii) except as provided in Section 2 hereof, the Agent and Lenders are not obligated in any way, and have not agreed, to forbear from enforcing rights or remedies under the Loan Agreement or the Loan Documents, or under any applicable law, all rights with respect to which are expressly reserved by the Agent and Lenders; and (iv) neither the passing of time nor any inaction, action, omission, statement, or discussion by or on the part of, the Agent and the Lenders in relation to any matters referred to herein or any other matter arising under the Loan Documents, and no past or future forbearance on the part of the Agent and the Lenders, shall be taken in any way as prejudicing, or should be viewed as a limitation upon or waiver of, the absolute right and privilege of the Lenders in exercising remedies that currently or may in the future exist. Further, any past or future discussions (including, without limitation, the preparation, distribution, response or failure to respond to any proposals, term sheets, letters of intent, memoranda or other documents describing any discussions or proposals) among the Agent and Lenders (and/or any of their respective Related Parties), on the one hand, and the Borrower and the other Loan Parties and/or any of their Affiliates, and/or any other person or entity, on the other hand, shall not constitute an agreement or the basis on which the Borrower and the other Loan Parties may claim reliance or course of conduct other than as expressly specified and set forth in a definitive written agreement executed by the Agent, the Lenders and the Borrower and the other Loan Parties (and then solely as expressly provided therein).

10.6.    <u>Governing Law; Consent to Jurisdiction</u>. This Forbearance Agreement, and any claim, controversy or dispute arising under or related to or in connection therewith, the relationship of the parties, and/or the interpretation and enforcement of the rights and duties of the parties will be governed by the laws of the State of New York , both in interpretation and performance (and whether in law or in equity, whether in contract or tort or otherwise). The Loan Parties irrevocably and unconditionally agree that they will not commence any action, litigation or proceeding of any kind or description, whether in law or equity, whether in contract or in tort or otherwise, against any Agent or Lender in any way relating to this Forbearance Agreement or the transactions relating hereto, in any forum other than the courts of the State of New York sitting in New York County, and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, and each of the parties hereto irrevocably and unconditionally submits to the

9

jurisdiction of such courts and agrees that all claims in respect of any such action, litigation or proceeding may be heard and determined in such New York State court or, to the fullest extent permitted by Applicable Law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Forbearance Agreement shall affect any right that the Agents or Lenders may otherwise have to bring any action or proceeding relating to this Forbearance Agreement against the Loan Parties or their properties in the courts of any jurisdiction. The Loan Parties irrevocably and unconditionally waive, to the fullest extent permitted by Applicable Law, any objection that any of them may now or hereafter have to the laying of venue of any action or proceeding relating to this Forbearance Agreement in any court referred to in this Section 10.6. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by Applicable Law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

10.7.   <u>Waiver of Jury Trial</u>. SECTION 11.5 OF THE LOAN AGREEMENT IS INCORPORATED BY REFERENCE HEREIN AS IF SUCH SECTION APPEARED HEREIN, *MUTATIS MUTANDIS*.

10.8.   <u>Successors and Assigns</u>. This Forbearance Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns as provided in the Loan Agreement.

10.9.   <u>Headings</u>. Section headings in this Forbearance Agreement are included for convenience of reference only and shall in no way affect the interpretation of this Forbearance Agreement.

10.10.   <u>Multiple Counterparts</u>. This Forbearance Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same agreement, and any of the parties hereto may execute this Forbearance Agreement by signing any such counterpart. Delivery of an executed counterpart of a signature page of this Forbearance Agreement by telecopy or other electronic imaging means (e.g. "pdf" or "tif") shall be effective as delivery of a manually executed counterpart of this Forbearance Agreement.

10.11.   <u>Invalid Provisions</u>**.** If any provision of this Forbearance Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of the Loan Agreement, such provision shall be fully severable and this Forbearance Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Forbearance Agreement, and the remaining provisions of this Forbearance Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Forbearance Agreement, unless such continued effectiveness of this Forbearance Agreement, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

[Signatures Follow]

10

**IN WITNESS WHEREOF,** the parties hereto have caused this Forbearance Agreement to be duly executed as of the day and year first above written.

<u>**BORROWER:**</u>

**POWIN, LLC**

By:   _Gerard Uzzi_
Name:  Gerard Uzzi
Title:  Chief Restructuring Officer

<u>**PROJECTCO:**</u>

**POWIN PROJECT LLC**

By:   _Gerard Uzzi_
Name:  Gerard Uzzi
Title:  Chief Restructuring Officer

<u>**SUBSIDIARY GUARANTORS:**</u>
**POWIN ENERGY OPERATING HOLDINGS, LLC**

By:   _Gerard Uzzi_
Name:  Gerard Uzzi
Title:  Chief Restructuring Officer

**POWIN ENERGY OPERATING, LLC**

By:   _Gerard Uzzi_
Name:  Gerard Uzzi
Title:  Chief Restructuring Officer

**PEOS HOLDINGS, LLC**

By:   _Gerard Uzzi_
Name:  Gerard Uzzi
Title:  Chief Restructuring Officer

[Signature Page to Forbearance Agreement]

**POWIN CHINA HOLDINGS 1, LLC**

By: _____

Name:  Gerard Uzzi

Title:  Chief Restructuring Officer

**POWIN CHINA HOLDINGS 2, LLC**

By: _____

Name:  Gerard Uzzi

Title:  Chief Restructuring Officer

**CHARGER HOLDINGS, LLC**

By: _____

Name:  Gerard Uzzi

Title:  Chief Restructuring Officer

**POWIN ENERGY ONTARIO STORAGE, LLC**

By: _____

Name:  Gerard Uzzi

Title:  Chief Restructuring Officer

**POWIN EKS SELLCO LLC**

By: _____

Name:  Gerard Uzzi

Title:  Chief Restructuring Officer

[Signature Page to Forbearance Agreement]

**LENDERS**:

**FORETHOUGHT LIFE INSURANCE COMPANY**

By: _____
Name: Samuel Mencoff
Title: Authorized Signatory

**COMMONWEALTH ANNUITY AND LIFE INSURANCE COMPANY**

By: _____
Name: Samuel Mencoff
Title: Authorized Signatory

**FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY**

By: _____
Name: Samuel Mencoff
Title: Authorized Signatory

**FS KKR CAPITAL CORP.**

By: _____
Name: Samuel Mencoff
Title: Authorized Signatory

**KKR FS INCOME TRUST**

By: _____
Name: Samuel Mencoff
Title: Authorized Signatory

**KKR FS INCOME TRUST SELECT**

By: _____
Name: Samuel Mencoff
Title: Authorized Signatory

[Signature Page to Forbearance Agreement]

**ADMINISTRATIVE AGENT AND**
**COLLATERAL AGENT:**

**GLAS USA LLC**

By: _____

Name: Annette Marsula

Title:  Vice President

[Signature Page to Forbearance Agreement]