**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
        leisenberg@pashmanstein.com
        dsklar@pashmanstein.com

-and-

Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
        rstieglitz@mayerbrown.com
        ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on
behalf of Rabbitbrush Solar, LLC, Chaparral Springs,
LLC, and Antelope Valley BESS, LLC, (2) Longroad
Energy Holdings, LLC, on behalf of Serrano Solar, LLC,
Sun Streams PVS, LLC, and Sun Streams Expansion,
LLC, and (3) DTE Electric Company*

In Re:

POWIN, LLC, *et al.*,[1]

        Debtors.

Chapter 11

Case Number: 25-16137 (MBK)

Jointly Administered

Hearing Date: Time and Date to be set by the
Court in accordance with the Order
Shortening Time

Objection Deadline: Time and Date to be set
by the Court in accordance with the Order
Shortening Time

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC
[5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger
Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating
Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550
SW 115th Avenue Tualatin, OR 97062.

**NOTICE OF MOTION FOR EMERGENCY MOTION OF LICENSEES FOR ENTRY
OF AN ORDER (I) COMPELLING THE DEBTORS TO COMPLY WITH SECTION
365(N)(4) OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE
PROTECTION UNDER SECTION 363(E) OF THE BANKRUPTCY CODE, AND (III)
<u>GRANTING OTHER APPROPRIATE RELIEF</u>**

**PLEASE TAKE NOTICE,** that Leeward Renewable Energy, LLC on behalf of
Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC (collectively,
the "<u>Leeward Licensees</u>"), Longroad Energy Holdings, LLC on behalf of Serrano Solar, LLC, Sun
Streams PVS, LLC, and Sun Streams Expansion, LLC (collectively, the "<u>Longroad Licensees</u>"),
and DTE Electric Company ("<u>DTE</u>" and together with the Leeward Licensees and the Longroad
Licensees, the "<u>Licensees</u>"), by and through its undersigned counsel, submits the attached
*Emergency Motion of Licensees for Entry of an Order (I) Compelling the Debtors to comply with
Section 365(n)(4) of the Bankruptcy Code, (II) Granting Adequate Protection under Section 363(e)
of the Bankruptcy Code, and (III) Granting Other Appropriate Relief* (the "<u>Motion to Compel</u>").

**PLEASE TAKE FURTHER NOTICE** that concurrently with the filing of the Motion to
Compel, the Licensees will be filing the *Application for Order Shortening Time for Notice of (A)
the Emergency Motion of Licensees for Entry of an Order (I) Compelling the Debtors to Comply
with Section 365(n)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section
363(e) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief and (B) Motion for
Entry of an Order Authorizing Licensees to Redact and File Under Seal Confidential Information
Contained in the Energy Supply Agreements and Long Term Services Agreements in Connection
With Licensees' Motion to Compel* (the "<u>Motion for Shortened Time</u>").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in
the Motion to Compel shall: (i) be in writing; (ii) state with particularity the basis of the objection;
and (iii) be filed with the Clerk of the United States Bankruptcy Court in accordance with D.N.J.

LBR 9013-1.  If you do not want the Court to enter an order granting the relief requested in the

Motion to Compel, or if you want the Court to consider your views on an objection, then you or

your attorney must file with the Court a written request for a hearing or response or answer

explaining your position **on or before the objection deadline to be set by the Court in**

**connection with the order on the Motion for Shortened Time**. You must also mail a copy of the

objection to:

> **PASHMAN STEIN WALDER HAYDEN, P.C.**
> John W. Weiss
> Leah M. Eisenberg
> David E. Sklar
> 21 Main Street, Suite 200
> Hackensack, New Jersey 07601
> Email:  jweiss@pashmanstein.com
>        leisenberg@pashmanstein.com
>        dsklar@pashmanstein.com
>
> -and-
>
> **MAYER BROWN LLP**
> Joaquin M. C de Baca
> Richard A. Stieglitz
> Youmi Kim
> 1221 Avenue of the Americas
> New York, New York 10020-1001
> Email:  jcdebaca@mayerbrown.com
>        rstieglitz@mayerbrown.com
>        ykim@mayerbrown.com

**PLEASE TAKE FURTHER NOTICE** you must attend the hearing scheduled to be held

on **the date and time established in the order on the Motion for Shortened Time** before the

Honorable Chief Judge Michael B. Kaplan, 402 East State Street, Trenton, New Jersey 08608,

Courtroom #8 via Zoom.  If you do not take these steps, the Court may decide that you do not

oppose the relief sought in the Motion to Compel and may enter an order granting the Motion to

Compel.

