Order Filed on June 26, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

Powin, LLC, *et al.*,[1]

               Debtors.

Chapter 11

Case No. 25-16137 (MBK)

(Jointly Administered)
(Emergency Hearing Requested)

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION OPERATIONAL CASH FLOW FINANCING; (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL DIP HEARING; AND (V) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered [3] through [58], is **ORDERED.**

**DATED: June 26, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

(Page 2)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

## Caption in Compliance with D.N.J. LBR 9004-1(b)

**DENTONS US LLP**

Tania M. Moyron (pro hac vice forthcoming)
Van C. Durrer, II (pro hac vice forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
        van.durrer@dentons.com


John D. Beck (pro hac vice forthcoming)
Sarah M. Schrag (pro hac vice forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
        sarah.schrag@dentons.com


*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com


Albert Togut (admitted pro hac vice)
Amanda C. Glaubach (admitted pro hac vice)
Eitan Blander (admitted pro hac vice)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com


*Proposed Counsel for Debtors and
Debtors in Possession*

| | |
|---|---|
| (Page 3) | |
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

Upon the motion (the "**Motion**")[2] of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364, 503, 506(c), 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 4001-3 and 9013-5 of the Bankruptcy Local Rules for the District of New Jersey (the "**Local Rules**"), seeking entry of this interim order (this "**Interim Order**"):

i.      authorizing Powin Project LLC, Powin, LLC, PEOS Holdings, LLC, Powin China Holdings 1, LLC, Powin China Holdings 2, LLC, Charger Holdings, LLC, Powin Energy Ontario Storage, LLC, Powin Energy Operating Holdings, LLC, and Powin Energy Operating, LLC, in their capacity as borrowers and as joint and several obligors (collectively, the "**Borrowers**" or the "**Debtors**"), to obtain new money postpetition financing under a secured superpriority debtor in possession term loan credit facility (the "**DIP Facility**"), which DIP Facility shall be available in an aggregate principal amount of up to $27,500,000.00 (the "**DIP Facility Amount**") including, (1) during the period (the "**Interim Period**") from the date hereof through and including the date of entry of the Final Order (as defined below) by this Court, new money term loans in the aggregate amount of up to $10,000,000 (the "**Initial Advance**"), (2) subject to and effective upon entry of the Final Order granting such relief, new money term loans in the aggregate amount of up to $5,000,000 (the "**Second Advance**"), (3) on August 4, 2025 (and subject to and effective upon the entry of the Final Order granting such relief), new money term loans in the aggregate amount of up to $7,500,000 (the, "**Third Advance**"), and (4) on August 4, 2025 (and subject to and effective upon the entry of the Final Order granting such relief), new money term loans in the aggregate amount of up to $5,000,000 (the "**Contingent DIP Loan**," and together with the Initial Advance, Second Advance and Third Advance, the "**DIP Loans**"); *provided*, *however*, that the available amount of the Contingent DIP Loan shall be reduced by (i) $4,000,000

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the DIP Documents, and the *Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (the "**Interim Cash Collateral Order**") [Docket No. 68].

(Page 4)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

to the extent the DIP Lender, in its capacity as the stalking horse bidder, agrees to assume the employment agreements of substantially all of Borrowers' employees as part of an Asset Sale, and (ii) $1,000,000 to the extent the DIP Lender, in its capacity as the stalking horse bidder, agrees to purchase substantially all of the Borrowers' inventory as part of an Asset Sale.  The DIP Loans shall be subject to the terms and conditions of this Interim Order, the Final Order, that certain financing term sheet, substantially in the form attached to the Motion as **Exhibit A** (the "**DIP Term Sheet**"), the Approved Budget, and, subject to entry of the Final Order, that certain Secured Superpriority Debtor in Possession Term Loan Credit Agreement (as the same may be amended, restated, supplemented, waived, or otherwise modified from time to time, which shall be filed with the Court at least three (3) calendar days prior to the Final Hearing, the "**DIP Credit Agreement**," and together with the Interim Order, the Final Order, the DIP Term Sheet, the Approved Budget, and all agreements, documents, and instruments delivered or executed in connection therewith, collectively, the "**DIP Documents**"), among the Borrowers and FlexGen Power Systems, LLC (including any successors and assigns selected in accordance with the DIP Credit Agreement, the "**DIP Lender**");

ii.     authorization for the Debtors to execute, deliver, and perform, as applicable, under the DIP Documents, and to perform such other and further acts as may be necessary, appropriate, or desirable in connection therewith;

iii.    authorizing the Debtors use proceeds of the DIP Loans solely in accordance with the budget annexed hereto as **Exhibit B** (the "**Initial Approved Budget**"), subject to the variances permitted under the DIP Credit Agreement and as otherwise provided herein and in the other DIP Documents;

iv.    granting valid, enforceable, binding, non-avoidable, and fully perfected liens on and security interests in substantially all of the property, assets, and other interests in property and assets of the Debtors as set forth herein, whether such property is presently owned or after-acquired, and each Debtors' estate as created by section 541 of the Bankruptcy Code, of any kind or nature whatsoever, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date (as defined below), subject and subordinate only to the Carve-Out (as defined below), and, any Permitted Encumbrance, including the Prepetition Liens (to the extent that the Prepetition Liens are valid, enforceable, perfected and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, and so long as the Prepetition Secured Obligations are outstanding), and the Adequate Protection Liens (to the extent that the Prepetition Liens are valid, enforceable,

(Page 5)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, and so long as the Prepetition Secured Obligations are outstanding), as applicable and pursuant to the terms and conditions set forth herein, including paragraph 19, and in the DIP Documents;

v.      granting administrative expense claims against each of the Debtors' estates to the DIP Lender with respect to the DIP Obligations (as defined below) over any and all administrative expenses and other claims of any kind or nature subject and subordinate only to the payment of the Carve-Out and the Adequate Protection Superpriority Claims (only to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, and so long as the Prepetition Obligations are outstanding) on the terms and conditions set forth herein and in the DIP Documents;

vi.     effective as of the Petition Date but subject to and effective upon entry of the Final Order granting such relief and to the extent set forth herein, waiving the Debtors' and the estates' right to surcharge against the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code;

vii.    effective as of the Petition Date but subject to and effective upon entry of the Final Order granting such relief and to the extent set forth herein, waiving the equitable doctrine of marshaling with respect to the DIP Collateral and the DIP Secured Parties;

viii.   scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion and the entry of a final order (the "**Final Order**"), and approving the form of notice with respect to the Final Hearing;

ix.     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility, the DIP Documents, and this Interim Order;

x.      waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order and providing for immediate effectiveness of this Interim Order; and

xi.     granting related relief.

This Court having considered the Motion, the exhibits thereto, the *Declaration of Gerard*

(Page 6)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

*Uzzi In Support of Debtors' Motion for Debtor-in-Possession Financing*, the *Declaration of Mitchener Turnipseed In Support of Debtors' Motion for Debtor-in-Possession Financing*, and the other evidence submitted or adduced and the arguments of counsel made at the interim hearing ("**Interim Hearing**") held pursuant to Bankruptcy Rule 4001(b)(2) on June 24, 2025; and this Court having heard and resolved or overruled any objections, reservations of rights, or other statements with respect to the relief requested at the Interim Hearing and in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates and otherwise is fair and reasonable and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement (subject to entry of the Final Order) and all other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and the Debtors having provided reasonable notice of the Motion under the circumstances as set forth in the Motion, and it appearing that no other or further notice of the Motion need be given; and after due deliberation and consideration, and for good and sufficient cause appearing therefor,

(Page 7)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No.: | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A. ___Petition Date___.  On June 9, 2025 (the "**Petition Date**"),[4] the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey ("**Court**"), commencing these Chapter 11 Cases.

B. ___Debtors in Possession___.  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C. ___Jurisdiction and Venue___.  The Court has jurisdiction over the Motion, these Chapter 11 Cases, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  The Debtors assert that venue for these Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b) and this Court may enter a final order consistent with Article III of the United States Constitution.  The bases for the relief sought in the Motion and granted in this Interim Order are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-3.

---

[3]  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

[4]  Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin LLC was filed on June 10, 2025, and the remaining Debtors were also filed on June 10, 2025 with the exception of Case No. 25-16136 (MBK), which was filed on June 9, 2025.

(Page 8)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

D.    **_Committee_**.  As of the date hereof, no official committee of unsecured creditors has been appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee, the "**Official Committee**").

E.    **_Final Hearing_**.  At the Final Hearing, the Debtors will seek entry of the Final Order, which shall be subject to the terms and conditions of the DIP Documents.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

F.    **_Purpose and Necessity of Financing_**.  The Debtors require the financing described in the Motion and as expressly provided in the DIP Documents and this Interim Order (i) to pay post-petition working capital and for other general corporate purposes of the Debtors, (ii) to pay current fees and expenses under the DIP Facility, (iii) to pay allowed administrative costs and expenses of the Chapter 11 Cases, including professional fees and expenses, (iv) to pay prepetition claims and expenses as authorized by the Court, (v) to pay any forecasted cash outlays included in any Approved Budget (as defined below), and (vi) as otherwise agreed, in each case, other than (iii) above, subject to the terms and conditions of this Interim Order and the DIP Documents.  If the Debtors do not obtain authorization to borrow under the DIP Documents and this Interim Order is not entered, the Debtors will suffer immediate and irreparable harm.

G.    **_No Credit Available on More Favorable Terms_**.  The Debtors are unable to obtain financing or other financial accommodations from sources other than the DIP Lender on terms more favorable than those provided under the DIP Facility, the DIP Documents, and this Interim Order.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative

(Page 9)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

expense under section 503(b)(1) of the Bankruptcy Code. However, the DIP Lender is willing to provide the DIP Facility on a junior basis pursuant to section 364(c), subject to the terms of the DIP Documents and this Interim Order. After considering all available alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best source of debtor-in-possession financing available to them at this time. Additionally, the terms of the DIP Facility are fair and reasonable and reflect the Debtors' exercise of prudent business judgment.

H.    ***Debtors' Stipulations Regarding DIP Facility***.[5]  Without prejudice to the rights of any other party in interest, and after consultation with their attorneys, and in exchange for and as a material inducement for receiving this DIP Facility, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree as follows in this paragraph H:

a.    *Use of Proceeds of the DIP Facility*.  As a condition to providing the DIP Facility, the DIP Lender requires, and the Debtors have agreed, that all proceeds of the DIP Loans shall be used or applied solely for the purposes expressly permitted in, and in a manner consistent with, the Approved Budget (subject to the Permitted Disbursement Variance) and the other DIP Documents, including (i) to pay post-petition working capital and for other general corporate purposes of the Debtors, (ii) to pay current fees and expenses under the DIP Facility, (iii) to pay allowed

---

[5]    The stipulations, and related rights of third parties regarding those stipulations, as to the Prepetition Secured Obligations and the validity of the Prepetition Liens can be found in the Interim Cash Collateral Order.

(Page 10)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

administrative costs and expenses of the Chapter 11 Cases, including professional fees and expenses, (iv) to pay prepetition claims and expenses as authorized by the Court, (v) to pay any forecasted cash outlays included in any Approved Budget (as defined below), and (vi) as otherwise agreed, in each case, other than (iii) above, subject to the terms and conditions of this Interim Order and the DIP Documents.

b. <u>*Approved Budget*</u>.  The Debtors have prepared and delivered to the DIP Lender the Initial Approved Budget, which has been approved by the DIP Lender.  The Initial Approved Budget is an integral part of this Interim Order, and the DIP Lender is relying, in part, upon the Debtors' agreement to comply with the Approved Budget (subject to the Permitted Disbursement Variance) in determining to enter into the DIP Facility and to allow the Debtors' use of proceeds of the DIP Facility in accordance with the terms of this Interim Order and the DIP Documents.

c. <u>*No Control*</u>.  The DIP Lender, by virtue of making the DIP Loans, is not deemed to be in control of the Debtors or their properties or operations, have authority to determine the manner in which any of the Debtors' operations are conducted, nor is a control person, insider (as defined in the Bankruptcy Code), "responsible person," or managing agent of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Liens, the DIP Obligations, the DIP Documents or the transactions contemplated by each.

d. <u>*No Claims, Defenses, or Causes of Action*</u>.  As of the date hereof, the Debtors and the Debtors' estates hold no (and hereby waive, discharge and release any) valid or enforceable

(Page 11)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

claims (as defined in the Bankruptcy Code), counterclaims, defenses, setoff rights, or any other causes of action of any kind, and waive, discharge and release any right they may have to (i) challenge the validity, enforceability, priority, security and perfection of any of the DIP Obligations, DIP Documents, or DIP Liens, respectively, and (ii) assert any and all claims (as defined in the Bankruptcy Code) or causes of action against the DIP Lender, the Indemnified Parties (defined below), or any of their respective current, former and future affiliates, subsidiaries, funds, or managed accounts, officers, directors, managers, managing members, members, equity holders, partners, principals, employees, representatives, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals, and the successors and assigns of each of the foregoing (in their capacities as such), in each case, whether arising at law or in equity, including any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

e. *Indemnification*. The DIP Lender has agreed to provide the DIP Facility, subject to the conditions set forth herein and in the DIP Documents, including indemnification of the Indemnified Parties[6] and the provisions of this Interim Order assuring that the DIP Liens and the various claims, Administrative Expense Claims and other protections granted pursuant to this

---

[6] "**Indemnified Parties**" means, collectively, the DIP Lender and its affiliates, its affiliates' successors and assigns and its respective current and former principals, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accounts, attorneys, officers, directors, employees, agents and other representatives.

(Page 12)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

Interim Order and the DIP Documents will not be affected, except as otherwise provided herein, by any subsequent reversal or modification of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility. The DIP Lender has acted in good faith in consenting to and in agreeing to provide the DIP Facility. The reliance of the DIP Lender on the assurances referred to above is in good faith.

f. *Releases*. The DIP Lender has agreed to provide the DIP Facility, subject to the conditions set forth herein and in the DIP Documents, including the absolute, unconditional and irrevocable release and forever discharge of any and all actions, causes of action, claims, counter-claims, cross-claims, defenses, accounts, objections, challenges, offsets or setoff, demands, liabilities, responsibilities, disputes, remedies, indebtedness, obligations, guarantees, rights, interests, indemnities, assertions, allegations, suits, controversies, proceedings, losses, damages, injuries, reimbursement obligations, attorneys' fees, costs, expenses or judgments of every type, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, pending or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, rule or regulation or by contract, of every nature or description whatsoever that the Debtors', their estates, predecessors, successors and assigns at any time had, now have or that their successors and assigns may have against any of the Released Parties[7] in connection with or related to the Debtors, their operations and businesses, this Interim Order, the DIP Facility, the

---

[7]    "**Released Parties**" shall mean the Indemnified Parties.

