|  |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(a) <br><br> **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP** <br> Kevin M. Capuzzi (NJ No. 173442015) <br> John C. Gentile, Esq. <br> Noelle B. Torrice (NJ No. 79132013) <br> Continental Plaza II <br> 411 Hackensack Ave., 3rd Floor <br> Hackensack, NJ 07601-6323 <br> Telephone: (302) 442-7010 <br> Facsimile: (302) 442-7012 <br> kcapuzzi@beneschlaw.com <br> jgentile@beneschlaw.com <br> ntorrice@beneschlaw.com <br><br> *Counsel to Mainfreight Inc.* |  |
| In re: <br><br> Powin, LLC, *et al.*,[1] <br><br>         Debtors. | Chapter 11 <br><br> Case No. 25-16137 (MBK) <br><br> Judge: Michael B. Kaplan <br><br> (Jointly Administered) |

### MAINFREIGHT INC.'S MOTION TO CONFIRM THAT THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(A) DOES NOT APPLY TO CERTAIN GOODS IN ITS POSSESSION

Mainfreight Inc., on behalf of itself and its affiliates (collectively "Mainfreight"), files *Mainfreight Inc.'s Motion to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Does Not Apply to Certain Goods in Its Possession* (the "Motion") regarding certain products that are (i) in Mainfreight's possession, (ii) subject to Mainfreight's general and specific lien rights, and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(iii) in which Powin, LLC (referred to herein as "Powin" or the "Debtor") and its affiliates (collectively, the "Debtors") hold no title. In support thereof, Mainfreight states as follows:

## PRELIMINARY STATEMENT

1. Mainfreight is a global third-party logistics provider that has, for several years, arranged domestic and international transportation (both maritime and over-the-road), warehousing and storage, customs, and related services for and on behalf of the Debtors. As is customary in the transportation and logistics industry, pursuant to Mainfreight's standard Terms and Conditions (as defined below), the Debtors agreed that Mainfreight may exert a general and specific possessory lien over any and all goods in its possession to secure any amounts owed by the Debtors. As of the Petition Date, the Debtors owed Mainfreight not less than $13.1 million USD for services rendered.

2. Among the goods that Mainfreight arranged transportation for the Debtors were certain power units and electric components. Mainfreight understands that those goods were sold by the Debtors to BHER Ravenswood Solar 1, LLC ("BHER") in connection with a facility that BHER is developing in West Virginia. Those goods are currently being stored at Mainfreight's facility in Norfolk, Virginia, and are subject to Mainfreight's general and specific possessory lien rights pending payment of the $13.1 million USD owed to it for the transportation and logistics services rendered.

3. Mainfreight has since learned that just a day before the Petition Date, the Debtors purportedly transferred title of the goods to BHER. Mainfreight was not involved in the title transfer and had no knowledge of the specifics of this transfer on the eve of the bankruptcy filing. While the goods are still subject to Mainfreight's lien, they no longer appear to be property of the estate. Given the unusual timing of the purported title transfer on the eve of the Petition Date,

however, Mainfreight brings this motion to confirm that the stay does not apply so that it may enforce its lien rights against the goods in its possession.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and *Standing Order of Reference 12-1* from the United States District Court for the District of New Jersey, dated as of September 18, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. Mainfreight consents to the entry of a final order on this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5. The statutory predicates for the relief sought herein are sections 105 and 362 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## FACTUAL BACKGROUND

6. Mainfreight is a global shipping and logistics company that also operates as a non-vessel-operating common carrier. McCrone Dec., ¶ 2.[2]

7. On or about May 17, 2021, the Debtors submitted the Business Credit Application (the "Application") to Mainfreight. *Id.* ¶ 3. The Application contained Mainfreight's Terms & Conditions of Service (the "Application Terms & Conditions"). *Id.* A true and correct copy of the Application and Application Terms & Conditions is attached hereto as **Exhibit B**.

