**DENTONS US LLP**

Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
         sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
         aglaubach@teamtogut.com
         eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

US_ACTIVE\

**EXPEDITED MOTION OF THE DEBTORS FOR
ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING
SETTLEMENT AND RELEASE AGREEMENT; AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Powin, LLC ("Powin") and the affiliated debtors and debtors in possession (collectively, the "Debtors"), in the above-referenced chapter 11 cases (the "Chapter 11 Cases") hereby move (the "Motion") this Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (i) authorizing and approving that certain Settlement and Release Agreement (the "Settlement Agreement")[2] under Rules 2002, 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and sections 105, 362, 363, and 365 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code") by and among Powin, Munmorah Battery ProjectCo Pty Ltd, ACN 662 894 699, an Australian corporation ("Munmorah"), Ulinda Park ProjectCo Pty Ltd, ACN 659 144 484, an Australian corporation ("Ulinda", and together with Munmorah, the "Project Group"), FS KKR Capital Corp., a Maryland corporation, KKR FS Income Trust, a Delaware statutory trust, KKR FS Income Trust Select, a Delaware statutory trust, Forethought Life Insurance Company, an Indiana domestic insurance corporation, Commonwealth Annuity and Life Insurance Company, a Massachusetts insurance corporation, and First Allmerica Financial Life Insurance Company, a Massachusetts insurance corporation (together with FS KKR Capital Corp., KKR FS Income Trust, KKR FS Income Trust Select, Forethought Life Insurance Company and Commonwealth Annuity and Life Insurance Company, each a "KKR Party" and collectively, "KKR");[3] (ii) authorizing the transfer of certain of the Debtors' assets (including certain parts, equipment, materials, consumables, supplies, contracts, purchase orders, and warranties) set forth in the Settlement Agreement and the Designation Rights (as defined in the Settlement Agreement) (collectively, the "Assets"); (iii) approving the Designation Procedures (as defined below); and (iv) granting related relief.

---

[2] A true and correct copy of the Settlement Agreement is attached to the Order as **Exhibit 1**, in partially redacted form. The Debtors are separately filing a motion to approve such redactions.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

[3] Each of Powin, the Project Group, and KKR are sometimes referred to herein individual as a "Party", and, collectively as the "Parties."

In support of this Motion, the Debtors rely on the *Declaration of Gerard Uzzi in Support of Debtors' Motion to Approve Settlement and Release Agreement* attached hereto (the "Uzzi Declaration") and the *Declaration of Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* [Docket No. 13] (the "First Day Declaration"), the contents of both of which are incorporated herein by reference, and respectfully state as follows:

### PRELIMINARY STATEMENT

The Settlement Agreement settles and compromises significant claims against the Debtors' estates, including liquidated damages and other potential liabilities under the Debtors' prepetition commercial agreements with the Project Group that could otherwise reduce creditor recoveries and infuses immediate cash into the estates.  By way of background, beginning in 2022, the Debtors and the Project Group entered into various agreements related to the development of two major energy infrastructure projects in Australia.  Unfortunately, in early 2025, as further described in the First Day Declaration, the Debtors experienced challenges leading to financial constraints that required engagement with various parties in interest, including the Project Group and KKR, regarding an appropriate path forward for the Debtors' business.  During these discussions, the Debtors and the Project Group worked cooperatively to resolve various issues and find a mutually-beneficial path forward.  As part of those constructive discussions, prior to the Petition Date (as defined below), the Debtors and the Project Group negotiated a resolution whereby the Project Group made certain direct payments of approximately $[OMITTED] to certain of the Debtors' subcontractors, vendors, and suppliers.  In addition, the Project Group and the Debtors entered into a Letter Agreement (as defined below) to provide the Debtors with $[OMITTED] to facilitate further progress on the development of the projects in Australia and to provide the Debtors with additional liquidity to further engage various parties in interest and otherwise prepare a path forward for the Debtors' business.

After extensive, good faith, arm's length negotiations with the Project Group and KKR, the Debtors' prepetition lender, the Debtors have reached the Settlement Agreement, which provides, among other things, (i) a settlement payment by the Project Group of $[OMITTED] and

certain reimbursements of up to $[OMITTED], (ii) a transfer of certain Assets to the Project Group and the assumption of certain liabilities in connection therewith, and (iii) mutual releases between the parties. In connection therewith, there are certain Designation Procedures discussed herein that are an integral component of, and necessary to effectuate, the Settlement Agreement.

The Settlement Agreement provides significant benefits to, and is in the best interests of, the Debtors and their estates:

- First, the Debtors need the Settlement Agreement proceeds. The Settlement Agreement will provide the Debtors with a material influx of funds that the Debtors need to continue to administer these Chapter 11 Cases and achieve their proposed sales and marketing timeline. As testified by Mr. Uzzi at the hearing on interim approval of the DIP Motion, the Debtors [OMITTED] when negotiating the DIP Facility (as defined in the DIP Motion),[4] [OMITTED].

- Second, the Settlement Agreement settles and compromises significant claims against the Debtors' estates, including for liquidated damages and other potential liabilities under the Debtors' prepetition commercial agreements with the Project Group that could otherwise reduce creditor recoveries and infuses immediate cash into the estates. Litigation of such disputes would be complex, costly, and result in significant inconvenience and delay for all parties involved. This is particularly true considering the nature of the claims at issue, the cross-border relationship of the parties, and the numerous foreign laws implicated by the governing law provisions of the applicable agreements.

- Third, the Project Group has agreed to make certain additional payments to the Debtors and contract counterparties that will avoid saddling the estates with substantial claims. The Project Group has agreed to: (i) reimburse the Debtors for certain potential severance costs for Australian employees up to a cap; (ii) take certain Assets subject to certain existing liens; and (iii) pay the Cure Costs (as defined below) for contracts they designate for assumption and assignment. Each of the foregoing will inure to the benefit of the Debtors' stakeholders.

- Finally, pursuant to the Settlement Agreement, the Debtors are monetizing Assets for which the Project Group may already have title under the Project Documents (as defined below), which will have a low likelihood, if any, of otherwise being monetized, or would require the Debtors to incur significant costs to do so. For example, some of the Assets are unique to the Projects and cannot be used by other customers while other Assets have been manufactured to Australian energy

---

[4]*See Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (V) Granting Related Relief*, Exhibit A [Docket No. 120] (the "DIP Motion").

standards and monetization would likely require significant conversion and shipping costs for which there is a limited market.  The intellectual property rights referenced in the Settlement Agreement are simply a reaffirmation of rights the Project Group already has without expansion.

In light of the above, the Debtors submit that the Settlement Agreement is in the best interests of the Debtors and their estates and that the Settlement Agreement and the Designation Procedures should be approved by this Court pursuant to Bankruptcy Rule 9019 and sections 105, 362, 363, and 365 of the Bankruptcy Code.

## I.    <u>JURISDICTION AND VENUE</u>

1.    The United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012, as amended on June 6, 2025.  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The predicates for the relief requested herein are: sections 105, 362, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9019, and rules 2002, 9013-1, and 9019-3 of the Local Bankruptcy Rules for the District of New Jersey (the "<u>Local Rules</u>").

## II.    **BACKGROUND**

A.  General Background

4.      On June 9, 2025 (the "Petition Date"),[5] the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

5.      On June 26, 2025, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").  [Docket No. 174].

6.      Additional information regarding the Debtors, including their businesses and the events leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declaration, the contents of which are incorporated herein by reference.

B.  Specific Background

7.      As noted in the Uzzi Declaration, Munmorah is engaged in the development of a battery storage project located in Munmorah, New South Wales, Australia, known as the Waratah Super Battery (the "Munmorah Project").  Ulinda is engaged in the development of a battery storage project located in Queensland, Australia, known as the Ulinda Park BESS (the "Ulinda Project", and together with the Munmorah Project, the "Projects").

8.      Prior to the Petition Date, in furtherance of the Munmorah Project, Munmorah and Powin entered into (i) that certain Energy Supply Agreement, dated November 7, 2022 (as amended, supplemented, or amended and restated, from time to time, the "Munmorah ESA"), (ii) that certain Long Term Supply Agreement, dated December 16, 2022 (as amended, supplemented, or amended and restated, from time to time, the "Munmorah LTSA"), and (iii) that certain escrow agreement, dated February 22, 2024, by and among Munmorah, Powin and

---

[5] Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the majority of Debtors were filed shortly thereafter on June 10, 2025, *except that*, three additional Debtor-affiliates (Powin Energy Storage 2, Inc., Powin Energy Ontario Storage II LP, and Powin Canada B.C. Ltd.) filed for petitions on June 22, 2025.

[OMITTED], a Georgia corporation (the "Escrow Agent" and such agreement, as amended, supplemented, or amended and restated, from time to time, the "Munmorah IP Escrow Agreement" and, such agreement, together with the Munmorah ESA and the Munmorah LTSA, collectively referred to as the "Munmorah Agreements").

9.      Also prior to the Petition Date, in furtherance of the Ulinda Project, Ulinda and Powin entered into (i) that certain Energy Supply Agreement, dated June 26, 2023 (as amended, supplemented, or amended and restated, from time to time, the "Ulinda ESA" and, together with the Munmorah ESA, the "ESAs"), (ii) that certain Long Term Supply Agreement, dated June 28, 2023 (as amended, supplemented, or amended and restated, from time to time, the "Ulinda LTSA" and, together with the Munmorah LTSA, the "LTSAs"), and (iii) that certain escrow agreement, dated September 10, 2024, by and among Ulinda, Powin and the Escrow Agent (as amended, supplemented, or amended and restated, from time to time, the "Ulinda IP Escrow Agreement," and such agreement together with the Ulinda ESA and the Ulinda LTSA, collectively referred to as the "Ulinda Agreements"). The Munmorah Agreements and the Ulinda Agreements shall collectively be referred to herein as the "Project Documents."

10.      Prepetition, (i) Munmorah and Powin and certain key suppliers entered into those certain agreements described in, and attached to, the Settlement Agreement (the "Munmorah Key Supplier Agreements" and the suppliers party to such agreements, the "Munmorah Key Suppliers"), and (ii) Ulinda and Powin and certain key suppliers entered into those certain agreements described in, and attached to, the Settlement Agreement (the "Ulinda Key Supplier Agreements" and together with the Munmorah Key Supplier Agreements, the "Key Supplier Agreements" and the suppliers party to the Ulinda Key Supplier Agreements, the "Ulinda Key Suppliers," and together with the Munmorah Key Suppliers, the "Key Suppliers").

11.      The Project Group alleges that Powin has materially breached certain of its obligations under the Project Documents (as described in the Termination Notices (as defined below)) resulting in delays to the Projects and, on May 29, 2025, each of Munmorah and Ulinda issued termination notices to Powin with respect to the Munmorah ESA and Munmorah LTSA and

7

the Ulinda ESA and Ulinda LTSA, respectively.  The Project Group further alleges that the Project Group is owed damages, including liquidated damages, pursuant to the ESAs.

