| **DENTONS US LLP** | **TOGUT, SEGAL & SEGAL LLP** |
|---|---|
| Lauren Macksoud (admitted) | Frank A. Oswald (admitted) |
| 101 JFK Parkway | 550 Broad Street |
| Short Hills, NJ 07078 | Suite 1508 |
| Telephone: (973) 912-7100 | Newark, NJ 07102 |
| Facsimile: (973) 912-7199 | Telephone: (212) 594-5000 |
| Email: lauren.macksoud@dentons.com | Facsimile: (212) 967-4258 |
| | Email: frankoswald@teamtogut.com |
| Tania M. Moyron (admitted *pro hac vice*) | |
| Van C. Durrer, II (admitted *pro hac vice*) | Albert Togut (admitted *pro hac vice*) |
| 601 S. Figueroa Street #2500 | Amanda C. Glaubach (admitted *pro hac vice*) |
| Los Angeles, CA 90017 | Eitan Blander (admitted *pro hac vice*) |
| Telephone: (213) 623-9300 | One Penn Plaza, Suite 3335 |
| Facsimile: (213) 623-9924 | New York, New York 10119 |
| Email: tania.moyron@dentons.com | Telephone: (212) 594-5000 |
| van.durrer@dentons.com | Facsimile: (212) 967-4258 |
| | Email: altogut@teamtogut.com |
| John D. Beck (admitted *pro hac vice*) | aglaubach@teamtogut.com |
| Sarah M. Schrag (admitted *pro hac vice*) | eblander@teamtogut.com |
| 1221 Avenue of the Americas | |
| New York, NY 10020-1089 | *Proposed Counsel for Debtors and* |
| Telephone: (212) 768-6700 | *Debtors in Possession* |
| Facsimile: (212) 768-6800 | |
| Email: john.beck@dentons.com | |
| sarah.schrag@dentons.com | |

*Proposed Counsel for Debtors and*
*Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [ 8348]; (viii) Powin Energy Operating Holdings, LLC [22495]; and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**DECLARATION OF MITCHENER TURNIPSEED
IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN
ORDER (I) DESIGNATING A STALKING HORSE BIDDER AND APPROVING STALKING
HORSE BIDDER PROTECTIONS, (II) APPROVING BIDDING PROCEDURES BY WHICH
INTERESTED PARTIES MAY BID AND AN AUCTION SALE FORMAT IN CONNECTION
WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (III)
APPROVING FORM OF ASSET PURCHASE AGREEMENT, (IV) APPROVING FORM OF
NOTICE TO BE PROVIDED TO INTERESTED PARTIES, (V) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS AND NOTICE
PROCEDURES THERETO, (VI) SCHEDULING A COURT HEARING TO CONSIDER
APPROVAL OF THE SALE TO THE HIGHEST AND BEST BIDDER, AND (VII)
AUTHORIZING THE SALE OF DEBTORS' PROPERTY FREE AND CLEAR OF ALL
<u>CAUSES OF ACTION AND CLAIMS</u>**

I, Mitchener Turnipseed, declare as follows under penalty of perjury:

1. I am a Senior Director of Huron Transaction Advisory LLC ("<u>Huron</u>"), a global consulting firm with principal offices located at 1166 6th Ave 3rd Floor, New York, NY 10036. Huron is the proposed investment banker for the debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases.[2]

2. I submit this declaration (this "<u>Declaration</u>") in support of the Debtors' *Motion for Entry of an Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections, (II) Approving Bidding Procedures by Which Interested Parties May Bid and an Auction Sale Format in Connection With the Sale of Substantially All of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of the Debtors' Property Free and Clear of All Causes of Action and Claims* (the "<u>Motion</u>"), filed contemporaneously herewith.

---

[2] The Debtors anticipate filing an application to retain Huron as their investment banker, effective as of the commencement of these Chapter 11 Cases, shortly hereafter.

3. Although Huron is expected to be compensated for its work as the Debtors' proposed investment banker in these Chapter 11 Cases, I am not being compensated separately for this Declaration or testimony. Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, the information provided to me by Huron professionals involved in advising the Debtors in these Chapter 11 Cases, or information provided to me by the Debtors. If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am over the age of 18 years and am authorized to submit this Declaration.

## Qualifications

4. Since joining Huron in 2020, I have been an integral member of the Huron Special Situations Investment Banking team. Since 2023, I have served as co-lead of Huron's Special Situations Investment Banking practice. While at Huron I have led or been actively involved in numerous in- and out-of-court restructuring proceedings, distressed sale and capital raise transactions and value maximizing strategic advisory engagements. Prior to joining Huron, I served as a member of the Leveraged Finance groups at Wells Fargo Securities and HSBC Securities, and served as a founding member of SMBC Nikko's High Yield Capital Markets platform. I received a Master's of Science from the University of Virginia and a Bachelor of Arts degree from the University of Mississippi. Accordingly, I have developed significant relevant experience and expertise that makes me qualified to submit this Declaration in support of the Debtors' Motion.

## The Retention of Huron

5. Huron is the proposed investment banker to the Debtors and has been working with the Debtors since May 2025 in connection with raising capital and engaging in strategic

3

transactions. Since being engaged by the Debtors, Huron has rendered investment banking advisory services to the Debtors in connection with the Debtors' evaluation of financing and strategic alternatives in light of their financial position. Additionally, Huron has worked with the Debtors' management and other professionals retained by the Debtors, and has become familiar with the Debtors' capital structure, financial condition, liquidity needs, and business operations.

### The Marketing Process for the Sale of Substantially All of the Debtors' Assets

6. As noted in the Motion filed concurrently herewith, the Debtors seek to sell substantially all of their assets (the "Assets"). The Assets include, but are not limited to, non-legacy customer agreements, assets used in the ongoing servicing of the Debtors' existing customer relationships and spare parts related thereto, intellectual property, and the Debtors' remote operations center.

