**DENTONS US LLP**
Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
        sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>POWIN, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN UZZI & LALL TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATING GERARD UZZI AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases hereby apply to the Court (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtors to (i) employ and retain CBMN Advisors LLC d/b/a Uzzi & Lall ("Uzzi & Lall") to provide the Debtors with a Chief Restructuring Officer ("CRO") and certain additional supportive staff of Uzzi & Lall to assist the CRO, and (ii) designate Gerard Uzzi as CRO in these chapter 11 cases effective as of the Petition Date (as defined below). In support of this Application, the Debtors rely on the *Declaration of Gerard Uzzi* attached hereto as **Exhibit B** (the "Uzzi Declaration"). In further support of this Application, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of an order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.  Venue is proper pursuant to 28 U.S.C. § 1408.

3.  The bases for the relief sought herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 2016, and rules 2016-1 and 2016-3 of the Local

Rules of Bankruptcy Practice and Procedure in the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## BACKGROUND

4.      On June 9, 2025 (the "Petition Date"),[2] the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 27, 2025 the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 174]. No trustee or examiner has been appointed in these chapter 11 cases.

5.      The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Gerard Uzzi in Support of Emergency First Day Motions of the Debtors* (the "First Day Declaration") [Docket No. 13] filed on the Petition Date and fully incorporated herein by reference.

## RELIEF REQUESTED

6.      The Debtors seek entry of the Proposed Order, effective as of the Petition Date, authorizing the Debtors to (i) employ and retain Uzzi & Lall to provide the Debtors with a CRO as well as additional supportive staff to assist the CRO ("Hourly Temporary Staff") and (ii)

_____

[2] Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, certain other Debtors were filed shortly thereafter on June 10, 2025, and the remaining Debtors were filed on June 22, 2025.

3

designate Mr. Uzzi as the Debtors' CRO (together with the Hourly Temporary Staff, the "Uzzi & Lall Professionals").

## RETENTION OF UZZI & LALL

**A.     Uzzi & Lall's Qualifications**

7.     In consideration of the size and complexity of their business, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates. On April 25, 2025, Mr. Uzzi was appointed as an independent manager of the Debtors. Uzzi & Lall was also engaged to provide interim consulting services in connection with a potential restructuring and to provide chief restructuring officer services effective June 9, 2025 pursuant to corporate resolutions approved by the Debtors on June 9, 2025. The Uzzi & Lall Professionals are familiar with the Debtors' business and well qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.

8.     The Uzzi & Lall Professionals specialize in interim management, turnaround and restructuring services, asset sales, and business transformation. Uzzi & Lall's debtor advisory services have included a wide range of activities targeted toward maximizing the value of a debtor's assets and recoveries to creditors, including developing or validating forecasts, working with management on operational issues, monitoring and managing cash flow and creditor relationships, negotiating with a debtor's secured lenders on the use of cash collateral, assessing and recommending cost reduction strategies, providing transactional support to market a debtor's assets (including forecasting, creating marketing materials, contacting potential buyers, and negotiating offers for debtor owned assets), preparing a debtor for a chapter 11 filing, and designing and negotiating financial restructuring packages.

4

9. Uzzi & Lall's professionals have direct experience advising and managing companies across a broad range of industries and its partners have worked on some of the largest and most complex chapter 11 cases, including American Airlines, Lehman Brothers, Purdue Pharma, Sears, and World Com. The Uzzi & Lall team is comprised of operators and advisors with proven skills necessary to identify, preserve and create value in the most challenging and complex situations.

