UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**VINSON & ELKINS LLP**

Steven M. Abramowitz (No. 043641990)
David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036-7708
Tel: (212) 237-0000
Fax: (212) 237-0100
Email: sabramowitz@velaw.com
          dmeyer@velaw.com
          lkanzer@velaw.com

-and-

William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
Email: bwallander@velaw.com
          mstruble@velaw.com

*Counsel for the Ad Hoc Customer Group*

| | |
|---|---|
| In re: | Case No. 25 – 16137 (MBK) |
| | Chapter 11 |
| Powin, LLC, *et al.*,[1] | (Jointly Administered) |
| Debtors. | Hearing Date: Time and Date to be set by the Court in accordance with the Order Shortening Time |
| | Objection Deadline: Time and Date to be set by the Court in accordance with the Order Shortening Time |

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin, LLC [0504], (ii) PEOS Holdings, LLC [5476], (iii) Powin Project LLC [1583], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**NOTICE OF MOTION FOR
EMERGENCY MOTION OF AD HOC CUSTOMER
GROUP FOR ENTRY OF AN ORDER (I) GRANTING
ADEQUATE PROTECTION UNDER SECTION 363(e) OF
THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that Lone Star Solar, LLC, Idaho Power Company, West Warwick Energy Storage 1, LLC, West Warwick Energy Storage 2, LLC, and West Warwick Energy Storage 3, LLC (collectively, the "***Ad Hoc Customer Group***"), by and through its undersigned counsel, submits the attached *Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code and (II) Granting Related Relief* (the "***Adequate Protection Motion***").

**PLEASE TAKE FURTHER NOTICE** that concurrently with the filing of the Adequate Protection Motion, the Ad Hoc Customer Group will be filing the *Application for Order Shortening Time for Notice of the Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code and (II) Granting Related Relief* (the "***Application for Shortened Time***").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Adequate Protection Motion shall: (i) be in writing; (ii) state with particularity the basis of the objection; and (iii) be filed with the Clerk of the United States Bankruptcy Court in accordance with D.N.J. LBR 9013-1.  If you do not want the Court to enter an order granting the relief requested in the Adequate Protection Motion, or if you want the Court to consider your views on an objection, then you or your attorney must file with the Court a written request for a hearing or response or answer explaining your position **on or before the objection deadline to be set by the Court in connection with the order on the Application for Shortened Time**.  You must also email a copy of the objection to:

**VINSON & ELKINS LLP**
Steven M. Abramowitz, Esq.
David S. Meyer, Esq. (admitted *pro hac vice*)
Lauren R. Kanzer, Esq. (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Telephone: (212) 237-0137
sabramowitz@velaw.com
dmeyer@velaw.com
lkanzer@velaw.com

-and-

William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: (214) 220-7700
bwallander@velaw.com
mstruble@velaw.com

**PLEASE TAKE FURTHER NOTICE** that you must attend the hearing scheduled to be held on **the date and time established in the order on the Application for Shortened Time** before the Honorable Chief Judge Michael B. Kaplan, 402 East State Street, Trenton, New Jersey 08608, Courtroom #8 via Zoom. If you do not take these steps, the Court may decide that you do not oppose the relief sought in the Adequate Protection Motion and may enter an order granting the Adequate Protection Motion.

Dated: July 8, 2025
New York, New York

Respectfully submitted,

/s/  Steven M. Abramowitz

**VINSON & ELKINS LLP**
Steven M. Abramowitz, Esq.
David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036-7708
Tel: (212) 237-0000
Fax: (212) 237-0100
Email: sabramowitz@velaw.com
       dmeyer@velaw.com
       lkanzer@velaw.com
-and-

William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
   Email: bwallander@velaw.com
       mstruble@velaw.com

*Counsel for the Ad Hoc Customer Group*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**VINSON & ELKINS LLP**

Steven M. Abramowitz (No. 043641990)
David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036-7708
Tel: (212) 237-0000
Fax: (212) 237-0100
Email: sabramowitz@velaw.com
         dmeyer@velaw.com
         lkanzer@velaw.com

-and-

William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
Email: bwallander@velaw.com
         mstruble@velaw.com

