**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Lorraine McGowen, Esq. (admitted *pro hac vice*)
Michael Trentin, Esq.
Jenna MacDonald Busche, Esq. (admitted *pro hac vice*)
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email: lmcgowen@orrick.com
        mtrentin@orrick.com
        jmacdonaldbusche@orrick.com

*Counsel to esVolta, LP*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| POWIN, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

**ESVOLTA, LP'S LIMITED OBJECTION TO
AND RESERVATION OF RIGHTS REGARDING OMNIBUS MOTION OF
THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION
OF LEGACY CUSTOMER CONTRACTS AND (II) GRANTING RELATED RELIEF**

esVolta, LP ("esVolta"), by and through its undersigned counsel, hereby submits this

limited objection to and reservation of rights (this "Limited Objection") regarding the *Omnibus*

*Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

*Contracts and (II) Granting Related Relief* [Dkt. No. 88] (the "Rejection Motion").[2] In support

of this Limited Objection, esVolta respectfully states as follows:

## PRELIMINARY STATEMENT

1.      esVolta, by and through certain subsidiaries (together with their affiliates and

related entities, the "Licensees" and each, a "Licensee"), develops, owns, and operates certain

utility-scale battery energy storage projects located throughout the United States (the

"Projects").[3] The Projects constitute an important part of the country's broader electric grid. To

ensure the safe and reliable operation of the Projects, esVolta depends on broad licenses to use

proprietary software and other technology belonging to Debtor Powin, LLC ("Powin"). This

licensed intellectual property controls critical operational, diagnostic, and safety systems without

which the energy storage systems installed at the Projects cannot function safely or efficiently.

2.      Through the Rejection Motion, the Debtors seek to reject hundreds of executory

contracts, including contracts between Powin and the Licensees. While esVolta does not oppose

the Debtors' decision to reject those agreements as a general matter, esVolta files this Limited

Objection to ensure that such rejection does not deprive the Licensees of their statutory and

contractual rights to continue using the licensed intellectual property or impair their ability to

maintain safe and effective operations.

3.      Powin's abrupt cessation of services under its executory contracts has already left

the Licensees expending significant resources to maintain critical systems without access to the

necessary tools or adequate technical support. The Projects are integral to grid reliability and

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Rejection Motion.

[3] The Projects include: (i) Acorn I Energy Storage, Ventura County, California; (ii) Hummingbird Energy Storage, Santa Clara County, California; (iii) Millikan Ave Battery Energy Storage, Orange County, California; (iv) Santa Paula Energy Storage, Ventura County, California; and (v) Wildcat I Energy Storage, Riverside County, California.

help prevent power interruptions, particularly during periods of high electricity demand and emergencies. If the Debtors are permitted to reject their contracts with the Licensees without satisfying the specific conditions to rejection set forth herein, the resulting disruption to the maintenance and operation of the Projects will not only endanger esVolta's business but also risk public safety and power grid reliability.

4.      Accordingly, esVolta respectfully requests that any Order authorizing rejection of the contracts between Powin and the Licensees cover all contracts between Powin and the Licensees, require that the Debtors comply with their statutory obligations under section 365(n), and require the Debtors to take such other actions as identified in this Limited Objection to ensure that the Licensees can continue to safely operate the Projects.

## RELEVANT BACKGROUND

5.      On June 9, 2025 (the "Petition Date")[4], the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of New Jersey (the "Court").

6.      No trustee or examiner has been appointed in these Chapter 11 Cases as of the date hereof.

### A.      The Contracts.

7.      Prior to the Petition Date, the Licensees entered into certain Energy Supply Agreements and Battery Equipment Supply Agreements (collectively, the "ESAs") with Powin pursuant to which Powin provided and commissioned battery energy storage systems, including critical firmware ("BESS") at the Projects. In addition to the ESAs, the Licensees entered into Long Term Services Agreements (the "LTSAs") and Operation and Maintenance Agreements

---

[4] Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the remaining Debtors were filed shortly thereafter on June 10, 2025.

(the "OMAs") with Powin pursuant to which Powin agreed to maintain and repair the BESS installed at the Projects and Limited Commercial Warranty and Performance Guarantees (the "Warranties"; and together with the ESAs, the LTSAs, the OMAs, and all related agreements and amendments thereto, the "Contracts"). A table listing each of the ESAs, LTSAs, OMAs, and Warranties by and between each of the Licensees and Powin is attached hereto as **Exhibit A**.

8.      In turn, Powin entered into agreements with certain subcontractors, sub-suppliers and other service providers (collectively, the "Subcontractors") for the performance of services at, and the manufacture of equipment and spare and replacement parts ("Component Parts") for, the Projects. Certain of the Subcontractors extended warranties related to equipment and/or Component Parts installed at the Projects (the "Subcontractor Warranties").

