<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(a)

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
Kevin M. Capuzzi (NJ No. 173442015)
John C. Gentile, Esq.
Noelle B. Torrice (NJ No. 79132013)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
kcapuzzi@beneschlaw.com
jgentile@beneschlaw.com
ntorrice@beneschlaw.com

*Counsel to Mainfreight Distribution Pty Ltd, et al.*

</td></tr>
<tr><td>

In re:

Powin, LLC, *et al.*,[1]

        Debtors.

</td></tr>
</table>

Chapter 11

Case No. 25-16137 (MBK)

Judge: Michael B. Kaplan

(Jointly Administered)

## MAINFREIGHT INC.'S OMNIBUS REPLY IN SUPPORT OF ITS MOTION TO CONFIRM THAT THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(A) DOES NOT APPLY TO CERTAIN GOODS IN ITS POSSESSION

Mainfreight Distribution Pty Ltd (together with its parent, subsidiary, or any other affiliate entities, "Mainfreight"), submits this reply in support of its *Motion to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Does Not Apply to Certain Goods in Its Possession* [D.I. 180]

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(the "Non-Stay Motion") and in response to the responses or objections of (i) Ace Engineering & Co., Ltd., filed at D.I. 282 (the "Ace Objection"), (ii) BHER Ravenswood Solar I, LLC, filed at D.I. 286 (the "BHER Objection"), and (iii) Powin, LLC and the above-referenced affiliated debtors and debtors-in-possession (collectively, the "Debtors"), filed at D.I. 294 (the "Powin Objection" and, together, the "Objections"), and states as follows:

## PRELIMINARY STATEMENT[2]

1.  The Court should overrule the Objections and grant the Non-Stay Motion. The Non-Stay Motion does not seek any of the following: an adjudication of Mainfreight's lien; an order as to nature, extent, or validity of such lien; or to enforce any lien rights. By the Non-Stay Motion, Mainfreight merely seeks a customary "comfort order" that the automatic stay does not apply to the BHER Goods currently in its possession because they are not property of the Debtors' bankruptcy estates. The Objections—and the BHER Objection in particular—attempt to distract the Court from the narrow and customary relief sought by Mainfreight. While the parties collectively request more time to satisfy Mainfreight's lien via mutual agreement, the objecting parties do not dispute that title of the BHER Goods was transferred from the Debtors to BHER before the Debtors' June 9, 2025 bankruptcy filing (the "Petition Date"). BHER cannot dispute the title transfer, so it has resorted to casting aspersions as to Mainfreight's motive and potential future acts to enforce its valid lien rights. Despite BHER's protestations, those issues are not the subject of Mainfreight's Non-Stay Motion and are thus not before the Court.

2.  The Debtors contend the Non-Stay Motion is premature and should be adjourned for sixty (60) days for the parties to find a compromise. But any delay of the Non-Stay Motion will irreparably harm the Debtors' sale efforts because a lack of clarity about whether the BHER

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Non-Stay Motion.

2

Goods are part of the Debtors' estate will impair the competitive tension and bidding process the Debtors must engineer in the hopes of successfully marketing and selling its assets, and causes significant doubt as to a bidder's cure responsibilities.  Contrary to the Debtors' assertions, Mainfreight is prejudiced by any delay and is damaged each day that passes without payment because Mainfreight is continuing to incur storage costs post-petition.  Quite simply, many of the doomsday predictions in the Objections, such as BHER's potential subrogation against the Debtors to recover additional amounts it may pay to secure release of the BHER Goods, are irrelevant as to the narrow relief requested in the Non-Stay Motion.

3. Despite the objecting parties' best efforts to make the Non-Stay Motion something that it is not, at the end of the day, the Non-Stay Motion seeks only one thing: confirmation that the automatic stay does not apply to the BHER Goods.  None of the objecting parties articulates a cogent argument to rebut that title indisputably was transferred by the Debtors prior to the Petition Date and, thus, the BHER Goods are not estate assets.

4. Accordingly, Mainfreight respectfully asserts that the Court should grant the Non-Stay Motion because the BHER Goods are not property of the estate and thus not subject to the automatic stay.

## **REPLY**

**I.    The Objections Misstate the Relief Sought by Mainfreight.**

5. The relief that Mainfreight seeks is confirmation that the automatic stay does not apply to the BHER Goods because title to those goods was transferred by the Debtors to BHER prior to the Petition Date.  The relief sought is straightforward and should be granted because no party has claimed that the BHER Goods belong to the Debtors.  The Objections, and certainly the

BHER Objection, should be disregarded to the extent that they do not address the relief sought by Mainfreight.

