| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(a) <br><br> **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP** <br> Kevin M. Capuzzi (NJ No. 173442015) <br> John C. Gentile, Esq. <br> Noelle B. Torrice (NJ No. 79132013) <br> Continental Plaza II <br> 411 Hackensack Ave., 3rd Floor <br> Hackensack, NJ 07601-6323 <br> Telephone: (302) 442-7010 <br> Facsimile: (302) 442-7012 <br> kcapuzzi@beneschlaw.com <br> jgentile@beneschlaw.com <br> ntorrice@beneschlaw.com <br><br> *Counsel to Mainfreight Distribution Pty Ltd, et al.* | |
| In re: <br><br> Powin, LLC, *et al.*,[1] <br><br>         Debtors. | Chapter 11 <br><br> Case No. 25-16137 (MBK) <br><br> Judge: Michael B. Kaplan <br><br> (Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

27242352 v1

**MAINFREIGHT'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) DESIGNATING A STALKING HORSE BIDDER AND APPROVING STALKING HORSE BIDDER PROTECTIONS (II) APPROVING BIDDING PROCEDURES BY WHICH INTERESTED PARTIES MAY BID AND AN AUCTION SALE FORMAT IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (III) APPROVING FORM OF ASSET PURCHASE AGREEMENT, (IV) APPROVING FORM OF NOTICE TO BE PROVIDED TO INTERESTED PARTIES, (V) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS AND NOTICE PROCEDURES THERETO, (VI) SCHEDULING A COURT HEARING TO CONSIDER APPROVAL OF THE SALE TO THE HIGHEST AND BEST BIDDER, AND (VII) AUTHORIZING THE SALE OF DEBTORS' PROPERTY FREE AND CLEAR OF ALL CAUSES OF ACTION AND CLAIMS**

Mainfreight Distribution Pty Ltd (together with its parent, subsidiary, or any other affiliate entities, "Mainfreight"), by and through its undersigned counsel, hereby files this limited objection and reservation of rights (the "Limited Objection") in response to the *Motion of the Debtors for Entry of an Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections (II) Approving Bidding Procedures by Which Interested Parties May Bid and an Auction Sale Format in Connection with the Sale of Substantially All of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to Be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of Debtors' Property Free and Clear of All Causes of Action and Claims* [D.I. 228] (the "Motion") filed by the debtors in the above-captioned action (together the "Debtors"). In support of this Limited Objection, Mainfreight respectfully states as follows:

## PRELIMINARY BACKGROUND

1.  Mainfreight is a global third-party logistics provider that has, for several years, arranged domestic and international transportation (including maritime, air, and over-the-road),

warehousing and storage, customs, and related services for and on behalf of the Debtors. At present, Mainfreight is in possession and control of certain goods that it shipped on the Debtors' behalf and at the Debtors' request. Mainfreight has liens on certain goods, including, without limitation, a general and specific, perfected, senior, maritime, and/or other possessory lien attached to any and all goods in its control or possession, wherever located.

2.      By the Motion, the Debtors threaten to violate Mainfreight's contractual, statutory, and common law lien rights through such a sale. The Court cannot grant the Motion in full without approving this violation of Mainfreight's rights, and doing so would be fundamentally inequitable.

3.      Therefore, Mainfreight objects to the Motion to the extent that the Motion purports to (i) impair or extinguish any liens that Mainfreight has against the Debtors' assets, or (ii) affect any property in the possession and control of Mainfreight.

4.      Mainfreight further reserves all rights it holds whether by contract, at law, or in equity.

## GENERAL BACKGROUND[2]

5.      Since at least May 2021, Mainfreight and the Debtors have had an ongoing business relationship. A true and correct copy of the *Business Credit Application* (the "Application") submitted by the Debtors to Mainfreight on or about May 17, 2021, including *Mainfreight's Terms & Conditions of Service* (the "Application Terms and Conditions") is attached hereto as **Exhibit A**.

---

[2] Mainfreight hereby incorporates by reference *Mainfreight Inc.'s Motion to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Does Not Apply to Certain Goods in Its Possession* [D.I. 180, the "Mainfreight Motion"], including all exhibits thereto, along with *Mainfreight Inc's Omnibus Reply in Support of Its Motion to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Does Not Apply to Certain Goods in Its Possession* [D.I. 341], which is being filed contemporaneously with this Limited Objection.

6. In March 2023, the Debtors opened a new business account with Mainfreight. A true and correct copy of the *Mainfreight Group – Account Opening Form* (the "Account Form") executed by a representative of the Debtors on or about March 29, 2023, including *Mainfreight's Standard Terms & Conditions—November 2021* (the "Account Form Terms and Conditions" and, with the Application Terms and Conditions, the "Terms and Conditions"), is attached hereto as **Exhibit B**.

