# EXHIBIT B

   

# Mainfreight Group – Account Opening Form

Mainfreight Distribution Pty Ltd (ABN 85 003 840 319)   Mainfreight Air & Ocean Pty Ltd (ABN 65 007 252 333)
Owens Transport Pty Ltd (ABN 64 060 592 529)   Carotrans Oceania Pty Ltd (ABN 31 118 822 487)

**Business Information:**

| Registered Legal Name ("Customer") | Powin LLC | | | | |
|---|---|---|---|---|---|
| ACN | EIN# 86-2270504 | Telephone | 503-598-6659 | Fax | |
| ABN | D&B 11-849-6563 | Email | logistics@powin.com; accountspayable@powin.com | | |
| Registered Address | Powin LLC | | | | |
| Trading Name | N/A - Private Equity | | | | |

Are Trading and Postal Address the same as Registered Address?  Yes [X]  No [ ]
If no then please complete below:

| Trading Address | 20550 SW 115th Ave., Tulatain, OR 97062 |
|---|---|
| Postal Address | |

Entity Type:   Company [ ]   Trust [ ]   Sole Trader [ ]   Partnership [ ]   LLC [X]

| Parent Company (if applicable) | Powin Energy Holdings LLC |
|---|---|
| Business Commencement Date | Powin LLC Registry Date - 04-28-2021 |
| Directors (name, address, phone, DOB) | Geoff Brown, CEO |
| | 2035 NW Front Ave, Suite 600 |
| | Portland, OR 97209 - Telephone: 503-598-6659 |

Hire Pallets to be:  Transferred [ ]   Recovered [ ]   Not Required [X]

| CHEP Account Number | | LOSCAM Account Number | |
|---|---|---|---|

Please tick which region (if any) you currently trade with another Mainfreight entity in:
Asia [ ]   New Zealand [ ]   Europe [ ]   Americas [ ]   Australia [ ]

Conditions:

Customer acknowledges and agrees that:

1. payment terms are C.O.D, unless otherwise agreed or indicated on the Mainfreight Group invoice;
2. services provided by the Mainfreight Group are subject to the standard terms and conditions which are attached to this Account Opening Form;
3. information stated in this Account Opening Form is true and correct and has been relied upon by the Mainfreight Group to determine whether to grant credit and the signatory has full authority to complete this Account Opening Form on behalf of Customer; and
4. they consent to personal information being disclosed to a credit reporting agency for the sole purpose of assessing an application for commercial credit.

Important Term:

Clause 5 of the Mainfreight Group's standard terms and conditions states that risk in Customer's goods remains with Customer and that the Mainfreight Group is not responsible for any loss, detriment or damage suffered by Customer or any other person.

| Signature |  | Position | Chief Operating Officer |
|---|---|---|---|
| Name | Stuart Bolland | Date | 29th March 2023 |

*Special people Special company*

    
AMERICAS   ASIA   AUSTRALIA   EUROPE   NEW ZEALAND

# MAINFREIGHT GROUP (Mainfreight, Owens, Carotrans)
# STANDARD TERMS & CONDITIONS – NOVEMBER 2021

1 Definitions

**Agreement** means this contract for the provision of the Services;

**Consequential Loss** means any incidental or consequential loss which shall include, but not be limited to, loss of revenue, loss of profits, loss of business, interruption to business, loss of opportunity, loss of production, interruption to production or loss of contract regardless of whether Mainfreight was actually, or should have been, aware of the potential for such loss to occur;

**Customer** means the person or entity for whom any Services are to be performed by Mainfreight under this Agreement;

**Dangerous Goods** means all Goods which are in the reasonable opinion of Mainfreight, or at law, deemed noxious, dangerous, hazardous, explosive, radioactive, flammable, inflammable, combustible, volatile or by their nature are capable of causing damage or injury to other goods, persons, animals or any other thing in which such Goods are carried or stored including any vessel, vehicle, wagon, van, aircraft or other conveyance;

**Goods** means the cargo or articles or goods perishable or otherwise (including animals of any description) which Customer or any other person has provided together with any container or any other packaging, pallets or other storage device supplied to Mainfreight;

**Heavy Vehicle National Law** means the *Heavy Vehicle National Law Act 2012* (Qld) and all regulations made under that Act, as well as the associated State and Territory road transport acts and regulations adopting the *Heavy Vehicle National Law Act 2012* (Qld) and includes any subsequent replacement, modification or amendment to any of these acts and regulations;

