# **<u>EXHIBIT A</u>**

Case 25-16137-MBK    Doc 345-3    Filed 07/11/25    Entered 07/11/25 15:47:50    Desc
Exhibit A    Page 2 of 11
THIS DOCUMENT IS A COPY
by the designated custodian

| LESSOR – LEGAL NAME AND ADDRESS | LESSEE – LEGAL NAME, DBA AND ADDRESS |
|---|---|
| Toyotalift of Arizona, Inc.<br>1445 N 26th Ave<br>Phoenix, AZ 85009-3626 | POWIN, LLC "DBA" Powin Energy Holdings, LLC.<br>20550 SW 115th Ave<br>Tualatin, OR 97062-6857<br><br>JURISDICTION OF ORGANIZATION: Oregon<br>ENTITY TYPE: Limited Liability Company<br>COUNTY: Washington |

Dealer No.: 70253     Agreement No.: ▆▆▆▆▆

THIS MASTER LEASE AGREEMENT ("Lease") is effective as of the date specified on the signature page hereof, between the lessor identified above and its successors and assigns (collectively, "Lessor"), and the lessee specified above and its successors and permitted assigns (collectively, "Lessee"). In consideration of the mutual promises contained herein and such other adequate consideration, the parties hereto agree to the following terms and conditions:

1. **LEASE.** Lessor hereby leases to Lessee the property (together with all parts, replacements, repairs, additions, accessions, and accessories incorporated therein and/or affixed thereto, and all related operating manuals, maintenance records, and similar information, (the "Equipment") described in each Equipment Schedule executed pursuant to this Lease (each, a "Schedule").

2. **TERM; RENTAL.** The term of the Lease (the "Lease Term") shall be as set forth on the Schedule with respect to the Equipment described therein. Lessee's execution of a Certificate of Delivery and Acceptance ("CODA") in a form acceptable to Lessor in its discretion shall constitute acceptance by Lessee of the Equipment described therein and in the corresponding Schedule. Lessee shall pay Lessor rent for the Equipment during the Lease Term as specified on the applicable Schedule beginning on the date of Delivery and Acceptance. All payments of rent shall be made to Lessor at the payment address specified by Lessor in this Lease, or by such other manner as Lessee may designate in writing. If any rent or other amount payable under this Lease is not received when due, Lessor is entitled to collect, and Lessee agrees to pay, upon demand, the lesser of the late charge specified in the applicable Schedule or the maximum allowable late charge including interest permitted by applicable law. Time is of the essence in this Lease.

3. **INTENT, TITLE AND LIENS.** The parties intend and agree that: **(a)** the Equipment shall remain personal property, and Lessor's title thereto shall not be impaired, notwithstanding the Equipment being affixed to any real property; **(b)** title to the Equipment shall at all times remain in Lessor, and Lessee shall acquire no interest therein other than a leasehold interest; **(c)** Lessee shall (1) maintain the Equipment free from all claims, liens, encumbrances, attachments, rights of others, and legal processes ("Liens") of creditors of Lessee or other persons claiming by, through, or under Lessee; (2) defend, at Lessee's own expense, Lessor's title to the Equipment from such Liens; and (3) notify Lessor immediately upon knowledge of any Lien; **(d)** this Lease constitutes a true "lease" as such term is defined in the Uniform Commercial Code ("UCC") under Article 2A and not a sale or retention of security interest. If, notwithstanding the express intent of the parties, a court determines that this Lease is not a true lease, then, in order to secure Lessee's prompt payment and performance of its obligations (both now existing and hereafter arising) under this Lease: (1) Lessee hereby grants to Lessor a first priority security interest in the following (whether now existing or hereafter acquired): the Equipment and all parts, replacements, repairs, additions, substitutions, accessions, and proceeds (cash and non-cash; but with no power of sale), including the proceeds of all insurance policies, thereof; and (2) all subleases and accounts relating to use of the Equipment by any third party; (2) in addition to all of its other rights and remedies under this Lease, Lessor shall have all of the rights and remedies of a perfected secured party under the UCC; and (3) the obligation to pay rent, to the extent constituting the payment of interest, shall be at an interest rate that is equal to the lesser of the maximum lawful rate permitted by applicable law or the effective interest rate used by Lessor in calculating such amounts.

4. **PURCHASE AND ACCEPTANCE; DISCLAIMER.** Lessee acknowledges and agrees that: **(a)**(1) Lessor did not select, manufacture, or supply the Equipment; (2) Lessor acquired the Equipment from the manufacturer or vendor of the Equipment (the "Manufacturer") in connection with the Lease; (3) Lessee selected the Manufacturer and directed Lessor to acquire the Equipment from the Manufacturer; (4) Lessee is entitled to the representations and warranties provided by the Manufacturer in connection with the Lessor's purchase agreement relating to the Equipment; and (5) Lessee may communicate with the Manufacturer and receive an accurate and complete statement of those representations and warranties, including any disclaimers and limitations of the promises, representations, warranties, or remedies; **(b)** Lessor shall have no responsibility for delay or failure of Manufacturer to fill the order for the Equipment; and **(c)** THE EQUIPMENT IS LEASED HEREUNDER "AS IS", AND LESSOR HAS NOT MADE, AND HEREBY DISCLAIMS LIABILITY FOR, AND LESSEE HEREBY WAIVES ALL RIGHTS AGAINST LESSOR (BUT DOES NOT WAIVE ANY RIGHTS AGAINST MANUFACTURER) RELATING TO, ANY AND ALL WARRANTIES,

REPRESENTATIONS, OR OTHER OBLIGATIONS OF ANY KIND WITH RESPECT TO THE EQUIPMENT, EITHER EXPRESS OR IMPLIED, ARISING BY APPLICABLE LAW OR OTHERWISE, INCLUDING (1) MERCHANTABILITY OR FITNESS FOR PARTICULAR USE OR PURPOSE; (2) COURSE OF DEALING OR USAGE OR TRADE; OR (3) COMPLIANCE WITH APPLICABLE LAW, TITLE, OR FREEDOM FROM LIENS, TRADEMARK, PATENT, OR COPYRIGHT INFRINGEMENT, AND LATENT DEFECTS (WHETHER OR NOT DISCOVERABLE). So long as no default has occurred, (A) Lessor hereby assigns to Lessee all assignable warranties made by the Manufacturer to Lessor for and during the Lease Term and Lessee agrees to resolve all warranty claims directly with the Manufacturer; and (B) Lessor, or anyone rightfully claiming an interest through Lessor, shall not interfere with Lessee's possession and use of the Equipment. Any such claim shall not affect in any manner the unconditional obligation of Lessee to make rent payments hereunder. All expenses incurred in connection with Lessor's purchase of the Equipment (including shipment, delivery, and installation) shall be the responsibility of Lessee and shall be paid upon demand.

