**DENTONS US LLP**

Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
       van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
       sarah.schrag@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
       aglaubach@teamtogut.com
       eblander@teamtogut.com

*Proposed Counsel for Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br>               Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

1

**MOTION OF THE DEBTORS FOR
ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING
SETTLEMENT AGREEMENT; AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Powin, LLC ("Powin") and the affiliated debtors and debtors in possession (collectively, the "Debtors"), in the above-referenced chapter 11 cases (the "Chapter 11 Cases") hereby move (the "Motion") this Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (i) authorizing and approving that certain Settlement Agreement by and between Powin and Idaho Power Company ("Idaho Power",[2] such agreement, the "Settlement Agreement")[3] under Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and sections 105, 362, and 363 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"); and (ii) granting related relief.

In support of this Motion, the Debtors rely on the *Declaration of Gerard Uzzi in Support of Debtors' Motion to Approve Settlement Agreement* attached hereto (the "Uzzi Declaration") and the *Declaration of Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* [Docket No. 13] (the "First Day Declaration"), the contents of both of which are incorporated herein by reference, and respectfully state as follows:

**I.    PRELIMINARY STATEMENT**

The Settlement Agreement settles and compromises disputed claims held by the Debtors' estates, and infuses immediate cash into the Debtors' estates, for the benefit of the Debtors and all of their economic stakeholders. By way of background, Powin is party to two applicable energy supply agreements with Idaho Power, each executed prior to the Petition Date: (i) that certain

---

[2] Each of Powin and Idaho Power are sometimes referred to herein individually as a "Party", and, collectively as the "Parties."

[3] A true and correct copy of the Settlement Agreement is attached to the Order as **Exhibit 1** in partially redacted form. The Debtors are separately filing an application to seal in connection therewith.

2

Energy Supply Agreement for the Black Mesa Project dated February 28, 2022 (the "Black Mesa ESA") and (ii) that certain Energy Supply Agreement for the Hemingway Expansion Project dated June 8, 2023 (the "Hemingway Expansion ESA" and together with the Black Mesa ESA, the "ESAs").  Powin has incurred damages under each of the Black Mesa ESA and the Hemingway Expansion ESA in an aggregate amount that is disputed by the parties.

After extensive, good faith, arm's length negotiations with Idaho Power, the Debtors have reached the Settlement Agreement, which provides for, among other things, a settlement payment by Idaho Power to Powin of $1,000,000.00 in cash in exchange for a release of Idaho Power of any and all remaining obligations, liabilities, claims, or other payment rights under the ESAs that are or could potentially be owed by Idaho Power to Powin.

The Settlement Agreement provides significant benefits to, and is in the best interests of, the Debtors and their estates, namely because the Settlement Agreement avoids the (likely significant) cost, delay, and uncertainty associated with potential litigation over the disputed damages amount; yields a reasonable amount of cash to the Debtors in light of such considerations; and addresses an urgent need that the Debtors have for the Settlement Agreement proceeds.  The Settlement Agreement will provide the Debtors with a material influx of funds that the Debtors need to continue to administer these Chapter 11 Cases and achieve their proposed sales and marketing timeline.  As discussed below, the Debtors believe that the settlement amount is appropriate and are not aware of any other claims that they hold against Idaho Power that are being released by the Settlement Agreement.

Accordingly, the Debtors submit that the Settlement Agreement is in the best interests of the Debtors and their estates and that the Settlement Agreement should be approved by this Court pursuant to Bankruptcy Rule 9019 and sections 105, 362, and 363 of the Bankruptcy Code.

## II. JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012, as amended on June 6, 2025. The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicates for the relief requested herein are: sections 105, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9019, and rules 2002, 9013-1, and 9019-3 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## III. BACKGROUND

A. General Background

4. On June 9, 2025 (the "Petition Date"),[4] the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

---

[4] Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the majority of Debtors were filed shortly thereafter on June 10, 2025, *except that*, three additional Debtor-affiliates (Powin Energy Storage 2, Inc., Powin Energy Ontario Storage II LP, and Powin Canada B.C. Ltd.) filed for petitions on June 22, 2025.

