UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esquire
Lauren Bielskie, Esquire
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
Email: jeffrey.m.sponder@usdoj.gov
       lauren.bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Powin, LLC, *et al.*,[1] | : | Case No. 25-16137 (MBK) |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | Hearing Date: July 15, 2025 at 11:30 a.m. |
| | : | |

**UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF THE DEBTORS' FOR ENTRY OF AN ORDER (I) DESIGNATING A STALKING HORSE BIDDER AND APPROVING STALKING HORSE BIDDER PROTECTIONS (II) APPROVING BIDDING PROCEDURES BY WHICH INTERESTED PARTIES MAY BID AND AN AUCTION SALE FORMAT IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (III) APPROVING FORM OF ASSET PURCHASE AGREEMENT, (IV) APPROVING FORM OF NOTICE TO BE PROVIDED TO INTERESTED PARTIES, (V) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS AND NOTICE PROCEDURES THERETO, (VI) SCHEDULING A COURT HEARING TO CONSIDER APPROVAL OF THE SALE TO THE HIGHEST AND BEST BIDDER, AND (VII) AUTHORIZING THE SALE OF DEBTORS' PROPERTY FREE AND CLEAR OF ALL CAUSES OF ACTION <u>AND CLAIMS</u>**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, files this objection (the "Objection") to the *Motion of the Debtors' for Entry of an Order (i) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections, (ii) Approving Bidding Procedures by Which Interested Parties May Bid and an Auction Sale Format in Connection With the Sale of Substantially All of the Debtors' Assets, (iii) Approving Form of Asset Purchase Agreement, (iv) Approving Form of Notice Provided to Interested Parties, (v) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (vi) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (vii) Authorizing the Sale of Debtors' Property Free and Clear of All Causes of Action and Claims* (the "Bidding Procedures Motion") (Dkt. 228), and respectfully states:

## I.    JURISDICTION, VENUE AND STANDING

1. This Court has jurisdiction to hear and determine this Objection.

2. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of New Jersey issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Debtor's request for approval of the relief requested in the Motion and the matters raised in this Objection.

3. The U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district, pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect

the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties to protect the public interest . . . that the Trustee has standing to attempt to prevent circumvention of that responsibility."); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

4. Under Section 307 of title 11 of the United States Code (the "Bankruptcy Code" or "Code"), the U.S. Trustee has standing to be heard on the Debtors' request for approval of the relief in the Motion.

## II. FACTUAL BACKGROUND

**General Case Background**

5. On June 10, 2025 (the "Petition Date"), Powin Project LLC, Powin, LLC, PEOS Holdings, LLC, Powin China Holdings 1, LLC, Powin China Holdings 2, LLC, Charger Holdings, LLC, Powin Energy Ontario Storage, LLC, Powin Energy Operating Holdings, LLC, and Powin Energy Operating, LLC (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). *See,* for example, Case No. 25-16137, at Dkt. 1.

6. The Debtors continue to operate their business(es) as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

7. On June 13, 2025, the Court entered an Order Granting Motion for Joint Administration with the lead case being Powin, LLC. *See* Dkt. 58.

3

8. According to the Declaration of Gerard Uzzi in Support of Emergency First Day Motions of the Debtors, "Debtor Powin, a Delaware limited liability corporation, and its affiliates are collectively an energy storage integrator based in Portland, Oregon, and with offices around the world in Vietnam, China, Canada, Australia, and Spain. As one of the leading global energy platform providers, Powin and its affiliates are at the forefront of the clean energy revolution. Powin focuses on advancing the next frontier of energy by ensuring access to clean, reliable, resilient, and affordable power through cutting-edge technology. The Debtors' business model targets innovations in energy storage, which are essential to the planet's transition to a sustainable, carbon-free world." *See* Dkt. 13 at pages 3 and 4 of 30.

