|  |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** John W. Weiss Leah M. Eisenberg David E. Sklar **PASHMAN STEIN WALDER HAYDEN, P.C.** 21 Main Street, Suite 200 Hackensack, New Jersey 07601 Telephone: (201) 270-5477 Email: jweiss@pashmanstein.com leisenberg@pashmanstein.com dsklar@pashmanstein.com -and- Joaquin M. C de Baca (admitted *pro hac vice*) Richard A. Stieglitz (admitted *pro hac vice*) Youmi Kim (admitted *pro hac vice*) **MAYER BROWN LLP** 1221 Avenue of the Americas New York, New York 10020-1001 Telephone: (212) 506-2500 Email: jcdebaca@mayerbrown.com rstieglitz@mayerbrown.com ykim@mayerbrown.com *Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Development Company, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company* | |
| In Re: POWIN, LLC, *et al.*,[1] Debtors. | Chapter 11 Case Number: 25-16137 (MBK) Jointly Administered |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

# REPLY IN SUPPORT OF LICENSEES' MOTION TO COMPEL AND OBJECTION THERETO

Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC (collectively, the "Leeward Licensees"), Longroad Development Company, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC (collectively, the "Longroad Licensees"), and DTE Electric Company ("DTE" and, together with the Leeward Licensees and the Longroad Licensees, the "Licensees"), by and through their undersigned counsel, hereby submit this reply ("Reply") in support of the *Emergency Motion of the Licensees for Entry of an Order (I) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief* [ECF No. 117] (the "Motion to Compel")[2] and in response to the *Debtors' Omnibus (I) Objection to (A) Emergency Motion of Licensees for Entry of an Order (1) Compelling the Debtors to Comply With Section 365(N)(4) Of The Bankruptcy Code, (2) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code and (B) Related Joinders and (II) Reply in Support of Omnibus Motion of the Debtors for Entry of an Order (A) Authorizing the Rejection of Legacy Customer Contracts and (B) Granting Related Relief* [ECF No. 357] (the "Omnibus Objection"). In further support of the Motion to Compel and in response to the Omnibus Objection, the Licensees respectfully submit as follows:[3]

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion to Compel and the Objection to Rejection Motion (as defined below), as applicable.

[3] To support the factual assertions in this Reply, the Licensees rely on the Declaration of Theodore D. Matula in support of the Motion to Compel [ECF No. 117-2]; the Declaration of Vanessa Kwong in support of the Motion to Compel [ECF No. 117-3]; and the Declaration of Matthew Misiak in support of the Motion to Compel. [ECF No. 117-4].

2

## **PRELIMINARY STATEMENT**

1. Since the filing of the Motion to Compel, the Licensees have been engaged in discussions with the Debtors to attempt to resolve the issues raised in the Motion to Compel and the Rejection Motion (as defined below), including on potential terms for services. These discussions remain ongoing, and the parties continue to work toward a consensual resolution. However, the Licensees file this Reply to comply with the agreed briefing schedule between the Debtors and the Licensees, while understanding that the hearing on the Motion to Compel has been adjourned and that the parties are continuing discussions in an attempt to resolve their disputes.

2. The Debtors should either perform under the Licenses, or they must deliver all of the intellectual property to which the Licensees are entitled, inclusive of passwords and other access, as required under section 365(n) of the Bankruptcy Code. The Debtors have not yet provided to certain of the Licensees all the requisite intellectual property they are entitled to, despite the release of escrowed intellectual property, and other Licensees have not received *any* intellectual property. The Debtors' desire to reject the Contracts only emphasizes and accelerates the necessity of the Debtors' compliance with section 356(n)(4), because the Licensees do not have all the necessary materials they need, and are entitled to, to stand up independent versions of the software if the Debtors successfully reject the Contracts, and the Licensees abruptly lose access to critical cloud-based tools, such as Kobold, and services provided by the ROC.

3. Even if the Debtors successfully reject the Contracts, under section 365(n)(1) of the Bankruptcy Code, the Licensees are statutorily entitled to the continued use of the intellectual property granted to them under the Licenses, both on a pre- and post-rejection basis. The Debtors should not be allowed to continue to withhold such intellectual property, even if they reject the Contracts.

