**Order Filed on July 22, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

In re:

Powin, LLC, *et al.*,[1]

Debtors.

Chapter 11

Case No. 25-16137 (MBK) (Jointly Administered)

**ORDER: (I) AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY HURON
TRANSACTION ADVISORY LLC AS INVESTMENT BANKER TO THE DEBTORS,
EFFECTIVE AS OF THE PETITION DATE; (II) MODIFYING CERTAIN
TIMEKEEPING REQUIREMENTS; AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered (3) through (9), is **ORDERED.**

**DATED: July 22, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

(Page | 2)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order: (I) Authorizing the Debtors to Retain and Employ Huron Transaction Advisory LLC as Investment Banker and Capital Markets Advisor to the Debtors, Effective as of the Petition Date; (II) Modifying Certain Timekeeping Requirements; and (III) Granting Related Relief |

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
         sarah.schrag@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
         aglaubach@teamtogut.com
         eblander@teamtogut.com

*Proposed Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| (Page | 3) | |
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order: (I) Authorizing the Debtors to Retain and Employ Huron Transaction Advisory LLC as Investment Banker and Capital Markets Advisor to the Debtors, Effective as of the Petition Date; (II) Modifying Certain Timekeeping Requirements; and (III) Granting Related Relief |

Upon consideration of the application (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") authorizing the Debtors to retain and employ Huron Transaction Advisory LLC ("Huron") as their investment banker, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, effective as of the Petition Date, pursuant to the terms of the Engagement Letter, all as more fully described in the Application; and the Court being satisfied, based on the representations made in the Application and the Turnipseed Declaration, that Huron does not hold or represent any interest adverse to the Debtors' estates and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided pursuant to the Local Rules; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court

---

[2]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Application.

| | |
|---|---|
| (Page \| 4) | |
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order: (I) Authorizing the Debtors to Retain and Employ Huron Transaction Advisory LLC as Investment Banker and Capital Markets Advisor to the Debtors, Effective as of the Petition Date; (II) Modifying Certain Timekeeping Requirements; and (III) Granting Related Relief |

having reviewed the Application; and objections (if any) to the Application having been withdrawn, resolved or overruled on the merits; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and this Court having found that sufficient cause exists for the relief set forth herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.     The Application is **GRANTED** as set forth herein.

2.     Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors are authorized to retain and employ Huron as their investment banker in these Chapter 11 Cases, pursuant to the terms and subject to the conditions set forth in the Engagement Letter to the extent approved herein.

3.     Except to the extent set forth herein, the Engagement Letter, including, without limitation, the Fee Structure, is approved pursuant to section 328(a) of the Bankruptcy Code, and the Debtors are authorized to pay, reimburse, and indemnify Huron in accordance with the terms and conditions of, and at the times specified in, the Engagement Letter.

4.     Huron shall file applications for allowance of compensation and reimbursement of expenses pursuant to and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders and procedures of this Court; *provided* that the fees, expenses and other compensation payable to

(Page | 5)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order: (I) Authorizing the Debtors to Retain and Employ Huron Transaction Advisory LLC as Investment Banker and Capital Markets Advisor to the Debtors, Effective as of the Petition Date; (II) Modifying Certain Timekeeping Requirements; and (III) Granting Related Relief |

Huron pursuant to the Engagement Letter shall be subject to review pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except, notwithstanding any provisions to the contrary in this Order, the U.S. Trustee shall retain the right and be entitled to object to Huron's fees, expenses and other compensation based on the reasonableness standard provided for in section 330 of the Bankruptcy Code.  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Huron's fees under the standard set forth in the preceding sentence.  Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Huron's fees.

5.      Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, in light of services to be provided by Huron and the structure of Huron's compensation pursuant to the Engagement Letter, Huron and its professionals shall be granted a limited waiver of the information-keeping requirements of Bankruptcy Rule 2016(a), Local Rule 2016-1, the U.S. Trustee Guidelines, and any otherwise applicable orders or procedures of the Court in connection with the services to be rendered pursuant to the Engagement Letter, and shall instead be required only to maintain time records of its services rendered for the Debtors in half-hour increments.

| (Page | 6) | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order: (I) Authorizing the Debtors to Retain and Employ Huron Transaction Advisory LLC as Investment Banker and Capital Markets Advisor to the Debtors, Effective as of the Petition Date; (II) Modifying Certain Timekeeping Requirements; and (III) Granting Related Relief |

6.     Notwithstanding anything to the contrary in the Application or any of its attachments (including the Turnipseed Declaration and the Engagement Letter), no amounts shall be paid to Huron absent an order of this Court approving a fee application filed on notice to parties in interest in these Chapter 11 Cases under the procedures set forth in any order entered by the Court in these Chapter 11 Cases allowing for interim compensation, except that the Debtors are authorized to pay the $150,000 Monthly Fee to Huron each month when required under the Engagement Letter without a prior fee application; *provided*, however, that Huron shall file monthly fee statements and interim fee applications pursuant to the deadlines and other procedures specified for monthly fee statements and interim fee applications set forth in any order entered by the Court in these Chapter 11 Cases allowing for interim compensation, except as otherwise expressly set forth in this Order. All fees paid to Huron by the Debtors pursuant to the Engagement Letter during these Chapter 11 Cases are subject to disgorgement unless and until they are approved by the Court on a final basis, after submission of Huron's final fee application.

7.     The indemnification, contribution, and reimbursement provisions included in the Indemnification Provisions annexed to the Engagement Letter are approved, subject during the pendency of these Chapter 11 Cases to the following modifications:

a.     Huron shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter, unless the indemnification, contribution or reimbursement is approved by the Court;

b.     notwithstanding any provision of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify or provide contribution or reimbursement to Huron for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final) to have arisen from Huron's bad faith, actual

| | |
|---|---|
| (Page \| 7) | |
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order: (I) Authorizing the Debtors to Retain and Employ Huron Transaction Advisory LLC as Investment Banker and Capital Markets Advisor to the Debtors, Effective as of the Petition Date; (II) Modifying Certain Timekeeping Requirements; and (III) Granting Related Relief |

fraud, gross negligence or willful misconduct, (ii) for a contractual dispute in which the Debtors allege breach of Huron's obligations under the Engagement Letter unless this Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled without the Debtors' consent prior to a judicial determination as to Huron's gross negligence, actual fraud, willful misconduct, bad faith or self-dealing but determined by this Court, after notice and a hearing, to be a claim or expense for which Huron should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order;

c.    if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Huron believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Huron must file an application before this Court and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Huron for indemnification, contribution, or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify or make contributions or reimbursements to Huron. All parties in interest shall retain the right to object to any demand by Huron for indemnification, contribution or reimbursement in accordance with the terms of this Order; and

d.    any limitation of liability pursuant to the terms and conditions set forth in the Application, the Engagement Letter, or any ancillary documents thereto shall not apply as to any losses, claims, damages, or liabilities to the extent resulting from conduct for which Huron would not be entitled to indemnification under the provisions of this Order. Notwithstanding any provision in the Engagement Letter or any ancillary documents thereto to the contrary, the contribution obligations of Huron shall not be limited to the aggregate amount of fees actually received by Huron pursuant to the Engagement Letter.

8.    Notwithstanding anything in the Application, the Turnipseed Declaration or the Engagement Letter to the contrary, to the extent Huron retains the services of independent contractors or subcontractors (collectively, the "Contractors") in these Chapter 11 Cases to

| | |
|---|---|
| (Page \| 8) | |
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order: (I) Authorizing the Debtors to Retain and Employ Huron Transaction Advisory LLC as Investment Banker and Capital Markets Advisor to the Debtors, Effective as of the Petition Date; (II) Modifying Certain Timekeeping Requirements; and (III) Granting Related Relief |

conduct certain of its investment banking services under the Engagement Letter in its stead and Huron seeks to pass through to the Debtors, and requests to be reimbursed for, the fees and/or costs of the Contractors, Huron shall (a) pass through the fees of such Contractors to the Debtors at the same rate that Huron pays the Contractors; (b) seek reimbursement for actual costs of the Contractors only; (c) ensure that the Contractors perform the conflicts check required by Bankruptcy Rule 2014 and file with the Court such disclosures as required by Bankruptcy Rule 2014; and (d) attach any such Contractor invoices to its monthly fee statements, interim fee applications and/or final fee applications filed in these Chapter 11 Cases.

9.     In the event the Debtors seek to have any of Huron's affiliates or employees of foreign affiliates or subsidiaries perform services for the Debtors, the Debtors shall seek the separate retention of any such affiliates, foreign affiliates, or subsidiaries.

10.     The Debtors shall use their best efforts to avoid any duplication of services provided by Huron and any of the Debtors' other retained professionals in these Chapter 11 Cases, and, in connection with the services to be rendered pursuant to the Engagement Letter, Huron shall endeavor to coordinate and work together with such of the Debtors' other retained professionals to minimize or avoid duplication of services.

11.     None of the fees payable to Huron under the Engagement Letter shall constitute a "bonus" or fee enhancement under applicable law.

| (Page | 9) | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order: (I) Authorizing the Debtors to Retain and Employ Huron Transaction Advisory LLC as Investment Banker and Capital Markets Advisor to the Debtors, Effective as of the Petition Date; (II) Modifying Certain Timekeeping Requirements; and (III) Granting Related Relief |

12.     To the extent that there may be any inconsistency between the terms of the Engagement Letter, the Application, the Turnipseed Declaration, and this Order, the terms of this Order shall govern.

13.     The Debtors and Huron are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

14.     Notice of this Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

16.     Notwithstanding anything to the contrary in the Application, the Turnipseed Declaration or the Engagement Letter, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Engagement Letter (to the extent arising during the pendency of these Chapter 11 Cases) and this Order.

## EXHIBIT 1

Engagement Letter

# HURON TRANSACTION ADVISORY LLC
Member FINRA/SIPC

<u>CONFIDENTIAL</u>

May 18, 2025
Mr. Gerard Uzzi
Chief Restructuring Officer
Powin, LLC
20550 SW 115th Ave
Tualatin, OR 97062

  This agreement confirms that Powin, LLC and its direct and indirect subsidiaries (collectively, "<u>Powin</u>" or the "<u>Company</u>") have engaged Huron Transaction Advisory LLC ("<u>Huron</u>") to act as the Company's capital markets advisor and investment banker in connection with the Company's proposed Restructuring, Sale Transaction or Capital Transaction (each as defined below).

"<u>Restructuring</u>" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or any material portion of the liabilities (including but not limited to trade claims, litigation liabilities, and any other known or unknown liabilities) of the Company (or its direct or indirect subsidiaries), however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "<u>Plan</u>") confirmed in connection with a case (a "<u>Bankruptcy Case</u>") commenced by or against the Company or any of its subsidiaries or affiliates under the United States Code (the "<u>Bankruptcy Code</u>"), an exchange offer or consent solicitation, a rescheduling of maturities, a change in interest rates or payment/repayment schedules, a settlement or forgiveness of liabilities, a conversion of liabilities into equity, or other material amendments to the Company's debt instruments and/or liabilities.

"<u>Powin Sale Transaction</u>" means: (a) the sale, disposition or other transfer (in one or a series of related transactions, including credit bids) of (i) a majority of the equity securities of Powin, or (ii) all or substantially all of the assets, properties or businesses of Powin; or, (b) the merger, consolidation, spin-off, split-off, joint venture, partnership, reverse merger or other business combination transaction involving Powin.

"<u>Discrete Asset Sale Transaction</u>" the sale of, disposition or other transfer (in one or a series of transactions, including credit bids) of less than all or substantially all of any business unit of Powin, division of Powin or specified discrete assets of Powin not constituting all or substantially all of the assets of Powin.

"<u>Sale Transaction</u>" means a Powin Sale Transaction and/or a Discrete Asset Sale Transaction, as the context may require. For the avoidance of doubt, any Sale Transaction may be consummated with one Counterparty (as defined below) or more than one Counterparty.

"<u>Capital Transaction</u>" means a transaction in which the Company (or any Transaction Co (as defined below)) raises or issues any (a) secured or unsecured debt (including, without limitation, any asset-backed debt, or debtor-in-possession financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests.

A Capital Transaction may be undertaken by the Company or any such entity to be formed to carry out a Capital Transaction on behalf of the Company (including, without any limitation, any existing or newly

formed general partner, manager, joint venture, partnership, subsidiary or affiliate). The Company shall cause any entity used to effectuate a Capital Transaction (a "Transaction Co") to execute a joinder to this agreement in a form reasonably acceptable to Huron within 5 business days of identifying such entity as a Transaction Co. All references in this agreement to the "Company" shall include each Transaction Co who executes such a joinder. The obligations under this agreement of the entities comprising the Company shall be several and joint.

A "Transaction" means any of a Restructuring, Sale Transaction or a Capital Transaction, as the context requires.

1. As part of our engagement, Huron will, if appropriate and requested:

(a) assist the Company in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b) assist the Company in reviewing and analyzing any potential Capital Transaction, Sale Transaction or Restructuring;

(c) assist the Company in structuring and negotiating any Capital Transaction, Sale Transaction or Restructuring, including participating in such negotiations as requested by the Company;

(d) advise the Company on the terms of securities it offers in any potential Capital Transaction.

(e) advise the Company on its preparation of information memorandum for a potential Capital Transaction and/or Sale Transaction (each, an "Information Memo");

(f) assist the Company in contacting potential providers of a Capital Transaction ("Providers") that Huron and the Company agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements;

(g) assist the Company in contacting potential counterparties for a Sale Transaction ("Counterparties") that Huron and the Company agree are appropriate, and meet with and provide them with such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements;

(h) assist the Company in coordinating the due diligence investigation of the Company by Counterparties as appropriate and acceptable to the Company;

(i) meet with the Company to discuss any proposed Transaction and its financial implications;

(j) assist the Company in developing a strategy to effectuate any Transaction;

(k) provide such other investment banking services in connection with a Capital Transaction, Sale Transaction or Restructuring as Huron and the Company may mutually agree upon;

**HURON** TRANSACTION ADVISORY LLC
Member FINRA/SIPC

(l)     testifying in support of the Company's proposed transactions in court and depositions and other related discovery propounded in accordance with applicable law; and

(m)     to the extent requested, make additional Huron specialized resources not otherwise provided herein available through an amended engagement letter with economics and terms to be mutually agreed upon between Huron and the Company.

