| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Lee M. Cortes, Jr.<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>One Gateway Center, Suite 1025<br>Newark, NJ 07102<br>Telephone: (973) 776-1900<br>Email: lee.cortes@arnoldporter.com<br><br>and<br><br>Benjamin Mintz (*pro hac vice* forthcoming)<br>Justin Imperato (*pro hac vice* forthcoming)<br>Gabby Ferreira (*pro hac vice* forthcoming)<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>250 West 55th Street<br>New York, NY 10019<br>Telephone: (212) 836-8000<br>Email: benjamin.mintz@arnoldporter.com<br>       justin.imperato@arnoldporter.com<br>       gabby.ferreira@arnoldporter.com<br><br>*Counsel for Celestica LLC* | |
| In re:<br><br>POWIN, LLC, *et al.*,[1]<br><br>             Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS TO NOTICE OF POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

Celestica LLC ("Celestica") submits this limited objection and reservation of rights (this "Objection")[2] with respect to the *Notice of Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 446] (the "Cure Notice") served on Celestica by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). In support of this Objection, Celestica respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the District of New Jersey*, dated as of September 19, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Celestica consents to the entry of a final order on this Objection if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE DEBTOR-CUSTOMER'S AGREEMENT WITH CELESTICA[3]

4. Powin, LLC (the "Debtor-Customer") and Celestica executed that certain Agreement for Manufacture effective as of March 6, 2021 (the "Agreement"). The Agreement sets out the terms and conditions upon which Celestica will manufacture and supply to the Debtor-Customer certain Products and supply certain Services. The Agreement applies to all Orders for Products and agreed upon Services placed by the Debtor-Customer and accepted by Celestica, and

---

[2] Unless otherwise provided, capitalized terms used but not defined in this Objection shall have the meanings given to them in the Bid Procedures Order (as defined below).

[3] Solely for this section of this Objection, capitalized terms used but not otherwise defined shall have the meanings given to them in the Agreement.

obligates the Debtor-Customer to pay undisputed invoices, without setoff or deduction, net sixty (60) days from the date of the Debtor-Customer's receipt of invoice.

5. The Debtor-Customer placed, and Celestica accepted, certain Orders for Products and Services. The Debtor-Customer, however, as of the date hereof, has not paid Celestica for many of the obligations incurred by it under the Agreement.

**PROCEDURAL BACKGROUND**

6. On June 9, 10, and 22, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee")[4] in the Chapter 11 Cases. No other committees have been appointed in these Chapter 11 Cases and to date, no request has been made for the appointment of a trustee or examiner.

7. Since the Petition Date, the Debtors have neither assumed nor rejected the Agreement under Bankruptcy Code section 365.

8. On July 1, 2025, the Debtors filed the *Motion of the Debtors for Entry of an Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections, (II) Approving Bidding Procedures By Which Interested Parties May Bid and an Auction Sale Format in Connection with the Sale of Substantially All of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and*

---

[4] Celestica serves as one of nine members of the Committee.

*Best Bidder, and (VII) Authorizing the Sale of Debtors' Property Free and Clear of All Causes of Action and Claims* [Docket No. 228] (the "Bid Procedures Motion"), seeking approval of: (i) bidding procedures by which interested parties may bid and an auction sale format in connection with the sale of substantially all of the Debtors' assets, (ii) designating a stalking horse bidder (the "Stalking Horse Bidder") and approving stalking horse bidder protections; (iii) approving the form of Asset Purchase Agreement, (iv) approving the form of notice to be provided to interested parties, (v) authorizing the assumption and assignment of certain contracts that are selected for assumption and assignment and notice procedures thereto, (vi) scheduling a court hearing to consider approval of the sale to the highest and best bidder, and (vii) authorizing the sale of the Debtors' property free and clear of all causes of action and claims.

9. On July 17, 2025, the Court entered an order approving the Bid Procedures Motion. *See* Docket No. 413 (the "Bid Procedures Order"). Pursuant to the Bid Procedures Order and the Cure Notice, the Debtors may potentially assume and assign to the Winning Bidder one or more of the executory contracts and unexpired leases listed on Exhibit A to the Cure Notice (collectively, the "Subject Contracts"), pursuant to section 365 of the Bankruptcy Code and subject to compliance with the requirements set forth therein. The Debtors also indicated on Exhibit A to the Cure Notice the cure amounts that the Debtors believe must be paid to cure any defaults under the Subject Contract (in each instance, the "Cure Payment").

