Case 25-16137-MBK    Doc 548    Filed 07/28/25    Entered 07/28/25 15:44:41    Desc Main
Document      Page 1 of 9

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**DLA PIPER LLP (US)**<br>51 John F. Kennedy Parkway<br>Suite 120<br>Short Hills, New Jersey 07078<br>Telephone: (973) 520-2550<br>Stuart M. Brown (NJ 26641988)<br>Email:   stuart.brown@us.dlapiper.com<br><br>*Counsel to CIMC Energy Storage Technology Co., Ltd., CIMC Technology Co., Ltd., Qingdao CIMC Container Manufacture Co. Ltd. and China International Marine Containers (Group) Co., Ltd.* | |
| **In re:**<br><br>**POWIN, LLC, et al.,**<br><br>Debtors.[1] | Chapter 11<br><br>Case Number: 25-16137 (MBK)<br><br>(Joint Administration Requested) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS
OF CIMC TO NOTICE OF POTENTIALLY ASSUMED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

CIMC Energy Storage Technology Co., Ltd. ("CIMC Energy Storage"), CIMC Technology Co., Ltd. ("CIMC Technology"), Qingdao CIMC Container Manufacture Co. Ltd. ("Qingdao CIMC") and China International Marine Containers (Group) Co., Ltd. ("CIMC Parent") (collectively, with any parent, subsidiary, or any other affiliate entities, "CIMC"), by and through their undersigned counsel, hereby file this limited objection and reservation of rights (the "Limited Objection") in response to the Notice of Potentially Assumed Executory Contracts and Unexpired

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487]. (the "Debtors").

Leases [D.I. 446] (the "Cure Notice") filed by the debtors in the above-captioned cases (the "Debtors").  In support of this Limited Objection, CIMC respectfully states as follows:

## GENERAL BACKGROUND

1. Since at least March 2023, CIMC and Powin, LLC and Powin China Holdings 2, LLC ("Powin China," and together with Powin, LLC, "Powin") have had an ongoing business relationship.  The relationship commenced on March 1, 2023, when Powin, LLC entered into a Manufacturing Service Agreement (the "MSA") with Qingdao CIMC, which thereafter began delivering products to Powin under the terms of the MSA.

2. The relationship broadened on April 6, 2023, when Powin China, CIMC Technology and Qingdao CIMC entered into a Joint Venture Agreement (the "JV Agreement") that created Qingdao CIMC-POWIN New Energy Technology Co., Ltd. (the "JV").[2]  The original purpose for establishing the JV was to manufacture for Powin the *Stack* series of products, which the Debtors had launched in 2020, and which the JV planned to produce using intellectual property contributed by Powin and manufacturing expertise and working capital contributed by CIMC.  Powin was in the business of developing, supplying, constructing, and managing battery energy storage systems ("BESS"); CIMC, in turn, was in the separate business of providing contract manufacturing services, including with respect to the manufacturing and/or assembly of components of BESS.

3. In exchange for a 30% stake in the JV, Powin committed to provide 60 million RMB ($8,370,000) as a capital contribution, 42 million RMB ($5,859,000) of which has been paid and 18 million RMB ($2,511,000) of which remains outstanding and must be paid on or before

---

[2] CIMC Technology and CIMC Qingdao are no longer members of the JV.  In August 2023, CIMC Technology transferred its 50% stake to CIMC Energy Storage, and, in September 2023, Qingdao CIMC transferred its 20% stake to CIMC Energy Storage.  Such transfers were made in full compliance with § 13.2 of the JV Agreement.

2

April 6, 2026.[3]  CIMC retained a 70% stake in the JV, along with all board, management, and operational control.  In addition, under Section 5.5 of the JV Agreement, Powin agreed to purchase not less than 7,300 *Stack 750* (5.5 GWh) Energy Segments from the JV (the "Minimum Volume Commitment") for each of the financial years 2023, 2024 and 2025—which commitment Powin China has, to date, failed to satisfy.

4. In connection with entry into the JV Agreement, the MSA, to which Powin, LLC and Qingdao CIMC were parties, was transferred to the JV, and, effectively, incorporated into the JV Agreement.  (JV Agreement § 5.2(b).)  After the establishment of the JV, all the rights and obligations of Qingdao CIMC under the MSA were transferred and assigned to the JV, with was Qingdao CIMC having no continuing role or liability (*Id*.) Upon completion of such transfer, all products were to be delivered by and booked for the account of the JV.  (*Id*. § 5.2(c).)

