**Exhibit "A"**

# COMPROMISE SETTLEMENT AGREEMENT AND MUTUAL RELEASE

The following terms of this COMPROMISE SETTLEMENT AGREEMENT AND MUTUAL RELEASE (this "**Settlement Agreement**") are entered into and agreed to by and between Leeward Renewable Energy, LLC ("**LRE**") and Powin, LLC ("**Powin**"). LRE and Powin are collectively referred to herein as the "**Parties**" and each, individually, a "**Party**" to this Settlement Agreement.

This Settlement Agreement is entered into as of April 24, 2025 (the "**Effective Date**").

## RECITALS

**WHEREAS**, LRE is the owner of the managing member of each of the following project entities: Rabbitbrush Solar, LLC ("**Rabbitbrush**"), Chaparral Springs, LLC (as successor in interest to Chaparral Solar, LLC and Willow Springs Solar 3, LLC, "**ChapSprings**"), and Antelope Valley BESS, LLC (f/k/a AVEP BESS, LLC, "**AVEP**")(together, the "**LRE Project Entities**"). LRE and the LRE Project Entities are referred to herein collectively as the "**LRE Parties**" or, individually, as an "**LRE Party**;"

**WHEREAS**, the LRE Project Entities own and operate renewable energy projects in Kern County, California known as the Rabbitbrush 1 and Rabbitbrush 2 Projects, the Chaparral Springs Projects (Chap 1 being the successor to the Chaparral Solar Project, and Chap 2 being the successor to the Willow Springs Solar 3 Project), and the AVEP BESS Project (together, the "**Projects**"), and Powin is the battery energy storage system supplier for each of the Projects;

WHEREAS, various of the LRE Parties are parties to the following supply and service agreements with Powin (in each case as amended to date, the "**Existing Agreements**"):

- that certain Battery Energy Storage System Supply Agreement (ESSA) for the Rabbitbrush 1 Project between Rabbitbrush and Powin dated July 9, 2021 (the "**Rabbitbrush 1 ESSA**");

- that certain Battery Energy Storage System Supply Agreement (ESSA) for the Rabbitbrush 2 Project between Rabbitbrush and Powin dated July 9, 2021 (the "**Rabbitbrush 2 ESSA**");

- that certain Energy Storage System Supply Agreement (ESSA) for the Chap 1 Project between ChapSprings (as successor in interest to Chaparral Solar, LLC) and Powin dated July 27, 2022 (the "**Chap 1 ESSA**");

- that certain Energy Storage System Supply Agreement (ESSA) for the Chap 2 Project between ChapSprings (as successor to Willow Springs Solar 3, LLC) and Powin dated July 27, 2022 (the "**Chap 2 ESSA**");

- that certain Energy Storage System Supply Agreement (ESSA) between AVEP and Powin dated December 21, 2022 (the "**AVEP BESS ESSA**");

- that certain Long Term Services Agreement (LTSA) for the Rabbitbrush 1 Project between Rabbitbrush and Powin dated March 18, 2022 (the "**Rabbitbrush 1 LTSA**");

- that certain Long Term Services Agreement (LTSA) for the Rabbitbrush 2 Project between Rabbitbrush and Powin dated March 18, 2022 (the "**Rabbitbrush 2 LTSA**");

- that certain Long Term Services Agreement (LTSA) for the Chap 1 Project between ChapSprings (as successor in interest to Chaparral Solar, LLC) and Powin dated August 8, 2022 (the "**Chap 1 LTSA**");

- that certain Long Term Services Agreement (LTSA) for the Chap 2 Project between ChapSprings (as successor to Willow Springs Solar, LLC) and Powin dated August 8, 2022 (the "**Chap 2 LTSA**"); and

- that certain Long Term Services Agreement (LTSA) between AVEP and Powin dated December 15, 2022 (the "**AVEP BESS LTSA**");

**WHEREAS**, the LRE Parties and Powin have asserted claims, demands, and positions against one another under the Existing Agreements and/or related to the Projects, and have threatened, alleged, or asserted various claims and causes of action against each other, all of which are denied by the party accused (the "**Dispute**"); and

