**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS
OF ULTRA CORPOTECH PRIVATE LIMITED AND ULTRA
CORPOTECH INC. TO THE DEBTORS' NOTICE OF POTENTIALLY
ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Ultra Corpotech Private Limited ("UCPL") and Ultra Corpotech Inc. ("UCI" and collectively with UCPL, "Ultra") hereby file this Limited Objection and Reservation of Rights (this "Objection") to the *Notice of Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 446] (the "*Cure Notice*") filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in connection with the *Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections, (II) Approving Bidding Procedures by Which Interested Parties May Bid and an Auction Sale Format in Connection With the Sale of Substantially All of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP, [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

1

*(VII) Authorizing the Sale of the Debtors' Property Free and Clear of All Causes of Action and Claims* [Docket No. 413] (the "Bid Procedures Order"). Ultra submits this Objection to reserve its rights in connection with any cure claim and intends to work with counsel for the Debtors to agree on the correct cure amount. In support of its Objection, Ultra respectfully states as follows:

**Background**

1. On June 9, 2025 (the "Petition Date"),[2] the Debtors each commenced a voluntary case (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. Prior to the Petition Date, Powin LLC ("Powin") and UCPL, its subsidiaries, and affiliates (including UCI) entered that certain *Material Supply Agreement* (the "MSA")[3] dated as of August 1, 2023, which set forth the terms and conditions on which Ultra would sell, and Powin would purchase assemblies, components, and other supplies for Powin's energy storage systems according to Powin's proprietary specifications. Under the MSA, purchase and sale of one or more components are initiated by submitting purchase orders to UCPL or its subsidiaries, including UCI. MSA § 4.6. The goods are specialized and cannot be resold. The MSA provides,

> Powin will have the right to cancel, sixty (60) days prior to the applicable Delivery Date of the particular Components (the "Cancellation Deadline"), any Purchase Order (or part thereof applicable to one or more particular Components). In the event of cancellation of all or a portion of any Purchase Order within sixty (60) days of the Delivery Date, Powin shall pay to Supplier all documented costs incurred by Supplier, which includes the full price for such delivered Components,

---

[2] Certain of the Debtors filed voluntary petitions on June 9, 2025, June 10, 2025, and June 22, 2025, respectively. Unless otherwise stated herein, the term "Petition Date" refers to June 9, 2025, the Date Powin, LLC commenced the above-captioned Chapter 11 Cases.

[3] Due to the proprietary and confidential terms of the MSA, it has not been attached hereto or otherwise provided in support of this Objection, but will be made available upon written request, a showing of need, and entry of a protective order, as appropriate and acceptable to Ultra and the Debtors

    works in progress, cost for raw materials, and finished goods inventory tied to such cancelled Purchase Order; and provided that such cost cannot be assigned to another Purchase Order; further provided, that Supplier provides appropriate documentation to support an invoice for such costs and charges.

MSA § 4.6.

  3. Additionally, pursuant to Section 8.3, upon termination of the MSA, "Powin shall pay to Supplier all documented costs incurred by Supplier, which includes the full price for such delivered Components, works in progress, cost for raw materials, and finished goods inventory which cannot be reasonably cancelled or re-assigned by Supplier, in accordance with Section 4.6; further provided that Supplier provide appropriate documentation to support an invoice for such costs and charges."

  4. As of the June 9, 2025, Petition Date, there was an outstanding balance due and owing from Powin to UCPL under the MSA of $3,215,744.53 and $0 to UCI. However, this is exclusive of any amounts owed for goods delivered after the Petition Date, work-in-progress, finished goods, taxes (MSA § 4.9), demurrage, or additional amounts due in connection with cancelled and/or changed orders under the MSA. Ultra is reviewing its records to verify and will supplement this Objection as necessary.

  5. On July 17, 2025, the Court entered the Bid Procedures Order, which, among other things, approved FlexGen Power Systems, LLC as the stalking horse bidder, approved bidding procedures by which interested parties may bid in connection with the sale of substantially all of the Debtors' assets ("Sale"), and authorized notice procedures relating to potential the assumption and assignment of certain executory contracts and unexpired leases.

  6. Following entry of the Bid Procedures Order, on July 18, 2025, the Debtors filed the Cure Notice, which, among other things, identified certain executory contracts that may potentially be assumed by the Debtors and assigned to the purchaser, as well as proposed cure

3

amounts in connection therewith. The Cure Notice sets forth a proposed cure regarding the MSA both in an "unknown amount" and in the amount of $3,215,744.53 (the "<u>Proposed Cure Amount</u>"). The Proposed Cure Amount does not include any additional amounts that may be due and owing as described above.

7. Ultra files this limited Objection primarily to preserve its rights with respect to the cure payments and obligations associated with assumption of the MSA, as is required by 11 U.S.C. § 365(b), the express terms of the MSA (including any open POs), and applicable law.

## **LIMITED OBJECTION**

8. The Bankruptcy Code mandates a full and complete cure of all defaults as a prerequisite to assumption and assignment, and a proposed cure amount that fails to account for all outstanding obligations contravenes these statutory provisions and renders the assumption and assignment impermissible. Bankruptcy Code section 365(b) conditions a debtor's ability to assume contracts as follows:

> (1) If there has been a default in an executory contract or unexpired lease of the debtor, the [debtor] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the [debtor] –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default ...;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b).

