## Exhibit A

**(MF Bill of Sale)**

## Bill of Sale

THIS BILL OF SALE ("Bill of Sale"), dated this _____ day of July, 2025, is made in favor of Mainfreight Distribution Pty Ltd (together with its parent, subsidiary or any other affiliate entities, included in the definition of "Mainfreight" under the Terms and Conditions, as defined in the MF Lien Notice, collectively, "Mainfreight"), by Powin, LLC and the below-referenced affiliated debtors and debtors in possession (collectively, the "Debtors")[1].

WHEREAS, by order of the United States Bankruptcy Court for the District of New Jersey (the "Court") dated August ___, 2025 (the "Sale Order"), the Court approved the sale of the MF Credit Bid Collateral (defined below) to Mainfreight, free and clear of all liens, claims, interests, or other encumbrances. *See* D.I. ___.

NOW, THEREFORE, for good and valuable consideration in the amount of $3,000,000 USD, the receipt and sufficiency of which are hereby acknowledged, the Debtors do hereby sell, assign, transfer and convey unto Mainfreight, its successors and assigns, all of Debtors' right, title and interest in the personalty, equipment and other goods located at, on or about the locations described on **Exhibit "A"** attached hereto and made a part hereof, and as further set forth in Mainfreight's Credit Bid titled Mainfreight's Credit Bid for the MF Collateral dated of July 28, 2025 (the "MF Credit Bid Letter") attached hereto as **Exhibit "B"** (together, the collateral referenced in Exhibit A and B shall be called the "MF Credit Bid Collateral").

TO HAVE AND TO HOLD the same unto Mainfreight, its successors and assigns forever.

And Debtors do for themselves and their successors and assigns, covenant and agree to and with Mainfreight, its successors and assigns, that the MF Credit Bid Collateral is free and clear of any and all liens, encumbrances, security interests, conditional sales agreements or other agreements whatsoever, and that Debtors are the true and lawful owner of the MF Credit Bid Collateral and have good right and lawful authority, pursuant to the Sale Order, to bargain and sell the same in the manner and form as aforesaid.

---

[1] The Debtors in the Chapter 11 Cases jointly administered at Case No. 25-16137 (MBK) in the United States Bankruptcy Court for the District of New Jersey, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

For the avoidance of doubt, the MF Credit Bid Collateral is being sold free and clear of all liens, claims, interests, or other encumbrances to the greatest extent permitted by the Bankruptcy Code and applicable non-bankruptcy law.  Whichever Mainfreight entity, together with its parent, subsidiary, or any other affiliate entities, holds the Mainfreight Liens[2] shall be permitted to assign a portion of their claim that supports Mainfreight's Credit Bid to the desired Mainfreight entity as the new owner.

This Bill of Sale is an absolute conveyance.  It is the intention of the Debtors and Mainfreight that this Bill of Sale shall not be construed as a conveyance given as security for the amounts owed by the Debtors to Mainfreight or secured thereby or for any other matter.

This Bill of Sale and the sale of the MF Credit Bid Collateral shall not be effective and legally binding until the Sale Order becomes a final order approving the conveyance of the MF Credit Bid Collateral from the Debtors to Mainfreight.

IN WITNESS WHEREOF, Debtors have executed this Bill of Sale on the date set forth above.

**DEBTORS:**

**POWIN LLC**, a Delaware limited liability company

By:  GERARD UZZI, DEBTORS' CHIEF RESTRUCTURING OFFICER

Signature: _____
Name: _____
Title: _____

---

[2] Capitalized terms used herein otherwise not defined shall have the meanings ascribed to them in the MF Credit Bid Letter.

# EXHIBIT A

## MAINFREIGHT COLLATERAL HOLDING (minus BHER & AKAYSHA goods)

| Current Location, Site of MF Goods; Description of Goods | Applicable Customer/Project | Mainfreight Entity Party to Terms & Conditions/Bill of Lading/Other Applicable Agreements[1] | Applicable Manufacturer of MF Goods | Party Currently Holding Title to MF Goods | MF Pre-Petition Information (Dates, Amounts, Description of Services) |
|---|---|---|---|---|---|
| Taiwan Warehouse/ CTWL Taiwan Warehouse ███ | No Project (Parts & Spares) from Formosa 215 Pallet/Crates stc "Spares & Assorted Parts" | Agreement Standard Terms & Conditions | Formosa & Various Manufacturers | POWIN | Numerous invoices / Shipments / differing jobs |
| Aberdeen, UK/ ASCO Aberdeen Warehouse ███ | Overhill Project (Pulse Energy) 4 x Pallets/Crates stc "Spares & Assorted Parts" | Agreement Standard Terms & Conditions | Manufacturer unknown, local Powin LLC stock | POWIN | HBL: USABD4977990 Electrical parts (3 PALLETS) ETD: 06-JAN-25 (USLAX) Eta: 05-FEB-25 (GBGLO)  HBL: S05065119 Electrical parts (1 pallet) ETD:13-APR-25 (USLAX) ETA:14-APR-25 (GBLHR) |
| Lisbon, Portugal/ Extra Gransportes Internacionais ███ | GALP Project 1 x Crates stc "Spares & Assorted Parts" | Agreement Standard Terms & Conditions | Manufacturer Ultra Corpotech PVT. India | POWIN | HBL: INLIS5102487 Wire rope assembly ETD: 25-MAY-25 ETA: 27-MAY-25 |
| Detroit, MI USA/ MSA Laydown yard ███ | Trenton Channel (DTE) Part Charter Shipment & Detroit Laydown yard | Agreement Standard Terms & Conditions | ACE Manufacturing Seojin Vietnam | POWIN | HBL: VNSAN5034316 66 x Collection Segments ETD 12- APR-25 (VHPH) ETA 08-MAY-25 (USSAN) |

---

[1] The Mainfreight Group is the party to the Terms & Conditions.

| Current Location, Site of MF Goods; Description of Goods | Applicable Customer/Project | Mainfreight Entity Party to Terms & Conditions/Bill of Lading/Other Applicable Agreements[1] | Applicable Manufacturer of MF Goods | Party Currently Holding Title to MF Goods | MF Pre-Petition Information (Dates, Amounts, Description of Services) |
|---|---|---|---|---|---|
| Houston, TX USA/ Mainfreight Houston Warehouse ████████ | 400x Packages stc "Packages stc HVAC units & Accessories" 48 x "HVAC Units" | Agreement Standard Terms & Conditions | Leader Energy Storage - Taiwan | POWIN | S05060029 HBL: TWHOU5060029 2x40'FCL 400xPackages stc HVAC units  S05050968 HBL: TWHOU5050968 8x40'FCL stc 48x"HVAC Units & Accessories" |
| Los Angeles, CA USA/ Mainfreight Los Angeles Warehouse ████████ | 9 x Pallets stc "Stand Alone EV Diffuser Plates" Serrano Project (Longroad Energy) | Agreement Standard Terms & Conditions | Manufacturer Ultra Corpotech PVT. India | POWIN | S05044467 HBL: INMZJ5052727 Stand Alone EV Diffuser Plates |
|  |  |  |  |  |  |

# EXHIBIT B

**Benesch**

Kevin M. Capuzzi
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801-6101
Direct Dial:  302.442.7063
Fax:  302.442.7012
kcapuzzi@beneschlaw.com

July 28, 2025

**Via Email**
DENTONS US LLP
Tania M. Moyron
Van C. Durrer, II
601 S. Figueroa Street #2500
Los Angeles, CA 90017
tania.moyron@dentons.com
van.durrer@dentons.com

       **Re:**    **Mainfreight's Credit Bid for the MF Collateral**

Dear Tania and Van:

       We write on behalf of Mainfreight Distribution Pty Ltd (together with its parent, subsidiary, or any other affiliate entities, included in the definition of "Mainfreight" under the Terms and Conditions, as defined in the MF Lien Notice, collectively, "Mainfreight").

