# Exhibit C

**(EKS Term Sheet)**

**TERM SHEET FOR POWIN AND HITACHI TRANSACTION**

| | |
|---|---|
| **Parties** | - Hitachi Energy Ltd, Brown-Boveri-Strasse 5, 8050 Zurich, Switzerland ("**Hitachi Energy**" or the "**Buyer**")
- Hitachi Energy Power Conversion Solutions, S.L.U., Avenida de Camas, 28 Polígono Industrial PIBO, 41110, Bollullos de la Mitación, Seville, Spain ("**EKS**" and together with the Buyer, "**Hitachi**")
- Powin LLC, 20550 SW 115th Ave, Tualatin, OR 97062 ("**Powin**" or the "**Guarantor**")
- Powin EKS SellCo LLC, 20550 SW 115th Ave, Tualatin, OR 97062 (the "**Seller**" and together with Powin, the "**Powin Parties**" and together with Hitachi, the Parties and each a "**Party**") |
| **Background** | - On October 23, 2023, the Buyer, the Seller and the Guarantor entered into:
  - a membership interest purchase agreement (as amended, the "**MIPA**"), pursuant to which the Buyer purchased 80% of the units of EKS HoldCo LLC (f/k/a Powin EKS Holdings LLC, "**HoldCo**") from Seller and Seller retained 20% of the units (the "**Remaining Units**") of HoldCo (the "**Acquisition**"); and
  - an amended and restated limited liability agreement, regarding, among other things, the governance of HoldCo (as amended, the "**LLCA**").
- On October 23, 2023, EKS and certain former executives entered into separation agreements, as provided for in the MIPA, under which separation payments were made (the "**Separation Agreements**").
- On October 23, 2023, HoldCo, the Seller and Powin entered into a transition services agreement, pursuant to which Powin rendered services to HoldCo (the "**TSA**").
- On October 23, 2023, Powin and Mr. Javier Landero Cruz entered into a consultancy services agreement, pursuant to which Mr. Javier Landero Cruz agreed to provide services to Powin (the "**First Service Agreement**").
- On October 23, 2023, Powin and Mr. Sergio Hurtado Cuerva entered into a consultancy services agreement, pursuant to which Mr. Sergio Hurtado Cuerva agreed to provide services to Powin (the "**Second Service Agreement**" and, together with the First Service Agreement, the "**Service Agreements**").
- On October 23, 2023, EKS and Powin entered into a master product supply agreement for the provision by EKS of products to Powin (as amended, the "**MSA**").
- Separate and apart from the MSA, EKS has also supplied goods and services to Powin pursuant to certain purchase orders ("**Purchase Orders**").
- On June 10, 2025 (the "**Petition Date**"), Powin and certain of its affiliates, excluding the Seller (the "**Powin Debtors**"), filed petitions in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") for relief under chapter 11 of title 11 of the United States Code (the "**Chapter 11 Cases**").
- As of the Petition Date, Hitachi asserts the following claims against the Powin Parties: |

1

|  | <ul><li>Indemnity claims of Buyer and EKS under the MIPA against the Seller and Powin (as Guarantor) in an amount no less than USD 2,276,963, relating to separation payments pursuant to the Separation Agreements and bonus payments made by EKS in connection with the Acquisition (the "**Indemnity Claims**").</li><li>Commercial claims under the Purchase Orders for issued and unpaid invoices for goods and services EKS supplied to Powin, in an amount equal to the sum of (i) EUR 4,510,905.73 (of which EUR 2,700,809.21 is for overdue invoices and EUR 1,810,096.52 is for goods and services supplied but not yet invoiced) and (ii) USD 3,447,597.34 (of which USD 2,428,077.05 is for overdue invoices and USD 1,019,520.29 is for goods and services supplied but not yet invoiced) (all such claims, the "**Commercial Claims**"), in each case, plus interest. The Commercial Claims include EUR 34,968.77 in connection with goods delivered on June 9, 2025 and EUR 1,520.52 in connection with goods shipped by EKS whose scheduled delivery date is June 22, 2025, which are entitled to treatment as an administrative expense.</li><li>Under the MIPA, potential indemnification claims against Seller in relation to certain tracking units (or other phantom equity interests) granted to certain employees of EKS equivalent in the aggregate to 1.5% of Seller's remaining interest in HoldCo, but which have not been granted or issued to such employees (the "**Tracking Units Claims**").</li></ul> |
|---|---|

