**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**AMENDED AND SUPPLEMENTAL LIMITED**
**OBJECTION AND RESERVATION OF RIGHTS**
**OF ULTRA CORPOTECH PRIVATE LIMITED AND ULTRA**
**CORPOTECH INC. TO THE DEBTORS' NOTICE OF POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Ultra Corpotech Private Limited ("UCPL") and Ultra Corpotech Inc. ("UCI" and collectively with UCPL, "Ultra") hereby amend and supplement their previously filed *Limited Objection and Reservation of Rights of Ultra Corpotech Private Limited and Ultra Corpotech Inc. to the Debtors' Notice of Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 570] (the "Objection") to the *Notice of Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 446] (the "Cure Notice") filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in connection with the *Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections, (II) Approving Bidding Procedures by Which Interested Parties May Bid and an Auction Sale Format in Connection With the Sale of Substantially All of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties, (V) Authorizing*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP, [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

1

*the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of the Debtors' Property Free and Clear of All Causes of Action and Claims* [Docket No. 413] (the "Bid Procedures Order").

Ultra submits this Objection to correct the Cure Notice and reserve rights in connection with any cure claim and intends to work with counsel for the Debtors and any successful purchaser to agree on the appropriate cure amount for Ultra. In support of this Objection, Ultra submits the Declaration of Nitin Mane (the "Mane Declaration"), President and COO of UCPL, which is attached hereto as **Exhibit A**. In further support of its Objection, Ultra respectfully states as follows:

**Background**

1. On June 9, 2025 (the "Petition Date"),[2] the Debtors each commenced a voluntary case (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. Prior to the Petition Date, Powin LLC ("Powin") and UCPL, its subsidiaries, and affiliates (including UCI) entered that certain *Material Supply Agreement* (the "MSA")[3] dated as of August 1, 2023, which set forth the terms and conditions on which Ultra would sell, and Powin would purchase assemblies, components, and other supplies for Powin's energy storage systems

---

[2] Certain of the Debtors filed voluntary petitions on June 9, 2025, June 10, 2025, and June 22, 2025, respectively. Unless otherwise stated herein, the term "Petition Date" refers to June 9, 2025, the Date Powin, LLC commenced the above-captioned Chapter 11 Cases.

[3] Due to the proprietary and confidential terms of the MSA, it has not been attached hereto or otherwise provided in support of this Objection, but will be made available upon written request, a showing of need, and entry of a protective order, as appropriate and acceptable to Ultra and the Debtors

2

according to Powin's proprietary specifications. Under the MSA, purchase and sale of one or more components is initiated by submitting purchase orders to UCPL or its subsidiaries, including UCI. MSA § 4.6. The MSA provides:

> Powin will have the right to cancel, sixty (60) days prior to the applicable Delivery Date of the particular Components (the "Cancellation Deadline"), any Purchase Order (or part thereof applicable to one or more particular Components). In the event of cancellation of all or a portion of any Purchase Order within sixty (60) days of the Delivery Date, Powin shall pay to Supplier all documented costs incurred by Supplier, which includes the full price for such delivered Components, works in progress, cost for raw materials, and finished goods inventory tied to such cancelled Purchase Order; and provided that such cost cannot be assigned to another Purchase Order; further provided, that Supplier provides appropriate documentation to support an invoice for such costs and charges.

MSA § 4.6.

3. Additionally, pursuant to Section 8.3, upon termination of the MSA, "Powin shall pay to Supplier all documented costs incurred by Supplier, which includes the full price for such delivered Components, works in progress, cost for raw materials, and finished goods inventory which cannot be reasonably cancelled or re-assigned by Supplier, in accordance with Section 4.6; further provided that Supplier provide appropriate documentation to support an invoice for such costs and charges."

