| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>John W. Weiss<br>Leah M. Eisenberg<br>David E. Sklar<br>**PASHMAN STEIN WALDER HAYDEN, P.C.**<br>21 Main Street, Suite 200<br>Hackensack, New Jersey 07601<br>Telephone: (201) 270-5477<br>Email: jweiss@pashmanstein.com<br>       leisenberg@pashmanstein.com<br>       dsklar@pashmanstein.com<br><br>-and-<br><br>Joaquin M. C de Baca (admitted *pro hac vice*)<br>Richard A. Stieglitz (admitted *pro hac vice*)<br>Youmi Kim (admitted *pro hac vice*)<br>**MAYER BROWN LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020-1001<br>Telephone: (212) 506-2500<br>Email: jcdebaca@mayerbrown.com<br>       rstieglitz@mayerbrown.com<br>       ykim@mayerbrown.com<br><br>*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Development Company, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company* | Chapter 11<br><br>Case Number: 25-16137 (MBK)<br><br>Jointly Administered |
| In Re:<br><br>POWIN, LLC, *et al.*,[1]<br><br>    Debtors. | |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**SUPPLEMENTAL DECLARATION OF DUSTIN WAMBEKE
IN SUPPORT OF EMERGENCY MOTION OF LICENSEES FOR ENTRY
OF AN ORDER (I) COMPELLING THE DEBTORS TO COMPLY WITH SECTION
365(N)(4) OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE
PROTECTION UNDER SECTION 363(E) OF THE BANKRUPTCY CODE, AND (III)
GRANTING OTHER APPROPRIATE RELIEF[2]**

I, Dustin Wambeke, declare and state as follows:

1. I am the Vice President, Technical Services of Leeward Renewable Energy, LLC ("Leeward"). This declaration is based upon my personal knowledge, review of the relevant documents, or information provided to me by employees of Leeward. I could and would testify competently to them under oath if called on to do so.

2. I have reviewed the June 20, 2025 declaration of Theodore Matula. I agree with the testimony, adopt it as my own, and incorporate it herein by reference.

3. Each of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC (collectively, the "Leeward Licensees") are affiliates of Leeward.

4. The Leeward Licensees are the owners and operators of renewable energy and stand-alone battery projects in California, each of which rely on large-scale battery energy storage systems supplied and supported by one of the Debtors, Powin, LLC ("Powin").

5. Prior to the Petition Date, each of the Leeward Licensees and Powin entered into an energy supply agreement (collectively, the "ESAs"), pursuant to which Powin agreed to provide an energy storage system for certain solar plus energy storage projects developed by the respective Leeward Licensees (the "Projects"). In addition to the ESAs, the Leeward Licensees entered into

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

2

long-term services agreements (the "LTSAs" and together with the ESAs the "Contracts") with Powin.

6. At a high level, the battery energy storage systems provided by Powin under the ESAs include a battery that stores energy received from solar panels or directly from the grid. The battery must be controlled by software that, among other things, controls how the energy is stored and how it is discharged. The battery energy storage system also includes (among other things) heating, ventilation, and cooling (HVAC) components to manage heating and cooling of the battery, which is also controlled by software.

7. The ESA's provide the Leeward Licensees perpetual licenses to Powin's intellectual property. For example, the ESA for the Chaparral Springs Project recites the following intellectual property license in Section 30(a):

> Effective upon Delivery of the ESS Equipment, Supplier hereby grants to Buyer an irrevocable, worldwide, perpetual, non-exclusive, royalty-free, transferable right and license to use Supplier's intellectual property (and any software provided by Supplier) as necessary to install, operate, maintain, and repair the ESS.

8. The ESA's also provide the Leeward Licensees an Escrow Agreement. For example, the ESA for the Chaparral Springs Project provides the following escrow rights in Section 30(b), and attaches the Master Escrow Agreement as Exhibit U-1:

> Within sixty (60) days after the Effective Date, Supplier will cause Buyer to be added as a beneficiary under the Escrow Agreement utilizing the form of "Rider C" as set forth in Exhibit U-2. By no later than the date on which the last of the Energy Segments is Delivered, Supplier will deposit with the Escrow Agent, and confirm in writing to Buyer that it has so deposited, the following (i) the source code of all software that is installed in and/or provided with the ESS by Supplier, (ii) the entire design package of the ESS Equipment, including all electrical and technical drawings for the ESS, in form and substance sufficient to enable Buyer to maintain and repair the ESS Equipment in the absence of Supplier.

9. The Escrow Agreement, which is Exhibit U-1 to the Chaparral Springs Project ESA, states on page 3 that the Escrow was created to provide access to "all schematics, designs, diagrams,

3

drawings, manuals, bills of material, custom tooling information and any other information necessary to manufacture, operate and maintain the Equipment (collectively, the "Deposit Materials"). Section 3.F.I states that Powin warrants that all Software and other Deposit Materials "be readable and usable by a programmer of ordinary skill and contain all information, in human-readable form, that such a programmer would need to understand, compile, build, maintain, modify, correct, and operate the Deposit Materials (including all Software) without undue experimentation, difficulty or expense."

