| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>John W. Weiss<br>Leah M. Eisenberg<br>David E. Sklar<br>**PASHMAN STEIN WALDER HAYDEN, P.C.**<br>21 Main Street, Suite 200<br>Hackensack, New Jersey 07601<br>Telephone: (201) 270-5477<br>Email: jweiss@pashmanstein.com<br>         leisenberg@pashmanstein.com<br>         dsklar@pashmanstein.com<br><br>-and-<br><br>Joaquin M. C de Baca (admitted *pro hac vice*)<br>Richard A. Stieglitz (admitted *pro hac vice*)<br>Youmi Kim (admitted *pro hac vice*)<br>**MAYER BROWN LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020-1001<br>Telephone: (212) 506-2500<br>Email: jcdebaca@mayerbrown.com<br>         rstieglitz@mayerbrown.com<br>         ykim@mayerbrown.com<br><br>*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and AVEP BESS, LLC, (2) Longroad Development Company, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company* | Chapter 11<br><br>Case Number: 25-16137 (MBK)<br><br>Jointly Administered |
| In Re:<br><br>POWIN, LLC, *et al.*,[1]<br><br>         Debtors. | |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**DECLARATION OF FRED IHIMODU IN SUPPLEMENTAL SUPPORT OF EMERGENCY MOTION OF LICENSEES FOR ENTRY OF AN ORDER (I) COMPELLING THE DEBTORS TO COMPLY WITH SECTION 365(N)(4) OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION UNDER SECTION 363(E) OF THE BANKRUPTCY CODE, AND (III) GRANTING OTHER APPROPRIATE RELIEF [2]**

I, Fred Ihimodu, declare and state as follows:

1. I am a Fred Ihimodu for DTE Electric Company ("DTE"). This declaration is based upon my personal knowledge, review of the relevant documents, or information provided to me by employees of DTE. I could and would testify competently to them under oath if called on to do so.

2. I have reviewed the June 20, 2025 declaration of Matthew Misiak. I agree with the testimony, adopt it as my own, and incorporate it herein by reference.

3. DTE is the owner and operator of a stand-alone battery project in Michigan, which relies on large-scale battery energy storage systems supplied and supported by one of the Debtors, Powin, LLC ("Powin").

4. Prior to the Petition Date, DTE and Powin entered into an energy supply agreement (the "ESA"), pursuant to which Powin agreed to provide an energy storage system for an energy storage project developed by DTE (the "Project"). In addition to the ESA, DTE entered into a long-term services agreement (the "LTSA" and together with the ESA the "Contracts") with Powin.

5. At a high level, the battery energy storage systems provided by Powin under the ESAs include a battery that stores energy received. The battery must be controlled by software that, among other things, controls how the energy is stored and how it is discharged. The battery

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

2

energy storage system also includes (among other things) heating, ventilation, and cooling (HVAC) components to manage heating and cooling of the battery, which is also controlled by software.

6.  The ESA provides DTE a perpetual license to Powin's intellectual property. For example, the ESA recites the following intellectual property license in Section 29(a):

> Upon Delivery (and Buyer's payment to Supplier of undisputed amounts then-due) Supplier hereby grants to Buyer a worldwide, perpetual, non-exclusive, royalty-free, transferable right and license to use Supplier's intellectual property as necessary to install, operate, maintain, commission, and repair the BESS.

7.  To date, Powin has not provided to DTE any licensed intellectual property that DTE has requested through counsel, which is necessary to operate, maintain, and repair the battery energy storage system. It is my understanding that other licensees have received portions of this intellectual property through an escrow, whereby Powin's software and product documentation would be stored to facilitate transfer of this licensed intellectual property.

8.  Although DTE's ESA with Powin does not contain an escrow agreement, providing DTE with the escrow package would be a simple, consolidated way to transfer the licensed intellectual property.

9.  DTE has requested that Powin provide it with a copy of the escrow package and as of the date of this declaration, Powin has not done so.

10. This intellectual property is necessary for DTE to operate, maintain, and repair the battery energy storage system. For example, the battery system requires control by key software tools, such as Kobold, Command Center UI (CCUI), and the StackOS IP (including Powin's Firmware, Battery Management System, Energy Management System, and Thermal Management System). These tools perform critical control functions to the battery system. For example, these tools are used to (i) operate the battery and control whether it is storing power or discharging it to

3

the power grid, (ii) control the HVAC system to properly cool the system and avoid risk of fire, (iii) control a fire suppression system that is also designed to mitigate fire risk, (iv) evaluate and assess the performance of the battery system to ensure it is operating properly, and (v) commission or decommission hardware components to ensure they are safe for servicing and do not pose an electrocution risk to the field servicer. This is not a complete list of all of the functionality of the above-mentioned software tools.

11.  To the extent such source code and relevant software files to the above-mentioned tools are not found in the escrow package, DTE has requested them. To the extent such files contain usernames, passwords, encryptions, API keys, or administrative access limitations for DTE's Project and its corresponding software and hardware, DTE has requested that Powin provide such information to ensure access and use.

12.  **Product Documentation and Operational Manuals:** DTE has also requested complete documentation supporting the entire battery energy storage system, such as operating procedure documents and troubleshooting guides. These would contain specific instructions and commands (or series of interactions) to be applied in order to ensure safe and reliable operation of the battery system. For example, DTE employees would need to have manuals and documentation, including training materials, to learn and understand how to properly utilize the software controlling the battery energy storage system in order to properly operate and maintain it. Additionally, there are various tests and calibration actions that must be taken to ensure safe and reliable operation of the system.

13.  As an additional example, without such documentation, including procedural documentation for emergency response, faults and errors within the system may not be properly addressed, and could escalate into highly-unsafe situations. For example, if it is unknown that a

given fault could lead to significant temperature increases—known as thermal runaway. But without knowing the fault handling procedures, DTE may not know this risk until after it occurs. Accordingly, those materials directly affect DTE's ability to reliably operate and maintain the battery system.

14. Additional product documentation that DTE would require to maintain and repair the battery energy storage system are bills or material, design files and corresponding specifications for each part. The battery energy storage system is made up a very large number individual parts. Over the lifetime of the battery energy storage supply system, its parts and components will necessarily wear out, fail, or degrade and will require replacement in order to repair the system when this occurs. Because these components are custom-made, and are not standard or off-the-shelf components, they require a custom manufacturer to source them. Such manufacturers typically require design files and specifications in order to know the 3-dimensional makeup and properties of the part being manufactured.

15. Without such bills or material, design files and corresponding specifications for every component of the system DTE does not have the ability to reliably repair damaged or aged components, and thus cannot reliably operate or maintain the system.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 1st day of August, 2025 at Detroit, Michigan in Wayne County.

By: _____

6