**DENTONS US LLP**

Lauren Macsoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email:lauren.macsoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
         van.durrer@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
         aglaubach@teamtogut.com
         eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,<br><br>         Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

## DEBTORS' REPLY IN SUPPORT OF OMNIBUS REJECTION MOTION AND OPPOSITION TO SECTION 365(N) MOTIONS

Powin, LLC and the affiliated debtors and debtors in possession (collectively, the

"Debtors")[1] under chapter 11 of title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP

1

Code"),[2] in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), file this: (i) supplemental reply[3] in support of their *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88] (the "Rejection Motion"); (ii) supplemental response to the *Emergency Motion of Licensees for Entry of an Order (1) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy Code, (2) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code, and (III) Granting Related Relief* [Docket No. 117] (the "Longroad Motion to Compel")[4] filed by the Leeward/Longroad Licensees (as defined in the July 11 Brief); (iii) and response to the *Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 297] (the "Ad Hoc Motion to Compel") filed by the Ad Hoc Customer Group (as defined in Ad Hoc Motion to Compel).

## PRELIMINARY STATEMENT

1.     As the Debtors announced in no-uncertain terms on the first day of these Chapter 11 Cases in connection with their request for immediate relief to implement a new customer program and, days later, in a request to reject dozens of underwater customer contracts, the Debtors

---

[5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

[2] All references to "§" and "section" are to sections of the Bankruptcy Code unless otherwise specified herein. All references to "Rules" are to the Federal Rules of Bankruptcy Procedure.

[3] On July 11, 2025, the Debtors filed their *Omnibus (I) Objection to (A) Emergency Motion of Licensees for Entry of an Order (1) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy Code, (2) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code and (B) Related Joinders and (II) Reply in Support of Omnibus Motion of the Debtors for Entry of an Order (A) Authorizing the Rejection of Legacy Customer Contracts and (B) Granting Related Relief* [Docket No. 357] (the "July 11 Brief"). The Debtors respond and reply to the subsequent pleadings filed by Honeywell International Inc. [Docket Nos. 347, 376], CS Energy, LLC [Docket No. 354] (the "(the "CSE Objection"), and Invenergy Services LLC, Invenergy Storage Dev. LLC, El Sol Energy Storage LLC, and El Sol Storage Energy LLC [Docket No. 374] in addition to the filings noted in the July 11 Brief at 1, n. 4.

[4] The July 11 Brief originally responded to the Longroad Motion to Compel.

2

have articulated sound business judgment to abandon their existing customer servicing arrangements and reject the Contracts, and such business judgment has gone uncontroverted.

2.      Notwithstanding that, a group of customers (the "Customers"), who have not paid the Debtors for any services at all since before these Chapter 11 Cases were filed (a contributing cause of the Chapter 11 Cases), bootstrap a thinly-veiled request for this Court to force the Debtors to continue to provide services under the guise of section 365(n) relief.  It is uncontested that the Debtors have released the IP Escrows to Customers.  Accordingly, the Customers' requests for section 365(n) relief are either moot or unwarranted.  Nonetheless, the Customers continue to press for access to third-party cloud-based platforms, administrative access to the Debtors' proprietary intellectual property, and data and services, neither of which are protected by section 365(n) following rejection.  Specifically, (a) third-party platforms are neither property of the Debtors nor controlled by the Debtors; (b) administrative access to the Debtors' property represents a "licensor's" interest rather than a "licensee's" interest protected by section 365(n); (c) data is not intellectual property as a matter of law and (d) services cannot be compelled in the absence of payment, regardless of the application of section 365(n).  Therefore, the requests for relief predicated on section 365(n) should be denied.

## **BACKGROUND**

3.      The Debtors incorporate their July 11 Brief by reference.  In addition to previous evidence, including the *Declaration of Gerard Uzzi* (the "Uzzi Rejection Declaration") attached to the Rejection Motion, the Debtors submit the *Declaration of Brian Kane* (the "Kane Declaration").

4.      Although the Debtors terminated the employment of most employees before the Petition Date, as of the Petition Date, they maintained a core group of employees, including fifty-

nine (59) devoted to operations and seven (7) with intellectual property expertise.  *Declaration of Gerard Uzzi* [Docket No. 88] at ⁋ 5.  Therefore, some of the Licensees invocation of a pre-petition reduction in force to contend that the Debtors do not have employees to service the LTSA Program is inaccurate.  *See* Longroad Motion to Compel at ¶ 15.

5.      On June 10, 2025, the Debtors filed their Customer Program Motion seeking approval of the LTSA Program in which they proposed a "reduced scope of service" "at pricing that is designed to be cash flow positive."  Customer Program Motion at ⁋ 9.  On June 13, 2025, the Court approved the Customer Program Motion.  Docket No. 62.  The Licensees did not object, nor did they seek different or alternative relief.

6.      On June 16, 2025, the Debtors sent a notice to customers, including the Licensees, confirming that the Debtors would be "implement[ing] a new Customer program" as approved by the Court, were filing the Rejection Motion and therefore "suspending services" under the existing contracts.  *See* **Exhibit A**.  In this notice, the Debtors advised the Licensees that a "Summit" would be held on Tuesday, June 17 and Wednesday, June 18, 2025, in Dallas, Texas (both in person and virtual) to negotiate and finalize the Customer Program.

7.      On June 17, 2025, the Debtors indeed filed their Rejection Motion and identified the Licensees' Contracts as too burdensome for the estates.  Docket No. 88 at Schedule 1.  In so doing, the Debtors confirmed that there were two paths, either a re-negotiation or a rejection.

8.      On June 17 and 18, 2025, the Debtors, the Licensees, and approximately 100 representatives attended the Summit.  On both days of the Summit, the Debtors reaffirmed to the Licensees that the Debtors could not fully perform under the LTSAs.

9.      As admitted by the Licensees, many, if not all, of their Contracts contain an escrow provision wherein the Debtors deposited intellectual property into escrow (the "IP Escrows") for

the Contracts.  The parties bargained that the IP Escrows would be available to satisfy any obligation to provide the Licensees with intellectual property.  On June 17 and 18, 2025, the without charge to the Licensees, the Debtors issued letters to PRAXIS Technology Escrow ("PRAXIS"), its vendor for the IP Escrows, instructing PRAXIS to release intellectual property to the Licensee Customers.  Copies of such letters are attached to this Objection as **Exhibits B and C**, respectively.  The Debtors continue, and will continue, to support the release of the IP Escrows. Indeed multiple Licensees admit in their filings that "[a]s of the date of this [filing, July 7, 2025], Powin has authorized the IP Escrow Agent to release the escrowed Licensed IP to the … Licensees …" Docket Nos. 273, 274 at ¶7; 295 at ¶12; 300 at ¶13.

