**DENTONS US LLP**

Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
         sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
         aglaubach@teamtogut.com
         eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

### DEBTORS' WITNESS AND EXHIBIT LIST FOR HEARING ON AUGUST 6, 2025 AT 10:00 A.M. (PREVAILING EASTERN TIME) ON DEBTORS' MOTION TO REJECT AND RELATED FILINGS

Powin, LLC and the affiliated debtors and debtors in possession (collectively, the "Debtors") under chapter 11 of title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code"),[2] in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), hereby files this witness and exhibit list (the "Witness and Exhibit List") for the hearing scheduled for August 6, 2025, at 10:00 a.m. (prevailing Eastern Time) on the *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88], the *Emergency Motion of Licensees for Entry of an Order (I) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code, and (III) Granting Related Relief* [Docket No. 117], and the *Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 297], before the Honorable Michael B. Kaplan at the United States Bankruptcy Court for the District of New Jersey, Courtroom 8, 402 East State Street, Trenton, N.J. 08608 (the "Hearing").

#### WITNESSES

The Debtors may call the following witnesses at the Hearing:

1.  Brian Kane;

2.  Gerard Uzzi;

3.  Any witnesses called or listed by any other party; and

4.  Any impeachment or rebuttal witnesses.

---

[2] All references to "§" and "section" are to sections of the Bankruptcy Code unless otherwise specified herein.  All references to "Rules" are to the Federal Rules of Bankruptcy Procedure.

**<u>EXHIBIT LIST</u>**

The Debtors may offer into evidence any one or more of the following exhibits:

| Exhibit | Description | Off. | Obj. | Adm. | Docket No. |
|---------|-------------|------|------|------|------------|
| 1. | *Declaration of Brian Kane* | | | | |
| 2. | Licensee Item Schedule | | | | |
| 3. | First Day Hearing Transcript | | | | |
| 4. | *Declaration of Gerard Uzzi in Support of Emergency First Day Motions of the Debtors* | | | | 13 |
| 5. | *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing The Rejection of Legacy Customer Contracts and (II) Granting Related Relief* | | | | 88 |
| 6. | *Proposed Order Granting Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* | | | | 88 - Exhibit A |
| 7. | *Revised Proposed Order Granting Omnibus Motion Of The Debtors For Entry Of An Order (I) Authorizing The Rejection Of Legacy Customer Contracts And (II) Granting Related Relief* | | | | 357 - Exhibit E |
| 8. | *Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code and (II) Granting Related Relief* | | | | 297 |
| 9. | *Proposed Order Granting Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code and (II) Granting Related Relief* | | | | 297-1 |
| 10. | *Emergency Motion of Licensees for Entry of an Order (I) Compelling the Debtors to Comply With Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief* | | | | 117 |
| 11. | *Proposed Order (I) Compelling the Debtors to Comply With Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other* | | | | 117 |

| Exhibit | Description | Off. | Obj. | Adm. | Docket No. |
|---|---|---|---|---|---|
| | *Appropriate Relief* | | | | |
| 12. | Summit Notice of Court Approval of LTSA Customer Program and Implementation of Related Customer Initiatives | | | | 357-1 |
| 13. | IP Escrow Release Letters | | | | 357-2; 357-3 |
| 14. | Email with Licensee | | | | 357-4 |
| 15. | CS Energy LLC Contract<br><br>(Not attached due to confidentiality; slipsheet provided as placeholder) | | | | |
| 16. | Sample LTSA<br><br>(Not attached due to confidentiality; slipsheet provided as placeholder) | | | | |
| 17. | Sample ESA<br><br>(Not attached due to confidentiality; slipsheet provided as placeholder) | | | | |
| 18. | Sample IP Escrow Agreement<br><br>(Not attached due to confidentiality; slipsheet provided as placeholder) | | | | |
| 19. | March 12, 2024 Longroad Press Release – Longroad Energy Closes Financing of Serrano, a 220 MWdc Solar and 214 MWac / 855 MWh Storage Project | | | | |
| 20. | DTE Energy Web Page – Fuel Mix | | | | |
| 21. | *Motion Of The Debtors For Entry Of An Order (I) Authorizing The Debtors To Enter Into New Customer Program With Existing Customers and (II) Granting Related Relief* | | | | 15 |
| 22. | *Order Granting Motion Of The Debtors For Entry Of An Order (I) Authorizing The Debtors To Enter Into New Customer Program With Existing Customers And (II) Granting Related Relief* | | | | 62 |
| 23. | Any document or pleading filed in the above-captioned chapter 11 case including transcripts of proceedings, including testimony | | | | |
| 24. | Any exhibit listed by any other party | | | | |
| 25. | Rebuttal exhibits as necessary | | | | |

## RESERVATION OF RIGHTS

The Debtors reserve the right to call or to introduce one or more, or none, of the witnesses and exhibits listed above, and further reserve the right to amend or supplement this Witness and Exhibit List at any time prior to the Hearing.  Designation of any exhibit above does not waive any objections the Debtors may have to any exhibit listed on any other party's exhibit list.

Dated: August 1, 2025

**DENTONS US LLP**

*/s/ Lauren Macksoud*
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
        sarah.schrag@dentons.com

-and-

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald (admitted)
550 Broad Street, Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
         eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## **Exhibit 1**

(Declaration of Brian Kane)

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
         sarah.schrag@dentons.com

*Counsel for Debtors and Debtors in
Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
         aglaubach@teamtogut.com
         eblander@teamtogut.com

*Counsel for Debtors and Debtors in
Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,<br><br>       Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

## DECLARATION OF BRIAN KANE

    I, Brian Kane, hereby state and declare as follows:

    1.    I am Chief Executive Officer of the above-captioned debtors and debtors in possession (the "Debtors").[1]  I submit this declaration (the "Declaration") in support of the: (i)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin

1

*Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88] (the "Rejection Motion"); (ii) the Debtors' response to *Emergency Motion of Licensees for Entry of an Order (1) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy Code, (2) Granting Adequate Protection Under Section 365(e) of the Bankruptcy Code and (B) Related Joinders*;[2] and (iii) the Debtors' response to *the Ad Hoc Customer Group's Motion for (A) Adequate Protection and (B) Related Relief.*

## I. Background

2.  I graduated from Rutgers University in 1997 with a B.S. in Mechanical Engineering. I started my career as an engineer, and have held the title of "Manager, Field Applications Engineering," "Director, Applications Engineering," and "Head of Enterprise Sales Engineering" at Bloom Energy before moving to Powin in 2021, where I entered as a "Senior Vice President" and then was promoted to Chief Projects Officer, before becoming Chief Executive Officer in 2025.

## II. Expertise and Knowledge Regarding the Contracts, Equipment and Projects

3.  It has been, and remains, my job to understand all the Debtors' customers' projects, and, more specifically, how Powin equipment and technology works and is deployed and applied at Powin's projects. As a Chief Projects Officer for over two years prior to my service as Chief Executive Officer and continuing as Chief Executive Officer, I routinely interact with our customers and our project-focused employees. As an executive with an engineering background

---

Energy Operating, LLC [6487] (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

[2] Terms used but not otherwise defined herein shall have the meaning given to them in the Omnibus Objection.

US_ACTIVE\130866864\V-9

and skillset, I am well positioned to understand the difference between customer needs and wants and how Powin equipment operates at their project sites.

4.      During the Chapter 11 Cases, the Debtors have been involved in a collaborative process with customers concerning their Contracts and projects, which I have overseen.  This includes a customer summit on June 17 and 18, 2025, and a true and correct copy of the invitation to that summit was filed as Docket No. 357-1.  I have consulted with Powin employees and am familiar with what information customers have requested, including, specifically, that which Powin has, has provided and does not have plus items which Powin will not provide.  I am ultimately responsible for these decisions and am competent to testify on these matters.

### III.    The Contracts

5.      The Debtors seek to reject the Contracts, because full performance of the Contracts is burdensome and not financially viable for the Debtors.  More detailed reasons for the Debtors' decision to reject the Contracts are presented in the Declaration of Gerard Uzzi, the Debtors' Chief Restructuring Officer, and I regularly consulted with Mr. Uzzi in connection with the decision to reject the Contracts.

6.      Some Contracts contain an escrow provision which specified intellectual property the Debtors were to deposit into the IP Escrows for the Licensees for such Contracts.  The IP Escrows were intended to satisfy any obligation to provide the Licensees with the Debtors' intellectual property.  On June 17 and 18, 2025, without charge to the Licensees, the Debtors issued letters to the vendor for the IP Escrows, instructing the vendor to release intellectual property to the Licensee Customers.  I am familiar with these letters, and true and correct copies were filed as Docket Nos. 357-2 and 357-3.  This is the routine means by which IP Escrows are released to Licensees in the ordinary course of business.

7.      Working with my team members who are my direct reports and who have primary responsibility with respect to the IP Escrows and the underlying Contracts, I directed the production of a schedule of items requested by certain customers (the "<u>Requested Items Schedule</u>") (attached as **Exhibit 1**).[3] The Requested Items Schedule accurately summarizes (a) the IP Escrow items that have been released to certain Licensees; (b) items that were requested by certain Licensees but which the Debtors do not maintain in the ordinary course of business; (c) items that are not "intellectual property" at all; and (d) items that exceed the scope of the Licensees' license.

8.      As noted in the Requested Items Schedule, on August 1, 2025, the Debtors made a production of information to certain Customers that provided specific requests.  The Debtors  have provided, or made available to Licensees, a range of technical documentation and system materials sufficient to support safe operation, monitoring, and maintenance of the installed systems. These materials include, but are not limited to:

a.   Kobold training materials, including introductory content, read/write access guidance, and instructional video materials related to the Lockout/Tagout (LOTO) procedure.

b.   The Tomcatrunner script, which facilitates automation of system operations.

c.   PDF versions of CAD drawings for the enclosures and components identified in the bills of materials. These files meet Powin's contractual disclosure obligations and are suitable for reference during system maintenance.

d.   Internal wiring diagrams for batteries, HVAC systems, and fire suppression equipment.

---

[3] The Requested Items Schedule is framed to Customers with IP Escrow rights, and the Debtors are willing to discuss appropriate consideration and terms with Customers that do not have IP Escrow rights, but wish to obtain information or access.

4

e.  Complete project-specific bills of materials.

f.  Technical documentation and supporting materials, including StackOS manuals, configuration files, and the Praxis IP Escrow Package, as well as all other documents necessary for the Licensee to operate and maintain its system under the scope of its rights.

A more detailed breakdown of the items Powin has provided, not provided, or determined to be unavailable is set forth in Requested Items Schedule.

9.  To the best of my knowledge and after reasonable inquiry, Powin has determined that the following categories of information do not exist in our records as discrete, standalone materials:

a.  Written standard operating procedures (SOPs) for the safe and reliable operation of the BESS system. Powin does not maintain formal SOPs as separate documents. Instead, operational guidance is incorporated into technical manuals, system documentation, and training materials.

b.  Standalone fault handling procedures or troubleshooting guides covering specific alarms or faults across all BESS components and subsystems. Powin does not publish separate fault guides. Troubleshooting information, where available, is contained within broader technical documentation and OEM manuals.

c.  Lifetime maintenance manuals and checklists prepared in accordance with type certificates or system design life models. Powin does not maintain dedicated lifecycle maintenance documentation. Instead, Powin provides operational and maintenance manuals that reflect the equipment as deployed.

These materials were never created or maintained as separate documents within Powin's documentation practices. Where applicable, relevant information is incorporated into technical publications and other supporting materials that have been or will be provided to Licensees.

10.     As to items that the Debtors possess, but are not producing, the items listed below are not being provided for the following reasons:

a.  Editable CAD design files for equipment enclosures and components listed in the bill of materials. Powin has already provided Licensees PDF versions of these files, which meet our contractual obligations. Editable CAD files are only required for redesign or product development and are not necessary for operation or maintenance of the installed systems.

b.  Printed circuit board (PCB) design files in IPC-2581 format. Powin will instead supply non-editable versions of these files. The IPC-2581 format is used for manufacturing and design changes, which are outside the scope of Licensee's operational needs.

c.  Administrative access to the Kobold software platform. Granting administrative access would expose sensitive system-level controls across, and access to, Powin's entire fleet of customer systems. For security and confidentiality reasons, Powin provides only role-based access specific to the Licensee's installation.

d.  Administrative usernames, passwords, and API keys. These credentials govern access to systems shared across multiple customers. Releasing them would compromise the security of other installations. Furthermore, certain API functions (such as those tied to Databricks) are licensed from third parties and cannot be sublicensed by Powin.

6

e. Training materials for Certified Operations & Maintenance Technician, Certified Installation Technician, and Train-the-Trainer programs. These materials are part of Powin's proprietary training curriculum and are only made available through separately contracted training programs, not as part of standard documentation delivery.

**IV.    There is no Public Safety Issue**

11.    Safety is an important priority for Powin.  I do not believe there is any threat to public safety issues in connection with the Debtors' rejection of the Contracts as asserted by the Licensees.  I confirm that Powin has provided all the product level information that is required by the Customer and their Authority having Jurisdiction (AHJ) for "Hazard Mitigation Analysis" that is reviewed and approved during the permitting process of the Battery Storage system project.

12.    The Powin equipment at issue is a battery energy storage system ("BESS"), which is a standalone energy storage solution used to store electrical energy for later discharge. A BESS is not part of the transmission grid itself, nor is it a power generation asset like a turbine, generator, or solar array. The Powin system is distinct from the electrical grid and generation assets; it does not distribute power to end users or physically generate electricity.

13.    A BESS is not considered a safety device under industry standards, electrical codes, or utility regulations. Its primary function is commercial and operational—it enables the energy asset owner or operator to perform energy arbitrage by storing electricity when supply is abundant or prices are low, and discharging stored energy during periods of higher demand or pricing. This can help optimize grid efficiency and project economics, but it does not perform any protective or fail-safe function like protective relays, circuit breakers, or emergency shutdown systems. In short,

it is not a safety device, nor has it ever been marketed as such.  The presence or absence of a BESS does not affect the core safety architecture of the grid or the underlying generation facility.

14.     Electric grids have operated safely for decades before BESS technology existed. Accordingly, the Powin system is not a safety device, and its removal or temporary unavailability will not create or increase any risk to public safety.  Even if all of the Licensees' projects are terminated, the United States power grid will not be affected in a way that impacts public safety.

15.     Further, the Powin energy storage system is designed to operate autonomously and does not require continuous human intervention for its safe operation. Once installed and commissioned, the equipment functions through automated controls, system software, and built-in safety mechanisms. Standard monitoring and control functions, such as battery management, thermal regulation, and fault detection, are handled by the system's software and remote supervisory controls.  Since the filing of the Chapter 11 Cases, the Debtors have provided the Licensees with full authority to access and actuate those remote supervisory controls.  These automated safety mechanisms are internal protections designed to protect the BESS equipment and the site, and they are neither designed nor rated for any function designed to protect the grid. Field service personnel are only required for scheduled maintenance or in the event of a non-routine service condition. The absence of on-site human operators does not pose a safety risk or impair the functionality of the system.

16.     The Debtors did not contract to provide primary safety services to any Licensee— only monitoring services.  Under energy custom and practice, such safety burden falls on the Licensees' themselves, regardless of whether or not the Debtors' operating systems create a convenient process for monitoring certain elements of the Licensees' projects.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 1st day of August 2025, at Marblehead, Massachusetts

*/s/ Brian Kane*
Brian Kane

## Exhibit 1

| Item | Does Powin Have It?[1] | Is Powin willing to give it to Licensee? | Notes: |
|---|---|---|---|
| Written standard operating procedures (SOPs) for operation the BESS system safely and reliably. | No. | Moot | Powin does not publish SOPs for the BESS. Powin does maintain technical documents including manuals and guides needed to operate and maintain the system.  These documents are to be provided or have been already provided. |
| Fault handling procedures or troubleshooting guides for all components and subsystems including but not limited to all hardware components in the BESS system, including cells, modules, BPC, string controllers, feather, AC's, FSS, SMA (PCS), EMA, PPC, ADAM, M10, Team Controller.  Include therewith specific explanations of particular alarms signals and/or faults in the control systems and the recommended actions for resolving them. | No | Moot | Powin does not have published, separate fault handling or trouble-shooting guides. All available technical documents, and to the extent they cover identify and fixing issues, are to be provided or have been provided.  Note that Licensee will need to contract the appropriate third-party hardware provider, or as applicable, the OEM, for technical support regarding third-party hardware (i.e. Siba, SMA, Potter, Honeywell, Advantech, Moxa). |
| Instructions for the safe operation of the system using the Kobold software, including explanation of the command statements for all applications within energy management system, including statement instructions for the remote lock out/tag out procedure | Yes | Yes | Introductory materials and training information for Kobold have been shared via SharePoint folder named "LW03" |
| Lifetime maintenance manuals and checklists, prepared in accordance with the type certificates and design life models. | No | Moot | Powin has not published full lifecycle maintenance manuals or checklists tied to the system's design life or type certifications.  Powin will provide the Centipede checklist and other available operation and maintenance manuals. |
| List of key parts and components (Bill of Materials) likely to fail during use and need replacement | Yes | Yes | Included in the SharePoint folder name "LW05" for Leeward, and " LR07" for Longroad. |

[1] To the extent Licensee does not have a right to the IP Escrow Package, Licensee may not be entitled to certain materials that Powin has agreed to give Licensees that have a right to the IP Escrow Package.  Powin can facilitate access to the IP Escrow Package for appropriate consideration.  Accordingly, Powin's responses herein may be conditioned upon Licensee and Powin reaching a resolution on escrow access.

| | | | |
|---|---|---|---|
| Editable design files (CAD files) for the equipment enclosures and all items listed on the Bill of Materials | Yes | No | Powin has already supplied the files in PDF format which meets its obligations. CAD files would typically only be necessary for product design modifications or redesign—not for ongoing operations or maintenance. |
| Design files used for the fabrication of printed circuit boards ("PCBs"), specifically in the IPC-2581 format | Yes | No | Powin will supply the PCB design files in a non-editable format, such as pdf, which meets its obligations. Files in IPC-2581 format are necessary for PCB design modifications or redesign—not for ongoing operations or maintenance. |
| Electrical wiring diagrams inside equipment enclosures (batteries, HVAC systems, fire suppression systems) | Yes | Yes | Electrical wiring diagrams have been provided in a folder named "Leeward Schematics."  Note that the fire suppression system diagrams are from Hiller for fire code compliance. |
| Serrano project files | Yes | Yes | Files have been provided in Procore |
| Tomcatrunner script | Yes | Yes | Powin has included the script in the SharePoint folder name "LR04" |
| A copy of the PRAXIS IP escrow package | Yes | Yes | DTE has already been provided with the IP escrow package. |
| Complete Kobold software to support on-premises instance | Yes | Yes (Conditioned) | If DTE intends to build its own on-premise version of the Kobold software, DTE can do so by compiling the source code in the IP escrow package.<br><br>Note that if DTE desires its own on-prem Kobold implementation, DTE's inquiries to service account and user access would be moot, as DTE would be managing its own instance and associated user permissions. |
| Administrative access for Kobold for user management | Yes | No | Administrative access to the Kobold platform provides access to the entire fleet of Powin customers. Accordingly, Powin cannot grant DTE or any other licensee administrative access.  However, we have provided (or can provide) users with correct role-based access that allows DTE to administer its installation via Kobold. |

| | | | |
|---|---|---|---|
| Service accounts usernames and password | Yes | Contingent | Powin continues to provide DTE service and technical support at this time.  If Powin ceases providing services and technical support to Licensee, Powin will provide Licensee the username and password. |
| All other administrative usernames, passwords and API keys | Yes | No | Administrative access to the platform provides access to the entire fleet of Powin customers. So, administrative access cannot be provided. Accordingly, Powin cannot grant DTE or any other licensee administrative access.  However, we have provided (or can provide) users with correct role-based access that allows DTE to administer its installation.

Note that certain API and API keys utilized for Licensee's installation or necessary to extra data from Licensee's installation require a third-party license.  For example, the preferred API to handle the datastream would be the Databrick platform.  Powin cannot provide any Databricks APIs to licensee.  Powin, however, can facilitate the extraction/transfer of Licensee data, however, for a service fee. |
| Complete documentation of StackOS, including troubleshooting guides for the entire Covered System (Energy Segment, Collection Segment, Power Conversion Systems) | Yes | Yes | Powin has provided this information |
| A complete list of hardware solely sourced by Powin (not off-the-shelf), the suppliers, including details of configuration files, and software required for configuration | Yes | Yes | The configuration files related to DTE's implementation are in the IP Escrow Package.

List of key parts and components (Bill of Materials) can be, or has been, provided. |
| Training material (All 3 levels - Certified Operations & Maintenance Technician, Certified Installation Technician, and Train-the-Trainer) | Yes | No (Without Payment) | Technical documents including manuals and guides needed to operate and maintain the system can be, or have been, provided.  Powin offers customer-specific train the trainer programs at additional cost |
| Powin ROC procedures for Emergency Response | Yes | Yes | Powin has provided this information |

| Powin list of 3rd parties to engage as part of Emergency Response | Yes | Yes | Powin has provided this information |
|---|---|---|---|

## **Exhibit 2**

(Licensee Item Schedule)

| Item | Does Powin Have It?[1] | Is Powin willing to give it to Licensee? | Notes: |
|---|---|---|---|
| Written standard operating procedures (SOPs) for operation the BESS system safely and reliably. | No. | Moot | Powin does not publish SOPs for the BESS. Powin does maintain technical documents including manuals and guides needed to operate and maintain the system.  These documents are to be provided or have been already provided. |
| Fault handling procedures or troubleshooting guides for all components and subsystems including but not limited to all hardware components in the BESS system, including cells, modules, BPC, string controllers, feather, AC's, FSS, SMA (PCS), EMA, PPC, ADAM, M10, Team Controller.  Include therewith specific explanations of particular alarms signals and/or faults in the control systems and the recommended actions for resolving them. | No | Moot | Powin does not have published, separate fault handling or trouble-shooting guides. All available technical documents, and to the extent they cover identify and fixing issues, are to be provided or have been provided.  Note that Licensee will need to contract the appropriate third-party hardware provider, or as applicable, the OEM, for technical support regarding third-party hardware (i.e. Siba, SMA, Potter, Honeywell, Advantech, Moxa). |
| Instructions for the safe operation of the system using the Kobold software, including explanation of the command statements for all applications within energy management system, including statement instructions for the remote lock out/tag out procedure | Yes | Yes | Introductory materials and training information for Kobold have been shared via SharePoint folder named "LW03" |
| Lifetime maintenance manuals and checklists, prepared in accordance with the type certificates and design life models. | No | Moot | Powin has not published full lifecycle maintenance manuals or checklists tied to the system's design life or type certifications.  Powin will provide the Centipede checklist and other available operation and maintenance manuals. |
| List of key parts and components (Bill of Materials) likely to fail during use and need replacement | Yes | Yes | Included in the SharePoint folder name "LW05" for Leeward, and " LR07" for Longroad. |

[1] To the extent Licensee does not have a right to the IP Escrow Package, Licensee may not be entitled to certain materials that Powin has agreed to give Licensees that have a right to the IP Escrow Package.  Powin can facilitate access to the IP Escrow Package for appropriate consideration.  Accordingly, Powin's responses herein may be conditioned upon Licensee and Powin reaching a resolution on escrow access.

| | | | |
|---|---|---|---|
| Editable design files (CAD files) for the equipment enclosures and all items listed on the Bill of Materials | Yes | No | Powin has already supplied the files in PDF format which meets its obligations. CAD files would typically only be necessary for product design modifications or redesign—not for ongoing operations or maintenance. |
| Design files used for the fabrication of printed circuit boards ("PCBs"), specifically in the IPC-2581 format | Yes | No | Powin will supply the PCB design files in a non-editable format, such as pdf, which meets its obligations. Files in IPC-2581 format are necessary for PCB design modifications or redesign—not for ongoing operations or maintenance. |
| Electrical wiring diagrams inside equipment enclosures (batteries, HVAC systems, fire suppression systems) | Yes | Yes | Electrical wiring diagrams have been provided in a folder named "Leeward Schematics."  Note that the fire suppression system diagrams are from Hiller for fire code compliance. |
| Serrano project files | Yes | Yes | Files have been provided in Procore |
| Tomcatrunner script | Yes | Yes | Powin has included the script in the SharePoint folder name "LR04" |
| A copy of the PRAXIS IP escrow package | Yes | Yes | DTE has already been provided with the IP escrow package. |
| Complete Kobold software to support on-premises instance | Yes | Yes (Conditioned) | If DTE intends to build its own on-premise version of the Kobold software, DTE can do so by compiling the source code in the IP escrow package.<br><br>Note that if DTE desires its own on-prem Kobold implementation, DTE's inquiries to service account and user access would be moot, as DTE would be managing its own instance and associated user permissions. |
| Administrative access for Kobold for user management | Yes | No | Administrative access to the Kobold platform provides access to the entire fleet of Powin customers. Accordingly, Powin cannot grant DTE or any other licensee administrative access.  However, we have provided (or can provide) users with correct role-based access that allows DTE to administer its installation via Kobold. |

| Service accounts usernames and password | Yes | Contingent | Powin continues to provide DTE service and technical support at this time. If Powin ceases providing services and technical support to Licensee, Powin will provide Licensee the username and password. |
|---|---|---|---|
| All other administrative usernames, passwords and API keys | Yes | No | Administrative access to the platform provides access to the entire fleet of Powin customers. So, administrative access cannot be provided. Accordingly, Powin cannot grant DTE or any other licensee administrative access. However, we have provided (or can provide) users with correct role-based access that allows DTE to administer its installation.<br><br>Note that certain API and API keys utilized for Licensee's installation or necessary to extra data from Licensee's installation require a third-party license. For example, the preferred API to handle the datastream would be the Databrick platform. Powin cannot provide any Databricks APIs to licensee. Powin, however, can facilitate the extraction/transfer of Licensee data, however, for a service fee. |
| Complete documentation of StackOS, including troubleshooting guides for the entire Covered System (Energy Segment, Collection Segment, Power Conversion Systems) | Yes | Yes | Powin has provided this information |
| A complete list of hardware solely sourced by Powin (not off-the-shelf), the suppliers, including details of configuration files, and software required for configuration | Yes | Yes | The configuration files related to DTE's implementation are in the IP Escrow Package.<br><br>List of key parts and components (Bill of Materials) can be, or has been, provided. |
| Training material (All 3 levels - Certified Operations & Maintenance Technician, Certified Installation Technician, and Train-the-Trainer) | Yes | No (Without Payment) | Technical documents including manuals and guides needed to operate and maintain the system can be, or have been, provided. Powin offers customer-specific train the trainer programs at additional cost |
| Powin ROC procedures for Emergency Response | Yes | Yes | Powin has provided this information |

| Powin list of 3rd parties to engage as part of Emergency Response | Yes | Yes | Powin has provided this information |
|---|---|---|---|

## Exhibit 3

(First Day Hearing Transcript)

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF NEW JERSEY


IN RE:                          .     Case No. 25-16137 (MBK)
                                .     Chapter 11
POWIN, LLC, ET AL.,             .     (Joint Administration Requested)
                                .
                                .     U.S. Courthouse
             Debtor.            .     402 East State Street
                                .     Trenton, NJ  08608
                                .
                                .     June 12, 2025
. . . . . . . . . . . . .              9:31 a.m.


                    TRANSCRIPT OF FIRST-DAY MOTIONS
                 BEFORE THE HONORABLE MICHAEL B. KAPLAN
                  UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:            Togut, Segal & Segal LLP
                           By:  ALBERT TOGUT, ESQ.
                                EITAN BLANDER, ESQ.
                           One Penn Plaza, Suite 3335
                           New York, NY  10119

                           Togut, Segal & Segal LLP
                           By:  FRANK A. OSWALD, ESQ.
                           550 Broad Street, Suite 1508
                           Newark, NJ 07102

                           Dentons US LLP
                           By:  VAN C. DURRER, II, ESQ.
                                TANIA M. MOYRON, ESQ.
                           601 S. Figueroa Street, Suite 2500
                           Los Angeles, CA  90017


Audio Operator:            Linda Brakel

 Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.
```

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

2

APPEARANCES CONTINUED:

For the Debtor (cont'd):  Dentons US LLP
                                By:  JOHN D. BECK, ESQ.
                                1221 Avenue of the Americas
                                New York, NY  10020-1089

                                Dentons US LLP
                                By:  CASEY DOHERTY, ESQ.
                                1300 Post Oak Blvd., Suite 650
                                Houston, TX  77056

For U.S. Trustee:               Department of Justice
                                Office of U.S. Trustee
                                By:  LAUREN BIELSKIE, ESQ.
                                     JEFFREY M. SPONDER, ESQ.
                                One Newark Center, Suite 2100
                                1085 Raymond Boulevard, Suite 2100
                                Newark, NJ  07102

For the Surety Bond             Womble Bond Dickinson
Provider:                       By:  LISA BITTLE TANCREDI, ESQ.
                                1313 North Market Street, Suite 1200
                                Wilmington, DE  19801

For Certain Funds and           White & Case
Accounts Managed by             By:  ANDREW ZATZ, ESQ.
KKR Credit Advisors:            1221 Avenue of the Americas
                                New York, NY  10020-1095

                                Gibbons P.C.
                                By:  JOHN S. MAIRO, ESQ.
                                One Gateway Center
                                Newark, NJ  07102

For DTE Electric                Pashman Stein Walder Hayden, P.C.
Company:                        By:  LEAH EISENBERG, ESQ.
                                21 Main Street, Suite 200
                                Hackensack, NJ  10020-1001

For Trilantic:                  Kirkland & Ellis
                                By:  APARNA YENAMANDRA, P.C.
                                601 Lexington Avenue
                                New York, NY  10022

For Invenergy, LLC:             Holland & Knight
                                By:  BARBARA PARLIN, ESQ.
                                787 Seventh Avenue, 31st Floor
                                New York, NY  10019

3

APPEARANCES CONTINUED:

For Ace Engineering &        Sherman Silverstein
Co. Ltd.:                    By:  ARTHUR J. ABRAMOWITZ, ESQ.
                             308 Harper Drive, Suite 200
                             Moorestown, NJ  08057

                        -  -  -  -  -  -

**INDEX**

| **EXHIBITS** | **I.D.** | **EVD.** |
|---|---|---|
| Declaration of Gerard Uzzi | 10 | 10 |

1          (Proceedings commenced at 9:31 a.m.)

2          THE COURT:  All right.  Good morning, folks.  This is

3  Judge Kaplan.

4          We'll be hearing the Powin matters.  Hold on one

5  second.  Let everybody adjust their monitors.

6          This morning's hearing is being conducted on a hybrid

7  basis with counsel in the Court, which is a nice change, plus

8  remote appearances.  For those who are appearing remotely and

9  wish to be heard, please make use of the "raise hand" function

10  and we will do our best to spot you.

11          For those in Court, I'll ask that we have

12  appearances.

13          Good morning, Mr. Togut.  How are you?

14          MR. TOGUT:  I'm fine, Your Honor.  I've been here

15  many times, but only by Zoom.  So it's a pleasure to be here in

16  person.

17          THE COURT:  It threatens different when it's live.

18          MR. TOGUT:  Well, you have a beautiful courtroom.

19  It's very nice.

20          THE COURT:  Thank you.

21          MR. TOGUT:  You can't really see all that so well on

22  Zoom.

23          We're pleased to be here.  We filed these cases very

24  late on Monday night.  I want to thank your staff, the clerk of

25  the Court, the U.S. Trustee, for just being incredibly helpful

1  in doing what we needed to do to be able to be here today.

2          With me for my team is Eitan Blander, who will be

3  presenting some of the first days.  The rest of my team is

4  watching by Zoom, headed by Frank Oswald, who really led the

5  effort for my firm.

6          I'd like to introduce Van Durrer from the Dentons

7  firm, and he will do most of the talking.  I'll sit down.

8          THE COURT:  All right.  Thank you.

9          MR. TOGUT:  Thank you.

10          THE COURT:  Good morning, Mr. Durrer.

11          MR. DURRER:  Good morning, Your Honor.  Van Durrer of

12  Dentons.

13          I don't think I've seen you since the November Mass

14  Tort Bench Bar Conference up in D.C., but it's a pleasure to be

15  in your courtroom.

16          THE COURT:  Pleasure not to have a mass tort.

17                        (Laughter)

18          MR. DURRER:  I will second that emotion.

19          As Your Honor is aware and as Mr. Togut mentioned,

20  these debtors did not enter Chapter 11 on the typical cadence.

21  So I want to echo Mr. Togut's remarks about the resilience,

22  diligence, and professionalism of all the Court staff,

23  including chamber staff.

24          I also want to remark, I think Mr. Sponder is with us

25  by Zoom.  I wanted to remark that the United States Trustee's

1  Office actually provided comments and suggestions on our first

2  days in less than 24 hours from when we filed the papers,

3  vastly overexceeding what they had promised.  So thanks for

4  that.

5           I want to start, Your Honor, with a few

6  introductions.  First of all, our CEO, Brian Kane, is here with

7  us.

8           THE COURT:  Good morning.

9           MR. DURRER:  Mr. Kane hails from Collingswood, New

10 Jersey, just a bit further down the road and is a proud alum of

11 Rutgers.  These days, he lives a little further up north.

12          Also Gerard Uzzi is the CRO of the company.  He also

13 lives right here in New Jersey.

14          Finally, Mitchner Turnipseed is our investment banker

15 from Huron Transaction Advisory.

16          From Dentons, my partner John Beck is here, who will

17 be presenting cash collateral and cash management.  And our

18 Houston colleague, Casey Doherty, will be presenting the wages

19 motion.

20          Tania Moyron, the chair of our restructuring practice

21 at Dentons, is also on Zoom.  Among other things, she worked

22 tirelessly over the past couple of weeks on dealing with the

23 company's complex labor situation on three continents around

24 the globe, but we are not seeking any relief on those matters.

25          THE COURT:  All right.  Good morning.

1          MR. DURRER:  When the advisory team was originally

2    engaged, Your Honor, just a short bit ago, we quickly

3    discovered that Powin was deeply troubled and severely

4    liquidity constrained, more so than we had originally

5    understood.  Indeed, there are macroeconomic factors at play.

6    Due to certain policy changes, $8 billion worth of clean energy

7    deals have been canceled, even this year, 2025.

8          Two energy companies, Mosaic and Sunnova, have filed

9    in recent days.  To give you a sense of what the company does,

10   Powin engineers, supervises the installation of, and services

11   battery energy storage systems for green energy plants around

12   the planet.  Many of these systems, including in particular

13   solar, are really only sustainable where a battery system is

14   also deployed so that the system can run around the clock when

15   the sun goes down, for example.

16         Among the companies that supply this service, and

17   especially the ongoing repair and maintenance function, Powin

18   holds a 20 percent market share and is the largest provider,

19   according to some estimates.  Indeed, every other player in the

20   marketplace has teens or single digits market share.  Powin is

21   the largest.

22         So in short, Powin's failure would have a devastating

23   impact on that marketplace because it would effectively cut

24   customers off from critical data, functionality, and services.

25   With that understanding, we naturally turned to Powin's

9

1  customers to develop a pathway forward.

2       After a lot of engagement, the feedback from

3  customers was clear.  There was a strong desire for Powin to

4  remain viable on the one hand, but customers wanted some

5  assurance that projects would not be plagued with Powin's

6  legacy problems, on the other hand.  To that end, Powin formed

7  Powin Project LLC here in New Jersey.  Given the aforementioned

8  ties to the area, Powin's largest creditor has key personnel in

9  New Jersey as well.

10      So pending the customer relief we'll talk about soon,

11 Powin Project's primary asset today is a cash account held here

12 in Trenton.  Once we get through today's hearing, Your Honor,

13 hopefully successfully, we will turn to the business of our

14 employees.  We need to develop retention programs for them.

15 They're vital to the success of Powin, and that will be a top

16 priority once we clear today.

17      So on the basis of this customer strategy that we're

18 developing, a vital element of that was the debtors'

19 pre-petition secured lenders agreeing to allow the consensual

20 use of cash collateral.  That agreement is not without material

21 risk on their part, and we agreed to a commercial deal that

22 accommodates that risk and takes it into account and fairly

23 compensates them for it.  Candidly, the lenders have been very

24 good partners, and we would be in a very different place

25 without their support.

26      That's all I have to open, Your Honor, except for one

1 thing.  I do want to move the admission of Mr. Uzzi's first-day

2 declaration, if Your Honor will accept that into evidence.

3          THE COURT:  All right.  Let me hear from counsel

4 either present or appearing remotely, any objection to the

5 admission of the Uzzi declaration?

6                    (No audible response)

7          THE COURT:  Counsel?

8          MR. DURRER:  Oh, pardon me.

9          MS. TANCREDI:  Good morning, Your Honor.  Lisa

10 Tancredi on behalf of the surety bond provider in this case.

11          We have a $20 million customs bond that benefits the

12 debtor.  I have no objection to the admission of the

13 declaration so long as he's subject to cross-examination.

14          THE COURT:  Do you intend to cross-examine?

15          MS. TANCREDI:  I do have a few questions for him,

16 yes.

17          THE COURT:  All right.  We'll admit the declaration

18 subject to the cross-examination.

19      (Declaration of Gerard Uzzi admitted to evidence)

20          MR. DURRER:  Thank you, Your Honor.

21          THE COURT:  All right.

22          MR. DURRER:  I'm just going to yield the floor to

23 Mr. Blander to go over his matters, Your Honor.

24          THE COURT:  All right.  Thank you.

25          MR. BLANDER:  Good morning, Your Honor.  Eitan

11

1  Blander, Togut, Segal & Segal, co-counsel for the debtors.  My

2  Pro Hac Vice application was submitted previously.  It's at

3  Docket Number 20.

4         If acceptable, Your Honor, I'll continue with the

5  administrative motions which constitute the first five agenda

6  items.

7         THE COURT:  Welcome to New Jersey, yes.

8         MR. BLANDER:  Thank you, Your Honor.

9         I'm actually going to start with the second agenda

10  item, which is the debtors' motion for an order directing joint

11  administration of the Chapter 11 cases.  This was filed at

12  Docket Number 3.  We provided copies of the motion to the U.S.

13  Trustee with minor comments to the preamble of the order which

14  were incorporated in the red line that was sent to chambers

15  last night.  This is a standard motion, and unless Your Honor

16  has any questions, we'd ask that it be granted.

17         THE COURT:  Mr. Sponder or Ms. Bielskie.  I see

18  Mr. Sponder's name on the screen.  I understand that you're

19  engaged in juggling a couple of projects at the moment.  So to

20  make things more expedient, to the extent there are any

21  concerns of the U.S. Trustee's Office that go beyond the

22  comments that have already been submitted to the parties-in-

23  interest, you'll advise and you'll use either the raise-hand

24  function or simply weigh in.  Otherwise, I'll assume that your

25  concerns have been addressed.  Is that fair enough,

1  Mr. Sponder?

2          MR. SPONDER:  Thank you, Your Honor.  Jeff Sponder

3  from the Office of the United States Trustee.

4          I maybe can make it a little bit easier than that,

5  Your Honor.

6          THE COURT:  All right.

7          MR. SPONDER:  With respect to joint administration,

8  insurance, wages, cash management, the notice agent, creditor

9  matrix, the complex case designation, and then extension of

10  schedules, we were resolved on all eight of those motions and

11  the orders.  I will say that I believe we ended up with the

12  extension of schedules to July 17th with a proposed 341 date of

13  July 23.

14          But I understand all of our requested revisions have

15  been incorporated in those eight orders and what we have issues

16  with would just be the cash collateral and the customer program

17  one.

18          Thank you, Your Honor.

19          THE COURT:  All right.  Thank you.  That helps

20  tremendously.

21          Then, with respect to the second item on the agenda,

22  seeing no other raised hands, motion granted.

23          MR. BLANDER:  Thank you, Your Honor.

24          I'll then turn to the first agenda item, which is the

25  debtors' application for designation as a complex Chapter 11

1  case.  This was filed at Docket Number 6.

2          As stated in the application, these cases satisfy the

3  criteria as a complex case pursuant to Local Rule 1002(2).

4  Among other things, the debtors have more than $50 million in

5  assets and liabilities, and there are likely to be more than

6  1,000 creditors.

7          Unless Your Honor has any questions, we'd request

8  that the order be entered.

9          THE COURT:  All right.  Any opposition?

10                  (No audible response)

11          THE COURT:  Motion granted.

12          MR. BLANDER:  Thank you, Your Honor.

13          I'll then turn to Agenda Item Number 3, which is the

14  debtors' motion for an order extending the time to file

15  schedules and statements.  This was filed at Docket Number 10.

16          In the motion, the debtors had originally sought an

17  extension of 28 days, an additional extension for 28 days for a

18  total of 42 days.  As Mr. Sponder has stated, we have since

19  agreed to reduce the extension to, I believe, 24 days, which

20  would set the deadline at July 17, 2025.  This was not in the

21  red lines that were sent to chambers last night.  This is a

22  recent development, but they will be reflected in the red lines

23  to be sent after this hearing.

24          Unless Your Honor has any questions, we'd ask that

25  the order be entered.

1          THE COURT:  All right.  Again, I see no objections.

2    Motion will be granted.

3          With respect to all of the orders, the final

4    versions, with language that the parties have negotiated and

5    agreed upon, send them in one batch to chambers after the

6    hearing and that way, we don't get confused and enter an

7    earlier version.  All right.

8          MR. BLANDER:  We'll do Your Honor.

9          THE COURT:  Thank you.

10         MR. BLANDER:  Next is Agenda Item Number 4, which is

11   the debtors' motion for orders authorizing the filing of a

12   consolidated list of the 50 largest unsecured creditors, the

13   filing of a consolidated list of creditors in lieu of

14   submitting a separate matrix for each debtor, and authority to

15   redact certain personally identifiable information.

16         We've received minor comments from the U.S. Trustee

17   which were submitted in the red line to chambers last night.

18   This is common relief in this district, and unless Your Honor

19   has any questions, we'd again ask that this order be entered.

20         THE COURT:  I see no opposition.  Granted.  Thank

21   you.

22         MR. BLANDER:  Thank you, Your Honor.

23         The fifth agenda item is the debtors' application to

24   appoint KCC, doing business as Verita Global, as claims and

25   noticing agent effective as of the petition date.  This was

1  filed at Docket Number 9.

2          We received comments from the U.S. Trustee's office

3  which have been incorporated into the red lines that were sent

4  to chambers last night, and these have also been agreed to by

5  Verita.

6          Unless Your Honor has any questions, we'd ask that

7  the order be entered.

8          THE COURT:  All right.  Again, no opposition.  Motion

9  granted.

10         Thank you.

11         MR. BLANDER:  Thank you, Your Honor.

12         I will yield the podium to the Dentons team.

13         THE COURT:  Good morning, Counsel.

14         MR. BECK:  Good morning, Your Honor.  John Beck of

15  Dentons on behalf of the debtors and debtors-in-possession,

16  Your Honor.

17         I will be addressing the debtors' cash collateral

18  motion, which we filed on Tuesday at Docket Number 11.  Your

19  Honor, we also submitted red lines to Your Honor's chamber this

20  morning that detail changes that we've made after conversations

21  with a number of parties and also the U.S. Trustee's office.  I

22  think we have accepted and resolved most of the U.S. Trustee's

23  comments, except for a handful of issues, which I'll walk Your

24  Honor through, here in a minute.

25         The first, Your Honor, is Section 9, which is the

16

1   project contribution to the new Powin Project LLC of the IP.

2   The debtors have agreed to make that provision subject to the

3   final order so that it will not be sought in interim relief.

4   However, one caveat, Your Honor, and Mr. Zatz from White & Case

5   can speak to this if he'd like, but the pre-petition secured

6   lenders would like to go ahead and be able to perfect against

7   that entity, file UCC-1's, and anything else that they need to

8   perfect their liens against that entity.  But the actual IP

9   transfer to that entity would not happen until it is approved,

10  at the final order, Your Honor.

11        THE COURT:  All right.

12        MR. BECK:  Next, Your Honor, is -- it's really the

13  same issue that appears in both Sections 20 and 23.  Your

14  Honor, the U.S. Trustee had a number of comments that dealt

15  with the scope of the debtors' stipulations and whether or not

16  and to what extent they were binding on a Chapter 7 trustee.

17  We have not accepted the U.S. Trustee's language in total but

18  we have provided language that we believe addresses the same

19  issues, and that is we have extended the challenge period of

20  time to the earlier of 75 days from the interim order or 60

21  days from the time the committee is appointed.

22        And then, in addition, there is also a mechanism by

23  which if this case converts to Chapter 7, a Chapter 7 trustee

24  would get the later of 15 days from the Chapter 7 trustee's

25  appointment or the regularly scheduled challenge period if that

1  were further in time.

2         So that is our proposal to address the U.S.

3  Trustee's comments with regard to the challenge period.

4  However, we do think that it's important that the debtors'

5  stipulations are binding on its successors, including a

6  Chapter 7 trustee, subject to the challenge rights that are in

7  the DIP order.

8         Finally, Your Honor, is Section 7(b), which we

9  received comments from the U.S. Trustee's Office, as well as a

10 number of creditors, including a group of customers that filed

11 a limited objection this morning, I believe at Docket

12 Number 38.

13         THE COURT:  Licensees?

14         MR. BECK:  Yes, they are customers that have IP

15 escrows that the licenses are in the escrow accounts.

16         We have sought to address their objections with

17 language that I'll read to Your Honor that would go at the end

18 of section, it's now 10(b), I believe, but it will be 9(b) once

19 the project dropdown is removed or adjusted.  So, Your Honor,

20 that language is, "For the avoidance of doubt, if the

21 pre-petition liens are determined to be junior to any prior

22 permitted liens," which is a defined term in the document, "the

23 AP liens, or the adequate protection liens, shall also be

24 junior to such permitted prior liens to the same extent and the

25 same relative priority.  Furthermore, the adequate protection

18

1  liens shall not attach to any assets that are not or do not

2  become property of the debtors' estate."

3  And, Your Honor, I think the parties are on the line

4  so they can correct me if I'm wrong, but I believe that for the

5  interim order only, this language satisfies the customer

6  objectors represented by Mayer Brown and also satisfies Pulse

7  Clean Energy that gave us an informal comment in this regard.

8  It, however, does not, I think, they've been talking

9  about in the hall, right up until the moment I took the podium.

10  I think additional language is needed for Applied Surety

11  Underwriters who is here today and reserved the right to

12  cross-examine Mr. Uzzi.  So I don't know if we have a

13  resolution on that?  So I'm hoping that they have a resolution

14  in the hallway to address that point.

15  And finally, Your Honor, is the U.S. Trustee made

16  informal comments because the pre-petition secured lenders are

17  seeking on the interim order to have adequate protection liens

18  on proceeds of avoidance actions.  We think that that is

19  appropriate in this case, as Mr. Durrer alluded to.  The

20  lenders here really have been cooperative and we would not be

21  in this situation without their efforts to support this company

22  and provide liquidity at a very crucial time.  We think that it

23  is a fair trade-off for the risks that they are undertaking to

24  support the company at this time to provide them liens on those

25  avoidance action proceeds, even at the interim period, Your

1    Honor.

2          So with that, I'll cede the podium to Mr. Zatz, and

3    I'll address any questions or comments.

4          THE COURT:  All right.  Mr. Zatz, do you wish to

5    wait?  I mean, there are those raised hands, wish to comment or

6    object.  Do you want to address all, or do you want to --

7          MR. ZATZ:  I think, Your Honor, if it's all right,

8    I'd like to make some comments and then I'm happy to reappear

9    to address any additional objections --

10         THE COURT:  All right.

11         MR. ZATZ:  -- that debtors haven't already flagged.

12   But perhaps I can get ahead of them and help streamline things.

13         THE COURT:  Sure.

14         MR. ZATZ:  But first, I would like to make a few

15   introductory remarks, if I may.  Andrew Zatz from White & Case

16   on behalf of Certain Funds and Accounts Managed by KKR.  And

17   I'm joined by John Mairo of Gibbons as co-counsel.

18         KKR provided the entirety of a secured loan to Powin

19   in October 2024 with an overall commitment of $200 million.

20   They are thus referred to in the debtors' papers as the

21   pre-petition secured lenders.  The pre-petition agent, on

22   behalf of the pre-petition lenders, has all asset liens.

23   Approximately $25.6 million of principal amount is currently

24   outstanding under the facility.

25         On March 24, 2025, the pre-petition lenders called a

1 default and took control of blocked accounts.  After that, the

2 pre-petition lenders worked collaboratively with Powin to allow

3 the release of funds for ordinary course expenses, including

4 the payment of vendors and suppliers, and was negotiating the

5 terms of a potential forbearance with Powin and its equity

6 holders, which would have included a partial repayment of the

7 pre-petition lenders' loan.

8         Those negotiations broke down.  And as a result, on

9 April 25, 2025, the pre-petition lenders exercised their proxy

10 rights to appoint Gerard Uzzi as independent manager and swept

11 an amount of cash from the blocked accounts that the company

12 had stated was expendable.  Mr. Uzzi has no affiliation with

13 any of the pre-petition lenders.

14         Pre-petition lenders took this action specifically to

15 ensure that there was independent and experienced oversight and

16 to preserve the arm's-length relationship between themselves

17 and Powin.  Once Mr. Uzzi was appointed and got up to speed, a

18 number of things became clear.

19         First, the company's liquidity position was not as

20 stable as the company had previously claimed.  Second, it was

21 difficult for the company to get concessions from vendors,

22 suppliers, and customers as the company had already stretched

23 these third parties as far as possible, and Powin had serious

24 credibility issues.

25         And third, existing equity holders who still retained

21

1  their economic interests in Powin were not going to provide the

2  necessary capital to preserve the growing concern value of the

3  company.  In the face of these urgent problems, the

4  pre-petition lenders permitted sufficient cash to be

5  transferred from the blocked account to the company and lent

6  back $6.25 million to Powin.

7        At every turn, the pre-petition lenders have been a

8  supporter of Powin's business, going above and beyond what was

9  required of them.  There were numerous opportunities for the

10  pre-petition lenders to exercise rights and remedies, including

11  by sweeping significant additional amounts of cash.  Instead,

12  the pre-petition lenders refrained from taking such actions to

13  give Powin the best opportunity to continue its operations and

14  attempt to negotiate deals with customers and other third

15  parties.

16        Ultimately, it became clear that Powin needed a core

17  process to get to these deals in an organized fashion.  It is

18  the pre-petition lenders' sincere hope that Powin can sell

19  assets and create value out of the project co-entity in these

20  Chapter 11 cases.  Prior to the filing, the pre-petition

21  lenders entered into a forbearance and support agreement with

22  Powin, whereby the pre-petition lenders agreed not to exercise

23  rights in advance of filing.

24        The pre-petition lenders also successfully negotiated

25  with Powin on the terms of the consensual use of cash

1   collateral.  But the pre-petition lenders have no intention of

2   continuing to provide capital to Powin, nor do they want to own

3   the company.  The pre-petition lenders' goal is simply to be

4   repaid on their loan and hopefully give the company the freedom

5   to maximize value for other creditors.  We've worked

6   collaboratively with the debtors and their counsel on the

7   first-day motions and are supportive of all of them.

8           With respect to cash collateral in particular, as our

9   friends at Dentons have just mentioned, we spent the last 12 to

10  18 hours in conversations with them and the United States

11  Trustee through them to try to resolve a fairly comprehensive

12  market that we received on the cash collateral order from the

13  U.S. Trustee.  As was indicated, I think virtually all those

14  issues have been now resolved.

15          There is the issue of the liens on proceeds of

16  avoidance actions, and I will see if the U.S. Trustee wants to

17  press that objection in light of all the other concessions that

18  were made, and I think Dentons covered the issue well, so I'm

19  not going to expand on that for the time being.

20          On the issue of sureties and others who have raised

21  their hand looking for protective language, I think you heard

22  on the record the reservation that we are making, which I think

23  is fairly clear, but just to restate it in as clear terms as I

24  can put it.  For any diminution in value of our existing

25  security interest during the case, we are getting adequate

23

1  protection liens on all of the debtors' assets.  That's the

2  standard formulation that I think you'll see in every cash

3  collateral order.

4          We are not trying to have those adequate protection

5  liens prime liens that were ahead of our pre-petition liens,

6  nor are we trying to get liens on things that are not the

7  debtors' property, or will become the debtors' property.  I

8  think perhaps one thing that is still left to be resolved that

9  we're amenable to resolving is there's a term "permitted prior

10 liens" that's meant to address liens that may be senior, if any

11 exist, to the pre-petition lender's pre-petition liens.

12         That term, as it currently exists in the order,

13 refers back to a term that is in our loan agreement which is

14 not on file.  So I understand the concern.  We're amenable to

15 working out language that separates that term from the external

16 document.  The point is we're talking about valid, enforceable,

17 perfected liens that were senior to the pre-petition lenders'

18 liens as of the petition date.  That's my off-the-dome

19 description of what we're getting at, but we can find the right

20 legalese to get at the notion.

21         With that, Your Honor, I will cede the podium and

22 reserve the right to reappear to address any objections that

23 are raised.

24         THE COURT:  All right.  Thank you, Mr. Zatz.

25         Let me first turn to the U.S. Trustee, Mr. Sponder.

24

1           Good morning, again.

2           MR. SPONDER:  Good morning, again, Your Honor.  Jeff

3  Sponder from the Office of the United States Trustee.  Again, I

4  apologize if there's going to be any background noise.  I

5  unfortunately cannot help that.

6           So with respect to the cash collateral order, Your

7  Honor, Paragraph 7(b) was discussed.  And for that matter, let

8  me just start by saying that I do realize that a red line order

9  was submitted to the Court 7:00, 7:30'ish in the morning.  I

10 did try to review as much of it as I could.  I still need the

11 opportunity to review and decide whether or not revisions were

12 made that the United States Trustee requested.

13          As for Paragraph 7(b), Your Honor, Section 361(2), as

14 you know, allows for additional or replacement liens only to

15 the extent that such stay under 362 use, sale, lease, or grant

16 results in the decrease in the value of such entity's interest

17 in such property.  As such, we revised the language in

18 Paragraph 7(b) to reflect that the secured creditors are

19 receiving, and I quote, "valid, binding, continuing,

20 enforceable, fully perfected, non-avoidable replacement liens

21 to the extent the pre-petition secured parties have

22 pre-petition liens under Section 361(2) of the Bankruptcy Code,

23 all such liens and security interests, the adequate protection

24 liens.  To the extent cash collateral is used by the debtors,

25 to the same extent validity and priority and the debtors'

1  post-petition collateral as defined below, and proceeds thereof

2  that the pre-petition secured parties held in the debtors'

3  pre-petition collateral."

4         We believe that that is what the definition and what

5  adequate protection liens should be, and that's based on the

6  Code.  All the other language in there should be removed, Your

7  Honor.

8         As to Paragraph 20, which is the effect of

9  stipulations on third parties, the U.S. Trustee requested 60

10  calendar days from entry of the final order for parties-in-

11  interest other than any statutory committees, and 60 calendar

12  days for the statutory committee from the date the statutory

13  committee is appointed.

14        The U.S. Trustee will agree to the 75 days from

15  interim order for parties-in-interest and 60 days for the

16  committee from appointment, but will not agree that it's the

17  earlier of.  It should be 75 days then from interim for

18  purposes of parties-in-interest and 60 days for the committee.

19        Further with that, Your Honor, the U.S. Trustee

20  requested language that provided that basically provides this.

21  If prior to the end of the challenge period, the cases convert

22  to a Chapter 7 or a Chapter 11 trustee is appointed, then the

23  challenge period can be extended for the Chapter 7 trustee or

24  the Chapter 11 trustee by 45 days after their appointment or

25  such other time as the Court orders.

1        The U.S. Trustee believes that the lender is agreeing

2   to 15 days for a Chapter 7 trustee only.  We request the 45

3   days for both Chapter 7 trustee and Chapter 11 trustee and in

4   fact that was actually agreed to in either the CBRM order or

5   the Rite Aid order that we just did, Your Honor.

6        Moving on, the U.S. Trustee requests removal that

7   requires any motion filed with the Court seeking standing to

8   pursue a challenge, include a complaint.  The U.S. Trustee also

9   requested language that any trustee appointed or elected in

10  these cases shall, until the expiration of the challenge period

11  and thereafter for the duration of any adversary proceeding or

12  contested matter, be deemed to be a party other than the

13  debtors and shall not for purposes of the adversary proceeding

14  or contested matter be bound by the acknowledgments,

15  admissions, confirmations, and stipulations of the debtors in

16  this interim order.

17       The U.S. Trustee also requested language that the

18  filing of a motion seeking standing to file a challenge action

19  before the challenge period which attaches a proposed challenge

20  action shall extend the period with respect to that party until

21  two business days after the Court approves the standing motion.

22  I think that one may be included, Your Honor, and I can be

23  corrected if I'm wrong, in the in the latest version.

24       Last, with respect to the cash collateral order, Your

25  Honor, we requested language concerning the fact that some of

27

1  these debtors are Delaware limited liability companies and we

2  requested language about the ability of creditors to file

3  derivative suits on behalf of those limited liability

4  companies.  We've had that in several cases as well, but the

5  lender I don't believe agreed to include that.  So that's with

6  respect to -- oh, I'm sorry, with just respect to the

7  stipulations.

8           Next, Your Honor, is Paragraph 23, which is the

9  binding effect.  We just changed that large paragraph to say,

10  "The terms of this interim order shall be valid and binding

11  upon the debtors, all creditors of the debtors, and all

12  parties-in-interest from and after the entry of this interim

13  order by the Court."  That's the binding effect.  That should

14  be what's included.

15          Avoidance actions, Your Honor, those are typically

16  kept for the committee as you're aware.  The United States

17  Trustee objects to the order requesting the proceeds be granted

18  at the interim order without a committee having the opportunity

19  to review and possibly object.

20          And then, with respect to Paragraph 9, Your Honor,

21  that's the ProjectCo and what we've been talking about with

22  respect to the transfer of assets.  I understand that's going

23  to be revised and held over to the final hearing.

24          With respect to the UCCs at this time the United

25  States Trustee objects but, with that said, at the very least,

1    if the Court agrees to allow the UCCs to be filed, then

2    parties-in-interest, including the committee, should have the

3    ability to object and reserve their rights.

4                 Thank you Your Honor.

5                 THE COURT:  All right thank you Mr. Sponder.

6                 Let me turn to raised hands.  I'll go left to right

7    on my screen.

8                 Ms. Eisenberg.

9                 MS. EISENBERG:  Good morning, Your Honor.

10                THE COURT:  Good morning.

11                MS. EISENBERG:  Leah Eisenberg from Pashman Stein.

12   We are serving as local counsel for Leeward Renewable Energy,

13   Longroad Energy, and DTE Energy.  And I'd like to introduce you

14   to Joaquin C deBaca who is a partner with Mayer Brown.  A Pro

15   Hac motion has been filed and we respectfully request that he

16   be permitted to speak today.

17                THE COURT:  Sure.

18                MS. EISENBERG:  Thank you.

19                THE COURT:  Welcome Mr. C deBaca.

20                MR. C deBACA:  Good morning, Your Honor.

21                THE COURT:  Good morning.

22                MR. C deBACA:  Joaquin C deBaca from Mayer Brown on

23   behalf of Leeward Renewable Energy, Longroad, and DTE, as just

24   mentioned by my colleague Ms. Eisenberg.

25                Your Honor, I think there are two different issues

1  here.  My colleagues at White & Case and Dentons have been

2  speaking about adequate protection liens.  Our motion, or

3  rather our objection gets at something different than that.

4          THE COURT:  That was the 365(n) issues, correct?

5          MR. C deBACA:  Correct.  That's right.

6          So each of my clients has very broad licenses to

7  existing IP.  Those licenses arise under a variety of different

8  documents.  But really the heart of the issue is that, as we

9  set forth in our objection, under Section 365(n)(4), it is

10  mandatory that we shall have access to the IP, such that we get

11  everything we need to perform the contract and for those

12  licenses to be performed.

13          So I don't think it's quite appropriate to entertain

14  exactly the carve out that was mentioned by Mr. Beck that, in

15  particular, this is not really a lien priority issue.  This is

16  assurance that our interests in those IP licenses shall not be

17  impaired.  So we would respectfully request that the proviso,

18  as set forth in our objection, the proviso that gets entered in

19  connection with this order.

20          I would also mention that I think in respect of

21  adequate protection, there is also a question of, and I think

22  it's appropriate to reserve on this until the final hearing, as

23  was mentioned by Mr. Beck, the transfer of that IP to the IP

24  Newco implicates use under Section 363(e), and parties that

25  have an interest in the IP specifically, as a result of their

1    licenses, should have the ability to seek adequate protection.

2         I think that does implicate potentially some of the

3    lien priority issues, but it's not apparent to me right now

4    that the construct that we would think about for an interest in

5    cash is precisely the same construct that we should be using

6    for an interest in IP, particularly to the extent that IP is

7    held in an escrow.

8         So we reserve our rights on that.

9         THE COURT:  All right.  Thank you.

10        Mr. Sponder, I see your hand still raised.  I didn't

11   know if you needed to raise another issue.

12        MR. SPONDER:  I didn't, Your Honor.  I mistakenly did

13   not lower my hand, so I will do that now.

14        THE COURT:  All right.

15        MR. SPONDER:  Thank you, Your Honor.

16        THE COURT:  Ms. Yenamandra, nice to see you again.

17        MS. YENAMANDRA:  Good morning, Your Honor.  Aparna

18   Yenamandra from K&E, on -- I almost said on behalf of the

19   debtors --

20        THE COURT:  Nope.

21        MS. YENAMANDRA:  -- because that's what I normally

22   say to you.

23        THE COURT:  Not this time.

24        MS. YENAMANDRA:  Not this time.

25        On behalf of Trilantic, Your Honor, which is one of

1  the equity sponsors.

2         Your Honor, we don't have any objection to any of the

3  relief that's in front of Your Honor today.  We rise, in fact,

4  we're supportive of additional cash coming into the company,

5  and over the last couple months, we have been working for a

6  while constructively with the company and the lenders to try to

7  get some additional cash in the door.

8         I rise simply to say that there were parts of

9  Mr. Zatz's summary over the last couple months on the course of

10 negotiations that we don't agree with.  Ultimately, though,

11 none of that is really relevant for today and the relief that's

12 being entered.  So we will reserve our rights with respect to

13 those and address them in due course if and when they become

14 relevant.

15        But with that, Your Honor, we don't have any

16 objection to the remaining relief that's being sought today.

17        THE COURT:  All right.  Thank you.

18        Ms. Parlin, good morning.

19        Good morning.

20        MS. PARLIN:  Good morning.  Barbara Parlin, Holland &

21 Knight for Invenergy.

22        Our client has similar issues as were just raised in

23 the, not prior but two objections ago with respect to interest

24 in IP and IP escrows.  So I just simply reserve our rights as

25 well in the same way.

32

1          THE COURT:  All right.  Thank you.

2          Let me ask this question at this juncture.  I don't

3   see any more raised hands.

4          Before I address the cash collateral on an interim

5   basis, Ms. Tancredi, you indicated a desire to cross-examine.

6   I don't know if it was relative to the cash collateral.  Do you

7   want to address your concerns now?

8          MS. TANCREDI:  Yes, Your Honor.  And I only have a

9   few questions.  I am hopeful that we will be able to resolve

10  our issues in the hallway, but they're not resolved now.  And

11  so I fear that if I don't ask now, I will be deemed --

12         THE COURT:  Forever hold your peace.

13         MS. TANCREDI:  Exactly.

14         THE COURT:  All right.

15         Counsel?

16         MR. DURRER:  We can pause this, Your Honor, and go on

17  to the wage motion after cash management if that makes sense to

18  give the parties some more time.  Because I'm fully confident

19  that it won't get worked out, but I don't want to waste the

20  Court's time with testimony that becomes unnecessary.

21         THE COURT:  Well, that's fine.  Why don't we

22  continue?  You have my attention for the morning, so we'll get

23  back.

24         Mr. Abramowitz?

25         MR. ABRAMOWITZ:  Your Honor, I'd like to put a short

33

1    objection on the record that could be addressed so that at

2    least if there's going to be any delay or suspension of

3    proceedings, that could be addressed as well if I could just

4    have a moment.

5              THE COURT:  Yes, please.

6              MR. ABRAMOWITZ:  Yes, Arthur Abramowitz with Sherman

7    Silverstein representing Ace Engineering.  I would note, Your

8    Honor, that Ace Engineering is probably the largest unsecured

9    creditor in the case with a claim of over $100 million.

10             Again, I was just got involved in the case last

11   night, had an opportunity to review the cash collateral

12   application as well as the budget, and I would draw the Court's

13   attention to the following so that you can understand where I'm

14   going with this.

15             I would look at Docket 11, and in Paragraph 6 on

16   Page 14.  I'm sorry, it's Page 41 of 79.  It talks about the

17   limitations of use of cash collateral, and particularly, that

18   it does not allow payments that are not made in accordance with

19   the approved budget.  Going further on Page 42 of 79, it then

20   refers to adequate protection payments.

21             The adequate protection payments in this case are $4

22   million per week beginning June 13th on an outstanding debt

23   that was indicated to be about $25 million.  That's substantial

24   in terms of what will happen to the cash flow.  I then took a

25   look at the budget which was attached, and I believe that's

34

1  attached at Page 64 of 79.  And in looking at the budget, I did

2  not see the entry of the $4 million weekly payments that are

3  being made as cash collateral, you know for protection for cash

4  collateral.  So my question, or the objection is, if you look

5  at the impact of that on cash available, it's going to have a

6  substantial impact, to the point where it would almost be a

7  negative.  And I just would like to raise the question so that

8  it is addressed during the argument before any order is

9  entered.

10         I would say, number one, that the $4 million, in

11  light of the $25 million, is a very difficult situation and is

12  not illustrated in the six weeks cash flow model.  What's

13  interesting is that within that six week period, if money is

14  not being advanced, it appears that that $25 million debt will

15  be pretty much extinguished, which I think is indicative of

16  what the lender has indicated that it would like to probably

17  sell assets and liquidate.  But I think it's accelerating to

18  the point where it's going to leave the debtor cash strapped.

19         We'll reserve other questions that we have, but I

20  felt it was appropriate to bring this up to the Court at this

21  time.

22         THE COURT:  Thank you, Mr. Abramowitz.

23         MR. ABRAMOWITZ:  Thank you.

24         THE COURT:  I appreciate the input.

25         MR. BECK:  Your Honor, John Beck with Dentons on

1 behalf of the debtors.

2          THE COURT:  Yes.

3          MR. BECK:  I do want to address that point but I

4 think Mr. Durrer suggested that we move to cash management and

5 come back to cash collateral.

6          THE COURT:  All right.

7          MR. BECK:  I'm happy to do it however Your Honor

8 wants.

9          THE COURT:  Why don't we defer on that issue and

10 resolve the other matters that can be addressed more easily.

11          MR. BECK:  Okay, Your Honor.

12          So the debtors also filed a motion to approve

13 continuation of its current cash management system at Docket

14 Number 12, Your Honor.  By this motion, the debtors seek to

15 continue to use their existing cash management system and

16 related practices.  As the U.S. Trustee noted earlier on the

17 phone, we accepted and incorporated a number of comments to

18 that order and sent it to your chambers this morning and I

19 believe they are resolved on this issue.

20          Just for Your Honor's benefit, there are a lot of

21 accounts that are listed in the motion.  But really to distill

22 it down into the most important facts, is there is a AR control

23 account that KKR has a DACA on and has control over that

24 account, and that's where all the receivables from the various

25 customers come in.  And then, through that account, money is

36

1  sent to either the main operating account, also at HSBC, or to

2  fund payroll two days in advance of the payroll.  So that's

3  really the core of the cash management system and a lot of the

4  other accounts or legacy accounts that may have *de minimis*

5  monies in there but are not actively contributing to the cash

6  management system, Your Honor.

7        Unless Your Honor has any questions on the cash

8  management motion, we would ask that Your Honor grant the

9  motion.

10       THE COURT:  All right.  I see no objections, hear no

11  objections, motion granted.  Thank you.

12       MR. BECK:  Thank you, Your Honor.

13       MR. DOHERTY:  Good morning, Your Honor.  Casey

14  Doherty --

15       THE COURT:  Good morning.

16       MR. DOHERTY:  -- representing the debtors and with

17  Dentons.  I've had a Pro Hac application filed as Docket 49.

18  With Your Honor's permission, I'll honor, or I will argue the

19  wage motion --

20       THE COURT:  Yes.  Welcome.

21       MR. DOHERTY:  -- filed as Docket 7.

22       Thank you, Your Honor.

23       My partner, in his opening remarks, mentioned that

24  the employees here are our priority and retaining and

25  incentivizing them are a top priority in the case, and that the

37

1  debtors, as they noted in the wage motion, hope to develop and

2  file further retention and incentive programs.  But step one is

3  the wage motion, which have the same goals, which is to retain

4  and incentivize the remaining employees.

5        Employee motions are important in every case, but

6  here, it's especially important.  As noted in the motion in the

7  first-day declaration, the employees here represent less than

8  20 percent of the workforce from January 1st.  And to retain

9  and incentivize them, the debtor asks to continue the existing

10 compensation and benefits programs.

11       There's no objections on the docket to the motion

12 last I looked.  We've received comments from the United States

13 Trustee and the order is presented to Your Honor.  I'm happy to

14 go through what I believe are a couple of the substantive ones,

15 if Your Honor would wish.

16       THE COURT:  Yes, please.

17       MR. DOHERTY:  Sure.

18       In Paragraph 3 of the order, and I'll let the U.S.

19 Trustee counsel, of course if I mischaracterize it, speak up.

20 The United States Trustee provided for a proviso at the end

21 that says, "provided the debtors shall provide seven days

22 notice of any material changes to the employee compensation

23 benefits and any other programs described in the motion to the

24 U.S. Trustee and counsel to any statutory committees appointed

25 in the case."  We have no objection to that provision.

38

1          In Paragraph 4, the United States Trustee struck

2     language that the debtor could pay above the priority cap under

3     Section 507 if required by applicable law on an interim basis,

4     and kept it just for the authority of an order of this Court,

5     which we also have no objections to.

6          THE COURT:  All right.

7          MR. DOHERTY:  With that, Your Honor, unless you have

8     any other questions, we would ask that you grant Docket

9     Number 7, the wage motion.

10          THE COURT:  All right.  I have no further questions.

11     I see no objections.  I will mark the motion granted.  All of

12     these are ordered to be submitted.

13          Thank you.

14          MR. DOHERTY:  Thank you, Your Honor.

15          THE COURT:  I believe that brings us to the customer

16     program?

17          MR. DURRER:  Yes, the customer program, Your Honor.

18     Van Durrer, again, for the debtors at Dentons.

19          The customer motion.

20          THE COURT:  And there's also the insurance motion.  I

21     don't know.  That seems to be pretty rogue.

22          MR. DURRER:  Yeah, there was just out of order, Your

23     Honor, since you raised it.  On the insurance motion, the U.S.

24     Trustee had requested that, to the extent the debtors engage in

25     any new programs or materially modified programs, that we would

39

disclose that, and if necessary, seek additional relief.  That

comment is fine with us.  But otherwise, that motion is

relatively routine and has no objections.

THE COURT:  Then why don't we just address that now

and grant it.  I don't see any objections subject to inclusion

of that language.

MR. DURRER:  Thank you, Your Honor.

And then, that takes us to the last item, other than

the reserve cash collateral, is Docket Number 15, the debtors'

motion to implement the customer program on a final basis.

I do have a brief proffer, Your Honor, of Mitchner

Turnipseed, the banker from Huron for Powin, if I may present

that.

THE COURT:  Yes.

MR. DURRER:  All right.

If called as a witness, Mr. Turnipseed is qualified

to and will testify as follows.  He is a senior director at

Huron Transaction Advisory with over a decade of experience and

a master's of science from the University of Virginia McIntire

School of Commerce.

Mr. Turnipseed would testify that he was retained by

Powin in early May 2025 in connection with raising capital and

engaging in strategic transactions.  After an initial review,

(indiscernible) initially recommended that the company take

advantage of Chapter 11 to stabilize the company and work

1 directly with customers who stood to benefit substantially and

2 immediately from Powin remaining in business, particularly with

3 respect to their long-term service agreement business, a

4 servicing element where Powin provides services to customers

5 who have already had their battery systems installed at their

6 sites.

7        Mr. Turnipseed would testify he worked closely with

8 management to develop a working business model with three major

9 drivers for that business.  One, a reduced suite of service

10 offerings in a new services company.  Two, increased pricing to

11 support that business line.  And, three, customer commitments

12 to provide funding through upfront and periodic service

13 payments.

14        Mr. Turnipseed would testify that an important

15 element of the feedback that he received from customers

16 directly was that they wanted clear delineation between legacy

17 Powin, on the one hand and its problems, and the new services

18 company.  That is why the debtors determined to form Powin

19 Project LLC for this effort.

20        In fact, the cash collateral agreement that Powin was

21 successful in negotiating with the secured creditors provides

22 that Powin Project is not required to make adequate protection

23 payments to the secured creditors during the initial term of

24 the cash collateral order.

25        Mr. Turnipseed would further testify that customers

1  obtain an enormous amount of vital data regarding their

2  projects and the Powin battery system performance and operation

3  from Powin's cloud-based proprietary technology.  Powin's

4  personnel operate remote operating center and provide around

5  the clock call center support in the event of disruptions or

6  other technical needs.  Powin also provides onsite services for

7  the routine and non-routine repair and maintenance of the

8  battery systems.

9      In the absence of Powin providing these functions,

10  Mr. Turnipseed would testify that customers effectively have no

11  alternative and will suffer enormous harm increasing potential

12  claims against the debtors' estates.

13      Mr. Turnipseed would testify that successful launch

14  of this customer program will provide a platform on which Powin

15  can develop a sales process as a going concern.  Failure to

16  timely launch the program will likely force a shift to a

17  pursuit of a liquidating transaction, which will have a severe

18  negative impact on value.

19      Finally, Mr. Turnipseed would testify that it's

20  important that Powin make a firm commitment to customers for

21  this program on a final basis.  Any delay would cause

22  irreparable loss of value to legacy Powin creditors in general

23  and cause customers to become creditors more specifically.

24      THE COURT:  All right.  The Court will accept the

25  proffer.  The Court will provide an opportunity to any counsel

1  or parties-in-interest wish the opportunity to cross-examine

2  Mr. Turnipseed.

3                    (No audible response)

4          THE COURT:  All right.  Hearing and seeing no one, I

5  appreciate the proffer.

6          MR. DURRER:  My understanding is that Mr. Sponder may

7  have comments with respect to this motion, Your Honor.

8          THE COURT:  Yes.

9          MR. DURRER:  I should note that we did agree with the

10  United States Trustee, as has already been stated in connection

11  with cash collateral, that transfers of assets to Powin Project

12  LLC will not occur pending, hopefully, final approval of the

13  Cash Collateral Award.

14          THE COURT:  That's important to the Court.  I

15  appreciate that.  I do need to have in place a structure to

16  safeguard and to ensure the transfer is subject to review by a

17  committee, that there are protections for the estate, just like

18  the cash collateral that we've been discussing.

19          Mr. Sponder, I see your hand raised, again.

20          Thank you.

21          MR. SPONDER:  This time, I lowered it again, Your

22  Honor.  Thank you.

23          With respect to the customer program, the U.S.

24  Trustee understands the debtors' need for the approval of the

25  customer programs.  However, Your Honor, when weighing this

43

1 against the rights of a committee to respond and/or object to

2 the order, I should say -- let me start over.

3         However, when weighing this against the rights of a

4 committee to respond and/or object, the order should be

5 interim, especially in light of the fact that this is day three

6 of these cases.

7         With that said, Your Honor, at the very least, the

8 U.S. Trustee requests that the order allow the committee the

9 ability to raise any issues with the motion after the order is

10 entered.

11         Thank you, Your Honor.

12         THE COURT:  Thank you, Mr. Sponder.

13         Counsel.

14         MR. DURRER:  Yeah, Van Durrer from Dentons for the

15 Debtor, Your Honor.

16         We're amenable to that in concept.  The U.S.

17 Trustee's Office had proposed language consistent with Local

18 Rule 9013(5)(e), which wouldn't necessarily include any

19 committee.  If Mr. Sponder would like us to add, "including,

20 but not limited to, the committee," we're happy to do that.

21         THE COURT:  All right.

22         I think those safeguards would satisfy the Court that

23 there can be eyes on this transaction, but the Court recognizes

24 from what it's heard and what it's read the importance of

25 giving the customers here, which will be the lifeblood of going

44

1  forward and revenue stream going forward, the confidence that

2  they're not going to be making an investment by making payments

3  and then be the target.

4        So I think it makes sense.  I will grant the motion

5  subject to the protections of the language that can be agreed

6  upon to preserve the U.S. Trustee's concerns with the committee

7  having an opportunity to weigh in.

8        MR. DURRER:  Thank you, Your Honor.

9        And with that, perhaps, Your Honor, we take a 15

10 minute recess.

11       THE COURT:  Well, I was going to suggest this.

12       And what I've just said as to the customer program

13 carries forward those same general terms with cash collateral.

14 Obviously, the Court needs to be assured that there can be eyes

15 on the transaction, or at least an avenue in going forward.

16       Generally, this Court does not have issues with

17 allowing, for instance, the lenders to perfect their liens even

18 on an interim basis.  To this extent, even the liens on

19 avoidance actions on an interim basis limited obviously to a

20 diminution in collateral.  It's not just for all purposes.  On

21 an interim basis, it would be a diminution in collateral.

22       The problem, of course, is the concern of the $4

23 million payment.  There's not going to be a diminution in value

24 if you have a payment.  But if you have a payment that's going

25 to place this debtor in default right away, I don't know what

1  we've accomplished.

2          As to the other language, the Court's prepared to

3  make final rulings if you all can't come to an agreement on

4  language or provisions.  I'm inclined to obviously approve an

5  interim collateral order, an arrangement that will facilitate

6  going forward with the intentions of right-tracking this

7  debtor.

8          I can, if presented with this is what we agree on,

9  this is where we just can't agree and throw it to the Court,

10 I'll make the call.  See what you can.

11         Why don't we take -- I have hearings that start at

12 11:30, so how about we come back at ten to 11:00.  Give you

13 roughly 25 minutes or so?

14         MR. DURRER:  I would say quarter of, Your Honor.

15         THE COURT:  Quarter of?

16         Well, I'll put more -- well, if you say quarter of,

17 it means ten of anyway.

18         So, why don't we come back at a quarter of?

19         MR. DURRER:  Thank you, Your Honor.

20         THE COURT:  All right.  Thank you.

21         So, we'll be adjourned until 10:45.

22         Thank you.

23        (Recess at 10:26 a.m./Reconvened at 10:55 a.m.)

24         THE COURT:  All right.  As they say in production,

25 we're back.

46

1           MR. DURRER:  Van Durrer with Dentons for the debtors,

2    Your Honor.  Thanks for the break.  I think it was productive.

3           On cash collateral, I'm going to yield the podium in

4    a moment to Mr. Beck, but he and Mr. Zatz were working with

5    Mr. Sponder while I was talking to Ms. Tancredi.  So I think I

6    have a resolution with Ms. Tancredi that I'll recite and she

7    will correct me if I mess it up.

8           THE COURT:  All right.

9           MR. DURRER:  Ms. Tancredi's clients filed objections

10   at Docket Number 47 on behalf of a group of surety bond

11   providers.  What we are stipulating to is as follows.

12          One, the cash collateral budget does not contain any

13   authorization or expected use to pay any customs duties that

14   are the subject of the bonds.

15          Number two, the budget does not contain any line item

16   or authorization to pay premiums to Ms. Tancredi's clients.

17   You might expect that might form the basis for a stay relief

18   motion on her client's behalf.  She intends to file that

19   promptly, and the debtors have agreed to an expedited

20   scheduling of that.

21          We haven't discussed the specific schedule.  Our aim

22   is to present you with a stipulated order on scheduling that.

23   Obviously, subject to Your Honor's availability, but we're

24   trying to be respectful of people's time and resources.  But I

25   believe that that should resolve that docket item.

1              THE COURT:  All right.

2              Ms. Tancredi?

3              MS. TANCREDI:  Yes.  That stipulation does as well as

4    language that was forwarded to me by counsel for KKR, which I

5    can read into the record, or do you want to read it into the

6    record.

7              MR. DURRER:  Be my guest.

8              MS. TANCREDI:  Okay.

9              "The adequate protection liens are subject and

10   subordinate only to those valid, enforceable, and non-avoidable

11   liens that are, one, in existence on the petition date; two,

12   either perfected as of the petition date or perfected

13   subsequent to the petition date solely to the extent permitted

14   by Section 546(b) of the Bankruptcy Code; and, three, senior in

15   priority to the pre-petition liens as of the petition date in

16   accordance with applicable law, such liens (indiscernible)

17   permitted prior liens.

18             THE COURT:  Okay.

19             MS. TANCREDI:  Thank you.

20             THE COURT:  All right.  Thank you.

21             Thank you, Counsel.

22             MR. BECK:  Your Honor, John Beck of Dentons on behalf

23   of the debtors, again.

24             As Mr. Durrer alluded to, we spent the break with

25   Mr. Zatz and the U.S. Trustee trying to get through a number of

48

1   issues.  I think we have resolved some of them, which I will

2   articulate for Your Honor.  Some I'm not sure we have resolved.

3           First of all, for the challenge period timing, what

4   we would propose is to get rid of all the earliers and laters,

5   etcetera, and it would simply be this construct where non-

6   committee challenges have 75 days.  The committee will have 60

7   days from its appointment.  And then, if a Chapter 7 trustee is

8   appointed prior to the expiration of the 75 challenge, it would

9   get 15 days flat.  We do not agree to any extension of the

10  challenge period for a Chapter 11 trustee.

11          Second, Your Honor, is the debtors can agree to add

12  language preserving the Delaware limited liability company

13  defenses that the U.S. Trustee requested.  So we will put that

14  in the turn of the order.

15          Next, Your Honor, we will add language to preserve

16  365(n) rights for the parties that were objecting on that

17  basis.

18          And then, finally, Your Honor, with respect to 7(b),

19  which I don't think we are agreed on on the language, we think

20  that the language as proposed addresses the concerns that

21  Mr. Sponder is raising.  And basically, the crux of the issue

22  is, I think we agree that to the extent that the pre-petition

23  secured parties did not have a lien or had a certain priority

24  prior to the petition date, that the adequate protection liens

25  would be to the same extent and the same relative priority as

49

1  those liens.

2       I think the issue is that the Trustee has preferred

3  language, which we just frankly don't understand, and we think

4  that our language is limited to the diminution in value as it

5  has to be.  So to the extent that the liens are invalidated or

6  something happens to where the actual underlying lien is cut

7  out, then by necessity, there's no diminution in value because

8  they never had a lien in the first place.

9       And so we think that the language that is already in

10 there, subject to the things we've read on the record today,

11 adequately addresses the U.S. Trustee's concerns.  I think he

12 has different language and we just aren't prepared to agree to

13 that, Your Honor.

14       THE COURT:  All right.  What about other issues that

15 were raised as far as the liens on avoidance claims, and the

16 payment, I guess what Mr. Abramowitz had raised, the payment of

17 the fees started to KKR.

18       MR. BECK:  Yes, Your Honor.

19       So on the avoidance actions, Your Honor, and Mr. Zatz

20 can speak to this, the pre-petition secured lenders do want

21 liens on proceeds avoidance actions at the interim period.

22 They do believe that, given the nature of the debtors'

23 liquidity situation and what they've been asked to do to

24 support this company warrants it in this circumstance.

25       With respect to the payments, the debtors would not

50

1  agree to this if we didn't think that we would be able to

2  either pay for it or that we have the trust of our lenders who

3  have worked constructively with us so far to waive that in

4  reasonable circumstances as they are required to do.

5       With respect to the budget, there are a lot of timing

6  issues that move around with the budget, and so I can

7  understand how it looks.  The debtors actually received a large

8  receivable last night at 5.6 million that's not reflected in

9  the budget.  So the debtors are confident that they will be

10  able to pay that payment.

11       And it really makes sense, Your Honor, because the

12  pre-petition secured lenders are allowing us to use their cash

13  collateral and don't want to be stuck in a long drawn-out

14  process, and so they want to see progress with the customer

15  program that we're trying to implement and various things and

16  they don't want to get paid down.  But if we are making

17  progress, then they are willing to work with us, and that's

18  really what the construct is meant to address.

19       THE COURT:  All right.  Thank you.

20       Mr. Abramowitz.

21       MR. ABRAMOWITZ:  Yes.

22       I'm not going to repeat the objection, but I would

23  note two items.

24       One, the cash flow is for six weeks, which to me is a

25  bit troublesome because I know in the long run we're all dead,

but the question is what is the long run?  Normally, when I see these, it's usually 60 to 90 days.  I don't know that it's a coincidence that it's a six-week period and that's about the extent of the $4 million that would satisfy the debt.  So that I believe that the cash flow, the projection should be extended if possible to reflect what the debtor anticipates its ability to sustain itself for the next 60 to 90 days.  I don't think that's unreasonable.

I also don't think it's unreasonable that we have to take into effect what the impact will be of that $4 million payment per week on available cash.  If you look at the projections, while it may be that they've received X millions of dollars last night, I'd like to see that and I'd like to see what the impact is because I'm uncertain where you are in other weeks where you have cash flow being a negative.

Again, I understand that these are estimates.  But I think that they should be accurate.  We know one thing, while we can't tell about what the receivables may be, we know that there's going to be a $4 million payment per week, so that should be reflected in the budgets.

Thank you.

THE COURT:  Thank you.

All right.  Mr. Zatz.

MR. ZATZ:  Yes.  Thank you, Your Honor.

I did want to make a few additional comments if I

52

1  may.  I (indiscernible) the objection.  Again, Andrew Zatz from

2  White & Case on behalf of KKR as the pre-petition lender.

3          Mr. Beck accurately stated the state of play in terms

4  of what we're willing to do in response to the objections that

5  have been raised.  But I want to add some additional color.

6          On the Paragraph 7(b) issue, it feels like we're just

7  in a jam on drafting.  But, again, the key from our perspective

8  is that it all ties to diminution in value.  If there is a

9  diminution in value of our pre-petition liens, to the extent

10 they are deemed to be valid during this interim period, it

11 creates adequate protection liens on all the debtors' assets.

12 That's my layman's view.  And if Your Honor sees anything in

13 the drafting there that seems to state otherwise, I'm happy to

14 address it, but I think it's clear.

15         On liens on avoidance actions, this is I think

16 Mr. Beck accurately stated.  This is important to our clients

17 under the circumstances.  I know we don't have a committee yet

18 and I know that committees have a tendency to point at this as

19 something to argue about or perhaps trade.  At the end of the

20 day, this is an interim order.

21         There would have to be a diminution in value during

22 this interim period taking into account adequate protection

23 payments that we receive to extend the liens to those avoidance

24 actions.  I'm not saying that that's an unlikely occurrence,

25 but I am saying it limits, to some degree, what we're asking

53

1  for today.  And if a committee gets appointed between now and

2  the second-day hearing and wants to revisit this issue on a go-

3  forward basis beyond the interim period, we can address that.

4         But we think, ultimately, the ask is extremely fair.

5  These are unencumbered assets like any other.  I know

6  committees want to find unencumbered assets, but we need real

7  adequate protection here.  We have all asset liens.  We need

8  something beyond our existing package to look to.

9         On the adequate protection payments, this is a unique

10 case and it's tricky.  The customer programs order that Your

11 Honor indicated you're inclined to enter is key to the success

12 of these cases and how the next few weeks are going to

13 progress.  The budget shows my understanding, and it's the

14 debtors' budget, not ours.

15        But my understanding is it shows expected receivables

16 that they intend to collect compared to the operating expenses

17 of the business.  But there is very much a need to get to deals

18 with customers here.  Powin needs to engage with customers

19 pretty much immediately, and I think they already are well in

20 the process of doing so, on the customer programs framework to

21 get to deals, to get customers what they need to complete

22 projects, and to get the services that the company offers and

23 to bring revenue into the company.

24        If that can't be achieved, then these cases are

25 simply not going to be a success.  And I can't promise

54

1  Mr. Abramowitz or anyone else that there's going to be a great

2  end-game here or that there's going to be a 13-week budget.

3  That's the ambition that we're all playing into, and we really

4  hope to get engagement and for it to be a success.  But there

5  simply is no way to promise that everything is going to land

6  the way we want it to.  It's just the nature of the kind of

7  situation we find ourselves in.

8         But the adequate protection payments are crucial to

9  our clients and are the fair quid-pro-quo for what they're

10 allowing the rest of the cash to be used for here.

11        THE COURT:  All right.  Thank you, Mr. Zatz.

12        MR. ZATZ:  Thank you, Your Honor.

13        THE COURT:  I am looking at, I guess, a final hearing

14 date of July 7th.  It's a Monday.  I will be traveling, so I

15 will be doing this -- it will be remote.  If it turns out that

16 an evidentiary hearing is required, we're going to push it a

17 week to the 14th.  But to the extent we can do it remotely,

18 even if testimony is limited, I prefer that route.  I think it

19 makes sense for this case and this party.

20        So fixing a final hearing and a second-day hearing on

21 anything that was an interim to July 7th puts us from now about

22 three and a half weeks.  Today is the 12th, so it takes us past

23 the July 4th holiday.

24        I will approve use of cash, including the adequate

25 protection payments, but no more than two payments.  I'll let

55

1  the parties decide how to spread it out.  I think that will --

2  and when I -- and -- well, I'm sorry.

3          Mr. Sponder, I do see your hand.  I just saw that.

4  You wish to be heard?

5          MR. SPONDER:  I'm sorry, Your Honor.  Jeff Sponder

6  from the Office of the United States Trustee.

7          I was going to chime in also about the $4 million

8  payments that Mr. Abramowitz raised and neglected to do so and

9  apologize for that.

10          There is also a $1.5 million consent fee that's being

11  paid to the lenders.  So there are a lot of payments being made

12  here.  What I want to make clear and understood, Your Honor, is

13  that with respect to Paragraph 7(b) and adequate protection,

14  that the lender is only receiving a replacement lien as

15  adequate protection.  That's really all I'm asking for.

16          If that's what's being done here, then great.  That's

17  what the language provides, but it has more words than simply

18  the lender is receiving a replacement lien.

19          As to the challenge period, Your Honor, we are fine

20  again with the 75 days for all parties-in-interest other than

21  the committee from date of the interim and 60 days from

22  appointment for the committee, but we still believe a

23  Chapter 11 trustee should be included, as well as a Chapter 7

24  trustee and that it should be 45 days instead of 15 days to

25  allow those independent fiduciaries to get up to speed.

1              Avoidance actions, Your Honor, as I'm sure you know

2    we always raise it, it should be left for the committee or at

3    least Your Honor to reserve the right to the committee at the

4    final hearing.  That's all I have.

5              Thank you, Your Honor.

6              THE COURT:  All right.  Thank you, Mr. Sponder.

7              Mr. C deBaca.

8              MR. C deBACA:  Yes.  Thank you, Your Honor.

9              My clients don't have an issue with any of what was

10   just discussed in respect of adequate protection payments or

11   liens.  However, I did want to just take a moment to pick back

12   up on my earlier comments about Section 363(b), in particular,

13   and describe how I think that changes the landscape with

14   respect to IP in particular, that, I'm not lodging a request or

15   an objection right now.  However, I do think it's important to

16   note that adequate protection can take the form of more than

17   just liens, payments, and in particular, with respect to IP,

18   that protection may need to take the form of having my clients

19   get access to necessary IP to be able to protect their

20   projects.

21             So, for example, to the extent they need passwords to

22   get administrative access to critical software to be able to

23   run their projects, we may need to, to the extent we can't

24   consensually agree on a protocol to get that type of

25   information, we may need to revisit this issue in the broader

1  context of the final hearing.

2          THE COURT:  Fair enough.  Rights are reserved to

3  raise these issues as part of the final hearing.

4          Ms. Parlin.

5          MS. PARLIN:  I'm just going to piggyback on what my

6  learned colleague just said for our client is the same issues.

7  We are very concerned about access to the IP and access to the

8  process.  And I understand that my client is in the process of

9  talking with the debtors about the very type of new customer

10 program agreement as Mr. Durrer explained to the Court would be

11 crucial to the debtors' success going forward.

12         But, in any case, our client certainly has 365(n)

13 rights for the IP and the information and needs to preserve all

14 of its rights.  So, again, we reserve all of our rights on

15 behalf of Invenergy.

16         THE COURT:  Fair enough.  Court recognizes the

17 reservation of rights.  Thank you.

18         All right.  So as I indicated, I'm going to approve

19 cash collateral.  I'm going to authorize the payment of the

20 adequate protection fee of only two payments over that period

21 of time pending final hearing.  That should give the committee

22 that gets appointed an opportunity to vet the transaction.

23         The adequate protection liens that are being

24 proposed, I think we all agree on the concept.  They are to

25 serve as a form of adequate protection, the additional liens,

58

1   even on the avoidance actions.

2          If we're having $8 million in payments, I seriously

3   doubt we're going to have a diminution in value of the

4   collateral more than that amount in three and a half weeks.  If

5   we do, we're all in trouble in this case.

6          So I don't believe it's threatening the position of

7   the estate at this point to give the liens on the avoidance

8   actions on an interim basis only.  All bets are off as far as a

9   final subject to parties coming in and making their case.

10         As to the language on Paragraph 7, I think we're

11  there.  What I would ask is to submit the form of order with

12  the language you agree upon, highlight for me what's not in

13  agreement, and I'll see if I can massage it or choose one or

14  the other.

15         I believe rights are being preserved with respect to

16  the 365(n) issue, as well as the issues raised as far as

17  adequate protection for those licensees.

18         Have I missed anything, counsel?

19         MR. DURRER:  I'm sorry, Your Honor.  I'm loathe to

20  mess with success here, but I'd want to make sure when we go

21  back to negotiate the COC order with everyone that we're on the

22  same page, because I think there was one issue that fell by the

23  wayside.  It's this paragraph near the end about the binding

24  effect of the order.

25         We have competing language with the U.S. Trustee.  I

59

1  don't think there's a huge difference, substantively.  I think

2  the key from our perspective is we are counting on the active

3  protection package here, and that includes in the hopefully

4  unlikely instance that the case converts.  So we felt it was

5  important to make the mention of the successor cases in that

6  paragraph.

7           We'll try if we can find a resolution with the U.S.

8  Trustee.  If not, we'll do like you said, competing language

9  for you to work with.

10          THE COURT:  That's fine.

11          I recognize.  Again, I don't see on an interim basis

12 a Chapter 11 trustee being an issue in three and a half weeks.

13 So I don't think we have to stumble over that.

14          MR. DURRER:  Okay.  Thank you, Your Honor.

15          THE COURT:  Thank you.

16          UNIDENTIFIED SPEAKER:  Just a related issue, Your

17 Honor.  I think we need your guidance on the challenge period

18 duration.

19          THE COURT:  I thought there was a consensus.

20          It's 75 days for all parties.

21          UNIDENTIFIED SPEAKER:  I don't think they've agreed

22 on the 15 days for the Chapter 7 trustee or the exclusion of

23 the Chapter 11 trustee.

24          THE COURT:  I'm comfortable just allowing the 15

25 days.  I don't think 15 or 30 days is going to make a

60

1   difference with a Chapter 7 trustee at that point.  So they'll

2   get their act together quickly if need be.  And, again, I don't

3   see, I'm not going to require the inclusion of a Chapter 11

4   trustee.  I just don't think it's going to be relevant.

5          Counsel?

6          MR. DURRER:  Van Durrer of Dentons for the debtors,

7   Your Honor.

8          I think that's all we needed today.  We appreciate

9   the Court's time and going over time.

10         Just as a matter of housekeeping, if possible, if we

11  could move those suggested hearing dates to the Tuesday, just I

12  think it'll enhance our opportunity to present you with a

13  cleaner consensual package as opposed to the Monday.  So the

14  8th and the 15th, as opposed to the 7th and the 14th.

15         And as promised, I will work with Ms. Tancredi to

16  decide whether we even need a motion for lift stay.  But we

17  will, as I said, agree to expedite that.  So probably the last

18  week of June, if we do have to have a hearing, and we're fine

19  with that being virtual, if Ms. Tancredi is.

20         THE COURT:  All right.  Ms. Tancredi, check with

21  chambers.  It gets tight timeframe.

22         I don't have an issue if the parties are comfortable

23  with being the, nobody wants to start things on a Monday, but

24  the 8th and the 15th, that works for us.

25         All right.

61

1              MS. TANCREDI:  Thank you.

2              THE COURT:  All right.

3              And I thank you all.  I don't see any more raised

4    hands remotely.  So I appreciate all of the counsel --

5              MR. DURRER:  I apologize.  One more thing, Your

6    Honor.  Van Duren for the debtors.

7              We're working closely with the U.S. Trustee on

8    retention applications.  We would seek to make those *nunc pro*

9    *tunc*, there's been quite a bit of activity.  I'm just not

10   asking you to comment on that, Your Honor, but I wanted

11   Mr. Sponder to be aware.  I think he is, but I would be remiss

12   for all the professionals on my side of the aisle if I didn't

13   comment on that.

14             THE COURT:  That's fair enough.  I think we have a

15   significant practice here in Jersey of accommodating.

16             Thank you.

17             MR. DURRER:  Thank you, Your Honor.

18             THE COURT:  All right.

19             Thank you, folks.  I appreciate all of your time and

20   efforts.

21             THE CLERK:  A few more hands we have.

22             We have a few more hands.  Oh.  I tried.

23                        (Laughter)

24             THE COURT:  Mr. Sponder.

25                   (No audible response)

1          THE COURT:  Mr. Sponder, are you there?

2          MR. SPONDER:  Yes, Your Honor.  Can you hear me now?

3          THE COURT:  I can.  Thank you.

4          MR. SPONDER:  Great.

5          Your Honor, if we're going to do July 8th, I have a

6    341(a) meeting at 10:00 a.m., so I was hopeful that possibly we

7    could start at 11:30, unless that's a problem for everyone

8    else.  If it is, then I can hand off something, but it's one of

9    the larger cases, as well.

10          THE COURT:  It works for the Court as well.  11:30 is

11   fine.

12          Thank you.

13          MR. SPONDER:  Thank you, Your Honor.

14          THE COURT:  You're welcome.

15          Mr. Oswald.  Good morning, still.

16          MR. OSWALD:  Good morning, Your Honor.  Good to see

17   you.

18          THE COURT:  Yes.

19          MR. OSWALD:  I was just going to ask for that clarity

20   time of the hearing.  I got the two dates, but thank you,

21   11:30.

22          THE COURT:  11:30.  And, oh, let me also include that

23   those are final hearings.  Any opposition to the final hearing,

24   let's have close of business, July 1st.  All right?

25          MR. OSWALD:  Thank you.

63

1          THE COURT:  And, for all your benefit, we consider

2    close of business to be 4:30 when the clerk's office closes up.

3    I know it changes for the real world.

4          All right.  Thank you.

5          Thank you, folks.  Take care.

6          MR. BECK:  Thank you, Your Honor.

7              (Proceedings concluded at 11:20 a.m.)

8                        * * * * *


**C E R T I F I C A T I O N**

          I, Karen K. Watson, court-approved transcriber,

hereby certify that the foregoing is a correct transcript from

the official electronic sound recording of the proceedings in

the above-entitled matter, and to the best of my ability.


/s/ Karen Watson                    DATE:  June 13, 2025
KAREN WATSON, AAERT CET-1039

J&J COURT TRANSCRIBERS, INC.

## **<u>Exhibit 4</u>**

(Declaration of Gerard Uzzi in Support of Emergency First Day Motions)

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (*pro hac vice* forthcoming)
Sarah M. Schrag (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* forthcoming)
Amanda C. Glaubach (*pro hac vice*
forthcoming)
Eitan Blander (*pro hac vice* forthcoming)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
            aglaubach@teamtogut.com
            eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Joint Administration Requested) |

## DECLARATION OF GERARD UZZI IN SUPPORT OF
## EMERGENCY FIRST DAY MOTIONS OF THE DEBTORS

I, Gerard Uzzi, hereby state and declare as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.


2516137250610000000000013

1.  I am the Chief Restructuring Officer (the "CRO") of Powin, LLC ("Powin"). I was appointed as CRO of Powin and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors") effective on June 9, 2025.

2.  I am also a Managing Partner and Founder of CBMN Advisors LLC d/b/a Uzzi & Lall ("Uzzi & Lall"). I have extensive experience advising companies, boards of directors, senior management, creditors, equity holders, and investors in stressed and distressed situations, including chapter 11, out-of-court work outs, and rescue financings across industries and jurisdictions. I also serve in a number of fiduciary capacities, including presently as the Chairman of the Celsius Litigation Oversight Committee.

3.  Prior to co-founding Uzzi & Lall, I was a senior restructuring partner at Milbank LLP and White & Case LLP for over 18 years in the aggregate. During that time, I was personally involved in senior roles in some of the nation's largest and most complex chapter 11 cases, including Lehman Brothers, Washington Mutual, American Airlines, Rescap, Charter Communications, Mirant, Adelphia Communications, Purdue Pharma, and ZAIS. I have been recognized for my work in Chambers, Euromoney's IFLR, The Legal 500, and Expert Guides as one of the World's Leading Insolvency and Restructuring Professionals.

4.  On June 9, 2025 (the "Petition Date"),[2] Powin and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). I am knowledgeable and familiar with the Debtors' day-to-day operations, business and financial affairs, and the circumstances leading to the commencement of these chapter 11 cases (the "Chapter 11 Cases").

5.  Except as otherwise indicated herein, this declaration (the "Declaration") is based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors or the Debtors' advisors, my opinion based upon my experience,

---

[2] Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the remaining Debtors were filed shortly thereafter on June 10, 2025.

knowledge, and information concerning the Debtors' operations and this industry. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

6.       I make this Declaration for the purpose of apprising the Court and parties in interest of the circumstances that compelled the commencement of these Chapter 11 Cases, in support of the First Day Motions (as defined below), and to articulate the Debtors' goals in these Chapter 11 Cases.

7.       To enable the Debtors to minimize the adverse effects of the commencement of these Chapter 11 Cases on their business and its going concern value, the Debtors have requested various types of relief in a number of applications and motions (each a "First Day Motion," and, collectively, the "First Day Motions"). The First Day Motions seek relief intended to maintain the Debtors' business operations for their going concern value and to otherwise preserve value for the Debtors, its stakeholders, and parties in interest. Each First Day Motion is crucial to the Debtors' efforts. Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant First Day Motion.

8.       Section I is an overview of the Debtors' goals in these Chapter 11 Cases. Section II provides an overview of the Debtors' business and organizational structure. Section III describes the circumstances that compelled the commencement of the Chapter 11 Cases. Section IV describes the Debtors' capital structure. Section V provides a summary of the First Day Pleadings and factual bases for the relief requested therein.

## I.    OVERVIEW

9.       Debtor Powin, a Delaware limited liability corporation, and its affiliates are collectively an energy storage integrator based in Portland, Oregon, and with offices around the world in Vietnam, China, Canada, Australia, and Spain. As one of the leading global energy platform providers, Powin and its affiliates are at the forefront of the clean energy revolution. Powin focuses on advancing the next frontier of energy by ensuring access to clean, reliable, resilient, and affordable power through cutting-edge technology. The Debtors' business model

US_ACTIVE\130481403

targets innovations in energy storage, which are essential to the planet's transition to a sustainable, carbon-free world.

10.     Before the filing of these Chapter 11 Cases, as a result of several factors described further below, the Debtors experienced challenges leading to financial constraints that required engagement with their Prepetition Lenders (defined below) and other parties in interest on an appropriate path forward for the Debtors' business.

11.     As explained in more detail in Sections II and IV below, on March 24, 2025, the Prepetition Agent (defined below) and the Debtors' lenders party to the Prepetition Loan Documents (the "Prepetition Lenders," and together with the Prepetition Agent, the "Prepetition Secured Parties") declared payment and covenants defaults and demanded payment in full of the Debtors' Prepetition Secured Debt (defined below). After consultation with Powin's management team and advisors, the Prepetition Agent also exercised its cash dominion rights over certain blocked accounts. On April 25, 2025, the Prepetition Agent exercised remedies against a portion of the Debtors' cash on hand and exercised its rights to appoint me as independent manager for Powin.

12.     Upon such appointment, and with the resources available to me at Uzzi & Lall, I took the following steps to stabilize the Debtors' situation:

    a.  I quickly engaged Dentons LLP ("Dentons") as legal counsel to support our analysis of strategic alternatives.

    b.  I undertook steps to understand the Debtors' liquidity position, and, working with Dentons, successfully negotiated an agreement with the Prepetition Secured Creditors to (i) release cash and (ii) relend $6.25 million to allow my team an opportunity to evaluate the Debtors' situation and develop a working strategy to maximize value.

    c.  I then engaged Huron Transaction Advisory LLC ("Huron") as investment banker to assist the Debtors in raising needed capital and pursuing strategic alternatives.

    d.  I participated with the Debtors' existing management in meetings with our largest stakeholders, including our largest vendor, Ace Engineering & Co., LTD ("ACE Engineering"), and our largest customers, to explore both near-term and long-term solutions to the Debtors' deepening liquidity crisis.

e.   During the course of those interactions, two things became clear:  (a) the new project or "ESA"[3] side of the business was not immediately sustainable, in large part because two of the Debtors' largest customers terminated their projects during these discussions; and (b) the servicing or "LTSA"[4] side of the business was vitally important to the Debtors' customer base, and a community of customers were very interested in supporting this business line.

f.   While certain potential transactions remain in negotiation, we successfully negotiated an interim transaction with a key customer to bridge the Debtors for a period of weeks, and we developed a business model that contemplates sustaining the LTSA business line (the "<u>LTSA Program</u>") in a manner that preserves the customers projects during the Chapter 11 Cases. The feedback from customers also suggested that the LTSA Program would be best accomplished through a stand-alone entity that was removed and could be reorganized separately from Powin's legacy liabilities. Consequently, Powin formed a new subsidiary, Powin Project LLC for that purpose.

g.   If we are successful in implementing that LTSA Program, the Debtors will proceed to market their remaining assets for sale under the protection chapter 11 affords.

## II.   <u>THE DEBTORS' BUSINESS AND ORGANIZATIONAL STRUCTURE</u>[5]

13.   As part of their commitment to clean energy and to accelerate the shift to clean energy alternatives, Powin and its affiliates engineer and install battery energy storage systems ("<u>BESS</u>") in clean energy power projects. They then provide data-driven software controls, proven hardware, and experienced end-to-end project execution for cell-level monitoring and reporting, as well as other support services like comprehensive maintenance, wrapped warranties, and specialized training to ensure the long term benefits of their deployed BESS. Powin's products are more than just collections of battery cells; they are active intelligent energy storage and discharge systems powered by Powin's StackOS™, which are designed to bolster energy distribution to alleviate grid congestion, reduce costs, and strengthen aging infrastructure. [6]

---

[3] The ESA side of Powin's business is further discussed in Section II and V.

[4] The LTSA side of Powin's business is further discussed in Section II and V.

[5] Capitalized terms used but not defined in this overview section shall have the meanings assigned to them below.

[6] The information provided in ¶¶ 13-16 is largely derived from the Powin Sustainability Report 2024, *available at* https://powin.com/wp-content/uploads/2025/04/Powin-Sustainability-Report.pdf.  The report is a public document maintained in the ordinary course of business, but I have not had an opportunity to independently verify it. I make no assurances that such report is accurate.

- 5 -

14.    This comprehensive proprietary system integrates an onboard battery management system, thermal management system, and energy management system seamlessly, which Powin continuously monitors remotely in real time from the Powin Battery Lab. The Powin Battery Lab relies on the latest testing facilities, equipment, and experienced specialists to enable better performance, control processes, and strategies for each of its products. With the Powin Battery Lab, Powin is able to provide unparalleled visibility and control into each and every battery cell in the field, empowering clients to make informed decisions on the operational performance of their energy storage assets. Every day, Powin monitors over 5 million battery cells in the field. Additionally, to counter cyber attack threats that could otherwise destabilize connected grids, Powin's system must be continually updated, requiring continual efforts by Powin's experts. Relentlessly focused on innovation and lasting value, Powin optimizes energy management, mitigates risk, and ensures predictable energy throughout the lifetime of its projects.

15.    Powin's system, which is now well ingrained into the clean energy landscape, is vital to the vast array of parties in the clean energy space and to future endeavors towards a carbon-free planet writ large. Currently deployed in the field are utility scale Powin BESS worth in excess of $2 billion that depend on Powin's StackOS™ for their continued operation over, which equates to over 17,000 megawatt-hour ("MWh") of energy storage systems deployed or under construction worldwide. Without Powin's Stack OS™, these BESS cannot operate safely and the worldwide system collapses, jeopardizing billions of dollars of investments in the clean energy space.

16.    As further background, in 2016, Powin began commercial operations with the launch of its first utility-scale project, the 9MWh Millikan BESS. Since then, Powin has continued to achieve significant growth, introducing new products and entering new markets. In 2017, Powin built the largest project in Canada, with 40MWh currently operating today in Stratford, Ontario. In 2018, Powin built the largest microgrid battery in Mexico in a project that introduced Powin's first containerized systems. In 2019, Powin expanded its international footprint with projects in Italy, Greece, and Israel. Then in 2020, Powin introduced its Stack 230™ product line and grew new commitments to 4GWh. In 2021, Powin acquired its first external investors. By 2022, Powin

- 6 -

had secured over 17 GWh of new committed installations.

17.     At a high level, Powin's business model has two lines of business:  (a) the engineering and installation of BESS, which are governed by various energy supply agreements (each, an "ESA"); and (b) the warranties, servicing and maintenance of BESS, which are governed by various long term servicing agreements (each, an "LTSA"). To implement Powin's business plan, Powin entered into these ESAs and LTSAs with its customers, and then used suppliers and vendors to support performance under the ESAs and LTSAs.

**A.     The Debtors' Organizational Structure.**

18.     Powin and its affiliated Debtors are as follows:

- Powin Project LLC (New Jersey);
- Powin, LLC (Delaware);
- PEOS Holdings, LLC (Oregon);
- Powin China Holdings 1, LLC (Oregon);
- Powin China Holdings 2, LLC (Oregon);
- Charger Holdings, LLC (Oregon);
- Powin Energy Ontario Storage, LLC (Oregon);
- Powin Energy Operating Holdings, LLC (Delaware); and
- Powin Energy Operating, LLC (Delaware).

19.     The Debtors' prepetition organizational structure is attached hereto as **Exhibit A**.

20.     **Non-Debtor Powin Entities.** The Debtors' are affiliated with the entities listed below that have not filed chapter 11 petitions at this time:

- Powin Energy Holdings, LLC (Delaware);
- Powin Energy Intermediate, LLC (Delaware);
- Powin Australia Pty Ltd. (Australia);
- Powin Netherlands B.V. (The Netherlands);
- Powin Energy Spain S.L. (Spain);
- Powin UK Ltd. (United Kingdom);
- Powin Canada B.C., Ltd. (Canada);
- Powin Energy Storage 2, Inc. (Canada);
- Powin Energy Ontario Storage II, LP (Canada);
- Yangzhou Finway Energy Tech Co., Ltd. (China);
- Qingdao CIMC-Powin New Energy Technology Co., Ltd. (China);
- Powin (Qingdao) New Energy Co., Ltd. (China);
- Powin EKS SellCo, LLC (Delaware); and
- EKS HoldCo, LLC (Delaware).

21.     Powin Energy Holdings, LLC (Delaware) and Powin Energy Intermediate, LLC

(Delaware) are holding companies who own Powin, LLC. While Powin Energy Intermediate, LLC is an obligor on the Prepetition Loan Documents, neither Powin Energy Holdings, LLC (Delaware) nor Powin Energy Intermediate, LLC (Delaware) has any operations or any material assets other than their direct and indirect ownership of the Debtors. The governance and conduct of those entities is outside of the scope of the authority of my appointment as CRO and that of the independent manager, John R. Brecker.

**B.    The Debtors' Management.**

22.    As described below, pursuant to the terms of that certain Irrevocable Proxy, dated as of October 25, 2024 (the "Proxy"), Powin LLC's Parent, Powin Energy Intermediate, LLC ("Parent Pledgor"), appointed GLAS USA LLC, as collateral agent for the Prepetition Lenders under the Loan Agreement (the "Prepetition Agent"), as its proxy and attorney-in-fact entitling the Prepetition Agent to, upon an event of default, exercise Parent Pledgor's voting rights and all other rights, powers, privileges, and remedies to which a holder of such Pledged Stock (as defined in the Proxy) would be entitled (including giving or withholding written consents of shareholders, partners, or members). On April 25, 2025, the Prepetition Agent exercised the Proxy and provided notice to Powin and the Parent Pledgor that, from and after the date thereof, it was exercising its rights under the Loan Agreement and the Proxy to direct the voting of all of the Parent Pledgor's held equity interests in Powin to amend the operating agreement of Powin (the "LLC Agreement") to provide that Powin would be a manager-managed LLC and appointed me as independent manager of Powin.

23.    On June 8, 2025, the Prepetition Agent exercised its Proxy rights pursuant to Loan Agreement, amended the LLC Agreement for Powin, LLC to include up to two independent managers, and appointed John R. Brecker as an additional independent manager. John R. Brecker has over 30 years as a restructuring professional and is the founder of Drivetrain, LLC, a multi-disciplinary fiduciary services business serving the distressed investing industry with an investor's perspective. John R. Brecker has experience serving as a creditor representative on ad hoc and official creditor committees, as trustee, as examiner, and as independent and creditor-appointed

- 8 -

directorships.

24.     Other management remained in place to continue their focus on day-to-day operations, but certain personnel did resign since my appointment, including the Chief Executive Officer (the "CEO") and the Head of Human Resources. Following these resignations, the independent managers determined to elevate the CEO and Head of Human Resources' direct reports, Brian J. Kane and Arielle Pachecho, respectively. On June 9, 2025, I resigned as one of Powin's independent manager and the remaining independent manager, John R. Brecker (the "Independent Manager") determined to engage my firm to continue providing professional advice and to appoint me as Chief Restructuring Officer. The other management is now as follows:

| Name | Position |
|------|----------|
| Brian J. Kane | Chief Executive Officer |
| Chad Paulson | Senior Vice President & Secretary |
| Kevin Paprzycki | Chief Financial Officer |
| Arielle Pachecho | Head of Human Resources |

**C.     Recent Financial Results.**

25.     In the last audited financials for the year ending on December 31, 2023, the company reported total assets of $1.16 billion and liabilities of $1.24 billion. The assets consisted mostly of accounts receivable and inventories related to projects in process. The liabilities related mostly to accounts payable and deferred revenue. The company has not yet closed its books for 2024 or any month in 2025.

**III.     THE NEED FOR CHAPTER 11 RELIEF AND THE EVENTS LEADING TO THE COMMENCEMENT OF THESE CHAPTER 11 CASES**

**A.     Historical Challenges.**

26.     Soon after my appointment, my team and I discovered that the Debtors suffered from the following inter-related problems, among others:  (a) severe liquidity constraints; (b) an extreme overdependence on trade credit; (c) increasing assertions of liquidated damages entitlements by customers aggrieved by alleged performance delays; and (d) a real credibility problem. My team has not yet had sufficient opportunity to investigate the root cause of these problems but rather, immediately focused on identifying a thoughtful approach to stabilize the

- 9 -

situation in a way to maximize value and minimize potential claims. We fully expect to work cooperatively with any official committee of unsecured creditors (if one is appointed) and any other parties in interest to investigate whether potential claims exist in connection with such root causes of the Debtors' prepetition challenges.

<div align="center">

### IV.   CAPITAL STRUCTURE

</div>

**A.   Secured Debt.**

27.     Prior to the Petition Date, the Debtors entered into that certain Loan Agreement, dated as of October 1, 2024 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), by and among Powin, the Parent Pledgor, the Subsidiary Guarantors party thereto (as such term is defined in the Loan Agreement), the Prepetition Agent, as administrative agent and collateral agent, and the Prepetition Lenders. The primary purpose of the credit available under the Loan Agreement was to bridge the debtors' working capital from acquisition of materials from vendors until customers made progress payments in connection with those materials.

28.     Under Section 9.1 of the Loan Agreement, each Loan Party (as defined therein) pledged and granted to the Prepetition Agent, for the benefit of the Prepetition Lenders, a security interest in and lien on all of such Loan Party's right, title, and interest in and to substantially of their assets, including the Loan Party's cash.[7] In connection therewith, Powin entered into (i) that certain Blocked Account Control Agreement dated as of November 12, 2024, by and among Powin, the Prepetition Agent, and JPMorgan Chase Bank, N.A.; and (ii) that certain Deposit Account Control Agreement, dated as of October 1, 2024, by and among Powin, Powin China Holdings 2 LLC, the Prepetition Agent, and HSBC Bank USA, National Association (together, the "Controlled Accounts").

29.     As further security for the benefit of the Prepetition Lenders, Parent Pledgor issued the Proxy appointing the Prepetition Agent as its proxy and attorney-in-fact entitling the

---

[7] On October 2, 2024, the Prepetition Agent filed UCC-1 Financing Statements with the applicable secretaries of state against each of the Loan Parties.

Prepetition Agent to, upon an event of default, exercise Parent Pledgor's voting rights and all other rights, powers, privileges, and remedies to which a holder of such Pledged Stock (as defined in the Proxy) would be entitled (including giving or withholding written consents of shareholders, partners, or members).

30.    On March 24, 2025, the Prepetition Agent sent a default notice (the "Default Notice"):  (i) notifying Powin of the occurrence and continuation of payment and covenants defaults; and (ii) terminating all Commitments and declaring all Loans, together with all other outstanding Obligations, immediately due and payable. The Prepetition Agent also exercised control over the Controlled Accounts by issuing two separate Shifting Control Notices and notifying JPMorgan Chase Bank and HSBC Bank of such exercise.

31.    On April 25, 2025, following consultation with Powin's management team and advisors, the Prepetition Agent exercised the Proxy and provided notice to Powin and the Parent Pledgor that, from and after the date thereof, it was exercising its rights under the Loan Agreement and the Proxy to direct the voting of all of the Parent Pledgor's held equity interests in Powin to amend the operating agreement of Powin to provide that Powin would be a manager-managed LLC and appoint me as the independent manager of Powin.

32.    After my appointment, it became evident that Powin's liquidity position was untenable. I immediately engaged in discussion with the Prepetition Lenders (among others) regarding potential ways to address Powin's liquidity shortfall. As a result of these discussions, the Prepetition Lenders (i) directed the Prepetition Agent to release a substantial amount of cash from the Controlled Account to sustain Powin's operations on multiple occasions and (ii) relent $6.25 million to Powin under the Prepetition Credit Agreement.

33.    On June 9, 2025, the Prepetition Lenders and the Prepetition Agent agreed to forbear from exercising their right, pursuant to the Control Agreements, to direct the Prepetition Agent to direct disbursements from the Controlled Accounts during the period until through June 11, 2025 pursuant to that certain Forbearance, Support and Joinder Agreement.

34.    As of the Petition Date, the outstanding secured obligations under the Loan

- 11 -

Agreement were no less than $25,612,281.51, plus any other fees, expenses, and other obligations owed under the Prepetition Loan Documents.

**B.      Unsecured Debt.**

35.      The Debtors estimate that unsecured claims against the Debtors as of the Petition Date are at least $300,000,000, including:  (i) accrued and unpaid amounts owed to the Debtors' trade vendors and customers and other unsecured debt incurred in the ordinary course of the Debtors' business; and (ii) certain ongoing or threatened litigation claims, which are disputed.

## V.      First Day Pleadings

36.      The Debtors request that the relief described below in the First Day Motions be granted, as each request constitutes a critical element in achieving the successful restructuring of the Debtors for the benefit of their creditors.

**A.      Administrative Motions.**

37.      In the *Motion of the Debtors for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases; and (II) Granting Related Relief* (the "Joint Administration Motion"), the Debtors request entry of an order directing joint administration of these Chapter 11 Cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) and that the Court maintain one file and one docket for all of the Chapter 11 Cases under the lead case, Powin, LLC (Case No. 25-16137 (MBK)).

38.      Joint administration of the Chapter 11 Cases will provide significant administrative efficiencies without harming the substantive rights of any party in interest. Many of the motions, hearings and orders that will be filed in the Chapter 11 Cases almost certainly will affect each of the Debtors. The entry of an order directing joint administration of the Chapter 11 Cases will reduce fees and costs by avoiding duplicative filings, objections, notices, and hearings, and will allow all parties in interest to monitor the Chapter 11 Cases with greater ease and efficiency. I believe that the relief requested in the Joint Administration Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest and will enable the Debtors to continue to operate their business in chapter 11 with the least disruption.

39.     In the *Motion of the Debtors Seeking Entry Of an Order Extending Time To (I) File Schedules and Statements; and (II) Granting Related Relief* (the "Schedules and SOFA Motion"), the Debtors request entry of an order granting additional time to file their schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs. As a consequence of the size and complexity of the Debtors' business operations, the number of creditors likely to be involved in these Chapter 11 Cases, and numerous critical operational matters that the Debtors' management and employees must address, a 28-day extension (without prejudice to further extensions) is necessary and appropriate.

40.     In the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) File a Consolidated List of the Debtors' Fifty Largest Unsecured Creditors, (B) File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (C) Redact Certain Personally Identifiable Information of Natural Persons, and (II) Granting Related Relief* (the "Creditor Matrix Motion"), the Debtors seek entry of interim and final orders: (i) authorizing the Debtors to (a) file a consolidated list of the Debtors' fifty (50) largest unsecured creditors in lieu of filing separate creditor lists for each Debtor, (b) file a consolidated list of creditors in lieu of submitting a separate mailing matrix for each Debtor, and (c) redact certain personally identifiable information of natural persons; and (ii) granting related relief, and permitting the Debtors' claims and noticing agent Verita (as defined below) to maintain and update a consolidated creditor matrix (the "Consolidated Creditor Matrix").

41.     Permitting the Debtors to file a Consolidated Creditor Matrix, as opposed to a separate creditor matrix for each Debtor, is, in my opinion, warranted under the circumstances of these Chapter 11 Cases. Indeed, because the Debtors estimate that they have hundreds of creditors and other parties in interest, I believe that filing separate creditor matrices for each Debtor would be duplicative and burdensome. Additionally, I understand that converting the Debtors' computerized information to a format compatible with the matrix requirements would be time-consuming and, more importantly, would greatly increase the risk of error. As such, I believe that the Debtors' request to file the Consolidated Creditor Matrix as it is currently formatted and in

- 13 -

accordance with the procedures outlined in the Creditor Matrix Motion is reasonable and warranted under the circumstances

42.     Additionally, the Debtors request authority to redact certain personally identifiable information from their lists of creditors. The Debtors respectfully submit that it is appropriate to authorize the Debtors to redact from any paper filed or to be filed with the Court in these Chapter 11 Cases, including the Consolidated Creditor Matrix and their Schedules and Statements, (i) the home, e-mail addresses and any other personally identifiable information, not including names of natural persons that the Debtors identified as employees, and (ii) the names, home addresses, and email addresses of natural persons that the Debtors identified as being customers of the Debtors, as known to the Debtors, unless such names have already been made public in litigation with the Debtors because such information can be used to perpetrate identity theft and phishing scams or to locate survivors of domestic violence, harassment, or stalking under 11 U.S.C. § 107(c)(1).

43.     In the *Debtors' Application for Entry of an Order Authorizing the Appointment of Kurtzman Carson Consultants, LLC DBA Verita Global as Claims and Noticing Agent Effective as of the Petition Date* (the "Claims Agent Application") the Debtors seek entry of an order appointing Kurtzman Carson Consultants, LLC dba Verita Global ("Verita") as the claims and noticing agent for the Debtors in connection with these Chapter 11 Cases, including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim in these Chapter 11 Cases.

44.     I have reviewed Verita's services agreement, which is attached as an exhibit to the proposed order approving the Claims Agent Application, and the description of services that Verita has agreed to provide and the compensation and other terms of the engagement as provided in the services agreement. Based on that review, I believe that the Debtors' estates, creditors, parties in interest and the Court will benefit from Verita's experience and cost-effective methods. The Debtors believe, and I agree, that Verita's rates are competitive and reasonable given Verita's quality of service and expertise and that the appointment of Verita as claims and noticing agent is

- 14 -

the most effective and efficient manner by which to provide noticing and claims processing services in these Chapter 11 Cases.

45.     I believe that the relief requested in the Claims Agent Application is in the best interests of the Debtors' estates, creditors, and all other parties in interest. Accordingly, I respectfully submit that the Claims Agent Application should be approved.

**B.     Operational Motions Requesting Immediate Relief.**

46.     The Debtors intend to ask for immediate relief with respect to the following First Day Pleadings and, therefore, will present these motions at the First Day Hearing.

47.     The *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Cash Collateral Motion") seeks entry of interim and final orders: (i) authorizing the Debtors to use cash collateral ("Cash Collateral"); (ii) granting adequate protection, solely to the extent provided in the orders, to the Prepetition Secured Parties (as defined herein); (iii) modifying the automatic stay imposed by section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent necessary to implement and effectuate the terms of the orders; (iv) scheduling a hearing to consider approval of the Cash Collateral Motion on a final basis; and (v) granting related relief.

48.     Recognizing their immediate need to access Cash Collateral, the Debtors swiftly engaged with the Prepetition Secured Parties on the consensual use of Cash Collateral in furtherance of a comprehensive restructuring transaction. As part of these negotiations, the Debtors and the Prepetition Secured Parties discussed, among other things, a form of budget for the duration of the Chapter 11 Cases, an adequate protection package, and a restructuring timeline that would allow the Debtors to continue to use Cash Collateral while they work expeditiously to seek to restructure their business during the pendency of these Chapter 11 Cases. After extended good faith and arm's length negotiations with the Prepetition Secured Parties, the Debtors reached an

US_ACTIVE\130481403

agreement with the Prepetition Secured Parties concerning the consensual use of Cash Collateral, as more fully described below.

49.     The *Motion of the Debtors for Entry of an Order: (I) Authorizing the Debtors to Enter into New Customer Program with Existing Customers; (II) Scheduling a Hearing; and (III) Granting Related Relief* (the "Customer Program Motion") seeks entry of an order: (i) authorizing the Debtors to enter into a new Customer Program with existing customers ("Customers"); (ii) scheduling a hearing to consider approval of the Customer Program Motion on a final basis; and (iii) granting related relief.

50.     The Debtors commenced these Chapter 11 Cases to, among other things, reorganize their businesses around the Debtors' long term servicing line of business. Through this line of business, the Debtors provide their Customers with continuing maintenance and repair services with respect to previously installed Debtor battery systems at Customer sites. The Debtors' proprietary cloud-based technology and related servicing functionality is highly valuable to their Customers, and, in recent days, the Debtors have conducted in-depth discussions with Customers who have communicated a strong willingness to support the Debtors' efforts to continue this business line on a focused basis with pricing that is designed to allow the Debtors to continue this business. Successful implementation of this Customer Program will enable the Debtors to pursue a sale process of its remaining assets and therefore represents the most viable way to maximize value in these Chapter 11 Cases.

51.     Specifically, the Debtors have been working closely with Customers to develop a cost-plus, and cash flow positive, long term servicing program. Through such program, the Debtors would provide Customers with an amended suite of battery warranty services at a modified price point.

52.     The LTSA Program is entirely consistent with the Debtors' prepetition ordinary course of business. Under the proposed LTSA Program, the Debtors will be providing a reduced scope of service at pricing that is designed to be cash flow positive during the post-petition period. As noted, Customers are very desirous of the Debtors' continuation of their cloud-based

- 16 -

proprietary technology and related servicing functionality. The termination of the Debtors LTSA Line of Business would have a severely detrimental impact on Customers who are largely incapable of replacing those functions without the Debtors' assistance. In light of the commencement of these Chapter 11 Cases, the Debtors are seeking the instant relief in an effort to be transparent as well as assure Customers participating in the LTSA Program that it is fully authorized and viable.

53.     The *Motion of the Debtors for Entry of Interim and Final Orders:  (I) Authorizing Use of Cash Management Procedures, Bank Accounts, Credit Cards, and Existing Business Forms; (II) Prohibiting Setoffs and Freezing of Bank Accounts; (Iii) Modifying Requirements of Section 345(b) of the Bankruptcy Code; and (Iv) for Related Relief* (the "Cash Management Motion") seeks entry of interim and final orders:  (i) authorizing the Debtors to continue to use (as such capitalized terms are defined below) their existing Cash Management System, Bank Accounts, Credit Cards, and existing Business Forms in the ordinary course of business; (ii) authorizing the Debtors to open or close Bank Accounts or establish new or different Credit Cards, all in the ordinary course of business; (iii) prohibiting applicable banks from offsetting against or freezing any of the Debtors' deposit accounts; (iv) modifying the requirements of § 345(b) of the Bankruptcy Code; (v) scheduling a final hearing; and (vi) granting related relief.

54.     The *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain and Renew, Amend, Supplement, Extend, or Modify Insurance Programs and Pay Obligations Thereunder; and (II) Granting Related Relief* (the "Insurance Motion") seeks entry of interim and final orders:  (i) authorizing the Debtors to maintain and renew, amend, supplement, extend, or modify insurance programs and pay obligations thereunder; and (ii) granting related relief.

55.     The Debtors maintain various insurance policies providing coverage for, among other things, the Debtors' general liability, workers' compensation, property, automobile liability, professional liability, cyber liability, stock throughput, and directors and officers coverage and excess liability (collectively the "Insurance Policies"), which the Debtors have obtained through

- 17 -

third-party insurance carriers (each an "Insurance Carrier").[8]

56.     The premium amounts for the Insurance Policies (the "Insurance Premiums") are determined annually and are due in their entirety at policy inception or renewal. The Debtors' aggregate annual Insurance Premiums under the Insurance Policies total approximately $2.21 million. As of the Petition Date, the Debtors believe they have paid all Insurance Premiums, but out of an abundance of caution, seek authority to satisfy any outstanding Insurance Premiums.

57.     Most of the Debtors' Insurance Policies will expire between June 11, 2025 and May 12, 2026. Specifically, the Debtors' cyber liability insurance policy and the director and officer liability insurance policies expire on June 11, 2025. It is critical that the Debtors continue to carry the necessary insurance coverage to operate their business. The Debtors have begun negotiating renewals, extensions and/or entries into new insurance policies with respect to the expiring Insurance Policies. The Debtors have obtained extensions of cyber liability and director and officer liability coverage through September 9, 2025.

58.     The Debtors employ USI Insurance Services (the "Broker") to assist them with the procurement and management of the Insurance Policies. The Broker receives compensation from the Debtors in the form of a commission fee in addition to the Insurance Premiums paid by the Debtors (the "Broker's Fees"). The employment of the Broker allows the Debtors to obtain and manage the Insurance Policies in an efficient manner and to realize considerable savings in the procurement of such policies.

59.     Certain Insurance Premiums and all Brokers Fees are financed through AFCO Credit Corporation (the "Premium Financier") over a twelve (12) month period through June, 2025. The monthly financing payment amount to the Premium Financier is approximately $190,000 per month, starting on June 12, 2025. Among the potential remedies available to the Premium Financier for non-payment is the ability to cancel the Insurance Policies and seek a refund of the Insurance Premiums it financed. As of the Petition Date, the Debtors have made all monthly financing payments and believe that they have satisfied all of their obligations to the

---

[8] A true and accurate schedule of the Debtors' Insurance Policies is attached as Exhibit C to the Insurance Motion.

US_ACTIVE\130481403

Premium Financier (the "Premium Financing Obligations").

60.    Under the Insurance Policies, the Debtors may be required to pay various deductibles, retention amounts, and administrative fees (together with the Insurance Premiums, the "Insurance Obligations"), depending upon the type of policy and claim involved. As of the Petition Date, the Debtors to not believe that are any prepetition Insurance Obligations owed.

61.    The *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Employee Obligations and (B) Continue Employee Benefit Programs, and (II) Granting Related Relief* (the "Wage Motion") seeks entry of interim and final orders: (i) authorizing, but not directing, the Debtors to (a) pay prepetition wages, salaries, other compensation, and reimbursable expenses, and costs related to these items, and (b) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto (together, the "Employee Compensation & Benefits"); (ii) scheduling a final hearing; and (iii) granting related relief.

62.    As of the Petition Date, the Debtors employ approximately 85 non-insider individuals (of which a majority work in Oregon, with the others working in other states) in addition to their executive team (the "Employees").

63.    The Debtors have significantly reduced their workforce this year, including in a reduction-in-force that took place on June 6, 2025. The remaining Employees represent approximately 17% of the Debtors' workforce compared to January 1, 2025. These Employees remain, because they are critical for the Debtors' operations – particularly, with respect to the Debtors' Project and Technology branches of their services business – and to maintaining going concern value for the Debtors' business. The Employees are difficult to replace, and without the Employees' services, the Debtors will no longer be able to provide products and services to their customers. A number of the Debtors' employees have also resigned because of the uncertain situation. The Debtors cannot provide assurances that the Employee Benefit & Compensations will be provided in the ordinary course, the Debtors believe that more resignations will follow.

64.    The Debtors are not parties to any collective bargaining agreements.

- 19 -

65.     The Debtors' Employees are paid either a salary or on an hourly basis as their primary form of compensation. Employees receive wages and salaries (the "Wages") on a bi-weekly basis every other Friday. The Debtors generally fund their payroll approximately two days before the applicable payday (on the applicable Wednesday).

66.     Payroll is generally paid one week in arrears. In the last regular payroll, on June 6, 2025,[9] the current Employees received payment for services provided through Friday, May 30, 2025. The next payroll, on June 20, 2025, will cover the pay-period of May 31 through June 13, 2025.[10] The Employees are therefore owed prepetition Wages.

67.     The Debtors estimate that they owe their Employees an aggregate of approximately $527,262.17 on account of accrued prepetition Wages (collectively, the "Unpaid Employee Wages"). However, this amount may fluctuate depending on contingencies.

68.     Postpetition, the Debtors estimate that their average gross payroll for their Employees will be (before Adjustments/deductions) approximately $1,150,000 per month.

69.     As of the Petition Date, the Debtors believe that they do not owe any Unpaid Employee Wages in excess of the statutory cap of $17,150 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Statutory Cap") to any Employees(s).

70.     The Debtors utilize software and services from UKG (the "Payroll Provider") to support payroll processing, payroll tax calculations and filings, and other payroll-related services (all such associated costs, collectively, the "Payroll Costs"). The Debtors pay the Payroll Provider a quarterly fee, and the next payment will be due in July, 2025. The Debtors owe the Payroll Provider $90,616.61, which last payment was due in April, 2025. The Debtors seek authority to honor prepetition and postpetition amounts of Payroll Costs, including amounts owed to the Payroll Provider, to ensure continued payroll services during the Chapter 11 Cases.

---

[9] As referenced above, on June 6, 2025, the Debtors conducted a reduction-in-force, and prior to the bankruptcy filing, processed and fulfilled their remaining payment obligations to the terminated employees by depositing funds into the payroll account for the applicable amounts due.

[10] In these payrolls Debtors would ordinarily pay Employees amounts that had been reconciled or adjusted as owed from any previous underpayment, including recently submitted expenses, uncalculated overtime, etc. (with these amounts as the "Adjustments" and which, as applicable are included within the definition of Unpaid Employee Wages).

- 20 -

71.     The Debtors may need to utilize independent contractors for services during the Chapter 11 Cases. These independent contractors (the "Supplemental Workforce") would be paid by the Debtors as needed. As of the Petition Date, the Debtors estimate that approximately $0 is owed to the Supplemental Workforce.

72.     In the ordinary course of business, the Debtors incur obligations on account of Payroll Deductions and Employee Payroll Taxes (each as defined below and collectively, the "Withholding Obligations").

73.     The Debtors routinely deduct amounts from Employees' wages, including garnishments and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of healthcare benefits and insurance premiums (the "Payroll Deductions").

74.     The Debtors are required by law to withhold from the Employees' wages amounts related to, among other things, national, regional, and local income tax (the "Employee Payroll Taxes") for remittance to the appropriate taxing authorities. The Employee Payroll Taxes are generally processed and forwarded to the appropriate federal, state, or local taxing authority when the Employees' payroll checks are disbursed.

75.     In addition to their wages, the Debtors' Employees also generally are entitled to receive other forms of compensation, including health benefits, paid time off, and reimbursement of certain business expenses (collectively, the "Employee Benefit Programs"). The Employee Benefit Programs include, but are not limited to: (i) reimbursement of expenses; (ii) paid time off; (iii) a healthcare program, including dental and vision coverage; (iv) health savings accounts or flexible spending accounts; (v) life and disability coverage; (vi) workers' compensation; (vii) a 401(k) retirement savings plan; and (viii) an ethics and harassment platform.

76.     The Debtors customarily reimburse Employees who incur business expenses in the ordinary course of performing their duties on behalf of the Debtor. Such expenses typically include, but are not limited to, business-related travel expenses (including mileage) and other items (the "Reimbursement Obligations"). Expense reports detailing the Reimbursement Obligations are

US_ACTIVE\130481403

submitted for reimbursement by the Employees and generally must be supported by copies of receipts. Expenses are paid with payroll, and the Debtors utilize a vendor, Concur (the "Expense Vendor"). Employees expect that their business expenses will be paid promptly, and Employees may suffer hardship in delay of payment of these expenses.

77.    There is commonly delay between when an Employee incurs an expense and submits the corresponding expense report for processing. Therefore, it is difficult for the Debtors to determine the exact amount of Reimbursement Obligations that are due and owing for any particular time period. However, the Debtors believe that few, if any, Employees will be owed expenses earned within 180 days of the Petition Date that would require payment above the Statutory Cap. Upon information and belief, certain of the Debtors' executives are owed amounts that may exceed the Statutory Cap for recent business travel to Oregon.

78.    The Debtors provide eligible (non-insider) Employees with paid time off ("PTO"). Employees are eligible for varying amount of PTO, depending on their length of service and may exercise PTO according to company policy. Recently, the Debtors capped PTO at a maximum of 40 hours, but grandfathered in amounts exceeding 40 hours for Employees that had already accrued more than 40 hours. Upon an Employee's termination, the Debtors will cash out the Employee's PTO benefits to the extent required by applicable law.

79.    As of the Petition Date, the Debtors estimate they owe $691,170.14 (before adjustments/deductions) for accrued PTO for current Employees. The Debtors believe that the continuation of PTO policy in accordance with prior practice for their current Employees is essential to maintaining Employee wellness and morale during the Chapter 11 Cases. Further, the policies are broad-based programs upon which all Employees have come to depend, and the continuation of those programs will not create any material cash flow obligations beyond the Debtors' normal payroll obligations. Moreover, disruptions or changes to these policies could have a direct impact on Employee commitment, morale, and retention, to the detriment of the Debtors.

80.    The Debtors also offer parental, bereavement and other leave through their vendor, Voya.

81.     The Debtors offer eligible Employees and their eligible dependents (collectively, the "Dependents") the option of medical, dental and vision insurance. For medical insurance, including prescription drug coverage, the Debtors offer coverage (the "Medical Plan") through Regence ("Health Provider"). The Debtors bear a percentage of the costs of the Medical Plan for eligible Employees (which amount varies depending on their coverage and Dependents), and the Employees bear the remainder of the costs, based on dependent elections. In the ordinary course of their business, on the first of the month, the Debtors pay the Health Provider premiums for the following month, and, as of the Petition Date, the Debtors are current in payments to the Health Provider.

82.     For dental insurance, the Debtors also offer coverage through Delta Dental (the "Dental Plan"). The Debtors bear a percentage of the costs of the Dental Plan for eligible Employees (which amount varies depending on their coverage and Dependents). The Debtors pay for the Dental Plan on the first of the month.

83.     For vision insurance, the Debtors offer coverage through VSP (the "Vision Plan," and, together with the Medical Plan and Dental Plan, the "Health Plans"). The Debtors bear 100% of the costs of the Vision Plan for eligible Employees. The Debtors pay for the Vision Plan mid-month.

84.     Prepetition, the Debtors' monthly cost for the premiums of the Health Plans was approximately $420,000 per month, which amount should reduce during the Chapter 11 Cases due to the pre-petition reduction in force.[11]  The Debtors' Health Plans are fully insured, and there is no estate liability outside of payment of premiums and a monthly fee of $15,833.33 to the Debtors' broker, Alliant.

85.     The Debtors seek authority, but not direction, to pay any amounts due and to continue to pay, in their discretion, the premiums for the Health Plans incurred postpetition and to maintain their Health Plans.

---

[11] Given the reduction of the size of the Debtors' workforce, the providers for the Health Plans will likely have a right to re-negotiate terms of the Health Plans, which could result in a higher per-capita, but lower gross, amount owed by the Debtors.

86.     The Debtors also offer their Employees the benefit of maintaining a respective health-savings account (the "HSA(s)") and a flexible savings account (the "FSA(s)") through Rocky Mountain Reserve (the "HSA & FSA Benefits"). Employees contribute to the FSAs at their election, and the Debtors do not contribute to the FSAs.

87.     The Debtors contribute to HSAs based on the type of coverage for the Employee. The Debtors contribute semi-annually to Employee HSAs, with the next payment due in July, 2025. Additionally, the Debtors pay a monthly administration fee to Rocky Mountain Reserve of approximately $3.75 per employee HSA enrollee and $2.75 per Employee FSA enrollee.

88.     The Debtors are required to offer certain of their former Employees certain health benefits following termination of employment under § 4980B of the Internal Revenue Code to administer Continuation Health Coverage ("COBRA") (*see* 26 U.S.C. § 4980B)  Pursuant to COBRA, former Employees of the Debtors (the "COBRA Eligible Employees") may continue using certain health benefits (the "COBRA Benefits"), and are entitled to continue to receive COBRA Benefits for up to eighteen, and occasionally thirty-six, months following termination of employment. The Debtors' COBRA Eligible Employees are typically responsible for paying all costs associated with the COBRA Benefits.

89.     The Debtors have also provided COBRA benefits to employees that have been previously terminated, for which the Debtors are responsible for payment, which responsibility extends, to the Debtors belief, through September, 2025. Certain current Employees also have similar COBRA benefits in their contract upon severance.

90.     The Debtors pay a 2% administrative fee for enrolled COBRA participants. The Debtors request authority, but not direction, to (a) pay any prepetition amounts outstanding on account of the COBRA Benefits; (b) to continue to offer the COBRA Benefits, including to Employees who may be terminated after the Petition Date, if any, and to honor all postpetition obligations related thereto in the ordinary course of business consistent with past practices; and (c) to continue to pay fees related to the COBRA Benefits in the ordinary course of business on a postpetition basis.

- 24 -

91.     The Debtors offer eligible Employees premium based group life insurance ("Life Insurance") and accidental death and dismemberment insurance, disability and other similar insurance ("AD&D Insurance") through Voya. The Debtors also offer background check insurance ("Background Check Insurance") through Accurate Ace. The Debtors pay premiums monthly, and the prepetition amount of monthly premiums for Life Insurance, AD&D Insurance and Background-Check Insurance total approximately $30,000 per month, less voluntary employee deductions, which amount should be reduced during the Chapter 11 Cases due to the prepetition reduction in force.

92.     The Debtors' Employees and their families depend on insurance provided by the Debtors as a fundamental aspect of compensation. Any disruption or perceived-disruption regarding insurance benefits or coverage would damage morale and may cause Employees to seek employment elsewhere. The Debtors are not current on their insurance obligations and owe Voya estimated amounts of $85,897.89 for AD&D Insurance and $111,591.37 for Life Insurance. The Debtors seek authority, in their discretion, to pay these amounts and any accrued and unpaid prepetition premiums and related charges, to continue the above benefits post-petition and to deliver the Employees' portion of any accrued and unpaid prepetition premiums for the AD&D Insurance and Life Insurance to the corresponding administrators in connection with the payment of the Wages and withholding obligations.

93.     The Debtors maintain workers' compensation insurance for their Employees at the statutorily required level for each state in which they have Employees (collectively, and as described herein, the "Workers' Compensation Program"). As part of the Workers' Compensation Program, the Debtors maintain a workers' compensation insurance policy with Zurich American Insurance Company (the "Workers' Compensation Insurance Policy"). The Debtors must continue claim assessment, determination, adjudication, and payment pursuant to the Workers' Compensation Program, without regard to whether such liabilities are outstanding before the Petition Date, to ensure that the Debtors comply with applicable workers' compensation laws and requirements.

- 25 -

94.      The Debtors are not aware of any active, open claims under the Workers'
Compensation Program. To the extent any Employees assert claims arising under the Workers'
Compensation Program, the Debtors request that the Court modify the automatic stay under section
362 to permit the Employees to proceed with such claims. This requested modification of the
automatic stay pertains solely to claims under the Workers' Compensation Program.

95.      Because the Debtors are statutorily and/or contractually obligated to maintain the
Workers' Compensation Program, their inability to do so may result in adverse legal consequences
that potentially could disrupt the reorganization process. As of the Petition Date, the Debtors do
not believe that there are any prepetition amounts outstanding on account of accrued but unpaid
Workers' Compensation Program obligations.

96.      The Debtors offer eligible Employees the opportunity to participate in a defined
401(k) contribution plan through Empower, which allows for voluntary employee pre-tax deferrals
(the "Retirement Plan"). Employees participating in this program may contribute up to 90% of
their salary up to the federal statutory cap per year, and the Debtors deduct the employee pre-tax
deferrals from Employee paychecks for each pay-cycle. The Debtors' Retirement Plan includes a
match (each pay-period) by the Debtors of up to 100% up to the first 3%, and 50% on the next 2%
of Employee contributions. Failure to timely forward the Employees' Retirement Plan deductions
may be a violation of the Employee Retirement Income Security Act of 1974, as amended
("ERISA"), resulting in potential personal liability for the Debtors' officers for such deducted
amounts. Maintaining the Retirement Plan as a part of the Employee Benefit Programs is critical
to maintaining employee morale.

97.      Administration fees for the Retirement Plan are paid through plan assets.

98.      The Debtors maintain an ethics and harassment platform (the "Platform") with
NAVEX Global to assist their Human Resources department and to provide mandatory and
discretionary training to employees. The Debtors pay a $30,000 annual fee. The Debtors are not
current, and, if the Debtors do not make payment by June 18, 2025, service will be suspended. The

- 26 -

Debtors seek authority, in their discretion, to pay this amount and amounts due relating to the Platform.

US_ACTIVE\130481403

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 10th day of June 2025, at Sea Bright, New Jersey in Monmouth County.

Signed by:

*Gerard Uzzi*

C933082321E44B5...

Gerard Uzzi

US_ACTIVE\130481403

## Exhibit A

**(Powin's Organizational Structure)**

US_ACTIVE\130481403



Privileged & Confidential

Powin Structure Chart as of **June 9, 2025**    Case 25-16137-MBK    Doc 13    Filed 06/10/25    Entered 06/10/25 13:21:18    Desc Main
Document    Page 30 of 30

**Legend**

- Partnership for Tax
- Disregarded Entity
- Corporation for Tax
- Individuals
- Loan Parties

Powin Holdings, LLC (Delaware)

Powin Energy Intermediate, LLC (Delaware)

Powin, LLC (Delaware)

POWIN UK (UK)

Powin Project, LLC (New Jersey)

Powin EKS SellCo, LLC (Delaware)

EKS HoldCo, LLC (Delaware) — 20%

Powin Energy Operating Holdings, LLC (Delaware)

Powin Energy Operating, LLC (Delaware) — 0.2% / 99.8%

Powin Energy Ontario Storage, LLC (Oregon)

Powin Energy Spain S.L. (Spain)

Charger Holdings, LLC (Oregon)

Powin China Holdings 2, LLC (Oregon)

Powin (Qingdao) New Energy Co., Ltd. (China)

Qingdao CIMC-Powin New Energy Technology Co., Ltd (China) — 30%

Yangzhou Finway Energy Tech Co., Ltd (China)

Powin China Holdings 1, LLC (Oregon)

Powin Netherlands B.V. (Netherlands)

PEOS Holdings, LLC (Oregon) — 100%

Powin Canada BC, Ltd. (Canada)

Powin Energy Storage 2, Inc (Canada) — General partner

Powin Energy Ontario Storage II LLP (Canada)

Powin Australia Pty Ltd. (Australia)

CONFIDENTIAL

**Note:** all ownership percentages are 100% unless otherwise noted

## **Exhibit 5**

(Omnibus Motion Authorizing The Rejection of Legacy Customer Contracts)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>         Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered)<br><br>**Hearing Date: July 15, 2025 at 11:30 a.m.**<br><br>Judge: Hon. Micheal B. Kaplan |

### NOTICE OF OMNIBUS MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF LEGACY CUSTOMER CONTRACTS AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that on July 15, 2025 at 11:30 a.m., or as soon thereafter as counsel may be heard Powin, LLC and the affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), hereby move (the "Motion") this Court for entry of an order, substantially in the form attached as Exhibit A (the "Order"), (i) authorizing the omnibus rejection of certain executory contracts with customers related to the Debtors' legacy employment services agreements ("ESA") and long term services agreements ("LTSA") business lines (collectively, the "Contracts"), effective *nunc pro tunc* as of the date hereof (the "Rejection Date"); and (ii) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, in support of the Motion, the Debtors shall rely on the accompanying *Declaration of Gerard Uzzi* filed with the Motion and the *Declaration of Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* [Docket No. 13] ("First Day Declaration"), which set forth the relevant legal and factual bases upon which the relief requested should be granted.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.



2516137250617000000000001

**PLEASE TAKE FURTHER NOTICE THAT YOUR RIGHTS MAY BE AFFECTED. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).**

**PLEASE TAKE FURTHER NOTICE** that if you do not want the court to grant this motion, or if you want the court to consider your views, you or your attorney must file with the clerk at the address listed below, a written response explaining your position no later than 7 days prior to the hearing date.

| | |
|---|---|
| **Hearing Date:** | July 15, 2025 |
| **Hearing Time:** | 11:30 a.m. |
| **Hearing Location:** | United States Bankruptcy Court<br>402 East State Street, Trenton, NJ 08608 |
| **Courtroom Number:** | 8 |

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Verita Global at https://www.veritaglobal.net/powin.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: June 17, 2025

**TOGUT, SEGAL & SEGAL LLP**

*/s/ Frank A. Oswald*
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* pending)
Amanda C. Glaubach (*pro hac vice* pending)
Eitan Blander (*pro hac vice* pending)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com

- and -

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (*pro hac vice* pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
        sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (*pro hac vice* pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* pending)
Amanda C. Glaubach (*pro hac vice* pending)
Eitan Blander (*pro hac vice* pending)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  altogut@teamtogut.com
            aglaubach@teamtogut.com
            eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>       Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

US_ACTIVE\130535213

**OMNIBUS MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE REJECTION OF LEGACY CUSTOMER CONTRACTS AND (II) GRANTING
RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Powin, LLC and the affiliated debtors and debtors in possession (collectively, the
"Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), hereby move (the
"Motion") this Court for entry of an order, substantially in the form attached as Exhibit A (the
"Order"), (i) authorizing the omnibus rejection of certain executory contracts with customers
related to the Debtors' legacy employment services agreements ("ESA") and long term services
agreements ("LTSA") business lines (collectively, the "Contracts"), effective *nunc pro tunc* as of
the date hereof (the "Rejection Date"); and (ii) granting related relief.

In further support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

By this Motion, the Debtors seek to reject their existing Customer Contracts (a) to ensure
that the Debtors can devote their resources to support the success of the Debtors' new LTSA
Program[2] described in the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors
to Enter Into New Customer Program With Existing Customers and (II) Granting Related Relief*
[Docket No. 15] ("Customer Program Motion"); (b) to eliminate the burdensome cost and expense
of their legacy Customer Contracts; and (c) to make clear to customers that the only way to utilize
the Debtors' technology and services is in connection with the new LTSA Program.  The ESA side
of the Debtors' business is working-capital intensive, requiring the Debtors to pay in advance for
customer parts and inventory and pay multiple vendors and contractors to install such materials
before receiving payment under ESAs.  As described in the *Declaration of Gerard Uzzi In Support
of Emergency First Day Motions of the Debtors* [Docket No. 13] (the "First Day Declaration"),
the Debtors' two largest customers terminated their ESA contracts prepetition, and that business
is not sustainable at present.  Likewise, although the LTSA business line requires less business

---

[2] Unless otherwise defined herein, all capitalized terms shall have the same meaning as in the First Day Declaration
(defined *infra*).

2

capital, the Debtors are unable to sustain such business line based on their current liquidity profile absent material modifications to their LTSA offerings, which the Debtors are now implementing as described in the Customer Program Motion and the testimony adduced at the hearing on the Customer Program Motion held on June 12, 2025, and which was approved by the Court on such date.  Docket No. 62.

## I.    JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested herein are: sections 105(a), 365(a) of the Bankruptcy Code, Bankruptcy Rules 6004 and 6006, and rules 9013-1 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## II.    BACKGROUND

A. General Background

4.      On June 9, 2025 (the "Petition Date"),[3] the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to

---

[3] Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the remaining Debtors were filed shortly thereafter on June 10, 2025.

sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

5.      Additional information regarding the Debtors, including their businesses and the events leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declaration, the contents of which are incorporated herein by reference.

B.  ESA and LTSA Lines of Business

6.      As more fully set forth in the First Day Declaration, the Debtors have historically operated two lines of business: (i) energy storage integration installation services, whereby the Debtors provide and install batteries at customer sites pursuant to energy supply agreements ("ESA Line of Business"); and (ii) long term servicing, whereby the Debtors maintain and repair the previously installed batteries at customer sites, as needed, pursuant to separate long term servicing agreements (the "LTSA Line of Business").

7.      While the Debtors' ESA Line of Business has resulted in significant losses and liquidity issues for the Debtors due to its intense working capital requirements, installation delays and losses due to increasing liquidated damages claims, the LTSA Line of Business represents a potentially viable and profitable line of business moving forward, and is necessary to Customers. As described in the First Day Declaration, although the Debtors terminated the employment of most ESA employees before the Petition Date, they have maintained a core group of eighty-three (83) employees, including fifty-nine (59) devoted to operations, and seven (7) with intellectual property expertise.  On the foundation of this core group, the Debtors intend to keep the LTSA Line of Business running during the Chapter 11 Cases, and to utilize revenue from this line of business to fund the Chapter 11 Cases.

C.  The Customer Program Motion and the LTSA Program

8.      On June 10, 2025, the Debtors filed the Customer Program Motion seeking approval of the  LTSA Program.  As further described in the Customer Program Motion, under the proposed LTSA Program, the Debtors propose a reduced scope of service at pricing that is

designed to be cash flow positive during the postpetition period. On June 13, 2025, the Court approved the Customer Program and the LTSA Program. Docket No. 62.

      D.   The Winding-Down of the ESA Program and Initial Launch of the LTSA Program

     9.     For months before the commencement of these Chapter 11 Cases, the Debtors have engaged and continue to engage with their Customers under their ESA Line of Business and to seek reasonable, market terms to resolve each respective business relationship on a bespoke basis. Based on negotiations to date, these terms typically include (i) an agreeable resolution of outstanding receivables due to the Debtors, (ii) the conveyance of certain inventory and parts to the Customer, and (iii) providing the Customer with access to certain proprietary technology on a consensual and funded basis. In fact, the Debtors expect to present such a transaction for Court approval shortly.

     10.    Contracts listed on Schedule 1 consist of contracts in connection with the ESA Line of Business which the Debtors are no longer able to effectively perform and are unprofitable and burdensome to the Debtors' business (the "ESA Contracts") and Customer contracts in the Debtors' LTSA Line of Business where the Customer has not yet opted-in to the LTSA Program (the "LTSA Contracts").[4]

     11.    *As to the ESA Contracts*, while the Debtors will work with customers under the ESA Line of Business, and seek alternative arrangements for resolution, the Debtors seek rejection of the ESA Contracts for which the Debtors are unable to reach such a resolution.

     12.    *As to the LTSA Contracts*, likewise, for many months prior to the Petition Date, the Debtors have discussed and continue to discuss the LTSA Line of Business with Customers, culminating in the LTSA Program. A number of such customers have opted-in to the LTSA Program. However, the remaining Customers have not yet opted-in to the LTSA Program. Opting-in to the LTSA Program allows customers to continue to benefit from the bespoke technology, maintenance and repair services offered by the Debtors with respect to previously installed Debtor

---

[4] Though some Contracts are described as a "Purchase Order," these still constitute ESA and LTSA Contracts.

battery systems at Customer sites.  By this Motion, the Debtors seek rejection of Contracts for Customers that do not affirmatively participate in the LTSA Program.

13.     Both shortly before and immediately after the commencement of these Chapter 11 Cases, the Debtors have received dozens of Customer demands for assistance with and access to the Debtors' proprietary technology and otherwise to enforce the Contracts.[5]  In these demands, Customers contend that they are entitled to the enforcement of their rights under the Contracts. The Debtors do not possess the funding or resources to comply with these demands as issued, nor would the Debtors be in a position to cure these alleged defaults in connection with the assumption of any of these Contracts.  As a consequence, including for these reasons and those stated above, the Debtors have determined in their business judgment that the Contracts are burdensome to the estates.  Although the Debtors continue to seek consensual resolutions regarding the Contracts either through bespoke negotiations or the LTSA Program, if resolution cannot be reached, rejection of the Contracts is necessary for the Debtors to continue to pursue the reorganization of their affairs through a sale or other transaction.

14.     In accordance with Bankruptcy Rule 6006(f), the ESA and LTSA Contracts are listed alphabetically on Schedule 1 attached hereto.  As provided in the proposed Order approving this Motion, the Debtors reserve the right to remove certain Contracts from the Order in the event that, through their continuing negotiations, the Debtors are able to resolve matters with particular Customers, up until the date which is ten (10) days following the entry of the Order.

### III.    <u>RELIEF REQUESTED</u>

15.     The Debtors seek entry of the Order (i) authorizing the Debtors to reject the Contracts effective as of the date hereof, and (ii) granting related relief.

---

[5] Many of the Customer demands were in fact issued during the post-petition period, and therefore violate the automatic stay of section 362(a) of the Bankruptcy Code.  The Debtors have issued notices to Customers violating the automatic stay, and reserve all rights to seek appropriate remedies from the Court for such violations.

## IV.    **BASIS FOR RELIEF**

A. <u>The Rejection of the Contracts Reflects a Reasonable Exercise of the Debtors' Business Judgment</u>

16.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 374, 139 S. Ct. 1652, 1658, 203 L. Ed. 2d 876 (2019); *Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (Bankr. D. Del. 1995). Application of the business judgment standard requires a court to approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See, e.g., In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511-12 (Bankr. D. Del. 2003). Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citation omitted).  In summary, a court should approve the proposed rejection under section 365(a) upon determining that the debtor has exercised sound business judgment that the rejection would benefit the estate.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989).

17.    Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. Further, the business judgment standard is satisfied when a debtor determines that assumption or rejection will benefit the estate. *See In re Trans World Airlines, Inc.*, No. 01-0056, 2001 WL 1820019, at *7–8 (Bankr. D. Del. Mar. 16, 2001) (noting that the standard under section 365 requires consideration of the

7

benefit of the rejection to the debtor's estate); *see also In re TS Indus., Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990).

18.     Here, the Debtors have determined in their business judgment that the Contracts are burdensome and that rejection of the Contracts will benefit the Debtors' estates.  As discussed herein, the Contracts consist of (a) unprofitable Contracts under the ESA Line of Business, for which the Debtors no longer have resources (working capital and employees) to fulfill, and (b) Contracts under the LTSA Line of Business with Customers that have not opted-in to the LTSA Program, thereby refusing to adapt to the realities of these Chapter 11 Cases.  Nonetheless, the Debtors reserve the right to remove from the scope of the Order Contracts for which the Debtors are able to resolve outstanding issues through the period which is ten (10) days following entry of the Order.  This construct will allow the Debtors to continue to work with Customers on a consensual basis while protecting the Debtors' assets and minimizing their exposure to unprofitable Contracts.

19.     Customers are being provided with sufficient notice to discuss and engage with the Debtors to avoid a rejection of their Contract(s).  As noted above, subject to Court approval, the Debtors will continue to engage with Customers to resolve outstanding issues to the greatest extent possible.

**B.    Rejection of the Contracts Effective as of the Rejection Date Is Appropriate.**

20.     The Debtors seek to reject the Contracts effective as to the Rejection Date.  This Court and other bankruptcy courts within this District have approved retroactive contract rejection. *See In re Rite-Aid Corporation*, No. 23-18993 (MBK) (Bankr. D.N.J. Nov. 20, 2023) (authorizing rejection effective as of previous date); *In re L'Occitane, Inc.*, No. 21-10632 (MBK) (Bankr. D.N.J. Jan. 28, 2021) (same); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 10, 2020) (same); *In re Modell's Sporting Goods, Inc.*, No. 20-12179 (VFP) (Bankr. D.N.J. Mar. 13, 2020) (same).[6]

---

[6] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

US_ACTIVE\130535213

21.     This is because Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively where the balance of equities favors such relief. *See e.g.*, *In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *CCI Wireless*, 297 B.R. at 140 (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, No. 03-6419, at *3 (S.D.N.Y. Nov. 15, 2002) ("We cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution.").

22.     Here, the Debtors have demonstrated that it is equitable and in the best interest of the estates for rejection to occur effective as of the Rejection Date.  Without such relief, the Debtors, who already face liquidity constraints, may incur material expenses for Contracts that are burdensome to the estates.  Moreover, the Debtors' Customers have been on notice of the Debtors' inability to fulfill the Contracts since before the commencement of these Chapter 11 Cases, due to the nearly constant communication among the Debtors and their Customers for many months.  As a consequence, Customers will not be unduly prejudiced by retroactive rejection, especially given the additional runway to negotiate with the Debtors through the period which is ten (10) days following entry of the Order.

C.     Waiver of Rule 6006(f)(6) is Appropriate.

23.     By this Motion, the Debtors seek wavier of Rule 6006(f)(6) for Schedule 1, which includes more than 100 entries.  Cause exists for such waiver, because it would be more burdensome on the estates and counterparties to separate out the Contracts into multiple motions, especially where the same Customer is often included on multiple listed Contracts and because

9

this Motion consists of a limited subject matter of Contracts. *See In re Rite-Aid Corporation*, No. 23-18993 (MBK) (Bankr. D.N.J. Nov. 20, 2023) (approving motion and authorizing rejection of 345 leases in complex case); *In re Blockbuster Inc.*, No. 10-14997 (BRL), 2010 WL 11834154, at *2 (Bankr. S.D.N.Y. Feb. 23, 2010) ("The limitations contained in Bankruptcy Rule 6006(f)(6) are waived with respect to the Motion."); *In re Crucible Materials Corp.*, No. 09-11582-MFW, 2010 WL 11827474, at *1 (Bankr. D. Del. Jan. 21, 2010) (same).

## V.  WAIVER OF MEMORANDUM OF LAW

24.    The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## VI.  RESERVATION OF RIGHTS

25.    Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted in connection with this Motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds;[7] (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors

---

[7] Of note, the inclusion of a Contract on Schedule 1 is not an admission that such Contract is executory, and rejection of the Contracts only to the extent such Contract(s) are executory.

US_ACTIVE\130535213

or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## VII.   <u>NO PRIOR REQUEST</u>

26.   No prior request for the relief sought in this motion has been made to this or any other court.

## VIII.   <u>NOTICE</u>

Notice of this Motion shall be given to the following parties: (a) the Office of the United States Trustee; (b) counsel for the Debtors' Prepetition Secured Parties; (c) the Debtors' fifty largest unsecured creditors on a consolidated basis, and (d) the Contract counterparties.   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## IX.   <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Order as set forth herein; and (ii) grant the Debtors such other and further relief is just and proper under the circumstances.

*[Signature Page Follows]*

Dated: June 17, 2025

**TOGUT, SEGAL & SEGAL LLP**

*/s/ Frank A. Oswald*
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* pending)
Amanda C. Glaubach (*pro hac vice* pending)
Eitan Blander (*pro hac vice* pending)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
aglaubach@teamtogut.com
eblander@teamtogut.com

- and -

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (*pro hac vice* pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

US_ACTIVE\130535213

## Schedule 1

All of the Debtors' contracts with customers related to the Debtors' legacy employment services

agreements and long term services agreements business lines, including, but not limited to:

| CN | Counterparty Name | Debtor Party | Contract Effective Date | Contract Type | Project Name |
|---|---|---|---|---|---|
| 1 | Acorn I Energy Storage LLC | Powin, LLC | 06/08/2021 | ESA (Energy Storage Agreement) | Acorn |
| 2 | Acorn I Energy Storage LLC | Powin, LLC | 11/06/2019 | LTSA (Long Term Service Agreement) | Acorn |
| 3 | Acorn I Energy Storage LLC | Powin, LLC | 11/06/2019 | ESA (Energy Storage Agreement) | Acorn |
| 4 | Adon Renewables | Powin, LLC | 01/26/2017 | ESA (Energy Storage Agreement) | Adon |
| 5 | Adon Renewables | Powin, LLC | 01/26/2017 | ESA (Energy Storage Agreement) | |
| 6 | AKA Group | Powin, LLC | 12/23/2021 | ESA (Energy Storage Agreement) | Summerside |
| 7 | Akaysha Energy Pty Ltd | Powin, LLC | 03/01/2022 | Framework Agreement | |
| 8 | Akaysha Energy Pty Ltd | Powin, LLC | 04/18/2022 | Framework Agreement | |
| 9 | Ameresco Inc | Powin, LLC | 04/29/2022 | Framework Agreement | |
| 10 | Ameresco Inc. | Powin, LLC | 11/23/2022 | ESA (Energy Storage Agreement) | OUC BESS |
| 11 | Ameresco, Inc. | Powin, LLC | 08/02/2024 | LTSA (Long Term Service Agreement) | Viper |
| 12 | Amp Solar US Services LLC | Powin, LLC | 08/28/2020 | Purchase Order | |
| 13 | AMP Solar US Services LLC | Powin, LLC | 07/28/2022 | ESA (Energy Storage Agreement) | Three Rivers |
| 14 | AMP Solar US Services LLC | Powin, LLC | 07/28/2022 | ESA (Energy Storage Agreement) | FRS |
| 15 | AMP Solar US Services LLC | Powin, LLC | 07/28/2022 | ESA (Energy Storage Agreement) | Cotuit |
| 16 | Amp Solar US Services LP | Powin, LLC | 01/25/2021 | Purchase Order | Oak Hill 2 |
| 17 | Amp Solar US Services LP | Powin, LLC | 01/25/2021 | Purchase Order | Oak Hill 1 |
| 18 | Amp Solar US Services LP | Powin, LLC | 01/19/2021 | Purchase Order | Elmbrook |
| 19 | Amp Solar US Services LP | Powin, LLC | 08/04/2020 | Purchase Order | Cronin |
| 20 | Amp Solar US Services LP | Powin, LLC | 09/09/2020 | LTSA (Long Term Service Agreement) | Cronin |
| 21 | Amp Solar US Services LP | Powin, LLC | 08/04/2020 | Purchase Order | Wallum |
| 22 | Amp Solar US Services LP | Powin, LLC | 09/09/2020 | LTSA (Long Term Service Agreement) | Wallum |
| 23 | Amp Solar US Services LP | Powin, LLC | 08/28/2020 | Purchase Order | Palmer |
| 24 | Amp Solar US Services LP | Powin, LLC | 08/28/2020 | Purchase Order | Adams |
| 25 | Amp Solar US Services LP | Powin, LLC | 11/09/2021 | LTSA (Long Term Service Agreement) | Oak Hill 2 |
| 26 | Amp Solar US Services LP | Powin, LLC | 11/09/2021 | LTSA (Long Term Service Agreement) | Oak Hill 1 |
| 27 | Amp Solar US Services LP | Powin, LLC | 11/09/2021 | LTSA (Long Term Service Agreement) | Elmbrook |
| 28 | Angelo Storage LLC | Powin, LLC | 11/17/2023 | LTSA (Long Term Service Agreement) | Angelo Storage |
| 29 | Angelo Storage, LLC | Powin, LLC | 08/10/2022 | ESA (Energy Storage Agreement) | Angelo Storage |
| 30 | Angelo Storage, LLC. | Powin, LLC | 03/07/2025 | LTSA (Long Term Service Agreement) | Angelo |
| 31 | Angelo Storage, LLC. | Powin, LLC | 09/30/2024 | ESA (Energy Storage Agreement) | Angelo Storage |
| 32 | Angelo Storage, LLC. | Powin, LLC | 09/30/2024 | LTSA (Long Term Service Agreement) | Angelo Storage |
| 33 | Arizona Storage Development LLC | Powin, LLC | 03/05/2021 | ESA (Energy Storage Agreement) | Paloma/Cotton |
| 34 | Arizona Storage Development LLC | Powin, LLC | 03/05/2021 | ESA (Energy Storage Agreement) | Hyder I and II |
| 35 | Arizona Storage Development LLC | Powin, LLC | 03/05/2021 | ESA (Energy Storage Agreement) | Gila Bend I and II |
| 36 | Arizona Storage Development LLC | Powin, LLC | 03/05/2021 | ESA (Energy Storage Agreement) | Foothills I and II |
| 37 | Arizona Storage Development LLC | Powin, LLC | 03/05/2021 | ESA (Energy Storage Agreement) | Desert Star |
| 38 | Arrow Canyon Solar, LLC | Powin, LLC | 04/10/2025 | ESA (Energy Storage Agreement) | Arrow Canyon |
| 39 | Arrow Canyon Solar, LLC | Powin, LLC | 12/10/2021 | LTSA (Long Term Service Agreement) | Arrow Canyon |
| 40 | Arrow Canyon Solar, LLC | Powin, LLC | 06/03/2021 | ESA (Energy Storage Agreement) | Arrow Canyon |
| 41 | ASO COTUIT MA SOLAR LLC | Powin, LLC | 09/18/2023 | LTSA (Long Term Service Agreement) | Cotuit |
| 42 | ASD THREE RIVERS MA SOLAR LLC | Powin, LLC | 09/18/2023 | LTSA (Long Term Service Agreement) | Three Rivers |
| 43 | Aspin Kemp & Associates Inc | Powin, LLC | 12/23/2021 | ESA (Energy Storage Agreement) | Summerside |
| 44 | Auto-Chen Ltd | Powin, LLC | 06/09/2021 | ESA (Energy Storage Agreement) | Or Haner |
| 45 | Auto-Chen Ltd | Powin, LLC | 06/09/2021 | ESA (Energy Storage Agreement) | Nir Yitsac 3 |
| 46 | Auto-Chen Ltd | Powin, LLC | 06/09/2021 | ESA (Energy Storage Agreement) | Nir Yitsac 2 |
| 47 | Auto-Chen Ltd | Powin, LLC | 06/09/2021 | ESA (Energy Storage Agreement) | Neat Mordechai |
| 48 | Auto-Chen Ltd | Powin, LLC | 05/12/2021 | ESA (Energy Storage Agreement) | Nir David (Nofar 2) |
| 49 | Auto-Chen Ltd | Powin, LLC | 05/12/2021 | ESA (Energy Storage Agreement) | Gevim (Rimon 2) |
| 50 | Auto-Chen Ltd | Powin, LLC | 05/12/2021 | ESA (Energy Storage Agreement) | Gevim (Rimon 1) |
| 51 | AVEP BESS, LLC | Powin, LLC | 12/15/2022 | LTSA (Long Term Service Agreement) | AVEP |
| 52 | AVEP BESS, LLC | Powin, LLC | 12/21/2022 | ESA (Energy Storage Agreement) | AVEP |
| 53 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 01/06/2025 | ESA (Energy Storage Agreement) | Ravenswood - Group 3 |
| 54 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 01/06/2025 | ESA (Energy Storage Agreement) | Ravenswood - Group 2 |
| 55 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 01/06/2025 | ESA (Energy Storage Agreement) | Ravenswood - Group 1 |
| 56 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 07/12/2024 | ESA (Energy Storage Agreement) | Ravenswood |
| 57 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 07/12/2024 | ESA (Energy Storage Agreement) | Ravenswood |
| 58 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 07/12/2024 | ESA (Energy Storage Agreement) | Ravenswood |
| 59 | BigBeau Solar, LLC | Powin, LLC | 02/01/2021 | ESA (Energy Storage Agreement) | Big Beau 2 |
| 60 | BigBeau Solar, LLC | Powin, LLC | 07/19/2021 | LTSA (Long Term Service Agreement) | Big Beau 2 |
| 61 | BigBeau Solar, LLC | Powin, LLC | 07/19/2021 | LTSA (Long Term Service Agreement) | Big Beau 1 |
| 62 | BigBeau Solar, LLC | Powin, LLC | 02/01/2021 | ESA (Energy Storage Agreement) | Big Beau 1 |
| 63 | Cameron Wind 1, LLC | Powin, LLC | 05/03/2024 | ESA (Energy Storage Agreement) | Sabal Augmentation |
| 64 | Cameron Wind 1, LLC | Powin, LLC | 05/03/2024 | ESA (Energy Storage Agreement) | Sabal |
| 65 | Cameron Wind 1, LLC | Powin, LLC | 04/01/2024 | LTSA (Long Term Service Agreement) | Sabal |
| 66 | Chaparral Springs, LLC | Powin, LLC | 07/27/2022 | ESA (Energy Storage Agreement) | Willow Springs |
| 67 | Chaparral Springs, LLC | Powin, LLC | 08/08/2022 | LTSA (Long Term Service Agreement) | Willow Springs |
| 68 | Chaparral Springs, LLC | Powin, LLC | 08/08/2022 | LTSA (Long Term Service Agreement) | Chaparral Springs |
| 69 | Chaparral Springs, LLC | Powin, LLC | 07/27/2022 | ESA (Energy Storage Agreement) | Chaparral Springs |
| 70 | Clean Peak Energy (CPE) | Powin, LLC | 09/09/2019 | ESA (Energy Storage Agreement) | Wanneroo Plaza - CPE-1 |
| 71 | Clean Peak Energy (CPE) | Powin, LLC | 09/09/2019 | ESA (Energy Storage Agreement) | Lansell Square CPE-4 |
| 72 | Clean Peak Energy (CPE) | Powin, LLC | 09/09/2019 | ESA (Energy Storage Agreement) | Bateau |
| 73 | Clean Peak Energy (CPE) | Powin, LLC | 09/09/2019 | ESA (Energy Storage Agreement) | Salamander Bay CPE-2 |
| 74 | Clean Peak Energy (CPE) | Powin, LLC | 05/20/2021 | Purchase Order | Phase 2 |
| 75 | Convergent Energy and Power LP | Powin, LLC | 02/16/2022 | ESA (Energy Storage Agreement) | West Warwick III |
| 76 | Convergent Energy and Power LP | Powin, LLC | 02/16/2022 | ESA (Energy Storage Agreement) | West Warwick II |
| 77 | Convergent Energy and Power LP | Powin, LLC | 02/16/2022 | ESA (Energy Storage Agreement) | West Warwick I |
| 78 | CS Energy, LLC | Powin, LLC | 09/29/2020 | Purchase Order | Countryside |
| 79 | Desert Quartzite | Powin, LLC | 12/12/2023 | LTSA (Long Term Service Agreement) | Desert Quartzite |
| 80 | Desert Quartzite, LLC | Powin, LLC | 02/28/2025 | ESA (Energy Storage Agreement) | Desert Quartzite |
| 81 | Desert Quartzite, LLC | Powin, LLC | 10/18/2024 | ESA (Energy Storage Agreement) | Desert Quartzite |
| 82 | Desert Quartzite, LLC | Powin, LLC | 03/20/2024 | LTSA (Long Term Service Agreement) | Desert Quartzite |
| 83 | Desert Quartzite, LLC | Powin, LLC | 03/20/2024 | ESA (Energy Storage Agreement) | Desert Quartzite |
| 84 | Desert Quartzite, LLC | Powin, LLC | 12/06/2022 | ESA (Energy Storage Agreement) | Desert Quartzite |
| 85 | DTE Electric Company | Powin, LLC | 12/20/2024 | LTSA (Long Term Service Agreement) | Slocum |
| 86 | DTE Electric Company | Powin, LLC | 01/24/2024 | ESA (Energy Storage Agreement) | Trenton |
| 87 | DTE Electric Company | Powin, LLC | 12/15/2022 | ESA (Energy Storage Agreement) | Slocum |
| 88 | East Brookfield Adams Road Solar LLC | Powin, LLC | 09/20/2021 | LTSA (Long Term Service Agreement) | Adams Road |
| 89 | EDF Renewables | Powin, LLC | | Purchase Order | |
| 90 | EDF Renewables Development, Inc. | Powin, LLC | 09/09/2022 | ESA (Energy Storage Agreement) | |
| 91 | El Sol Energy Storage LLC | Powin, LLC | 05/19/2023 | ESA (Energy Storage Agreement) | El Sol |
| 92 | El Sol Storage Energy LLC | Powin, LLC | 04/09/2021 | ESA (Energy Storage Agreement) | El Sol |
| 93 | ESI Inc. | Powin, LLC | 12/05/2022 | ESA (Energy Storage Agreement) | Brandywine |
| 94 | Flower Valley, LLC | Powin, LLC | 05/15/2020 | ESA (Energy Storage Agreement) | Flower Valley |
| 95 | Flower Valley, LLC | Powin, LLC | 05/15/2020 | LTSA (Long Term Service Agreement) | Flower Valley |
| 96 | FORT RIVER SOLAR 2 LLC | Powin, LLC | 09/18/2023 | LTSA (Long Term Service Agreement) | FRS |
| 97 | Front Range-Midway Solar Project, LLC | Powin, LLC | 11/17/2021 | ESA (Energy Storage Agreement) | Fountain |

| CN | Counterparty Name | Debtor Party | Contract Effective Date | Contract Type | Project Name |
|---|---|---|---|---|---|
| 98 | Front Range-Midway Solar Project, LLC | Powin, LLC | 11/17/2021 | ESA (Energy Storage Agreement) | Fountain |
| 99 | Galp Parques Fotovoltaicos de Alcoutim | Powin, LLC | 12/04/2023 | ESA (Energy Storage Agreement) | Alcoutim |
| 100 | Galp Parques Fotovoltaicos de Alcoutim, LDA | Powin, LLC | 10/01/2024 | LTSA (Long Term Service Agreement) | Alcoutim |
| 101 | Go Electric Inc | Powin, LLC | 08/31/2018 | ESA (Energy Storage Agreement) | Go Electric, ThunderBay |
| 102 | Go Electric, Inc. | Powin, LLC | 02/02/2023 | ESA (Energy Storage Agreement) | |
| 103 | Great Kiskadee Storage, LLC | Powin, LLC | 02/21/2025 | ESA (Energy Storage Agreement) | Great Kiskadee |
| 104 | Great Kiskadee Storage, LLC | Powin, LLC | 09/30/2024 | LTSA (Long Term Service Agreement) | Great Kiskadee |
| 105 | Great Kiskadee Storage, LLC | Powin, LLC | 09/30/2024 | ESA (Energy Storage Agreement) | Great Kiskadee |
| 106 | Great Kiskadee Storage, LLC | Powin, LLC | 03/27/2024 | LTSA (Long Term Service Agreement) | Great Kiskadee |
| 107 | Great Kiskadee Storage, LLC | Powin, LLC | 08/26/2022 | ESA (Energy Storage Agreement) | Great Kiskadee Storage |
| 108 | Gridspan Energy | Powin, LLC | 10/29/2018 | Purchase Order | Gridspan |
| 109 | Hampden Landfill Solar LLC | Powin, LLC | 07/31/2023 | LTSA (Long Term Service Agreement) | Hampden |
| 110 | Hampden Landfill Solar LLC | Powin, LLC | 05/11/2022 | ESA (Energy Storage Agreement) | Hampden |
| 111 | Hecate Energy Ontario Storage VII, LP | Powin, LLC | 10/30/2018 | LTSA (Long Term Service Agreement) | Kitchener II |
| 112 | Hecate Energy Ontario Storage VII, LP | Powin, LLC | 03/01/2018 | ESA (Energy Storage Agreement) | Kitchener II |
| 113 | Honeywell International | Powin, LLC | 08/18/2021 | LTSA (Long Term Service Agreement) | |
| 114 | Honeywell International Inc. / Honeywell Process Solutions | Powin, LLC | 01/11/2019 | ESA (Energy Storage Agreement) | Bruce Power |
| 115 | Honeywell International Inc. / Honeywell Process Solutions | Powin, LLC | 01/18/2019 | ESA (Energy Storage Agreement) | Bruce Power |
| 116 | Honeywell International, Inc. | Powin, LLC | 05/01/2020 | Purchase Order | NRStor Enbridge |
| 117 | Honeywell International, Inc. | Powin, LLC | 12/20/2019 | ESA (Energy Storage Agreement) | |
| 118 | Honeywell Limited - HPS CA | Powin, LLC | 12/01/2020 | Purchase Order | NRStor Canopy Growth |
| 119 | Honeywell Limited - HPS CA | Powin, LLC | 03/01/2019 | Purchase Order | Bruce Power |
| 120 | Honeywell Limited - HPS CA | Powin, LLC | 09/23/2020 | Purchase Order | Hydro Extrusion |
| 121 | Honeywell Limited - HPS CA | Powin, LLC | 05/01/2020 | Purchase Order | NRStor Malpack 1.1 |
| 122 | Honeywell Limited - HPS CA | Powin, LLC | 05/01/2020 | Purchase Order | NRStor Malpack 1.2 |
| 123 | Honeywell Limited - HPS CA | Powin, LLC | 03/24/2020 | Purchase Order | NRStor Canopy Growth |
| 124 | Honeywell Limited - HPS CA | Powin, LLC | 05/01/2020 | Purchase Order | NRStor Toyota Boshoku |
| 125 | Honeywell Limited - HPS CA | Powin, LLC | 04/18/2020 | Purchase Order | NRStor Pillers Waterloo |
| 126 | Honeywell Limited - HPS CA | Powin, LLC | 04/02/2020 | Purchase Order | NRStor Pillers Waterloo |
| 127 | Honeywell Limited - HPS CA | Powin, LLC | 04/02/2020 | Purchase Order | NRStor Pillers Brantford |
| 128 | Honeywell Limited - HPS CA | Powin, LLC | 04/02/2020 | Purchase Order | NRStor Rich Foods |
| 129 | Honeywell Limited - HPS CA | Powin, LLC | 05/01/2020 | Purchase Order | NRStor Enbridge |
| 130 | Honeywell Limited - HPS CA | Powin, LLC | 04/02/2020 | Purchase Order | NRStor Decast |
| 131 | Honeywell Limited - HPS CA | Powin, LLC | 04/02/2020 | Purchase Order | NRStor Kelloggs |
| 132 | Hummingbird Energy Storage, LLC | Powin, LLC | 07/18/2024 | LTSA (Long Term Service Agreement) | Hummingbird |
| 133 | Hummingbird Energy Storage, LLC | Powin, LLC | 06/03/2024 | ESA (Energy Storage Agreement) | Hummingbird |
| 134 | Hummingbird Energy Storage, LLC | Powin, LLC | 02/10/2023 | LTSA (Long Term Service Agreement) | Hummingbird |
| 135 | Hummingbird Energy Storage, LLC | Powin, LLC | 02/03/2023 | ESA (Energy Storage Agreement) | Hummingbird |
| 136 | Hunt Energy Solutions | Powin, LLC | 06/11/2019 | Purchase Order | Hunt Demo |
| 137 | Idaho Power Company | Powin, LLC | 08/21/2023 | LTSA (Long Term Service Agreement) | Black Mesa, WESR, ELMR, Hemingway, MLBA, Filer |
| 138 | Idaho Power Company | Powin, LLC | 12/28/2021 | ESA (Energy Storage Agreement) | MLBA |
| 139 | Idaho Power Company | Powin, LLC | 12/28/2021 | ESA (Energy Storage Agreement) | ELMR |
| 140 | Idaho Power Company | Powin, LLC | 12/28/2021 | ESA (Energy Storage Agreement) | FILR |
| 141 | Idaho Power Company | Powin, LLC | 12/28/2021 | ESA (Energy Storage Agreement) | WESR |
| 142 | Idaho Power Company | Powin, LLC | 02/28/2022 | ESA (Energy Storage Agreement) | Hemingway |
| 143 | Idaho Power Company | Powin, LLC | 06/08/2023 | ESA (Energy Storage Agreement) | Hemingway Expansion |
| 144 | Idaho Power Company | Powin, LLC | 02/28/2022 | ESA (Energy Storage Agreement) | Black Mesa |
| 145 | II Battery Storage US LLC (CAMERON WIND I, LLC) | Powin, LLC | 05/13/2022 | ESA (Energy Storage Agreement) | Sabal |
| 146 | Invenergy Services LLC | Powin, LLC | 02/21/2024 | LTSA (Long Term Service Agreement) | El Sol, Orangeville, Arizona Sun |
| 147 | Invenergy Services LLC | Powin, LLC | 03/01/2022 | LTSA (Long Term Service Agreement) | Orangeville, El Sol, Az Sun |
| 148 | Invenergy Storage Development LLC | Powin, LLC | 10/02/2018 | ESA (Energy Storage Agreement) | MIDAM |
| 149 | Invenergy Storage Development LLC | Powin, LLC | 12/20/2019 | ESA (Energy Storage Agreement) | |
| 150 | Invenergy Storage Development LLC | Powin, LLC | 02/05/2021 | ESA (Energy Storage Agreement) | Westar/Sedgwick |
| 151 | Jema Energy S.A | Powin, LLC | | Purchase Order | |
| 152 | Jema Energy S.A. | Powin, LLC | 12/20/2018 | Purchase Order | Flexitranstore |
| 153 | KCE TX 2, LLC | Powin, LLC | 06/01/2020 | LTSA (Long Term Service Agreement) | KCE TX2 - Port Lavaca |
| 154 | KCE TX 2, LLC | Powin, LLC | 05/22/2020 | Purchase Order | KCE TX2 - Port Lavaca |
| 155 | KCE TX 7, LLC | Powin, LLC | 06/01/2020 | LTSA (Long Term Service Agreement) | KCE TX7 - Flat Top |
| 156 | KCE TX 7, LLC | Powin, LLC | 05/22/2020 | Purchase Order | KCE TX7 - Flat Top |
| 157 | KCE TX 8, LLC | Powin, LLC | 05/22/2020 | Purchase Order | KCE TX8 - Worsham |
| 158 | KCE TX 8, LLC | Powin, LLC | 06/01/2020 | LTSA (Long Term Service Agreement) | KCE TX8 - Worsham |
| 159 | Key Capture Energy, LLC (KCE) | Powin, LLC | 06/01/2020 | LTSA (Long Term Service Agreement) | NY 3- Pomona |
| 160 | Key Capture Energy, LLC (KCE) | Powin, LLC | 02/20/2020 | Purchase Order | |
| 161 | KMC Thermo, LLC | Powin, LLC | 04/01/2025 | LTSA (Long Term Service Agreement) | Brandywine |
| 162 | La Grange, an Incorporated North Carolina Town | Powin, LLC | 06/30/2021 | LTSA (Long Term Service Agreement) | LaGrange |
| 163 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 08/24/2021 | Purchase Order | Taiwan (YSO0010 - Ysolar) |
| 164 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 09/30/2022 | ESA (Energy Storage Agreement) | Taiwan (YSO0010 - Ysolar) |
| 165 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 03/03/2022 | Purchase Order | Kinmin |
| 166 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 08/06/2021 | Purchase Order | Taiwan (YSO0010 - Ysolar) |
| 167 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 03/03/2022 | Purchase Order | Kinmin |
| 168 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 12/13/2021 | Purchase Order | Leader Project 2 |
| 169 | Lone Star Solar, LLC | Powin, LLC | 08/21/2024 | ESA (Energy Storage Agreement) | Lonestar |
| 170 | Lone Star Solar, LLC | Powin, LLC | 01/19/2024 | ESA (Energy Storage Agreement) | Lonestar |
| 171 | Lone Star Solar, LLC | Powin, LLC | 09/15/2023 | ESA (Energy Storage Agreement) | Lonestar |
| 172 | Lone Star Solar, LLC | Powin, LLC | 05/01/2023 | ESA (Energy Storage Agreement) | Lonestar |
| 173 | Lone Star Solar, LLC | Powin, LLC | 05/01/2023 | LTSA (Long Term Service Agreement) | Lonestar |
| 174 | Longroad | Powin, LLC | 10/11/2024 | ESA (Energy Storage Agreement) | Sunstreams 3 |
| 175 | Longroad BESS Procurement LLC | Powin, LLC | 01/07/2022 | Framework Agreement | |
| 176 | Longroad BESS Procurement, LLC | Powin, LLC | 12/09/2022 | Framework Agreement | |
| 177 | Maverick Solar 6, LLC | Powin, LLC | 07/19/2021 | LTSA (Long Term Service Agreement) | Mav 6 |
| 178 | Mesa Technical Associates, Inc. | Powin, LLC | 10/01/2019 | Purchase Order | Raymond |
| 179 | MG HR S de R.L de C.V. | Powin, LLC | 12/13/2024 | ESA (Energy Storage Agreement) | Insurgentes Expansion |
| 180 | MG HR, S. de R.L. de C.V. | Powin, LLC | 12/20/2019 | ESA (Energy Storage Agreement) | Insurgentes |
| 181 | MG HR, S. de R.L. de C.V. | Powin, LLC | 01/31/2020 | ESA (Energy Storage Agreement) | Insurgentes |
| 182 | Mitsubishi Electric Power Products, Inc (MEPPI) | Powin, LLC | 12/19/2018 | Purchase Order | |
| 183 | Mitsubishi Electric Power Products, Inc (MEPPI) | Powin, LLC | 12/19/2018 | Purchase Order | |
| 184 | Mitsubishi Hitachi Power Systems Americas, Inc. (MHPS) | Powin, LLC | 03/25/2020 | Purchase Order | Fredonia |
| 185 | Mitsubishi Hitachi Power Systems Americas, Inc. (MHPS) | Powin, LLC | 03/05/2020 | Purchase Order | Fredonia |
| 186 | Mitsubishi Hitachi Power Systems Americas, Inc. (MHPS) | Powin, LLC | 08/31/2020 | ESA (Energy Storage Agreement) | Johanna |
| 187 | Mitsubishi Power Americas Inc | Powin, LLC | 12/08/2022 | LTSA (Long Term Service Agreement) | Tranquility |
| 188 | Mitsubishi Power Americas Inc | Powin, LLC | 12/08/2022 | LTSA (Long Term Service Agreement) | Garland |
| 189 | Mitsubishi Power Americas, Inc. | Powin, LLC | 10/26/2020 | ESA (Energy Storage Agreement) | Garland |
| 190 | Mitsubishi Power Americas, Inc. | Powin, LLC | 02/08/2022 | ESA (Energy Storage Agreement) | Mav 6 |

| CN | Counterparty Name | Debtor Party | Contract Effective Date | Contract Type | Project Name |
|---|---|---|---|---|---|
| 191 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 06/14/2022 | LTSA (Long Term Service Agreement) | MHPS/KCE TX 11 |
| 192 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 06/28/2021 | LTSA (Long Term Service Agreement) | Tranquility |
| 193 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 06/28/2021 | LTSA (Long Term Service Agreement) | Garland |
| 194 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 11/23/2020 | LTSA (Long Term Service Agreement) | Tranquility |
| 195 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/16/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 23 |
| 196 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/16/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 12 |
| 197 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 05/19/2021 | ESA (Energy Storage Agreement) | MHPS/KCE TX 11 |
| 198 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/15/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 11 |
| 199 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 05/19/2021 | LTSA (Long Term Service Agreement) | KCE TX 12 |
| 200 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 05/19/2021 | LTSA (Long Term Service Agreement) | KCE TX 23 |
| 201 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 01/25/2021 | LTSA (Long Term Service Agreement) | Johanna |
| 202 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 07/21/2021 | LTSA (Long Term Service Agreement) | Tranquility |
| 203 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 07/21/2021 | LTSA (Long Term Service Agreement) | Garland |
| 204 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 11/23/2020 | ESA (Energy Storage Agreement) | Tranquility |
| 205 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/26/2020 | ESA (Energy Storage Agreement) | Garland |
| 206 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/16/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 23 |
| 207 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/16/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 12 |
| 208 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/16/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 11 |
| 209 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 12/22/2020 | ESA (Energy Storage Agreement) | Mav 6 |
| 210 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 02/26/2021 | ESA (Energy Storage Agreement) | Mav 6 |
| 211 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 02/01/2021 | ESA (Energy Storage Agreement) | Big Beau 2 |
| 212 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 02/01/2021 | ESA (Energy Storage Agreement) | Big Beau 1 |
| 213 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 04/25/2022 | ESA (Energy Storage Agreement) | Garland |
| 214 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 01/30/2025 | ESA (Energy Storage Agreement) | Waratah Super Battery |
| 215 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 07/26/2024 | ESA (Energy Storage Agreement) | Waratah |
| 216 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 02/17/2024 | ESA (Energy Storage Agreement) | Waratah |
| 217 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 05/03/2023 | ESA (Energy Storage Agreement) | Waratah |
| 218 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 05/03/2023 | ESA (Energy Storage Agreement) | Waratah |
| 219 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 11/03/2023 | ESA (Energy Storage Agreement) | Waratah Super Battery |
| 220 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 12/16/2022 | LTSA (Long Term Service Agreement) | Waratah Super Battery |
| 221 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 11/04/2022 | ESA (Energy Storage Agreement) | Waratah Super Battery |
| 222 | Nidec ASI S.p.A. | Powin, LLC | 05/29/2019 | Purchase Order | Nidec - Disney Bahamas |
| 223 | Nidec ASI S.p.A. | Powin, LLC | 07/15/2019 | ESA (Energy Storage Agreement) | Nidec - Disney Bahamas |
| 224 | Nidec ASI S.p.A. | Powin, LLC | 07/15/2019 | ESA (Energy Storage Agreement) | Nidec - Disney Bahamas |
| 225 | Northstar Energy Management, LLC | Powin, LLC | 07/03/2024 | LTSA (Long Term Service Agreement) | Poblano |
| 226 | Northstar Energy Management, LLC | Powin, LLC | 02/27/2023 | ESA (Energy Storage Agreement) | Sunstreams 3 |
| 227 | Oak Hill Solar 1 LLC | Powin, LLC | 09/03/2021 | Purchase Order | |
| 228 | Oak Hill Solar 2 LLC | Powin, LLC | 09/03/2021 | Purchase Order | |
| 229 | Orangeville Energy Storage LLC | Powin, LLC | 11/02/2020 | Purchase Order | Orangeville |
| 230 | Orangeville Energy Storage LLC | Powin, LLC | 11/02/2020 | ESA (Energy Storage Agreement) | Orangeville |
| 231 | Orcas Power & Light Cooperative (OPALCO) | Powin, LLC | 12/04/2019 | Purchase Order | OPALCO |
| 232 | Orcas Power & Light Cooperative (OPALCO) | Powin, LLC | 07/12/2019 | ESA (Energy Storage Agreement) | OPALCO |
| 233 | Ormat Nevada Inc | Powin, LLC | 03/15/2022 | ESA (Energy Storage Agreement) | Bottleneck |
| 234 | Ormat Nevada Inc. | Powin, LLC | 03/15/2022 | ESA (Energy Storage Agreement) | Bottleneck |
| 235 | Ormat Nevada, Inc. | Powin, LLC | 03/30/2023 | ESA (Energy Storage Agreement) | Bottleneck |
| 236 | Ormat Nevada, inc. | Powin, LLC | 11/03/2023 | LTSA (Long Term Service Agreement) | Bottleneck |
| 237 | Pacificorp | Powin, LLC | 10/06/2021 | ESA (Energy Storage Agreement) | Klamath Falls |
| 238 | Pine Gate Renewables, LLC | Powin, LLC | 02/19/2021 | ESA (Energy Storage Agreement) | Tremont |
| 239 | Pine Gate Renewables, LLC | Powin, LLC | 02/19/2021 | ESA (Energy Storage Agreement) | Rochester |
| 240 | Poblano Energy Storage, LLC | Powin, LLC | 04/17/2023 | ESA (Energy Storage Agreement) | Poblano |
| 241 | Portland General Electric (PGE) | Powin, LLC | 10/07/2019 | Purchase Order | BPSB Microgrid |
| 242 | PowerFlex Solar, LLC | Powin, LLC | 02/21/2025 | ESA (Energy Storage Agreement) | USCS Fresno |
| 243 | Powerflex Systems, Inc. | Powin, LLC | 06/11/2021 | ESA (Energy Storage Agreement) | Ventura |
| 244 | Powerflex Systems, Inc. | Powin, LLC | 06/11/2021 | ESA (Energy Storage Agreement) | Thousand Oaks |
| 245 | PowerFlex Systems, LLC | Powin, LLC | 12/09/2022 | ESA (Energy Storage Agreement) | ESRT NY |
| 246 | PowerFlex Systems, LLC | Powin, LLC | 12/09/2022 | ESA (Energy Storage Agreement) | CSU Fullerton |
| 247 | Powin Energy Ontario Storage, LLC | Powin, LLC | 07/01/2017 | ESA (Energy Storage Agreement) | Stratford |
| 248 | Powin Energy Ontario Storage, LLC | Powin, LLC | 03/29/2018 | LTSA (Long Term Service Agreement) | Stratford |
| 249 | PPA Grand Johanna LLC | Powin, LLC | 12/04/2017 | ESA (Energy Storage Agreement) | Millikan |
| 250 | PPA Grand Johanna LLC | Powin, LLC | 12/04/2017 | LTSA (Long Term Service Agreement) | Millikan |
| 251 | Prisma Energy Solutions LLC | Powin, LLC | | Master Service Agreement | |
| 252 | Public Service Company of New Mexico | Powin, LLC | 05/01/2023 | ESA (Energy Storage Agreement) | South Valley |
| 253 | Public Service Company of New Mexico | Powin, LLC | 05/01/2023 | ESA (Energy Storage Agreement) | Rio Del Oro |
| 254 | Pulse | Powin, LLC | 12/22/2023 | ESA (Energy Storage Agreement) | Overhill |
| 255 | PULSE CLEAN ENERGY SPV WATT LIMITED | Powin, LLC | 12/22/2023 | LTSA (Long Term Service Agreement) | Overhill |
| 256 | Pure Power Solutions, Inc. | Powin, LLC | 02/27/2018 | Purchase Order | Pure Power - Silver Oak |
| 257 | Putah Creek Solar Farms, LLC | Powin, LLC | 12/08/2022 | LTSA (Long Term Service Agreement) | Putah Creek |
| 258 | Putah Creek Solar Farms, LLC | Powin, LLC | 04/22/2021 | ESA (Energy Storage Agreement) | Putah Creek |
| 259 | PuYuan Green Energy Inc. | Powin, LLC | | Purchase Order | PuYuan 650 EVE |
| 260 | QPO Energy, LLC | Powin, LLC | 10/14/2021 | Purchase Order | USA |
| 261 | QPO Energy, LLC | Powin, LLC | 10/01/2021 | Purchase Order | Taiwan |
| 262 | QPO Energy, LLC | Powin, LLC | 10/14/2021 | Purchase Order | USA |
| 263 | QPO Energy, LLC | Powin, LLC | 10/14/2021 | Purchase Order | Taiwan |
| 264 | Rabbitbrush Solar, LLC | Powin, LLC | 09/17/2021 | ESA (Energy Storage Agreement) | Rabbitbrush |
| 265 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 266 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 267 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 268 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 269 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 270 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 271 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 272 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 273 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 274 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 275 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 276 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 277 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 278 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 279 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 280 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 281 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 282 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 283 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 284 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 285 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 286 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 287 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 288 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush |
| 289 | Rabbitbrush Solar, LLC | Powin, LLC | 03/18/2022 | LTSA (Long Term Service Agreement) | Rabbitbrush |

| CN | Counterparty Name | Debtor Party | Contract Effective Date | Contract Type | Project Name |
|---|---|---|---|---|---|
| 290 | Rabbittbrush Solar, LLC | Powin, LLC | 03/18/2022 | LTSA (Long Term Service Agreement) | Rabbittbrush |
| 291 | Rabbittbrush Solar, LLC | Powin, LLC | 09/17/2021 | ESA (Energy Storage Agreement) | Rabbittbrush 2 |
| 292 | Santa Paula Energy Storage, LLC | Powin, LLC | 07/13/2023 | LTSA (Long Term Service Agreement) | Santa Paula |
| 293 | Santa Paula Energy Storage, LLC | Powin, LLC | 10/21/2021 | LTSA (Long Term Service Agreement) | Santa Paula |
| 294 | Santa Paula Energy Storage, LLC | Powin, LLC | 10/21/2021 | ESA (Energy Storage Agreement) | Santa Paula |
| 295 | Saturn Battery I LP | Powin, LLC | 05/01/2023 | LTSA (Long Term Service Agreement) | Bruce Power |
| 296 | Saturn Power Inc. | Powin, LLC | 04/06/2018 | Purchase Order | |
| 297 | SCS Van Wyck 012823 Croton On Hudson, LLC | Powin, LLC | 02/10/2025 | LTSA (Long Term Service Agreement) | Croton Harmon |
| 298 | SCS Van Wyck 012823 Croton On Hudson, LLC | Powin, LLC | 11/23/2021 | ESA (Energy Storage Agreement) | Croton Harmon Train Station |
| 299 | Serrano Solar, LLC | Powin, LLC | 11/06/2024 | ESA (Energy Storage Agreement) | Serrano |
| 300 | Serrano Solar, LLC | Powin, LLC | 05/05/2023 | ESA (Energy Storage Agreement) | Serrano |
| 301 | Solar Star 3, LLC | Powin, LLC | 08/31/2023 | LTSA (Long Term Service Agreement) | Solar Star 3 |
| 302 | Solar Star 3, LLC | Powin, LLC | 08/31/2023 | ESA (Energy Storage Agreement) | Solar Star 3 |
| 303 | Solar Star 4, LLC | Powin, LLC | 08/31/2023 | ESA (Energy Storage Agreement) | Solar Star 4 |
| 304 | Southern California Edison Company | Powin, LLC | 09/01/2017 | ESA (Energy Storage Agreement) | |
| 305 | Southern Power Company (SPC) | Powin, LLC | 02/20/2019 | Purchase Order | BESS 225kWh Test Stack |
| 306 | Southern Power Company (SPC) | Powin, LLC | 11/19/2019 | Purchase Order | BESS 225kWh Test Stack |
| 307 | STEM / Mohave Power LLC | Powin, LLC | 01/09/2024 | LTSA (Long Term Service Agreement) | Watersprout |
| 308 | Stem Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Mosquito 1 |
| 309 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Dark and Stormy I |
| 310 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite SD DC |
| 311 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Dark and Stormy II |
| 312 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite ML DC |
| 313 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite MR AC |
| 314 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Dighton Tremont |
| 315 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite BR DC |
| 316 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite QR DC |
| 317 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite CPR DC |
| 318 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite TR DC |
| 319 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Mosquito III |
| 320 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Mosquito 2 |
| 321 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Douglas Oak |
| 322 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Palmer Sykes |
| 323 | Stem, Inc. | Powin, LLC | 02/28/2021 | LTSA (Long Term Service Agreement) | Viper |
| 324 | Stem, Inc. | Powin, LLC | 02/22/2021 | Purchase Order | Tangerine |
| 325 | Stem, Inc. | Powin, LLC | 10/13/2023 | Purchase Order | |
| 326 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Palmer Sykes |
| 327 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Douglas Oak |
| 328 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Dighton Tremont |
| 329 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Dark and Stormy II |
| 330 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Dark and Stormy I |
| 331 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite CPR DC |
| 332 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite TR DC |
| 333 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite SD DC |
| 334 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite ML DC |
| 335 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite MR AC |
| 336 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite BR DC |
| 337 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite QR DC |
| 338 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Mosquito III |
| 339 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Mosquito II |
| 340 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Mosquito I |
| 341 | Stem, Inc. | Powin, LLC | 06/08/2021 | Purchase Order | Watersprout |
| 342 | Stem, Inc. | Powin, LLC | 02/28/2021 | Purchase Order | Viper |
| 343 | Stem, Inc. | Powin, LLC | 01/14/2021 | Purchase Order | Chatham |
| 344 | Stem, Inc. | Powin, LLC | 02/22/2021 | Purchase Order | Viper |
| 345 | Stillwater Energy Storage, LLC | Powin, LLC | 08/22/2018 | Purchase Order | RWE |
| 346 | Strata Solar Services, LLC | Powin, LLC | 08/22/2019 | LTSA (Long Term Service Agreement) | Wilson |
| 347 | Strata Solar, LLC | Powin, LLC | 10/27/2020 | LTSA (Long Term Service Agreement) | GUC Evans Substation |
| 348 | Strata Solar, LLC | Powin, LLC | 03/27/2020 | ESA (Energy Storage Agreement) | GUC Evans Substation |
| 349 | Strata Solar, LLC | Powin, LLC | 08/12/2021 | ESA (Energy Storage Agreement) | LaGrange |
| 350 | Strata Solar, LLC | Powin, LLC | 02/02/2022 | ESA (Energy Storage Agreement) | Dry Bridge |
| 351 | Sun Streams Expansion, LLC | Powin, LLC | 05/29/2024 | ESA (Energy Storage Agreement) | Sunstreams 4 |
| 352 | Sun Streams Expansion, LLC | Powin, LLC | 04/17/2024 | ESA (Energy Storage Agreement) | Sun Streams 3 |
| 353 | Sun Streams Expansion, LLC | Powin, LLC | | ESA (Energy Storage Agreement) | Sun Streams 4 |
| 354 | Sun Streams Expansion, LLC | Powin, LLC | 03/10/2023 | ESA (Energy Storage Agreement) | Sunstreams 4 |
| 355 | Sun Streams PVS, LLC | Powin, LLC | 12/09/2022 | ESA (Energy Storage Agreement) | Sunstreams 3 |
| 356 | Sungrid Solutions | Powin, LLC | 08/08/2019 | Purchase Order | Small Fry |
| 357 | Sungrid Solutions | Powin, LLC | 09/04/2020 | Purchase Order | Ukraine |
| 358 | SunGrid Solutions Inc. | Powin, LLC | 07/24/2019 | Purchase Order | |
| 359 | Swoose, LLC | Powin, LLC | 05/15/2020 | LTSA (Long Term Service Agreement) | Swoose |
| 360 | Swoose, LLC | Powin, LLC | 05/15/2020 | Purchase Order | Swoose |
| 361 | TPE Energy, Inc. | Powin, LLC | 10/27/2020 | Purchase Order | TPE FRRS |
| 362 | TPE Energy, Inc. | Powin, LLC | 11/18/2021 | ESA (Energy Storage Agreement) | J&V Taoyuan Taiwan |
| 363 | TPE Energy, Inc. | Powin, LLC | 11/18/2021 | ESA (Energy Storage Agreement) | Kaohsiung Taiwan PS Substation |
| 364 | Triple Butte, LLC | Powin, LLC | 08/21/2020 | LTSA (Long Term Service Agreement) | Triple Butte |
| 365 | Triple Butte, LLC | Powin, LLC | 08/21/2020 | Purchase Order | Triple Butte |
| 366 | Ulinda Park Project Co Pty Ltd | Powin, LLC | 08/29/2024 | ESA (Energy Storage Agreement) | Ulinda Park |
| 367 | Ulinda Park ProjectCo Pty Ltd | Powin, LLC | 12/23/2024 | ESA (Energy Storage Agreement) | Ulinda Park |
| 368 | Ulinda Park ProjectCo Pty Ltd | Powin, LLC | 06/26/2023 | ESA (Energy Storage Agreement) | Ulinda Park |
| 369 | Ulinda Park ProjectCo Pty Ltd | Powin, LLC | 06/28/2023 | ESA (Energy Storage Agreement) | Ulinda Park |
| 370 | Ware Palmer Road Solar, LLC | Powin, LLC | 09/09/2020 | LTSA (Long Term Service Agreement) | Palmer |
| 371 | WEG Electric Corp | Powin, LLC | 02/24/2020 | Purchase Order | WEG Demo Stack225 |
| 372 | WEG Electric Corp | Powin, LLC | 01/28/2020 | Purchase Order | WEG Demo Stack225 |
| 373 | West Columbia Storage, LLC | Powin, LLC | 09/09/2019 | LTSA (Long Term Service Agreement) | Glidepath West Columbia |
| 374 | West Columbia Storage, LLC | Powin, LLC | 02/26/2019 | ESA (Energy Storage Agreement) | Glidepath West Columbia |
| 375 | West Columbia Storage, LLC | Powin, LLC | 10/04/2019 | ESA (Energy Storage Agreement) | Glidepath West Columbia |
| 376 | West Columbia Storage, LLC | Powin, LLC | 09/09/2019 | ESA (Energy Storage Agreement) | Glidepath West Columbia |
| 377 | West Warwick Energy Storage 1 LLC | Powin, LLC | 07/12/2024 | LTSA (Long Term Service Agreement) | West Warwick 1 |
| 378 | West Warwick Energy Storage 2 LLC | Powin, LLC | 09/26/2024 | LTSA (Long Term Service Agreement) | West Warwick 2 |
| 379 | West Warwick Energy Storage 3 LLC | Powin, LLC | 09/26/2024 | LTSA (Long Term Service Agreement) | West Warwick 3 |
| 380 | Wildcat I Energy Storage, LLC | Powin, LLC | 11/06/2019 | ESA (Energy Storage Agreement) | Wildcat Project |
| 381 | Wildcat I Energy Storage, LLC | Powin, LLC | 11/06/2019 | LTSA (Long Term Service Agreement) | Wildcat Project |
| 382 | Yuma Solar energy LLC | Powin, LLC | 05/15/2024 | LTSA (Long Term Service Agreement) | Yuma |
| 383 | Yuma Solar Energy LLC | Powin, LLC | 05/19/2024 | ESA (Energy Storage Agreement) | Yuma |

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (*pro hac vice* pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
         sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* pending)
Amanda C. Glaubach (*pro hac vice* pending)
Eitan Blander (*pro hac vice* pending)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
         aglaubach@teamtogut.com
         eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

### DECLARATION OF GERARD UZZI

I, Gerard Uzzi, hereby state and declare as follows:

1.      I am the Chief Restructuring Officer (the "CRO") of Powin, LLC ("Powin") and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors").I testify in support of the *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* (the "Motion") (unless otherwise defined herein, all capitalized terms shall have the same meaning as in the Motion).

2.      Except as otherwise indicated herein, this declaration (the "Declaration") is based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors or the Debtors' advisors, my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and this industry. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3.      In incorporate my testimony in the First Day Declaration.

A.      ESA and LTSA Lines of Business

4.      As more fully set forth in the First Day Declaration, the Debtors have historically operated two lines of business: (i) energy storage integration installation services, whereby the Debtors provide and install batteries at customer sites pursuant to energy supply agreements ("ESA Line of Business"); and (ii) long term servicing, whereby the Debtors maintain and repair the previously installed batteries at customer sites, as needed, pursuant to separate long term servicing agreements (the "LTSA Line of Business").

5.      While the Debtors' ESA Line of Business has resulted in significant losses and liquidity issues for the Debtors due to its intense working capital requirements, installation delays and losses due to increasing liquidated damages claims, the LTSA Line of Business represents a potentially viable and profitable line of business moving forward, and is necessary to Customers. As described in the First Day Declaration, although the Debtors terminated the employment of most ESA employees before the Petition Date, they have maintained a core group of eighty-three (83) employees, including fifty-nine (59) devoted to operations, and seven (7) with intellectual

1

property expertise.  On the foundation of this core group, the Debtors intend to keep the LTSA Line of Business running during the Chapter 11 Cases, and to utilize revenue from this line of business to fund the Chapter 11 Cases.

B. The Customer Program Motion and the LTSA Program

6. On June 10, 2025, the Debtors filed the Customer Program Motion seeking approval of the LTSA Program.  As further described in the Customer Program Motion, under the proposed LTSA Program, the Debtors propose a reduced scope of service at pricing that is designed to be cash flow positive during the postpetition period.  On June 13, 2025, the Court approved the Customer Program and the LTSA Program.  Docket No. 62.

C. The Winding-Down of the ESA Program and Initial Launch of the LTSA Program

7. For months before the commencement of these Chapter 11 Cases, the Debtors have engaged and continue to engage with their Customers under their ESA Line of Business and to seek reasonable, market terms to resolve each respective business relationship on a bespoke basis. Based on negotiations to date, these terms typically include (i) an agreeable resolution of outstanding receivables due to the Debtors, (ii) the conveyance of certain inventory and parts to the Customer and (iii) providing the Customer with access to certain proprietary technology on a consensual and funded basis.  In fact, the Debtors expect to present such a transaction for Court approval shortly.

8. Contracts on Schedule 1 consist of contracts in connection with the ESA Line of Business which the Debtors are no longer able to effectively perform and are unprofitable and burdensome to the Debtors' business (the "ESA Contracts") and Customer contracts in the Debtors' LTSA Line of Business where the Customer has not yet opted-in to the LTSA Program (the "LTSA Contracts").[2]

---

[2]    Though some Contracts are described as a "Purchase Order," to the best of my knowledge, these still constitute ESA and LTSA Contracts.

9.    ***As to the ESA Contracts***, while the Debtors will work with customers under the ESA Line of Business, and seek alternative arrangements for resolution, the Debtors seek rejection of the ESA Contracts for which the Debtors are unable to reach such a resolution.

10.    ***As to the LTSA Contracts***, likewise, for many months prior to the Petition Date, the Debtors have discussed and continue to discuss the LTSA Line of Business with Customers, culminating in the LTSA Program.  A number of such customers have opted-in to the LTSA Program.  However, the remaining Customers have not yet opted-in to the LTSA Program.  Opting-in to the LTSA Program allows customers to continue to benefit from the bespoke technology, maintenance and repair services offered by the Debtors with respect to previously installed Debtor battery systems at Customer sites.  By this Motion, the Debtors seek rejection of Contracts for Customers that do not affirmatively participate in the LTSA Program.

11.    Both shortly before and immediately after the commencement of these Chapter 11 Cases, the Debtors have received dozens of Customer demands for assistance with and access to the Debtors' proprietary technology and otherwise to enforce the Contracts.[3]  In these demands, Customers contend that they are entitled to the enforcement of their rights under the Contracts. The Debtors do not possess the funding or resources to comply with these demands as issued, nor would the Debtors be in a position to cure these alleged defaults in connection with the assumption of any of these Contracts.  As a consequence, including for these reasons and those stated above, the Debtors have determined in their business judgment that the Contracts are burdensome to the estates.  Although the Debtors continue to seek consensual resolutions regarding the Contracts either through bespoke negotiations or the LTSA Program, if resolution cannot be reached, rejection of the Contracts is necessary for the Debtors to continue to pursue the reorganization of their affairs through a sale or other transaction.

12.    The Debtors have determined in their business judgment that the Contracts are burdensome and that rejection of the Contracts will benefit the Debtors' estates.  As discussed

---

[3] Many of the Customer demands were in fact issued during the post-petition period, and therefore violate the automatic stay of section 362(a) of the Bankruptcy Code.  The Debtors have issued notices to Customers violating the automatic stay, and reserve all rights to seek appropriate remedies from the Court for such violations.

3

herein, the Contracts consist of (a) unprofitable Contracts under the ESA Line of Business, for which the Debtors no longer have resources (working capital and employees) to fulfill, and (b) Contracts under the LTSA Line of Business with Customers that have not opted-in to the LTSA Program, thereby refusing to adapt to the realities of these Chapter 11 Cases. Nonetheless, the Debtors reserve the right to remove from the scope of the Order Contracts for which the Debtors are able to resolve outstanding issues through the period which is ten (10) days following entry of the Order. This construct will allow the Debtors to continue to work with Customers on a consensual basis while protecting the Debtors' assets and minimizing their exposure to unprofitable Contracts.

13.     Without the relief sought in the Motion, the Debtors, who already face liquidity constraints, may incur material expenses for Contracts that are burdensome to the estates. Moreover, the Debtors' Customers have been on notice of the Debtors' inability to fulfill the Contracts since before the commencement of these Chapter 11 Cases, due to the nearly constant communication among the Debtors and their Customers for many months. As a consequence, Customers will not be unduly prejudiced by retroactive rejection, especially given the additional runway to negotiate with the Debtors through the period which is ten (10) days following entry of the Order.

4

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 17th day of June 2025, at Sea Bright, New Jersey in Monmouth County.


 /s/Gerard Uzzi
Gerard Uzzi

**EXHIBIT A**

(Proposed Form of Order)

US_ACTIVE\130535213

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

## ORDER GRANTING OMNIBUS MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF LEGACY CUSTOMER CONTRACTS AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three [3] through four [4], is

**ORDERED**.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(Page 2)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (*pro hac vice* pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
          van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
          sarah.schrag@dentons.com

*Proposed Counsel for Debtors and*
*Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* pending)
Amanda C. Glaubach (*pro hac vice* pending)
Eitan Blander (*pro hac vice* pending)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
          aglaubach@teamtogut.com
          eblander@teamtogut.com

*Proposed Counsel for Debtors and*
*Debtors in Possession*

(Page 3)

Debtors:  Powin, LLC, *et al.*

Case No.  25-16137 (MBK)

Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"): (i) authorizing (a) the rejection of certain executory contracts set forth on **Schedule 1** (the "Contracts") (b) effective as of the Rejection Date; and (ii) granting related relief, all as more fully set forth in the Motion; and upon the Declaration attached to the Motion and the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing thereon establish just cause for the relief granted herein; and upon all of the proceedings before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.    The Motion is **GRANTED** as set forth herein.

2.    To the extent they are executory, the Contracts are deemed rejected effective as of the Rejection Date, provided that, within ten days of this Order, the Debtors may file an notice amending Schedule 1 to remove Contracts from the effect of this Order within the Debtors' business judgment, and upon, the filing of such a notice, the Contract(s) will not be deemed rejected.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page 4)
Debtors:              Powin, LLC, *et al.*
Case No.             25-16137 (MBK)
Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

3.      For the avoidance of doubt, no counterparty to a Contract shall be entitled to any form of adequate protection.

4.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Local Rules are satisfied by such notice.

5.      Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon entry.

6.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

7.      The limitations contained in Bankruptcy Rule 6006(f)(6) are waived with respect to the Motion.

8.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 6**

(Order Granting Omnibus Authorizing The Rejection of Legacy Customer Contracts)

## **EXHIBIT A**

(Proposed Form of Order)

US_ACTIVE\130535213

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

## ORDER GRANTING OMNIBUS MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF LEGACY CUSTOMER CONTRACTS AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three [3] through four [4], is

**ORDERED**.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(Page 2)

Debtors:          Powin, LLC, *et al.*

Case No.          25-16137 (MBK)

Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (*pro hac vice* pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email:  tania.moyron@dentons.com
          van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email:  john.beck@dentons.com
          sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* pending)
Amanda C. Glaubach (*pro hac vice* pending)
Eitan Blander (*pro hac vice* pending)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  altogut@teamtogut.com
          aglaubach@teamtogut.com
          eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

(Page 3)

Debtors:          Powin, LLC, *et al.*

Case No.          25-16137 (MBK)

Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"): (i) authorizing (a) the rejection of certain executory contracts set forth on **Schedule 1** (the "Contracts") (b) effective as of the Rejection Date; and (ii) granting related relief, all as more fully set forth in the Motion; and upon the Declaration attached to the Motion and the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing thereon establish just cause for the relief granted herein; and upon all of the proceedings before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.          The Motion is **GRANTED** as set forth herein.

2.          To the extent they are executory, the Contracts are deemed rejected effective as of the Rejection Date, provided that, within ten days of this Order, the Debtors may file an notice amending Schedule 1 to remove Contracts from the effect of this Order within the Debtors' business judgment, and upon, the filing of such a notice, the Contract(s) will not be deemed rejected.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page 4)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

3.       For the avoidance of doubt, no counterparty to a Contract shall be entitled to any form of

adequate protection.

4.       Notice of the Motion as provided therein shall be deemed good and sufficient notice of such

Motion and the requirements of the Local Rules are satisfied by such notice.

5.       Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order

are immediately effective and enforceable upon entry.

6.       The Debtors are authorized to take all actions necessary to effectuate the relief granted in this

Order in accordance with the Motion.

7.       The limitations contained in Bankruptcy Rule 6006(f)(6) are waived with respect

to the Motion.

8.       This Court retains exclusive jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.

## **Exhibit 7**

(Revised Proposed Order)

# **Exhibit E**

(Proposed Order)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

### ORDER GRANTING OMNIBUS MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF LEGACY CUSTOMER CONTRACTS AND (II) GRANTING RELATED RELIEF

      The relief set forth on the following pages, numbered three [3] through four [4], is

**ORDERED**.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(Page 2)

Debtors:             Powin, LLC, *et al.*

Case No.             25-16137 (MBK)

Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* pending)
Van C. Durrer, II (*pro hac vice* pending)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
          van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
          sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* pending)
Amanda C. Glaubach (*pro hac vice* pending)
Eitan Blander (*pro hac vice* pending)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
          aglaubach@teamtogut.com
          eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

(Page 3)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession
(collectively, the "Debtors") for entry of an order (this "Order"): (i) authorizing (a) the rejection of certain
executory contracts set forth on **Schedule 1** (the "Contracts") (b) effective as of the Rejection
Date; and (ii) granting related relief, all as more fully set forth in the Motion; and upon the
Declaration attached to the Motion and the First Day Declaration; and this Court having
jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of
Reference* from the United States District Court for the District of New Jersey dated as of
September 18, 2012; and that this Court may enter a final order consistent with Article III of the
United States Constitution; and this Court having found that venue of this proceeding and the
Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having
found that the relief requested in the Motion is in the best interests of the Debtors' estates, their
creditors, and other parties in interest; and this Court having found that the Debtors' notice of the
Motion and opportunity for hearing on the Motion were appropriate under the circumstances and
that no other notice need be provided; and this Court having determined that the legal and factual
bases set forth in the Motion and at the hearing thereon establish just cause for the relief granted
herein; and upon all of the proceedings before this Court; and after due deliberation and sufficient
cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      To the extent they are executory, the Contracts are deemed rejected effective as of the
Rejection Date, provided that, within ten days of this Order, the Debtors may file an notice amending Schedule
1 to remove Contracts from the effect of this Order within the Debtors' business judgment, and upon, the
filing of such a notice, the Contract(s) will not be deemed rejected.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page 4)

Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Rejection of Legacy Customer Contracts and (II) Granting Related Relief

3.      Nothing in this Order (i) limits intellectual property licensees' rights under section 365(n) of

the Bankruptcy Code, including pursuant to, in connection with, or otherwise related to any Contracts rejected

pursuant to this Order (and any such rights are hereby expressly preserved) or (ii) excuses the Debtors from

performance of any obligations under executory contracts for which rejection has not yet been expressly

approved by an order of this Court.

4.      For the avoidance of doubt, no counterparty to a Contract shall be entitled to any form of

adequate protection.

5.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such

Motion and the requirements of the Local Rules are satisfied by such notice.

6.      Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order

are immediately effective and enforceable upon entry.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this

Order in accordance with the Motion.

8.      The limitations contained in Bankruptcy Rule 6006(f)(6) are waived with respect

to the Motion.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.

## Schedule 1

All of the Debtors' contracts with customers related to the Debtors' legacy employment services

agreements and long term services agreements business lines, including, but not limited to:

| CN | Counterparty Name | Debtor Party | Contract Effective Date | Contract Type | Project Name |
|---|---|---|---|---|---|
| 1 | Acorn I Energy Storage LLC | Powin, LLC | 06/08/2021 | ESA (Energy Storage Agreement) | Acorn |
| 2 | Acorn I Energy Storage LLC | Powin, LLC | 11/06/2019 | LTSA (Long Term Service Agreement) | Acorn |
| 3 | Acorn I Energy Storage LLC | Powin, LLC | 11/06/2019 | ESA (Energy Storage Agreement) | Acorn |
| 4 | Adon Renewables | Powin, LLC | 01/26/2017 | ESA (Energy Storage Agreement) | Adon |
| 5 | Adon Renewables | Powin, LLC | 01/26/2017 | ESA (Energy Storage Agreement) | |
| 6 | AKA Group | Powin, LLC | 12/23/2021 | ESA (Energy Storage Agreement) | Summerside |
| 7 | Akaysha Energy Pty Ltd | Powin, LLC | 03/01/2022 | Framework Agreement | |
| 8 | Akaysha Energy Pty Ltd | Powin, LLC | 04/18/2022 | Framework Agreement | |
| 9 | Ameresco Inc | Powin, LLC | 04/29/2022 | Framework Agreement | |
| 10 | Ameresco Inc. | Powin, LLC | 11/23/2022 | ESA (Energy Storage Agreement) | OUC BESS |
| 11 | Ameresco, Inc. | Powin, LLC | 08/02/2024 | LTSA (Long Term Service Agreement) | Viper |
| 12 | Amp Solar US Services LLC | Powin, LLC | 08/28/2020 | Purchase Order | |
| 13 | AMP Solar US Services LLC | Powin, LLC | 07/28/2022 | ESA (Energy Storage Agreement) | Three Rivers |
| 14 | AMP Solar US Services LLC | Powin, LLC | 07/28/2022 | ESA (Energy Storage Agreement) | FRS |
| 15 | AMP Solar US Services LLC | Powin, LLC | 07/28/2022 | ESA (Energy Storage Agreement) | Cotuit |
| 16 | Amp Solar US Services LP | Powin, LLC | 01/25/2021 | Purchase Order | Oak Hill 2 |
| 17 | Amp Solar US Services LP | Powin, LLC | 01/25/2021 | Purchase Order | Oak Hill 1 |
| 18 | Amp Solar US Services LP | Powin, LLC | 01/19/2021 | Purchase Order | Elmbrook |
| 19 | Amp Solar US Services LP | Powin, LLC | 08/04/2020 | Purchase Order | Cronin |
| 20 | Amp Solar US Services LP | Powin, LLC | 09/09/2020 | LTSA (Long Term Service Agreement) | Cronin |
| 21 | Amp Solar US Services LP | Powin, LLC | 08/04/2020 | Purchase Order | Wallum |
| 22 | Amp Solar US Services LP | Powin, LLC | 09/09/2020 | LTSA (Long Term Service Agreement) | Wallum |
| 23 | Amp Solar US Services LP | Powin, LLC | 08/28/2020 | Purchase Order | Palmer |
| 24 | Amp Solar US Services LP | Powin, LLC | 08/28/2020 | Purchase Order | Adams |
| 25 | Amp Solar US Services LP | Powin, LLC | 11/09/2021 | LTSA (Long Term Service Agreement) | Oak Hill 2 |
| 26 | Amp Solar US Services LP | Powin, LLC | 11/09/2021 | LTSA (Long Term Service Agreement) | Oak Hill 1 |
| 27 | Amp Solar US Services LP | Powin, LLC | 11/09/2021 | LTSA (Long Term Service Agreement) | Elmbrook |
| 28 | Angelo Storage LLC | Powin, LLC | 11/17/2023 | LTSA (Long Term Service Agreement) | Angelo Storage |
| 29 | Angelo Storage, LLC | Powin, LLC | 08/10/2022 | ESA (Energy Storage Agreement) | Angelo Storage |
| 30 | Angelo Storage, LLC. | Powin, LLC | 03/07/2025 | ESA (Energy Storage Agreement) | Angelo |
| 31 | Angelo Storage, LLC. | Powin, LLC | 09/30/2024 | LTSA (Long Term Service Agreement) | Angelo Storage |
| 32 | Angelo Storage, LLC. | Powin, LLC | 09/30/2024 | ESA (Energy Storage Agreement) | Angelo Storage |
| 33 | Arizona Storage Development LLC | Powin, LLC | 03/05/2021 | ESA (Energy Storage Agreement) | Paloma/Cotton |
| 34 | Arizona Storage Development LLC | Powin, LLC | 03/05/2021 | ESA (Energy Storage Agreement) | Hyder I and II |
| 35 | Arizona Storage Development LLC | Powin, LLC | 03/05/2021 | ESA (Energy Storage Agreement) | Gila Bend I and II |
| 36 | Arizona Storage Development LLC | Powin, LLC | 03/05/2021 | ESA (Energy Storage Agreement) | Foothills I and II |
| 37 | Arizona Storage Development LLC | Powin, LLC | 03/05/2021 | ESA (Energy Storage Agreement) | Desert Star |
| 38 | Arrow Canyon Solar, LLC | Powin, LLC | 04/10/2025 | ESA (Energy Storage Agreement) | Arrow Canyon |
| 39 | Arrow Canyon Solar, LLC | Powin, LLC | 12/10/2021 | LTSA (Long Term Service Agreement) | Arrow Canyon |
| 40 | Arrow Canyon Solar, LLC | Powin, LLC | 06/03/2021 | ESA (Energy Storage Agreement) | Arrow Canyon |
| 41 | ASD COTUIT MA SOLAR LLC | Powin, LLC | 09/18/2023 | LTSA (Long Term Service Agreement) | Cotuit |
| 42 | ASD THREE RIVERS MA SOLAR LLC | Powin, LLC | 09/18/2023 | LTSA (Long Term Service Agreement) | Three Rivers |
| 43 | Aspin Kemp & Associates Inc | Powin, LLC | 12/23/2021 | ESA (Energy Storage Agreement) | Summerside |
| 44 | Auto-Chen Ltd | Powin, LLC | 06/09/2021 | ESA (Energy Storage Agreement) | Or Haner |
| 45 | Auto-Chen Ltd | Powin, LLC | 06/09/2021 | ESA (Energy Storage Agreement) | Nir Yitsac 3 |
| 46 | Auto-Chen Ltd | Powin, LLC | 06/09/2021 | ESA (Energy Storage Agreement) | Nir Yitsac 2 |
| 47 | Auto-Chen Ltd | Powin, LLC | 06/09/2021 | ESA (Energy Storage Agreement) | Neat Mordechai |
| 48 | Auto-Chen Ltd | Powin, LLC | 05/12/2021 | ESA (Energy Storage Agreement) | Nir David (Nofar 2) |
| 49 | Auto-Chen Ltd | Powin, LLC | 05/12/2021 | ESA (Energy Storage Agreement) | Gevim (Rimon 1) |
| 50 | Auto-Chen Ltd | Powin, LLC | 05/12/2021 | ESA (Energy Storage Agreement) | Gevim (Rimon 1) |
| 51 | AVEP BESS, LLC | Powin, LLC | 12/15/2022 | LTSA (Long Term Service Agreement) | AVEP |
| 52 | AVEP BESS, LLC | Powin, LLC | 12/21/2022 | ESA (Energy Storage Agreement) | AVEP |
| 53 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 01/06/2025 | ESA (Energy Storage Agreement) | Ravenswood - Group 3 |
| 54 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 01/06/2025 | ESA (Energy Storage Agreement) | Ravenswood - Group 2 |
| 55 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 01/06/2025 | ESA (Energy Storage Agreement) | Ravenswood - Group 1 |
| 56 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 07/12/2024 | ESA (Energy Storage Agreement) | Ravenswood |
| 57 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 07/12/2024 | ESA (Energy Storage Agreement) | Ravenswood |
| 58 | BHER Ravenswood Solar 1, LLC | Powin, LLC | 07/12/2024 | ESA (Energy Storage Agreement) | Ravenswood |
| 59 | BigBeau Solar, LLC | Powin, LLC | 02/01/2021 | ESA (Energy Storage Agreement) | Big Beau 2 |
| 60 | BigBeau Solar, LLC | Powin, LLC | 07/19/2021 | LTSA (Long Term Service Agreement) | Big Beau 2 |
| 61 | BigBeau Solar, LLC | Powin, LLC | 07/19/2021 | LTSA (Long Term Service Agreement) | Big Beau 1 |
| 62 | BigBeau Solar, LLC | Powin, LLC | 02/01/2021 | ESA (Energy Storage Agreement) | Big Beau 1 |
| 63 | Cameron Wind 1, LLC | Powin, LLC | 05/03/2024 | ESA (Energy Storage Agreement) | Sabal Augmentation |
| 64 | Cameron Wind 1, LLC | Powin, LLC | 05/03/2024 | ESA (Energy Storage Agreement) | Sabal |
| 65 | Cameron Wind 1, LLC | Powin, LLC | 04/01/2024 | LTSA (Long Term Service Agreement) | Sabal |
| 66 | Chaparral Springs, LLC | Powin, LLC | 07/27/2022 | ESA (Energy Storage Agreement) | Willow Springs |
| 67 | Chaparral Springs, LLC | Powin, LLC | 08/08/2022 | LTSA (Long Term Service Agreement) | Willow Springs |
| 68 | Chaparral Springs, LLC | Powin, LLC | 08/08/2022 | LTSA (Long Term Service Agreement) | Chaparral Springs |
| 69 | Chaparral Springs, LLC | Powin, LLC | 07/27/2022 | ESA (Energy Storage Agreement) | Chaparral Springs |
| 70 | Clean Peak Energy (CPE) | Powin, LLC | 09/09/2019 | ESA (Energy Storage Agreement) | Wanneroo Plaza - CPE-1 |
| 71 | Clean Peak Energy (CPE) | Powin, LLC | 09/09/2019 | ESA (Energy Storage Agreement) | Lansell Square CPE-4 |
| 72 | Clean Peak Energy (CPE) | Powin, LLC | 09/09/2019 | ESA (Energy Storage Agreement) | Bateau |
| 73 | Clean Peak Energy (CPE) | Powin, LLC | 09/09/2019 | ESA (Energy Storage Agreement) | Salamander Bay CPE-2 |
| 74 | Clean Peak Energy (CPE) | Powin, LLC | 05/20/2021 | Purchase Order | Phase 2 |
| 75 | Convergent Energy and Power LP | Powin, LLC | 02/16/2022 | ESA (Energy Storage Agreement) | West Warwick III |
| 76 | Convergent Energy and Power LP | Powin, LLC | 02/16/2022 | ESA (Energy Storage Agreement) | West Warwick III |
| 77 | Convergent Energy and Power LP | Powin, LLC | 02/16/2022 | ESA (Energy Storage Agreement) | West Warwick I |
| 78 | CS Energy, LLC | Powin, LLC | 09/29/2020 | Purchase Order | Countryside |
| 79 | Desert Quartzite | Powin, LLC | 12/12/2023 | LTSA (Long Term Service Agreement) | Desert Quartzite |
| 80 | Desert Quartzite, LLC | Powin, LLC | 02/28/2025 | ESA (Energy Storage Agreement) | Desert Quartzite |
| 81 | Desert Quartzite, LLC | Powin, LLC | 10/18/2024 | ESA (Energy Storage Agreement) | Desert Quartzite |
| 82 | Desert Quartzite, LLC | Powin, LLC | 03/20/2024 | LTSA (Long Term Service Agreement) | Desert Quartzite |
| 83 | Desert Quartzite, LLC | Powin, LLC | 03/20/2024 | ESA (Energy Storage Agreement) | Desert Quartzite |
| 84 | Desert Quartzite, LLC | Powin, LLC | 12/06/2022 | ESA (Energy Storage Agreement) | Desert Quartzite |
| 85 | DTE Electric Company | Powin, LLC | 12/20/2024 | LTSA (Long Term Service Agreement) | Slocum |
| 86 | DTE Electric Company | Powin, LLC | 01/24/2024 | ESA (Energy Storage Agreement) | Trenton |
| 87 | DTE Electric Company | Powin, LLC | 12/15/2022 | ESA (Energy Storage Agreement) | Slocum |
| 88 | East Brookfield Adams Road Solar LLC | Powin, LLC | 09/09/2020 | LTSA (Long Term Service Agreement) | Adams Road |
| 89 | EDF Renewables | Powin, LLC | | Purchase Order | |
| 90 | EDF Renewables Development, Inc. | Powin, LLC | 09/09/2022 | ESA (Energy Storage Agreement) | |
| 91 | El Sol Energy Storage LLC | Powin, LLC | 05/19/2023 | ESA (Energy Storage Agreement) | El Sol |
| 92 | El Sol Storage Energy LLC | Powin, LLC | 04/09/2021 | ESA (Energy Storage Agreement) | El Sol |
| 93 | ESI Inc. | Powin, LLC | 12/05/2022 | ESA (Energy Storage Agreement) | Brandywine |
| 94 | Flower Valley, LLC | Powin, LLC | 05/15/2020 | ESA (Energy Storage Agreement) | Flower Valley |
| 95 | Flower Valley, LLC | Powin, LLC | 05/15/2020 | LTSA (Long Term Service Agreement) | Flower Valley |
| 96 | FORT RIVER SOLAR 2 LLC | Powin, LLC | 09/18/2023 | LTSA (Long Term Service Agreement) | FRS |
| 97 | Front Range-Midway Solar Project, LLC | Powin, LLC | 11/17/2021 | ESA (Energy Storage Agreement) | Fountain |

| CN | Counterparty Name | Debtor Party | Contract Effective Date | Contract Type | Project Name |
|---|---|---|---|---|---|
| 98 | Front Range-Midway Solar Project, LLC | Powin, LLC | 11/17/2021 | ESA (Energy Storage Agreement) | Fountain |
| 99 | Galp Parques Fotovoltaicos de Alcoutim | Powin, LLC | 12/04/2023 | ESA (Energy Storage Agreement) | Alcoutim |
| 100 | Galp Parques Fotovoltaicos de Alcoutim, LDA | Powin, LLC | 10/01/2024 | LTSA (Long Term Service Agreement) | Alcoutim |
| 101 | Go Electric Inc | Powin, LLC | 08/31/2018 | ESA (Energy Storage Agreement) | Go Electric, ThunderBay |
| 102 | Go Electric, Inc. | Powin, LLC | 02/02/2023 | LTSA (Long Term Service Agreement) | |
| 103 | Great Kiskadee Storage, LLC | Powin, LLC | 02/21/2025 | ESA (Energy Storage Agreement) | Great Kiskadee |
| 104 | Great Kiskadee Storage, LLC | Powin, LLC | 09/30/2024 | LTSA (Long Term Service Agreement) | Great Kiskadee |
| 105 | Great Kiskadee Storage, LLC | Powin, LLC | 09/30/2024 | ESA (Energy Storage Agreement) | Great Kiskadee |
| 106 | Great Kiskadee Storage, LLC | Powin, LLC | 03/27/2024 | LTSA (Long Term Service Agreement) | Great Kiskadee |
| 107 | Great Kiskadee Storage, LLC | Powin, LLC | 08/26/2022 | ESA (Energy Storage Agreement) | Great Kiskadee Storage |
| 108 | Gridspan Energy | Powin, LLC | 10/29/2018 | Purchase Order | Gridspan |
| 109 | Hampden Landfill Solar LLC | Powin, LLC | 07/31/2023 | LTSA (Long Term Service Agreement) | Hampden |
| 110 | Hampden Landfill Solar LLC | Powin, LLC | 05/11/2022 | ESA (Energy Storage Agreement) | Hampden |
| 111 | Hecate Energy Ontario Storage VII, LP | Powin, LLC | 10/30/2018 | LTSA (Long Term Service Agreement) | Kitchener II |
| 112 | Hecate Energy Ontario Storage VII, LP | Powin, LLC | 03/01/2018 | ESA (Energy Storage Agreement) | Kitchener II |
| 113 | Honeywell International | Powin, LLC | 08/18/2011 | LTSA (Long Term Service Agreement) | |
| 114 | Honeywell International Inc. / Honeywell Process Solutions | Powin, LLC | 01/11/2019 | ESA (Energy Storage Agreement) | Bruce Power |
| 115 | Honeywell International Inc. / Honeywell Process Solutions | Powin, LLC | 01/18/2019 | ESA (Energy Storage Agreement) | Bruce Power |
| 116 | Honeywell International, Inc. | Powin, LLC | 05/01/2020 | Purchase Order | NRStor Enbridge |
| 117 | Honeywell International, Inc. | Powin, LLC | 12/20/2019 | ESA (Energy Storage Agreement) | |
| 118 | Honeywell Limited - HPS CA | Powin, LLC | 12/01/2020 | Purchase Order | NRStor Canopy Growth |
| 119 | Honeywell Limited - HPS CA | Powin, LLC | 03/01/2019 | Purchase Order | Bruce Power |
| 120 | Honeywell Limited - HPS CA | Powin, LLC | 09/23/2020 | Purchase Order | Hydro Extrusion |
| 121 | Honeywell Limited - HPS CA | Powin, LLC | 05/01/2020 | Purchase Order | NRStor Malpack 1.1 |
| 122 | Honeywell Limited - HPS CA | Powin, LLC | 05/01/2020 | Purchase Order | NRStor Malpack 1.2 |
| 123 | Honeywell Limited - HPS CA | Powin, LLC | 03/24/2020 | Purchase Order | NRStor Canopy Growth |
| 124 | Honeywell Limited - HPS CA | Powin, LLC | 05/01/2020 | Purchase Order | NRStor Toyota Boshoku |
| 125 | Honeywell Limited - HPS CA | Powin, LLC | 04/18/2020 | Purchase Order | NRStor Pillers Waterloo |
| 126 | Honeywell Limited - HPS CA | Powin, LLC | 04/02/2020 | Purchase Order | NRStor Pillers Waterloo |
| 127 | Honeywell Limited - HPS CA | Powin, LLC | 04/02/2020 | Purchase Order | NRStor Pillers Brantford |
| 128 | Honeywell Limited - HPS CA | Powin, LLC | 04/02/2020 | Purchase Order | NRStor Rich Foods |
| 129 | Honeywell Limited - HPS CA | Powin, LLC | 05/01/2020 | Purchase Order | NRStor Enbridge |
| 130 | Honeywell Limited - HPS CA | Powin, LLC | 04/02/2020 | Purchase Order | NRStor Decast |
| 131 | Honeywell Limited - HPS CA | Powin, LLC | 04/02/2020 | Purchase Order | NRStor Kelloggs |
| 132 | Hummingbird Energy Storage, LLC | Powin, LLC | 07/18/2024 | LTSA (Long Term Service Agreement) | Hummingbird |
| 133 | Hummingbird Energy Storage, LLC | Powin, LLC | 06/03/2024 | ESA (Energy Storage Agreement) | Hummingbird |
| 134 | Hummingbird Energy Storage, LLC | Powin, LLC | 02/10/2023 | LTSA (Long Term Service Agreement) | Hummingbird |
| 135 | Hummingbird Energy Storage, LLC | Powin, LLC | 02/03/2023 | ESA (Energy Storage Agreement) | Hummingbird |
| 136 | Hunt Energy Solutions | Powin, LLC | 06/11/2019 | Purchase Order | Hunt Demo |
| 137 | Idaho Power Company | Powin, LLC | 08/21/2023 | LTSA (Long Term Service Agreement) | Black Mesa, WESR, ELMR, Hemingway, MLBA, Filer |
| 138 | Idaho Power Company | Powin, LLC | 12/28/2021 | ESA (Energy Storage Agreement) | MLBA |
| 139 | Idaho Power Company | Powin, LLC | 12/28/2021 | ESA (Energy Storage Agreement) | ELMR |
| 140 | Idaho Power Company | Powin, LLC | 12/28/2021 | ESA (Energy Storage Agreement) | FILR |
| 141 | Idaho Power Company | Powin, LLC | 12/28/2021 | ESA (Energy Storage Agreement) | WESR |
| 142 | Idaho Power Company | Powin, LLC | 02/28/2022 | ESA (Energy Storage Agreement) | Hemingway |
| 143 | Idaho Power Company | Powin, LLC | 06/08/2023 | ESA (Energy Storage Agreement) | Hemingway Expansion |
| 144 | Idaho Power Company | Powin, LLC | 02/28/2022 | ESA (Energy Storage Agreement) | Black Mesa |
| 145 | II Battery Storage US LLC (CAMERON WIND I, LLC) | Powin, LLC | 05/13/2022 | ESA (Energy Storage Agreement) | Sabal |
| 146 | Invenergy Services LLC | Powin, LLC | 02/21/2024 | LTSA (Long Term Service Agreement) | El Sol, Orangeville, Arizona Sun |
| 147 | Invenergy Services LLC | Powin, LLC | 03/01/2022 | LTSA (Long Term Service Agreement) | Orangeville, El Sol, Az Sun |
| 148 | Invenergy Storage Development LLC | Powin, LLC | 10/02/2018 | ESA (Energy Storage Agreement) | MIDAM |
| 149 | Invenergy Storage Development LLC | Powin, LLC | 12/20/2019 | ESA (Energy Storage Agreement) | |
| 150 | Invenergy Storage Development LLC | Powin, LLC | 02/05/2021 | ESA (Energy Storage Agreement) | Westar/Sedgwick |
| 151 | Jema Energy S.A | Powin, LLC | | Purchase Order | |
| 152 | Jema Energy S.A. | Powin, LLC | 12/20/2018 | Purchase Order | Flexitranstore |
| 153 | KCE TX 2, LLC | Powin, LLC | 06/01/2020 | LTSA (Long Term Service Agreement) | KCE TX2 - Port Lavaca |
| 154 | KCE TX 2, LLC | Powin, LLC | 05/22/2020 | Purchase Order | KCE TX2 - Port Lavaca |
| 155 | KCE TX 7, LLC | Powin, LLC | 06/01/2020 | LTSA (Long Term Service Agreement) | KCE TX7 - Flat Top |
| 156 | KCE TX 7, LLC | Powin, LLC | 05/22/2020 | Purchase Order | KCE TX7 - Flat Top |
| 157 | KCE TX 8, LLC | Powin, LLC | 05/22/2020 | Purchase Order | KCE TX8 - Worsham |
| 158 | KCE TX 8, LLC | Powin, LLC | 06/01/2020 | LTSA (Long Term Service Agreement) | KCE TX8 - Worsham |
| 159 | Key Capture Energy, LLC (KCE) | Powin, LLC | 06/01/2020 | LTSA (Long Term Service Agreement) | NY 3- Pomona |
| 160 | Key Capture Energy, LLC (KCE) | Powin, LLC | 02/20/2020 | Purchase Order | |
| 161 | KMC Thermo, LLC | Powin, LLC | 04/01/2025 | LTSA (Long Term Service Agreement) | Brandywine |
| 162 | La Grange, an Incorporated North Carolina Town | Powin, LLC | 06/30/2021 | LTSA (Long Term Service Agreement) | LaGrange |
| 163 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 08/24/2021 | Purchase Order | Taiwan (YSO0010 - Ysolar) |
| 164 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 09/30/2022 | ESA (Energy Storage Agreement) | Taiwan (YSO0010 - Ysolar) |
| 165 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 03/03/2022 | Purchase Order | Kinmin |
| 166 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 08/06/2021 | Purchase Order | Taiwan (TSO0010 - Ysolar) |
| 167 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 03/03/2022 | Purchase Order | Kinmin |
| 168 | Leader Energy Storage Technology Co., Ltd | Powin, LLC | 12/13/2021 | Purchase Order | Leader Project 2 |
| 169 | Lone Star Solar, LLC | Powin, LLC | 08/21/2024 | ESA (Energy Storage Agreement) | Lonestar |
| 170 | Lone Star Solar, LLC | Powin, LLC | 01/19/2024 | ESA (Energy Storage Agreement) | Lonestar |
| 171 | Lone Star Solar, LLC | Powin, LLC | 09/15/2023 | ESA (Energy Storage Agreement) | Lonestar |
| 172 | Lone Star Solar, LLC | Powin, LLC | 05/11/2023 | ESA (Energy Storage Agreement) | Lonestar |
| 173 | Lone Star Solar, LLC | Powin, LLC | 05/11/2023 | LTSA (Long Term Service Agreement) | Lonestar |
| 174 | Longroad | Powin, LLC | 10/11/2024 | ESA (Energy Storage Agreement) | Sunstreams 3 |
| 175 | Longroad BESS Procurement LLC | Powin, LLC | 01/07/2022 | Framework Agreement | |
| 176 | Longroad BESS Procurement, LLC | Powin, LLC | 12/09/2022 | Framework Agreement | |
| 177 | Maverick Solar 6, LLC | Powin, LLC | 07/19/2021 | LTSA (Long Term Service Agreement) | Mav 6 |
| 178 | Mesa Technical Associates, Inc. | Powin, LLC | 10/01/2019 | Purchase Order | Raymond |
| 179 | MG HR S de R.L de C.V. | Powin, LLC | 12/13/2024 | ESA (Energy Storage Agreement) | Insurgentes Expansion |
| 180 | MG HR, S. de R.L. de C.V. | Powin, LLC | 12/20/2019 | ESA (Energy Storage Agreement) | Insurgentes |
| 181 | MG HR, S. de R.L. de C.V. | Powin, LLC | 01/31/2020 | ESA (Energy Storage Agreement) | Insurgentes |
| 182 | Mitsubishi Electric Power Products, Inc (MEPPI) | Powin, LLC | 12/19/2018 | Purchase Order | |
| 183 | Mitsubishi Electric Power Products, Inc (MEPPI) | Powin, LLC | 12/19/2018 | Purchase Order | |
| 184 | Mitsubishi Hitachi Power Systems Americas, Inc. (MHPS) | Powin, LLC | 03/25/2020 | Purchase Order | Fredonia |
| 185 | Mitsubishi Hitachi Power Systems Americas, Inc. (MHPS) | Powin, LLC | 03/05/2020 | Purchase Order | Fredonia |
| 186 | Mitsubishi Hitachi Power Systems Americas, Inc. (MHPS) | Powin, LLC | 08/31/2020 | ESA (Energy Storage Agreement) | Johanna |
| 187 | Mitsubishi Power Americas Inc | Powin, LLC | 12/08/2022 | LTSA (Long Term Service Agreement) | Tranquility |
| 188 | Mitsubishi Power Americas Inc | Powin, LLC | 12/08/2022 | LTSA (Long Term Service Agreement) | Garland |
| 189 | Mitsubishi Power Americas, Inc. | Powin, LLC | 10/26/2020 | ESA (Energy Storage Agreement) | Garland |
| 190 | Mitsubishi Power Americas, Inc. | Powin, LLC | 02/08/2022 | ESA (Energy Storage Agreement) | Mav 6 |

| CN | Counterparty Name | Debtor Party | Contract Effective Date | Contract Type | Project Name |
|---|---|---|---|---|---|
| 191 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 06/14/2022 | LTSA (Long Term Service Agreement) | MHPS/KCE TX 11 |
| 192 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 06/28/2021 | LTSA (Long Term Service Agreement) | Tranquility |
| 193 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 06/28/2021 | LTSA (Long Term Service Agreement) | Garland |
| 194 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 11/23/2020 | LTSA (Long Term Service Agreement) | Tranquility |
| 195 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/16/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 23 |
| 196 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/16/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 12 |
| 197 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 05/19/2021 | ESA (Energy Storage Agreement) | MHPS/KCE TX 11 |
| 198 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/15/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 11 |
| 199 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 05/19/2021 | LTSA (Long Term Service Agreement) | KCE TX 12 |
| 200 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 05/19/2021 | LTSA (Long Term Service Agreement) | KCE TX 23 |
| 201 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 01/25/2021 | LTSA (Long Term Service Agreement) | Johanna |
| 202 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 07/21/2021 | LTSA (Long Term Service Agreement) | Tranquility |
| 203 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 07/21/2021 | LTSA (Long Term Service Agreement) | Garland |
| 204 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 11/23/2020 | ESA (Energy Storage Agreement) | Tranquility |
| 205 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/26/2020 | ESA (Energy Storage Agreement) | Garland |
| 206 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/16/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 23 |
| 207 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/16/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 12 |
| 208 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 10/16/2020 | ESA (Energy Storage Agreement) | MHPS/KCE TX 11 |
| 209 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 12/22/2020 | ESA (Energy Storage Agreement) | Mav 6 |
| 210 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 02/26/2021 | ESA (Energy Storage Agreement) | Mav 6 |
| 211 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 02/01/2021 | ESA (Energy Storage Agreement) | Big Beau 2 |
| 212 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 02/01/2021 | ESA (Energy Storage Agreement) | Big Beau 1 |
| 213 | Mitsubishi Power Americas, Inc. (MPA) | Powin, LLC | 04/25/2022 | LTSA (Long Term Service Agreement) | Garland |
| 214 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 01/30/2025 | ESA (Energy Storage Agreement) | Waratah Super Battery |
| 215 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 07/26/2024 | ESA (Energy Storage Agreement) | Waratah |
| 216 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 02/17/2024 | ESA (Energy Storage Agreement) | Waratah |
| 217 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 05/03/2023 | ESA (Energy Storage Agreement) | Waratah |
| 218 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 05/03/2023 | ESA (Energy Storage Agreement) | Waratah |
| 219 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 11/03/2023 | ESA (Energy Storage Agreement) | Waratah Super Battery |
| 220 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 12/16/2022 | LTSA (Long Term Service Agreement) | Waratah Super Battery |
| 221 | Munmorah Battery ProjectCo Pty Ltd | Powin, LLC | 11/04/2022 | ESA (Energy Storage Agreement) | Waratah Super Battery |
| 222 | Nidec ASI S.p.A. | Powin, LLC | 05/29/2019 | Purchase Order | Nidec - Disney Bahamas |
| 223 | Nidec ASI S.p.A. | Powin, LLC | 07/15/2019 | ESA (Energy Storage Agreement) | Nidec - Disney Bahamas |
| 224 | Nidec ASI S.p.A. | Powin, LLC | 07/15/2019 | ESA (Energy Storage Agreement) | Nidec - Disney Bahamas |
| 225 | Northstar Energy Management, LLC | Powin, LLC | 07/03/2024 | LTSA (Long Term Service Agreement) | Poblano |
| 226 | Northstar Energy Management, LLC | Powin, LLC | 02/27/2023 | LTSA (Long Term Service Agreement) | Sunstreams 3 |
| 227 | Oak Hill Solar 1 LLC | Powin, LLC | 09/03/2021 | Purchase Order | |
| 228 | Oak Hill Solar 2 LLC | Powin, LLC | 09/03/2021 | Purchase Order | |
| 229 | Orangeville Energy Storage LLC | Powin, LLC | 11/02/2020 | Purchase Order | Orangeville |
| 230 | Orangeville Energy Storage LLC | Powin, LLC | 11/02/2020 | ESA (Energy Storage Agreement) | Orangeville |
| 231 | Orcas Power & Light Cooperative (OPALCO) | Powin, LLC | 12/04/2019 | Purchase Order | OPALCO |
| 232 | Orcas Power & Light Cooperative (OPALCO) | Powin, LLC | 07/12/2019 | ESA (Energy Storage Agreement) | OPALCO |
| 233 | Ormat Nevada Inc | Powin, LLC | 03/15/2022 | ESA (Energy Storage Agreement) | Bottleneck |
| 234 | Ormat Nevada Inc. | Powin, LLC | 03/15/2022 | ESA (Energy Storage Agreement) | Bottleneck |
| 235 | Ormat Nevada, Inc. | Powin, LLC | 03/30/2023 | ESA (Energy Storage Agreement) | Bottleneck |
| 236 | Ormat Nevada, inc. | Powin, LLC | 11/03/2023 | LTSA (Long Term Service Agreement) | Bottleneck |
| 237 | Pacificorp | Powin, LLC | 10/06/2021 | ESA (Energy Storage Agreement) | Klamath Falls |
| 238 | Pine Gate Renewables, LLC | Powin, LLC | 02/19/2021 | ESA (Energy Storage Agreement) | Tremont |
| 239 | Pine Gate Renewables, LLC | Powin, LLC | 02/19/2021 | ESA (Energy Storage Agreement) | Rochester |
| 240 | Poblano Energy Storage, LLC | Powin, LLC | 04/17/2023 | ESA (Energy Storage Agreement) | Poblano |
| 241 | Portland General Electric (PGE) | Powin, LLC | 10/07/2019 | Purchase Order | BPS8 Microgrid |
| 242 | PowerFlex Solar, LLC | Powin, LLC | 02/21/2025 | ESA (Energy Storage Agreement) | USCS Fresno |
| 243 | Powerflex Systems, Inc. | Powin, LLC | 06/11/2021 | ESA (Energy Storage Agreement) | Ventura |
| 244 | Powerflex Systems, Inc. | Powin, LLC | 06/11/2021 | ESA (Energy Storage Agreement) | Thousand Oaks |
| 245 | PowerFlex Systems, LLC | Powin, LLC | 12/09/2022 | ESA (Energy Storage Agreement) | ESRT NY |
| 246 | PowerFlex Systems, LLC | Powin, LLC | 12/09/2022 | ESA (Energy Storage Agreement) | CSU Fullerton |
| 247 | Powin Energy Ontario Storage, LLC | Powin, LLC | 07/01/2017 | ESA (Energy Storage Agreement) | Stratford |
| 248 | Powin Energy Ontario Storage, LLC | Powin, LLC | 03/29/2018 | LTSA (Long Term Service Agreement) | Stratford |
| 249 | PPA Grand Johanna LLC | Powin, LLC | 12/04/2017 | ESA (Energy Storage Agreement) | Millikan |
| 250 | PPA Grand Johanna LLC | Powin, LLC | 12/04/2017 | LTSA (Long Term Service Agreement) | Millikan |
| 251 | Prisma Energy Solutions LLC | Powin, LLC | | Master Service Agreement | |
| 252 | Public Service Company of New Mexico | Powin, LLC | 05/01/2023 | ESA (Energy Storage Agreement) | South Valley |
| 253 | Public Service Company of New Mexico | Powin, LLC | 05/01/2023 | ESA (Energy Storage Agreement) | Rio Del Oro |
| 254 | Pulse | Powin, LLC | 12/22/2023 | Purchase Order | Overhill |
| 255 | PULSE CLEAN ENERGY SPV WATT LIMITED | Powin, LLC | 12/22/2023 | LTSA (Long Term Service Agreement) | Overhill |
| 256 | Pure Power Solutions, Inc. | Powin, LLC | 02/27/2018 | Purchase Order | Pure Power - Silver Oak |
| 257 | Putah Creek Solar Farms, LLC | Powin, LLC | 12/08/2022 | LTSA (Long Term Service Agreement) | Putah Creek |
| 258 | Putah Creek Solar Farms, LLC | Powin, LLC | 04/22/2021 | ESA (Energy Storage Agreement) | Putah Creek |
| 259 | PuYuan Green Energy Inc. | Powin, LLC | | Purchase Order | PuYuan 650 EVE |
| 260 | QPO Energy, LLC | Powin, LLC | 10/14/2021 | Purchase Order | USA |
| 261 | QPO Energy, LLC | Powin, LLC | 10/01/2021 | Purchase Order | Taiwan |
| 262 | QPO Energy, LLC | Powin, LLC | 10/14/2021 | Purchase Order | USA |
| 263 | QPO Energy, LLC | Powin, LLC | 10/14/2021 | Purchase Order | Taiwan |
| 264 | Rabbitbrush Solar, LLC | Powin, LLC | 09/17/2021 | ESA (Energy Storage Agreement) | Rabbitbrush |
| 265 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 266 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 267 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 268 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 269 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 270 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 271 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 272 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 273 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 274 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 275 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 276 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 277 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 278 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 279 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 280 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 281 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 282 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 283 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 284 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 285 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 286 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 1 |
| 287 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 288 | Rabbitbrush Solar, LLC | Powin, LLC | 07/09/2021 | ESA (Energy Storage Agreement) | Rabbitbrush |
| 289 | Rabbitbrush Solar, LLC | Powin, LLC | 03/18/2022 | LTSA (Long Term Service Agreement) | Rabbitbrush |

| CN | Counterparty Name | Debtor Party | Contract Effective Date | Contract Type | Project Name |
|---|---|---|---|---|---|
| 290 | Rabbitbrush Solar, LLC | Powin, LLC | 03/18/2022 | LTSA (Long Term Service Agreement) | Rabbitbrush |
| 291 | Rabbitbrush Solar, LLC | Powin, LLC | 09/17/2021 | ESA (Energy Storage Agreement) | Rabbitbrush 2 |
| 292 | Santa Paula Energy Storage, LLC | Powin, LLC | 07/13/2023 | LTSA (Long Term Service Agreement) | Santa Paula |
| 293 | Santa Paula Energy Storage, LLC | Powin, LLC | 10/21/2021 | LTSA (Long Term Service Agreement) | Santa Paula |
| 294 | Santa Paula Energy Storage, LLC | Powin, LLC | 10/21/2021 | ESA (Energy Storage Agreement) | Santa Paula |
| 295 | Saturn Battery I LP | Powin, LLC | 05/01/2023 | LTSA (Long Term Service Agreement) | Bruce Power |
| 296 | Saturn Power Inc. | Powin, LLC | 04/06/2018 | Purchase Order | |
| 297 | SCS Van Wyck 012823 Croton On Hudson, LLC | Powin, LLC | 02/10/2025 | LTSA (Long Term Service Agreement) | Croton Harmon |
| 298 | SCS Van Wyck 012823 Croton On Hudson, LLC | Powin, LLC | 11/23/2021 | ESA (Energy Storage Agreement) | Croton Harmon Train Station |
| 299 | Serrano Solar, LLC | Powin, LLC | 11/06/2024 | ESA (Energy Storage Agreement) | Serrano |
| 300 | Serrano Solar, LLC | Powin, LLC | 05/05/2023 | ESA (Energy Storage Agreement) | Serrano |
| 301 | Solar Star 3, LLC | Powin, LLC | 08/31/2023 | ESA (Energy Storage Agreement) | Solar Star 3 |
| 302 | Solar Star 3, LLC | Powin, LLC | 08/31/2023 | ESA (Energy Storage Agreement) | Solar Star 3 |
| 303 | Solar Star 4, LLC | Powin, LLC | 08/31/2023 | ESA (Energy Storage Agreement) | Solar Star 4 |
| 304 | Southern California Edison Company | Powin, LLC | 09/01/2017 | ESA (Energy Storage Agreement) | |
| 305 | Southern Power Company (SPC) | Powin, LLC | 02/20/2019 | Purchase Order | BESS 225kWh Test Stack |
| 306 | Southern Power Company (SPC) | Powin, LLC | 11/19/2019 | Purchase Order | BESS 225kWh Test Stack |
| 307 | STEM / Mohave Power LLC | Powin, LLC | 01/09/2024 | LTSA (Long Term Service Agreement) | Watersprout |
| 308 | Stem Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Mosquito 1 |
| 309 | Stem, Inc. | Powin, LLC | 03/08/2024 | LTSA (Long Term Service Agreement) | Dark and Stormy I |
| 310 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite SD DC |
| 311 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Dark and Stormy II |
| 312 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite ML DC |
| 313 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite MR AC |
| 314 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Dighton Tremont |
| 315 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite BR DC |
| 316 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite QR DC |
| 317 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite CPR DC |
| 318 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Velvet Mite TR DC |
| 319 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Mosquito III |
| 320 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Mosquito 2 |
| 321 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Douglas Oak |
| 322 | Stem, Inc. | Powin, LLC | 03/08/2023 | LTSA (Long Term Service Agreement) | Palmer Sykes |
| 323 | Stem, Inc. | Powin, LLC | 02/28/2021 | LTSA (Long Term Service Agreement) | Viper |
| 324 | Stem, Inc. | Powin, LLC | 02/22/2021 | Purchase Order | Tangerine |
| 325 | Stem, Inc. | Powin, LLC | 10/13/2023 | Purchase Order | |
| 326 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Palmer Sykes |
| 327 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Douglas Oak |
| 328 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Dighton Tremont |
| 329 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Dark and Stormy II |
| 330 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Dark and Stormy I |
| 331 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite CPR DC |
| 332 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite TR DC |
| 333 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite SD DC |
| 334 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite ML DC |
| 335 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite MR AC |
| 336 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite BR DC |
| 337 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Velvet Mite QR DC |
| 338 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Mosquito III |
| 339 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Mosquito II |
| 340 | Stem, Inc. | Powin, LLC | 03/08/2023 | Purchase Order | Mosquito I |
| 341 | Stem, Inc. | Powin, LLC | 06/08/2021 | Purchase Order | Watersprout |
| 342 | Stem, Inc. | Powin, LLC | 02/28/2021 | Purchase Order | Viper |
| 343 | Stem, Inc. | Powin, LLC | 01/14/2021 | Purchase Order | Chatham |
| 344 | Stem, Inc. | Powin, LLC | 02/22/2021 | Purchase Order | Viper |
| 345 | Stillwater Energy Storage, LLC | Powin, LLC | 08/22/2018 | Purchase Order | RWE |
| 346 | Strata Solar Services, LLC | Powin, LLC | 08/22/2019 | LTSA (Long Term Service Agreement) | Wilson |
| 347 | Strata Solar, LLC | Powin, LLC | 10/27/2020 | LTSA (Long Term Service Agreement) | GUC Evans Substation |
| 348 | Strata Solar, LLC | Powin, LLC | 03/27/2020 | ESA (Energy Storage Agreement) | GUC Evans Substation |
| 349 | Strata Solar, LLC | Powin, LLC | 08/12/2021 | ESA (Energy Storage Agreement) | LaGrange |
| 350 | Strata Solar, LLC | Powin, LLC | 02/02/2022 | ESA (Energy Storage Agreement) | Dry Bridge |
| 351 | Sun Streams Expansion, LLC | Powin, LLC | 05/29/2024 | ESA (Energy Storage Agreement) | Sunstreams 4 |
| 352 | Sun Streams Expansion, LLC | Powin, LLC | 04/17/2024 | ESA (Energy Storage Agreement) | Sun Streams 3 |
| 353 | Sun Streams Expansion, LLC | Powin, LLC | | ESA (Energy Storage Agreement) | Sun Streams 4 |
| 354 | Sun Streams Expansion, LLC | Powin, LLC | 03/10/2023 | ESA (Energy Storage Agreement) | Sunstreams 4 |
| 355 | Sun Streams PVS, LLC | Powin, LLC | 12/09/2022 | ESA (Energy Storage Agreement) | Sunstreams 3 |
| 356 | Sungrid Solutions | Powin, LLC | 08/08/2019 | Purchase Order | Small Fry |
| 357 | Sungrid Solutions | Powin, LLC | 09/04/2020 | Purchase Order | Ukraine |
| 358 | SunGrid Solutions Inc. | Powin, LLC | 07/24/2019 | Purchase Order | |
| 359 | Swoose, LLC | Powin, LLC | 05/15/2020 | LTSA (Long Term Service Agreement) | Swoose |
| 360 | Swoose, LLC | Powin, LLC | 05/15/2020 | Purchase Order | Swoose |
| 361 | TPE Energy, Inc. | Powin, LLC | 10/27/2020 | Purchase Order | TPE FRRS |
| 362 | TPE Energy, Inc. | Powin, LLC | 11/18/2021 | ESA (Energy Storage Agreement) | J&V Taoyuan Taiwan |
| 363 | TPE Energy, Inc. | Powin, LLC | 11/18/2021 | ESA (Energy Storage Agreement) | Kaohsiung Taiwan PS Substation |
| 364 | Triple Butte, LLC | Powin, LLC | 08/21/2020 | LTSA (Long Term Service Agreement) | Triple Butte |
| 365 | Triple Butte, LLC | Powin, LLC | 08/21/2020 | Purchase Order | Triple Butte |
| 366 | Ulinda Park Project Co Pty Ltd | Powin, LLC | 08/29/2024 | ESA (Energy Storage Agreement) | Ulinda Park |
| 367 | Ulinda Park ProjectCo Pty Ltd | Powin, LLC | 12/23/2024 | ESA (Energy Storage Agreement) | Ulinda Park |
| 368 | Ulinda Park ProjectCo Pty Ltd | Powin, LLC | 06/26/2023 | ESA (Energy Storage Agreement) | Ulinda Park |
| 369 | Ulinda Park ProjectCo Pty Ltd | Powin, LLC | 06/28/2023 | LTSA (Long Term Service Agreement) | Ulinda Park |
| 370 | Ware Palmer Road Solar, LLC | Powin, LLC | 09/09/2020 | LTSA (Long Term Service Agreement) | Palmer |
| 371 | WEG Electric Corp | Powin, LLC | 02/24/2020 | Purchase Order | WEG Demo Stack225 |
| 372 | WEG Electric Corp | Powin, LLC | 01/28/2020 | Purchase Order | WEG Demo Stack225 |
| 373 | West Columbia Storage, LLC | Powin, LLC | 09/09/2019 | LTSA (Long Term Service Agreement) | Glidepath West Columbia |
| 374 | West Columbia Storage, LLC | Powin, LLC | 02/26/2019 | ESA (Energy Storage Agreement) | Glidepath West Columbia |
| 375 | West Columbia Storage, LLC | Powin, LLC | 10/04/2019 | ESA (Energy Storage Agreement) | Glidepath West Columbia |
| 376 | West Columbia Storage, LLC | Powin, LLC | 09/09/2019 | ESA (Energy Storage Agreement) | Glidepath West Columbia |
| 377 | West Warwick Energy Storage 1 LLC | Powin, LLC | 07/12/2024 | LTSA (Long Term Service Agreement) | West Warwick 1 |
| 378 | West Warwick Energy Storage 2 LLC | Powin, LLC | 09/26/2024 | LTSA (Long Term Service Agreement) | West Warwick 2 |
| 379 | West Warwick Energy Storage 3 LLC | Powin, LLC | 09/26/2024 | LTSA (Long Term Service Agreement) | West Warwick 3 |
| 380 | Wildcat I Energy Storage, LLC | Powin, LLC | 11/06/2019 | ESA (Energy Storage Agreement) | Wildcat Project |
| 381 | Wildcat I Energy Storage, LLC | Powin, LLC | 11/06/2019 | LTSA (Long Term Service Agreement) | Wildcat Project |
| 382 | Yuma Solar energy LLC | Powin, LLC | 05/15/2024 | LTSA (Long Term Service Agreement) | Yuma |
| 383 | Yuma Solar Energy LLC | Powin, LLC | 05/19/2024 | ESA (Energy Storage Agreement) | Yuma |

## **Exhibit 8**

(Emergency Motion of Ad Hoc Customer Group Granting Adequate Protection)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**VINSON & ELKINS LLP**

Steven M. Abramowitz (No. 043641990)
David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036-7708
Tel: (212) 237-0000
Fax: (212) 237-0100
Email: sabramowitz@velaw.com
      dmeyer@velaw.com
      lkanzer@velaw.com

-and-

William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
Email: bwallander@velaw.com
      mstruble@velaw.com

*Counsel for the Ad Hoc Customer Group*

In re:

Powin, LLC, *et al.*,[1]

      Debtors.

Case No. 25 – 16137 (MBK)

Chapter 11

(Jointly Administered)

Hearing Date: Time and Date to be set by the Court in accordance with the Order Shortening Time

Objection Deadline: Time and Date to be set by the Court in accordance with the Order Shortening Time

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin, LLC [0504], (ii) PEOS Holdings, LLC [5476], (iii) Powin Project LLC [1583], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

4912-0581-4611



**NOTICE OF MOTION FOR
EMERGENCY MOTION OF AD HOC CUSTOMER
GROUP FOR ENTRY OF AN ORDER (I) GRANTING
ADEQUATE PROTECTION UNDER SECTION 363(e) OF
THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that Lone Star Solar, LLC, Idaho Power Company, West Warwick Energy Storage 1, LLC, West Warwick Energy Storage 2, LLC, and West Warwick Energy Storage 3, LLC (collectively, the "***Ad Hoc Customer Group***"), by and through its undersigned counsel, submits the attached *Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code and (II) Granting Related Relief* (the "***Adequate Protection Motion***").

**PLEASE TAKE FURTHER NOTICE** that concurrently with the filing of the Adequate Protection Motion, the Ad Hoc Customer Group will be filing the *Application for Order Shortening Time for Notice of the Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code and (II) Granting Related Relief* (the "***Application for Shortened Time***").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Adequate Protection Motion shall: (i) be in writing; (ii) state with particularity the basis of the objection; and (iii) be filed with the Clerk of the United States Bankruptcy Court in accordance with D.N.J. LBR 9013-1.  If you do not want the Court to enter an order granting the relief requested in the Adequate Protection Motion, or if you want the Court to consider your views on an objection, then you or your attorney must file with the Court a written request for a hearing or response or answer explaining your position **on or before the objection deadline to be set by the Court in connection with the order on the Application for Shortened Time**.  You must also email a copy of the objection to:

**VINSON & ELKINS LLP**
Steven M. Abramowitz, Esq.
David S. Meyer, Esq. (admitted *pro hac vice*)
Lauren R. Kanzer, Esq. (admitted *pro hac vice*)
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
Telephone: (212) 237-0137
sabramowitz@velaw.com
dmeyer@velaw.com
lkanzer@velaw.com

-and-

William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: (214) 220-7700
bwallander@velaw.com
mstruble@velaw.com

     **PLEASE TAKE FURTHER NOTICE** that you must attend the hearing scheduled to be held on **the date and time established in the order on the Application for Shortened Time** before the Honorable Chief Judge Michael B. Kaplan, 402 East State Street, Trenton, New Jersey 08608, Courtroom #8 via Zoom.  If you do not take these steps, the Court may decide that you do not oppose the relief sought in the Adequate Protection Motion and may enter an order granting the Adequate Protection Motion.

Dated: July 8, 2025
New York, New York

Respectfully submitted,

/s/  Steven M. Abramowitz
**VINSON & ELKINS LLP**
Steven M. Abramowitz, Esq.
David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036-7708
Tel: (212) 237-0000
Fax: (212) 237-0100
Email: sabramowitz@velaw.com
      dmeyer@velaw.com
      lkanzer@velaw.com
-and-

William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
   Email: bwallander@velaw.com
      mstruble@velaw.com

*Counsel for the Ad Hoc Customer Group*

4912-0581-4611

4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**VINSON & ELKINS LLP**

Steven M. Abramowitz (No. 043641990)
David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036-7708
Tel: (212) 237-0000
Fax: (212) 237-0100
Email: sabramowitz@velaw.com
　　　dmeyer@velaw.com
　　　lkanzer@velaw.com


-and-


William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
Email: bwallander@velaw.com
　　　mstruble@velaw.com


*Counsel for Ad Hoc Group of Customers of Powin, LLC*

| | |
|---|---|
| In re: | Case No. 25 – 16137 (MBK) |
| Powin, LLC, *et al.*,[1] | Chapter 11 |
| 　　　　　Debtors. | (Jointly Administered) |

---

[1]　The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin, LLC [0504], (ii) PEOS Holdings, LLC [5476], (iii) Powin Project LLC [1583], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**EMERGENCY MOTION OF AD HOC
CUSTOMER GROUP FOR ENTRY OF AN ORDER
(I) GRANTING ADEQUATE PROTECTION UNDER SECTION 363(e)
OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

Lone Star Solar, LLC,[2] Idaho Power Company, West Warwick Energy Storage 1, LLC, West

Warwick Energy Storage 2, LLC, and West Warwick Energy Storage 3, LLC[3] (each a "***Customer***,"

and collectively, the "***Ad Hoc Customer Group***"), each a creditor, customer, and party in interest,

by and through their undersigned counsel, hereby file this *Emergency Motion of Ad Hoc Customer

Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(e) of the

Bankruptcy Code, and (II) Granting Related Relief* (the "***Motion***") and in support thereof

respectfully states as follows:

## PRELIMINARY STATEMENT[4]

1.      The members of the Ad Hoc Customer Group each own and operate large,

industrial-scale and utility-scale lithium ion battery energy storage systems ("***BESS***") that were

designed and provided by the Debtors and for which the Debtors are responsible for ongoing

maintenance and other services.  In some instances, the BESS are integrated into and support large

solar power projects (collectively, the "***Projects***") that generate significant amounts of power to

support the electric grid.  Each Customer entered into various executory contracts with certain of

the Debtors (collectively, the "***Contracts***") to install, maintain, and service the BESS.  Under the

Contracts, the Debtors granted, among other things, broad, perpetual licenses of intellectual

property (the "***Licenses***," and such intellectual property, the "***Licensed IP***") necessary to support

---

[2]     Lone Star Solar, LLC is a subsidiary of energyRe, LLC.

[3]     West Warwick Energy Storage 1, LLC, West Warwick Energy Storage 2, LLC, and West Warwick Energy Storage 3, LLC are direct subsidiaries of Convergent West Warwick, LLC and indirect subsidiaries of Convergent Energy and Power LP.

[4]     Capitalized terms used but not otherwise defined in this Preliminary Statement have the meanings ascribed elsewhere in the Motion.

2

the operation of the BESS.  In addition to the Licenses, the Contracts require the Debtors to provide, on an ongoing basis, certain services and information, including reporting, maintenance and operational support related to the Licensed IP and the BESS.

2.     The Licensed IP and the other support services required under the Contracts are critical for the BESS to remain "online" and to operate safely and effectively.  The Debtors' failure to adequately protect the Customers' respective interests in the Licensed IP—either in the context of rejection of the Contracts or in connection with a sale—would deprive the Customers of their statutory rights under the Bankruptcy Code and would likely result in significant near-term and irreparable harm to the Customers' ability to safely maintain and operate the BESS.  The Debtors acknowledge as much in their "Customer Program" motion, stating that "[t]he termination of the Debtors' LTSA Line of Business would have a severely detrimental impact on Customers who are largely incapable of replacing those functions without the Debtors' assistance."[5]

3.     From the Customers' standpoint, these chapter 11 cases are at a crossroads.  Just weeks ago, the Debtors commenced these cases with limited liquidity and no apparent ability to reorganize without customers agreeing to enter into superseding contracts to pay a newco significantly more money for significantly fewer services than they are contractually entitled to receive.[6]  The Debtors sent customers a written notice that they were ceasing performance under

---

[5]    *See Motion of the Debtors For Entry of an Order (I) Authorizing the Debtors to Enter Into New Customer Program with Existing Customers and (II) Granting Related Relief* [Docket No. 15] (the "**Customer Program Motion**"), at ¶ 9.

[6]    *See* Customer Program Motion, at ¶ 9 ("Under the proposed LTSA Program, the Debtors will be providing a reduced scope of services at pricing that is designed to be cash flow positive during the postpetition period.").

their existing executory contracts to conserve liquidity.[7]  Then, approximately one week into the

cases, the Debtors moved to reject all such contracts.[8]

4.       More recently, however, the Debtors' fortunes have changed.  They now have a

DIP facility—the product of a bidding war that was beneficial for all parties—that provides up to

$27.5 million in funding for these cases and for ongoing operations, including maintaining critical

intellectual property infrastructure and software used by customers.[9]  They are also now

conducting a competitive sale process with a stalking horse bidder in place.[10]  Yet, notwithstanding

their alleviated liquidity issues and their statutory duty to maximize value for all stakeholders (of

which customers are a major constituency), the Debtors have neither rescinded their

"nonperformance" statement to customers nor withdrawn or postponed the Rejection Motion.

5.       The Debtors have also failed to provide customers with any clarity on how the

Rejection Motion and the sale process will impact (i) their prior LTSA customer program or

---

[7]      *See Debtors' Objection to Application for Order Shortening Time for Notice of (A) Emergency Motion of
Licensees for Entry of an Order (I) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy
Code, (II) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code and (B) Motion for Entry
of an Order Authorizing Licensees to Redact and File Under Seal Confidential Information Contained in the
Energy Supply Agreements and Long Term Services Agreements in Connection with Licensees' Motion to Compel*
[Docket No. 128] (the "**Debtors' Objection**"), at ¶ 1 (noting that, "on June 16, the Debtors advised all of their
customers that the Debtors were 'suspending all services to all Customers . . . in order to preserve resources for
continuing Customers,' effective immediately.").

[8]      *See Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer
Contracts and (II) Granting Related Relief* [Docket No. 88] (the "**Rejection Motion**").  A hearing on the Rejection
Motion is currently scheduled for July 15, 2025.

[9]      *See Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing;
(II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic
Stay; (IV) Scheduling a Final DIP Hearing; and (V) Granting Related Relief* [Docket No. 169] (the "**Interim DIP
Order**").

[10]     *See Motion of the Debtors for Entry of an Order (I) Designating a Stalking Horse Bidder and Approving Stalking
Horse Bidder Protections (II) Approving Bidding Procedures By Which Interested Parties May Bid and an
Auction Sale Format in Connection with the Sale of Substantially All of the Debtors' Assets, (III) Approving Form
of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties,
(V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto,
(VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and
(VII) Authorizing the Sale of Debtors' Property Free and Clear of All Causes of Action and Claims* [Docket
No. 228] (the "**Sale Motion**").

(ii) customers' statutory rights under section 365(n) of the Bankruptcy Code. The Sale Motion appears to seek pre-approval of a free and clear sale of substantially all of the Debtors' assets to a winning bidder, but it is silent with respect to section 365(n) protections for licensee counterparties[11] and provides no details that would allow the Customers to determine how their respective rights and interests may be affected by such a sale. While the Debtors' proposed stalking horse APA acknowledges that the Debtors' assets are being sold free and clear, "subject to the rights of licensees under section 365(n) of the Bankruptcy Code,"[12] it does not provide any clarity on how those statutory rights will be honored. The stalking horse APA also references an "Assumed Contract List," but such list was not filed.[13]

6.     The Debtors should clarify how the Rejection Motion and sale process will, if at all, impact licensees' rights under section 365(n) of the Bankruptcy Code and, in the event licensees are adversely impacted, be ordered to provide adequate protection for such licensees' rights. The Ad Hoc Customer Group made multiple requests for clarification from the Debtors regarding their intentions with respect to the Rejection Motion given the changed circumstances, but the Debtors have failed to provide any response at all. The Ad Hoc Customer Group is thus forced to seek relief from this Court, which relief is similar in nature to that sought by a number of other customers.[14]

---

[11]   Note, the Rejection Motion also contains no mention of licensee counterparties' rights under section 365(n).

[12]   *See* Asset Purchase Agreement, at Section 3.5, filed at Docket No. 271-1.

[13]   The Ad Hoc Customer Group filed a limited objection and reservation of rights with respect to the Rejection Motion substantially contemporaneously herewith to, among other things, allow a potential bidder to complete the "Assumed Contract List" and determine which of the legacy customer contracts it may want to have the Debtors assume and assign to it, as that approach is the most likely way to maximize value for the benefit of all stakeholders.

[14]   *See, e.g., Emergency Motion of Licensees for Entry of an Order (I) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief* [Docket No. 117] and joinders thereto filed by esVolta, LP [Docket No. 273] and EDF Power Solutions, Inc. (f/k/a EDF Renewables, Inc.) [Docket No. 274].

7.     The Customers are entitled to certain protections of their respective interests in the Licensed IP (and embodiments thereof) under the Bankruptcy Code that the Debtors must respect. Section 365(n)(1)(B) of the Bankruptcy Code protects licensee counterparties after a debtor rejects an executory contract that grants a license to intellectual property by providing that such a licensee is entitled—at its election—to retain its rights to such intellectual property for the duration of the contract.[15] Here, if the Debtors ultimately reject the Contracts, the Customers may elect to retain their respective rights under the Contracts to the Licensed IP.  The Debtors should be required to adequately protect the Customers' respective interests in the Licensed IP to ensure the Customers' ability to retain their rights in the Licensed IP, if so elected, are not infringed.

8.     Furthermore, the Customers are entitled to adequate protection of their respective interests in the Licensed IP in the event of a sale.  Section 363(e) of the Bankruptcy Code requires that, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the debtor, the court must prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.[16]  As noted above, the Debtors intend to pursue a sale of all or substantially all of their assets, which presumably includes the Licensed IP, but it is currently unclear how the Customers' interests and rights will be affected by a sale or if they will be adequately protected.  Accordingly, the Ad Hoc Customer Group requests that the Court require the Debtors to adequately protect their respective interests in the Licensed IP as described in greater detail below.

9.     The overriding goals of the Customers are to ensure the safe operation of the BESS and avoid business interruption by preserving their respective statutory rights to access and use the

---

[15]    *See* 11 U.S.C. § 365(n)(1)(B).

[16]    *See* 11 U.S.C. § 363(e).

Licensed IP.  The Customers are not seeking to expand their rights or obtain anything more than what they are rightfully entitled to under the Contracts, the Bankruptcy Code, and applicable law. Both before and since the outset of these chapter 11 cases, the Customers have engaged with the Debtors in good faith to seek a workable solution that will allow the Customers to continue operating the BESS in a safe and effective manner.  The Customers remain hopeful that a resolution can be achieved, but they file this Motion to preserve and seek enforcement of their respective statutory rights.

## JURISDICTION AND VENUE

10.     The United States Bankruptcy Court for the District of New Jersey (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     The statutory bases for the relief requested herein are sections 365(n), 363(e), and 105(a) of title 11 of the United States Code (the "***Bankruptcy Code***").

## BACKGROUND

13.     On June 9 and 10, 2025 (as applicable, the "***Petition Date***"), the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing these chapter 11 cases (the "***Chapter 11 Cases***").

14.     On June 17, 2025, the Debtors filed the Rejection Motion.

15.     On June 21, 2025, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow*

7

Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (V) Granting Related Relief* [Docket No. 120 (the "***DIP Motion***"), and on June 23, 2025, the Debtors filed a notice of amended DIP Motion [Docket No. 143].  On June 26, 2025, the Court entered the Interim DIP Order.

16.     On June 27, 2025, the Office of the United States Trustee for the District of New Jersey appointed an Official Committee of Unsecured Creditors in these Chapter 11 Cases.[17]

17.     On July 1, 2025, the Debtors filed the Sale Motion, and on July 7, 2025, the Debtors filed the *Notice of Filing of Stalking Horse APA, Amended Order Approving Bidding Procedures Order, and Amended Bidding Procedures* [Docket No. 271].

18.     No trustee or examiner has been appointed in these Chapter 11 Cases as of the date hereof.

**A.     The Customers are Parties to Certain Contracts with the Debtors that Grant Them Licenses to Critical Technology and Intellectual Property.**

19.     Prior to the Petition Date, the Customers each entered into energy supply agreements with Debtor Powin, LLC ("***Powin***") (each, an "***ESA***"), pursuant to which Powin agreed to provide and install BESS, which in some cases were incorporated into Projects.  The ESAs also granted the Customers perpetual licenses to use certain technology and intellectual property related to the ownership and operation of the BESS.

---

[17]     *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 174].

20.    Additionally, the Customers each entered into long term services agreements with

Powin (each, an "*LTSA*"), pursuant to which Powin is required to, among other things, provide

certain ongoing services to the Customers related to the Licensed IP to support the BESS.[18]

**B.    Any Interruption or Delay in Access to the Licensed IP Risks Significant and Irreparable Harm to the BESS and the Customers.**

21.    The Licensed IP is critical to the safe and effective operation of the BESS, which

must be consistently monitored and maintained to ensure ongoing proper and safe functioning.  To

do this, the Customers must have complete and uninterrupted access to the Licensed IP, which

includes certain software, such as Powin Stack OS (including the Kobold platform and associated

applications), and CCUI,[19] along with data, source code, administrative-level access credentials,

historical customer data, and support services provided by the Debtors.

22.    However, the Debtors have intentionally stopped performing certain of their

obligations under the Contracts during these Chapter 11 Cases.  By their own admission, "on

June 16, the Debtors advised all of their customers that the Debtors were 'suspending all services

to all Customers . . . in order to preserve resources for continuing Customers,' effective

immediately."[20]  Further, the Debtors report that prior to and after the commencement of these

Chapter 11 Cases, they "have received dozens of Customer demands for assistance with and access

to the Debtors' proprietary technology and otherwise to enforce the Contracts" but that the Debtors

---

[18]    By their terms, the ESAs and LTSAs are each confidential.  The ESAs and LTSAs are voluminous and have not been attached to the Motion.  However, the Debtors possess copies of the ESAs and LTSAs, and copies of each will be made available to the Court prior to the hearing on this Motion.

[19]    *See Declaration of Gerard Uzzi in Support of Emergency First Day Motions of the Debtors* [Docket No. 13] (the "*First Day Declaration*") at pp. 16-17 (explaining that "[t]he Debtors' proprietary cloud-based technology and related servicing functionality is highly valuable to their Customers," and "[t]he termination of the Debtors LTSA Line of Business would have a severely detrimental impact on Customers who are largely incapable of replacing those functions without the Debtors' assistance").

[20]    *See* Debtors' Objection, at ¶ 1.

do not intend to perform their obligations because they "do not possess the funding or resources to comply with these demands."[21]  They further admit that they filed the Rejection Motion "to make clear to customers that the only way to utilize the Debtors' technology and services is in connection with the *new* LTSA Program."[22]

23.     Notwithstanding the DIP financing, the Debtors' nonperformance under the Contracts has largely continued, with the Debtors providing only the most basic level of services (i.e., keeping StackOS and Kobold online via the AWS cloud).  For example, the Debtors have been unresponsive to requests from Customers to resolve programming issues and provide other maintenance services required under the Contracts.  Further, the Customers have no assurance that the Debtors will maintain even these bare minimum services if the Contracts are rejected, a sale is approved, or the chapter 11 cases take an unexpected turn.

24.     As a result of the Debtors' lack of performance of certain of their contractual obligations, the Customers have, in some cases, been forced to engage third-party providers directly to perform necessary maintenance or, in some cases, to attempt to perform such maintenance themselves.  However, without access to the Licensed IP, including necessary user names, passwords, and source code, the Customers, whether directly or through third party vendors, cannot access and utilize key software, such as Powin Stack OS and Kobold, or perform other services the Debtors are obligated to provide under the Contracts.

25.     Any delay or interruption in the Customers' ability to retain access to the Licensed IP upon rejection or following a sale would severely hinder the Customers' ability to safely and effectively operate the BESS.  This could result in irreversible damage to the BESS (and, in turn,

---

[21]   *See* Rejection Motion, at ¶ 13.

[22]   *Id.* at p. 2 (Preliminary Statement) (emphasis added); *see also* Debtors' Objection, at ¶ 9 ("The Debtors were clear that there were two paths, either a re-negotiation or a rejection.").

the Projects where applicable), potential safety concerns, and loss of the ability to operate, which

would also cause significant harm to the Customers in the form of lost business and revenue and

potential harm to individuals and property.  Accordingly, the Debtors must be prepared to ensure

the immediate and complete transition of the Licensed IP to the Customers following rejection of

the Contracts, and they must provide adequate protection of the Customers' respective interests in

the Licensed IP in connection with any sale.

## **RELIEF REQUESTED**

26.     By this Motion, the Customers seek entry of an order, substantially in the form

attached hereto as **Exhibit A** (the "***Order***"):

> i.      granting adequate protection of the Customers' respective interests in the
> Licensed IP under section 363(e) of the Bankruptcy Code, including,
> without limitation (collectively, the "***IP Adequate Protection***"):
>
>> a)      immediate turnover to the Customers of the Licensed IP upon Court
>> approval of the rejection of any Contract or the sale of any Licensed
>> IP, including, without limitation, any and all data (including
>> Customer historical data for, without limitation, StackOS and
>> Kobold), source code, object code, protocol information, data
>> points, SCADA for software installations, software, firmware,
>> applications, standard operating procedures, backup data,
>> administrative-level read/write access credentials, and any and all
>> other documentation and information used or related to current and
>> historical operations, maintenance, and management of the BESS;
>
>> b)      such other related documentation, information, and data as the
>> applicable Customer may request; and
>
>> c)      training, access to personnel, other support, and maintenance of all
>> cloud services (including AWS), servers and related equipment,
>> software, and applications operating properly in place for an
>> adequate period of time as is necessary for the seamless transition
>> of 24/7 operational and maintenance control of the BESS consistent

11

with the Customers' respective rights and interests under the
Contracts and Licensed IP;[23] and

ii.      granting such other relief as is just and proper.[24]

## BASIS FOR RELIEF

27.      The Customers rely on the Debtors to provide the Licensed IP, along with expertise

and certain key support services to operate the BESS.  Accordingly, the Customers request that

the Court require the Debtors to provide the IP Adequate Protection to (i) ensure the Customers'

statutory rights to the Licensed IP are fully and properly retained as contemplated by section

365(n)(1)(B) of the Bankruptcy Code if the Contracts are rejected and the Customers so elect and

(ii) protect the Customers' interests in the Licensed IP in the event of a sale or other disposition of

such Licensed IP.  Failure to do so would subject the Customers to the unreasonable risk that they

would not be able to safely and effectively operate the BESS, which would irreparably harm the

Customers' ability to properly serve their respective customers, negatively impact the Customers'

businesses, and potentially cause significant service disruption to the electric grid.

**A.      The Debtors Must Adequately Protect the Customers' Respective Interests in the
Licensed IP Under Section 363(e) of the Bankruptcy Code.**

28.      The Customers each have interests in the Licensed IP by virtue of the Licenses

granted under the Contracts, and they are entitled to adequate protection of such interests.

29.      Section 363(e) of the Bankruptcy Code provides:

Notwithstanding any other provision of this section, at any time, on request of an
entity that has an interest in property used, sold, or leased, or proposed to be used,

---

[23]    In the event any of the Contracts containing a license of Licensed IP are not assumed in these Chapter 11 Cases,
such Contracts should be deemed rejected, and the Customers should be permitted to elect to retain their respective
rights in the Licensed IP (as required under section 365(n) of the Bankruptcy Code).  At such time and upon such
election, any Licensed IP and supporting materials remaining in any escrow would be released from escrow to
the applicable Customer to be utilized by such Customer as necessary for the seamless transition of operational
control of the BESS consistent with the Customers' respective interests and rights under the Contracts.

[24]    The Customers reserve all rights, including under section 365(n) of the Bankruptcy Code, with respect to the
Rejection Motion and the Sale Motion.

sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

30. Adequate protection of an interest in property is mandatory pursuant to section 363(e) of the Bankruptcy Code. *See In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("section 363(e) [of the Bankruptcy Code] is not permissive or discretionary—it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity"); *see also In re Heatron, Inc.*, 6 B.R. 493, 494 (Bankr. W.D.Mo. 1980) ("providing adequate protection is mandatory"). While section 363(e) does not expressly define "interest," courts have interpreted the term broadly and have determined that a license in intellectual property constitutes an interest in property. *See Compak Companies, LLC v. Johnson*, 415 B.R. 334, 338-39 (N.D. Ill. 2009) (citing *FutureSource, LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002)) (noting that a license in intellectual property is an interest in property).

31. When adequate protection is necessitated under section 363(e) of the Bankruptcy Code, it may be provided by, *inter alia*, "granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(3).

32. While the burden to prove adequate protection rests on the shoulders of the Debtors pursuant to section 363(p) of the Bankruptcy Code, the Ad Hoc Customer Group submits that in order for the Customers' respective interests and rights under the Contracts to be adequately protected, the Debtors must immediately provide the above-described IP Adequate Protection. The Customers' respective interests in the Licensed IP cannot be adequately protected through measures like periodic cash payments or replacement liens. The BESS can only operate as designed if the Customers have access to the Licensed IP, including certain key software and

13

technology as described above.  Accordingly, to realize the indubitable equivalent of the Customers' respective interests in the Licensed IP, the Debtors must either continue to perform under the Licenses or deliver the Licensed IP and other related items in a manner that allows the Customers to fully operate the BESS.

   1.    *The Court Should Require the Debtors to Provide Adequate Protection to Ensure the Customers' Statutory Rights Under Section 365(n) of the Bankruptcy Code Are Not Impaired.*

33.    The Debtors should not be able to reject the Contracts without a plan for how Customers will be able to retain their contractual rights to the Licensed IP.  Section 365(n) of the Bankruptcy Code recognizes a protectable interest in executory contracts for licensees of intellectual property.  *See In re Crumbs Bake Shop, Inc.*, 522 B.R. at 770-71 (explaining that section 365(n) was enacted to ensure "the rights of an intellectual property licensee . . . cannot be unilaterally cut off") (quoting *In re Exide Technologies*, 607 F.3d 957, 965 (3d Cir. 2010)).  If a debtor rejects an executory contract that grants such a license, the licensee is entitled, at its election, to continue using the license pursuant to certain conditions set forth in section 365(n).

34.    The Customers' continued and uninterrupted access to the Licensed IP and related support services is essential to the operation of the BESS.  If the Customers cannot access and utilize the Licensed IP, including certain software and technology, they cannot perform necessary upgrades, maintenance, and other services required to keep the BESS functioning properly, and the BESS could be significantly damaged.  Without the Licensed IP and related support services, grid reliability could be harmed, and the Customers may be unable to meet certain contractual and other commitments to third parties.  Consequently, the Customers could face significant economic loss in addition to any physical damage to the BESS that could result from lack of access to the Licensed IP.

14

35. Accordingly, the Debtors should be required to provide the IP Adequate Protection to ensure the Customers' statutory rights under section 365(n) can be appropriately realized and are not merely empty words on a page. The Ad Hoc Customer Group recognizes the exigencies of the Chapter 11 Cases. However, the Debtors cannot utilize the bankruptcy process to deprive the Customers of their respective interests in the Licensed IP and statutory rights under the Bankruptcy Code.

### 2. *The Debtors Must Provide Adequate Protection to the Customers in Connection with Any Sale of the Licensed IP.*

36. The Licenses under the Contracts granted the Customers interests in the Licensed IP that must be adequately protected in connection with any sale of the Licensed IP. As noted above, the Debtors have made known their intention to sell all or substantially all of their assets to a third party buyer vis-à-vis a sale process pursuant to section 363 of the Bankruptcy Code. Pursuant to section 363(e) of the Bankruptcy Code, the Court must condition any such sale (or any other use, sale, or lease) of the Licensed IP on the Debtors providing adequate protection of the Customers' respective interests in such Licensed IP.

37. Moreover, any potential sale of the Debtors' assets cannot occur free and clear of the Customers' respective interests in the Licensed IP, as such interests must be preserved pursuant to section 365(n) of the Bankruptcy Code. *See, e.g.*, *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 774 (Bankr. D.N.J. 2014) (explaining that "a sale under section 363(f) does *not* trump the rights granted to [l]icensees by section 365(n)"); *see also In re Dynamic Tooling Sys., Inc*., 349 B.R. 847, 856 (Bankr. D. Kan. 2006) (stating that rights under section 365(n) of the Bankruptcy Code could be protected by use of section 363(e) of the Bankruptcy Code to limit or prohibit a sale free and clear to protect interests of licensees).

15

## RESERVATION OF RIGHTS

38.     The Customers hereby reserve all of their rights, claims, defenses, and remedies, including under any license of intellectual property with the Debtors or agreements supplementary thereto, including the Contracts, and any rights under section 365(n) and 363(e) and pursuant to applicable law.

## NO PRIOR REQUEST

39.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

## CONCLUSION

40.     WHEREFORE, the Ad Hoc Customer Group respectfully requests that the Court (i) enter an order substantially in the form attached as **Exhibit A** hereto granting the IP Adequate Protection; and (ii) grant the Customers such other and further relief as is just and proper under the circumstances.

*[Remainder of page intentionally left blank.]*

Dated: July 8, 2025
New York, NY

/s/ Steven M. Abramowitz

**VINSON & ELKINS LLP**
Steven M. Abramowitz (NJ Bar No. 043641990)
David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036-7708
Tel: (212) 237-0000
Fax: (212) 237-0100
Email: sabramowitz@velaw.com
        dmeyer@velaw.com
        lkanzer@velaw.com

-and-

William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
Email: bwallander@velaw.com
        mstruble@velaw.com

*Counsel for Ad Hoc Group of*
*Customers of Powin, LLC*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**VINSON & ELKINS LLP**

Steven M. Abramowitz (NJ Bar No 043641990)
David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036-7708
Tel: (212) 237-0000
Fax: (212) 237-0100
Email: sabramowitz@velaw.com
      dmeyer@velaw.com
      lkanzer@velaw.com


-and-


William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
Email: bwallander@velaw.com
      mstruble@velaw.com

*Counsel for Ad Hoc Group of Customers of Powin, LLC*

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>          Debtors. | Case No. 25 – 16137 (MBK)<br><br>Chapter 11<br><br>Hearing Date: TBD |

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin, LLC [0504], (ii) PEOS Holdings, LLC [5476], (iii) Powin Project LLC [1583], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(Page 2)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Granting Expedited Motion of Lone Star Solar, LLC for Adequate Protection |

## ORDER GRANTING
## EMERGENCY MOTION OF AD HOC
## CUSTOMER GROUP FOR ENTRY OF AN ORDER
## (I) GRANTING ADEQUATE PROTECTION UNDER SECTION 363(e)
## OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered 3 through 4, is **ORDERED.**

Upon consideration of the *Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code, and (II) Granting Related Relief* (the "**Motion**")[2] filed by Lone Star Solar, LLC, Idaho Power Company, West Warwick Energy Storage 1, LLC, West Warwick Energy Storage 2, LLC, and West Warwick Energy Storage 3, LLC (each a "**Customer**," and collectively, the "**Ad Hoc Customer Group**"); and this Court having reviewed the Motion, any responses to the Motion, and any exhibits and testimony admitted into evidence; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

---

[2]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

(Page 3)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Granting Expedited Motion of Lone Star Solar, LLC for Adequate Protection |

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.  The Motion is **GRANTED** as set forth herein.

2.  All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.  Each Customer is entitled to its rights under section 365(n) of the Bankruptcy Code with respect to any Contracts under which one or more of the Debtors granted a license to such Customer.

4.  Each Customer shall be permitted to elect to retain any and all of its respective rights under the applicable Contracts as a licensee of intellectual property to the fullest extent permitted by section 365(n) of the Bankruptcy Code.

5.  The Debtors shall provide the following to the Customers as adequate protection (collectively, the "*IP Adequate Protection*"):

    i.   immediate turnover to the Customers of the Licensed IP upon Court approval of the rejection of any Contract or the sale of any Licensed IP, including, without limitation, any and all data (including Customer historical data for, without limitation, StackOS and Kobold), source code, object code, protocol information, data points, SCADA for software installations, software, firmware, applications, standard operating procedures, backup data, administrative-level read/write access credentials, and any and all other documentation and information used or related to current and historical operations, maintenance, and management of the BESS;

    ii.  such other related documentation, information, and data as the applicable Customer may request; and

    iii. training, access to personnel, other support, and maintenance of all cloud services (including AWS), servers and related equipment, software, and applications operating properly in place for an adequate period of time as is necessary for the seamless transition of 24/7 operational and maintenance control of the BESS consistent with the Customers' respective rights and interests under the Contracts and Licensed IP.

(Page 4)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Granting Expedited Motion of Lone Star Solar, LLC for Adequate Protection |

6.    To the extent the Contracts are not expressly assumed, assumed and assigned, or rejected in these Chapter 11 Cases, the Contracts shall be deemed rejected as of the earlier of the closing of a sale of all or substantially all of the Debtors' assets, the effective date of a confirmed chapter 11 plan of the Debtors, or the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

7.    Upon rejection of the Contracts or entry of any order of the Court approving a sale of all or substantially all of the Debtors' assets, any Licensed IP and other items remaining in any escrow (as applicable) shall be released from escrow or otherwise transferred to the applicable Customer and may be utilized by such Customer as necessary for the seamless transition of 24/7 operational and maintenance control of the applicable BESS consistent with such Customer's interests and rights under the Contracts.

8.    The Debtors and the Customers, as applicable, are authorized and empowered to take any and all actions necessary to implement the terms of this Order.

9.    The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

10.    The terms and conditions of this Order shall become immediately effective and enforceable upon its entry.

**<u>Exhibit 9</u>**

(Order Granting Emergency Motion of Ad Hoc Customer Group for  Adequate Protection)

<table>
<tr><td>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**VINSON & ELKINS LLP**

Steven M. Abramowitz (NJ Bar No 043641990)
David S. Meyer (admitted *pro hac vice*)
Lauren R. Kanzer (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036-7708
Tel: (212) 237-0000
Fax: (212) 237-0100
Email: sabramowitz@velaw.com
 dmeyer@velaw.com
 lkanzer@velaw.com


-and-


William L. Wallander (*pro hac vice* forthcoming)
Matthew D. Struble (*pro hac vice* forthcoming)
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
Email: bwallander@velaw.com
 mstruble@velaw.com

*Counsel for Ad Hoc Group of Customers of Powin, LLC*

</td></tr>
</table>

| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br><div align=center>Debtors.</div> | Case No. 25 – 16137 (MBK)<br><br>Chapter 11<br><br>Hearing Date: TBD |
|---|---|

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin, LLC [0504], (ii) PEOS Holdings, LLC [5476], (iii) Powin Project LLC [1583], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(Page 2)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Granting Expedited Motion of Lone Star Solar, LLC for Adequate Protection |

## ORDER GRANTING
## EMERGENCY MOTION OF AD HOC
## CUSTOMER GROUP FOR ENTRY OF AN ORDER
## (I) GRANTING ADEQUATE PROTECTION UNDER SECTION 363(e)
## OF THE BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered 3 through 4, is **ORDERED.**

Upon consideration of the *Emergency Motion of Ad Hoc Customer Group for Entry of an Order (I) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code, and (II) Granting Related Relief* (the "***Motion***")[2] filed by Lone Star Solar, LLC, Idaho Power Company, West Warwick Energy Storage 1, LLC, West Warwick Energy Storage 2, LLC, and West Warwick Energy Storage 3, LLC (each a "***Customer***," and collectively, the "***Ad Hoc Customer Group***"); and this Court having reviewed the Motion, any responses to the Motion, and any exhibits and testimony admitted into evidence; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page 3)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Granting Expedited Motion of Lone Star Solar, LLC for Adequate Protection |

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      Each Customer is entitled to its rights under section 365(n) of the Bankruptcy Code with respect to any Contracts under which one or more of the Debtors granted a license to such Customer.

4.      Each Customer shall be permitted to elect to retain any and all of its respective rights under the applicable Contracts as a licensee of intellectual property to the fullest extent permitted by section 365(n) of the Bankruptcy Code.

5.      The Debtors shall provide the following to the Customers as adequate protection (collectively, the "***IP Adequate Protection***"):

> i.      immediate turnover to the Customers of the Licensed IP upon Court approval of the rejection of any Contract or the sale of any Licensed IP, including, without limitation, any and all data (including Customer historical data for, without limitation, StackOS and Kobold), source code, object code, protocol information, data points, SCADA for software installations, software, firmware, applications, standard operating procedures, backup data, administrative-level read/write access credentials, and any and all other documentation and information used or related to current and historical operations, maintenance, and management of the BESS;

> ii.      such other related documentation, information, and data as the applicable Customer may request; and

> iii.      training, access to personnel, other support, and maintenance of all cloud services (including AWS), servers and related equipment, software, and applications operating properly in place for an adequate period of time as is necessary for the seamless transition of 24/7 operational and maintenance control of the BESS consistent with the Customers' respective rights and interests under the Contracts and Licensed IP.

(Page 4)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Granting Expedited Motion of Lone Star Solar, LLC for Adequate Protection |

6.    To the extent the Contracts are not expressly assumed, assumed and assigned, or rejected in these Chapter 11 Cases, the Contracts shall be deemed rejected as of the earlier of the closing of a sale of all or substantially all of the Debtors' assets, the effective date of a confirmed chapter 11 plan of the Debtors, or the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

7.    Upon rejection of the Contracts or entry of any order of the Court approving a sale of all or substantially all of the Debtors' assets, any Licensed IP and other items remaining in any escrow (as applicable) shall be released from escrow or otherwise transferred to the applicable Customer and may be utilized by such Customer as necessary for the seamless transition of 24/7 operational and maintenance control of the applicable BESS consistent with such Customer's interests and rights under the Contracts.

8.    The Debtors and the Customers, as applicable, are authorized and empowered to take any and all actions necessary to implement the terms of this Order.

9.    The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

10.    The terms and conditions of this Order shall become immediately effective and enforceable upon its entry.

**<u>Exhibit 10</u>**

(Emergency Motion of Licensees Compelling the Debtors to Comply With Section 365(N)(4))

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
          leisenberg@pashmanstein.com
          dsklar@pashmanstein.com

-and-

Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
          rstieglitz@mayerbrown.com
          ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Energy Holdings, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company*

In Re:

POWIN, LLC, *et al.*,[1]

          Debtors.

Chapter 11

Case Number: 25-16137 (MBK)

Jointly Administered

Hearing Date: Time and Date to be set by the Court in accordance with the Order Shortening Time

Objection Deadline: Time and Date to be set by the Court in accordance with the Order Shortening Time

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.



2516137250620000000000014

**NOTICE OF MOTION FOR EMERGENCY MOTION OF LICENSEES FOR ENTRY
OF AN ORDER (I) COMPELLING THE DEBTORS TO COMPLY WITH SECTION
365(N)(4) OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE
PROTECTION UNDER SECTION 363(E) OF THE BANKRUPTCY CODE, AND (III)
<u>GRANTING OTHER APPROPRIATE RELIEF</u>**

**PLEASE TAKE NOTICE,** that Leeward Renewable Energy, LLC on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC (collectively, the "<u>Leeward Licensees</u>"), Longroad Energy Holdings, LLC on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC (collectively, the "<u>Longroad Licensees</u>"), and DTE Electric Company ("<u>DTE</u>" and together with the Leeward Licensees and the Longroad Licensees, the "<u>Licensees</u>"), by and through its undersigned counsel, submits the attached *Emergency Motion of Licensees for Entry of an Order (I) Compelling the Debtors to comply with Section 365(n)(4) of the Bankruptcy Code, (II) Granting Adequate Protection under Section 363(e) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief* (the "<u>Motion to Compel</u>").

**PLEASE TAKE FURTHER NOTICE** that concurrently with the filing of the Motion to Compel, the Licensees will be filing the *Application for Order Shortening Time for Notice of (A) the Emergency Motion of Licensees for Entry of an Order (I) Compelling the Debtors to Comply with Section 365(n)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(e) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief and (B) Motion for Entry of an Order Authorizing Licensees to Redact and File Under Seal Confidential Information Contained in the Energy Supply Agreements and Long Term Services Agreements in Connection With Licensees' Motion to Compel* (the "<u>Motion for Shortened Time</u>").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion to Compel shall: (i) be in writing; (ii) state with particularity the basis of the objection; and (iii) be filed with the Clerk of the United States Bankruptcy Court in accordance with D.N.J.

2

LBR 9013-1.  If you do not want the Court to enter an order granting the relief requested in the

Motion to Compel, or if you want the Court to consider your views on an objection, then you or

your attorney must file with the Court a written request for a hearing or response or answer

explaining your position **on or before the objection deadline to be set by the Court in**

**connection with the order on the Motion for Shortened Time**. You must also mail a copy of the

objection to:

> **PASHMAN STEIN WALDER HAYDEN, P.C.**
> John W. Weiss
> Leah M. Eisenberg
> David E. Sklar
> 21 Main Street, Suite 200
> Hackensack, New Jersey 07601
> Email:  jweiss@pashmanstein.com
>             leisenberg@pashmanstein.com
>             dsklar@pashmanstein.com
>
> -and-
>
> **MAYER BROWN LLP**
> Joaquin M. C de Baca
> Richard A. Stieglitz
> Youmi Kim
> 1221 Avenue of the Americas
> New York, New York 10020-1001
> Email:  jcdebaca@mayerbrown.com
>             rstieglitz@mayerbrown.com
>             ykim@mayerbrown.com

**PLEASE TAKE FURTHER NOTICE** you must attend the hearing scheduled to be held

on **the date and time established in the order on the Motion for Shortened Time** before the

Honorable Chief Judge Michael B. Kaplan, 402 East State Street, Trenton, New Jersey 08608,

Courtroom #8 via Zoom.  If you do not take these steps, the Court may decide that you do not

oppose the relief sought in the Motion to Compel and may enter an order granting the Motion to

Compel.

Dated: June 21, 2025
Hackensack, NJ

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ Leah M. Eisenberg*
John W. Weiss
Leah M. Eisenberg
David E. Sklar
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email:  jweiss@pashmanstein.com
            leisenberg@pashmanstein.com
            dsklar@pashmanstein.com
-and-

Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
            rstieglitz@mayerbrown.com
            ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Energy Holdings, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
        leisenberg@pashmanstein.com
        dsklar@pashmanstein.com

-and-

Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
        rstieglitz@mayerbrown.com
        ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Energy Holdings, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company*

| |
|---|
| Chapter 11 |
| Case Number: 25-16137 (MBK) |
| Jointly Administered |
| Hearing Date: Time and Date to be set by the Court in accordance with the Order Shortening Time |
| Objection Deadline: Time and Date to be set by the Court in accordance with the Order Shortening Time |

In Re:

POWIN, LLC, *et al.*,[1]

        Debtors.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**EMERGENCY MOTION OF LICENSEES FOR ENTRY OF AN ORDER
(I) COMPELLING THE DEBTORS TO COMPLY WITH SECTION 365(N)(4) OF THE
BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION UNDER
SECTION 363(E) OF THE BANKRUPTCY CODE, AND (III) GRANTING OTHER
APPROPRIATE RELIEF**

Leeward Renewable Energy, LLC on behalf of Rabbitbrush Solar, LLC, Chaparral Springs,

LLC, and Antelope Valley BESS, LLC (collectively, the "Leeward Licensees"), Longroad Energy

Holdings, LLC on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams

Expansion, LLC (collectively, the "Longroad Licensees"), and DTE Electric Company ("DTE"

and, together with the Leeward Licensees and the Longroad Licensees, the "Licensees"), by and

through their undersigned counsel, hereby move the Court for an order (a) compelling the debtors

and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases

(the "Chapter 11 Cases") to comply with section 365(n)(4) of title 11 of the United States Code

(the "Bankruptcy Code") with respect to the intellectual property license granted by certain

Debtors to the Licensees, (b) granting adequate protection under section 363(e) of the Bankruptcy

Code with respect to the intellectual property license granted by certain Debtors to the Licensees,

and (c) granting other appropriate relief.[2]  In support of this motion (this "Motion"), the Licensees

respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      The Licensees have each maintained a contractual relationship with one of the

Debtors, Powin, LLC ("Powin"), for several years, and, pursuant to various agreements entered

into with Powin, the Licensees were granted broad intellectual property Licenses (as defined

below).  The Licensees are the owners and operators of renewable energy projects that rely on

Powin's battery systems and the related Licenses to operate their projects.  These Licenses are

---

[2] Although this Motion was filed jointly by the Licensees through counsel, the Leeward Licensees, Longroad
Licensees, and DTE are unaffiliated.

critical to the continued and safe operations of the Licensees' projects, and, without Powin's continued performance under the Licenses or, in the alternative, a release of the underlying intellectual property subject to the Licenses, the Licensees will face imminent and irreparable harm.

2.          Recognizing the unique harm that could befall a licensee of a debtor's intellectual property in the wake of the debtor's bankruptcy filing, Congress codified certain safeguards in the form of, among other things, section 365(n)(4) of the Bankruptcy Code.  Under section 365(n)(4), until the debtor rejects the contract granting the intellectual property license, which has not yet happened in these cases, the debtor shall, to the extent provided in such contract, either (i) perform such contract or (ii) provide the licensee with the underlying intellectual property.  11 U.S.C. § 365(n)(4).  Perhaps recognizing how critical intellectual property is to licensees of it, Congress made the protections afforded by section 365(n)(4) mandatory.

3.          The Licensees have made numerous attempts to work with the Debtors to negotiate a consensual transfer of all of the subject intellectual property to allow them to continue to operate their businesses efficiently and safely and to preserve limited estate resources.  Despite good-faith efforts to resolve this issue out of court, Powin has neither fully performed under the Licenses, nor released the intellectual property to the Licensees, to the detriment of the Licensees' projects and their businesses, leaving the Licensees no other option than to file this Motion.[3]

## JURISDICTION AND VENUE

4.          The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and this Motion in

---

[3] The Debtors relayed to certain Licensees their intention to release escrowed intellectual property to the relevant Licensees.  However, this has yet to occur, and out of an abundance of caution (and the need for other relief not resolved by the release of escrowed intellectual property), the Licensees filed this Motion.

this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief

requested herein are sections 365(n), 363(e), and 105(a) of the Bankruptcy Code.

## BACKGROUND

5.      On June 9 and 10, 2025 (the "Petition Date"), the Debtors commenced the above-

captioned jointly administered voluntary cases under chapter 11 of title 11 of the Bankruptcy Code.

6.      No trustee, examiner, or official committees have been appointed in these Chapter

11 Cases as of the date hereof.

**A.  The Licenses.**

7.      The Licensees are the owners and operators of renewable energy projects

throughout the United States.

8.      Prior to the Petition Date, each of the Licensees and Powin entered into an energy

supply agreement or energy system supply agreement (collectively, the "ESAs") pursuant to which

Powin agreed to provide an energy storage system for certain solar plus energy storage projects

developed by the respective Licensees (the "Projects").  In addition to the ESAs, certain Licensees

entered into long-term services agreements (the "LTSAs") with Powin.  A table listing the specific

ESAs and LTSAs and the relevant provisions thereof is attached hereto as **Exhibit A**.[4]

9.      Pursuant to each respective ESA and LTSA, Powin granted each applicable

Licensee a broad license to use, among other things, any of Powin's intellectual property in and to

the technology for certain energy storage system equipment (collectively, the "Licenses").  *See*

Exh. A.

---

[4] By their own terms, the ESAs and LTSAs are confidential, and, as such, Exhibit A is filed with redactions.  Copies
of the ESAs and LTSAs will be made available to the Court but are too voluminous to attach to this Motion.

4

10.     Certain ESAs also required Powin to enter into an escrow agreement, pursuant to which Powin agreed to hold in escrow important intellectual property necessary for the operation of the applicable Licensee's project sites. *Ibid.*

11.     In furtherance of the foregoing, certain of the Licensees were added as beneficiaries under that certain PRAXIS US Two Party Master Escrow Agreement (PRAXIS Account Number 191112) (the "IP Escrow Agreement"), dated as of December 17, 2019, by and between Powin Energy Corporation and PRAXIS Technology Escrow, LLC ("Escrow Agent").  Pursuant to the IP Escrow Agreement, the intellectual property granted to certain Licensees under the applicable ESAs was deposited into escrow.

**B.  Powin's Failures To Perform Under the Licenses and the Resulting Imminent and Irreparable Harm to the Licensees and the Safe Operations of their Projects.**

12.     The Licensees rely on the licensed intellectual property as part of a number of safeguards to ensure safe operation of their energy storage systems.   Continuous access to administrative credentials needed to run unique instances of programs, software, source codes, related instructions, and vendor support is an important redundancy for the Projects to maintain a safe environment, preserve grid reliability, and comply with other applicable standards.   Among other things, the Projects cannot operate at peak efficiency without full access to key software tools, such as Powin StackOS (including the Kobold platform) and CCUI.  *See Declaration of Gerard Uzzi in Support of Emergency First Day Motions of the Debtors* 16-17 [ECF No. 13] (the "First Day Declaration") ("[t]he Debtors' proprietary cloud-based technology and related servicing functionality is highly valuable to their Customers," and "[t]he termination of the Debtors LTSA Line of Business would have a severely detrimental impact on Customers who are largely incapable of replacing those functions without the Debtors' assistance").   The Licensees are committed to maintaining operational safety, and access to these materials would allow them to

5

maintain all safeguards. Powin is currently refusing to provide access that would enable parties to take those protective steps, while simultaneously levying the potential disappearance of LTSA services as supposed motivation to join its new customer program.

13.     As part of the ESAs, LTSAs, and Licenses, Powin is contractually obligated to maintain the health and proper functioning of the batteries at the Projects. To fulfill this obligation, upon information and belief, Powin relies primarily on Powin StackOS and other key software for the continued operation of the machinery at the Projects and to ensure that the batteries receive necessary maintenance. *See also* First Day Declaration 15. These batteries are essential to the Projects' operations and require consistent and attentive care to perform at the levels contractually mandated and necessary to meet the energy output commitments certain Licensees have made to third parties.

14.     Powin has failed, however, to perform its maintenance duties as required under the ESAs, LTSAs, and the Licenses. In response, the Licensees have made diligent efforts to mitigate Powin's failures by attempting to perform the necessary battery maintenance themselves. Despite these efforts, though, the Licensees are unable to adequately maintain the batteries without administrator access to key software, such as Kobold, which Powin has not yet provided. The Licensees are not asking for the ability to have access to the entire Powin master control system— merely permissions sufficient to administer their own individual Projects.[5]

15.     In addition, the Licensees are not receiving sufficient support from the Debtors' remote operations center (the "ROC"), which is meant to operate around the clock to respond to any systems issues as they arise.[6] Upon information and belief, a material portion of the personnel

---

[5] For the avoidance of doubt, the Licensees are not asking for the ability to see or control other projects.

[6] *See* Powering a Cleaner Tomorrow. Safely: Powin's Approach to Battery Safety, https://powin.com/wp-content/uploads/2024/02/Safety_White-Paper_Powin.pdf.

assigned to the Debtors' ROC were terminated by the Debtors.  *See Class Action Adversary Proceeding Complaint for Violation of Warn Act 29 U.S.C. § 2101, Et Seq.* [ECF No. 55] (alleging that certain Debtors terminated an estimated 200 employees).  As a result of this diminished support from the ROC, when coupled with the Licensees' lack of administrator access to key software, the Licensees are unable to effectively troubleshoot any issues on the Projects.

16.     Each day that Powin neglects its contractual obligations or withholds sufficient access to key software such as Kobold and other intellectual property, the risk of damage to the batteries increases, and the overall capabilities of the battery system are further degraded.  This ongoing failure not only jeopardizes the health of the batteries, but also threatens certain Licensees' ability to fulfill their obligations to third parties, thereby causing immediate significant and irreparable harm.

17.     Furthermore, Powin has acknowledged that its battery energy storage systems cannot function safely in the absence of Powin's intellectual property.  *See* First Day Declaration 6 ("[w]ithout Powin's Stack OS™, these [battery energy storage systems] cannot operate safely").  The Debtors' ongoing failure to provide administrator access to Kobold and other critical intellectual property exposes the Projects to imminent risks.  The continued lack of sufficient access to the intellectual property hinders the ability to prevent safety incidents and magnifies the potential for irreparable damage to property, public safety, and the Licensees' business interests.  Immediate relief is therefore necessary to prevent further harm.

## REQUESTED RELIEF

18.     The Licensees therefore respectfully request that the Court enter an order (i) compelling the Debtors to comply with section 365(n)(4) of the Bankruptcy Code by:

a.     Performing under the ESAs, LTSAs, and the IP Escrow Agreement, including, but not limited to:

(a)     Performing all tasks as required by the intellectual property licenses;

(b)     Maintaining and ensuring availability of key software (such as Powin StackOS, Kobold, and CCUI) and such other necessary intellectual property that will be identified to the Debtors; and

(c)     Providing sufficient administrative access to all onsite and cloud-based software and API keys used, including necessary credentials and backups, and providing access to any future upgrades; or

b.     Providing all licensed intellectual property to the Licensees, including turning over sufficient administrator access of key software (such as Powin StackOS, Kobold, and CCUI) to the Licensees in a manner that allows the Licensees to independently operate such software, as well as providing all other licensed intellectual property as identified by the Licensees in the future, and

c.     Immediately releasing the intellectual property escrowed pursuant to the IP Escrow Agreement to the applicable Licensees or, with respect to Licensees that are not party to the IP Escrow Agreement, releasing intellectual property that is substantially similar to the escrowed intellectual property,

(ii) granting adequate protection under section 363(e) in the form of the relief specified in subparagraph (i) of this section, and (iii) granting such other relief as is just and proper.[7]

## BASIS FOR REQUESTED RELIEF

19.     Section 365(n)(4) of the Bankruptcy Code provides:

Unless and until [a debtor] rejects such contract, on the written request of the licensee [a debtor] shall—

---

[7] On June 17, 2025, the Debtors filed the *Notice of Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [ECF No. 88] (the "Rejection Motion"). The Licensees reserve all rights, including under sections 365(n)(2) and (n)(3) of the Bankruptcy Code with respect to the Rejection Motion.

(A) to the extent provided in such contract or any agreement supplementary to such contract—

(i) perform such contract; or

(ii) provide to the licensee such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law) held by [the debtor]; and

(B) not interfere with the rights of the licensee as provided in such contract, or any agreement supplementary to such contract, to such intellectual property (including such embodiment), including any right to obtain such intellectual property (or such embodiment) from another entity.

11 U.S.C. § 365(n)(4).

20.     The language of section 365(n)(4) is mandatory: the debtor *shall* perform under the contract or provide the applicable intellectual property.  Accordingly, with respect to executory contracts under which a debtor is a licensor of intellectual property, or agreements supplementary thereto, like the Licenses, the debtor-licensor is expressly required under section 365(n)(4)— unless and until such license is rejected—to fulfill all contractual obligations, or, at a minimum, to provide the licensee with access to the intellectual property.

## I.    THE DEBTORS MUST COMPLY WITH SECTION 365(N)(4).

21.     Courts uniformly treat licenses and related agreements that impose ongoing obligations on both parties as executory contracts*.  See RPD Holdings, L.L.C. v. Tech Pharm. Servs. (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 848 (5th Cir. 2018) (holding that patent license is executory contract); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (holding that license agreement is an executory contract); *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 768 (Bankr. D.N.J. 2014) (discussing application of section 365 to intellectual property and trademark licenses).  As such, by their terms, the ESAs and the LTSAs are executory contracts.

9

22.    The ESAs and LTSAs expressly grant the applicable Licensees broad licenses to use the Debtors' intellectual property.  This comprehensive grant of intellectual property rights highlights the fundamental importance of such rights to the parties' relationship.

23.    The Licensees, each as licensee of a debtor's intellectual property, are thus entitled to the protections afforded by section 365(n) of the Bankruptcy Code.

24.    The same is true for the IP Escrow Agreement.  In the legislative history to section 365(n), an agreement like the IP Escrow Agreement is a quintessential example of an "agreement supplementary":

> It is also not unusual for the license agreement to be one of several agreements governing the working relationship between the licensor and licensee. . . .  To assure the licensee of access to such secret information at the defined time, the licensor may have agreed to turn over such information to a third party to be held in escrow until the triggering event.  The third-party escrow agent would be a party to such an agreement, and the agreement would be set forth in a document separate from the basic license.  Section 365(n)(1)(B), thus, speaks of the retention by the licensee of rights to the intellectual property under "any agreement supplementary to such contract."

S. Rep No. 100-505 at 9 (1988).

25.    The parties recognized the importance of the licensed intellectual property to the Projects and negotiated for contractual protections to ensure that the Licensees would retain the access and usage rights for which they bargained, regardless of any potential bankruptcy of Powin or Powin Energy Corporation.  The IP Escrow Agreement was established, in part, to safeguard the applicable Licensees' access and usage rights and ensure the Licensees' continued access to the necessary intellectual property, including in situations where the Debtors are at risk of not continuing their business operations.  The broad nature of the Licenses further ensures that the Licensees are entitled to both the materials held by the Escrow Agent under the IP Escrow Agreements and any other intellectual property needed to maintain and operate their Projects.  The

Debtors' failure to perform critical monitoring and maintenance services has created an immediate need for all such intellectual property.

26.  The Debtors have failed to perform their obligations under the ESAs, LTSAs, and the IP Escrow Agreement in direct contravention of section 365(n)(4)(B) of the Bankruptcy Code. Section 365(n)(4)(B) prohibits a debtor from interfering with a licensee's rights to the intellectual property.  The Debtors' current failure to provide sufficient access to key software tools, and their failure to maintain the ROC, constitute interference and threaten imminent harm to the Projects. Without any other explanation as to why the Debtors are refusing to comply with the Licenses, the Licensees have been left to conclude that this failure may be designed to pressure the Licensees into paying for these required services and rights again as part of the "new" customer program. *See In re Crumbs Bake Shop, Inc.*, 522 B.R. at 770-71 (describing that section 365(n) was enacted to ensure that "the rights of an intellectual property licensee … cannot be unilaterally cut off") (quoting *In re Exide Technologies*, 607 F.3d 957, 965 (3d Cir. 2010)); *Sunbeam Prods. v. Chi. Am. Mfg., LLC*, 686 F.3d 372, 378 (7th Cir. 2012) (affirming bankruptcy court decision allowing rejection of license, because rejection "did not abrogate the licensee's contractual rights").

27.  Accordingly, pursuant to the plain and express language of section 365(n)(4) of the Bankruptcy Code, the Debtors must be compelled to abide by their statutory obligations to perform or provide such intellectual property to the Licensees.

## II.    THE PERFORMANCE OF THE LICENSES OR THE DELIVERY OF THE INTELLECTUAL PROPERTY TO THE LICENSEES IS NECESSARY TO PROTECT THE LICENSEES FROM IMMEDIATE AND IRREPARABLE HARM.

28.  The Licensees' continued and uninterrupted access to the licensed intellectual property—including adequate control credentials, software, source code, related documentation, and support—is not merely a contractual convenience, but essential to the reliable operation of the energy storage systems at issue.  The Projects are highly complex, technologically advanced

11

facilities that depend on these intellectual property assets to maintain grid reliability and perform at an operational level required to meet the contractual and other commitments to third parties. Without this care, the Projects may face severe and unnecessary damage, and the Licensees are unable to perform critical functions necessary for the ongoing operation of the Projects. Therefore, any lapse in maintenance or system oversight risks not only equipment degradation, but also a significant loss of revenue.

29.     This is precisely the type of harm that section 365(n)(4) of the Bankruptcy Code is intended to prevent. The ongoing performance of the Licenses is critical to the continued operation of the Projects; nevertheless, Powin has not performed its obligations under the Licenses.

30.     But the law is clear: if the Debtors decline to comply with their obligation under section 365(n)(4)(A)(i) to "perform such contract," they are required, pursuant to section 365(n)(4)(A)(ii), to deliver the relevant intellectual property to the Licensees. Here, this includes delivering all necessary passwords and credentials to enable the Licensees' continued use of such intellectual property.

## III.   THE DEBTORS MUST GRANT ADEQUATE PROTECTION UNDER SECTION 363(E).

31.     The Licensees possess an interest in Powin's intellectual property by virtue of the Licenses and thus are entitled to adequate protection pursuant to section 363(e) of the Bankruptcy Code.

32.     Section 363(e) of the Bankruptcy Code provides, in relevant part:

> at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).  The use of the word "shall" in this provision is unequivocal, imposing another

mandatory obligation to ensure that any party holding an interest in property is afforded adequate

protection.

33.    While the statute does not define "interest," courts have interpreted the term broadly

and have determined that a license in intellectual property is such an interest.  *See Compak*

*Companies, LLC v. Johnson*, 415 B.R. 334, 338-39 (N.D. Ill. 2009) (citing *FutureSource, LLC v.*

*Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002)) (noting that license in intellectual property is an

interest in property).  Thus, the Licensees' interests in Powin's intellectual property, as established

by the Licenses, must be adequately protected against any potential diminution in value resulting

from the Debtors' use, sale, or lease of it.

34.    Pursuant to the *Motion of the Debtors for Entry of an Order (I) Authorizing the*

*Debtors to Enter Into New Customer Program with Existing Customers and (II) Granting Related*

*Relief* 18 [ECF No. 15] (the "<u>Customer Program Motion</u>"), the Debtors intend to "transfer, assign,

and convey to [a new wholly-owned subsidiary of Powin] IP Services Co all intellectual property

rights, assets, and licenses necessary for IP Services Co to provide ongoing services to Powin's

existing and future customers."  If the Debtors effectuate this transfer, they must provide adequate

protection in the form of providing access to the relevant intellectual property to the Licensees, as

required by section 363(e) of the Bankruptcy Code.

35.    Section 361 provides examples of adequate protection, including (i) periodic cash

payments, (ii) additional or replacement liens, and (iii) such other relief as will result in the

"indubitable equivalent" of the interest.  11 U.S.C. § 361(1)-(3).  However, these examples are not

exclusive, as the Bankruptcy Code makes clear in its rules of construction that "'includes' and

'including' are not limiting."  11 U.S.C. § 102(3).  Adequate protection is determined by courts

"on a case by case basis." *Resolution Tr. Corp. v. Swedeland Dev. Grp. (In re Swedeland Dev. Grp.)*, 16 F.3d 552, 564 (3d Cir. 1994).

36.     The Bankruptcy Code does not define the term "indubitable equivalent." Rather, the phrase originates from Judge Learned Hand's opinion in *Metropolitan Life Ins. Co. v. Murel Holding Corp. (In re Murel Holding Corp.)*, 75 F.2d 941, 942 (2d Cir. 1935). *See In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 696 (Bankr. S.D. Tex. 2009) (discussing origins of the term "indubitable equivalent"). The legislative history clarifies that the concept is intentionally flexible, permitting courts to craft relief that ensures the protected party realizes the full value of its interest in the property at issue. Specifically, Congress explained that an indubitable equivalent:

> gives the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity of the value of its interest in the property involved. Under this provision, the courts will be able to adapt to new methods of financing and to formulate protection that is appropriate to the circumstances of the case if none of the other methods would accomplish the desired result.

*Id*. (citing H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296).

37.     Thus, the indubitable equivalent of a party's interest in the property can take on many forms in an effort to realize the full value of such interest. *Id.*; *see also Martin v. United States (In re Martin)*, 761 F.2d 472, 476, 477 (8th Cir. 1985) (indubitable equivalence requires "such relief as will result in the realization of value" and "must be completely compensatory") (internal quotations omitted). Here, the Licensees' interest in the Licenses is essential to the ongoing operation of their businesses, as the underlying software and other intellectual property are necessary for the continued functioning of the Projects. Unlike situations where a party's interest is in cash or tangible collateral, the Licensees cannot be adequately protected through periodic cash payments or replacement liens. Instead, the only form of adequate protection that delivers the indubitable equivalent of the Licensees' interests is the continued performance of the

14

Licenses or, alternatively, the delivery of the underlying intellectual property and other related items in a manner that allows the Licensees to fully operate the Projects.

## RESERVATION OF RIGHTS

38.    The Licensees reserve all rights under any license of intellectual property with the Debtors or agreements supplementary thereto, including any rights under sections 365(n)(4) and 363(e), and under licenses and agreements not at issue in this Motion.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Licensees respectfully request that the Court enter an order (i) compelling the Debtors to comply with section 365(n)(4) of the Bankruptcy Code by:

a.    Performing under the ESAs, LTSAs, and the IP Escrow Agreement, including, but not limited to:

    (a)    Performing all tasks as required by the intellectual property licenses;

    (b)    Maintaining and ensuring availability of key software (such as Powin StackOS, Kobold, and CCUI) and such other necessary intellectual property that will be identified to the Debtors;

    (c)    Providing sufficient administrative access to all onsite and cloud-based software and API keys used, including necessary credentials and backups, and providing access to any future upgrades; or

b.    Providing all licensed intellectual property to the Licensees, including turning over sufficient administrator access of key software (such as Powin StackOS, Kobold, and CCUI) to the Licensees in a manner that allows the Licensees to independently operate such software, as well as providing all other licensed intellectual property as identified by the Licensees in the future, and

15

    c.  Immediately releasing the intellectual property escrowed pursuant to the IP Escrow Agreement to the applicable Licensees or, with respect to Licensees that are not party to the IP Escrow Agreement, releasing intellectual property that is substantially similar to the escrowed intellectual property,

(ii) granting adequate protection under section 363(e) in the form of the relief specified in subparagraph (i) of this section, and (iii) granting such other relief as is just and proper.

*[Remainder of page intentionally left blank.]*

Dated: June 21, 2025

Respectfully submitted,

/s/ Leah M. Eisenberg

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
    leisenberg@pashmanstein.com
    dsklar@pashmanstein.com


-and-

Joaquin C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910
Email: JCdeBaca@mayerbrown.com
    RStieglitz@mayerbrown.com
    YKim@mayerbrown.com

*Counsel for Leeward Renewable Energy, LLC on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, Antelope Valley BESS, LLC, Longroad Energy Holdings, LLC on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, Sun Streams Expansion, LLC, and DTE Electric Company*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
      leisenberg@pashmanstein.com
      dsklar@pashmanstein.com

-and-

Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
      rstieglitz@mayerbrown.com
      ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Energy Holdings, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company*

Chapter 11

Case Number: 25-16137 (MBK)

Jointly Administered

In Re:

POWIN, LLC, *et al.*,[1]

      Debtors.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**ORDER (I) COMPELLING THE DEBTORS TO COMPLY WITH SECTION 365(N)(4)
OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION UNDER
SECTION 363(E) OF THE BANKRUPTCY CODE, AND (III) GRANTING OTHER
<u>APPROPRIATE RELIEF</u>**


The relief set forth on the following pages, numbered three (3) through five (5), is

**ORDERED**.

(Page 3)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No.: | 25-16137(MBK) |
| Caption of Order: | Order (I) Compelling the Debtors to Comply with Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief |

Upon consideration of the motion (the "Motion")[2] of Leeward Renewable Energy, LLC on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC (collectively, the "Leeward Licensees"), Longroad Energy Holdings, LLC on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC (collectively, the "Longroad Licensees"), and DTE Electric Company ("DTE" and, together with the Leeward Licensees and the Longroad Licensees, the "Licensees") for entry of an order (this "Order") to compel the Debtors to comply with section 365(n)(4) of the Bankruptcy Code and grant adequate protection under section 363(e) of the Bankruptcy Code as more fully set forth in the Motion; and this Court having reviewed (a) the Motion, (b) any responses to the Motion, and (c) the exhibits and testimony admitted into evidence; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Order, therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

(Page 4)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No.: | 25-16137(MBK) |
| Caption of Order: | Order (I) Compelling the Debtors to Comply with Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief |

1.    The Motion is GRANTED as set forth herein.

2.    All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.    The Licensees are entitled to their rights under section 365(n) of the Bankruptcy Code with respect to the ESAs, LTSAs, and IP Escrow Agreement.

4.    The Debtors shall immediately comply with section 365(n)(4) with respect to the ESAs, LTSAs, and IP Escrow Agreement, as set forth in the Motion.

5.    To the extent that any Licensee identifies any necessary intellectual property previously granted by Powin under the existing intellectual property licenses and requests the release of such intellectual property to such Licensee following the entry of this Order, Powin shall promptly, but in any event within three calendar days, comply with such request.

6.    The Debtors shall immediately inform the Escrow Agent to immediately release the intellectual property that was held in escrow under the IP Escrow Agreement to the applicable Licensees or, with respect to Licensees that are not party to the IP Escrow Agreement, to immediately release intellectual property that is substantially similar to the escrowed intellectual property.

7.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

8.    The terms and conditions of this Order shall become immediately enforceable upon its entry.

(Page 5)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No.: | 25-16137(MBK) |
| Caption of Order: | Order (I) Compelling the Debtors to Comply with Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief |

9.      The Debtors and the Licensees, as applicable, are authorized and empowered to

take any and all actions necessary to implement the terms of the Motion and this Order.

<u>**Exhibit A-1**</u>

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
| 1. | AVEP BESS, LLC | Energy Storage System Supply Agreement, dated December 21, 2022, between AVEP BESS, LLC ("<u>Buyer</u>") and Powin, LLC ("<u>Supplier</u>") | ████████████████████████████████ |
| 2. | AVEP BESS, LLC | Long Term Services Agreement for ESS, dated December 15, 2022, between AVEP BESS, LLC ("<u>Owner</u>") and | ████████████████████████████████ |

---

[1] In each case, as amended, amended and restated, restated, supplemented or otherwise modified from time to time.

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
|  |  | Powin, LLC ("Powin") | ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ███████████████████████ |
| 3. | Chaparral Springs, LLC | Energy Storage System Supply Agreement for the Chaparral Springs Solar Project, dated July 27, 2022, between Chaparral Springs, LLC ("Buyer") and Powin, LLC ("Supplier") | ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ███████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ █████████████████ |
| 4. | Chaparral Springs, LLC | Long Term Services Agreement for ESS, dated August 8, 2022, between Chaparral Springs, LLC ("Owner") and | ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ |

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|---|---|---|---|
| | | Powin, LLC ("Powin") | ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ █████████████████ |
| 5. | Chaparral Springs, LLC | Energy Storage System Supply Agreement for the Willow Springs Solar Project, dated July 27, 2022, between Chapparal Springs, LLC ("Buyer") and Powin, LLC ("Supplier") | ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ██████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████ |
| 6. | Chaparral Springs, LLC | Long Term Services Agreement for ESS, dated August 8, 2022, between Chaparral Springs, LLC | ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ |

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
| | | ("Owner") and Powin, LLC ("Powin") | ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████ |
| 7. | Rabbitbrush Solar, LLC | Battery Energy Storage System Supply Agreement for the Rabbitbrush 1 Project, dated July 9, 2021, between Rabbitbrush Solar, LLC ("Buyer") and Powin, LLC ("Supplier") | ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████ |
| 8. | Rabbitbrush Solar, LLC | Long Term Services Agreement for BESS, dated March 18, 2022, between | ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ |

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|----------------------------------|
|  |  | Rabbitbrush Solar, LLC ("Owner") and Powin, LLC ("Powin") | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ████████████████████ |
| 9. | Rabbitbrush Solar, LLC | Battery Energy Storage System Supply Agreement for the Rabbitbrush 2 Project, dated July 9, 2021, between Rabbitbrush Solar, LLC ("Buyer") and Powin, LLC ("Supplier") | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ █████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████ |
| 10. | Rabbitbrush Solar, LLC | Long Term Services Agreement for BESS, dated March 18, | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ |

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|----------------------------------|
|     |          | 2022, between Rabbitbrush Solar, LLC ("Owner") and Powin, LLC ("Powin") | ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ███████████████████████████ |

**Exhibit A-2**

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|----------------------------------|
| 1. | Serrano Solar, LLC | Energy Supply Agreement, dated May 5, 2023, between Serrano Solar, LLC, ("Buyer"), and Powin, LLC ("Supplier") | ██████████████████████████████████ |
| 2. | Sun Streams PVS, LLC | Energy Supply Agreement, dated December 9, 2022, | ██████████████████████████████████ |

---

[1] In each case, as amended, amended and restated, restated, supplemented or otherwise modified from time to time.

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|---|---|---|---|
| | | between Sun Streams PVS, LLC ("<u>Buyer</u>") and Powin, LLC ("<u>Supplier</u>") | ███████████████████████████████ ███████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ████████████████████████████ |
| 3. | Sun Streams Expansion, LLC | Energy Supply Agreement, dated March 10, 2023, by and between Sun Streams Expansion, LLC ("<u>Buyer</u>") and Powin ("<u>Supplier</u>") | ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ |

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
|     |          |             | ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ████████████████████ |

<u>Exhibit A-3</u>

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
| 1. | DTE Electric Company | Energy Supply Agreement, dated December 15, 2022, between DTE Electric Company ("<u>Buyer</u>") and Powin, LLC ("<u>Supplier</u>") | ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████ |
| 2. | DTE Electric Company | Long Term Services Agreement, dated December 20, 2024, between DTE Electric Company ("<u>Owner</u>") and Powin, LLC ("<u>Powin</u>") | ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████ |

---

[1] In each case, as amended, amended and restated, restated, supplemented or otherwise modified from time to time.

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
      leisenberg@pashmanstein.com
      dsklar@pashmanstein.com

-and-

Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
      rstieglitz@mayerbrown.com
      ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Energy Holdings, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company*

In Re:

POWIN, LLC, *et al.*,[1]

    Debtors.

Chapter 11

Case Number: 25-16137 (MBK)

Jointly Administered

Hearing Date: Time and Date to be set by the Court in accordance with the Order Shortening Time

Objection Deadline: Time and Date to be set by the Court in accordance with the Order Shortening Time

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**DECLARATION OF THEODORE D. MATULA IN SUPPORT OF EMERGENCY
MOTION OF LICENSEES FOR ENTRY OF AN ORDER (I) COMPELLING THE
DEBTORS TO COMPLY WITH SECTION 365(N)(4) OF THE BANKRUPTCY CODE,
(II) GRANTING ADEQUATE PROTECTION UNDER SECTION 363(E) OF THE
BANKRUPTCY CODE, AND (III) GRANTING OTHER APPROPRIATE RELIEF[2]**

I, Theodore D. Matula, declare and state as follows:

1.       I am the chief legal officer of Leeward Renewable Energy, LLC ("<u>Leeward</u>").  This
declaration (this "<u>Declaration</u>") is based upon my personal knowledge, review of the relevant
documents, or information provided to me by employees of Leeward.  I could and would testify
competently to them under oath if called on to do so.

2.       Each of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley
BESS, LLC (collectively, the "<u>Leeward Licensees</u>") are affiliates of Leeward.

3.       The Leeward Licensees are the owners and operators of renewable energy projects
in California.

4.       Prior to the Petition Date, each of the Leeward Licensees and Powin, LLC ("<u>Powin</u>")
entered into an energy system supply agreement (collectively, the "<u>ESAs</u>") pursuant to which
Powin agreed to provide an energy storage system for certain solar plus energy storage projects
developed by the respective Leeward Licensees (the "<u>Projects</u>").  In addition to the ESAs, the
Leeward Licensees entered into long-term services agreements (the "<u>LTSAs</u>") with Powin.  A
table listing the specific ESAs and LTSAs and the relevant provisions thereof is attached to the
Motion as **<u>Exhibit A</u>**.

5.       Pursuant to each respective ESA and LTSA, Powin granted each applicable
Leeward Licensee a broad license to use, among other things, any of Powin's intellectual property

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

in and to the technology for certain energy storage system equipment (collectively, the "Licenses").

6.      The ESAs also required Powin to enter into an escrow agreement, pursuant to which Powin agreed to hold in escrow important intellectual property necessary for the operation of the applicable Leeward Licensee's project sites.

7.      In furtherance of the foregoing, the Leeward Licensees were added as beneficiaries under that certain PRAXIS US Two Party Master Escrow Agreement (PRAXIS Account Number 191112) (the "IP Escrow Agreement"), dated as of December 17, 2019, by and between Powin Energy Corporation and PRAXIS Technology Escrow, LLC.    Pursuant to the IP Escrow Agreement, the intellectual property granted to the Leeward Licensees under the applicable ESAs was deposited into escrow.

8.      The Leeward Licensees rely on the licensed intellectual property as part of a number of safeguards to ensure safe operation of their energy storage systems.    Continuous access to administrative credentials needed to run unique instances of programs, software, source codes, related instructions, and vendor support is a critical element for the Projects to maintain a safe environment, preserve grid reliability, and comply with other applicable standards.    Among other things, the Projects cannot operate at peak efficiency without full access to key software tools, such as Powin StackOS (including the Kobold platform) and CCUI.    The Leeward Licensees are committed to maintaining operational safety, and access to these materials would allow them to maintain all safeguards.    Powin is currently refusing to provide access that would enable parties to take those protective steps, while simultaneously levying the potential disappearance of LTSA services as supposed motivation to join its new customer program.

9. As part of the ESAs, LTSAs, and Licenses, Powin is contractually obligated to maintain the health and proper functioning of the batteries at the Projects. To fulfill this obligation, upon information and belief, Powin relies primarily on Powin StackOS and other key software for the continued operation of the machinery at the Projects and to ensure that the batteries receive necessary maintenance. These batteries are essential to the Projects' operations and require consistent and attentive care to perform at the levels contractually mandated and necessary to meet the energy output commitments the Leeward Licensees have made to third parties.

10. Powin has failed, however, to perform its maintenance duties as required under the ESAs, LTSAs, and the Licenses. In response, the Leeward Licensees have made diligent efforts to mitigate Powin's failures by attempting to perform the necessary battery maintenance themselves. Despite these efforts, though, the Leeward Licensees are unable to adequately maintain the batteries without administrator access to key software, such as Kobold, which Powin has not yet provided. The Leeward Licensees are not asking for the ability to have access to the entire Powin master control system—merely permissions sufficient to administer their own individual Projects.[3]

11. In addition, the Leeward Licensees are not receiving sufficient support from the Debtors' remote operations center (the "ROC"), which is meant to operate around the clock to respond to any systems issues as they arise. Upon information and belief, a material portion of the personnel assigned to the Debtors' ROC were terminated by the Debtors. *See Class Action Adversary Proceeding Complaint for Violation of Warn Act 29 U.S.C. § 2101, Et Seq.* [ECF No. 55] (alleging that certain Debtors terminated an estimated 200 employees). As a result of this diminished support from the ROC, when coupled with the Leeward Licensees' lack of

---

[3] For the avoidance of doubt, the Leeward Licensees are not asking for the ability to see or control non-Leeward affiliated projects.

administrator access to key software, the Leeward Licensees are unable to effectively troubleshoot any issues on the Projects.

12.     Each day that Powin neglects its contractual obligations or withholds sufficient access to key software such as Kobold other intellectual property, the risk of damage to the batteries increases, and the overall capabilities of the battery system are further degraded.  This ongoing failure not only jeopardizes the health of the batteries, but also threatens the Leeward Licensees' ability to fulfill their obligations to third parties, thereby causing immediate significant and irreparable harm.

13.     Furthermore, Powin has acknowledged that its battery energy storage systems cannot function safely in the absence of Powin's intellectual property.  *See* First Day Declaration 6 ("[w]ithout Powin's Stack OS™, these [battery energy storage systems] cannot operate safely").  The Debtors' ongoing failure to provide administrator access to Kobold and other critical intellectual property exposes the Projects to imminent risks.  The continued lack of sufficient access to the intellectual property hinders the ability to prevent safety incidents and magnifies the potential for irreparable damage to property, public safety, and the Leeward Licensees' business interests.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 20th day of June, 2025 at Dallas, Texas in Dallas County.

By: _____

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
      leisenberg@pashmanstein.com
      dsklar@pashmanstein.com

-and-

Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
      rstieglitz@mayerbrown.com
      ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Energy Holdings, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company*

Chapter 11

Case Number: 25-16137 (MBK)

Jointly Administered

In Re:

POWIN, LLC, *et al.*,[1]

    Debtors.

Hearing Date: Time and Date to be set by the Court in accordance with the Order Shortening Time

Objection Deadline: Time and Date to be set by the Court in accordance with the Order Shortening Time

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**DECLARATION OF VANESSA KWONG IN SUPPORT OF EMERGENCY MOTION
OF LICENSEES FOR ENTRY OF AN ORDER (I) COMPELLING THE DEBTORS TO
COMPLY WITH SECTION 365(N)(4) OF THE BANKRUPTCY CODE, (II) GRANTING
ADEQUATE PROTECTION UNDER SECTION 363(E) OF THE BANKRUPTCY CODE,
AND (III) GRANTING OTHER APPROPRIATE RELIEF[2]**

I, Vanessa Kwong, declare and state as follows:

1.      I am a Vice President of the legal department of Longroad Energy Holdings, LLC ("Longroad").  This declaration is based upon my personal knowledge, review of the relevant documents, or information provided to me by employees of Longroad.  I could and would testify competently to them under oath if called on to do so.

2.      Each of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC (collectively, the "Longroad Licensees") are affiliates of Longroad.

3.      The Longroad Licensees are the owners and operators of renewable energy projects in Arizona.

4.      Prior to the Petition Date, each of the Longroad Licensees and Powin, LLC ("Powin") entered into an energy supply agreement (collectively, the "ESAs") pursuant to which Powin agreed to provide an energy storage system for certain solar plus energy storage projects developed by the respective Longroad Licensees (the "Projects").  A table listing the specific ESAs and the relevant provisions thereof is attached to the Motion as **Exhibit A**.

5.      Pursuant to each respective ESA, Powin granted each applicable Longroad Licensee a broad license to use, among other things, any of Powin's intellectual property in and to the technology for certain energy storage system equipment (collectively, the "Licenses").

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

6.      The ESAs also required Powin to enter into an escrow agreement, pursuant to which Powin agreed to hold in escrow important intellectual property necessary for the operation of the applicable Longroad Licensee's project sites.

7.      In furtherance of the foregoing, the Longroad Licensees were added as beneficiaries under that certain PRAXIS US Two Party Master Escrow Agreement (PRAXIS Account Number 191112) (the "IP Escrow Agreement"), dated as of December 17, 2019, by and between Powin Energy Corporation and PRAXIS Technology Escrow, LLC.   Pursuant to the IP Escrow Agreement, the intellectual property granted to the Longroad Licensees under the applicable ESAs was deposited into escrow.

8.      The Longroad Licensees rely on the licensed intellectual property as part of a number of safeguards to ensure safe operation of their energy storage systems.   Continuous access to administrative credentials needed to run unique instances of programs, software, source codes, related instructions, and vendor support is an important redundancy for the Projects to maintain a safe environment, preserve grid reliability, and comply with other applicable standards.   Among other things, the Projects cannot operate at peak efficiency without full access to key software tools, such as Powin StackOS (including the Kobold platform) and CCUI.   The Longroad Licensees are committed to maintaining operational safety, and access to these materials would allow them to maintain all safeguards.   Powin is currently refusing to provide access that would enable parties to take those protective steps, while simultaneously levying the potential disappearance of LTSA services as supposed motivation to join its new customer program.

9.      As part of the ESAs and Licenses, Powin is contractually obligated to maintain the health and proper functioning of the batteries at the Projects.   To fulfill this obligation, upon information and belief, Powin relies primarily on Powin StackOS and other key software for the

continued operation of the machinery at the Projects and to ensure that the batteries receive necessary maintenance. These batteries are essential to the Projects' operations and require consistent and attentive care to perform at the levels contractually mandated and necessary to meet the energy output commitments the Longroad Licensees have made to third parties.

10. Powin has failed, however, to perform its maintenance duties as required under the ESAs and the Licenses. In response, the Longroad Licensees have made diligent efforts to mitigate Powin's failures by attempting to perform the necessary battery maintenance themselves. Despite these efforts, though, the Longroad Licensees are unable to adequately maintain the batteries without administrator access to key software, such as Kobold, which Powin has not yet provided. The Longroad Licensees are not asking for the ability to have access to the entire Powin master control system—merely permissions sufficient to administer their own individual Projects.[3]

11. In addition, the Longroad Licensees are not receiving sufficient support from the Debtors' remote operations center (the "ROC"), which is meant to operate around the clock to respond to any systems issues as they arise. Upon information and belief, a material portion of the personnel assigned to the Debtors' ROC were terminated by the Debtors. *See Class Action Adversary Proceeding Complaint for Violation of Warn Act 29 U.S.C. § 2101, Et Seq.* [ECF No. 55] (alleging that certain Debtors terminated an estimated 200 employees). As a result of this diminished support from the ROC, when coupled with the Longroad Licensees' lack of administrator access to key software, the Longroad Licensees are unable to effectively troubleshoot any issues on the Projects.

12. Each day that Powin neglects its contractual obligations or withholds sufficient access to key software such as Kobold and other intellectual property, the risk of damage to the

---

[3] For the avoidance of doubt, the Longroad Licensees are not asking for the ability to see or control other projects.

batteries increases, and the overall capabilities of the battery system are further degraded.  This ongoing failure not only jeopardizes the health of the batteries, but also threatens the Longroad Licensees' ability to fulfill their obligations to third parties, thereby causing immediate significant and irreparable harm.

13.      Furthermore, Powin has acknowledged that its battery energy storage systems cannot function safely in the absence of Powin's intellectual property.  *See* First Day Declaration 6 ("[w]ithout Powin's Stack OS™, these [battery energy storage systems] cannot operate safely").  The Debtors' ongoing failure to provide administrator access to Kobold and other critical intellectual property exposes the Projects to imminent risks.  The continued lack of sufficient access to the intellectual property hinders the ability to prevent safety incidents and magnifies the potential for irreparable damage to property, public safety, and the Longroad Licensees' business interests.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry,

the foregoing is true and correct.

Executed this 20th day of June, 2025 at San Francisco, California in San Francisco County.

By: _____

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
      leisenberg@pashmanstein.com
      dsklar@pashmanstein.com


-and-


Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
      rstieglitz@mayerbrown.com
      ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC, (2) Longroad Energy Holdings, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC, and (3) DTE Electric Company*

In Re:

POWIN, LLC, *et al.*,[1]

    Debtors.

Chapter 11

Case Number: 25-16137 (MBK)

Jointly Administered

Hearing Date: Time and Date to be set by the Court in accordance with the Order Shortening Time

Objection Deadline: Time and Date to be set by the Court in accordance with the Order Shortening Time

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**DECLARATION OF MATTHEW MISIAK IN SUPPORT OF EMERGENCY MOTION OF LICENSEES FOR ENTRY OF AN ORDER (I) COMPELLING THE DEBTORS TO COMPLY WITH SECTION 365(N)(4) OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION UNDER SECTION 363(E) OF THE BANKRUPTCY CODE, <u>AND (III) GRANTING OTHER APPROPRIATE RELIEF</u>[2]**

I, Matthew Misiak, declare and state as follows:

1.      I am a Director of the Office of General Counsel of DTE Electric Company ("<u>DTE</u>"). This declaration is based upon my personal knowledge, review of the relevant documents, or information provided to me by employees of DTE. I could and would testify competently to them under oath if called on to do so.

2.      DTE is the owner and operator of renewable energy projects in Michigan.

3.      Prior to the Petition Date, DTE and Powin, LLC ("<u>Powin</u>") entered into an energy supply agreement (the "<u>ESA</u>") pursuant to which Powin agreed to provide an energy storage system for a solar plus energy storage project developed by DTE (the "<u>Project</u>"). In addition to the ESA, DTE entered into a long-term services agreement (the "<u>LTSA</u>") with Powin. A table listing the ESA and LTSA and the relevant provisions thereof is attached to the Motion as **<u>Exhibit A</u>**.

4.      Pursuant to the ESA and LTSA, Powin granted DTE a broad license to use, among other things, any of Powin's intellectual property in and to the technology for certain energy storage system equipment (the "<u>License</u>").

5.      DTE relies on the licensed intellectual property as part of a number of safeguards to ensure safe operation of its energy storage system. Continuous access to administrative credentials needed to run unique instances of programs, software, source codes, related instructions, and vendor support is an important redundancy for the Project to maintain a safe

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

environment, preserve grid reliability, and comply with other applicable standards. Among other things, the Project cannot operate at peak efficiency without full access to key software tools, such as Powin StackOS (including the Kobold platform) and CCUI. DTE is committed to maintaining operational safety, and access to these materials would allow it to maintain all safeguards. Powin is currently refusing to provide access that would enable DTE to take those protective steps, while simultaneously levying the potential disappearance of LTSA services as supposed motivation to join its new customer program.

6.      As part of the ESA, LTSA, and the License, Powin is contractually obligated to maintain the health and proper functioning of the batteries at the Project. To fulfill this obligation, upon information and belief, Powin relies primarily on Powin StackOS and other key software for the continued operation of the machinery at the Project and to ensure that the batteries receive necessary maintenance. These batteries are essential to the Project's operations and require consistent and attentive care to perform at the levels contractually mandated.

7.      Powin has failed, however, to perform its maintenance duties as required under the ESA, LTSA, and the License. In response, DTE has made diligent efforts to mitigate Powin's failures by attempting to perform the necessary battery maintenance itself. Despite these efforts, though, DTE is unable to adequately maintain the batteries without administrator access to key software, such as Kobold, which Powin has not yet provided. DTE is not asking for the ability to have access to the entire Powin master control system—merely permissions sufficient to administer its own individual Project.[3]

8.      In addition, DTE is not receiving sufficient support from the Debtors' remote operations center (the "ROC"), which is meant to operate around the clock to respond to any

---

[3] For the avoidance of doubt, DTE is not asking for the ability to see or control other projects.

3

systems issues as they arise. Upon information and belief, a material portion of the personnel assigned to the Debtors' ROC were terminated by the Debtors. *See Class Action Adversary Proceeding Complaint for Violation of Warn Act 29 U.S.C. § 2101, Et Seq.* [ECF No. 55] (alleging that certain Debtors terminated an estimated 200 employees). As a result of this diminished support from the ROC, when coupled with DTE's lack of administrator access to key software, DTE is unable to effectively troubleshoot any issues on the Project.

9. Each day that Powin neglects its contractual obligations or withholds sufficient access to key software such as Kobold and other intellectual property, the risk of damage to the batteries increases, and the overall capabilities of the battery system are further degraded. This ongoing failure not only jeopardizes the health of the batteries, but also threatens DTE's ability to fulfill its obligations, thereby causing immediate significant and irreparable harm.

10. Furthermore, Powin has acknowledged that its battery energy storage systems cannot function safely in the absence of Powin's intellectual property. *See* First Day Declaration 6 ("[w]ithout Powin's Stack OS™, these [battery energy storage systems] cannot operate safely"). The Debtors' ongoing failure to provide administrator access to Kobold and other critical intellectual property exposes the Project to imminent risks. The continued lack of sufficient access to the intellectual property hinders the ability to prevent safety incidents and magnifies the potential for irreparable damage to property, public safety, and DTE's business interests.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 20 day of June, 2025 at Detroit, Michigan in Wayne County.

By: _____

## **Exhibit 11**

(Order Compelling the Debtors to Comply With Section 365(N)(4))

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
        leisenberg@pashmanstein.com
        dsklar@pashmanstein.com

-and-

Joaquin M. C de Baca (*pro hac pending*)
Richard A. Stieglitz (*pro hac pending*)
Youmi Kim (*pro hac pending*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500
Email: jcdebaca@mayerbrown.com
        rstieglitz@mayerbrown.com
        ykim@mayerbrown.com

*Counsel for (1) Leeward Renewable Energy, LLC, on*
*behalf of Rabbitbrush Solar, LLC, Chaparral Springs,*
*LLC, and Antelope Valley BESS, LLC, (2) Longroad*
*Energy Holdings, LLC, on behalf of Serrano Solar,*
*LLC, Sun Streams PVS, LLC, and Sun Streams*
*Expansion, LLC, and (3) DTE Electric Company*

Chapter 11

Case Number: 25-16137 (MBK)

Jointly Administered

In Re:

POWIN, LLC, *et al.*,[1]

        Debtors.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**ORDER (I) COMPELLING THE DEBTORS TO COMPLY WITH SECTION 365(N)(4)
OF THE BANKRUPTCY CODE, (II) GRANTING ADEQUATE PROTECTION UNDER
SECTION 363(E) OF THE BANKRUPTCY CODE, AND (III) GRANTING OTHER
<u>APPROPRIATE RELIEF</u>**

The relief set forth on the following pages, numbered three (3) through five (5), is

**ORDERED**.

(Page 3)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No.: | 25-16137(MBK) |
| Caption of Order: | Order (I) Compelling the Debtors to Comply with Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief |

Upon consideration of the motion (the "Motion")[2] of Leeward Renewable Energy, LLC on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC (collectively, the "Leeward Licensees"), Longroad Energy Holdings, LLC on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC (collectively, the "Longroad Licensees"), and DTE Electric Company ("DTE" and, together with the Leeward Licensees and the Longroad Licensees, the "Licensees") for entry of an order (this "Order") to compel the Debtors to comply with section 365(n)(4) of the Bankruptcy Code and grant adequate protection under section 363(e) of the Bankruptcy Code as more fully set forth in the Motion; and this Court having reviewed (a) the Motion, (b) any responses to the Motion, and (c) the exhibits and testimony admitted into evidence; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Order, therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

(Page 4)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No.: | 25-16137(MBK) |
| Caption of Order: | Order (I) Compelling the Debtors to Comply with Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief |

1.       The Motion is GRANTED as set forth herein.

2.       All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.       The Licensees are entitled to their rights under section 365(n) of the Bankruptcy Code with respect to the ESAs, LTSAs, and IP Escrow Agreement.

4.       The Debtors shall immediately comply with section 365(n)(4) with respect to the ESAs, LTSAs, and IP Escrow Agreement, as set forth in the Motion.

5.       To the extent that any Licensee identifies any necessary intellectual property previously granted by Powin under the existing intellectual property licenses and requests the release of such intellectual property to such Licensee following the entry of this Order, Powin shall promptly, but in any event within three calendar days, comply with such request.

6.       The Debtors shall immediately inform the Escrow Agent to immediately release the intellectual property that was held in escrow under the IP Escrow Agreement to the applicable Licensees or, with respect to Licensees that are not party to the IP Escrow Agreement, to immediately release intellectual property that is substantially similar to the escrowed intellectual property.

7.       This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

8.       The terms and conditions of this Order shall become immediately enforceable upon its entry.

(Page 5)
Debtors:            Powin, LLC, *et al.*
Case No.:           25-16137(MBK)
Caption of Order:   Order (I) Compelling the Debtors to Comply with Section 365(N)(4) of the
                    Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E)
                    of the Bankruptcy Code, and (III) Granting Other Appropriate Relief

9.      The Debtors and the Licensees, as applicable, are authorized and empowered to

take any and all actions necessary to implement the terms of the Motion and this Order.

**Exhibit A-1**

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
| 1. | AVEP BESS, LLC | Energy Storage System Supply Agreement, dated December 21, 2022, between AVEP BESS, LLC ("Buyer") and Powin, LLC ("Supplier") | ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ████████████████ |
| 2. | AVEP BESS, LLC | Long Term Services Agreement for ESS, dated December 15, 2022, between AVEP BESS, LLC ("Owner") and | ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ |

---

[1] In each case, as amended, amended and restated, restated, supplemented or otherwise modified from time to time.

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|----------------------------------|
|  |  | Powin, LLC ("Powin") | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ████████████████████ |
| 3. | Chaparral Springs, LLC | Energy Storage System Supply Agreement for the Chaparral Springs Solar Project, dated July 27, 2022, between Chaparral Springs, LLC ("Buyer") and Powin, LLC ("Supplier") | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████ |
| 4. | Chaparral Springs, LLC | Long Term Services Agreement for ESS, dated August 8, 2022, between Chaparral Springs, LLC ("Owner") and | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ |

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
|  |  | Powin, LLC ("Powin") | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 5. | Chaparral Springs, LLC | Energy Storage System Supply Agreement for the Willow Springs Solar Project, dated July 27, 2022, between Chapparal Springs, LLC ("Buyer") and Powin, LLC ("Supplier") | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 6. | Chaparral Springs, LLC | Long Term Services Agreement for ESS, dated August 8, 2022, between Chaparral Springs, LLC | ▮▮▮▮▮▮▮▮ |

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
|     |          | ("Owner") and Powin, LLC ("Powin") | ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ████████████████████████ |
| 7.  | Rabbitbrush Solar, LLC | Battery Energy Storage System Supply Agreement for the Rabbitbrush 1 Project, dated July 9, 2021, between Rabbitbrush Solar, LLC ("Buyer") and Powin, LLC ("Supplier") | ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████ |
| 8.  | Rabbitbrush Solar, LLC | Long Term Services Agreement for BESS, dated March 18, 2022, between | ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ |

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|---------------------------------|
|     |          | Rabbitbrush Solar, LLC ("Owner") and Powin, LLC ("Powin") | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ████████████████████ |
| 9.  | Rabbitbrush Solar, LLC | Battery Energy Storage System Supply Agreement for the Rabbitbrush 2 Project, dated July 9, 2021, between Rabbitbrush Solar, LLC ("Buyer") and Powin, LLC ("Supplier") | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████ |
| 10. | Rabbitbrush Solar, LLC | Long Term Services Agreement for BESS, dated March 18, | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ |

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|---|---|---|---|
| | | 2022, between Rabbitbrush Solar, LLC ("<u>Owner</u>") and Powin, LLC ("<u>Powin</u>") | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ █████████████████████ |

**Exhibit A-2**

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|---|---|---|---|
| 1. | Serrano Solar, LLC | Energy Supply Agreement, dated May 5, 2023, between Serrano Solar, LLC, ("Buyer"), and Powin, LLC ("Supplier") | ███████████████████████████ |
| 2. | Sun Streams PVS, LLC | Energy Supply Agreement, dated December 9, 2022, | ███████████████████████████ |

---

[1] In each case, as amended, amended and restated, restated, supplemented or otherwise modified from time to time.

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
|  |  | between Sun Streams PVS, LLC ("Buyer") and Powin, LLC ("Supplier") | ██████████████████████████ |
| 3. | Sun Streams Expansion, LLC | Energy Supply Agreement, dated March 10, 2023, by and between Sun Streams Expansion, LLC ("Buyer") and Powin ("Supplier") | ██████████████████████████ |

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
|     |          |             |                                |

**Exhibit A-3**

| No. | Licensee | Contract[1] | Relevant Contractual Provisions |
|-----|----------|-------------|--------------------------------|
| 1. | DTE Electric Company | Energy Supply Agreement, dated December 15, 2022, between DTE Electric Company ("Buyer") and Powin, LLC ("Supplier") | ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ |
| 2. | DTE Electric Company | Long Term Services Agreement, dated December 20, 2024, between DTE Electric Company ("Owner") and Powin, LLC ("Powin") | ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████ |

---

[1] In each case, as amended, amended and restated, restated, supplemented or otherwise modified from time to time.

**<u>Exhibit 12</u>**

(Summit Notice of Court Approval of LTSA Customer Program and Implementation of Related Customer Initiatives)

## Exhibit A

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email:  tania.moyron@dentons.com
          van.durrer@dentons.com

John D. Beck (*pro hac vice* forthcoming)
Sarah M. Schrag (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email:  john.beck@dentons.com
          sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* forthcoming)
Amanda C. Glaubach (*pro hac vice*
forthcoming)
Eitan Blander (*pro hac vice* forthcoming)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  altogut@teamtogut.com
          aglaubach@teamtogut.com
          eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Joint Administration Requested) |

## NOTICE OF COURT APPROVAL OF LTSA CUSTOMER PROGRAM
## AND IMPLEMENTATION OF RELATED CUSTOMER INITIATIVES

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [ 8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**PLEASE TAKE NOTICE** that at a hearing on June 12, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered the *Order (i) Authorizing the Debtors to Enter into New Customer Program with Existing Customers and (II) Granting Related Relief* [Docket No. [62], a copy of which is attached to this Notice, including the term sheet (the "Term Sheet") approved by the Bankruptcy Court. You are receiving this Notice because you are a customer (a "Customer") of Powin LLC ("Powin") with respect to a Long Term Service Agreement ("LTSA"). As authorized by the Bankruptcy Court, Powin has developed a new Customer program (the "LTSA Program"). You have separately received a copy of the pricing schedule for the LTSA Program. If you have signed and returned the Term Sheet, you will also receive the proposed form of Accommodation Agreement memorializing your participation in the LTSA Program.

**PLEASE TAKE FURTHER NOTICE** that, effective immediately, the Debtors are suspending all service to all Customers who are party to an Energy Supply Agreement (an "ESA") or an LTSA with Powin in order to preserve resources for continuing Customers ("Continuing Customers"). Continuing Customers include Customers who have negotiated a consensual amendment to an ESA on or after June 10, 2025 or have agreed to participate in the LTSA Program. In connection with this decision, the Debtors have also filed with the Bankruptcy Court the *Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief.* You or your counsel will receive a copy of this motion in due course. The Debtors continue to encourage Customers to engage with Powin to become a Continuing Customer in order to avoid unnecessary disruption at the Customer's project.

The successful launch of the LTSA Program will provide a platform on which Powin can continue to provide Customers with critical data, functionality and services on which their projects

rely.  Absent confirmation that the LTSA Program is sustainable due to material Customer

participation, Powin will be forced to repurpose resources for a liquidating transaction which will

have a severe negative impact on value.

**TO THAT END, THE DEBTORS WILL BE HOSTING A SUMMIT (THE
"SUMMIT") OF ALL CUSTOMERS WISHING TO ATTEND IN DALLAS
THIS WEEK.  CUSTOMERS ARE INVITED TO PARTICIPATE IN ONE
OF TWO SESSIONS WHICH WILL COMMENCE AT 2:00PM CENTRAL
TIME ON JUNE 17, 2025 AND JUNE 18, 2025.  THE PURPOSE OF THE
SUMMIT IS TO PROVIDE UPDATED INFORMATION REGARDING
THE LTSA PROGRAM, DISCUSS OTHER OPPORTUNITIES FOR ESA
CUSTOMERS TO BECOME CONTINUING CUSTOMERS AND ALSO
SHARE CONFIDENTIAL INFORMATION REGARDING A RECENT
THIRD PARTY PROPOSAL TO ACQUIRE POWIN AND THE LTSA
BUSINESS LINE.**

*The Summit will take place at the Dentons office located at 100 Crescent Court, Suite 900,*

*Dallas, Texas 75201.  Please contact Mitchener Turnipseed at* mturnipseed@hcg.com *to confirm*

*whether you will be participating in person or by virtual Zoom link.*  Customer participation in the

Summit is critical to Powin's decision-making in this area which the Debtors need to finalize by

the end of this week.

Dated: June [●], 2025

**TOGUT, SEGAL & SEGAL LLP**

*/s/*
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* pending)
Amanda C. Glaubach (*pro hac* pending)
Eitan Blander (*pro hac vice* pending)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258

Email:   altogut@teamtogut.com
            aglaubach@teamtogut.com
            eblander@teamtogut.com

- and -

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:   tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:   john.beck@dentons.com
            sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

## **Exhibit 13**

(IP Escrow Release Letters)

Case 25-16313-MBK Doc 357-2 Filed 08/07/25 Entered 08/07/25 23:43:12 Desc Main
Case 25-16313-MBK Doc 357 Filed 07/21/25 Entered 07/21/25 23:43:12 Desc Main
Exhibit B- Power Letter dated Page 279 of 332
Document Page 279 of 332    Page 1 of 3

# **Exhibit B**



VIA EMAIL to:

**PRAXIS Technology Escrow**
12540 Broadwell Road Suite 2201
Milton, GA 30004
Email:  support@praxisescrow.com; csmith@praxisescrow.com

AND:

**Sun Streams PVS, LLC**
125 High Street
17th Floor High Street Tower, Suite 1705
Boston, MA 02110
Email: contracts@longroadenergy.com

**Sun Streams Expansion, LLC**
125 High Street
17th Floor High Street Tower, Suite 1705
Boston, MA 02110
Email: contracts@longroadenergy.com

**Serrano Solar, LLC**
125 High Street
17th Floor High Street Tower, Suite 1705
Boston, MA 02110
Email: contracts@longroadenergy.com

June 17, 2025

Dear Praxis,

**RE: Release of Deposit Materials**

**Reference:** PRAXIS US Two Party Master Escrow Agreement effective as of December 17, 2019 by and between Powin Energy Corporation, predecessor-in-interest to Powin, LLC ("Powin") and PRAXIS Technology Escrow, LLC ("Praxis") (the "Escrow Agreement") and the subsequent Riders C – Signature Beneficiary Enrollment Forms (collectively, the "Riders C"), which added Sun Streams PVS LLC, Sun Streams Expansion, LLC and Serrano Solar, LLC (each, a "Beneficiary", and collectively, the "Beneficiaries") as Signature Beneficiaries

Docusign Envelope ID: CC5C88BAA-247A-44AF-B5DC-48B7949DB43C



under the Escrow Agreement. Capitalized terms used but not defined in this letter shall have the meanings set forth in the Escrow Agreement.

We confirm receipt of your notice regarding Beneficiaries' requests for the release of the Deposit Materials under Section 9 of the Escrow Agreement.

Powin does not object to this request. Please proceed with the release of the Deposit Materials, including those held in the subaccount "Powin191112-SS3SS4Serrano", to the Beneficiaries in accordance with the Escrow Agreement.

Please contact the undersigned should you have any questions.

Sincerely,

DocuSigned by:

*Chad Paulson*

BB507BD3E626405...

Chad Paulson,
General Counsel
Powin, LLC

## Exhibit C

Docusign Envelope ID: 043E2643-93B4-45F2-B48C-36AA1567871
Case 25-10605-MFW Doc 657 Filed 08/07/25 Entered 08/07/25 23:43:12 Desc Main
Exhibit C - Powin Letter dated June 18, 2025    Page 2 of 4
Document    Page 283 of 332    Page 2 of 4



VIA EMAIL to:

**PRAXIS Technology Escrow**

12540 Broadwell Road Suite 2201

Milton, GA 30004

Email:  support@praxisescrow.com; csmith@praxisescrow.com

June 18, 2025

Dear Praxis,

**RE: Release of Deposit Materials**

**References:**

1. PRAXIS US Two Party Master Escrow Agreement effective as of December 17, 2019 by and between Powin Energy Corporation, predecessor-in-interest to Powin, LLC ("Powin") and PRAXIS Technology Escrow, LLC ("Praxis") (the "191112 Escrow Agreement") and the subsequent Riders C – Signature Beneficiary Enrollment Forms (collectively, the "Riders C"), which added numerous beneficiaries as Signature Beneficiaries under the 191112 Escrow Agreement;

2. PRAXIS US Two Party Master Escrow Agreement effective as of March 22, 2024 by and between Powin, LLC ("Powin") and PRAXIS Technology Escrow, LLC ("Praxis") (the "240325 Escrow Agreement") and the subsequent Riders C – Signature Beneficiary Enrollment Forms (collectively, the "Riders C"), which added numerous beneficiaries as Signature Beneficiaries under the 240325 Escrow Agreement;

3. PRAXIS US Two Party Master Escrow Agreement effective as of June 21, 2018 by and between Powin Energy Corporation, predecessor-in-interest to Powin, LLC ("Powin") and PRAXIS Technology Escrow, LLC ("Praxis") (the "180612 Escrow Agreement") and the subsequent Riders C – Signature Beneficiary Enrollment Forms (collectively, the "Riders C"), which added numerous beneficiaries as Signature Beneficiaries under the 180612 Escrow Agreement;

4. Three Party Tech Escrow Agreement effective as of September 9, 2019 by and between Powin Energy Corporation, predecessor-in-interest to Powin, LLC ("Powin"), PRAXIS Technology Escrow, LLC ("Praxis") and West Columbia Storage LLC ("West Columbia") (the "190823 Escrow Agreement");

Docusign Envelope ID:



Powin acknowledges receipt of your notices concerning multiple beneficiaries' requests for the release of Deposit Materials under their respective Escrow Agreements.

Powin has no objection to these requests. Furthermore, Powin confirms that it does not object to the release of Deposit Materials to any other beneficiaries who have not yet submitted such requests.

A list of beneficiaries authorized by Powin for release of the Deposit Materials is attached hereto as **Exhibit 1**.

Please contact the undersigned should you have any questions.

Sincerely,

Chad Paulson,
General Counsel
Powin, LLC

Docusign Envelope ID: 043E2643-93B4-45F2-B49E-C80A4567571



### Exhibit 1

1. Key Capture Energy, LLC
2. KCE Texas Holdings 2020, LLC
3. SP Garland Storage LLC;
4. Mitsubishi Power Americas (Prevalon Energy LLC)
5. SP Tranquility Solar Storage LLC
6. Rabbitbrush Solar, LLC
7. Arrow Canyon Solar, LLC
8. Flower Valley LLC
9. Triple Butte LLC
10. Swoose LLC
11. West Warwick Energy Storage I, LLC
12. Chaparral Springs, LLC
13. Great Kiskadee Storage, LLC
14. Angelo Storage, LLC
15. Desert Quartzite, LLC
16. Sun Streams PVS
17. Serrano Solar, LLC
18. Sun Streams Expansion, LLC
19. Idaho Power Company
20. Poblano Energy Storage LLC
21. EPC Services Company
22. Yuma Solar Energy LLC
23. El Sol Energy Storage LLC
24. DTE Electric Company
25. Cameron Wind 1, LLC
26. Wildcat I Energy Storage LLC
27. Acorn I Energy Storage LLC
28. Santa Paula Energy Storage LLC
29. Hummingbird Energy Storage, LLC
30. West Columbia Storage LLC

## **Exhibit 14**

(Email with Licensee)

Case 25-01313-MBK    Doc 357-4    Filed 08/07/25    Entered 08/07/25 23:43:12    Desc Main
Exhibit D - Praxis Email dated June 17, 2025    Page 1 of 2

Case 25-11378-TMH    Doc 657    Filed 07/21/25    Entered 07/21/25 23:43:12    Desc Main
Document    Page 287 of 332    Page 1 of 2

## **Exhibit D**

**Doherty, Casey W.**

| | |
|---|---|
| **From:** | Quinn Connolly <qconnolly@hcg.com> |
| **Sent:** | Tuesday, June 17, 2025 9:30 PM |
| **To:** | michael.alvarez@longroadenergy.com |
| **Cc:** | Project_Prisco_HTA |
| **Subject:** | Powin Customer Summit Follow-up |
| **Attachments:** | Powin Binding Term Sheet.docx; Powin Customer Contacts_vSend.xlsx |

Michael,

Thank you for the productive time today. We look forward to reconvening tomorrow.

As requested, Powin and its advisors have done the following:

1.  We are delivering letters to PRAXIS authorizing the release of IP escrows and waiver of any 30 day hold. Some letters have already issued.

2.  Attached is a contact list of customers so that you can communicate with each other. Powin consents to such communication for the express purpose of transacting with Powin. For those who have executed NDAs, you should remain mindful of your obligations. Powin does not consent to communications among customers with respect to circumventing obligations owed to Powin or Powin's intellectual property rights. All rights are reserved in that regard.

3.  Attached is a redline of the proposed Term Sheet showing changes from the version filed with the Court last week. We believe this captures the discussion during the course of the day. We also included changes submitted by various customers in writing which we found agreeable.

We look forward to speaking with you again in the **morning at 10AM CT**. We will also make Uzzi & Lall available to walk through the cash collateral budget.

Best,

The Huron Investment Banking Team

## **Exhibit 15**

**CS Energy LLC Contract**

(Not attached due to confidentiality; slipsheet provided as place holder)

## **Exhibit 16**

**Sample LTSA**

(Not attached due to confidentiality; slipsheet provided as place holder)

## **Exhibit 17**

**Sample ESA**

(Not attached due to confidentiality; slipsheet provided as place holder)

## **Exhibit 18**

**Sample IP Escrow Agreement**

(Not attached due to confidentiality; slipsheet provided as place holder)

**<u>Exhibit 19</u>**

(March 12, 2024 Longroad Press Release – Longroad Energy Closes Financing of Serrano)

(https://www.longroadenergy.com/)

Our Business

Portfolio
(https://www.longroadenergy.com/renewable-energy-portfolio/)

Partner With Us        About Us

Sustainability

News
(https://www.longroadenergy.com/longroad-energy-news/)

Contact
(https://www.longroadenergy.com/contact/)

# News

# Longroad Energy Closes Financing of Serrano, a 220

# MWdc Solar and 214 MWac / 855 MWh Storage Project

***Longroad's first project to use First Solar's American-made Series 7 panels begins construction***

**Boston, MA – Mar. 12, 2024** – Longroad Energy, a U.S. based renewable energy developer, owner and operator, announced today the financial close of Serrano, its 220 MWdc solar and 214 MWac / 855 MWh storage project in Pinal and Pima Counties, Arizona. Serrano is Longroad's first project to utilize First Solar's domestically manufactured Series 7 panels. The project has commenced construction and commercial operations for Serrano is currently expected by mid-2025.

The output of the Serrano project will be purchased by Arizona Public Service (APS) via a long-term Power Purchase Agreement (PPA). The project will generate enough electricity to power roughly 61,000 Arizona homes, and will support grid reliability, particularly during Arizona's hot summer months.

"Longroad is pleased that our Serrano project has achieved the milestones of financial closure and commencement of construction," said Paul Gaynor, CEO of Longroad Energy. "We are proud to support American manufacturing and the domestic solar supply chain as we expand our solar footprint in the robust Arizona market, which now surpasses 1.5 GW of

operating or under construction projects. Longroad is grateful to our banking partners, APS, McCarthy, and state and county authorities as we move forward to bring this important project to commercial operations."

"APS is widely regarded for providing top-quality, reliable service to our customers, and solar plus storage resources like the Serrano project bring value to Arizonans," said Brian Cole, APS Vice President of Resource Management. "Our investment in cost-effective, renewable projects enhances our diverse energy mix, providing customers with power that is reliable, affordable and clean."

Serrano represents the continuation of a longstanding partnership between U.S.-based solar manufacturer First Solar and Longroad. Serrano is the fourth Arizona project using First Solar's responsibly produced modules that Longroad has financed in four years, and Longroad's first to use thin-film Series 7 modules.

"We congratulate Longroad on progressing this Arizona project, which will be enabled by American-made solar technology and, as a result, directly support U.S. manufacturing and jobs," said Georges Antoun, Chief Commercial Officer, First Solar. "That Longroad has successfully closed financing is a testament to the bankability of the project and the solar module technology powering it."

Debt financing was led by CIBC and Societe Generale and included ANZ, PNC, Commerzbank AG, and U.S. Bancorp Impact Finance. CIBC acted as Coordinating Lead Arranger, Administrative Agent, Collateral Agent, and Green Loan Coordinator. Societe Generale acted as Coordinating Lead Arranger. U.S. Bancorp Impact Finance served as Joint Lead

Arranger and Depositary Bank. Athene Annuity and Life Insurance Company, an affiliate of Apollo Global Management, is the project's tax equity investor and was advised by Apterra Infrastructure Capital.

"As a strategically important project for the state of Arizona and for Longroad Energy, CIBC is proud to have led this financing for Serrano as Co-Coordinating Lead Arranger, Green Loan Coordinator and Administrative Agent," said Peter O'Neill, Head of U.S. Project Finance and Infrastructure at CIBC. "Our continued role in supporting Longroad in the build out of their development pipeline is one example of CIBC's commitment to the U.S. renewable energy and energy transition space as we work towards enabling a more sustainable and inclusive economy."

"Supporting projects like Serrano that positively contribute to clean energy goals, surrounding communities and the environment is the cornerstone of SG's renewables practice," said Ahmed Maqsood, Director at Societe Generale's Energy+ Group. "We are thrilled to have supported a premier sponsor like Longroad Energy in growing their portfolio and footprint in the U.S."

McCarthy Building Companies (McCarthy) is the engineering, procurement and construction (EPC) contractor on Serrano. The Serrano project is the fourth large-scale solar facility in Arizona being built by McCarthy for Longroad and is expected to employ over 300 people during the construction process. McCarthy is utilizing registered apprentices and will be paying prevailing wage to all workers on the project, in accordance with the Inflation Reduction Act (IRA).

it's incredibly rewarding to be working with Longroad Energy to expand its renewable energy portfolio in Arizona and elsewhere around the U.S.," said Dan Brown, senior vice president of operations with McCarthy's Renewable Energy team. "Working with a partner who shares our team's goals for establishing reliable and sustainable energy infrastructure accessible to all has been instrumental in finding innovative solutions to project challenges and streamlining the planning and development process. We're thrilled to be with Longroad on another impactful solar project in Arizona."

Serrano's 214 MWac / 855 MWh battery energy storage system (BESS) will be provided by U.S.-based energy storage platform provider Powin. The BESS will include SMA inverters and cells from AESC, which will be integrated into Powin's Modular and Scalable CentipedeTM Energy Storage Platform. Longroad, in conjunction with Powin and NovaSource Power Services, will provide long-term operations and maintenance services for the BESS.

Nextracker is supplying trackers for the project and Sungrow is supplying the solar inverters. Comprehensive operations and maintenance services for the project will be provided by NovaSource Power Services and Longroad's affiliate Longroad Energy Services.

# Environment and Community

Serrano represents over 330,000 metric tons of avoided $CO_2$ emissions annually – the equivalent of taking approximately 75,000 gas-powered cars off the road for as long as the project operates.

Over the project's useful life, Serrano will contribute more than $25 million in revenue for Arizona schools and communities through its long-term Right of Way grant with the Arizona State Land Department and tax remittances. Longroad extends its thanks to staff and officials from Pinal County, Pima County, and the Arizona State Land Department for their continued collaboration during development and construction of the project.

## About Longroad Energy Holdings, LLC

Founded in 2016, Longroad Energy Holdings LLC is focused on renewable energy project development, operating assets, and services. Longroad has developed or acquired 5.4 GW of renewable energy projects across the United States and has raised over $14.5 billion of equity, debt, and tax equity to support completion of its portfolio. Today, Longroad owns over 3.5 GW of wind, solar, and storage projects and operates and manages a total of 5.5 GW on behalf of Longroad and third parties. Longroad is owned by the NZ Superannuation Fund, Infratil Limited, MEAG MUNICH ERGO Asset Management, and Longroad Energy Partners, LLC.

**Media Contact**
Heather Robb
Heather@hrobb.com (mailto:heather@hrobb.com?subject=Longroad%20Energy%20Media%20Inquiry)

in

(https://www.linkedin
energy-partners/)

| **Boston** | **San Francisco** | **Scarborough** |
|---|---|---|
| 125 High Street High Street Tower | 220 Montgomery St. Suite 860 | 10 Plaza Drive Suite 203 |

Suite 1705
Boston, MA
02110

San Francisco,
CA 94104

Scarborough,
ME 04074

JOIN OUR TEAM
(HTTPS://WWW.LONGROA
US/CAREERS/)


CONTACT
(HTTPS://WWW.LONGROA







st.com/)

(https://www.seia.org/)

(https://acore.org/)

(http://txso

Policies (https://www.longroadenergy.com/policies/)

## **Exhibit 20**

(DTE Energy Web Page – Fuel Mix

# Fuel Mix

## Fuel Mix

DTE Energy is using next-generation renewable energy to help reduce emissions and create a cleaner energy future.

## Regional Emission Comparisons

The **Michigan Public Service Commission** (MPSC) has directed electric suppliers to report and compare the environmental and fuel mix characteristics of their electric supply against regional averages. More information about DTE Electric and its environmental efforts can be found on our **Environmental Policies page**.

| Fuel Source for the 12-Month Period Jan. - Dec. 2024 | DTE Electric's Fuel Mix Used to Supply Electricity | Regional Av Mix Used to Electricity ( OH and W Oct. 2, |
| --- | --- | --- |
| Coal | 41.441% | 24.145% |
| Nuclear | 19.335% | 24.869% |
| Natural Gas | 26.121% | 38.771% |
| Oil | 0.177% | 0.442% |
| Hydroelectric | 0.100% | 0.591% |
| Renewable Fuels Total | 12.812% | 11.183% |
| Biofuel | 0.072% | 0.673% |
| Biomass | 0.549% | 0.306% |
| Solar | 0.755% | 1.878% |
| Wind | 11.401% | 7.863% |
| Wood | 0.035% | 0.325% |
| Solid Waste Incineration | 0.015% | 0.138% |

| Fossil Plant Emission or Nuclear Plant Waste in Pounds per Megawatt-Hour (MWh) Jan. - Dec. 2024 | DTE Electric Average per MWh | Regional Av MWh Fossil/N Generation OH an |
|---|---|---|
| Sulfur Dioxide | 1.96 lb/MWh | 0.85 lb/MWh |
| Carbon Dioxide | 1,979 lb/MWh | 1,060.15 lb/MW |
| Nitrogen Oxides | 1.14 lb/MWh | 0.70 lb/MWh |
| High-Level Nuclear Waste | 0.00583 lb/MWh | 0.006 lb/MWh |

NOTE: Purchased electricity accounted for 14.330% of the electricity supplied by DTE Electric during the period. The regional average fuel mix is provided by the **U.S. Energy Information Administration** and is used as a proxy for the actual fuel mix of certain electricity purchased by DTE Electric because the actual fuel mix characteristics of that purchased electricity could not be discerned.

## **Exhibit 21**

(Customer Program Motion)

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
          van.durrer@dentons.com

John D. Beck (*pro hac vice* forthcoming)
Sarah M. Schrag (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
          sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (*pro hac vice* forthcoming)
Amanda C. Glaubach (*pro hac vice*
forthcoming)
Eitan Blander (*pro hac vice* forthcoming)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
          aglaubach@teamtogut.com
          eblander@teamtogut.com

*Proposed Counsel for Debtors and
Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Joint Administration Requested) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

US_ACTIVE\130491799

2516137250610000000000015

**MOTION OF THE DEBTORS FOR
ENTRY OF AN ORDER (I) AUTHORIZING
THE DEBTORS TO ENTER INTO NEW CUSTOMER PROGRAM
WITH EXISTING CUSTOMERS AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Powin, LLC and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors") under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"), in these chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned counsel, hereby move (the "Motion")[2] this Court for entry of an order (the "Order", a true and correct copy of which is attached hereto as **Exhibit A**): (i) authorizing the Debtors to enter into a new customer program with existing customers ("Customers") and (ii) granting related relief.

In further support of the Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

The Debtors commenced these Chapter 11 Cases to, among other things, reorganize their businesses around the Debtors' long term servicing line of business. Through this line of business, the Debtors provide their Customers with continuing maintenance and repair services with respect to previously installed Debtor battery systems at Customer sites. The Debtors' proprietary cloud-based technology and related servicing functionality is highly valuable to their Customers, and, in recent days, the Debtors have conducted in-depth discussions with Customers who have communicated a strong willingness to support the Debtors' efforts to continue this business line on a focused basis with pricing that is designed to allow the Debtors to continue this business. Successful implementation of this Customer program will enable the Debtors to pursue a sale process of its remaining assets and therefore represents the most viable way to maximize value in these Chapter 11 Cases.

Specifically, the Debtors have been working closely with Customers to develop a cost-plus, and cash flow positive, long term servicing program. Through such program, the Debtors

---

[2] Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration (as defined herein).

would provide Customers with an amended suite of battery warranty services at a modified price point. Accordingly, the Debtors seek this Court's authority to implement the modified long term servicing program as applicable to consenting Customers.

## I.    JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012. The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested herein are: sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and rules 2002-1, 9013-1, and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## II.    BACKGROUND

A. General Background

4.      On June 9, 2025 (the "Petition Date"),[3] the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to

---

[3] Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the remaining Debtors were filed shortly thereafter on June 10, 2025.

sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

5.  Additional information regarding the Debtors, including their businesses and the events leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* (the "First Day Declaration"), filed concurrently herewith, and incorporated herein by reference.

B.  Specific Background

6.  As more fully set forth in the First Day Declaration, the Debtors have historically operated two lines of business: (i) energy storage integration installation services, whereby the Debtors provide and install batteries at Customer sites pursuant to energy supply agreements ("ESA Line of Business"); and (ii) long term servicing, whereby the Debtors maintain and repair the previously installed batteries at Customer sites, as needed, pursuant to separate long term servicing agreements ("LTSA Line of Business").

7.  While the Debtors' ESA Line of Business has resulted in significant losses and liquidity issues for the Debtors, casting doubt on its future viability, the LTSA Line of Business represents a potentially viable and profitable line of business moving forward.

8.  Accordingly, the Debtors commenced these Chapter 11 Cases to maximize value and mitigate potential Customer claims. To that end, the Debtors have already taken steps to maximize the profitability of the LTSA Line of Business, including right-sizing its work force and working closely with Customers to develop a cost-plus, and cash flow positive, model whereby the Debtors would provide Customers with an amended suite of battery warranty services (the "LTSA Program") at a modified price point. A term sheet outlining the modified services provided by the Debtors to Customers under the LTSA Program is attached hereto as **Exhibit B**.

9.  To be clear, the LTSA Program is entirely consistent with the Debtors' prepetition ordinary course of business. Under the proposed LTSA Program, the Debtors will be providing a reduced scope of service at pricing that is designed to be cash flow positive during the postpetition period. As noted, Customers are very desirous of the Debtors' continuation of their cloud-based

4

proprietary technology and related servicing functionality. The termination of the Debtors' LTSA Line of Business would have a severely detrimental impact on Customers who are largely incapable of replacing those functions without the Debtors' assistance. In light of the commencement of these Chapter 11 Cases, the Debtors are seeking the instant relief in an effort to be transparent as well as assure Customers participating in the LTSA Program that it is fully authorized and viable.

### III.    RELIEF REQUESTED

10.    The Debtors seek entry of the Order: (i) authorizing the Debtors to enter into the LTSA Program with Customers and (ii) granting related relief.

11.    In support of the Motion, the Debtors further submit the previously filed First Day Declaration.

### IV.    BASIS FOR RELIEF

A.    The LTSA Program Should be Approved as a Sound Exercise of the Debtors' Business Judgment and is in the Best Interests of all Parties in Interest

12.    Section 1107(a) of the Bankruptcy Code: (i) grants a debtor in possession the "rights . . . and powers. . . of a trustee[;]" and (ii) mandates a debtor in possession to perform "all the functions and duties . . . of a trustee." 11 U.S.C. § 1107(a). Section 1108 of the Bankruptcy Code, in turn, authorizes a debtor in possession to "operate the debtor's business." 11 U.S.C. 1108.

13.    "In Chapter 11 cases where no trustee is appointed, § 1107(a) of the Bankruptcy Code provides that the debtor-in-possession, and in practicality the debtor-in-possession's management, enjoys the powers that would otherwise vest in the bankruptcy trustee." *In re G-I Hldgs.*, 313 B.R. 612, 627 (Bankr. D. N.J. 2004) (citation omitted). "[A]long with those powers comes the trustee's fiduciary duty to maximize the value of the bankruptcy estate." *Id.* (internal quotations omitted). In carrying out these duties, "[a] debtor-in-possession's business decision [and judgment] should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice." *Id.* at 657 (citations omitted).

5

14.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and similarly incorporates a business judgment standard.  *In re Montgomery Ward Hldg. Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'") (citation omitted).

15.     Implementation of the LTSA Program reflects a sound exercise of the Debtors' business judgment.  The Debtors commenced these Chapter 11 Cases with the goal of maximizing value and mitigating potential claims, including from Customers.  However, the Debtors cannot continue to operate the LTSA Line of Business with sufficient profitability to successfully reorganize and emerge from these Chapter 11 Cases on the prepetition Customer LTSA contract terms.  The Debtors require the implementation of the LTSA Program, whereunder consenting Customers will agree to an amended long term servicing agreement program at a modified, cost-plus, price point that will result in a cash flow positive line of business.

16.     Importantly, the LTSA Program is only effective for those Customers that consent to the program.  Toward that end, the Debtors have been, and are currently, negotiating with each Customer, on a per Customer basis, to obtain such consent and participation.  Because the LTSA Program is only effective for consenting Customers, no party in interest is prejudiced by the relief requested herein.  In addition, the Debtors' Prepetition Secured Creditors support the relief requested, and the Debtors' proposed use of cash collateral is consistent with such relief.

B.     Failure to Immediately Implement the LTSA Program Would Cause Immediate and Irreparable Harm to the Debtors and Their Estates.

17.     The Debtors have an immediate postpetition need to implement the LTSA Program. The Debtors cannot maintain the value of their estates during the pendency of these Chapter 11 Cases absent immediate implementation of the LTSA Program.    Absent immediate

6

implementation of the LTSA Program, the Debtors will be forced to discontinue their LTSA functions, and Customers will be cut off from access to the Debtors' proprietary technology, including vital data regarding the performance of their battery systems.  In such an event, Customers would likely suffer and assert substantial claims against the Debtors' estates.  In short, implementation of the LTSA Program is vital to protect Customers and thereby preserve and maximize the value of their estates.

18.     The Debtors therefore seek immediate authority to implement the LTSA Program as forth in this Motion and Order.

## V.    COMPLIANCE WITH BANKRUPTCY RULE 6003 AND WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

19.     The Debtors request that the Court determine that the relief requested in this Motion complies with Bankruptcy Rule 6003 and that waiver of Bankruptcy Rules 6004(a) and (h) is appropriate.

20.     Bankruptcy Rule 6003 provides:

Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001. . . .

21.     The Third Circuit Court of Appeals has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions.  In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed.Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).

22.     As described in the Motion, and as supported by the First Day Declaration, failure
to receive the requested relief during the first twenty-one (21) days of these Chapter 11 Cases
would severely disrupt the Debtors' operations at this critical juncture.    Authorization to
immediately implement the LTSA Program is vital to the Debtors' efforts in chapter 11.
Accordingly, the Debtors have satisfied the "immediate and irreparable harm" standard of
Bankruptcy Rule 6003 to support the relief requested herein.

23.     The Debtors further seek a waiver of any stay of the effectiveness of the Order.
Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property
other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless
the court orders otherwise."  As set forth above, the Debtors submit that granting this Motion such
that it is effective immediately is essential to prevent irreparable damage to the Debtors and their
estates.

24.     Accordingly, the Debtors respectfully submit that the relief requested herein is
appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

25.     Finally, should the Court be inclined to grant the Motion, the Debtors seek a waiver
of the notice requirements under Bankruptcy Rule 6004(a).

## VI.    <u>WAIVER OF MEMORANDUM OF LAW</u>

26.     The Debtors respectfully request that the Court waive the requirement to file a
separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon
which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## VII.    <u>RESERVATION OF RIGHTS</u>

27.     Nothing contained in this Motion or any order granting the relief requested in this
Motion, and no action taken pursuant to the relief requested or granted in connection with this
Motion (including any payment made in accordance with any such order), is intended as or shall
be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any
claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b)

8

a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## VIII.    <u>NO PRIOR REQUEST</u>

28.    No prior request for the relief sought in this motion has been made to this or any other court.

## IX.    <u>NOTICE</u>

Pursuant to Local Rule 9013-5(c), notice of this Motion shall be given to the following parties: (a) the Office of the United States Trustee; (b) counsel for the Debtors' Prepetition Secured Parties; and (c) the Debtors' fifty largest unsecured creditors on a consolidated basis.  As this Motion is seeking "first day" relief, within 48 hours of the entry of the Order on this Motion, the Debtors will serve copies of the Order, as required by Local Rule 9013-5(f).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## X.    <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Order as set forth herein; and (ii) grant the Debtors such other and further relief is just and proper under the circumstances.

[*Signature Page Follows*]

10

Dated: June 10, 2025

**TOGUT, SEGAL & SEGAL LLP**

*/s/ Frank Oswald*
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (*pro hac vice* forthcoming)
Amanda C. Glaubach (*pro hac vice* forthcoming)
Eitan Blander (*pro hac vice* forthcoming)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
         aglaubach@teamtogut.com
         eblander@teamtogut.com

- and -

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (*pro hac vice* forthcoming)
Sarah M. Schrag (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
         sarah.schrag@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*

11

# EXHIBIT A

(Proposed Form of Order)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>           Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

### ORDER GRANTING MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO NEW CUSTOMER PROGRAM WITH EXISTING CUSTOMERS AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered 3 through 4, is **ORDERED**.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [22495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(Page 2)

Debtors:        Powin, LLC, *et al.*

Case No.        25-16137 (MBK)

Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Enter Into New Customer Program With Existing Customers and (II) Granting Related Relief

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

| **DENTONS US LLP** | **TOGUT, SEGAL & SEGAL LLP** |
|---|---|
| Tania M. Moyron (*pro hac vice* forthcoming)<br>Van C. Durrer, II (*pro hac vice* forthcoming)<br>601 S. Figueroa Street #2500<br>Los Angeles, CA 90017<br>Telephone: (213) 623-9300<br>Facsimile: (213) 623-9924<br>Email: tania.moyron@dentons.com<br>van.durrer@dentons.com | Frank A. Oswald (admitted)<br>550 Broad Street<br>Suite 1508<br>Newark, NJ 07102<br>Telephone: (212) 594-5000<br>Facsimile: (212) 967-4258<br>Email: frankoswald@teamtogut.com |
| John D. Beck (*pro hac vice* forthcoming)<br>Sarah M. Schrag (*pro hac vice* forthcoming)<br>1221 Avenue of the Americas<br>New York, NY 10020-1089<br>Telephone: (212) 768-6700<br>Facsimile: (212) 768-6800<br>Email: john.beck@dentons.com<br>sarah.schrag@dentons.com | Albert Togut (*pro hac vice* forthcoming)<br>Amanda C. Glaubach (*pro hac vice* forthcoming)<br>Eitan Blander (*pro hac vice* forthcoming)<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>Telephone: (212) 594-5000<br>Facsimile: (212) 967-4258<br>Email: altogut@teamtogut.com<br>aglaubach@teamtogut.com<br>eblander@teamtogut.com |
| *Proposed Counsel for Debtors and Debtors in Possession* | *Proposed Counsel for Debtors and Debtors in Possession* |

(Page 3)

Debtors:                Powin, LLC, *et al.*

Case No.                25-16137 (MBK)

Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Enter Into New Customer Program With Existing Customers and (II) Granting Related Relief

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"): (i) authorizing the Debtors to enter into a new customer program with existing customers ("Customers") and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing thereon establish just cause for the relief granted herein; and upon all of the proceedings before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      The Debtors are authorized to implement the LTSA Program.

3.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Local Rules are satisfied by such notice.

4.      To the extent applicable, the requirements set forth by Bankruptcy Rule 6003 are satisfied.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page 4)

Debtors:          Powin, LLC, *et al.*

Case No.          25-16137 (MBK)

Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Enter Into New Customer Program With Existing Customers and (II) Granting Related Relief

5.      Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon entry.

6.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion, and Customers are entitled to rely on this Order in connection with participating in the LTSA Program.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## EXHIBIT B

(LTSA Program Term Sheet)

**BINDING TERM SHEET**
June [•], 2025


This Binding Term Sheet (the "**Term Sheet**") constitutes a commitment by the customer party signatory hereto ("**Customer**") and Powin, LLC and its affiliates ("**Powin**") to negotiate in good faith and to enter into one or more definitive agreements as set forth herein. The terms and conditions of the potential transaction described below are not limited to those set forth herein. Matters that are not covered by the provisions hereof are subject to the approval and mutual agreement of the parties. Powin and Customer are referred to herein individually as a "**Party**" and collectively as the "**Parties**."

| | |
|---|---|
| **Purpose** | This Term Sheet sets forth service availability of services of Powin LLC ("**Powin**") applicable to all current and future transactions with customers, notwithstanding any conflicting terms in existing commercial agreements. Powin's goal is to provide its customers with the following specified services: (a) continuity of service with respect to intellectual property and cloud-based functionality, (b) direct access to necessary subcontractors, (c) access to key Supplier employees and (d) availability of parts inventory and field services, all as detailed below and on Schedule A. |
| | Powin will form a new wholly-owned subsidiary ("**IP Services Co**") as part of its reorganization strategy to maintain uninterrupted service delivery to Powin's existing and future customers. As part of the reorganization transaction, Powin shall transfer, assign, and convey to IP Services Co all intellectual property rights, assets, and licenses necessary for IP Services Co to provide ongoing services to Powin's existing and future customers, with IP Services Co assuming all of Powin's rights and obligations under any technology escrow agreements between Powin and its customers. |
| **Available Services & Pricing** | Powin is able to provide the specified services listed on **Schedule A** attached hereto for the corresponding pricing listed therein. The pricing shall include a non-refundable up-front fee of 20% of the annual cost of the Project. |
| **Unavailable Services** | All other services not listed on Schedule A are unavailable until further notice, including, without limitation, those services set forth on **Schedule B**, notwithstanding any services customer may be entitled to under any existing commercial agreements. |
| **Accomodation Agreement** | Each customer shall enter into an accommodation agreement (the "**Accommodation Agreement**"). The Accommodation Agreement shall provide that customer agrees (a) to pay for the specified services per the pricing included in Schedule A; (b) to temporarily suspend any efforts to terminate or otherwise enforce existing commercial agreements with Powin while the Accommodation Agreement remains in effect and (c) to pay, as required, any amounts otherwise owing to Powin without any right of setoff, recoupment, counterclaim or other defense. |

| Registration Fee | In consideration of the formation of IP Services Co, customer shall pay IP Services Co an up-front non-refundable registration fee in the amount of 20% of the annual cost of the Project. |
|---|---|
| Exclusivity of Terms | The terms of the Accommodation Agreement will expressly supersede any inconsistent or conflicting provisions in prior agreements, including any Energy Supply Agreements or Long Term Services Agreements. |
| | No other terms or modifications shall apply unless agreed to in writing by Powin's authorized representative. |
| Term | The customer will be required to subscribe for the services and corresponding pricing under the Accommodation Agreement for a minimum period of one (1) year, and the Accommodation Agreement will remain effective thereafter unless and until terminated by customer on six (6) months prior written notice to Powin. |
| | At any time prior to the execution of an Accommodation Agreement, Powin reserves the right to update Schedules A and B from time to time based on operational capacity and resource availability. |
| Governing Law | This Term Sheet shall be governed by and construed in accordance with the internal laws of the State of Oregon, without regard to the choice of law provisions thereof. |

The Parties hereto acknowledge the binding nature of this Term Sheet and agree to be bound by the obligations set forth herein. This Term Sheet shall remain in effect for 30 days from the date hereof (the "**Drop Dead Date**"). If the Accommodation Agreement has not been executed by the Drop Dead Date, then this Term Sheet shall be considered void and the Parties shall each be released of their obligations set forth herein. Notwithstanding the foregoing, the Parties may extend the Drop Dead Date at any time by mutual agreement in writing.

**POWIN:**                                                       **CUSTOMER:**

**POWIN, LLC**                                              [_____]

By: _____

Name: _____                    By: _____

Title: _____                     Name: _____

                                                                    Title: _____

Schedule A

|  | Operations Support |
|---|---|
| **SERVICE LABOR** |  |
| **Scheduled maintenance** | Time & Material |
| **Corrective maintenance** | Time & Material |
| **Spare Parts management** | Advisory only |
| **Annual Capacity** | Time & Material |
| **SUPPORT SERVICES** |  |
| **24/7 ROC Monitoring** | Included |
| **StackOS & Cloud** | Regular SW updates and cloud maintenance |
| **Tech Support and RCA support** | Included |
| **Project manager (dispatch & maintenance facilitation)** | Included |
| **Training Materials** | Included |
| **REPORTING** |  |
| **Data Warehousing & Support** | Included |

**Schedule B**

| | Scheduled Service | DC Full Scope | Full Coverage |
|---|---|---|---|
| **AVAILABILITY** | | | |
| **DC Availability Guarantee** | - | 96, 97, or 98% | |
| **AC Availability Guarantee** | - | - | 96, 97, or 98% |
| **SERVICE LABOR** | | | |
| **Scheduled maintenance** | Scheduled maintenance covered | Scheduled maintenance covered | Scheduled maintenance covered |
| **Corrective maintenance** | Time & Material | Corrective maintenance covered | Corrective maintenance covered |
| **Spare Parts management** | Advisory only | Full spare parts management to ensure DC availability guarantees | Full spare parts management to ensure DC/AC availability guarantees |
| **Annual Capacity** | Capacity Test | Capacity Test | Capacity Test |
| **SUPPORT SERVICES** | | | |
| **24/7 ROC Monitoring** | Included | Included | Included |
| **StackOS & Cloud** | Regular SW updates included Advanced apps – 5% discount | Regular SW updates included Advanced apps – 10% discount | Regular SW updates included Advanced apps – 10% discount |
| **Tech Support and RCA support** | Included | Included | Included |
| **LTSA Project manager (warranty & maintenance facilitation)** | - | Included | Included |
| **Training Materials** | Training for self-service | Day-to-day operations done by Powin | Day-to-day operations done by Powin |
| **REPORTING** | | | |
| **Performance Reporting and Data Warehousing** | Included | Included | Included |

**<u>Exhibit 22</u>**

(Order Granting Motion Authorizing The Debtors To Enter Into New Customer Program)

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

In re:

Powin, LLC, *et al.*,[1]

Debtors.

Chapter 11

Case No. 25-16137 (MBK)

(Jointly Administered)

**Order Filed on June 13, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

## ORDER GRANTING MOTION OF THE DEBTORS FOR
## ENTRY OF AN ORDER (I) AUTHORIZING
## THE DEBTORS TO ENTER INTO NEW CUSTOMER PROGRAM
## WITH EXISTING CUSTOMERS AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered 3 through 4, is **ORDERED**.

**DATED: June 13, 2025**

*Michael B. Kaplan*

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [22495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.



2516137250613000000000006

(Page 2)

Debtors:         Powin, LLC, *et al.*

Case No.         25-16137

Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Debtors to Enter Into New Customer Program With Existing Customers; and (II) Granting
Related Relief

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Van C. Durrer, II (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email:  tania.moyron@dentons.com
        van.durrer@dentons.com


John D. Beck (*pro hac vice* forthcoming)
Sarah M. Schrag (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email:  john.beck@dentons.com
        sarah.schrag@dentons.com


*Proposed Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  frankoswald@teamtogut.com


Albert Togut (*pro hac vice* forthcoming)
Amanda C. Glaubach (*pro hac vice*
forthcoming)
Eitan Blander (*pro hac vice* forthcoming)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com


*Proposed Counsel for Debtors and
Debtors in Possession*

(Page 3)
Debtors:         Powin, LLC, *et al.*
Case No.         25-16137
Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Debtors to Enter Into New Customer Program With Existing Customers; and (II) Granting
Related Relief

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (i) authorizing the Debtors to enter into a new customer program with existing customers ("Customers") and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Debtors asserting that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing thereon establish just cause for the relief granted herein; and upon all of the proceedings before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.       The Motion is **GRANTED** as set forth herein.

2.       The Debtors are authorized to implement the LTSA Program.

3.       Debtor Powin LLC and Debtor Powin Project LLC will enter into a mutually agreeable services agreement to support the LTSA Program, but no assets will be transferred pending final approval of the order authorizing the Debtors to use cash collateral, which *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the*

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(Page 4)

Debtors:          Powin, LLC, *et al.*

Case No.          25-16137

Caption of Order: Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing
the Debtors to Enter Into New Customer Program With Existing Customers; and (II) Granting
Related Relief

*Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* is before the

Court at Docket No. 11.

4.        Notice of the Motion as provided therein shall be deemed good and sufficient notice of such

Motion and the requirements of the Local Rules are satisfied by such notice.

5.        To the extent applicable, the requirements set forth by Bankruptcy Rule 6003 are satisfied.

6.        Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order

are immediately effective and enforceable upon entry.

7.        The Debtors are authorized to take all actions necessary to effectuate the relief granted in this

Order in accordance with the Motion, and Customers are entitled to rely on this Order in connection with

participating in the LTSA Program.

8.        Notwithstanding anything to the contrary, any party may move for modification of this Order

in accordance with Local Rule 9013-5(e), including, without limitation, any official committee appointed by

the Office of the United States Trustee.

9.        The Debtors shall serve a copy of this Order and the Motion on all parties required to receive

such service pursuant to Local Rule 9013-5(f).

10.       This Court retains exclusive jurisdiction with respect to all matters arising from or related to

the implementation, interpretation, and enforcement of this Order.