**RIKER DANZIG LLP**
Joseph L. Schwartz, Esq.
Tara J. Schellhorn, Esq.
Gregory S. Toma, Esq.
7 Giralda Farms, Suite 250
Madison, New Jersey 07940-1051
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com
tschellhorn@riker.com
gtoma@riker.com

*Attorneys for Solar Carver 1, LLC and Solar Carver 3, LLC, as assignee of Pine Gate ECP, LLC*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF SOLAR CARVER 1, LLC AND SOLAR CARVER 3, LLC
TO APPROVAL OF SALE AND ENTRY OF ORDER AUTHORIZING THE SALE OF
DEBTORS' PROPERTY FREE AND CLEAR
<u>OF ALL CAUSES OF ACTION AND CLAIMS</u>**

Solar Carver 1, LLC, as assignee of Pine Gate ECP, LLC ("<u>Solar Carver 1</u>"), and Solar

Carver 3, LLC, as assignee of Pine Gate ECP, LLC ("<u>Solar Carver 3</u>," and together with Solar

Carver 1, "<u>Solar Carver</u>"), by and through their undersigned counsel, hereby submit this limited

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP, [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

objection and reservation of rights (the "Objection") with respect to the Debtors'[2] request for entry

of *Order (I) Authorizing The Debtors to Enter Into and Perform Under the FlexGen Power Systems, LLC Asset Purchase Agreement, (II) Approving the Sale of Purchased Assets Free And Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance With the Assumption and Assignment Procedures, and (IV) Granting Related Relief* [Docket No. 608, Exh. A].  In support of this Objection, Solar Carver submits the accompanying supporting Certification of Kimball Osmars (the "Osmars Cert.") and respectfully states as follows:

## RELEVANT BACKGROUND

### A.  Solar Carver's Prepetition Contracts with the Debtors

1.      On February 19, 2021, Powin Energy Corporation (a non-debtor affiliate of the Debtors) and Solar Carver 1 entered into a Battery Equipment Supply Agreement (the "Rochester Agreement").  See Osmars Cert. at ¶ 3.

2.      On February 19, 2021, Powin Energy Corporation and Solar Carver 3 entered into a Battery Equipment Supply Agreement (the "Tremont Agreement," and together with the Rochester Agreement, the "Agreements").[3] Osmars Cert. at ¶ 4.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of the Debtors for entry of an order (i) designating a stalking horse bidder and approving stalking horse bidder protections; (ii) approving bidding procedures by which interested parties may bid and an auction sale format in connection with the sale of substantially all of the Debtors' assets; (iii) approving the form of Asset Purchase Agreement; (iv) approving form of notice to be provided to interested parties; (v) authorizing the assumption and assignment of assumed contracts and notice procedures thereto; (vi) scheduling a court hearing to consider approval of the sale to the highest and best bidder; and (vii) authorizing the sale of the Debtors' property free and clear of all causes of action and claims* [Docket No. 228] (the "Sale Motion").

[3] The Agreements between the Powin Energy Corporation and Solar Carver are confidential.  Upon information and belief, the Debtors are in possession of the Agreements.  To the extent the Debtors, the Court, or any other party in interest requests a copy of the Agreements, Solar Carver reserves the right to file those documents under seal or subject to a non-disclosure agreement.

3.      Upon information and belief, prior to the Petition Date, Powin Energy Corporation transferred and assigned the Agreements to debtor Powin, LLC ("Powin"). Osmars Cert. at ¶ 5.

4.      The Agreements each provide for the purchase of certain Equipment (defined therein) from Powin, and for the delivery, commissioning, warranty, maintenance and servicing of the Equipment by Powin in exchange for additional payments from Solar Carver. Osmars Cert. at ¶ 6.

5.      Solar Carver or its predecessor in interest paid the full invoiced price for the Equipment, inclusive of the invoices for the delivery milestone, but due to delays at the project sites, upon information and belief, Powin delivered the Equipment to one or more warehouses in Massachusetts. Osmars Cert. at ¶ 7.

6.      Prior to the Petition Date, Powin and Solar Carver agreed to a mid-July 2025 installation and commissioning of the Equipment.  However, as of the Petition Date, the Equipment has not been commissioned and installed at the intended project sites and remains in one or more warehouses in Massachusetts. Osmars Cert. at ¶ 8.

7.      Since Solar Carver has paid the full purchase price of the Equipment to the Debtors, the Equipment may not be property of the Debtors' bankruptcy estates (the "Estates"), but rather property held by the Debtors for the benefit of Solar Carver. See Osmars Cert. at ¶ 7.

