**Exhibit C**

**(Form of EKS Sale and Release Agreement)**

**EKS SALE AND RELEASE AGREEMENT**

This sale and release agreement (the "Agreement") is entered into this [●] by and between Hitachi Energy Ltd, (the "Buyer"), Hitachi Energy Power Conversion Solutions, S.L.U., f/k/a Experience Knowledge Strategy, S.L. ("EKS") and EKS HoldCo LLC, ("HoldCo," and together with the Buyer and EKS, the "Hitachi Parties"), on the one hand, and Powin LLC ("Powin"), certain of its affiliated debtors in the Chapter 11 Cases (collectively with Powin, the "Debtors") and Powin EKS SellCo LLC on the other hand (the "Seller" and together with the Debtors, the "Powin Parties" and together with the Hitachi Parties, the "Parties" and each a "Party").

**RECITALS**

**WHEREAS**, on October 23, 2023: (i) the Buyer, the Seller and Powin entered into a membership interest purchase agreement (as amended, the "MIPA"), pursuant to which the Buyer purchased 80% of the units of HoldCo from Seller and Seller retained 20% of the units (the "Remaining Units") of HoldCo (the "EKS Acquisition"); (ii) the Buyer, Seller and Powin (as guarantor) entered into an amended and restated limited liability agreement, regarding, among other things, the governance of HoldCo (as amended, the "LLCA"); (iii) EKS and Powin entered into a master product supply agreement for the provision by EKS of products to Powin (as amended, the "MSA"); (iv) EKS and certain former executives entered into separation agreements, as provided for in the MIPA, under which separation payments were made (the "Separation Agreements"); (v) HoldCo, the Seller and Powin entered into a transition services agreement, pursuant to which Powin rendered services to HoldCo (the "TSA"); (vi) Powin and Mr. Javier Landero Cruz entered into a consultancy services agreement, pursuant to which Mr. Javier Landero Cruz agreed to provide services to Powin (the "First Service Agreement"); and (vii) Powin and Mr. Sergio Hurtado Cuerva entered into a consultancy services agreement, pursuant to which Mr. Sergio Hurtado Cuerva agreed to provide services to Powin (the "Second Service Agreement" and, together with the First Service Agreement, the "Service Agreements");

**WHEREAS**, separate and apart from the MSA, EKS has also supplied goods and services to Powin from time to time pursuant to certain purchase orders ("Purchase Orders");

**WHEREAS**, on June 10, 2025 (the "Petition Date"), the Debtors filed petitions in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Chapter 11 Cases");

**WHEREAS**, the Hitachi Parties assert various claims and rights against the Powin Parties, including indemnity claims under the MIPA, commercial claims for goods and services provided under Purchase Orders, and claims under the MSA, including without limitation unmatured claims for Powin's failure to satisfy certain minimum volume commitments of Powin to EKS under the MSA, all of which claims the Powin Parties dispute;

**WHEREAS,** the Seller asserts the present right to put the Remaining Units to Buyer at a specified price pursuant to the LLCA (the "Put Option"), the pricing and enforceability of which the Hitachi Parties dispute; and

**WHEREAS**, the Parties seek to (i) resolve such disputes, matters and claims, (ii) cause the transfer of the Remaining Units to Buyer in exchange for the Purchase Price (defined

below) and (iii) exchange broad mutual releases of all claims and causes of action pursuant to the terms of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises and other good and valuable consideration set forth in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

### AGREEMENT

**1.** **Unit Purchase**. On the Effective Date, the Buyer and Seller will enter into and consummate the Unit Purchase Agreement, the form of which is Exhibit D to the LLCA and attached hereto as **Annex 1** (the "Unit Purchase Agreement"). Notwithstanding anything to the contrary in the LLCA, the purchase price to be paid by Buyer to Seller or its designee for the Remaining Units shall be $15,000,000 (the "Purchase Price"). Seller shall provide written wiring instructions to Buyer for the payment of the Purchase Price to Seller or its designee within one business day of the execution of this Agreement. The Debtors will take all steps necessary and appropriate to cause the Seller to enter into and consummate the Unit Purchase Agreement consistent with the terms of this Agreement.

