David H. Pikus
BRESSLER, AMERY & ROSS
A Professional Corporation
325 Columbia Turnpike
Florham Park, New Jersey 07932
P.O. Box 1980
Morristown, New Jersey 07962ex
(973) 514-1200
Attorneys for Applicant and Secured Creditor
Expeditors International of Washington, Inc.

Hearing Date:   To Be Set

Oral Argument Requested

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

In re:

Powin, LLC, *et al.*[1],
                Debtors

Chapter 11

Case No. 25-16137 (MBK)

(Jointly Administered)

## MOTION OF EXPEDITORS INTERNATIONAL OF WASHINGTON, INC. FOR ENTRY OF AN ORDER, PURSUANT TO § 362(D)(1) OF THE BANKRUPTCY CODE MODIFYING THE AUTOMATIC STAY TO PERMIT ABANDONMENT AND LIQUIDATION OF COLLATERAL

Expeditors International of Washington, Inc. and its subsidiaries and affiliates (collectively, "**Expeditors**") by and through counsel, hereby moves for entry of an order, pursuant to §§ 362(d)(1) of Title 11 of the United States Code, as amended (the "**Bankruptcy Code**") and under Federal Rule of Civil Procedure 4001 and Local Rule 4001-1, modifying the automatic stay, for cause, to permit liquidation and abandonment of Expeditors' possessory lien

---

[1]The Debtors in these Chapter 11 Cases are: (i) Powin Project LLC; (ii) Powin, LLC; (iii) PEOS Holdings, LLC; (iv) Powin China Holdings 1, LLC; (v) Powin China Holdings 2, LLC; (vi) Charger Holdings, LLC; (vii) Powin Energy Ontario Storage, LLC; (viii) Powin Energy Operating Holdings, LLC; and (ix) Powin Energy Operating, LLC.

collateral for its benefit and the benefit of the estate (the "**Motion**"). For the reasons set forth below, and in support thereof, Expeditors respectfully represents as follows.

## Background

1.     On June 10, 2025 (the "**Petition Date**"), multiple petitioning creditors commenced this bankruptcy case by the filing of an involuntary petition (the "**Petition**") against the above-referenced debtors (the "**Debtors**") for relief.

2.     On June 27, 2025, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") in these Chapter 11 Cases. No other trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

3.     Expeditors is a non-vessel owned common carrier, freight forwarder, customs broker, warehouseman and provider of distribution and other logistics services. Expeditors provided such services to the Debtors prior to the commencement of this Bankruptcy Case.

4.     This Motion seeks an order granting Expeditors relief from the automatic stay to permit abandonment and liquidation of its collateral.

## Jurisdiction

5.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §1334. Venue lies properly with this Court pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

## Background

6.     Powin, LLC and Expeditors are parties to the following pre-petition agreements (collectively, the "Contracts"):

(a) Application for Credit by Powin, LLC dated June 27, 2021 (a true copy of which is attached hereto as **Exhibit A**).

(b) Certain bills of lading issued by Expeditors, which constitute contracts for the carriage

of goods (a true copy the bill of lading terms and conditions is attached hereto as **Exhibit B**).

7.      Before the Petition Date, Expeditors transported goods in international and domestic commerce for the Debtors. In the course of performing such services, Expeditors acquired possession, custody and control of, *inter alia*, goods belonging to the Debtors or in which the Debtors claim an interest and various commercial documents, including documents of title.

8.      Without limiting the foregoing, Expeditors has possession, custody or control of certain goods of the Debtors (the "**Petition Date Cargo**") as described in **Exhibit C** attached hereto and related documents, having a declared value of approximately $686,00.00 On information and belief the Petition Date Cargo consists of miscellaneous parts as described on Exhibit C.

9.      As of the Petition Date, the Petition Date Cargo was located in Expeditors' possession, custody or control *en route*.

10.     As set forth more fully below, Expeditors holds maritime and other carrier's liens on the Petition Date Cargo and other property of the Debtors' estates, as well as a consensual security interest in the Petition Date Cargo and other property of the Debtors' estates.

11.     As of the Petition Date, the Debtor owes Expeditors the aggregate amount of approximately $468,000.00 (collectively, "**Expeditors' Claims**") for transportation, storage and preservation of goods and other property, including freight, storage, distribution, Customs duties and fees, demurrage, detention, and other charges, plus late charges on the foregoing at 19.72% per annum and attorneys' fees. All charges continue to accrue.  Significantly, storage charges continue to accrue with respect to the Petition Date Cargo at a rate of approximately $4,636.00 per day or $32,452.00 per week.

12.     Pursuant to the Contracts, as security for Expeditors' claims, Expeditors holds duly-

perfected first-priority liens on, and security interests in, the following (collectively, the "Collateral"):

(a) all of the Petition Date Cargo and related documents;

(b) all other property in Expeditors' possession, custody or control or en route as of the Petition Date;

(c) all other goods, documents of title and other property which Expeditors made available to the Debtors for the purpose of ultimate sale or exchange or for loading, unloading, storing, shipping, transshipping, manufacturing, processing or otherwise dealing with them in a manner preliminary to their sale or exchange, and all documents related thereto; and

(d) all proceeds and products of any of the foregoing, including "cash collateral."

13.    The Debtors defaulted on their obligations prior to the Petition Date. Pursuant to non-bankruptcy law and the Contracts, Expeditors justifiably retained possession of the Petition Date Cargo and documents, pending its receipt of adequate protection for its liens and security interests.

14.    Expeditors' counsel has repeatedly contacted the Debtors' counsel to inform them of Expeditors' liens and security interest and outstanding charges. Expeditors further offered to tender the Petition Date Cargo in exchange for adequate protection for Expeditors' interest in the Petition Date Cargo in the form of payment of its outstanding charges.  While Debtors' counsel has indicated that certain buyers of the Debtors' assets are interested in the Petition Date Cargo, to date, no payments or efforts to collect the Petition Date Cargo have been made.

## A.    AS SECURITY FOR ITS CLAIMS, EXPEDITORS HOLDS A UCC ARTICLE 7 CARRIER'S LIEN AND A MARITIME CARRIER'S LIEN.

15.    Section 7-307(a) of the Uniform Commercial Code (2003) states as follows:

A carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for

4

preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law.

16.     When Expeditors took possession of the Collateral at point of origin, Expeditors issued documents of title evidencing its receipt of the Collateral for shipment purposes, and was a "carrier" vis a vis the Debtor. *World Imports, Ltd. v. OEC Group New York (In re World Imports, Ltd.)*, 820 F.3d 576 (3d Cir.); *Logistics Management, Inc. v. One Pyramid Tent Arena*, 86 F.3d 908, 913-914 (9th Cir. 1996). Therefore, on taking possession of the Collateral and issuing documents, Expeditors held a valid and enforceable carrier's lien on said Collateral. UCC § 7-307 (2003).

