| | |
|---|---|
| **DENTONS US LLP** | **TOGUT, SEGAL & SEGAL LLP** |
| Lauren Macksoud (admitted) | Frank A. Oswald (admitted) |
| 101 JFK Parkway | 550 Broad Street |
| Short Hills, NJ 07078 | Suite 1508 |
| Telephone: (973) 912-7100 | Newark, NJ 07102 |
| Facsimile: (973) 912-7199 | Telephone: (212) 594-5000 |
| Email: lauren.macksoud@dentons.com | Facsimile: (212) 967-4258 |
| | Email: frankoswald@teamtogut.com |
| Tania M. Moyron (admitted *pro hac vice*) | |
| Van C. Durrer, II (admitted *pro hac vice*) | Albert Togut (admitted *pro hac vice*) |
| 601 S. Figueroa Street #2500 | Amanda C. Glaubach (admitted *pro hac vice*) |
| Los Angeles, CA 90017 | Eitan Blander (admitted *pro hac vice*) |
| Telephone: (213) 623-9300 | One Penn Plaza, Suite 3335 |
| Facsimile: (213) 623-9924 | New York, New York 10119 |
| Email: tania.moyron@dentons.com | Telephone: (212) 594-5000 |
| van.durrer@dentons.com | Facsimile: (212) 967-4258 |
| | Email: altogut@teamtogut.com |
| John D. Beck (admitted *pro hac vice*) | aglaubach@teamtogut.com |
| Sarah M. Schrag (admitted *pro hac vice*) | eblander@teamtogut.com |
| 1221 Avenue of the Americas | |
| New York, NY 10020-1089 | *Counsel for Debtors and* |
| Telephone: (212) 768-6700 | *Debtors in Possession* |
| Facsimile: (212) 768-6800 | |
| Email: john.beck@dentons.com | |
| sarah.schrag@dentons.com | |

*Counsel for Debtors and*
*Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,<br>　　　　Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION TO MOTION OF EXPEDITORS
INTERNATIONAL OF WASHINGTON, INC. FOR ENTRY OF
AN ORDER, PURSUANT TO § 362(D)(1) OF THE BANKRUPTCY
CODE MODIFYING THE AUTOMATIC STAY TO PERMIT
<u>ABANDONMENT AND LIQUIDATION OF COLLATERAL</u>**

Document      Page 2 of 6

Powin, LLC and the above-referenced affiliated debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (this "Objection") to the *Motion of Expeditors International of Washington, Inc. for Entry of an Order, Pursuant to § 362(d)(1) of the Bankruptcy Code Modifying the Automatic Stay to Permit Abandonment and Liquidation of Collateral* (the "Motion") filed by Expeditors of Washington, Inc. ("Expeditors") on August 27, 2025 [Docket No. 797-1]. In support of this Objection, the Debtors respectfully state as follows:

## I.
## PRELIMINARY STATEMENT

1. As more fully set forth below, the Motion should be denied for at least two reasons. First, by Expeditors' own admission, the Petition Date Cargo,[1] which Expeditors claims to possess, has a declared value that exceeds its alleged claims. Second, as with other freight forwarders, the Debtors are working on a comprehensive disposition of customer inventory that will retire Expeditors' claims and mitigate potential customer claims against the estate by allowing them to retrieve inventory otherwise destined for them. Accordingly, the Debtors respectfully request that the Court (i) deny the Motion, or, (ii) alternatively, adjourn the Motion for sixty days to allow the Debtors to continue to consummate a comprehensive solution here.

## II.
## RELEVANT FACTS

2. In the Motion, Expeditors fail to include any invoices or itemized bills of lading and likewise fail to disclose the location of the Petition Date Cargo. In as much as Expeditors has the burden under pursuant to § 362(g)(1) of Title 11 of the United States Code (the "Bankruptcy

---

[1] Capitalized terms used in this Objection and not otherwise defined have the meanings ascribed to them in the Motion.

Code") to prove its claim as a necessary element of the Debtors' equity in the Petition Date Cargo, such failure is a sufficient ground to deny the Motion.

3. Moreover, by Expeditors' own admission, the declared value of the Petition Date Cargo exceeds Expeditors' alleged claims. Motion at ¶¶ 8, 11. Expeditors has not filed any formal proof of claim, nor have the Debtors or the Committee reconciled Expeditors' alleged claims.

4. On information and belief, the Petition Date Cargo is located in various international locations and in various stages of customs clearance. Notably, none of the Petition Date Cargo was the subject of the Debtors' recently concluded sale to FlexGen Power Systems, LLC ("FlexGen") where the Debtors, in fact, paid certain of Expeditors' claims which Expeditors did not dispute.

