| |
|---|
| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
| Caption in Compliance with D.N.J. LBR 9004-1(a) |
| BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP <br> Kevin M. Capuzzi (NJ No. 173442015) <br> John C. Gentile, Esq. <br> Noelle B. Torrice (NJ No. 79132013) <br> Continental Plaza II <br> 411 Hackensack Ave., 3rd Floor <br> Hackensack, NJ 07601-6323 <br> Telephone: (302) 442-7010 <br> Facsimile: (302) 442-7012 <br> kcapuzzi@beneschlaw.com <br> jgentile@beneschlaw.com <br> ntorrice@beneschlaw.com <br> <br> *Counsel to Mainfreight Distribution Pty Ltd, et al.* |
| In re: <br> <br> Powin, LLC, *et al.*,[1] <br> <br> Debtors. |

Chapter 11

Case No. 25-16137 (MBK)

Judge: Michael B. Kaplan

(Jointly Administered)

**MAINFREIGHT'S MOTION TO COMPEL PAYMENT
OF AGREED-UPON STORAGE, TRANSPORTATION,
AND ASSOCIATED FEES BY BHER RAVENSWOOD SOLAR I, LLC
AND FOR SANCTIONS AGAINST BHER RAVENSWOOD SOLAR I, LLC**

Mainfreight Distribution Pty Ltd (together with its parent, subsidiary, or any other affiliate entities, collectively, "Mainfreight"), by and through its undersigned counsel, submits this motion (the "Motion") for entry of an order compelling BHER Ravenswood Solar I, LLC ("BHER") to

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583], (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [5241], (vii) Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

pay the storage and associated transportation and logistics fees incurred by Mainfreight to store and relocate the BHER Goods (as defined herein), as agreed upon by Mainfreight and BHER, and for sanctions against BHER for failing to do so, in the form of the costs and attorney's fees incurred in the preparation and submission of the Motion. In support of the Motion, Mainfreight respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this judicial district is proper under 28 U.S.C. §1408 and 1409.

2. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

## BACKGROUND[2]

3. Since at least May 2021, Mainfreight and Powin LLC ("Powin") have had an ongoing business relationship. In March 2023, Powin (with the now-defunct Powin Energy Holdings LLC, the "Debtors") opened a new business account with Mainfreight.

4. The terms and conditions of the agreements between Mainfreight and the Debtors provide that Mainfreight shall hold a lien on any goods – whether property of the Debtors or a downstream customer, such as BHER – that comes into and is currently in Mainfreight's possession or control (collectively, the "MF Collateral" and specifically as to the property to which BHER claims title in Mainfreight's possession, the "BHER Goods") as well as any and all of the proceeds of the MF Collateral and BHER Goods. The Mainfreight liens ("Mainfreight Liens") on the MF Collateral and/or BHER Goods are also evidenced by various House Bills of Lading and

---

[2] Mainfreight hereby incorporates by reference *Mainfreight Inc.'s Motion to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Does Not Apply to Certain Goods in Its Possession* [D.I. 180] (the "Non-Stay Motion"), *Mainfreight Inc.'s Omnibus Reply in Support Motion to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(a) Does Not Apply to Certain Goods in Its Possession* [D.I. 341] (the "Non-Stay Reply"), and *Mainfreight's Limited Cure Objection and Reservation of Rights to the Notice of Potentially Assumed Executory Contracts and Unexpired Leases* [D.I. 490] (the "Limited Objection"), including all exhibits thereto.

the June 4, 2025 Notice of Lien for Unpaid Services attached as Exhibit C to *Mainfreight's Limited Objection and Reservation of Rights to the Debtors' Sale Motion* [D.I. 342]. Mainfreight believes its claim as of the date hereof is at least $13,114,707.46.

5. Mainfreight holds a perfected lien, secured by the MF Collateral and BHER Goods and the proceeds of the MF Collateral and BHER Goods, that is senior to any other lien purporting to be secured by the MF Collateral and/or the BHER Goods.[3]

6. Under the Terms and Conditions, Mainfreight shall have the right to exercise its liens against the MF Collateral and BHER Goods and apply the proceeds to the total owed to Mainfreight.

7. At present, Mainfreight is in possession and control of the MF Collateral at various storage facilities in the United States and in foreign countries. The BHER Goods specifically are located at a laydown yard in Millwood, West Virginia. Mainfreight also incurred costs in moving the BHER Goods to their current location (to significantly reduce the costs borne by BHER while at the Port of Norfolk, for the sole benefit of BHER), and Mainfreight has incurred, and continues to incur, storage charges for its retention of the BHER Goods (collectively the "BHER Charges").

