**DENTONS US LLP**

Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email:  lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
         sarah.schrag@dentons.com

*Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
         aglaubach@teamtogut.com
         eblander@teamtogut.com

*Counsel for Debtors and
Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered)<br><br>**Hearing: September 25, 2025 at 11:30 a.m. E.T.** |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii)

1

### DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO § 1121(d) OF THE BANKRUPTCY CODE, EXTENDING ITS EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND TO SOLICIT ACCEPTANCES THEREOF

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Powin, LLC and the affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), hereby move (the "Motion") this Court for entry of an order, substantially in the form attached as **Exhibit A** (the "Proposed Order"), (a) extending the periods during which the Debtors have the exclusive right to (i) file a chapter 11 plan (the "Exclusive Filing Period"), and (ii) solicit acceptances thereof (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods"), in each case, by 90 days, from October 7, 2025 and December 6, 2025, respectively, through and including January 5, 2026 and March 6, 2026, respectively, without prejudice to the Debtors' rights to request further extensions of such periods in accordance with § 1121(d);[2] and (b) granting the Debtors such other and further relief as is just.[3]

In further support of the Motion, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

The Debtors currently hold the exclusive right to file a plan of reorganization and solicit acceptances pursuant to § 1121(d) of the Bankruptcy Code. By this Motion, the Debtors

---

Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

[2] Paragraph 13 of the Chapter 11 Complex Case Procedures provides that "[] if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Federal Rules of Civil Procedure, a confirmed plan or Court order, the time must be automatically extended until the Court rules on the motion, without the necessity of a bridge order." By the filing of this Motion prior to the expiration of the Exclusive Filing Period, the Exclusive Filing Period will not expire until the Court resolves the Motion.

[3] Although the Debtors have not filed an accompanying declaration with this Motion, to the extent the Motion is contested or the Court otherwise deems it appropriate, the Debtors will file an accompanying declaration(s) and make such parties available for cross examination.

2

respectfully request an extension of the Exclusive Periods by 90 days—specifically, from October 7, 2025, and December 6, 2025, through and including January 5, 2026, and March 6, 2026, respectively. This requested extension is without prejudice to the Debtors' ability to seek further extensions should circumstances warrant. Importantly, this is the Debtors' first request for an extension of exclusivity in these chapter 11 cases.

Good cause exists for the relief requested. Since the Petition Date, the Debtors have acted diligently and in good faith to address key priorities with their stakeholders and maximize the value of their estates. Most significantly, the Debtors have successfully pursued and consummated multiple value-maximizing sale transactions, including a sale of substantially all assets in the FlexGen Sale (defined below). In addition to that cornerstone achievement, the Debtors have actively worked to monetize other assets, thereby generating incremental value for stakeholders and mitigate claims. The Debtors have also obtained critical operational and financial relief to preserve estate value and ensure stability during these chapter 11 cases. Among other things, the Debtors secured approval to: (i) stabilize customer relationships; (ii) provide adequate assurance to utility providers; (iii) continue payment of employee wages and benefits, thereby maintaining the workforce pending asset sales and thereafter; (iv) obtain postpetition financing to fund operations and preserve liquidity; and (v) use cash collateral in a manner that protects secured creditors while enabling the Debtors to pursue their restructuring objectives. Each of these steps has been essential to positioning the Debtors to propose and confirm a feasible and comprehensive chapter 11 plan.

Granting the requested extension will further the objectives of the Bankruptcy Code[4] by affording the Debtors the reasonable opportunity Congress intended: to propose a confirmable plan

---

[4] 11 U.S.C. § 101 *et seq*. All references to "§" or "section" herein are to sections of the Bankruptcy Code.

3

that is fair to creditors, preserves and maximizes estate value, and provides a path to resolution of these cases. Conversely, denying the extension at this juncture would risk disrupting the significant progress already made, create unnecessary instability, and potentially impair creditor recoveries.

For all of these reasons, and as further set forth below, the Debtors respectfully submit that the requested extension of the Exclusive Periods is both warranted and appropriate. The Debtors should be afforded the time necessary to complete the work they have diligently advanced, to prosecute a viable plan, and to solicit acceptances in a manner that maximizes value for all stakeholders. Accordingly, the Court should grant the relief requested, without prejudice to the Debtors' ability to seek additional extensions as may be necessary. The Committee (as defined below) supports the relief requested herein.

