**DENTONS US LLP**

Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email:  lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
           van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
           sarah.schrag@dentons.com

*Counsel for Debtors and*
*Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
           aglaubach@teamtogut.com
           eblander@teamtogut.com

*Counsel for Debtors and*
*Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>            Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504], (iii) PEOS Holdings, LLC [5476], (iv) Powin China Holdings 1, LLC [1422], (v) Powin China Holdings 2, LLC [9713], (vi) Charger Holdings, LLC [15241], (vii)

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING (I) ABANDONMENT OR SALE OF REMAINING INVENTORY AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Powin, LLC and the affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), hereby move (the "Motion") this Court for entry of an order, substantially in the form attached as **Exhibit A** (the "Proposed Order"), authorizing (a) the abandonment or sale of certain miscellaneous inventory and parts and (b) granting the Debtors such other and further relief as is just.[2]

In further support of the Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012. The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

Powin Energy Ontario Storage, LLC [8348], (viii) Powin Energy Operating Holdings, LLC [2495], and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

[2] Although the Debtors have not filed an accompanying declaration with this Motion, to the extent the Motion is contested or the Court otherwise deems it appropriate, the Debtors will file an accompanying declaration(s) and make such parties available for cross examination.

3. The predicates for the relief requested herein are §§ 363 and 554(a).

**BACKGROUND**

4. On June 9, 2025 (the "Petition Date"),[3] the Debtors each commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

5. On June 27, 2025, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").

6. A description of the Debtors, its business, and the reasons for commencing this Case are set forth in greater detail in the *Declaration of Gerard Uzzi in Support of Emergency First Day Motions of the Debtors* [Docket No. 13] (the "First Day Declaration"). The First Day Declaration is incorporated by reference herein.

7. Debtor Powin, LLC, a Delaware limited liability corporation, and its affiliates were collectively an energy storage integrator based in Portland, Oregon, and with operations around the world in Vietnam, China, Canada, Australia, and Spain. As one of the leading global energy platform providers, Powin and its affiliates were at the forefront of the clean energy revolution. Powin focused on advancing the next frontier of energy by ensuring access to clean, reliable, resilient, and affordable power through technology. The Debtors' business model targeted innovations in energy storage, which are essential to the planet's transition to a sustainable, carbon-free world.

---

[3] Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the remaining Debtors were filed shortly thereafter on June 10, 2025. The Exclusive Filing Period referenced herein is conservatively calculated based on the June 9, 2025, petition date.

3

8. The Debtors commenced these Chapter 11 Cases because their businesses were suffering from liquidity constraints, an overdependence on trade credit, increasing assertions of liquidated damages, and a credibility problem. During the lead-up to and commencement of these Chapter 11 Cases, it became clear that the best chance for the Debtors to repay their outstanding debts would come via a value-maximizing transaction where the Debtors would sell substantially all of their assets.

9. On July 1, 2025, the Debtors filed their *Motion of the Debtors for Entry of an Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections (II) Approving Bidding Procedures by Which Interested Parties May Bid and an Auction Sale Format in Connection with the Sale of Substantially all of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of Debtors' Property Free and Clear of All Causes of Action and Claims* [Docket No. 228] (the "Sale Motion"). An order approving the bidding procedures was entered on July 17, 2025 [Docket No. 413] (the "Bidding Procedures Order").

10. Pursuant to the Bidding Procedures Order, the Debtors have successfully consummated three (3) separate sale transactions, as follows:

a. FlexGen Power Systems, LLC ("FlexGen") agreed to purchase substantially all assets of the Debtors to FlexGen, for a purchase price of $36,000,000 (subject to certain closing price adjustments) (the "FlexGen Sale"). The FlexGen Sale was approved by order of the Bankruptcy Court on August 18, 2025 [Docket No. 751].

      b.      Pursuant to that certain bill of sale made in favor of Mainfreight Distribution Pty Ltd. ("Mainfreight"), the Debtors agreed to sell certain of its assets constituting collateral of Mainfreight to Mainfreight via credit bid in the amount of $3,000,000.00 (the "Mainfreight Sale"). The Mainfreight Sale was approved by order of the Bankruptcy Court on August 8, 2025 [Docket No. 692].

      c.      Pursuant to that certain Sale and Release Agreement, Powin, LLC, and Powin EKS Sellco LLC agreed to enter into a comprehensive transaction with Hitachi Energy Ltd., Hitachi Energy Power Conversion Solutions (together with Hitachi Energy Ltd., "Hitachi"), whereby Hitachi would acquire Powin EKS SellCo LLC's 20% equity interests in a joint venture with Hitachi, and certain mutual releases, in exchange for a fixed sum of $15,000,000 (the "EKS Sale" and, together with the FlexGen Sale and the Mainfreight Sale, the "Sales").  The EKS Sale was approved by order of the Bankruptcy Court on August 8, 2025 [Docket No. 691].

