**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
          eblander@teamtogut.com

*Counsel for Debtors and*
*Debtors in Possession*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** November 25, 2025 at 11:30 a.m. |

### NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) ESTIMATING THE CLAIMS OF NEW YORK MARINE & GENERAL INSURANCE COMPANY AND AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC AT $0; (II) DIRECTING THE  TURNOVER AND USE OF EXCESS CASH COLLATERAL TO BE

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**DISTRIBUTED PURSUANT TO THE PLAN; (III) APPROVING A PROCEDURE FOR
CONSENSUALLY RESOLVING SURETY CLAIMS AND (IV) RELATED RELIEF**

**PLEASE TAKE NOTICE** that on November 25, 2025 at 11:30 a.m., or as soon thereafter
as counsel may be heard, BESS RemainCo, LLC f/k/a Powin, LLC, and its affiliated debtors and
debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the
"Chapter 11 Cases"), hereby move (the "Motion")[2] this Court for entry of an order, substantially
in the form attached as **Exhibit B** (the "Order"): (i) estimating any claims asserted or that may be
asserted against the Debtors by New York Marine & General Insurance (the "NY Marine") and
Avalon Risk Management ("Avalon," and referred to with NY Marine as the "Sureties") related
to any customs duties, fees or other amounts that may be sought to be imposed by United States
Customs and Border Protection at $0; (ii) requiring the turnover to the Debtors and use of an
amount of no less than $8,000,000 from the $12,000,000 of cash collateral currently held by
Avalon (the "Cash Collateral") and return of the balance of the Cash Collateral after liquidation of
the Surety Entries; (iv) approving a procedure for consensually resolving surety claims; and (v)
related relief.

**PLEASE TAKE FURTHER NOTICE** that, in support of the Motion, the Debtors shall
rely on the accompanying *Declaration of Brian Kane* filed with the Motion and the *Declaration
of Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* [Docket No. 13] ("First
Day Declaration"), which set forth the relevant legal and factual bases upon which the relief
requested should be granted.

**PLEASE TAKE FURTHER NOTICE THAT YOUR RIGHTS MAY BE
AFFECTED.  You should read these papers carefully and discuss them with your attorney,**

---

[2] Unless otherwise defined in this Notice, all capitalized terms shall have the same meaning as in the Motion.

2

**if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).**

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Surety Estimation Motion shall:  (a) be in writing; (b) state with particularity the basis of the objection; and (c) be filed with the Clerk of the Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served on such parties in accordance with the General Order and the Supplemental Commentary, so as to be actually received no later than **November 18, 2025 ("the Objection Deadline").**

      **PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Verita Global at https://www.veritaglobal.net/powin.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Dated: November 4, 2025

**TOGUT SEGAL & SEGAL LLP**

*/s/ Frank Oswald*

TOGUT, SEGAL & SEGAL LLP
Frank A. Oswald (admitted)
550 Broad Street, Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:   (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted pro hac vice)
Eitan Blander (admitted pro hac vice)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:   (212) 967-4258
Email:  altogut@teamtogut.com
           eblander@teamtogut.com

*Counsel for Debtors and Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
          eblander@teamtogut.com

*Counsel for Debtors and*
*Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) ESTIMATING THE CLAIMS OF NEW YORK MARINE & GENERAL INSURANCE COMPANY AND AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC AT $0; (II) DIRECTING THE TURNOVER AND USE OF EXCESS CASH COLLATERAL TO BE DISTRIBUTED PURSUANT TO THE PLAN; (III) APPROVING A PROCEDURE FOR CONSENSUALLY RESOLVING SURETY CLAIMS AND (IV) RELATED RELIEF

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

BESS RemainCo, LLC, f/k/a Powin, LLC ("Powin") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), hereby move (the "Motion") this Court for entry of an order, substantially in the form attached as **Exhibit B** (the "Order") granting the following relief related to the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 942] (respectively, the "Disclosure Statement" and the "Plan"): (i) estimating any claims asserted or that may be asserted against the Debtors by New York Marine & General Insurance (the "NY Marine") and Avalon Risk Management ("Avalon," and referred to with NY Marine as the "Sureties" with such claims of the Sureties, each a "Surety Claim" and, together, the "Surety Claims") related to any customs duties, fees or other amounts that may be sought to be imposed by United States Customs and Border Protection (respectively, "Customs Claims" and "Customs") at $0, (ii) requiring the turnover to the Debtors and use of an amount of no less than $8,000,000 (the "Excess Cash Collateral") from the $12,000,000 of cash collateral currently held by Avalon (the "Cash Collateral") and return of the balance of the Cash Collateral after liquidation of the Surety Entries (as defined below); (iv) approving a procedure for consensually resolving surety claims and (v) related relief.