Dated: June 21, 2025
Hackensack, NJ

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ Leah M. Eisenberg*
John W. Weiss
Leah M. Eisenberg
David E. Sklar
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email:  jweiss@pashmanstein.com
          leisenberg@pashmanstein.com
          dsklar@pashmanstein.com
-and-

Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
          rstieglitz@mayerbrown.com
          ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Energy Holdings, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
         leisenberg@pashmanstein.com
         dsklar@pashmanstein.com


-and-


Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
         rstieglitz@mayerbrown.com
         ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Energy Holdings, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company*

In Re:

POWIN, LLC, *et al.*,[1]

         Debtors.

Chapter 11

Case Number: 25-16137 (MBK)

Jointly Administered

Hearing Date: Time and Date to be set by the Court in accordance with the Order Shortening Time

Objection Deadline: Time and Date to be set by the Court in accordance with the Order Shortening Time

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**EMERGENCY MOTION OF LICENSEES FOR ENTRY OF AN ORDER
(I) COMPELLING THE DEBTORS TO COMPLY WITH SECTION 365(N)(4) OF THE
BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION UNDER
SECTION 363(E) OF THE BANKRUPTCY CODE, AND (III) GRANTING OTHER
APPROPRIATE RELIEF**

Leeward Renewable Energy, LLC on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC (collectively, the "Leeward Licensees"), Longroad Energy Holdings, LLC on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC (collectively, the "Longroad Licensees"), and DTE Electric Company ("DTE" and, together with the Leeward Licensees and the Longroad Licensees, the "Licensees"), by and through their undersigned counsel, hereby move the Court for an order (a) compelling the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") to comply with section 365(n)(4) of title 11 of the United States Code (the "Bankruptcy Code") with respect to the intellectual property license granted by certain Debtors to the Licensees, (b) granting adequate protection under section 363(e) of the Bankruptcy Code with respect to the intellectual property license granted by certain Debtors to the Licensees, and (c) granting other appropriate relief.[2]  In support of this motion (this "Motion"), the Licensees respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Licensees have each maintained a contractual relationship with one of the Debtors, Powin, LLC ("Powin"), for several years, and, pursuant to various agreements entered into with Powin, the Licensees were granted broad intellectual property Licenses (as defined below).  The Licensees are the owners and operators of renewable energy projects that rely on Powin's battery systems and the related Licenses to operate their projects.  These Licenses are

---

[2] Although this Motion was filed jointly by the Licensees through counsel, the Leeward Licensees, Longroad Licensees, and DTE are unaffiliated.

2

critical to the continued and safe operations of the Licensees' projects, and, without Powin's continued performance under the Licenses or, in the alternative, a release of the underlying intellectual property subject to the Licenses, the Licensees will face imminent and irreparable harm.

2.      Recognizing the unique harm that could befall a licensee of a debtor's intellectual property in the wake of the debtor's bankruptcy filing, Congress codified certain safeguards in the form of, among other things, section 365(n)(4) of the Bankruptcy Code.  Under section 365(n)(4), until the debtor rejects the contract granting the intellectual property license, which has not yet happened in these cases, the debtor shall, to the extent provided in such contract, either (i) perform such contract or (ii) provide the licensee with the underlying intellectual property.  11 U.S.C. § 365(n)(4).  Perhaps recognizing how critical intellectual property is to licensees of it, Congress made the protections afforded by section 365(n)(4) mandatory.