(Page 13)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

DIP Liens, the DIP Superpriority Claims, the DIP Collateral, the DIP Obligations, the DIP Documents or the transactions contemplated thereunder or hereunder, including, without limitation, (i) any Avoidance Actions (as defined below), (ii) any so-called "lender liability" or equitable subordination claims or defenses, (iii) any claims or causes of action arising under the Bankruptcy Code, (iv) any claims or causes of action seeking reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge, recovery or any other challenge arising under the Bankruptcy Code or applicable non-bankruptcy law with respect to the DIP Liens, the DIP Superpriority Claims, the DIP Obligations, the DIP Documents or the DIP Collateral, or (v) any claim or cause of action with respect to the validity, enforceability, extent, amount, perfection or priority of the DIP Liens, the DIP Superpriority Claims, the DIP Obligations or the DIP Documents; *provided*, *however*, that nothing contained in this clause (g) shall relieve the DIP Lender from fulfilling any of its commitments under, this Interim Order, the DIP Credit Agreement, or other DIP Documents.

g.   <u>*Sale and Credit Bidding*</u>.  The DIP Lender shall have the right to credit bid up to the full amount of the applicable outstanding DIP Obligations including, without limitation, any accrued interest and fees, in a sale of any DIP Collateral (as defined below), and whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, or otherwise; *provided* that any such credit bid must provide for the immediate and indefeasible repayment in cash and in full of all then outstanding Prepetition Secured Obligations upon the closing of such sale (to the extent

(Page 14)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition

Secured Obligations are legal, valid, non-avoidable, and binding).

      I.     ***Good Cause***.  The ability of the Debtors to obtain sufficient working capital and

liquidity under the DIP Documents and this Interim Order is vital to the Debtors, their estates,

creditors and stakeholders.  The liquidity to be provided under the DIP Documents and this Interim

Order will enable the Debtors to continue to operate their businesses in the ordinary course and

preserve the value of their businesses.  The Debtors' estates will be immediately and irreparably

harmed if this Interim Order is not entered.  Good cause has, therefore, been shown for the relief

sought in the Motion.

      J.     ***Good Faith***.  The DIP Facility, the DIP Documents, and this Interim Order have

been negotiated in good faith and at arm's length among the Debtors and the DIP Lender, and all

of the obligations and indebtedness arising under, in respect of or in connection with the DIP

Facility, the DIP Documents and this Interim Order, including without limitation, all loans made

to the Debtors pursuant to the DIP Documents and this Interim Order, and any other obligations

under the DIP Documents and this Interim Order, shall be deemed to have been extended by the

DIP Lender and its affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy

Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy

Code, and the DIP Obligations, the DIP Liens (as defined below), and the DIP Superpriority

Claims (as defined below), shall be entitled to the full protection of section 364(e) of the

Bankruptcy Code and the terms, conditions, benefits, and privileges of this Interim Order

(Page 15)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

regardless of whether this Interim Order is subsequently reversed, vacated, modified, or otherwise is no longer in full force and effect or the Chapter 11 Cases are subsequently converted or dismissed.

K.    ***Sections 506(c); Marshaling***.  In light of and in exchange for (i) the DIP Lender's willingness to provide the DIP Facility to the extent set forth herein; (ii) the DIP Lender's agreement that its liens and administrative expense claims shall be subject and subordinate to (A) the Carve-Out and (B) any Permitted Encumbrance (including the Prepetition Liens and Adequate Protection Liens), the Prepetition Secured Obligations and the Adequate Protection Superpriority Claims (in each case in this clause (B), to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid non-avoidable, and binding, and only so long as the Prepetition Secured Obligations are outstanding), as set forth herein and as applicable; and (iii) the DIP Lender's agreement to the payment (in a manner consistent with the Approved Budget or Wind-Down Budget (as defined below)), if applicable, (subject to permitted variances as provided in the DIP Term Sheet, DIP Credit Agreement and subject to the terms and conditions of this Interim Order) of certain expenses of administration of these Chapter 11 Cases, subject to and effective upon entry of the Final Order granting such relief, the DIP Lender is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code and of the equitable doctrine of marshaling and other similar doctrines upon entry of the Final Order.

L.    ***Consideration***.  All of the Debtors will receive and have received fair consideration

(Page 16)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

and reasonably equivalent value in exchange for the DIP Facility and all other financial accommodations provided under the DIP Documents and this Interim Order.

M.   **_Immediate Entry of Interim Order_**.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001.  The permission granted herein to enter into the DIP Facility and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors.  This Court concludes that entry of this Interim Order will, among other things, allow for the continued operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful restructuring.

N.   **_Findings Regarding Corporate Authority_**.   The Debtors have all requisite corporate power and authority to enter into, ratify, and perform all of their obligations under the DIP Documents (including the DIP Term Sheet and DIP Credit Agreement) to which they are a party.

O.   **_Notice_**.  Upon the record presented to this Court at the Interim Hearing, and under the exigent circumstances set forth therein, notice of the Motion and the emergency relief requested thereby and granted in this Interim Order has been provided in accordance with Bankruptcy Rules 4001(b) and 4001(c)(1) and Local Rule 9013-5 on (i) the DIP Lender; (ii) counsel to the DIP Lender; (iii) counsel to the Prepetition Agent; (iv) counsel to the Prepetition Lenders; (v) the Office of the United States Trustee for the District of New Jersey (the "**U.S. Trustee**"); (vi) the holders of the fifty (50) largest unsecured claims against the Debtors' estates (on a consolidated basis); (vii) the United States Attorney's Office for the District of New Jersey; (viii) the attorneys general

(Page 17)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No.: | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

in the states in which the Debtors conduct their business; (ix) the United States Department of Justice; (x) the Internal Revenue Service; (xi) counsel to the Official Committee (if any); and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002, which notice was appropriate under the circumstances and sufficient for the Motion.  No other or further notice of the Motion or entry of this Interim Order is required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED**:

1.      ***DIP Facility Approved***.  The Motion is granted on an interim basis as set forth herein and the financing described herein is authorized and approved subject to the "DIP Conditions Precedent" section of the DIP Term Sheet and any applicable provisions set forth in the DIP Documents, including but not limited to (upon entry of the Final Order) the DIP Credit Agreement; *provided* that the DIP Documents shall be consistent with the terms and conditions of this Interim Order.

2.      ***Objections Overruled***.  Any objections, reservations of rights, or other statements with respect to entry of the Interim Order and the relief requested in the Interim Order, to the extent not withdrawn, waived, settled or otherwise resolved, are overruled on the merits.  This Interim Order shall become effective immediately upon its entry.  The rights of all parties in interest to object to the entry of the Final Order are reserved.

(Page 18)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

3.    *__Authorization of the DIP Facility and the DIP Documents__*.

a.    *__DIP Obligations__*.  The Debtors are expressly and immediately authorized and empowered to enter into the DIP Facility and to incur and to perform the DIP Obligations (as defined below) in accordance with and subject to this Interim Order (and, upon its entry, a Final Order) and the other DIP Documents, to execute and deliver all DIP Documents and all other related instruments, certificates, agreements, and documents, and to take all actions which may be reasonably required or otherwise necessary for the performance by the Debtors under the DIP Facility, including the creation and perfection of the DIP Liens described and provided for herein. The Debtors are hereby authorized and directed to pay all principal, interest, fees, expenses, indemnities, and other amounts described herein, in the DIP Term Sheet, the DIP Credit Agreement, and in the other DIP Documents as such shall accrue and become due hereunder or thereunder, including, without limitation, subject to paragraph 13 hereof, the reasonable and documented fees and expenses of the attorneys and financial and other advisors and consultants of the DIP Lender, as and to the extent provided for herein, in the DIP Term Sheet, the DIP Credit Agreement, and in the other DIP Documents (collectively, all loans, advances, extensions of credit, financial accommodations, fees (which shall be fully earned and non-refundable upon entry of this Interim Order), expenses, and other liabilities and obligations (including indemnities and similar obligations) in respect of DIP Loans, the DIP Facility, the DIP Term Sheet, the DIP Credit Agreement, and the other DIP Documents, including all "Obligations" under and as defined in the DIP Documents, as applicable, the "**DIP Obligations**").  The DIP Term Sheet, the other DIP

(Page 19)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

Documents, and all DIP Obligations shall represent, constitute, and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and any successor thereto in accordance with their terms. All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Order and in the other DIP Documents by any Debtor are granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby. No obligation, payment, transfer, or grant of security under the DIP Documents as approved under this Interim Order shall be voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim. The term of the DIP Facility shall commence on the date of entry of this Interim Order and end on the Scheduled Maturity Date (as defined in the DIP Term Sheet), subject to the terms and conditions set forth herein and in the DIP Documents.

b.      *Authorization to Borrow*. In order to continue to operate its business, subject to the terms and conditions of this Interim Order and the DIP Documents, the Debtors are hereby authorized to borrow under the DIP Facility and incur certain DIP Obligations during the Interim Period.

c.      *Conditions Precedent*. The DIP Lender shall have no obligation to make the DIP Loan or any other financial accommodation hereunder or under the DIP Documents (and the Debtors shall not make any request therefor) unless all conditions precedent to making DIP

(Page 20)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

Loans under the DIP Documents have been satisfied or waived in accordance with the terms of the DIP Term Sheet, the DIP Credit Agreement, or the other DIP Documents.

      d.    <u>DIP Collateral</u>.  As used herein, "**DIP Collateral**" shall mean all assets, interests, rights, and property of any nature whatsoever of the Debtors, including, without limitation, all property in which the Debtors and their estates have an interest (whether tangible, intangible, real, personal or mixed), whether now owned or hereafter acquired and wherever located, before or after the Petition Date, including, without limitation, all accounts, proceeds of leases, inventory, equipment, equity interests or capital stock in subsidiaries, investment property, instruments, chattel paper, contracts, patents, copyrights, trademarks and other general intangibles, commercial litigation claims, cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, any deposit accounts, "cash collateral accounts", and, in each case all amounts on deposit therein from time to time, the proceeds of all claims or causes of action, and all rents, products, offspring, profits, proceeds, and substitutions thereof (including, without limitation, all Prepetition Collateral and, subject to and effective upon the entry of the Final Order granting such relief, all claims or causes of action of the Borrowers arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code (the "**Avoidance Actions**"); *provided* that the lien on Avoidance Actions shall be limited to the proceeds and property recovered in connection therewith.

(Page 21)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

      e.    <u>DIP Liens</u>.  Effective immediately upon the entry of this Interim Order, the

DIP Lender is hereby granted the following security interests and liens, which shall immediately

be valid, binding, perfected, continuing, enforceable, and non-avoidable without the need for

execution by the Debtors or the recordation or other filing by the DIP Lender of security

agreements, account control agreements, pledge agreements, financing statements, or other similar

documents or the possession or control by the DIP Lender of any DIP Collateral (all liens and

security interests granted to the DIP Lender pursuant to this Interim Order, any Final Order, and

the DIP Documents, the "**DIP Liens**"):

      i.    pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected first-priority liens on and security interests in all DIP Collateral that is not subject to any liens or encumbrances immediately prior to the Petition Date or pursuant to the Interim Cash Collateral Order (the "**Unencumbered Property**"), subject and subordinate only to the Carve-Out; and

      ii.    pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected liens on and security interests in all other DIP Collateral, which liens and security interests shall be subject and subordinate only to (a) any valid, enforceable, perfected, and non-avoidable lien or security interest in favor of the Prepetition Secured Parties, including (to the extent that the Prepetition Liens and the Adequate Protection Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding) the Prepetition Liens and the Adequate Protection Liens, that were in existence immediately prior to the Petition Date, granted pursuant to the Interim Cash Collateral Order, or perfected as permitted by Section 546(b) of the Bankruptcy Code; (b) any Permitted Prior Liens (as defined in the Interim Cash Collateral Order) (subclauses (a) and (b), each a "**Permitted Encumbrance**")[8]; and (c) the Carve-Out, and otherwise senior to all other

---

[8]  Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Encumbrance is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party in interest, including but not limited to the Debtors, the DIP Lender, the Prepetition Secured Parties, or

(Page 22)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

liens and encumbrances in respect of the DIP Collateral.

f.    *Administrative Claim Status.*    The DIP Lender is hereby granted allowed administrative expense claims (the "**DIP Superpriority Claims**") pursuant to section 364(c)(1) of the Bankruptcy Code for all DIP Obligations, having priority over any and all other claims against the Debtors and their estates, now existing or hereafter arising, including, to the extent allowed under the Bankruptcy Code, any and all administrative expenses or other claims arising under sections 105(a), 328, 330, 331, 503(b), 506(c) (subject to and effective upon entry of the Final Order granting such relief), 507(a) (other than section 507(a)(1)), 507(b), 546(c), 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof; *provided* that the DIP Superpriority Claims granted in this paragraph shall be subject and subordinate in priority of payment only to the Carve-Out and the Adequate Protection Superpriority Claims (to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, and only so long as the Prepetition Secured Obligations are outstanding).    The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the

---

Official Committee (if any), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Encumbrance and/or security interest (excluding, for the avoidance of doubt, the Prepetition Liens and the Adequate Protection Liens to the extent provided in the Interim Cash Collateral Order).

(Page 23)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including without limitation, subject to entry of this Interim Order, any subsequent Interim Order, and the Final Order, and subject and subordinate only to the payment of the Carve-Out and the Adequate Protection Superpriority Claims (to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, and only so long as the Prepetition Secured Obligations are outstanding).  Other than as expressly provided in the DIP Documents or this Interim Order with respect to the Carve-Out and any outstanding Adequate Protection Superpriority Claims, subject to and effective upon entry of the Final Order granting such relief, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 326, 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these Chapter 11 Cases, or in any successor case of any of the Debtors ("**Successor Cases**"), and no priority claims are, or will be, senior to, prior to, or on a parity with the Adequate Protection Superpriority Claims (to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, and so long as the Prepetition Secured Obligations are outstanding) or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

g. *No Priming of DIP Liens*.  Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime (or

(Page 24)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

otherwise cause to be subordinated in any way) the liens provided to the DIP Lender by offering a subsequent lender or any party-in-interest a superior or pari passu lien or claim with respect to the DIP Collateral pursuant to section 364(d) of the Bankruptcy Code or otherwise without the prior written consent of the DIP Lender.

      *h.*    <u>*Perfection of DIP Liens*</u>. The DIP Lender is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to it hereunder, in each case without the necessity to pay any recording fee or similar fee or tax; *provided*, that copies of any such filings or instruments shall be provided to the Prepetition Secured Agent at least three (3) business days in advance of filing.  Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, at the time and as of the date of entry of this Interim Order.  The Debtors shall, if requested, promptly execute and deliver to the DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens, subject to the terms of this Interim Order.  All such documents will be deemed to have

(Page 25)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No.: | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

been recorded and filed as of the date of entry of this Interim Order. A certified copy of this Interim Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Interim Order for filing and recording.

4. ***Authorization and Approval to Use Proceeds of DIP Facility***. Subject to the terms and conditions of this Interim Order and the other DIP Documents, the Debtors are authorized during the Interim Period (and not beyond) to request and use proceeds of the Initial Advance, as set forth in the Approved Budget (subject to variances permitted under the DIP Documents) and in accordance with this Interim Order the other DIP Documents (including the DIP Term Sheet). Notwithstanding anything herein to the contrary, subject only to the Debtors' rights under paragraph 15(b) hereof and the Carve-Out, the Debtors' right (a) to request proceeds of the DIP Loans shall terminate on the earlier of (i) the date the DIP Loans are fully funded or reduced to zero and (ii) the Termination Date (as defined below) and (b) to use proceeds of the DIP Loans shall terminate on the Termination Date, subject to paragraph 15 hereof. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates or proceeds resulting therefrom outside the ordinary course of business except as expressly permitted herein and in the other DIP Documents (subject to any required Court approval).