8. In 2023, the Debtors opened a new business account with Mainfreight. On March 29, 2023, Stuart Bolland, the Chief Operating Officer of Debtor Powin LLC, executed the

---

[2] References to "McCrone Dec., ¶ __" refer to the *Declaration of James McCrone in Support of Mainfreight Inc.'s Motion to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Does Not Apply to Certain Goods in Its Possession*, attached hereto as **Exhibit A**.

3

Mainfreight Group – Account Opening Form (the "Account Form").  McCrone Dec., ¶ 4.  The Account Form contained Mainfreight's Standard Terms & Conditions—November 2021 (the "Account Form Terms & Conditions" and, with the Application Terms & Conditions, the "Terms & Conditions").  Id.  A true and correct copy of the Account Form and Account Form Terms and Conditions is attached hereto as **Exhibit C**.

9. The Terms & Conditions provide that Mainfreight shall hold a lien on any property of the Debtors that comes into Mainfreight's possession or control.  **Ex. B** at 2, § 15(a); **Ex. C**, § 2.9; McCrone Dec., ¶¶ 5-6.  The Terms and Conditions further provide that, if Powin fails to pay outstanding amounts due upon Mainfreight's notice that Mainfreight is exercising its lien rights, Mainfreight shall have the right to sell the Debtors' property in Mainfreight's possession or control and apply the sale price to the total owed to Mainfreight.  **Ex. B** at 2, § 15(c); **Ex. C**, § 2.9; McCrone Dec., ¶¶ 5-6.

10. Before the Debtors filed bankruptcy on June 10, 2025 (the "Petition Date"), Mainfreight and the Debtors were engaged in a continuing business relationship, going back to at least 2021.  McCrone Dec., ¶ 7.  Among other things, Mainfreight would, at the Debtors' request, coordinate the shipment, transportation, and storage of various goods on the Debtors' behalf (the "Services").  Id.

11. Between April 4, 2025 and April 11, 2025, the Debtor purchased various electrical components (the "BHER Goods") from ACE Engineering & Co. Ltd.  McCrone Dec., ¶ 8.

12. In April 2025, at Powin's request, Mainfreight arranged for the shipment of the BHER Goods from the sites of the BHER Goods' manufacture or storage in Asia to facilities in the United States.  McCrone Dec., ¶ 9.

4

13. On or about May 30, 2025, after the BHER Goods arrived in the United States and cleared customs, Mainfreight took possession and control of the BHER Goods, and placed the BHER Goods in storage at Mainfreight's warehouse facilities in Norfolk, Virginia. McCrone Dec., ¶¶ 10-11, 16.

14. At the time Mainfreight took possession of the BHER Goods, Powin owed Mainfreight millions of dollars in unpaid freight charges. *Id.* ¶ 11.

15. Thereafter, on June 4, 2025, Mainfreight issued a *Notice of Lien for Unpaid Services* (the "Notice") to Powin, which informed Powin about the outstanding balance owed to Mainfreight for the Services and that Mainfreight was exercising its lien rights on the BHER Goods. A true and correct copy of the Notice is attached hereto as **Exhibit E**.

16. The Notice also informed Powin that if it did not satisfy the outstanding balance within fourteen (14) days, Mainfreight would exercise its lien rights under the Terms & Conditions, including, but not limited to, sale of the BHER Goods. *See* **Ex. E**.

17. On or about June 8, 2025, Powin transferred title of the BHER Goods to BHER. McCrone Dec., ¶ 12. A true and correct copy of the *Change Order* (the "Change Order") between Powin and BHER is attached hereto as **Exhibit F**.

18. Powin has failed to pay multiple outstanding invoices for the Services issued between June 2024 and the date of this Motion. McCrone Dec., ¶ 13. The unpaid balance due from Powin to Mainfreight as of the Petition Date was not less than $11,068,660.44 USD. *Id.* As of the date of this Motion, the unpaid balance due from Powin to Mainfreight as of the Petition Date was not less than $13,106,443.46 USD. *Id.* ¶ 14.

19. As of the date of this Motion, Mainfreight remains in possession and control of the BHER Goods, which remain in storage at Mainfreight's facilities at the Port of Norfolk, Virginia. *Id.* ¶¶ 15-16.