12.     Time was of the essence under the ESAs based on the Project Group's commitment to third parties to complete the Projects by a date certain and therefore the Project Group and Powin agreed for Powin to complete the Work (as defined in the ESAs) by certain guaranteed dates in the ESAs. As provided under the terms of the ESAs (certain of which survive termination thereof), following termination of the ESAs for Powin's breach or default, the Project Group can complete the Work (as defined in the ESAs) by any method deemed expedient where the Project Group uses any reasonable means necessary to mitigate damage or cost.  As a result of the alleged breaches, the Project Group expects to incur significant delays, costs, and expenses in order to complete the Work for each Project.

13.     The Project Group asserts that all conditions necessary to release the Supplier's Intellectual Property (as defined in the ESAs, the "Supplier's Intellectual Property") and all Deposit Materials (as defined in the IP Escrow Agreements, the "Deposit Materials") have been satisfied under the IP Escrow Agreements.  On May 27, 2025 and June 5, 2025, in the case of Munmorah, and May 30, 2025, in the case of Ulinda, the Project Group delivered escrow release demands to the Escrow Agent and copied Powin with respect to the Munmorah IP Escrow Agreement and the Ulinda IP Escrow Agreement.  Powin disputed such release of the Deposit Materials.

14.     On June 5, 2025, each of Munmorah and Ulinda delivered notices to Powin and the Escrow Agent, in each case, alleging that the materials deposited by Powin as Deposit Materials under the Munmorah Agreements and Ulinda Agreements, respectively, did not, as of June 5, 2025, contain all materials required to be deposited in escrow in accordance with the Munmorah Agreements and Ulinda Agreements, respectively, and annexed thereto the materials required to be deposited by Powin as Deposit Materials in accordance with the Munmorah Agreements and Ulinda Agreements (all such materials collectively, the "Missing IP").

15.     As a condition precedent to the execution of the Settlement Agreement, the Project

8

Group and Powin entered into that certain Letter Agreement, dated June 6, 2025, attached to the Settlement Agreement as Exhibit C (the "Letter Agreement"), which, remains in full force and effect, pursuant to which Munmorah and Ulinda made a payment to Powin in the aggregate amount of $[OMITTED] (the "Initial Payment"; $[OMITTED] of which is deemed paid by Munmorah and $[OMITTED] of which is deemed paid by Ulinda), the receipt of which, as set forth in the Settlement Agreement, is acknowledged by Powin, in exchange for, among other things, Powin providing the Project Group and its affiliates with access to certain information to which the Project Group alleges it was entitled under the Project Documents, obtaining certain acknowledgements by the parties thereto, and the commitment by the Parties to negotiate in good faith a settlement agreement resolving any and all claims and causes of action among the Parties relating to the Project Documents, which Letter Agreement was acknowledged and consented to by KKR in accordance with the terms thereof.

16.     On June 17, 2025, the Debtors filed an *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88], that among other things, seeks to reject the Project Documents.

17.     As of the date hereof, (i) Munmorah or its affiliates have made payments to Powin in the amount of $[OMITTED]  under the Project Documents, to Key Suppliers in the amount of $[OMITTED] under the Munmorah ESA, and to certain other subcontractors, vendors, or suppliers of Powin in the amount of AUD [OMITTED] as set forth on Exhibit A-3 to the Settlement Agreement, and (ii) Ulinda or its affiliates have made payments to Powin in the amount of $[OMITTED] under the Project Documents and to certain other subcontractors, vendors, or suppliers of Powin in the amount of AUD [OMITTED] as set forth on Exhibit A-3 to the Settlement Agreement and, in the case of Exhibit A-3 with respect to both Projects, such payments (a) should have been made by Powin, (b) were the sole responsibility of Powin, (c) Powin failed to make and (d) the Project Group asserts they had no obligation to pay.

18.     Following execution of the Letter Agreement, over the past several weeks, the Parties have engaged in extensive discussions to try to resolve the disputes between the parties.

US_ACTIVE\

Those discussions ultimately culminated in the execution of the Settlement Agreement, which, if approved, would resolve all outstanding issues among the Parties.  Pursuant to the Settlement Agreement, the Project Group has agreed to, among other things:

- pay to Powin an aggregate amount equal to $[OMITTED] upon the occurrence of the Effective Date of the Settlement Agreement (Settlement Agreement at Section 2);

- reimburse Powin for amounts paid by Powin as severance pay in accordance with Australian law, for amounts due and payable to any Australian employees of Powin, provided that such severance payments shall not exceed in the aggregate the amount of $[OMITTED] (*id.* at Section 5(b));

- take certain Assets, including the Munmorah Equipment, Additional Munmorah Equipment, and the Ulinda Equipment, subject to certain existing liens (*id.* at Section 4(a));

- pay Cure Costs (as defined below) for certain contracts that may be assumed and assigned to the Project Group (*id.* at Section 4(b)(iii), n.5); and

- grant a release of the Debtors and their estates from claims that could otherwise reduce creditor recoveries, if any, potentially significantly (*id.* at Section 4(e)(ii)).

19.    In exchange for the rights and benefits set forth above, the Debtors agreed to provide to the Project Group the following consideration under the Settlement Agreement, among other things:

- transfer to the Project Group the Designation Rights to be exercised in accordance with the Designation Procedures (Settlement Agreement at Section 4(b));

- transfer to the Project Group certain Assets, including the Munmorah Equipment, Additional Munmorah Equipment, and the Ulinda Equipment, subject to certain existing liens(*id.* at Section 4(a));

- reaffirm the Project Group's rights under the Project Documents to the Supplier's Intellectual Property, the Deposit Materials (including the Missing IP), and the Project Group's non-exclusive license with respect thereto (*id.* at Section 6(a)); and

- grant a release of the Project Group from any potential claims (*id.* at Section 4(e)(i)).

20.    As detailed below, entry into the Settlement Agreement falls well above the lowest level of reasonableness and provides several direct benefits to the Debtors' estates.  For these reasons, the Settlement Agreement satisfies all of the requirements for approval under Bankruptcy Rule 9019 and sections 105, 362, 363, and 365 of the Bankruptcy Code and should be approved.

## III.    PROPOSED DESIGNATION PROCEDURES

21.    By this Motion, the Debtors also seek approval of the following procedures needed to give effect to the Designation Rights provided for in the Settlement Agreement (collectively, the "Designation Procedures"):

a.  Effective as of the Execution Date (as defined in the Settlement Agreement), subject to the entry of the Order, Powin shall irrevocably and unconditionally assign, convey, and transfer to Munmorah, free and clear of all liens, claims, and encumbrances to the fullest extent permitted by section 363(f) of the Bankruptcy Code, the exclusive right to irrevocably, subject to the express provisions set forth in the Settlement Agreement, select, identify, and designate (on one or more occasions) (such rights, the "Designation Rights") the Munmorah subcontracts (including the purchase orders related to the Munmorah Project) listed on Exhibit E-1 of the Settlement Agreement between Powin or its affiliates and a person or entity that furnishes labor, services, material or equipment to Powin for the purposes of the Munmorah Project (collectively, the "Munmorah Subcontracts") in respect of which Munmorah, or its assignee, will acquire all of Powin's rights, title and interest in and to the applicable Munmorah Subcontracts.

b.  Effective as of the Execution Date, subject to the entry of the Order, Powin shall irrevocably and unconditionally assign, convey and transfer to Ulinda, free and clear of all liens, claims, and encumbrances to the fullest extent permitted by section 363(f) of the Bankruptcy Code, the Designation Rights in respect of the Ulinda subcontracts (including the purchase orders related to the Ulinda Project) listed on Exhibit E-2 of the Settlement Agreement between Powin or its affiliates and a person or entity that furnishes labor, services, material or equipment to Powin for the purposes of the Ulinda Project (collectively, the "Ulinda Subcontracts", and together with the Munmorah Subcontracts, the "Project Subcontracts").

c.  Effective as of the Execution Date, subject to the terms and conditions of the Settlement Agreement, the Order, and the requirements of section 365(b) of the Bankruptcy Code, by no later than 5:00 p.m. on the date that is 60 days after the date the Court enters the Order (the "Expiration Date" and such hearing the "Approval Hearing", and the period between the Execution Date and the Expiration Date, the "Designation Rights Period"), the Project Group may, by written notice substantially in the form attached to the Order as **Exhibit 3** (such notice an "Assignment Notice") to Powin designate one or more of the Project Subcontracts for assumption and assignment, in the Project Group's sole and absolute discretion, which can be exercised with respect to any number, or none, of the Project Subcontracts prior to the Expiration Date. Such notice shall provide the following information: (i) the Project Subcontract proposed to be assumed

11

and assigned, (ii) the identity of the assignee, if any, (iii) the identity of the subcontractor with respect to the applicable Project Subcontract, and (iv) the Cure Costs[6] associated with the applicable Project Subcontract. The Project Group (or its assignee(s)), at the Project Group's sole cost and expense, shall have the exclusive right to take an assignment of any Project Subcontract and to negotiate with the subcontractor with respect thereto (it being understood that upon written notification by the Project Group to Powin that the Project Group will not elect to have a Project Subcontract assigned to it or its assignee, in which case Powin shall have the right to then reject or assign such Project Subcontract to another party in Powin's sole and absolute discretion). The Designation Rights set forth herein shall terminate on the Expiration Date. Within one (1) Business Day following the date of Powin's receipt of an Assignment Notice, Powin shall file with the Court and serve by overnight mail and email (in each case, where available) on the applicable subcontractor(s) and other appropriate notice parties an Assignment Notice in respect of the designated Project Subcontracts (the "Designated Project Subcontracts") subject to such Assignment Notice. The Assignment Notice shall contain (i) the Project Subcontract proposed to be assumed and assigned, (ii) the identity of the assignee, if any, (iii) the identity of the subcontractor with respect to the applicable Project Subcontract, and (iv) the Cure Costs associated with the applicable Project Subcontract. Unless otherwise agreed by the Parties, the Assignment Notice shall provide the applicable subcontractor(s) no more than seven (7) days following service of such notice (the "Response Deadline") to object to the proposed Cure Costs and/or assumption of the applicable Project Subcontract, and such objection shall be heard at the later of (i) the Approval Hearing and (ii) a hearing before the Court no later than thirty (30) days after service of the Assignment Notice. The Parties shall close the assumption and assignment of any designated Project Subcontracts, as applicable, on the later of (i) the Response Deadline, if no objection is filed and served by a contract counterparty in accordance with the procedures in the Assignment Notice prior to such date, (ii) prior to such Response Deadline on a date agreed between the contract counterparty and the Project Group if such objection is resolved prior to the Response Deadline, (iii) the first (1st) Business Day after the Court enters an order overruling or resolving any objection lodged by the contract counterparty, and (iv) such other date as the Project Group and the contract counterparty agrees (each, as applicable, a "Contract Assignment Closing Date"). Notwithstanding the foregoing, effective as of the applicable Contract Assignment Closing Date, Powin shall assign to the Project Group all of Powin's rights, titles, and interests in any and all Avoidance Actions (as defined below) relating to or arising from the Project Subcontracts assumed

---

[6] With respect to each Designated Project Subcontract, on the Contract Assignment Closing Date (as defined below) relating to such Designated Project Subcontract, the Project Group shall pay to Powin for further payment to the applicable subcontractor for such Designated Project Subcontract an amount equal to the cure costs approved by the Bankruptcy Court for such Designated Project Subcontract (the "Cure Costs").

and assigned to the Project Group pursuant to Section 4 of the Settlement Agreement; provided, for the avoidance of doubt, Powin shall retain all Avoidance Actions relating to or arising from Project Subcontracts not assumed and assigned under the Settlement Agreement. For purposes of the Settlement Agreement, "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other claims, causes of action, or remedies that may be brought by or on behalf of Powin, its affiliates, or their successors or assigns or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies arising under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law, including fraudulent transfer laws.

d.   With respect to any Designated Project Subcontract, the Project Group and Powin shall each use commercially reasonable efforts to accomplish, and shall fully cooperate with each other in, the resolution of any objections to the proposed assumption and assignment of such Project Subcontract, provided that Powin shall have no requirement to contribute to any Cure Costs.  Furthermore, unless otherwise agreed upon by the Project Group and Powin, the Project Group shall have no liability or obligations, other than for the payment of Cure Costs, with respect to any liabilities, claims, damages or other obligations of Powin under such Project Subcontract to the extent arising through and including the Contract Assignment Closing Date.