7. In May 2025, prior to the commencement of these Chapter 11 Cases, the Debtors engaged Huron as investment banker to assist with soliciting third-party proposals to raise capital and gauge interest in a sale transaction. In connection with that process, the Debtors, with the assistance of Huron, launched an extensive marketing process to solicit third-party proposals to raise capital. Huron reached out to 94 prospective third-party DIP lenders, inventory financers, customers, and the Prepetition Secured Parties, 23 of whom executed non-disclosure agreements ("NDAs"). The Debtors and their advisors simultaneously made progress in negotiating with key customers and other parties in interest towards a viable path forward.

8. By late June, after arm's length negotiations, FlexGen Power Systems, LLC (the "Stalking Horse Bidder") emerged as the most likely purchaser for the Debtors' Assets and the parties began to negotiate an Asset Purchase Agreement. The Debtors and Huron plan to continue

to work with the Stalking Horse Bidder and other potentially interested parties to advance the sale and marketing process.

**The Bidding Procedures and Selection of the Stalking Horse Bidder**

9. As noted in the Motion, the Debtors seek approval of the Bidding Procedures to facilitate, among other things, a value maximizing sale of the Assets. As more fully described in the Motion, the Bidding Procedures describe, among other things, the procedures for interested parties to access due diligence, the manner in which Potential Bidders and Bids become "qualified," the manner and timing of any Auction, and the selection and approval of a Winning Bidder or Bidders and Back-Up Bidders.

10. In addition, as noted in the Motion, the Bidding Procedures contain the following dates and deadlines with respect to the Sale:

| Date | Event | Description |
|---|---|---|
| July 3, 2025 | Deadline to File Stalking Horse APA | The deadline for the Debtors to file the executed Stalking Horse APA with the Court. |
| July 15, 2025 at 9:30 a.m. (EST) | Hearing on Motion | The date and time at which the Court will consider the relief requested by this Motion. |
| July 16, 2025 at 5:00 p.m. (EST) | Deadline to Submit Non-Binding Indications of Interest | The deadline for submitting non-binding indications of interest to the proposed counsel for the Debtors for the Assets. |
| July 28, 2025 | Bid Deadline for Qualified Bids | The deadline by which all binding Bids shall be submitted.<br><br>Such binding Bids must include a deposit equal to 10% of the purchase price and a signed form of asset purchase agreement and blackline of any changes to |

| | | the Stalking Horse APA. |
| --- | --- | --- |
| | | Such Bids must also be binding and not subject to any approvals or finance or diligence contingencies. |
| 4:00 p.m. (EST) on the day before the Auction | Baseline Bid Deadline | The deadline for the Debtors to identify the Qualified Bid that is, in the Debtors' reasonable business judgment, the highest or otherwise best bid. |
| July 30, 2025 at 9:00 a.m. (EST) | Auction | The date and time of the Auction for the Assets, if one is needed. The Auction shall be held at the offices of Dentons US LLP, 1221 Avenue of the Americas, New York, NY 10020. |
| As soon as practicable after the Auction. | Notice of Winning Bidder and Back-Up Bidder | As soon as reasonably practicable after the conclusion (or cancellation) of the Auction, the Debtors will file on the docket a notice identifying the Winning Bidder and Back-Up Bidder (the "Notice of Winning Bidder"). |
| August 1, 2025 at 5:00 p.m. (EST) | Deadline to file Objections to Sale | Deadline to file objections to Sale that are unrelated to the identity or consideration offered by bidder. |
| August 4, 2025 at 12:00 pm (EST). | Sale Order Deadline | The deadline by which a proposed Sale Order must be filed with the Court and served. |
| August 5, 2025 at 5:00 p.m. (EST). | Deadline to file any Objections to the Sale to Bidder | The deadline by which objections to the Sale to the Winning Bidder must be filed with the Court and served, other than objections subject to the August 1, 2025 objection deadline. |
| August 6, 2025, at 9:30 a.m. (EST). | Sale Hearing | The hearing before the Court to consider approval of the Winning Bid (as defined below). |

11.     Additionally, as noted in the Motion, the proposed Bidding Procedures also contemplate the Debtors' selection of FlexGen Power Systems, LLC as the Stalking Horse Bidder and the granting of certain Stalking Horse Bid Protections to the Stalking Horse Bidder. I further understand that the Stalking Horse Bid Protections includes the payment of a break-up fee (the "Break-Up Fee") and Expense Reimbursement.

6

12. Based on my experience, I believe that the proposed Bidding Procedures have been designed with the intent to maximize the value received for the Assets by facilitating an open and competitive bidding process in which potential bidders are encouraged to participate and submit competing bids within the specified time frame. Additionally, given the expedited treatment needed resulting from the Debtors' continued liquidity issues, it is my view (based on my experience as an investment banker specializing in restructurings) that the proposed Bidding Procedures, Break-Up Fee and Expense Reimbursement are reasonable under the circumstances of these Chapter 11 Cases, as described herein and in the Motion.

13. Under the circumstances described herein and in the Motion, I believe that, based on my experience, this timeline provides the Debtors with a reasonable amount of time to solicit and potentially identify and select such higher or otherwise better potential offers for the Assets that are reasonably available under the circumstances. Additionally, at the Auction, as set forth in the proposed Bidding Procedures, the Debtors will have the opportunity to consider all potential competing offers and select the offer for the Assets that they deem to be the highest or otherwise best.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: July 1, 2025

*/s/ Mitchener Turnipseed*
Mitchener Turnipseed
Senior Director
Huron Transaction Advisory LLC

8

US_ACTIVE\130632924