10. Mr. Uzzi has the requisite experience to serve as the Debtors' CRO. Mr. Uzzi is the Managing Partner and Founder of Uzzi & Lall. He has extensive experience advising companies, boards of directors, senior management, creditors, equity holders, and investors in stressed and distressed situations, including chapter 11, out-of-court work outs, and rescue financings across industries and jurisdictions. He also serves in a number of fiduciary capacities, including presently as the Chairman of the Celsius Litigation Oversight Committee. Prior to co-founding Uzzi & Lall, he was a senior restructuring partner at Milbank LLP and White & Case LLP for over 18 years in the aggregate. During that time, he was personally involved in senior roles in some of the nation's largest and most complex chapter 11 cases, including Lehman Brothers, Washington Mutual, American Airlines, Rescap, Charter Communications, Mirant, Adelphia Communications, Purdue Pharma, and ZAIS. He has been recognized for his work in Chambers, Euromoney's IFLR, The Legal 500, and Expert Guides as one of the World's Leading Insolvency and Restructuring Professionals.

11. Additionally, Uzzi & Lall has significant relevant experience and expertise regarding the Debtors, their operations, and the unique circumstances of these chapter 11 cases. Uzzi & Lall is well qualified to deal effectively and efficiently with matters that may arise in the context of these chapter 11 cases. Uzzi & Lall has advised the Debtors that it will endeavor to

5

coordinate with the other professionals retained in these chapter 11 cases to eliminate unnecessary duplication of work. Accordingly, the Debtors submit that the retention of Uzzi & Lall and the designation of Mr. Uzzi as CRO on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted.

**B.    Scope of Services**

12.    Subject to Court approval, the Debtors propose to retain Uzzi & Lall on the terms and conditions set forth in the engagement letter dated June 9, 2025 (attached hereto as **Exhibit C**, the "Engagement Letter")[3] and any order granting this Application.

13.    Uzzi & Lall will provide Mr. Uzzi to serve as the Debtors' CRO. The CRO, shall report to John Brecker, the Independent Manager of Powin and have such duties as Mr. Brecker may from time to time determine.

14.    The Hourly Temporary Staff services may be performed by Uzzi & Lall or by any subsidiary of Uzzi & Lall, as Uzzi & Lall shall determine. The Hourly Temporary Staff shall report to the CRO and have such duties determined by the CRO consistent with direction by Mr. Brecker.

15.    Generally, the CRO and the Hourly Temporary Staff shall perform activities and services customarily performed by a chief restructuring officer, including assisting in: (a) the operational and cash management functions of the Debtors; (b) the development of any cost reduction programs or asset conservation measures with respect to the Debtors and any underlying

---

[3] The Engagement Letter summaries contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein have the meanings given in the Engagement Letter.

6

analysis thereof; and (c) any elements of the restructuring process with respect to the Debtors. Specific services ("Services") to be performed by the Uzzi & Lall Professionals will include:

    a.    Assisting with the management of all aspects of the Debtors' operations, including all initiatives related to managing financial operations;

    b.    Evaluating cash and liquidity requirements, including assisting the Debtors in preparing and reporting on appropriate cash and liquidity forecasts, such as a rolling 13-week cash flow forecast;

    c.    Working with the Debtors' management to preserve and maximize cash availability while preserving value in the business;

    d.    Assisting with the evaluation of strategic alternatives, including evaluating the sale or wind-down of the Debtors' assets;

    e.    Assisting with the preparation of reports required by the Bankruptcy Code and Bankruptcy Rules, including, statements of financial affairs, schedules of assets and liabilities, and monthly operating reports;

    f.    Assisting the Debtors' management in responding to requests from, and negotiation with, investors, lenders, creditors, any official committees, and other stakeholders as requested by the Company;

    g.    Assisting in the Debtors' strategic communications with employees, vendors and other stakeholders, as needed;

    h.    Directing the efforts of external professionals, consultants, and advisors in connection with liquidation initiatives, including the negotiation of any agreements with asset purchasers, potential investors, or funding sources; and,

    i.    Performing such other services as may be reasonably requested by the Debtors, and are customary in this type of engagement.