*Counsel for Ad Hoc Group of Customers of Powin, LLC*

| | |
|---|---|
| In re: | Case No. 25 – 16137 (MBK) |
| Powin, LLC, *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin, LLC [0504], (ii) PEOS Holdings, LLC [5476], (iii) Powin Project LLC [1583], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

## EMERGENCY MOTION OF AD HOC
## CUSTOMER GROUP FOR ENTRY OF AN ORDER
## (I) GRANTING ADEQUATE PROTECTION UNDER SECTION 363(e)
## OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

Lone Star Solar, LLC,[2] Idaho Power Company, West Warwick Energy Storage 1, LLC, West Warwick Energy Storage 2, LLC, and West Warwick Energy Storage 3, LLC[3] (each a "***Customer***," and collectively, the "***Ad Hoc Customer Group***"), each a creditor, customer, and party in interest, by and through their undersigned counsel, hereby file this *Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code, and (II) Granting Related Relief* (the "***Motion***") and in support thereof respectfully states as follows:

### PRELIMINARY STATEMENT[4]

1.      The members of the Ad Hoc Customer Group each own and operate large, industrial-scale and utility-scale lithium ion battery energy storage systems ("***BESS***") that were designed and provided by the Debtors and for which the Debtors are responsible for ongoing maintenance and other services.  In some instances, the BESS are integrated into and support large solar power projects (collectively, the "***Projects***") that generate significant amounts of power to support the electric grid.  Each Customer entered into various executory contracts with certain of the Debtors (collectively, the "***Contracts***") to install, maintain, and service the BESS.  Under the Contracts, the Debtors granted, among other things, broad, perpetual licenses of intellectual property (the "***Licenses***," and such intellectual property, the "***Licensed IP***") necessary to support

---

[2]     Lone Star Solar, LLC is a subsidiary of energyRe, LLC.

[3]     West Warwick Energy Storage 1, LLC, West Warwick Energy Storage 2, LLC, and West Warwick Energy Storage 3, LLC are direct subsidiaries of Convergent West Warwick, LLC and indirect subsidiaries of Convergent Energy and Power LP.

[4]     Capitalized terms used but not otherwise defined in this Preliminary Statement have the meanings ascribed elsewhere in the Motion.

2

the operation of the BESS.  In addition to the Licenses, the Contracts require the Debtors to provide, on an ongoing basis, certain services and information, including reporting, maintenance and operational support related to the Licensed IP and the BESS.

2.      The Licensed IP and the other support services required under the Contracts are critical for the BESS to remain "online" and to operate safely and effectively.  The Debtors' failure to adequately protect the Customers' respective interests in the Licensed IP—either in the context of rejection of the Contracts or in connection with a sale—would deprive the Customers of their statutory rights under the Bankruptcy Code and would likely result in significant near-term and irreparable harm to the Customers' ability to safely maintain and operate the BESS.  The Debtors acknowledge as much in their "Customer Program" motion, stating that "[t]he termination of the Debtors' LTSA Line of Business would have a severely detrimental impact on Customers who are largely incapable of replacing those functions without the Debtors' assistance."[5]

3.      From the Customers' standpoint, these chapter 11 cases are at a crossroads.  Just weeks ago, the Debtors commenced these cases with limited liquidity and no apparent ability to reorganize without customers agreeing to enter into superseding contracts to pay a newco significantly more money for significantly fewer services than they are contractually entitled to receive.[6]  The Debtors sent customers a written notice that they were ceasing performance under

---

[5]     *See Motion of the Debtors For Entry of an Order (I) Authorizing the Debtors to Enter Into New Customer Program with Existing Customers and (II) Granting Related Relief* [Docket No. 15] (the "***Customer Program Motion***"), at ¶ 9.

[6]     *See* Customer Program Motion, at ¶ 9 ("Under the proposed LTSA Program, the Debtors will be providing a reduced scope of services at pricing that is designed to be cash flow positive during the postpetition period.").

their existing executory contracts to conserve liquidity.[7]  Then, approximately one week into the

cases, the Debtors moved to reject all such contracts.[8]

4.      More recently, however, the Debtors' fortunes have changed.  They now have a

DIP facility—the product of a bidding war that was beneficial for all parties—that provides up to

$27.5 million in funding for these cases and for ongoing operations, including maintaining critical

intellectual property infrastructure and software used by customers.[9]  They are also now

conducting a competitive sale process with a stalking horse bidder in place.[10]  Yet, notwithstanding

their alleviated liquidity issues and their statutory duty to maximize value for all stakeholders (of

which customers are a major constituency), the Debtors have neither rescinded their

"nonperformance" statement to customers nor withdrawn or postponed the Rejection Motion.