9.      Prior to the Petition Date, and pursuant to the terms of the Contracts, esVolta purchased certain of the Component Parts and paid Powin for such Component Parts. Certain of the Component Parts are currently stored at one or more warehouses owned by Powin or third-parties (the "Warehouse Owners").

10.     Pursuant to the terms of the ESAs, Powin granted each of the Licensees, among other things, broad licenses to use Powin's intellectual property in and to certain technology and software, including without limitation, technology necessary for the operation and maintenance of the BESS (collectively, the "Licensed IP"). Further, certain of the ESAs expressly acknowledge that the Licensees' rights in the Licensed IP are protected under section 365(n) of the Bankruptcy Code. The relevant provisions of each of the ESAs granting such licenses are

4

included on **Exhibit B** attached hereto.[5] Some of the Licensed IP is stored, managed and

processed on remote serves hosted on the internet (the "Cloud-Based IP").

11.      Certain of the ESAs also required Powin to enter into an escrow agreement,

pursuant to which Powin agreed to deposit the applicable Licensed IP in escrow with PRAXIS

Technology Escrow, LLC (the "IP Escrow Agent"). Certain of the Licensees were added as

beneficiaries under that certain Two Party Master Escrow Agreement, dated as of June 21, 2018.

Certain of the Contracts further require Powin to assign all Subcontractor Warranties to the

extent an assignment would not void or invalidate such warranty, reasonably cooperate with the

applicable Licensee's efforts to obtain and maintain any financing of the Projects, and/or provide

the applicable Licensee with access to Powin's records related to the Projects. Examples of these

provisions are included on **Exhibit C** attached hereto.[6]

**B.      Powin's Failure to Perform Under the Contracts.**

12.      To safely and efficiently operate the Projects, the Licensees require continuous

access to the Licensed IP. The Licensed IP includes certain credentials, onsite and cloud-based

software, source codes, and instructions that the Licensees depend on to maintain the BESS,

preserve grid reliability, and comply with internal safety guidelines and applicable regulations at

the Projects. For example, the BESS installed at the Projects are powered by Powin's Stack OS

and cannot operate safely or efficiently without this technology. *See* First Day Decl. [Docket No.

13] ¶ 15 ("Without Powin's Stack OS$^{TM}$, the[] BESS cannot operate safely"). Without the

---

[5] The ESAs are confidential by their terms and, therefore, Exhibit B is filed with redactions. Copies of the ESAs are in the possession of the Debtors and can be made available to the Court upon request but are too voluminous to attach to this Limited Objection.

[6] The Contracts contain confidential commercial information and, therefore, Exhibit C is filed with redactions. Copies of the Contracts are in the possession of the Debtors and can be made available to the Court upon request but are too voluminous to attach to this Limited Objection.

Licensed IP, the safety and functionality of the Projects is jeopardized, threatening not only the Licensees' business interests but also public safety.

13.     Notwithstanding these risks, on or around the Petition Date, Powin ceased performing its obligations under the Contracts. As of the date of this Limited Objection, Powin has authorized the IP Escrow Agent to release the Licensed IP to the Licensees, and the Licensees are reviewing the released materials to confirm whether they are able to use the Licensed IP provided to maintain the functionality and safety of the BESS, however the volume of documents in escrow is significant and, after additional review, it may be discovered that certain Licensed IP is missing or not up to date in escrow with the IP Escrow Agent. Consistent and meticulous upkeep of the BESS is essential to ensuring the Licensees can effectively meet their energy and capacity commitments to California's utilities and community choice aggregators, who provide electricity service to the businesses and residents in California and limit the risks to the Projects and the surrounding communities.

14.     Since Powin stopped performing under the Contracts and ceased providing technical support to maintain and effectively troubleshoot issues at the Projects, the Licensees have diligently attempted to perform the necessary maintenance at the Projects. As a consequence of Powin's cessation of its duties under the Contracts, the Licensees are actively looking to replace Powin with alternate service providers or perform such services directly. Toward that end, however, the Licensees require access to Powin's books and records as set forth below in order to assist the Licensees in identifying (i) the Subcontractors for each of the Projects, (ii) the amount and status of any liens or other claims threatened or filed against Powin relating to the Projects, (iii) the equipment manufacturers for the BESS, and all subcomponents

thereof sold to the Licensees and assigning, to the extent permissible, the Subcontractor Warranties for such equipment; and (iv) sourcing for replacement components.