6. Because it cannot contest the title transfer, BHER contends, incorrectly, that Mainfreight is seeking to lift the automatic stay, enforce its lien rights against goods owned by the Debtors, or that Mainfreight's lien needs to be adjudicated by this Court before it can be enforced. <u>Not true.</u> Mainfreight did not raise these issues in the Non-Stay Motion, and they are not before the Court.

## II. Mainfreight's Lien on the BHER Goods Secures Its Right to Repayment of All Amounts Owed by the Debtors.

7. BHER contends that it should pay only for the shipping charges associated with the BHER Goods.[3] BHER believes that each customer should pay its share of the debts owed to Mainfreight for its goods in Mainfreight's possession. This issue is not before the Court; nevertheless, the proposition fails for two reasons. First, Mainfreight's lien on the BHER Goods does not cover only the freight charges owed for transporting the BHER Goods; it covers all transportation charges owed to Mainfreight by the Debtors. *See* Non-Stay Motion ¶ 9. Second, BHER lacks case law in support of its position whereas Mainfreight's right to exercise its maritime lien rights is supported by Third Circuit precedent as set forth in its Non-Stay Motion. BEHR cites only one case in support – an inapposite non-binding Ninth Circuit case from 1983 – and no party takes issue with the case law cited by Mainfreight in support of its position that maritime liens are valid and enforceable on the BHER Goods in its possession.

---

[3] Consistent with the Change Order, and to mitigate its damages from $756,000 per month in storage costs in Virginia to $3,450 per month in West Virginia, Mainfreight moved the BHER Goods from the port of Norfolk, Virginia, to a laydown yard in Millwood, West Virginia. Mainfreight confirms that two units were damaged in transit to West Virginia and a claim has already been submitted by Mainfreight against the carrier. Mainfreight also possesses insurance coverage for these shipments. To be clear, at all times, the BHER Goods remained in the possession, custody, and/or control of Mainfreight and still remain in its possession, custody, and/or control today. A supplemental declaration of James McCrone is attached hereto as **Exhibit A** and incorporated by reference.

4

8. Specifically, BHER cites *Harsh Inv. Corp. v. Bialac (In re Bialac)*, 712 F.2d 426 (9th Cir. 1983) for support of its position, but its reliance is misplaced. *Bialac* is fundamentally inapplicable to this case. The property at issue in *Bialac* was an indivisible parcel of real property, where foreclosure necessarily involved taking control of the entire property. *Bialac*, 712 F.2d at 428. Moreover, in *Bialac*, the debtor undisputedly owned a one-sixth interest in the property in question. *Bialac*, 712 F.2d at 428. Because the debtor in *Bialac* owned a partial interest in the property, he had a right of redemption for the entire property; both the partial interest and the right of redemption became estate property upon the debtor's petition for bankruptcy. *Id.* at 430-31.

9. Here, the BHER Goods are shipments of electrical equipment, which may be portioned out or moved around at will, including for sale in part. None of the parties to this dispute—Mainfreight, the Debtors, BHER, or Ace—claim that the BHER Goods belong to the Debtors. *See* Non-Stay Motion – Ex. F; Ace Objection, ¶ 13. The Debtor, BHER, and Mainfreight agree that BHER holds title to the BHER Goods as of June 8. *See* Non-Sta Motion – Ex. F. By all accounts, the Debtors held neither an interest nor a right of redemption in the BHER Goods as of the Petition Date, and neither became part of the estate at that time.[4]