7. The Terms and Conditions provide that Mainfreight shall hold a lien on any property of the Debtors that comes into Mainfreight's possession or control. **Ex. A** at 2, § 15(a); **Ex. B**, § 2.9. The Terms and Conditions further provide that, if Powin fails to pay outstanding amounts due upon Mainfreight's notice that Mainfreight is exercising its lien rights, Mainfreight shall have the right to sell the Debtors' property in Mainfreight's possession or control and apply the sale price to the total owed to Mainfreight. **Ex. A** at 2, § 15(c); **Ex. B**, § 2.9. Mainfreight's liens on the Goods (defined below) are also evidenced by various House Bills of Lading.

8. As part of Mainfreight and the Debtors' ongoing business relationship, Mainfreight would, at the Debtors' request, coordinate the shipment, transportation, and storage of various goods on the Debtors' behalf pursuant to the Terms and Conditions and House Bills of Lading (collectively, the "Services").

9. On June 4, 2025, Mainfreight issued a Notice of Lien for Unpaid Services (the "Notice") to Powin, which informed Powin about the outstanding balance owed to Mainfreight for the Services and that Mainfreight intended to exercise its lien rights. A true and correct copy of the Notice is attached hereto as **Exhibit C**.

10. The Notice also informed Powin that if it did not satisfy the outstanding balance within fourteen (14) days, Mainfreight would exercise its lien rights under the Terms and Conditions. *See* **Ex. C**.

11. On June 10, 2025 (the "Petition Date"), the Debtors filed their petitions for bankruptcy.

12. On June 13, 2025, this Court ordered that the Debtors' cases be jointly administered. [D.I. 58].

13. As of the date of this Limited Objection, Mainfreight remains in possession and control of various goods (the "Goods")³ it shipped on behalf of the Debtors, and Mainfreight is owed not less than $13,114,707.46 USD.

14. Mainfreight does not consent to a sale of the Goods free and clear of Mainfreight's liens unless and until its claim is paid in full.

## LIMITED OBJECTION

15. The Motion seeks to sell substantially all of the Debtors' assets (the "Assets") under 11 U.S.C. § 363, with the sale being free and clear of *any other* party's lien thereon. By way of this Limited Objection, Mainfreight expressly objects to the relief requested in the Motion to the extent that it seeks to (i) impair or extinguish any liens that Mainfreight holds on any of the Assets, or (ii) affect any of the Goods in the possession and control of Mainfreight.

16. The courts have recognized that maritime liens have a special priority status, including priority over any prior in time security interests recognized under the Uniform Commercial Code (UCC), and may operate to the prejudice of general creditors and purchasers without notice. *See Osaka Shosen Kaisha v. Pacific Export Lumber Co.*, 260 U.S. 490, 499 (1923)

---

[3] For the avoidance of doubt, the defined term "Goods" includes, but is not limited to, the BHER Goods as that term is defined in Mainfreight Motion.

(citing *Vandewater* v. *Mills, Claimant of Yankee Blade*, 60 U.S. 82 (1856); *In re World Imports Ltd.*, 820 F.3d 576, 592 (3d Cir. 2016); *In re Muma Services, Inc.*, 322 B.R. 541 (Bankr. D. Del. 2005). Under common law, an enforceable maritime lien is created by operation of law when a common carrier provides ocean transportation services for property. *See In re World Imports Ltd.*, 820 F.3d at 584-85. The lien for any outstanding ocean freight owed by a beneficial cargo owner attaches to the maritime property and adheres even when there is a change in the property's ownership. *Id.* In *World Imports*, the Third Circuit recognized that the common law possessory maritime lien held by the common carrier could be contractually modified, or "extended," by the parties. Pursuant to the contractual modification, the maritime lien would survive delivery of cargo: the common carrier was thus entitled to enforce its maritime lien against cargo in its possession to collect outstanding freight charges owed on unrelated cargo, including cargo already delivered to the beneficial cargo owner. *Id.*

17.     Under applicable law, a party with a security interest in goods may perfect its security interest by taking possession of the collateral. N.J. Rev. Stat. § 12A:9-313(a);[4] *Personal Property Securities Act 2009* (Cth) s 21(2)(b). A secured party's security interest in collateral continues even after sale, exchange, or other disposition of the collateral by the debtor, unless the secured party authorized its transfer free and clear of the security interest. N.J. Rev. Stat. § 12A:9-315(a)(1); *Personal Property Securities Act 2009* (Cth) s 20.

18.     Under the Bankruptcy Code, a debtor may sell estate assets free and clear of third-party interests under five conditions: (1) applicable non-bankruptcy law permits such a sale, (2) the interest-holder permits the sale, (3) the interest is a lien and the sale price exceeds the value of

---

[4] As explained in the Mainfreight Motion, irrespective of which state's version of the Uniform Commercial Code governs, the statutes are substantively identical. Mainfreight Motion at 7 n.4.

the liens, (4) the interest is the subject of a bona fide dispute, or (5) the interest-holder could be compelled to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).