**Hire Pallets** means any pallets which are supplied by CHEP, Loscam or any other hire pallet provider;

**Mainfreight** means *Mainfreight Distribution Pty Limited* (ABN 85 003 840 319), *Mainfreight Air & Ocean Pty Ltd* (65 007 252 333), *Owens Transport Pty Ltd* (64 060 592 529) and/or *Carotrans Oceania Pty Ltd* (31 118 822 487) (as applicable) carrying on business in its own name or under any other business name and unless the context otherwise requires includes its officers, employees, servants, agents and sub-contractors and their officers, employees, servants, agents and sub-contractors or any other party involved in the provision of the Services (as applicable);

**Receiver** means the person or entity who the Goods are to be delivered to;

**Service Information** means any statement, document or other form of communication, whether verbally or in writing, which contains information that may affect Mainfreight's ability to correctly, lawfully or safely perform the Services; and

**Services** includes, but is not limited to, warehousing, storage, order processing, pick and pack, inventory management, domestic road/rail transport, freight forwarding, customs clearance, regulatory clearance involving communication/submissions with government bodies, transport by air or sea (domestic and international), cartage, packing/unpacking of containers, and any ancillary services associated with any of the foregoing.

2 Provision of Services

2.1 This Agreement shall commence upon execution by Customer, or the commencement of the Services, whichever occurs earlier.

2.2 Mainfreight is not a "common carrier" and will accept no liability as such. Mainfreight reserves the right to refuse the carriage or transport of goods for any person or entity and the carriage or transport of any class of goods in its absolute discretion.

2.3 Mainfreight shall use reasonable endeavours to perform the Services within any timeframes provided or notified to, or requested by, Customer. However, Mainfreight does not guarantee that any Services will be performed within such timeframes.

2.4 No marine transit insurance will be obtained by Mainfreight in relation to the Goods while performing the Services. Any such insurance must be taken out by Customer or Receiver at their own cost and expense.

2.5 Any person at the delivery location shall be deemed to have the authority to sign the consignment note to accept receipt of the Goods.

2.6 Mainfreight relies upon the information stated on the consignment note, or any other document or communication provided to Mainfreight in relation to the Goods, to enable the performance of the Services. Mainfreight does not warrant the accuracy or completeness of any such information and any receipt or signature provided is only an acknowledgement of the Goods being collected or delivered. Mainfreight's signature or acceptance shall not be construed as confirmation of the quality, quantity or condition of the Goods.

2.7 Mainfreight may have the Goods carried, stored or otherwise handled by any servant or agent or sub-contractor of Mainfreight or any servant or agent of any sub-contractor or by any other person without Customer's consent and Customer hereby authorises any deviation from the usual route, manner of cartage, method or place of storage of Goods which may in the absolute discretion of Mainfreight be deemed desirable or necessary in the circumstances.

2.8 If Customer expressly or impliedly instructs Mainfreight to use or it is expressly or impliedly agreed that Mainfreight will use a particular method of handling or storing the Goods or a particular method of carriage, whether by road, rail, sea or air, Mainfreight will give priority to that method but, if it cannot conveniently be adopted by Mainfreight, Customer hereby authorises Mainfreight to handle, store or to carry or to have the Goods carried by another method or methods. Mainfreight shall be entitled to open any document, wrapping, package or other container in which the Goods are placed or carried, to inspect the Goods to determine their nature, condition or for the purposes of determining their ownership or destination where any consignment note or other identifying document or mark is lost, damaged, destroyed or defaced.

2.9 Mainfreight shall have a general lien and a particular lien on all Goods or documents in their possession for any and all sums due at any time from Customer. Mainfreight shall be entitled to sell or dispose of such Goods or documents at the expense of Customer and apply the proceeds in or towards the payment of such sums on 14 days' written notice to Customer if such undisputed outstanding amount remains unpaid.

2.10 If Mainfreight is unable to perform their obligations under this Agreement due to events or circumstances which are outside of Mainfreight's reasonable control (**FM Event**), then Mainfreight shall advise Customer as soon as reasonably practicable. Customer may, at their cost and discretion, contract with a third party to enable the Services to continue to be provided. Mainfreight shall provide Customer with access to the Goods (if it is reasonable and safe to do so) and no payment shall be payable in respect of the Services that Mainfreight is unable to provide. Mainfreight shall use all reasonable endeavours to overcome or remove the FM Event as quickly as possible.