5. **USE AND MAINTENANCE. (a)** Lessee shall: (1) use the Equipment solely in the United States and in the conduct of its business, for the purpose for which the Equipment was designed, in a careful and proper manner; (2) operate, maintain, service, and repair the Equipment, and maintain all records and other materials relating thereto, in accordance and consistent with (A) all applicable maintenance and operating manuals or service agreements, (B) all applicable insurance policies, (C) the terms of any applicable warranties of the Manufacturer, (D) all applicable laws, and (E) the prudent practice of other similar individuals or companies in the same business as Lessee (but to no lesser standard than that employed by Lessee for comparable equipment owned or leased by it); (3) cause the Equipment to be in at least the same condition as when it was delivered to Lessee hereunder (excepting ordinary wear and tear resulting despite Lessee's compliance with the terms hereof); (4) provide written notice to Lessor prior to any change of the location of any Equipment; and (5) without Lessor's prior written consent, not attach or incorporate the Equipment to or in any other property. **(b)** Lessee will replace any parts of the Equipment which become worn out, lost, damaged beyond repair, or otherwise unfit for use, by new or reconditioned replacement parts which are free and clear of all Liens, and have a value, utility, and remaining useful life at least equal to the parts replaced. **(c)** Lessee may make alterations, improvements, and additions to the Equipment, without approval from Lessor, provided that such alterations, improvements, and additions do not: (1) interfere with the operation or utility of the Equipment, (2) affect the capacity, stability, or safe operation of the Equipment, or (3) adversely affect the value of the Equipment, or affect the remaining useful life which the Equipment would have without such alterations, improvements, and additions. Otherwise, all alterations, improvements, and additions require prior written notice to Lessor. **(d)** Before returning the Equipment to Lessor, Lessee agrees to remove any alterations, improvements, and additions not owned by Lessor. If removed, Lessee agrees to, at its expense, restore the Equipment to its original condition, normal wear and tear excepted. **(e)** Title to all parts, alterations, improvements, and additions, not removed, immediately shall vest in Lessor upon return of the Equipment to Lessor, without cost to Lessor, or any further action by Lessor, and such parts, alterations, improvements, and additions shall be deemed incorporated in the Equipment and subject to the terms of this Lease as if originally leased hereunder. **(f)** Except as provided in this Section, Lessee shall not detach or otherwise remove any parts from, or make any material alterations to, the Equipment. **(g)** Upon reasonable prior written notice by Lessor (provided that no such notice shall be required in the event of a default hereunder), Lessee shall afford Lessor access to the premises where the Equipment is located for the purpose of inspecting such Equipment and all applicable records, at any reasonable time during normal business hours.

6. **FEES AND TAXES.** Lessee shall report, pay when due, and reimburse Lessor (on an after-tax basis) for, and indemnify and hold Lessor harmless from, all fees, taxes, assessments and all other charges or withholdings of any nature (together with any penalties, fines or interest thereon, unless such penalties, fines or interest result from the gross negligence or intentional misconduct of Lessor), arising at any time, upon or relating to the Equipment, or this Lease, or the purchase, ownership, delivery, leasing, possession, operation, transfer, use, or return or other disposition of the Equipment, or based upon the lease except for any taxes based upon Lessor's net income. Lessee shall timely pay any Taxes and Fees for which Lessee is

15000 (09/21)

primarily responsible under law and any other Taxes and Fees not payable or not paid by Lessor. Upon Lessor's request, Lessee shall furnish proof of its payment of any Taxes and Fees.

Lessee covenants that Lessee will not file any tax return or other document or take any position which is inconsistent with the treatment of Lessor as the owner of the Equipment. Should Lessee breach this covenant, Lessee agrees to pay Lessor for any damages or losses occurring as a result of the breach, including any interest, fines, penalties, additions to tax, charges, or costs.

Lessor will file all returns and remit all personal property taxes applicable to the Equipment, and Lessor will bill Lessee for such charges. Lessee agrees to pay such bills within thirty (30) days of receipt thereof. Lessor may also bill Lessee an estimated amount for the remaining Taxes and Fees. Lessee agrees to notify Lessor immediately of any changes to the tax status of Lessee or the Equipment during the Lease Term, including but not limited to changes to exemption status or location. Adjustments to tax billings from Lessor to Lessee as a result of such change shall be made on a prospective basis only. Lessor is not obligated to contest or apply for any refund or abatement of any Taxes and Fees.

7.  **INDEMNITY.** Lessee shall indemnify, defend, and hold harmless Lessor, its agents, employees, directors, officers, shareholders, successors, and assigns of and from any and all liability, claims, allocations, damages, judgments, penalties, losses, or claims of any character (other than such as may result from the gross negligence or intentional misconduct of Lessor) (any of the foregoing, a "Claim"), on an after-tax basis, including reasonable attorneys' fees and other legal expenses, arising out of this Lease or the Equipment, including without limitation, (a) the acquisition, rejection, ownership, selection, possession, leasing, operation, (regardless of where, how and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Lessee or any purchaser or other user of the Equipment), maintenance, delivery, and return of the Equipment; (b) any claim under contract, tort, common law, equity, statutory law, including any negligence on the part of Lessor or its officers, agents or employees; (c) any claim for environmental damage, (d) any claim for any criminal or terrorist act; and (e) all matters relating to the disclaimer in Section 4. Lessee hereby waives any Claim against Lessor (but does not waive any Claim against Manufacturer) for any direct, indirect, incidental, or consequential damages to or losses resulting from the Equipment or the use thereof.