5. On June 26, 2025, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee"). [Docket No. 174].

6. Additional information regarding the Debtors, including their businesses and the events leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declaration, the contents of which are incorporated herein by reference.

B. Specific Background

7. Prior to the Petition Date, Powin entered into the ESAs with Idaho Power.

8. As set forth in the Settlement Agreement, the Debtors allege that, under each of the ESAs, Idaho Power has failed to make required incentive payments to Powin. Idaho Power contends that, among other things, Powin failed to meet the deadlines in the ESAs required to earn such incentives which, and taken together with amounts that Idaho Power has already paid Powin, results in Idaho Power having overpaid Powin in cash under the ESAs by approximately $270,000.00.

9. The Debtors and Idaho Power therefore dispute the amount of damages incurred by Powin under the ESAs, with Idaho Power asserting (absent a settlement) that no payment is due to Powin.

10. On June 17, 2025, the Debtors filed an *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88], that among other things, seeks to reject the ESAs.

11. The Parties have engaged in extensive discussions in an effort to resolve the above-described dispute. Those discussions ultimately culminated in the execution of the Settlement Agreement, which, if approved, would result in Idaho Power paying Powin an amount equal to $1,000,000.00 in full and final satisfaction of all remaining obligations, liabilities, claims, or other

5

payment rights under the Black Mesa ESA and the Hemingway Expansion ESA that are or could potentially be owed by Idaho Power to Powin.

12. As detailed below, entry into the Settlement Agreement falls well above the lowest level of reasonableness and provides a direct and material benefit to the Debtors' estates. For these reasons, the Settlement Agreement satisfies all of the requirements for approval under Bankruptcy Rule 9019 and sections 105, 362, and 363 of the Bankruptcy Code and should be approved.

## IV. RELIEF REQUESTED

13. By this Motion, pursuant to sections 105, 362, and 363 of the Bankruptcy Code and Rules 2002, 6004, and 9019 of the Bankruptcy Rules, the Debtors seek entry of the Order (i) authorizing and approving the Settlement Agreement, and (ii) granting related relief.

## V. BASIS FOR RELIEF

### A. The Proposed Settlement Satisfies Bankruptcy Rule 9019 and Should Be Approved.

14. Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). In addition, section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

15. Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

6

16. Under Bankruptcy Rule 9019(a), the bankruptcy court has authority, after notice and a hearing, to approve a settlement that is fair, reasonable, and in the best interest of the estate. *See In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) ("The decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."); *In re Princeton Alternative Income Fund, LP*, No. 18-14603, 2019 WL 4127148, at *2 (Bankr. D.N.J. Aug. 29, 2019) ("In essence, a court will approve a settlement when it is fair and equitable and in the best interests of the estate." (citations omitted)).

17. The Third Circuit applies a four-factor balancing test when evaluating settlements under Bankruptcy Rule 9019: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393. A settlement should be approved if it falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008). "[C]ourts should not have a 'mini-trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.R. Grace & Co.*, 475 B.R. 34, 77–78 (Bankr. D. Del. 2012).

18. Here, the Settlement Agreement is fair, reasonable, and in the best interests of the Debtors' estates. The settlement creates certainty where there previously was none and allows the Debtors to receive a material influx of immediate, incremental liquidity that would otherwise be unavailable. The Debtors need such funds to continue to administer these Chapter 11 Cases and achieve their proposed sales and marketing timeline. The Settlement Agreement therefore inures

to the substantial benefit of all stakeholders, allowing the Debtors to focus their full attention on pursuing their goal of maximizing the value of their estates in these Chapter 11 Cases.

i. *The Probability of Success in Litigation.*

19. The Settlement Agreement eliminates the risk of an adverse outcome that could arise if the Parties were to litigate their multifaceted and heavily disputed legal claims. The relationship between the Parties is governed by a series of complex contractual arrangements under the ESAs and other agreements, which give rise to numerous interdependent rights and obligations. Assessing the Parties' respective liabilities and entitlements under those agreements is further complicated by the fact that Powin experienced substantial delays in performance, which Idaho Power asserts excuse or offset its own obligations. Although the Debtors maintain confidence in the strength and validity of their legal positions and believe they would ultimately prevail if the matter were litigated, the outcome is inherently uncertain. The Settlement Agreement mitigates this uncertainty and secures a favorable and immediate resolution that preserves value for the estates and maximizes recoveries for creditors. Accordingly, this factor strongly supports approval of the Settlement Agreement.