**The Bidding Procedures Motion and Requested Bid Protections**

9. On July 1, 2025, the Debtors filed the Bidding Procedures Motion. *See* Dkt. 228.

10. Through the Bidding Procedures Motion, the Debtors seek to sell substantially all of their assets to the Stalking Horse Bidder, Flexgen Power Systems, LLC ("Flexgen") for consideration that would include $36,000,000.00 comprised of a credit bid and cash, the assumption of the Assumed Liabilities and the Retention Fund, which is a cash payment of $2,000,000.00 to reimburse the Debtors for employee costs associated with the continuation of the Business and support of its customers through the Closing. *See* Dkt. 271-1 at pages 16 and 21 of 68

11. Other terms require that non-binding indications of interest for some or all of the Debtors' Assets must be received on or before July 16, 2025 (one day after the hearing on the Bidding Procedures Motion), that bids for the Debtors' assets would be required by July 28, 2025, and an auction would be scheduled for July 30, 2025. *See* Dkt. 228-1 at page 10 of 47 and Dkt. 271-2 at page 10 of 47. The proposed order provides that the Auction and Sale Hearing Notice

4

will be served upon the Notice Parties as soon as reasonably practicable. *See* Dkt. 228-1 at page 13 of 47 and Dkt. 271-2 at page 14 of 47. As a result, if the Bidding Procedures Order is entered on July 15, 2025, there is no deadline to serve the Auction and Sale Hearing Notice and Notice Parties will have a minimal amount of time to provide an expression of interest to bid (July 16, 2025) or to provide a Bid by the Bid Deadline (July 28, 2025). In addition, the Debtors propose to file a Notice of Winning Bidder as soon as reasonably practicable after the Auction. *See* Dkt. 228-1 at page 12 of 47 and Dkt. 271-2 at page 12 of 47.

12. The Debtors also seek approval of the Bid Protections, without any further order of the Court, that would award a break-up fee of $1,100,000.00 and an expense reimbursement not to exceed $500,000. *See id.* at page 9 of 47. As support for the Bid Protections, the Debtors provide that "approval of payment of the Break-Up Fee to the Stalking Horse Bidder is in the best interests of the Debtors' estates and their creditors, as the Stalking Horse Bidder will establish a floor for further bidding that may increase the consideration given in exchange for the Assets for the benefit of the Debtors' estates." *See* Dkt. 228 at page 24 of 39. However, as set forth by the Debtors, interested parties "are already aware of the ongoing sale and marketing process due to the Debtors' prepetition efforts." *See id.* at page 23 of 39. As interested parties are aware of the sale and marketing process, it does not appear that there is a need to straddle the estate with a break-up fee and expense reimbursement that requires the next bid to be at least more than approximately $1,600,000.00.

13. On July 7, 2025, the Debtors filed a Notice of Filing of Stalking Horse APA, Amended Order Approving Bidding Procedures Oder, and Amended Bidding Procedures. *See* Dkt. 271.

5

### III.  LAW ANALYSIS AND ARGUMENT

*A.  The Stalking Horse Bid Protections Should Not Be Approved*

14. The expense reimbursement requested in the Bidding Procedures Motion, including any due diligence, should be denied because it appears that most of the due diligence performed by Flexgen was performed pre-petition in connection with its negotiations with the Debtors concerning the purchase of the Assets. In addition, the Break-Up Fee should be denied because interested parties are already aware of the sale of the Assets through the prepetition marketing and sale process.

15. Bid protections must be sought pursuant to, and analyzed under, Section 503(b) of the Bankruptcy Code. *See Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]") (citing *Calpine Corp. v. O'Brien Envt'l Energy* (*In re O'Brien Envt'l Energy, Inc.*), 181 F.3d 527 (3d Cir. 1999)). Section 105(a) is not a basis to award an administrative expense. *See In re Woman First Healthcare, Inc.*, 332 B.R. 115, 120-21 (Bankr. D. Del. 2005).