**REPLY**

I. **THE DEBTORS HAVE NOT PROVIDED THE INTELLECTUAL PROPERTY TO THE LICENSEES IN CONTRAVENTION OF SECTION 365(N).**

A. **The Debtors Have Not Complied with Section 365(n) of the Bankruptcy Code Because They Have Not Provided the Licensees with All the Intellectual Property They are Entitled to Under the Licenses.**

4. The Debtors have not provided the Licensees with all the intellectual property to which they are entitled under the Licenses or that is necessary for the Licensees to operate the Projects. While the Debtors authorized the Escrow Agent to release the intellectual property held in escrow to those Licensees that were made a beneficiary to the IP Escrow Agreement, the deposit materials do not appear to contain everything the Licensees are entitled to under the Licenses or the Contracts, a point that was briefed multiple times by the Licensees. *See Objection of Licensees to Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [ECF No. 323] (the "Objection to Rejection Motion")[4] ¶ 13; Motion to Compel ¶ 18. Indeed, not all of the Licensees are beneficiaries to the IP Escrow Agreement (including in at least one case by Powin's failure to satisfy its obligations under the Contracts) and those Licensees have not received *any* intellectual property, despite their repeated requests for it.

5. In light of the above, the Debtors have not yet complied with section 365(n) of the Bankruptcy Code, which mandates that they, to the extent required in the Contracts, either "perform" the Contracts or provide the Licensees with the intellectual property to which they are entitled under the Licenses. 11 U.S.C. § 365(n)(4)(A). The Debtors have done neither, as they

---

[4] As set forth in the Objection to the Rejection Motion, the Licensees seek relief with respect their rights to intellectual property and related cloud-based services insofar as they may be affected by rejection. The Licensees have not objected more generally to the rejection of legacy contracts, but reserve all rights in connection with the ongoing sale process and otherwise.

have not delivered all licensed intellectual property requested by the Licensees needed for the operation and safety of their Projects.

6. The *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [ECF No. 88] the ("Rejection Motion") does not render the Motion to Compel moot, as the Debtors contend; rather, it exacerbates the harms to the Licensees and highlights the necessity for immediate compliance with section 365(n)(4) of the Bankruptcy Code.

7. First and foremost, the Contracts have not been rejected, so the Debtors are required to comply with section 365(n) of the Bankruptcy Code until they might be. Further, if Debtors are successful in rejecting the Contracts, the Licensees will lose access to Powin's cloud, including tools that may include Kobold, StackOS, and other critical software necessary for the safe and effective operation of the Projects. As already detailed in the Motion to Compel and the Objection to Rejection Motion, this software is integral to the ongoing operation, monitoring, and maintenance of the Projects, and their uninterrupted availability is essential to ensure operational safety and grid reliability. Accordingly, it is imperative that the Licensees have all the technology and intellectual property necessary for the Projects to "stand up" independent copies of software and other systems before the Contracts are rejected so that the Licensees can continue to operate their businesses safely and effectively, as they are entitled to do so under their Contracts.

**B. The Licenses Entitle the Licensees to Passwords and Other Access Methods.**

8. The Licenses, as set forth in the Contracts, include the "███████████████████████████████████████████████████████████████████████████████████████████████████████."[5] Motion to Compel, Ex. A (emphasis added). This right

---

[5] By their own terms the Contracts are confidential and as a result portions of this Reply quoting the Contracts have been redacted, as has Exhibit A to the Motion to Compel, pursuant to the *Motion for Entry of an Order Authorizing*

5

necessarily encompasses the supply of passwords, encryption keys, and other intellectual property, as it is required for the Licensees to fully operate, maintain, and repair the battery energy storage systems at their Projects. The Debtors' argument that the Licensees are not entitled to such passwords and access is refuted both by the terms of the IP Escrow Agreement and caselaw. Under the IP Escrow Agreement, the Debtors agreed that "███████████████████████████████████████████████████████████████████████████." IP Escrow Agreement, 3C (emphasis added). The Debtors therefore clearly contemplated that the Licensees would be entitled to passwords and access materials pursuant to their Licenses, and it does not matter that the Debtors failed to deposit the passwords into escrow.