Please note that Huron does not provide legal, tax, accounting or actuarial advice. This agreement is not a commitment, express or implied, on the part of Huron to purchase or place the Capital Transaction or any other financing and it is acknowledged that Huron's services with respect to a Capital Transaction will be made on a reasonable best efforts basis. Huron's obligations under this agreement with respect to a Capital Transaction are subject to, among other things: (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

2.    (a) As compensation for our services hereunder, the Company agrees to pay Huron the following nonrefundable cash fees:

Monthly Fee

(i)     Beginning as of May 16, 2025, and during the term of this agreement, a fee of $150,000 per month (the "Monthly Fee"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement. Whether or not a Capital Transaction, Sale Transaction or Restructuring occurs, Huron shall earn and be paid the Monthly Fee every month during the term of this agreement. Beginning September 16, 2025, 50% of each Monthly Fee payable hereunder shall be offset, to the extent previously paid, against any Transaction Fees (as defined below) (the "Monthly Fee Credit"), provided that in no event shall the Monthly Fee Credit reduce the Transaction Fees payable hereunder to less than $0.

Capital Transaction Fee

(ii)     At the closing of a Capital Transaction with a Provider that is not an existing lender, equity holder, or affiliate of Powin or a direct or indirect subsidiary[1] (a "Third Party"), a non-refundable cash fee (the "Third Party Capital Transaction Fee") of:

(A) 3.0% of the aggregate gross amount or face value of capital Raised (as defined below) in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests (including any rights offerings), plus

(B) 2.0% of the aggregate gross amount of junior secured or unsecured debt obligations Raised in the Capital Transaction; plus

(C) 1.0% of the aggregate gross amount of senior secured debt obligations and other interests Raised in the Capital Transaction (including a debtor-in-possession financing (a "DIP Financing")).

(D) The minimum Third Party Capital Transaction Fee paid at the first closing of a Capital Transaction with a Third Party shall be equal to $950,000 (without offsetting monthly fees earned) and shall only be payable once, and, in the event of multiple Capital Transactions with Third Parties, the Third Party Capital Transaction Fee payable at the closing of each such Capital Transaction subsequent to the initial Capital Transaction with a Third Party shall equal the aggregate Third Party Capital Transaction Fees calculated for all Capital Transactions with Third Parties less the Third Party Capital Transaction Fees actually paid to Huron.

(iii)    At the closing of a Capital Transaction with a Provider that is a current lender, equity holder or affiliate of Powin or a direct or indirect subsidiary (a "Related Party"), a non-refundable cash fee (the "Related Party Capital Transaction Fee") of:

(A) 2.0% of the aggregate gross amount or face value of capital Raised (as defined below) in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests (including any rights offerings), plus

(B) 1.0% of the aggregate gross amount of junior secured, unsecured debt obligations, senior secured debt obligations and other interests Raised in the Capital Transaction (including a DIP Financing).

(C)  The minimum Related Party Capital Transaction Fee paid at the first closing of a Capital Transaction with a Related Party shall be equal to $600,000 (without offsetting monthly fees earned) and shall only be payable once, and, in the event of multiple Capital Transactions with Related Parties, the Related Party Capital Transaction Fee payable at the closing of each such Capital Transaction subsequent to the initial Capital Transaction with a Related Party shall equal the aggregate Related Party Capital Transaction Fees calculated for all Capital Transactions with Related Parties less the Related Party Capital Transaction Fees actually paid to Huron.

Notwithstanding the foregoing, during the term of this agreement and during the Tail Period (as defined below), if the Company Raises any capital from a Third Party and a Related Party thereafter decides to invest on the same or better economic terms for the Company, such Capital Transaction shall result in the payment of the Third Party Capital Transaction Fee.

"Raised" means (i) in the context of an equity transaction, funds actually invested in the Company and (ii) in the context of a debt transaction, the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the Company applies such amounts to refinance any of its obligations.

"Capital Transaction Fee" means the Third Party Capital Transaction Fee and/or the Related Party Capital Transaction Fee, as the context may require.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in

the event that more than one Capital Transaction occurs.

The Capital Transaction Fee shall be payable upon the closing of any Capital Transaction; provided that if the capital is Raised in a DIP Financing (whether on a standalone basis or convertible into an exit facility), the Capital Transaction Fee shall be payable in full upon the closing of such DIP Financing (regardless of draw or funding schedule).

Any Capital Transaction Fee paid on account of a DIP Financing shall reduce any Restructuring Fee or Capital Transaction Fee payable upon conversion of any DIP facility to equity (i) dollar for dollar of any Capital Transaction Fee if such DIP Financing included at origination the ability to convert to equity or (ii) by 50% of any Capital Transaction Fee if such DIP Financing did not include an equity conversion feature.

<u>Restructuring Fee</u>

(iv)    (A) To the extent a Restructuring executed out-of-court occurs, at the closing of such a Restructuring executed out-of-court, a fee (the "<u>Out-Of-Court Restructuring Fee</u>") of: (x) 1.5% of the aggregate gross amount of Designated Liabilities (as defined below) restructured up to and including $280 million, plus (y) 2.0% of the aggregate gross amount of Designated Liabilities restructured in excess of $280 million up to an including $350 million; plus (z) 3.0% of the aggregate gross amount of Designated Liabilities restructured in excess of $350 million. The Company will pay a separate Out-Of-Court Restructuring Fee in the event that more than one such Restructuring occurs.  The minimum aggregate Out-of-Court Restructuring Fee will be $1,250,000, payable at the closing of the first such Restructuring.

(B) At the closing of a Restructuring consummated as part of a Bankruptcy Case, a fee (the "<u>In-Court Restructuring Fee</u>") of $1,250,000.

The fees set forth in Section 2(a)(iv) shall be referred to herein as the "<u>Restructuring Fees</u>".

For purposes of this Agreement, the term "<u>Designated Liabilities</u>" shall mean the material outstanding indebtedness of the Company including, but not limited to, bank debt, bond debt, term loans, credit facilities, trade claims, leases (both on and off-balance sheet), pension obligations, litigation-related claims and obligations, and workers' compensation claims and obligations; provided, however, Designated Liabilities shall not include funded secured debt.

<u>Powin Sale Transaction Fee</u>

(v)    At the closing of a Powin Sale Transaction, a non-refundable cash fee (the "<u>Powin Sale Transaction Fee</u>") equal to the greater of (x) $1,500,000 and (y) the calculation set forth below:

(a) 1.5% of aggregate gross consideration for amounts up to $280 million; plus

(b) 2.0% of aggregate gross consideration for amounts in excess of $280 million

up to and including $350 million; plus

    (c) 3.0% of aggregate gross consideration for amounts in excess of $350 million.

In the event that Powin consummates a Powin Sale Transaction in connection with a Plan or pursuant to Section 363 of the Bankruptcy Code, the Company shall pay Huron a Powin Sale Transaction Fee and no Restructuring Fee.

Discrete Asset Sale Transaction Fee

    (vi)    At the closing of each Discrete Asset Sale Transaction, a non-refundable cash fee (the "Discrete Asset Sale Transaction Fee"), equal to 2.0% of aggregate gross consideration received in such Discrete Asset Sale Transaction; provided that if the Company ultimately sells substantially all assets in multiple Discrete Asset Sale Transactions but the aggregate Discrete Asset Sale Transaction Fee would not otherwise be $950,000, Huron shall nevertheless receive $950,000.

In the event Powin consummates one or more Discrete Asset Sale Transactions while in chapter 11 and subsequently consummates a Restructuring, the Restructuring Fee payable hereunder shall be offset by the Discrete Asset Sale Transaction Fees paid in connection with such Discrete Asset Sale Transactions (the "Discrete Asset Sale Transaction Fee Credit"); provided that in no event shall the Discrete Asset Sale Transaction Fee Credit reduce the Restructuring Fee payable hereunder to less than $0.

Future or contingent amounts to be received in any Sale Transaction, including earn-outs or similar contingent payments, will be included in aggregate gross consideration at the closing, utilizing a discount rate and probability of payment as mutually agreed by the parties hereto. Installment payments or amounts paid into escrow will be included in aggregate gross consideration at closing. Consideration consisting of securities that are publicly traded (or any securities convertible or exchangeable into such securities or any securities of the same class as such securities) will be valued at the trading price thereof (or the trading price of any such securities of a predecessor entity) on the day immediately prior to the closing of any Sale Transaction. Any non-marketable securities or other non-cash consideration will be valued as the Company and Huron may mutually agree in good faith. For purposes of this paragraph, consideration includes cash, securities, assumed liabilities, property, rights or any other form of consideration.

The fees set forth in Sections 2(a)(ii) through (vi) shall be referred to herein as the "Transaction Fees". Huron will issue fee invoices as they are earned. Huron's invoices are due upon presentation. Amounts remaining outstanding for more than 30 days (past due) will be subject to an interest charge of 1.5% per month from the date of invoice. Huron reserve the right to suspend further services until payment is received on past due invoices, in which event we will not be liable for any resulting loss, damage or expense connected with such suspension. We understand that our bills should be delivered to the Company at the above address.

In connection with a Transaction intended to be consummated in connection with a pre-packaged or pre-

arranged Plan, 50% of the applicable Transaction Fee(s) shall be earned upon the execution of a definitive agreement with respect to such Plan and the remaining 50% of the applicable Transaction Fee(s) shall be earned upon the consummation of such Plan; provided that if the Plan contemplating such Transaction(s) does not become effective, then Huron shall credit the applicable Transaction Fee(s) against any future Transaction Fee that becomes due and payable upon the closing of another Transaction.

The "Tail Period" shall end twelve (12) months following the termination of this agreement.  The Tail Period will not apply and/or will terminate once Huron receives aggregate Transaction Fees equivalent in amount to the In-Court Restructuring Fee. If, at any time prior to the end of the Tail Period, the Company consummates any Transaction(s) or enters into an agreement or a Plan is filed regarding any Transaction(s) and a Transaction is subsequently consummated, then the Company (or its bankruptcy estates) shall pay Huron the applicable Transaction Fee(s) specified above immediately upon the closing of any such Transaction(s). Notwithstanding anything herein to the contrary, to the extent Huron is paid an Out-Of-Court Restructuring Fee and the Company subsequently files for chapter 11 within the 9-month period following the payment of such Out-Of-Court Restructuring Fee, such Out-Of-Court Restructuring Fee shall be credited against the In-Court Restructuring Fee payable in connection with the chapter 11 filing (if any) (the "Restructuring Fee Credit"); provided that in no event shall the Discrete Asset Sale Transaction Fee Credit reduce the Restructuring Fee payable hereunder to less than $1,250,000.

Notwithstanding the foregoing, the Tail Period shall end immediately in the event that (1) Huron terminates this Agreement at a time when the Company is not in material breach of this Agreement or (2)(a) during the term of this Agreement and prior to the time the Company (and/or any of its subsidiaries or affiliates) enters into an agreement in principle or definitive agreement to engage in a Transaction, Huron has engaged in any action or failure to act (other than an action or failure to act undertaken at the request or with the consent of the Company) with respect to the engagement hereunder that constitutes gross negligence or willful misconduct, (b) within 10 days after being made aware of the foregoing, the Company gives Huron at least thirty (30) day's written notice of the Company's intention to terminate this Agreement as a result thereof (a "Pre-Termination Notice"), which Pre-Termination Notice shall specify in reasonable detail the action or failure to act constituting Huron's gross negligence or willful misconduct, (c) Huron fails to cure such specified action or failure to act, or fails to take reasonable steps to ensure that no such action or failure to act shall occur again, within thirty (30) days after receipt of such Pre-Termination Notice, (d) promptly following Huron's failure to take the action set forth in subsection (c) within such time period, the Company terminates this Agreement by delivering to Huron a termination notice which specifies the reasons for the Company's termination of this Agreement, and (e) Huron is finally judicially determined by a court of competent jurisdiction to have engaged in such gross negligence or willful misconduct.

The Company and Huron acknowledge and agree that the Company is under no obligation to consummate any Restructuring, Capital Transaction, and/or Sale Transaction as set forth herein and, in the event the Company is unable or unwilling to do so, the Company will have no obligation or liability (other than the General Business Terms set forth in Annex A) to Huron other than the payment of the Monthly Fee due up to the date of termination of this Agreement.

(b)  Whether or not the Company consummates a Transaction, the Company will reimburse Huron for all of its reasonable and documented out-of-pocket expenses as they are incurred in entering into and performing services pursuant to this agreement, but in no event greater than $2,000 for any individual expense without the Company's prior approval, which approval shall not be unreasonably withheld. Huron agrees to provide the Company with reasonable support for its expenses at the Company's request or at the

direction of the bankruptcy court (the "Bankruptcy Court"). Huron shall, in addition, be reimbursed by the Company for the reasonable and documented fees and expenses of its outside legal counsel incurred in connection with the negotiation and performance of this Agreement and the matters contemplated hereby.

(c)  The Company's obligation to pay any fees or expenses set forth herein are not subject to any reduction by way of setoff, recoupment or counterclaim.  All fees, expenses and any other amounts payable hereunder are payable in U.S. dollars, free and clear of any withholding taxes or deductions.  The Company agrees to use reasonable efforts to provide that any Transaction Fees payable hereunder will be paid out of the funds flow in connection with the closing of the applicable Transaction.  The Company will provide Huron with a draft copy of any funds flow memorandum or similar document in advance of any closing of any Transaction.

(d)  [Reserved.] .

(e)  Huron will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for it.  Moreover, the actual time and effort required for the engagement may vary substantially from time to time.  In light of the numerous issues that may arise in engagements such as this, Huron's commitment of the time and effort necessary to address the issues that may arise in this engagement, Huron's expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Huron's stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Huron, and provides the requisite certainty to the Company.

3.  If a Bankruptcy Case is commenced:

(a)  The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing Huron's employment as the Company's financial adviser under this agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date of the filing of the Bankruptcy Case.  The retention application and any order authorizing Huron's retention must be acceptable to Huron.  Prior to commencing a Bankruptcy Case, the Company will pay all fees then earned and payable and will reimburse Huron for all expenses that Huron incurred prior to commencement in accordance with this agreement.

(b)  Huron will have no obligation to provide services unless the Bankruptcy Court approves Huron's retention in a final non-appealable order acceptable to Huron under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case.  If neither the Company nor Huron obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Huron may terminate this agreement, and the Company shall reimburse Huron for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Huron shall be entitled to a non-priority unsecured contingent claim with respect to any fees that become payable under the last paragraph of Section 2(a).