10. Among other Subject Contracts and their corresponding Cure Payments, the Cure Notice lists:

| Debtors | Counterparty | Cure Payment Amount | Contract Title | Term Remaining |
|---|---|---|---|---|
| Powin, LLC | Celestica LLC | $18,513,376.57 | Agreement for Manufacture | Evergreen |

4

11. The Bid Procedures Order also addresses the adequate assurance of future performance that will be provided by a Winning Bidder, including the Stalking Horse Bidder, to Subject Conract counterparties and provides that:

> [t]he payment of the applicable Cure Payments by the Debtors and/or the Winning Bidder shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the ultimately assumed Contract by the Debtors and the assignment of such Contract by the Winning Bidder, constitute adequate assurance of future performance thereof [(the "Adequate Assurance")].

Bid Procedures Order ¶23(b).

12. The Cure Notice further provides that objections to: (1) the proposed Cure Payments, (2) a proposed assignment to the Stalking Horse Bidder of any Subject Contract, or (3) the ability of the Stalking Horse Bidder to provide adequate assurance of future performance with respect to any Subject Contract must: (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of these Chapter 11 Cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payments, state the correct Cure Payments alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (d) be filed with the Court and served and actually received no later than July 28, 2025 at 5:00 p.m. (EST) (the "Stalking Horse Objection Deadline") by (i) the Debtors, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel to the Committee, (iv) the Stalking Horse Bidder, and (v) any other party that has filed a notice of appearance in these Chapter 11 Cases.  *See* Cure Notice at 2.

13. The Stalking Horse Objection Deadline does not, however, encompass objections to (1) a proposed assignment to the Winning Bidder who is not the Stalking Horse Bidder of a Subject Contract or (2) the ability of the Winning Bidder who is not the Stalking Horse Bidder to

provide adequate assurance of future performance with respect to any Subject Contract; such objections are due on or before August 5, 2025 at 5:00 p.m. (EST). *See* id.

## LIMITED OBJECTION

14. Celestica objects to the Cure Notice because the proposed Cure Payment in Exhibit A fails to account for certain amounts and obligations which are or may be owed to Celestica. Additionally, the Debtors have not provided sufficient adequate assurance of future performance of the Agreement from the Stalking Horse Bidder; the Adequate Assurance is not sufficient under section 365(b)(1)(C) of the Bankruptcy Code.

15. Section 365(b) of the Bankruptcy Code sets forth the conditions that a debtor must satisfy to assume an executory contract. In pertinent part, Section 365(b) provides:

> (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . .;
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). Thus, to assume a contract, Section 365(b) requires a debtor to cure defaults, 11 U.S.C. § 365(b)(1)(A), compensate for losses, 11 U.S.C. § 365(b)(1)(B), and provide adequate assurance, 11 U.S.C. § 365(b)(1)(C), thereby protecting the creditor's pecuniary interests before requiring a creditor to continue a contractual relationship with a debtor. *See Stolz v. Brattleboro Hous. Auth. (In re Stolz)*, 315 F.3d 80, 94 (2d Cir. 2002).

16. Any order entered authorizing the Debtors to assume and assign the Agreement must be amended in no less than six (6) respects for the Debtors to comply with Section 365:

A. First, the amount necessary to cure all monetary defaults under the Agreement as of the date hereof totals not less than $29,916,759.28, not $18,513,376.57, and consists of (a) $11,935,625.68 for Products and Services that were delivered and provided but not paid for by the Debtor-Customer, *see* Agreement § 10.1, (b) $10,261,259.60 for unpaid E&O Inventory, *see id.* § 16.3, (c) $1,219,874 for late charge fees incurred in connection with the unpaid amounts referenced in (a)-(b), *see id.* § 10.3, and (d) $6,500,000 for Operation Costs. *See id.* §§ 3.10, 3.11.[5]

B. Second, the Debtors' proposed Cure Payment does not take into consideration the passage of time between the filing of the Cure Notice and the effective date of any assumption and assignment of the Agreement by the Debtors. Accordingly, any order that is entered establishing the Cure Payment with respect to the Agreement must require that the Debtors (i) comply with all obligations under the Agreement pursuant to 11 U.S.C. § 365(d)(3) pending the actual assumption and assignment of the Agreement, and (ii) cure any defaults that may occur under the Agreement between the date of the Cure Notice and the effective date of any assumption and assignment by the Debtors. *See* 11 U.S.C. § 365(b)(1).

C. Third, the Debtors' proposed Cure Payment does not include amounts that may become due under the Agreement after the Agreement is assumed and assigned, but which may relate to the pre-assumption and assignment period (e.g., certain Taxes due pursuant to section

---

[5] The Agreement, invoices, and other documentation supporting the not less than $29,916,759.28 required Cure Payment to Celestica are subject to confidentiality provisions in the Agreement and the terms of that certain Confidentiality Agreements dated as of June 24, 2021 between the Debtor-Customer and Celestica. Moreover, upon information and belief, the Debtors have access to the supporting documentation. Accordingly, Celestica did not include supporting documentation with this Objection but will make such documents available to the Debtors upon their request.