5. Thereafter, based upon the procedures set forth in the JV Agreement and the MSA, CIMC delivered to the Debtors the products requested, with the related invoices from JV, for purchases totaling in the aggregate in excess of $544 million in the period between formation of the JV and the Petition Date.  The JV invoices were paid by the Debtors in the ordinary course.

6. On the Petition Date, as reflected in the Debtors' Schedules, the JV (together with CIMC Energy Storage) were owed not less $52,333,353.[4]  [D.I. 427.]  Based on CIMC's own records, however—as will be reflected in the proof of claim CIMC will file—the Debtors' number is incorrect, omitting a number of items, including (i) the accrual of late fee charges at a rate of 1.5% per month; and (ii) compensation to CIMC for orders that were never delivered to the Debtors, but which had already been in process and for which specialty materials had been purchased in an amount that has

---

[3] In 2024, the JV distributed approximately 21 million RMB ($2,927,400) to Powin as dividends payable based on JV profits.

[4] CIMC continues to diligence this number, in consultation with its various suppliers, to reconcile it with CIMC's books and records.

3

not yet been fully liquidated. Including these items could increase the actual aggregate total outstanding under the MSA to an amount substantially in excess of the $52,333,353 proffered in the Schedules.

7. CIMC's records also reflect that, under the JV Agreement, Powin China owed the JV/CIMC (i) not less 18 million RMB ($2,511,000) on account of the unpaid portion of Powin China's capital commitment to the JV; and (ii) 95 million RMB ($13,252,500) on account of Minimum Volume Commitment purchases that Powin China failed to make and on account of which it made no payments. Thus, the aggregate amount owed under both the JV Agreement and the MSA is not less than (and potentially materially more than) $78,763,500.

8. The Cure Notice made no reference to the existence of, or the amounts outstanding under, the MSA; and listed the JV Agreement as an executory contract subject to a cure payment of $0.00 (the "Proposed Cure Amount") (Cure Notice Ex. A, at 16.)

**LIMITED OBJECTION**

9. The Debtors owe CIMC payment in full for all amounts outstanding under both the JV Agreement and the MSA, including, without limitation, amounts owed for outstanding MSA purchases and payments, late payment charges, the costs incurred by CIMC in connection with in-process but undelivered products, delinquent capital contributions, and missing Minimum Volume Commitment purchases and payments. In light of this fact, CIMC objects to the Cure Notice because it is owed an amount significantly greater than the Proposed Cure Amount—certainly not the $0.00 cure proposed by the Debtors.

10. This would be the case if one looked—as one may not—solely to the JV Agreement and the amounts outstanding thereunder. On this front, CIMC's records reflect that, under the JV Agreement, Powin China owes CIMC and/or the JV (i) not less 18 million RMB ($2,511,000) on

4

account of the unpaid portion of Powin China's capital commitment to the JV; and (ii) 95 million RMB ($13,252,500) on account of Minimum Volume Commitment purchases that Powin China failed to make and on account of which it made no payments—for a total amount outstanding under the JV Agreement of not less than $15,763,500.

11. However, in assessing the cure costs payable if the Stalking Horse Bidder (or another bidder) seeks to assume the JV Agreement, one cannot look solely to the JV Agreement, but rather one must look to both the JV Agreement and the MSA, the terms of which are fully integrated into terms of the JV Agreement. Assumption or rejection of an executory contract must be done in its entirety; the executory contract cannot be assumed or rejected in part. *In re Fleming Co., Inc., 499 F.3d 300, 308* (3d Cir. 2007); *In re Buffet Holdings, Inc.,* 387 B.R. 115, 119 (Bankr. D. Del. 2008) (stating that debtor "must assume all the terms of the lease and may not pick and choose only favorable terms to be assumed"). The rationale underlying this fundamental principle is that a debtor may not retain the benefits of a lease without accepting its burdens. *Id.*