**WHEREAS**, the Parties seek and desire to settle fully and finally any and all differences and claims between them related to the Dispute as of the Effective Date of this Settlement Agreement in accordance with the terms hereof and by executing or causing the execution of such other agreements or delivering such other documents as contemplated by this Settlement Agreement, to govern the relationships between Powin and the LRE Parties going forward as amendments to the Existing Agreements and under the (to-be-executed) Augmentation Agreements;

**NOW, THEREFORE**, in consideration of the mutual releases and mutual promises and agreements contained herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties voluntarily agree as follows:

**AGREEMENT**

1. **Full and Final Settlement as of the Effective Date**. In consideration of the Parties mutually executing this Settlement Agreement and undertaking the obligations, terms and commitments herein (and therein), in full settlement of any claims, damages, payments, equitable relief, or any other relief to which any of the Parties has claimed, or could claim to be entitled as of the Effective Date, the Parties are executing the full, complete releases contained in this Settlement Agreement, with each of the Parties bearing its own costs and fees in connection therewith

2. **April 2025 Payment by the LRE Parties**. The Parties agree that LRE shall pay or cause to be paid to Powin the total amount of $30,000,000 (thirty million U.S. dollars), plus applicable sales tax, by April [24], 2025 (the "*April 2025 Payment*"). This shall be the only

payment to Powin under this Settlement Agreement. The April 2025 Payment shall be allocated as follows:

- $22 million of the April 2025 Payment shall be considered full, final payment by the respective LRE Parties to Powin of the Contract Prices under the Chap 1 ESSA, Chap 2 ESSA, and AVEP BESS ESSA; i.e., full satisfaction and resolution of any Powin claims for payment of any kind under these ESSAs (consistent with, and after application of, the mutually agreed liquidated damage amounts and corresponding reductions in Contract Price stated in the ESSA Change Orders described in paragraph 3).

  Powin acknowledges on its behalf under each of the Chap 1 ESSA, the Chap 2 ESSA, and the AVEP BESS ESSA, respectively, that the April 2025 Payment serves as full and final resolution of any and all claims, damages, payments, equitable relief, or any other relief to which Powin has claimed, or could claim to be entitled under the ESSAs or related to the Dispute as of the Effective Date, and that the LRE Parties shall make no further payments to Powin under such ESSAs or related to the Dispute, beyond the amount stated in this paragraph 2 of this Settlement Agreement.

- $8 million of the April 2025 Payment shall be considered a non-refundable deposit and payment to Powin for a portion of the respective LRE Project Entities' obligations (the contract price under the Augmentation Agreements) described below in paragraph 5.

3.  **Execution of Change Orders to the Existing ESSAs**.  Powin shall execute and deliver to the appropriate LRE Party change orders to the respective Existing Agreements (ESSAs) below for each of the Chap 1, Chap 2, and AVEP Projects (collectively, the "***ESSA Change Orders***") that reflect the following, plus applicable sales tax:

    (a)    **Change Order to the Chap 1 ESSA:**

| | |
|---|---:|
| Total Contract Price | $63,009,988 |
| Agreed Performance LDs – Reduction in Contract Price | ($6,851,625) |
| Balance of Contract Price (paid via allocation from the April 2025 Payment) | $5,750,413 |
| Final Contract Price | $56,158,363 |

    (b)    **Change Order to the Chap 2 ESSA:**

| | |
|---|---:|
| Total Contract Price | $44,483,856 |
| Agreed Performance LDs  -- Reduction in Contract Price | ($4,690,021) |
| Balance of Contract Price (paid via allocation from the April 2025 Payment) | $4,206,750 |
| Final Contract Price | $39,793,835 |

(c) **Change Order to the AVEP ESSA:**

| | |
|---|---:|
| Total Contract Price | $156,526,238 |
| Agreed Performance LDs – Reduction in Contract Price | ($19,262,411) |
| Balance of Contract Price (paid via allocation from the April 2025 Payment) | $12,042,837 |
| Final Contract Price | $137,263,827 |