9. It is well-settled and statutorily required, therefore, that if a debtor elects to assume a contract pursuant to section 365, the non-debtor party must be "made whole" at the time of assumption (and assignment). *Kimmelman v. Port Auth. of N.Y. & N.J. (In re Kiwi Int'l Air Lines,*

*Inc.)*, 344 F.3d 311, 318 (3d Cir. 2003) ("in order to assume such an agreement, the debtor in possession must cure defaults and provide assurance of future performance"); *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs. Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000) ("Once the trustee satisfies [the three requirements of 365(b)(1)(A), (B) & (C)], it may assume the contract. . . . but it must do so in its entirety"); *In re Network Access Solutions, Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005). Pursuant to section 365(b)(1)(A), as a condition to the assumption of an executory contract or unexpired lease, a debtor must either "cure" existing monetary defaults under the agreement or provide "adequate assurance" that it will "promptly cure" those existing defaults. 11 U.S.C. § 365(b)(1)(A). This requirement is in effect with regard to both prepetition and postpetition defaults. *See In re Burger Boys*, 94 F.3d 755, 763 (2d Cir. 1996); *In re Network Access Solutions, Corp.*, 330 B.R. at 76.

10. Here, the Debtors are in default of the MSA by failing to pay certain amounts when due, and the Proposed Cure Amount may be insufficient to cure the existing breaches and defaults. The Proposed Cure Amount listed in the Cure Notice does not account for all outstanding obligations owed to Ultra under the MSA, including but not limited to: (a) amounts for goods delivered post-petition; (b) amounts for work-in-progress, finished goods, and raw materials procured or committed to fulfill Powin's purchase orders; (c) taxes, duties, and other government-imposed surcharges as required under Section 4.9 of the MSA; (d) demurrage, storage, and other incidental costs incurred as a result of the Debtors' failure to timely accept or pay for goods; and (e) any additional amounts due in connection with change orders, cancellation of purchase orders, or other obligations arising under the MSA and related purchase orders. Accordingly, as a condition to assumption and assignment of the MSA, all such amounts must be paid in full at the time of assumption, and Ultra must be made whole for all defaults as required by section 365(b)

5

of the Bankruptcy Code. Any assumption and assignment of the MSA without full satisfaction of these obligations would impermissibly shift the risk of the Debtors' default onto Ultra, in direct contravention of the protections afforded to non-debtor contract counterparties under section 365.

Moreover, the Debtors may not assume and assign the MSA unless adequate assurance of future performance is provided. 11 U.S.C. § 365(b)(1)(C). Therefore, Debtors' Proposed Cure Amount of $3,215,744.53 does not meet the statutory requirements of Section 365. Ultra requests that any successful purchaser provide adequate assurances.

11. Finally, the Bankruptcy Code preserves the right of a creditor to offset mutual, pre-petition obligations, subject to Section 363. 11 U.S.C. § 553(a). Absent consent, a sale free and clear under Section 363 does not eliminate affirmative defenses such as Ultra's rights to recoupment. *In re Revel AC, Inc.*, 909 F.3d 597, 604 (3d Cir. 2018); *In re Process Am., Inc.*, 588 B.R. 82, 109 n.99 (Bankr. C.D. Cal. 2018); *In re Pers. Communs. Devices, Ltd. Liab. Co.*, 556 B.R. 45 (Bankr. E.D.N.Y. 2016); *Hispanic Indep. TV Sales, LLC v. Kaza Azteca Am. Inc.*, 2012 U.S. Dist. LEXIS 46239, at *14 (S.D.N.Y. Mar. 30, 2012); *In re Am. Home Mortg. Holdings, Inc.*, 402 B.R. 87, 93-94 (Bankr. D. Del. 2009); *In re TWA*, 322 F.3d 283, 289 (3d Cir. 2003); *Schneider Nat'l, Inc. v. William L. Bonnell Co., Inc.*, No. 00-C-0080, 2001 U.S. Dist. LEXIS 28532 (E.D. Wis. Sep. 24, 2001); *Folger Adam Sec., Inc. v. DeMatteis / MacGregor, J.V.*, 209 F.3d 252, 261-62 (3d Cir. 2000); *EMC Mortg. Corp. v. Atkinson*, 888 N.E.2d 456 (Ohio Ct. App. 2008). If the MSA is assigned to any buyer without fully curing the indebtedness, Ultra's rights to recoupment and setoff may not be destroyed and must be preserved accordingly.

## **CONCLUSION**

12. Based on the foregoing, Ultra therefore objects to the Cure Notice and to the assumption and assignment of the MSA unless and until all outstanding amounts are cured and

adequate assurance is provided in accordance with section 365(b) of the Bankruptcy Code.

**WHEREFORE**, Ultra respectfully requests that this Court enter an order: (i) sustaining the Objection; (ii) preserving Ultra's rights to all appropriate cure amounts; and (iii) granting such other and further relief as this Court deems just and proper.

Dated: July 28, 2025                        Respectfully Submitted,

*/s/ Jeremy M. Campana*
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Office: 216.566.5936
Jeremy.Campana@ThompsonHine.com

*Attorneys for Ultra Corpotech Private Limited*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2025, a copy of the annexed Objection was served electronically on the date of filing through the Court's CM/ECF system on all participants registered in the case at the email address registered with the Court.

Dated: July 28, 2025

Respectfully Submitted,

*/s/ Jeremy M. Campana*
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Office: 216.566.5936
Jeremy.Campana@ThompsonHine.com

*Attorneys for Ultra Corpotech Private Limited*