       Mainfreight hereby submits this Credit Bid in accordance with the Court's July 17, 2025 *Order (I) Designating a Stalking Horse Bidder and Stalking Horse Bidder Protections, (II) Approving Bidding Procedures by Which Interested Parties May Bid and an Auction Sale Format in Connection With the Sale of Substantially All of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of the Debtors' Property Free and Clear of All Causes of Action and Claims* [Dkt. No. 413] (the "Bidding Procedures Order").

       As set forth in *Mainfreight's Notice of Lien* [Dkt. No. 489] (the "MF Lien Notice"), timely filed on July 23, 2025, Mainfreight has valid, undisputed, and perfected liens in the MF Collateral, senior in priority to any other asserted liens.[1]  A copy of the MF Lien Notice is attached hereto as **Exhibit A** and incorporated by reference herein.  The MF Lien Notice sets forth, among other things, the amount of Mainfreight's secured claim as of the Petition Date (of at least $13,114,707.46, subject to ongoing accruals and additions for post-petition interest and other charges, including legal fees as permitted under applicable documents, the "MF Secured Claim") and describes the collateral currently in Mainfreight's possession that supports the MF Secured Claim.  That collateral includes liens on (a) the "BHER Goods" (as such term is defined in the MF

---

[1] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the MF Lien Notice.

Tania M. Moyron
Van C. Durrer, II
July 28, 2025
Page 2

Lien Notice[2]) (b) certain Goods in the Order Approving Settlement [Dkt. No. 283] (the "MF Akaysha Goods,")[3] and (c) all other goods that the Debtors claim ownership of as set forth in their Schedules (including at [Dkt. No. 427]) that are currently in the possession of Mainfreight, the "MF Credit Bid Collateral")

Pursuant to Section VI of the Bidding Procedures, Mainfreight submits a Credit Bid of **$3,000,000 USD** for all of the MF Credit Bid Collateral, which Credit Bid is to be applied, if Mainfreight is the successful bidder, against its allowed secured claim subject to the provisions of section 363(k) of the Bankruptcy Code, *i.e.*, reducing the balance of the MF Secured Claim by **$3,000,000 USD**. As there are no liens on the MF Collateral that are senior to the Mainfreight Liens, there is no cash component of Mainfreight's Credit Bid. Moreover, Mainfreight is not interested in purchasing any Assets other than the MF Collateral and, as s,uch, no additional cash component is required.

For the avoidance of doubt, because this is a Credit Bid and is submitted only with respect to the MF Collateral, the "Qualified Bidder" requirements of Section V of the Bidding Procedures are inapplicable but in any event the Debtors should declare, prior to the Auction, that Mainfreight is a Qualified Bidder entitled to attend and participate in the Auction. If the Debtors perceive a deficiency in this Credit Bid that would disqualify consideration of Mainfreight, please advise the undersigned immediately. All rights are reserved.

Sincerely,

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP

Kevin M. Capuzzi

cc:    Jeffrey S. Sabin, Esq.
       John C. Gentile, Esq.
       Xochitl S. Strohbehn, Esq.
       Rodd Morgan
       Brendan Roche
       James McCrone

---

[2] The Credit Bid assumes the validity and enforceability of the "Change Order" dated June 8, 2025, a copy of which is attached to Dkt. No. 286.

[3] This Credit Bid assumes that pursuant to the Bidding Procedures Order none of the Debtors are currently seeking to sell any of the BHER Goods and/or the MF Akaysha Goods. If, on or prior to the completion of the Auction, any Debtor seeks to offer for sale either the MF Akaysha Goods and/or the BHER Goods, Mainfreight reserves the right to also credit bid for such goods.

27299881 v2

# EXHIBIT A

<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(a)

**BENESCH, FRIEDLANDER, COPLAN &**
**ARONOFF LLP**
Kevin M. Capuzzi (NJ No. 173442015)
John C. Gentile, Esq.
Noelle B. Torrice (NJ No. 79132013)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
kcapuzzi@beneschlaw.com
jgentile@beneschlaw.com
ntorrice@beneschlaw.com

*Counsel to Mainfreight Distribution Pty Ltd, et al.*

</td><td></td></tr>
</table>

|  |  |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>       Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>Judge: Michael B. Kaplan<br><br>(Jointly Administered) |

## MAINFREIGHT'S NOTICE OF LIEN

Mainfreight Distribution Pty Ltd (together with its parent, subsidiary, or any other affiliate

entities, included in the definition of "Mainfreight" under the Terms and Conditions, defined

below, collectively, "Mainfreight"), by and through its undersigned counsel, hereby files this

notice of lien (the "Notice of Lien") pursuant to the *Notice of Deadline to Assert Liens in*

*Connection with Bidding Procedures and Upcoming Sale and Auction* [D.I. 318] (the "Notice of

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC
[5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger
Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating
Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487].  The Debtors' mailing address is 20550
SW 115th Avenue Tualatin, OR 97062.

Deadline to Assert Lien") filed by the above-captioned debtors and debtors in possession. In support of this Notice of Lien, Mainfreight respectfully states as follows:

## GENERAL BACKGROUND[2]

1.      Since at least May 2021, Mainfreight and Powin LLC ("Powin") have had an ongoing business relationship. A true and correct copy of the Business Credit Application (the "Application") submitted by Powin to Mainfreight on or about May 17, 2021, including Mainfreight's Terms & Conditions of Service is attached hereto as **Exhibit A**.

2.      In March 2023, Powin (with the now-defunct Powin Energy Holdings LLC, the "Debtors") opened a new business account with Mainfreight. A true and correct copy of the Mainfreight Group – Account Opening Form (the "Account Form") executed by a representative of the Debtors on or about March 29, 2023, including Mainfreight's Standard Terms & Conditions—November 2021, which expressly provide that they govern the services provided by Mainfreight (the "Terms and Conditions"), is attached hereto as **Exhibit B**.

3.      The Terms and Conditions provide that Mainfreight holds a lien on any goods – whether property of the Debtors or of a downstream customer, such as BHER Ravenswood Solar I, LLC ("BHER") –  that comes into and is currently in Mainfreight's possession or control (collectively, the "MF Collateral" and specifically as to the property in Mainfreight's possession to which BHER claims title, the "BHER Goods"), as well as any and all of the proceeds of the MF Collateral and BHER Goods. **Ex. A** at 2, § 15(a); **Ex. B**, §§ 2.9, 3.8. The Mainfreight liens ("Mainfreight Liens") on the MF Collateral and/or BHER Goods are also evidenced by various

---

[2]      Mainfreight hereby incorporates by reference *Mainfreight Inc.'s Motion to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Does Not Apply to Certain Goods in Its Possession* [D.I. 180] (the "Non-Stay Motion"), and *Mainfreight Inc.'s Omnibus Reply in Support Motion to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Does Not Apply to Certain Goods in Its Possession* [D.I. 341] (the "Non-Stay Reply")*,* including all exhibits thereto.

House Bills of Lading and the June 4, 2025 Notice of Lien for Unpaid Services attached as Exhibit C to Mainfreight's *Limited Objection and Reservation of Rights to the Debtors' Sale Motion* [D.I. 342]. Mainfreight believes its claim as of the date hereof is at least $13,114,707.46.

4.    Mainfreight holds a perfected lien, secured by the MF Collateral and BHER Goods and the proceeds of the MF Collateral and BHER Goods, that is senior to any other lien purporting to be secured by the MF Collateral and/or the BHER Goods. The Mainfreight Liens extend to any and all charges, including Mainfreight's pre-petition claim (which the Debtors list on their schedules as undetermined, unsecured, unliquidated, and disputed, but list $13,018,289.97 as a "cure" amount on their *Notice of Potentially Assumed Executory Contracts and Unexpired Leases* [D.I. 446]) as well as post-petition amounts Mainfreight has incurred in connection with providing the Services (as defined below), including but not limited to storage costs, interest, and legal fees.[3] *See* **Ex. A** at 2, § 15(a); **Ex. B**, §§ 2.9, 3.4, 5.3, 5.5.