| | |
|---|---|
| **Proposed Transaction** | The Parties desire to consummate a comprehensive transaction (the "**Proposed Transaction**") as follows.<br><br>• The Buyer would acquire the Remaining Units from the Seller (the "**20% Acquisition**").<br><br>• As partial consideration for the 20% Acquisition, Hitachi would release and waive its claims against the respective Powin Parties and their respective related parties (collectively, the "**Hitachi Releases**"), including:<br>    o  The Indemnity Claims<br>    o  The Commercial Claims<br>    o  The Tracking Units Claims<br>    o  Rejection damages claims under the MSA, including in relation to Powin's failure to satisfy the MVC obligations<br><br>provided, however, the Hitachi Releases will not encompass, extend to or otherwise comprise any rights and claims Hitachi or its affiliates may have against Akaysha and its affiliates.<br><br>• The Seller, Powin, their affiliates and related parties, and the bankruptcy estates of the Powin Debtors, expressly waive and release any and all claims, offsets, defenses, whether known or unknown they may or may have against the Buyer, EKS, HoldCo or any of their affiliates, or their respective agents, attorneys, shareholders, managers, members, advisors, officers, directors, employees, affiliates, partners, predecessors, successors, and assigns, or other related parties under any ground, including but not limited under law, equity or relating in any way to the MIPA, the LLCA (including the put option rights of Seller thereunder), the Separation Agreements, the TSA, the Service Agreements, the Acquisition, the MSA, the Purchase Orders, any dealings of Hitachi with or concerning the end customers of Powin under the Purchase Orders, or otherwise, including any claims or causes of actions under chapter 5 of the Bankruptcy Code (the "**Powin Releases**").<br><br>• The transactions contemplated by this term sheet are expected to be documented in an agreement, to which the membership interest purchase agreement substantially in the form attached as Exhibit D to the LLCA will be an exhibit (the "**Agreement**"). The Powin Debtors will file a motion or such appropriate supplements to their existing sale motion such that approval of the transactions contemplated by this term sheet will be sought from the Bankruptcy Court on August 6, 2025. |
| **Purchase Price and Settlement Payment** | In addition to the Hitachi Releases, as full and final consideration of the proposed transaction, including the 20% Acquisition and the Powin Releases, the Buyer will pay, or cause to be paid, to the Seller a fixed sum of **USD 15,000,000**, not subject to any price adjustment or earn-out (the "**Purchase Price**"). |
| **Conditions Precedent** | Consummation of the proposed transactions are subject to:<br><br>• Entry of an order of the Bankruptcy Court approving and authorizing the Proposed Transaction pursuant to Bankruptcy Rule 9019 and the applicable provisions of the Bankruptcy Code, including sections 363 and 365 thereof (the "**Court Approval**"), which order has not been stayed and has become final.<br><br>• Voluntary release of any security interests or liens on the Remaining Interests, in form and substance acceptable to Buyer.<br><br>• Satisfaction or waiver of all conditions precedent in the Agreement, including any conditions precedent in the form MIPA incorporated into the Agreement. |

3

| | |
|---|---|
| **Closing of the Proposed Transaction** | Closing of the Proposed Transaction will take place on the date which is 10 Business Days following satisfaction of the last of the Conditions Precedent (such date, the "**Closing Date**"). |
| | At Closing: |
| | - The Buyer will pay to the Seller in immediately available funds the Purchase Price to the bank account designated in writing by the Seller no later than 5 Business Days prior to the Closing Date. |
| | - The Buyer and the Seller will enter into and close on the membership interest purchase agreement substantially in the form attached as Exhibit D to the LLCA, assigning the Remaining Units to Buyer. |
| | - Releases of any liens or security interests (including without limitation any adequate protection liens or other liens under any order approving DIP financing or the use of cash collateral in the Chapter 11 Cases) will be executed and delivered. |
| | - The Agreement will be executed and the Hitachi Releases and the Powin Releases will each become effective. |
| | - To the extent applicable, the Seller will cause the Powin Directors (as defined in the LLCA) to resign as of the Effective Date. |
| **Costs and expenses** | Each Party shall bear its own costs and expenses in connection with this terms sheet and the Proposed Transaction. |
| **Confidentiality** | No Party shall make any public announcements in respect of this term sheet or the transactions contemplated by this term sheet without the prior written consent of the other Party (which consent shall not be unreasonably withheld, conditioned or delayed), and the Parties shall cooperate as to the timing and contents of any such announcement or disclosure; provided, however, nothing in this paragraph will prevent any of the following at any time: |
| | - the Parties filing any document or providing any information to the Bankruptcy Court to obtain Court Approval; |
| | - a Party disclosing any information to the extent required under applicable law, in which case the Party required to make such release or announcement will allow the other Party reasonable time to comment on such release or announcement in advance of such issuance; |
| | - a Party making a statement or disclosure to (i) such Party's (or any of its affiliate's) paid legal, accounting and financial advisers to the extent reasonably necessary for any such adviser to perform its paid legal, accounting and financial services, respectively, for such Party (or such affiliate), or (ii) any of its affiliates or any of their representatives in the ordinary course of its business; provided, that such persons are bound by confidentiality restrictions regarding the information disclosed. |
| **Governing law** | This term sheet shall be governed by and construed in accordance with the internal Laws of the State of Delaware without regard to the conflicts of law provision or rule (whether of the State of Delaware or any other jurisdiction). |
| **Jurisdiction** | Each Party to submit to the jurisdiction of the Bankruptcy Court and, for matters arising following the conclusion of the Chapter 11 Cases, the United States District Court for the District of Delaware, for the purposes of any proceeding relating to the transaction contemplated by the definitive documents. |
| **Waiver of Jury Trial Rights** | Agreement and related definitive documentation will provide, to the fullest extent permitted by applicable law, for the waiver by each Party of any right it may have to a trial by jury in respect to any litigation directly or indirectly arising out of, under or in connection with this term sheet, or any transaction contemplated hereby or thereby. |