4. As of the date hereof, and as more fully set forth in the accompanying Mane Declaration, the total amount necessary to cure the defaults of Powin under the MSA is: **$8,475,744.53** (owed to UCPL) and **$420,000.00** (owed to UCI) (collectively, the "Total Cure Amount"). Pursuant to the MSA, the aggregate amount of $3,215,744.53 has been invoiced and remains unpaid. However, this is exclusive of any additional amounts to which Ultra is entitled on account of, *inter alia*, goods delivered after the Petition Date, work-in-progress, finished goods, raw materials, components, taxes (MSA § 4.9), demurrage, interest, or additional amounts due in connection with cancelled and/or changed orders under the MSA, all as detailed in the Mane

Declaration.

5. On July 17, 2025, the Court entered the Bid Procedures Order, which, among other things, approved FlexGen Power Systems, LLC ("FlexGen") as the stalking horse bidder, approved bidding procedures by which interested parties may bid in connection with the sale of substantially all of the Debtors' assets ("Sale"), and authorized notice procedures relating to the potential assumption and assignment of certain executory contracts and unexpired leases.

6. Following entry of the Bid Procedures Order, on July 18, 2025, the Debtors filed the Cure Notice, which, among other things, identified certain executory contracts that may potentially be assumed by the Debtors and assigned to the purchaser, as well as proposed cure amounts in connection therewith. The Cure Notice sets forth a proposed cure regarding the MSA both in an "unknown amount" and in the amount of $3,215,744.53 (the "Proposed Cure Amount"). The Proposed Cure Amount does not include the additional amounts that are due and owing to Ultra set forth above and in the Mane Declaration.

7. On July 31, 2025, the Debtors filed their Notice of Winning Bidders [Docket No. 591], stating, among other things, that FlexGen is the winning bidder with respect to the Purchased Assets (as described in the FlexGen Asset Purchase Agreement attached as Exhibit B to the Notice of Winning Bidders).

8. Ultra files this Objection to correct the Cure Notice and preserve its rights with respect to the cure obligations associated with any assumption of the MSA, including any open purchase orders and related agreements.

## **LIMITED OBJECTION**

9. The Bankruptcy Code mandates a full and complete cure of all defaults as a prerequisite to assumption and assignment, and a proposed cure amount that fails to account for

4

all outstanding obligations contravenes these statutory provisions and renders the assumption and assignment impermissible. Bankruptcy Code section 365(b) conditions a debtor's ability to assume contracts as follows:

> (1) If there has been a default in an executory contract or unexpired lease of the debtor, the [debtor] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the [debtor] –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default ...;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b).

10. It is well-settled and statutorily required, therefore, that if a debtor elects to assume a contract pursuant to section 365, the non-debtor party must be "made whole" at the time of assumption (and assignment). *Kimmelman v. Port Auth. of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311, 318 (3d Cir. 2003) ("in order to assume such an agreement, the debtor in possession must cure defaults and provide assurance of future performance"); *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs. Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000) ("Once the trustee satisfies [the three requirements of 365(b)(1)(A), (B) & (C)], it may assume the contract. . . . but it must do so in its entirety"); *In re Network Access Solutions, Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005). Pursuant to section 365(b)(1)(A), as a condition to the assumption of an executory contract or unexpired lease, a debtor must either "cure" existing monetary defaults under the agreement or provide "adequate assurance" that it will "promptly cure" those existing defaults. 11 U.S.C. § 365(b)(1)(A). This requirement is in effect with regard to both prepetition and postpetition defaults. *See In re Burger Boys*, 94 F.3d 755, 763 (2d Cir. 1996); *In re Network Access*

5

*Solutions, Corp.*, 330 B.R. at 76.

11.     Here, Powin is in default of the MSA by failing to pay certain amounts when due, and the Proposed Cure Amount is insufficient to cure the existing breaches and defaults. The Proposed Cure Amount listed in the Cure Notice does not account for all outstanding obligations owed to Ultra under the MSA, including but not limited to: (a) amounts for goods delivered post-petition; (b) amounts for work-in-progress, finished goods, consumables, and raw and other materials procured or committed to fulfill Powin's purchase orders; (c) taxes, duties, and other government-imposed surcharges as required under Section 4.9 of the MSA; (d) demurrage, storage, interest, and other incidental costs incurred as a result of the Debtors' failure to timely accept or pay for goods; and (e) any additional amounts due or damages owed in connection with change orders, cancellation of purchase orders, or other obligations arising under the MSA and related purchase orders.