10.    The Leeward Licensees received the contents of Deposit Materials from the Escrow on or about June 25th. The Leeward Licensees have been reviewing the content of the Deposit Materials in order to determine whether the Escrow is complete.

11.    While the Escrow package is voluminous and difficult to navigate (including because of non-specific labelling and identification protocols), the Leeward Licensees believe that there are many files containing important information that are missing from the Escrow. As explained below, the Leeward Licensees require this information in order to safely operate, maintain, and repair the battery energy storage system.

12.    There are two overarching categories of intellectual property that remain missing based on our review of the Deposit Materials, which are (i) design specifications, and (ii) operational and procedural manuals. I will explain each category in more detail below.

13.    As of the date of this declaration, the Leeward Licensees have requested that Powin provide each of these three categories and Powin has not agreed to do so.

**DESIGN SPECIFICATIONS**

14.    As indicated above, the following forms of design specifications are missing or incomplete based on our review of the Deposit Materials: (i) CAD files, (ii) bills of materials, (iii) IPR-2581 files, and (iv) wiring diagrams to internal enclosures. I will address each in turn.

4

15. **CAD Files:** Based on our review of the Deposit Materials, one necessary category of intellectual property that is missing are Computer Aided Design (CAD) files for the components of the battery energy storage system. CAD files are used in specialized software—such as SolidWorks—to create 3D digital models of physical objects, which enables manufacturers to recreate the objects.

16. The battery energy storage system is made up of well over 1500 individual parts—which are not necessarily the same across Projects. Over the lifetime of the battery energy storage supply system, its parts and components will necessarily wear out, fail, or degrade and will require replacement in order to repair the system when this occurs. Because these components are custom-made, and are not standard or off-the-shelf components, they require a custom manufacturer to source them. Such manufacturers typically require CAD files in order to know the 3-dimensional makeup and properties of the part being manufactured.

17. Although the Deposit Materials contain PDF drawings of some (but not all) components of the battery energy storage system, such PDF drawings are merely two-dimensional renderings, and do not contain the full scope of information needed by a manufacturer to replace the part.

18. Without CAD files for every component of the system for each project, the Leeward Licensees do not have the ability to reliably repair damaged or aged components, and thus cannot reliably operate or maintain the system. The ESA and Escrow Agreement, which expressly granted the Leeward Licensees the right to intellectual property such as CAD files, was agreed to in order to prevent exactly that potential inability to operate or maintain the system, which is why the license is phrased to focus on use in connection with such operations and maintenance.

19. For example, for a simple custom bracket that requires manufacturing by bending and/or machining, it is common for a manufacturer to require a CAD file that can be read directly by their equipment to automate manufacturing processes and ensure a high degree of precision.

20. **Bills of Materials:** Another category that is missing from the Deposit Materials are individual bills of materials relating to each respective Project of the Leeward Licensees. Bills of materials serve to identify all of the individual components of the system, which is necessary for the Leeward Licensees to keep track of all of such parts and components, and assess whether there are any remaining gaps in the Deposit Materials and necessary intellectual property that have not been identified. Bills of materials are also necessary because the parts and components across projects are not necessarily identical and the Leeward Licensees must keep track of them over time as they are repaired or replaced.

21. Based on my experience, Powin must have bills of materials for each individual Project in order to have designed and delivered it. Additionally, page 3 of the Escrow Agreement expressly identifies all bills of material as content that will be included. Nonetheless, Powin has not provided it.

22. **IPC-2581 Files:** Another category of missing design specifications are IPC-2581 files corresponding to each applicable item in the bill of materials. IPC-2581 is a standardized data format used for fabricating and assembling PCBs, such as those found in the hardware of the battery energy storage system. Like CAD files, these files contain important information necessary to manufacture PCBs. And, like any component, it is possible that PCBs fail or require replacement during the life of the system. Many of the PCBs in the hardware of each Project's system require custom build. Without IPC-2581 files corresponding to each applicable component

of the system, the Leeward Licensees are not able to replace failed or damaged PCBs necessary to operate the system and keep it online.

23. Although the Deposit Materials contain some files labeled .PCB and .SchDoc, which appear to potentially correspond to IPC-2581 files due to their file-type, there is no nomenclature associated with the files that allow the Leeward Licensees to associate each file with the corresponding part in the Leeward Licensees' Projects. Accordingly, not only do Deposit Materials appear to lack relevant IPC-2581 files, they are not labeled in a format (or associated with a bill of materials) in a manner that allows the Leeward Licensees to utilize the files for PCB manufacturing.

24. **Wiring Diagrams to Internal Enclosures:** Based upon our review of the Deposit Materials, important wiring diagrams appear to be missing. Specifically, wiring diagrams detailing the internal enclosures of components of the battery energy storage system such as the batteries themselves, HVAC components, and fire suppression systems.[3] These types of diagrams are necessary to effectively service and diagnose problems with hardware as it arises. Without such diagrams, it is dramatically more difficult to troubleshoot, replace, or repair components of the system when they fail or become damaged. And an inability to replace or repair damaged wiring of components presents a safety hazard via electrical or fire risks, which can jeopardize safety of the system and its human servicers. It can also force the components to be taken offline and unable to be used.