10.     On June 19, 2025, the Debtors' professionals sent an email to Longroad Energy Holdings, LLC confirming "[w]e are delivering letters to PRAXIS authorizing the release of IP escrows and waiver of any 30 day hold.  Some letters have already issued."[5]  *See* **Exhibit D.**

11.     On June 26, 2025, the Court approved the Debtors' DIP Facility (as defined in Docket No. 169) on an interim basis.  Docket No. 169.

12.     On July 1, 2025, the Debtors filed a motion seeking approval of the bidding procedures for the sale of substantially all of their assets.[6]  The Bidding Procedures Motion  was set for hearing on July 15, 2025.  On July 7, 2025, the Debtors filed the Stalking Horse APA (as defined in the Bidding Procedures Motion) for the sale of their assets.  [Docket No. 271].  Under

---

[5] The attachments to this email reflect confidential settlement communications and are not included in the Exhibit.

[6] *Motion of the Debtors for Entry of an Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections (II) Approving Bidding Procedures by Which Interested Parties May Bid and an Auction Sale Format in Connection with the Sale of Substantially All of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of Debtors' Property Free and Clear of All Causes of Action and Claims* [Docket No. 228] (the "Bidding Procedures Motion").

the Stalking Horse APA, the Debtors negotiated for a provision that title is "subject to the rights of

licensees under section 365(n) of the Bankruptcy Code."  [Docket No. 271-1 at § 3.5].

13.    During the Chapter 11 Cases, the Debtors have maintained their remote operations

center (the "ROC") and have responded to Customer inquiries and questions, including from the

Licensees.  There has been no postpetition disruption to ROC operations.

14.    On July 11, 2025, the Debtors filed their July 11 Brief, which included a revised

form of order for the Rejection Motion, which includes the following language:

> Nothing in this Order (i) limits intellectual property licensees' rights
> under section 365(n) of the Bankruptcy Code, including pursuant to,
> in connection with, or otherwise related to any Contracts rejected
> pursuant to this Order (and any such rights are hereby expressly
> preserved) or (ii) excuses the Debtors from performance of any
> obligations under executory contracts for which rejection has not yet
> been expressly approved by an order of this Court.

**Exhibit E** at ¶ 3.

15.    The Debtors have continued to engage with the Customers, and the parties have

narrowed the issues.  Certain Customers have provided lists of requested items, with the Debtors

responding by either (i) stating they do not have the information/materials, (ii) providing the

information/material (while reserving all rights), or (iii) standing on their objection as not being

required to provide the information/material under section 365(n) and the Contracts.  *See* Kane

Declaration.

## **ARGUMENT**

### **I.      The Ad Hoc Motion to Compel Should be Denied**

16.    The Debtors have established that the Contracts are burdensome and should be

rejected.  *See* Uzzi Rejection Declaration; Kane Declaration.  The Ad Hoc Customer Group has

presented no evidence or argument to dispute the Debtors' business judgment.  *See e.g., In re*

*Extraction Oil & Gas*, 622 B.R. 608, 615 (Bankr. D. Del. 2020) ("Courts generally will not second-

6

guess a debtor's business judgment concerning the rejection of an executory contract or unexpired lease [and t]he 'business judgment' test merely requires a showing that rejection will benefit the debtor's estate.  A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'").

17.     Instead, the Ad Hoc Customer Group seeks entry of an order for an affirmative injunction requiring the Debtors, **after rejection** to, *inter alia*, provide training to the Ad Hoc Customer Group, provide "access" to the Debtors' (extremely busy with the sale and Chapter 11 Cases) personnel on a "24/7" basis, "administrative-level read/write access credentials and to provide any documentation that the "Customer may request." [Docket No. 297-1 at ⁋ 5].

18.     However, as argued in the July 11 Brief, section 365(n) does not contemplate access to human beings and the materials requested by the Ad Hoc Customer Group— the section only concerns intellectual property of the Debtors and is constrained by contractual language regarding the release of intellectual property.  After rejection, the Debtors are not required to do more than "provide" intellectual property to the customer "to the extent provided in such contract, or any agreement supplementary to such contract."  *See* 11 U.S.C. § 365(n)(3)(A); (2)(B) and (3)(B). And, as explained in more detail below, the Debtors have done that here with the release of the IP Escrows.

19.     No more is required.  In fact, section 365(n)(1)(B) specifically forbids a licensee, after rejection, to compel "specific performance of such contract." 11 U.S.C. § 365(n)(1)(B). Section 365(n)'s precise, limited language makes clear that it is not an end-run around the fundamental Bankruptcy Code rule that "[t]he correct form of adequate protection to be offered by the estate in every executory contract case will always be an offer to assume or reject the executory contract by a date certain."  *In re El Paso Refinery, L.P.*, 220 B.R. 37, 45 (Bankr. W.D. Tex. 1998)

7

(followed by *In re Alongi*, 272 B.R. 148, 152, n.1 (Bankr. D. Md. 2001). As summarized by this Court, "when a debtor-licensor rejects a software license, § 365(n) would not require the licensor to provide continuing updates or maintenance to the licensee" and "[i]f the licensee chooses to retain its rights, the licensor is not bound by *any continuing obligations* under § 365(n)." *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 771 n. 2 (Bankr. D.N.J. 2014) (emphasis added).

20.    The Debtors have released the IP Escrows and have therefore complied with any obligation under section 365(n). *See* Kane Decl. at ⁋ 6. The items that the Ad Hoc Customer Group seeks beyond this are either (i) not possessed by the Debtors, (ii) have already been provided, or (iii) are not intellectual property or not required to be provided to the Ad Hoc Customer Group. *See infra.*

## II.    *In re Mirant* Does Not Apply, And There Is No Safety Threat

21.    Some objectors argue that the rejection of the Contracts implicates public safety and, thus, under *In re Mirant Corp.*, 378 F.3d 511, 515 (5th Cir. 2004), the Court should apply heighted scrutiny for the Motion to Reject. As the Debtors established in the July 11 Brief, the business judgment standard applies for the Rejection Motion, not any heightened standard. Both before and since the filing of the July 11 Brief, and unlike in *In re Mirant*, there has been continued silence from any regulatory or public bodies concerning the Rejection Motion. This is because, as Mr. Kane testifies, there is no safety threat from rejection of the Contracts:

> Standard monitoring and control functions, such as battery management, thermal regulation, and fault detection, are handled by the system's software and remote supervisory controls. Since the filing of the Chapter 11 Cases, the Debtors have provided the Licensees with full authority to access and actuate those remote supervisory controls. These automated safety mechanisms are internal protections designed to protect the BESS equipment and the site, and they are neither designed nor rated for any function designed to protect the grid. Field service personnel are only required for scheduled maintenance or in the event of a non-routine

8

service condition. The absence of on-site human operators does not
pose a safety risk or impair the functionality of the system.

Kane Declaration at ₱ 15.