   **B.  The Debtors' Bankruptcy Cases**

8.      On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, §§ 101– 1532 (the "Bankruptcy Code"), thereby commencing their chapter 11 cases (the "Bankruptcy Cases"), which are being jointly administered.

9.      On June 17, 2025, the Debtors filed with the Court their *Omnibus Motion of the*

*Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88] ("Rejection Motion").  Schedule 1 to the Rejection Motion lists two contracts, identified as "Energy Storage Agreements," that relate to the "Rochester" and "Tremont" projects.  See Rejection Motion at Schedule 1, Lines 239 and 240.  The hearing on the Rejection Motion was originally scheduled for July 15, 2025, but was adjourned to August 6, 2025 [Docket No. 383].

10.    On July 1, 2025, the Debtors filed the Sale Motion with the Court.  The Sale Motion contemplated the sale of substantially all of the Debtors' assets to either the Stalking Horse Bidder or the Winning Bidder, to the extent another bidder submitted a higher and/or better bid at an auction and the potential assumption and assignment of certain executory contracts at the election of either the Stalking Horse Bidder or the Winning Bidder, free and clear of liens, claims and encumbrances (the "Proposed Sale").

11.    On July 18, 2025, the Debtors filed a *Notice of Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 446] (the "Assumption Notice").  The Assumption Notice lists two "Battery Equipment Supply Agreements" with Pine Gate EPC, LLC, which Solar Carver believes may be the Agreements.

12.    On July 31, 2025, the Debtors filed the *Notice of Winning Bidders* [Docket No. 591], which designated the Stalking Horse Bidder the Winning Bidder for the "Purchased Assets" (as defined therein).

13.    As of the date that Solar Carver files this Objection, the status of the Agreements and the Equipment, and the Stalking Horse Bidder's intentions with respect to the same, is ambiguous and remains unclear.

## LIMITED OBJECTION

### A. Solar Carver Seeks Clarification Regarding the Identity and Treatment of its Contracts.

14.    As set forth above, both the Rejection Motion and the Assumption Notice reference contracts related to Solar Carver and the Rochester and Tremont projects.  It remains unclear, which, if any, of these are the Agreements.  To ensure an orderly process and avoid unnecessary confusion, Solar Carver requests clarification from the Debtors on the specific contracts identified on the Rejection Motion and the Assumption Notice, as well as the Debtors' intentions with respect to those contracts.  This information is necessary for Solar Carver to determine whether it has a ripe objection to the Proposed Sale.

### B. More Information is Required to Conduct a Thorough Analysis of the Ownership of Certain Assets Which May Not be Part of the Estates.

15.    Section 363(b) of the Bankruptcy Code provides that a debtor may sell "property of the estate." 11 U.S.C. § 363(b).  Numerous courts have determined that assets that are not part of the bankruptcy estate are not subject to a section 363 sale. See, e.g., Folger Adam Security, Inc. v. Dematteis/Macgregor, JV, 209 F.3d 252, 262 (3d Cir. 2000) (recognizing that property that is not part of the bankruptcy estate cannot be the subject to sale pursuant to 11 U.S.C. § 363); In re Goli Nutrition, Inc., No. 24-10438 (LSS) Chapter 15, 2024 Bankr. LEXIS 973, at *16 (Bankr. D. Del. Apr. 23, 2024) ("I see nothing in section 363 of the Code that permits me to authorize the sale of property that is not property of the estate—in other words that the debtor has no interest in at all."); In re McIntyre, No. 10-30570-WRS, 2014 Bankr. LEXIS 5132, at *9-10 (Bankr. M.D. Ala. Dec. 23, 2014) ("It is apparent from the plain language of the statute, that the Trustee's power to sell property under § 363 applies only to 'property of the estate.'").