**2.** **Mutual Releases**.

(a) Releases by the Hitachi Parties. As of the Effective Date, each of the Hitachi Parties, on behalf of itself and its respective affiliates, successors and assigns, hereby forever releases, waives, and discharges, to the maximum extent permitted by law, all claims, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, defenses, rights of setoff, demands, and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, of every name and nature, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, against each of the Powin Parties and their respective Related Parties, for or on account of, or in relation to, or in any way in connection with or that otherwise are based in whole or in part on any circumstance, action, act, omission, transaction, cause, event, or thing whatsoever taking place on or before the Effective Date, and in any way relating to or arising from, in whole or in part, the EKS Acquisition, the MSA, the Purchase Orders, the LLCA, the MIPA, the TSA, the Separation Agreements or the Service Agreements, including without limitation any indemnity rights against the Powin Parties arising under the foregoing; *provided, however*, notwithstanding the foregoing, nothing herein shall (i) release or otherwise alter any rights or obligations of any Hitachi Party or its affiliates with respect to any entity that is not a Powin Party, including without limitation Akaysha Energy or its affiliates, or (ii) release any claim or cause of action arising from or relating to Fraud (as defined in the MIPA); *provided, further*, notwithstanding clause (ii), the Hitachi Parties agree that they shall not assert any claim, including any claim arising from or relating to Fraud, against the bankruptcy estates of the Debtors. The Hitachi Parties represent and warrant that, as of the Effective Date, they have no actual knowledge of any facts or circumstances that would reasonably be expected to give rise to a claim for Fraud (as defined in the MIPA) against any of the Powin Parties.

(b) Releases by the Powin Parties. As of the Effective Date, each of the Powin Parties, on behalf of itself and its respective affiliates, successors and assigns (including without limitation any liquidation trust, litigation trust, reorganized Debtors, or other liquidating vehicle under a chapter 11 plan in the Chapter 11 Cases), and on behalf of each bankruptcy estate of the Debtors, hereby forever release, waive, and discharge, to the maximum

extent permitted by law, all claims, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, defenses, rights of setoff, demands, and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, of every name and nature, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, against each of the Hitachi Parties and their respective Related Parties, for or on account of, or in relation to, or in any way in connection with or that otherwise are based in whole or in part on any circumstance, action, act, omission, transaction, cause, event, or thing whatsoever taking place on or before the Effective Date, and in any way relating to or arising from, in whole or in part, the EKS Acquisition, the MSA, the Purchase Orders, the LLCA, the MIPA, the TSA, the Separation Agreements, the Service Agreements or the Chapter 11 Cases, including without limitation all claims and causes of action arising under chapter 5 of the Bankruptcy Code.

(c) Notwithstanding anything herein to the contrary, nothing herein shall release or limit rights or obligations of any Party arising under this Agreement, the Unit Purchase Agreement or the Approval Order.

(d) The Parties agree that as of the Effective Date, the MSA shall be deemed terminated.

"Related Parties" means, with respect to any entity, such entity's predecessors, successors, assigns, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed accounts and funds, portfolio companies, current and former officers and directors, trustees, principals, shareholders, members, beneficial holders, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals (including any professionals retained by such entities), in each case, solely in their respective capacities as such with respect to such entity.

3. **Buyer's Conditions Precedent**. Unless waived in writing by Buyer, the obligation of the Buyer to pay the Purchase Price to Seller and consummate the Unit Purchase Agreement shall be subject to the satisfaction of each of the following:

  a. The Bankruptcy Court shall have entered an order authorizing the Debtors to enter into and consummate this Agreement and to cause the Seller to enter into and consummate the Unit Purchase Agreement, which order has not been stayed and has become a Final Order (the "Approval Order");

  b. Seller shall have delivered to Buyer, in form and substance acceptable to Buyer, one or more of the following: (i) a final, non-appealable court order, (ii) a payoff letter, or (iii) a voluntary release, in each case sufficient to terminate and release any and all liens or security interests encumbering the Remaining Units, including, without limitation, those granted in favor of GLAS USA LLC and any liens or security interests arising in connection with debtor-in-possession financing or the use of cash collateral in the Chapter 11 Cases;

  c. the Seller shall have executed the Unit Purchase Agreement; and

  d. at least three business days shall have occurred since the Seller has provided written wiring instructions to Buyer for payment of the Purchase Price.