17.     Moreover, to the extent the contracts of carriage were primarily for ocean carriage, Expeditors also has a possessory carrier's lien under federal maritime law. *The Bird of Paradise*, 72 U.S. 545, 555 (1866); *4,885 Bags of Linseed*, 66 U.S. 108 (1861); *World Imports, Ltd., supra*; *Logistics Management, supra*, 86 F.3d at 914-915; *Arochem Corp. v. Wilomi, Inc.*, 962 F.2d 496, 499-500 (5th Cir. 1992).

**B.     AS SECURITY FOR ITS CLAIMS, EXPEDITORS HOLDS A UCC ARTICLE 7 WAREHOUSE LIEN.**

18.     Subsection 7-209(a) of the Uniform Commercial Code (2003) states as follows:

A warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof in its possession for charges for storage or transportation, including demurrage and terminal charges, insurance, labor, or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law. If the person on whose account the goods are held is liable for similar charges or expenses in relation to other goods whenever deposited and it is stated in the warehouse receipt or storage agreement that a lien is claimed for charges and expenses in relation to other goods, the warehouse also has a lien against the goods covered by the warehouse receipt or storage agreement or on the proceeds thereof in its possession for those charges and

expenses, whether or not the other goods have been delivered by the warehouse.

19.     Expeditors acted as warehouseman for the Debtors and stored the Collateral. In addition, the warehouse receipts and storage agreement state that Expeditors claims a lien for other goods. Therefore, Expeditors holds a valid warehouse lien on the Collateral.

### C.     AS SECURITY FOR ITS CLAIMS, EXPEDITORS HOLDS A UCC ARTICLE 9 SECURITY INTEREST.

20.     A security interest attaches to collateral, if the debtor gives the secured creditor a security agreement, the secured creditor gives value, and the debtor has rights in the collateral or the power to transfer rights to the secured party. UCC § 9-203(b) (2010).

21.     Debtor signed an Application for Credit with Expeditors granted Expeditors "a continuing lien and security interest in any and all property of [the Debtor] (including goods and documents relating thereto) now or hereafter in [Expeditors'] possession, custody or control or en route (the 'Collateral'). . . ."

22.     This constitutes a valid extension of Expeditors' maritime liens. *World Imports, Ltd. v. OEC Group New York (In re World Imports, Ltd.)*, 820 F.3d 576 (3d Cir. 2016).

23.     It also constitutes a valid security agreement, covering both existing and after-acquired collateral. *Paul Harris Stores, Inc. v. Expeditors International of Washington, Inc. (In re Paul Harris Stores, Inc.)*, 342 B.R. 290 (Bankr. S.D. Ind. 2006) (interpreting identical language). *See, also, Expeditors International of Washington, Inc. v. Colortran, Inc. (In re Colortran, Inc.)*, 218 B.R. 507 (Bankr. 9th Cir. 1997), *aff'd* 165 F.3d 35, 1998 WL 792307 (9th Cir. 1998) (interpreting the lien clause in Expeditors' Terms and Conditions of Service); *Expeditors International v. Wang Laboratories, Inc.*, 1995 U.S. Dist. LEXIS 20007 (D. Mass. 1995) (same).

24.     Expeditors gave substantial value by transporting the Collateral.

6

25.    The Debtors have sufficient rights in the Collateral for Expeditors' security interest to attach to the Collateral. UCC § 2-401(2) (1962) (title passes to the buyer when the seller completes its obligations with respect to delivery); UCC § 2-501(1) (1962) (identification of the goods to the contract gives the buyer a "special property" and an insurable interest in the goods). *See, also*, INCOTERMS 2010 (International Chamber of Commerce). These rights are sufficient for the Petition Date Cargo to become "property of the estate" (as defined in 11 U.S.C. § 541). Therefore, the Debtors have rights in the Collateral.

26.    In addition, Expeditors' security interest extends to proceeds of the original goods. UCC § 9-315 (2010); and *In re Chaseley's Foods, Inc.,* 726 F.2d 303 (7th Cir. 1983).

27.    Therefore, Expeditors holds a valid and attached security interest in the Collateral.

28.    Expeditors has attempted in good faith to obtain direction from the Debtors regarding disposition of the Petition Date Cargo and to date has not received a commitment with respect to such disposition.

29.    Expeditors brings this Motion because time is of the essence in this matter due to the expenses that accrue daily with respect to every shipment required to be kept in *de facto* storage pending the estates' decision. The Trustee and the estate can expect accruals of storage fees and expenses with respect to the Petition Date Cargo of approximately $4,636.00 per diem, which equates to approximately $32,452.00 per week (the "**Future Costs**").

30.    Expeditors is secured in the Petition Date Cargo in its possession, both under Article 7 of the Uniform Commercial Code, as well as under relevant possessory lien statutes and the standard terms and conditions attached to relevant bills of lading issued for the Petition Date Cargo. Expeditors has no assurance that release or liquidation of the Petition Date Cargo will satisfy the Future Costs. Thus, with every passing day, Expeditors becomes increasingly

7

less secured and, concomitantly, any value to the estates (whether in equity or in claims reduction) is rapidly eroding. Expeditors has attempted to secure direction from the Trustee or Bank regarding payment and release of the Petition Date Cargo, or, alternatively, abandonment of the Petition Date Cargo, to no avail. Expeditors has in fact been informed through counsel that neither the estate nor the Bank are able to redeem the Petition Date Cargo.

31.     Accordingly, in an attempt to mitigate harm on all sides, Expeditors seeks modification to the automatic stay to allow it to liquidate the Petition Date Cargo in satisfaction of as much of the accrued debt as possible or, if commercially reasonable, to effectuate abandonment.

## **Relief Requested**

32.     Section 362(d)(1) of the Bankruptcy Code provides that:

> (d)      On request of a party in interest after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay - (1) for cause, including the lack of adequate protection of an interest in property of such party interest;

11 U.S.C. § 362(d).

33.     The automatic stay should be lifted for cause so that Expeditors can mitigate the damages to both it and the estates by liquidating (or, if commercially reasonable abandon) the Petition Date Cargo in reduction or satisfaction of the Costs. Section 362(d) of the Bankruptcy Code permits relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). The phrase "for cause" is not defined in the Bankruptcy Code, "leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." Baldino v. Wilson (In re Wilson), 116 F.3d 87 (3d. 1997).

8

34.     Despite repeated request, Expeditors has not received assurance that the Debtors

or its successors have the means to honor their payment obligations with respect to the Petition

Date Cargo and accordingly Expeditors should not be required to continue to accrue such

obligations. There is furthermore no assurance that the Petition Date Cargo can be liquidated

for an amount sufficient to satisfy the arrears now, much less with additional accruals. As a

secured creditor, Expeditors is not receiving the adequate protection that it is due. Without a

decision as to the Petition Date Cargo, both Expeditors and the Debtors' estates are being

harmed due to the passage of time. Expeditors seeks this relief to mitigate exposure on all sides,

both with respect to the approximately $678,995.88 for which the Debtors are already indebted,

as well as the Future Costs that will continue to accrue. Expeditors should not be forced to risk

continued daily costs without assurance of payment, nor is continued inaction in the best

interests of the estate and its creditors. Accordingly, it is respectfully submitted that "cause"

exists under § 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow

Expeditors to liquidate and/or abandon the Petition Date Cargo in order to maximize value for

all.