5. Due to the customs status of certain of the Petition Date Cargo, certain customers of the Debtors remain obligated to pay certain tariffs, customs duties and other charges associated with such Petition Date Cargo. Accordingly, and given that tariffs have largely increased on similar goods since the import of the Petition Date Cargo, customers are incentivized to retire such obligations and obtain their allotment of Petition Date Cargo. The Debtors are in the best position to facilitate such process. Because the Debtors did not have access to the online customs inventory system for a few weeks following the filing of these chapter 11 cases, the Debtors require additional time to reconcile customer obligations and allotment of the Petition Date Cargo.

6. As noted above, the Debtors have already taken steps to reduce Expeditors' claims, including the payment of amounts owed to Expeditors in connection with inventory purchased by FlexGen. *See Notice of Deadline to Assert Liens in Connection with Bidding Procedures and Upcoming Sale and Auction* [Docket No. 318] (identifying Expeditors' lien of $2,000 on FlexGen purchased inventory). The Debtors continue to believe that collective action across the Debtors'

3

customer base is best way to resolve claims like those of Expeditors and mitigate claims against the estates. Allowing Expeditors to exercise its alleged lien rights at this time would interfere with the Debtors' ability to create a comprehensive solution for *all* customers.

### III.    ARGUMENT

7.    The "provisions of the Bankruptcy Code are intended to help marshal and protect assets and the property of the estate throughout the administration of a bankruptcy case." *In re Residential Cap., LLC*, 480 B.R. 529, 537 (Bankr. S.D.N.Y. 2012); *see e.g.,* 11 U.S.C. § 541; *see also Matter of Rimsat, Ltd*., 98 F.3d 956, 961 (7th Cir. 1996) ("The efficacy of the bankruptcy proceeding depends on the court's ability to control and marshal the assets of the debtor wherever located"); 5 COLLIER ON BANKRUPTCY ¶ 541.01 (Alan N. Resnick & Henry J. Sommer, eds. 16th rev. ed. 2012) ("Property belonging to the estate is protected from piecemeal dismantling by creditors by the automatic stay of section 362. It is this central aggregation of property that promotes the fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors, according to the priorities set forth within the Code. It is from this central core of estate property that the debtor's creditors will be paid.").

8.    In this instance, granting Expeditors' proposed relief now would potentially harm customers and increase potential claims in these chapter 11 cases. Therefore, the Debtors request that the Motion be denied to provide the Debtors with the necessary time to focus on including negotiating with key constituents (including Expeditors) to resolve this matter globally and consensually. *See e.g., Stoller v. Baldwin-United Corp*., 41 B.R. 884 (S.D. Ohio 1984) (imposing a limited 6-month stay during a defendant's bankruptcy under the court's "inherent power to control its' docket" to permit some reorganization proceedings to complete during stay period).

## III.
## CONCLUSION

For the reasons stated above, the Debtors request that the Court (i) deny the Motion without prejudice to Expeditors later seeking to renew it, or (ii) alternatively, maintain the automatic stay for at least two months to allow the Debtors to negotiate a collective solution with Expeditors and the Debtors' other customers.

| | |
|---|---|
| Dated: September 1, 2025 | **DENTONS US LLP** |
| | |
| | */s/ Lauren Macksoud* |
| | Lauren Macksoud (admitted) |
| | 101 JFK Parkway |
| | Short Hills, NJ 07078 |
| | Telephone: (973) 912-7100 |
| | Email: lauren.macksoud@dentons.com |
| | |
| | Tania M. Moyron (admitted *pro hac vice*) |
| | Van C. Durrer, II (admitted *pro hac vice*) |
| | 601 S. Figueroa Street #2500 |
| | Los Angeles, CA 90017 |
| | Telephone: (213) 623-9300 |
| | Email: tania.moyron@dentons.com |
| | van.durrer@dentons.com |
| | |
| | John D. Beck (admitted *pro hac vice*) |
| | Sarah M. Schrag (admitted *pro hac vice*) |
| | 1221 Avenue of the Americas |
| | New York, NY 10020-1089 |
| | Telephone: (212) 768-6700 |
| | Email: john.beck@dentons.com |
| | sarah.schrag@dentons.com |
| | |
| | - and - |
| | |
| | **TOGUT, SEGAL & SEGAL LLP** |
| | |
| | Frank A. Oswald (admitted) |
| | 550 Broad Street |
| | Suite 1508 |
| | Newark, NJ 07102 |
| | Telephone: (212) 594-5000 |
| | Email: frankoswald@teamtogut.com |
| | |
| | Albert Togut (admitted *pro hac vice*) |
| | Amanda C. Glaubach (admitted *pro hac vice*) |
| | Eitan Blander (admitted *pro hac vice*) |
| | One Penn Plaza, Suite 3335 |
| | New York, New York 10119 |
| | Telephone: (212) 594-5000 |
| | Email: altogut@teamtogut.com |
| | aglaubach@teamtogut.com |
| | eblander@teamtogut.com |
| | |
| | *Counsel for the Debtors and Debtors in Possession* |