8. On July 15, 2025, this Court was scheduled to hold a hearing (the "July 15 Hearing") on the Non-Stay Motion and the oppositions thereto filed by various parties, including BHER. At the July 15 Hearing, Mainfreight, BHER, and the Debtors requested an adjournment of the hearing on the Non-Stay Motion as part of an agreement (the "Adjournment Agreement") between Mainfreight, BHER, and the Debtors, the terms of which were read into the record during the July 15 Hearing. July 15 Hearing Tr. at 27-34.

---

[3] The Mainfreight Liens also apply to the insurance claim related to the two power units that were damaged in transit from Norfolk, Virginia to Millwood, West Virginia and the proceeds thereof. *See* Non-Stay Reply fn. 3.

9. Under the terms of the Adjournment Agreement, *inter alia*, BHER agreed to pay the BHER Charges incurred. *Id.* at 29-31. BHER's payment of the BHER Charges was due no later than August 15, 2025, when the sale of the Debtors' assets was anticipated to close. *Id.* Immediately after the terms of the Adjournment Agreement were read into the record, counsel for BHER rose to "confirm the nature of these terms, the main items, the storage cost fees" as counsel for Mainfreight had entered them. *Id.* at 34.

10. Once the discussion and reading into the record of the terms of the Adjournment Agreement ended, counsel for Mainfreight requested that this Court so order the Adjournment Agreement. *Id.* at 51. No party objected to the Adjournment Agreement at that time, either in whole or in part. *Id.* Seeing no objection, the Court so ordered the Adjournment Agreement, giving the Adjournment Agreement the force of a court order (the "Adjournment Order"). *Id.*

11. On July 24, 2025, counsel for Mainfreight sent via email detailed information on the BHER Charges to counsel for BHER, including a breakdown of individual charges in the body of the email and attached itemized invoices for each of the charges that Mainfreight had incurred (the "July 24 Email"). A true and correct copy of the July 24 Email, as well as the invoices attached thereto, is attached hereto as **Exhibit A**.[4]

12. In total, the BHER Charges, up to August 6, 2025, owed by BHER under the Adjournment Order equal not less than $785,307.87.

13. Despite the Adjournment Order, BHER has not paid the BHER Charges to Mainfreight. Counsel for Mainfreight has made multiple attempts to confer with counsel for BHER regarding the BHER Charges. As of the date of this Motion, counsel for Mainfreight has

---

[4] Follow-up emails from counsel for Mainfreight, demonstrating Mainfreight's good-faith attempts to confer with counsel for BHER before filing this Motion, are attached hereto as **Exhibit B**.

4

received no reply from BHER's counsel, and no information from BHER, either directly or through counsel, regarding the status of payment of the BHER Charges.

## RELIEF REQUESTED

14. Mainfreight requests entry of an order compelling BHER to pay the BHER Charges in full, in compliance with the Adjournment Order as ordered by this Court. Mainfreight further requests that the Court impose sanctions on BHER for the costs and attorneys' fees that Mainfreight has incurred in preparing and submitting this Motion.

## ARGUMENT

**I. BHER is in contempt of the Adjournment Order, and the Court should compel BHER to carry out its duties under the Adjournment Order.**

15. A movant seeking a contempt order must prove, by clear and convincing evidence, that: (i) a valid court order existed, (ii) the party against whom the contempt order is sought had knowledge of the order, and (iii) the party against whom the contempt order is sought disobeyed the order. *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009). Bankruptcy courts have wide latitude to issue orders "necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). This includes the "necessary authority to manage the arguments and conduct of parties to ensure judicial efficiency and to do justice." *The Copley Press, Inc. v. Peregrine Sys., Inc. (In re Peregrine Sys., Inc.)*, 311 B.R. 679, 690 (Bankr. D. Del. 2004) (quoting *In re Johnson*, 236 B.R. 510, 521 (D.D.C. 1999)). An agreement negotiated between parties to a case has the full force and effect of a court order when the court so orders it. *See Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 96 (3d Cir. 1981). A "party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) (internal quotation omitted).

5

16. Here, BHER's failure to pay the BHER Charges meets every element necessary for contempt, even by the "clear and convincing evidence" standard imposed by the Third Circuit.