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012. The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicates for the relief requested herein are § 1121(d).

4

**BACKGROUND**

4. On June 9, 2025 (the "Petition Date"),[5] the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

5. On June 27, 2025, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").

6. A description of the Debtors, its business, and the reasons for commencing this Case are set forth in greater detail in the *Declaration of Gerard Uzzi in Support of Emergency First Day Motions of the Debtors* [Docket No. 13] (the "First Day Declaration"). The First Day Declaration is incorporated by reference herein.

7. Debtor Powin, LLC, a Delaware limited liability corporation, and its affiliates were collectively an energy storage integrator based in Portland, Oregon, and with operations around the world in Vietnam, China, Canada, Australia, and Spain. As one of the leading global energy platform providers, Powin and its affiliates were at the forefront of the clean energy revolution. Powin focused on advancing the next frontier of energy by ensuring access to clean, reliable, resilient, and affordable power through technology. The Debtors' business model targeted innovations in energy storage, which are essential to the planet's transition to a sustainable, carbon-free world.

---

[5] Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the remaining Debtors were filed shortly thereafter on June 10, 2025. The Exclusive Filing Period referenced herein is conservatively calculated based on the June 9, 2025, petition date.

8.      The Debtors commenced these Chapter 11 Cases because their businesses were suffering from liquidity constraints, an overdependence on trade credit, increasing assertions of liquidated damages, and a credibility problem. During the lead-up to and commencement of these Chapter 11 Cases, it became clear that the best chance for the Debtors to repay their outstanding debts would come via a value-maximizing transaction where the Debtors would sell substantially all of their assets.

9.      On July 1, 2025, the Debtors filed their *Motion of the Debtors for Entry of an Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections (II) Approving Bidding Procedures by Which Interested Parties May Bid and an Auction Sale Format in Connection with the Sale of Substantially all of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of Debtors' Property Free and Clear of All Causes of Action and Claims* [Docket No. 228] (the "Sale Motion"). An order approving the bidding procedures was entered on July 17, 2025 [Docket No. 413] (the "Bidding Procedures Order").

10.     Pursuant to the Bidding Procedures Order, the Debtors have successfully consummated three (3) separate sale transactions, as follows:

a.  FlexGen Power Systems, LLC ("FlexGen") agreed to purchase substantially all assets of the Debtors to FlexGen, for a purchase price of $36,000,000 (subject to certain closing price adjustments) (the "FlexGen Sale"). The FlexGen Sale was approved by order of the Bankruptcy Court on August 18, 2025 [Docket No. 751].

6

    b.    Pursuant to that certain bill of sale made in favor of Mainfreight Distribution Pty Ltd. ("Mainfreight"), the Debtors agreed to sell certain of its assets constituting collateral of Mainfreight to Mainfreight via credit bid in the amount of $3,000,000.00 (the "Mainfreight Sale"). The Mainfreight Sale was approved by order of the Bankruptcy Court on August 8, 2025 [Docket No. 692].

    c.    Pursuant to that certain Sale and Release Agreement, Powin, LLC, and Powin EKS Sellco LLC agreed to enter into a comprehensive transaction with Hitachi Energy Ltd., Hitachi Energy Power Conversion Solutions (together with Hitachi Energy Ltd., "Hitachi"), whereby Hitachi would acquire Powin EKS SellCo LLC's 20% equity interests in a joint venture with Hitachi, and certain mutual releases, in exchange for a fixed sum of $15,000,000 (the "EKS Sale"). The EKS Sale was approved by order of the Bankruptcy Court on August 8, 2025 [Docket No. 691].

## RELIEF REQUESTED

11. Pursuant to § 1121(d), the Debtors request entry of an order: (a) extending the periods during which the Debtors have the exclusive right to (i) file a chapter 11 plan, and (ii) solicit acceptances thereof, in each case, by 90 days, from October 7, 2025 and December 6, 2025, through and including January 5, 2026 and March 6, 2026, respectively, without prejudice to the Debtors' right to request further extensions of the Exclusive Periods in accordance with § 1121(d); and (b) granting the Debtors such other and further relief as is just.

## BASIS FOR RELIEF

12. Section 1121(b) provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan. Section 1121(c)(3) provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has an

7

exclusive period of 180 days after the commencement of the chapter 11 case to obtain acceptances of such plan. "[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." *Cont'l Casualty Co. v. Burns and Roe Enters., Inc. (In re Burns and Roe Enters., Inc.)*, No. 00-41610 (RG), 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005). The Debtors' initial Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on October 7, 2025, and December 6, 2025, respectively.