11.     Although the Debtors endeavored to sell all of their tangible assets in connection with the Sales, certain inventory and parts remain or were expressly excluded from the Sales by consent (the "Miscellaneous Inventory"). Among other assets, the Miscellaneous Inventory includes: (i) Solar Carver assets; (ii) certain Mainfreight assets per the Mainfreight credit bid; (iii) Expeditors International of Washington, Inc. ("Expeditors") assets; and (iv) other miscellaneous assets. Certain of the Mainfreight assets recently discovered by Mainfreight in California include seven (7) additional power units not originally included in Mainfreight's credit bid, each referenced as 3I1101024030164304 – S04810608 Model: Stack 800.

12.     The storage or maintenance of the Miscellaneous Inventory continues to involve certain carry costs that, in many cases, exceed the value of the associated Miscellaneous Inventory.

5

The Debtors have determined that the Miscellaneous Inventory is of inconsequential value, unnecessary to the continued administration of the Debtors' estates, and overly burdensome to maintain.

13. While the Debtors have determined that the Miscellaneous Inventory is of inconsequential value and burdensome to the Debtors, the Debtors understand that certain parties are willing to provide consideration in connection with the disposal of Miscellaneous Inventory. For example, certain parties may be willing to pay cash where the property retains some residual value, reimburse the estate for storage, tariffs, or other related costs, or waive or reduce claims against the estate in connection with a consensual transfer of Miscellaneous Inventory.

14. Accordingly, because the Debtors have determined that the Miscellaneous Inventory is of inconsequential value to the Debtors, the Debtors are seeking the authority through this Motion, and in consultation with the Committee, to abandon the Miscellaneous Inventory. However, to the extent any party is interested in purchasing any of the Miscellaneous Inventory, the Debtors will (i) attempt to negotiate a sale of the Miscellaneous Inventory and solicit at least one alterative transaction in connection therewith, (ii) consult with the Committee regarding any such sale, and (ii) provide notice of any sale of the Miscellaneous Inventory to the U.S. Trustee (the "Miscellaneous Inventory Sale Procedures").

## RELIEF REQUESTED

15. Pursuant to §§ 554(a) and 363, the Debtors request entry of an order authorizing (a) the abandonment of the Miscellaneous Inventory; (b) the sale of the Miscellaneous Inventory for cash or other consideration, where reasonably practicable, each effective as of the date of this Motion; and (c) granting the Debtors such other and further relief as is just. The Debtors further request that, in light of the requirements of the Miscellaneous Inventory Sale Procedures, namely

consultation with the Committee and notice to the U.S. Trustee, that the requirements of Bankruptcy Rule 2002 be waived with respect to any sale of the Miscellaneous Inventory.

## DISCUSSION

16. Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Similarly, Bankruptcy Rule 6007(a) provides for the abandonment, destruction, or other disposal of property. *See* Fed. R. Bankr. P. 6007(a) ("[T]he trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property…."); *Reich v. Burke (In re Reich)*, 54 B.R. 995, 1003-04 (Bankr. E.D. Mich. 1985) ("[I]f the trustee feels an asset is of inconsequential value and benefit to the estate or that it is 'burdensome to the estate,' she may abandon it."). Section 363(b)(1) of the Bankruptcy Code authorizes the trustee to "use, sell, or lease, other than in the ordinary course of business, property of the estate" if the proposed use (or in this case, disuse) of estate assets is within a trustee's reasonable business judgment. 11 U.S.C. § 363(b)(1); *see also, In re Martin*, 91 F.3d 389, 395 (3d. Cir. 1996) (stating that the court generally defers to a trustee's judgment so long as there is a legitimate business justification); *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005) ("Great judicial deference is given to the Trustee's exercise of business judgment."). When a debtor determines to abandon property pursuant to § 554, the same business judgment standard applies. *See In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997). In addition, § 105(a) provides, in relevant part, that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

17. Debtors are afforded significant discretion in determining the value and benefits of particular property for purposes of deciding whether to abandon it. *See, e.g., In re Contract*

*Research Sols., Inc.*, No. 12-11004 (KJC), 2013 WL 1910286, at *4 (Bankr. D. Del. May 1, 2013) ("[T]he debtor need only demonstrate that it has exercised sound business judgment in making the determination to abandon." (internal marks and citation omitted)). Courts have held that "[t]he trustee's power to abandon property is discretionary." *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) (citations omitted). A trustee or debtor may abandon assets that are of "inconsequential value and benefit to the estate" or that are "burdensome to the estate." *In re Reich*, 54 B.R. at 1004. The decision to abandon must merely reflect "business judgment made in good faith" that rests on a reasonable basis. *Cult Awareness Network, Inc.*, 205 B.R. at 579.