## **PRELIMINARY STATEMENT**

1.     Avalon currently holds at least $12,000,000 in Cash Collateral for the benefit of NY Marine with respect to contingent Customs duties owing by the Debtors.  This amount is excessive, and any Surety Claim should be estimated at $0, because (i) the Sureties did not timely file a claim despite receiving notice of the Bar Date and; (ii) any claim of the Sureties is contingent

2

and would be disallowed anyhow under 11 U.S.C. § 502(e); and (iii) there is no legitimate risk of exposure from Customs as the Debtors have paid or otherwise bonded the relevant Custom Claims.

2.    As to the latter point, as discussed in the *Declaration of Brian Kane*, attached hereto as **Exhibit A** (the "Kane Decl."), there is no legitimate risk of exposure from Customs as the Debtors have paid or otherwise bonded the relevant Custom Claims.  In fact, the Debtors have a long track record of adequate bonding for their thousands of imports in recent years, and the Debtors have already paid Customs $684,173.48 as bonds for the same estimated amount of (the only six remaining) unliquidated Customs Claims.  *See* Kane Decl. at ¶ 5.

3.    However, to avoid risk of protracted litigation that could delay confirmation and implementation of the Debtor's pending Plan, the Debtors only request immediate turnover of the Excess Cash Collateral and propose (while reserving all rights for themselves and any successors) to leave approximately $4,000,000 in Cash Collateral with Avalon at this time.  The Debtors' proposed solution is more than fair to the Sureties and to the estates, creditors, holders of administrative expenses and those who will be implementing the Plan.  Avalon is likewise adequately protected in connection with the turnover of the Excess Cash Collateral.

4.    Further, the Debtors seek authorization to enter into a Surety Settlement Program (as defined below) to allow consensual resolution with all of the Debtors sureties.  Under this program, the Debtors would receive an agreed upon portion of collateral to use for the Plan with the balance being placed into an escrow.  The parties would release each-other and the Debtors would seek a channeling injunction so that Customs could only pursue the escrow for Customs Claims.  Approval of the Surety Settlement Program would allow the Debtors to free up cash, resolve claims efficiently and emerge in a strong position at confirmation.

5.     The Debtors therefore request that the Court grant the Motion and enter the proposed order attached hereto as Exhibit B (the "Proposed Order").

### JURISDICTION AND VENUE

6.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.     The bases for the relief requested are Sections 105, 363, 502, 542, 1142 of the United States Code (the "Bankruptcy Code"); Rules 3007, 3012, 3018, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 9013-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

### BACKGROUND

9.     On June 9, 2025 (the "Petition Date"),[2] the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' Chapter 11 cases are set forth in greater detail in the *Declaration of Gerald Uzzi in Support of Emergency First Day Motions of the Debtors* [Docket No. 13], which is incorporated by reference herein.

---

[2] Powin Project LLC filed for voluntary relief under Chapter 11 of the Bankruptcy Code on June 9, 2025. Powin Canada B.C. Ltd., Powin Energy Ontario Storage II LP, and Powin Energy Storage 2, Inc., filed on June 22, 2025, and the remaining Debtors (other than Powin EKS SellCo, LLC) filed on June 10, 2025. Powin EKS SellCo, LLC filed on October 10, 2025.

10.     The Debtors are managing their property as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

11.     On June 30, 2025, the court entered the *Second Amended Order* [Docket No. 211] authorizing consolidation and joint administration of these Chapter 11 cases pursuant to Rule 2015(b) of the Bankruptcy Rules.

12.     On June 27, 2025, the United States Trustee for the District of New Jersey (the "US Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to Section 1102 of the Bankruptcy Code.  Docket No. 174.

13.     On July 17, 2025, the Debtors filed their Schedules [Docket Nos. 426-437], and, while Powin identified the Cash Collateral, Powin, like the other Debtors, did not schedule any Surety Claim.  Docket No. 427; *id.* at p. 48 (Schedule A/B 7) (identifying the Cash Collateral and Avalon Agreement (defined below)).

14.     On August 20, 2025, the Court entered an order setting a general bar date of September 29, 2025 (respectively, the "Bar Date Order" and the "Bar Date").  Docket No. 758. Under the Bar Date Order, the Court approved a "Bar Date Notice" (as defined in the Bar Date Order) to be sent to creditors.  The Sureties were served with a copy of the Bar Date Notice on August 26, 2025.  Docket No. 845 at pp. 57, 126.  As evidenced by the claims register, the Sureties did not file proofs of claim by the Bar Date or since.  *See* Claims Register.

15.     On September 29, 2025, other sureties, Applied Surety Underwriters, Pennsylvania Insurance Company, SiriusPoint America Insurance Company (the "Filing Sureties"), did timely file proofs of claim.  *See* Claim Nos. 384; 447.