3.      The Licensees have made numerous attempts to work with the Debtors to negotiate a consensual transfer of all of the subject intellectual property to allow them to continue to operate their businesses efficiently and safely and to preserve limited estate resources.  Despite good-faith efforts to resolve this issue out of court, Powin has neither fully performed under the Licenses, nor released the intellectual property to the Licensees, to the detriment of the Licensees' projects and their businesses, leaving the Licensees no other option than to file this Motion.[3]

## JURISDICTION AND VENUE

4.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and this Motion in

---

[3] The Debtors relayed to certain Licensees their intention to release escrowed intellectual property to the relevant Licensees.  However, this has yet to occur, and out of an abundance of caution (and the need for other relief not resolved by the release of escrowed intellectual property), the Licensees filed this Motion.

this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief

requested herein are sections 365(n), 363(e), and 105(a) of the Bankruptcy Code.

## BACKGROUND

5.      On June 9 and 10, 2025 (the "Petition Date"), the Debtors commenced the above-

captioned jointly administered voluntary cases under chapter 11 of title 11 of the Bankruptcy Code.

6.      No trustee, examiner, or official committees have been appointed in these Chapter

11 Cases as of the date hereof.

**A.  The Licenses.**

7.      The Licensees are the owners and operators of renewable energy projects

throughout the United States.

8.      Prior to the Petition Date, each of the Licensees and Powin entered into an energy

supply agreement or energy system supply agreement (collectively, the "ESAs") pursuant to which

Powin agreed to provide an energy storage system for certain solar plus energy storage projects

developed by the respective Licensees (the "Projects").  In addition to the ESAs, certain Licensees

entered into long-term services agreements (the "LTSAs") with Powin.  A table listing the specific

ESAs and LTSAs and the relevant provisions thereof is attached hereto as **Exhibit A**.[4]

9.      Pursuant to each respective ESA and LTSA, Powin granted each applicable

Licensee a broad license to use, among other things, any of Powin's intellectual property in and to

the technology for certain energy storage system equipment (collectively, the "Licenses").  *See*

Exh. A.

---

[4] By their own terms, the ESAs and LTSAs are confidential, and, as such, Exhibit A is filed with redactions.  Copies
of the ESAs and LTSAs will be made available to the Court but are too voluminous to attach to this Motion.

10.      Certain ESAs also required Powin to enter into an escrow agreement, pursuant to which Powin agreed to hold in escrow important intellectual property necessary for the operation of the applicable Licensee's project sites. *Ibid.*

11.      In furtherance of the foregoing, certain of the Licensees were added as beneficiaries under that certain PRAXIS US Two Party Master Escrow Agreement (PRAXIS Account Number 191112) (the "IP Escrow Agreement"), dated as of December 17, 2019, by and between Powin Energy Corporation and PRAXIS Technology Escrow, LLC ("Escrow Agent").  Pursuant to the IP Escrow Agreement, the intellectual property granted to certain Licensees under the applicable ESAs was deposited into escrow.

**B.  Powin's Failures To Perform Under the Licenses and the Resulting Imminent and Irreparable Harm to the Licensees and the Safe Operations of their Projects.**

12.      The Licensees rely on the licensed intellectual property as part of a number of safeguards to ensure safe operation of their energy storage systems.  Continuous access to administrative credentials needed to run unique instances of programs, software, source codes, related instructions, and vendor support is an important redundancy for the Projects to maintain a safe environment, preserve grid reliability, and comply with other applicable standards.  Among other things, the Projects cannot operate at peak efficiency without full access to key software tools, such as Powin StackOS (including the Kobold platform) and CCUI.  *See Declaration of Gerard Uzzi in Support of Emergency First Day Motions of the Debtors* 16-17 [ECF No. 13] (the "First Day Declaration") ("[t]he Debtors' proprietary cloud-based technology and related servicing functionality is highly valuable to their Customers," and "[t]he termination of the Debtors LTSA Line of Business would have a severely detrimental impact on Customers who are largely incapable of replacing those functions without the Debtors' assistance").  The Licensees are committed to maintaining operational safety, and access to these materials would allow them to

maintain all safeguards. Powin is currently refusing to provide access that would enable parties to take those protective steps, while simultaneously levying the potential disappearance of LTSA services as supposed motivation to join its new customer program.