5. ***Approved Budget; Use of Proceeds and Cash Collateral***.

   a. The Initial Approved Budget attached hereto as **Exhibit B** constitutes an

(Page 26)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

"Approved Budget" under the DIP Term Sheet. The Initial Approved Budget shall be thereafter updated, as necessary (each a "**Proposed Budget**"). Each Proposed Budget shall be subject to the written approval of the DIP Lender in its sole discretion (each such approved budget, an "**Approved Budget**") and provided to any statutory committees appointed in these Chapter 11 Cases; *provided* that until such time as the DIP Lender approves in writing (for which email from counsel to the DIP Lender to counsel to the Debtors shall suffice) any Proposed Budget, the Borrowers shall be subject to and be governed by the terms of the Initial Approved Budget or the latest Approved Budget, as applicable, then in effect in accordance with this Interim Order. The Approved Budget may only be amended, supplemented, modified, restated, replaced, or extended in accordance with this Interim Order and the other DIP Documents (including the DIP Term Sheet). Any such amendment, supplement, modification, restatement, replacement, or extension in accordance with the DIP Term Sheet may be effected without further order of the Court, so long as approved by the DIP Lender with no less than two (2) business days' notice to the Official Committee (if any), the U.S. Trustee, the Prepetition Agent, and the Prepetition Lenders. The Approved Budget is an integral part of this Interim Order and has been relied upon by the DIP Lender to provide the DIP Facility and consent to this Interim Order.

b.      Pursuant to the terms of the DIP Documents, beginning on Monday, June 30, 2025 (the "**Initial Reporting Date**, and with each subsequent Monday, collectively and individually, each a "**Reporting Date**"), the Borrowers shall deliver to the DIP Lender, any statutory committees appointed in these Chapter 11 Cases, and the Prepetition Agent, in a form

(Page 27)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

consistent with the form of the Approved Budget, a variance report describing in reasonable detail, by line item (including capital expenditures and professional fees, excluding the fees of DIP Lender's professionals), (i) the actual disbursements of the Debtors and actual receipts during the applicable Testing Period (as defined below); (ii) any variance (whether positive or negative, expressed as a percentage) between the actual disbursements during such Testing Period against the estimated disbursements for the applicable Testing Period, as set forth in the applicable Approved Budget (each a "**Variance Report**"); and (iii) comments relating to any variances between budgeted and actual disbursements (the "**FA Reports**"). The term "**Testing Period**" shall mean the cumulative period from the beginning date of the Approved Budget through the Sunday that is eight calendar days prior to the applicable Reporting Date. The last day of each Testing Period shall be a "**Testing Date**".

        c.     As of any applicable Testing Date, actual cumulative disbursements (excluding DIP Lender professional fees) on an aggregate basis (the "**Actual Disbursement Variance**") shall not exceed budgeted cumulative disbursements (excluding DIP Lender professional fees) on an aggregate basis as reflected in the Approved Budget for such period, by more than 15% (the "**Permitted Disbursement Variance**"). Any overperformance of the Approved Budget may be used to increase the amount held in the reserve line item for the Borrowers' wind down expenses. If the Actual Variances for such period are less than or equal to the Permitted Disbursement Variance, the amount by which each Actual Variance is less than the Permitted Disbursement Variance shall be carried forward to the next Testing Date and added to

(Page 28)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

the Permitted Disbursement Variance for such next Testing Date.

d.    The Borrowers shall be deemed to be in compliance with the Approved Budget for all purposes under this Interim Order and the DIP Documents unless, as of any Testing Date, the Borrowers' actual disbursements vary from the Approved Budget by more than the applicable Permitted Disbursement Variance as measured on any Testing Date (the "**Variance Covenant**").

e.    The DIP Lender shall have no obligation to permit the use of proceeds of DIP Loans, and the Borrowers shall have no authority under this Interim Order to use proceeds of DIP Loans, other than in accordance with the latest Approved Budget, subject to the Permitted Disbursement Variance and the Variance Covenant, and as set forth in the Interim Order.

f.    *Wind-Down Reserve*.  Notwithstanding anything to the contrary contained in this Interim Order, upon entry of this Interim Order, the Debtors are authorized to use a portion of the DIP Loans to fund a segregated account (the "**Wind-Down Account**") in an amount of $1,000,000 (the "**Wind-Down Reserve**").  Upon the consummation of the sale of all, or substantially all, of the Debtors' assets (an "**Asset Sale**"), the Debtors shall be authorized to use the funds in the Wind-Down Account to wind-down their affairs and the estates in accordance with the Wind-Down Reserve and pursuant to a Wind-Down Budget (the "**Wind-Down Budget**") that will be agreed on between the Borrowers, any statutory committee appointed in these Chapter 11 Cases, and DIP Lender upon consummation of an Asset Sale.  Any excess amounts in the Wind-Down Account after payment of all expenses in accordance with the Wind-Down Reserve

(Page 29)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

(including the Carve-Out) and Wind-Down Budget shall be subject in all respects to the DIP Liens and the DIP Superpriority Claims.  Except for permitting the funding of the Wind-Down Account in an amount equal to the Wind-Down Reserve from the DIP Collateral, the DIP Lender shall not have any responsibility, liability, or obligation whatsoever to fund, direct payment or reimbursement of any fees or disbursements, or otherwise ensure that the Debtors fund the Wind-Down Account.

6.    ***Carve-Out***.

a.    *Priority of Carve-Out*.  Each of the DIP Liens and the DIP Superpriority Claims shall be subject and subordinate to payment of the Carve-Out.  The Carve-Out shall be senior to all claims and liens over all assets of the Debtors, including any DIP Collateral, as set forth in this Interim Order.

b.    *Carve-Out*.  As used in this Interim Order, the "**Carve-Out**" means the sum of (i) all statutory fees payable to the Clerk of the Court without regard to the Carve-Out Notice, the Pre-Carve-Out Notice, or the Post-Carve-Out Notice; (ii) all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, which shall not be limited by any Budget ("**Statutory Fees**") without regard to the Carve-Out Notice, the Pre-Carve-Out Notice, or the Post-Carve-Out Notice; (iii) all Court-allowed fees and expenses of a trustee appointed under section 726(b) or section 1104 of the Bankruptcy Code in an amount not to exceed $25,000, without regard to the Carve-Out Notice, the Pre-Cave-Out Notice, or the Post-Carve-Out Notice; (iv) to the extent allowed by the Court at any time, whether by interim order,

(Page 30)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

final order, or other order, all accrued but unpaid fees and expenses (excluding any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors) (the "**Allowed Estate Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Official Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**," and together with the Debtor Professionals, the "**Estate Professionals**") at any time on or before the date of delivery by the DIP Lender of a Carve-Out Notice, whether allowed by the Court prior to or after delivery of a Carve-Out Notice (the amounts set forth in the foregoing clauses (i), (ii), (iii), and (iv) the "**Pre-Carve-Out Notice Amount**"), and (v) Allowed Estate Professional Fees of Estate Professionals incurred after the date of delivery by the DIP Lender of the Carve-Out Notice, to the extent allowed at any time, whether by interim order, final order, or other court order, in an aggregate amount not to exceed $250,000 incurred by (i) Debtor Professionals or (ii) Committee Professionals (the amount set forth in this clause (iii) being the "**Post-Carve Out Notice Amount**", and together with the Pre-Carve-Out Notice Amount, the "**Carve-Out Amount**"); *provided*, *however*, that nothing herein shall be construed to impair the ability of any party-in-interest to object to the fees, expenses, reimbursement, or compensation described herein on any grounds.  For purposes of this Interim Order, the "**Carve-Out Notice**" shall mean a written notice (which may be via electronic mail) delivered by the DIP Lender to the Default/Carve-Out Notice Parties, which notice may be delivered only following the occurrence and during the continuation of an Event of Default, stating that the Post-Carve-Out Notice Amount

(Page 31)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

has been invoked.

      c.    <u>Pre-Carve-Out Notice</u>.  Prior to the delivery of a Carve-Out Notice, starting with the first full calendar week following the entry of this Interim Order, each Estate Professional shall deliver to the Debtors, the DIP Lender, and their respective advisors a weekly statement (each, a "**Weekly Statement**") setting forth a good-faith estimate of the amount of accrued but unpaid fees and expenses incurred by such Estate Professional during the preceding week (the "**Weekly Estimated Fees and Expenses**"), and the Debtors shall, on a weekly basis, transfer cash proceeds from amounts previously drawn under the DIP Facility into a segregated account held in trust for and exclusively available for the payment of fees and expenses of the Estate Professional (the "**Estate Professional Fees Escrow Account**") in an amount equal to the aggregate amount of Weekly Estimated Fees and Expenses based on the Weekly Fee Estimates submitted by each Estate Professional (and if no such estimate is provided in a given week, then the amount forecasted for such Estate Professional in the latest Approved Budget) that remain unpaid (and that were not previously funded to the Estate Professional Fees Escrow Account).  The Debtors shall use funds held in the Estate Professional Fees Escrow Account exclusively to pay Allowed Estate Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, in accordance with any interim or final orders of the Court; *provided*, *however*, that the Debtors' obligations to pay Allowed Estate Professional Fees shall not be limited or deemed limited to funds held in the Estate Professional Fees Escrow Account.

(Page 32)

| Debtors: | Powin, LLC, *et al.* |
|---|---|
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

   d. <u>*Post-Carve-Out Notice*</u>. On the date on which a Carve-Out Notice is delivered in accordance with this paragraph 6 of this Interim Order, (the "**Carve-Out Trigger Date**"), the Carve-Out Notice shall constitute a demand to the Debtors to utilize all cash on hand (including the proceeds of DIP Loans) to fund into the Estate Professional Fees Escrow Account an amount equal to (i) the Pre-Carve-Out Notice Amount (to the extent not previously funded to the Estate Professional Fees Escrow Account), and (ii) the Post-Carve-Out Notice Amount.  No later than two (2) Business Days after the delivery of a Carve-Out Notice, each Estate Professional shall deliver one (1) additional statement to the Debtors, the DIP Lender, and their respective advisors setting forth a good-faith estimate of the amount of accrued but unpaid fees and expenses incurred by such Estate Professional during the period following the period covered by the most recent Weekly Statement previously delivered by such Estate Professional through and including the Carve-Out Trigger Date (as defined below), and the Debtors shall transfer such amounts to the Estate Professional Fees Escrow Account (as defined herein).

   e. Notwithstanding anything to the contrary in this Interim Order or the DIP Documents, following delivery of a Carve-Out Notice, the DIP Lender shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Estate Professional Fees Escrow Account has been fully funded in an amount equal to all respective obligations benefitting from the Carve-Out as set forth herein.  The Estate Professional Fees Escrow Account shall not be subject to the control of the DIP Lender, and the funds transferred to the Estate Professional Fees Escrow Account shall not be subject to the DIP

(Page 33)

| Debtors: | Powin, LLC, *et al*. |
|---|---|
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

Liens, nor constitute DIP Collateral; *provided*, *however*, that the DIP Liens shall automatically attach to any residual interest in the Estate Professional Fees Escrow Account (which liens shall be deemed automatically perfected liens as of entry of this Interim Order), with any excess paid, *first*, to the extent funded with Collateral (as defined in the Interim Cash Collateral Order) or the proceeds therefrom, to the Prepetition Agent for application to the Prepetition Secured Obligations (to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are valid, non-avoidable, and binding, and only so long as the Prepetition Secured Obligations are outstanding), *second*, to the extent funded with DIP Loans, to the DIP Lender for application to the DIP Obligations in accordance with the DIP Documents until the DIP Obligations are Paid in Full (unless the DIP Lender has otherwise agreed to in writing), and, *third*, any excess remaining thereafter shall be applied in accordance with this Interim Order.

f. Notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Estate Professional Fees Escrow Account shall not constitute loans or indebtedness under the DIP Documents or otherwise increase or reduce the DIP Obligations, (ii) the failure of the Estate Professional Fees Escrow Account to satisfy in full the Allowed Estate Professional Fees shall not affect the priority of the Carve-Out, and (iii) nothing contained herein shall constitute a cap or limitation on the amount that the Estate Professionals may assert as administrative expense claims against the Debtors on account of Allowed Estate Professional Fees incurred by such Estate Professionals.

(Page 34)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

g. <u>*Payment of Carve-Out on or After the Carve-Out Trigger Date*</u>. Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Date in respect of any Allowed Estate Professional Fees incurred after the occurrence of the Carve-Out Trigger Date shall permanently reduce the Carve-Out Amount on a dollar-for-dollar basis.

h. <u>*No Direct Obligation to Pay Allowed Estate Professional Fees*</u>. The DIP Lender shall not be responsible for the payment or reimbursement of any fees or disbursements of any Estate Professional incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender, in any way, to pay compensation to, or to reimburse expenses of, any Estate Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

i. For the avoidance of doubt, the funding of the Carve-Out and the Estate Professional Fees Escrow Account hereunder shall satisfy the same obligations under the Interim Cash Collateral Order and shall not be duplicative of, or additive to, such obligations.

7. ***Monitoring of DIP Collateral***. The DIP Lender and its consultants and advisors shall be given reasonable access to the Debtors' books, records, assets, and properties for purposes of monitoring and inspecting the Debtors' businesses and the value of the DIP Collateral at the Debtors' cost and expense during normal business hours and upon reasonable notice.

(Page 35)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

8.     ***Financial Reporting***.    Without limitation of the requirements of the DIP Documents, the Debtors shall provide to the DIP Lender, with a copy to the Official Committee, if any, and the Prepetition Agent (and, in each case, its consultants, advisors, and professionals) all financial information required under the DIP Documents.  The Debtors shall also provide such reports and information required to be provided in the DIP Documents and reasonably cooperate, discuss with, and provide to the DIP Lender (and, in each case, its professionals) all such information as may be reasonably requested.  In addition, the Debtors hereby authorize their accountants, attorneys, financial advisors, bankruptcy professionals, and consultants to cooperate, consult with, and provide to the DIP Lender (and its consultants, advisors and professionals) all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtors consistent with the requirements set forth in the DIP Documents.

9.     ***Milestones***.  It is a condition to the DIP Facility that the Debtors shall comply with the Milestones (as set forth in the DIP Term Sheet, and upon execution, the DIP Credit Agreement).  The failure to comply with any Milestone shall constitute an Event of Default (as defined in the DIP Term Sheet) in accordance with the DIP Term Sheet.

10.     ***Section 506(c) Claims***.  As a further condition of the DIP Facility, and subject to and effective upon entry of the Final Order granting such relief, any obligation of the DIP Lender to make DIP Loans and the consent of the DIP Lender to the payment of the Carve-Out to the extent provided herein, the Debtors (and any successors thereto or any representatives thereof,

Case 25-16137-MBK   Doc 169   Filed 06/26/25   Entered 06/26/25 15:10:35   Desc Main
Document     Page 36 of 81

(Page 36)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights, benefits, or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Lender, the DIP Liens, and the DIP Collateral and, except to the extent of the Carve-Out, nothing contained in this Interim Order, the Final Order, or the DIP Documents shall be deemed a consent by the DIP Lender to any charge, lien, assessment, or claim against or in respect of the DIP Collateral under sections 105 or 506(c) of the Bankruptcy Code or otherwise, and no such consent shall be implied from any other action, inaction, or acquiescence by any by any such parties.