## RELIEF REQUESTED

20. Mainfreight requests that the Court enter an order confirming that the BHER Goods are not subject to the automatic stay under 11 U.S.C. § 362, and therefore Mainfreight may exercise its lien rights over the BHER Goods pursuant to the Terms & Conditions.

## BASIS FOR RELIEF

21. The automatic stay does not apply to property that was not a part of the estate as of the Petition Date.[3] It is axiomatic that the automatic stay only protects property of the estate. *In re Hollister Constr. Servs., LLC*, 617 B.R. 45, 49 (Bankr. D.N.J. 2020).

22. Mainfreight has a perfected security interest in the BHER Goods, and the Debtors have no title to, or interest in, the BHER Goods.

23. Under New Jersey law, a party with a security interest in goods may perfect its security interest by taking possession of the collateral. N.J. Rev. Stat. § 12A:9-313(a). A secured party's security interest in collateral continues even after sale, exchange, or other disposition of the collateral by the debtor, unless the secured party authorized its transfer free and clear of the security interest. N.J. Rev. Stat. § 12A:9-315(a)(1). Mainfreight is currently in possession of the BHER Goods. McCrone Dec., ¶ 15. Although Powin transferred title to the BHER Goods to BHER by the Change Order, **Ex. F** at 2, Mainfreight's security interest in the BHER Goods carries on post-transfer uninterrupted, as Mainfreight did not approve the transfer of title. *See* N.J. Rev. Stat. § 12A:9-315(a)(1). Therefore, Mainfreight has perfected its security interest in the BHER

---

[3] To the extent the stay is determined to apply (which it should not), Mainfreight reserves all rights to move to lift the automatic stay.

6

Goods by possession, retains its security interest notwithstanding the Change Order, and has valid lien rights against the BHER Goods under the Terms & Conditions.[4]

24. Section 541 of the Bankruptcy Code states that "all legal or equitable interests of the debtor in property *as of the commencement of the case*" become estate property upon the filing of a petition for bankruptcy. 11 U.S.C. § 541(a)(1) (emphasis added). Section 362 provides that the filing of a bankruptcy petition "operates as a stay of any act to obtain possession of property of the estate or of property from the estate." 11 U.S.C. § 362(a)(3) (cleaned up). Thus, "the clear language of the statute dictates that [the automatic stay] stays only proceedings against the debtor or against property of the estate." *In re Hollister Constr. Servs.*, 617 B.R. at 49. If the title to property passes from the debtor to another party pre-petition, that property will not be included in the estate of the debtor upon filing, and the automatic stay does not apply to that property. *United States v. Pelullo*, 178 F.3d 196, 203 (3d Cir. 1999).

25. Courts in this Circuit have also recognized that maritime liens against cargo for associated debts must be satisfied before non-maritime liens. *In re World Imports Ltd.*, 820 F.3d 576, 592 (3d Cir. 2016); *In re Muma Services, Inc.*, 322 B.R. 541 (Bankr. D. Del. 2005).[5] In *World*

---

[4] The BHER Goods are, at present, located in Virginia. *See* McCrone Dec. ¶ 16. The Account Form contract is governed by the laws of the Australian state of Victoria. **Ex. C**, § 10.1. The Application is governed by California law. **Ex. B**, § 22. Irrespective of which law governs, the analysis is substantially the same for each. As fellow implementers of the Uniform Commercial Code, Virginia's and California's statutes are identical to those of New Jersey. Va. Code §§ 8.9A-313(a), 8.9A-315(a)(1); Cal. Comm. Code §§ 9313(a), 9313(a)(1). While not identical to the U.C.C. provisions, the Australian federal statutes governing secured transactions allow for the creation of a security interest by contract, perfection of a security interest by possession, and enforcement of the attendant contractual rights, including as against third parties. *Personal Property Securities Act 2009* (Cth) ss 18 (creation and enforceability of security interest); 21(2)(b) (perfection of security interest by possession); 20 (enforceability against third parties by holder of security interest in possession of collateral).