## IV.    RELIEF REQUESTED

22.    By this Motion, pursuant to sections 105, 362, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 2006, and 9019 of the Bankruptcy Rules, the Debtors seek entry of the Order (i) authorizing and approving the Settlement Agreement, (ii) authorizing the transfer of the Assets and the Designation Rights to the Project Group, (iii) approving the Designation Procedures, and (iv) granting related relief.

## V.    BASIS FOR RELIEF

### A.  The Proposed Settlement Satisfies Bankruptcy Rule 9019 and Should Be Approved.

23.    Bankruptcy Rule 9019(a) provides, in relevant part:
On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

13

Fed. R. Bankr. P. 9019(a).  In addition, section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

24.    Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

25.    Under Bankruptcy Rule 9019(a), the bankruptcy court has authority, after notice and a hearing, to approve a settlement that is fair, reasonable, and in the best interest of the estate. *See In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) ("The decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."); *In re Princeton Alternative Income Fund, LP*, No. 18-14603, 2019 WL 4127148, at *2 (Bankr. D.N.J. Aug. 29, 2019) ("In essence, a court will approve a settlement when it is fair and equitable and in the best interests of the estate." (citations omitted)).

26.    The Third Circuit applies a four-factor balancing test when evaluating settlements under Bankruptcy Rule 9019:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393.  A settlement should be approved if it falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness."  *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008).  "[C]ourts should not have a 'mini-trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.R. Grace & Co.*, 475 B.R. 34, 77–78 (Bankr. D. Del. 2012).

27.    Here, the Settlement Agreement is fair, reasonable, and in the best interests of the

Debtors' estates.  The settlement creates certainty where there previously was none and allows the Debtors to receive a substantial influx of funds that would otherwise be unavailable.  The Debtors need such funds to continue to administer these Chapter 11 Cases and achieve their proposed sales and marketing timeline. The Settlement Agreement therefore inures to the substantial benefit of all stakeholders, allowing the Debtors to focus their full attention on pursuing their goal of maximizing the value of their estates in these Chapter 11 Cases.

### i.   *The Probability of Success in Litigation.*

28.     The Settlement Agreement removes any threat of an unfavorable result should the Parties proceed to litigate their complex legal disputes.  While the Debtors are confident in their legal theories and arguments should litigation among the Parties move forward, this settlement eliminates any possibility of material claims against the Debtors' estates that could otherwise reduce creditor recoveries.  This factor weighs in favor of approving the Settlement Agreement.

### ii.   *The Likely Difficulties in Collection.*

29.     The Settlement Agreement eliminates any risk that the Debtors would be unsuccessful in collecting the amounts the Debtors allege are owed by the Project Group under the prepetition commercial agreements.  This is especially important in light of the fact that the Project Group alleges a right to set off certain liquidated damages.  This factor supports approving the Settlement Agreement.

### iii.   *The Complexity of the Litigation Involved, the Expense, Inconvenience and Delay Necessarily Attending It.*

30.     The issues resolved by the Settlement Agreement are complex and would not easily be resolved apart from the Settlement Agreement.  Moreover, the Parties are major entities represented by able, sophisticated counsel.  Any litigation would be expensive, lengthy, and inconvenient, not to mention such litigation would distract the Debtors from administering the core matters of these Chapter 11 Cases.  This is particularly true considering the nature of the claims at issue, the cross-border relationship of the parties, and the numerous foreign laws implicated by the governing law provisions of the applicable agreements.  Approving the Settlement Agreement

foregoes such expense, inconvenience, and delay, which supports this Court granting this Motion.

iv.    ***The Paramount Interest of the Creditors.***

31.    Finally, the paramount interests of creditors weigh heavily in favor of approval of the settlement as set forth in the Settlement Agreement.  With the settlement, the Debtors will realize a substantial influx of funds that will provide increased liquidity to administer these Chapter 11 Cases in a value-maximizing fashion for the benefit of all stakeholders, including creditors.

32.    As the foregoing analysis of the Martin Factors demonstrates, the Settlement Agreement falls well above the lowest point in the range of reasonableness and for these reasons, the Debtors believe the Settlement Agreement is in the best interests of the Debtors and their estates. Therefore, the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019(a).

B.    Entry Into and Performance Under the Settlement Agreement is a Sound Exercise of the Debtors' Business Judgment

33.    Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.  *See Northview Motors, Inc. v. Chrysler Motors Corp*., 186 F.3d 346, 350–51 (3d Cir. 1999); *see also In re Martin*, 91 F.3d 389, 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). Courts normally defer to the debtor's business judgment so long as there is a legitimate business justification.  *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (holding that the trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).  A court must approve a debtor's exercise of business judgment "unless it is the

product of bad faith, whim, or caprice." *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 182 (Bankr. E.D. Pa. 2010)

34.    The Debtors respectfully submit that there is substantial business justification for the Debtors' entry into the Settlement Agreement. As detailed above, the Settlement Agreement represents a fair and reasonable approach to resolving the potential claims between the Debtors and the Project Group, obviating distracting, expensive, time-consuming litigation and instead permitting the Debtors to focus on pursuing a value-maximizing transaction that will inure to the benefit of the Debtors' estates and their stakeholders.

35.    In addition, the Debtors believe the value they are receiving under the Settlement Agreement is both fair and reasonable in light of the consideration being provided to the Project Group.  Notably, the Settlement Agreement will bring in a substantial amount of funds into the Debtors' estates at a critical juncture. Moreover, the Assets being transferred pursuant to the Settlement Agreement are located in Australia, are almost entirely specific to the Projects, and likely have little to no value to any party other than the Project Group.  In addition, most of the Assets located in Australia are being held by a third-party that has claims against the Debtors for unpaid invoices and has possessory liens over those Assets.  The Project Group is agreeing to take such Assets subject to such liens.

36.    Similarly, the Designation Rights being granted pursuant to the Settlement Agreement relate only to contracts that are necessary for the Projects and the Debtors do not believe they would be able to realize any meaningful value from those rights.  Accordingly, the Debtors believe the consideration set forth in the Settlement Agreement is fair and value-maximizing as it relates to the transfer of these unique, project-specific Assets and Designation Rights.

37.    Moreover, absent the Settlement Agreement, the Debtors would likely have

rejected most if not all of the contracts subject to the Designation Rights, as the Debtors' budget did not contemplate the continued incurrence of costs under those contracts (and most do not relate to the business the Debtors are seeking to market and sell).  Instead, the Settlement Agreement provides counterparties to those contracts with a chance that their anticipated cure amounts may be paid upon assumption and assignment and allows the Debtors to avoid saddling the estates with substantial rejection damage claims from those contracts.  The Project Group's agreement to reimburse the Debtors for certain potential severance costs for Australian employees up to a cap will further reduce claims against the Debtors' estates.

38.     Pursuant to the Settlement Agreement, the Debtors also reaffirm that the intellectual property licenses provided for in the ESAs and IP Escrow Agreements are in full force and effect and that the Project Group is permitted to continue to use the licenses for the permitted uses as set forth in the Project Documents.  The Settlement Agreement does not alter, modify, or expand any rights with respect to the intellectual property licenses. and the Debtors remain free to further license or otherwise monetize the underlying intellectual property included in the Settlement Agreement.

39.     As described above, the Settlement Agreement also results from arm's length negotiations with the Project Group. The Debtors believe the terms set forth in the Settlement Agreement are the most favorable terms the Debtors could obtain under the circumstances. The Settlement Agreement provides a $[OMITTED] guaranteed value to the estates (among other valuable consideration), inuring to the substantial benefit of all parties in interest.  Accordingly, the Debtors, in their business judgment, have determined that entering into the Settlement Agreement is necessary to maximize value for their estate.

C.     The Designation Procedures Should be Approved Under Section 365(a) the Bankruptcy Code

40.     The Debtors also seek approval of the Designation Procedures, which are needed

18

to give effect to the Designation Rights provided for in the Settlement Agreement.

41.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume . . . any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  This section of the Bankruptcy Code enables the debtor in possession to maximize the value of the debtor's estate by assuming executory contracts that benefit the estate and rejecting those that do not.  *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000).

42.     "Although the Bankruptcy Code does not specify the standard to be applied in assessing the decision of a trustee or debtor in possession to assume or reject a contract, the Third Circuit has adopted the business judgment standard."  *Nickels Midway Pier, LLC v. Wild Waves, LLC* (*In re Nickels Midway Pier, LLC*), 341 B.R. 486, 493 (D. N.J. 2006) (citing *Sharon Steel Corp. v. National Fuel Gas Dist. Corp.* (*In re Sharon Steel*), 872 F.2d 36, 39-40 (3d Cir. 1989)). A debtor who provides a valid business justification for its actions creates a strong presumption that it made the decision in good faith, and with the honest belief that its actions were taken in the best interests of the company.  *In re Filene's Basement*, No. 11-13511, 2014 WL 1713416, at *20 (Bankr. D. Del. Apr. 29, 2014).  Courts will therefore generally defer to a debtor's decision and will only overturn that decision if it was a product of bad faith, whim, or caprice.  *In re HQ Global Hldgs.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).

43.     The Debtors submit that the Designation Procedures outlined herein are consistent with section 365 of the Bankruptcy Code and provide affected counterparties more than adequate notice and an opportunity to be heard on any issues that they may have with the proposed assumption and assignment of their contract.  Accordingly, the Designation Procedures, which are necessary to effectuate the intent of the Settlement Agreement, should be approved.