16.     The Services do not include audit, legal, tax, environmental, accounting, actuarial, employee benefits, insurance advice, or similar specialist and other professional services which are typically outsourced and which shall be obtained directly where required by the Debtors at the Debtors' expense. Consistent with the "Jay Alix Protocol," Uzzi & Lall and Mr. Uzzi will not act as financial advisors retained under Bankruptcy Code § 327, claims agents or claims administrators

7

appointed pursuant to 28 U.S.C. § 156(c), or investors or acquirers in the Debtors' chapter 11 cases.[4]

### C. Uzzi & Lall's Disinterestedness

17. The Debtors believe that neither the CRO nor the Hourly Temporary Staff is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code. Uzzi & Lall, however, has informed the Debtors that, except as may be set forth in the Uzzi Declaration, Uzzi & Lall (i) has no connection with the Debtors, their creditors, or other parties in interest in these chapter 11 cases, (ii) does not hold any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined within Section 101(14) of the Bankruptcy Code.

### D. Terms of Retention

18. As set forth in the Engagement Letter, the Debtors have agreed, among other things: (a) to compensate and reimburse Uzzi & Lall for services provided and expenses incurred by the Uzzi & Lall Professionals; and (b) to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and to provide such persons with insurance coverage under the Debtors' director and officer liability insurance policies.

19. The CRO, Mr. Uzzi, and the Hourly Temporary Staff will continue to bill time at their standard hourly rates. The current hourly billing rates for the CRO and the Hourly Temporary Staff, based on the position held by such persons at Uzzi & Lall, are subject to the following rates:

| Title | Hourly Rate |
|---|---|
| Partner | $1,500 |
| Managing Director | $1,200 |

_____

[4] A copy of the "Jay Alix Protocol" is available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual.

| | |
|---|---|
| Senior Director | $1,000 |
| Director | $900 |
| Vice President | $700 |
| Associate | $500 |
| Analyst | $400 |

Hourly rates are generally revised periodically. Uzzi & Lall will notify the Debtors in writing prior to any changes in hourly rates.

20. In addition to the fees outlined above, Uzzi & Lall will bill for reasonable direct expenses which are incurred on the Debtors' behalf during these chapter 11 cases. Expenses include reasonable and customary out-of-pocket expenses which are billed directly to the Debtors such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement. Further, if Uzzi & Lall and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, Uzzi & Lall will be compensated by the Debtors at its regular hourly rates and reimbursed for reasonable direct expenses (including reasonable, documented fees of counsel) with respect thereto.

21. In connection with Uzzi & Lall's engagement and in accordance with its engagement letters, Uzzi & Lall received a retainer in the amount of $250,000.00 (the "Retainer"). According to Uzzi & Lall's books and records, during the ninety-day period before the Petition Date, the Debtors paid Uzzi & Lall $1,606,923.85 in the aggregate for professional services rendered, expenses incurred, and the Retainer. As of the Petition Date, the Debtors owed Uzzi & Lall certain amounts after application of all retainers. Uzzi & Lall will waive such prepetition amounts owing.

**E.    Indemnification and Liability Limitation**

    **1.    Indemnification**

9

22.  As a material part of the consideration for which Uzzi & Lall has agreed to provide the Services described herein, the Debtors have agreed to the indemnification provisions set forth on pages 5 and 6 of the Engagement Letter (the "Indemnification Provisions"). The Indemnification Provisions provide that the Debtors indemnify and hold harmless Uzzi & Lall and any of its partners, directors, officers, employees, and agents under certain circumstances. All requests of Uzzi & Lall for the payment of indemnity pursuant to the Indemnification Provisions will be made by means of an application to, and shall be subject to review by, the Court to ensure that payment of such indemnity (a) conforms to the terms of the Engagement Letter and (b) is reasonable based upon the circumstances.