5.      The Debtors have also failed to provide customers with any clarity on how the

Rejection Motion and the sale process will impact (i) their prior LTSA customer program or

---

[7]    *See Debtors' Objection to Application for Order Shortening Time for Notice of (A) Emergency Motion of Licensees for Entry of an Order (I) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code and (B) Motion for Entry of an Order Authorizing Licensees to Redact and File Under Seal Confidential Information Contained in the Energy Supply Agreements and Long Term Services Agreements in Connection with Licensees' Motion to Compel* [Docket No. 128] (the "**Debtors' Objection**"), at ¶ 1 (noting that, "on June 16, the Debtors advised all of their customers that the Debtors were 'suspending all services to all Customers . . . in order to preserve resources for continuing Customers,' effective immediately.").

[8]    *See Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88] (the "**Rejection Motion**").  A hearing on the Rejection Motion is currently scheduled for July 15, 2025.

[9]    *See Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (V) Granting Related Relief* [Docket No. 169] (the "**Interim DIP Order**").

[10]   *See Motion of the Debtors for Entry of an Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections (II) Approving Bidding Procedures By Which Interested Parties May Bid and an Auction Sale Format in Connection with the Sale of Substantially All of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of Debtors' Property Free and Clear of All Causes of Action and Claims* [Docket No. 228] (the "**Sale Motion**").

(ii) customers' statutory rights under section 365(n) of the Bankruptcy Code.  The Sale Motion appears to seek pre-approval of a free and clear sale of substantially all of the Debtors' assets to a winning bidder, but it is silent with respect to section 365(n) protections for licensee counterparties[11] and provides no details that would allow the Customers to determine how their respective rights and interests may be affected by such a sale.  While the Debtors' proposed stalking horse APA acknowledges that the Debtors' assets are being sold free and clear, "subject to the rights of licensees under section 365(n) of the Bankruptcy Code,"[12] it does not provide any clarity on how those statutory rights will be honored.  The stalking horse APA also references an "Assumed Contract List," but such list was not filed.[13]

6.      The Debtors should clarify how the Rejection Motion and sale process will, if at all, impact licensees' rights under section 365(n) of the Bankruptcy Code and, in the event licensees are adversely impacted, be ordered to provide adequate protection for such licensees' rights.  The Ad Hoc Customer Group made multiple requests for clarification from the Debtors regarding their intentions with respect to the Rejection Motion given the changed circumstances, but the Debtors have failed to provide any response at all.  The Ad Hoc Customer Group is thus forced to seek relief from this Court, which relief is similar in nature to that sought by a number of other customers.[14]

---

[11]    Note, the Rejection Motion also contains no mention of licensee counterparties' rights under section 365(n).

[12]    *See* Asset Purchase Agreement, at Section 3.5, filed at Docket No. 271-1.

[13]    The Ad Hoc Customer Group filed a limited objection and reservation of rights with respect to the Rejection Motion substantially contemporaneously herewith to, among other things, allow a potential bidder to complete the "Assumed Contract List" and determine which of the legacy customer contracts it may want to have the Debtors assume and assign to it, as that approach is the most likely way to maximize value for the benefit of all stakeholders.

[14]    *See, e.g.*, *Emergency Motion of Licensees for Entry of an Order (I) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief* [Docket No. 117] and joinders thereto filed by esVolta, LP [Docket No. 273] and EDF Power Solutions, Inc. (f/k/a EDF Renewables, Inc.) [Docket No. 274].

7.     The Customers are entitled to certain protections of their respective interests in the Licensed IP (and embodiments thereof) under the Bankruptcy Code that the Debtors must respect. Section 365(n)(1)(B) of the Bankruptcy Code protects licensee counterparties after a debtor rejects an executory contract that grants a license to intellectual property by providing that such a licensee is entitled—at its election—to retain its rights to such intellectual property for the duration of the contract.[15] Here, if the Debtors ultimately reject the Contracts, the Customers may elect to retain their respective rights under the Contracts to the Licensed IP.  The Debtors should be required to adequately protect the Customers' respective interests in the Licensed IP to ensure the Customers' ability to retain their rights in the Licensed IP, if so elected, are not infringed.