15.    On June 17, 2025, the Debtors filed the Rejection Motion seeking authority to reject over 380 executory contracts, including many of the Contracts.

## LIMITED OBJECTION

16.    esVolta hereby elects to retain its rights under the ESAs to the Licensed IP pursuant to section 365(n)(1) of the Bankruptcy Code and respectfully requests that the Court enter an Order authorizing the Debtors to reject all of the Contracts between the Debtors and the Licensees, not just those listed on Schedule 1 to the Rejection Motion, and requiring that, prior to rejecting the Contracts, the Debtors shall provide the Licensees with continuous access to all of the Licensed IP, including without limitation, turning over all passwords, keys, pins, and other access devices, in a form and manner that allows the Licensees to independently operate the software, and all Licensed IP that the Licensees may identify in the future (the "Licensee IP Access").

17.    In addition to the Licensee IP Access, esVolta requests that, prior to rejecting the Contracts, the Debtors be authorized and directed, with respect to each Project, to (a) provide the Debtors with access to the Debtors' books and records related to the Project, including (i) confirming to the Licensees that the costs and fees associated with the Cloud-Based IP (the "Cloud-Based Fees") have been paid and are up to date to ensure that the Cloud-Based IP is and remains available, and, if any, advising the amount of Cloud-Based Fees that are outstanding and the amount and timing of the Cloud-Based Fees to be paid during the pendency of this case; (ii) providing the Licensees with information on and direct access to all Subcontractors that have performed services and/or manufactured, delivered or installed any equipment or Component

Parts at the Project; (iii) providing the Licensees with information on and documentation of any liens, judgments, or notices filed or threatened to be filed against the Debtors with respect to the Project and/or any conditional or final released thereof (the "Lien Information"); (iv) providing the Licensees with information on all Subcontractor Warranties related to the Project; and (v) providing the Licensees with information, in adequate detail, to source replacement components necessary to keep system operations at the guaranteed performance levels under the Contracts (the "Sourcing Information"); (b) authorize and direct the Warehouse Owners to release to the Licensees the Component Parts held by such Warehouse Owners for which esVolta has already paid Powin; and (c) to the extent permissible, transfer and assign the Subcontractor Warranties to the Licensees (the foregoing (a) through (c), the "Resourcing, Cooperation and Assistance"). Prior to the Petition Date, esVolta made payments to Powin and, in exchange, received certain conditional and final lien releases relating to the Projects attesting that Powin had received conditional and final lien releases from the applicable Subcontractors. Pursuant to the Contracts, esVolta previously paid Powin for the Subcontractor Warranties and the Component Parts for the Projects stored with the Warehouse Owners and requests the assignment of such Subcontractor Warranties and the release of such Component Parts in order to ensure the continued proper functioning of the Projects and mitigate the risks to the public of potentially dangerous failures.

A.    **The Licensee IP Access is Required Under Bankruptcy Code Section 365(n).**

18.    Bankruptcy Code section 365(n)(1) provides, in relevant part:

> If the [debtor] rejects an executory contract under which the debtor is a licensor of intellectual property, licensee under such contract may elect—
>
> (B)    to retain its rights . . . under such contract . . . to such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law), as such rights existed immediately before the case commenced, for—

(i)    the duration of such contract.

11 U.S.C. § 365(n)(1)(B).

19.    If a licensee elects to retain its rights pursuant to section 365(n)(1)(B), then pursuant to section 365(n)(3), " . . . on the written request of such licensee, the [debtor] shall— (A) to the extent provided in such contract . . . **provide to the licensee any intellectual property (including such embodiment) held by the [debtor]**; and (B) **not interfere with the rights of the licensee provided in such contract . . . to such intellectual property (including such embodiment)** including any right to obtain such intellectual property (or such embodiment) from another entity." 11 U.S.C. § 365(n)(3) (emphasis added).

20.    The ESAs are executory contracts that grant the Licensees broad licenses to intellectual property and, therefore, the Licensees are entitled to the protections afforded by section 365(n). These protections are not discretionary or subject to approval of the Court. The language of the Bankruptcy Code is clear that, at the Licensees' election, the Debtors *shall* provide the Licensed IP and *shall not* interfere with the Licensees rights under the ESAs. *See* 11 U.S.C. § 365(n)(3).

21.    While esVolta does not challenge the Debtors' decision to reject the ESAs and the other Contracts, such rejection must not strip the Licensees of their bargained for rights under the ESAs. *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 772 (Bankr. D.N.J. 2014) (". . . it would be inequitable to strip the . . . [l]icensees of their rights in the event of rejection, as those rights had been bargained away but the [d]ebtors."). Indeed, "[t]hrough [section 365(n)], Congress 'sought to make clear that the rights of an intellectual property licensee to use the licensed property cannot be unilaterally cut off as a result of the rejection of the license . . .' " *Id.* at 770-71 (quoting *In re Exide Tech.*, 607 F.3d 957, 965 (3d Cir. 2010) (Ambro, J., concurring)).