---

[4] Ace argues in its objection that it has "protected and exercised its right to reclamation," that the Debtors' transfer of the BHER Goods to BHER should be unwound, and that the BHER Goods belong to Ace. Ace Objection ¶ 13. Critically, Ace acknowledges that its purported right of reclamation rests in part on whether the Debtors "received" the goods. *See, e.g.*, *Id.* ¶¶ 14, 16 ("Ace is entitled to reclamation because the Debtors made written representations of solvency . . . within three months of *receiving* the Shipment." (emphasis added)). Ace's representation that the Debtors "received" the BHER Goods is wrong. Black letter law makes clear the Debtors have not "received" the BHER Goods because the Debtors have not taken physical possession of the BHER Goods. "Receipt" in the reclamation context means taking physical possession of the goods. Possession of the goods by the debtor-buyer's common carrier is not enough to establish receipt—it must be actual, physical possession by the debtor or the debtor's bailee or agent. *Matter of Marin Motor Oil*, Inc., 740 F.2d 220, 224 (3d Cir. 1984); *In re ADI Liquidation, Inc.*, 572 B.R. 543, 549, fn. 31 (Bankr. D. Del. 2017), *aff'd*, No. BR 14-12092 (KJC), 2019 WL 211528 (D. Del. Jan. 16, 2019) (collecting cases); *In re World Imports, Ltd.*, 862 F.3d 338, 342 (3d Cir. 2017) (finding that common carrier was not agent of debtor) (citing *In re Mayer Pollock Steel Corp.*, 157 B.R. 952, 960 (Bankr. E.D. Pa. 1993) ("However, receipt of the goods by a common carrier is not deemed constructive possession by a buyer, but rather is deemed to be possession by the common carrier.")). Because the Debtors have not "received" the BHER Goods, Ace has no right to reclamation or any interest or property interest in or title to BHER Goods.

10.    As such, the BHER Goods are not a part of the estate and Mainfreight has a perfected maritime, and/or other possessory liens attached to them.

**III.    Any Delay in Adjudicating the Non-Stay Motion will Prejudice Mainfreight, Continue to Cause Significant Damage, and Harm the Debtors' Efforts to Sell Their Assets.**

11.    BHER and the Debtors ask the Court to deny the Non-Stay Motion without prejudice or adjourn it for upwards of sixty (60) days to figure out a resolution. This does not help Mainfreight and in fact will prejudice Mainfreight's ability to make itself whole and stop the accrual of storage charges. Mainfreight raised the issue of non-payment of millions of dollars in transportation charges before the Petition Date, and has been actively involved in these cases since the Petition Date. To further protect its rights and seek relief quickly, Mainfreight brought the Non-Stay Motion on an expedited basis. Mainfreight is harmed by each day that goes by with these goods taking up space in its warehouse from paying customers, and Mainfreight is not being paid for postpetition storage and other charges, which continue to accrue to its claim that totals $13,114,707.46 USD as of the date of this Reply.[5]

12.    The Debtors also fail to acknowledge that adjourning the Non-Stay Motion will significantly damage their ability to effectively market and sell their assets for maximum value. As of the date of this Reply, the Debtors purportedly have a stalking horse bid of $36M. The Debtors' proposed sale timeline contemplates an auction on July 30, and a sale hearing on August 6. If the Non-Stay Motion is adjourned, potential buyers will not have clarity on the asset pool of

---

[5] If the Court is not inclined to grant the relief sought by Mainfreight at the July 15 hearing, Mainfreight submits that the Debtors be ordered to pay Mainfreight adequate protection in the form of monthly prepayments in cash for storage that is being incurred post-petition. Additionally, to the extent the Court agrees with Ace that the Debtors' transfer of title of the BHER Goods should be unwound, Mainfreight respectfully requests that the Court grant Mainfreight additional adequate protection in the form of payments and replacement liens necessary to address any erosion of the value of the BHER Goods. To reflect the foregoing, an amended order is attached hereto as **Exhibit B**, and a blackline reflecting the changes between the amended order and order submitted with the Non-Stay Motion is attached hereto as **Exhibit C**.

the Debtors, which will harm the competitive tension the Debtors and their investment banker are trying to create, and will create doubt as to cure obligations. It will benefit all parties to have the Court decide the Non-Stay Motion on July 15, to confirm that the BHER Goods are not property of the estate and thus not a part of the Debtors' assets that may be sold.

## CONCLUSION

13. For the foregoing reasons, Mainfreight respectfully requests that this Court overrule the Objections, grant the Non-Stay Motion, and enter an order confirming that the automatic stay pursuant to 11 U.S.C. § 362 does not apply to certain goods in Mainfreight's possession.

Dated: July 11, 2025

Respectfully submitted,

**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**

 */s/ Kevin M. Capuzzi*
Kevin M. Capuzzi (NJ No. 173442015)
John C. Gentile, Esq.
Noelle B. Torrice (NJ No. 79132013)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: kcapuzzi@beneschlaw.com
          jgentile@beneschlaw.com
          ntorrice@beneschlaw.com

*Counsel to Mainfreight Distribution Pty Ltd, et al.*