19. The Motion seeks the Court's permission to sell the Assets free and clear of any interest in the Assets held by any third party under 11 U.S.C. § 363(f).  Motion, ¶¶ 55-57.  The Motion does not specify how each condition applies to the Assets, but makes a naked assertion that "Any interest in the Assets . . . satisfies or will satisfy at least one of the five conditions of section 363(f)."  Motion, § 57.

20. None of the conditions under 11 U.S.C. § 363(f) are satisfied by the Debtors with respect to the Goods.  As an initial matter, applicable non-bankruptcy law does not permit a sale of the Goods as contemplated by the Debtors.  Pursuant to the Terms and Conditions and House Bills of Lading, Mainfreight holds a valid maritime lien on the Goods and has a right, in accordance with applicable law, to sell them to satisfy the unpaid bills for the Services.  **Ex. A** at 2, § 15(c); **Ex. B**, § 2.9.  Mainfreight is not aware of any applicable non-bankruptcy law that would allow the sale of the Goods free and clear of Mainfreight's interest therein because the Terms and Conditions and House Bills of Lading establish a maritime lien, which must be satisfied before all other interests in the Goods.  *See World Imports*, 820 F.3d at 584, 592.  The Debtor fails to cite any authority—statutory, regulatory, judicial, or otherwise—that would permit the sale of the Goods free and clear of Mainfreight's interest. Instead, courts have consistently held that a maritime lien can attach to a property and accompany it through any transfer of ownership, even to a bona fide purchaser without notice of the lien. *See In re Muma Servs.*, 322 B.R. 541, 546 (Bankr. D. Del. 2005); *Bermuda Express, N.V. v. M/V Litsa*, 872 F.2d 554, 557 (3d Cir. 1989).[5]  The fact that

---

[5] Furthermore, only a court ruling *in rem* can vitiate a maritime lien. *See* 322 B.R. 541, 546 (reasoning that only via an *in rem* proceeding may property be sold free and clear of maritime liens). *But see Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 533 (9th Cir. 2018) ("Even if the bankruptcy court had in rem jurisdiction over the [vessel], it is

ownership over some of the Goods was transferred to BHER prior to the Petition Date is therefore no impediment to the existence or enforceability of Mainfreight's maritime liens, which continue to adhere to the BHER Goods.

21. The remaining four conditions under 11 U.S.C. § 363(f) are likewise unsatisfied. Mainfreight does not consent to a sale of the Goods free and clear of Mainfreight's liens under Section 363. There is no evidence that the sale price of the property in Mainfreight's possession exceeds the value of Mainfreight's lien. There is also no dispute about Mainfreight's interest in the Goods. Finally, the Debtors cite no authority permitting a judgment that would require Mainfreight to accept monetary satisfaction of its liens rather than allowing Mainfreight to exercise its lien rights in accordance with applicable law.

22. Therefore, none of the conditions of Section 363(f) are satisfied, and Mainfreight objects to the Motion to the extent that it allows the sale of the Goods free and clear of any of Mainfreight's liens on the Goods.

23. Relatedly, the BHER Goods are not property of the Debtors' estate, and therefore do not qualify as part of the Assets. Ex. D; *see also generally* Mainfreight Motion (explaining that ownership of the BHER Goods was transferred to BHER before the Petition Date, thereby excluding them from the Debtors' estate). However, if the BHER Goods are held to constitute part of the Assets, Mainfreight disputes that any of the conditions of Section 363(f) apply to the BHER Goods, and therefore opposes the sale of the BHER Goods free and clear of Mainfreight's interest in them.

---

an open question whether bankruptcy courts have the effective ability to sell a vessel free and clear of maritime liens.") (cleaned up).

## **RESERVATION OF RIGHTS**

24.  This Limited Objection is submitted without prejudice and a full reservation of rights to supplement, amend and to further object to the Motion on any grounds that may be appropriate up to the time of hearing thereon.

WHEREFORE, Mainfreight requests that this Court deny approval of the Motion on a final basis to the limited extent set forth herein and provide such other relief as is just and proper.

Dated: July 11, 2025

Respectfully submitted,

**BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP**

 */s/ Kevin M. Capuzzi*
Kevin M. Capuzzi (NJ No. 173442015)
John C. Gentile, Esq.
Noelle B. Torrice (NJ No. 79132013)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: kcapuzzi@beneschlaw.com
          jgentile@beneschlaw.com
          ntorrice@beneschlaw.com

*Counsel to Mainfreight Distribution Pty Ltd, et al.*