3 Fees & Charges

3.1 Mainfreight's charges will be as provided or notified to Customer from time to time. Mainfreight shall be entitled to amend the charges, or include any new charge, at any time which will become effective upon notice to Customer (whether verbally or in writing). Any

**MAINFREIGHT GROUP (Mainfreight, Owens, Carotrans)**
**STANDARD TERMS & CONDITIONS – NOVEMBER 2021**

quotations are provided on the basis that they are immediately accepted and are subject to the right of withdrawal before acceptance and may be subject to revision after acceptance.

3.2 Certain charges are outside of Mainfreight's control and are subject to change (with or without notice) from time to time. Customer acknowledges and agrees that such charges may be passed on in full without prior notice. These charges include, but are not limited to, port infrastructure surcharges, tolls, stevedore fees, fumigation, etc.

3.3 Mainfreight's charges shall be deemed fully earned upon commencement of the Services and shall be non-refundable in any event. All charges must be paid in accordance with the payment terms in paragraph 1 on the Account Opening Form, unless otherwise specified by Mainfreight or agreed in writing. Any customs duty or excise charges must be paid prior to delivery of the Goods (where applicable) unless otherwise agreed to by Mainfreight in writing.

3.4 Any undisputed outstanding amount that is not paid by the due date will attract interest at the rates laid down, as amended from time to time, under the *Penalty Interest Rates Act 1983* (Vic).

3.5 Mainfreight may charge freight by weight, measurement or value and may at any time re-weigh or re-measure or re-value or require the Goods to be re-weighed or re-measured or re-valued and charge proportional additional fees accordingly.

3.6 Customer will indemnify Mainfreight against non-payment of any charge or expense incurred by Mainfreight where such charge or expense is to be paid for by another party and such party fails to make payment by the due date.

3.7 Customer will be responsible for any proper charge incurred by Mainfreight for any reason. A charge may be made by Mainfreight in respect of any delay in loading or unloading, other than from the default of Mainfreight. Such permissible delay period shall commence upon Mainfreight reporting for loading or unloading. Labour to load or unload Goods shall be the responsibility and expense of Customer or Receiver. Should Receiver not be in attendance during normal trading hours or at the time specified, Mainfreight reserves the right to make a further charge for every call made until final delivery occurs.

3.8 If the Goods cannot be delivered, after Mainfreight has made reasonable attempts to do so, then Mainfreight shall be entitled (at their discretion) to immediately maintain possession of the Goods (until Customer advises Mainfreight of an alternative delivery location), immediately return the Goods to Customer or sell or otherwise dispose of the Goods upon 14 days' written notice to Customer. Mainfreight shall be entitled to charge applicable storage fees until the Goods are finally delivered/returned/sold/disposed. All charges made by Mainfreight in relation to the Goods shall continue to be due and payable regardless of whether the Goods are delivered to the Receiver or not.

3.9 Notwithstanding clause 3.8, Mainfreight shall be able to dispose of Goods immediately in the case of Goods that pose an apparent or immediate danger to persons or property or Goods which are perishable.

3.10 Customer acknowledges and agrees that any claims for incorrect charges, or overcharges, which are not notified to Mainfreight within 90 days from the date of invoice shall not be claimable.

3.11 Customer is not entitled to offset any amounts which are owed by Customer to Mainfreight under this Agreement against any amounts which may be due by Mainfreight to Customer.