8.  **INSURANCE.** Unless otherwise specified in a Schedule, Lessee will, at its own expense, obtain and maintain all-risk insurance for an amount equal to the replacement value of the Equipment, and bodily injury and property damage liability insurance for an amount not less than $1,000,000 per occurrence and $2,000,000 in the aggregate, with respect to the Equipment. All such insurance shall **(a)** be written by insurers which carry a current rating by A.M. Best Company of at least "A" (or a general policy holder and a financial rating of at least "VIII" (or of recognized reputation and responsibility, reasonably satisfactory to Lessor); **(b)** be in such form as is reasonably acceptable to Lessor; **(c)** provide that (1) Lessor shall receive at least 30 days advance notice of any material change in, or cancellation of, such policy, and (2) name Lessor as an additional insured (but without responsibility for premiums) and name Lessor and Lessee as loss payees as their interest may appear. Lessee shall furnish Lessor with evidence of such coverage in writing and satisfactory to Lessor. If Lessee fails to insure the Equipment as required hereunder or upon Lessor's receipt of a notice of cancellation or notice of change reducing the required insurance coverage hereunder, Lessor will have the right, but not the obligation, to obtain insurance to protect Lessor's interests under the Lease, with the entire cost of the insurance, plus any related administration expenses, being borne by Lessee, and due upon demand by Lessor. The proceeds of any insurance payable as a result of loss of or damage to any item of Equipment shall be applied to Lessee's obligations as set forth in Section 9.

9.  **LOSS AND DAMAGE.** Lessee assumes the entire risk of loss of or damage to the Equipment from all causes during the Lease Term and thereafter until redelivery to Lessor. In the event of loss or damage to any item of Equipment, Lessee shall notify Lessor thereof. Lessee shall, at its expense, repair all damage to the Equipment, other than a Total Loss (as defined below), so as to cause it to be in the condition required by this Lease. In the event of a Total Loss for any item of Equipment, Lessee shall pay to Lessor, on the next rent payment date following the Total Loss, the rent due on that date plus the present value of all unpaid rental as may be allocated to such item of Equipment for the balance of the Lease Term, plus the lease-end value of such item of Equipment, plus all other amounts payable hereunder with respect thereto. A "Total Loss" shall be deemed to have occurred upon (a) the actual or constructive total loss of any item of Equipment, (b) the loss, disappearance, theft, destruction, or damage to any item of Equipment that is uneconomical to repair or renders it unfit for normal use; or (c) the condemnation, confiscation, requisition, seizure, forfeiture, or other taking of title to or use of any

item of Equipment, or the imposition of any Lien thereon by any governmental authority.

10.  **PERFORMANCE BY LESSOR OF LESSEE'S OBLIGATIONS.** In the event Lessee fails to comply with any provision of this Lease, Lessor shall have the right, but not the obligation, to effect such compliance on behalf of Lessee. In such event, all monies expended by and all expenses of Lessor in effecting such compliance shall be deemed to be additional rent under this Lease, and shall be paid with interest at the maximum allowable interest rate to Lessor at the time of the next monthly rent payment. Lessee will take such further action as Lessor may reasonably request in furtherance of Lessor's rights under this Lease. Lessee irrevocably authorizes Lessor to file UCC financing statements ("UCCs") and other filings with respect to the collateral described in Section 3. Without Lessor's prior written consent, Lessee agrees not to file any corrective, termination statements, or partial releases with respect to any UCCs filed by Lessor pursuant to this Lease.

11.  **COVENANTS AND WARRANTIES OF LESSEE. (a)** Lessee agrees this Lease is non-cancellable for the full Lease Term, and Lessee's obligations under this Lease, including, without limitation, the obligation to pay rent, are absolute and unconditional and shall continue without abatement and regardless of any right of setoff, counterclaim, defense, or inability to use the Equipment or any part thereof because of any reason whatsoever, including, but not limited to, war, act of God, governmental regulation, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Equipment properly to operate, claims against the Manufacturer, termination by operation of law, or any other cause. **(b)** Upon request by Lessor, Lessee agrees to furnish Lessee's annual financial statement promptly to Lessor, except for Lessees whose annual financial statements are available publicly through the Securities and Exchange Commission or other regulatory body, and such interim financial statements as Lessor may require. **(c)** Lessee represents and warrants to Lessor that: (1) this Lease has been duly authorized; (2) no provision of this Lease is inconsistent with Lessee's organizational documents, or any agreement or other instrument to which Lessee is a party or by which Lessee or its property may be bound or affected; and (3) this Lease is valid and binding against Lessee, and enforceable against it in accordance with the terms of this Lease. **(d)** Lessee shall provide written notice to Lessor thirty (30) days prior to any change in Lessee's legal name, jurisdiction, or form of organization.

12.  **DEFAULT.** A default shall be deemed to have occurred upon the occurrence of any of the following: **(a)** non-payment of any scheduled rent on the due date; **(b)** non-payment of any other amount under this Lease within ten (10) days after it is due; **(c)** failure to maintain, use, or operate the Equipment in compliance with applicable law; **(d)** failure to obtain, maintain, and comply with the insurance coverages required under this Lease; **(e)** any transfer of the Equipment or any part thereof, or any interest therein by Lessee (unless otherwise permitted herein), or the existence of any Lien that is prohibited by this Lease; **(f)** default by Lessee under any other obligation to Lessor or its affiliates; **(g)** default by Lessee under any other material obligation for the payment of indebtedness to a third party, which default has been declared; **(h)** a material inaccuracy of any representation or breach of any warranty by Lessee in any financial statement or other document provided pursuant hereto, including any omission of any substantial contingent or unliquidated liability or claim against Lessee; **(i)** the commencement of any bankruptcy, insolvency, receivership, or similar proceeding by or against Lessee, or any of its properties or business (unless, if involuntary, the proceeding is dismissed within sixty (60) days of the filing thereof), or the rejection of this Lease in any such proceeding; **(j)** the failure by Lessee generally to pay its debts as they become due, or Lessee's admission in writing of its inability to pay the same; **(k)** Lessee shall (1) cease to do business as a going concern, liquidate, or dissolve, or (2) sell, transfer, or otherwise dispose of all or substantially all of its assets or property; **(l)** a default or anticipatory repudiation under any guaranty executed in connection with this Lease; or **(m)** a breach by Lessee of any other covenant, condition, or agreement that continues for thirty (30) days after Lessor's written notice to Lessee (but such notice and cure period will not be applicable unless such breach is curable by practicable means within such cure period). The occurrence of a default with respect to any Schedule shall, at the sole discretion of Lessor, constitute a default with respect to any or all Schedules to which it is then a party. Notwithstanding anything to the contrary set forth herein, Lessor may exercise all rights and remedies hereunder independently with respect to each Schedule.