ii. *The Likely Difficulties in Collection.*

20. The Settlement Agreement removes the risk that the Debtors may ultimately be unable to recover the amounts they assert are owed by Idaho Power under the ESAs. Absent settlement, the Debtors would be required to engage in protracted and costly litigation to enforce their claims, with no guarantee of success or timely recovery. Moreover, even if the Debtors were to obtain a favorable judgment, there is no assurance that collection from Idaho Power would be straightforward or uncontested, particularly in light of the disputed nature of the alleged offsets and Idaho Power's position that no amounts are due. Moreover, any damages Powin could obtain

8

against Idaho Power might be subject to setoff or recoupment against any claim Idaho Power could potentially assert against Powin, and only then after a potentially lengthy claims reconciliation process. By resolving this dispute now, the Settlement Agreement ensures that the Debtors can secure immediate and concrete value for the estates, without further delay, expense, or litigation risk. This factor therefore weighs in favor of approving the Settlement Agreement.

> iii. <u>**The Complexity of the Litigation Involved, the Expense, Inconvenience and Delay Necessarily Attending It.**</u>

21. The disputes resolved by the Settlement Agreement involve complex and interrelated legal and factual issues, including contested claims of material breach, disputed entitlement to incentive payments, and competing allegations of liability under the ESAs. These matters would not be easily or efficiently resolved through litigation, particularly given the technical nature of the contracts, the fact-intensive nature of the performance-related claims, and the parties' sharply divergent interpretations of their respective rights and obligations. Both Powin and Idaho Power are large, sophisticated commercial entities represented by experienced and capable counsel, and the litigation between them would almost certainly be vigorously contested at every stage. As a result, any litigation would likely be protracted, expensive, and procedurally complex. In addition, pursuing such litigation either would divert significant resources and attention from the Debtors' efforts to administer these Chapter 11 Cases and pursue a successful restructuring or would occur only during a claims reconciliation process that would likely take place after the Debtors' restructuring concludes. By contrast, the Settlement Agreement provides a prompt, negotiated resolution that avoids the burdens of litigation and enables the Debtors to focus on maximizing estate value for the benefit of all stakeholders. Accordingly, this factor strongly favors approval of the Settlement Agreement.

### iv. *The Paramount Interest of the Creditors.*

22. Finally, the paramount interests of creditors strongly support approval of the Settlement Agreement. One of the central objectives of these Chapter 11 Cases is to preserve and maximize value for the benefit of creditors and other stakeholders. The Settlement Agreement directly advances that goal by providing the Debtors with a meaningful and immediate infusion of funds, which will enhance the Debtors' liquidity position at a critical juncture in these proceedings. This increased liquidity will enable the Debtors to continue operating in the ordinary course, fund the administration of the estates, and pursue a value-maximizing resolution of these Chapter 11 Cases. Moreover, the certainty and speed of recovery under the Settlement Agreement is far superior to the uncertain, delayed, and potentially diminished (if any) recovery that might result from a protracted litigation process. By resolving a major disputed claim on favorable terms, the Settlement Agreement reduces administrative costs, minimizes litigation risk, and preserves estate resources for the ultimate benefit of creditors. For these reasons, the best interests of creditors weigh heavily in favor of granting this Motion and approving the Settlement Agreement.

23. As the foregoing analysis of the *Martin* Factors demonstrates, the Settlement Agreement falls well above the lowest point in the range of reasonableness and for these reasons, the Debtors believe the Settlement Agreement is in the best interests of the Debtors and their estates. Therefore, the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019(a).