16. The analysis of bid protections under Section 503(b) "must be made in reference to general administrative expense jurisprudence. In other words, the allowability of bid protections, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535; *see In re Energy Future Holdings Corp. ("EFH I")*, 904 F.3d 298, 313 (3d Cir. 2018) ("[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]").

17. The benefit to the estate of an administrative expense "must be *actual*, not hypothetical." *In re Energy Future Holdings Corp. ("EFH II")*, No. 19-3492, 2021 WL 957301

at *10 (3d Cir. Mar. 15, 2021) (emphasis in original) (citing *In re Continental Airlines, Inc.*, 146 B.R. 520, 526 (Bankr. D. Del. 1992)).

18. A break-up fee may provide a benefit to the estate where (1) assurance of the break-up fee promotes more competitive bidding, such as by inducing a bid that otherwise wouldn't have been made, (2) availability of the break-up fee induces a buyer to perform diligence and set a floor price. *See EFH I*, 904 F.3d at 313-14 (citing *O'Brien*, 181 F.3d at 537).

19. Even if a break-up fee would benefit the estate, the Court is not required to approve it. *See EFH I*, 904 F.3d at 313-14 ("We have never held that bankruptcy courts must allow fees whenever they find that [a break-up fee confers a benefit on the estate.]"). The Court must determine, based on the totality of the circumstances of the case, "whether the proposed fee's potential benefits to the estate outweigh any potential harms, such that the fee is actually necessary to preserve the value of the estate." *Id.* (citing *O'Brien*, 181 F.3d at 535) (quotation marks omitted).

20. The party requesting bid protections has the burden of showing that the fee is actually necessary to preserve the value of the estate. *See O'Brien*, 181 F.3d at 535.

21. In *EFH II*, the United States Court of Appeals for the Third Circuit considered, in the context of a motion to dismiss based upon the sufficiency of the pleading, an administrative expense application submitted by an unsuccessful bidder. Initially, the unsuccessful bidder argued that the lower courts erred in measuring whether its bid had conferred a benefit using hindsight (as opposed to measuring the benefit at the time the bid was submitted). *See EFH II* at *12. The Third Circuit rejected that argument and concluded that, consistent with the well-established Bankruptcy Code policy of limiting administrative expenses, it was "entirely appropriate to consider" the asserted benefit "through the rearview mirror." *Id.*

7

22. The unsuccessful bidder in *EFH II* also asserted two potential benefits to the process: that it served as a stalking horse bidder, and that its unsuccessful efforts provided a "roadmap" for other viable bids that were later submitted, including the successful bid. *Id*. The Third Circuit rejected the argument that the unsuccessful bidder had stated a plausible argument for allowance of an administrative expense on a theory that its bid served as a catalyst for the submission of other bids, as it was the only bid at the time it was submitted. *Id*. While the bid did not technically establish a "floor" because the estates ultimately accepted a substantially lower offer after the unsuccessful bid fell through, the Third Circuit found that the argument that the bid had provided a "roadmap" for other bids post-termination was a plausible argument in favor of benefit to the estate. *Id.* at *12-13. The Third Circuit remanded the matter in *EFH II* so that a sufficient record could be developed to enable the bankruptcy court to determine, in hindsight, the extent to which the unsuccessful bidder's participation had actually benefitted the estate more than it had harmed the estate. *Id.* at *15.

23. To receive bid protections as an administrative claim under Section 503(b) of the Bankruptcy Code, it must be shown that such bid protections conferred a benefit to the estate, which could only be discerned after the sale to another bidder at a price more beneficial to the estate.

24. Consistent with the Third Circuit's latest guidance, the Court should not consider bid protections until there is a sufficient evidentiary record on which to make the legal determinations outlined in *O'Brien* and subsequent Circuit cases.

25. In sum, the Debtors' request for authority to award the Bid Protections should be denied as it undermines this Court's control of administrative expenses. At the very least, the

requested $500,000.00 expense reimbursement should only be granted after the auction occurs and upon proof of such services performed.