9. The Debtors cite a single case to support their withholding of passwords, but it is inapposite. *See* Omnibus Objection ¶ 20 (citing *N. Star Media, LLC v. Winogradsky-Sobel*, 2011 WL 13220157, at *11 (C.D. Cal. May 23, 2011)). *North Star Media* merely holds that usernames and passwords cannot be considered one form of intellectual property, namely trade secrets, because they lack "independent economic value." *Id.* (holding that, if the plaintiff has not alleged the passwords are the product of any special formula it developed, the passwords are not trade secrets). In contrast, the breadth of applicable caselaw actually suggests that intellectual property licenses encompass not only the right to use the software itself, but also access to the passwords necessary to use the software. *See Erbsloeh Aluminum Sols., Inc. v. MueKo Mach., Inc.*, 2022 WL 3092253, at *7 (W.D. Mich. July 29, 2022) ("As the Court interprets the phrase 'usage rights,' the term requires [licensor] to provide to [licensee] all passwords to the software programs that run the assembly lines."); *Payroll Res. Grp. v. HealthEquity, Inc.*, 2024 WL 4194795, at *3 (N.D. Cal.

---

*Licensees to Redact and File Under Seal Confidential Information Contained in the Energy Supply Agreements and Long Term Services Agreements in Connection With Licensees' Motion to Compel* [ECF No. 118]. An unredacted copy of the Reply will be transmitted to the Court and to the Debtors.

6

Sept. 12, 2024) ("Licensed use of software presupposes access to that software.") (internal quotations omitted); *ExxonMobil Glob. Servs. Co. v. Gensym Corp. & Versata Enters., Inc.*, 54 F. Supp. 3d 707, 709 (W.D. Tex. 2014) ("[Licensor] is required to provide [licensee] with whatever access codes are necessary to allow [licensee] to use the [licensor's] Software Platform, regardless of whether [licensee] purchases maintenance services from [licensor]."). But regardless of whether passwords should be included in the definition of intellectual property, the Contracts make clear that the Licenses include use of Powin's intellectual property "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," which necessarily encompasses passwords. Motion to Compel, Ex. A.

10. Access to passwords is not only critical to enable safe operation of the Projects, but it also allows the Licensees to maintain, repair, and effectively troubleshoot and resolve any issues that may arise in connection with the Projects. *Erbsloeh*, 2022 WL at *7 ("In order to 'use' the assembly lines, the lines have to work. And, when the lines do not work, passwords are needed to access the software to correct the problems"). Thus, the Licenses necessarily include the right to all passwords that enable the Licensees to use, operate, maintain, and repair the equipment in connection with the operation of their projects. Therefore, if Powin declines to perform under the Contracts pursuant to section 365(n)(4)(A)(i), it is required under section 365(n)(4)(A)(ii) to deliver all passwords for the related intellectual property. 11 U.S.C. § 365(n)(4)(A)(i)-(ii). This point stands regardless of the Debtors' exercise of their business judgment to reject the Contracts. Unless and until the Contracts are rejected, Powin must comply with section 365(n)(4).

11. It should also be clarified that the Licensees have never requested that the Debtors transition anything to an independent party. Omnibus Objection ¶ 12(c). What the Licensees do seek is the intellectual property necessary for *the Licensees* to operate the Projects independently

7

from Powin in the event the Licensees lose access to Powin's cloud and cloud-based software. Whether the Licensees rely on third parties in connection with their efforts to stabilize operations is not at issue, and any prior references to "transition" stand for the simple proposition that more time will be needed to create, implement and "stand up" new systems if Powin does not provide the Licensees with the intellectual property it has licensed.

12. In addition to relief under section 365(n), the Licensees also ask for adequate protection under section 363(e) of the Bankruptcy Code. In the Omnibus Objection, the Debtors seemingly confuse adequate protection with post-rejection relief under section 365(n). Omnibus Objection ¶¶ 17-21. The Licensees are not asking for adequate protection in connection with rejection, but in connection with the use of intellectual property in which the Licensees have an interest via the Licenses by IP Services Co or Powin Project LLC.