(c)  Huron's post-petition compensation, expense reimbursements and payment received shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve- outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court.  Following

**HURON** TRANSACTION ADVISORY LLC
Member FINRA/SIPC

entry of an order authorizing our retention, the Company will assist Huron in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Company will support Huron's fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Court's orders, the Bankruptcy Code, and the Bankruptcy Rules.

(d)  The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Huron, its divisions, affiliates, any person controlling Huron or its affiliates, and their respective current and former directors, officers, partners, managers, members, agents, representatives and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Huron, and may be waived, in whole or in part, only by Huron.

4.  The Company will furnish Huron with all information concerning the Company as Huron reasonably deems appropriate (collectively, the "Information") to execute this engagement and will provide Huron with access to the Company's officers, directors, employees, accountants, counsel and other representatives of the Company. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will advise Huron promptly of any material event or change in the business, affairs, condition (financial or otherwise) or prospects of the Company that occurs during the term of this agreement. In performing our services hereunder, Huron will be entitled to use and rely upon the Information as well as publicly available information without independent verification. Huron is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company. Huron does not evaluate the solvency of any party under applicable laws relating to bankruptcy, insolvency or similar matters. Huron will be entitled to assume that financial forecasts and projections the Company makes available to Huron have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company as to the matters covered thereby. The Company authorizes Huron to transmit any Information Memos to prospective Providers of a Capital Transaction and prospective Counterparties of a Sale Transaction. The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Providers in a Capital Transaction.

Huron will not disclose to any third party nonpublic Information concerning the Company or the Transaction parties provided to Huron in connection with this agreement as long as it remains nonpublic, except (i) as otherwise required by subpoena or court order and for private disclosure to our financial regulatory authorities and (ii) Huron may provide nonpublic Information to prospective Transaction parties, only after a non-disclosure agreement is executed between such Transaction parties and the Company. This paragraph shall terminate one year following the date of this agreement.

The Company authorizes Huron to transmit the Information Memo to prospective Providers. The Company represents and warrants to Huron that the information provided to any prospective Provider or seller of a

security by or on behalf of the Company in any Capital Transaction, Sale Transaction, or Restructuring (or any combination thereof), at the closing thereof, taken as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading. The Information Memo shall be subject to Huron's review and approval prior to distribution. The Company will provide Huron for review with a copy of any other information the Company proposes to deliver to prospective Providers and will coordinate with Huron prior to delivering any such information to prospective Providers. The Company shall not transmit the Information Memo to prospective Providers without first consulting Huron. During the term of this Agreement, the Company (i) will not discuss any Capital Transaction or any transaction in lieu of a Capital Transaction with potential Capital Transaction Providers without providing prior written notification to Huron of the identity of the potential Capital Transaction Provider, the nature of the discussion and an opportunity for Huron to participate in the discussion (which opportunity for Huron to participate shall be at the Company's sole discretion), and (ii) will discuss with Huron all inquiries received by the Company during the term of this Agreement regarding a Capital Transaction or any transaction in lieu of a Capital Transaction.

The Company acknowledges that the intent of both Huron and the Company is that the Capital Transaction will be exempt under Section 4(a)(2) of the Securities Act of 1933 (the "Securities Act") and not Regulation D of the Securities Act. The Company has not taken, and will not take, any action, directly or indirectly, so as to cause the Capital Transaction to fail to be entitled to exemption under Section 4(a)(2) of the Securities Act. The Company will promptly from time to time take such action as Huron may reasonably request to qualify the Capital Transaction as a private placement under the securities laws of such jurisdictions as Huron may reasonably request. Neither the Company nor any of its affiliates, directly or indirectly, will offer or sell any security that would be integrated with the sale of securities in a Capital Transaction that could cause the Capital Transaction to fail to be entitled to exemption under Section 4(a)(2) of the Securities Act. At the closing of a Capital Transaction pursuant to an exemption from registration other than Section 1145 of the Bankruptcy Code, (i) the Company shall be deemed to make all the representations and warranties to Huron that the Company has made to Providers of any security, (ii) if the Company provides Providers with an opinion of Company counsel to the effect that the Capital Transaction was exempt from registration under the Securities Act, then the Company shall deliver to Huron a copy of such opinion, (iii) the Company shall deliver to Huron from each Provider of securities for Huron's express benefit a non-reliance representation and (iv) the Company will also deliver to Huron copies of such agreements, opinions, certificates and other documents delivered at the closing as Huron may reasonably request. In addition, the Company hereby makes the representation, warranty and covenant with respect to bad actor disqualifications.

5. The Company will not disclose, summarize or refer to any of Huron's advice or our valuation or the terms of this agreement publicly or to any third party without the prior written consent of Huron (which may be provided via email) (such consent not to be unreasonably withheld or delayed). Notwithstanding anything to the contrary, the Company may disclose our advice (x) on a confidential basis, to its managers, officers, and employees, and/or (y) on a confidential and non-reliance basis, to its legal counsel, accountants, auditors, and advisors; it being agreed that the Company will be responsible for any non-compliance with any of the foregoing confidentiality and non- reliance terms by any such parties. In the event disclosure is required by subpoena or court order, the Company will provide Huron with reasonable advance notice (which may be provided via email) and permit Huron to comment on the form and content of the disclosure. Huron consents to the inclusion of a summary of its valuation in the disclosure statement for a Plan, if required to be included in such disclosure statement; provided that Huron and its

counsel have approved any reference to or summary or description of the valuation in advance.  Huron may, at our option and expense after announcement of any Transaction announce or disclose publicly such transaction and Huron's role in it for marketing purposes, including, without limitation, on Huron's website, using only publicly available information and/or stating in customary 'tombstone' format that Huron has acted as financial advisor and/or investment banker, as applicable, to the Company in connection with any Transaction.  If requested by Huron, the Company shall include a mutually acceptable reference to Huron in any public announcement of a Restructuring.  Following a public announcement or public confirmation or Company public filing relating to a potential Transaction, Huron may also announce or disclose publicly its role in the potential Transaction.

6.    Huron is an independent contractor with the contractual obligations described herein owing solely to the Company.  The parties agree that Huron is not acting as an agent or fiduciary of the Company or any other party, and the Company agrees not to make any claims against Huron based on an agency or fiduciary relationship.

7.  Either the Company or Huron may terminate this agreement upon written notice thereof to the other party.  In the event of any termination, Huron will continue to be entitled to the fees and expenses that became payable hereunder prior to termination or expiration.

8.  Huron is a financial consulting firm and not a CPA firm. Huron does not provide attest services, auditing, or other engagements in accordance with standards established by the AICPA or auditing standards promulgated by the Public Company Accounting Oversight Board ("PCAOB").  We will not audit any financial statements or perform attest procedures with respect to information in conjunction with this engagement.  Our services are not designed, nor should they be relied upon, to identify weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies. The services we provide are intended solely for your use in connection with this engagement and should not be used or relied upon for any other purpose.  Any written work product we prepare for you is to be used solely for purposes of this engagement and may not be published or used, in whole or in part, for any other purpose without our written permission. The Company acknowledges that Huron or one or more of its affiliates engage in investment banking and consulting services and may presently or in the future represent a party with an interest in the transactions proposed herein.  Huron will not be prohibited from pursuing and engaging in any such activities.  The Company expressly waives, to the fullest extent permitted by applicable law, any rights to assert any claim that such involvement breaches any duty owed to the Company hereunder or to assert that such involvement constitutes a conflict of interest by Huron or its affiliates with respect to the Company.

9.    This agreement and any disputes or claims that may arise out of this agreement shall be governed by and construed in accordance with the internal laws of the State of Illinois, and this agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Company and Huron.  If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect.  Any proceeding arising out of this agreement shall be heard exclusively in a Illinois state or federal court sitting in the city and county of Illinois, to whose jurisdiction and forum Huron and the Company irrevocably submit.  The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above. This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.  This agreement shall be binding upon the Company and Huron

**HURON** TRANSACTION ADVISORY LLC
Member FINRA/SIPC

Powin, LLC
May 18, 2025
Page 12

and its and our respective successors and permitted assigns.  HURON AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*[SPACE INTENTIONALLY LEFT BLANK]*

**HURON** TRANSACTION ADVISORY LLC
Member FINRA/SIPC

Powin, LLC
May 18, 2025
Page 13

*Business Terms*

The attached General Business Terms (Annex A) apply to this engagement.

* * * * * *

Please indicate your agreement with these terms by signing and returning to me the enclosed copy of this Agreement. This Agreement including the attached General Business Terms will become effective upon our receipt of a copy signed on behalf of the Company.

We appreciate the opportunity to be of service to you and look forward to working with you on this engagement.

Sincerely,

**HURON TRANSACTION ADVISORY LLC**

_____
Joe Polancich
Senior Director

_____
Mitchener Turnipseed
Senior Director

_____
Ryan Edmiston
Investment Banking Compliance Officer

Acknowledged and Accepted as of the date first written above:

Signed by:
Gerard Uzzi
C933082321E44B5...

By: Gerard Uzzi
_____

Title: Independent Manager
_____

**HURON** TRANSACTION ADVISORY LLC
Member FINRA/SIPC

Powin, LLC
May 18, 2025
Page 14

Annex A to Agreement dated May 18, 2025 between
Huron Transaction Advisory LLC and Powin, LLC

## GENERAL BUSINESS TERMS

This Agreement constitutes the entire understanding and agreement (the "Agreement") between us with respect to the services and deliverables described in the Agreement.  If there is a conflict between these General Business Terms and the terms of the Agreement, these General Business Terms will govern, except to the extent the Agreement explicitly refers to the conflicting term herein.

**1. Our Services and Deliverables.** We will provide the services and furnish the deliverables (the "Services") as described in the Agreement and any attachments thereto, as may be modified from time to time by mutual written consent.

**2. Independent Contractor.** We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing the Services. We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, payroll and other applicable employee withholdings.

**3. Fees and Expenses.** (a) Our fees and payment terms are set out in the Agreement. Those fees do not include taxes and other governmental charges (which will be separately identified in our invoices). In the event you request that we perform some or all of the Services outside of the United States, we may issue the resulting invoice from a Huron affiliate located in the country where such Services are performed.

(b) You acknowledge that where out-of-town personnel are assigned to any project on a long-term basis (as defined from time to time in the applicable provisions of the Internal Revenue Code and related IRS regulations, and currently defined, under IRC Section 162, as a period of time reasonably expected to be greater than one year), the associated compensatory tax costs applied to out-of-town travel and living expenses also shall be calculated on an individual basis, summarized, and assessed to such personnel. In such cases, the expenses for which you shall reimburse us hereunder shall be deemed to include the estimated incremental compensatory tax costs associated with the out-of-town travel and living expenses of our personnel, including tax gross-ups. We shall use reasonable efforts to limit such expenses.

(c) We reserve the right to suspend Services if invoices are not timely paid, in which event we will not be liable for any resulting loss, damage or expense connected with such suspension.

**4. Taxes.** (a) You will be responsible for and pay all applicable sales, use, excise, value added, services, consumption and other taxes and duties associated with our performance or your receipt of our Services, excluding taxes on our income generally.  You will provide us with a copy of your certificate of tax-exemption, if applicable.

(b) If you are required by the laws of any foreign tax jurisdiction to withhold income or profits taxes from our payment, then the amount payable by you upon which the withholding is based shall be paid to us net of such withholding.  You shall pay any such withholding to the applicable tax authority.  However, if after 120 days of the withholding, you do not provide us with official tax certificates documenting remittance of the taxes, you shall pay to us an amount equal to such withholding.  The tax certificates shall be in a form sufficient to document qualification of the taxes for the foreign tax credit allowable against our corporation income tax.

**5. Confidentiality and Privacy.** (a) With respect to any information supplied in connection with this engagement ("Confidential Information"), the other agrees to not disclose the Confidential Information, protect the Confidential Information in a reasonable and appropriate

manner, and use Confidential Information only to perform its obligations under this engagement and for no other purpose. This will not apply to information which is: (i) publicly known, (ii) already known to the recipient at the time of disclosure by the disclosing party, (iii) lawfully disclosed by a third party not subject to a confidentiality restriction, (iv) independently developed without use of the Confidential Information, (v) disclosed pursuant to legal requirement or order, or (vi) disclosed to taxing authorities or to representatives and advisors in connection with tax filings, reports, claims, audits and litigation.

(b) Confidential Information made available hereunder, including copies thereof, shall be returned or destroyed upon request by the disclosing party; provided that the receiving party may retain other archival copies for recordkeeping or quality assurance purposes and receiving party shall make no unauthorized use of such copies.

(c) We agree to use any personally identifiable information and data you provide us only for the purposes of this engagement and as you direct, and we will not be liable for any third-party claims related to such use. You agree to take necessary actions to ensure that you comply with applicable laws relating to privacy and/or data protection and acknowledge that we are not providing legal advice on compliance with the privacy and/or data protection laws of any country or jurisdiction.

(d) At the conclusion of the engagement, we have the right to use your name, logo and a general description of the engagement in our marketing materials and traditional tombstone advertising.

**6.  Our Deliverables and Your License.** Upon full and final payment of all amounts due us in connection with this engagement, all right, title and interest in the deliverables set out in our Agreement will become your sole and exclusive property, except as set forth below. We will retain sole and exclusive ownership of all right, title and interest in our work papers, proprietary information, processes, methodologies, know-how and software ("Huron Property"), including such information as existed prior to the delivery of our Services and, to the extent such

information is of general application, anything which we may discover, create or develop during our provision of Services for you. To the extent our deliverables to you contain Huron Property, upon full and final payment of all amounts due us in connection with this engagement, we grant you a non-exclusive, non-assignable, royalty-free, perpetual license to use it in connection with the deliverables and the subject of the engagement and for no other or further use without our express, prior written consent. If our deliverables are subject to any third-party rights in software or intellectual property, we will notify you of such rights. Our deliverables are to be used solely for the purposes intended by this engagement and may not be disclosed, published or used in whole or in part for any other purpose.

**7.  Your Responsibilities.** To the extent applicable, you will cooperate in providing us with office space, equipment, data and access to your personnel as necessary to perform the Services. You shall provide reliable, accurate and complete information necessary for us to adequately perform the Services and will promptly notify us of any material changes in any information previously provided. You acknowledge that we are not responsible for independently verifying the truth or accuracy of any information supplied to us by or on behalf of you.