10.3 of the Agreement). Accordingly, any order establishing the Cure Payment in connection with the assumption and assignment of the Agreement must provide for the payment of all charges due and/or accrued in the ordinary course under the terms of the Agreement, in addition to any specified Cure Payment.

D. Fourth, the Agreement provides that the Debtors must indemnify and hold Celestica harmless with respect to certain third-party claims, costs, damages, fines, losses, and expenses (including reasonable attorneys' fees) that may not become known until after the assumption and assignment of the Agreement (*e.g.*, intellectual property infringement claims arising from any specifications or software provided to Celestica by the Debtors). *See* Agreement § 19.1. Accordingly, any order approving the assumption and assignment of the Agreement should provide that any assignee of the Agreement will succeed to all of the Debtors' obligations thereunder, including but not limited to the Debtors' indemnification obligations, regardless of when the events giving rise to those obligations occurred.

E. Fifth, Section 365(b)(1)(C) requires the Debtors to provide Celestica with adequate assurance of future performance. They have not done so in connection with the potential assumption and assignment of the Agreement, offering instead only the Adequate Assurance provided for in the Bid Procedures Order. The Adequate Assurance, however, solely addresses existing defaults under the Agreement and not a Winning Bidder's, including the Stalking Horse Bidder's, ability to satisfy future obligations. The Adequate Assurance is therefore insufficient under Section 365(b)(1)(C). *See In re Martin Paint Stores* 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996) (holding a debtor or assignee must provide adequate assurance that it will be able to satisfy future obligations under the subject agreement). The Stalking Horse Bidder has not provided financial statements, projections or any other documentation that demonstrate it will be able to

8

meet its future obligations under the Agreement. Until it does, the Agreement cannot be assumed and assigned. *See In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach").

    F. Finally, Celestica asserts that, if the Debtors seek to assume and assign the Agreement, the proposed assignee should be required to execute a short-form assumption and assignment agreement with Celestica in connection with the proposed assignment of the Agreement so that Celestica will be in privity with the assignee.

## RESERVATION OF RIGHTS

17. Celestica files this Objection under compulsion of the Stalking Horse Objection Deadline set forth in the Cure Notice and the Bid Procedures Order. Celestica reserves its right to amend, modify, or supplement this Objection on any basis, including without limitation by adding or supplementing objections to the Debtors' proposed Cure Payment to Celestica and by adding or supplementing objections to the adequate assurance of future performance provided by the Debtors or the Stalking Horse Bidder as the proposed assignee.

18. Celestica further reserves its right, if necessary, to object to the Debtors' assumption and assignment of the Agreement to a Winning Bidder who is not the Stalking Horse Bidder, including without limitation objecting to the sufficiency of the Adequate Assurance and the sufficiency of any additional adequate assurance such Winning Bidder may offer.

*[Remainder of the Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, Celestica respectfully requests that any order entered with respect to the Cure Notice: (i) establish a Cure Payment with respect to the Agreement consistent with the relief requested in this Objection; (ii) require the Debtors and/or the Stalking Horse Bidder to provide sufficient adequate assurance of the Stalking Horse Bidder's ability to perform in the future under the Agreement, and (iii) grant Celestica such other and further relief as is just and proper.

Dated: July 28, 2025
New York, NY

*/s/ Lee M. Cortes, Jr.*
Lee M. Cortes, Jr.
**ARNOLD & PORTER KAYE SCHOLER LLP**
One Gateway Center, Suite 1025
Newark, NJ 07102
Telephone: (973) 776-1900
Email: lee.cortes@arnoldporter.com

and

Benjamin Mintz (*pro hac vice* forthcoming)
Justin Imperato (*pro hac vice* forthcoming)
Gabby Ferreira (*pro hac vice* forthcoming)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
Telephone: (212) 836-8000
Email: benjamin.mintz@arnoldporter.com
justin.imperato@arnoldporter.com
gabby.ferreira@arnoldporter.com

# **CERTIFICATE OF SERVICE**

      I, Lee M. Cortes, Jr., hereby certify that the *Limited Objection and Reservation of Rights to Notice of Potentially Assumed Executory Contracts and Unexpired Leases* was filed and served on July 28, 2025 via CM/ECF on all parties registered to receive notice in these Chapter 11 cases, including without limitation (i) counsel to the Debtors, (ii) the Office of the United States Trustee for the District of New Jersey, (iii) counsel to the Committee, and (iv) counsel to the Stalking Horse Bidder.

      */s/ Lee M. Cortes, Jr.*
      Lee M. Cortes, Jr.