12. However, in a well-recognized variation on this rule, courts may consider together related agreements and conclude that, as a group, they comprise a single "integrated" agreement; or, conversely, review a single contract and find that it includes multiple agreements that are "severable" or "divisible," thereby permitting a debtor to assume part of the contract while rejecting its other, severable parts. *See, e.g., In re Aneco Elec. Const., Inc.*, 326 B.R. 197, 201 (Bankr. M.D. Fla. 2005) (finding that "the Subcontract Agreement entered by the Debtor and Turner . . . constitutes a single, indivisible contract for electrical work . . . and that the subsequent Work Orders did not effect a severance of the contract into two separate and independent 'subcontracts.'"); *In re Ecoventure Wiggins Pass, Ltd*., 406 B.R. 115, 120 (M.D. Fl. 2009) ("Under Florida law, where two or more documents are executed by the same parties, at or near the same

5

time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract."); *In re Foothills Texas, Inc.*, 476 B.R. 143, 154 (Bankr. D. Del. 2012) ("Absent evidence to the contrary, Texas courts will not treat a contract as severable where the parties have not done so themselves."); *In re Nickels Midway Pier, LLC*, 341 B.R. 486, 496 (D.N.J. 2006), aff'd, 255 F. App'x 633 (3d Cir. 2007)("If there be a single assent to a whole transaction involving several things or several kinds of property, a contract is always entire."); *Buffet Holdings,* 387 B.R. at 120 (stating "[i]f a single contract contains separate, severable agreements . . . the debtor may reject one agreement and not another").

13. The determination of whether an agreement is "severable" or "indivisible" is a question of state or local law. *See In re T&H Diner, Inc.,* 108 B.R. 448, 453 (D.N.J. 1989) ("The question of divisibility is a matter of state law"). Both the JV Agreement and the MSA Agreement are governed by the law of China, and, under Chinese law, whether a contract is severable turns on the intent of the parties. The intent of the parties, in turn, is to be ascertained based on the general meaning of words and phrases of the relevant clauses, the nature and purpose of the contract, customs, and the principle of good faith, by reference to factors such as the circumstances under which the contract was executed, the negotiation process, and performance under the contract.

14. Here, it is clear beyond doubt that the JV Agreement and MSA were intended to operate together as the single "indivisible" contract governing a very active contract manufacturing and product delivery business between Powin and CIMC. The MSA was signed up first, and deliveries were made under it for a short period, but it was soon superseded by the JV Agreement, which expressly incorporated into its terms the terms of the MSA, and memorialized this incorporation by execution of a new MSA (the "JV MSA") between Powin and the JV that was

6

identical (other than as to identities of the signatories) to the original MSA. . (JV Agreement § 5.2(b).)

15. Under such circumstances, the JV Agreement and the JV MSA are in no way "severable" or "divisible," but rather "integrated" on multiple levels, so one cannot be assumed without the other; both agreements must be assumed and the amounts outstanding under both agreements paid in order to satisfy the "cure" requirement of section 365(a)(1). Thus, the Proposed Cure Amount should be not less than $78,763,500.

## RESERVATION OF RIGHTS

16. This Limited Objection is submitted without prejudice and with a full reservation of rights to supplement, amend, and to further object to the Cure Notice on any grounds that may arise. Nothing in this Limited Objection is intended to be, nor shall be deemed to be, a waiver of any of the rights, claims, defenses, or other interests arising out of or related to the JV Agreement and the JV MSA, including as to the amount and bases for claims that CIMC may ultimately include in any proof of claim filed in these Chapter 11 Cases.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, CIMC respectfully requests that this Court adjust the Proposed Cure Amount to reflect the total amount owed to CIMC under the JV Agreement and JV MSA, as set forth herein.

Dated: July 28, 2025
      Short Hills, New Jersey      Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ Stuart M. Brown
Stuart M. Brown (NJ Bar No. 26641988)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078
Telephone: (973) 520-2550
Email: stuart.brown@us.dlapiper.com

- and -

Dennis C. O'Donnell (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: dennis.odonnell@us.dlapiper.com

*Counsel to CIMC Energy Storage Technology Co., Ltd., CIMC Technology Co., Ltd., Qingdao CIMC Container Manufacture Co. Ltd. and China International Marine Containers (Group) Co., Ltd.*

## **CERTIFICATE OF SERVICE**

I, Stuart M. Brown, hereby certify that on this 28th day of July, 2025, I caused the foregoing *Limited Objection and Reservation of Rights of CIMC to Notice of Potentially Assumed Executory Contracts and Unexpired Leases* to be served by this Court's CM/ECF system.

 */s/ Stuart M. Brown*
Stuart M. Brown (NJ Bar No. 26641988)