Each of Powin and LRE acknowledges and agrees that the April 2025 Payment and the adjustments to the respective Contract Prices under the respective ESSA Change Orders in this paragraph 3 and the LTSA Change Orders in paragraph 4 represent the full and final satisfaction and resolution of, and consideration for the mutual release of, any and all claims for (i) any Liquidated Damages claimed or owed by or to any party under the applicable Existing Agreements; (ii) any amounts owed or claimed to be owed by or to either Party in connection with any Force Majeure Event or Buyer-Caused Delay occurring before the Effective Date of this Settlement Agreement; (iii) any amounts claimed by Powin under any proposed, requested, or draft change orders; (iv) any amounts owed or claimed to be owed by any LRE Party for any freight true up or similar shipment fees; and (v) any other amounts owed or claimed to be owed (x) to Powin by any of the LRE Parties or (y) to any of the LRE Parties by Powin, arising out of or related to any of the ESSAs, whether such claims are known or unknown, and whether such claims were asserted or could have been asserted.

Each ESSA Change Order shall contain release language substantially similar to the foregoing, which shall be updated to be effective as of the CO Execution Date. LRE shall seek consent from the respective financing parties for the Projects and, by no later than May 30, 2025 and conditioned upon receipt of such consent, LRE shall cause the LRE Project Entities to countersign such ESSA Change Orders. (The date of the execution of such ESSA Change Orders shall be referred to herein as the "*CO Execution Date*".)

4. **Execution of Change Orders to the Existing LTSAs**. Powin shall execute and deliver to the appropriate LRE Party change orders to the respective Existing Agreements (LTSAs) below for each of the Chap 1, Chap 2, and AVEP Projects (collectively, the "*LTSA Change Orders*") that reflect the following:

(a) **Change Order to Chap 1 LTSA:**

| | |
|---|---:|
| LTSA Years 1-4 | $2,115,010 |
| Reduction in LTSA Fees (Years 1-4) | ($2,115,010) |
| LTSA Years 5-15 | $5,472,528 |
| Reduction in LTSA Fees for Years 5-15 (applied to and recognized in Year 5) | ($139,585) |

(b) **Change Order to the Chap 2 LTSA:**

| | |
|---|---:|
| LTSA Years 1-4 | $1,709,026 |

| | |
|---|---:|
| Reduction in LTSA Fees (Years 1-4) | ($1,709,026) |
| LTSA Years 5-15 | $4,356,071 |
| Reduction in LTSA Fees for Years 5-15 (applied to and recognized in Year 5) | ($102,071) |

(c) **Change Order to the AVEP LTSA:**

| | |
|---|---:|
| LTSA Years 1-4 | $3,494,298 |
| Reduction in LTSA Fees (Years 1-4) | ($3,494,298) |
| LTSA Years 5-15 | $8,921,818 |
| Reduction in LTSA Fees for Years 5-15 (applied to and recognized in Year 5) | ($257,385) |

LRE shall seek consent from the respective financing parties for the Projects and, by no later than May 30, 2025 and conditioned upon receipt of such consent, LRE shall cause the respective LRE Project Entities to countersign such LTSA Change Orders.

5.      **Augmentation Agreements**. Powin shall execute and deliver to the appropriate LRE Party Augmentation Agreements with respect to the Chap 1, Chap 2, and AVEP Projects (collectively, the "*Augmentation Agreements*") that reflect the following:

(a)     **Augmentation Agreement for Chap 1:**

| | |
|---|---:|
| Augmentation Total to be Paid | $5,241,960 |
| Augmentation Deposit (paid via allocation from April 2025 Payment) | ($2,000,000) |
| Remaining to be Paid in Future | $3,241,960 |

(b)     **Augmentation Agreement for Chap 2:**

| | |
|---|---:|
| Augmentation Total to be Paid | $3,533,616 |
| Augmentation Deposit (paid via allocation from April 2025 Payment) | ($2,000,000) |
| Remaining to be Paid in Future | $1,533,616 |

(c)     **Augmentation Agreement for AVEP BESS:**

| | |
|---|---:|
| Augmentation Total to be Paid | $12,436,839 |
| Augmentation Deposit (paid via allocation from April 2025 Payment) | ($4,000,000) |
| Remaining to be Paid in Future | $8,436,839 |