5.    Specifically, the Terms and Conditions provide that, if the Debtors fail to pay outstanding amounts due upon notice from Mainfreight, Mainfreight may exercise its lien rights as to the MF Collateral and/or BHER Goods. Under the Terms and Conditions, Mainfreight shall have the right to exercise its liens against the MF Collateral and BHER Goods and apply the proceeds to the total owed to Mainfreight. **Ex. A** at 2, § 15(c); **Ex. B**, §§ 2.9, 3.8.

6.    As part of Mainfreight and the Debtors' ongoing business relationship, Mainfreight would, at the Debtors' request, prior to the petition date, coordinate the warehousing, storage, order processing, pick and pack, inventory management, domestic road/rail transport, freight forwarding, customs clearance, regulatory clearance involving communication/submissions with

---

[3]    The Mainfreight Liens also apply to the insurance claim related to the two power units that were damaged in transit from Norfolk, Virginia to Millwood, West Virginia and the proceeds thereof. *See* Non-Stay Reply fn. 3.

government bodies, transport by air or sea (domestic and international), cartage, packing/unpacking of containers, and any ancillary services associated with any of the foregoing, of various goods on the Debtors' behalf pursuant to the Terms and Conditions and House Bills of Lading (collectively, the "Services").  Mainfreight's Liens, which are reflected in invoices provided to the Debtors, arise from the pre-petition provision of these Services; those Services included the movement of Goods as well as Services in connection with a significant contemplated movement of Goods, which Debtors cancelled prior to the Petition Date.

7.      Mainfreight also holds a valid maritime lien on the Goods and has a right, in accordance with applicable law, to sell them to satisfy the unpaid bills for the Services. Mainfreight is not aware of any applicable non-bankruptcy law that would allow the sale of the MF Collateral and/or BHER Goods free and clear of Mainfreight's interest therein because, under applicable law, Mainfreight's Liens, must be satisfied before all other interests in the MF Collateral and/or BHER Goods.  *In re World Imports Ltd.*, 820 F.3d 576, 584, 592 (3d Cir. 2016).

8.      On July 10, 2025, the Debtors filed the Notice of Deadline to Assert Lien.  The Notice of Deadline to Assert Lien states that, among other things, the failure of any party to provide a timely notice of lien may result in the expunction and forfeiture of any lien rights not properly noticed, including rights as applied to the Purchased Inventory and the proceeds of the Contemplated Transactions (each as defined in the Stalking Horse APA) (the "Inventory").  *See* Notice of Deadline to Assert Lien at 3.

9.      Neither the MF Collateral nor the BHER Goods are identified as part of the Inventory, or *vice versa*.  However, Mainfreight files this Notice of Lien out of an abundance of caution to avoid the potential expungement and forfeiture of the Mainfreight Liens.

10.     The Mainfreight Liens are perfected and senior to all other liens purporting to be against the MF Collateral and/or BHER Goods, and have been for the entire time that the MF Collateral and BHER Goods have been in Mainfreight's possession and control.  *See* Non-Stay Motion at 6-8.

11.     Mainfreight reserves all rights at law and in equity, including the right to enforce the Mainfreight Liens, the right to supplement or amend this Notice of Lien, and the right to object on any grounds that may be appropriate in connection with or relating to the Mainfreight Liens, or this Notice of Lien.

Dated: July 23, 2025                             Respectfully submitted,

                                                 **BENESCH, FRIEDLANDER,**
                                                 **    COPLAN & ARONOFF LLP**

                                                  */s/ Kevin M. Capuzzi*
                                                 Kevin M. Capuzzi (NJ No. 173442015)
                                                 John C. Gentile, Esq.
                                                 Noelle B. Torrice (NJ No. 79132013)
                                                 Continental Plaza II
                                                 411 Hackensack Ave., 3rd Floor
                                                 Hackensack, NJ 07601-6323
                                                 Telephone: (302) 442-7010
                                                 Facsimile: (302) 442-7012
                                                 Email: kcapuzzi@beneschlaw.com
                                                        jgentile@beneschlaw.com
                                                        ntorrice@beneschlaw.com

                                                 *Counsel to Mainfreight Distribution Pty Ltd.*

# EXHIBIT A



USA Headquarters
1400 Glenn Curtiss Street
Carson, CA 90746
310-900-1974

## Business Credit Application

Return to: CreditApps@mainfreightusa.com

| **Business Contact Information** | | |
|---|---|---|
| Business Legal Name: Powin LLC | | |
| Other Names/Owner: | | |
| Business Tax ID Number / Business Number: ███████ | | |
| Phone Number: 503-598-6659 | | Fax Number: |
| Registered Company Address: 20550 SW 115th Ave | | |
| City: Tualatin | State: OR | Zip: 97062 |
| Expected Monthly Spend: | | |

| **Billing Contact Information** | | |
|---|---|---|
| Accounts Payable Contact: Sean Campbell | | Phone Number: 503-598-6659 |
| A/P Contact Email Address: accounting@powin.com | | |
| Preference in communication: | ✓ Email | ☐ Phone |
| Billing Address (if different from above): | | |
| City: | State: | Zip: |

| **Business & Credit Information** | | |
|---|---|---|
| Type of Business:  ☐ Corporation  ✓ Partnership  ☐ Proprietorship  ☐ Other | | |
| Bank Name: JP Morgan Chase | Bank Address: | 888 SW 5th Avenue Suite 1070, Floor 10, Portland, OR 97204 |
| Contact: Bryant Villalobos | Phone Number: 503-382-1608 | |

| Type of Account | Account Number |
|---|---|
| Checking | ███████████ |
| Savings | |
| Other | |

In consideration of credit extension, the Customer agrees that payments will be made within 15 days from the invoice date.
Customer hereby warrants that it has reviewed and agrees to be bound by the Mainfreight, Inc., service terms which are
incorporated herein by reference and can be found either on the next page or at
https://www.mainfreight.com/getmedia/902f7fa4-c341-4d69-b56e-21d06c0696c6/Terms-and-Conditions-of-Service_23-
JUN-2020.pdf
Customer further agrees that a service charge of 1.5% per month shall accrue on all invoices not paid per these terms. This
application is for the acceptance of Mainfreight in Los Angeles, California, and will be bound there. Customer hereby
authorizes its bank (named above) to release credit information to review by Mainfreight, Inc., with this application.

Certification of credit information, terms and conditions:

| Sean Campbell | *Sean Campbell* | Staff Accountant | 5/17/2021 |
|---|---|---|---|
| Print Name | Signature | Title | Date |

| Mainfreight Office Use Only | |
|---|---|
| Submitted by: | Branch: |
| Sales Representative: | |
| Completed by: | ORG: |

# TERMS & CONDITIONS OF SERVICE

These terms and conditions of service constitute a legally binding contract between the "Company" and the "Customer". In the event the Company renders services and issues a document containing Terms and Conditions governing such services, the Terms and Conditions set forth in such other documents(s) shall govern these services.

## 1. Definitions.

(a) "Company" shall mean **MAINFREIGHT, INC.**, its subsidiaries, related companies, agents and/or representatives;

(b) "Customer" shall mean the person for which the Company is rendering service, as well as its agents and/or representatives, including, but not limited to, shippers, importers, exporters, carriers, secured parties, warehousemen, buyers and/or sellers, shipper's agents, insurers and underwriters, break-bulk agents, consignees, etc. It is the responsibility of the Customer to provide notice and copy(s) of these terms and conditions of service to all such agents or representatives;

(c) "Documentation" shall mean all information received directly or indirectly from Customer, whether in paper or electronic form;

(d) "Ocean Transportation Intermediaries" (OTI) shall include an "ocean freight forwarder" and a "non-vessel operating carrier";

(e) "Third parties" shall include, but not be limited to, the following: "carriers, truckmen, cartmen, lightermen, forwarders, OTIs, customs brokers, agents, warehousemen and others to which the goods are entrusted for transportation, cartage, handling and/or delivery and/or storage or otherwise".