12.     As of the date hereof, Powin owes the aggregate amount of **$8,475,744.53** to UCPL and **$420,000.00** to UCI under the terms of the MSA and applicable law. Unless Powin assumes the outstanding purchase orders and provides adequate assurance that it is willing and able to pay for the past invoices, Ultra will not be fully made whole, as is required under section 365(b) of the Bankruptcy Code, unless it receives the full Total Cure Amount. Accordingly, as a condition to assumption and assignment of the MSA, all such amounts must be paid in full at the time of assumption, and Ultra must be made whole for all defaults as required by section 365(b) of the Bankruptcy Code. Any assumption and assignment of the MSA without full satisfaction of these obligations would impermissibly shift the risk of the Debtors' default onto Ultra, in direct contravention of the protections afforded to non-debtor contract counterparties under section 365.

Moreover, the Debtors may not assume and assign the MSA unless adequate assurance of

6

future performance is provided. 11 U.S.C. § 365(b)(1)(C). Ultra therefore requests that any successful purchaser provide competent evidence of adequate assurance of future performance.

13. Finally, the Bankruptcy Code preserves the right of a creditor to offset mutual, pre-petition obligations, subject to Section 363. 11 U.S.C. § 553(a). Absent consent, a sale free and clear under Section 363 does not eliminate affirmative defenses such as Ultra's rights to recoupment. *In re Revel AC, Inc.*, 909 F.3d 597, 604 (3d Cir. 2018); *In re Process Am., Inc.*, 588 B.R. 82, 109 n.99 (Bankr. C.D. Cal. 2018); *In re Pers. Communs. Devices, Ltd. Liab. Co.*, 556 B.R. 45 (Bankr. E.D.N.Y. 2016); *Hispanic Indep. TV Sales, LLC v. Kaza Azteca Am. Inc.*, 2012 U.S. Dist. LEXIS 46239, at *14 (S.D.N.Y. Mar. 30, 2012); *In re Am. Home Mortg. Holdings, Inc.*, 402 B.R. 87, 93-94 (Bankr. D. Del. 2009); *In re TWA*, 322 F.3d 283, 289 (3d Cir. 2003); *Schneider Nat'l, Inc. v. William L. Bonnell Co., Inc.*, No. 00-C-0080, 2001 U.S. Dist. LEXIS 28532 (E.D. Wis. Sep. 24, 2001); *Folger Adam Sec., Inc. v. DeMatteis / MacGregor, J.V.*, 209 F.3d 252, 261-62 (3d Cir. 2000); *EMC Mortg. Corp. v. Atkinson*, 888 N.E.2d 456 (Ohio Ct. App. 2008). If the MSA is assigned to any buyer without fully curing the indebtedness, Ultra's rights to recoupment and setoff, to the extent applicable, may not be destroyed and must be preserved accordingly.

## CONCLUSION

14. Based on the foregoing, Ultra objects to the Cure Notice and to the assumption and assignment of the MSA unless and until all outstanding amounts are cured and adequate assurance is provided in accordance with section 365(b) of the Bankruptcy Code. Ultra reserves the right to further amend or supplement this Objection.

**WHEREFORE**, Ultra respectfully requests that this Court enter an order: (i) sustaining the Objection; (ii) preserving Ultra's rights to all appropriate cure amounts; and (iii) granting such other and further relief as this Court deems just and proper.

Dated: August 1, 2025          Respectfully Submitted,

*/s/ Jeremy M. Campana*
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Office: 216.566.5936
Jeremy.Campana@ThompsonHine.com

*Attorneys for Ultra Corpotech Private Limited and Ultra Corpotech Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2025, a copy of the annexed Objection was served electronically on the date of filing through the Court's CM/ECF system on all participants registered in the case at the email address registered with the Court.

Dated: August 1, 2025              Respectfully Submitted,

*/s/ Jeremy M. Campana*
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Office: 216.566.5936
Jeremy.Campana@ThompsonHine.com

*Attorneys for Ultra Corpotech Private Limited and Ultra Corpotech Inc*