## OPERATIONAL AND PROCEDURAL MANUALS

25. In addition to the aforementioned missing design specifications, the following forms of operational and procedural manuals are missing or incomplete based on our review of the

---

[3] While the Deposit Materials do contain certain drawings that identify wiring schematics between major assemblies, there are no diagrams detailing the wiring of inner enclosures.

7

Deposit Materials: (i) operational procedural documents, (ii) fault handling procedure documents, (iii) Kobold operational manuals, and (iv) lifetime maintenance manuals and checklists. I will address each in turn.

26. **Operating Procedure Documents:** An additional category of intellectual property that appears to be missing from the Deposit Materials are documents or manuals detailing all operating procedures for the battery energy storage system. These are specific commands (or series of interactions) applied to ensure safe and reliable operation of the battery system. For example, there are various tests and calibration actions that must be taken to ensure safe and reliable operation of the system. Certain of these tests and actions must be performed in order to meet the requirements of Power Purchase Agreements (PPA) that the Leeward Licensees have entered into in order to sell to customers the power collected from the system.

27. One example of such operating procedure is capacity testing, which is a test conducted to evaluate the ability of a given battery to deliver the expected amount of power. This is necessary to confirm that the battery is operating correctly, and will meet the requirements of PPAs. Another example is module calibration, which is conducted to bring a given battery module into balance with the rest of the battery array. Without module calibration, the battery module may not charge, or may even prevent other modules from charging completely if the battery module is not in sync with the rest of the battery array. And over time, if battery modules are not being charged properly, they will become damaged and lose the ability to charge.

28. These are merely examples, but what is needed are all operating procedures so that the Leeward Licensees can safely and reliably operate and maintain the battery energy storage system.

29. **Fault Handling Procedure Documents**: Another type of operating procedure document or manual that is missing from the Deposit Materials are Fault Handling Procedures or Troubleshooting guides for all of the components and subsystems of the battery energy storage system.[4] Fault handling procedures consist of explanations for alarms and/or faults that are triggered within the system, and the recommended steps or actions to resolve them. For example, if a fault message occurs in the system, it will appear in the form of a code number and title. Fault handling procedure documentation enables the user to look up the particular fault code, and review the proper procedure for addressing the fault. Thus, the Leeward Licensees need fault handling procedure or troubleshooting documentation in order to comprehend these error messages, and safely triage them.

30. Without such documentation, faults and errors within the system may not be properly addressed, and could escalate into highly-unsafe situations. For example, if it is unknown that a given fault could lead to significant temperature increases—known as thermal runaway—something in the system could catch fire. But without knowing the fault handling procedures, the Leeward Licensees may not know this fire risk until after it occurs. Accordingly, it is not possible to safely or reliably operate the battery system without this procedure documentation.

31. **Kobold User Manual**: Another operational document that we have been unable to locate, and appears to be missing from the Deposit Materials, is a user manual for the Kobold software system—specifically a manual providing read/write statements for all applications in order to enable a user to safely operate the battery system. As background, Kobold is a cloud-based software tool that allows users to interact with the Project site battery systems at a level all

---

[4] This would include the cells, modules, battery pack controller (BPC), string controllers, Feather, fire suppression system (FSS), power conversion system (PCS), energy management system (EMS), input-output module (MI0), Team Controller, etc.

the way down to individual battery strings within the system. For example, Kobold can be used by an operator to start or stop a power conversion system (PCS), open a breaker that controls an array, or remove an individual string or segment from service. Kobold uses read/write statements (which could otherwise be described as read/command statements) in order to determine permissions and commands within the system. For example, some users can only read information while others can write commands (i.e., use Kobold to interact with equipment in the field).

32. The Leeward Licensees lack the Kobold documentation that explains how to execute these commands so that they can do so in a safe and correct manner. For example, there is a procedure known as remote lock out/tag out (LOTO) which is used to ensure that a service team is safely interacting with live equipment in the field. Specifically, LOTO is used to ensure that dangerous electrical equipment is shut off and cannot be restarted during a service or repair. Failure to follow proper LOTO procedures could lead to damaged equipment and even electrocution or death of a field employee.

33. **Lifetime Maintenance Manuals and Checklists:** An additional form of procedural documentation that does not appear to be in the Deposit Materials are lifetime maintenance manuals and checklists for the components of the battery energy storage system. Based on my experience, Powin's service team would likely maintain technician-level user manuals and checklists in order to maintain and repair customer projects over time. However, such technician-level manuals and checklists have not been found in the Deposit Materials.

34. Although there are some manuals found within the Deposit Materials, these are basic maintenance schedules with no details or information on how to accomplish the relevant maintenance tasks. For example, if a general manual mentions an inspection, it does not typically explain how to inspect the component or what you are inspecting it for. Accordingly, they do not

provide the Leeward Licensees the information needed to maintain and repair the battery energy storage system over its lifetime.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 1st day of August, 2025 at Dallas, Texas in Dallas County.

By: *[signature: Wambeke]*