22.    Further, the Debtors do not provide primary safety services, and the Licensees are
responsible for the safety of their projects. *See* Kane Declaration at ₱ 16.[7] If the Customers believe
they cannot run their projects safely, the Licensees may pause or terminate their projects. This
would not imperil the United States power grid or cause any threat to the public. *See* Kane
Declaration at ₱ 12 ("The Powin equipment at issue is a battery energy storage system ("<u>BESS</u>"),
which is a standalone energy storage solution used to store electrical energy for later discharge. A
BESS is not part of the transmission grid itself, nor is it a power generation asset like a turbine,
generator, or solar array. The Powin system is distinct from the electrical grid and generation
assets; it does not distribute power to end users or physically generate electricity.").

23.    In this situation, the heightened *In re Mirant* standard does not apply. *See In re The
Financial Oversight and Management Board for Puerto Rico*, 9 F.4th 1, 13 (1st Cir. 2021) (*Bildisco*
and *Mirant* are "limited to the 'unique' context of contracts 'for the interstate sale of electricity'
that had been filed with the Federal Energy Regulatory Commission (FERC) pursuant to the
Federal Power Act"); *In re Old Carco LLC*, 406 B.R. 180 (Bankr. S.D.N.Y. 2009) (declining to
apply a heightened standard for the rejection of a contract and writing that *Mirant*'s higher standard
is warranted where rejection conflicts with policies designed to protect national interests). Further,
even if the heightened standard applies, the Debtors still meet it given the need for rejection for

---

[7] ("The Debtors did not contract to provide primary safety services to any Licensee—only monitoring services. Any
such safety burden falls on the Licensees' themselves, regardless of whether or not the Debtors' operating systems
create a convenient process for monitoring certain elements of the Licensees' projects.").

the estates, the ample time afforded to Licensees to prepare and the lack of an articulated safety threat from rejection.

III.    **Debtors have Provided All Required Materials Under Section 365(n)**

24.    The Customers admit that the Debtors have released the IP Escrows and that the intellectual property "necessary for the operation" of the projects was placed into escrow pre-petition.  Longroad Motion to Compel at ¶ 11; *see also* Kane Declaration at ¶ 6.  Since filing their pleadings, the Customers have had more time to review the materials released from escrow, and, as Licensees admit, many of their demands are moot because these items *were* in escrow.

25.    Furthermore, as stated in the Kane Declaration (and its attached schedule), for the majority of the items requested by the Customers:

a.    The Debtors have provided Customers with a broad range of technical materials necessary for safe operation and maintenance of the energy storage systems. These include Kobold training materials and Lockout/Tagout (LOTO) instructions, PDF versions of CAD drawings, internal wiring diagrams, complete bills of materials for each project, and all applicable manuals, configuration files, and documentation from the StackOS platform; and

b.    Certain requested materials simply do not exist in Powin's records. These include formal standalone standard operating procedures (SOPs), dedicated fault-handling or troubleshooting guides for the full system, and lifecycle maintenance manuals or product design life models. Powin does not maintain these items as discrete documents; where relevant, similar information is embedded within broader technical manuals or OEM materials.

*See* Kane Declaration at ¶¶ 8-9; Exhibit 1 to Kane Declaration.

US_ACTIVE\130886268\V-9

26.     The balance of information and materials sought by the Customers exceeds the scope of section 365(n) because the items are either (i) not intellectual property or (ii) not required to be provided by the Contracts.  As discussed, *supra*, requests for continued training, services and monitoring by the Debtors is also likewise, not a request for intellectual property.

27.     Further, requests for administrative access to the Debtors' property represents a "licensor's" interest rather than a "licensee's" interest protected by section 365(n) and data and passwords are not intellectual property as a matter of law.   Courts have clarified that section 365(n) extends only to the licensed intellectual property and its "embodiments," which include tangible manifestations like software code, prototypes, or technical documentation and not to ancillary mechanisms like Passwords.  *In re Tempnology LLC*, 541 B.R. 1, 7 (Bankr. D.N.H. 2015) (section 365(n) is "narrow" and its protections should not be extended beyond intellectual property itself). Neither data nor passwords are "intellectual property" that the Debtors must provide*.  See N. Star Media, LLC v. Winogradsky Sobel*, 2011 WL 13220157, at *11 (C.D. Cal. May 23, 2011) (a password is neither an embodiment nor a replication of intellectual property); *See Assessment Techs. of WI, LLC v. WIREdata, Inc*., 350 F.3d 640, 644, 647 (7th Cir. 2003) (Raw data exists in the public domain and is outside the scope of copyright); *See CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1278 (9th Cir. 2021) (providers do not hold a copyright in the data itself, which consists of facts about dealers' customers and business operations because copyright protects expression, not facts); *See Bot M8 LLC v. Sony Corp. of Am*., 465 F. Supp. 3d 1013, 1020 (N.D. Cal. 2020) (data collection and analysis remain intangible and abstract because according to the Federal Circuit, merely presenting the results of abstract processes of collecting and analyzing information is abstract as an ancillary part of such collection and analysis); *See Edwards v. 4JLJ, LLC*, No. 2:15-CV-299, 2018 WL 2981154, at *5 (S.D. Tex. June 14, 2018) (data gathered from customers, by

11

itself, is not claimed as intellectual property, unlike the manner in which the data is processed and displayed).

28.　　Further, these credentials govern access to systems shared across multiple customers. Releasing them would compromise the security of other installations. Furthermore, certain API functions (such as those tied to Databricks) are licensed from third parties and cannot be sublicensed by Powin.  Kane Declaration at ꟼ 10(d).

29.　　Also, certain Customers seek, in addition to the PDF copies they have, editable CAD design files for equipment enclosures and components listed in the bill of materials. The PDF files meet the Debtors' contractual obligations. Editable CAD files are only required for redesign or product development and are not necessary for operation or maintenance of the installed systems.  Likewise, the Debtors will not produce printed circuit board (PCB) design files in IPC-2581 format. Powin will instead supply non-editable versions of these files. The IPC-2581 format is used for manufacturing and design changes, which are outside the scope of Licensee's operational needs.  Kane Declaration at ꟼ 10(a).

30.　　Still, the Debtors will, under the appropriate business arrangements and for new consideration, provide some requested services and items to Licensees.

IV.　**The CSE Objection Does not Have Merit**

31.　　CS Energy, LLC ("CSE") filed their CSE Objection to the Motion on Reject on the evening of July 11 (with a granted extension from the Debtors).  The Debtors hereby reply to arguments in the CSE Objection not addressed in their July 11 Brief.

a.　**The Contracts Are Executory**

32.　　Only CSE argues that its Contract, a Purchase Order (as that term is defined in the CSE Objection) is not executory.  *See* CSE Objection, at ¶ 35.  No other Customer disputes that the Contracts are executory, and CSE's assertion is incorrect.  An executory contract is one where

12

material performance obligations remain on both sides.  *See e.g.*, *Sharon Steel Corp. v. National Fuel Gas Dist. Corp. (In re Sharon Steel)*, 872 F.2d 36, 39 (3d Cir. 1989).