16.    The foregoing cases stand for the proposition that if a debtor's ownership of an

asset is in dispute, a court must determine ownership, including by way of an adversary proceeding, before authorizing a sale pursuant to 11 U.S.C. § 363. See Darby v. Zimmerman (In re Popp), 323 B.R. 260, 266 (B.A.P. 9th Cir. 2005) ("Section 363(b) requires that the estate demonstrate that the property it proposes to sell is property of the estate."); In re C.W. Mining Co., Case No. 08-20105, 2010 Bankr. LEXIS 2262, at *41 (Bankr. D. Utah Jul. 14, 2010) ("The Trustee may only sell property of the bankruptcy estate and if there is a bona fide dispute as to ownership an adversary proceeding may be required."); In re Whitehall Jewelers Holdings, Inc., Case No. 08-11261, 2008 Bankr. LEXIS 2120, at *9 (Bankr. D. Del. Jul. 28, 2008) ("A bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the property is property of the estate."). See also 3 Collier on Bankruptcy ¶ 363.01 (16th ed. 2025) ("If ownership is in dispute, the court should determine ownership before authorizing a sale."); Id. at ¶ 363.02[1][c] ("Where there is a dispute over whether the estate owns the property to be sold, the bankruptcy court should not authorize the sale.").  Moreover, in such a proceeding, the debtor bears the burden to establish its ownership interest in the disputed property. See Whitehall Jewelers Holdings, Inc., 2008 Bankr. LEXIS 2120, at *15.

17.    In order to avoid this determination, the Debtors may argue that because the ownership interest is in dispute, they can satisfy the "bona fide dispute" prong of § 363(f) of the Bankruptcy Code, which allows a debtor to sell property free and clear of disputed interests, with those interests attaching to proceeds.  However, the case law makes clear that this potential argument has no merit, and that any attempt to sell assets "free and clear" under § 363(f) because of a purported "bona fide dispute" does not overcome the separate requirement that a debtor first demonstrate that it actually owns the property that it seeks to sell. See In Re Popp, 323 B.R. at 266; In re Coburn, 250 B.R. 401, 403 (Bankr. M.D. Fla. 1999); see also 3 Collier on Bankruptcy

¶ 363.06 ("[T]he court may not authorize a sale free and clear of property that is not property of the estate."). The reasoning of these cases is that § 363(f) only applies to property owned by the estate, such that the ownership determination is a prerequisite to the § 363(f) determination.

18.     Here, although it is not clear from the Debtors' pleadings or proposed asset purchase agreement, Solar Carver is concerned that two of the "BESS units" potentially included within the Proposed Sale to the Stalking Horse Bidder may be the Equipment, for which Solar Carver has paid in full. If so, these units are not property of the Estates, and the Debtors cannot sell these units as part of the Proposed Sale. Given this ambiguity, more information is required to conduct a thorough analysis of the ownership of certain assets, which are not property of the Estates so that the Equipment is not inadvertently sold as part of the Proposed Sale.[4]

19.     As noted, Solar Carver or its predecessor in interest paid the full invoiced price for the Equipment, inclusive of the invoices for delivery.

20.     To the extent that the Stalking Horse Bidder takes the Agreements by way of assignment from the Debtors, Solar Carver does not object to the Proposed Sale or to the assumption and assignment of the Agreements. Nor does Solar Carver object to the proposed cure amount ($0) set forth in the Assumption Notice. Under this circumstance, Solar Carver believes the Stalking Horse Bidder would be required to perform and deliver the Equipment that was already purchased by Solar Carver.

21.     However, since the Stalking Horse Bidder's intentions with respect to Solar Carver remain unclear, out of an abundance of caution, Solar Carver objects to any potential sale of the Equipment by the Debtors, which may not be property of the Estates.

---

[4] Solar Carver has reached out to the Debtors' counsel for additional information and is hopeful that it will have more clarification on this issue in advance of the hearing.

## RESERVATION OF RIGHTS

22.     This Objection is without prejudice to, and with a full reservation of rights by Solar Carver.  To be clear, Solar Carver expressly reserves any and all rights, including, but not limited to, the right to supplement and/or amend the Objection and to introduce evidence by way of declaration and/or at any hearing in support of this Objection.  Solar Carver further reserves its rights to make such other and further objections as may be appropriate, including, but not limited to, objections regarding the ownership of the Equipment or regarding adequate assurance of future performance under, *inter alia*, 11 U.S.C. § 365.

## CONCLUSION

**WHEREFORE**, for all the reasons set forth herein, Solar Carver respectfully requests that the Court condition the Proposed Sale on the explicit exclusion of the Equipment therefrom or on the Debtors' clarification as to the disposition of the Equipment, and provide such other and further relief as is just and proper.

August 4, 2025
Madison, New Jersey

**RIKER DANZIG LLP**

By:  /s/ *Joseph L. Schwartz*
Joseph L. Schwartz, Esq.
Tara J. Schellhorn, Esq.
Gregory S. Toma, Esq.
7 Giralda Farms, Suite 250
Madison, New Jersey  07940-1051
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com
tschellhorn@riker.com
gtoma@riker.com

*Attorneys for Solar Carver 1, LLC and Solar Carver 3, LLC. as assignee of Pine Gate ECP, LLC*

4911-4739-1322, v. 2