3

      **4.** **Sellers Condition Precedent**. Unless waived in writing by Seller, the obligation of the Seller to consummate the Unit Purchase Agreement shall be subject to the satisfaction of each of the following:

    a. The Bankruptcy Court shall have entered an order authorizing the Debtors to enter into and consummate this Agreement and to cause the Seller to enter into and consummate the Unit Purchase Agreement, which order has not been stayed and has become a Final Order (the "Approval Order");

    b. Seller or its designee shall have received the Purchase Price; and

    c. the Buyer shall have executed the Unit Purchase Agreement.

"Effective Date" means the date on which the Buyer has paid the Purchase Price and the Unit Purchase Agreement has been consummated, such that Seller has transferred, sold and assigned the Remaining Units (which, for the avoidance of doubt, is 100% of Seller's units and interests in Holdco) to Buyer.

"Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, is not subject to any pending stay, and as to which the time to appeal, move for reargument, reconsideration, or rehearing, or seek certiorari has expired, and no appeal, motion for reargument, reconsideration or rehearing, or petition for certiorari has been timely taken or filed, or as to which any appeal that has been taken, motion for reargument, reconsideration or rehearing that has been granted, or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought, or the request for new trial, reargument, reconsideration, or rehearing or petition for certiorari has been denied, has resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed with respect to such order or judgment shall not cause such order or judgment to not be a Final Order.

      **5.** **Governing Law**. This term sheet shall be governed by and construed in accordance with the internal Laws of the State of Delaware without regard to the conflicts of law provision or rule (whether of the State of Delaware or any other jurisdiction).

      **6.** **Jurisdiction**. Each Party submits to the jurisdiction of the Bankruptcy Court and, for matters arising following the conclusion of the Chapter 11 Cases, the United States District Court for the District of Delaware, for the purposes of any proceeding relating to the transaction contemplated by this Agreement or the Unit Purchase Agreement.

      **7.** **Waiver of Jury Trial**. To the fullest extent permitted by applicable law, each Party waives any right it may have to a trial by jury in respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement.

      **8.** **Remedies**. The Parties agree that (i) irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached, (ii) money damages or other legal remedies would not be an adequate remedy for any such damage, and (iii) the right of specific performance as set forth in this section 8 is an integral part of the transactions contemplated by the Agreement,

and without that right, none of the Parties hereto would have entered into this Agreement. It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions to prevent breaches and to enforce specifically the terms and provisions of this Agreement, in each case without posting a bond or undertaking, this being in addition to any other remedy to which they are entitled at law or in equity.

9. **Entire agreement**. This Agreement and the Unit Purchase Agreement contain the entire agreement and understanding among the Parties with respect to the transaction contemplated by this Agreement and supersedes all prior or contemporaneous agreements, understandings, or representations with respect thereto.

10. **Costs and Expenses**. Each Party shall bear its own costs and expenses in connection with this Agreement and the transactions contemplated hereby.

11. **Amendment and Modification**. No alteration, modification, or change of this Agreement shall be valid except by an agreement in writing executed by the Parties.

12. **Execution; Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures sent by electronic mail in pdf format shall constitute originals.

*[-signature page follows-]*

*Hitachi Parties*:

**Hitachi Energy Ltd**

_____
Name:
Title:

**Hitachi Energy Power Conversion Solutions, S.L.U.**

_____
Name:
Title:

**EKS HoldCo LLC**

_____
Name:
Title:

*The Powin Parties***:**

**Powin LLC**

_____
Name:
Title:

**Powin EKS SellCo LLC**

_____
Name:
Title:

**Powin Project LLC**
**PEOS Holdings, LLC**
**Powin China Holdings 1, LLC**
**Powin China Holdings 2, LLC**
**Charger Holdings, LLC;**
**Powin Energy Ontario Storage, LLC**
**Powin Energy Operating Holdings, LLC**
**Powin Energy Operating, LLC**

_____
Name:
Title:

Annex 1

Form of Unit Purchase Agreement
(Exhibit D to LLCA)