## **Notice**

35.     Notice of this motion has been served upon the Debtors and those parties who filed

requests for notice in these cases. Expeditors submits that such notice is sufficient and good under

the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of this

Court.

## **No Prior Request**

36.     No prior request for the relief sought herein has been made to this or any other

court.

## Conclusion

WHEREFORE, Expeditors respectfully requests that this Court enter an order, substantially in the form annexed hereto as **Exhibit D**, modifying the automatic stay to allow Expeditors to liquidate or, if commercially reasonable, abandon the Petition Date Cargo in order to reduce Expeditors's claims and the claims against the estate, and granting to Expeditors such other and further relief as may be just and proper.

Dated:  August 26, 2025

Respectfully submitted,

**BRESSLER, AMERY & ROSS, P.C.**

Attorneys for Movant

By:_____/s/ David H. Pikus_____
          David H. Pikus

# EXHIBIT

# A



# Notice Concerning Terms and Conditions of Service and Limitation of Liability

## Terms for Credit Accounts

# Application for Credit

© 2019 Expeditors International of Washington, Inc.

# Notice Concerning Terms and Conditions of Service and Limitation of Liability

Expeditors International of Washington, Inc. on behalf of itself and its subsidiaries, affiliates, agents and contractors (collectively, "the Company") limits its legal liability for loss, damage or delay.  The maximum amount of legal liability assumed by the Company (often called "released value") varies depending upon the type of service provided and / or the mode of transportation. The Company's legal liability when providing customs brokerage services or short term warehouse / distribution services is different from the legal liability that applies when the Company is acting as a carrier providing transportation services. The released value for air transportation is different from the released value applicable to ocean transportation and the limitation on liability for domestic air transportation is different from the limitation applicable to international transportation. These differences exist because unique treaties, laws, conventions, tariffs and industry standards establish the minimum released value for each different mode of transportation and service offering.

The Company has adopted general terms and conditions of service.  These terms and conditions are printed on the back of (or incorporated by reference into) every invoice issued by the Company and are incorporated herein by reference.  The limitation of liability set forth in the general terms and conditions of service applies to customs brokerage, warehouse/ distribution and other services where the Company is not acting as a carrier.  The Company may change the general terms and conditions of service from time to time.

When the Company is acting as a carrier, the exact limits of liability and the other terms and conditions of carriage can be located on the bill of lading or other shipping document issued by the carrier (which is the contract between the parties).  Unless modified or superseded by the terms of the bill of lading or other contract of carriage, the Company's general terms and conditions of service will also apply to the transaction.

The contractual provisions referenced above describe the industry standard released value, but the actual amount applicable to any particular transaction is in the complete control of the Customer. When the Customer desires to have the Company assume legal liability for an amount greater than the standard released value, the Customer modifies the terms of the contract by declaring a higher released value prior to the performance of the service.  This can be done by entering a declared value on the *Shipper's Letter of Instructions* when the Company is acting as the carrier.  In other cases, the higher declared value must be set forth in a written document accepted and acknowledged by an authorized representative of the Company.  In exchange for accepting the higher legal liability selected by the Customer, a higher rate will be charged for the service.

The additional protection obtained by declaring a higher value is not the same as the protection that is available by purchasing insurance.  For example, there are risks that are covered by the insurance company in circumstances where a carrier is not legally liable to reimburse the customer.  In addition, insurance coverage can be purchased with direct reference to the value of the cargo while a declaration of additional value often must be expressed as an amount per pound or per carton.  As a consequence, recovery of full value is much more problematic with a higher released value than it is through the purchase of insurance.  Upon Customer request, the Company can also arrange to provide insurance coverage.

When engaging Company to perform services, Customer agrees to comply with all applicable laws and government regulations, including anti-corruption laws such as, but not limited to, the U.S. Foreign Corrupt Practices Act ("FCPA"), the U.S. Export Administration Regulations ("EAR"), the U.S. Anti-Boycott regulations, and the various U.S. economic sanctions programs administered by the U.S. Treasury Office of Foreign Assets Control ("OFAC") as well as all applicable laws and government regulations of any country to, from, through or over which Customer's shipment may be carried, including those relating to the packing, carriage, or delivery of the shipment.

© 2019 Expeditors International of Washington, Inc.

DocuSign Envelope ID: B08DB693-4F4B-4CF8-A331-0CA9163E4A9E

## Terms for Credit Accounts

Specific terms and conditions of service, including limitations of liability discussed in the *Notice Concerning Terms and Conditions of Service and Limitation of Liability*, apply to the services performed by the Company. These terms and conditions are established by contract as set forth in the governing instrument or by operation of law. The Company's standard payment terms require receipt of cash in advance of performance. In event that the Company extends credit to the Customer, the following additional terms are hereby agreed to be applicable.

The amount of credit extended to the Customer is subject to periodic review and any decision to increase, decrease or revoke the amount of credit granted to the Customer shall be in the sole discretion of the Company without advance notice.

By establishing a credit account for the Customer, the Company shall be under no obligation to incur any expense, guarantee payment, or advance money on behalf of the Customer. Notwithstanding any course of dealing, course of conduct, course of performance or usage of trade, the fact that the Company has made a payment, advance or guarantee shall not constitute a waiver of this provision, nor shall any failure or delay by the Company to exercise any right operate as a waiver thereof, nor shall any single or partial exercise of any right preclude any other or further exercise thereof or the exercise of any other right.

The Customer agrees to keep the account current and agrees to pay each invoice according to its terms. Unless other payment terms are shown on the face of the invoice, it is agreed that the Company will receive payment within fifteen (15) days of the invoice date.

In the event that the Customer fails to keep the account current, all amounts owed by Customer shall immediately become due and payable. The Customer shall also become indebted to the Company for costs of collection, including reasonable attorney fees, plus one and one half percent (1.5%) interest per month (19.72% per annum) on all amounts, compounded daily and calculated from the due date.

As security for any existing and future indebtedness and obligations of the Customer to the Company, including claims for charges, expenses or advances incurred by the Company in connection with any shipment or transaction of the Customer, and whether or not presently contemplated by the Customer and the Company, the Customer hereby grants to the Company a continuing lien and security interest in any and all property of the Customer (including goods and documents relating thereto) now or hereafter in the Company's possession , custody or control or en route ( the "Collateral"). This lien and security interest shall be in addition to any other rights the Company has or may acquire under any other agreements and/or applicable law, and shall survive delivery or release of any Collateral. Customer agrees to make full and prompt payment of the unpaid purchase price of any goods as to which the Company provides services or makes advances and to deliver all requisite authorizations, bills of lading, and other title documentation to assure such payment.