17. First, the Adjournment Order is a valid court order. The parties negotiated the Adjournment Order, read its terms into the record at the July 15 Hearing, and requested that the Court order it into effect, which this Court did. July 15 Hearing Tr. at 27-34, 51. The Adjournment Order provided all parties with an interest in the BHER Goods with time to seek a resolution to the questions surrounding the BHER Goods without requiring the Court's protracted involvement or using additional time at the July 15 Hearing. As such, the Adjournment Order "manage[d] the arguments and conduct of parties to ensure judicial efficiency and to do justice," *In re Peregrine Sys.*, 311 B.R. at 690, making it a valid use of the Court's power under Section 105(a). By the Court so-ordering the Adjournment Agreement, the terms of the Adjournment Agreement became part of the Adjournment Order, rendering them binding on all relevant parties, including BHER. *See Interdynamics*, 653 F.2d at 96. Therefore, the Adjournment Order is validly promulgated.

18. Second, BHER unquestionably knows that the Adjournment Order exists, either directly or by the knowledge of its counsel. Counsel for BHER was actively involved in negotiating the Adjournment Agreement, and attended the July 15 Hearing. *See generally* July 15 Hearing Tr. Immediately after counsel for Mainfreight finished reading the terms of the Adjournment Agreement into the record, counsel for BHER addressed the Court and explicitly "confirm[ed] the nature of these terms, the main items, the storage cost fees." July 15 Hearing Tr. at 34. When the Court asked counsel whether they had any objections to the Court entering the terms of the Adjournment Agreement as the Adjournment Order, counsel for BHER—and, in fact, no counsel for any party—objected. *Id.* at 51. Thereafter, in the July 24 Email, counsel for Mainfreight sent to counsel for BHER an itemized list of each charge constituting the BHER

6

Charges, supported by multiple invoices. **Ex. A**. Under *Link*, 370 U.S. at 634, because BHER's counsel knew of the Adjournment Order, BHER therefore knew of the Adjournment Order.

19. Third, BHER has not complied with its obligations under the Adjournment Order. BHER, as "point 1" of the Adjournment Order, was required to make full payment of the BHER Charges by August 15, the anticipated sale closing date. July 15 Hearing Tr. at 31. The sale has now closed. Counsel for Mainfreight provided BHER with the backup for the BHER Charges on July 24, giving BHER twenty-three days to pay the BHER Charges. **Ex. A**. However, BHER has made no payment in any amount to Mainfreight, nor contested any portion of the BHER Charges. The full amount due—not less than $785,307.87—remains outstanding. Therefore, BHER has not complied with the Adjournment Order.

20. In light of the foregoing, BHER's failure to pay the BHER Charges puts BHER in contempt of the Adjournment Order. Mainfreight respectfully requests that this Court compel BHER to immediately pay the BHER Charges, plus its fees and costs incurred.

**II.     This Court should award to Mainfreight the costs and attorneys' fees it incurred in preparing and filing this Motion as sanctions against BHER.**

21. A court may award attorney's fees to a party when the opposing party willfully disobeys a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).

22. Here, as described *supra*, BHER has willfully failed to comply with the Adjournment Order by failing to pay the BHER Charges. Mainfreight has incurred significant attorneys' fees in its counsel's communications with BHER's counsel and its preparation of this Motion, as well as the costs of submitting this Motion and attendant preparatory expenses. If counsel for Mainfreight must argue the merits of this Motion, Mainfreight will incur further fees for counsel's preparation for the hearing and attendance at the hearing itself. It is not just or equitable for Mainfreight to bear this expense as a result of BHER's willful failure to obey the

Adjournment Order. BHER, rather than Mainfreight, bearing Mainfreight's attorney's fees and costs incurred for the preparation and submission of this Motion would correct that unfairness.

23. Therefore, Mainfreight respectfully requests that this Court impose the total costs and attorneys' fees that Mainfreight has incurred, and may incur in the future, concerning the submission of this Motion as sanctions against BHER.

## Conclusion

24. Mainfreight requests that this Court grant the relief it seeks, in the form of an order:

   a. Compelling BHER to make payment to Mainfreight in an amount not less than $785,307.87 in compliance with the Adjournment Order,

   b. Awarding to Mainfreight the costs and attorney's fees Mainfreight incurred in preparing and submitting this Motion, and

   c. Granting such other and further relief as this Court deems just and proper.

Dated:  September 2, 2025
       Wilmington, Delaware

Respectfully submitted,
**BENESCH, FRIEDLANDER,**
   **COPLAN & ARONOFF LLP**

/s/ *Kevin M. Capuzzi*
Kevin M. Capuzzi (NJ No. 173442015)
John C. Gentile, Esq.
Noelle B. Torrice (NJ No. 79132013)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: kcapuzzi@beneschlaw.com
jgentile@beneschlaw.com
ntorrice@beneschlaw.com

*Counsel to Mainfreight Distribution Pty Ltd.*