    A.    **Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause."**

13.    Under § 1121(d), the Court may extend the Exclusive Periods for cause. 11 U.S.C. § 1121(d)(1) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").

14.    The Bankruptcy Code neither defines the term "cause" for purposes of § 1121(d) nor establishes formal criteria for an extension. The legislative history of § 1121 indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191; *see also In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D.N.J.) (noting that the legislature intended that the granting of an extension be based "on a showing of some promise of probable success [for reorganization]."), *aff'd, FGH Realty Credit Corp. v Newark Airport/Hotel Ltd. P'ship*, 155 B.R. 93 (D.N.J. 1993); *Cont'l Casualty*, 2005 WL 6289213, at *3 (quoting *In re Sharon Steel Corp.*, 78 B.R. 762, 765 (Bankr. W.D. Pa. 1987)) ("[A] bankruptcy court has 'broad discretion to determine what is sufficient cause in each individual case.'"). Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the

8

ramifications of any proposed plan for disclosure to creditors. *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

15. Courts within the Third Circuit have held that the decision to extend a debtor's exclusivity is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See Cont'l Casualty*, 2005 WL 6289213, at *3 (quoting *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005) ("Whether or not to grant an extension of exclusivity 'is a matter of discretion based on all facts and circumstances.'")); *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 132 (D.N.J. 1995) (noting that section 1121(d)(1) "grants great latitude to the [b]ankruptcy [j]udge in deciding, on a case-specific basis, whether to modify the exclusivity period."); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (noting that the granting or denial of a request to extend exclusivity is within the discretion of the bankruptcy court).

16. In particular, bankruptcy courts, including in New Jersey, typically examine several factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of a debtor's exclusivity. *See Mo v. H.S.B.C. Bank USA, N.A. (In re Mo)*, 650 B.R. 193, 227–28 (Bankr. D.N.J. 2023) (quoting *In re Cent. Jersey Airport Servs.*, 282 B.R. at 184). These factors include the following:

(i) the size and complexity of the debtor's case;

(ii) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii) the existence of good faith progress towards reorganization;

(iv) the fact that the debtor is paying its bills as they become due;

(v) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi) whether the debtor has made progress in negotiations with its creditors;

  (vii) the amount of time which has elapsed in the case;

  (viii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the Debtors' reorganization demands; and

  (ix) whether any unresolved contingency exists.

*Id.*

  17. Not all of these factors are relevant to every case, and courts use only the relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g., In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Texaco, Inc.*, 76 B.R. at 327 (holding that size and complexity of the chapter 11 case provided sufficient cause to extend exclusivity).

  18. As set forth below, the Debtors' chapter 11 cases satisfy the relevant factors and sufficient "cause" therefore exists to extend the Exclusivity Periods as provided herein. Extension is particularly warranted here given that this is the Debtors' first request for extension of the Exclusivity Periods. *See, e.g.*, *In re CCA Construction, Inc.*, No. 24-22548 (CMG) (Bankr. D.N.J. Dec. 22, 2024) (granting an initial exclusivity extension of 120 days); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 13, 2024) (granting an exclusivity extension of 60 days); *In re Bed Bath & Beyond Inc.,* No. 23-13359 (VFP) (Bankr. D.N.J. Aug. 2, 2023) (granting an initial exclusivity extension of ninety days); *In re Blockfi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Apr. 19, 2023) (granting an initial filing exclusivity extension of forty-eight days and a solicitation exclusivity extension of seventy-three days); *In re Nat'l Realty Investment Advisors LLC*, No. 22-14539 (JKS) (Bankr. D.N.J. Oct. 5, 2022) (granting an initial exclusivity extension of 120 days);

10

*In re L'Occitane, Inc.*, No 21-10632 (MBK) (Bankr. D.N.J. May 25, 2021) (granting an initial exclusivity extension of ninety days); *In re Fillit, Inc.*, No. 20-23140 (CMG) (Bankr. D.N.J. Mar. 8, 2021) (same).[6]

### B. Cause Exists for an Extension of the Debtors' Exclusive Periods.

19. An extension of the Exclusive Periods by 90 days is appropriate, in the best interests of the Debtors and their stakeholders, and consistent with the intent and purpose of chapter 11 of the Bankruptcy Code. The requested extensions of the Exclusive Periods are necessary and appropriate to enable the Debtors to pursue a chapter 11 plan framework that will maximize the value of the Debtors' estate for the benefit of all stakeholders.