18. In addition, courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [debtor] to show that a sound business purpose justifies such actions.' If the [debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *Schipper*, 933 F.2d at 515 (internal citations and quotations omitted) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (applying business judgment rule to bidding procedures and incentives and noting that "[c]ourts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence").

19. The Debtors have determined in their business judgment that the Miscellaneous Inventory is of inconsequential value, unnecessary to the continued administration of the Debtors'

8

estates, and overly burdensome to maintain. With the consummation of the Sales, the Debtors have dispensed with substantially all of their assets, particularly those calculated to maximize value to the Debtors' creditors and stakeholders. Further, the Miscellaneous Inventory is largely obsolete or damaged and thus would cost the Debtors more to continue to hold in its estates. The storage and maintenance of the Miscellaneous Inventory continues to involve certain carry costs that, in many cases, exceed the value of the associated Miscellaneous Inventory. Finally, Expeditors has already obtained stay relief with respect to its goods. Accordingly, the Debtors, in consultation with the Committee, should be authorized to abandon the Miscellaneous Inventory as a sound exercise of their business judgement.

20. Although the Debtors have determined that the Miscellaneous Inventory is of inconsequential value, the Debtors understand that certain parties are willing to provide consideration in connection with the disposal of Miscellaneous Inventory. Accordingly and further in line with their business judgment, the Debtors seek approval of the Miscellaneous Inventory Sale Procedures in order to collect any *de minimis* value the Miscellaneous Inventory may have to the Debtors' estates. The proposed order granting the Motion provides that purchasers for value may rely on the Debtors' certification that it has complied with the Miscellaneous Inventory Sale Procedures in connection with the disposal of such Miscellaneous Inventory.

21. Accordingly, the Debtors believe the Proposed Order authorizing the abandonment of the Miscellaneous Inventory or the sale of the Miscellaneous Inventory for cash or other consideration, where reasonably practicable, each effective as of the date of this Motion, is in their sound business judgement and should be entered.

22. Finally, Bankruptcy Rule 2002 allows a court to modify the noticed required for the sale of property for cause. In light of the requirements of the Miscellaneous Inventory Sale

Procedure, namely that the Debtors are required to consult with the Committee and notice the U.S. Trustee of any sale, the Debtors submit that cause exists to waive the requirements of Bankruptcy Rule 2002.

## **NOTICE**

23. The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the Office of the United States Trustee; (b) counsel for the Debtors' former Prepetition Secured Parties; (c) the Debtors' former DIP Lender; (d) Counsel for the Committee; (e) the Debtors' fifty largest unsecured creditors on a consolidated basis; (f) any party that has appeared electronically in this Case and/or requested notice pursuant to Bankruptcy Rule 2002 and (g) parties with an interest in the property sought to be abandoned.

24. Local Bankruptcy Rule 6007-1 ordinarily requires service of a Notice of Proposed Abandonment in the form proscribed by such rule including a description of the description and value of the property sought to be abandoned, the identification of any liens on such property and whether any exemptions apply. The Debtors have notified the parties which are in possession of the property to be abandoned or otherwise own the premises where the property to be abandoned is located. As noted in the Motion above, the only instance in which property would be sold rather than abandoned is where a party in interest pays consideration in order to retire any storage or related charges for such property. Any party in interest who has an objection to the relief requested in the Motion will have an ample opportunity to address any such issues. It would be an unreasonable burden to require the Debtors to deliver incremental notices for each individual item of property in addition to the notice provided by the Motion. Accordingly, in light of the foregoing, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

25. No prior request for the relief sought in this Motion has been made to this Court or any other Court.

## CONCLUSION

26. WHEREFORE, the Debtors respectfully request entry of the Proposed Order: (i) granting the relief requested herein; and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

Dated: October 3, 2025

**DENTONS US LLP**
*/s/ Lauren Macksoud*
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email:  lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

-and-

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email:  altogut@teamtogut.com
            eblander@teamtogut.com

*Counsel for Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

    This is to certify that I have on October 3, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the District of New Jersey.

                                              */s/ Lauren Macksoud*
                                              Lauren Macksoud