16.     On October 14, 2025, the Court conditionally approved the Disclosure Statement and the solicitation of the Plan.  Docket No. 939.  On October 15, 2025, the Debtors filed the solicitation version of the Plan.  Docket No. 942.

17.     Section 11.4 of the Plan provides that "[a]t any time, (a) prior to the Effective Date, the Debtors … may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code" and "[i]f the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court." *Id.* at § 11.4.

18.     On October 30, 2025, the Court entered the *Third Amended Order* [Docket No. 1004] authorizing consolidation and joint administration of these Chapter 11 cases pursuant to Rule 2015(b) of the Bankruptcy Rules.

## I.     The Debtors' Imports and the Customs Process for these Imports.

19.     Pre-petition, the Debtors imported goods from abroad as a part of their business. The United States has imposed customs duties upon certain imports into the United States – including on Powin's pre-petition imports.  The Debtors complied with applicable laws when importing goods and made required payments, including those involving Customs duties.

20.     More specifically, when an item is imported that may be subject to customs duties or fees (an "Entry"), the importer – here the Debtors – is required to post a bond of "the amount of duties and fees estimated to be payable on such merchandise" before the exact amount of customs duty is "liquidated" ("Customs Deposit(s)").   19 U.S.C.A. § 1505(a).   After this "liquidation," (that is, a determination of the amount owed) if the bond is in excess of the amount determined, the United States issues a refund from the excess portion of the bond paid, or, if the Deposit is less than the liquidated amount, the importer is responsible to pay this excess amount (a "Customs Deficiency Amount").  19 U.S.C.A. § 1505(b).

21.     Over the past few years, the Debtors have posted Customs Deposits for more than 3,000 Entries, with the cumulative amount of Customs Deposits exceeding more than

$200,000,000.  During this period, the Debtors are not aware of ever having to pay a Customs

Deficiency Amount.  To the contrary, the Debtors often received refunds from Customs.  Recently,

Customs liquidated 93 Entries, and the Customs Deposits were sufficient to cover the applicable

Customs Claims in each instance.

**II.      Powin's Use of Sureties**

22.      Powin utilized various sureties for its importation business, including the Sureties

and the Filing Sureties.  These sureties ensured ultimate payment of Customs Claims, however, as

discussed above, the Debtors posted Customs Deposits in the first instance.

**III.    Avalon Holds $12,000,000 Despite only $684,173 in Unliquidated (Already Secured) Entries**

23.      As to the Sureties, pre-petition, Powin posted $12,000,000 (the "Cash Collateral")

with Avalon for entries imported from November 3, 2023 to June 2, 2024 (the "Surety Entries")

pursuant to a written agreement with Avalon (the "Avalon Agreement").  *See* Docket No. 427 at

Schedule A/B 7 (listing Collateral security agreement with Avalon and US Customs and Border

Protection – Bond No. 23C001N4T in the amount of $12,000,000).

24.      There are currently only six (6) unliquidated Surety Entries (the "Unliquidated

Entries").  The Debtors posted Customs Deposits in the cumulative amount of $684,173.48 for

these Unliquidated Entries based upon estimated duties and fees.  The Debtors, as they always did

when calculating Customs Deposits, calculated the estimated duties and fees in the ordinary course

of business and in accordance with regulatory requirements.

25.      Even though the Unliquidated Entries are for imports from the first half of 2024,

the typical length of time for the government to liquidate Entries is approximately a year, and the

current government shutdown has further delayed their formal liquidation.  Nevertheless, the

Debtors are aware of no information that there will be a Customs Deficiency Amount for the

Unliquidated Entries.  Again, the Debtors have not been asked to pay a Customs Deficiency

Amount for years over thousands of Entries.  As such, there is no legitimate risk of a Customs

Deficiency Amount being asserted here.

**IV.      Avalon Refuses to Release any Excess Cash Collateral Despite Being Adequately
Protected.**

26.     With the Debtors' liquidation and the temporal limitations for the Surety Entries,

the Unliquidated Entries represent the end of any material Customs liability for the Debtors and

the end of any such exposure for Sureties.  The amount of Cash Collateral ($12,000,000) grossly

exceeds any theoretical Customs Claims related to Surety Entries (estimated at $684,173.48) and

is certainly above any possible Customs Deficiency Amount above the $684,173.48 already

deposited for the Unliquidated Entries.  Moreover, no actual claim likely exists and, even if it did,

the Sureties have missed the Bar Date to assert it.

27.     Because of this, the Debtors have attempted to obtain a release of an agreed amount

of the Cash Collateral from Avalon, but Avalon has informed the Debtors that release of **any**

portion of Cash Collateral will only occur until 90 days after **all** Surety Entries are liquidated.

Therefore, Avalon will not voluntarily release any Cash Collateral notwithstanding the absence of

risk of such a Customs Claim and the Sureties' failure to timely file their own claims.