13.    As part of the ESAs, LTSAs, and Licenses, Powin is contractually obligated to maintain the health and proper functioning of the batteries at the Projects. To fulfill this obligation, upon information and belief, Powin relies primarily on Powin StackOS and other key software for the continued operation of the machinery at the Projects and to ensure that the batteries receive necessary maintenance. *See also* First Day Declaration 15. These batteries are essential to the Projects' operations and require consistent and attentive care to perform at the levels contractually mandated and necessary to meet the energy output commitments certain Licensees have made to third parties.

14.    Powin has failed, however, to perform its maintenance duties as required under the ESAs, LTSAs, and the Licenses. In response, the Licensees have made diligent efforts to mitigate Powin's failures by attempting to perform the necessary battery maintenance themselves. Despite these efforts, though, the Licensees are unable to adequately maintain the batteries without administrator access to key software, such as Kobold, which Powin has not yet provided. The Licensees are not asking for the ability to have access to the entire Powin master control system— merely permissions sufficient to administer their own individual Projects.[5]

15.    In addition, the Licensees are not receiving sufficient support from the Debtors' remote operations center (the "ROC"), which is meant to operate around the clock to respond to any systems issues as they arise.[6] Upon information and belief, a material portion of the personnel

---

[5] For the avoidance of doubt, the Licensees are not asking for the ability to see or control other projects.
[6] *See* Powering a Cleaner Tomorrow. Safely: Powin's Approach to Battery Safety, https://powin.com/wp-content/uploads/2024/02/Safety_White-Paper_Powin.pdf.

assigned to the Debtors' ROC were terminated by the Debtors. *See Class Action Adversary Proceeding Complaint for Violation of Warn Act 29 U.S.C. § 2101, Et Seq.* [ECF No. 55] (alleging that certain Debtors terminated an estimated 200 employees). As a result of this diminished support from the ROC, when coupled with the Licensees' lack of administrator access to key software, the Licensees are unable to effectively troubleshoot any issues on the Projects.

16. Each day that Powin neglects its contractual obligations or withholds sufficient access to key software such as Kobold and other intellectual property, the risk of damage to the batteries increases, and the overall capabilities of the battery system are further degraded. This ongoing failure not only jeopardizes the health of the batteries, but also threatens certain Licensees' ability to fulfill their obligations to third parties, thereby causing immediate significant and irreparable harm.

17. Furthermore, Powin has acknowledged that its battery energy storage systems cannot function safely in the absence of Powin's intellectual property. *See* First Day Declaration 6 ("[w]ithout Powin's Stack OS™, these [battery energy storage systems] cannot operate safely"). The Debtors' ongoing failure to provide administrator access to Kobold and other critical intellectual property exposes the Projects to imminent risks. The continued lack of sufficient access to the intellectual property hinders the ability to prevent safety incidents and magnifies the potential for irreparable damage to property, public safety, and the Licensees' business interests. Immediate relief is therefore necessary to prevent further harm.

## **REQUESTED RELIEF**

18. The Licensees therefore respectfully request that the Court enter an order (i) compelling the Debtors to comply with section 365(n)(4) of the Bankruptcy Code by:

    a. Performing under the ESAs, LTSAs, and the IP Escrow Agreement, including, but not limited to:

(a) Performing all tasks as required by the intellectual property licenses;

(b) Maintaining and ensuring availability of key software (such as Powin StackOS, Kobold, and CCUI) and such other necessary intellectual property that will be identified to the Debtors; and

(c) Providing sufficient administrative access to all onsite and cloud-based software and API keys used, including necessary credentials and backups, and providing access to any future upgrades; or

b. Providing all licensed intellectual property to the Licensees, including turning over sufficient administrator access of key software (such as Powin StackOS, Kobold, and CCUI) to the Licensees in a manner that allows the Licensees to independently operate such software, as well as providing all other licensed intellectual property as identified by the Licensees in the future, and

c. Immediately releasing the intellectual property escrowed pursuant to the IP Escrow Agreement to the applicable Licensees or, with respect to Licensees that are not party to the IP Escrow Agreement, releasing intellectual property that is substantially similar to the escrowed intellectual property,