11.     ***Limitation on Use of DIP Facility***.    Notwithstanding anything herein to the contrary, no portion of the proceeds of the DIP Facility, the DIP Collateral, and no disbursements set forth in the latest Approved Budget may be used, in any way, directly or indirectly (a) for any investigation, adversary action, suit, arbitration, proceeding, application, motion, objection, defense, other contested matter, or other litigation of any type  adverse to the interests of the DIP Lender or its respective rights and remedies under the DIP Facility, this Interim Order, the Final Order, or the DIP Documents, including without limitation (i) any action arising under the Bankruptcy Code, (ii) any so-called "lender liability" claims and causes of action, (iii) any action with respect to the validity and extent of the DIP Obligations or the validity, extent, perfection and priority of the DIP Liens, (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or counterclaims, or raise any other challenges

(Page 37)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

under the Bankruptcy Code or any other applicable domestic or foreign law or regulation against or with respect to the DIP Liens, in whole or in part, or (v) appeal or otherwise challenge this Interim Order or the Final Order; (b) for any other action, which with the giving of notice or passing of time, would result in an Event of Default under the DIP Facility, (c) for any purpose that is prohibited under the Bankruptcy Code, DIP Documents, this Interim Order, or the Final Order or that is not in accordance with the latest Approved Budget (subject to the Permitted Disbursement Variance), (d) to make any payment, advance, intercompany advance or transfer, or any other remittance or transfer whatsoever (including any intercompany loans and investments) that is not in accordance with the express terms of the latest Approved Budget, (e) to make any payment in settlement of any claim, action, or proceeding without Bankruptcy Court approval, (f) to prevent, hinder, impede, or delay the DIP Lender's enforcement or realization upon or exercise of rights in respect of any of the DIP Collateral in accordance with the DIP Documents and this Interim Order, (g) to seek to amend or modify any of the rights or interests granted to the DIP Lender under this Interim Order or the DIP Documents, in a manner adverse to the DIP Lender, without the prior written consent of the DIP Lender or (h) for any purpose set forth in paragraph 21 of the Interim Cash Collateral Order.

12.     ***Cash Management***.  Until such time as all DIP Obligations are Paid in Full, the Debtors shall maintain the cash management system in accordance with the applicable "first day" order, which shall be in form and substance acceptable to the DIP Lender.  Except as expressly provided herein, the Debtors shall not open any new deposit or securities account that is not subject

(Page 38)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

to the liens and security interests of the Prepetition Secured Parties and the DIP Lender (in which

case they shall be subject to the lien priorities and other provisions set forth in this Interim Order).

13. ___*Fees*___.  All fees paid and payable and costs or expenses reimbursed or reimbursable

by the Debtors to the DIP Lender are hereby approved.  The Debtors are hereby authorized and

directed to promptly pay all such fees, costs, and expenses (including, without limitation, all due

diligence, transportation, computer, duplication, messenger, audit, insurance, appraisal, valuation

and consultant costs and expenses, and all search, filing and recording fees, incurred or sustained

by the DIP Lender and its counsel and professional advisors in connection with the DIP Facility,

the DIP Documents or the transactions contemplated thereby, the administration of the DIP

Facility and any amendment or waiver of any provision of the DIP Documents) on demand,

without the necessity of any further application with the Court for approval or payment of such

fees, costs or expenses, subject to receiving a written invoice thereof.  Notwithstanding anything

to the contrary herein, the fees, costs and expenses of the DIP Lender under the terms of the DIP

Documents, whether incurred prior to or after the Petition Date shall be deemed fully earned, non-

refundable, irrevocable, and non-avoidable as of the date of the entry of this Interim Order.  All

unpaid fees, costs, and expenses shall be included and constitute part of the principal amount of

the DIP Obligations and be secured by the DIP Liens.  None of such fees, costs, expenses or other

amounts shall be subject to further application to or approval of this Court, and shall not be subject

to allowance or review by this Court or subject to the U.S. Trustee's fee guidelines, and no attorney

or advisor to the DIP Lender shall be required to file an application seeking compensation for

(Page 39)

| Debtors: | Powin, LLC, *et al*. |
|---|---|
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

services or reimbursement of expenses with this Court; *provided, however*, that copies of any such invoices shall be provided contemporaneously to the U.S. Trustee and any counsel to any Official Committee (if one exists) (together with the Debtors, the "**Review Parties**") and such invoices shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law school graduation for each attorney; *provided, however*, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional; *provided, further, however*, that such invoices may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine (the U.S. Trustee shall be provided with unredacted copies of such invoices upon request). Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "**Review Period**"). If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Debtors shall pay such invoices within five (5) calendar days following the expiration of the Review Period. If an objection is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the

(Page 40)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

invoice within five (5) calendar days, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court. Any hearing to consider such an objection to the payment of any fees, costs or expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that are the subject of such objection. All such unpaid fees, costs, expenses and other amounts owed or payable to the DIP Lender shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded in the DIP Documents) and this Interim Order. Notwithstanding anything to the contrary herein, and subject to the above concerning payments to attorneys or advisors to the DIP Lender, the fees, costs and expenses of the DIP Lender under the terms of the DIP Documents, whether incurred prior to or after the Petition Date shall be deemed fully earned, non-refundable, irrevocable, and non-avoidable.

14.     **_Survival of Certain Provisions_**.  In the event of the entry of any order converting any of these Chapter 11 Cases into a Successor Case, the DIP Liens, the DIP Superpriority Claims, and the Carve-Out shall continue in this proceeding and in any Successor Case, and such DIP Liens, DIP Superpriority Claims, and Carve-Out shall maintain their respective priorities as provided by this Interim Order.

15.     **_Events of Default; Termination Date; Rights and Remedies Upon Event of Default_**.

a.     Any automatic stay otherwise applicable to the DIP Lender, whether arising

(Page 41)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

under sections 105 or 362 of the Bankruptcy Code or otherwise, is hereby modified so that, upon the occurrence and during the continuance of an Event of Default, the DIP Lender, in its sole and absolute discretion, but subject to the terms and conditions of this Interim Order (and the Default Notice Period), may, subject to paragraph 19 of this Interim Order, immediately deliver a Termination Notice (as defined below). Immediately following the giving of notice by the DIP Lender to counsel to the Debtors, the U.S. Trustee, counsel to the Official Committee, if any, counsel to the Prepetition Agent, and counsel to the Prepetition Lenders (the "**Default Notice Parties**"), of the occurrence of an Event of Default under the DIP Documents (the "**Termination Notice**") (i) the DIP Lender may issue a Carve-Out Notice; (ii) the DIP Lender may declare all DIP Obligations to be immediately due and payable and the Debtors shall have no right to request or use any proceeds of any DIP Loans or DIP Collateral, other than towards the satisfaction of the Prepetition Secured Obligations (if outstanding), the DIP Obligations and the Carve-Out, as provided in this Interim Order and the DIP Documents (including the DIP Term Sheet); *provided* that, during the Default Notice Period (as defined below), the Debtors shall be permitted solely to continue to use drawn proceeds of the DIP Facility, in accordance with the Approved Budget, for any critical business-related expenses necessary to operate the Debtors' businesses and preserve the DIP Collateral as determined by the Debtors in their reasonable discretion and in good faith; *provided, further* that the only basis on which the Debtors, an Official Committee (if any), or any other party in interest shall have the right to contest a Termination Notice shall be with respect to the validity of the Event of Default giving rise to such Termination Notice (i.e., whether or not

(Page 42)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

such Event of Default has occurred or not), (iii) the DIP Lender may declare the suspension or termination of the DIP Facility as to any further liability or obligation of the DIP Lender thereunder, but without affecting the DIP Liens or DIP Obligations; and (iv) the DIP Lender may charge the default rate of interest under the DIP Facility, as provided for in the DIP Term Sheet.

b.    The Debtors, and the Official Committee (if any) and any other party in interest shall be entitled to an emergency hearing before this Court within five (5) business days after the Termination Notice is sent by the DIP Lender to the Debtors, the U.S. Trustee, counsel to the Official Committee (if any), counsel to the Prepetition Agent, and counsel to the Prepetition Lenders (such five (5)-calendar-day period, the "**Default Notice Period**").  Subject to paragraph 19 of this Interim Order, if the Debtors, the Official Committee (if any), or any other party in interest does not contest the occurrence of the Event of Default within the Default Notice Period or if there is a timely contest of the occurrence of an Event of Default and the Court after notice and a hearing declines to stay the enforcement thereof, the Termination Date (as defined below) shall be deemed to have occurred for all purposes and the automatic stay shall be modified to permit the DIP Lender to exercise all remedies under this Interim Order, the Final Order, the other DIP Documents (including the DIP Term Sheet), and applicable law, subject to any Permitted Encumbrance (including the Prepetition Liens and the Adequate Protection Liens), including, to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, the Prepetition Secured Obligations, and the Adequate Protection Superpriority Claims, including, without

(Page 43)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

limitation, to (i) set-off any and all amounts in accounts maintained by the Debtors with the DIP

Lender against the DIP Obligations, (ii) to otherwise enforce any and all rights against the DIP

Collateral, including, without limitation, disposition of the DIP Collateral for application towards

the DIP Obligations; and (iii) take any other actions or exercise any other rights or remedies

permitted under this Interim Order, the Final Order, the other DIP Documents (including the DIP

Term Sheet), or applicable law to effect the repayment of the DIP Obligations, in each case subject

to any Permitted Encumbrance (including, to the extent that the Prepetition Liens are valid,

enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid,

non-avoidable, and binding, the Prepetition Liens and the Adequate Protection Liens), and, to the

extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the

Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, to the Prepetition

Secured Obligations and the Adequate Protection Superpriority Claims.  Nothing herein shall

preclude the DIP Lender from seeking an order from the Court upon written notice (which may be

sent by e-mail) to the U.S. Trustee, counsel to the Debtors, counsel to the Official Committee (if

any), counsel to the Prepetition Agent, and counsel to the Prepetition Lenders authorizing the DIP

Lender to exercise any enforcement rights or remedies with respect to the DIP Collateral (subject

to any Permitted Encumbrance and, to the extent that the Prepetition Liens are valid, enforceable,

perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-

avoidable and binding, to the Prepetition Secured Obligations, the Prepetition Liens, the Adequate

Protection Superpriority Claims, and the Adequate Protection Liens) on less than five (5) business

(Page 44)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

days' notice or the Debtors' right to contest such relief.

c.      After delivery of a Termination Notice and expiration of the Default Notice Period, the DIP Lender, in its sole and absolute discretion, may immediately (i) (x) terminate any pending DIP Loans; (y) sweep all cash in any controlled accounts (to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the  Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, and solely to the extent that the Prepetition Secured Obligations are no longer outstanding), and (z) terminate the DIP Facility and all commitments thereunder and (ii) upon and after the occurrence of the Termination Date, the DIP Lender shall, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Lender to take any or all of the foregoing actions, at the same time or different times, unless the Court orders otherwise, and subject only to subparagraph (b) of this paragraph 15 and paragraph 19 of this Interim Order, as applicable, be immediately entitled to exercise all of its rights and remedies in respect of the DIP Collateral, in accordance with this Interim Order and the DIP Documents, as applicable, subject to any Permitted Encumbrance (including, to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, the Prepetition Liens and the Adequate Protection Liens), and, to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable and binding, to the Prepetition Secured Obligations and the Adequate Protection Superpriority Claims.

(Page 45)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

d.   The term "**Termination Date**" shall mean the date which is the earliest of (a) the Scheduled Maturity Date (as defined in the DIP Term Sheet), (b) the date of termination of the commitments under the DIP Facility and/or acceleration of any outstanding borrowings under the DIP Facility, in each case, by the DIP Lender following the occurrence of an Event of Default and upon the delivery of a Termination Notice to the Default Notice Parties, (c) the first business day on which the Interim Order expires by its terms or is terminated, unless the Final Order has been entered and become effective prior thereto, (d) the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code unless otherwise consented to in writing (which may be e-mail) by the DIP Lender, (e) the dismissal of any of the Chapter 11 Cases, unless otherwise consented to in writing (which may be e-mail) by the DIP Lender, or (f) the repayment in full in cash of all obligations and termination of all commitments under the DIP Facility.

e.   The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to this Interim Order and the DIP Documents as necessary to (i) permit the Debtors to grant the DIP Liens and to incur all DIP Obligations and all liabilities and obligations to the DIP Lender hereunder and under the DIP Documents, as the case may be, and (ii) authorize the DIP Lender to retain and apply payments and otherwise enforce its respective rights and remedies hereunder, subject to the provisions of paragraphs 15(a), 15(b), 15(c), and 19 hereof and subject to any Permitted Encumbrance (including, to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, the Prepetition Liens and the Adequate Protection

(Page 46)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

Liens), and, to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, to the Prepetition Secured Obligations and the Adequate Protection Superpriority Claims.

f.      Subject to paragraph 19 of this Interim Order, the Debtors shall reasonably cooperate with the DIP Lender in its efforts to enforce its liens and security interests in the DIP Collateral in accordance with this Interim Order and (other than the right to contest whether a Termination Event has occurred and is continuing) the Debtors shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its rights or remedies in the DIP Collateral.

g.      Nothing included herein shall prejudice, impair, or otherwise affect the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtors (including, as the case may be, other or additional adequate protection).

16.      ***Proofs of Claim, etc***.  The DIP Lender shall not be required to file a proof of claim in the Chapter 11 Cases or any Successor Case for any claim described herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Chapter 11 Cases or any Successor Case to the contrary, the DIP Lender is hereby authorized and entitled, in its sole and absolute discretion but not required, to file (and amend or supplement, as each sees fit) a proof of claim or aggregate proofs of claim in  the Chapter 11 Cases or any Successor Case for any claim described herein.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in the Chapter 11 Cases or any

(Page 47)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

Successor Case shall not apply to the DIP Lender.

17.    **_Payments Free and Clear_**.  Any and all payments or proceeds remitted to the DIP

Lender in accordance with the provisions of this Interim Order (including paragraph 19), the DIP

Documents (including the DIP Term Sheet), or any subsequent order of the Court shall be

irrevocable, received free and clear of any claim, charge, assessment or other liability.