[5] Courts elsewhere, as well as the Supreme Court, have made the same determination. *Accord 9178-6103 Quibec Inc. v. Unitrans-Pra Co.*, No. 09-CV-144(MDG), 2018 WL 5084820 at *9 (E.D.N.Y. Oct. 17, 2018) (collecting cases standing for the proposition that breach of a shipping contract gives rise to a maritime lien); *Hup Aik Huat Trading Pte Ltd. v. 900 Bags of Malabar Garbled End of Front Matter Black Pepper*, 115 F. Supp. 2d 529, 534-35 (D. Md. 2000) (recognizing that a bill of lading is a contract and creates a maritime lien); *Taiwan Int'l Line Ltd. v. Matthew Ship Chartering Ltd.*, 546 F. Supp. 826, 829 (E.D.N.Y. 1982) (holding that maritime liens for the carriage of goods prevail over all non-maritime liens). *See also The Bird of Paradise*, 72 U.S. 545, 554 (1866) (stating that shippers "unquestionably . . . have a lien upon the cargo for the freight, and consequently may retain the goods after the arrival of the ship at the port of destination until the payment is made").

*Imports*, the Third Circuit held that the non-vessel operating common carrier's (NVOCC) shipping documents clearly established a maritime lien against the beneficial cargo owner for failure to pay outstanding ocean freight charges and there was no evidence of the lien being waived. *In re World Imports Ltd.*, 820 F.3d at 584. The Third Circuit thus determined the maritime lien was valid and enforceable and entitled the NVOCC to collect past due ocean freight charges by exercising a lien against goods currently in its possession. *See generally id*.

26. Here, Mainfreight may exercise its lien rights against the BHER Goods because the BHER Goods are not part of Powin's bankruptcy estate, nor that of any of the other Debtors. On June 8, 2025, two days before the Petition Date, Powin and BHER agreed that, as to the BHER Goods, "[d]elivery has occurred and title has transferred to" BHER. **Ex. F** at 1-2. Therefore, title to the BHER Goods passed from Powin to BHER before the Petition Date, meaning that the BHER Goods were never property of any bankruptcy estate.

27. Mainfreight holds a maritime lien on the Goods, which gives Mainfreight priority over all other claimants. The Terms and Conditions provide Mainfreight with liens against the Goods for Powin's debts. **Ex. B** at 2, § 15(a); **Ex. C**, § 2.9; McCrone Dec., ¶¶ 5-6. Mainfreight took possession and control of the Goods to ship them from Asia to the United States. McCrone Dec., ¶¶ 9-10. As a result, Mainfreight has a general and specific possessory maritime lien over any and all goods in its possession, including the BHER Goods, pending payment of the $13.1 million USD owed to it for the transportation and logistics services rendered to the Debtors. **Ex. B** at 2, § 15(a); **Ex. C**, § 2.9; McCrone Dec., ¶¶ 5-6. Mainfreight has not waived its lien. Therefore, under *World Imports*, 820 F.3d at 592, Mainfreight must receive payment on its lien before other claimants.

## RESERVATION OF RIGHTS

28. Nothing in this Motion is intended to modify or alter the rights and obligations provided for under the Terms & Conditions, and Mainfreight expressly retains and reserves all rights and defenses that Mainfreight would otherwise have under the Terms & Conditions.

## WAIVER OF MEMORANDUM OF LAW

29. Mainfreight requests a waiver of the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which it relies is set forth herein, and the Motion does not raise any novel issues of law.

## CONCLUSION

30. For the foregoing reasons, Mainfreight respectfully requests that this Court enter an order confirming that the automatic stay pursuant to 11 U.S.C. § 362 does not apply to certain goods in Mainfreight's possession.

Dated: June 27, 2025

Respectfully submitted,

**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
 /s/ Kevin M. Capuzzi
Kevin M. Capuzzi (NJ No. 173442015)
John C. Gentile, Esq.
Noelle B. Torrice (NJ No. 79132013)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: kcapuzzi@beneschlaw.com
    jgentile@beneschlaw.com
    ntorrice@beneschlaw.com

*Counsel to Mainfreight Inc.*