D.     The Transfer of the Assets and Designation Rights Free and Clear of Liens and Other Interests is Authorized Under Section 363(f) of the Bankruptcy Code

44.     The Debtors request approval to transfer the Assets and the Designation Rights and assume and assign the Designated Project Subcontracts on a final "as is" basis, free and clear of

interests (unless otherwise expressly assumed under, or expressly permitted by, the Settlement

Agreement), which include: liens, claims (as defined in section 101(5) of the Bankruptcy Code),

debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations,

liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options,

rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature

whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or

unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or

disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured,

material or non-material, disputed or undisputed, whether arising prior to or subsequent to the

commencement of these chapter 11 cases.

45.    Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and

clear of liens, claims, interests, and encumbrances if applicable nonbankruptcy law permits such

sale free and clear or the holder of the interest consents, among other things.  *See* 11 U.S.C. §

363(f).

46.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus,

satisfaction of any of the requirements enumerated therein will suffice to warrant the transfer of

the applicable property free and clear of all interests, except with respect to any interests that may

be assumed under the applicable agreement.  *See In re C-Power Prods., Inc.*, 230 B.R. 800 (Bankr.

N.D. Tex. 1998); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 Bankr. LEXIS 4333, at

*7 (Bankr. E.D. Tex. Dec. 19, 2007) ("satisfaction of any one of the requirements [of Section

363(f) of the Bankruptcy Code] will suffice to warrant the Debtors' sale . . . free and clear of all

interests"). To the extent any party has a prepetition security interest or lien upon the Assets,

Designation Rights, or the Contracts, such interests are either subject to consent, satisfied by

monetary payment, or otherwise fall within one or more of the applicable subsections of section 363(f), thereby permitting the sale free and clear. Thus, section 363(f) of the Bankruptcy Code is satisfied.

47.     The Debtors submit that the Project Group is a "good faith" purchaser of the Assets and Designation Rights within the meaning of section 363(m) of the Bankruptcy Code and should also be afforded the protections of section 363(n) of the Bankruptcy Code. Courts generally conclude that a purchaser has acted in good faith as long as the consideration is adequate and reasonable and the terms of the transaction are fully disclosed. *See In re Abbotts Dairies*, 788 F.2d 143, 149–50 (3d Cir. 1986). First, as set forth in more detail above, the consideration to be received by the Debtors pursuant to the Settlement Agreement is fair and reasonable.  Second, the parties entered into the Settlement Agreement in good faith and after extensive, arm's-length negotiations, during which all parties were represented by competent counsel. Third, the Project Group, is not an "insider" of the Debtors and there is no indication of any fraud, collusion, or an attempt to take grossly unfair advantage or similar conduct that would cause or permit the Settlement Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Accordingly, the Debtors request that the Court determine that the Project Group is a good faith purchaser under section 363(m) of the Bankruptcy Code and is subject to the protections of section 363(n) of the Bankruptcy Code.

48.     For these reasons, the Debtors believe that entry into the Settlement Agreement, including the transfer of the Assets and Designation Rights to the Project Group included therein, should be approved.

## VI.   <u>WAIVER OF STAY</u>

49.     To the extent the requested relief constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy

Rule 6004(h) regarding the use, sale, or lease of property and the stay of an order authorizing the

assignment of an executory contract or unexpired lease under Bankruptcy Rule 6006(d), in each

case, to the extent applicable.  The Debtors intend to consummate the Settlement Agreement as

soon as practicable following entry of the Order.  Accordingly, cause exists to justify a waiver of

the 14-day stay imposed by Bankruptcy Rule 6004(h) and 6006(d), to the extent such stay applies.

## VII.   WAIVER OF MEMORANDUM OF LAW

50.     The Debtors respectfully request that the Court waive the requirement to file a

separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon

which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## VIII.   RESERVATION OF RIGHTS

51.     Nothing contained in this Motion or any order granting the relief requested in this

Motion, and no action taken pursuant to the relief requested or granted in connection with this

Motion (including any payment made in accordance with any such order), is intended as or shall

be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any

claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a

waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds;

(c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding

that any particular claim is an administrative expense claim, other priority claim or otherwise of a

type specified or defined in this Motion or any order granting the relief requested by this Motion;

(e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant

to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability

or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'

estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors

22

or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## IX.  NO PRIOR REQUEST

52.  No prior request for the relief sought in this motion has been made to this or any other court.

## X.  NOTICE

53.  Notice of this Motion shall be given to the following parties: (a) the U.S. Trustee; (b) counsel for the Debtors' Prepetition Secured Parties; (c) the Debtors' fifty largest unsecured creditors on a consolidated basis; (d) counsel to KKR; (e) counsel to the DIP Lender; (f) counsel to the Committee, if any; (g) all holders of liens, claims, or interests in the Assets; (h) counterparties to contracts potentially impacted by the Motion; (i) the United States Internal Revenue Service; (j) the United States Attorney's Office for the District of New Jersey; (k) Attorneys General for the States of Delaware, New Jersey, Oregon, and Texas; (l) the United States Environmental Protection Agency; and (m) all parties entitled to service under Rule 2002 or who have requested notice in these Chapter 11 Cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## XI.  CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Order as set forth herein; and (ii) grant the Debtors such other and further relief is just and proper under the circumstances.

*[Signature Page Follows]*

23

Dated: June 28, 2025

**DENTONS US LLP**

*/s/ Lauren Macksoud*
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
        sarah.schrag@dentons.com

-and-

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## DECLARATION OF GERARD UZZI IN SUPPORT OF
## DEBTORS' MOTION TO APPROVE SETTLEMENT AND RELEASE AGREEMENT

I, Gerard Uzzi, hereby state and declare as follows:

1.  I am the Chief Restructuring Officer (the "CRO") of Powin, LLC ("Powin"). I was appointed as CRO of Powin and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors") effective on June 9, 2025.

2.  I am also a Managing Partner and Founder of CBMN Advisors LLC d/b/a Uzzi & Lall ("Uzzi & Lall"). I have extensive experience advising companies, boards of directors, senior management, creditors, equity holders, and investors in stressed and distressed situations, including chapter 11, out-of-court work outs, and rescue financings across industries and jurisdictions. I also serve in a number of fiduciary capacities, including presently as the Chairman of the Celsius Litigation Oversight Committee.

3.  Prior to co-founding Uzzi & Lall, I was a senior restructuring partner at Milbank LLP and White & Case LLP for over 18 years in the aggregate. During that time, I was personally involved in senior roles in some of the nation's largest and most complex chapter 11 cases, including Lehman Brothers, Washington Mutual, American Airlines, Rescap, Charter Communications, Mirant, Adelphia Communications, Purdue Pharma, and ZAIS. I have been recognized for my work in Chambers, Euromoney's IFLR, The Legal 500, and Expert Guides as one of the World's Leading Insolvency and Restructuring Professionals.

4.  On June 9, 2025 (the "Petition Date"),[1] Powin and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). I am knowledgeable and familiar with the Debtors' day-to-day operations, business and financial affairs, and the circumstances leading to the commencement of these chapter 11 cases (the "Chapter 11 Cases").

---

[1] Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the majority of Debtors were filed shortly thereafter on June 10, 2025, *except that*, three additional Debtor-affiliates (Powin Energy Storage 2, Inc., Powin Energy Ontario Storage II LP, and Powin Canada B.C. Ltd.) filed for petitions on June 22, 2025.

5.      I submit this declaration (the "Declaration") in support of *Expedited Motion of the Debtors for Entry of an Order (I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related Relief* (the "Motion").[2]

6.      Except as otherwise indicated herein, this Declaration is based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors or the Debtors' advisors, my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and this industry. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

7.      As background, upon information and belief, Munmorah is engaged in the development of a battery storage project located in Munmorah, New South Wales, Australia, known as the Waratah Super Battery (the "Munmorah Project").  Upon information and belief, Ulinda is engaged in the development of a battery storage project located in Queensland, Australia, known as the Ulinda Park BESS (the "Ulinda Project", and together with the Munmorah Project, the "Projects").

8.      Prior to the Petition Date, in furtherance of the Munmorah Project, Munmorah and Powin entered into (i) that certain Energy Supply Agreement, dated November 7, 2022 (as amended, supplemented, or amended and restated, from time to time, the "Munmorah ESA"), (ii) that certain Long Term Supply Agreement, dated December 16, 2022 (as amended, supplemented, or amended and restated, from time to time, the "Munmorah LTSA"), and (iii) that certain escrow agreement, dated February 22, 2024, by and among Munmorah, Powin and [OMITTED], a Georgia corporation (the "Escrow Agent" and such agreement, as amended, supplemented, or amended and restated, from time to time, the "Munmorah IP Escrow Agreement" and, such agreement, together with the Munmorah ESA and the Munmorah LTSA, collectively referred to as the "Munmorah Agreements").

9.      Also prior to the Petition Date, in furtherance of the Ulinda Project, Ulinda and

---

[2] Capitlaized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Powin entered into (i) that certain Energy Supply Agreement, dated June 26, 2023 (as amended, supplemented, or amended and restated, from time to time, the "Ulinda ESA" and, together with the Munmorah ESA, the "ESAs"), (ii) that certain Long Term Supply Agreement, dated June 28, 2023 (as amended, supplemented, or amended and restated, from time to time, the "Ulinda LTSA" and, together with the Munmorah LTSA, the "LTSAs"), and (iii) that certain escrow agreement, dated September 10, 2024, by and among Ulinda, Powin and the Escrow Agent (as amended, supplemented, or amended and restated, from time to time, the "Ulinda IP Escrow Agreement," and such agreement together with the Ulinda ESA and the Ulinda LTSA, collectively referred to as the "Ulinda Agreements"). The Munmorah Agreements and the Ulinda Agreements shall collectively be referred to herein as the "Project Documents."

10.     Prepetition, (i) Munmorah and Powin and certain key suppliers entered into those certain agreements described in, and attached to, the Settlement Agreement (the "Munmorah Key Supplier Agreements" and the suppliers party to such agreements, the "Munmorah Key Suppliers"), and (ii) Ulinda and Powin and certain key suppliers entered into those certain agreements described in, and attached to, the Settlement Agreement (the "Ulinda Key Supplier Agreements" and together with the Munmorah Key Supplier Agreements, the "Key Supplier Agreements" and the suppliers party to the Ulinda Key Supplier Agreements, the "Ulinda Key Suppliers," and together with the Munmorah Key Suppliers, the "Key Suppliers").

11.     The Project Group alleges that Powin has materially breached certain of its obligations under the Project Documents (as described in the Termination Notices (as defined below)) resulting in delays to the Projects and, on May 29, 2025, each of Munmorah and Ulinda issued termination notices to Powin with respect to the Munmorah ESA and Munmorah LTSA and the Ulinda ESA and Ulinda LTSA, respectively.  The Project Group further alleges that the Project Group is owed damages, including liquidated damages, pursuant to the ESAs.