23.  Notwithstanding the foregoing, the Proposed Order modifies the Indemnification Provisions so that the Debtors are only permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the Debtors' bylaws and applicable state law, in addition to insurance coverage under the Debtors' director and officer insurance policies. The Proposed Order further provides that there shall be no other indemnification of Uzzi & Lall or the Hourly Temporary Staff. The Debtors and Uzzi & Lall believe that the Indemnification Provisions, as modified by the Proposed Order, are customary and reasonable for firms providing interim management services.

24.  Moreover, the terms and conditions of the Indemnification Provisions were negotiated by the Debtors and Uzzi & Lall at arm's-length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Uzzi & Lall's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Uzzi & Lall's services to successfully navigate these chapter 11 cases. Accordingly, the Debtors request that this Court approve the

10

Indemnification Provisions as set forth in the Engagement Letter, as modified by the Proposed Order.

### 2. Limitation of Liability

25. The Engagement Letter provides that no Firm Parties shall be liable to the Debtors, or any party asserting claims on behalf of the Debtors, in excess of the total amount of the fees paid to Uzzi & Lall under the Engagement Letter and, without limiting the generality of the foregoing, that in no event shall any Firm Parties be liable for incidental, consequential or special damages, lost profits, lost data, reputational damages, punitive damages or any other similar damages under any circumstances.

### 3. Fees and Reporting

26. If the Court approves the relief requested herein, Uzzi & Lall will be retained to provide the Debtors with the Uzzi & Lall Professionals and Mr. Uzzi will be designated as CRO pursuant to section 363 of the Bankruptcy Code. Because Uzzi & Lall is not being employed as a professional under section 327 of the Code, Uzzi & Lall will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, Uzzi & Lall will file with the Court, and provide notice to the U.S. Trustee and all official committees appointed in these chapter 11 cases (together with the U.S. Trustee, the "Notice Parties"), reports of compensation earned, expenses incurred, and staffing on these chapter 11 cases (the "Compensation and Staffing Report") by the 30th of each month for the previous month, which will include summary charts describing the name, hourly rate, number of hours billed, and role filled by each Uzzi & Lall Professional; the aggregate compensation earned by Uzzi & Lall; the hours worked and fees by activity category (*e.g.*, cash management, operations, transaction support, etc.); and the expenses incurred by Uzzi & Lall. In addition, each Uzzi & Lall Professional

will maintain and the Compensation and Staffing Report will include (i) detailed time entry records identifying activities or issues he or she addressed on a daily basis, grouped to the nearest one-tenth of an hour (0.1 hour) for each activity category each day and (ii) detailed expense records. The first Compensation and Staffing Report shall cover the period from the Petition Date until the end of the month in which the Proposed Order is entered and shall be submitted within thirty (30) days thereafter.

27. The Compensation and Staffing Reports will be subject to review by the Court if an objection is filed by any of the Notice Parties and served on the Debtors, the Debtors' undersigned counsel, and Uzzi & Lall within twenty-one (21) days after the date each Compensation and Staffing Report is filed and served (the "Objection Period"). The Debtors respectfully request that they be authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by Uzzi & Lall for fees and expenses incurred in connection with Uzzi & Lall's retention. In the event an objection is filed and served during the Objection Period and not consensually resolved, the Debtors shall deduct an amount equal to the amount objected to from the next payment to Uzzi & Lall until such objection is resolved, either consensually or by Court order.

28. Given the numerous issues that the Uzzi & Lall Professionals may be required to address in the performance of their services and the effort necessary to address all such issues as they arise, and the market prices for such services in engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter are reasonable.

## DISPUTE RESOLUTION PROVISIONS

29. The Debtors and Uzzi & Lall have agreed, subject to the Court's approval of this Application, that (a) any claim, dispute or difference concerning the Engagement Letter and any matter arising from it, shall be brought in the United States District Court for the District of New Jersey and the appropriate Courts of the State of New Jersey, and (b) Uzzi & Lall and the Debtors irrevocably and unconditionally agree to waive a trial by jury in any action, proceeding or counterclaim arising out of or relating to the services or the Engagement Letter.