8.     Furthermore, the Customers are entitled to adequate protection of their respective interests in the Licensed IP in the event of a sale.  Section 363(e) of the Bankruptcy Code requires that, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the debtor, the court must prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.[16]  As noted above, the Debtors intend to pursue a sale of all or substantially all of their assets, which presumably includes the Licensed IP, but it is currently unclear how the Customers' interests and rights will be affected by a sale or if they will be adequately protected.  Accordingly, the Ad Hoc Customer Group requests that the Court require the Debtors to adequately protect their respective interests in the Licensed IP as described in greater detail below.

9.     The overriding goals of the Customers are to ensure the safe operation of the BESS and avoid business interruption by preserving their respective statutory rights to access and use the

---

[15]     *See* 11 U.S.C. § 365(n)(1)(B).

[16]     *See* 11 U.S.C. § 363(e).

Licensed IP.  The Customers are not seeking to expand their rights or obtain anything more than what they are rightfully entitled to under the Contracts, the Bankruptcy Code, and applicable law. Both before and since the outset of these chapter 11 cases, the Customers have engaged with the Debtors in good faith to seek a workable solution that will allow the Customers to continue operating the BESS in a safe and effective manner.  The Customers remain hopeful that a resolution can be achieved, but they file this Motion to preserve and seek enforcement of their respective statutory rights.

## JURISDICTION AND VENUE

10.    The United States Bankruptcy Court for the District of New Jersey (the "*Court*") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

11.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12.    The statutory bases for the relief requested herein are sections 365(n), 363(e), and 105(a) of title 11 of the United States Code (the "*Bankruptcy Code*").

## BACKGROUND

13.    On June 9 and 10, 2025 (as applicable, the "*Petition Date*"), the above-captioned debtors and debtors in possession (collectively, the "*Debtors*") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing these chapter 11 cases (the "*Chapter 11 Cases*").

14.    On June 17, 2025, the Debtors filed the Rejection Motion.

15.    On June 21, 2025, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow*

7

*Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (V) Granting Related Relief* [Docket No. 120 (the "**DIP Motion**"), and on June 23, 2025, the Debtors filed a notice of amended DIP Motion [Docket No. 143].  On June 26, 2025, the Court entered the Interim DIP Order.

16.    On June 27, 2025, the Office of the United States Trustee for the District of New Jersey appointed an Official Committee of Unsecured Creditors in these Chapter 11 Cases.[17]

17.    On July 1, 2025, the Debtors filed the Sale Motion, and on July 7, 2025, the Debtors filed the *Notice of Filing of Stalking Horse APA, Amended Order Approving Bidding Procedures Order, and Amended Bidding Procedures* [Docket No. 271].

18.    No trustee or examiner has been appointed in these Chapter 11 Cases as of the date hereof.

**A.    The Customers are Parties to Certain Contracts with the Debtors that Grant Them Licenses to Critical Technology and Intellectual Property.**

19.    Prior to the Petition Date, the Customers each entered into energy supply agreements with Debtor Powin, LLC ("**Powin**") (each, an "**ESA**"), pursuant to which Powin agreed to provide and install BESS, which in some cases were incorporated into Projects.  The ESAs also granted the Customers perpetual licenses to use certain technology and intellectual property related to the ownership and operation of the BESS.

---

[17]    *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 174].

20.     Additionally, the Customers each entered into long term services agreements with Powin (each, an "*LTSA*"), pursuant to which Powin is required to, among other things, provide certain ongoing services to the Customers related to the Licensed IP to support the BESS.[18]

**B.    Any Interruption or Delay in Access to the Licensed IP Risks Significant and Irreparable Harm to the BESS and the Customers.**

21.     The Licensed IP is critical to the safe and effective operation of the BESS, which must be consistently monitored and maintained to ensure ongoing proper and safe functioning.  To do this, the Customers must have complete and uninterrupted access to the Licensed IP, which includes certain software, such as Powin Stack OS (including the Kobold platform and associated applications), and CCUI,[19] along with data, source code, administrative-level access credentials, historical customer data, and support services provided by the Debtors.