Accordingly, to satisfy their obligations to the Licensees under section 365(n), the Debtors must provide the Licensee IP Access.

**B.      The Resourcing, Cooperation and Assistance Will Serve the Public Interest.**

22.      The Resourcing, Cooperation and Assistance is essential to ensuring that the Licensees are able to safely and successfully operate the Projects.[7] Specifically, the Licensees require information on the status and amount of the Cloud Storage Fees to guarantee the continued availability and functionality of the Cloud-Based IP, including certain software such as Stack OS that is crucial to the operation and maintenance of the BESS. Access to information on the relevant Subcontractors, the Lien Information, the Subcontractor Warranties, and the Sourcing Information, as well as the release of the Component Parts held by the Warehouse Owners and, where permissible, the transfer and assignment of the Subcontractor Warranties, are critical to the Licensees' ability to obtain service, equipment, and Component Parts for the Projects as needed and keep the Projects free of liens or other claims that may interfere with their operation.[8]

23.      Thorough monitoring, accurate diagnostics, and timely maintenance are essential to the proper functioning of the Projects and mitigating the risks to the public of potentially dangerous failures such as overheating, fire, or grid destabilization. BESS are an important part of the country's broader electric grid infrastructure. The Projects store and dispatch power to meet demand and stabilize the power grid, particularly during peak periods or emergencies. Thus, the Resourcing, Cooperation and Assistance serves an important public interest by helping to perpetuate grid reliability and resilience and protect public safety. Interruptions to the safe

---

[7] The Licensees bargained for rights in line with the Resourcing, Cooperation, and Assistance when entering into the Contracts. *See, e.g.,* Exhibit C.

[8] To the extent there are additional liens on the Projects that are not released, esVolta may incur additional losses including damages arising from defaults or potential defaults under financing arrangements related to the Projects.

operation of the Projects could result in power disruptions and pose direct risks to the surrounding communities and environment.[9]

24.      While the Debtors have a statutory right to reject the Contracts, bankruptcy is, fundamentally, a process that aims to balance competing interests, and the Court may use its equitable powers to achieve this goal. *See Matter of Mendoza*, 111 F.3d 1264, 1270 (5th Cir. 1997) ("Because of the equitable nature of bankruptcy in seeking a balance between debtors and creditors, bankruptcy courts should be afforded the latitude to fashion remedies they consider appropriate under the circumstances . . . as long as the bankruptcy court follows the Bankruptcy Code's statutory mandate."); *In re Sagendorph*, 562 B.R. 545, 557 (D. Mass. 2017) (citing *In re Aeropostale, Inc.*, 555 B.R. 369, 396-97 (Bankr. S.D.N.Y. 2016)) ("A bankruptcy court is . . . entitled to select the remedy it considers most just in a given case, taking into account any applicable statutory constraints, the factual record, and the broader context in which the case arises."). esVolta does not seek to compel the Debtors to perform under the Contracts but merely to cooperate in a reasonable, narrowly tailored way that will prevent disproportionate harm to the Projects and the public. Requiring the Debtors to provide the Resourcing, Cooperation and Assistance will impose minimal burden on the estate but will substantially protect the Licensee's ability to continue operating the Projects in a way that serves the public interest.

25.      Accordingly, if the Debtors wish to reject the Contracts, the Court should authorize and direct the Debtors to provide the Licensee IP Access and the Resourcing, Cooperation and Assistance, not only to preserve the contractual and statutory rights of the

---

[9] For example, a recent fire at the Moss Landing battery storage plant in Monterey County, California, burned for multiple days, threatening the environment and health of the surrounding community. *See* Orlando Mayorquín, *A California Battery Plant Burned. Residents Have Gotten Sick, and Anxious.*, N.Y. Times, Feb. 10, 2025, https://www.nytimes.com/2025/02/10/us/california-battery-plant-fire.html.

Licensees, but also to protect the broader public interest in maintaining critical energy infrastructure and safeguarding the communities that depend on it.

## **RESERVATION OF RIGHTS**

26.    esVolta expressly reserves all rights under the Bankruptcy Code and the Contracts, including, without limitation, the right to supplement and/or amend this Limited Objection and assert any further objections related to the rejection of the Contracts.