4  **Customer's Obligations**

4.1 Customer warrants that:
  (a) they are the owner of the Goods or otherwise have the authority of the owner to consign the Goods upon and subject to this Agreement;
  (b) the Goods comply with the requirement of any applicable law (including, but not limited to, the *Australian Code for the Transport of Dangerous Goods by Road and Rail* and Part 92 of the *Civil Aviation Safety Regulations 1998* (Cth)) relating to the consigning and packaging of the Goods and the expenses and any charges incurred by Mainfreight in complying with the provisions of such law or with any order or requirement thereunder or with the requirement of any harbor, dock, railway, shipping, customs, warehouse or other authority or company shall be paid for by Customer;
  (c) if any of the Goods are subject to the legal control of the Australian Border Force then all customs duty, excise and costs which Mainfreight may become, or actually becomes, liable for in respect of such Goods pursuant to any law relating to customs duty or excise shall be immediately paid for by Customer. This shall also include any fine or penalty imposed on Mainfreight related to such customs duty or excise;
  (d) they have complied with all applicable laws relating to Dangerous Goods by fully describing in writing whether on the consignment note, waybill, bill of lading or separately (and in the latter case has brought the description to the actual attention of Mainfreight) the name and nature of all Dangerous Goods and any additional charges shall be paid for by Customer in relation to such Goods if deemed necessary by Mainfreight;
  (e) they will comply with all applicable laws and regulations applicable to the nature, condition or packaging of the Goods and that the Goods are packed in a manner, having regard to their nature, which is adequate to withstand the ordinary risk of carriage and that Customer has correctly declared the weight and dimensions of the Goods;
  (f) they will, so far as is reasonably practicable, ensure the safety of any Services performed for or on behalf of Customer and that they will meet their obligations under the Heavy Vehicle National Law where Customer acts as a Consignor, Consignee, Loader or Packer of Goods (as those terms are defined in the Heavy Vehicle National Law);
  (g) any containers, packaging or pallets (which contain or comprise the Goods) shall comply with any requirements of the Receiver and any expense incurred by Mainfreight, arising from any failure to conform, shall be borne or reimbursed by Customer;
  (h) any Service Information will be materially accurate and contain no false, incorrect or misleading statements; and
  (i) they will promptly comply with all reasonable requests from Mainfreight for information, in relation to Customer's compliance with the MS Act, or to assist Mainfreight to comply with Mainfreight's obligations under the Act.

5  **Liability & Indemnity**

5.1 The Customer acknowledges and agrees that risk in the Goods shall remain with Customer at all times whilst in the possession, custody or control of Mainfreight and that Mainfreight shall, under no circumstances (except where any statute otherwise requires) be under any liability whatever (whether in contract, tort or otherwise) for any:
  (a) personal injury or property damage caused or contributed to by;
  (b) loss or damage to; or

**MAINFREIGHT GROUP (Mainfreight, Owens, Carotrans)**
**STANDARD TERMS & CONDITIONS – NOVEMBER 2021**

    (c) mis-delivery, delayed delivery or non-delivery of,
the Goods in relation to, or arising out of, the Services whether the foregoing is caused, or alleged to have been caused by, the negligence, wrongful act, breach or default of Mainfreight or by any cause whatever.

5.2 Mainfreight shall not be liable for any claim in relation to Consequential Loss which is suffered by Customer, Receiver or any third party whether arising from, or in relation to, the performance of the Services directly or indirectly from any breach of Mainfreight's obligations under this Agreement or from any negligence, misrepresentation or other act or omission or from any other cause whatsoever.

5.3 Except where any statute otherwise requires, Customer shall indemnify Mainfreight against any claim, liability, loss, damage, cost or expense, which is incurred or suffered by Mainfreight in relation to, or arising out of, the performance of the Services, to the extent that it is caused or contributed to by:
    (a) the inherent nature or improper packaging of the Goods;
    (b) the negligent act, omission or wilful default by Customer, any Receiver or any other person or entity acting on behalf of Customer; or
    (c) Customer's breach of clause 4.1,
or which is otherwise necessarily incurred by Mainfreight in the proper performance of its obligations under this Agreement.

5.4 Without limiting clause 5.3, Customer and Receiver shall be liable for, and indemnify against, any and all liability for goods and services tax levied under the *A New Tax System (Goods and Services Tax) Act 1999* (Cth) (as amended) and any other goods and services tax, value added tax, consumption tax or tax of similar effect levied which Mainfreight may incur in relation to the Services.

5.5 Without limiting clause 2.8, 3.7 or 5.3, Customer indemnifies Mainfreight against all reasonable costs (including mercantile agent fees and solicitor-client legal costs) incurred by Mainfreight from any and all action taken in relation to any debt recovery arising from this Agreement.

5.6 Customer acknowledges and agrees that, every servant, sub-contractor or agent of Mainfreight shall have the benefit of all provisions herein as if such provisions were expressly for their benefit. In entering into this contract, Mainfreight, to the extent of those provisions, does so not only on its behalf, but as agent and trustee for such servants, sub-contractors and agents. Notwithstanding the foregoing, should any claim be made against any servants, subcontractors or agents, then Customer will indemnify Mainfreight against all consequences thereof.