13.  **REMEDIES.** If a default occurs, Lessor may, at its option, exercise any one or more of the following remedies (provided that under all circumstances that Lessor shall only be able to recover the benefit of its bargain): **(a)** enforce performance of the applicable covenants and terms of this Lease; **(b)** recover damages for the breach of this Lease; **(c)** stop delivery of any or all items of Equipment; **(d)** require Lessee to assemble and return (in the condition and manner required by the applicable Schedule) and make available for repossession by Lessor any or all items of Equipment; **(e)** take possession of any or all items of Equipment without judicial process so long as such repossession may be accomplished without a breach of the peace; **(f)** obtain possession of any or all items of Equipment with a writ of replevin/

15000 (09/21)

MASTER LEASE AGREEMENT - EQUIPMENT

THIS IS A COPY
by the designated custodian

TOYOTA
COMMERCIAL FINANCE

sequestration); (g) sell, lease, or otherwise dispose of any items of Equipment at one or more public or private dispositions, with notice to Lessee (ten (10) days advance notice shall be sufficient and reasonable for all purposes); (h) regardless of whether Lessor has recovered any items of Equipment, or if so recovered, has elected to retain any or all items of Equipment or dispose of any or all items of Equipment by sale, lease, or otherwise, Lessor may recover as liquidated damages for the loss of a bargain due to Lessee's default and not as a penalty: (1) all accrued and unpaid rent, late payment charges, and all other amounts then payable hereunder; (2) the net present value of all remaining rentals that would otherwise have been payable during the balance of the Lease Term less any excess credits as a result of the disposition of the Equipment; (3) any adverse tax consequences suffered by the Lessor as a result of the Lessee's default and premature cancellation of the Lease; (4) the lease-end value of the Equipment less the net proceeds of disposition, or alternatively if the Lessor does not obtain possession of the Equipment, the residual value of the Equipment discounted to its present value; (5) any commissions, fees, and other costs incurred in the recovery, storage, and disposition of the Equipment; and (6) attorneys' fees and other expenses incurred by Lessor; all of which shall become immediately due and payable to Lessor upon default, to the extent permitted by the UCC or other applicable law and after taking into account all applicable credits required thereby (Lessee in all cases being liable for any deficiencies); (i) cancel this Lease without prejudice to Lessor's rights with respect to obligations then accrued and remaining unsatisfied; and (j) Lessor may also avail itself of any other remedy or remedies provided for by any statute or otherwise available at law, in equity (including specific performance), or in bankruptcy or insolvency proceedings, including, without limitation, under UCC-2A, or any other provision of the UCC. All remedies of Lessor hereunder are cumulative and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of Lessor to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Lease.

14. ASSIGNMENT. LESSOR MAY ASSIGN, DELEGATE, OR TRANSFER THIS LEASE, INCLUDING ANY SCHEDULE, ANY EQUIPMENT, ANY RENT, OR ANY OTHER SUMS DUE OR TO BECOME DUE HEREUNDER, AND IN SUCH EVENT, LESSOR'S ASSIGNEE OR TRANSFEREE SHALL HAVE ALL THE RIGHTS, POWERS, PRIVILEGES, AND REMEDIES OF LESSOR HEREUNDER. LESSEE HEREBY ACKNOWLEDGES NOTICE THAT LESSOR MAY ASSIGN THIS LEASE, AND UPON SUCH ASSIGNMENT, LESSEE AGREES NOT TO ASSERT, AS AGAINST LESSOR'S ASSIGNEE, ANY DEFENSE, SETOFF, RECOUPMENT, CLAIM, OR COUNTERCLAIM, WHETHER ARISING UNDER THIS LEASE OR OTHERWISE. LESSEE AGREES THAT ANY SUCH ASSIGNMENT SHALL NOT MATERIALLY CHANGE LESSEE'S DUTIES OR OBLIGATIONS UNDER THIS LEASE NOR MATERIALLY INCREASE LESSEE'S RISKS OR BURDENS. WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, LESSEE SHALL NOT ASSIGN, DELEGATE, OR OTHERWISE CONVEY THIS LEASE OR ANY INTEREST HEREUNDER, AND SHALL NOT ENTER INTO ANY SUBLEASE OF THE EQUIPMENT. ANY ATTEMPTED ASSIGNMENT, DELEGATION, CONVEYANCE, OR SUBLEASE BY LESSEE SHALL BE VOID AT ITS INCEPTION.

15. JURY TRIAL WAIVER: YOU KNOWINGLY AND VOLUNTARILY AGREE TO WAIVE YOUR RIGHT TO TRIAL BY JURY OF ANY CLAIM, CONTROVERSY, OR DEFENSE, OF ANY KIND OR CHARACTER, AND IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM, OF ANY KIND OR CHARACTER, ARISING FROM OR RELATED TO THIS LEASE, INCLUDING THE FORMATION, INTERPRETATION, PERFORMANCE, OR ENFORCEMENT THEREOF.

16. MISCELLANEOUS. (a) THIS LEASE SHALL BE BINDING WHEN ACCEPTED IN WRITING BY LESSOR IN THE STATE OF TEXAS AND SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS. LESSEE (1) SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN THE STATE OF TEXAS, OVER ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY MATTER ARISING FROM OR RELATED TO THIS LEASE; AND (2) WAIVES, TO THE FULLEST EXTENT LESSEE MAY EFFECTIVELY DO SO, THE DEFENSE OF AN INCONVENIENT FORUM FOR THE MAINTENANCE OF ANY SUCH ACTION OR PROCEEDING; AND (3) AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. (b) This Lease and each Schedule constitute the entire agreement between the parties with respect to the subject matter hereof and shall not be rescinded, amended, or modified in any manner except by a document in writing executed by both parties. (c) No provision of this Lease which may be deemed unenforceable shall in any way invalidate any other provision or provisions of this Lease, all of which shall remain in full force and effect. (d) This Lease shall be binding upon the parties, and inure to the benefit of (to the extent permitted hereunder) their successors and assigns. (e) The indemnities and obligations of Lessee provided in Sections 3, 4, 6, 7, 8, 9, and 11, and all of Lessor's related rights, shall survive and continue in full force and effect notwithstanding the termination or cancellation of this Lease. (f) All notices (excluding billings and communications in the ordinary course of business) hereunder shall be in writing, personally delivered, delivered by overnight courier