### B. Entry Into and Performance Under the Settlement Agreement is a Sound Exercise of the Debtors' Business Judgment

24. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). If a settlement is outside of the ordinary

10

course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350–51 (3d Cir. 1999); *see also In re Martin*, 91 F.3d 389, 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). Courts normally defer to the debtor's business judgment so long as there is a legitimate business justification. *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (holding that the trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)). A court must approve a debtor's exercise of business judgment "unless it is the product of bad faith, whim, or caprice." *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 182 (Bankr. E.D. Pa. 2010)

25. The Debtors respectfully submit that there is substantial business justification for the Debtors' entry into the Settlement Agreement. As detailed above, the Settlement Agreement represents a fair and reasonable approach to resolving Powin's potential claims against Idaho Power, obviating the need for distracting, expensive, and time-consuming litigation and instead permitting the Debtors to focus on pursuing a value-maximizing transaction that will inure to the benefit of the Debtors' estates and their stakeholders.

26. In addition, the Debtors believe the value they are receiving under the Settlement Agreement is both fair and reasonable in light of the consideration being provided to Idaho Power. Notably, the Settlement Agreement will bring in a substantial amount of funds into the Debtors' estates at a critical juncture.

27. As described above, the Settlement Agreement results from arm's length

negotiations with Idaho Power. The Debtors believe the terms set forth in the Settlement Agreement are the most favorable terms the Debtors could obtain under the circumstances. The Settlement Agreement provides material guaranteed value to the estates, inuring to the substantial benefit of all parties in interest. Accordingly, the Debtors, in their business judgment, have determined that entering into the Settlement Agreement is necessary to—and in fact does—maximize the value of their estates for the benefit of all of their economic stakeholders.

28. For these reasons, the Debtors believe that entry into the Settlement Agreement should be approved.

## VI. WAIVER OF STAY

29. To the extent the requested relief constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h) regarding the use, sale, or lease of property, to the extent applicable. The Debtors intend to consummate the Settlement Agreement as soon as practicable following entry of the Order. Accordingly, cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

## VII. WAIVER OF MEMORANDUM OF LAW

30. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## VIII. RESERVATION OF RIGHTS

31. Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted in connection with this Motion (including any payment made in accordance with any such order), is intended as or shall

12

be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a promise or requirement to pay any particular claim; (c) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (d) a request or authorization to assume or reject any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (e) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) except as specified herein or in the order granting the relief requested in this Motion, a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## IX.    NO PRIOR REQUEST

32. No prior request for the relief sought in this motion has been made to this or any other court.

## X.    NOTICE

33. Notice of this Motion shall be given to the following parties: (a) the U.S. Trustee; (b) counsel to Idaho Power; (c) counsel for the Debtors' Prepetition Secured Parties; (d) the Debtors' fifty largest unsecured creditors on a consolidated basis; (e) counsel to the Official Committee of Unsecured Creditors; (f) counsel for the DIP Lender; and (g) all parties entitled to service under Bankruptcy Rule 2002 or who have requested notice in these Chapter 11 Cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## XI.    CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Order as set forth herein; and (ii) grant the Debtors such other and further relief is just and proper under the circumstances.

[*Signature Page Follows*]

14

Dated: July 11, 2025

**DENTONS US LLP**

*/s/ Lauren Macksoud*
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
        sarah.schrag@dentons.com

-and-

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com

*Proposed Counsel for Debtors and Debtors in Possession*

15

# DECLARATION OF GERARD UZZI IN SUPPORT OF
# DEBTORS' MOTION TO APPROVE SETTLEMENT AGREEMENT

I, Gerard Uzzi, hereby state and declare as follows:

1. I am the Chief Restructuring Officer (the "CRO") of Powin, LLC ("Powin"). I was appointed as CRO of Powin and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors") effective on June 9, 2025.

2. I am also a Managing Partner and Founder of CBMN Advisors LLC d/b/a Uzzi & Lall ("Uzzi & Lall"). I have extensive experience advising companies, boards of directors, senior management, creditors, equity holders, and investors in stressed and distressed situations, including chapter 11, out-of-court work outs, and rescue financings across industries and jurisdictions. I also serve in a number of fiduciary capacities, including presently as the Chairman of the Celsius Litigation Oversight Committee.