### B. The Deadlines Should be Extended.

26. The Bidding Procedures deadlines in the proposed order to be submitted to the Court include the following: (i) July 16, 2025 at 5:00 p.m. (EST) is the deadline to submit non-binding indications of interest; (ii) July 18, 2025 is the assumption and assignment service deadline; (iii) July 28, 2025 is the deadline for objections to cure amounts and assignment to stalking horse bidder and the bid deadline for qualified bids; (iv) July 29, 2025 at 4:00 p.m. (EST) is the baseline bid deadline; (v) July 30, 2025 is the auction; (vi) as soon as practicable after the auction is the filing of the notice of winning bidder and back-up bidder; (vii) August 4, 2025 at 12:00 p.m. (EST) is the Sale Order Deadline and the deadline to file objections to the sale; (viii) August 5, 2025 is the deadline for objection to assignment to winning bidder (other than stalking horse bidder); and (ix) August 6, 2025 at 9:30 a.m. (EST) is the sale hearing. *See* Dkt. 228-1 at pages 10-12 of 47 and Docket 271-2 at pages 10-12 of 47.

27. Based on the above deadlines, prospective bidders will have: (i) one (1) day after the hearing on the Bidding Procedures Motion to submit a non-binding indication of interest; (ii) thirteen (13) days after the hearing on the Bidding Procedures Motion to submit a bid; and (iii) twenty-one (21) days until the sale hearing. These deadlines are condensed and should be extended by at least a week to allow more time for prospective bidders to conduct due diligence and create a bid to be submitted.

28. The proposed order provides that the Auction and Sale Hearing Notice will be served upon the Notice Parties as soon as reasonably practicable. *See* Dkt. 228-1 at page 13 of 47 and Dkt. 271-2 at page 14 of 47. As a result, if the Bidding Procedures Order is entered on July

9

15, 2025, there is no deadline to serve the Auction and Sale Hearing Notice and Notice Parties will have a minimal amount of time to provide an expression of interest to bid (July 16, 2025) or to provide a Bid by the Bid Deadline (July 28, 2025). The Auction and Sale Hearing Notice should either be served upon the Notice Parties immediately or within one (1) business day. In addition, the Debtors propose to file a Notice of Winning Bidder as soon as reasonably practicable after the Auction. *See* Dkt. 228-1 at page 12 of 47 and Dkt. 271-2 at page 12 of 47. As objections are due on or before 12:00 p.m. (EST) on August 4, 2025, the Debtors should be required to immediately file a Notice of Winning Bidder or within one (1) business day.

### C.     *The Overbids Should be Revised.*

29.    Pursuant to the Bidding Procedures, "each Overbid shall provide net value to the estates in an amount equal to or greater than $720,000 more than the Starting Bid, and each subsequent Overbid must provide net value to the estates in an amount equal to or greater than $720,000 more than the previous Overbid (each, a "Minimum Overbid Increment"). *See* Dkt. 228-1 at page 33 of 47. In other words, the first Overbid will have to be greater than the Break-Up Fee ($1,100,000.00), expense reimbursement ($500,000.00) and $720,000.00. As such, the first Overbid must be at least $2,320,000.00 and then each subsequent bid in increments of $720,000.

30.    There is no rhyme or reason provided by the Debtors as to why the Overbid and subsequent Overbids have to be $720,000.00. Perhaps the amount of the Overbid and subsequent Overbids should be reduced by half to $360,000.00, which may provide for more bidding at the Auction.

**CONCLUSION**

WHEREFORE, the United States Trustee respectfully submits that the Court deny the Bidding Procedures Motion and grant such other relief as the Court deems just and necessary.

Respectfully Submitted,

**ANDREW R. VARA,
UNITED STATES TRUSTEE
REGIONS 3 & 9**

By:  */s/ Jeffrey M. Sponder*
Jeffrey M. Sponder
Trial Attorney

Dated: July 14, 2025