## II. THE PUBLIC POLICY AND SAFETY CONCERNS ARE REAL AND NECESSITATE DELIVERY OF THE INTELLECTUAL PROPERTY.

13. The Debtors cannot dispute the safety risks resulting from their withholding of intellectual property, nor the additional dangers that will arise from the cessation of cloud-based services and the absence of ROC support following rejection, when their chief restructuring officer already testified that, "[w]ithout Powin's Stack OS™, these [battery energy storage systems] cannot operate safely." First Day Declaration ¶ 6.

14. Uninterrupted access to Powin's cloud and its cloud-based software, including, but not limited to, Kobold and CCUI, which is used to balance, manage and monitor the batteries (among other things) plays an important safety function. The Debtors do not meaningfully contest these facts; instead, they attempt to dismiss the safety concerns in their entirety (Omnibus Objection ¶¶ 26-29), despite the fact that numerous customers have raised concerns to the contrary. Moreover, the Contracts require the Debtors to maintain continuous ROC support to respond to

8

any systems issues as they arise and to respond to directives from the relevant first responders, grid authorities and ISOs. Abruptly withdrawing ROC support upon rejection of the Contracts, coupled with the fact that Powin has not delivered the materials necessary for the Licensees to fully operate their Projects safely and independently, exposes the Projects to immediate and irreparable risks to public safety, property, and grid reliability.[6]

### III. THE DEBTORS SHOULD NOT BE ALLOWED TO REJECT THE CONTRACTS NUNC PRO TUNC.

15. The Debtors' request that the Contracts be rejected *nunc pro tunc* to the time the Rejection Motion was filed is inappropriate. As detailed more fully in the Objection to Rejection Motion, retroactive application of an order rejecting contracts is the exception to the general rule that rejection is effective upon the entry of the order. *Stonebriar Mall L.P. v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133, 140 (D. Colo. 2003); *see also In re O'Neil Theatres, Inc.*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000) (only in exceptional circumstances will a court adopt a retroactive date for rejection).

16. The Debtors do not counter such argument. Instead, they appear to be arguing against a position the Licensees never took—nowhere in the Motion to Compel or any other pleadings do the Licensees argue that the Debtors "waited too long to seek to reject" the Contracts. Omnibus Objection ¶ 31. The Licensees' position, in fact, is that the Debtors should be able to further wait and have rejection effective as of the date the Court approves the Rejection Motion, and the Debtors should not be excused from compliance with section 365(n)(4) until such date.

---

[6] Contrary to the Debtors' assertions, the Licensees do not claim that the entire United States power grid will be compromised (Omnibus Objection ¶ 28), but rather that the safe operation of their specific Projects is at risk and that larger issues, such as coordination and response to ISOs and the loss of important safety measures, means that a heightened rejection standard is appropriate. Any actual evidence to the contrary (including even a statement in support) was notably missing from the Omnibus Objection.

## CONCLUSION

WHEREFORE, the Licensees respectfully request that the Court grant the Motion to Compel and grant such other relief that is appropriate and justified under the circumstances.

[*Remainder of page intentionally left blank.*]

| | |
|---|---|
| Dated: July 14, 2025 | Respectfully submitted, |
| | /s/ Leah M. Eisenberg |
| | John W. Weiss |
| | Leah M. Eisenberg |
| | David E. Sklar |
| | **PASHMAN STEIN WALDER & HAYDEN, P.C.** |
| | 21 Main Street, Suite 200 |
| | Hackensack, New Jersey 07601 |
| | Telephone: (201) 270-5477 |
| | Email: jweiss@pashmanstein.com |
| |        leisenberg@pashmanstein.com |
| |        dsklar@pashmanstein.com |
| | |
| | -and- |
| | |
| | Joaquin C de Baca (admitted *pro hac vice*) |
| | Richard A. Stieglitz (admitted *pro hac vice*) |
| | Youmi Kim (admitted *pro hac vice*) |
| | **MAYER BROWN LLP** |
| | 1221 Avenue of the Americas |
| | New York, New York 10020 |
| | Telephone: (212) 506-2500 |
| | Facsimile: (212) 262-1910 |
| | Email: JCdeBaca@mayerbrown.com |
| |        RStieglitz@mayerbrown.com |
| |        YKim@mayerbrown.com |
| | |
| | *Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Development Company, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company* |