**8.  Our Warranty.** We warrant that our Services will be performed with reasonable care in a diligent and competent manner. Our sole obligation will be to correct any non-conformance with this warranty, provided that you give us written notice within 10 days after the Services are performed or delivered. The notice will specify and detail the non-conformance and we will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance. We do not warrant and are not responsible for any third-party products or services. Your sole and exclusive rights and remedies with respect to any third-party products or services are against the third-party vendor and not against us.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND

REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, ALL OF WHICH ARE HEREBY DISCLAIMED.

**9.** **Liability and Indemnification.** (a) Recognizing that services of the type contemplated by this Agreement sometimes result in litigation or threatened litigation, you agree to indemnify, defend and hold harmless Huron and its control persons, officers, directors, employees, agents, and affiliates (each an "Indemnified Party") from and against any losses, claims, damages or liabilities, or actions in respect thereof (including any of the foregoing asserted by you), to which such Indemnified Party may become subject in connection with the services rendered pursuant to or matters which are the subject of or arise out of this engagement (collectively, a "Claim"); provided, however, you shall not be liable under this indemnification provision for any loss, claim, damage or liability which arises out of any action or failure to act by Huron (other than an action or failure to act undertaken at the request or with the consent of you) and is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the bad faith, willful misconduct or gross negligence of Huron. You agree to reimburse promptly each Indemnified Party for any legal or other expenses incurred by such Indemnified Party in connection with investigating, preparing for, or defending any such Claim as such expenses are incurred regardless of whether an Indemnified Party is a party in such claim; provided, however, that Indemnitor shall not be liable in any such case if a court of competent jurisdiction shall have determined by a final judgment that such Claim resulted from an Indemnified Party's bad faith, willful misconduct or gross negligence. If you so elect, you may assume the defense of such Claim, including the employment of counsel reasonably acceptable to Huron and you shall pay the fees, expenses, and disbursements of such counsel. If you elect to assume such defense, you shall not be liable to any Indemnified Party under these indemnification provisions for any legal or other expenses subsequently incurred by the Indemnified Party in connection with such defense, other than reasonable costs of investigation, and except as provided in the following sentence. In the event that Huron reasonably determines

that having separate counsel would be appropriate under the circumstances due to actual or potential conflicts of interest, then Huron may employ separate counsel reasonably acceptable to you to represent and defend Huron in any Claim. If Huron so employs separate counsel, you will not be required to pay the fees and disbursements of more than one counsel for Huron in any jurisdiction in any single action or proceeding. Separate counsel retained by Huron shall, to the extent consistent with its professional responsibilities, cooperate with you and any counsel designated by you. You shall be liable for any settlement of any Claim against any Indemnified Party made with your prior written consent.

(b) If the Indemnification provided for herein is unavailable or insufficient to hold harmless an Indemnified Party with respect to any Claim, then you and such Indemnified Party shall contribute to the amount paid or payable by such Indemnified Party as a result of such Claim in such proportion as is appropriate to reflect (i) the relative benefits received from the Transaction by the Indemnified Party on the one hand and you on the other, (ii) the relative fault of you on the one hand and the Indemnified Party on the other, and (iii) any other relevant equitable considerations. The "relative benefits" received by you on the one hand and the Indemnified Party on the other shall be deemed to be in the same proportion as the aggregate consideration paid or payable in connection with the Transaction bears to the total fee actually received by Huron in connection with this Agreement. Notwithstanding the foregoing, you expressly agree that Huron shall not be required to contribute any amount pursuant to this paragraph in excess of the amount of fees paid or payable to Huron hereunder (excluding reimbursable expenses) unless such damages or contributions have been approved by Huron in a settlement or a court of competent jurisdiction shall have determined by a final judgment that such Claim resulted solely from an Indemnified Party's bad faith or gross negligence.

(c) If any action, suit, proceeding, or investigation is commenced as to which an Indemnified Party proposes to demand indemnification, it shall notify you with reasonable promptness; provided that any failure by an Indemnified Party to notify you shall not relieve you from

your obligations hereunder except to the extent that you have been prejudiced thereby.  You shall not settle any litigation relating to Huron's engagement hereunder unless such settlement includes an express release of Huron (and its control persons, officers, directors, employees, agents, and affiliates) with respect to all claims asserted in such litigation, such release to be set forth in an instrument signed by all parties to such settlement.  The rights to indemnification and contribution contained in this Agreement shall survive any termination or expiration of this Agreement or the consummation, termination, or abandonment of any Transaction, and shall not limit any other rights that an Indemnified Party may have at law or otherwise.

(d) If multiple claims are asserted against an Indemnified Party in any Claim, and indemnification as to at least one of such claims is permitted under applicable law and provided for under this Agreement, then you agree that any judgment or award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or award expressly states that the judgment or award, or any portion thereof, is based solely on a claim or claims as to which indemnification is not available.

(e) [Reserved]

(f) We will not be liable for any special, consequential, incidental, indirect or exemplary damages or loss (nor any lost profits, savings or business opportunity). Further, our liability relating to this engagement will in no event exceed an amount equal to the fees (excluding taxes and expenses) we receive from you for the portion of the engagement giving rise to such liability.

(g) Neither of us will be liable for any delays or failures in performance due to circumstances beyond our reasonable control.

**10.  Non-Solicitation.**  During the term of this engagement, and for a period of one year following its expiration or termination, you will not directly or indirectly solicit, employ, or otherwise engage any of our employees (including former employees) or contractors who were involved in the engagement; provided,

however, that you will not be precluded from hiring any such employee who responds to a public advertisement or general solicitation.

**11.  General.** (a) This Agreement supersedes all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by both parties.

(b) No term of this Agreement will be deemed waived, and no breach of this Agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c) We each acknowledge that we may correspond or convey documentation via Internet e-mail and that neither party has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, neither party will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(d) This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without giving effect to conflict of law rules.  The parties hereto agree that any and all disputes or claims arising hereunder shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.   Any arbitration will be conducted in Chicago, Illinois.  Any arbitration award may be entered in and enforced by any court having jurisdiction thereof, and the parties' consent and commit themselves to the jurisdiction of the courts of the State of Illinois for purposes of any enforcement of any arbitration award.  Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

(e) If any portion of this Agreement is found invalid, such finding shall not affect the enforceability of the remainder hereof, and such portion shall be revised to reflect our mutual intention.

(f) This Agreement shall not provide third parties with any

remedy, cause, liability, reimbursement, claim of action
or other right in law or in equity for any matter governed
by or subject to the provisions of this Agreement.

## **EXHIBIT B**

Turnipseed Declaration

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**DECLARATION OF MITCHENER TURNIPSEED IN SUPPORT OF
DEBTORS' APPLICATION FOR ENTRY OF AN ORDER: (I) AUTHORIZING
THE DEBTORS TO RETAIN AND EMPLOY HURON TRANSACTION ADVISORY
LLC AS INVESTMENT BANKER TO THE DEBTORS, EFFECTIVE AS OF THE
PETITION DATE; (II) MODIFYING CERTAIN TIMEKEEPING REQUIREMENTS;
AND (III) GRANTING RELATED RELIEF**

I, Frank McClelland Mitchener "Mitchener" Turnipseed, hereby state and declare as

follows:

1.      I am a Senior Director at Huron Transaction Advisory LLC ("Huron"),[2] an

investment banking and financial advisory firm, which maintains offices at 1166 Avenue of the

Americas, 3rd Floor, New York, NY 10036, as well as at other locations throughout the United

States and globally.  I am duly authorized to make this declaration (this "Declaration") on behalf

of Huron in support of the *Debtors' Application for Entry of an Order: (I) Authorizing the Debtors*

*to Retain and Employ Huron Transaction Advisory LLC as Investment Banker to the Debtors,*

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [ 8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc., [9926]; (xi) Powin Energy Ontario Storage II LP, [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR  97062.

[2]     Huron is a subsidiary of Huron Consulting Group Inc., a global professional services firm with offices throughout the United States, Canada, Europe, and Asia.

*Effective as of the Petition Date; (II) Modifying Certain Timekeeping Requirements; and (III)*

*Granting Related Relief* (the "Application").[3]

2.      Except as otherwise stated in this Declaration, I have personal knowledge of or

have relied upon the knowledge of others employed by Huron with respect to the matters set forth

herein.[4] If called to testify, I could and would testify competently to the facts set forth herein.

3.      Huron has agreed to provide investment banking services to the Debtors in these

Chapter 11 Cases pursuant to the terms and conditions set forth in the Engagement Letter.

4.      I believe that Huron and the professionals that it employs are uniquely qualified to

advise the Debtors in the matters for which Huron is proposed to be employed.  Huron provides a

broad range of advisory services to its clients, including investment banking, securities brokerage,

and other financial advisory services.  The investment banking and financial advisory professionals

employed by Huron have been advising clients around the world for years.  Huron and its senior

professionals have extensive expertise providing investment banking services to financially

distressed companies, creditors, committees, equity holders, asset purchasers, and other

constituencies in reorganization proceedings and complex financial restructurings, both in and out

of court.  Huron and its professionals are providing or have provided investment banking, financial

advisory, and other services in connection with the following recent cases, among others:  *See,*

*e.g.*, *Fisker Inc.*, Case No. 24-11390 (TMH) [Docket No. 234] (D. Del. July 16, 2024) (managed

and oversaw debtors' sale process); *Takeoff Technologies, Inc., et al.,* Case No. 24-11106 (CTG)

[Docket No. 169] (D. Del. July 3, 2024) (served as investment banker to debtors, and provided

---

[3]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in
the Application.

[4]     Certain information set forth herein relates to matters (i) contained in Huron's books and records and (ii) within
the knowledge of other Huron's employees, and is based on information provided by such employees.

2

additional services); *Alpine Summit Energy Partners, Inc.*, Case No. 23-90739 (DRJ) [Docket No.

591] (S.D. Tex. Aug. 28, 2023) (oversaw and negotiated aspects of debtors' sale process); *Vital*

*Pharmaceuticals, Inc.*, Case No. 22-17842 (PDR) [Docket No. 395] (S.D. Fla. Nov. 22, 2022)

(oversaw debtors' sale process); *Strike, LLC*, Case No. 21-90054 (DRJ) [Docket No. 496] (S.D.

Tex. Jan. 21, 2022) (investment banker to debtors); *Friendly Ice Cream*, Case No. 11-13167 (CTG)

[Docket No. 386] (D. Del. Nov. 11, 2021) (investment banker to the debtors); *MMFX Steel*

*Corporation of America*, Case No. 10-10083 (RK) [Docket No. 222] (C.D. Cal. Feb. 28, 2011)

(investment banker to debtors).

5.      Huron has been engaged as investment banker to the Debtors with respect to certain

sale processes since May 2025.  Huron, together with the Debtors' other advisors, assisted the

Debtors in preparing for these Chapter 11 Cases.  As a result, Huron is already familiar with the

Debtors' businesses and operations.

6.      Huron does not believe that the services that it will render on behalf of the Debtors

in these Chapter 11 Cases will be duplicative of the services performed by any of the other

professionals retained by the Debtors, and Huron intends to use reasonable efforts to coordinate

and work together with such other professionals to minimize and avoid duplication of services.

7.      In connection with its retention by the Debtors, Huron researched certain of its

internal databases to determine whether Huron had any connections with the entities identified by

the Debtors as potential parties in interest (the "Potential Parties in Interest"), including entering

the names of the Potential Parties in Interest into a database containing the names of Huron's

current and former investment banking clients.  A list of the Potential Parties in Interest is attached

hereto as **Schedule 1**.  To the extent that this inquiry has revealed that certain Potential Parties in

Interest (or certain of their pertinent affiliates or instrumentalities) were current or former

3

investment banking clients of Huron within the past three (3) years, then these Potential Parties in Interest have been identified on a list (the "Client Match List") attached hereto as **Schedule 2**. To the extent that this inquiry has revealed certain other connections with Potential Parties in Interest, such connections may also be identified on the Client Match List or otherwise described or referenced (whether generally or specifically by name) elsewhere in this Declaration, including in the body of the document and in the footnotes. Through the information generated from the aforementioned inquiry and through follow-up inquiries (if applicable) to Huron professionals responsible for certain of the clients who are (or whose pertinent affiliates or instrumentalities are) listed on the Client Match List, Huron has determined that the engagements associated with the non-Debtor-affiliated entities on the Client Match List, if any, concerned matters unrelated to the Debtors.

8.       To the best of my knowledge, information and belief, neither Huron nor any of the Huron investment banking professionals expected to assist the Debtors in these Chapter 11 Cases is, or was within two (2) years before the commencement of these Chapter 11 Cases, a director, an officer or an employee of the Debtors. Also, to the best of my knowledge, information and belief, neither the undersigned nor the Huron investment banking professionals expected to assist the Debtors in these Chapter 11 Cases are connected to any United States Bankruptcy Judge for the District of New Jersey, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

9.       Given the breadth of Huron's client and customer base, it is possible that Huron may have business relationships with certain of the professionals involved in these Chapter 11 Cases. Huron is involved in numerous cases, matters, and transactions involving many different professionals, accountants, and financial consultants, some of whom may represent claimants and parties in interest in these Chapter 11 Cases. Further, Huron may have in the past been represented

4

or advised, and may in the future be represented or advised, by several attorneys and law firms, some of whom may be involved in these Chapter 11 Cases.  Finally, Huron has in the past worked, and may in the future work, with or against other professionals involved in these Chapter 11 Cases in matters wholly unrelated to these Chapter 11 Cases.  Based upon our current knowledge of the professionals involved in these Chapter 11 Cases, and to the best of my knowledge, none of these business relationships constitute interests adverse to the Debtors' estates.

10.     As noted above, Huron is part of a global financial services firm which provides a broad range of services to its clients.  Huron's financial advisory and investment banking services are provided primarily through its investment banking department (the "Investment Banking Department").  Consistent with applicable legal and regulatory requirements, certain information barriers exist between Huron's Investment Banking Department and the public-side businesses of Huron, as well as between Huron's Investment Banking Department and the remainder of its affiliates.  These information barriers include physical and technological barriers, compliance and surveillance mechanisms, and policies and procedures designed to prevent material non-public information from being shared improperly.