The Augmentation Agreements shall be based on Powin's current standard terms and conditions and the final and definitive documentation shall be mutually agreed between the respective parties, but the Parties agree that deliveries under the Augmentation Agreements shall be made DDP (placing tariff risk on Powin); provided that Powin shall retain sole discretion regarding sourcing and importation strategy. The Parties agree to reasonably cooperate with respect to any relief from stated delivery schedules in the Augmentation Agreements requested by the other respective party to mitigate tariff impacts and risk; however, any such contractual schedule changes shall be mutually agreed by the Parties in writing. The Parties agree and acknowledge that all Powin product supplied under the Augmentation Agreements shall comply with the then-current Kern County (CA) Fire Department codes, rules, and regulations governing the Projects (including the required UL Listing). LRE shall seek consent from the respective financing parties for the Projects and, by no later than May 30, 2025 or such other date as mutually agreed between the Parties, and conditioned upon receipt of such consent, LRE shall cause the LRE Project Entities to countersign such Augmentation Agreements.

6.     **Release and Waiver by LRE**   In exchange for Powin's agreement to the terms of this Settlement Agreement, including Powin's commitment to execute the agreements and other documents described herein, and other good and valuable consideration, effective as of the Effective Date, LRE, for itself and on behalf of any of its current and former owners, partners, members, shareholders, equity holders, principals, directors, officers, managers, employees, agents, investors, attorneys, administrators, insurers, advisors, or other representatives, heirs, beneficiaries, trustees, estates, executors, divisions, predecessors, successors, and assigns (collectively, the "*LRE Releasors*"), hereby and forever waives and releases Powin and any and all of Powin's affiliated companies or entities or related parties, and any of the foregoing's respective current and former owners, partners, members, shareholders, equity holders, principals, directors, officers, managers, employees, agents, investors, attorneys, administrators, insurers, advisors, or other representatives, heirs, spouses, beneficiaries, trustees, estates, executors, divisions, predecessors, successors, and assigns (collectively, the "*Powin Releasees*") from any and all claims, complaints, charges, suits, demands, duties, debts, costs, expenses, obligations, damages, liabilities, or causes of action of any kind or nature, in law, equity, or otherwise, whether presently known or unknown, suspected or unsuspected, disclosed or undisclosed, accrued or contingent (collectively, the "*LRE Releasor Claims*"), that LRE or any of the other LRE Releasors ever had, now have, or might have against any of the Powin Releasees related to or arising from the Dispute, the Existing Agreements or the Projects and accruing or arising at any time prior to or on the Effective Date of this Settlement Agreement.

Notwithstanding the foregoing, the release and waiver in this Section 6 does not release or otherwise affect the obligations and commitments undertaken in this Settlement Agreement. Furthermore, the release and waiver in this Section 6 does not release or otherwise affect the Parties' obligations and commitments, arising after the Effective Date, to comply with the Existing Agreements, as amended by this Settlement Agreement and the agreements and other documents described in this Settlement Agreement.

7.     **Release and Waiver by Powin**. In exchange for LRE's agreement to the terms of this Settlement Agreement, including LRE's commitments related to the agreements and other documents described herein, and other good and valuable consideration, effective as of the Effective Date, Powin, for itself and on behalf of any and all of Powin's affiliated companies or

entities or related parties, and any of the foregoing's respective current and former owners, partners, members, shareholders, equity holders, principals, directors, officers, managers, employees, agents, investors, attorneys, administrators, insurers, advisors, or other representatives, heirs, beneficiaries, trustees, estates, executors, divisions, predecessors, successors, and assigns (collectively, the "**Powin Releasors**") hereby and forever waives and releases the LRE Parties and any and all of their affiliated companies or entities or related parties, and any and all of the foregoing's respective current and former owners, partners, members, shareholders, equity holders, principals, directors, officers, managers, employees, agents, investors, attorneys, administrators, insurers, advisors, or other representatives, heirs, spouses, beneficiaries, trustees, estates, executors, divisions, predecessors, successors, and assigns (collectively, the "**LRE Party Releasees**") from any and all claims, complaints, charges, suits, demands, duties, debts, costs, expenses, obligations, damages, liabilities, or causes of action of any kind or nature, in law, equity, or otherwise, whether presently known or unknown, suspected or unsuspected, disclosed or undisclosed, accrued or contingent (collectively, the "**Powin Releasor Claims**," and together with the LRE Releasor Claims, the "**Claims**"), that Powin or any of the other Powin Releasors ever had, now have, or might have against any of the LRE Party Releasees related to or arising from the Dispute, the Existing Agreements or the Projects and accruing or arising at any time prior to or on the date the Parties execute this Settlement Agreement.