## 2. Company as agent.

The Company acts as the "agent" of the Customer for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export and security documentation on behalf of the Customer and other dealings with Government Agencies, or for arranging transportation services, both domestically and internationally, or other logistics services in any capacity other than as carrier.

## 3. Limitation of Actions.

(a) Unless subject to a specific statute or international convention, all claims against the Company for a potential or actual loss, must be made in writing and received by the Company, within ninety (90) days of the event giving rise to claim; the failure to give the Company timely notice shall be a complete defense to any suit or action commenced by Customer.

(b) All suits against Company must be filed and properly served on Company as follows:
  (i) For claims arising out of ocean transportation, within one (1) year from the date of the loss;
  (ii) For claims arising out of brokering ground transportation, within two (2) years from the date of loss;
  (iii) For claims arising out of air transportation, within two (2) years from the date of the loss;
  (iv) For claims arising out of the preparation and/or submission of an import entry(s), within seventy-five (75) days from the date of liquidation of the entry(s);
  (v) For any and all other claims, within two (2) years from the date of the loss or damage.

## 4. No Liability for the Selection or Services of Third Parties and/or Routes.

Unless services are performed by persons or firms engaged pursuant to express written instructions from the Customer, Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment; advice by the Company that a particular person or firm has been selected to render services with respect to the goods, shall not be construed to mean that the Company warrants or represents that such person or firm will render such services nor does Company assume responsibility or liability for any action(s) and/or inaction(s) of such third parties and/or its agents, and shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party; all claims in connection with the Act of a third party shall be brought solely against such party and/or its agents; in connection with any such claim, the Company shall reasonably cooperate with the Customer, which shall be liable for any charges or costs incurred by the Company.

## 5. Quotations Not Binding.

Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice; no quotation shall be binding upon the Company unless the Company in writing agrees to undertake the handling or transportation of the shipment at a specific rate or amount set forth in the quotation and payment arrangements are agreed to between the Company and the Customer.

## 6. Reliance on Information Furnished.

(a) Customer acknowledges that it is required to review all documents and declarations prepared and/or filed with U.S. Customs and Border Protection and/or other Government Agency and/or third parties, and will immediately advise the Company of any errors, discrepancies, incorrect statements, or omissions on any declaration filed on Customer's behalf;

(b) In preparing and submitting customs entries, export declarations, applications, security filings, delivery orders, documentation and/or export data to the United States and/or a third party, the Company relies on the correctness and completeness of all documentation, whether in written or electronic format, and Customer shall indemnify and hold the Company harmless from any and all claims asserted and/or liability or losses suffered by reason of the Customer's failure to disclose information or any incorrect or false statement by the Customer or any agent of Customer upon which the Company reasonably relied. The Customer agrees that the Customer has an affirmative non-delegable duty to disclose any and all information required to import, export or enter the goods.

(c) Customer warrants that the description, marks, numbers and quantities of the goods are accurate, complete and comply with all regulations. Customer shall have the exclusive burden to provide verified gross mass (VGM) of Goods as obtained on calibrated and certified equipment. Company shall be entitled to rely on the accuracy of the weight information provided by Customer for all purposes, including compliance with the VGM requirement under the Safety of Life at Sea Convention (SOLAS). Company shall be entitled to tender, counter-sign or endorse such certificates, weight tickets or other weight data provided by Customer as Company's own VGM to subcontractors, including any vessel operator.

(d) Customer shall not tender hazardous goods absent advance notice and consent of Company and shall in all events be responsible for compliance with all applicable hazardous material regulations.

## 7. Declaring Higher Value to Third Parties.

Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instructions from the Customer, which must agree to pay any charges therefor; in the absence of written instructions or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

## 8. Insurance.

Unless requested to do so in writing and confirmed to Customer in writing, Company is under no obligation to procure insurance on Customer's behalf; in all cases, Customer shall pay all premiums and costs in connection with procuring requested insurance.

## 9. Disclaimers; Limitation of Liability.

(a) Except as stated herein, Company makes no express or implied warranties relating to its services;

(b) Subject to (d) below, Customer agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;

(c) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefor, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).

(d) Unless additional coverage under (c) above, the Company's liability shall be limited to the following:
  (i) where the claim arises from activities other than those relating to customs brokerage, $50.00 per shipment or transaction, or
  (ii) where the claim arises from activities relating to "Customs business," $50.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less;

(e) In no event shall Company be liable or responsible for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.

(f) In no event shall Company be liable or responsible for damages attributable to circumstances of Force Majeure. For purposes of these Terms and Conditions, Force Majeure includes, but is not limited to, natural disasters, acts of the public enemy, assailing thieves, Laws and Regulations, wars or warlike action (whether actual or impending) arrests and other restraints of government (civil or military), blockades, insurrections, riots, epidemics or other severe health crisis and associated containment efforts, landslides, lightning, earthquakes, fires, sabotage, tropical storms and hurricanes, civil disturbances, tidal waves, explosions, confiscation or seizure by any government or other public authority, and any other causes, whether of the kind herein enumerated or otherwise, that are not reasonably within the control of Company and that could not have been overcome by the exercise of ordinary diligence. Company shall notify Customer with reasonable promptness of the existence of any such Force Majeure and the probable duration thereof, and shall provide Customer from time to time with correct information concerning same.

## 10. Advancing Money.

All charges must be paid by Customer in advance unless the Company agrees in writing to extend credit to Customer; the granting of credit to a Customer in connection with a particular transaction shall not be considered a waiver of this provision by the Company.

## 11. Indemnification/Hold Harmless.

The Customer agrees to indemnify, defend, and hold the Company harmless from any claims and/or liability arising from the importation or exportation of Customer's merchandise and/or any conduct of the Customer, which violates any Federal, State and/or other laws, and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims; in the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing to the Customer by mail at its address on file with the Company.

## 12. Inspection Consent.

Company may, but shall not be obligated to, inspect any shipment. Cargo items tendered for transportation may be subject to security controls by carriers and to other government regulations. The customer expressly agrees and consents to searches / inspections / screenings of all cargo in accordance with applicable security controls, initiatives and regulations, including, but not limited to, the regulations of the U.S. Transportation and Security Administration.

## 13. C.O.D. or Cash Collect Shipments.

Company shall use reasonable care regarding written instructions relating to "Cash/Collect" or "Deliver (C.O.D.)" shipments, bank drafts, cashier's and/or certified checks, letter(s) of credit and other similar payment documents and/or instructions regarding collection of monies but shall not have liability if the bank or consignee refuses to pay for the shipment.

## 14. Forfeiture of Discounts and Costs of Collection.

All discounts offered, as indicated on the invoice faces, are forfeited should Customer fail to comply in all respects with payment terms. In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 15% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to by Company.

## 15. General Lien and Right to Sell Customer's Property.

(a) Company shall have a general and continuing lien on any and all property coming into Company's actual or constructive possession or control for any monies owed to Company, including but not limited to moneys owing relating to the shipment on which the lien is claimed, a prior shipment(s) and/or both.

(b) Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any on-going storage or other charges; Customer shall notify all parties having an interest in its shipment(s) of Company's rights and/or the exercise of such lien.

(c) Unless, within thirty days of receiving notice of lien, Customer posts cash or letter of credit at sight, or, if the amount due is in dispute, an acceptable bond equal to 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction and any net proceeds remaining thereafter shall be refunded to Customer.

## 16. No Duty to Maintain Records for Customer.

Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended, (19 USC §§1508 and 1509) it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company shall only keep such records that it is required to maintain by Statute(s) and/or Regulation(s), but not act as a "recordkeeper" or "recordkeeping agent" for Customer.

## 17. Obtaining Binding Rulings, Filing Protests, etc.

Unless requested by Customer in writing and agreed to by Company in writing, Company shall be under no obligation to undertake any pre- or post Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petition(s) and/or protests, etc.