33.     The Purchase Order is executory, and the Performance Guarantee (as defined in the CSE Objection) which CSE admits is integrated into the Purchase Order is not a one-way street. Under the Performance Guaranty, the customer warrants that batteries will comply with strict "Acceptable Conditions" (with the contract containing a table concerning temperature, humidity, etc.) to prevent irreparable damage and prevent Powin from having to repair damage caused by the owner.  Powin is entitled to monitor conditions via a "Warranty Tracker," and the customer has the obligation to maintain and not interfere with that tracker.[8]  Further, CSE may not move the BESS from its site or else the Performance Guaranty is void.  These are material obligations, and the Contract is executory.

### b.  CSE May Not Hold Rejection Hostage To Obtain Discovery On A Separate Contested Matter

34.     CSE alleges that a fire took place at its project site and that the Debtors filed an insurance claim.  CSE is interested in this insurance information, and, as CSE admits, the Debtors have provided CSE with information and documentation.  CSE Objection, ¶ 38.  The Debtors have now provided CSE will all insurance materials in the Debtors' possession.  The Debtors have no objection to CSE contacting the carrier directly.

---

[8] Also, unlike in the case CSE cites of *Cooper v. Lantern Entm't LLC*, 2020 U.S. Dist. LEXIS 48464, at *34-36 (D. Del. Mar. 20, 2020), the indemnification provisions in the Purchase Order are not "ancillary", *id.* at 29, they are an important part of the overall transaction.  CSE admits that its Contracts relate to a complex project with multiple parties involved.  The issue of indemnity is key.  In such a situation, the Purchase Order may be considered executory. *See In re Safety-Kleen Corp.*, 410 B.R. 164, 167-68 (Bankr. D. Del. 2009) ("As to the instant agreement, only the indemnity obligations . . . remained unperformed at the time of Debtors' filing for bankruptcy.  The obligations are clearly material as to both parties . . ."); *In re Abitibibowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (finding that outstanding indemnification obligations can "support the conclusion" that a contract is executory); *Philip Servs. Corp. v. Luntz (In re Philip Servs., Inc.)*, 284 B.R. 541, 549-550 (Bankr. D. Del. 2002) (concluding that a contract can be rendered executory where there exists an ongoing indemnification obligation which is a substantial element of the overall transaction).

13

35.    CSE, though, wants more and seeks to hold the rejection of the Contracts hostage. CSE Objection, ¶ 45.  CSE does not cite to any authority that says that the rejection of an executory contract may be delayed until a debtor provides information related to a document request for another, contingent contested matter.  This Court should not allow CSE to stop the rejection process for CSE to conduct discovery over an ancillary matter.  CSE may file a rejection claim after rejection, and the Debtors will continue to cooperate.  However, rejection cannot be held up at CSE's whim.

### c.  The Debtors Will Cooperate With CSE's Request To Assign Warranties, But There Is No Basis To Delay Rejection On Account Of This Issue

36.    CSE also requests that "Debtors should transfer and assign any subcontractor or other warranties to CSE or the project owners of the Countryside and Warwick Projects."  CSE Objection, ¶ 51.  As practicable, the Debtors are willing to cooperate with this request, however, this is not a section 365(n) matter, and a Customer is not entitled to impose upon the Debtors the burdensome requirement of performance after rejection.

### CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court: (i) grant the Rejection Motion, (ii) deny the Longroad Motion to Compel, (iii) deny the Ad Hoc Motion to Compel, and (iv) grant the Debtors such other and further relief is just and proper under the circumstances.

*[Signature Page Follows]*

14

Dated: August 1, 2025

**TOGUT, SEGAL & SEGAL LLP**

*/s/ Lauren Macsoud*
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
            aglaubach@teamtogut.com
            eblander@teamtogut.com

- and -

**DENTONS US LLP**

Lauren Macsoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone:  (973) 912-7100
Facsimile:  (973) 912-7199
Email:  lauren.macsoud@dentons.com

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (*pro hac vice* pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

*Proposed Counsel for Debtors and*
*Debtors in Possession*

16

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

*Counsel for Debtors and Debtors in
Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
            aglaubach@teamtogut.com
            eblander@teamtogut.com

*Counsel for Debtors and Debtors in
Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br>Powin, LLC, *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

## DECLARATION OF BRIAN KANE

I, Brian Kane, hereby state and declare as follows:

1.      I am Chief Executive Officer of the above-captioned debtors and debtors in

possession (the "Debtors").[1]  I submit this declaration (the "Declaration") in support of the: (i)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin

1

*Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88] (the "Rejection Motion"); (ii) the Debtors' response to *Emergency Motion of Licensees for Entry of an Order (1) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy Code, (2) Granting Adequate Protection Under Section 365(e) of the Bankruptcy Code and (B) Related Joinders*;[2] and (iii) the Debtors' response to *the Ad Hoc Customer Group's Motion for (A) Adequate Protection and (B) Related Relief*.

## I.    Background

2.    I graduated from Rutgers University in 1997 with a B.S. in Mechanical Engineering.  I started my career as an engineer, and have held the title of "Manager, Field Applications Engineering," "Director, Applications Engineering," and "Head of Enterprise Sales Engineering" at Bloom Energy before moving to Powin in 2021, where I entered as a "Senior Vice President" and then was promoted to Chief Projects Officer, before becoming Chief Executive Officer in 2025.

## II.    Expertise and Knowledge Regarding the Contracts, Equipment and Projects

3.    It has been, and remains, my job to understand all the Debtors' customers' projects, and, more specifically, how Powin equipment and technology works and is deployed and applied at Powin's projects.  As a Chief Projects Officer for over two years prior to my service as Chief Executive Officer and continuing as Chief Executive Officer, I routinely interact with our customers and our project-focused employees.  As an executive with an engineering background

---

Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

[2] Terms used but not otherwise defined herein shall have the meaning given to them in the Omnibus Objection.

and skillset, I am well positioned to understand the difference between customer needs and wants and how Powin equipment operates at their project sites.

4.      During the Chapter 11 Cases, the Debtors have been involved in a collaborative process with customers concerning their Contracts and projects, which I have overseen.  This includes a customer summit on June 17 and 18, 2025, and a true and correct copy of the invitation to that summit was filed as Docket No. 357-1.  I have consulted with Powin employees and am familiar with what information customers have requested, including, specifically, that which Powin has, has provided and does not have plus items which Powin will not provide.  I am ultimately responsible for these decisions and am competent to testify on these matters.

### III.    The Contracts

5.      The Debtors seek to reject the Contracts, because full performance of the Contracts is burdensome and not financially viable for the Debtors.  More detailed reasons for the Debtors' decision to reject the Contracts are presented in the Declaration of Gerard Uzzi, the Debtors' Chief Restructuring Officer, and I regularly consulted with Mr. Uzzi in connection with the decision to reject the Contracts.