If any indebtedness remains unpaid, the Company may, in addition to any other rights it has under other agreements and/or applicable law, exercise any or all of the rights of a secured party under the Uniform Commercial Code now in effect in the State of Washington. Any notice required to be given by the Company of a sale or other disposition or other intended actions with respect to any Collateral, or otherwise, made by sending same to the Customer at least ten (10) days prior to any proposed action shall constitute fair and reasonable notice to the Customer. Any surplus from a sale or other disposition of Collateral, after application of the proceeds to the costs of enforcement and sale or other disposition (including attorneys' fees) and to the indebtedness and obligations, shall be transmitted to the Customer, and the Customer shall be liable for any deficiency in the sale.

The foregoing shall be construed according to the internal substantive laws of the State of Washington, without regard to the conflict of law principles of such State. The Customer irrevocably submits to the exclusive jurisdiction of the state courts of Washington, and agrees that all claims and proceedings by the Customer shall be brought only in King County.

# Expeditors®

## Application for Credit

Only limited credit can be granted without current financial statements.  Please attach your most recent financial statements to expedite credit approval.

**Please Attach Credit Reference Sheet:**

### Company Information

|  |  |
|---|---|
| **Customer Name:** Powin, LLC | **Parent (if applicable please select yes):    Yes ☐    No ☒** |
|  | **Parent Name:** _____ |
| **FEIN:** 86-2270504 | **FEIN:** _____ |
| Address: 20550 SW 115th Ave | Address: _____ |
| City/State: Tualatin, OR | City/State: _____ |
| Phone: 503-598-6659 | Phone: _____ |
| Type of business: Renewable Energy | Type of business: _____ |
| Years in business: 30 | Years in business: _____ |
| State of entity formation:   DE | State of entity formation: _____ |

**Ownership:**
☐ Public Corporation
Ticker Symbol: _____
☐ Private Corporation
☐ Partnership
☒ Limited Liability Company
☐ DUNS # _____

### Bank Information

|  |  |
|---|---|
| **Bank Name:** _____ | Account Number: _____ |
| Address: _____ | Credit Arrangements: _____ |
| Contact: _____ | Date Account Opened: _____ |
| Phone: _____ |  |

### Invoicing and Accounts Payable Information

**Company invoices should be sent to Customer via ☐ Mail   ☒ Email:**

Mailing Address: _____     Email: accounting@powin.com
_____

Customer contact for past due amounts:

Contact: Accounts Payable

Phone: 503-598-6659     Email: accounting@powin.com

We represent and warrant that the information set forth in this application for credit and in the financial statements included with this application, if any, is true and complete and is not misleading.  The Company is hereby authorized to obtain information from credit reporting services, to check the Customer's bank, credit and trade references and history listed above, and in the normal course of business to disclose credit information to credit grantors and reporting services.  The Company's *Terms for Credit Accounts* and *Notice Concerning Terms and Conditions of Service and Limitation of Liability* as included with this application, as well as the terms of the Company's invoices, bills of lading and other shipping documents, are understood and accepted.

**Print Company Name ("the Customer"):** Powin, LLC

**By Authorized Signature:** *Kate Stock*
DocuSigned by: *Kate Stock*
C88A77D653A441F...
**Date:** 6/27/2021

**Print Name:** Kate Stock     **Print Title:** CFO

© 2019 Expeditors International of Washington, Inc.     GCI: G3749611

**DocuSign**

## Certificate Of Completion

Envelope Id: BD8DBC934E4B4CE8A2240CA9103E4A9E                                    Status: Completed
Subject: Expeditors Credit Application - Powin
Company Name: Powin LLC
GCI: G3749611
Branch: PDX
Source Envelope:
Document Pages: 4                          Signatures: 1                          Envelope Originator:
Certificate Pages: 2                       Initials: 0                            Amy Miller
AutoNav: Enabled                                                                  1015 3rd Ave FL 12
EnvelopeId Stamping: Enabled                                                      Seattle, WA  98104
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                                 Amy.Miller@expeditors.com
                                                                                  IP Address: 207.14.29.3

## Record Tracking

Status: Original                           Holder: Amy Miller                    Location: DocuSign
        6/24/2021 12:15:44 PM                      Amy.Miller@expeditors.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Kate Stock<br>kates@powin.com<br>CFO<br>Security Level: Email, Account Authentication<br>(None) | *DocuSigned by:*<br>kate Stock<br>C88A77D653A441F...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 97.120.16.45 | Sent: 6/25/2021 2:51:07 PM<br>Viewed: 6/25/2021 3:00:33 PM<br>Signed: 6/27/2021 7:00:38 PM |
| Electronic Record and Signature Disclosure:<br>   Not Offered via DocuSign | | |
| Andrew Longhorn<br>andrew.longhorn@expeditors.com<br>Security Level: Email, Account Authentication<br>(None) | **Completed**<br><br>Using IP Address: 174.47.87.4 | Sent: 6/27/2021 7:00:40 PM<br>Viewed: 6/30/2021 10:32:06 AM<br>Signed: 7/7/2021 10:37:09 AM |
| Electronic Record and Signature Disclosure:<br>   Not Offered via DocuSign | | |
| CHQ Credit<br>Credit.CHQ@expeditors.com<br>Security Level: Email, Account Authentication<br>(None) | **Completed**<br><br>Using IP Address: 174.47.87.4 | Sent: 7/7/2021 10:37:11 AM<br>Viewed: 7/7/2021 2:34:22 PM<br>Signed: 7/7/2021 2:41:17 PM |
| Electronic Record and Signature Disclosure:<br>   Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|
| Brian Mann<br>brian.mann@expeditors.com<br>Security Level: Email, Account Authentication<br>(None) | **VIEWED**<br><br>Using IP Address: 174.47.87.4 | Sent: 6/24/2021 12:17:31 PM<br>Viewed: 6/24/2021 1:28:25 PM<br>Completed: 6/25/2021 2:51:07 PM |
| Electronic Record and Signature Disclosure:<br>   Not Offered via DocuSign | | |

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Brian Mann<br>brian.mann@expeditors.com<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | COPIED | Sent: 7/7/2021 2:41:19 PM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 6/24/2021 12:17:31 PM |
| Certified Delivered | Security Checked | 7/7/2021 2:34:22 PM |
| Signing Complete | Security Checked | 7/7/2021 2:41:17 PM |
| Completed | Security Checked | 7/7/2021 2:41:19 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

# EXHIBIT

# B

# TERMS AND CONDITIONS OF SERVICE

## (Please Read Carefully)

By requesting or accepting goods or services from Expeditors, the Customer agrees to the following terms and conditions of service ("Terms and Conditions").

## 1. Definitions and Rules of Construction.

"Expeditors" means **Expeditors International of Washington, Inc**., and its subsidiaries and affiliates.