20. Accordingly, application of each of the factors courts consider when granting extensions to the facts of this case demonstrates that ample cause exists to grant the extension of the Exclusive Periods requested herein.

#### (i) The Debtors' Cases Are Complex.

21. Both Congress and courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods to file a plan and solicit acceptances of such a plan. H.R. Rep. No. 95-595, at 231–232, 406 (1978), *reprinted* in 1978 U.S.C.C.A.N. 5787, 6191 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); *see Cont'l Casualty*, 2005 WL 6289213, at *3 (quoting *Texaco*, 76 B.R. at 326) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

---

[6] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' counsel.

22. These Chapter 11 Cases involve nine Debtor entities that formerly operated global energy platforms across the United States, Vietnam, China, Canada, Australia, and Spain. Powin and its affiliates engineered and installed battery energy storage systems ("BESS") for clean energy projects. Beyond deployment, the Debtors provided integrated solutions, including data-driven software controls, advanced hardware, and end-to-end project execution. Their offerings included cell-level monitoring and reporting, comprehensive maintenance, wrapped warranties, and specialized training to ensure long-term performance of deployed BESS.

23. At the time of filing, the Debtors carried approximately $27.5 million in funded secured debt and more than $300 million in unsecured claims. The Debtors have already completed a going-concern sale, as well as several other value maximizing transactions.

24. The Debtors' business model was highly technical, capital-intensive, and proprietary. The scale and complexity of restructuring such a business strongly support extending the Exclusivity Periods to allow the Debtors to continue building on the progress already achieved and to craft a comprehensive chapter 11 plan.

### (ii) *The Debtors have Demonstrated a Necessity for Additional Time to Permit the Debtors to Negotiate a Chapter 11 Plan and Prepare Adequate Information.*

25. Working closely with the Committee, the Debtors have made substantial, good-faith progress toward developing a chapter 11 plan and preparing the related disclosures that seeks to liquidate the proceeds of the FlexGen Sale and the EKS Sale, among other things, for the benefit of all creditors. Additional time is necessary to ensure that the plan maximizes value for creditors and the estates.

26. Additionally, the general claims bar date is set for September 29, 2025. *See* Docket No. 758. Because that date has not yet passed, the Debtors cannot fully assess the claims pool, and additional time will be required to formulate a plan that appropriately addresses all filed claims.

27. Section 1121 is designed to provide debtors with the time and flexibility needed to negotiate with stakeholders and develop a confirmable plan. Consistent with that purpose, the Debtors are actively engaging with key constituencies on the terms necessary for a value-maximizing chapter 11 plan. This factor therefore weighs strongly in favor of extending the Exclusivity Periods.

### (iii)    *The Debtors have Established Good Faith Progress Towards Reorganization.*

28. As outlined in the First Day Declaration, the Debtors' businesses faced significant challenges at the time of filing, including liquidity constraints, overreliance on trade credit, mounting assertions of liquidated damages, and erosion of market credibility. Since then, however, the Debtors have expended significant time and effort working in good faith with all parties in interest to maintain the Debtors' business operations, preserving value for the Debtors, its stakeholders, and parties in interest.

29. Specifically, since the Petition Date, the Debtors have, among other things:

- obtained use of cash collateral with the consent of their prepetition secured lender;
- entered into a junior DIP facility to provide the Debtors with incremental liquidity to bridge to a sale transaction;
- obtained Court approval of a marketing process;
- obtained Court approval of the rejection of many burdensome contracts;
- promptly completed and filed their schedules of assets and liabilities and statements of financial affairs;
- conducted and concluded the meeting of creditors pursuant to § 341;
- obtained final approval authorizing the Debtors to pay certain prepetition wages, to maintain their insurance programs and pay insurance premiums, and to continue using their prepetition cash management system;
- obtain approval of a Key Employee Retention Plan and Key Employee Incentive Plan for the benefit of employees; and

- filed a motion to establish deadlines and procedures for filing proofs of claims.