## BASIS FOR RELIEF

**I.      The Court Should Estimate the Surety Claims as $0 under Section 502(c).**

**A.  Estimation under Section 502(c) is Mandatory.**

28.     "Section 502(c) of the Bankruptcy Code is drafted in mandatory terms. That is, any

contingent or unliquidated claim 'shall' be estimated so long as the 'liquidation' of the particular

claim would 'unduly delay the administration of the case.'"  *In re G-I Holdings, Inc.*, 323 B.R.

583, 599 (Bankr. D.N.J. 2005) (citing 11 U.S.C. § 502(c) (other citations omitted)).  Here, any

theoretical Surety Claims are contingent and unliquidated.  Customs has not determined any final

amount for the Unliquidated Entries, and the Debtors still retain rights to challenge any such

8

determination.  Therefore, as the claims are contingent and unliquidated, the Court is required to estimate them if not doing so would "unduly delay the administration of the case."  11 U.S.C. § 502(c).

29.    This is the case here.  The Debtors are not operating and are liquidating.  Their confirmation hearing is set for November 25, 2025.  The Debtors need to be able to access the Excess Cash Collateral to support the feasibility of the Plan.  Avalon, however, has told the Debtors that Avalon will not release any of the Cash Collateral until the relevant claims are liquidated.  As "the object of [an estimation] proceeding is to establish the estimated value of a creditor's claim for purposes of formulating a reorganization plan," here, the Court may estimate Avalon's and NY Marine's claims to set up whether the Debtors have, in fact, posted excess collateral that the Debtors may utilize for their Plan.

**B.    The Court has Broad Discretion when Estimating a Claim.**

30.    "[A] bankruptcy court has discretion to determine the appropriate method of estimation in light of the particular circumstances of the bankruptcy case before it."  *In re G-I Holdings, Inc.*, 323 B.R. at 599 (citations omitted).  "[A]n estimation procedure 'must be an accommodation to the underlying purposes of the Code.'"  *Id.* (citing *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982)).  A bankruptcy court "is bound by the legal rules which may govern the ultimate value of the claim. For example, when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law."  *Bittner*, 691 F.2d at 136.   However, "there are no other limitations on the court's authority to evaluate the claim save those general principles which should inform all decisions made pursuant to the Code." *Id.*  Further, "courts specifically have recognized that it is often 'inappropriate to hold time-consuming proceedings which would defeat the very purpose of 11 U.S.C. § 502(c)(1) to avoid undue delay."  *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 422-23 (Bankr. S.D.N.Y.

2003) (citations omitted); *id.* ("Bankruptcy Courts have employed a wide variety of methods to estimate claims, including [conducting] a review of pleadings and briefs followed by oral argument of counsel.") (citations omitted).

 **C.**  **The Court Should Estimate the Surety Claims at $0.**

  **i.**  **There Is no Evidence that the Sureties will be Required to Pay Customs.**

 31. The Court should consider the evidence and argument presented by the Debtors in this contested matter and estimate the Surety Claims at $0.  *See In re GBG USA Inc.*, Case No. 21-11369, Docket No. 672 (Bankr. S.D.N.Y. Aug. 2, 2022) (estimating claims at $0).  The Surety Claims should be estimated at $0 because the evidence establishes that the Customs Deposit already posted for the Surety Entries, like all other ($200,000,000+) Customs Deposits posted in the past few years, will be sufficient to pay the underlying Customs Claims.[3]  There is no evidence to suggest that this is the first time in years and for thousands of Entries that the Sureties will owe any amount as a Customs Deficiency Claim.

  **ii.**  **The Surety Claims Should be Disallowed as Late.**

 32. "[A] creditor whose claim is not scheduled, scheduled improperly or scheduled as disputed, contingent or unliquidated must file a proof of claim with the bankruptcy court within the time fixed by that court."  *In re G-I Holdings, Inc.*, 313 B.R. 612, 635 (Bankr. D.N.J. 2004) (citations omitted).  The Surety Claims were not scheduled, and, here, despite receiving the Bar Date Notice, and despite the Debtors contacting Avalon directly concerning the Cash Collateral, the Sureties did not file a proof of claim by the Bar Date (and have not filed any claim).  Further,

---

[3] Though this relief seeks only to estimate the Surety Claims, the Debtors note that the Bankruptcy Court may properly determine a customs issue, whether or not administrative remedies have been exhausted.  28 U.S.C. § 1334(b); *In re Apex Oil Co.*, 131 B.R. 712, 716 (E.D. Mo. 1991) (considering proof of claim filed by Customs) ("[T]he Bankruptcy Court can decide Customs' claim without [the debtor] exhausting its administrative remedies.").

under the Bar Date Order, a party is estopped from asserting a claim if their claim is an "Unscheduled Claim" (a claim in excess or outside of the amount scheduled by the Debtors). Docket No. 758 at ¶ 12.