(ii) granting adequate protection under section 363(e) in the form of the relief specified in subparagraph (i) of this section, and (iii) granting such other relief as is just and proper.[7]

## **BASIS FOR REQUESTED RELIEF**

19. Section 365(n)(4) of the Bankruptcy Code provides:

Unless and until [a debtor] rejects such contract, on the written request of the licensee [a debtor] shall—

---

[7] On June 17, 2025, the Debtors filed the *Notice of Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [ECF No. 88] (the "Rejection Motion"). The Licensees reserve all rights, including under sections 365(n)(2) and (n)(3) of the Bankruptcy Code with respect to the Rejection Motion.

(A) to the extent provided in such contract or any agreement supplementary to such contract—

(i) perform such contract; or

(ii) provide to the licensee such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law) held by [the debtor]; and

(B) not interfere with the rights of the licensee as provided in such contract, or any agreement supplementary to such contract, to such intellectual property (including such embodiment), including any right to obtain such intellectual property (or such embodiment) from another entity.

11 U.S.C. § 365(n)(4).

20.     The language of section 365(n)(4) is mandatory: the debtor *shall* perform under the contract or provide the applicable intellectual property.  Accordingly, with respect to executory contracts under which a debtor is a licensor of intellectual property, or agreements supplementary thereto, like the Licenses, the debtor-licensor is expressly required under section 365(n)(4)— unless and until such license is rejected—to fulfill all contractual obligations, or, at a minimum, to provide the licensee with access to the intellectual property.

## I.     THE DEBTORS MUST COMPLY WITH SECTION 365(N)(4).

21.     Courts uniformly treat licenses and related agreements that impose ongoing obligations on both parties as executory contracts.  *See RPD Holdings, L.L.C. v. Tech Pharm. Servs. (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 848 (5th Cir. 2018) (holding that patent license is executory contract); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (holding that license agreement is an executory contract); *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 768 (Bankr. D.N.J. 2014) (discussing application of section 365 to intellectual property and trademark licenses).  As such, by their terms, the ESAs and the LTSAs are executory contracts.

22.    The ESAs and LTSAs expressly grant the applicable Licensees broad licenses to use the Debtors' intellectual property.  This comprehensive grant of intellectual property rights highlights the fundamental importance of such rights to the parties' relationship.

23.    The Licensees, each as licensee of a debtor's intellectual property, are thus entitled to the protections afforded by section 365(n) of the Bankruptcy Code.

24.    The same is true for the IP Escrow Agreement.  In the legislative history to section 365(n), an agreement like the IP Escrow Agreement is a quintessential example of an "agreement supplementary":

> It is also not unusual for the license agreement to be one of several agreements governing the working relationship between the licensor and licensee. . . .  To assure the licensee of access to such secret information at the defined time, the licensor may have agreed to turn over such information to a third party to be held in escrow until the triggering event.  The third-party escrow agent would be a party to such an agreement, and the agreement would be set forth in a document separate from the basic license.  Section 365(n)(1)(B), thus, speaks of the retention by the licensee of rights to the intellectual property under "any agreement supplementary to such contract."

S. Rep No. 100-505 at 9 (1988).

25.    The parties recognized the importance of the licensed intellectual property to the Projects and negotiated for contractual protections to ensure that the Licensees would retain the access and usage rights for which they bargained, regardless of any potential bankruptcy of Powin or Powin Energy Corporation.  The IP Escrow Agreement was established, in part, to safeguard the applicable Licensees' access and usage rights and ensure the Licensees' continued access to the necessary intellectual property, including in situations where the Debtors are at risk of not continuing their business operations.  The broad nature of the Licenses further ensures that the Licensees are entitled to both the materials held by the Escrow Agent under the IP Escrow Agreements and any other intellectual property needed to maintain and operate their Projects.  The

Debtors' failure to perform critical monitoring and maintenance services has created an immediate need for all such intellectual property.