18.    **_Other Rights and Obligations_**.

a.    _Good Faith Under Section 364(a) of the Bankruptcy Code; No Modification

or Stay of this Interim Order_.  The DIP Lender has acted in good faith in connection with the DIP

Facility, the DIP Loans, the DIP Documents (including the DIP Term Sheet), and this Interim

Order and is entitled to rely upon the protections granted herein and by section 364(e) of the

Bankruptcy Code.  Based on the findings set forth in this Interim Order and in accordance with

section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility as approved by this

Interim Order, and notwithstanding any modification, amendment, reversal, vacatur, or stay of any

or all of this Interim Order by a subsequent order of the Court or any other court, the DIP Lender

is entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such

appeal, modification, amendment, reversal, vacatur, or stay shall affect the validity and

enforceability of any DIP Obligation, DIP Lien, DIP Superpriority Claim or any other advances

made hereunder or the claims, liens, security interest, or priority authorized or created hereby or

pursuant to the DIP Documents (including the DIP Term Sheet).  Notwithstanding any such

modification, amendment, reversal, vacatur, or stay, any claim granted to the DIP Lender

(Page 48)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

hereunder arising prior to the effective date of such modification, amendment, reversal vacatur, or stay of any DIP Liens or of the DIP Superpriority Claims granted to or for the benefit of the DIP Lender shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Liens and the DIP Superpriority Claims granted herein, with respect to any such claim.

b.      *Credit Bid.*  The DIP Lender shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the full amount of the DIP Obligations (as to the DIP Collateral) in connection with any sale of all or any portion of the DIP Collateral, including (without limitation) any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code, by the Debtors, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, without the need for further court order authorizing the same; *provided* that any such credit bid must provide for the immediate and indefeasible repayment in cash and in full of all then outstanding Prepetition Secured Obligations upon the closing of such sale (to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding).  The Debtors shall not object to any such credit bidding up to the full amount of the applicable outstanding DIP Obligations, in each case including any accrued interest, fees, and expenses, in any sale of any DIP Collateral, as applicable, whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.  If the DIP Lender (either

(Page 49)

| Debtors: | Powin, LLC, *et al*. |
|---|---|
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

directly or through one or more affiliates) makes a credit bid in connection with any auction or other sale process relating to the sale or other disposition of any DIP Collateral subject to the terms herein, then for purposes of such auction or sale process or any applicable order of this Court, the DIP Lender (or one or more of its affiliates) shall be deemed to be a "qualified bidder" and its bid shall be a "qualified bid" regardless of whether any qualified bidder or qualified bid requirements are satisfied. In connection with the foregoing, the DIP Lender shall have the right to assign its respective rights to "credit bid" all or any portion of the applicable outstanding DIP Obligations to a newly formed acquisition vehicle.

c.      *DIP Lender Not Responsible Persons*. In (i) making the decision to make the DIP Loans, (ii) administering the DIP Facility and the DIP Loans, (iii) extending other financial accommodations to the Debtors under the DIP Documents, and (iv) making the decision to collect the indebtedness and obligations of the Debtors, the DIP Lender shall not be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to its exercise of any consent or other rights afforded it under the DIP Documents or this Interim Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law.

d.      *Binding Effect*. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors, and their successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any

(Page 50)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

Successor Case, or upon dismissal of any such Chapter 11 or Chapter 7 case.

    e.   <u>*No Waiver*</u>.

       i.  The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order or the other DIP Documents, as applicable, shall not constitute a waiver of any of the DIP Lender's rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses, or remedies of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including without limitation, the rights of the DIP Lender (1) to request conversion of the Chapter 11 Cases to a case under Chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, (2) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (3) to exercise any of the rights, claims or privileges (whether legal, equitable, or otherwise).

       ii.  The failure or delay on the part of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the other DIP Documents (including the DIP Term Sheet), or applicable law, as the case may be, shall not constitute a waiver of any of its respective rights hereunder, thereunder, or otherwise. No delay on the part of any party in the exercise of any right or remedy under this Interim Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of any party under this Interim Order shall be deemed to have been amended, modified,

(Page 51)

| Debtors: | Powin, LLC, *et al.* |
|---|---|
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the party against whom such amendment, modification, suspension, or waiver is sought.  No consents required hereunder by the DIP Lender shall be implied by any inaction or acquiescence by the DIP Lender.

f.      *No Third-Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party, or incidental beneficiary; *provided* that any holder of a Permitted Encumbrance, including the Prepetition Secured Parties, shall be entitled to enforce the rights granted to such parties under this Interim Order (including paragraph 19 hereof) and the senior priority of the Permitted Encumbrances, and, to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Superpriority Claims, and the Adequate Protection Liens.

g.      *Limitation on Surcharge*.  Without limiting the terms of the Carve-Out and subject to and effective upon the entry of the Final Order granting such relief, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the DIP Lender, the Carve-Out (other than parties entitled to assert a right to be paid under the Carve-Out), the DIP Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender

(Page 52)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

(and the beneficiaries of the Carve-Out in the case of a surcharge against the Carve-Out). No action, inaction or acquiescence by the DIP Lender shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Lender or the DIP Collateral.

h.    *No Marshaling*. Subject to and effective upon entry of the Final Order granting such relief, the DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

i.    *[Reserved*.]

j.    *Amendment*. The Debtors and the DIP Lender may amend, modify, supplement, or waive any provision of the DIP Term Sheet or DIP Document (a "**DIP Loan Amendment**") without further approval of the Court, upon notice to the U.S. Trustee and any statutory committees appointed in these Chapter 11 Cases; *provided* that (i) such DIP Loan Amendment is not material (for purposes hereof, a "**Material DIP Loan Amendment**" shall mean any modification or amendment that (1) increases the interest rate (other than as a result of the imposition of the default rate) or fees charged in connection with the DIP Facility, (2) increases the commitments of the DIP Lender to make DIP Loans under the DIP Documents, (3) changes the Termination Date and is undertaken in good faith by the DIP Lender, or (4) has an adverse impact on the holders of Permitted Encumbrances, Prepetition Secured Parties (including any modification of the rights of the Prepetition Secured Parties granted by paragraph 19 of this Interim Order) and (ii) the Debtors shall provide written notice of such non-Material DIP Loan Amendment on the docket. Any Material DIP Loan Amendment to any DIP Document must be

(Page 53)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

set forth in writing, signed by, or on behalf of the Debtors and the DIP Lender and approved by the Court on five (5) business days' notice to parties in interest in order to be effective, *provided* that the DIP Lender and the Debtors reserve the right to seek approval of any Material DIP Loan Amendment on an expedited basis.

k.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (i) the express terms or provisions of any of the DIP Term Sheet, the DIP Documents, the Motion, or any other agreements, on the one hand, and (ii) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Documents, the terms and provisions of this Interim Order prevail.

l.    <u>Survival of the Interim Order</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any plan in the Chapter 11 Cases, (ii) converting of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Cases, (iv) withdrawing of the reference of the Chapter 11 Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.  The terms and provisions of this Interim Order, including the DIP Liens and DIP Superpriority Claims granted pursuant to this Interim Order, and the DIP Documents and any priorities and protections granted to or for the benefit of the DIP Lender hereunder and thereunder shall continue in full force and effect to the fullest extent provided by section 364(e) of the Bankruptcy Code.

(Page 54)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

m.    *Enforceability*.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

n.    *No Waivers or Modification of Interim Order*.  The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Lender.  The Debtors may not seek to modify or to alter relative lien priority of the DIP Liens, DIP Superpriority Claims, Permitted Encumbrances, Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Liens, or Adequate Protection Superpriority Claims set forth in this Interim Order.

o.    *Waiver of any Applicable Stay*.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

p.    *Mandatory Prepayments*.  Notwithstanding anything in the DIP Term Sheet or any other DIP Document to the contrary, to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding, any mandatory prepayment required under the DIP Documents shall first be applied to the Prepetition Secured Obligations until such Prepetition Secured Obligations are indefeasibly repaid in cash in full, to the extent that any such mandatory prepayment is funded with Collateral (as defined in the Interim Cash Collateral Order) or proceeds therefrom.

(Page 55)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

19.     ***Junior Priority***.

a.     For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or any other DIP Document, (1) with respect to Unencumbered Property, the DIP Liens shall be subject and subordinate only to the Carve-Out; (2) with respect to property of the Debtors' estates that is subject to any Permitted Encumbrances, the DIP Liens shall be subject and subordinate only to the Carve-Out and any Permitted Encumbrance (so long as such Permitted Encumbrance is valid, enforceable, perfected, and non-avoidable and the obligations secured by such Permitted Encumbrance are still outstanding); and (3) with respect any administrative expense claims, the DIP Superpriority Claims shall be subject and subordinate only to the Carve-Out and the Adequate Protection Superpriority Claims (to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding).  Any payment received by the DIP Lender in violation of this paragraph 19 shall be held in trust for the benefit of the Prepetition Secured Parties and segregated and promptly paid over to the Prepetition Agent for application to the Prepetition Secured Obligations.  Unless and until the Prepetition Secured Obligations are indefeasibly repaid in full in cash (to the extent that the Prepetition Liens are valid, enforceable, perfected, and non-avoidable and the Prepetition Secured Obligations are legal, valid, non-avoidable, and binding), (a) the Debtors shall not make any payment (in cash or any other property) on account of the DIP Obligations, DIP Liens, DIP Superpriority Claims, or otherwise under this Interim Order, the DIP Term Sheet, or any other DIP Document, except (A) for payment of fees, costs, and expenses as

(Page 56)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

required under paragraph 13 hereof, (B) as may be expressly consented to in writing by the Prepetition Lenders (in their sole discretion), and (C) pursuant to further order of the Court; and (b) the DIP Lender (or any agent or other entity acting on behalf, or at the direction, of the DIP Lender) shall not be entitled to directly or indirectly exercise rights or remedies (including the exercise of any rights of setoff or recoupment and the rights and remedies of a secured creditor under the Uniform Commercial Code of any applicable jurisdiction or under this Interim Order) with respect to the Debtors or any DIP Collateral unless expressly consented to in writing by the Prepetition Secured Parties or pursuant to further order of the Court.

20.     **_Specific Reservations of Rights_**.  Notwithstanding anything to the contrary in this Interim Order or the DIP Documents, (i) the DIP Liens shall not attach to any assets that are not and do not become property of the Debtors' estates under section 541 of the Bankruptcy Code; and (ii) nothing in this Interim Order or the DIP Documents limits intellectual property licensees' rights under section 365(n) of the Bankruptcy Code or excuses the Debtors from performance of their obligations under executory contracts for which rejection has not yet been approved by an order of this Court.  All parties' rights are preserved, with respect to entry of a Final Order, regarding admission of evidence at a Final Hearing.

21.     **_Indemnification_**.  The Debtors shall protect, defend, indemnify, and hold harmless the Indemnified Parties for, from and against any and all claims, suits, liabilities, losses, costs, expenses (including reasonable, out-of-pocket attorneys' fees and costs) imposed upon or incurred by or asserted against any Indemnified Party arising out of or relating to the Debtors (and any

(Page 57)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

successors and assigns, and any subsidiaries or affiliates) prior loans, all Avoidance Actions, the

DIP Documents or the transactions contemplated thereby, except for those arising out of the fraud,

willful misconduct or gross negligence of an Indemnified Party as determined by a non-appealable

court order.  Indemnification under this provision shall include the right of advancement for any

indemnified claim or expense, subject to prompt notice by DIP Lender and approval by the Court

after notice and a hearing, and any costs and expenses incurred in the enforcement of any binding

provisions of the DIP Documents.

22.     ***Release***.  The Debtors forever and irrevocably (a) release, discharge, and acquit the

Released Parties[9] of and from any and all claims, demands, liabilities, responsibilities, disputes,

remedies, causes of action, indebtedness, and obligations, of every type arising prior to the Petition

Date, including, without limitation, any claims arising from any actions relating to any aspect of

the relationship between the Released Parties and the Debtors and their affiliates including any

equitable subordination claims or defenses, with respect to or relating to the DIP Obligations, any

and all claims and causes of action arising under the Bankruptcy Code, and any and all claims

regarding the validity, priority, perfection or avoidability of the liens or secured claims of the DIP

Lender; and (b) waive any and all defenses (including, without limitation, offsets and

counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-

avoidability of the DIP Obligations.

23.     ***Notice of Entry of Interim Order***.  The Debtors shall promptly serve copies of this

---

[9]     "**Released Parties**" means the Indemnified Parties.

(Page 58)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al*. |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (IV) Granting Related Relief* |

Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to any Official Committee (if appointed).

24.     **_Final Hearing_**.  The Final Hearing on the Motion shall be held on July 15, 2025, at 11:30 a.m. (prevailing Eastern time), and any objections to the relief sought in the Motion shall be filed with the Court no later than July 8, 2025.

25.     **_Headings_**.  This Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

26.     **_Rights Reserved to Move for Modification Under Local Rules_**.  Any party may move for modification of this Interim Order un accordance with Local Rule 9013-5(e).

27.     **_Retention of Jurisdiction_**.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## EXHIBIT A

### DIP TERM SHEET

**POWIN, LLC**

**Term Sheet**
**Secured Superpriority Debtor in Possession Financing**

**June {●}, 2025**

This term sheet (together with the exhibits hereto, the "***Term Sheet***") describes the principal terms and conditions on which FlexGen Power Systems, LLC (the "***DIP Lender***") will make a secured term loan facility (the "***DIP Facility***"), junior only to certain existing liens as agreed to by the DIP Lender, available to the Borrowers, in their capacity as debtors-in-possession in the chapter 11 cases being jointly administered under the case caption *In re Powin, LLC, et al.*, Case No. 25-16137 (MBK) (the "***Chapter 11 Cases***"), which cases are currently pending in the United States Bankruptcy Court for the District of New Jersey (the "***Bankruptcy Court***").[1]

This Term Sheet shall be a binding agreement from and after, and subject to, the entry of the Interim DIP Financing Order with respect to the DIP Facility Loans but does not purport to summarize all of the terms, conditions, representations, and other provisions with respect to the DIP Facility, which will be set forth in the DIP Documents. The effectiveness of this Term Sheet is conditioned upon the execution and delivery of signature pages to this Term Sheet by each of the parties hereto and shall be subject to the conditions precedent and other terms and conditions set forth herein. In the event of any conflict between this Term Sheet and the terms of the Interim DIP Financing Order or the Final DIP Financing Order, the terms of the Interim DIP Financing Order or the Final DIP Financing Order (as applicable) shall govern.

| | |
|---|---|
| **Borrowers:** | (i) Powin Project LLC; (ii) Powin, LLC; (iii) PEOS Holdings, LLC; (iv) Powin China Holdings 1, LLC; (v) Powin China Holdings 2, LLC; (vi) Charger Holdings, LLC; (vii) Powin Energy Ontario Storage, LLC; (viii) Powin Energy Operating Holdings, LLC; and (ix) Powin Energy Operating, LLC (collectively, the "***Borrowers***"). |
| **DIP Lender:** | FlexGen Power Systems, LLC |
| **DIP Facility:** | The DIP Lender will provide to the Borrowers a secured superpriority debtor-in-possession credit facility (the "***DIP Facility***") consisting of a delayed draw term loan facility in the aggregate principal amount of up to $27.5 million (the "***DIP Facility Commitment***," and the portion thereof drawn by the Borrowers, the "***DIP Facility Loans***"). |
| | Advances under the DIP Facility shall be made available to the Borrowers, subject to the additional terms and conditions set forth in this Term Sheet, as follows (each, a "***Funding Milestone***"): |
| | (i)    $10 million upon entry of the Interim DIP Financing Order (the "***Initial Advance***"); |
| | (ii)   $5 million upon entry of the Final DIP Financing Order; |

---

[1] Capitalized terms used but not defined in these introductory paragraphs have the meanings ascribed to such terms in the summary of terms and conditions set forth in the grid below.