12.     The Project Group has asserted that time was of the essence under the ESAs based on the Project Group's commitment to third parties to complete the Projects by a date certain and therefore the Project Group and Powin agreed for Powin to complete the Work (as defined in the

2

ESAs) by certain guaranteed dates in the ESAs. As provided under the terms of the ESAs (certain of which survive termination thereof), following termination of the ESAs for Powin's breach or default, the Project Group can complete the Work (as defined in the ESAs) by any method deemed expedient where the Project Group uses any reasonable means necessary to mitigate damage or cost.  As a result of the alleged breaches, the Project Group has asserted that it expects to incur significant delays, costs, and expenses in order to complete the Work for each Project.

13.     The Project Group has asserted to the Debtors that all conditions necessary to release the Supplier's Intellectual Property (as defined in the ESAs, the "Supplier's Intellectual Property") and all Deposit Materials (as defined in the IP Escrow Agreements, the "Deposit Materials") have been satisfied under the IP Escrow Agreements.  On May 27, 2025 and June 5, 2025, in the case of Munmorah, and May 30, 2025, in the case of Ulinda, the Project Group delivered escrow release demands to the Escrow Agent and copied Powin with respect to the Munmorah IP Escrow Agreement and the Ulinda IP Escrow Agreement.  Powin disputed such release of the Deposit Materials.

14.     On June 5, 2025, each of Munmorah and Ulinda delivered notices to Powin and the Escrow Agent, in each case, alleging that the materials deposited by Powin as Deposit Materials under the Munmorah Agreements and Ulinda Agreements, respectively, did not, as of June 5, 2025, contain all materials required to be deposited in escrow in accordance with the Munmorah Agreements and Ulinda Agreements, respectively, and annexed thereto the materials required to be deposited by Powin as Deposit Materials in accordance with the Munmorah Agreements and Ulinda Agreements (all such materials collectively, the "Missing IP").

15.     As further described in my First Day Declaration, the Debtors experienced challenges in early 2025 leading to financial constraints that required engagement with various parties in interest, including the Project Group and KKR, regarding an appropriate path forward for the Debtors' business.  During these discussions, the Debtors and the Project Group worked cooperatively to resolve various issues and find a mutually-beneficial path forward.  As part of those constructive discussions, prior to the Petition Date, the Debtors and the Project Group

3

negotiated a resolution whereby the Project Group made certain direct payments of approximately $[OMITTED] to certain of the Debtors' subcontractors, vendors, and suppliers. During these discussions, the Parties also worked to negotiate terms to settle and compromise significant claims against the Debtors' estates, including liquidated damages and other potential liabilities under the Debtors' prepetition commercial agreements with the Project Group that could otherwise reduce creditor recoveries – all in an effort to facilitate further progress on the development of the projects in Australia and to provide the Debtors with additional liquidity to further engage various parties in interest and otherwise prepare a path forward for the Debtors' business.

16.     In addition, as a condition precedent to the execution of the Settlement Agreement, the Project Group and Powin entered into that certain Letter Agreement, dated June 6, 2025, attached to the Settlement Agreement as Exhibit C (the "Letter Agreement"), which, remains in full force and effect, pursuant to which Munmorah and Ulinda made a payment to Powin in the aggregate amount of $[OMITTED] (the "Initial Payment"; $[OMITTED] of which is deemed paid by Munmorah and $[OMITTED] of which is deemed paid by Ulinda), the receipt of which, as set forth in the Settlement Agreement, is acknowledged by Powin, in exchange for, among other things, Powin providing the Project Group and its affiliates with access to certain information to which the Project Group alleges it was entitled under the Project Documents, obtaining certain acknowledgements by the parties thereto, and the commitment by the Parties to negotiate in good faith a settlement agreement resolving any and all claims and causes of action among the Parties relating to the Project Documents, which Letter Agreement was acknowledged and consented to by KKR in accordance with the terms thereof.

17.     In the interim, on June 17, 2025, the Debtors filed an *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88], that among other things, seeks to reject the Project Documents.

18.     Over the past several weeks, the Parties have engaged in extensive, good faith, arm's length negotiations to try to resolve the disputes between the parties. Those discussions

ultimately culminated in the execution of the Settlement Agreement, which, if approved, would resolve all outstanding issues among the Parties.

19.     The Settlement Agreement provides a $[OMITTED] guaranteed value to the estates (among other valuable consideration), inuring to the substantial benefit of all parties in interest. The Settlement Agreement also:

> a.  provides the Debtors with a material influx of funds that the Debtors need to continue to administer these Chapter 11 Cases and achieve their proposed sales and marketing timeline;
>
> b.  resolves significant claims against the Debtors' estates that could otherwise reduce creditor recoveries;
>
> c.  brings significant additional funds into the estates and reduces the Debtors' liabilities because the Project Group has agreed to make certain additional payments to the Debtors and contract counterparties that will avoid saddling the estates with substantial claims;
>
> d.  allows the Debtors to monetize the Assets (i) for which the Project Group may already have title under the Project Documents, (ii) that will have a low likelihood, if any, of otherwise being monetized, or (ii) that would require the Debtors to incur significant costs to do so; and
>
> e.  provides fair and reasonable Designation Procedures, which are necessary to effectuate the Settlement Agreement.

20.     For the reasons that follow, the Debtors and I believe that entry into the Settlement Agreement is supported by substantial business justifications, is fair and reasonable, provides several direct benefits to the Debtors' estates, and is in the best interests of the Debtors' estates.

21.     Among other things, the Settlement Agreement removes any threat of an unfavorable result should the Parties proceed to litigate their complex legal disputes.  While the Debtors are confident in their legal theories and arguments should litigation among the Parties move forward, this settlement eliminates any possibility of material claims against the Debtors' estates that could otherwise reduce creditor recoveries.  Moreover, the issues resolved by the Settlement Agreement are complex and would not easily be resolved apart from the Settlement Agreement.  Additionally, the Parties are major entities represented by able, sophisticated counsel.

The Debtors and I anticipate that any litigation would be expensive, lengthy, and inconvenient, not to mention such litigation would distract the Debtors from administering the core matters of these Chapter 11 Cases.  This is particularly true considering the nature of the claims at issue, the cross-border relationship of the parties, and the numerous foreign laws implicated by the governing law provisions of the applicable agreements.   Approving the Settlement Agreement foregoes such expense, inconvenience, and delay.

22.      The Settlement Agreement also eliminates any risk that the Debtors would be unsuccessful in collecting the amounts the Debtors allege are owed by the Project Group under the prepetition commercial agreements.  This is especially important in light of the fact that the Project Group alleges a right to set off certain liquidated damages.

23.      Finally, the paramount interests of creditors weigh heavily in favor of approval of the settlement as set forth in the Settlement Agreement, as the Debtors will realize a substantial influx of funds, which will provide increased liquidity to administer these Chapter 11 Cases in a value-maximizing fashion for the benefit of all stakeholders, including creditors.

24.      In addition to the foregoing, the Debtors and I believe the terms set forth in the Settlement Agreement are the most favorable terms the Debtors could obtain under the circumstances.  The Assets being transferred pursuant to the Settlement Agreement (i) are located in Australia and held by a party that has lien claims against the Debtors for unpaid invoices, (ii) are almost entirely specific to the Projects, and (iii) likely have little to no value to any party other than the Project Group.  The Project Group is agreeing to take such Assets subject to the third party's possessory lien claims.

25.      Similarly, the Designation Rights being granted pursuant to the Settlement Agreement relate only to contracts that are necessary for the Projects, and the Debtors and I do not believe the Debtors would be able to realize any meaningful value from those rights.  In fact, absent the Settlement Agreement, the Debtors would likely have rejected most if not all of the contracts subject to the Designation Rights, as the Debtors' budget did not contemplate the continued incurrence of costs under those contracts (and most do not relate to the business the Debtors are

6

seeking to market and sell).  Instead, the Settlement Agreement provides counterparties to those contracts with a chance that their anticipated cure amounts may be paid upon assumption and assignment and allows the Debtors to avoid saddling the estates with substantial rejection damage claims from those contracts.

26.      In sum, the Debtors and I believe the Settlement Agreement should be approved.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 28th day of June 2025, at Sea Bright, New Jersey in Monmouth County.

Signed by:

*Gerard Uzzi*

C933082321E44B5...

_____

Gerard Uzzi

## __EXHIBIT A__

(Proposed Form of Order)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**ORDER GRANTING EXPEDITED MOTION OF THE DEBTORS FOR**
**ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING**
**SETTLEMENT AND RELEASE AGREEMENT; AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three [3] through twelve [12], is

**ORDERED**.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

US_ACTIVE\

(Page 2)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order
(I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related
Relief

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**

Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
         sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
         aglaubach@teamtogut.com
         eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

(Page 3)

Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order
(I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related
Relief

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"):  (i) authorizing and approving that

certain Settlement and Release Agreement (the "Settlement Agreement")[3] under Rules 2002,

6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and

sections 105, 362, 363, and 365 of title 11 of the United States Code, §§ 101 *et seq.* (the

"Bankruptcy Code") by and among Powin, Munmorah Battery ProjectCo Pty Ltd, ACN 662 894

699, an Australian corporation ("Munmorah"), Ulinda Park ProjectCo Pty Ltd, ACN 659 144 484,

an Australian corporation ("Ulinda", and together with Munmorah, the "Project Group"), FS KKR

Capital Corp., a Maryland corporation, KKR FS Income Trust, a Delaware statutory trust, KKR

FS Income Trust Select, a Delaware statutory trust, Forethought Life Insurance Company, an

Indiana domestic insurance corporation, Commonwealth Annuity and Life Insurance Company, a

Massachusetts insurance corporation, and First Allmerica Financial Life Insurance Company, a

Massachusetts insurance corporation (together with FS KKR Capital Corp., KKR FS Income

Trust, KKR FS Income Trust Select, Forethought Life Insurance Company and Commonwealth

Annuity and Life Insurance Company, each a "KKR Party" and collectively, "KKR");[4]

(ii) authorizing the transfer of certain of the Debtors' assets (including certain parts, equipment,

materials, consumables, supplies, contracts, purchase orders, and warranties) set forth in the

Settlement Agreement and the Designation Rights (as defined in the Settlement Agreement)

(collectively, the "Assets"); (iii) approving the Designation Procedures (as defined below); and

(iv) granting related relief, all as more fully set forth in the Motion; and upon the First Day

Declaration and the Uzzi Declaration; and this Court having jurisdiction over this matter pursuant

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.
[3] A true and correct copy of the Settlement Agreement is attached to the Order as Exhibit 1. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.
[4] Each of Powin, the Project Group and KKR are sometimes referred to herein individual as a "Party", and collectively as the "Parties".