## BASIS FOR RELIEF

30. The Debtors seek to employ and retain Uzzi & Lall and designate Mr. Uzzi as CRO pursuant to section 363 of the Bankruptcy Code effective as of the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1) Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

31. Under applicable case law, in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an

13

application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

32. The relief requested herein is appropriate and warranted under each of the above standards. The decision to retain Uzzi & Lall and employ Mr. Uzzi as CRO and the other Hourly Temporary Staff should be authorized because it is based on a sound exercise of the Debtors' business judgment. First, as described above, Mr. Uzzi has extensive experience as a senior advisor for financially troubled companies or their stakeholders. The Debtors believe that the Mr. Uzzi and the Hourly Temporary Staff will provide services that substantially benefit the Debtors' estates and creditors. Uzzi & Lall has extensive experience in providing turnaround and crisis management services in chapter 11 proceedings and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

33. Second, Mr. Uzzi and the Hourly Temporary Staff, working in conjunction with the Debtors' senior management, have already proven to be of invaluable assistance to the Debtors in developing financial projections, assisting in short-term cash management activities, evaluating strategic alternatives, and coordinating the Debtors' efforts to prepare for and operate in chapter 11.

34. Finally, through negotiations, the Debtors have been able to retain Uzzi & Lall and secure the services of Mr. Uzzi and the Hourly Temporary Staff during these chapter 11 cases on economic terms that are fair, reasonable, and beneficial to the Debtors' estates. Moreover, the compensation arrangement provided for in this Application and the Engagement Letter is consistent

with and typical of arrangements entered into by Uzzi & Lall and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

35. In view of the foregoing, the Debtors believe that the retention of Uzzi & Lall and the employment of Mr. Uzzi and the Hourly Temporary Staff is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in these chapter 11 cases. The Debtors additionally believe that Uzzi & Lall is well qualified and able to represent the Debtors in a cost effective, efficient, and timely manner. Uzzi & Lall has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court.

36. Courts in this district and in other jurisdictions have approved relief similar to the relief requested in this Motion. *See, e.g., In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 15, 2023) [Docket No. 730]; *Nat'l Realty Investment Advisors, LLC*, No. 22-14539 (JKS) (Bankr. D.N.J. Aug. 10, 2022) [Docket No. 288]; *BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Feb. 9, 2023) [Docket No. 494] (MBK); *Modell's Sporting Goods, Inc.*, No. 20-14179 (VFP) (Bankr. D.N.J. June 24, 2020) [Docket No. 440]; *RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. July 15, 2020) [Docket No. 58].[5]

37. Based upon the foregoing, the Debtors submit that the retention of Uzzi & Lall and the designation of Mr. Uzzi as CRO on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interests of the Debtors' estates, creditors, and other parties in interest, and should be granted in these chapter 11 cases.

38. The Debtors further request that Uzzi & Lall's retention be made effective as of the Petition Date, to allow Uzzi & Lall to be compensated for the work performed for the Debtors

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

prior to the Court's consideration and approval of this Application. The Debtors submit that under the circumstances, and to avoid irreparable harm to the Debtors' estates that may occur if Uzzi & Lall is not immediately retained, retroactive approval to the Petition Date is warranted.

## NOTICE

39. The Debtors will serve notice of this Motion on: (i) the Office of the United States Trustee for the District of New Jersey; (ii) counsel for the Debtors' Prepetition Secured Parties; (iii) the Debtors' fifty largest unsecured creditors on a consolidated basis; (iv) counsel to the Committee and (v) any parties requesting special notice. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth herein, in the Uzzi Declaration, and in the First Day Declaration, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Application and such other and further relief as is just and proper.

Dated: July 5, 2025

Respectfully submitted,

*/s/ Brian Kane*
Brian Kane
Chief Executive Officer
Powin, LLC, *et al*., Debtors and Debtors in Possession