22.     However, the Debtors have intentionally stopped performing certain of their obligations under the Contracts during these Chapter 11 Cases.  By their own admission, "on June 16, the Debtors advised all of their customers that the Debtors were 'suspending all services to all Customers . . . in order to preserve resources for continuing Customers,' effective immediately."[20]  Further, the Debtors report that prior to and after the commencement of these Chapter 11 Cases, they "have received dozens of Customer demands for assistance with and access to the Debtors' proprietary technology and otherwise to enforce the Contracts" but that the Debtors

---

[18]   By their terms, the ESAs and LTSAs are each confidential.  The ESAs and LTSAs are voluminous and have not been attached to the Motion.  However, the Debtors possess copies of the ESAs and LTSAs, and copies of each will be made available to the Court prior to the hearing on this Motion.

[19]   *See Declaration of Gerard Uzzi in Support of Emergency First Day Motions of the Debtors* [Docket No. 13] (the "*First Day Declaration*") at pp. 16-17 (explaining that "[t]he Debtors' proprietary cloud-based technology and related servicing functionality is highly valuable to their Customers," and "[t]he termination of the Debtors LTSA Line of Business would have a severely detrimental impact on Customers who are largely incapable of replacing those functions without the Debtors' assistance").

[20]   *See* Debtors' Objection, at ¶ 1.

do not intend to perform their obligations because they "do not possess the funding or resources to comply with these demands."[21] They further admit that they filed the Rejection Motion "to make clear to customers that the only way to utilize the Debtors' technology and services is in connection with the *new* LTSA Program."[22]

23. Notwithstanding the DIP financing, the Debtors' nonperformance under the Contracts has largely continued, with the Debtors providing only the most basic level of services (i.e., keeping StackOS and Kobold online via the AWS cloud). For example, the Debtors have been unresponsive to requests from Customers to resolve programming issues and provide other maintenance services required under the Contracts. Further, the Customers have no assurance that the Debtors will maintain even these bare minimum services if the Contracts are rejected, a sale is approved, or the chapter 11 cases take an unexpected turn.

24. As a result of the Debtors' lack of performance of certain of their contractual obligations, the Customers have, in some cases, been forced to engage third-party providers directly to perform necessary maintenance or, in some cases, to attempt to perform such maintenance themselves. However, without access to the Licensed IP, including necessary user names, passwords, and source code, the Customers, whether directly or through third party vendors, cannot access and utilize key software, such as Powin Stack OS and Kobold, or perform other services the Debtors are obligated to provide under the Contracts.

25. Any delay or interruption in the Customers' ability to retain access to the Licensed IP upon rejection or following a sale would severely hinder the Customers' ability to safely and effectively operate the BESS. This could result in irreversible damage to the BESS (and, in turn,

---

[21] *See* Rejection Motion, at ¶ 13.

[22] *Id.* at p. 2 (Preliminary Statement) (emphasis added); *see also* Debtors' Objection, at ¶ 9 ("The Debtors were clear that there were two paths, either a re-negotiation or a rejection.").

the Projects where applicable), potential safety concerns, and loss of the ability to operate, which

would also cause significant harm to the Customers in the form of lost business and revenue and

potential harm to individuals and property.  Accordingly, the Debtors must be prepared to ensure

the immediate and complete transition of the Licensed IP to the Customers following rejection of

the Contracts, and they must provide adequate protection of the Customers' respective interests in

the Licensed IP in connection with any sale.

## **RELIEF REQUESTED**

26.    By this Motion, the Customers seek entry of an order, substantially in the form

attached hereto as **Exhibit A** (the "***Order***"):

     i.     granting adequate protection of the Customers' respective interests in the Licensed IP under section 363(e) of the Bankruptcy Code, including, without limitation (collectively, the "***IP Adequate Protection***"):

     a)     immediate turnover to the Customers of the Licensed IP upon Court approval of the rejection of any Contract or the sale of any Licensed IP, including, without limitation, any and all data (including Customer historical data for, without limitation, StackOS and Kobold), source code, object code, protocol information, data points, SCADA for software installations, software, firmware, applications, standard operating procedures, backup data, administrative-level read/write access credentials, and any and all other documentation and information used or related to current and historical operations, maintenance, and management of the BESS;

     b)     such other related documentation, information, and data as the applicable Customer may request; and

     c)     training, access to personnel, other support, and maintenance of all cloud services (including AWS), servers and related equipment, software, and applications operating properly in place for an adequate period of time as is necessary for the seamless transition of 24/7 operational and maintenance control of the BESS consistent

with the Customers' respective rights and interests under the
Contracts and Licensed IP;[23] and

ii.      granting such other relief as is just and proper.[24]