27.    esVolta further reserves the right to assert any and all other claims against the Debtors arising out of or related to the Contracts and reserves all rights with respect to all of the Component Parts currently in the possession of the Warehouse Owners, which belong to esVolta and which the Debtors are not authorized to use absent the consent of esVolta or an Order of the Court.

## **CONCLUSION**

28.    WHEREFORE, for the reasons set forth herein, esVolta requests that approval of the Rejection Motion include rejection of all of the Contracts between the Debtor and the Licensees and be conditioned upon the Debtors providing (a) the Licensee IP Access; and (b) the Resourcing, Cooperation and Assistance.

*[Remainder of Page Intentionally Left Blank]*

Dated: New York, NY
July 8, 2025

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

*/s/ Michael Trentin*
Michael Trentin, Esq.
Lorraine McGowen, Esq. (admitted *pro hac vice*)
Jenna MacDonald Busche, Esq. (admitted *pro hac vice*)
51 West 52nd Street
New York, New York 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email:   mtrentin@orrick.com
          lmcgowen@orrick.com
          jmacdonaldbusche@orrick.com

*Counsel to esVolta, LP*

## EXHIBIT A

|     | Licensee | Debtor Party | Contract Effective Date | Contract Type | Project Name |
|-----|----------|-------------|-------------------------|---------------|--------------|
| 1.  | Acorn I Energy Storage LLC | Powin, LLC | 11/06/2019 | OMA | Acorn |
| 2.  | Acorn I Energy Storage LLC | Powin, LLC | 11/06/2019 | ESA | Acorn |
| 3.  | Acorn I Energy LLC | Powin, LLC | 11/06/2019 | Warranty | Acorn |
| 4.  | Hummingbird Energy Storage, LLC | Powin, LLC | 02/10/2023 | LTSA | Hummingbird |
| 5.  | Hummingbird Energy Storage, LLC | Powin, LLC | 02/03/2023 | ESA | Hummingbird |
| 6.  | PPA Grand Johanna LLC | Powin, LLC | 12/04/2017 | ESA | Millikan (a/k/a PPA Grand) |
| 7.  | PPA Grand Johanna LLC | Powin, LLC | 12/04/2017 | OMA | Millikan (a/k/a PPA Grand) |
| 8.  | PPA Grand | Powin, LLC | 12/04/2017 | Warranty | Millikan (a/k/a PPA Grand) |
| 9.  | Santa Paula Energy Storage, LLC | Powin, LLC | 10/21/2021 | OMA | Santa Paula |
| 10. | Santa Paula Energy Storage, LLC | Powin, LLC | 10/21/2021 | ESA | Santa Paula |
| 11. | Santa Paula Energy Storage, LLC | Powin, LLC | 12/09/2021 | Warranty | Santa Paula |
| 12. | Wildcat I Energy Storage, LLC | Powin, LLC | 11/06/2019 | ESA | Wildcat |
| 13. | Wildcat I Energy Storage, LLC | Powin, LLC | 11/06/2019 | OMA | Wildcat |
| 14. | Wildcat I Energy Storage, LLC | Powin, LLC | 11/06/2019 | Warranty | Wildcat |

**EXHIBIT B**

| Licensee | ESA Effective Date | Relevant Contractual Provisions |
|---|---|---|
| Acorn I Energy Storage LLC | 11/06/2019 | █████████ |

| Hummingbird Energy Storage, LLC | 02/03/2023 | ██████████████ |
| | | ████████████████████████ |
| PPA Grand Johanna LLC | 12/04/2017 | ████████ |
| | | ████████████████████████████ |



| | | |
|---|---|---|
| | | |
| Santa Paula Energy Storage, LLC | 10/21/2021 | |

| Wildcat I Energy Storage, LLC | 11/06/2019 | ████████ |

**EXHIBIT C**

| Licensee | Contract Effective Date | Contract Type | Example Contractual Provisions |
|---|---|---|---|
| Acorn I Energy Storage LLC | 11/06/2019 | ESA | ██████████ ██████████ |
| Hummingbird Energy Storage, LLC | 02/03/2023 | ESA | ████████████████████ |
| Acorn I Energy Storage LLC | 11/06/2019 | ESA | █████████████ |

| | | | |
|---|---|---|---|
| | | | ███████████████████ |
| Hummingbird Energy Storage, LLC | 02/03/2023 | ESA | ███████████████████ |
| Acorn I Energy Storage LLC | 11/06/2019 | OMA | ███████████████████ |

| | | | |
|---|---|---|---|
| | | | |
| Acorn I Energy Storage LLC | 11/06/2019 | OMA | |
| Acorn I Energy Storage LLC | 11/06/2019 | OMA | |