5.7 If the Goods pose, or are likely to pose, a substantial risk to cause personal injury or property damage then Mainfreight may take any action that is reasonably necessary to reduce or eliminate such risk. This shall include, but not be limited to, destroying, disposing of or abandoning the Goods. Mainfreight shall not be liable for any loss or damage as a result of any action undertaken to reduce or eliminate such risk.

5.8 Notwithstanding the provisions hereof, this Agreement shall be read subject to any guarantees, implied terms, conditions or warranties imposed by Schedule 2 of the *Competition and Consumer Act 2010* (Cth) (as amended) or any other Commonwealth or State legislation (***Overriding Legislation***) insofar as such may be applicable and prevents either expressly or impliedly the exclusion or modification of any such guarantee, term, condition or warranty.

5.9 Mainfreight's liability as a result of a breach of any Overriding Legislation shall be limited to supplying the Services again or the payment of the cost of supplying the Services again.

5.10 Any proceedings against Mainfreight must be commenced in a court of competent jurisdiction within Victoria, and not elsewhere, within nine (9) months from the date of delivery, or intended delivery, of the Goods. Customer shall not be entitled to bring any proceedings against Mainfreight which are not commenced within such time. Any claim in relation to lost or damaged Goods which are the subject of air/sea transportation must be notified to Mainfreight within the timeframes stated in the *Carriage of Goods by Sea Act 1991* (Cth) or *Civil Aviation (Carrier's Liability) Act 1959* (Cth) (as applicable).

6   Containers & Demurrage/Detention/Storage Charges

6.1 Mainfreight may elect to provide Customer with container/s in order to pack the Goods prior to transportation. Customer must inspect any containers prior to loading the Goods into them and shall be deemed to have accepted the container in good repair and suitable condition should they load the Goods into the container.

6.2 Mainfreight shall not be liable for any loss or damage to the Goods which is caused or contributed to by the condition or unsuitability of the container.

6.3 Risk in the container shall pass to Customer upon delivery and Customer shall indemnify Mainfreight against any claim which relates to, or arises out of, any loss or damage to the container, or personal injury or property damage (excluding the Goods) which arises from the use or possession of the container, except to the extent that it is caused or contributed to by the negligence of Mainfreight.

6.4 Where the Goods are to be transported in containers (whether provided by Mainfreight or not), Customer undertakes that re-delivery of the container shall occur promptly.

6.5 Mainfreight must be provided with at least three business days' notice prior to the required collection date of the container. Mainfreight shall use reasonable endeavours to collect/return the container once notified. However, Mainfreight does not guarantee that such service will be completed within the relevant timeframe.

6.6 Customer acknowledges and agrees that events outside of Mainfreight's reasonable control may contribute to an inability to collect/return the container within the relevant timeframe. Such events may include, but are not limited to, government agencies undertaking their relevant obligations, insufficient fleet capacity, excessive storage of containers within Mainfreight's (or a third party's) yard, closure of empty container parks and redirections of containers by container parks or shipping lines.

6.7 Mainfreight shall not be liable for, and Customer will indemnify Mainfreight against, any detention or demurrage charges which are incurred by the Customer, or any third party, except to the extent that such charge has been caused or contributed to by Mainfreight's negligence.

6.8 Where Mainfreight is unable to collect/return a container within the relevant timeframe, Mainfreight may elect to cancel the collection booking, return the container to the Customer or Receiver (at the Customer's cost) or charge storage fees to Customer until the container can be successfully returned. Mainfreight shall be entitled to return the container to the Customer or Receiver, or charge storage fees, regardless of whether the reason for such inability to return the container is due to Customer, Receiver or any other third party.