service, sent by facsimile transmission (with confirmation of receipt), or sent by certified mail, return receipt requested, addressed to the other party at its respective address stated herein or at such other address as such party shall from time to time designate in writing to the other party; and shall be effective from the date of receipt. (g) This Lease and each Schedule may be executed in counterparts, and photocopies or facsimile transmissions of signatures shall be deemed original signatures and shall be fully binding on the parties to the same extent as original signatures. (h) Only an executed counterpart marked "Original" shall be the "chattel paper" original (as defined in the UCC) of this Lease. (i) Lessee hereby authorizes Lessor to insert in this Lease and/or the Schedule, non-substantive descriptive and identification data pertaining to the Equipment, dates and other omitted or incorrect factual matters (including the effective date). (j) There is no restriction (either express or implied) on any disclosure or dissemination of the tax treatment or tax structure of the transactions contemplated by this Lease or any documents executed in connection herewith. Further, each party hereto acknowledges that it has no proprietary rights to any tax matter or tax idea or to any element of the transaction structure contemplated by this Lease, and each party hereto (and any employee, officer, director, shareholder, representative or agent of any party hereto) may disclose to any and all persons (without limitation of any kind), the Federal tax treatment and Federal tax structure of the transaction contemplated by this Lease. This provision is intended to cause the transaction contemplated by this Lease to be treated as not having been offered under conditions of confidentiality for purposes of Section 1.6011- 4(b)(3) (or any successor provision) of the Treasury Regulations promulgated under Section 6011 of the Internal Revenue Code of 1986 (the "Code") and Section 6111 of the Code and the Treasury Regulations promulgated thereunder, and shall be construed in a manner consistent with such purpose.

PRIVACY NOTICE: LESSEE ACKNOWLEDGES THAT TICF SHARES INFORMATION INCLUDING PERSONAL IDENTIFIABLE INFORMATION WITH AFFILIATES, SUPPLIERS, OR OTHER THIRD PARTIES TO FACILITATE SERVICING OF THE LEASE/CONTRACT AND FOR OTHER COMMERCIAL PURPOSES. LESSEE ACKNOWLEDGES AND AGREES THAT TICF'S USE OF SUCH INFORMATION IS SUBJECT TO TICF'S PRIVACY POLICY WHICH IS AT: WWW.TOYOTACF.COM/PRIVACY-POLICY.

IN WITNESS WHEREOF, Lessor and Lessee have executed this Master Lease Agreement as of the date set forth below.

LESSOR: Toyotalift of Arizona, Inc.

By: *Stephen Hansen* (DocuSigned by)

Name: stephen Hansen

Title: Presidents

Address: 1445 N. 26TH AVE
Phoenix AZ 85009

LESSEE: POWIN, LLC

By: *JE* (DocuSigned by)

Name: Jason Eschenbrenner

Title: SVP, Supply Chain Operations

Address: 20550 SW 115TH Ave.
Tualatin, OR 97062

By: _____

Name: _____

Title: _____

Address: _____

Date: 3/17/24

15000 (09/21)

COPY PREVIEW

THIS IS A COPY
by the designated custod...

**TOYOTA**
COMMERCIAL FINANCE

**EQUIPMENT SCHEDULE TO**
**MASTER LEASE AGREEMENT - EQUIPMENT**

EQUIPMENT SCHEDULE NO. 001                          SCHEDULE DATE: 03/04/2024

This Equipment Schedule is executed pursuant to, and incorporates by reference the terms and conditions of that certain Master Lease Agreement - Equipment, dated as of 03/04/2024 (the "Master Lease Agreement"), between Toyotalift of Arizona, Inc. and POWIN, LLC ("Lessee"), and the items of equipment described below constitute the "Equipment" referred to in Section 1 thereof. This Equipment Schedule incorporating by reference the terms and conditions of the Master Lease Agreement, constitutes a separate instrument of lease between Toyotalift of Arizona, Inc. ("Lessor") and Lessee; and is hereinafter sometimes referred to as the "Lease." Capitalized terms used herein without definition shall have the meaning given them in the Master Lease Agreement.

Lessee confirms that the Equipment has been received, inspected, and determined to be in compliance with all applicable specifications and is hereby accepted for all purposes of the Lease as of the Acceptance Date on the Certificate of Delivery and Acceptance form ("CODA") (the "Delivery Date").

**Billing Address:** 20550 SW 115th Ave (Street)   Tualatin (City)   OR (State)   97062-6857 (ZIP CODE)

**Equipment Location:** 7524 E Warner Rd (Street)   Mesa (City)   AZ (State)   85212-2487 (ZIP CODE)   Maricopa (County)

**Type of Operating Conditions:** Clean

☐ The Monthly Payment includes the Maintenance Payment.
☑ The Monthly Payment does not include the Maintenance Payment.

The monthly payment amount below does not include any property taxes. Please be advised that property tax is your responsibility. Property tax is assessed in arrears and will be billed as an itemized line item on your invoice or directly from the taxing jurisdiction. See Master Lease Agreement Section 6 under "Fees and Taxes" for reference.

| PER ITEM OF EQUIPMENT | | | | | |
|---|---|---|---|---|---|
| Lease Term (in months) | First Payment Due Date | Monthly Payment (includes the Lease Payment but not applicable taxes) | Security Deposit | Allowed Annual Operating Hours | Overtime Usage Fee (per hour) |
| 60 | (See Acceptance Date on CODA) | 5604.38 | 0.00 | 1000 | 7.50 |

| EQUIPMENT DESCRIPTION | | | |
|---|---|---|---|
| Number of Units | Make | Model | New/Used |
| 1 | Toyota | THDA25/35 | New |
| Serial Number: THDA25/35-101190 | | | |
| Attachments: | | | |

1. **TERM AND RENT.** The Lease Term for the Equipment shall commence on the First Payment Due Date specified above and continue, unless sooner terminated as provided in the Lease, for the number of months in the Lease Term specified above. Lessee shall pay rent for use of the Equipment (the "Lease Payment"), and shall pay the aggregate Lease Payments for the Lease Term and any other amounts payable under the Lease. The Lease Payment shall be due and payable hereunder each month on the same day of the month as in the First Payment Due Date. In the event the Delivery Date specified above occurs prior to the First Payment Due Date, rent for such partial first month ("Interim Rent") shall be due in the amount of 1/30th of the Lease Payment per day. Interim Rent shall be payable on the First Payment Due Date. All terms and conditions under the Lease apply to any such partial first month. If any Lease Payment is received more than ten (10) days after its scheduled due date, Lessee shall pay a late charge equal to the lesser of five percent (5%) of the Lease Payment amount or the maximum amount allowable under applicable law. If any Lease Payment made by Lessee is returned due to non-sufficient funds, Lessee shall pay a returned payment fee.