3. Prior to co-founding Uzzi & Lall, I was a senior restructuring partner at Milbank LLP and White & Case LLP for over 18 years in the aggregate. During that time, I was personally involved in senior roles in some of the nation's largest and most complex chapter 11 cases, including Lehman Brothers, Washington Mutual, American Airlines, Rescap, Charter Communications, Mirant, Adelphia Communications, Purdue Pharma, and ZAIS. I have been recognized for my work in Chambers, Euromoney's IFLR, The Legal 500, and Expert Guides as one of the World's Leading Insolvency and Restructuring Professionals.

4. On June 9, 2025 (the "Petition Date"),[1] Powin and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the

---

[1] Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the majority of Debtors were filed shortly thereafter on June 10, 2025, *except that*, three additional Debtor-affiliates (Powin Energy Storage 2, Inc., Powin Energy Ontario Storage II LP, and Powin Canada B.C. Ltd.) filed for petitions on June 22, 2025.

1

United States Code, §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). I am knowledgeable and familiar with the Debtors' day-to-day operations, business and financial affairs, and the circumstances leading to the commencement of these chapter 11 cases (the "Chapter 11 Cases").

5. I submit this declaration (the "Declaration") in support of *Motion of the Debtors for Entry of an Order (I) Authorizing and Approving Settlement Agreement; and (II) Granting Related Relief* (the "Motion").[2]

6. Except as otherwise indicated herein, this Declaration is based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors or the Debtors' advisors, my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and this industry. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

7. Powin is party to two applicable energy supply agreements with Idaho Power, each executed prior to the Petition Date: (i) that certain Energy Supply Agreement for the Black Mesa Project dated February 28, 2022 (the "Black Mesa ESA") and (ii) that certain Energy Supply Agreement for the Hemingway Expansion Project dated June 8, 2023 (the "Hemingway Expansion ESA" and together with the Black Mesa ESA, the "ESAs").

8. As set forth in the Settlement Agreement, the Debtors allege that, under each of the ESAs, Idaho Power has failed to make required incentive payments to Powin. Idaho Power contends that, among other things, Powin failed to meet the deadlines in the ESAs required to earn such incentives which, and taken together with amounts that Idaho Power has already paid Powin, results in Idaho Power having overpaid Powin in cash under the ESAs by approximately

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

$270,000.00.

9. The Debtors and Idaho Power therefore dispute the amount of damages incurred by Powin under the ESAs, with Idaho Power asserting (absent a settlement) that no payment is due to Powin.

10. On June 17, 2025, the Debtors filed an *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88], that among other things, seeks to reject the ESAs.

11. The Parties have engaged in extensive discussions in an effort to resolve the above-described dispute. Those discussions ultimately culminated in the execution of the Settlement Agreement, which, if approved, would result in Idaho Power paying Powin an amount equal to $1,000,000.00 in full and final satisfaction of all remaining obligations, liabilities, claims, or other payment rights under the Black Mesa ESA and the Hemingway Expansion ESA that are or could potentially be owed by Idaho Power to Powin.

12. In my opinion, the Settlement Agreement is fair, reasonable, and on the best terms the Debtors could obtain under the circumstances. The settlement creates certainty where there previously was none and allows the Debtors to receive an influx of material immediate, incremental liquidity would otherwise be unavailable. In addition to the value of the settlement being reasonable in light of the risks of litigation, collection (including potential setoff or recoupment), cost, and delay, the Debtors need such incremental liquidity to continue to administer these Chapter 11 Cases and achieve their proposed sales and marketing timeline. The Settlement Agreement therefore inures to the substantial benefit of all stakeholders, allowing the Debtors to focus their full attention on pursuing their goal of maximizing the value of their estates in these Chapter 11 Cases. Moreover, I believe that the release of Powin's claims against Idaho Power

under the ESAs is appropriate because the incentive payment dispute is being resolved for reasonable value (for the reasons described above) and because, to the best of my knowledge based on my discussions with Powin's management team and business personnel, Powin holds no other claims against Idaho Power. Based on all of the foregoing, it is my opinion that approval of the Settlement Agreement is in the best interests of the Debtors' estates.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 11th day of July 2025, at Sea Bright, New Jersey in Monmouth County.

/s/ Gerard Uzzi
Gerard Uzzi

4