11.     As of the date hereof, Huron and its affiliated and related entities have employees worldwide.  It is possible that certain of Huron's and its affiliated and related entities' respective directors, officers, and employees may have had in the past, may currently have, or may in the future have connections to (a) the Debtors, (b) Potential Parties in Interest, or (c) funds or other investment vehicles that may own debt or securities of the Debtors or other Potential Parties in Interest.  To the best of my knowledge, and except as otherwise disclosed herein, the Huron investment banking professionals expected to assist the Debtors in this engagement do not have any material business associations with, or hold any material interests in or adverse to, the Debtors

5

or Potential Parties in Interest.  Such professionals, however, may personally own and/or continue to own securities or other interests or investments in various of the Potential Parties in Interest (all unrelated to the Debtors and these Chapter 11 Cases).

12.    Huron may also advise, or may have advised, affiliates, equity holders and/or sponsors of the Potential Parties in Interest.  Certain of the Potential Parties in Interest (or their affiliates) may also be vendors or insurers of Huron and/or have other non-investment banking relationships with Huron.[5]  Huron may also advise, or may have advised in the past, committees or groups of lenders or creditors in connection with certain restructuring or refinancing engagements, which committees or groups include, or included, entities that appear on the Potential Parties in Interest list.  Huron believes that none of these business relationships constitute interests adverse to the interests of the Debtors' estates, and none are in connection with these Chapter 11 Cases.

13.    During the 90-day period preceding the commencement of these Chapter 11 Cases, the Debtors paid in the ordinary course certain fees and expense reimbursements due under the Engagement Letter.  Specifically, on May 29, 2025, the Debtors paid Huron $150,000 on account of the May 2025 Monthly Fee.

14.    For the reasons set forth in this Declaration, Huron believes that it (a) is disinterested as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and (b) does not hold or represent any interest adverse to the Debtors' estates.

15.    The Fee Structure set forth in the Application is consistent with Huron's typical fees for work of this nature.  The fees are set at a level designed to compensate Huron fairly for

---

[5]    Upon request, Huron can provide a listing of such Potential Parties in Interest that are (or whose pertinent affiliates are) vendors or insurers of Huron.

6

the work of its professionals and assistants and to cover fixed and routine overhead expenses.  It is Huron's policy to charge its clients for all disbursements and expenses incurred in connection with its services.

16.     It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys.  Huron's restructuring professionals, when formally retained in chapter 11 cases, and when required by local bankruptcy rules, do, and in these Chapter 11 Cases will, keep time records in half-hour increments describing their daily activities and the identity of the persons who performed such tasks.

17.     The Fee Structure is comparable to those generally charged by investment banking firms of similar stature to Huron and for comparable engagements, both in and out of court, and reflects a balance between a fixed, monthly fee, and contingent amounts, which are tied to the consummation and/or closing of a transaction, as contemplated in the Engagement Letter.

18.     The Engagement Letter was negotiated at arm's length and in good faith, and I believe that the provisions contained therein are reasonable terms and conditions of Huron's employment by the Debtors.  With respect to the Engagement Letter's indemnification provisions, unlike the market for other professionals that a debtor or committee may retain, indemnification is a standard term of the market for investment bankers.  The indemnity, moreover, is comparable to those generally obtained by investment banking firms of similar stature to Huron and for comparable engagements, both in and out of court.

19.     Other than as set forth above, there is no proposed arrangement between the Debtors and Huron for compensation to be paid in these Chapter 11 Cases.  Huron has no agreement with any other entity to share any compensation received from the Debtors, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

7

20.    The foregoing constitutes the statement of Huron pursuant to section 504 of the

Bankruptcy Code, and Bankruptcy Rules 2014(a) and 5002.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my information, knowledge, and belief.

Dated:  July 7, 2025                **HURON TRANSACTION ADVISORY LLC**


*/s/ Frank McClelland Mitchener Turnipseed*
Frank McClelland Mitchener Turnipseed
Senior Director

8

## Schedule 1

## Potential Parties in Interest List[1]

**1.**   **Debtors, Subsidiaries, and Affiliated Entities**

**Debtors:**
- Powin Project LLC (New Jersey)
- Powin, LLC (Delaware)
- PEOS Holdings, LLC (Oregon)
- Powin China Holdings 1, LLC (Oregon)
- Powin China Holdings 2, LLC (Oregon)
- Charger Holdings, LLC (Oregon)
- Powin Energy Ontario Storage, LLC (Oregon)
- Powin Energy Operating Holdings, LLC (Delaware)
- Powin Energy Operating, LLC (Delaware)
- Powin Canada B.C., Ltd. (Canada)
- Powin Energy Storage 2, Inc. (Canada)
- Powin Energy Ontario Storage II, LP (Canada)

**Non-Debtor Powin Entities:**
- Powin Energy Holdings, LLC (Delaware)
- Powin Energy Intermediate, LLC (Delaware)
- Powin Australia Pty Ltd. (Australia)
- Powin Netherlands B.V. (The Netherlands)
- Powin Energy Spain S.L. (Spain)
- Powin UK Ltd. (United Kingdom)
- Yangzhou Finway Energy Tech Co., Ltd. (China)
- Qingdao CIMC-Powin New Energy Technology Co., Ltd. (China)
- Powin (Qingdao) New Energy Co., Ltd. (China)
- Powin EKS SellCo, LLC (Delaware)
- EKS HoldCo, LLC (Delaware)

**2.**   **Current & Former Managers and Officers of the Debtors**

- Andrew Skrilow
- Arielle Pacheco
- Brian J. Kane
- Chad E. Paulson
- Danny Lu
- Geoffrey Brown
- Gerard Uzzi
- Glenn Jacobson
- Himanshu Khurana
- Jeff Waters
- John Brecker

- Joseph Lu
- Kevin Paprzycki
- Kirk Fleishhauer
- Mark Babcock
- Michael Bennett
- Rachel Livek
- Ryan Gray
- Sameer Reddy
- Samuel Graham
- Scott Getman
- Stuart Bolland

---

[1] This list (and the categories contained herein) are for purposes of a conflicts check only and should not be relied upon by any party as a list of creditors or for any other purpose. As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible. Accordingly, a party that otherwise may fall under multiple categories is likely to be listed under only one category.

- Tim Healy

**3. Current & Former Managers and Officers of Powin Energy Holdings, LLC**

- Andrew Skrilow
- Chad E. Paulson
- Danny Lu
- Geoffrey Brown
- Glenn Jacobson
- Jeff Waters
- Sameer Reddy
- Samuel Graham
- Tim Healy

**4. List of Equity Holders**

- Arroyo Energy Investment Partners
- Danny Lu
- EIF II PWE Holdings LLC
- Energy Impact Partners
- Esquarre IOT Landing Fund L.P.
- Evergy Ventures, Inc.
- Geoffrey Brown
- GIC
- Green Power Technologies, SL
- Jeff Waters
- Joseph Lu
- Jospeh Lu (II)
- LU Pacific Properties Llc
- Meadowlark Energy Finance, LLC
- Mei Yi Lu Ttee
- Mike Wietecki
- Outcome Energy, LLC
- Parthian Holdings
- Peter Lu

- Powin Energy Corporation
- Powin Energy Holdings, LLC (Delaware)
- Powin Energy Intermediate, LLC
- Quidnick Energy Development Llc
- Samsung Venture Investment Corporation
- Single Element LLC
- Stuart Statman
- SVIC No. 53 New Technologies Business Investment L.L.P.
- Tim Healy
- TPC Powin SPV LLC
- Trilantic Capital Partners
- Trilantic Energy Partners II (North America) L.P.
- Trilantic Energy Partners II (North America) Mini-Master L.P.
- William Penn
- William Penn Foundation

**5. Insurers**

- AIG Specialty Insurance Company
- Admiral Insurance Company – Mt. Laurel
- Aspen Specialty Insurance Company
- Illinois Union Insurance Company

- Zurich American Insurance Company
- The Insurance Company of the State of Pennsylvania
- Lloyd's of London

- At-Bay Specialty Insurance Company
- Federal Insurance Company
- Allianz Global Risks US Insurance Company

- Argonaut Insurance Company
- North River Insurance Company
- USI Insurance Services

6.    **Restructuring Professionals**

- Alvarez and Marsal
- Brown Rudnick LLP
- CBMN Advisors LLC d/b/a/ Uzzi & Lall
- Dentons US LLC
- Faegre Drinker Biddle & Reath LLP

- Genova Burns LLC
- Huron Transaction Advisory LLC
- Latham & Watkins LLP
- Togut, Segal & Segal LLP
- White & Case, LLP

7.    **United States Bankruptcy Judges in the District of New Jersey**

- Christine M. Gravelle, Chief Judge
- Michael B. Kaplan
- Andrew B. Altenburg, Jr.
- Vincent F. Papalia

- John K. Sherwood
- Jerrold N. Poslusny, Jr.
- Stacey L. Meisel
- Mark E. Hall

8.    **Clerk of the Court for the District of New Jersey**

- Michael Tedesco, Clerk to J. Gravelle
- Rebecca A. Earl, Clerk to J. Kaplan
- Cisse Diawara, Clerk to J. Kaplan
- Travis Graga, Clerk to J. Kaplan
- Suzanne Sweeney, Clerk to J. Altenburg Jr.
- Brooks West, Clerk to J. Altenburg, Jr.
- Christy McDonald, Clerk to J. Papalia
- Sydney Chapman, Clerk to J. Papalia

- Angela Pattison, Clerk to J. Sherwood
- Timothy Dumbroff, Clerk to J. Sherwood
- Kevin Holden, Clerk to J. Poslusny
- Kimberly Barbour, Clerk to J. Poslusny
- Juliana Diamond, Clerk to J. Meisel
- Amanda Simone, Clerk to J. Meisel
- Krista Shaheen, Clerk to J. Hall

9.    **United States Trustees for the District of New Jersey**

- Martha Hildebrandt
- Adela Alfaro
- Kirsten K. Ardelean
- Francyne D. Arendas
- Michael Artis
- Lauren Bielskie
- Savanna Cruz

- Peter J. D'Auria
- David Gerardi
- Tia Green
- Daniel C. Kropiewnicki
- Samantha Lieb
- Tina L. Oppelt
- Angeliza Ortiz-Ng

- Robert J. Schneider, Jr.
- Jeffery Sponder
- Fran B. Steele
- James Stives

- Rachel Wolf
- William J. Ziemer

**10.** **Government Authorities**

- Alabama Department of Revenue
- Arizona Department of Revenue
- California Franchise Tax Board
- Colorado Department of Revenue
- Delaware Department of Revenue
- Florida Department of Revenue
- Georgia Department of Revenue
- Hawaii Department of Revenue
- Idaho Department of Revenue
- Illinois Department of Revenue
- Indiana Department of Revenue
- Kansas Department of Revenue
- Louisiana Department of Revenue
- Comptroller of Maryland
- Massachusetts Department of Revenue
- Minnesota Department of Revenue
- Montana Department of Revenue
- New Hampshire Department of Revenue Administration
- State of New Jersey/Division of Taxation
- New Mexico Taxation and Revenue Department

- New York State Dept. of Taxation and Finance
- North Carolina Department of Revenue
- North Dakota Office of State Tax Commissioner
- Ohio Department of Taxation
- Oregon Department of Revenue
- Oregon Revenue Division Customer Service Center
- Pennsylvania Department of Revenue
- South Carolina Department of Revenue
- Tennessee Department of Revenue
- Texas Comptroller of Public Accounts
- Virginia Department of Taxation
- West Virginia Tax Division
- Attorney General of Arizona
- Attorney General of Delaware
- Attorney General of New Jersey
- Attorney General of Oregon
- Department of the Treasury/Internal Revenue Service

4

**11.** **Utilities**

- Portland General Electric Company
- Republic Services
- Waste Management of Arizona, Inc.
- Festival Hydro Inc.
- SRP
- City of Mesa
- Independent Electricity System Operator
- Northwest Natural

**12.** **Secured Creditors**
- KKR Credit Advisors (US) LLC
- GLAS USA LLC

**13.** **Unsecured Creditors**

- 218 Events LLC
- 3 Point Brand Management
- 3D Crane Service, LLC
- 3D Engineered Solutions, Inc.
- 3Drivers, Engenharia, Inovacao E Ambiente, LDA
- 8LOOP Logistics LLC
- 8Loop Trans Inc.
- A Plus Finish Roofing LLC
- A&D Fire
- Abacus Industries, Inc
- ABM
- AC Squared Consulting LLC
- Accuenergy (Canada) Inc.
- Accurate Employment Screening LLC
- ACCURE Battery Intelligence Inc.
- Ace Engineering & Co., Ltd.
- Ace Parking Management, Inc.
- activpayroll Ltd
- Acutran
- ADERO Scottsdale
- ADMET, Inc.
- ADT Commercial
- Advantech Corporation

- AFCODirect
- AgileBits Inc dba 1Password
- Agora Refreshments
- AirSea USA
- Airway Services LLC
- AKA Energy Systems
- Akaysha
- Alegeus Technologies LLC dba WealthCare Saver
- Alexander Fattal
- Alliant Insurance Services, Inc
- Alliant Systems, LLC
- Allied High Tech Products, Inc.
- Allium US Holding LLC
- Alorair Solutions Inc.
- Altium Inc.
- Alvarez & Marsal Corporate Performance Improvement, LLC
- Amazon Web Services, Inc.
- Ameresco, Inc.
- American Arbitration Association, Inc.
- American Clean Power Association
- American Fire Technologies
- American Lamprecht Transport Inc.
- Ampere Computing LLC
- Amphenol Industrial Operations
- Antenna Group Inc.
- Anxin Testing Technology (Jiangsu) Co., Ltd
- Aon Consulting, Inc.
- Aon Risk Services Central, Inc.
- APEX Clean Energy
- Aramark Refreshment Services, LLC
- Arbin Instruments
- ArentFox Schiff LLP
- Arizona Foundation Services, LLC
- Arm Inc.
- Arnold Machinery Company
- ARRGH Manufacturing INC
- As You Wish All Around Services
- Ascendia Group LLC
- Ashbaugh Energy Consulting
- Asheville Humane Society, Inc