Notwithstanding the foregoing, the release and waiver in this Section 7 does not release or otherwise affect the obligations and commitments undertaken in this Settlement Agreement. Furthermore, the release and waiver in this Section 7 does not release or otherwise affect the Parties' obligations and commitments, arising after the Effective Date, to comply with the Existing Agreements, as amended by this Settlement Agreement and the agreements and other documents described in this Settlement Agreement.

        8.      **Knowing and Voluntary Release**. Each Party acknowledges that its signing of this Settlement Agreement has been knowing and voluntary, of its own free will, and that it has not been coerced or threatened in any way in connection therewith. Each Party represents and warrants as follows: (a) such Party has carefully read and fully understands all of the terms, conditions, and significance of the Settlement Agreement and its final and binding effect; (b) such Party is fully competent to manage its business affairs, and has full authority to release the Claims set forth herein, and has not assigned such Claims to any other person or entity; (c) such Party understands it is waiving legal rights it may have by signing the Settlement Agreement, including, without limitation, those in connection with any Claims, whether known or unknown, in existence prior to or on the date of this Settlement Agreement; (d) such Party is not relying on any statement, written or oral, which is not set forth in the Settlement Agreement, and such Party hereby expressly disclaims reliance on any statement, written or oral, which is not set forth in the Settlement Agreement; (e) such Party is being advised by the other Parties to consult with an attorney of its choosing before signing the Settlement Agreement; (f) such Party has been allowed sufficient time to consider and accept the Settlement Agreement and either has consulted with an attorney or elected not to consult with an attorney in connection therewith; and (g) such Party hereby acknowledges and agrees that it is knowingly and voluntarily waiving and releasing its rights and Claims in exchange for consideration (something of value) in addition to anything of value to which such Party is already entitled.

9. **Breach of Settlement Agreement**. Should any Party breach the terms of this Settlement Agreement, then (a) each other Party shall have all rights and remedies available to it under the Settlement Agreement; and (b) all of each Party's promises, covenants, representations, certifications, acknowledgments, and warranties under this Settlement Agreement shall remain in full force and effect.

10. **Severability**. Should any provision of this Settlement Agreement be invalidated or held to be unenforceable, all other provisions of this Settlement Agreement shall nevertheless remain in full force and effect in accordance with their terms. Should any provision be found to be overly broad or otherwise unenforceable, it shall be limited only to the extent necessary to make it fully enforceable and shall be enforced as so limited.

11. **Non-Admission**. The Parties acknowledge and agree that none of this Settlement Agreement, nor any component thereof, is an admission of liability, but instead was entered into and made to resolve disputed matters and to end the cost, uncertainty, risk, and distraction of any litigation or other dispute resolution process or pursuing the Parties' various Claims.

12. **Entire Agreement/Amendment**. This Settlement Agreement (and, once executed by the LRE Project Entities, the agreements described herein to amend the Existing Agreements) set forth the entire agreement between the Parties and supersede any other written promises or oral understandings between the Parties concerning the subject matter hereof. Each Party acknowledges and agrees that no other verbal or written promises or agreements have been offered for the Settlement Agreement (other than those expressly contained therein) and that no other promises or agreements between any of the Parties will be binding unless they have been reduced to writing and signed by the Parties and expressly referencing this Settlement Agreement. The Settlement Agreement may be amended, modified, canceled, renewed, or extended, and the terms may be waived, only by a written instrument signed by the Parties, or in the case of a waiver, by the Party waiving compliance.

13. **GOVERNING LAW**. THIS SETTLEMENT AGREEMENT AND ALL CLAIMS OR CAUSES OF ACTION (WHETHER IN CONTRACT, TORT, OR STATUTE) THAT MAY BE BASED UPON, ARISE OUT OF, OR RELATE TO THE NEGOTIATION, EXECUTION, OR PERFORMANCE OF THIS SETTLEMENT AGREEMENT, SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF.