## 18. Preparation and Issuance of Bills of Lading.

Where Company prepares and/or issues a bill of lading, Company shall be under no obligation to specify thereon the number of pieces, packages and/or cartons, etc.; unless specifically requested to do so in writing by Customer or its agent and Customer agrees to pay for same, Company shall rely upon and use the cargo weight supplied by Customer.

## 19. No Modification or Amendment Unless Written.

These terms and conditions of service may only be modified, altered or amended in writing signed by both Customer and Company; any attempt to unilaterally alter, modify, alter or amend same shall be null and void.

## 20. Compensation of Company.

Customer, shippers, consignees and bill-to parties are jointly and severally liable for the compensation of the Company for its services. The Company's charges may be reversed to the responsible parties if a shipment is refused or payment is not made by the original bill-to party. The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and other agencies selected by the Company to transport and deal with the goods and such compensation shall be exclusive of any brokerage, commissions, dividends, or other revenue received by the Company from carriers, insurers and others in connection with the shipment. On ocean exports, upon request, the Company shall provide a detailed breakout of the components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due the Company, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney fee.

## 21. Severability.

In the event any Paragraph(s) and/or portion(s) hereof is found to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in full force and effect.

## 22. Governing Law; Consent to Jurisdiction and Venue.

These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of California without consideration to principles of conflict of law. All disputes arising hereunder shall be resolved at Los Angeles, California and at no other place. Customer and Company:

(a) irrevocably consent to the jurisdiction of the State and Federal courts located in the County of Los Angeles, State of California.

(b) agree that any action relating to the services performed by Company, shall only be brought in said courts;

(c) consent to the exercise of in personam jurisdiction by said courts over it, and

(d) further agree that any action to enforce a judgment may be instituted in any jurisdiction.

# EXHIBIT B

   

# Mainfreight Group – Account Opening Form

Mainfreight Distribution Pty Ltd (ABN 85 003 840 319)     Mainfreight Air & Ocean Pty Ltd (ABN 85 007 252 333)
Owens Transport Pty Ltd (ABN 64 060 592 529)     Carotrans Oceania Pty Ltd (ABN 31 118 822 487)

Business Information:

| Registered Legal Name ("Customer") | Powin LLC | | | | |
|---|---|---|---|---|---|
| ACN | ▮▮▮▮▮ | Telephone | 503-598-6659 | Fax | |
| ABN | ▮▮▮▮▮ | Email | logistics@powin.com; accountspayable@powin.com | | |
| Registered Address | Powin LLC | | | | |
| Trading Name | N/A - Private Equity | | | | |

Are Trading and Postal Address the same as Registered Address?   Yes [X]   No [ ]
If no then please complete below:

| Trading Address | 20550 SW 115th Ave., Tulatain, OR 97062 |
|---|---|
| Postal Address | |

Entity Type:     Company [ ]     Trust [ ]     Sole Trader [ ]     Partnership [ ]     LLC [X]

| Parent Company (if applicable) | Powin Energy Holdings LLC |
|---|---|
| Business Commencement Date | Powin LLC Registry Date - 04-28-2021 |
| Directors (name, address, phone, DOB) | Geoff Brown, CEO |
| | 2035 NW Front Ave, Suite 600 |
| | Portland, OR 97209 - Telephone: 503-598-6659 |

Hire Pallets to be:   Transferred [ ]   Recovered [ ]   Not Required [X]

| CHEP Account Number | | LOSCAM Account Number | |
|---|---|---|---|

Please tick which region (if any) you currently trade with another Mainfreight entity in:

Asia [ ]     New Zealand [ ]     Europe [ ]     Americas [ ]     Australia [ ]

Conditions:

Customer acknowledges and agrees that:

1.  payment terms are C.O.D, unless otherwise agreed or indicated on the Mainfreight Group invoice;

2.  services provided by the Mainfreight Group are subject to the standard terms and conditions which are attached to this Account Opening Form;

3.  information stated in this Account Opening Form is true and correct and has been relied upon by the Mainfreight Group to determine whether to grant credit and the signatory has full authority to complete this Account Opening Form on behalf of Customer; and

4.  they consent to personal information being disclosed to a credit reporting agency for the sole purpose of assessing an application for commercial credit.

Important Term:

Clause 5 of the Mainfreight Group's standard terms and conditions states that risk in Customer's goods remains with Customer and that the Mainfreight Group is not responsible for any loss, detriment or damage suffered by Customer or any other person.

| Signature | *S. Bolland* (signature) | Position | Chief Operating Officer |
|---|---|---|---|
| Name | Stuart Bolland | Date | 29th March 2023 |



    

AMERICAS          ASIA          AUSTRALIA          EUROPE          NEW ZEALAND

**MAINFREIGHT GROUP (Mainfreight, Owens, Carotrans)**
**STANDARD TERMS & CONDITIONS – NOVEMBER 2021**

1   Definitions
**Agreement** means this contract for the provision of the Services;
**Consequential Loss** means any incidental or consequential loss which shall include, but not be limited to, loss of revenue, loss of profits, loss of business, interruption to business, loss of opportunity, loss of production, interruption to production or loss of contract regardless of whether Mainfreight was actually, or should have been, aware of the potential for such loss to occur;
**Customer** means the person or entity for whom any Services are to be performed by Mainfreight under this Agreement;
**Dangerous Goods** means all Goods which are in the reasonable opinion of Mainfreight, or at law, deemed noxious, dangerous, hazardous, explosive, radioactive, flammable, inflammable, combustible, volatile or by their nature are capable of causing damage or injury to other goods, persons, animals or any other thing in which such Goods are carried or stored including any vessel, vehicle, wagon, van, aircraft or other conveyance;
**Goods** means the cargo or articles or goods perishable or otherwise (including animals of any description) which Customer or any other person has provided together with any container or any other packaging, pallets or other storage device supplied to Mainfreight;
**Heavy Vehicle National Law** means the *Heavy Vehicle National Law Act 2012* (Qld) and all regulations made under that Act, as well as the associated State and Territory road transport acts and regulations adopting the *Heavy Vehicle National Law Act 2012* (Qld) and includes any subsequent replacement, modification or amendment to any of these acts and regulations;
**Hire Pallets** means any pallets which are supplied by CHEP, Loscam or any other hire pallet provider;
**Mainfreight** means *Mainfreight Distribution Pty Limited* (ABN 85 003 840 319), *Mainfreight Air & Ocean Pty Ltd* (65 007 252 333), *Owens Transport Pty Ltd* (64 060 592 529) and/or *Carotrans Oceania Pty Ltd* (31 118 822 487) (as applicable) carrying on business in its own name or under any other business name and unless the context otherwise requires includes its officers, employees, servants, agents and sub-contractors and their officers, employees, servants, agents and sub-contractors or any other party involved in the provision of the Services (as applicable);
**Receiver** means the person or entity who the Goods are to be delivered to;
**Service Information** means any statement, document or other form of communication, whether verbally or in writing, which contains information that may affect Mainfreight's ability to correctly, lawfully or safely perform the Services; and
**Services** includes, but is not limited to, warehousing, storage, order processing, pick and pack, inventory management, domestic road/rail transport, freight forwarding, customs clearance, regulatory clearance involving communication/submissions with government bodies, transport by air or sea (domestic and international), cartage, packing/unpacking of containers, and any ancillary services associated with any of the foregoing.