6.      Some Contracts contain an escrow provision which specified intellectual property the Debtors were to deposit into the IP Escrows for the Licensees for such Contracts.  The IP Escrows were intended to satisfy any obligation to provide the Licensees with the Debtors' intellectual property.  On June 17 and 18, 2025, without charge to the Licensees, the Debtors issued letters to the vendor for the IP Escrows, instructing the vendor to release intellectual property to the Licensee Customers.  I am familiar with these letters, and true and correct copies were filed as Docket Nos. 357-2 and 357-3.  This is the routine means by which IP Escrows are released to Licensees in the ordinary course of business.

US_ACTIVE\130866864\V-9

7.      Working with my team members who are my direct reports and who have primary responsibility with respect to the IP Escrows and the underlying Contracts, I directed the production of a schedule of items requested by certain customers (the "Requested Items Schedule") (attached as **Exhibit 1**).[3] The Requested Items Schedule accurately summarizes (a) the IP Escrow items that have been released to certain Licensees; (b) items that were requested by certain Licensees but which the Debtors do not maintain in the ordinary course of business; (c) items that are not "intellectual property" at all; and (d) items that exceed the scope of the Licensees' license.

8.      As noted in the Requested Items Schedule, on August 1, 2025, the Debtors made a production of information to certain Customers that provided specific requests.  The Debtors  have provided, or made available to Licensees, a range of technical documentation and system materials sufficient to support safe operation, monitoring, and maintenance of the installed systems. These materials include, but are not limited to:

a.  Kobold training materials, including introductory content, read/write access guidance, and instructional video materials related to the Lockout/Tagout (LOTO) procedure.

b.  The Tomcatrunner script, which facilitates automation of system operations.

c.  PDF versions of CAD drawings for the enclosures and components identified in the bills of materials. These files meet Powin's contractual disclosure obligations and are suitable for reference during system maintenance.

d.  Internal wiring diagrams for batteries, HVAC systems, and fire suppression equipment.

---

[3] The Requested Items Schedule is framed to Customers with IP Escrow rights, and the Debtors are willing to discuss appropriate consideration and terms with Customers that do not have IP Escrow rights, but wish to obtain information or access.

US_ACTIVE\130866864\V-9

e.  Complete project-specific bills of materials.

f.  Technical documentation and supporting materials, including StackOS manuals, configuration files, and the Praxis IP Escrow Package, as well as all other documents necessary for the Licensee to operate and maintain its system under the scope of its rights.

A more detailed breakdown of the items Powin has provided, not provided, or determined to be unavailable is set forth in Requested Items Schedule.

9.      To the best of my knowledge and after reasonable inquiry, Powin has determined that the following categories of information do not exist in our records as discrete, standalone materials:

a.  Written standard operating procedures (SOPs) for the safe and reliable operation of the BESS system. Powin does not maintain formal SOPs as separate documents. Instead, operational guidance is incorporated into technical manuals, system documentation, and training materials.

b.  Standalone fault handling procedures or troubleshooting guides covering specific alarms or faults across all BESS components and subsystems. Powin does not publish separate fault guides. Troubleshooting information, where available, is contained within broader technical documentation and OEM manuals.

c.  Lifetime maintenance manuals and checklists prepared in accordance with type certificates or system design life models. Powin does not maintain dedicated lifecycle maintenance documentation. Instead, Powin provides operational and maintenance manuals that reflect the equipment as deployed.

5

These materials were never created or maintained as separate documents within Powin's documentation practices. Where applicable, relevant information is incorporated into technical publications and other supporting materials that have been or will be provided to Licensees.

10.     As to items that the Debtors possess, but are not producing, the items listed below are not being provided for the following reasons:

a.   Editable CAD design files for equipment enclosures and components listed in the bill of materials. Powin has already provided Licensees PDF versions of these files, which meet our contractual obligations. Editable CAD files are only required for redesign or product development and are not necessary for operation or maintenance of the installed systems.

b.   Printed circuit board (PCB) design files in IPC-2581 format. Powin will instead supply non-editable versions of these files. The IPC-2581 format is used for manufacturing and design changes, which are outside the scope of Licensee's operational needs.

c.   Administrative access to the Kobold software platform. Granting administrative access would expose sensitive system-level controls across, and access to, Powin's entire fleet of customer systems. For security and confidentiality reasons, Powin provides only role-based access specific to the Licensee's installation.

d.   Administrative usernames, passwords, and API keys. These credentials govern access to systems shared across multiple customers. Releasing them would compromise the security of other installations. Furthermore, certain API functions (such as those tied to Databricks) are licensed from third parties and cannot be sublicensed by Powin.

6

e.   Training materials for Certified Operations & Maintenance Technician, Certified Installation Technician, and Train-the-Trainer programs. These materials are part of Powin's proprietary training curriculum and are only made available through separately contracted training programs, not as part of standard documentation delivery.

**IV.    There is no Public Safety Issue**

11.    Safety is an important priority for Powin.  I do not believe there is any threat to public safety issues in connection with the Debtors' rejection of the Contracts as asserted by the Licensees.  I confirm that Powin has provided all the product level information that is required by the Customer and their Authority having Jurisdiction (AHJ) for "Hazard Mitigation Analysis" that is reviewed and approved during the permitting process of the Battery Storage system project.

12.    The Powin equipment at issue is a battery energy storage system ("BESS"), which is a standalone energy storage solution used to store electrical energy for later discharge. A BESS is not part of the transmission grid itself, nor is it a power generation asset like a turbine, generator, or solar array. The Powin system is distinct from the electrical grid and generation assets; it does not distribute power to end users or physically generate electricity.

13.    A BESS is not considered a safety device under industry standards, electrical codes, or utility regulations. Its primary function is commercial and operational—it enables the energy asset owner or operator to perform energy arbitrage by storing electricity when supply is abundant or prices are low, and discharging stored energy during periods of higher demand or pricing. This can help optimize grid efficiency and project economics, but it does not perform any protective or fail-safe function like protective relays, circuit breakers, or emergency shutdown systems. In short,

it is not a safety device, nor has it ever been marketed as such.  The presence or absence of a BESS does not affect the core safety architecture of the grid or the underlying generation facility.

14.     Electric grids have operated safely for decades before BESS technology existed. Accordingly, the Powin system is not a safety device, and its removal or temporary unavailability will not create or increase any risk to public safety.  Even if all of the Licensees' projects are terminated, the United States power grid will not be affected in a way that impacts public safety.

15.     Further, the Powin energy storage system is designed to operate autonomously and does not require continuous human intervention for its safe operation. Once installed and commissioned, the equipment functions through automated controls, system software, and built-in safety mechanisms. Standard monitoring and control functions, such as battery management, thermal regulation, and fault detection, are handled by the system's software and remote supervisory controls.  Since the filing of the Chapter 11 Cases, the Debtors have provided the Licensees with full authority to access and actuate those remote supervisory controls.  These automated safety mechanisms are internal protections designed to protect the BESS equipment and the site, and they are neither designed nor rated for any function designed to protect the grid. Field service personnel are only required for scheduled maintenance or in the event of a non-routine service condition. The absence of on-site human operators does not pose a safety risk or impair the functionality of the system.