"Customer" means any Person for whom, for whose benefit, or at whose request, Expeditors directly or indirectly renders services, including all of the Person's agents, contractors, and/or other representatives, including shippers, importers, exporters, notify parties, carriers, secured parties, warehousemen, buyers and/or sellers, shipper's agents, insurers and underwriters, break-bulk agents, consignees, holders and assignees of Transport Documents, Storage Documents or other commercial documents, and other similar parties. Customer shall give copies of these Terms and Conditions to all such Persons.

"Governmental Unit" means any applicable nation, state, province, district, county, municipality, public corporation, or any court, tribunal, department, subdivision, agency or instrumentality of any of the foregoing.

"Laws" means each present and future law, statute, code, rule, regulation, ordinance, rule of law, principle of law, order, decree, judgment, guidance, or the equivalent enacted, ratified, adopted, promulgated, or issued by an applicable Governmental Unit, and all international conventions ratified by the United States

1

of America or otherwise mandatorily applicable under the laws of the United States of America.

Terms such as "liability", "obligation", and "responsibility" include every duty to pay money, deliver value, provide services, perform an act, or refrain from performing an act.

"Person" includes an individual, trust, estate, partnership, association, business or nonprofit organization, Governmental Unit, or other legal entity.

"Storage Document" means a warehouse receipt, storage agreement, or other document evidencing the receipt of goods for storage, distribution or other handling.

The term "third party" includes each of the following, by whomever chosen or compensated: carrier, truckman, cartman, lighterman, forwarder, ocean transportation intermediary, ocean freight forwarder, non-vessel operating carrier, customs broker, agent, warehouseman, and each other Person to whom goods are entrusted for transportation, carriage, cartage, drayage, handling, delivery, storage, distribution, clearance, entry, or other service or activity.

"Transport Document" means a bill of lading, waybill, forwarder's cargo receipt, contract of carriage, or other document issued by Expeditors evidencing the receipt of goods for carriage.

Terms such as "includes" and "including" are not limiting. All references to documents include documents in paper or electronic form. The captions are for convenience only and are not part of these Terms and Conditions. These Terms and Conditions shall be construed without regard to any presumption or rule requiring

2

that they be construed against the Person causing all or part of them to be drafted. If these Terms and Conditions conflict with the terms of a Transport Document or Storage Document issued by Expeditors, the Transport Document or Storage Document controls. If any part of these Terms and Conditions is held invalid or unenforceable in a jurisdiction by a final, non-appealable judgment, the judgment does not affect the validity or enforceability of any other part of these Terms and Conditions in that jurisdiction or of any part of these Terms and Conditions in another jurisdiction.

**2. Expeditors' Role**.

Expeditors acts as the direct agent of Customer in all cases, except to the extent Expeditors acts as a carrier.

**3. Choosing Routes or Agents**.

Unless Expeditors otherwise agrees, Expeditors has complete freedom in choosing the means, routes, and procedures to be followed in handling, transporting, loading, unloading, storing, clearing, entering, delivering, distributing, or otherwise dealing with the goods, and in choosing the third parties to perform these services. All such third parties shall be considered as the agents of Customer. Advice by Expeditors to Customer that a particular Person has been selected to render services shall not be construed to mean that such Person will render such services.

**4. Quotations Not Binding**.

Quotations by Expeditors are for informational purposes only and are subject to change without notice. No quotation binds Expeditors unless Expeditors agrees to

3

handle or transport the goods at specific rates and payment terms.

**5. Customer's Duties**.

(a) Customer must do the following: (1) provide and disclose all documents and information required to handle, transport, load, unload, store, clear, enter, deliver, distribute, and otherwise deal with goods (including commercial invoices in proper form and number, other documents necessary or useful in the preparation of the customs entry, and such further information to enable Expeditors to perform services, including the dutiable value, weights, measures, number of pieces, packages, cartons or containers, condition of the goods, classification, country of origin, genuineness of the goods and any mark or symbol associated with them, Customer's right to export, import and/or distribute the goods, and the admissibility of the goods, pursuant to Law, all in the languages of and as may be required by the Laws of the country of origin or of destination); (2) immediately advise Expeditors of any errors, discrepancies, incorrect statements, or omissions in any document or other information; (3) review all documents, declarations, security filings, and other submissions prepared or filed with any Governmental Unit or any other Person; and (4) maintain all records required under §§ 508 and 509 of the Tariff Act (19 U.S.C. §§ 1508 and 1509), as amended,  or other applicable Law. Unless otherwise agreed, Expeditors shall only keep such records that applicable Law requires Expeditors itself to maintain, but shall not act as a "record-keeper" or "third-party record-keeper" for Customer. Expeditors has no liability for any action taken or fines or penalties assessed by any Governmental Unit because Customer fails to comply with any Law.

(b) Expeditors has no liability for increased duty, penalty, fine or expense,

4

unless caused by the negligence or other fault of Expeditors, in which case its liability is governed by the provisions of paragraphs 7 and 8 below.

(c) Customer represents, warrants and covenants the accuracy, sufficiency, and completeness of all documents and information furnished to Expeditors by or for Customer. Expeditors has no duty to inquire into the accuracy, sufficiency, or completeness of any documents or information and in no instance shall be charged with information that Customer fails to give in writing. Expeditors may rely on all documents and information furnished to Expeditors. If Customer fails to perform any obligation, Expeditors may use its judgment in connection with the goods.

(d) Customer represents, warrants and covenants that it is and will remain in compliance with all applicable Laws, including anti-corruption Laws such as the U.S. Foreign Corrupt Practices Act ("FCPA") and the U.K. Bribery Act ("UKBA"); the U.S. Export Administration Regulations ("EAR") administered by the U.S. Commerce Department's Bureau of Industry and Security ("BIS"); the International Traffic in Arms Regulations ("ITAR") administered by the U.S. State Department's Directorate of Defense Trade Controls ("DDTC"); the U.S. Anti-Boycott regulations, and the various U.S. economic sanctions programs administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), and that the information the Customer provides to Expeditors in connection with Customer's compliance with all such applicable Laws is true and complete. Customer shall also comply with all applicable Laws of any country or other jurisdiction to, from, through, over or in which any goods may be carried, including all applicable Laws relating to the marking, packing, carriage, storage, clearance or delivery of the goods. Customer represents, warrants and covenants that the export jurisdiction and

5

classification of all goods is correct and that it shall immediately notify Expeditors in writing of any changes to such information. Customer further represents, warrants and covenants that all goods are properly marked, addressed, and packaged to withstand ocean transport, air transport, and ground transport. Expeditors is not liable to Customer for loss, damage, expense or delay due to the Customer's failure to comply with these Terms and Conditions. Customer shall indemnify and hold Expeditors harmless against any and all claims, losses, or damages arising from the conduct of Customer or any of its officers, directors, employees, agents, owners or other Persons working for or with Customer under these Terms and Conditions that constitutes a violation of the Customer's obligations, representations, warranties and covenants contained herein.

(e) Unless otherwise agreed, Customer shall pay all duties and other Customs charges by automated clearing house.

(f) Unless otherwise agreed, Expeditors has no obligation to take any pre- or post-Customs release action, including obtaining binding rulings, advising of liquidations, filing of petitions and/or protests, etc.