30. Because of the substantial work detailed above, the Debtors were able to stabilize their business and ultimately successfully negotiate and close the FlexGen Sale, the Mainfreight Sale, and the EKS Sale—each generating significant value for the Debtors' estates and their stakeholders. The Debtors' principal remaining task is to formulate and confirm a chapter 11 plan that will distribute the proceeds of the sale transactions in a fair, efficient, and orderly manner for the benefit of their estates and creditors.

31. Thus, this factor supports the extension of the Exclusive Periods. *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 588 (Bankr. S.D.N.Y. 2006) (viewing the good faith progress factor "as one of the more important factors" in the analysis).

### (iv)    *The Debtors are Paying their Postpetition Bills as They Become Due.*

32. Since the commencement of these Chapter 11 Cases, the Debtors have consistently met all of their postpetition obligations as they come due, including operational expenses, vendor payments, employee wages, and other administrative costs necessary to maintain the estates in good order. By staying current on all postpetition liabilities, the Debtors have preserved the value of their assets, maintained essential business relationships, and avoided any disruption that could negatively affect stakeholders.

33. An extension of the Exclusivity Periods will directly benefit the estates and their stakeholders by allowing the Debtors to continue this orderly administration while finalizing the formulation of a comprehensive chapter 11 plan. The ability to continue making timely payments ensures the orderly administration of the estates, preserves creditor confidence, and facilitates the cooperative engagement of key constituencies in connection with the chapter 11 process. For these reasons, this factor strongly supports the relief requested.

### *(v)* *The Debtors have Demonstrated Reasonable Prospects for Filing a Viable Plan.*

34. The Debtors have already accomplished the most significant and value-driving tasks in these cases by negotiating, documenting, and closing the FlexGen Sale, the Mainfreight Sale, and the EKS Sale. Each of these transactions generated meaningful proceeds and positioned the Debtors' estates with liquidity sufficient to fund an orderly conclusion of these Chapter 11 Cases. As a result, the Debtors are ready to advance from stabilizing operations and selling a going concern enterprise to formulating and prosecuting a chapter 11 plan that distributes the value realized from the sale transactions. That task is straightforward and well within the Debtors' reach.

35. Moreover, the Debtors have worked cooperatively with the Committee and other stakeholders throughout these proceedings, and those efforts have yielded substantial consensus on the framework for a value-maximizing outcome. With the claims bar date approaching, the Debtors will soon have the complete information necessary to finalize plan distributions in a fair and equitable manner. Given the estates' available cash, the progress to date, and the ongoing dialogue with creditors, there is every reason to believe that the Debtors will file, and ultimately confirm, a viable plan within a reasonable time frame. Accordingly, this factor weighs strongly in favor of extending exclusivity.

### *(vi)* *The Debtors have Made Progress in Negotiations with its Creditors.*

36. Since the commencement of these Chapter 11 Cases, the Debtors have maintained regular and transparent communication with their creditors, including ongoing, constructive engagement with the Committee. The Debtors have worked closely with the Committee to discuss the estates' assets and liabilities, the results of the sale transactions, and the framework for a chapter 11 plan that maximizes value for all stakeholders. The Debtors intend to continue this collaborative process throughout the pendency of these cases and anticipate filing a chapter 11 plan that is fully supported by the Committee. This coordinated approach not only ensures that the

15

plan reflects the consensus of key constituencies but also enhances the likelihood of a timely and orderly confirmation process. Furthermore, the Committee expressly supports the requested extension. For these reasons, this factor strongly supports the requested extension of the Exclusivity Periods.

### (vii) *Only a Small Amount of Time has Elapsed Since the Petition Date.*

37. This is the Debtors' first request for an extension of the Exclusive Periods, and only approximately three months have passed since the Petition Date. During this brief period, the Debtors have achieved remarkable progress, successfully negotiating, and closing the FlexGen Sale and related sales of substantially all of their assets. Given the magnitude and complexity of these transactions, the Debtors' efforts have been necessarily focused on completing the sales in an orderly, value-maximizing manner for the benefit of the estates and all stakeholders.

38. In light of these accomplishments, the passage of only three months in the initial phase of these cases, represents a relatively short interval, particularly considering the global scope of the Debtors' operations and the coordination required with multiple parties, including the Committee and key creditors. Granting an extension of the Exclusive Periods will allow the Debtors sufficient time to formulate and file a comprehensive chapter 11 plan that fully reflects the value realized from the sales, incorporates input from stakeholders, and ensures the fair and equitable distribution of proceeds. Accordingly, this factor strongly supports the requested relief.