33.     Therefore, the Surety Claims, even if filed now, would be disallowed. *See e.g.*, *In re Nutri*Bevco, Inc.*, 117 B.R. 771, 778 (Bankr. S.D.N.Y. 1990) (citing Fed. R. Bankr. P. 3003(c)(2)) ("[H]olders of disputed and unliquidated claims … who fail to file timely proofs of claim are not deemed to have allowed claims against the Chapter 11 estate … ") ("In Chapter 11 cases, [Bankruptcy Rule] 3003(c)(2) requires that unscheduled creditors, or creditors with claims scheduled as disputed, contingent or unliquidated, file proofs of claim.").

### iii.     The Surety Claims Should be Disallowed under Section 502(e).

34.     Even if the Court were to consider or allow the Sureties to file a late claim, the claim would be contingent and therefore subject to disallowance under section 502(e). "[S]ection 502(e)(1)(B) ... disallows any claim made by the surety or person secondarily liable with the debtor of any claim for reimbursement or contribution to the extent that that claim is contingent as of the time of allowance or disallowance. A claim of a surety is contingent, in this context, until the surety pays the principal creditor." *In re Pacor, Inc.*, 110 B.R. 686, 689 (E.D. Pa. 1990) (citing Collier on Bankruptcy ¶ 502.05[1]). "No payment can be made to a principal creditor by one secondarily liable until liability has been determined." *Id.* Here, there is no dispute that the Sureties have not paid the principal creditor (Customs).

35.     This is precisely the scenario for which Congress drafted section 502(e). "The equities inherent in § 502(e)(1)(B) … benefit the debtor's direct creditors, not secondarily liable creditors with contingent claims," and "[a]n important consideration is the need for finality in a bankruptcy proceeding. The bankruptcy estate must not be burdened 'by estimated claims contingent in nature.'" *In re Drexel Burnham Lambert Group Inc.*, 148 B.R. 982, 987 (Bankr.

11

S.D.N.Y. 1992) (citing *In re Charter Company*, 862 F.2d 1500, 1502 (11th Cir.1989)).  Here, the Sureties cannot hold up the Debtors' reorganization because of a contingent event (a liquidation above the Customs Deposits and payment of the Sureties to Customs) and subject the Debtors to double exposure.  The Debtors have already paid the Customs Deposits, and should not have creditor recoveries held up on a contingent claim based upon a hypothetical liquidation (that has no legitimate chance of finding Debtor liability above the Customs Deposits).  *See In re Eagle–Picher Indus., Inc.*, 131 F.3d 1185, 1187 (6th Cir. 1997) (Section 502(e) protects reorganizing "debtors from multiple liability on contingent debts.").  Therefore, even if the Sureties were allowed to file late claims, the claims would be disallowed under section 502(e) and should be estimated at $0.

## II.   The Court Should Require Avalon to Release the Excess Cash Collateral for the Plan.

36.   The Debtors' measured request to allow Avalon to reserve and retain approximately $4,000,000 in Cash Collateral in connection with this estimation proceeding is proper because a debtor may set aside "a reserve for a disputed … claim to 'go effective' under  [a proposed] plan [as] a reasonable compromise" between a creditor's alleged right for payment and a debtor's need to emerge quickly.  *U.S. Bank Nat'l Assoc. v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 146 (Bankr. D. Del. 2010) (estimating administrative claim alleged to be $100 million at $4.2 million for plan confirmation purposes) (citing *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. at 419)).  This relief is more than fair to the Sureties, who failed to file a proof claim by the Bar Date, and whose claims (if any and even if filed) would be contingent and subject to disallowance under Bankruptcy Code § 502(e).  Thus, allowing the Sureties to have access to any Cash Collateral – let alone $4,000,000 – is a pragmatic approach to balancing any competing interests and to allow the Plan to go effective.  *See e.g.*, *In re Tonopah Solar Energy*, LLC, No. 20-11844 (KBO), 657 B.R. 393, 2022 WL 982558, at *14 (D. Del. Mar. 31, 2022) ("*Tonopah*") (In plan confirmation

process after filing a request for estimation of $90 million claim alleged by creditor, debtor proposed, and court (J. K. Owens) approved (and District Court affirmed) the use of a $6 million letter of credit for the alleged $90 million claim); *Tonopah*, Docket No. 287 at 96 (J. Owens: "I think it is unreasonable for feasibility purposes to assume that [the objecting creditor] will ultimately have a $90 million dollar claim against the debtor's estate or anything close to that.").