26.    The Debtors have failed to perform their obligations under the ESAs, LTSAs, and the IP Escrow Agreement in direct contravention of section 365(n)(4)(B) of the Bankruptcy Code. Section 365(n)(4)(B) prohibits a debtor from interfering with a licensee's rights to the intellectual property. The Debtors' current failure to provide sufficient access to key software tools, and their failure to maintain the ROC, constitute interference and threaten imminent harm to the Projects. Without any other explanation as to why the Debtors are refusing to comply with the Licenses, the Licensees have been left to conclude that this failure may be designed to pressure the Licensees into paying for these required services and rights again as part of the "new" customer program. *See In re Crumbs Bake Shop, Inc.*, 522 B.R. at 770-71 (describing that section 365(n) was enacted to ensure that "the rights of an intellectual property licensee … cannot be unilaterally cut off") (quoting *In re Exide Technologies*, 607 F.3d 957, 965 (3d Cir. 2010)); *Sunbeam Prods. v. Chi. Am. Mfg., LLC*, 686 F.3d 372, 378 (7th Cir. 2012) (affirming bankruptcy court decision allowing rejection of license, because rejection "did not abrogate the licensee's contractual rights").

27.    Accordingly, pursuant to the plain and express language of section 365(n)(4) of the Bankruptcy Code, the Debtors must be compelled to abide by their statutory obligations to perform or provide such intellectual property to the Licensees.

## II.    THE PERFORMANCE OF THE LICENSES OR THE DELIVERY OF THE INTELLECTUAL PROPERTY TO THE LICENSEES IS NECESSARY TO PROTECT THE LICENSEES FROM IMMEDIATE AND IRREPARABLE HARM.

28.    The Licensees' continued and uninterrupted access to the licensed intellectual property—including adequate control credentials, software, source code, related documentation, and support—is not merely a contractual convenience, but essential to the reliable operation of the energy storage systems at issue. The Projects are highly complex, technologically advanced

11

facilities that depend on these intellectual property assets to maintain grid reliability and perform at an operational level required to meet the contractual and other commitments to third parties. Without this care, the Projects may face severe and unnecessary damage, and the Licensees are unable to perform critical functions necessary for the ongoing operation of the Projects. Therefore, any lapse in maintenance or system oversight risks not only equipment degradation, but also a significant loss of revenue.

29.     This is precisely the type of harm that section 365(n)(4) of the Bankruptcy Code is intended to prevent. The ongoing performance of the Licenses is critical to the continued operation of the Projects; nevertheless, Powin has not performed its obligations under the Licenses.

30.     But the law is clear: if the Debtors decline to comply with their obligation under section 365(n)(4)(A)(i) to "perform such contract," they are required, pursuant to section 365(n)(4)(A)(ii), to deliver the relevant intellectual property to the Licensees. Here, this includes delivering all necessary passwords and credentials to enable the Licensees' continued use of such intellectual property.

## III.    THE DEBTORS MUST GRANT ADEQUATE PROTECTION UNDER SECTION 363(E).

31.     The Licensees possess an interest in Powin's intellectual property by virtue of the Licenses and thus are entitled to adequate protection pursuant to section 363(e) of the Bankruptcy Code.

32.     Section 363(e) of the Bankruptcy Code provides, in relevant part:

at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

12

11 U.S.C. § 363(e).  The use of the word "shall" in this provision is unequivocal, imposing another mandatory obligation to ensure that any party holding an interest in property is afforded adequate protection.

33.    While the statute does not define "interest," courts have interpreted the term broadly and have determined that a license in intellectual property is such an interest.  *See Compak Companies, LLC v. Johnson*, 415 B.R. 334, 338-39 (N.D. Ill. 2009) (citing *FutureSource, LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002)) (noting that license in intellectual property is an interest in property).  Thus, the Licensees' interests in Powin's intellectual property, as established by the Licenses, must be adequately protected against any potential diminution in value resulting from the Debtors' use, sale, or lease of it.