| | |
|---|---|
| | (iii)   $7.5 million on August 4, 2025 (and subject to entry of the Final DIP Financing Order); and<br><br>(iv)   $5.0 million on August 4, 2025 (and subject to entry of the Final DIP Financing Order); *provided, however*, that the available amount of such advance shall be reduced by (i) $4 million to the extent the stalking horse bidder in connection with a Sale (as defined below) of the Borrowers' assets agrees to assume the employment agreements of substantially all of Borrowers' employees as part of the Sale, and (ii) $1 million to the extent the stalking horse bidder in connection with a Sale of the Borrowers' assets agrees to purchase substantially all of the Borrowers' inventory as part of the Sale.<br><br>Pending the entry of the Final DIP Financing Order, the DIP Lender shall be afforded all of the protections contained in the Interim DIP Financing Order. |
| **Use of Proceeds:** | The proceeds of the DIP Facility may only be used in accordance with the Approved Budget and the applicable DIP Financing Order. |
| **DIP Facility Interest Rate** | The DIP Facility Loans shall accrue interest at a rate per annum based on a 360-day year equal to 4.00%. All accrued interest on the DIP Facility Loans shall be paid in kind monthly on the first day of the month following the Initial Advance. "**Term SOFR**" shall mean, with respect to any interest period, the forward-looking term rate based on the secured overnight financing rate published by the Federal Reserve Bank of New York (or a successor administrator of the secured overnight financing rate) on the day that is two business days prior to the first day of such interest period. If such rate is not available for any reason, Term SOFR shall be determined by the DIP Lender in its reasonable discretion, acting in good faith and in a manner consistent with market practice.<br><br>During the continuance of an Event of Default (as defined below), any amounts outstanding under the DIP Facility will bear interest at an additional 2.00% per annum based on a 360-day year, and any such additional interest accruing upon the continuance of an Event of Default shall be payable in kind on the earlier of demand by the DIP Lender and the next interest payment date. |
| **Fees** | As a material inducement to the DIP Lender to make the DIP Facility Loans, the Borrowers shall pay the DIP Lender the following fees:<br><br>(i)   An upfront fee equal to 1.50% of the DIP Facility Commitment, which shall be fully earned upon entry of the Interim DIP Financing Order (the "**Commitment Fee**"), but shall only become payable on the applicable Funding Milestone, in each case, in an amount equal to 1.50% of the DIP Facility Loans made available to the Borrowers on the date of such Funding Milestone (whether or not DIP Facility Loans are actually advanced to the Borrowers on such date), and which fees shall be payable in kind; *provided that* any unpaid portion of the Commitment Fee shall become automatically payable on the Termination Date (as defined below); and |

| | | |
|---|---|---|
| | (ii) | A fee equal to 1.50% of the DIP Facility Commitment, which shall be fully earned upon entry of the Interim DIP Financing Order (the "***DIP Exit Fee***", and together with the Commitment Fee, the "***DIP Facility Fees***"), but shall only become payable on the date DIP Facility Loans are actually advanced to the Borrowers, in each case, in an amount equal to 1.50% of the DIP Facility Loans actually advanced to the Borrowers on such date, and which fees shall be payable in kind. |
| | | Once earned, the DIP Facility Fees shall be added to the principal amount of the DIP Loans and shall thereafter be treated as principal for all purposes under the DIP Facility, including the accrual of interest thereon at the non- default and default rates set forth above. |
| **Prepetition Secured Obligations** | (i) | *Prepetition Credit Agreement*. Pursuant to that certain Loan Agreement, dated as of October 1, 2024 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "***Prepetition Credit Agreement***," and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, including, without limitation, the Loan Documents (as defined in the Prepetition Credit Agreement), collectively, the "***Prepetition Loan Documents***"), by and among Powin Energy Intermediate LLC, as the Parent Pledgor (the "***Parent Pledgor***"), Powin, LLC, as the Borrower (the "***Prepetition Borrower***"), the subsidiary guarantors party thereto (the "***Subsidiary Guarantors***" and, together with the Parent Pledgor and Prepetition Borrower, the "***Prepetition Loan Parties***"), GLAS USA LLC, as the administrative agent and collateral agent (in such capacity, the "***Prepetition Agent***"), and the lenders party thereto (collectively, the "***Prepetition Lenders***" and, together with the Prepetition Agent, the "***Prepetition Secured Parties***"), the Prepetition Lenders provided Loans (as defined in the Prepetition Credit Agreement) to the Prepetition Borrower. |
| | (ii) | *Prepetition Guaranty*. Pursuant to Section 10 of the Prepetition Credit Agreement, the Parent Pledgor and the Subsidiary Guarantors guaranteed, on a joint and several basis, all of the Prepetition Secured Obligations (as defined below). |
| | (iii) | *Prepetition Loan Obligations*. As of June 9, 2025 (the "***Petition Date***"), the Prepetition Loan Parties were indebted and liable to the Prepetition Secured Parties in the outstanding principal amount of not less than $25,612,281.51 plus certain reimbursement obligations, fees, costs, expenses (including, without limitation, certain attorneys' fees and related fees, charges and disbursements), indemnification obligations, and any other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing or chargeable in respect thereof, in each case, to the extent provided in the Prepetition Loan Documents (as reduced by any payments received by the Prepetition Secured Parties during the Chapter 11 Cases to reduce such obligations, collectively, the "***Prepetition Secured Obligations***"). |

3

| | |
|---|---|
| | (iv) *Prepetition Liens*. Pursuant to the Security Documents (as defined in the Prepetition Credit Agreement), each of the Prepetition Loan Parties granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders liens on and security interests in (the "***Prepetition Liens***") all Collateral (as defined in the Prepetition Credit Agreement) (collectively, the "***Prepetition Collateral***"). |
| **Superpriority Administrative Expense Claims** | All amounts owing by the Borrowers under the DIP Facility (the "***DIP Obligations***") at all times will constitute allowed superpriority administrative expense claims in the Chapter 11 Cases, having priority over all claims and administrative expense claims against the Borrowers, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 361, 364(c)(1), 365, 503(a), 503(b), 506(c) (subject to entry of the Final DIP Order granting such relief), 507(a), 507(b), 546(c), 1113, 1114, or any other provisions of the Bankruptcy Code and any other claims against the Borrowers (the "***DIP Superpriority Claims***"); *provided, however*, that the DIP Superpriority Claims shall be subject to the Carve-Out and junior and subordinate in all respects to any administrative expense claims granted as Adequate Protection Obligations (as defined below) to the Prepetition Secured Parties. |
| **Collateral** | All of the DIP Obligations shall be secured by the following (collectively, the "***DIP Liens***"):<br><br>(i) pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, first priority, fully perfected security interests in and liens on all of the Borrowers' rights in property of the Borrowers' estates as of the Petition Date that, as of the Petition Date, were unencumbered (and do not become perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code), including, subject to and upon entry of the Final DIP Financing Order, the proceeds of any claims and Causes of Action under chapter 5 of the Bankruptcy Code of the Borrowers or their estates (all of the foregoing property, collectively, the "***Unencumbered Property***"), in all cases subject and subordinate only to the Carve-Out and any security interests and liens granted as Adequate Protection Obligations; and<br><br>(ii) pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, fully perfected security interests in and liens on all of the Borrowers' rights in property of the Borrowers' estates that are subject to valid, perfected, and non-avoidable liens that (x) were in existence immediately prior to the Petition Date, including the Prepetition Liens granted to the Prepetition Secured Parties, or (y) were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and including (z) any security interests and liens granted as Adequate Protection Obligations (as defined below) (collectively, the "***Permitted Prior Liens***"), which security interests and liens shall be junior and subordinate only to such Permitted Prior Liens (for so long as the obligations secured by such liens remain |

4

|  | outstanding) and the Carve-Out (such collateral, collectively with the Unencumbered Property, the "***DIP Collateral***"). |
|---|---|
|  | All liens authorized and granted pursuant to the DIP Financing Orders entered by the Bankruptcy Court approving the DIP Facility shall be deemed effective and perfected, and no further filing, notice or act will be required to effect such perfection. |
|  | The DIP Lender shall be permitted, but not required, to make any filings, deliver any notices, make recordations, perform any searches or take any other acts as may be desirable under state law in order to reflect the security, perfection or priority of the DIP Lender's claims described herein. |
|  | For purposes of this Term Sheet: "***Causes of Action***" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, and license of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Closing Date, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, fraudulent transfer or fraudulent conveyance or voidable transaction law, violation of local, state, or federal or non-U.S. law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or similar local, state, or federal U.S. or non U.S. law; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of title 11 of the United States Code; (e) any state or foreign law pertaining to actual or constructive fraudulent transfer, fraudulent conveyance, and (f) any "lender liability" or equitable subordination claims or defenses. |
| **Adequate Protection:** | Pursuant to and in accordance with the interim order authorizing Borrowers use of the cash collateral of the Prepetition Secured Parties [Docket No. 68] (the "***Interim Cash Collateral Order***"), and subject to the final order with respect to the use of such collateral (such order, together with the Interim Cash Collateral Order, the "***Cash Collateral Orders***"), the Prepetition Secured Parties have been granted certain adequate protection liens, claims and other entitlements with respect to the potential diminution in value of their interests in the Prepetition Collateral (such liens, claims and entitlements, as provided and set forth in the Cash Collateral Orders, the "***Adequate Protection Obligations***"). |
| **Carve-Out** | The DIP Liens and the DIP Superpriority Claims shall, in all instances, be subject and subordinate to prior payment of the Carve-Out. The "***Carve-Out***" |

means proceeds of any DIP Collateral used to pay only: (i) unpaid fees and expenses required to be paid by the Borrowers to the Clerk of the Court or to the Office of the United States Trustee under 28 U.S.C. § 1930(a)(6); (ii) reasonable fees and expenses incurred by a trustee in any Successor Case under section 726(b) of the Bankruptcy Code in an aggregate cumulative amount not to exceed $25,000; (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses incurred by persons or firms retained by the Borrowers pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "***Debtor Professionals***") and permitted by the Approved Budget (the "***Allowed Professional Fees***") at any time before the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined below) (the "***Pre-Carve-Out Professional Fees***"); and (iv) Allowed Professional Fees of Debtor Professionals in an aggregate amount not to exceed $250,000 in the aggregate incurred on or after the first business day following delivery by the DIP Lender of the Carve-Out Trigger Notice (the amounts set forth in this clause (iv) being the "***Post-Carve-Out Trigger Notice Cap***").

For purposes of the foregoing, "***Carve-Out Trigger Notice***" shall mean a written notice delivered by email (or other electronic means) or in writing by the DIP Lender to the Borrowers, their lead restructuring counsel, and the U.S. Trustee (collectively, the "***Carve-Out Notice Parties***"), which notice may be delivered following the Maturity Date or the occurrence and during the continuation of an Event of Default and acceleration of the obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

Prior to the Maturity Date, and so long as a Carve-Out Trigger Notice has not been delivered, the Borrowers shall be authorized to direct funds to a segregated designated professional fee trust account (the "***Professional Fee Account***") in the amount equal to, but not to exceed, previously incurred fees for the Debtor Professionals permitted by the Approved Budget (the "***Budgeted Estate Professional Expenses***"). Except for permitting funding the Carve-Out from the DIP Collateral, the DIP Lender shall have no responsibility, liability, or obligation whatsoever to fund, direct payment or reimbursement of any fees or disbursements, or otherwise ensure that the Borrowers fund the Professional Fee Account or that the Professional Fee Account has funds equal to the aggregate amount of Budgeted Estate Professional Expenses for any applicable period. The Borrowers may fund the Professional Fee Account on a weekly basis in an amount up to, but not to exceed, the Budgeted Estate Professional Expenses for that week. Such funds shall be held in an identifiable segregated account for the benefit of the Debtor Professionals to be applied to the Allowed Professional Fees of the Debtor Professionals. Any Allowed Professional Fees shall be paid first out of the Professional Fee Account. Any excess amounts in the Professional Fee Account after payment of the Allowed Professional Fees shall be subject in all respects to the DIP Liens.

For the avoidance of doubt, the delivery and effectiveness of a Carve-Out Trigger Notice shall not limit or impair the Borrowers' right to use funds in the Professional Fee Account to pay Allowed Professional Fees. Once all payments

| | are made from the Professional Fee Account after the Court rules on final fee applications, any remaining amounts shall be returned to the DIP Lender. |
|---|---|
| **Closing Date:** | The first business date on which the Conditions to Closing (as defined below) shall have been satisfied and the making of the Initial Advance shall have occurred (the "***Closing Date***"). |
| **Conditions to Closing:** | The closing of the DIP Facility will be subject to the satisfaction of all conditions precedent to be set forth in this Term Sheet deemed necessary or appropriate by the DIP Lender (collectively, the "***Conditions to Closing***"), including but not limited to:<br><br>(i)    no later than two days prior to the filing of the motion seeking authorization for the Borrowers to enter into the DIP Facility (the "***DIP Motion***"), the DIP Lender shall have received a cash forecast for the period from the filing of the DIP Motion through the following 8-weeks setting forth projected cash flows and disbursements that is acceptable to the DIP Lender (the "***Initial Approved Budget***");<br><br>(ii)   other than as set forth herein, the Borrowers shall not have executed, entered into or otherwise committed to any plan or restructuring support agreement or any other agreement or understanding concerning the terms of a sale of assets, chapter 11 plan, or other exit strategy without the consent of the DIP Lender;<br><br>(iii)  an interim debtor-in-possession financing order, substantially on the terms contemplated in this Term Sheet and acceptable to the DIP Lender in its sole and exclusive discretion (the "***Interim DIP Financing Order***"), shall have been entered by the Bankruptcy Court on or before June 24, 2025, and shall not have been vacated, reversed, or stayed, appealed, or modified or amended without the prior written consent of the DIP Lender;<br><br>(iv)  reimbursement in full in cash of the DIP Lender's reasonable and documented out-of-pocket costs and expenses; and<br><br>(v)   such other deliverables as the DIP Lender may reasonably require.<br><br>Modification of the DIP Financing Orders shall require the consent of the DIP Lender, in its sole and exclusive discretion. DIP Lender may, in its sole discretion, waive any of the above conditions precedent other than the conditions precedent regarding entry of the Initial DIP Financing Order. |
| **Conditions Precedent to DIP Facility Loans:** | The obligations of the DIP Lender to make any DIP Facility Loan will be subject to conditions precedent customarily found in loan documents for similar debtor-in-possession financings, including, but not limited to:<br><br>(i)    the Conditions to Closing shall have been satisfied;<br><br>(ii)   with regard to all DIP Facility Loans other than the Initial Advance, (y) a definitive credit agreement (the "***DIP Credit Agreement***") and |

|  | related security agreement(s), security documents, and other agreements, instruments and documents required by the DIP Lender (collectively, and together with the DIP Credit Agreement, the "***DIP Documents***") shall have been executed and delivered by the Borrowers to the DIP Lender, in form and substance acceptable to the DIP Lender in its sole and exclusive discretion, and (z) entry of a final debtor-in-possession financing order, substantially on the terms contemplated by this Term Sheet and in form and substance acceptable to the DIP Lender in its sole and exclusive discretion (the "***Final DIP Financing Order***," together with the Interim Order, collectively, the "***DIP Financing Orders***") which shall not have been vacated, reversed or stayed, appealed (and for which the appeal period has expired or has been waived), or modified or amended without the prior written consent of the DIP Lender; |
|  |  |
|  | (iii)  the Borrowers shall be in compliance with the terms of the Interim DIP Financing Order or the Final DIP Financing Order, as applicable; |
|  | (iv)  the Approved Budget shall demonstrate a need for the funds to be advanced under the DIP Facility and the Borrowers shall have delivered at least three business days prior to the applicable draw date (or such shorter period as the DIP Lender may agree in its sole and exclusive discretion) a borrowing notice to the DIP Lender; |
|  | (v)  the Debtor shall have provided a certificate confirming that all of the representations and warranties of the Borrowers in this Term Sheet or the DIP Documents, as applicable, remain true and correct, unless otherwise agreed by the DIP Lender; |
|  | (vi)  there shall be no defaults or Events of Default under the terms of this Term Sheet or the DIP Documents, as applicable, or any defaults or Events of Default shall have been waived by the DIP Lender; and |
|  | (vii)  the Borrowers shall be in compliance with the Milestones (as set forth below). |
|  | With the exception of the conditions related to entry of the Interim DIP Financing Order and Final DIP Financing Order, DIP Lender may, in its sole and exclusive discretion, waive any of the above conditions precedent. |
| **Milestones:** | Each of the Borrowers will agree to comply with the following deadlines (each of which may be extended or waived with the prior written consent of the DIP Lender, which may be by e-mail, without further order of the Bankruptcy Court) (collectively, the "***Milestones***"): |
|  | (i)  The Bankruptcy Court shall have entered the Interim DIP Financing Order by no later than June 24, 2025. |
|  | (ii)  The Bankruptcy Court shall have entered the Final DIP Financing Order by no later than July 15, 2025. |