(Page 4)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order
(I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related
Relief

to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District

Court for the District of New Jersey dated as of September 18, 2012, as amended on June 6, 2025;

and this Court having found that consideration of the Motion and the relief requested therein is a

core proceeding pursuant to 28 U.S.C. § 157(b) and this Order is a final order within the meaning

of 28 U.S.C. § 158(a); and the Debtors having consented to the entry of a final order with respect

to the Motion; and this Court having found that venue of this proceeding and the Motion in this

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and this Court having found that the Debtors' notice of the Motion,

opportunity to object, and opportunity for a hearing on the Motion were appropriate under the

circumstances and that no other notice need be provided; and this Court having determined that

the legal and factual bases set forth in the Motion, the First Day Declaration, and the Uzzi

Declaration, and at the hearing thereon establish just cause for the relief granted herein; and all

objections, responses, or reservation of rights filed or asserted in response to the Motion or the

relief granted herein, if any, having been withdrawn, resolved, or overruled on their merits in their

entirety; and upon all of the proceedings before this Court; and after due deliberation and sufficient

cause appearing therefor; and this Court having found that venue of this proceeding and the Motion

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having determined

that the legal and factual bases set forth in the Motion and at the hearing thereon (the "Hearing")

establish just cause for the relief granted herein; and upon all of the proceedings before this Court;

and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED**

**THAT**:[5]

---

[5] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy
Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact
constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of
fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the

US_ACTIVE\

(Page 5)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order
(I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related
Relief

1.        The Motion is granted on a final basis to the extent set forth herein.  Pursuant to sections

363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Settlement Agreement attached

as **Exhibit 1** is approved in its entirety as entirely fair, equitable, and reasonable, and the terms and conditions

of the Settlement Agreement are incorporated into this Order as if fully set forth herein.

2.        The Debtors and the Project Group are authorized to enter into, perform, execute,

and deliver all documents, and take all actions necessary to timely and fully implement and

consummate the Settlement Agreement and the relief granted in this Order.

3.        The releases contemplated under the Settlement Agreement are hereby approved and shall

be effective upon the Effective Date without further order of the Court or action of the Parties.

4.        Except as expressly provided for in this Order or in the Settlement Agreement,

pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors

are authorized to transfer the Assets to the Project Group, and the Project Group shall have and

take title to and possession of the Assets free and clear of, and shall have no obligation with respect

to, all liens, claims, and other encumbrances ("Claims") of any kind or nature whatsoever,

including, without limitation, rights or claims based on any successor, transferee, derivative, or

vicarious liabilities; de facto merger, continuation or continuity, or any similar theories under

applicable state or federal law or otherwise.

5.        This Order:  (a) is and shall be effective as a determination that upon the Effective

Date (as defined in the Settlement Agreement) all Claims of any kind or nature whatsoever existing

---

Court during or at the conclusion of the Hearing.  This Order shall constitute the findings of fact and conclusions of law and shall take
immediate effect upon execution hereof.

US_ACTIVE\

(Page 6)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order (I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related Relief

as to the Assets, have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected; and (b) is and shall be binding upon and shall authorize all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets conveyed to the Project Group.

6.       The total consideration provided by all parties pursuant to the Settlement Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Settlement Agreement.  Effective from and after the Effective Date, each of the Parties hereby release any claims they may have relating to the transfers contemplated by the Settlement Agreement.

7.       The Settlement Agreement was entered into without collusion or fraud, in good faith, and at arm's length and was not entered into for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United

US_ACTIVE\

(Page 7)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order
(I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related
Relief

States, any state, territory, possession thereof, or the District of Columbia, or any other applicable

law.  None of the Settlement Parties entered into the Settlement Agreement with any fraudulent or

otherwise improper purpose.

8.    The Project Group is a good faith purchaser within the meaning of Bankruptcy

Code section 363(m) and otherwise has proceeded in good faith in all respects in connection with

this proceeding, and is therefore entitled to the full protection of that provision with respect to the

Settlement Agreement, each term of the Settlement Agreement (and any ancillary documents

executed in connection therewith) and each term of this Order.

9.    The following Designation Procedures comply with section 365 of the Bankruptcy

Code and Bankruptcy Rule 6006 and are hereby approved:

   a.  Effective as of the Execution Date (as defined in the Settlement
       Agreement), subject to the entry of this Order, Powin shall irrevocably and
       unconditionally assign, convey, and transfer to Munmorah, free and clear
       of all liens, claims, and encumbrances to the fullest extent permitted by
       section 363(f) of the Bankruptcy Code, the exclusive right to irrevocably,
       subject to the express provisions set forth in the Settlement Agreement,
       select, identify, and designate (on one or more occasions) (such rights, the
       "Designation Rights") the Munmorah subcontracts (including the purchase
       orders related to the Munmorah Project) listed on Exhibit E-1 of the
       Settlement Agreement between Powin or its affiliates and a person or entity
       that furnishes labor, services, material or equipment to Powin for the
       purposes of the Munmorah Project (collectively, the "Munmorah
       Subcontracts") in respect of which Munmorah, or its assignee, will acquire
       all of Powin's rights, title and interest in and to the applicable Munmorah
       Subcontracts.

   b.  Effective as of the Execution Date, subject to the entry of this Order, Powin
       shall irrevocably and unconditionally assign, convey and transfer to Ulinda,
       free and clear of all liens, claims, and encumbrances to the fullest extent
       permitted by section 363(f) of the Bankruptcy Code, the Designation Rights
       in respect of the Ulinda subcontracts (including the purchase orders related

(Page 8)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order (I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related Relief

to the Ulinda Project) listed on Exhibit E-2 of the Settlement Agreement between Powin or its affiliates and a person or entity that furnishes labor, services, material or equipment to Powin for the purposes of the Ulinda Project (collectively, the "Ulinda Subcontracts", and together with the Munmorah Subcontracts, the "Project Subcontracts").

c.  Effective as of the Execution Date, subject to the terms and conditions of the Settlement Agreement, this Order, and the requirements of section 365(b) of the Bankruptcy Code, by no later than 5:00 p.m. on the date that is 60 days after the date the Court enters this Order (the "Expiration Date" and such hearing the "Approval Hearing", and the period between the Execution Date and the Expiration Date, the "Designation Rights Period"), the Project Group may by written notice substantially in the form attached hereto as **Exhibit 3** (such notice an "Assignment Notice") to Powin designate one or more of the Project Subcontracts for assumption and assignment, in the Project Group's sole and absolute discretion, which can be exercised with respect to any number, or none, of the Project Subcontracts prior to the Expiration Date. Such notice shall provide the following information: (i) the Project Subcontract proposed to be assumed and assigned, (ii) the identity of the assignee, if any, (iii) the identity of the subcontractor with respect to the applicable Project Subcontract, and (iv) the Cure Costs[6] associated with the applicable Project Subcontract. The Project Group (or its assignee(s)), at the Project Group's sole cost and expense, shall have the exclusive right to take an assignment of any Project Subcontract and to negotiate with the subcontractor with respect thereto (it being understood that upon written notification by the Project Group to Powin that the Project Group will not elect to have a Project Subcontract assigned to it or its assignee, in which case Powin shall have the right to then reject or assign such Project Subcontract to another party in Powin's sole and absolute discretion). The Designation Rights set forth herein shall terminate on the Expiration Date. Within one (1) Business Day following the date of Powin's receipt of a Project Group Assumption Notice, Powin shall file with the Court and serve by overnight mail and email (in each case, where available) on the applicable subcontractor(s) and other appropriate notice parties an Assignment Notice in respect of the designated Project Subcontracts (the "Designated Project Subcontracts") subject to such Assignment Notice. The Assignment Notice shall contain (i) the Project Subcontract proposed to be assumed and assigned, (ii) the identity of the

---

[6] With respect to each Designated Project Subcontract, on the Contract Assignment Closing Date (as defined below) relating to such Designated Project Subcontract, the Project Group shall pay to Powin for further payment to the applicable subcontractor for such Designated Project Subcontract an amount equal to the cure costs approved by the Bankruptcy Court for such Designated Project Subcontract (the "Cure Costs").

US_ACTIVE\

(Page 9)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order (I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related Relief

assignee, if any, (iii) the identity of the subcontractor with respect to the applicable Project Subcontract, and (iv) the Cure Costs associated with the applicable Project Subcontract. Unless otherwise agreed by the Parties, the Assignment Notice shall provide the applicable subcontractor(s) no more than seven (7) days following service of such notice (the "Response Deadline") to object to the proposed Cure Costs and/or assumption of the applicable Project Subcontract, and such objection shall be heard at the later of (i) the Approval Hearing and (ii) a hearing before the Court no later than thirty (30) days after service of the Assignment Notice. The Parties shall close the assumption and assignment of any designated Project Subcontracts, as applicable, on the later of (i) the Response Deadline, if no objection is filed and served by a contract counterparty in accordance with the procedures in the Assignment Notice prior to such date, (ii) prior to such Response Deadline on a date agreed between the contract counterparty and the Project Group if such objection is resolved prior to the Response Deadline, (iii) the first (1st) Business Day after the Court enters an order overruling or resolving any objection lodged by the contract counterparty, and (iv) such other date as the Project Group and the contract counterparty agrees (each, as applicable, a "Contract Assignment Closing Date"). Notwithstanding the foregoing, effective as of the applicable Contract Assignment Closing Date, Powin shall assign to the Project Group all of Powin's rights, titles, and interests in any and all Avoidance Actions (as defined below) relating to or arising from the Project Subcontracts assumed and assigned to the Project Group pursuant to Section 4 of the Settlement Agreement; provided, for the avoidance of doubt, Powin shall retain all Avoidance Actions relating to or arising from Project Subcontracts not assumed and assigned under the Settlement Agreement. For purposes of the Settlement Agreement, "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other claims, causes of action, or remedies that may be brought by or on behalf of Powin, its affiliates, or their successors or assigns or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies arising under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law, including fraudulent transfer laws.

d.   With respect to any Designated Project Subcontract, the Project Group and Powin shall each use commercially reasonable efforts to accomplish, and shall fully cooperate with each other in, the resolution of any objections to the proposed assumption and assignment of such Project Subcontract, provided that Powin shall have no requirement to contribute to any Cure Costs.  Furthermore, unless otherwise agreed upon by the Project Group and

9

(Page 10)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order (I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related Relief

>           Powin, the Project Group shall have no liability or obligations, other than for the payment of Cure Costs, with respect to any liabilities, claims, damages or other obligations of Powin under such Project Subcontract to the extent arising through and including the Contract Assignment Closing Date.

10.    Any party seeking to object to the assumption and assignment of any Designated Project Subcontract (an "Assumption and Assignment Objection") must do so in accordance with the procedures outlined in the Assignment Notice. If no Assignment and Assumption Objection is filed by the Assumption Objection Deadline, the Debtors may submit to the Court an order approving the assumption and assignment of such Designated Project Subcontract(s) substantially in the form attached to this Order as **Exhibit 2** under certification of counsel and without further notice or hearing. If an Assumption and Assignment Objection is timely filed and not withdrawn, the Debtors, the Project Group and the objecting counterparty shall have authority to compromise, settle or otherwise resolve any objections without further order of the Court. If the Debtors, the Project Group and the objecting counterparty determine that the objection cannot be resolved without judicial intervention, then the Debtors, with the consent of the Project Group and in consultation with the objecting counterparty as to the date and time of the hearing, shall schedule a hearing on such objection. The Assignee can determine in its sole discretion prior to the Expiration Date to remove a Designated Project Subcontract from the list of Designated Project Subcontracts to be assumed and assigned to the Assignee pursuant to an Assignment Notice; *provided* that the Debtors provide notice of such removal to the relevant Designated Project Subcontract counterparty as soon as practicable thereafter.