## BASIS FOR RELIEF

27.     The Customers rely on the Debtors to provide the Licensed IP, along with expertise
and certain key support services to operate the BESS.  Accordingly, the Customers request that
the Court require the Debtors to provide the IP Adequate Protection to (i) ensure the Customers'
statutory rights to the Licensed IP are fully and properly retained as contemplated by section
365(n)(1)(B) of the Bankruptcy Code if the Contracts are rejected and the Customers so elect and
(ii) protect the Customers' interests in the Licensed IP in the event of a sale or other disposition of
such Licensed IP.  Failure to do so would subject the Customers to the unreasonable risk that they
would not be able to safely and effectively operate the BESS, which would irreparably harm the
Customers' ability to properly serve their respective customers, negatively impact the Customers'
businesses, and potentially cause significant service disruption to the electric grid.

**A.      The Debtors Must Adequately Protect the Customers' Respective Interests in the
Licensed IP Under Section 363(e) of the Bankruptcy Code.**

28.     The Customers each have interests in the Licensed IP by virtue of the Licenses
granted under the Contracts, and they are entitled to adequate protection of such interests.

29.     Section 363(e) of the Bankruptcy Code provides:

Notwithstanding any other provision of this section, at any time, on request of an
entity that has an interest in property used, sold, or leased, or proposed to be used,

---

[23]   In the event any of the Contracts containing a license of Licensed IP are not assumed in these Chapter 11 Cases,
such Contracts should be deemed rejected, and the Customers should be permitted to elect to retain their respective
rights in the Licensed IP (as required under section 365(n) of the Bankruptcy Code).  At such time and upon such
election, any Licensed IP and supporting materials remaining in any escrow would be released from escrow to
the applicable Customer to be utilized by such Customer as necessary for the seamless transition of operational
control of the BESS consistent with the Customers' respective interests and rights under the Contracts.

[24]   The Customers reserve all rights, including under section 365(n) of the Bankruptcy Code, with respect to the
Rejection Motion and the Sale Motion.

sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

30.     Adequate protection of an interest in property is mandatory pursuant to section 363(e) of the Bankruptcy Code. *See In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("section 363(e) [of the Bankruptcy Code] is not permissive or discretionary—it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity"); *see also In re Heatron, Inc.*, 6 B.R. 493, 494 (Bankr. W.D.Mo. 1980) ("providing adequate protection is mandatory"). While section 363(e) does not expressly define "interest," courts have interpreted the term broadly and have determined that a license in intellectual property constitutes an interest in property. *See Compak Companies, LLC v. Johnson*, 415 B.R. 334, 338-39 (N.D. Ill. 2009) (citing *FutureSource, LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002)) (noting that a license in intellectual property is an interest in property).

31.     When adequate protection is necessitated under section 363(e) of the Bankruptcy Code, it may be provided by, *inter alia*, "granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(3).

32.     While the burden to prove adequate protection rests on the shoulders of the Debtors pursuant to section 363(p) of the Bankruptcy Code, the Ad Hoc Customer Group submits that in order for the Customers' respective interests and rights under the Contracts to be adequately protected, the Debtors must immediately provide the above-described IP Adequate Protection. The Customers' respective interests in the Licensed IP cannot be adequately protected through measures like periodic cash payments or replacement liens. The BESS can only operate as designed if the Customers have access to the Licensed IP, including certain key software and

13

technology as described above.  Accordingly, to realize the indubitable equivalent of the Customers' respective interests in the Licensed IP, the Debtors must either continue to perform under the Licenses or deliver the Licensed IP and other related items in a manner that allows the Customers to fully operate the BESS.

### 1. The Court Should Require the Debtors to Provide Adequate Protection to Ensure the Customers' Statutory Rights Under Section 365(n) of the Bankruptcy Code Are Not Impaired.