**MAINFREIGHT GROUP (Mainfreight, Owens, Carotrans)**
**STANDARD TERMS & CONDITIONS – NOVEMBER 2021**

7  Heavy Vehicle National Law
  7.1  Mainfreight is committed to taking all steps, so far as is reasonably practicable, to ensure that any Services are performed safely and in accordance with the Heavy Vehicle National Law.
  7.2  Mainfreight shall not comply with any direction or instruction provided by Customer or Receiver that might:
    (a)  have the effect of contributing to a breach of;
    (b)  prevent Mainfreight from taking all steps that are reasonably necessary to prevent a breach of; or
    (c)  prevent Mainfreight from complying with its obligations under,
  the Heavy Vehicle National Law.
  7.3  Without limiting any other clause of this Agreement, Mainfreight shall not be liable for any loss or damage whatsoever which may be suffered by another party as a result of any action or inaction undertaken by Mainfreight to ensure compliance with the Heavy Vehicle National Law.
  7.4  Customer acknowledges and agrees that they have ensured that any relevant party (including the Receiver or any supplier, but excluding Mainfreight) are aware of, and comply with, their obligations under the Heavy Vehicle National Law and that any such party is aware of any load restraint requirements applicable to the transportation of the Goods.

8  Hire Pallets
  8.1  Customer acknowledges and agrees that, if Hire Pallets are transferred to Mainfreight's account during the provision of the Services, Mainfreight shall be entitled to charge the Customer any fees which Mainfreight may incur from the Hire Pallet provider in relation to Mainfreight's inability to recover that Hire Pallet if:
    (a)  the Receiver does not have a Hire Pallet account; or
    (b)  Mainfreight is unable to transfer the Hire Pallet to the Receiver's account; and
    (c)  Mainfreight cannot physically recover an equal number of Hire Pallets from the Receiver at the time of delivery.
  8.2  Further to clause 8.1, any instruction to Mainfreight to exchange or transfer consigned pallets to Mainfreight's Hire Pallet account is accepted only on the basis that Customer will indemnify Mainfreight against any loss or non-recovery of the consigned pallets howsoever arising. Evidence of the instruction to Mainfreight and any non-recovery shall be as shown on the face of the consignment note which shall be deemed conclusive proof of the instruction and/or non-recovery. A charge may be made by Mainfreight for the cost of hiring, recovery and replacement (if applicable) for all Hire Pallets unless exchange pallets are available at the time of delivery.

9  Dispute Resolution Process
  9.1  If any dispute arises in connection with this Agreement, the following must be completed prior to the party requiring it to be resolved (**Disputing Party**) commencing proceedings in a court of competent jurisdiction (unless requiring urgent or injunctive relief):
    (a)  Disputing Party must promptly give the other party written notice providing sufficient details of the dispute (**Dispute Notice**);
    (b)  within 10 business days of receiving a Dispute Notice, the parties must attempt to resolve the dispute via negotiation;
    (c)  if the parties are unable to resolve the dispute via negotiation (or a party refuses to participate in the process outlined above) then either party (or the compliant party, if a party refuses to participate in the process outlined above) shall be entitled to commence proceedings in a court of competent jurisdiction.

10  Miscellaneous
  10.1  This Agreement is governed by the laws of Victoria.
  10.2  Mainfreight shall not be bound by any agreement purporting to vary this Agreement unless such agreement is in writing and signed by an authorised representative of Mainfreight. The parties agree that this Agreement shall prevail over any other terms, conditions, document or statement (whether verbally or in writing) provided by a party (subject to clause 10.3).
  10.3  Where a document is issued by or on behalf of Mainfreight and bears the title of, or includes the words, "bill of lading" (whether or not negotiable) or sea or air "waybill" and provides that Mainfreight contracts as carrier, the provisions set out in that document shall prevail to the extent of any inconsistency with this Agreement.
  10.4  When this Agreement applies to or forms part of a bill of lading or an air/sea waybill issued by Mainfreight in its capacity as a contracting party for air/sea transportation, it is agreed that the transportation to the airport/wharf of departure and from the airport/wharf of arrival does not constitute part of the contract of air/sea carriage. As far as Mainfreight takes over the arrangement of performance of such services, this is done under a separate contract which is subject to this Agreement and (to the extent only to which this Agreement does not or cannot exclude or modify the operation of any applicable legislation) to that legislation.
  10.5  This Agreement shall continue to apply and to be of full force and effect in all circumstances notwithstanding any breach or alleged breach by Mainfreight of this Agreement and in particular (but without limitation of the generality hereof), notwithstanding any departure by Mainfreight from this Agreement whether by way of deviation or otherwise howsoever.
  10.6  If one or more provisions of this Agreement shall be invalid or unenforceable the remaining provisions of this Agreement shall not be affected thereby and shall continue in full force and effect. If any provision of this Agreement is found to be invalid or unenforceable, that provision will be severed from this Agreement to the extent that it is invalid or unenforceable.
  10.7  This Agreement may be subject to change from time to time. Any changes to this Agreement will be effective upon written notice.