**Lessee acknowledges that Toyota Industries Commercial Finance, Inc. ("TICF") is not providing any maintenance services to Lessee and is** furthermore not responsible for any obligations of the designated servicing entity under any maintenance agreement or arrangement between Lessee and the servicing entity. TICF's only obligation to Lessee in connection with any payments due under any maintenance agreement or arrangement between Lessee and the servicing entity (the "**Maintenance Payments**") is to forward the Maintenance Payments received from Lessee to the designated servicing entity. Neither TICF nor any employee of TICF is authorized to waive or alter any term or condition of any maintenance agreement or arrangement. The Maintenance Payment is agreed to by Lessee as part of the maintenance agreement and not determined by TICF.

2. **HOLDOVER.** If Lessee fails to return the Equipment by the end of the Lease Term, the Lease will convert to a month-to-month lease, terminable on thirty (30) days' written notice by either party to the other, at a monthly rental payment equal to 100% of the pro rata monthly installment of the Lease Payment payable during the last billing period of the Lease Term ("Month-to-Month Payment"). The terms and conditions of the Lease shall continue to be applicable, and Lessee shall continue to pay the Month-to-Month Payment until the Equipment is received by TICF.

16221 (04/23)

DocuSign Envelope ID:
App#
Setup#

THIS IS A COPY
by the designated custod

TOYOTA
COMMERCIAL FINANCE

**EQUIPMENT SCHEDULE 1 TO**
**MASTER LEASE AGREEMENT - EQUIPMENT**

**3. REDELIVERY.** Upon the termination or expiration of the Lease Term, Lessee shall deliver on such date, freight prepaid, such Equipment, at the address designated by TICF. Lessee shall provide, at its expense, transit insurance relating to such redelivery in an amount equal to the replacement value of such Equipment, and Lessor, or its designee, shall be named as sole loss payee on all such policies of insurance. Lessee shall cause: (a) the Supplier's representative or other qualified person to de-install such Equipment in accordance with the Supplier's specifications and pack such Equipment properly and in accordance with the Supplier's recommendations; and (b) such Equipment to be transported in a manner consistent with the Supplier's recommendations and practices.

**4. RETURN CONDITIONS.** Lessee shall, at its expense, cause the Equipment to be returned in Safe Operating Condition. As used herein, "Safe Operating Condition" shall mean the Equipment, when loaded to its rated capacity, (a) has no missing or broken components, attachments, or accessories; (b) starts under its own power and idles; (c) does not leak oil, water, fuel, or any other fluids; (d) moves through its normal speed ranges in both forward and reverse; (e) steers normally right and left in both forward and reverse; (f) is able to stop by means of service brakes in a safe distance in both forward and reverse; (g) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (h) any equipped components, attachments, or accessories perform all of their required functions. In addition to being in Safe Operating Condition, the Equipment will have: (a) serviceable tires with remaining tread and without chunking or flat spots; and (b) an operational horn, parking brake, and lights; and, if applicable, (c) a battery of equal or better specifications than the original, which battery must be in good working condition, provide 80% of rated capacity, be free of defective cells and have no obvious signs of abuse (abuse includes but is not limited to, signs of overcharging, overwatering and evidence of severe corrosion). If the Equipment is not returned in Safe Operating Condition, Lessee will be billed for any repairs necessary to place the Equipment in Safe Operating Condition, regardless of whether such repairs are performed, and Lessee will pay such bill within thirty (30) days of receipt thereof.

**5. MAINTENANCE RECORDS.** If requested, Lessee shall also deliver all Equipment-related records and other data including, but not limited to, all records of maintenance and any maintenance and repair manuals. Upon delivery, such Equipment shall be in compliance with all applicable federal, state, and local laws, and health and safety guidelines. Lessee shall be responsible for the cost of all repairs, alterations, inspections, appraisals, storage charges, and other related costs necessary to cause such Equipment to be in full compliance with the terms of the Lease.

**6. USE AND MAINTENANCE PROVISIONS.** In addition to the provisions of Section 5 of the Lease, Lessee agrees that the Equipment shall be used only for Lessee's estimate of the annual number of hours of operation of the Equipment ("Allowed Annual Operating Hours") and the type of operating conditions under which the Equipment will be used ("Type of Operating Conditions") stated above. If the Equipment is operated annually for more hours than the Allowed Annual Operating Hours, based on the data reflected in the Equipment's hour meter or other similar mechanical device, Lessee will be billed the Overtime Usage Fee stated above for each hour in excess of the Allowed Annual Operating Hours. Lessee will pay such bill within thirty (30) days of receipt thereof. In the case of a broken, disabled, or removed hour meter or similar mechanical device, the hours of use will be extrapolated based on recorded usage during a prior three (3) month period, or, if such period is less than three (3) months, then during such lesser period. Lessee agrees that the Equipment will not be used for personal, family, or household purposes, or for farming or agricultural operations. Lessee will keep the Equipment in a covered area when not in use. Lessee shall only allow operation of the Equipment by competent, fully-trained-in use employees or contractors of Lessee. Lessee agrees to only operate the Equipment within its rated capacity, and to ensure that the Equipment is operated with all Manufacturer's safety equipment, such as the driver's overhead guard and/or load backrest extension, as installed or attached to the Equipment as delivered.

Lessor and/or TICF is hereby authorized to insert such factually correct information as is necessary to complete this Equipment Schedule, including (without limitation) the date of acceptance, First Payment Due Date, and the rental payment amount(s).