- Ashok Kulkarni
- AT&T Corp
- Atlantic Training, LLC
- ATS Specialized Inc
- Auto Chen Ltd.
- AutomationDirect.com Inc
- Avalon Risk Management Insurance Agency LLC
- Axelliant LLC
- AYNA.AI LLC
- Backer Asia Limited
- BairesDev LLC
- Baker & Hostetler LLP
- Barco Rent A Truck
- Battery Innovation Center Institute, Inc.
- BBC Global News Limited
- BBC Steel Corporation
- BC Dimerco Logistics Corporation
- Beard Winter LLP
- BELFOR Property Restoration
- Bender Electronics Inc.
- Ben-X, LLC
- Bergstrom (Changzhou) Heat Exchangers Co., Ltd
- Berkshire Hathaway
- BeyondTrust Corporation
- BIAC Broadband USA Inc.
- Billion Electric Co., Ltd.
- Bitwarden, Inc.
- Black & McDonald
- Black Duck Software, Inc.
- Blackhawk Supply
- Blank Rome LLP
- Blomquist Consulting LLC
- Bluewater Battery Logistics, LLC
- BMO Bank N.A.
- BNSF Logistics, LLC
- Bock Trade Law
- Brady Worldwide Inc.
- Brian Palomino
- Brian Wiebe
- Bridge House Advisors Corp
- Briggs Service, Inc.
- Build AppliedLogix, LLC
- Building Automation Products, Inc.
- Building Champions Inc.
- Bull Mountain Heating & Cooling
- Business Talent Group, LLC
- Byron E Boone
- C.I. Services, Inc.
- C.L. Smith Co.
- c3controls
- California Department of Tax and Fee Administration
- Canary Marketing
- Canusa Logistics Inc.
- CapGemini America Inc.
- Capital Edge Construction
- Capitol Electric Co., Inc.
- Cardinal Utility Construction, Inc
- Career Partners, Inc.
- Carel USA, INC
- Cathleen Busha
- Caylent, Inc.
- CBMN Advisors LLC
- CCIC-CSA International Certification Co., Ltd
- Celestica (Thailand) Limited
- Celestica LLC
- Celigo, Inc.
- Centerline Communications
- CEP Portfolio 1A LLC
- CEVA Freight, LLC
- CEVA Logistics US, Inc.
- ChartHop, Inc.
- Christopher D Garza
- Chuweineng Testing Technology (Shanghai) Co., Ltd.
- Cintas Fire Protection
- Circulor Inc
- Citrin Cooperman Advisors LLC
- City of Portland
- City of Portland (Portland Fire & Rescue)
- City of Tualatin
- City Wide Facility Solutions
- CJC Transport LLC

- Clarion Safety Systems, LLC
- Clean Energy Services CES LLC
- CleanPeak Energy
- Clyde and Co
- CODE UNLIMITED LLC
- Codibly Inc.
- Cogent Communications, Inc.
- Cogent Renewables LLC
- Collins Construction Project Specialists Inc.
- Colvin Steel Inc
- Commercial Contractors, Inc.
- Commercial Relocation Group, Inc.
- Compensation Advisory Partners, LLC
- Concur Technologies, Inc.
- ConductorOne, Inc.
- CONSOLIDATED ELECTRICAL DIST.
- Construction Specialties, Inc.
- ContactMonkey Inc.
- Contemporary Amperex Technology Co., Limited (CATL)
- Contemporary Nebula Technology Energy Co., Ltd.
- Control Fire Systems
- Control Source Inc
- Convergent
- Copper State Bolt & Nut Co.
- Copytronix
- Cornerstone Web Studio LLC.
- Corrs Chambers Westgarth
- Cosco Shipping Project Logistics (Qingdao) Co., Ltd.
- Countryside
- Cousins USA Moving & Storage
- Crane Solutions LLC
- Crane Worldwide Logistics LLC
- Crating Technology, Inc
- Crescent Electric Supply Company
- Crowd Culture Pty Ltd
- Crowe LLP
- CSA America Testing & Certification LLC
- CSA Group Testing & Certification Inc.
- CSA Group Testing UK Limited
- CT Corporation
- CUATRECASAS GONÇALVES PEREIRA, S.L.P.
- Custom Air Products & Services, Inc
- D'Amico Catering
- Daniel Laurent
- Datanab
- David H Schroeder
- Davis Polk & Wardell LLP
- Davis Wright Tremaine LLP
- Dayton T. Brown, Inc.
- Deel Inc.
- Deep Sky Studios, LLC
- Dell Australia Pty Limited
- Delphi Precision Imaging Corporation
- Delta Dental Plan of Oregon
- Delta Systems Integration, Inc.
- Dentons US LLP
- Department of the Treasury
- Descartes Systems (USA) LLC
- DG Plus Design LLC
- Digi-Key Electronics
- Digital Third Coast Internet Marketing, Inc.
- DNV Energy USA, Inc.
- DNV Maritime and Energy S.L.U.
- DNV SERVICES UK LIMITED
- DNV Singapore Pte. Ltd.
- Doble Engineering Company
- DocuSign, Inc.
- Dometic Corporation
- Dong Fang International Container (Qingdao) Co., Ltd
- Douglas Stotland
- DTE Energy
- Dual Sea LLC
- Dynaco Testing LLC.
- Dynalectric Oregon
- Dynapower Company, LLC
- E.ON Interactive Design, Inc.

- East West Container Line Inc.
- EBARA Densan (Qingdao) Technology Co.,Ltd.
- EDF
- Edge Construction Supply LLC
- Edge2Cloud IoT, LLC
- EHS Insight
- Electrao - Associacao de Gestao de Residuos
- Ellis Creek LLC dba Ellis Creek Photography
- Emdoor Electronic Technology Co., Limited
- Encore Holdings LLC dba Encore Fire Protection
- Energy Security Agency
- Energy Storage Response Group LLC
- Energyear, S.L.
- EnergyRE
- Engineered Process Controls LLC
- Enrique C Mondragon
- Enterprise Holdings, Inc.
- Envision AESC US LLC
- Envoy, Inc.
- EPC Power Corp
- EPSoft® (AKA Aiotal Inc.)
- Erin Eisinger
- ESI, Inc. of Tennessee
- Estefania Ramirez
- esVolta
- ET Global
- ET Global GmbH
- ETAP
- Eurogility SL
- EVE POWER CO.,LTD.
- Everon, LLC
- Everstream Analytics
- Expeditors Canada, Inc
- Expeditors International de Mexico, S.A. de C.V.
- Expeditors International of Washington, Inc.
- Expeditors Tradewin, LLC
- Experience Knowledge Strategy, S.L.

- Export Internet Trade Systems, Inc.
- Express Employment Professionals
- Expresso Building Services LLC
- FAMCO
- FCD Labels
- Fedex
- FERASCO, LLC.
- Festival Chorale Oregon
- Field Office Property Owner LLC
- Fireaway Inc.
- FireSense Pty Ltd
- First Signal Fire Alarm Inc.
- FLEXOO GmbH
- Fluid Topics, Inc
- FMG Leading, LLC
- FMT Consultants, LLC
- Fobox Tecnologia Sustentable SA de CV
- FORA
- Forethought Life Insurance Company
- Formosa Electronic Industries Inc.
- Franchise Tax Board
- Freeths LLP
- FreeVoice Telecom
- FTI Consulting Inc.
- Functional Devices Inc.
- G&T Tax Advisers BV
- GALP
- Gamry Instruments, Inc.
- Gary Golden
- Gearcor LLC
- Geoffrey L Brown
- Georgian Bay Fire & Safety Ltd.
- Gerber Electronics
- GIC (New York) Inc.
- Gisi Marketing Group
- GLAS USA LLC
- Glidepath
- Global Mobility Solutions, LLC
- Go Firefly, Inc
- GoEngineer, LLC
- Golden Bridge International Inc
- Gomathi Parasuram
- Gotion, Inc.

- Grace Hughes
- Grainger
- Grand Prix Tickets GmbH
- Graybar Electronic Company Inc.
- GreEnergy Resources
- GRID Alternatives, Inc.
- Grid-Scale Advisors, LLC
- Grupo Gestiona-T Gestores, S.L.
- GTI Energy
- GTI Fabrication
- Guangdong Eugard Co, Ltd.
- Guangdong Gangjing Electric Heating Technology CO.LTD
- Guggenheim Securities, LLC
- Gurock Software GmbH
- H&E Equipment Services, Inc.
- H2 Oregon Bottled Water
- Hawaii Department of Taxation
- Haynes and Boone LLP
- HDS Marketing, Inc.
- Hecate
- Hefei Ecriee-Tamura Electric Co., LTD
- HELM LIFE
- Henan SEMI Science & Technology Co., Ltd.
- Hentzen Coatings Inc.
- Herc Rentals Inc.
- Hermans & Schuttevaer Notarissen Adviseurs Mediators
- Hitachi Energy USA Inc.
- Hithium Energy Storage Technology USA, Inc.
- HOF Equipment Company
- Hofy Inc
- Hofy Ltd
- Holger Teichgraeber
- Holland & Knight LLP
- Honeywell
- Hong Kong International Arbitration Centre
- Hottinger Bruel & Kjaer Inc.
- HR Partners Pte Ltd

- HSBC Bank USA, National Association
- Hsianglan Eschenbrenner
- Hub @ 202 Ownco, LLC
- HubSpot Inc.
- Hui Zhong Law Firm
- Huizhou Desay Battery Co., Ltd.
- Huizhou Topband Electrical Technology Co., LTD
- Hunt Energy Solutions
- Hunter-Davisson, Inc.
- Huron Transaction Advisory LLC
- I S Systems Pty Limited
- I&E Advisors LLC
- IANS
- IBASE SOLUTION CO., LTD
- IBE Electronics, Inc
- Idaho Power
- Idaho Specialized Transportation, Inc
- Idaho State Tax Commission
- IHS Global Inc.
- IMCO General Construction, Inc.
- Import Genius
- Incite Fire Pty Ltd
- Indeed, Inc.
- Industrial Automation and Enclosures Inc
- Industrial Climate Engineering
- Industrial Fans Direct
- Industrial Inspection Group Inc.
- Industrial Networking Solutions
- Industrial Painter LLC
- Industrial Rigging Service of Central Texas, Inc.
- Informa UK Limited
- Ingeteam Inc.
- Integrity Electrical Services Company, LLC
- Intelex Technologies ,ULC
- International SOS Assistance, Inc.
- Intertek Testing Services Ltd Shanghai
- Intertek Testing Services, N.A.
- Intralinks, Inc.

9

- Intro Messebau GmbH
- Invenergy
- IO HVAC Controls
- IOActive, Inc.
- IPFS Corporation
- ISN Software Corporation
- ITC Services Inc
- J.P. Morgan Chase Bank NA
- Jabil Inc.
- James T Dufour
- JAMF Software LLC
- Jason Bignall
- Jason Harbour
- JC Licht LLC
- JDM Legal & Consulting Services LLC
- Jensen Hughes, Inc.
- JHI ENGINEERING INC
- Jiaxing Lizi Electrical Co., LTD
- JMS Wind Energy, Inc.
- Job Mobz
- Joel A Snair
- John C Clapp
- John Paul Bogan
- Johnson Controls, Inc.
- Jonathan Moraglia
- Joral Technologies
- Julie J Stiglish
- Jupiter Power
- JYT Shipping LLC
- Kaiser Permanente
- Kaori Guymon
- Karbo Communications, Inc.
- KBF CPAs LLP
- KCE
- KELLER'S INC
- Kentec Electronics Limited
- Keysight Technologies, Inc.
- Kia Energy
- Kirkland & Ellis LLP
- KKR Credit Advisors (US) LLC
- Klarquist Sparkman, LLP
- Klautemis S.L.
- KLH Electrical Inc.
- KMC (project Brandywine Onward Energy)
- KnowBe4 Inc.
- Korn Ferry (US)
- KPC Power Electrical Ltd.
- KPMG LLP
- KPMG LLP (UK)
- Kroll, LLC
- Krue Industrial, LLC
- Kuehne + Nagel Inc.
- Kupono Solar, LLC
- Lance M Brown
- LandCare USA L.L.C
- Larson Electronics LLC
- Lateralworks
- Latest Craze Productions Inc
- Latitude Media
- Lawrence A Whittet
- Leader
- LeadFar Technologies Co., Ltd.
- Lee and Li, Attorneys-at-Law
- Leeward
- Legal Management Advisory, S.L.
- Level 4 Consulting, LLC
- LHH and LHH Recruitment Solutions
- Libess Service
- Li-Cycle Inc.
- Lifelines Counseling Services
- LingPerfect Translations, Inc.
- Linkedin Corp
- Live Nation Worldwide Inc.
- Loadmaster Crane, Inc.
- Logicalis Shanghai Limited
- LONG Building Technologies, Inc
- Longroad
- Lovelytics Data LLC
- Lu Pacific Properties, LLC
- Maanshan Hongming Electrical Equipment Trading Co. LTD
- Mackenzie
- Madison OFC Brickell FL LLC
- Mainfreight Air & Ocean Pty Ltd
- Mainfreight Inc.