14. **DISCLAIMER OF RELIANCE**. EACH PARTY ACKNOWLEDGES, AND WAIVES AND RELEASES ANY CLAIM TO THE CONTRARY, THAT NEITHER SUCH PARTY, NOR ANY AGENTS OR COUNSEL OF SUCH PARTY, HAS MADE ANY STATEMENTS, PROMISES, REPRESENTATIONS, OR WARRANTIES, EXPRESS OR IMPLIED, NOT CONTAINED HEREIN, TO INDUCE THE OTHER PARTY'S EXECUTION OF THIS SETTLEMENT AGREEMENT. EACH PARTY FURTHER ACKNOWLEDGES THAT SUCH PARTY (A) IS NOT RELYING ON ANY STATEMENTS, PROMISES, REPRESENTATIONS, OR WARRANTIES OF ANY PARTY BEING RELEASED HEREBY; AND (B) IS SOLELY RELYING UPON SUCH PARTY'S JUDGMENT. EACH PARTY REPRESENTS AND WARRANTS THAT SUCH

**PARTY IS NOT EXECUTING THIS SETTLEMENT AGREEMENT IN RELIANCE ON ANY PROMISE, REPRESENTATION, OR WARRANTY NOT CONTAINED HEREIN. EACH PARTY REPRESENTS AND WARRANTS THAT SUCH PARTY HAS CONDUCTED AN INDEPENDENT INVESTIGATION AND THAT SUCH PARTY HAS HAD THE OPPORTUNITY TO CONSULT WITH THE COUNSEL OF SUCH PARTY'S CHOICE AND HAS SO CONSULTED. EACH PARTY SPECIFICALLY DISCLAIMS RELIANCE ON ANY REPRESENTATIONS MADE BY THE OTHER PARTY, EXCEPT FOR THOSE REPRESENTATIONS THAT ARE SPECIFICALLY REDUCED TO WRITING IN THIS SETTLEMENT AGREEMENT.**

15. **WAIVER OF JURY TRIAL**. **THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION, PROCEEDING OR OTHER HEARING BROUGHT BY EITHER PARTY BASED UPON OR ARISING OUT OF THIS SETTLEMENT AGREEMENT OR ANY OF THE AGREEMENTS OR OTHER DOCUMENTS DESCRIBED HEREIN, OR ANY DEALINGS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER OF THIS SETTLEMENT AGREEMENT, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THE PARTIES EACH ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTERING INTO THIS SETTLEMENT AGREEMENT, THAT EACH OF THE PARTIES ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS SETTLEMENT AGREEMENT, AND THAT EACH OF THE PARTIES WILL CONTINUE TO RELY ON THIS WAIVER IN ANY RELATED FUTURE DEALINGS BETWEEN THE PARTIES. THE PARTIES FURTHER WARRANT AND REPRESENT THAT THEY EACH KNOWINGLY AND VOLUNTARILY WAIVE THEIR RESPECTIVE JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. EACH OF THE PARTIES CERTIFIES AND ACKNOWLEDGES THAT (a) NO REPRESENTATIVE, AGENT, OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (b) SUCH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, AND (c) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY. THE PARTIES EXPRESSLY AGREE TO WAIVE ANY AND ALL RIGHTS THEY MAY HAVE TO A TRIAL BY JURY IN CONNECTION WITH ANY MATTER RELATING TO THIS SETTLEMENT AGREEMENT.**

16. **Third-Party Beneficiaries**. The Powin Releasees and the LRE Party Releasees are express third-party beneficiaries of this Settlement Agreement.

17. **Counterparts**. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

18. **Costs and Fees.** As additional consideration, the Parties agree to pay their respective costs and expenses incurred to date. The Parties shall have no obligation to pay any part of any fees incurred by any other Party, whether directly or indirectly.

19. **Section Numbers and Headings.** Section numbers and section titles have been set forth in this Settlement Agreement are for convenience only, and shall not be construed to limit or extend the meaning or interpretation of any part of this Settlement Agreement.

20. **Binding Nature of this Settlement Agreement**. This Settlement Agreement is binding on all Parties and is not subject to revocation by any Party.

[*Signature Page to Follow*]

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement to be effective as of the Effective Date.

POWIN, LLC,

By: *Jeff Waters*
Jeff Waters
Chief Executive Officer

LEEWARD RENEWABLE ENERGY, LLC,

By: *Jason Allen*
Jason Allen
Chief Executive Officer