2   Provision of Services
2.1   This Agreement shall commence upon execution by Customer, or the commencement of the Services, whichever occurs earlier.
2.2   Mainfreight is not a "common carrier" and will accept no liability as such. Mainfreight reserves the right to refuse the carriage or transport of goods for any person or entity and the carriage or transport of any class of goods in its absolute discretion.
2.3   Mainfreight shall use reasonable endeavours to perform the Services within any timeframes provided or notified to, or requested by, Customer. However, Mainfreight does not guarantee that any Services will be performed within such timeframes.
2.4   No marine transit insurance will be obtained by Mainfreight in relation to the Goods while performing the Services. Any such insurance must be taken out by Customer or Receiver at their own cost and expense.
2.5   Any person at the delivery location shall be deemed to have the authority to sign the consignment note to accept receipt of the Goods.
2.6   Mainfreight relies upon the information stated on the consignment note, or any other document or communication provided to Mainfreight in relation to the Goods, to enable the performance of the Services. Mainfreight does not warrant the accuracy or completeness of any such information and any receipt or signature provided is only an acknowledgement of the Goods being collected or delivered. Mainfreight's signature or acceptance shall not be construed as confirmation of the quality, quantity or condition of the Goods.
2.7   Mainfreight may have the Goods carried, stored or otherwise handled by any servant or agent or sub-contractor of Mainfreight or any servant or agent of any sub-contractor or by any other person without Customer's consent and Customer hereby authorises any deviation from the usual route, manner of cartage, method or place of storage of Goods which may in the absolute discretion of Mainfreight be deemed desirable or necessary in the circumstances.
2.8   If Customer expressly or impliedly instructs Mainfreight to use or it is expressly or impliedly agreed that Mainfreight will use a particular method of handling or storing the Goods or a particular method of carriage, whether by road, rail, sea or air, Mainfreight will give priority to that method but, if it cannot conveniently be adopted by Mainfreight, Customer hereby authorises Mainfreight to handle, store or to carry or to have the Goods carried by another method or methods. Mainfreight shall be entitled to open any document, wrapping, package or other container in which the Goods are placed or carried, to inspect the Goods to determine their nature, condition or for the purposes of determining their ownership or destination where any consignment note or other identifying document or mark is lost, damaged, destroyed or defaced.
2.9   Mainfreight shall have a general lien and a particular lien on all Goods or documents in their possession for any and all sums due at any time from Customer. Mainfreight shall be entitled to sell or dispose of such Goods or documents at the expense of Customer and apply the proceeds in or towards the payment of such sums on 14 days' written notice to Customer if such undisputed outstanding amount remains unpaid.
2.10   If Mainfreight is unable to perform its obligations under this Agreement due to events or circumstances which are outside of Mainfreight's reasonable control (**FM Event**), then Mainfreight shall advise Customer as soon as reasonably practicable. Customer may, at their cost and discretion, contract with a third party to enable the Services to continue to be provided. Mainfreight shall provide Customer with access to the Goods (if it is reasonable and safe to do so) and no payment shall be payable in respect of the Services that Mainfreight is unable to provide. Mainfreight shall use all reasonable endeavours to overcome or remove the FM Event as quickly as possible.

3   Fees & Charges
3.1   Mainfreight's charges will be as provided or notified to Customer from time to time. Mainfreight shall be entitled to amend the charges, or include any new charge, at any time which will become effective upon notice to Customer (whether verbally or in writing). Any

**MAINFREIGHT GROUP (Mainfreight, Owens, Carotrans)**
**STANDARD TERMS & CONDITIONS – NOVEMBER 2021**

quotations are provided on the basis that they are immediately accepted and are subject to the right of withdrawal before acceptance and may be subject to revision after acceptance.

3.2 Certain charges are outside of Mainfreight's control and are subject to change (with or without notice) from time to time. Customer acknowledges and agrees that such charges may be passed on in full without prior notice. These charges include, but are not limited to, port infrastructure surcharges, tolls, stevedore fees, fumigation, etc.

3.3 Mainfreight's charges shall be deemed fully earned upon commencement of the Services and shall be non-refundable in any event. All charges must be paid in accordance with the payment terms in paragraph 1 on the Account Opening Form, unless otherwise specified by Mainfreight or agreed in writing. Any customs duty or excise charges must be paid prior to delivery of the Goods (where applicable) unless otherwise agreed to by Mainfreight in writing.

3.4 Any undisputed outstanding amount that is not paid by the due date will attract interest at the rates laid down, as amended from time to time, under the *Penalty Interest Rates Act 1983* (Vic).

3.5 Mainfreight may charge freight by weight, measurement or value and may at any time re-weigh or re-measure or re-value or require the Goods to be re-weighed or re-measured or re-valued and charge proportional additional fees accordingly.

3.6 Customer will indemnify Mainfreight against non-payment of any charge or expense incurred by Mainfreight where such charge or expense is to be paid for by another party and such party fails to make payment by the due date.

3.7 Customer will be responsible for any proper charge incurred by Mainfreight for any reason. A charge may be made by Mainfreight in respect of any delay in loading or unloading, other than from the default of Mainfreight. Such permissible delay period shall commence upon Mainfreight reporting for loading or unloading. Labour to load or unload Goods shall be the responsibility and expense of Customer or Receiver. Should Receiver not be in attendance during normal trading hours or at the time specified, Mainfreight reserves the right to make a further charge for every call made until final delivery occurs.

3.8 If the Goods cannot be delivered, after Mainfreight has made reasonable attempts to do so, then Mainfreight shall be entitled (at their discretion) to immediately maintain possession of the Goods (until Customer advises Mainfreight of an alternative delivery location), immediately return the Goods to Customer or sell or otherwise dispose of the Goods upon 14 days' written notice to Customer. Mainfreight shall be entitled to charge applicable storage fees until the Goods are finally delivered/returned/sold/disposed. All charges made by Mainfreight in relation to the Goods shall continue to be due and payable regardless of whether the Goods are delivered to the Receiver or not.

3.9 Notwithstanding clause 3.8, Mainfreight shall be able to dispose of Goods immediately in the case of Goods that pose an apparent or immediate danger to persons or property or Goods which are perishable.

3.10 Customer acknowledges and agrees that any claims for incorrect charges, or overcharges, which are not notified to Mainfreight within 90 days from the date of invoice shall not be claimable.

3.11 Customer is not entitled to offset any amounts which are owed by Customer to Mainfreight under this Agreement against any amounts which may be due by Mainfreight to Customer.

## 4 Customer's Obligations

4.1 Customer warrants that:

    (a) they are the owner of the Goods or otherwise have the authority of the owner to consign the Goods upon and subject to this Agreement;

    (b) the Goods comply with the requirement of any applicable law (including, but not limited to, the *Australian Code for the Transport of Dangerous Goods by Road and Rail* and Part 92 of the *Civil Aviation Safety Regulations 1998* (Cth)) relating to the consigning and packaging of the Goods and the expenses and any charges incurred by Mainfreight in complying with the provisions of such law or with any order or requirement thereunder or with the requirement of any harbor, dock, railway, shipping, customs, warehouse or other authority or company shall be paid for by Customer;

    (c) if any of the Goods are subject to the legal control of the Australian Border Force then all customs duty, excise and costs which Mainfreight may become, or actually becomes, liable for in respect of such Goods pursuant to any law relating to customs duty or excise shall be immediately paid for by Customer. This shall also include any fine or penalty imposed on Mainfreight related to such customs duty or excise;

    (d) they have complied with all applicable laws relating to Dangerous Goods by fully describing in writing whether on the consignment note, waybill, bill of lading or separately (and in the latter case has brought the description to the actual attention of Mainfreight) the name and nature of all Dangerous Goods and any additional charges shall be paid for by Customer in relation to such Goods if deemed necessary by Mainfreight;

    (e) they will comply with all applicable laws and regulations applicable to the nature, condition or packaging of the Goods and that the Goods are packed in a manner, having regard to their nature, which is adequate to withstand the ordinary risk of carriage and that Customer has correctly declared the weight and dimensions of the Goods;

    (f) they will, so far as is reasonably practicable, ensure the safety of any Services performed for or on behalf of Customer and that they will meet their obligations under the Heavy Vehicle National Law where Customer acts as a Consignor, Consignee, Loader or Packer of Goods (as those terms are defined in the Heavy Vehicle National Law);

    (g) any containers, packaging or pallets (which contain or comprise the Goods) shall comply with any requirements of the Receiver and any expense incurred by Mainfreight, arising from any failure to conform, shall be borne or reimbursed by Customer;

    (h) any Service Information will be materially accurate and contain no false, incorrect or misleading statements; and

    (i) they will promptly comply with all reasonable requests from Mainfreight for information, in relation to Customer's compliance with the MS Act, or to assist Mainfreight to comply with Mainfreight's obligations under the Act.