16.     The Debtors did not contract to provide primary safety services to any Licensee— only monitoring services.  Under energy custom and practice, such safety burden falls on the Licensees' themselves, regardless of whether or not the Debtors' operating systems create a convenient process for monitoring certain elements of the Licensees' projects.

US_ACTIVE\130866864\V-9

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 1st day of August 2025, at Marblehead, Massachusetts

*/s/ Brian Kane*
Brian Kane

**Exhibit 1**

| Item | Does Powin Have It?[1] | Is Powin willing to give it to Licensee? | Notes: |
|---|---|---|---|
| Written standard operating procedures (SOPs) for operation the BESS system safely and reliably. | No. | Moot | Powin does not publish SOPs for the BESS. Powin does maintain technical documents including manuals and guides needed to operate and maintain the system.  These documents are to be provided or have been already provided. |
| Fault handling procedures or troubleshooting guides for all components and subsystems including but not limited to all hardware components in the BESS system, including cells, modules, BPC, string controllers, feather, AC's, FSS, SMA (PCS), EMA, PPC, ADAM, M10, Team Controller.  Include therewith specific explanations of particular alarms signals and/or faults in the control systems and the recommended actions for resolving them. | No | Moot | Powin does not have published, separate fault handling or trouble-shooting guides. All available technical documents, and to the extent they cover identify and fixing issues, are to be provided or have been provided.  Note that Licensee will need to contract the appropriate third-party hardware provider, or as applicable, the OEM, for technical support regarding third-party hardware (i.e. Siba, SMA, Potter, Honeywell, Advantech, Moxa). |
| Instructions for the safe operation of the system using the Kobold software, including explanation of the command statements for all applications within energy management system, including statement instructions for the remote lock out/tag out procedure | Yes | Yes | Introductory materials and training information for Kobold have been shared via SharePoint folder named "LW03" |
| Lifetime maintenance manuals and checklists, prepared in accordance with the type certificates and design life models. | No | Moot | Powin has not published full lifecycle maintenance manuals or checklists tied to the system's design life or type certifications.  Powin will provide the Centipede checklist and other available operation and maintenance manuals. |
| List of key parts and components (Bill of Materials) likely to fail during use and need replacement | Yes | Yes | Included in the SharePoint folder name "LW05" for Leeward, and " LR07" for Longroad. |

[1] To the extent Licensee does not have a right to the IP Escrow Package, Licensee may not be entitled to certain materials that Powin has agreed to give Licensees that have a right to the IP Escrow Package.  Powin can facilitate access to the IP Escrow Package for appropriate consideration.  Accordingly, Powin's responses herein may be conditioned upon Licensee and Powin reaching a resolution on escrow access.

| | | | |
|---|---|---|---|
| Editable design files (CAD files) for the equipment enclosures and all items listed on the Bill of Materials | Yes | No | Powin has already supplied the files in PDF format which meets its obligations. CAD files would typically only be necessary for product design modifications or redesign—not for ongoing operations or maintenance. |
| Design files used for the fabrication of printed circuit boards ("PCBs"), specifically in the IPC-2581 format | Yes | No | Powin will supply the PCB design files in a non-editable format, such as pdf, which meets its obligations. Files in IPC-2581 format are necessary for PCB design modifications or redesign—not for ongoing operations or maintenance. |
| Electrical wiring diagrams inside equipment enclosures (batteries, HVAC systems, fire suppression systems) | Yes | Yes | Electrical wiring diagrams have been provided in a folder named "Leeward Schematics."  Note that the fire suppression system diagrams are from Hiller for fire code compliance. |
| Serrano project files | Yes | Yes | Files have been provided in Procore |
| Tomcatrunner script | Yes | Yes | Powin has included the script in the SharePoint folder name "LR04" |
| A copy of the PRAXIS IP escrow package | Yes | Yes | DTE has already been provided with the IP escrow package. |
| Complete Kobold software to support on-premises instance | Yes | Yes (Conditioned) | If DTE intends to build its own on-premise version of the Kobold software, DTE can do so by compiling the source code in the IP escrow package.<br><br>Note that if DTE desires its own on-prem Kobold implementation, DTE's inquiries to service account and user access would be moot, as DTE would be managing its own instance and associated user permissions. |
| Administrative access for Kobold for user management | Yes | No | Administrative access to the Kobold platform provides access to the entire fleet of Powin customers. Accordingly, Powin cannot grant DTE or any other licensee administrative access.  However, we have provided (or can provide) users with correct role-based access that allows DTE to administer its installation via Kobold. |

| | | | |
|---|---|---|---|
| Service accounts usernames and password | Yes | Contingent | Powin continues to provide DTE service and technical support at this time.  If Powin ceases providing services and technical support to Licensee, Powin will provide Licensee the username and password. |
| All other administrative usernames, passwords and API keys | Yes | No | Administrative access to the platform provides access to the entire fleet of Powin customers. So, administrative access cannot be provided. Accordingly, Powin cannot grant DTE or any other licensee administrative access.  However, we have provided (or can provide) users with correct role-based access that allows DTE to administer its installation.

Note that certain API and API keys utilized for Licensee's installation or necessary to extra data from Licensee's installation require a third-party license.  For example, the preferred API to handle the datastream would be the Databrick platform.  Powin cannot provide any Databricks APIs to licensee.  Powin, however, can facilitate the extraction/transfer of Licensee data, however, for a service fee. |
| Complete documentation of StackOS, including troubleshooting guides for the entire Covered System (Energy Segment, Collection Segment, Power Conversion Systems) | Yes | Yes | Powin has provided this information |
| A complete list of hardware solely sourced by Powin (not off-the-shelf), the suppliers, including details of configuration files, and software required for configuration | Yes | Yes | The configuration files related to DTE's implementation are in the IP Escrow Package.

List of key parts and components (Bill of Materials) can be, or has been, provided. |
| Training material (All 3 levels - Certified Operations & Maintenance Technician, Certified Installation Technician, and Train-the-Trainer) | Yes | No (Without Payment) | Technical documents including manuals and guides needed to operate and maintain the system can be, or have been, provided.  Powin offers customer-specific train the trainer programs at additional cost |
| Powin ROC procedures for Emergency Response | Yes | Yes | Powin has provided this information |

| Powin list of 3rd parties to engage as part of Emergency Response | Yes | Yes | Powin has provided this information |
|---|---|---|---|

Exhibit A

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (*pro hac vice* forthcoming)
Sarah M. Schrag (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* forthcoming)
Amanda C. Glaubach (*pro hac vice*
forthcoming)
Eitan Blander (*pro hac vice* forthcoming)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
            aglaubach@teamtogut.com
            eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Joint Administration Requested) |

**NOTICE OF  COURT APPROVAL OF LTSA CUSTOMER PROGRAM
AND IMPLEMENTATION OF RELATED CUSTOMER INITIATIVES**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [ 8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR  97062.