(g) Where Expeditors prepares and/or issues a Transport Document or Storage Document, Expeditors has no obligation to specify thereon the number of pieces, packages and/or cartons, etc., or the condition of the goods.

**6. Insurance**.

Unless Expeditors otherwise agrees, Expeditors has no obligation to procure insurance. If Expeditors agrees to procure insurance, Expeditors has the right to select the insurance companies and underwriters. The insured shall have recourse

against the insurer only and not against Expeditors. Customer is responsible for all insurance premiums and for Expeditors' charges to arrange for insurance.

**7. Limitation of Liability for Loss, Damage, Expense or Delay**.

(a) Expeditors has no obligations other than those set forth in these Terms and Conditions or in any Transport Document or Storage Document issued by Expeditors. Except as specifically set forth in these Terms and Conditions, Expeditors makes no express or implied warranties in connection with its services.

(b) In the absence of proven negligence or other fault by Expeditors while the goods are in the physical custody of Expeditors, Expeditors has no liability whatsoever for any loss, damage, expense or delay.

(c) Subject to the further limitations of liability in subparagraphs (d) and (e), Expeditors' liability for any loss, damage, expense or delay resulting from the proven negligence or other fault of Expeditors is limited as follows: (1) if the claim arises from Expeditors' Customs brokerage services, the lesser of fifty dollars (US) ($50) per entry or the amount of brokerage fees paid to Expeditors for the entry; (2) if the claim relates to transportation services  covered by a Transport Document or storage, distribution or handling services covered by a Storage Document issued by Expeditors, the monetary limits on Expeditors' liability provided for in the Transport Document or Storage Document; or (3) if clauses (1) and (2) do not apply, the lesser of fifty dollars (US) ($50) per shipment or the commercial invoice value of the shipment. However, the applicable amount of any partial loss, damage, expense or delay shall be adjusted pro rata.

(d) Customer acknowledges that Expeditors and third parties to whom goods

are entrusted limit their liability for loss, damage, expense, or delay. Customer may obtain an increase in the liability of Expeditors above the limits set forth in subparagraph (c) if Expeditors agrees to the request before it renders any services and the agreement sets forth the limit of Expeditors' liability and the additional compensation received or paid for the added liability. Otherwise, any valuation that Customer places on the goods shall be considered for export or customs purposes only.

(e) AS A FURTHER LIMITATION ON EXPEDITORS' LIABILITY, CUSTOMER AGREES THAT THE MAXIMUM AGGREGATE OF EXPEDITORS' LIABILITY TO CUSTOMER FOR ANY CHARGES, CLAIMS, DAMAGES, LIABILITIES, JUDGMENTS, COSTS, EXPENSES, PAYMENTS OR LOSSES OF ANY KIND DURING ANY CALENDAR YEAR THAT ARE NOT ALREADY LIMITED BY OTHER PROVISIONS OF THIS PARAGRAPH 7, WHETHER OR NOT THE SAME ARISE OUT OF OR RELATE TO SERVICES PERFORMED BY EXPEDITORS, SHALL BE NO MORE THAN THE LESSER OF THE FOLLOWING: (i) TEN THOUSAND DOLLARS (US) ($10,000); (ii) ACTUAL, DIRECT DAMAGES; OR (iii) THE AGGREGATE SERVICE CHARGES PAID BY CUSTOMER TO EXPEDITORS DURING THE SAME PERIOD.

(f) AS A FURTHER LIMITATION ON EXPEDITORS' LIABILITY, CUSTOMER AGREES THAT EXPEDITORS SHALL IN NO EVENT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, STATUTORY OR SPECIAL DAMAGES, INCLUDING LOST PROFITS, INCOME OR OPPORTUNITY, EVEN IF EXPEDITORS IS ON

8

NOTICE OF THE POSSIBILITY OF ANY SUCH DAMAGES OR FOR THE
ACTS OR OMISSIONS OF ANY OTHER PERSON AND HOWEVER ARISING,
INCLUDING FOR BREACH OF CONTRACT, TORT, NEGLIGENCE,
WILLFUL OR INTENTIONAL ACTS OR OMISSIONS.

(g) THE LIMITATIONS AND EXCLUSIONS IN THIS PARAGRAPH 7
APPLY EVEN IF THEY CAUSE ANY REMEDY OTHERWISE AVAILABLE
TO FAIL OF ITS ESSENTIAL PURPOSE AND WITHOUT REGARD TO
EXPEDITORS' PERFORMANCE OF FAILURE OR DELAY OF
PERFORMANCE.

(h) Customer hereby waives all rights and remedies under the Carmack
Amendment.

(i) Goods may be entrusted to third parties subject to all conditions as to
limitations of liability for loss, damage, expense or delay and to all rules, regulations,
requirements and conditions appearing in Transport Documents, Storage
Documents, receipts, tariffs, or other documents issued by such Persons. Expeditors
has no additional liability for any loss, damage, expense, or delay caused by the acts
or omissions of third parties.

**8. Limitation of Actions**.

(a) With respect to any act or omission by Expeditors, Customer must present
to Expeditors at Expeditors office (1) a preliminary notice of claim within fourteen
(14) days after the loss or incident giving rise to the claim and (2) a formal written
sworn proof of claim within one hundred eighty (180) days from the date of loss or
incident giving rise to the claim. Failure to satisfy these requirements is a complete

9

defense to any suit or action by Customer, to the extent applicable Law does not mandatorily provide otherwise.

(b) As an additional requirement, any suit to recover on a claim against Expeditors must be commenced within one (1) year after the date of delivery or release of the goods, the date when the goods should have been delivered or released, or the date when any other loss, damage, expense, or delay first arose.

## 9. Payment and Credit Terms.

Expeditors' standard payment terms require receipt of cash before performance of services. Expeditors may in its sole discretion extend credit to Customer. The amount and terms of credit are subject to Expeditors' periodic review. Expeditors may in its sole discretion increase, decrease, suspend or revoke credit at any time for any reason and without advance notice. Except to the extent Expeditors otherwise agrees, Expeditors has no obligation to make or incur any expense, guarantee or advance for any purpose.

## 10. Indemnification.

Customer shall indemnify Expeditors and hold Expeditors harmless from and against all charges, claims, damages, liabilities, judgments, costs, expenses, payments or losses of any kind (including for purchase price, freight, storage, demurrage, detention, duties, taxes, fines, penalties, incidental, indirect, consequential or exemplary damages, and Expeditors' litigation expenses and reasonable expenses, including attorneys' fees) arising from or related to any one or more of the following: (a) any breach of any representation, warranty, covenant, agreement, undertaking, consent, or waiver by Customer; (b) any failure of

10

Customer to pay or perform when due its obligations to Expeditors or to any other Person (including any Governmental Unit, carrier, vendor, holder or assignee of any Transport Document, Storage Document, or other commercial document); (c) Customer's violation of any Law or failure to disclose, correct, or complete any entry, export, security or other data or documents; (d) any other claim by any such other Person, in each case, even if not due to any negligence or other fault of Customer. If any action, claim, suit or proceeding is brought against Expeditors, Expeditors shall give notice in writing to the Customer by mail to the address on file with Expeditors. At Customer's expense Expeditors may employ attorneys and other professionals of its own choice in connection with any indemnified matter. Customer's indemnity obligation in this paragraph shall not apply to the extent a court of competent jurisdiction enters a final, non-appealable judgment, specifically finding that the charge, claim, damage, liability, judgment, cost, expense, payment or loss was directly and proximately caused by Expeditors' gross negligence or willful misconduct.