### (viii) *The Debtors are Seeking an Extension of Exclusivity to Better Position their Estates for Reorganization, and Not to Pressure Creditors to Submit to their Reorganization Demands.*

39. The Debtors' request to extend the Exclusive Periods is driven solely by the need to maximize value for the estates and their stakeholders, not by any intent to coerce or pressure creditors into accepting the Debtors' proposed plan. The extension is necessary to allow the Debtors to finalize a comprehensive and equitable chapter 11 plan, incorporating input from the

Committee and other key stakeholders, and to ensure that all distributions reflect the full value realized from the completed asset sales. Because the requested extension is grounded in legitimate restructuring objectives rather than any tactical leverage over creditors, this factor strongly supports granting the relief sought.

### (ix) *Additional Factors Exist to Support an Extension of the Debtors' Exclusive Periods.*

40. In addition to the factors discussed above, terminating the Exclusive Periods at this stage would significantly disrupt the administration of these Chapter 11 Cases. If the Court were to deny the Debtors' request, then upon the expiration of the Exclusive Filing Period, any party in interest would be free to propose a chapter 11 plan and solicit acceptances. Such a scenario could create confusion and competing plans, complicating the orderly administration of the estates, delaying the resolution of these cases, and undermining the Debtors' ability to implement a value-maximizing plan. Importantly, there would be no corresponding benefit to the estates or creditors from such disruption. On the contrary, denying the requested relief could frustrate the objectives of chapter 11, impede recoveries, and materially diminish the value available to the Debtors' stakeholders.

41. For all of the foregoing reasons, the Debtors submit that "cause" exists under § 1121(d) to extend the Exclusive Periods. Accordingly, the Debtors respectfully request that the Court grant the requested relief.

## WAVIER OF MEMORANDUM OF LAW

42. The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to rule 9013-1(a)(3) of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules") because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## NOTICE

43. The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the Office of the United States Trustee; (b) counsel for the Debtors' former Prepetition Secured Parties; (c) the Debtors' former DIP Lender; (d) Counsel for the Committee; (e) the Debtors' fifty largest unsecured creditors on a consolidated basis; and (f) any party that has appeared electronically in this Case and/or requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

44. No prior request for the relief sought in this Motion has been made to this Court or any other Court.

## CONCLUSION

45. WHEREFORE, the Debtors respectfully request entry of the Proposed Order: (i) granting the relief requested herein; and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

*[Remainder of page intentionally left blank]*

| | |
|---|---|
| Dated: September 11, 2025 | **DENTONS US LLP**<br>*/s/ Lauren Macksoud*<br>Lauren Macksoud (admitted)<br>101 JFK Parkway<br>Short Hills, NJ 07078<br>Telephone: (973) 912-7100<br>Facsimile: (973) 912-7199<br>Email:  lauren.macksoud@dentons.com<br><br>Tania M. Moyron (admitted *pro hac vice*)<br>Van C. Durrer, II (admitted *pro hac vice*)<br>601 S. Figueroa Street #2500<br>Los Angeles, CA 90017<br>Telephone: (213) 623-9300<br>Facsimile: (213) 623-9924<br>Email:  tania.moyron@dentons.com<br>          van.durrer@dentons.com<br><br>John D. Beck (admitted *pro hac vice*)<br>Sarah M. Schrag (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, NY 10020-1089<br>Telephone: (212) 768-6700<br>Facsimile: (212) 768-6800<br>Email:  john.beck@dentons.com<br>          sarah.schrag@dentons.com<br><br>-and-<br>**TOGUT, SEGAL & SEGAL LLP**<br>Frank A. Oswald (admitted)<br>550 Broad Street<br>Suite 1508<br>Newark, NJ 07102<br>Telephone:  (212) 594-5000<br>Facsimile:  (212) 967-4258<br>Email: frankoswald@teamtogut.com<br><br>Albert Togut (admitted *pro hac vice*)<br>Eitan Blander (admitted *pro hac vice*)<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>Telephone: (212) 594-5000<br>Facsimile: (212) 967-4258<br>Email:  altogut@teamtogut.com<br>          eblander@teamtogut.com<br><br>*Counsel for Debtors and*<br>*Debtors in Possession* |

**CERTIFICATE OF SERVICE**

This is to certify that I have on September 11, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the District of New Jersey.

/s/ Lauren Macksoud
Lauren Macksoud