37.    By retaining the reserved Cash Collateral, the Sureties will remain vastly oversecured.  This is because the underlying liability of the Surety Entries is $0.  "When a primary secured creditor … is in fact over secured on its own claims against the debtor, the excess collateral securing that primary creditor's claims is available for distribution among the general unsecured creditors." *In re Trans Mktg.*, 117 F.3d 1417 (5th Cir. 1997).  Said another way, "excess collateral does not belong to the satisfied over-secured creditor; instead, it passes to the estate to be used as the debtor deems is appropriate."  *In re Kerwin-White*, 129 B.R. 375, 384, n. 9 (Bankr. D. Vt. 1991), subsequently aff'd sub nom. *In re Kerwin*, 996 F.2d 552 (2d Cir. 1993).  Distribution of the Excess Cash Collateral is appropriate here because, with the equity cushion provided by the extra $4,000,000 retained by Avalon (compared to the **$684,173.48** in ***already bonded*** Unliquidated Entries) plus the Debtors' sterling record in bonding Customs Claims, all parties are adequately protected.  *See In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 207 (3d Cir.1995) ("[I]n determining whether a secured creditor's interest is adequately protected [for purposes of section 362(d)(1)], most courts engage in an analysis of the property's 'equity cushion'—the value of the property after deducting the claim of the creditor seeking relief from the stay and all senior claims."); *see also Matter of Cardell*, 88 B.R. 627, 632 (Bankr. D.N.J. 1988) (citations omitted) ("Many courts have focused on the presence or absence of an equity cushion in determining whether a secured creditor has adequate protection of his collateral …. An equity cushion has been defined as "the surplus of value remaining after the amount of indebtedness is subtracted from the fair market

value of the collateral."); *In re 1606 New Hampshire Ave. Assocs.*, 85 B.R. 298, 310 (Bankr.E.D.Pa.1998) (concluding that 20% equity cushion was sufficient to establish adequate protection under section 362(d)(1)).

38.     Under the Plan, the Debtors will obtain and use the Excess Cash Collateral for distributions to their estates and to fund their reorganization.  After the Surety Entries are liquidated, any additional excess amount of Cash Collateral will also be made available for distribution under the Plan.  Without the relief sought herein, the Excess Cash Collateral will languish, possibly for months, or even longer.  That result would be as unequitable as it is unwarranted.  The Debtors should be allowed to use the Excess Cash Collateral to fund their Plan. *See* 11 U.S.C. § 1142; *In re W. Nottingham Acad. in Cecil Cnty.*, 662 B.R. 103, 109 (Bankr. D. Md. 2024) (enforcing plan and ordering the return of funds previously paid to secured creditor from a reserve account because the funds were "needed to facilitate the Debtor's reorganization under [its p]lan" and the creditor was "significantly oversecured."); *In re CB Holding Corp.*, No. 10-13683 (MFW), 2012 WL 4462362, at *16 (Bankr. D. Del. Sept. 21, 2012) (confirming plan where "excess collateral shall be returned to the Debtors or the Liquidating Trustee").

**III.     The Court Should Approve a Procedure for the Debtors to Resolve all Surety Claims.**

39.     The Debtors, as always, prefer to resolve and reach agreement rather than litigate issues with creditors, including the Debtors' sureties.  Therefore, the Debtors also request that this Court approve a procedure for the Debtors to resolve any claims between, on the one hand, the Debtors, and, on the other any of the Debtors' sureties, including without limitation the Sureties and the Filing Sureties.

40.     The Debtors propose the following terms (the "Surety Settlement Program"):

a.    The surety or sureties agree that their claims are estimated at $0;

b.    The sureties and applicable lenders will release the Debtors of any claims, including

subrogation claims;

c.   The surety's bond will be discharged;

d.   The surety or sureties will release an agreed amount of any collateral or bond to the

Debtors for use to fund the Plan;

e.   The remaining balance of any bond or collateral will be placed into an escrow for

the benefit of paying any Customs Deficiency Amount of other related claim by

Customs (a "Customs Escrow"); and

f.   The Debtors will seek a channeling injunction to enjoin Customs from pursuing

any Customs Claim against the applicable sureties, and to only have redress only

against the applicable Customs Escrow.

41.     The Debtors seek approval to reach agreement with any surety, after consultation

with the Committee, including without limitation, the Sureties and the Filing Sureties, under the

terms of the Surety Settlement Program.

42.     As to the channeling injunction, the Debtors note that this relief will be sought

separately from this Motion. However, the Court may approve a channeling injunction in

connection with the plan or settlement where a party provides value to the estate.  *See In re United

Steel Enterprises, Inc.*, No. CIV.A. 05-5783 (JAG), 2006 WL 3544583, at *6 (D.N.J. Dec. 8, 2006)

(considering bankruptcy court approved channeling injunction of claims against non-debtors

related to debtor's business (manufacturing of steel pallet racking); *see also Wright v. Bird Glob.,

Inc.*, No. 24-CV-23086-RAR, 2025 WL 1662962, at *8 (S.D. Fla. June 11, 2025) ("The legal

mechanism of a Channeling Injunction and Bar Order were necessary components of the Plan,

because Insurers would not have agreed to provide payments to a Tort Claims Fund if they knew

that they could be sued despite the Injunction and Bar Order's entry.").