34.    Pursuant to the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Enter Into New Customer Program with Existing Customers and (II) Granting Related Relief* 18 [ECF No. 15] (the "Customer Program Motion"), the Debtors intend to "transfer, assign, and convey to [a new wholly-owned subsidiary of Powin] IP Services Co all intellectual property rights, assets, and licenses necessary for IP Services Co to provide ongoing services to Powin's existing and future customers."  If the Debtors effectuate this transfer, they must provide adequate protection in the form of providing access to the relevant intellectual property to the Licensees, as required by section 363(e) of the Bankruptcy Code.

35.    Section 361 provides examples of adequate protection, including (i) periodic cash payments, (ii) additional or replacement liens, and (iii) such other relief as will result in the "indubitable equivalent" of the interest.  11 U.S.C. § 361(1)-(3).  However, these examples are not exclusive, as the Bankruptcy Code makes clear in its rules of construction that "'includes' and 'including' are not limiting."  11 U.S.C. § 102(3).  Adequate protection is determined by courts

"on a case by case basis." *Resolution Tr. Corp. v. Swedeland Dev. Grp. (In re Swedeland Dev. Grp.)*, 16 F.3d 552, 564 (3d Cir. 1994).

36.    The Bankruptcy Code does not define the term "indubitable equivalent."  Rather, the phrase originates from Judge Learned Hand's opinion in *Metropolitan Life Ins. Co. v. Murel Holding Corp. (In re Murel Holding Corp.)*, 75 F.2d 941, 942 (2d Cir. 1935).  *See In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 696 (Bankr. S.D. Tex. 2009) (discussing origins of the term "indubitable equivalent").  The legislative history clarifies that the concept is intentionally flexible, permitting courts to craft relief that ensures the protected party realizes the full value of its interest in the property at issue.  Specifically, Congress explained that an indubitable equivalent:

> gives the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity of the value of its interest in the property involved. Under this provision, the courts will be able to adapt to new methods of financing and to formulate protection that is appropriate to the circumstances of the case if none of the other methods would accomplish the desired result.

*Id*. (citing H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296).

37.    Thus, the indubitable equivalent of a party's interest in the property can take on many forms in an effort to realize the full value of such interest.  *Id.*; *see also Martin v. United States (In re Martin)*, 761 F.2d 472, 476, 477 (8th Cir. 1985) (indubitable equivalence requires "such relief as will result in the realization of value" and "must be completely compensatory") (internal quotations omitted).  Here, the Licensees' interest in the Licenses is essential to the ongoing operation of their businesses, as the underlying software and other intellectual property are necessary for the continued functioning of the Projects.  Unlike situations where a party's interest is in cash or tangible collateral, the Licensees cannot be adequately protected through periodic cash payments or replacement liens.  Instead, the only form of adequate protection that delivers the indubitable equivalent of the Licensees' interests is the continued performance of the

Licenses or, alternatively, the delivery of the underlying intellectual property and other related items in a manner that allows the Licensees to fully operate the Projects.

## RESERVATION OF RIGHTS

38.    The Licensees reserve all rights under any license of intellectual property with the Debtors or agreements supplementary thereto, including any rights under sections 365(n)(4) and 363(e), and under licenses and agreements not at issue in this Motion.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Licensees respectfully request that the Court enter an order (i) compelling the Debtors to comply with section 365(n)(4) of the Bankruptcy Code by:

    a.    Performing under the ESAs, LTSAs, and the IP Escrow Agreement, including, but not limited to:

        (a)    Performing all tasks as required by the intellectual property licenses;

        (b)    Maintaining and ensuring availability of key software (such as Powin StackOS, Kobold, and CCUI) and such other necessary intellectual property that will be identified to the Debtors;

        (c)    Providing sufficient administrative access to all onsite and cloud-based software and API keys used, including necessary credentials and backups, and providing access to any future upgrades; or

    b.    Providing all licensed intellectual property to the Licensees, including turning over sufficient administrator access of key software (such as Powin StackOS, Kobold, and CCUI) to the Licensees in a manner that allows the Licensees to independently operate such software, as well as providing all other licensed intellectual property as identified by the Licensees in the future, and

    c.    Immediately releasing the intellectual property escrowed pursuant to the IP Escrow Agreement to the applicable Licensees or, with respect to Licensees that are not party to the IP Escrow Agreement, releasing intellectual property that is substantially similar to the escrowed intellectual property,

(ii) granting adequate protection under section 363(e) in the form of the relief specified in subparagraph (i) of this section, and (iii) granting such other relief as is just and proper.