8

| | |
|---|---|
| | (iii) The Borrowers shall file, by June 27, 2025, a motion to sell all or substantially all of the Debtors' assets through a sale pursuant to section 363 of the Bankruptcy Code (the "***Sale***"), which motion shall be in form and substance acceptable to the DIP Lender (the "***Sale Motion***"). |
| | (iv) The Bankruptcy Court shall have entered an order approving the bidding procedures contemplated by the Sale Motion by July 15, 2025. |
| | (v) The Bankruptcy Court shall have entered an order approving the Sale by no later than August 8, 2025, and such order shall be in form and substance acceptable to the DIP Lender in its sole and exclusive discretion. |
| | (vi) The Sale shall be consummated, and the Prepetition Secured Obligations shall be paid off in full, by no later than August 11, 2025. |
| | The extension of any Milestone is subject to the consent of the DIP Lender at its sole discretion. For the avoidance of doubt, the DIP Lender reserves the right to amend the dates set forth for each of the Milestones in a proposed Final DIP Financing Order to be filed with the Court before any such hearing to consider entry of the Final DIP Financing Order (the "***Final DIP Hearing***"). |
| **Representations and Warranties:** | The DIP Documents will contain representations and warranties customary for debtor-in-possession facilities of this size, type, and purpose. |
| **Mandatory Prepayments:** | Until the DIP Facility has been repaid in full, and subject to the Carve-Out, the following mandatory prepayments will be required to be made (unless waived in the sole and exclusive discretion of the DIP Lender) toward the DIP Facility within three (3) business days of receipt by any Borrower: (i) 100% of any net cash proceeds from any asset disposition; (ii) 100% of any proceeds received (x) under any insurance policy on account of the damage or destruction of any assets or property of any Borrower and (y) due to any taking or condemnation of any assets or property; (iii) 100% of the net cash proceeds of the incurrence or issuance of any indebtedness or equity by any Borrower; *provided that* no Borrower shall incur or issue any additional postpetition superpriority indebtedness or liens unless such amount shall be sufficient to prepay the DIP Facility in cash in full; (iv) 100% of any proceeds received or any cash received by or paid to or for the account of any Borrower not in the ordinary course of business, including but not limited to tax refunds, pension plan reversions, indemnity payments and any purchase price adjustments (other than casualty and condemnation event proceeds) and (v) the consummation of the Sale. |
| **Reporting and Information:** | Reporting requirements usual and customary for financings of this type, including, without limitation, the requirement that the Borrowers provide the DIP Lender, with reasonable promptness, such information regarding the operations, business affairs, and financial condition of the Borrowers as the DIP Lender may reasonably request in writing from time to time. |
| **Budget; Variance Covenant; Other** | The Borrowers shall prepare for the DIP Lender's review and approval an 8-week detailed rolling cash projection similar in form to the 8-week cash |

| | |
|---|---|
| **Financing Covenants:** | projection attached hereto as **<u>Exhibit A</u>** (the "***Initial Approved Budget***"), which shall be thereafter updated, as necessary (each, a "***Proposed Budget***," together with the Initial Approval Budget, the "***Budget***").<br><br>Upon the Borrowers' receipt of the DIP Lender's approval (in its sole and exclusive discretion, and in writing, with e-mail notice being sufficient) of a Proposed Budget, such budget shall become an "***Approved Budget***" and shall replace the then-operative Approved Budget for all purposes.<br><br>The Initial Approved Budget shall be the Approved Budget until such time as a new Proposed Budget is approved, following which such Proposed Budget shall constitute the Approved Budget until a subsequent Proposed Budget is approved. The Borrowers shall operate in accordance with the Approved Budget and all disbursements shall be consistent with the provisions of the Approved Budget (subject to the Permitted Disbursement Variance (as defined below)). The Borrowers may submit additional Proposed Budgets to the DIP Lender, but until the DIP Lender approves such Proposed Budget in writing, it shall not become an Approved Budget and the Borrowers shall continue to comply with the then-operative Approved Budget.<br><br>Subject to the schedule below, and beginning on June 30, 2025, (the "***Initial Reporting Date***, and with each subsequent Monday, collectively and individually, each a "***Reporting Date***"), the Borrowers shall deliver to the DIP Lender, in a form consistent with the form of the Approved Budget, a variance report describing in reasonable detail, by line item (including capital expenditures and professional fees, excluding the fees of Lender's professionals), (i) the actual disbursements of the Borrowers and actual receipts during the applicable Testing Period (as defined below); (ii) any variance (whether positive or negative, expressed as a percentage) between the actual disbursements during such Testing Period against the estimated disbursements for the applicable Testing Period, as set forth in the applicable Approved Budget (each a "***Variance Report***"); and (iii) comments relating to any variances between budgeted and actual disbursements (the "***FA Reports***").<br><br>As used herein, "***Testing Period***" shall mean the cumulative period from the beginning date of the Approved Budget through the Sunday that is eight calendar days prior to the applicable Reporting Date. The last day of each Testing Period shall be a "***Testing Date***".<br><br>As of any applicable Testing Date, actual cumulative disbursements (excluding DIP Lender professional fees) on an aggregate basis (the "***Actual Disbursement Variance***") shall not exceed budgeted cumulative disbursements (excluding DIP Lender professional fees) on an aggregate basis as reflected in the Approved Budget for such period, by more than 15% (the "***Permitted Disbursement Variance***"). Any overperformance of the Approved Budget may be used to increase the amount held in the reserve line item for the Borrowers' wind down expenses.<br><br>If the Actual Disbursement Variance for such period is less than or equal to the Permitted Disbursement Variances, the amount by which each Actual Disbursement Variance is less than the Permitted Disbursement Variance shall |

| | |
|---|---|
| | be carried forward to the next Testing Date and added to the Permitted Disbursement Variance for such next Testing Date.<br><br>The Borrowers shall be deemed to be in compliance with the Approved Budget for all purposes under this Term Sheet and the DIP Financing Orders unless, as of any Testing Date, the Borrowers' actual disbursements vary from the Approved Budget by more than the applicable Permitted Disbursement Variance as measured on any Testing Date (the "***Variance Covenant***").<br><br>The DIP Lender and the financial advisor for the Borrowers shall hold weekly calls to discuss the Budget and relevant portions of the Chapter 11 Cases, including actual performance against the Approved Budget, status of the Sale process, and receive a business update.<br><br>DIP Lender may, in its sole and exclusive discretion, waive or extend any of the foregoing Approved Budget or Variance reporting or approval procedures, provided such procedure change is not more onerous or otherwise adverse to the Borrower. |
| **Affirmative Covenants:** | The DIP Documents will contain affirmative covenants customary for debtor-in-possession facilities of this size, type and purpose including, but not limited, to the following as reasonably determined by the DIP Lender:<br><br>(i)   Compliance with the Milestones.<br><br>(ii)   The Borrowers shall at all times, (a) comply with the DIP Financing Orders and each other order entered by the Bankruptcy Court in the Chapter 11 Cases and all applicable laws, rules and regulations, and (b) comply with the Approved Budget, subject to the Permitted Disbursement Variance.<br><br>(iii)   Compliance with the Approved Budget, including delivery of each Proposed Budget and Variance Report.<br><br>(iv)   Borrowers agree to provide the DIP Lender and its counsel with draft copies of all material motions, applications, supporting papers and notices prepared by any Borrower (including forms of orders and notices to interested parties) relating to the assumption and assignment of any executory contract or unexpired lease, or otherwise relating to the transactions contemplated by the Sale not later than two business days prior to filing.<br><br>(v)   Borrowers shall during normal business hours and without interruption of operations: (a) afford DIP Lender and its Representatives (as defined below) full and free access to and the right to inspect and appraise all of the properties, assets, premises, bank accounts, books and records, contracts and other documents and data related to the assets of the Borrowers; and (b) furnish the DIP Lender and its Representatives with such financial, operating and other data and information related to such assets as the DIP Lender or any of its Representatives may reasonably request. DIP Lender and its Representatives shall be entitled to meet |

11

| | |
|---|---|
| | with key personnel as requested. For purposes hereof, "***Representatives***" shall mean any person or persons designated from time to time by the DIP Lender. |
| | (vi) Except as consented to in writing by DIP Lenders, Borrowers shall conduct, and/or shall instruct its management to conduct, operations in the ordinary course of business consistent with past practice, *provided, however,* that Borrowers (i) may continue to implement the LTSA Program as defined in the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Enter Into New Customer Program with Existing Customers and (II) Granting Related Relief* [Docket No. 15]; and (ii) shall not grant "IP access" to any customers unless contractually obligated to do so. |
| | DIP Lender may, in its sole and exclusive discretion, waive any of the above affirmative covenants. |
| **Negative Covenants:** | The DIP Documents will contain negative covenants customary for debtor-in-possession facilities of this size, type and purpose including, but not limited to, the following as reasonably determined by the DIP Lender: |
| | (i) The Borrowers will not seek any other debtor-in-possession financing with liens senior or *pari passu* to the DIP Lender's liens during the pendency of its bankruptcy proceedings. |
| | (ii) The Borrowers shall not use any funds or the proceeds of the DIP Facility in a manner or for a purpose other than in accordance the Approved Budget, or on such other terms as the DIP Lender may agree. |
| | (iii) Without the prior written consent of the DIP Lender, the Borrowers will not sell, lease or otherwise transfer or dispose of any material assets of the Borrowers, other than in the ordinary course of business, or otherwise in accordance with the Approved Budget. |
| | (iv) The Borrowers shall not open any new deposit or securities accounts; *provided however*, the Borrowers may open deposit or securities accounts if such account is pledged to the DIP Lender and the DIP Lender has received an account control agreement in form and substance reasonably acceptable to the DIP Lender. |
| | (v) No Borrower shall do, cause to be done, and agree to do or cause to be done any of the following: (a) create, incur, assume or permit to exist any indebtedness or liens, other than in respect of the DIP Facility, Prepetition Loan Documents, or Adequate Protection Obligations; (b) purchase, hold, or acquire (including pursuant to any merger, consolidation or amalgamation with a person that is not a wholly owned subsidiary immediately prior to such merger, consolidation or amalgamation) any equity interests, evidences of indebtedness or other securities of, make or permit to exist any loans or advances to or guarantees of the obligations of, or make or permit to exist any investment or any other interest in any other person other than the |

| | |
|---|---|
| | subsidiaries of the Borrowers as of the petition date; (c) merge into, or consolidate or amalgamate with, any other person, or permit any other person to merge into or consolidate with it, or sell, transfer, license, lease or otherwise dispose of (in one transaction or in a series of transactions) all or any part of its assets, or issue, sell, transfer or otherwise dispose of any equity interests of any Borrower or any subsidiary of any Borrower, or purchase, lease or otherwise acquire (in one transaction or a series of transactions) all or any substantial part of the assets of any other person or any division, unit or business of any other person, other than (i) asset sales approved by an order of the Bankruptcy Court that is in form and substance acceptable to the DIP Lender in its reasonable discretion or is otherwise in accordance with the Approved Budget, (ii) asset sales in the ordinary course of business and consistent with past practice and (iii) dispositions of obsolete, worn out, used or surplus property in the ordinary course of business and consistent with past practice; (d) incur or make any dividend or distribution (whether in cash, property, securities or otherwise), investment, loan or other payment without the prior written consent of the DIP Lender, other than as expressly contemplated under the Approved Budget; (e) modify or alter (i) in any material manner the nature and type of its business or the manner in which such business is conducted or (ii) its organizational documents, except as required by the Bankruptcy Code or a plan of reorganization and otherwise acceptable to the DIP Lender; (f) subject to the DIP Lender's discretion, not to be unreasonably withheld, assume or reject any executory contract or unexpired lease; (g) engage in any activities that would result in any Borrower becoming an "investment company" as defined in, or subject to regulation under, the Investment Company Act of 1940; or (h) transfer any cash or cash equivalents that constitute DIP Collateral to a subsidiary of any Borrower without the prior written approval of the DIP Lender (other than as expressly contemplated under the Approved Budget). |
| | (vi)    Such additional covenants as the DIP Lender and the Borrowers may agree. |
| | DIP Lender may, in its sole and exclusive discretion, waive any of the above negative covenants. |
| **Events of Default:** | "***Events of Default***" under the DIP Facility shall contain events of default usual and customary for debtor-in-possession facilities of this size, type and purpose including, but not limited to, the following as determined by the DIP Lender: |
| | (i)    the Interim DIP Financing Order at any time ceases to be in full force and effect, or shall be vacated, reversed, or stayed, or modified or amended, or shall not have been entered on or before June 24, 2025; |
| | (ii)    the Final DIP Financing Order at any time ceases to be in full force and effect, or shall be vacated, reversed, or stayed, modified or amended, or shall not have been entered on or before July 17, 2025; |

13

|  |  |  |
|---|---|---|
|  | (iii) | failure of the Borrowers to comply in any material respect with the terms of the applicable DIP Financing Order and such failure shall remain unremedied for more than five (5) business days after receipt by the Debtors, any Committees appointed in these cases, and the U.S. Trustee of written notice thereof; |
|  | (iv) | the failure of any Borrower to (a) comply with the Variance Covenant, (b) have an Approved Budget; (c) comply with any negative covenant or certain other customary affirmative covenants in the Term Sheet or with any other covenant or agreement contained in the DIP Financing Orders or DIP Documents in any respect or (d) comply with any other covenant or agreement contained in this Term Sheet subject, in the case of the foregoing clause (d), to a grace period of two business days; |
|  | (v) | other than payments authorized by the Bankruptcy Court and which are set forth in the Approved Budget to the extent authorized by one or more "first day" orders or other orders reasonably satisfactory to the DIP Lender, any Borrower shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness or payables; |
|  | (vi) | (a) any of the Chapter 11 Cases shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; (b) a Chapter 11 trustee or an examiner (other than a fee examiner) with enlarged powers relating to the operation of the business of any Borrower (powers beyond those expressly set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed; (c) any other superpriority claim or grant of any other lien (including any adequate protection lien) other than as provided for herein which is *pari passu* with or senior to the claims and liens of the DIP Lender shall be granted in any of the Chapter 11 Cases; or (d) the filing of any pleading by any Borrower seeking or otherwise consenting to or supporting any of the matters set forth in clause (a) through clause (c) of this subsection (vi); |
|  | (vii) | except for an order granting the currently pending Expedited Motion of Applied Surety Underwriters, Siriuspoint America Insurance Company and Pennsylvania Insurance Company for Relief from the Automatic Stay with Respect to Customs Bond [Docket No. 85], the Bankruptcy Court shall enter one or more orders during the pendency of the Chapter 11 Cases granting relief from the automatic stay to the holder or holders of any lien evidencing indebtedness in excess of $150,000 to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on assets of any Borrower; |
|  | (viii) | the Borrowers petition the Bankruptcy Court to obtain additional financing *pari passu* or senior to the DIP Facility; |
|  | (ix) | the Borrowers' "exclusive period" under section 1121 of the Bankruptcy Code for the filing of a plan of reorganization terminates; |