11.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, (i) to allow the Project Group

US_ACTIVE\

(Page 11)

Debtors:          Powin, LLC, *et al.*

Case No.          25-16137 (MBK)

Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order (I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related Relief

to give the Debtors any notice provided for in the Settlement Agreement, (ii) to allow the Project Group to take any and all actions permitted by the Settlement Agreement in accordance with the terms and conditions thereof, including, without limitation, effectuating the Transaction and (iii) to otherwise implement the terms and provisions of the Settlement Agreement and this Order.

12.      This Order shall be fully enforceable against each of the Debtors, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases, in each case, in accordance with the terms of this Order.

13.      Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Transaction and the Debtors and the Project Group intend to close the Transaction as soon as practicable.

14.      In the event that there is a direct conflict between the terms of this Order, the Settlement Agreement, and any documents executed in connection therewith, the provisions contained in this Order, the Settlement Agreement, and any documents executed in connection therewith shall govern, in that order.

15.      This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

(Page 12)
Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order (I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related Relief

16.     All time periods set forth in this Order and the Settlement Agreement shall be calculated in

accordance with Bankruptcy Rule 9006(a).

**<u>Exhibit 1</u>**

(Settlement Agreement)

**OMITTED**

**<u>Exhibit 2</u>**

(Proposed Assignment Order)

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered)<br><br>(Emergency Hearing Requested) |

**ORDER (I) AUTHORIZING AND APPROVING
ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS DESIGNATED IN DEBTORS' NOTICE OF CURE COSTS AND
ASSUMPTION AND ASSIGNMENT; AND (II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered [3] through [7], is **ORDERED.**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(Page 2)

Debtors:            Powin, LLC, *et al.*

Case No.           25-16137 (MBK)

Caption of Order: Order (I) Authorizing and Approving Assumption and Assignment of Executory Contracts Designated in Debtors' Notice of Cure Costs and Assumption and Assignment; and (II) Granting Related Relief

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**

Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
        sarah.schrag@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com

*Proposed Counsel for Debtors and Debtors in Possession*

(Page 3)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of Order: Order (I) Authorizing and Approving Assumption and Assignment of Executory Contracts Designated in Debtors' Notice of Cure Costs and Assumption and Assignment; and (II) Granting Related Relief

Pursuant to the *Order (I) Authorizing and Approving Settlement and Release Agreement; and (II) Granting Related Relief* [Docket No. [●]] (the "Settlement Order"); and this Court having jurisdiction and authority to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and § 1334(b); and this Court having found that this is a core proceeding under 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding in this district is proper under 28 U.S.C. §§ 1408 and 1409; and the Debtors having properly filed and served the *Notice of Cure Costs and Assumption and Assignment of Executory Contracts in Connection with Settlement Agreement* (the "Assignment and Assumption Notice")[2] to each applicable party, including those parties set forth in Schedule 1 attached hereto (the "Assignment Schedule"), in accordance with the terms of the Settlement Order; and due and proper notice of the Assignment and Assumption Notice having been provided to each applicable counterparty, and such notice having been adequate and appropriate under the circumstances, and it appearing that no other notice need be provided; and this Court having reviewed the Assignment and Assumption Notice; and upon any hearing held on the Assignment and Assumption Notice; and the Court having found that the Debtors have satisfied section 365 of the Bankruptcy Code with respect to the assumption and assignment of the Contracts to the Assignee, as applicable; and all objections, if any, to the Assignment and Assumption Notice having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases for the assumption and assignment of the Contracts pursuant to the Assumption Notice establish just cause for the relief granted herein; and this Court having found that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest;

---

[2] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Assignment and Assumption Notice.

(Page 4)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of Order: Order (I) Authorizing and Approving Assumption and Assignment of Executory
Contracts Designated in Debtors' Notice of Cure Costs and Assumption and Assignment; and
(II) Granting Related Relief

and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED**

**THAT**:

1.      The Contracts listed on **Exhibit A** to the Assignment and Assumption Notice (the

"Assignment Schedule") are assumed and assigned to the Assignee set forth in the Assignment

Schedule effective as of the Assignment Date.

2.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the assignment of

any Contract (i) shall be free and clear of all interests including liens, claims, and encumbrances,

(ii) constitutes a legal, valid, and effective transfer of such Contract, and (iii) vests the Assignee

with all rights, title, and interests to the applicable Contract.

3.      Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, within seven

(7) days following the Assignment Date for any Contract, the Assignee shall pay to the Debtors

all undisputed cure amounts set forth in the Assignment Schedule (the "Cure Costs") with respect

to each Contract, which the Debtors shall pay within three (3) days of receipt thereof directly to

the applicable counterparty by wire transfer.  The Cure Costs represent the only amounts necessary

under sections 365(b) and 365(f) of the Bankruptcy Code to cure all defaults under such Contract

through the Assignment Date.

4.      If a Contract counterparty has objected solely to the proposed Cure Costs, the

Debtors or the Assignee, as applicable, may pay the undisputed portion of such Cure Costs in

accordance with preceding paragraph and place the disputed amount in a segregated account

pending further order of the Court or mutual agreement of the parties.  Under such circumstances,

the objecting Contract counterparty's recourse is limited to the funds held in such segregated

account.

5.      From and after the Assignment Date, except for the Assignee's obligation to pay

(Page 5)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order (I) Authorizing and Approving Assumption and Assignment of Executory Contracts Designated in Debtors' Notice of Cure Costs and Assumption and Assignment; and (II) Granting Related Relief

Cure Costs, (i) the Assignee shall have no liability for claims, causes of action, breaches, defaults, or other liabilities, including successor liability, transferee liability, derivative liability, vicarious liability, *de facto* merger, continuation, or continuity, or any similar theories under applicable state, federal, or foreign law or otherwise, arising from or related to the Contract (whether known or unknown, monetary or non-monetary, or existing or accrued) for the period prior to the Assignment Date, and (ii) all other persons and entities holding such claims attributable to the period prior to the Assignment Date, including the Contract counterparties, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such claims against the Assignee, its affiliates, successors, or assigns, its or their property, or the applicable Contract, including any objections to the assumption and assignment of such Contract, whether or not such non-debtor party filed a proof of claim.

6.      Any provision in any Contract that purports to declare a breach or default as a result of a change or transfer of control or as a result of any interest of or in respect of the Debtors is unenforceable (in connection with the assignment of a Contract to the Assignee), and all Contracts shall remain in full force and effect notwithstanding assignment thereof to Assignee.  No sections or provisions of any Contract, that in any way purport to,

    a.   prohibit, restrict or condition the Debtors' assignment of such Contract (including, but not limited to, continuous operation covenants, use restrictions or the conditioning of such assignment on the consent of the non-debtor party to such Contract);

    b.   provide for the cancellation or modification of the terms of the Contract based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances, such as those prohibited by section 365(e) of the Bankruptcy Code;

    c.   provide for additional payments (*e.g.*, so called "profit" sharing/splitting), penalties, fees, charges or other financial accommodations in favor of the non-debtor third party to such Contract upon assignment thereof; or

(Page 6)
Debtors:               Powin, LLC, *et al.*
Case No.               25-16137 (MBK)
Caption of Order: Order (I) Authorizing and Approving Assumption and Assignment of Executory
Contracts Designated in Debtors' Notice of Cure Costs and Assumption and Assignment; and
(II) Granting Related Relief

> d.   provide for any rights of first refusal on a counterparty's part, or any recapture
> or termination rights in favor of a counterparty,

shall have any force or effect with respect to the Designation Rights provided pursuant to the

Settlement Agreement (each, as defined in the Settlement Order) or the assignment of the Contracts

because they constitute unenforceable anti-assignment provisions under section 365(f) of the

Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy

Code.

7.      As of the Assignment Date, no default shall exist under the Contract, and no

counterparty to the Contract shall be permitted to declare a default by any Debtor or otherwise take

action against Assignee or the Debtors as a result of any Debtor's financial condition, bankruptcy,

or failure to perform any of its obligations under the Contract.  Upon assumption and assignment

of any Contract pursuant to this Order, the Assignee shall enjoy all of the rights and benefits under

each such Contract as of the applicable Assignment Date.

8.      The Debtors are authorized to take any action necessary to implement the terms of

this Order and the assumption and assignment without further order from this Court.

9.      All recording officers are authorized to strike recorded encumbrances, claims, liens,

and other interests against the Contract recorded prior to the date of this Order.  To the extent

permitted by applicable law, a certified copy of this Order may be filed with the appropriate

recording officers to evidence cancellation of any recorded encumbrances, claims, liens, and other

interests against the Contract recorded prior to the date of this Order.  All recording officers are

hereby authorized to accept for filing any and all of the documents and instruments necessary and

appropriate to consummate the transactions contemplated by this Order.

10.     Notwithstanding any subsequent appointment of any trustee(s) under any chapter

(Page 7)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of Order: Order (I) Authorizing and Approving Assumption and Assignment of Executory
Contracts Designated in Debtors' Notice of Cure Costs and Assumption and Assignment; and
(II) Granting Related Relief

of the Bankruptcy Code, this Order shall be binding in all respects upon, and shall inure to the

benefit of, the Debtors, their estates and their creditors, their respective affiliates, successors,

assigns, and any affected third parties.

11.    In the event that there is a direct conflict between the terms of this Order and the Assignment

Notice, the provisions contained in this Order shall govern.

12.    Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the terms and conditions

of this Order are immediately effective and enforceable upon its entry.

13.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related

to the implementation, interpretation, and/or enforcement of this Order.

**<u>Exhibit 3</u>**

(Proposed Assignment Notice)

**DENTONS US LLP**

Lauren Macsoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macsoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
        sarah.schrag@dentons.com

*Proposed Counsel for Debtors and*
*Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com

*Proposed Counsel for Debtors and*
*Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br>Case No. 25-16137 (MBK)<br>(Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**NOTICE OF CURE COSTS AND ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS IN CONNECTION WITH SETTLEMENT AGREEMENT**

> **PARTIES RECEIVING THIS NOTICE SHOULD LOCATE THEIR CONTRACTS
> ON <u>EXHIBIT A</u> ATTACHED HERETO AND READ THE CONTENTS OF THIS
> NOTICE CAREFULLY.**

On [●], 2025, the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") entered an order on the *Expedited Motion of the Debtors for Entry of an Order (I) Authorizing and Approving Settlement and Release Agreement and (II) Granting Related Relief* [Docket No. [●]] (the "<u>Motion</u>")[2] of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>"), approving the Designation Procedures (as defined in the Motion) described therein for the assumption and assignment of certain executory contracts to Munmorah Battery ProjectCo Pty Ltd, ACN 662 894 699, an Australian corporation ("<u>Munmorah</u>") and Ulinda Park ProjectCo Pty Ltd, ACN 659 144 484, an Australian corporation ("<u>Ulinda</u>," and each of Munmorah and Ulinda, an "<u>Assignee</u>," or their designee and Ulinda together with Munmorah, the "<u>Project Group</u>"), and granting related relief [Docket No. [●]] (the "<u>Designation Procedures Order</u>").