33.    The Debtors should not be able to reject the Contracts without a plan for how Customers will be able to retain their contractual rights to the Licensed IP.  Section 365(n) of the Bankruptcy Code recognizes a protectable interest in executory contracts for licensees of intellectual property.  *See In re Crumbs Bake Shop, Inc.*, 522 B.R. at 770-71 (explaining that section 365(n) was enacted to ensure "the rights of an intellectual property licensee . . . cannot be unilaterally cut off") (quoting *In re Exide Technologies*, 607 F.3d 957, 965 (3d Cir. 2010)).  If a debtor rejects an executory contract that grants such a license, the licensee is entitled, at its election, to continue using the license pursuant to certain conditions set forth in section 365(n).

34.    The Customers' continued and uninterrupted access to the Licensed IP and related support services is essential to the operation of the BESS.  If the Customers cannot access and utilize the Licensed IP, including certain software and technology, they cannot perform necessary upgrades, maintenance, and other services required to keep the BESS functioning properly, and the BESS could be significantly damaged.  Without the Licensed IP and related support services, grid reliability could be harmed, and the Customers may be unable to meet certain contractual and other commitments to third parties.  Consequently, the Customers could face significant economic loss in addition to any physical damage to the BESS that could result from lack of access to the Licensed IP.

14

35.     Accordingly, the Debtors should be required to provide the IP Adequate Protection to ensure the Customers' statutory rights under section 365(n) can be appropriately realized and are not merely empty words on a page.  The Ad Hoc Customer Group recognizes the exigencies of the Chapter 11 Cases.  However, the Debtors cannot utilize the bankruptcy process to deprive the Customers of their respective interests in the Licensed IP and statutory rights under the Bankruptcy Code.

### 2.     *The Debtors Must Provide Adequate Protection to the Customers in Connection with Any Sale of the Licensed IP.*

36.     The Licenses under the Contracts granted the Customers interests in the Licensed IP that must be adequately protected in connection with any sale of the Licensed IP.  As noted above, the Debtors have made known their intention to sell all or substantially all of their assets to a third party buyer vis-à-vis a sale process pursuant to section 363 of the Bankruptcy Code.  Pursuant to section 363(e) of the Bankruptcy Code, the Court must condition any such sale (or any other use, sale, or lease) of the Licensed IP on the Debtors providing adequate protection of the Customers' respective interests in such Licensed IP.

37.     Moreover, any potential sale of the Debtors' assets cannot occur free and clear of the Customers' respective interests in the Licensed IP, as such interests must be preserved pursuant to section 365(n) of the Bankruptcy Code.  *See, e.g.*, *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 774 (Bankr. D.N.J. 2014) (explaining that "a sale under section 363(f) does *not* trump the rights granted to [l]icensees by section 365(n)"); *see also In re Dynamic Tooling Sys., Inc.*, 349 B.R. 847, 856 (Bankr. D. Kan. 2006) (stating that rights under section 365(n) of the Bankruptcy Code could be protected by use of section 363(e) of the Bankruptcy Code to limit or prohibit a sale free and clear to protect interests of licensees).

15

## RESERVATION OF RIGHTS

38.     The Customers hereby reserve all of their rights, claims, defenses, and remedies, including under any license of intellectual property with the Debtors or agreements supplementary thereto, including the Contracts, and any rights under section 365(n) and 363(e) and pursuant to applicable law.

## NO PRIOR REQUEST

39.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

## CONCLUSION

40.     WHEREFORE, the Ad Hoc Customer Group respectfully requests that the Court (i) enter an order substantially in the form attached as **Exhibit A** hereto granting the IP Adequate Protection; and (ii) grant the Customers such other and further relief as is just and proper under the circumstances.

*[Remainder of page intentionally left blank.]*

16

Dated: July 8, 2025
New York, NY

*/s/ Steven M. Abramowitz*

**VINSON & ELKINS LLP**
Steven M. Abramowitz (NJ Bar No. 043641990)
David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036-7708
Tel: (212) 237-0000
Fax: (212) 237-0100
Email: sabramowitz@velaw.com
        dmeyer@velaw.com
        lkanzer@velaw.com

-and-

William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
Email: bwallander@velaw.com
        mstruble@velaw.com

*Counsel for Ad Hoc Group of*
*Customers of Powin, LLC*