*Customer acknowledges and agrees that they have read and understand the above terms and conditions and that this Agreement shall be applicable for any Services which are performed by Mainfreight:*

**Signature:** _S. Bolland_       **Position:** Chief Operating Officer

**Name:** Stuart Bolland       **Date:** 29th March 2023

   

# Mainfreight Group – Deviations from Standard Terms & Conditions

**info for customer:**

**POWIN ENERGY LLC**

*Address:* **20550 SW 115th Ave, Tualatin, OR 97062, USA**

### General:

1. Defined terms in this document shall have the same meaning as outlined in Mainfreight's standard terms and conditions unless otherwise specified in this document.

2. This document shall prevail to the extent of any inconsistency with Mainfreight's standard terms and conditions.

### Amendments to the T&Cs:

3. In clause 2.9, the number "14" is replaced with "60".

4. In clause 3.1, insert "30 days'" before "notice to Customer".

5. In clause 3.8, the number "14" is replaced with "60".

6. Clause 3.9 is hereby deleted.

7. Insert the following at the end of clause 2.7:

    *Notwithstanding the foregoing, upon the written request of Customer, Mainfreight must provide Customer with any information which is reasonably requested in relation to such subcontractor utilised to perform the Services. Customer shall be entitled to suspend Mainfreight from utilising a particular subcontractor if they do not meet the minimum requirements as outlined in this Agreement.*

8. In clause 9.1(b), the number "10" is replaced with "30".

| Customer | Powin LLC | | |
|---|---|---|---|
| Signature | *S. Bolland* Type text here | Position | Chief Operating Officer |
| Name | Stuart Bolland | Date | 29th March 2023 |



Mainfreight Air and Ocean Pty Ltd ABN 65 007 252 333

**Liability info for customer:**

**POWIN ENERGY LLC**

*Address:* **20550 SW 115th Ave,
Tualatin, OR 97062, USA**

**Liability of Mainfreight:**

In the event of loss or damage to the cargo due to the negligence of Mainfreight, the liability of Mainfreight, howsoever arising, shall not exceed the lesser of:
(i)     the value of the goods per any one consignment and/or shipment., or
(ii)    AUD$300,000 per any one consignment and/or shipment.

Mainfreight shall not be liable for loss or damage howsoever caused (whether or not direct, indirect or consequential) to property other than the Goods themselves and shall not be liable for any pure economic loss or loss of profit (or similar claim), delay or deviation howsoever arising, except to the extent any loss or damage to the cargo caused by Mainfreight's negligence or breach of contract or bailment or wilful act or default of Mainfreight.

**International Transport:**

Customer needs to be aware that when cargo is travelling by air/sea international conventions apply, these international conventions limit the liability of the carrier.
The most common conventions are the Hague Visby Rules (sea) and Montreal Convention (Air).
The limitations are: -
Hague Visby: The higher of 2 SDR per kilo of the goods lost/damaged, or 666.7 SDR per unit of goods.
Montreal Convention: 22 SDR per kilo of the goods lost/damaged
1 SDR = $2 AUD approx. so there could be a shortfall between what the carrier is liable for under the conventions and the value of the cargo.

**General Note:**

We encourage customers, to ensure that they have all risk cargo insurance in place for their goods at all times. There are many circumstances where cargo loss/damage can occur which are not due to the fault of carriers (e.g. acts of god) and are therefore not recoverable from the carriers. Additionally, even where carriers are liable, the process of settling a liability claim can be much more time consuming than settling a cargo insurance claim. For a cargo claim the cargo insurer only needs evidence that the cargo is damaged before they pay out. For a liability claim the liability insurer needs evidence of the damage, as well as evidence that the carrier is liable – this can take some time to confirm. Best process for customer, is to claim under their cargo insurance policy in the first instance, so they receive their money asap, and then let their cargo insurer pursue a recovery claim against Mainfreight.

**Customer Authorized Signature:** *S. Bolland*

**Customer Authorized Name:**   Stuart Bolland

**Title:**  Chief Operating Officer

**Date:**  29th March 2023