**PRIVACY NOTICE:** LESSEE ACKNOWLEDGES THAT TICF SHARES INFORMATION INCLUDING PERSONAL IDENTIFIABLE INFORMATION WITH AFFILIATES, SUPPLIERS AND OTHER THIRD PARTIES TO FACILITATE SERVICING OF THE AGREEMENT AND FOR OTHER COMMERCIAL PURPOSES. LESSEE ACKNOWLEDGES AND AGREES THAT TICF'S USE OF SUCH INFORMATION IS SUBJECT TO TICF'S PRIVACY POLICY WHICH IS FOUND AT: WWW.TOYOTACF.COM/PRIVACY-POLICY.

| LESSOR: Toyotalift of Arizona, Inc. | LESSEE: POWIN, LLC |
|---|---|
| By: _stephen Hansen_ | By: _(signature)_ |
| Name: stephen Hansen | Name: Jason Eschenbrenner |
| Title: Presidents | Title: SVP, Supply Chain Operations |
| Address: 1445 N 26th Ave | Address: 20550 SW 115th Ave, |
| Phoenix, AZ 85009-3626 | Tualatin, OR 97062-6857 |

16221 (04/23)

DocuSign Envelope ID: ███████

THIS IS A COPY
by the designated custodian

App# ███
Setup ███



## NOTICE OF ASSIGNMENT AND MAINTENANCE COLLECTION AGREEMENT
## FOR EQUIPMENT SCHEDULE

POWIN, LLC ("Lessee") hereby acknowledges that Toyotalift of Arizona, Inc. ("Lessor") has assigned to Toyota Industries Commercial Finance, Inc. ("TICF"), all of its rights (but none of its obligations) under that certain Equipment Schedule No. 001 dated as of 03/04/2024 (the "Schedule"), executed pursuant to that certain Master Lease Agreement dated as of 03/04/2024 (the "Master Lease Agreement"). The Schedule, incorporating by reference the terms and conditions of the Master Lease Agreement, constitutes a separate instrument of lease and is hereinafter collectively referred to as the "Lease". The assignment acknowledged herein includes, but is not limited to, all of Lessor's rights to be paid all Lease Payments and other sums due and to become due under the Lease and, if applicable, the guarantee(s) (solely to the extent related to the Schedule) and purchase option. Accordingly, all payments due under the Lease, guarantee(s) (solely to the extent related to the Schedule), and purchase option are now to be made directly to TICF at the following address, unless otherwise specified by TICF:

TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC.
PO BOX 660926
DALLAS, TX 75266-0926

**The assignment in no way affects the Lessor's obligations, if any, under the Lease (or any related maintenance agreement), as the Lessor remains obligated to perform those obligations.**

This Notice further confirms that all the Equipment described in the Schedule has been delivered and accepted by Lessee at the location(s) specified, and that the Lessee's obligation to pay the Lease Payments and other sums under the Lease is absolute and unconditional. The Lessee further confirms that it has no offsets, defenses, or counterclaims with regard to the Equipment, the Lease, or the obligations to make payments thereunder.

**Maintenance Collection.** To the extent that: (a) Lessee has indicated to TICF that it maintains a separate maintenance agreement with the Lessor setting forth certain maintenance obligations to be performed by Lessor or such other servicing entity designated by Lessor on Lessee's behalf (the "Maintenance Agreement"); and (b) Lessee has requested that it be allowed to make its Lease Payments along with the payments due under the Maintenance Agreement ("Maintenance Payments") in one combined monthly payment (the "Monthly Payment"). TICF agrees that it will accept and collect, on behalf of Lessor, the Monthly Payment under the terms and conditions set forth herein. Lessee hereby agrees that it will pay its Monthly Payment to TICF.

Lessee specifically directs TICF, and TICF agrees, to remit the Maintenance Payment portion of the Monthly Payment to Lessor or such other servicing entity designated by Lessor in writing. TICF agrees to issue periodic billing statements to Lessee directing payment of the Maintenance Payments to TICF, which the parties acknowledge may be consolidated with TICF's billing of Lessee for the obligations due and owing by Lessee to TICF under the Lease. It is expressly understood that the Maintenance Payments are not Lease Payments and they are not a payment due under the Lease. **Lessee acknowledges that TICF is not providing any maintenance services to Lessee and is furthermore not responsible for any obligations of the Lessor under the Maintenance Agreement. TICF's only obligation in connection with its agreement to collect and remit Maintenance Payments is to forward the Maintenance Payments received from Lessee to Lessor. Neither TICF nor any employee of TICF is an agent of the Lessor and they are not authorized to waive or alter any term or condition of the Maintenance Agreement.** There are no rights conferred to TICF to enforce the terms of the Maintenance Agreement. The parties agree (i) that Lessor shall maintain all right, title, and interest in and to all payments of the Lessee arising from the Maintenance Agreement; and (ii) that TICF is authorized to apply, in its sole discretion, the Lessee's payment to any sums due and owing by Lessee under the Lease and/or the Maintenance Agreement.

**LESSOR AND LESSEE HEREBY HOLD TICF HARMLESS AGAINST ANY CLAIM, SUIT, ACTION, PROCEEDING, JUDGMENT, LOSS, LIABILITY, OR EXPENSE (INCLUDING WITHOUT LIMITATION, ATTORNEYS' FEES AND COSTS) ARISING OUT OF OR BASED UPON: (A) ANY BREACH OF ANY AGREEMENT, REPRESENTATION, OR WARRANTY CONTAINED HEREIN; (B) ANY TAXES, ASSESSMENTS, OR PENALTIES IMPOSED ON TICF BY VIRTUE OF ITS AGREEMENT TO REMIT TO LESSOR THE MAINTENANCE PAYMENTS IT RECEIVES FROM LESSEE; (C) ANY LOSS, DAMAGE, OR INJURY TO PROPERTY, PERSONS, SERVICES, OR EQUIPMENT RESULTING FROM OR IN CONNECTION WITH THE LESSOR'S OBLIGATIONS UNDER THE MAINTENANCE AGREEMENT; OR (D) LESSOR'S OR LESSEE'S FAILURE TO FULLY AND TIMELY COMPLY WITH ANY APPLICABLE LAWS AND REGULATIONS RELATING TO THE LEASE OR MAINTENANCE AGREEMENT.**

**IN THE EVENT OF ANY CLAIM BY LESSEE THAT THE LESSOR HAS FAILED TO PERFORM ITS MAINTENANCE OBLIGATIONS UNDER THE MAINTENANCE AGREEMENT, LESSEE SHALL PROVIDE WRITTEN NOTICE THEREOF TO LESSOR AND TICF, BUT LESSEE SHALL PURSUE ANY SUCH REMEDIES SOLELY AGAINST LESSOR. LESSEE RECOGNIZES AND ACKNOWLEDGES THAT ANY FAILURE ON THE PART OF LESSOR TO HONOR ITS OBLIGATIONS UNDER THE MAINTENANCE AGREEMENT SHALL NOT BE A DEFENSE TO ITS OBLIGATION TO MAKE THE PAYMENTS DUE AND OWING TO TICF UNDER THE LEASE.**