- Mainz Brady Group, Inc.
- Malta Dynamics, LLC
- MAMAC Systems, Inc.
- Map Your Show, LLC
- Marc Vadillo Aguilar
- Marine Lumber CO Corp
- Markowitz Herbold PC
- Marriott Scottsdale Old Town
- Marterra Properties
- Marvair
- Masof, Inc
- Matrix Networks
- Maximum Machinery Moving, LLC
- Mayer Brown LLP
- McCarthy Tetrault LLP
- McGuireWoods Consulting LLP
- McKinsey & Company, Inc. United States
- McMASTER-CARR SUPPLY COMPANY
- MCPc, Inc.
- Meadowlark Mechanical LLC
- MECOP Inc.
- Megan Beatty
- Melissa Schwartz
- Mesa
- MESA Standards Alliance
- Messe Freiburg
- Messe Munchen GmbH
- Metaview Global Ltd
- Metro Access Control
- MG HR, S. de R.L. de C.V.
- MHPS
- Michael A McHargue
- Micro Epsilon America, LP
- Millennium Building Services, Inc
- Miller Nash Graham & Dunn LLP
- MinterEllison
- MMI-Machineworks LLC
- Mobile Mini, Inc.
- Mobile Modular Portable Storage
- Modelon Inc.
- monday.com Ltd
- Morgan Stanley & Co. LLC

- MotoGFX, LLC
- Mountain Alarm
- Mouser Electronics, Inc.
- Moxa Americas Inc.
- MSC Mediterranean Shipping Company S.A.
- Mulberry Talent Partners
- Muza Metal Products, LLC
- Nanjing HeBen M&E Equipment Technology Co., Ltd.
- National Fire & Safety Solutions, Inc.
- National Service Alliance – Houston LLC
- Nationwide Mutual Insurance Company
- Nationwide Transport Services LLC
- Naturgy Renewables USA Corp dba Front Range Midway Solar Project, LLC
- Navex
- Navis International Trade & Consulting Ltd
- Networkia Cuzco SL
- New York City Department of Finance
- New York State Corporation Tax
- New York State Department of Taxation
- New York State Unemployment Insurance
- Next Security LLC
- Nicholas Boxwell
- Nicholas V Escobar
- Nickalus Johnson
- Nidec
- Nippon Express (China) Co., Ltd. Guangzhou Branch
- Nippon Express USA Inc.
- NoBlue SaaS Limited
- Nomura Corporate Funding Americas, LLC
- North Coast Electric Company
- North Star Imaging, Inc.
- Northstock, Inc

11

- Norton Rose Fulbright US LLP
- NP Machineworks LLC
- N-Sci Technologies Inc.
- NW Facility Solutions, Inc
- O'Reilly Media, Inc.
- OfficeSpace Software Inc
- Oliver Rokoff
- Olori Crane Service, Inc.
- Omega Morgan Rigging - OR, Inc.
- Omni Logistics
- One Source Freight, LLC
- O'Neill Transfer & Storage Co., Inc.
- Onlinecomponents.com
- OnLogic, Inc.
- Onshape A PTC Business
- OPALCO
- Oracle America, Inc.
- Ormat
- Orr Protection Systems, Inc.
- OT Technology, Inc.
- OTIS Elevator Company
- Outcome Energy, LLC (Tim Healy)
- Pacific Customs Brokers Ltd.
- Pacific Fence & Wire Co.
- Paligo AB
- PAN Communications Inc.
- Panel Specialists, Inc.
- Pape' Material Handling, Inc.
- Parking NW, LLC
- PARS International Corp.
- Partners in Diversity
- PayCargo LLC
- PCdisposal.com LLC
- Pearce Services, LLC
- People 2.0 Industrial, LLC
- People 2.0 North America, LLC
- Perfect Meeting GmbH
- Perixx Computer GmbH
- Perkins Coie LLP
- Permian Energy Services
- Pioneer Packaging
- Platt Electric Supply
- PMC Treasury Inc
- PNM
- Poly Performance, Inc.
- Portland Marriott Downtown Waterfront
- Potter Anderson & Corroon LLP
- Power Electronics USA Inc.
- Powerflex
- PowerSecure
- PRAXIS Technology Escrow, LLC
- Premier Press
- Prevalon (Mitsubishi Power)
- PricewaterhouseCoopers Advisory Services LLC
- PriceWaterHouseCoopers Asesores De Negocios, S.L.
- PRIME AGENCY
- Principal Life Insurance Company
- Priority-1 Inc.
- Pristine Plumbing Inc.
- Procore Technologies, Inc.
- Procurement Inc. DBA: Pack-n-Tape
- Professional Plastics Inc
- Prolamsa
- Prolift Rigging Company, LLC
- Propeller Inc
- ProWireandCable LLC
- Pulse Clean Energy
- Pure Power Solutions
- PureSky
- PV Trade Media LLC
- PVM PRODUCTION JULIA MALCHER
- Qingdao CIMC Container Manufacture Co., Ltd
- Qingdao CIMC-POWIN New Energy Technology Co., Ltd
- QINGDAO HARVEST TRADING CO., LTD
- Qingdao Henka Precision Technology CO., Ltd
- Qingdao Sensnow Software Co., Ltd.
- Qingdao Sheng yuan lin Electric Co.,Ltd
- Quadro Communications
- Quailhurst Vineyard Estates

12

- Quality Water Financial, LLC
- Questyme USA
- R.H. Shipping & Chartering S De RL De CV
- R.S. Hughes Co., Inc.
- Radiate Holdings, LP
- Raindrop Supply Inc.
- Rand Worldwide Subsidiary Inc.
- Rapid7 LLC
- Reed Exhibitions Australia Pty Limited
- Reed Smith LLP
- Regence BlueCross BlueShield of Oregon
- Renew Energy Electrical LLC
- Renewable Energy Tax Advisors LLC
- Renewable Northwest Project
- Renewance, Inc.
- Repario Data LLC
- REPT BATTERO Energy Co., Ltd
- RES Energy Global Services, SLU
- RESA Service, LLC
- Residence Inn by Marriott LLC
- Resideo Singapore Pte Ltd
- Responsive
- Returning Veterans Project
- Reuters News & Media Limited
- Rexel USA, Inc.
- Rexgear. Inc.
- RH Shipping & Chartering (USA) LLC
- Richards, Layton & Finger, P.A.
- Robert Half International, Inc
- Robert Won
- Rocky Mountain Reserve, LLC
- Roland Berger LP
- Rose City Moving & Storage
- RRC Power & Energy, LLC
- RS
- Rubicon Professional Services, LLC
- Rubicon Technical Services, LLC
- Rudd & Company, PLLC
- Russell Reynolds Associates, Inc.
- Ryan Electric, Inc.
- S&P Global Inc.
- S.A.A. Logistics Inc
- S2 Imaging
- Saber Power Services, LLC
- SAFE Laboratories and Engineering Corp.
- Salary.com LLC
- Salesforce, Inc.
- SAS Institute Inc.
- Schneider Electric IT Corporation
- Schwartz Levitsky Feldman, LLP
- Scottsdale Marriott at McDowell Mountains
- SE Recycling Limited
- Security Packaging
- Senva, Inc.
- SGS-CSTC Standards Technical Services (Shanghai) Co., Ltd.
- Shanghai Shengrun Int'l Transport Co.,LTD
- Shanghai Hdmann Industry Co., Ltd
- SHANGHAI NINE HONESTY INTERNATIONAL CARGO AGENT CO.,LTD
- Sharpe & Abel Pty Lrd
- Sheldon Manufacturing, Inc.
- ShelterPoint Life Insurance Company
- Shenzhen Ace Battery Co., Ltd
- Shenzhen Baiqiancheng Electronic Co.,Ltd
- Shenzhen Envicool Technology Co., Ltd.
- Shenzhen TOPOS Sensor Technology Co., Ltd
- Sheraton Grand at Wild Horse Pass
- Shift Space, LLC
- Shimshi Inc.
- SIBA LLC
- Sigma Corporation
- Sigma Design Inc.
- Signtastic
- Siltherm Advanced Materials PTE LTD

- Slalom, Inc.
- SMA America, LLC
- SMA SOLAR TECHNOLOGY AG
- Smartsheet Inc.
- SMM Information & Technology Co., Ltd
- Social Inertia, Inc.
- Socomec, Inc.
- SOL Systems
- Solar Art
- Solar Energy Trade Shows, LLC dba RE+ Events, LLC
- Solar Media Limited
- Solas Energy Consulting U.S. Inc.
- Solution 7 Ltd
- SOLV Energy, LLC
- Solvida
- Sonic Systems International, LLC
- SourceOne Transportation
- Southco, Inc
- Southern Company
- Southwest Mobile Storage Inc.
- SP Garland Solar Storage, LLC
- SPAIN-US CHAMBER OF COMMERCE, INC.
- Spark Power Renewables Canada Inc.
- Spark Power Renewables USA, Inc
- Specified Technologies Inc.
- SPECTRUM FIRE PROTECTION
- Speedrack West
- Spencer Stuart
- Sphera Solutions, Inc.
- Spico Solutions, Inc.
- Stamford Language and Communication
- Standard Security Life Insurance Company of New York
- Stanley J Stevenson
- Star Incorporated
- State of New Jersey Department of Labor and Workforce Development
- Stem
- Step Function I-O LLC
- Stout Risius Ross, LLC

- Strata
- Strata Solar, LLC
- Strategy Learning Center LLC dba Outthinker
- Stuart H Statman
- Studio Legale Bird & Bird
- Summit EHSQ Inc.
- Sunbelt Rentals, Inc
- Sunbelt Solomon Services, LLC
- SunGrid Corp
- SunGrid Solutions
- Sunshine Middle East SL
- SuZhou Pioneer NewEnergy Testing Technology CO., LTD
- Syarikat Lan-Ric Industries Sdn. Bhd.
- Synopsys, Inc.
- T.N. DIRECT LIMITED
- Taiyuan Weiyang Testing Technology Service Co., Ltd
- Tarek Kanso dba Poler Werks LLC dba PolarX
- Tarlow Naito & Summers, LLP
- Tax Collector, Multnomah County
- Taylor Stewart
- Taylor's Technical Triage, Inc.
- Tech Heads Inc.
- Tech Talent Link, Inc.
- Tekscan Inc
- TEquipment/Touchboards
- TestEquity LLC
- The Boston Consulting Group, Inc.
- The City of Glenwood Springs
- The Contingent
- The EMC Shop
- The LRE Foundation
- The MIACON Group
- The Prudential Insurance Company of America
- The Prudential Insurance Company of America VB
- The Richardson Company
- The Sleeper Group LLC
- Thomson Reuters - West

- Thomson Reuters (Tax & Accounting) Inc.
- ThrivePass, Inc.
- Thyssenkrupp Materials NA, Inc.
- TLD Logistics Services, Inc.
- TMEIC Corporation
- Tomedes LLC
- Tonkon Torp LLP
- Topband Mexico S de RL de CV.
- TOPBAND SMART DONG NAI (VIET NAM) COMPANY LIMITED
- Total Quality Logistics, LLC
- Toyota Industries Commercial Finance, Inc.
- TPE Energy
- Trail Blazers Inc.
- TrailB Technologies LLC
- Trans Wagon Int'l Co., Ltd (Taichung Office)
- Transperfect International, LLC
- Transport Continental Inc
- Travel Incorporated
- Tricor Direct Inc DBA Emedco
- Trilantic Capital Management L.P.
- TRIM-LOK, INC
- Triple P RTS LLC
- Trivergix Group
- True Capital Partners LLC
- True Seals LLC
- Trullion (www.Trullion.com)
- Trumony Aluminum Limited
- TTI, Inc.
- Tube Art Group
- TUV Rheinland (Shanghai) Co., Ltd
- TUV Rheinland of North America, Inc.
- TUV Rheinland/CCIC (Qingdao) Co. Ltd
- TUV SUD America, INC.
- U.S. Customs and Border Protection
- U.S. Nameplate Co. Inc.
- Udemy, Inc
- UKG Inc.
- ULINE

- Ultra Corpotech Private Limited
- Unishippers
- United Rental
- United Site Services Northeast, Inc.
- United Site Services of California, Inc.
- United Site Services of Florida, LLC
- United Site Services of Nevada, Inc.
- United Way of Asheville and Buncombe County
- University of North Carolina at Chapel Hill
- US Bank Equipment Finance
- USI Insurance Services LLC
- VanderHouwen & Associates, Inc.
- VDE Americas, Inc.
- Vector Renewables Japan Kabushiki Kaisha
- Velocity EHS
- Veris Industries LLC
- Verizon
- Vision Service Plan
- Visual Aid Inc
- Voltility Group
- Vortex Industries, LLC
- Warwick Valley BBA, LLC
- Washington Consular Services, Inc
- Washington County - Property Tax Payment Center
- Washington County Dept. of Assessment & Taxation
- Weifang Genius Electronics Co., Ltd.
- Weiss Technik North America, Inc.
- Wesco Distribution, Inc
- Westin Riverfront Hotel
- White & Case LLP
- Williams Scotsman, Inc (dba WillScot)
- Willis Towers Watson Northeast, Inc.
- Willis Towers Watson West Insurance Services, Inc
- Wilson Fire Equipment & Service Company, Inc.

15

- Wilson Sonsini Goodrich & Rosati, P.C.
- Windy City Wire Cable & Technology Products, LLC
- Winthrop & Weinstine, P.A.
- Women in Cleantech and Sustainability
- Wood Mackenzie Inc
- Workbench Corp
- Worldwide Insurance Services, LLC
- WWR International Recruitment and Consulting Group SA DE CV

- Wynn Las Vegas, LLC
- Xenium Resources, Inc.
- Xerox Financial Services LLC
- XPLM Solution, Inc.
- Xuzhou G Battery International, Trade Co., Ltd.
- Yubico Inc
- Ziply Fiber
- Zitara Technologies, Inc.
- ZONE & COMPANY SOFTWARE CONSULTING, LLC
- Zuper, Inc.

**14.** **Others**

- FlexGen Power Systems, LLC
- Keyframe Capital Partners, L.P.

## Schedule 2

### Client Match List

None.