## 5 Liability & Indemnity

5.1 The Customer acknowledges and agrees that risk in the Goods shall remain with Customer at all times whilst in the possession, custody or control of Mainfreight and that Mainfreight shall, under no circumstances (except where any statute otherwise requires) be under any liability whatever (whether in contract, tort or otherwise) for any:

    (a) personal injury or property damage caused or contributed to by;

    (b) loss or damage to; or

**MAINFREIGHT GROUP (Mainfreight, Owens, Carotrans)**
**STANDARD TERMS & CONDITIONS – NOVEMBER 2021**

(c)  mis-delivery, delayed delivery or non-delivery of,

the Goods in relation to, or arising out of, the Services whether the foregoing is caused, or alleged to have been caused by, the negligence, wrongful act, breach or default of Mainfreight or by any cause whatever.

5.2  Mainfreight shall not be liable for any claim in relation to Consequential Loss which is suffered by Customer, Receiver or any third party whether arising from, or in relation to, the performance of the Services directly or indirectly from any breach of Mainfreight's obligations under this Agreement or from any negligence, misrepresentation or other act or omission or from any other cause whatsoever.

5.3  Except where any statute otherwise requires, Customer shall indemnify Mainfreight against any claim, liability, loss, damage, cost or expense, which is incurred or suffered by Mainfreight in relation to, or arising out of, the performance of the Services, to the extent that it is caused or contributed to by:

(a)  the inherent nature or improper packaging of the Goods;

(b)  the negligent act, omission or wilful default by Customer, any Receiver or any other person or entity acting on behalf of Customer; or

(c)  Customer's breach of clause 4.1,

or which is otherwise necessarily incurred by Mainfreight in the proper performance of its obligations under this Agreement.

5.4  Without limiting clause 5.3, Customer and Receiver shall be liable for, and indemnify against, any and all liability for goods and services tax levied under the *A New Tax System (Goods and Services Tax) Act 1999* (Cth) (as amended) and any other goods and services tax, value added tax, consumption tax or tax of similar effect levied which Mainfreight may incur in relation to the Services.

5.5  Without limiting clause 2.8, 3.7 or 5.3, Customer indemnifies Mainfreight against all reasonable costs (including mercantile agent fees and solicitor-client legal costs) incurred by Mainfreight from any and all action taken in relation to any debt recovery arising from this Agreement.

5.6  Customer acknowledges and agrees that, every servant, sub-contractor or agent of Mainfreight shall have the benefit of all provisions herein as if such provisions were expressly for their benefit. In entering into this contract, Mainfreight, to the extent of those provisions, does so not only on its behalf, but as agent and trustee for such servants, sub-contractors and agents. Notwithstanding the foregoing, should any claim be made against any servants, subcontractors or agents, then Customer will indemnify Mainfreight against all consequences thereof.

5.7  If the Goods pose, or are likely to pose, a substantial risk to cause personal injury or property damage then Mainfreight may take any action that is reasonably necessary to reduce or eliminate such risk. This shall include, but not be limited to, destroying, disposing of or abandoning the Goods. Mainfreight shall not be liable for any loss or damage as a result of any action undertaken to reduce or eliminate such risk.

5.8  Notwithstanding the provisions hereof, this Agreement shall be read subject to any guarantees, implied terms, conditions or warranties imposed by Schedule 2 of the *Competition and Consumer Act 2010* (Cth) (as amended) or any other Commonwealth or State legislation (*Overriding Legislation*) insofar as such may be applicable and prevents either expressly or impliedly the exclusion or modification of any such guarantee, term, condition or warranty.

5.9  Mainfreight's liability as a result of a breach of any Overriding Legislation shall be limited to supplying the Services again or the payment of the cost of supplying the Services again.

5.10  Any proceedings against Mainfreight must be commenced in a court of competent jurisdiction within Victoria, and not elsewhere, within nine (9) months from the date of delivery, or intended delivery, of the Goods. Customer shall not be entitled to bring any proceedings against Mainfreight which are not commenced within such time. Any claim in relation to lost or damaged Goods which are the subject of air/sea transportation must be notified to Mainfreight within the timeframes stated in the *Carriage of Goods by Sea Act 1991* (Cth) or *Civil Aviation (Carrier's Liability) Act 1959* (Cth) (as applicable).

6  Containers & Demurrage/Detention/Storage Charges

6.1  Mainfreight may elect to provide Customer with container/s in order to pack the Goods prior to transportation. Customer must inspect any containers prior to loading the Goods into them and shall be deemed to have accepted the container in good repair and suitable condition should they load the Goods into the container.

6.2  Mainfreight shall not be liable for any loss or damage to the Goods which is caused or contributed to by the condition or unsuitability of the container.

6.3  Risk in the container shall pass to Customer upon delivery and Customer shall indemnify Mainfreight against any claim which relates to, or arises out of, any loss or damage to the container, or personal injury or property damage (excluding the Goods) which arises from the use or possession of the container, except to the extent that it is caused or contributed to by the negligence of Mainfreight.

6.4  Where the Goods are to be transported in containers (whether provided by Mainfreight or not), Customer undertakes that re-delivery of the container shall occur promptly.

6.5  Mainfreight must be provided with at least three business days' notice prior to the required collection date of the container. Mainfreight shall use reasonable endeavours to collect/return the container once notified. However, Mainfreight does not guarantee that such service will be completed within the relevant timeframe.

6.6  Customer acknowledges and agrees that events outside of Mainfreight's reasonable control may contribute to an inability to collect/return the container within the relevant timeframe. Such events may include, but are not limited to, government agencies undertaking their relevant obligations, insufficient fleet capacity, excessive storage of containers within Mainfreight's (or a third party's) yard, closure of empty container parks and redirections of containers by container parks or shipping lines.

6.7  Mainfreight shall not be liable for, and Customer will indemnify Mainfreight against, any detention or demurrage charges which are incurred by the Customer, or any third party, except to the extent that such charge has been caused or contributed to by Mainfreight's negligence.

6.8  Where Mainfreight is unable to collect/return a container within the relevant timeframe, Mainfreight may elect to cancel the collection booking, return the container to the Customer or Receiver (at the Customer's cost) or charge storage fees to Customer until the container can be successfully returned. Mainfreight shall be entitled to return the container to the Customer or Receiver, or charge storage fees, regardless of whether the reason for such inability to return the container is due to Customer, Receiver or any other third party.

## MAINFREIGHT GROUP (Mainfreight, Owens, Carotrans)
## STANDARD TERMS & CONDITIONS – NOVEMBER 2021

7   Heavy Vehicle National Law

7.1   Mainfreight is committed to taking all steps, so far as is reasonably practicable, to ensure that any Services are performed safely and in accordance with the Heavy Vehicle National Law.

7.2   Mainfreight shall not comply with any direction or instruction provided by Customer or Receiver that might:

(a)   have the effect of contributing to a breach of;

(b)   prevent Mainfreight from taking all steps that are reasonably necessary to prevent a breach of; or

(c)   prevent Mainfreight from complying with its obligations under,

the Heavy Vehicle National Law.

7.3   Without limiting any other clause of this Agreement, Mainfreight shall not be liable for any loss or damage whatsoever which may be suffered by another party as a result of any action or inaction undertaken by Mainfreight to ensure compliance with the Heavy Vehicle National Law.

7.4   Customer acknowledges and agrees that they have ensured that any relevant party (including the Receiver or any supplier, but excluding Mainfreight) are aware of, and comply with, their obligations under the Heavy Vehicle National Law and that any such party is aware of any load restraint requirements applicable to the transportation of the Goods.