**PLEASE TAKE NOTICE** that at a hearing on June 12, 2025, the United States

Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered the *Order (i)*

*Authorizing the Debtors to Enter into New Customer Program with Existing Customers and (II)*

*Granting Related Relief* [Docket No. [62], a copy of which is attached to this Notice, including

the term sheet (the "Term Sheet") approved by the Bankruptcy Court. You are receiving this

Notice because you are a customer (a "Customer") of Powin LLC ("Powin") with respect to a

Long Term Service Agreement ("LTSA"). As authorized by the Bankruptcy Court, Powin has

developed a new Customer program (the "LTSA Program"). You have separately received a

copy of the pricing schedule for the LTSA Program. If you have signed and returned the Term

Sheet, you will also receive the proposed form of Accommodation Agreement memorializing

your participation in the LTSA Program.

**PLEASE TAKE FURTHER NOTICE** that, effective immediately, the Debtors are

suspending all service to all Customers who are party to an Energy Supply Agreement (an "ESA")

or an LTSA with Powin in order to preserve resources for continuing Customers ("Continuing

Customers"). Continuing Customers include Customers who have negotiated a consensual

amendment to an ESA on or after June 10, 2025 or have agreed to participate in the LTSA Program.

In connection with this decision, the Debtors have also filed with the Bankruptcy Court the *Motion*

*of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts*

*and (II) Granting Related Relief.* You or your counsel will receive a copy of this motion in due

course. The Debtors continue to encourage Customers to engage with Powin to become a

Continuing Customer in order to avoid unnecessary disruption at the Customer's project.

The successful launch of the LTSA Program will provide a platform on which Powin can

continue to provide Customers with critical data, functionality and services on which their projects

rely.  Absent confirmation that the LTSA Program is sustainable due to material Customer

participation, Powin will be forced to repurpose resources for a liquidating transaction which will

have a severe negative impact on value.

**TO THAT END, THE DEBTORS WILL BE HOSTING A SUMMIT (THE "SUMMIT") OF ALL CUSTOMERS WISHING TO ATTEND IN DALLAS THIS WEEK.  CUSTOMERS ARE INVITED TO PARTICIPATE IN ONE OF TWO SESSIONS WHICH WILL COMMENCE AT 2:00PM CENTRAL TIME ON JUNE 17, 2025 AND JUNE 18, 2025.  THE PURPOSE OF THE SUMMIT IS TO PROVIDE UPDATED INFORMATION REGARDING THE LTSA PROGRAM, DISCUSS OTHER OPPORTUNITIES FOR ESA CUSTOMERS TO BECOME CONTINUING CUSTOMERS AND ALSO SHARE CONFIDENTIAL INFORMATION REGARDING A RECENT THIRD PARTY PROPOSAL TO ACQUIRE POWIN AND THE LTSA BUSINESS LINE.**

*The Summit will take place at the Dentons office located at 100 Crescent Court, Suite 900, Dallas, Texas 75201.  Please contact Mitchener Turnipseed at* mturnipseed@hcg.com *to confirm whether you will be participating in person or by virtual Zoom link.*  Customer participation in the Summit is critical to Powin's decision-making in this area which the Debtors need to finalize by the end of this week.

Dated: June [●], 2025                          **TOGUT, SEGAL & SEGAL LLP**

                                               */s/*
                                               Frank A. Oswald (admitted)
                                               550 Broad Street
                                               Suite 1508
                                               Newark, NJ 07102
                                               Telephone:  (212) 594-5000
                                               Facsimile:  (212) 967-4258
                                               Email:  frankoswald@teamtogut.com

                                               Albert Togut (*pro hac vice* pending)
                                               Amanda C. Glaubach (*pro hac* pending)
                                               Eitan Blander (*pro hac vice* pending)
                                               One Penn Plaza, Suite 3335
                                               New York, New York 10119
                                               Telephone:  (212) 594-5000
                                               Facsimile:  (212) 967-4258

Email:  altogut@teamtogut.com
aglaubach@teamtogut.com
eblander@teamtogut.com

- and -

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## Exhibit B



VIA EMAIL to:

**PRAXIS Technology Escrow**

12540 Broadwell Road Suite 2201

Milton, GA 30004

Email: support@praxisescrow.com; csmith@praxisescrow.com

AND:

**Sun Streams PVS, LLC**

125 High Street

17th Floor High Street Tower, Suite 1705

Boston, MA 02110

Email: contracts@longroadenergy.com

**Sun Streams Expansion, LLC**

125 High Street

17th Floor High Street Tower, Suite 1705

Boston, MA 02110

Email: contracts@longroadenergy.com

**Serrano Solar, LLC**

125 High Street

17th Floor High Street Tower, Suite 1705

Boston, MA 02110

Email: contracts@longroadenergy.com

June 17, 2025

Dear Praxis,

**RE: Release of Deposit Materials**

**Reference:** PRAXIS US Two Party Master Escrow Agreement effective as of December 17, 2019 by and between Powin Energy Corporation, predecessor-in-interest to Powin, LLC ("Powin") and PRAXIS Technology Escrow, LLC ("Praxis") (the "Escrow Agreement") and the subsequent Riders C – Signature Beneficiary Enrollment Forms (collectively, the "Riders C"), which added Sun Streams PVS LLC, Sun Streams Expansion, LLC and Serrano Solar, LLC (each, a "Beneficiary", and collectively, the "Beneficiaries") as Signature Beneficiaries

Docusign Envelope ID: 6C583BAA-247B-44AF-B5DC-18D7849DB43C



under the Escrow Agreement. Capitalized terms used but not defined in this letter shall have the meanings set forth in the Escrow Agreement.

We confirm receipt of your notice regarding Beneficiaries' requests for the release of the Deposit Materials under Section 9 of the Escrow Agreement.

Powin does not object to this request. Please proceed with the release of the Deposit Materials, including those held in the subaccount "Powin191112-SS3SS4Serrano", to the Beneficiaries in accordance with the Escrow Agreement.

Please contact the undersigned should you have any questions.

Sincerely,

DocuSigned by:

*Chad Paulson*

BB507BD3E626405...