**11. Sale of Perishable Goods**.

Perishable goods or live animals for which Customer gives no instructions for disposition may be sold or otherwise disposed of without any notice to the Customer, owner, or consignee, and payment or tender of the net proceeds of any sale after deduction of charges is equivalent to delivery of the goods. If for any reason a shipment is refused or remains unclaimed at any place or is returned, the Customer must still pay Expeditors for all charges and expenses in connection with the goods. Nothing obligates Expeditors to forward, enter or clear the goods or arrange for their disposal.

11

## 12. General Lien on any Property.

Expeditors has a general lien on any and all property (and documents relating thereto) now or hereafter in Expeditors' possession, custody or control or en route as security for all existing and future indebtedness and obligations of Customer to Expeditors. This lien is in addition to any other rights and remedies Expeditors may have under other agreements or applicable Law, and shall survive delivery or release of any property. Expeditors has the right to withhold delivery or release of any property if Customer is in breach of any indebtedness or obligation to Expeditors, even if not related to such property. If any such indebtedness or obligation is unsatisfied, Expeditors may, in addition to all other rights and remedies under other agreements and/or applicable Law, exercise all of the rights and remedies of a secured party under the Uniform Commercial Code. Any notice required to be given of a sale or other disposition made at least ten (10) days before a proposed action constitutes fair and reasonable notice. Any surplus from the sale or other disposition, after deduction for all sums owed to Expeditors, shall be transmitted to Customer, and Customer shall be liable for any deficiency.

## 13. Compensation of Expeditors.

The compensation of Expeditors for its services and advances shall be included with and is in addition to the rates and charges of all third parties to handle, transport, load, unload, store, clear, enter, deliver, distribute or otherwise deal with the goods, and shall be exclusive of any brokerage, commissions, dividends or other revenue received by Expeditors from insurers or other Persons. Customer shall pay all costs, expenses and fees (including reasonable attorneys' fees) incurred by

12

Expeditors in connection with (a) the enforcement of payment or performance of any indebtedness or obligation of Customer (including by any action or participation in, or in connection with, a bankruptcy or insolvency proceeding, wherever pending) or (b) any dispute between Expeditors and Customer or any other Person. All amounts owed to Expeditors must be paid in the lawful currency specified in Expeditors' invoices in immediately available funds, without abatement, counterclaim, set-off, recoupment, and free and clear of, and without any deduction or withholding for, any taxes, duties, confiscation, detention, or other matters. If any amount is not paid when due, it shall accrue interest until paid at one and one-half percent (1.5%) per month (19.72% per annum).

## 14. Intellectual Property.

Expeditors' intellectual property provided, demonstrated or used in connection with any services, including databases, software, web pages, programs, processes and procedures, reports, manuals, presentations, patents, trademarks, copyrights, trade secrets, service marks, know-how and any other similar rights or intangible assets recognized under applicable Law (all of the foregoing, including source codes and similar information, "Intellectual Property"), was developed and maintained at great expense, is of great value to Expeditors, is confidential and proprietary, and shall remain the sole and exclusive property of Expeditors at all times. Without Expeditors' prior written consent, Customer shall neither directly nor indirectly attempt to or actually disclose, use, re-create, duplicate, decode, alter, change, disassemble, decompile, or reverse engineer any Intellectual Property. Customer acknowledges and agrees that a violation of any of the foregoing shall cause irreparable harm to Expeditors.

13

**15. Data Privacy.**

Customer represents, warrants and covenants that it complies with all applicable privacy and data protection Laws with respect to information ("Customer Data") about contacts or clients of Customer or about other Persons that Customer provides to Expeditors to enable Expeditors to perform services. With respect to Customer Data, Customer acts as a "data controller" or similar term under applicable Law. Customer further represents, warrants and covenants that it has obtained the proper consent from all data subjects to the disclosure and transfer of Customer Data to Expeditors. In providing services to Customer, Expeditors may be required to share Customer Data with Governmental Units and may process Customer Data and thus act as a "data processor" or similar term under applicable Law with respect to such data and will process Customer Data in accordance with lawful instructions from Customer. Expeditors may use Customer Data as part of its Customer account opening, general administration process (e.g., in order to carry out compliance, financial checks, invoicing, or debt recovery), and otherwise in performing services. The information may be transferred to or accessible from Expeditors' offices around the world.

**16. Force Majeure.**

Expeditors is not liable for loss, damage, expense, delay, or nonperformance resulting in whole or in part from circumstances beyond the control of Expeditors, including: (i) acts of God, including flood, earthquake, storm, hurricane, power failure or other natural disaster; (ii) war, hijacking, robbery, theft or terrorist activities; (iii) incidents or deteriorations to means of transportation; (iv) embargoes; (v) civil commotions or riots; (vi) defects, nature or inherent vice of the goods; (vii)

14

acts, breaches of contract, or omissions by Customer or any other Person who may have an interest in the goods; (viii) acts by any Governmental Unit, including denial or cancellation of any import, export or other necessary license; or (ix) strikes, lockouts, slowdowns or other labor conflicts.

**17. Governing Law; Consent to Jurisdiction and Venue**.

These Terms and Conditions shall be construed according to the Laws of the State of Washington, without regard to conflict of law principles. Customer irrevocably consents to non-exclusive jurisdiction and venue for all proceedings related to disputes involving Customer and Expeditors in the federal or state courts sitting in King County, Washington. Customer irrevocably consents to the commencement and transfer of all proceedings to such courts. Customer also irrevocably consents to the commencement and to the transfer of venue in any action to any other venue in which Expeditors is party to an action brought by itself or another Person. Customer waives all defenses based on inconvenience of forum in all actions commenced in or transferred to the venues agreed to above.

**18. Miscellaneous.**

Notwithstanding any course of dealing, course of conduct, course of performance, or usage of trade, (a) whenever reference is made to the Expeditors' agreement, acceptance, approval or consent, even if not specifically so stated such agreement, acceptance, approval or consent is not effective unless in writing and signed by a duly authorized officer of Expeditors, (b) neither failure nor delay by Expeditors to exercise any right, remedy, power, or privilege operates as a waiver, (c) no single or partial exercise of any right, remedy, power, or privilege by

Expeditors precludes any other or further exercise thereof or the exercise of that or any other right, remedy, power, or privilege, (d) no amendment, modification, rescission, waiver or release of all or part of these Terms and Conditions, any Transport Document, or any Storage Document is effective without the Expeditors' specific prior written approval. Expeditors may from time to time change these Terms and Conditions. The applicable Terms and Conditions can be found on Expeditors' website, **www.expeditors.com**, are effective fifteen (15) days after such publication, and may differ from the pre-printed terms. In the event of a conflict between these Terms and Conditions and the updated version on Expeditors' website in effect on the date that Expeditors commences services, the updated version controls.

For customs brokerage on shipments to the United States of America, the following notice required is to be given pursuant to 19 CFR part 111.29(b)(1): If you are the importer of record, payments to the broker will not relieve you of liability for customs charge in the event the charges are not paid by the broker. Therefore, if you pay by check, customs charges may be paid with a separate check payable to the "U.S. Customs Service" which shall be delivered to Customs by the broker.

# EXHIBIT

# C

| Invoice Date | Invoice Number | Number of Units | Description of Goods |
|---|---|---|---|
| 2/21/2025 | 5241003807 | 480 | Door strap mounting bracket |
| 2/21/2025 | 5241003807 | 480 | Door strap anchor bar weldment |
| 2/26/2025 | 5241003912 | 60 | Stand alone EV diffuser plate |
| 2/28/2025 | 5241003964 | 24 | Energy segment main cover assembly |
| 2/28/2025 | 5241003964 | 32 | Front panel assembly |
| 3/10/2025 | 5241004094 | 8 | EV diffuser plate |
| 3/10/2025 | 5241004094 | 8 | Mid gutter assembly |
| 3/10/2025 | 5241004094 | 8 | Energy segment main cover assembly |
| 3/18/2025 | 5241004230 | 32 | Front panel assembly |
| 3/18/2025 | 5241004230 | 24 | Energy segment main cover assembly |
| 3/18/2025 | 5241004238 | 24 | Energy segment main cover assembly |
| 3/18/2025 | 5241004238 | 32 | Front panel assembly |
| 3/20/2025 | 5241004275 | 32 | Front panel assembly |
| 3/20/2025 | 5241004275 | 24 | Energy segment main cover assembly |
| 3/20/2025 | 5241004276 | 24 | Energy segment main cover assembly |
| 3/20/2025 | 5241004276 | 32 | Front panel assembly |
| 3/21/2025 | 5241004296 | 24 | Energy segment main cover assembly |
| 3/21/2025 | 5241004296 | 32 | Front panel assembly |
| 3/26/2025 | 5241004404 | 4 | Energy segment main cover assembly |
| 3/26/2025 | 5241004404 | 340 | EV diffuser plate |
| 3/26/2025 | 5241004404 | 680 | Tie bracket clamp assembly |
| 3/26/2025 | 5241004407 | 1360 | ISO clamp assembly |
| 3/26/2025 | 5241004407 | 2720 | Hex head bolt 3/8-16 x 1.5" LGTHGRD5, zinc SS |

| 3/26/2025 | 5241004407 | 2720 | Flat washer 3/8 x 1" OD, zinc flake steel |
| 3/26/2025 | 5241004407 | 1360 | Hex nut 3/8-16 flange serrated SS |
| 3/26/2025 | 5241004407 | 2720 | Lock washer medium split 3/8" zinc flake SS |
| 3/26/2025 | 5241004407 | 680 | Retention strap L assembly |
| 3/30/2025 | QCPE250405 | 15 | Bracket connection assembly, lower top cap door |
| 4/18/2025 | 20250418 | 38 | Fuse 125A 1.5kVDC |
| 4/18/2025 | 20250418 | 122 | Fuse 225A 1kVDC SQB-DC101 |
| 4/18/2025 | 20250418 | 34 | Fuse 350A 1kVDC SQB-DC101 |
| 4/18/2025 | 20250418 | 148 | Fuse 160A 1.5k VDC SQB1 |
| 4/28/2025 | 5251000343 | 32 | Front panel assembly |
| 4/28/2025 | 5251000344 | 24 | Energy segment main cover assembly |
| 4/28/2025 | 5251000344 | 32 | Front panel assembly |
| 4/28/2025 | 5251000345 | 24 | Energy segment main cover assembly |
| 4/28/2025 | 5251000345 | 32 | Front panel assembly |
| 4/28/2025 | 5251000346 | 24 | Energy segment main cover assembly |
| 4/28/2025 | 5251000346 | 32 | Front panel assembly |
| 4/28/2025 | 5251000347 | 24 | Energy segment main cover assembly |
| 4/28/2025 | 5251000347 | 32 | Front panel assembly |
| 4/28/2025 | 5251000348 | 24 | Energy segment main cover assembly |
| 4/28/2025 | 5251000348 | 32 | Front panel assembly |
| 4/28/2025 | 5251000349 | 24 | Energy segment main cover assembly |
| 4/28/2025 | 5251000349 | 32 | Front panel assembly |
| 4/30/2025 | 5251000408 | 32 | Front panel assembly |
| 4/30/2025 | 5251000408 | 24 | Energy segment main cover assembly |

| 4/30/2025 | 5251000409 | 24 | Energy segment main cover assembly |
|---|---|---|---|
| 4/30/2025 | 5251000409 | 32 | Front panel assembly |
| 4/30/2025 | 5251000410 | 32 | Front panel assembly |
| 4/30/2025 | 5251000410 | 24 | Energy segment main cover assembly |
| 4/30/2025 | 5251000411 | 2912 | Flat washer 3/8 x 1" OD, zinc flake steel |
| 4/30/2025 | 5251000411 | 1456 | Hex nut 3/8-16 flange serrated SS |
| 4/30/2025 | 5251000411 | 26 | End cover |
| 4/30/2025 | 5251000411 | 2912 | Hex head bolt 3/8-16 x 1.5" LGTHGRD5, zinc SS |
| 4/30/2025 | 5251000411 | 1456 | ISO clamp assembly |
| 4/30/2025 | 5251000411 | 2912 | Lock washer medium split 3/8" zinc flake SS |
| 4/30/2025 | LOG-2025-0602 | 1 | TC-1 box UL |
| 4/30/2025 | LOG-2025-0602 | 1 | Fire panel |
| 4/30/2025 | LOG-2025-0602 | 2 | 8 pin green block |
| 4/30/2025 | LOG-2025-0602 | 1 | ALN-EN |
| 4/30/2025 | LOG-2025-0602 | 1 | 220VAC transformer |
| 4/30/2025 | LOG-2025-0602 | 6 | Analogue photoelectric smoke sensor |
| 4/30/2025 | LOG-2025-0602 | 1 | Cable |
| 4/30/2025 | LOG-2025-0602 | 1 | Power supply |

| 4/30/2025 | LOG-2025-0602 | 1 | Electronic conventional sound beacon |
|-----------|---------------|---|--------------------------------------|
| 4/30/2025 | LOG-2025-0602 | 1 | HE series selectable Candela evacuation signal |