43.     Allowing the Debtors to resolve surety disputes consensually will free up excess

cash collateral for the estates, will aid the Plan, and will avoid litigation expense and burden.

## WAIVER OF MEMORANDUM OF LAW

63.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## RESERVATION OF RIGHTS

64.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, including, without limitation, regarding any of the Cash Collateral, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NO PRIOR REQUEST

65.     No prior request for the relief sought in this Motion has been made to this or any other court.

## **<u>NOTICE</u>**

66.    The Debtors will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (a) the office of the U.S. Trustee for the District of New Jersey; (b) the United States Attorney's Office for the District of New Jersey; (c) the Internal Revenue Service; (d) Customs; (e) Avalon (f) the Sureties, Filing Sureties and any known surety for Customs Claims; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order,

in substantially the forms submitted herewith, granting the relief requested herein and such other

relief as is just and proper under the circumstances.

**TOGUT, SEGAL & SEGAL LLP**

*s/ Frank A. Oswald*

Frank A. Oswald (admitted)
550 Broad Street, Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:   (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:   (212) 967-4258
Email:  altogut@teamtogut.com
              eblander@teamtogut.com

*Counsel for Debtors and*
*Debtors in Possession*

## **Exhibit A**

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
        eblander@teamtogut.com

*Counsel for Debtors and Debtors in
Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF BRIAN KANE**

I, Brian Kane, hereby state and declare as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

1

1.      I am the former Chief Executive Officer of the above-captioned debtors and debtors in possession (the "Debtors") and am currently the Principal of Kane Technology Consulting, LLC.  I submit this declaration (the "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Estimating Claims of New York Marine & General Insurance Company and Avalon Risk Management Insurance Agency, LLC at $0; (II) Directing the Turnover of Excess Cash Collateral to be Distributed Pursuant to the Plan; (III) Approving a Procedure for Consensually Resolving Surety Claims  and (IV) Related Relief* (the "Motion").[2]

2.      I graduated from Rutgers University in 1997 with a B.S. in Mechanical Engineering.  I started my career as an engineer, and have held the title of "Manager, Field Applications Engineering," "Director, Applications Engineering," and "Head of Enterprise Sales Engineering" at Bloom Energy before moving to Powin in 2021, where I entered as a "Senior Vice President" and then was promoted to Chief Projects Officer, before becoming Chief Executive Officer in 2025.

3.      While employed by the Debtors and in the ordinary course of business, I routinely supervised employees that handled Customs issues, Customs Claims, and Customs Deposits for the Debtors.  I make this Declaration according to the best of my knowledge and on the basis of my experience and consultation with these employees and professionals of the Debtors.

4.      Pre-petition, the Debtors imported goods from abroad as a part of their business. The United States has imposed customs duties upon certain imports into the United States – including on Powin's pre-petition imports.  The Debtors complied with applicable laws when importing goods and made required payments, including those involving Customs duties.

---

[2] Terms used but not otherwise defined herein shall have the meaning given to them in the Motion.

5.      Over the past few years, the Debtors have posted Customs Deposits for more than 3,000 Entries, with the cumulative amount of Customs Deposits exceeding more than $200,000,000. During this period, the Debtors are not aware of ever having to pay a Customs Deficiency Amount. To the contrary, the Debtors often received refunds from Customs. Recently, Customs has liquidated 93 Entries, and the Customs Deposits were sufficient to cover the Customs Claims in each instance.

6.      Powin utilized various sureties for its importation business, including the Sureties and the Filing Sureties. These sureties ensured ultimate payment of Customs Claims, however, as discussed above, the Debtors posted Customs Deposits in the first instance.

7.      Pre-petition, Powin posted $12,000,000 (the "Cash Collateral") with Avalon for entries imported from November 3, 2023 to June 2, 2024 (the "Surety Entries") pursuant to a written agreement with Avalon (the "Avalon Agreement"). *See* Docket No. 427 at Schedule A/B 7 (listing Collateral security agreement with Avalon and US Customs and Border Protection – Bond No. 23C001N4T in the amount of $12,000,000).

8.      There are currently only six (6) unliquidated Surety Entries (the "Unliquidated Entries"). The Debtors posted Customs Deposits in the cumulative amount of $684,173.48 for these Unliquidated Entries based upon estimated duties and fees. The Debtors, as they always did when calculating Customs Deposits, calculated the estimated duties and fees in the ordinary course of business and in accordance with regulatory requirements.

9.      Even though the Unliquidated Entries are for imports from the first half of 2024, the typical length of time for the government to liquidate Entries is approximately a year, and the current government shutdown has further delayed their formal liquidation. Nevertheless, the Debtors are aware of no information that there will be a Customs Deficiency Amount for the

Unliquidated Entries or that the Debtors will be asked to pay a Customs Deficiency Amount. Again, the Debtors have not been asked to pay a Customs Deficiency Amount for years over thousands of Entries. As such, there is no legitimate risk of a Customs Deficiency being asserted here.

10.     With the Debtors' liquidation and the temporal limitations for the Surety Entries, the Unliquidated Entries represent the end of any material Customs liability for the Debtors.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 4th day of November 2025, at Marblehead, Massachusetts.


*/s/ Brian Kane*
Brian Kane

## Exhibit B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I)
ESTIMATING THE CLAIMS OF NEW YORK MARINE & GENERAL INSURANCE
COMPANY AND AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC AT
$0; (II)  DIRECTING THE  TURNOVER AND USE OF EXCESS CASH COLLATERAL
TO BE DISTRIBUTED PURSUANT TO THE PLAN; (III) APPROVING A
PROCEDURE FOR CONSENSUALLY RESOLVING SURETY CLAIMS AND (IV)
RELATED RELIEF**

The  relief  set forth  on  the  following  pages,  numbered  three  [3]  through  five  [5],  is

**ORDERED**.

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification
number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin
China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241];
(vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin
Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP
[5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].  The Debtors' mailing
address is 20550 SW 115th Avenue Tualatin, OR 97062.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
        eblander@teamtogut.com

*Counsel for Debtors and*
*Debtors in Possession*

(Page 3)

| | |
|---|---|
| Debtors: | Powin, LLC, et al |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Granting Debtors' Motion For Entry Of An Order (I) Estimating The Claims Of New York Marine & General Insurance Company And Avalon Risk Management Insurance Agency, LLC at $0; (II) Directing The Turnover And Use Of Excess Cash Collateral To Be Distributed Pursuant To The Plan; (III) Approving A Procedure For Consensually Resolving Surety Claims And (IV) Related Relief |

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (i) estimating any claims asserted or that may be asserted against the Debtors by New York Marine & General Insurance (the "NY Marine") and Avalon Risk Management ("Avalon," and referred to with NY Marine as the "Sureties") related to any customs duties, fees or other amounts that may be sought to be imposed by United States Customs and Border Protection at $0; (ii) requiring the turnover to the Debtors and use of an amount of no less than $8,000,000 from the $12,000,000 of cash collateral currently held by Avalon (the "Cash Collateral") and return of the balance of the Cash Collateral after liquidation of the Surety Entries; (iv) approving a procedure for consensually resolving surety claims; and (v) related relief, all as more fully set forth in the Motion; and upon the Declarations attached to the Motion and the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3

(Page 4)
Debtors:                Powin, LLC, et al
Case No.                25-16137 (MBK)
Caption of Order:       Order Granting Debtors' Motion For Entry Of An Order (I) Estimating The
                        Claims Of New York Marine & General Insurance Company And Avalon
                        Risk Management Insurance Agency, LLC at $0; (II) Directing The
                        Turnover And Use Of Excess Cash Collateral To Be Distributed Pursuant
                        To The Plan; (III) Approving A Procedure For Consensually Resolving
                        Surety Claims And (IV) Related Relief

hearing thereon establish just cause for the relief granted herein; and upon all of the proceedings

before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY**

**ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Surety Claims are estimated at $0.

3.      Avalon shall immediately turnover the Excess Cash Collateral of $8,000,000, plus

any accrued interest, to the Debtors.

4.      The Debtors may utilize the Excess Cash Collateral for purposes of their Plan,

including distribution and funding the Plan.

5.      Upon the liquidation of all Surety Entries, the Sureties will return all remaining

Cash Collateral to the Debtors or their estates.

6.      The Debtors and any successor's rights are fully preserved regarding any Cash

Collateral above the Excess Cash Collateral.

7.      Notwithstanding any provision in this Order, and after consultation with the

Committee, the Debtors and their sureties are authorized to enter into agreements under the terms

of the Surety Settlement Program and such terms will be effective upon the agreement of the

Debtors and the applicable surety.

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of the Local Rules are satisfied by such notice.

(Page 5)

| | |
|---|---|
| Debtors: | Powin, LLC, et al |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Granting Debtors' Motion For Entry Of An Order (I) Estimating The Claims Of New York Marine & General Insurance Company And Avalon Risk Management Insurance Agency, LLC at $0; (II) Directing The Turnover And Use Of Excess Cash Collateral To Be Distributed Pursuant To The Plan; (III) Approving A Procedure For Consensually Resolving Surety Claims And (IV) Related Relief |

9.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon entry.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

11.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.