*[Remainder of page intentionally left blank.]*

Dated: June 21, 2025

Respectfully submitted,

/s/ Leah M. Eisenberg
John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
       leisenberg@pashmanstein.com
       dsklar@pashmanstein.com


-and-

Joaquin C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910
Email: JCdeBaca@mayerbrown.com
       RStieglitz@mayerbrown.com
       YKim@mayerbrown.com


*Counsel for Leeward Renewable Energy, LLC on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, Antelope Valley BESS, LLC, Longroad Energy Holdings, LLC on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, Sun Streams Expansion, LLC, and DTE Electric Company*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
        leisenberg@pashmanstein.com
        dsklar@pashmanstein.com

-and-

Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
        rstieglitz@mayerbrown.com
        ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Energy Holdings, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company*

Chapter 11

Case Number: 25-16137 (MBK)

Jointly Administered

In Re:

POWIN, LLC, *et al.*,[1]

        Debtors.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**ORDER (I) COMPELLING THE DEBTORS TO COMPLY WITH SECTION 365(N)(4) OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION UNDER SECTION 363(E) OF THE BANKRUPTCY CODE, AND (III) GRANTING OTHER <u>APPROPRIATE RELIEF</u>**

The relief set forth on the following pages, numbered three (3) through five (5), is

**ORDERED**.

(Page 3)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No.: | 25-16137(MBK) |
| Caption of Order: | Order (I) Compelling the Debtors to Comply with Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief |

Upon consideration of the motion (the "Motion")[2] of Leeward Renewable Energy, LLC on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC (collectively, the "Leeward Licensees"), Longroad Energy Holdings, LLC on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC (collectively, the "Longroad Licensees"), and DTE Electric Company ("DTE" and, together with the Leeward Licensees and the Longroad Licensees, the "Licensees") for entry of an order (this "Order") to compel the Debtors to comply with section 365(n)(4) of the Bankruptcy Code and grant adequate protection under section 363(e) of the Bankruptcy Code as more fully set forth in the Motion; and this Court having reviewed (a) the Motion, (b) any responses to the Motion, and (c) the exhibits and testimony admitted into evidence; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Order, therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

(Page 4)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No.: | 25-16137(MBK) |
| Caption of Order: | Order (I) Compelling the Debtors to Comply with Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief |

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      The Licensees are entitled to their rights under section 365(n) of the Bankruptcy Code with respect to the ESAs, LTSAs, and IP Escrow Agreement.

4.      The Debtors shall immediately comply with section 365(n)(4) with respect to the ESAs, LTSAs, and IP Escrow Agreement, as set forth in the Motion.

5.      To the extent that any Licensee identifies any necessary intellectual property previously granted by Powin under the existing intellectual property licenses and requests the release of such intellectual property to such Licensee following the entry of this Order, Powin shall promptly, but in any event within three calendar days, comply with such request.

6.      The Debtors shall immediately inform the Escrow Agent to immediately release the intellectual property that was held in escrow under the IP Escrow Agreement to the applicable Licensees or, with respect to Licensees that are not party to the IP Escrow Agreement, to immediately release intellectual property that is substantially similar to the escrowed intellectual property.

7.      This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

8.      The terms and conditions of this Order shall become immediately enforceable upon its entry.

(Page 5)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No.: | 25-16137(MBK) |
| Caption of Order: | Order (I) Compelling the Debtors to Comply with Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief |

9.     The Debtors and the Licensees, as applicable, are authorized and empowered to

take any and all actions necessary to implement the terms of the Motion and this Order.