14

| | |
|---|---|
| | (x)   the consummation of a sale of any material portion of the DIP Collateral without the DIP Lender's prior written consent (other than through the contemplated Sale or a sale in the ordinary course of business that is contemplated by the Approved Budget); |
| | (xi)   any Borrower (A) engages in or supports any challenge to the validity, perfection, priority, extent or enforceability of the DIP Facility or the liens on or security interest in the assets of the Borrowers securing the DIP Obligations, including without limitation seeking to equitably subordinate or avoid the liens securing such indebtedness or (B) engages in or supports any investigation or asserts any claims or causes of action (or directly or indirectly support assertion of the same) against the DIP Lender; |
| | (xii)   the entry of an order by the Bankruptcy Court in favor of any statutory committee appointed in these Cases by the U.S. Trustee (each, a "***Committee***"), any ad hoc committee, or any other party in interest, (i) sustaining an objection to claims of the DIP Lender, or (ii) avoiding any liens held by the DIP Lender; |
| | (xiii)   the allowance of any claim or claims under section 506(c) of the Bankruptcy Code against any of the DIP Collateral; |
| | (xiv)   the inaccuracy in any material respect of any representation of any Borrower when made or deemed made; |
| | (xv)   the failure to meet any Milestone; |
| | (xvi)   entry of an order by the Bankruptcy Court in favor of any Committee, any ad hoc committee, or any other party in interest, (i) granting such party standing to pursue any claims against the DIP Lender, (ii) sustaining an objection to claims of the DIP Lender, or (iii) avoiding any liens held by the DIP Lender; and |
| | (xvii)   the Termination Date (as defined below) shall have occurred. |
| **Remedies:** | Upon the occurrence and during the continuance of any Event of Default, and without further application to the Bankruptcy Court, the automatic stay provisions of Section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender to take any of the following actions, at the same or different time: |
| | (i)   issue a written notice (the "***Remedies Notice***") (which may be by e-mail) to the Borrowers and their counsel, counsel for any Committee, and the U.S. Trustee (the "***Remedies Notice Parties***") declaring the occurrence of the Termination Date (as defined below); |
| | (ii)   issue a Carve-Out Trigger Notice (as defined below); |

| | |
|---|---|
| | (iii) declare all DIP Obligations to be immediately due and payable without presentment, demand or protest or other notice of any kind, all of which are expressly waived by the Borrowers; |
| | (iv) declare the suspension or termination of the DIP Facility as to any further liability or obligation of the DIP Lender thereunder, but without affecting the DIP Liens or DIP Obligations (the "***Termination Notice***"); and |
| | (v) charge the default rate of interest under the DIP Facility. |
| | During the five business days immediately following the date the DIP Lender delivers a Remedies Notice to the Remedies Notice Parties (the "***Remedies Notice Period***"), the DIP Lender and/or Borrowers may seek an emergency hearing (a "***Stay Relief Hearing***") to determine whether an Event of Default has occurred, and the filing of any such motion shall toll the Remedies Notice Period. In the event the Bankruptcy Court determines during a Stay Relief Hearing that an Event of Default has occurred, the Court may fashion an appropriate remedy, which may include the exercise of any and all rights available to the DIP Lender under this Term Sheet, the DIP Credit Agreement, the Interim DIP Financing Order, and/or the Final DIP Financing Order, as applicable. |
| | Upon expiration of the Remedies Notice Period, if a motion seeking emergency relief has not been filed or unless ordered otherwise by the Court, the automatic stay provisions of Section 362 of the Bankruptcy Code shall be vacated and modified without further order of the Bankruptcy Court to the extent necessary to permit the DIP Lender to exercise any and all remedies against the DIP Collateral permitted under state law. |
| **Maturity/Termination Date:** | The DIP Facility shall automatically terminate without further notice or court proceedings on the earliest to occur of: |
| | (i) August 8, 2025 (the "***Scheduled Maturity Date***"); |
| | (ii) the date of termination of the commitments under the DIP Facility and/or acceleration of any outstanding borrowings under the DIP Facility, in each case, by the DIP Lender following the occurrence of an Event of Default and upon the delivery of a Termination Notice to the Remedies Notice Parties; |
| | (iii) the first business day on which the Interim DIP Financing Order expires by its terms or is terminated, unless the Final DIP Financing Order has been entered and become effective prior thereto; |
| | (iv) the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code unless otherwise consented to in writing (which may be e-mail) by the DIP Lender; |

16

| | |
|---|---|
| | (v)    the dismissal of any of the Chapter 11 Cases, unless otherwise consented to in writing (which may be e-mail) by the DIP Lender; or |
| | (vi)    the repayment in full in cash of all obligations and termination of all commitments under the DIP Facility |
| | (each, a "***Termination Date***"), unless extended with the prior written consent (which may be by e-mail) of the DIP Lender. |
| **Credit Bidding:** | The Initial DIP Financing Order shall provide that the DIP Lender shall have the right to serve as the stalking horse bidder in connection with any sale or disposition of assets by the Borrowers in the Chapter 11 Cases and to credit bid (pursuant to section 363(k) of the Bankruptcy Code and/or applicable law) the DIP Obligations, in whole or in part, in connection with any sale or disposition of assets by the Borrowers in the Chapter 11 Cases and shall not be prohibited from making such credit bid "for cause" under section 363(k) of the Bankruptcy Code. |
| **Right of First Refusal** | The DIP Lender shall have a right of first refusal to act as the stalking horse bidder in connection with the Sale of the Borrowers' assets. |
| **Stalking Horse Requirements** | To the extent the DIP Lender elects not to serve as the stalking horse bidder in connection with the Sale, Borrowers shall have the right to select an alternative stalking horse bidder (an "***Alternative Stalking Horse***") and the DIP Lender shall have the continued right to credit bid the DIP Obligations in any auction. To be acceptable, any bid by an Alternative Stalking Horse must provide a reasonable offer representing the highest and best bid received by the Borrowers at the time the bid was made by the Alternative Stalking Horse, which bid shall be subject to the approval of the Bankruptcy Court and shall include funding for repayment of the DIP Obligations in full and allowed closing costs. |
| **DIP Facility Amendments:** | In order to amend, waive, or modify provisions related to this Term Sheet or any of the DIP Documents, the express written consent of the DIP Lender shall be required. |
| **Section 506(c) Waiver:** | The Final DIP Financing Order shall include a ruling that, except to the extent of the Carve-Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender; and the Borrowers shall irrevocably waive and shall be prohibited from asserting any claim described in this paragraph, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender upon the DIP Collateral. |

| No Marshaling: | The Final DIP Financing Order shall provide that the DIP Lender may exercise all remedies available under this Term Sheet and the DIP Documents, as applicable, without any requirement first to look to exercise any of its or their rights against any particular collateral or party or to exhaust any remedies available to it or them against any particular collateral or party or to resort to any other source or means of obtaining payment of any of such obligations or to elect any other remedy. Subject to entry of the Final DIP Financing Order, in no event shall any of the DIP Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the collateral securing the DIP Facility Loans. |
|---|---|
| Section 552(b): | The Final DIP Financing Order shall provide that the DIP Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, the "equities of the case" exception under sections 552(b)(i) and (ii) of the Bankruptcy Code shall not apply to such parties with respect to the proceeds, products, rents, issues or profits of any of their collateral, and no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the collateral under section 552(b) of the Bankruptcy Code.<br><br>Furthermore, subject to entry of the Final DIP Financing Order, the Borrowers and their estates shall be deemed to have irrevocably waived and have agreed not to assert any claim or right under sections 552 or 726 of the Bankruptcy Code to avoid the imposition of the liens of the DIP Lender on any property acquired by any of the Borrowers or any of their estates or to seek to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by, the DIP Lender upon the DIP Collateral. |
| Restrictions on Use of DIP Facility Loans: | None of the Carve-Out, the DIP Facility Loans, or the DIP Collateral may be used to challenge the amount, validity, perfection, priority or enforceability of, or assert any defense, counterclaim or offset to, the DIP Facility, this Term Sheet, or the DIP Documents, or the security interests and liens securing any of the DIP Obligations, or to fund prosecution or assertion of any claims, or to otherwise litigate against the DIP Lender. |
| Payment of Expenses: | The reasonable and documented fees and out-of-pocket expenses incurred or accrued by the DIP Lender and its counsel, Latham & Watkins LLP, and any financial advisor retained by the DIP Lender in connection with the Chapter 11 Cases (the foregoing to include all unpaid reasonable and documented prepetition fees, out-of-pocket costs and expenses incurred by the DIP Lender in connection with the DIP Facility) in connection with any and all aspects of the Chapter 11 Cases shall be timely paid upon receipt of an invoice or other request for payment in accordance with the DIP Financing Orders. |
| Indemnification: | The Borrowers shall agree to indemnify and hold harmless the DIP Lender (solely in its capacity as DIP Lender) and its affiliates and each of their officers, directors, employees, agents, advisors, attorneys and representatives (each, an "***Indemnified Party***") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable and |

| | |
|---|---|
| | documented fees and out-of-pocket expenses of counsel), that may be incurred by or asserted or awarded against any Indemnified Party (including, without limitation, in connection with any investigation, litigation or proceeding or the preparation of a defense in connection therewith), arising out of or in connection with or by reason of the DIP Facility, or any of transactions contemplated hereby, except to the extent arising from an Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceeding to which the indemnity in this paragraph applies, such indemnity shall be effective whether or not such investigation, litigation or proceeding is brought by any of the Borrowers, any of their respective directors, security holders or creditors, an Indemnified Party or any other person or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated. |
| **Assignments** | The DIP Lender shall have the right, without the need for consent from any party, to assign all or a portion of its rights and obligations under this Term Sheet or the DIP Documents, as applicable, including all or a portion of its DIP Facility Commitments and the DIP Facility Loans at the time owing to it, to any person. |
| **Miscellaneous:** | This summary of terms and conditions does not purport to summarize all of the conditions, covenants, representations, warranties and other provisions that would be contained in definitive credit documentation for the DIP Facility contemplated hereby, all of which shall be acceptable to the DIP Lender. |
| **Governing Law:** | The laws of the State of New York (excluding the laws applicable to conflicts or choice of law), except as governed by the Bankruptcy Code. |

IN WITNESS WHEREOF, this Term Sheet is duly executed as of the date first set forth above.

**<u>DIP LENDER</u>**

FlexGen Power Systems, LLC

By: _____
    Name:
    Title:

**<u>BORROWERS</u>**

POWIN PROJECT LLC POWIN, LLC
PEOS HOLDINGS, LLC
POWIN CHINA HOLDINGS 1, LLC POWIN CHINA
HOLDINGS 2, LLC CHARGER HOLDINGS, LLC
POWIN ENERGY ONTARIO STORAGE, LLC
POWIN ENERGY OPERATING HOLDINGS, LLC
POWIN ENERGY OPERATING, LLC

By: _____
    Name:
    Title:

## EXHIBIT B

**INITIAL APPROVED BUDGET**

# Eight Week DIP Budget – 6/25

Amounts in $000s

| | DIP Budget | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|
| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 8 Week |
| Week End | 06/27 | 07/04 | 07/11 | 07/18 | 07/25 | 08/01 | 08/08 | 08/15 | |
| Servicing Receipts | - | - | - | - | - | - | - | - | - |
| Non-Servicing Receipts | - | - | - | 6,000 | - | - | - | - | 6,000 |
| | | | | | | | | | - |
| Payroll & Benefits | (53) | (647) | (103) | (647) | (103) | (647) | (103) | - | (2,303) |
| Rent/Utilities[1] | (127) | (328) | - | - | - | (328) | - | - | (784) |
| Software & IT[2] | (425) | (425) | - | - | - | (425) | - | - | (1,276) |
| Miscellaneous[3] | (375) | (375) | (375) | (375) | (375) | (375) | (375) | (375) | (3,000) |
| Total Operating Expenses | (981) | (1,776) | (478) | (1,022) | (478) | (1,776) | (478) | (375) | (7,364) |
| | | | | | | | | | |
| Professional Fees[4] | (1,245) | (1,345) | (1,315) | (3,365) | (1,345) | (1,345) | (2,815) | (1,495) | (14,270) |
| US Trustee Fees | - | (50) | - | - | - | (50) | - | - | (100) |
| Other Non-Operating Expenses | - | - | (190) | - | - | - | - | - | (190) |
| Total Non-Operating Expenses | (1,245) | (1,395) | (1,505) | (3,365) | (1,345) | (1,395) | (2,815) | (1,495) | (14,560) |
| | | | | | | | | | |
| Total Expenses | (2,226) | (3,171) | (1,983) | (4,387) | (1,823) | (3,171) | (3,293) | (1,870) | (21,924) |
| | | | | | | | | | |
| Net Cash Flow | (2,226) | (3,171) | (1,983) | 1,613 | (1,823) | (3,171) | (3,293) | (1,870) | (15,924) |
| | | | | | | | | | |
| Flexgen Cash at Closing[5] | - | - | - | - | - | - | - | - | - |
| KKR Ending Balance[6] | 18,119 | 18,183 | 18,248 | 8,660 | 8,691 | 8,722 | 11,603 | - | 11,603 |
| | | | | | | | | | |
| Beginning DIP Balance | - | 10,003 | 10,011 | 10,018 | 15,441 | 15,453 | 15,465 | - | - |
| DIP Funding | 10,000 | - | - | 5,000 | - | - | 12,500 | - | 27,500 |
| DIP Fees | - | - | - | 413 | - | - | 413 | - | 825 |
| DIP Interest (PIK) | 3 | 8 | 8 | 10 | 12 | 12 | 20 | - | 72 |
| DIP Credit Bid | - | - | - | - | - | - | (28,397) | - | (28,397) |
| Ending DIP Balance | 10,003 | 10,011 | 10,018 | 15,441 | 15,453 | 15,465 | - | - | - |
| | | | | | | | | | |
| Total Beginning Cash Balance | 20,862 | 24,636 | 21,465 | 19,482 | 16,442 | 14,619 | 11,448 | 23,506 | 20,862 |
| Net Cash Flow | (2,226) | (3,171) | (1,983) | 1,613 | (1,823) | (3,171) | (3,293) | (1,870) | (15,924) |
| Flexgen Cash at Closing | - | - | - | - | - | - | 11,603 | - | 11,603 |
| DIP Financing | 10,000 | - | - | 5,000 | - | - | 12,500 | - | 27,500 |
| KKR Paydown | (4,000) | - | - | (9,652) | - | - | (8,753) | - | (22,405) |
| Total Ending Cash Balance | 24,636 | 21,465 | 19,482 | 16,442 | 14,619 | 11,448 | 23,506 | 21,636 | 21,636 |
| AR Control | 3,652 | 3,652 | 3,652 | - | - | - | - | - | - |
| Total Unrestricted Cash | 20,983 | 17,812 | 15,829 | 16,442 | 14,619 | 11,448 | 23,506 | 21,636 | 21,636 |
| Less Reserves[7] | 10,620 | 10,620 | 10,620 | 10,695 | 10,695 | 10,695 | 17,200 | 17,200 | 17,200 |
| Total Available Cash | 10,363 | 7,192 | 5,209 | 5,747 | 3,924 | 753 | 6,306 | 4,436 | 4,436 |

(1) Rent & Utilities reflect need for additional payments to bridge to closing.
(2) Reflects timing adjustment from unpaid amounts from prior periods.
(3) $900k carried forward from first 2 weeks of 9/13 cash collateral budget not utilized and available for variance.
(4) UCC fees increased by $500k from original DIP budget; Success fees increased to reflect Engagement Letter.
(5) Cash at closing is equal to $40 million minus the outstanding on the DIP; Forecast does not include impact of the deposit.
(6) KKR ending balance corrected to account for prepetition forbearance fee and previously unrecognized accrued interest.
    Accrued and outstanding legal fees are not incorporated in outstanding amount.
(7) Reserves increased by $5.2 mn to reflect the use of the last instalment ($5 mn) to cover obligations not included in Stalking Horse Transaction and US Trustee fees.