Pursuant to the Designation Procedures Order and by this written notice (this "<u>Assignment and Assumption Notice</u>"), the Debtors hereby notify you that they are seeking to assume and assign, in the exercise of their business judgment, each executory contract (including as amended outside of the ordinary course of business by mutual agreement of the parties thereto and the Assignee, as applicable) set forth on **<u>Exhibit A</u>** attached hereto (each, a "<u>Contract</u>" and, collectively, the "<u>Contracts</u>") to the Assignee, as applicable, effective as of the later of (i) the Response Deadline (as defined below), if no objection is filed and served by a Contract counterparty (a "<u>Contract Counterparty</u>") in accordance with the procedures herein prior to such date, (ii) prior to such Response Deadline on a date agreed between the Contract Counterparty and the Assignee, as applicable, if such objection is resolved prior to the Response Deadline, and (iii) the first (1st) business day after the Court enters an order overruling or resolving any objection filed and served by the Contract Counterparty, or (iv) such other date as the Assignee, as applicable, and the Contract Counterparty agrees (each, as applicable, the "<u>Assignment Date</u>"), or such other date as the Assignee, as applicable, and the Contract Counterparty agrees; *provided, however*, that no Contract shall be deemed assumed or assumed and assigned absent entry of an applicable Assignment Order, the form of which was annexed to the Designation Procedures Order as <u>Exhibit 2</u>.

The Assignee, as applicable, has the financial wherewithal to meet all future obligations under the Contract, which may be evidenced by the adequate assurance information, thereby demonstrating that the Debtor or Assignee, as applicable, has the ability to comply with the requirements of adequate assurance of future performance.[3]

The Debtors request that if you object to the assumption and assignment of any Contract, including a Cure Objection or an Adequate Assurance Objection (each, as defined below), that you contact the Debtors (with a copy to the Assignee) prior to objecting to attempt to resolve such

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in Motion.

[3] The Debtors will cause evidence of adequate assurance of future performance to be served with the Assignment and Assumption Notice upon the Contract Counterparties affected by the Assignment and Assumption Notice (and their counsel, if known) by electronic mail.

dispute consensually. The Debtors' contact for such matters is John D. Beck, Esq., at (212) 768-6700, or john.beck@dentons.com. The Assignee's contact for such matters is Alejandro Bascoy, Esq., at (212)-310-8927, or alejandro.bascoy@weil.com. If such dispute cannot be resolved consensually, you must file and serve an objection by the deadlines set forth below and in accordance with the procedures set forth in this Assumption Notice to preserve your right to object.

If an objection to the assumption of any Contract is timely filed and not withdrawn or resolved, the Debtors shall provide at least seven (7) days' notice of such hearing to the applicable Contract Counterparty and the Notice Parties (as defined below). The Assignee can determine in its sole discretion prior to the Expiration Date to remove a Contract from the list of Contracts to be assumed and assigned to the Assignee pursuant to an Assignment Notice; *provided* that the Debtors provide notice of such removal to the relevant Contract Counterparty as soon as practicable thereafter.

## Cure Cost Objections

Objections to the proposed amount necessary to cure any defaults under any Contract listed on **Exhibit A** (the "Cure Costs" and such objection, a "Cure Objection"), must (a) be in writing; (b) state, with specificity, the legal and factual basis thereof, including what Cure Costs the objecting party believes are required; (c) include any supporting documentation thereof; and (d) be filed with the Court and served on the Notice Parties (as defined below) so that such objection is ***actually received*** by them no later than seven (7) days after the date that the Debtors filed and served this Assignment and Assumption Notice (via overnight mail and/or email) (the "Response Deadline"). The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Contracts. If you have more than one Contract identified on **Exhibit A**, an objection with respect to one Contract shall have no impact on the other Contract(s) to which you are a party for which no objection has been filed and served.

The Notice Parties are: (i) counsel to the Project Group (A) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn.: Andriana Georgallas (andriana.georgallas@weil.com), Kevin H. Bostel (Kevin.Bostel@weil.com), and Alejandro Bascoy (alejandro.bascoy@weil.com), and (B) Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York 10110, Attn.: Paul R. DeFilippo (pdefilippo@wmd-law.com), James N. Lawlor (jlawlor@wmd-law.com), Joseph F. Pacelli (jpacelli@wmd-law.com) and Nicholas. Servider (nservider@wmd-law.com); (ii) counsel to the Debtors (A) Dentons US LLP, 1221 Avenue of the Americas, New York, NY 10020-1089, Attn.: Tania M. Moyron (tania.moyron@dentons.com), Van C. Durrer, II (van.durrer@dentons.com), John D. Beck (john.beck@dentons.com), and Sarah M. Schrag (sarah.schrag@dentons.com) and (B) Togut, Segal & Segal LLP, 550 Broad Street, Suite 1508, Newark, NJ 07102, Attn.: Frank A. Oswald (frankoswald@teamtogut.com), Albert Togut (altogut@teamtogut.com), Amanda C. Glaubach (aglaubach@teamtogut.com), and Eitan Blander (eblander@teamtogut.com); (iii) the Office of the United States Trustee, One Newark Center, Suite 2100 Newark, NJ 07102, Attn.: Lauren Bielskie; and (iv) any counsel to any statutory committee appointed in the Debtors' chapter 11 cases (the "Notice Parties").

**If a Contract Counterparty fails to file with the Court and serve on the Notice Parties a timely Cure Objection, the Contract Counterparty shall be forever barred from asserting any objection with regard to the amount to cure any default under the applicable Contract.**

**The Cure Costs set forth on <u>Exhibit A</u> hereto shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable transferred contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in the Contract or any other document, and the applicable counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such transferred contract against the Debtors, the Assignee, or the property of any of them.**

## <u>Adequate Assurance Objections</u>

Objections to the adequate assurance of future performance of any Contract listed on <u>Exhibit A</u> (an "<u>Adequate Assurance Objection</u>") must (a) be in writing; (b) state, with specificity, the legal and factual basis thereof, including what Cure Costs the objecting party believes are required; (c) include any supporting documentation thereof; and (d) be filed with the Court and served on the Notice Parties (as defined below) so that such objection is ***actually received*** by them no later than seven (7) days after the date that the Debtors filed and served this Assignment and Assumption Notice (via overnight mail and/or email). If you have more than one Contract identified on <u>Exhibit A</u>, an objection with respect to one Contract shall have no impact on the other Contract(s) to which you are a party for which no objection has been filed and served.

**If a Contract Counterparty fails to file with the Court and serve on the Notice Parties a timely Adequate Assurance Objection, the Contract Counterparty shall be forever barred from asserting any objection with regard to adequate assurance of future performance of the applicable Contract. The Assignee shall be deemed to have provided adequate assurance of future performance with respect to the applicable Contract in accordance with Bankruptcy Code section 365(f)(2)(B), notwithstanding anything to the contrary in the Contract or any other document.**

## <u>Additional Information</u>

Copies of the Motion, which includes a description of the Designation Procedures, and the form of Assignment Order, as well as all related exhibits and all other agreements filed with the Court, may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent, Verita Global, located at https://www.veritaglobal.net/powin.

*[Remainder of Page Intentionally Left Blank]*

Dated: June [•], 2025

**DENTONS US LLP**

*/s/ DRAFT*
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
          van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
          sarah.schrag@dentons.com

-and-

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
          aglaubach@teamtogut.com
          eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## **Exhibit A**

(Cure Costs )

**DENTONS US LLP**

Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
        sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 25-16137 (MBK)<br>(Jointly Administered)<br>Hearing Date: [TBD]<br>Judge: Hon. Micheal B. Kaplan |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**NOTICE OF EXPEDITED MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING SETTLEMENT AND RELEASE AGREEMENT; AND
(II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on July 7, 2025 at [TBD] (Prevailing Eastern Time), or as

soon thereafter as counsel may be heard, Powin, LLC ("Powin"), and the affiliated debtors and

debtors in possession (collectively, the "Debtors"), in the above-referenced chapter 11 cases (the

"Chapter 11 Cases"), will seek approval of the relief requested in their filed motion (the "Motion")

for entry of an order by this Court, substantially in the form attached to the Motion as **Exhibit A**

(the "Order"): (i) authorizing and approving that certain Settlement and Release Agreement (the

"Agreement")[2] under Federal Rule of Bankruptcy Procedure 9019 by and among Powin,

Munmorah Battery ProjectCo Pty Ltd, ACN 662 894 699, an Australian corporation

("Munmorah"), Ulinda Park ProjectCo Pty Ltd, ACN 659 144 484, an Australian corporation

("Ulinda", and together with Munmorah, the "Project Group"), FS KKR Capital Corp., a Maryland

corporation, KKR FS Income Trust, a Delaware statutory trust, KKR FS Income Trust Select, a

Delaware statutory trust, Forethought Life Insurance Company, an Indiana domestic insurance

corporation, Commonwealth Annuity and Life Insurance Company, a Massachusetts insurance

corporation, and First Allmerica Financial Life Insurance Company, a Massachusetts insurance

corporation (together with FS KKR Capital Corp., KKR FS Income Trust, KKR FS Income Trust

Select, Forethought Life Insurance Company and Commonwealth Annuity and Life Insurance

Company, each a "KKR Party" and collectively, "KKR");[3] (ii) authorizing the transfer of certain

of the Debtors' assets (including certain parts, equipment, materials, consumables, supplies,

contracts, purchase orders, and warranties) set forth in the Settlement Agreement and the

---

[2] A true and correct copy of the Settlement Agreement is attached to the Order as **Exhibit 1**.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

[3] Each of Powin, the Project Group and KKR are sometimes referred to herein individual as a "Party", and, collectively as the "Parties."

Designation Rights (as defined in the Settlement Agreement) (collectively, the "Assets"); (iii) approving the Designation Procedures (as defined below); and (iv) granting related relief.

PLEASE TAKE FURTHER NOTICE that, in support of the Motion, the Debtors shall rely on the accompanying *Declaration of Gerald Uzzi* filed with the Motion and the *Declaration of Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* [Docket No. 13] ("First Day Declaration"), which set forth the relevant factual bases upon which the relief requested should be granted.

**PLEASE TAKE FURTHER NOTICE THAT YOUR RIGHTS MAY BE AFFECTED. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).**

PLEASE TAKE FURTHER NOTICE that if you do not want the Court to grant this Motion, or if you want the Court to consider your views, you or your attorney must file with the clerk at the address listed below, a written response explaining your position no later than two (2) days prior to the hearing date.

| Hearing Date: | [TBD] |
|---|---|
| Hearing Time: | [TBD] |
| Hearing Location: | United States Bankruptcy Court<br>402 East State Street, Trenton, NJ 08608 |
| Courtroom Number: | 8 |

PLEASE TAKE FURTHER NOTICE that copies of all documents filed in these Chapter 11 Cases may be obtained free of charge by visiting the website of Verita Global at https://www.veritaglobal.net/powin. You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.