Accepted and Agreed:

LESSOR: **Toyotalift of Arizona, Inc.**

By: _stephen Hansen_

Name: stephen Hansen

Title: Presidents

LESSEE: **POWIN, LLC**

By: _[signature]_

Name: Jason Eschenbrenner

Title: SVP, Supply Chain Operations

**TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC.**

By: _Jorge Hernandez_

Name: Jorge Hernandez

Title: Funding Supervisor

3

17001 (06/18)

DocuSign Envelope ID: ██████  
Setup# ██████

Case 25-16137-MBK    Doc 345-3    Filed 07/11/25    Entered 07/11/25 15:47:50    Desc  
RIDER TO MASTER LEASE AGREEMENT - EQUIPMENT SCHEDULE COPY  
PURCHASE OPTION

TOYOTA  
COMMERCIAL FINANCE

by the designated custodian

COPY VIEW

**RIDER NO. 1   TO EQUIPMENT SCHEDULE NO. 001**

To and part of Equipment Schedule No.   001   dated   03/04/2024   (the "Schedule"), executed pursuant to that certain Master Lease Agreement dated

03/04/2024   (the "Lease"), each between   Toyotalift of Arizona, Inc.   , its successors and assigns ("Lessor"),and

POWIN, LLC   , its successors and permitted assigns ("Lessee").

As used herein, the terms "Equipment" and "Lease" shall mean the Equipment and Lease described on the Schedule. The Schedule is hereby amended to add the following thereto:

    PURCHASE OPTION. Provided that no default has then occurred under the Master Lease Agreement, Lessee shall have the option to purchase the Equipment, upon the expiration of the original Lease Term as defined in the Schedule or any renewal term (if applicable), for a purchase price of $1.00   per item of Equipment, together with all taxes and charges upon sale. Lessee may elect to exercise the option by giving irrevocable written notice to Lessor not less than thirty (30) days before expiration of the original Lease Term as defined in the Schedule or any renewal term (if applicable). Notwithstanding anything to the contrary set forth in the Schedule, Lessee's obligations to return the Equipment in Safe Operating Condition (Section 4 of the Schedule) shall not be enforced if Lessee has elected to exercise its option to purchase the Equipment. Except as supplemented or amended by this Rider, the terms of the Master Lease Agreement and the Schedule shall remain valid and enforceable. This Rider shall control as to any conflict or inconsistency with any provision of the Master Lease Agreement or the Schedule.

| Toyotalift of Arizona, Inc. | POWIN, LLC |
|---|---|
| Lessor | Lessee |
| By: _stephen Hansen_ | By: _____ |
| Name: stephen Hansen | Name: Jason Eschenbrenner |
| Title: Presidents | Title: SVP, Supply Chain Operations |

16200 (06/18)

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT SUBMITTER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**   10288 - Toyota Industries

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

**DEDE**

File with: Secretary of State, DE

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

1. **DEBTOR'S NAME:** Provide only **one** Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| POWIN, LLC | | | |
| 1b, INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 20550 SW 115th Ave | Tualatin | OR / 97062-6857 | USA |

2. **DEBTOR'S NAME:** Provide only **one** Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b, INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only **one** Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC. | | | |
| 3b, INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| P.O. Box 9050 | Dallas | TX / 75019-9050 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
ONE (1) TOYOTA FORKLIFT
MODEL # THDA25/35
SERIAL # 101190

---

5. Check **only** if applicable and check **only** one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check **only** if applicable and check **only** one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check **only** if applicable and check **only** one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
98280775        Retail                                                                  Retail

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

DocuSign Envelope ID:

THIS IS A COPY
as maintained in the authoritative Copy he
by the designated custodian

**TOYOTA**
**COMMERCIAL FINANCE**
*Driving innovation together*

# TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC.
# CERTIFICATE OF DELIVERY

**App# :**
**Setup#**

The Lease/Contract between **Toyotalift of Arizona, Inc.** (the "LESSOR/SELLER") and **POWIN, LLC** (the "LESSEE/BUYER")

| Quantity | Manufacturer | Description | Model | Serial Number |
|----------|--------------|-------------|-------|---------------|
| 1 | Toyota | | THDA25/35 | THDA25/35-101190 |

**Equipment Location: 7524 E Warner Rd, Mesa, Arizona, 85212-2487**

**County:Maricopa**

This acknowledges that (1) the above items of Equipment have been delivered to the location indicated above and inspected by the LESSEE/BUYER (or LESSEE/BUYER has had reasonable opportunity to do so); (2) the Equipment is in good order and is accepted; and (3) the serial number of each item of Equipment matches the serial number(s) shown above.

Acceptance Date:  3/29/2024

First Payment Due Date:  3/29/2024

Name of Lessee/Buyer:  **POWIN, LLC**

Signed By: _____

Title:  SVP, Supply Chain Operations

13101-LR (02/24)                    CODA - Equipment



HOME > CONSTRUCTION EQUIPMENT > HIGH/LOW/AVERAGE

North America Listings

# High/Low/Average

← Return to Listings

**Category:** Forklifts
**Manufacturer:** TOYOTA
**Model:** THDA25/35



| | Retail High/Low/Average | Auction High/Low/Average |
|---|---|---|
| Total number of listings found | 0 | 1 |
| Highest price found | USD $0.00 | USD $220,000 |
| Lowest price found | USD $0.00 | USD $220,000 |
| **Average price** | **USD $0.00** | **USD $220,000** |
| **Avg. w/o High & Low** | **USD $0.00** | **USD $0.00** |

Here is an at-a-glance view of current "quick sale", auction prices, and also current asking, or "retail", prices. We have done computations on both "Equipment For Sale" & "Auction Results" listings for the type of equipment you specified. Above you see the average price found, the highest & lowest prices, and the average price computed again after throwing out the highest & lowest prices. For clarification, we've also displayed the number of listings on which the computations were performed. (NOTE: Items without a price have been omitted from the calculations.)