United States Bankruptcy Court

District of New Jersey

In re:                                                                                          Case No. 25-16137-MBK

Powin, LLC                                                                                Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-3                          User: admin                                          Page 1 of 5

Date Rcvd: Jul 22, 2025                  Form ID: pdf903                              Total Noticed: 1

The following symbols are used throughout this certificate:

**Symbol       Definition**

+               Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS
                regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 24, 2025:**

| Recip ID | Recipient Name and Address |
|---|---|
| db | + Powin, LLC, 20550 SW 115th Avenue, Tualatin, OR 97062-6857 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Jul 24, 2025                          Signature:            /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 22, 2025 at the address(es) listed below:

| Name | Email Address |
|---|---|
| Anne B. Sekel | on behalf of Creditor AMP Solar US Services LLC  n/k/a PureSky US Services LLC asekel@foley.com, jnicholson@foley.com;jlee@foley.com |
| Arthur Abramowitz | on behalf of Creditor Ace Engineering aabramowitz@shermansilverstein.com  jbaugh@shermansilverstein.com |
| Barbra Rachel Parlin | on behalf of Creditor Invenergy Services LLC barbra.parlin@hklaw.com elvin.ramos@hklaw.com;glenn.huzinec@hklaw.com,HAPI@HKLAW.COM;hapi@hklaw.com;jjalemany@hklaw.com |
| Barbra Rachel Parlin | on behalf of Creditor El Sol Storage Energy LLC barbra.parlin@hklaw.com elvin.ramos@hklaw.com;glenn.huzinec@hklaw.com,HAPI@HKLAW.COM;hapi@hklaw.com;jjalemany@hklaw.com |
| Barbra Rachel Parlin | on behalf of Creditor Invenergy Storage Development LLC barbra.parlin@hklaw.com elvin.ramos@hklaw.com;glenn.huzinec@hklaw.com,HAPI@HKLAW.COM;hapi@hklaw.com;jjalemany@hklaw.com |

Barbra Rachel Parlin
on behalf of Creditor Yuma Solar Energy LLC barbra.parlin@hklaw.com
elvin.ramos@hklaw.com;glenn.huzinec@hklaw.com,HAPI@HKLAW.COM;hapi@hklaw.com;jjalemany@hklaw.com

Barbra Rachel Parlin
on behalf of Creditor El Sol Energy Storage LLC barbra.parlin@hklaw.com
elvin.ramos@hklaw.com;glenn.huzinec@hklaw.com,HAPI@HKLAW.COM;hapi@hklaw.com;jjalemany@hklaw.com

Barbra Rachel Parlin
on behalf of Creditor Invenergy  LLC barbra.parlin@hklaw.com,
elvin.ramos@hklaw.com;glenn.huzinec@hklaw.com,HAPI@HKLAW.COM;hapi@hklaw.com;jjalemany@hklaw.com

Blake Denton
on behalf of Creditor FlexGen Power Systems  LLC blake.denton@lw.com

Brett S. Theisen
on behalf of Creditor GLAS USA LLC btheisen@gibbonslaw.com  nmitchell@gibbonslaw.com

Cameron Deane
on behalf of Creditor Toyota Industries Commercial Finance  Inc. cdeane@weltman.com

Daniel Harris
on behalf of Interested Party BHER Ravenswood Solar 1  LLC dharris@coleschotz.com, ddelehanty@coleschotz.com

Daniel Stolz
on behalf of Creditor Committee Official Committee of Unsecured Creditors dstolz@genovaburns.com
dstolz@ecf.inforuptcy.com;msousa@genovaburns.com

David A. Pisciotta
on behalf of Creditor GLAS USA LLC dpisciotta@reedsmith.com
david-pisciotta-4680@ecf.pacerpro.com;docketingecfnyc@reedsmith.com

David E. Sklar
on behalf of Interested Party Longroad Energy Partners  on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun
Streams Expansion, LLC dsklar@pashmanstein.com, lsalcedo@pashmanstein.com;gkarnick@pashmanstein.com

David E. Sklar
on behalf of Interested Party Poblano Energy Storage  LLC dsklar@pashmanstein.com,
lsalcedo@pashmanstein.com;gkarnick@pashmanstein.com

David E. Sklar
on behalf of Interested Party Longroad Development Company  LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC,
and Sun Streams Expansion, LLC dsklar@pashmanstein.com, lsalcedo@pashmanstein.com;gkarnick@pashmanstein.com

David E. Sklar
on behalf of Interested Party Leeward Renewable Energy  LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC,
and Antelope Valley BESS, LLC dsklar@pashmanstein.com, lsalcedo@pashmanstein.com;gkarnick@pashmanstein.com

David E. Sklar
on behalf of Interested Party DTE Electric Company dsklar@pashmanstein.com
lsalcedo@pashmanstein.com;gkarnick@pashmanstein.com

Deanna Boll
on behalf of Creditor Apex Clean Energy Holdings  LLC dboll@mwe.com, dnorthrop@mwe.com

Donald W Clarke
on behalf of Creditor Committee Official Committee of Unsecured Creditors dclarke@genovaburns.com
dclarke@ecf.inforuptcy.com;dclarke@ecfalerts.com

Douglas J. McGill
on behalf of Creditor Bergstrom Inc. dmcgill@webbermcgill.com

Felice R. Yudkin
on behalf of Interested Party BHER Ravenswood Solar 1  LLC fyudkin@coleschotz.com, fpisano@coleschotz.com

Frank A. Oswald
on behalf of Defendant Powin Energy Operating  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald
on behalf of Debtor PEOS Holdings  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald
on behalf of Defendant Powin  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald
on behalf of Debtor Charger Holdings  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co

District/off: 0312-3                            User: admin                                  Page 3 of 5
Date Rcvd: Jul 22, 2025                     Form ID: pdf903                          Total Noticed: 1

m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald

on behalf of Debtor Powin China Holdings 2  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald

on behalf of Defendant Powin Energy Operating Holdings  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald

on behalf of Debtor Powin Project LLC frankoswald@teamtogut.com
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald

on behalf of Debtor Powin Energy Ontario Storage  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald

on behalf of Debtor Powin China Holdings 1  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald

on behalf of Debtor Powin Energy Operating Holdings  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald

on behalf of Debtor Powin  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Frank A. Oswald

on behalf of Debtor Powin Energy Operating  LLC frankoswald@teamtogut.com,
seratner@teamtogut.com;dperson@teamtogut.com;bshaughnessy@teamtogut.com;altogut@teamtogut.com;jcohen@teamtogut.co
m;gquist@teamtogut.com;bkotliar@teamtogut.com;acarlin@teamtogut.com;eblander@teamtogut.com

Franklin Barbosa, Jr

on behalf of Creditor CS Energy  LLC fb@spsk.com, clm@spsk.com

Gail C. Lin

on behalf of Plaintiff Brian Palomino gcl@raisnerroupinian.com
rsr@raisnerroupinian.com;jar@raisnerroupinian.com;warnlawyers@raisnerroupinian.com;rrllp@ecf.courtdrive.com

Jaclynn McDonnell

on behalf of Creditor Committee Official Committee of Unsecured Creditors jmcdonnell@genovaburns.com
dmendez@genovaburns.com

James N. Lawlor

on behalf of Creditor Ulinda Park ProjectCo Pty Ltd jlawlor@wmd-law.com

James N. Lawlor

on behalf of Creditor Munmorah Battery ProjectCo Pty Ltd jlawlor@wmd-law.com

Jeffrey A. Cooper

on behalf of Interested Party Honeywell International Inc. jcooper@rltlawfirm.com
cooperatty@aol.com;rgaydos@rltlawfirm.com

Jeffrey M. Sponder

on behalf of U.S. Trustee U.S. Trustee jeffrey.m.sponder@usdoj.gov  jeffrey.m.sponder@usdoj.gov

Jennifer Hoover

on behalf of Creditor EPC Services Company jhoover@beneschlaw.com  docket2@beneschlaw.com;lmolinaro@beneschlaw.com

John Pintarelli

on behalf of Creditor Prevalon Energy LLC john.pintarelli@pillsburylaw.com

John Pintarelli

on behalf of Creditor Mitsubishi Power Americas  Inc. john.pintarelli@pillsburylaw.com

John S. Mairo

on behalf of Creditor Certain Funds and Accounts Managed by KKR Credit Advisors (US) LLC jmairo@gibbonslaw.com
pnbalala@pbnlaw.com;mpdermatis@pbnlaw.com;jmoconnor@pbnlaw.com

Joseph H. Lemkin

on behalf of Creditor Spark Power Renewables USA Inc. jlemkin@stark-stark.com

Joseph J. DiPasquale

District/off: 0312-3                          User: admin                                Page 4 of 5
Date Rcvd: Jul 22, 2025                       Form ID: pdf903                         Total Noticed: 1

on behalf of Interested Party Specified Technologies  Inc. Jdipasquale@foxrothschild.com,
cbrown@foxrothschild.com;msteen@foxrothschild.com

Kevin J. Mangan

on behalf of Interested Party SiriusPoint America Insurance Company kevin.mangan@wbd-us.com
Heidi.sasso@wbd-us.com;cindy.giobbe@wbd-us.com;nichole.wilcher@wbd-us.com

Kevin J. Mangan

on behalf of Interested Party Applied Surety Underwriters kevin.mangan@wbd-us.com
Heidi.sasso@wbd-us.com;cindy.giobbe@wbd-us.com;nichole.wilcher@wbd-us.com

Kevin J. Mangan

on behalf of Interested Party Pennsylvania Insurance Company kevin.mangan@wbd-us.com
Heidi.sasso@wbd-us.com;cindy.giobbe@wbd-us.com;nichole.wilcher@wbd-us.com

Kevin M. Capuzzi

on behalf of Creditor Mesa Logistics Group  LLC d/b/a Trivergix Group kcapuzzi@beneschlaw.com,
docket2@beneschlaw.com;lmolinaro@beneschlaw.com

Kevin M. Capuzzi

on behalf of Creditor Mainfreight Inc. kcapuzzi@beneschlaw.com  docket2@beneschlaw.com;lmolinaro@beneschlaw.com

Kyriaki Christodoulou

on behalf of Creditor Arevon Energy  Inc. kchristodoulou@cullenllp.com

Lauren Bielskie

on behalf of U.S. Trustee U.S. Trustee lauren.bielskie@usdoj.gov

Lauren M. Macksoud

on behalf of Debtor Powin Energy Ontario Storage II LP lauren.macksoud@dentons.com  docket.general.lit.nyc@dentons.com

Lauren M. Macksoud

on behalf of Debtor Powin Canada B.C. Ltd. lauren.macksoud@dentons.com  docket.general.lit.nyc@dentons.com

Lauren M. Macksoud

on behalf of Debtor Powin  LLC lauren.macksoud@dentons.com, docket.general.lit.nyc@dentons.com

Lauren M. Macksoud

on behalf of Debtor Powin Energy Storage 2  Inc. lauren.macksoud@dentons.com, docket.general.lit.nyc@dentons.com

Leah Eisenberg

on behalf of Interested Party Longroad Energy Partners  on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun
Streams Expansion, LLC leisenberg@pashmanstein.com, leah-eisenberg-0344@ecf.pacerpro.com;gkarnick@pashmanstein.com

Leah Eisenberg

on behalf of Interested Party Leeward Renewable Energy  LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC,
and Antelope Valley BESS, LLC leisenberg@pashmanstein.com,
leah-eisenberg-0344@ecf.pacerpro.com;gkarnick@pashmanstein.com

Leah Eisenberg

on behalf of Interested Party DTE Electric Company leisenberg@pashmanstein.com
leah-eisenberg-0344@ecf.pacerpro.com;gkarnick@pashmanstein.com

Leah Eisenberg

on behalf of Interested Party Longroad Development Company  LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC,
and Sun Streams Expansion, LLC leisenberg@pashmanstein.com,
leah-eisenberg-0344@ecf.pacerpro.com;gkarnick@pashmanstein.com

Leah Eisenberg

on behalf of Interested Party Poblano Energy Storage  LLC leisenberg@pashmanstein.com,
leah-eisenberg-0344@ecf.pacerpro.com;gkarnick@pashmanstein.com

Lee M. Cortes, Jr

on behalf of Interested Party Celestica LLC lee.cortes@arnoldporter.com

Lynne B. Xerras

on behalf of Creditor Yuma Solar Energy LLC lynne.xerras@hklaw.com

Lynne B. Xerras

on behalf of Creditor Invenergy Storage Development LLC lynne.xerras@hklaw.com

Lynne B. Xerras

on behalf of Creditor Invenergy  LLC lynne.xerras@hklaw.com

Lynne B. Xerras

on behalf of Creditor Invenergy Services LLC lynne.xerras@hklaw.com

Lynne B. Xerras

on behalf of Creditor El Sol Storage Energy LLC lynne.xerras@hklaw.com

Lynne B. Xerras

on behalf of Creditor El Sol Energy Storage LLC lynne.xerras@hklaw.com

District/off: 0312-3                                    User: admin                                    Page 5 of 5

Date Rcvd: Jul 22, 2025                               Form ID: pdf903                               Total Noticed: 1

Mark S. Lichtenstein
    on behalf of Creditor Sonic Systems International  LLC mark.lichtenstein@akerman.com, Reyko.delpino@akerman.com

Michael Trentin
    on behalf of Creditor EDF Power Solutions  Inc. mtrentin@orrick.com, ssallie@coleschotz.com;dcarnie@orrick.com

Michael Trentin
    on behalf of Creditor EsVolta  L.P. mtrentin@orrick.com, ssallie@coleschotz.com;dcarnie@orrick.com

Michael P. Pompeo
    on behalf of Creditor Keyframe Capital Partners  L.P. michael.pompeo@faegredrinker.com, cathy.greer@faegredrinker.com

Nicholas Blaine Vislocky
    on behalf of Creditor GLAS USA LLC nvislocky@reedsmith.com

Paul R. DeFilippo
    on behalf of Creditor Munmorah Battery ProjectCo Pty Ltd pdefilippo@wmd-law.com

Paul R. DeFilippo
    on behalf of Creditor Ulinda Park ProjectCo Pty Ltd pdefilippo@wmd-law.com

Richard Solow
    on behalf of Creditor GLAS USA LLC rsolow@reedsmith.com  rich-solow-3519@ecf.pacerpro.com

Richard B Harper
    on behalf of Creditor Idaho Power Company richard.harper@bakerbotts.com  john.mitchell@bakerbotts.com

Ross J. Switkes
    on behalf of Creditor Ace Engineering rswitkes@shermansilverstein.com

Sameer Alifarag
    on behalf of Creditor Pulse Clean Energy SPV Watt Limited sameeralifarag@eversheds-sutherland.com

Sameer Alifarag
    on behalf of Creditor JMS Wind Energy  LLC sameeralifarag@eversheds-sutherland.com

Steven Abramowitz
    on behalf of Creditor Lone Star Solar  LLC sabramowitz@velaw.com,
mmoran@velaw.com;kgrissel@velaw.com;tmitsch@velaw.com;kduchesne@velaw.com

Steven Abramowitz
    on behalf of Creditor Ad Hoc Customer Group sabramowitz@velaw.com
mmoran@velaw.com;kgrissel@velaw.com;tmitsch@velaw.com;kduchesne@velaw.com

Susan Long
    on behalf of Creditor Committee Official Committee of Unsecured Creditors slong@genovaburns.com

Turner Falk
    on behalf of Creditor Key Capture Energy  LLC turner.falk@saul.com, catherine.santangelo@saul.com;tnfalk@recap.email

Turner Falk
    on behalf of Creditor KCE NY 3  LLC turner.falk@saul.com, catherine.santangelo@saul.com;tnfalk@recap.email

Turner Falk
    on behalf of Creditor KCE TX 7  LLC turner.falk@saul.com, catherine.santangelo@saul.com;tnfalk@recap.email

Turner Falk
    on behalf of Creditor KCE TX 2  LLC turner.falk@saul.com, catherine.santangelo@saul.com;tnfalk@recap.email

Turner Falk
    on behalf of Creditor KCE TX 8  LLC turner.falk@saul.com, catherine.santangelo@saul.com;tnfalk@recap.email

U.S. Trustee
    USTPRegion03.NE.ECF@usdoj.gov


TOTAL: 92