8   Hire Pallets

8.1   Customer acknowledges and agrees that, if Hire Pallets are transferred to Mainfreight's account during the provision of the Services, Mainfreight shall be entitled to charge the Customer any fees which Mainfreight may incur from the Hire Pallet provider in relation to Mainfreight's inability to recover that Hire Pallet if:

(a)   the Receiver does not have a Hire Pallet account; or

(b)   Mainfreight is unable to transfer the Hire Pallet to the Receiver's account; and

(c)   Mainfreight cannot physically recover an equal number of Hire Pallets from the Receiver at the time of delivery.

8.2   Further to clause 8.1, any instruction to Mainfreight to exchange or transfer consigned pallets to Mainfreight's Hire Pallet account is accepted only on the basis that Customer will indemnify Mainfreight against any loss or non-recovery of the consigned pallets howsoever arising. Evidence of the instruction to Mainfreight and any non-recovery shall be as shown on the face of the consignment note which shall be deemed conclusive proof of the instruction and/or non-recovery. A charge may be made by Mainfreight for the cost of hiring, recovery and replacement (if applicable) for all Hire Pallets unless exchange pallets are available at the time of delivery.

9   Dispute Resolution Process

9.1   If any dispute arises in connection with this Agreement, the following must be completed prior to the party requiring it to be resolved (*Disputing Party*) commencing proceedings in a court of competent jurisdiction (unless requiring urgent or injunctive relief):

(a)   Disputing Party must promptly give the other party written notice providing sufficient details of the dispute (*Dispute Notice*);

(b)   within 10 business days of receiving a Dispute Notice, the parties must attempt to resolve the dispute via negotiation;

(c)   if the parties are unable to resolve the dispute via negotiation (or a party refuses to participate in the process outlined above) then either party (or the compliant party, if a party refuses to participate in the process outlined above) shall be entitled to commence proceedings in a court of competent jurisdiction.

10   Miscellaneous

10.1   This Agreement is governed by the laws of Victoria.

10.2   Mainfreight shall not be bound by any agreement purporting to vary this Agreement unless such agreement is in writing and signed by an authorised representative of Mainfreight. The parties agree that this Agreement shall prevail over any other terms, conditions, document or statement (whether verbally or in writing) provided by a party (subject to clause 10.3).

10.3   Where a document is issued by or on behalf of Mainfreight and bears the title of, or includes the words, "bill of lading" (whether or not negotiable) and sea or air "waybill" and provides that Mainfreight contracts as carrier, the provisions set out in that document shall prevail to the extent of any inconsistency with this Agreement.

10.4   When this Agreement applies to or forms part of a bill of lading or an air/sea waybill issued by Mainfreight in its capacity as a contracting party for air/sea transportation, it is agreed that the transportation to the airport/wharf of departure and from the airport/wharf of arrival does not constitute part of the contract of air/sea carriage. As far as Mainfreight takes over the arrangement of performance of such services, this is done under a separate contract which is subject to this Agreement and (to the extent only to which this Agreement does not or cannot exclude or modify the operation of any applicable legislation) to that legislation.

10.5   This Agreement shall continue to apply and to be of full force and effect in all circumstances notwithstanding any breach or alleged breach by Mainfreight of this Agreement and in particular (but without limitation of the generality hereof), notwithstanding any departure by Mainfreight from this Agreement whether by way of deviation or otherwise howsoever.

10.6   If one or more provisions of this Agreement shall be invalid or unenforceable the remaining provisions of this Agreement shall not be affected thereby and shall continue in full force and effect. If any provision of this Agreement is found to be invalid or unenforceable, that provision shall be severed from this Agreement to the extent that it is invalid or unenforceable.

10.7   This Agreement may be subject to change from time to time. Any changes to this Agreement will be effective upon written notice.

***Customer acknowledges and agrees that they have read and understand the above terms and conditions and that this Agreement shall be applicable for any Services which are performed by Mainfreight:***

Signature: _S. Bolland_

Position: Chief Operating Officer

Name: Stuart Bolland

Date: 29th March 2023

   

# Mainfreight Group – Deviations from
# Standard Terms & Conditions

**info for customer:**

***POWIN ENERGY LLC***

***Address:* 20550 SW 115th
Ave, Tualatin, OR 97062,
USA**

**General:**

1. Defined terms in this document shall have the same meaning as outlined in Mainfreight's standard terms and conditions unless otherwise specified in this document.

2. This document shall prevail to the extent of any inconsistency with Mainfreight's standard terms and conditions.

**Amendments to the T&Cs:**

3. In clause 2.9, the number "14" is replaced with "60".

4. In clause 3.1, insert "30 days'" before "notice to Customer".

5. In clause 3.8, the number "14" is replaced with "60".

6. Clause 3.9 is hereby deleted.

7. Insert the following at the end of clause 2.7:

   *Notwithstanding the foregoing, upon the written request of Customer, Mainfreight must provide Customer with any information which is reasonably requested in relation to such subcontractor utilised to perform the Services. Customer shall be entitled to suspend Mainfreight from utilising a particular subcontractor if they do not meet the minimum requirements as outlined in this Agreement.*

8. In clause 9.1(b), the number "10" is replaced with "30".

| Customer | Powin LLC | | |
|----------|-----------|------|---|
| Signature | *S. Bolland* Type text here | Position | Chief Operating Officer |
| Name | Stuart Bolland | Date | 29th March 2023 |



**Mainfreight Air and Ocean Pty Ltd ABN 65 007 252 333**

**Liability info for customer:**

*POWIN ENERGY LLC*

*Address:* **20550 SW 115th Ave,**
**Tualatin, OR 97062, USA**

**Liability of Mainfreight:**

In the event of loss or damage to the cargo due to the negligence of Mainfreight, the liability of Mainfreight, howsoever arising, shall not exceed the lesser of:
(i)       the value of the goods per any one consignment and/or shipment., or
(ii)      AUD$300,000 per any one consignment and/or shipment.

Mainfreight shall not be liable for loss or damage howsoever caused (whether or not direct, indirect or consequential) to property other than the Goods themselves and shall not be liable for any pure economic loss or loss of profit (or similar claim), delay or deviation howsoever arising, except to the extent any loss or damage to the cargo caused by Mainfreight's negligence or breach of contract or bailment or wilful act or default of Mainfreight.

**International Transport:**

Customer needs to be aware that when cargo is travelling by air/sea international conventions apply, these international conventions limit the liability of the carrier.
The most common conventions are the Hague Visby Rules (sea) and Montreal Convention (Air).
The limitations are: -
Hague Visby: The higher of 2 SDR per kilo of the goods lost/damaged, or 666.7 SDR per unit of goods.
Montreal Convention: 22 SDR per kilo of the goods lost/damaged
1 SDR = $2 AUD approx. so there could be a shortfall between what the carrier is liable for under the conventions and the value of the cargo.

**General Note:**

We encourage customers, to ensure that they have all risk cargo insurance in place for their goods at all times. There are many circumstances where cargo loss/damage can occur which are not due to the fault of carriers (e.g. acts of god) and are therefore not recoverable from the carriers. Additionally, even where carriers are liable, the process of settling a liability claim can be much more time consuming than settling a cargo insurance claim. For a cargo claim the cargo insurer only needs evidence that the cargo is damaged before they pay out. For a liability claim the liability insurer needs evidence of the damage, as well as evidence that the carrier is liable – this can take some time to confirm. Best process for customer, is to claim under their cargo insurance policy in the first instance, so they receive their money asap, and then let their cargo insurer pursue a recovery claim against Mainfreight.

**Customer Authorized Signature:**    *S. Bolland*

**Customer Authorized Name:**    Stuart Bolland

**Title:**  Chief Operating Officer

**Date:**  29th March 2023

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin M. Capuzzi, Esq., hereby certify that *Mainfreight's Notice of Lien* was filed and

served on July 23, 2025 via CM/ECF on all parties registered to receive notice in this case.


 */s/ Kevin M. Capuzzi* 
Kevin M. Capuzzi (NJ No. 173442015)