Chad Paulson,

General Counsel

Powin, LLC

Exhibit C

Docusign Envelope ID: 042E2643-63R4-45C2-B488-C80AA1567571



VIA EMAIL to:

**PRAXIS Technology Escrow**

12540 Broadwell Road Suite 2201

Milton, GA 30004

Email: support@praxisescrow.com; csmith@praxisescrow.com

June 18, 2025

Dear Praxis,

**RE: Release of Deposit Materials**

**References:**

1. PRAXIS US Two Party Master Escrow Agreement effective as of December 17, 2019 by and between Powin Energy Corporation, predecessor-in-interest to Powin, LLC ("Powin") and PRAXIS Technology Escrow, LLC ("Praxis") (the "191112 Escrow Agreement") and the subsequent Riders C – Signature Beneficiary Enrollment Forms (collectively, the "Riders C"), which added numerous beneficiaries as Signature Beneficiaries under the 191112 Escrow Agreement;

2. PRAXIS US Two Party Master Escrow Agreement effective as of March 22, 2024 by and between Powin, LLC ("Powin") and PRAXIS Technology Escrow, LLC ("Praxis") (the "240325 Escrow Agreement") and the subsequent Riders C – Signature Beneficiary Enrollment Forms (collectively, the "Riders C"), which added numerous beneficiaries as Signature Beneficiaries under the 240325 Escrow Agreement;

3. PRAXIS US Two Party Master Escrow Agreement effective as of June 21, 2018 by and between Powin Energy Corporation, predecessor-in-interest to Powin, LLC ("Powin") and PRAXIS Technology Escrow, LLC ("Praxis") (the "180612 Escrow Agreement") and the subsequent Riders C – Signature Beneficiary Enrollment Forms (collectively, the "Riders C"), which added numerous beneficiaries as Signature Beneficiaries under the 180612 Escrow Agreement;

4. Three Party Tech Escrow Agreement effective as of September 9, 2019 by and between Powin Energy Corporation, predecessor-in-interest to Powin, LLC ("Powin"), PRAXIS Technology Escrow, LLC ("Praxis") and West Columbia Storage LLC ("West Columbia") (the "190823 Escrow Agreement");



Powin acknowledges receipt of your notices concerning multiple beneficiaries' requests for the release of Deposit Materials under their respective Escrow Agreements.

Powin has no objection to these requests. Furthermore, Powin confirms that it does not object to the release of Deposit Materials to any other beneficiaries who have not yet submitted such requests.

A list of beneficiaries authorized by Powin for release of the Deposit Materials is attached hereto as **Exhibit 1**.

Please contact the undersigned should you have any questions.

Sincerely,

DocuSigned by:

*Chad Paulson*

BB507BD3E626405...

Chad Paulson,

General Counsel

Powin, LLC

Docusign Envelope ID: 042E2643-63R4-4EC2-B488-C86AA1567571



## Exhibit 1

1. Key Capture Energy, LLC
2. KCE Texas Holdings 2020, LLC
3. SP Garland Storage LLC;
4. Mitsubishi Power Americas (Prevalon Energy LLC)
5. SP Tranquility Solar Storage LLC
6. Rabbitbrush Solar, LLC
7. Arrow Canyon Solar, LLC
8. Flower Valley LLC
9. Triple Butte LLC
10. Swoose LLC
11. West Warwick Energy Storage I, LLC
12. Chaparral Springs, LLC
13. Great Kiskadee Storage, LLC
14. Angelo Storage, LLC
15. Desert Quartzite, LLC
16. Sun Streams PVS
17. Serrano Solar, LLC
18. Sun Streams Expansion, LLC
19. Idaho Power Company
20. Poblano Energy Storage LLC
21. EPC Services Company
22. Yuma Solar Energy LLC
23. El Sol Energy Storage LLC
24. DTE Electric Company
25. Cameron Wind 1, LLC
26. Wildcat I Energy Storage LLC
27. Acorn I Energy Storage LLC
28. Santa Paula Energy Storage LLC
29. Hummingbird Energy Storage, LLC
30. West Columbia Storage LLC

## Exhibit D

**Doherty, Casey W.**

| | |
|---|---|
| **From:** | Quinn Connolly <qconnolly@hcg.com> |
| **Sent:** | Tuesday, June 17, 2025 9:30 PM |
| **To:** | michael.alvarez@longroadenergy.com |
| **Cc:** | Project_Prisco_HTA |
| **Subject:** | Powin Customer Summit Follow-up |
| **Attachments:** | Powin Binding Term Sheet.docx; Powin Customer Contacts_vSend.xlsx |

Michael,

Thank you for the productive time today.  We look forward to reconvening tomorrow.

As requested, Powin and its advisors have done the following:

1.  We are delivering letters to PRAXIS authorizing the release of IP escrows and waiver of any 30 day hold.  Some letters have already issued.

2. Attached is a contact list of customers so that you can communicate with each other.  Powin consents to such communication for the express purpose of transacting with Powin.  For those who have executed NDAs, you should remain mindful of your obligations.  Powin does not consent to communications among customers with respect to circumventing obligations owed to Powin or Powin's intellectual property rights.  All rights are reserved in that regard.

3. Attached is a redline of the proposed Term Sheet showing changes from the version filed with the Court last week.  We believe this captures the discussion during the course of the day.  We also included changes submitted by various customers in writing which we found agreeable.

We look forward to speaking with you again in the **morning at 10AM CT**.  We will also make Uzzi & Lall available to walk through the cash collateral budget.

Best,

The Huron Investment Banking Team

## Exhibit E

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**ORDER GRANTING OMNIBUS MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE REJECTION OF LEGACY CUSTOMER CONTRACTS AND (II)
GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three [3] through four [4], is

**ORDERED**.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(Page 2)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (*pro hac vice* pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:   tania.moyron@dentons.com
             van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:   john.beck@dentons.com
             sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:   frankoswald@teamtogut.com

Albert Togut (*pro hac vice* pending)
Amanda C. Glaubach (*pro hac vice* pending)
Eitan Blander (*pro hac vice* pending)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:   altogut@teamtogut.com
             aglaubach@teamtogut.com
             eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

(Page 3)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"): (i) authorizing (a) the rejection of certain executory contracts set forth on **Schedule 1** (the "Contracts") (b) effective as of the Rejection Date; and (ii) granting related relief, all as more fully set forth in the Motion; and upon the Declaration attached to the Motion and the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing thereon establish just cause for the relief granted herein; and upon all of the proceedings before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      To the extent they are executory, the Contracts are deemed rejected effective as of the Rejection Date, provided that, within ten days of this Order, the Debtors may file an notice amending Schedule 1 to remove Contracts from the effect of this Order within the Debtors' business judgment, and upon, the filing of such a notice, the Contract(s) will not be deemed rejected.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page 4)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

3.      Nothing in this Order (i) limits intellectual property licensees' rights under section 365(n) of the Bankruptcy Code, including pursuant to, in connection with, or otherwise related to any Contracts rejected pursuant to this Order (and any such rights are hereby expressly preserved) or (ii) excuses the Debtors from performance of any obligations under executory contracts for which rejection has not yet been expressly approved by an order of this Court.

4.      For the avoidance of doubt, no counterparty to a Contract shall be entitled to any form of adequate protection.

5.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Local Rules are satisfied by such notice.

6.      Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon entry.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.      The limitations contained in Bankruptcy Rule 6006(f)(6) are waived with respect to the Motion.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## <u>Schedule 1</u>

All of the Debtors' contracts with customers related to the Debtors' legacy employment services

agreements and long term services agreements business lines, including, but not limited to: