# EXHIBIT C

(Liquidating Trust Agreement)

**POWIN LIQUIDATING TRUST**

**POWIN LIQUIDATING TRUST AGREEMENT**

**Dated as of [●], 2025**

*Pursuant to the Joint Combined Disclosure Statement and*

*Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof*

*and the Official Committee of Unsecured Creditors*

*Dated October 15, 2025*

# TABLE OF CONTENTS

**Page**

ARTICLE I AGREEMENT OF TRUST ........................................................................3

    1.1      Creation and Name .......................................................3

    1.2      Purpose ...........................................................................3

    1.3      Transfer of Assets ........................................................4

    1.4      Acceptance of Assets and Assumption of Liabilities ....................................6

ARTICLE II POWERS, TRUST ADMINISTRATION, AND REPORTING ..............................7

    2.1      Powers ............................................................................7

    2.2      General Administration ...............................................10

    2.3      Reporting .......................................................................12

ARTICLE III ACCOUNTS, INVESTMENTS, AND PAYMENTS .......................................13

    3.1      Accounts ........................................................................13

    3.2      Investment Guidelines .................................................14

    3.3      Payment of Operating Expenses ...............................14

    3.4      Distributions to Liquidating Trust Beneficiaries .........................................15

ARTICLE IV TRUSTEE; DELAWARE TRUSTEE ....................................................18

    4.1      Number ..........................................................................18

    4.2      Term of Service ............................................................18

    4.3      Compensation and Expenses of the Trustee ...............................................20

    4.4      Standard of Care; Exculpation ...................................20

4.5      Protective Provisions ....................................................................................222

4.6      Indemnification ...........................................................................................23

4.7      Trustee Independence ..................................................................................25

4.8      No Bond .......................................................................................................25

4.9      Burden of Proof ...........................................................................................25

4.10     Reliance by the Trustee ...............................................................................26

4.11     Books and Records ......................................................................................27

4.12     Delaware Trustee .........................................................................................27

4.13     Trust Meetings .............................................................................................32

4.14     Matters Requiring Consultation with TOC .................................................34

4.15     Matters Requiring Consent of TOC ............................................................34

4.16     Trustee's and TOC's Employment of Professionals. ..................................35

ARTICLE V TAX MATTERS ................................................................................................37

5.1      Treatment of Settlement Consideration Transfer ........................................37

5.2      Income Tax Status .......................................................................................37

5.3      Tax Returns ..................................................................................................38

5.4      Withholding of Taxes and Reporting Related to Liquidating Trust
         Operations ...................................................................................................39

5.5      Valuation .....................................................................................................40

5.6      Expedited Determination of Taxes .............................................................41

5.7      WARN Act Claim Reserve ..........................................................................41

ARTICLE VI LIQUIDATING TRUST OVERSIGHT COMMITTEE ........................................43

6.1        Members; Action by Members. ..................................................................43

6.2        Duties. ........................................................................................................44

6.3        TOC Information Rights; Reports ..............................................................44

6.4        [Reserved.] .................................................................................................45

6.5        Term of Office. ...........................................................................................454

6.6        Appointment of Successor ..........................................................................46

6.7        Compensation and Expenses of the TOC. ..................................................46

6.8        Procedures for Consultation with and Obtaining the Consent of the TOC. 47

ARTICLE VII GENERAL PROVISIONS ....................................................................49

7.1        Irrevocability ..............................................................................................49

7.2        Term; Termination ......................................................................................49

7.3        Amendments ...............................................................................................50

7.4        Severability .................................................................................................51

7.5        Notices ........................................................................................................51

7.6        Successors and Assigns ...............................................................................54

7.7        Limitation on Liquidating Trust Interests for Securities Laws Purposes ....54

7.8        Exemption from Registration ......................................................................544

7.9        Entire Agreement; No Waiver .....................................................................55

7.10       Headings .....................................................................................................55

7.11       Governing Law ...........................................................................................55

7.12       Dispute Resolution ......................................................................................56

7.13       Waiver of Conflicts .....................................................................................59

iii

7.14        Effectiveness ................................................................................................59

7.15        Counterpart Signatures ...........................................................................598

7.16        Waiver of Trial by Jury ...........................................................................599

EXHIBIT 1 DEBTORS WIND-DOWN ADMINISTRATION ......................................................63

EXHIBIT 2 CERTIFICATE OF TRUST OF THE POWIN LIQUIDATING TRUST ...............65

EXHIBIT 3 INVESTMENT GUIDELINES ................................................................................67

## POWIN LIQUIDATING TRUST AGREEMENT

This Powin Liquidating Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into pursuant to the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates thereof and the Official Committee of Unsecured Creditors Docket No. [939] (as may be further amended or modified, the "**Plan**"),[1] in Case No. 25-16137 (MBK) in the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**") by the Trustee identified on the signature pages hereof (the "**Trustee**") and [_____] (the "**Delaware Trustee**"), and the members of the Oversight Committee who are the individuals further identified on the signature page hereto (together with any successors serving in such capacity, the "**TOC**" and, together with the Trustee and the Delaware Trustee, the "**Parties**").

## <u>RECITALS</u>

**WHEREAS**, the Plan contemplates the creation of the Powin Liquidating Trust (the "**Liquidating Trust**");

**WHEREAS**, the Confirmation Order has been entered by the Bankruptcy Court;

**WHEREAS**, pursuant to the Plan, the Liquidating Trust is established to (i) receive and liquidate, sell, or dispose of the Liquidating Trust Assets as set forth in the Plan; (ii) cause all net proceeds of the Liquidating Trust Assets, including proceeds of Causes of Action on behalf of the

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

Liquidating Trust, to be deposited into the Liquidating Trust; (iii) initiate actions to resolve any remaining issues regarding the allowance and payment of Claims including, as necessary, initiation and/or participation in proceedings before the Court; (iv) to take such actions as are necessary or useful to maximize the recoveries to holders of Allowed General Unsecured Claims (the "**Liquidating Trust Beneficiaries**" and the interests in the Liquidating Trust held by such Liquidating Trust Beneficiaries, the "**Liquidating Trust Interests**"); (v) effectuate the wind-down of the Debtors as set forth in the Plan; and (vi) in its capacity as Distribution Agent, to make the payments and distributions ("**Liquidating Trust Distributions**") to Holders of Allowed Claims, including Holders of Allowed Administrative, Priority, and General Unsecured Claims in accordance with the Plan, the Confirmation Order and this Trust Agreement (the "**Governing Documents**") and otherwise implement the Plan;

**WHEREAS**, the Trustee shall administer the Liquidating Trust in accordance with the terms of the Governing Documents;

**WHEREAS**, pursuant to the Plan, the Liquidating Trust is intended to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, and a "grantor trust" for United States federal income tax purposes, pursuant to Sections 671-679 of the Internal Revenue Code (the "**IRC**"), with the Liquidating Trust Beneficiaries treated as the grantors of the Liquidating Trust, except with respect to any Disputed Ownership Fund pursuant to Section 5.3(c); and

**WHEREAS**, pursuant to the Plan, the Trustee shall also serve in the capacity of Wind-Down Officer of the Debtors and their affiliated entities in accordance with the terms of the Confirmation Order, the Plan, and the terms set forth in **Exhibit 1**.

2

**NOW, THEREFORE,** it is hereby agreed as follows:

# ARTICLE I

## AGREEMENT OF TRUST

1.1    **Creation and Name**

There is hereby created a trust known as the "Powin Liquidating Trust." The Trustee of the Liquidating Trust may transact the business and affairs of the Liquidating Trust in the name of the Liquidating Trust, and references herein to the Liquidating Trust shall include the Trustee acting on behalf of the Liquidating Trust. It is the intention of the Parties that the Liquidating Trust qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations and that this Trust Agreement constitute the governing instrument of the Liquidating Trust, except with respect to any Disputed Ownership Fund. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Exhibit 2**.

1.2    **Purpose**

The purposes of the Liquidating Trust are to:

(a)    receive and liquidate the Liquidating Trust Assets pursuant to the terms of the Plan and the Confirmation Order;

(b)    pursue, and if applicable, resolve (by way of settlement, judgment, or otherwise) the Causes of Action, in accordance with the Plan;

(c)      hold, manage, protect and invest the Liquidating Trust Assets, together with any income or gain earned thereon and proceeds derived therefrom (collectively, the "**Trust Assets**"), and monetize any non-liquid Trust Assets, in accordance with the terms of the Governing Documents for the benefit of the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Liquidating Trust;

(d)      make distributions of Trust Assets to Liquidating Trust Beneficiaries in accordance with and subject to the terms of this Trust Agreement and the Plan;

(e)      qualify at all times as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund; and

(f)      engage in any lawful activity that is appropriate and in furtherance of the purposes of the Liquidating Trust to the extent consistent with the Governing Documents.

1.3      **Transfer of Assets**

Pursuant to, and in accordance with Article 13.3(c) of the Plan, the Liquidating Trust has received the Liquidating Trust Assets to fund the Liquidating Trust. The Liquidating Trust Assets and any other assets to be transferred to the Liquidating Trust under the Plan will be transferred to the Liquidating Trust free and clear of any liens or other claims by the Debtors, any creditor, or other entity.

Notwithstanding anything to the contrary herein or in the Plan, the Liquidating Trust shall waive, and shall not pursue or seek to monetize, any and all preference actions, including which may be asserted pursuant to section 547 of the Bankruptcy Code, against any Contributing Direct

Claim Holder. For the avoidance of doubt, all preference actions against entities that are not a Contributing Direct Claim Holder shall not be waived.

The Direct Claims Trust and this Liquidating Trust have a common, joint interest in the Causes of Action. Pursuant to the terms of this Trust Agreement, the Trustee is authorized to utilize any privileged documents or communications in his or her capacity as Direct Claims Trustee, and the Trustee is authorized to utilize any privileged documents belonging to the Direct Claims Trust in his or her capacity as Trustee, in each case without any prior notification to the Contributing Direct Claim Holders, and the Trustee is authorized to receive and utilize any such privileged documents or communications in his or her discretion, in connection with the Causes of Action.

For purposes of this Section 1.3, "privilege" means attorney-client privilege or work product protection (or both as the case may be) as those terms are defined in Federal Rule of Evidence 502(g) or any other privilege or immunity available under any applicable law. All communications between the Trustee and the TOC shall be deemed privileged and confidential communications, it being acknowledged that the subject matter of such communications is with respect to common litigation interests. Such communications shall not be disclosed to any third parties except as may be required by an order of a court of competent jurisdiction upon prior notice to the Trustee or to the extent permitted under the cooperation provisions of this Section 1.3; provided, however, that the Trustee may reference or utilize such communications in a complaint or other court pleading; provided, further, that the Trustee takes customary precautions to preserve the confidentiality of such documents including but not limited to filing such complaints or other court pleadings under seal or redact references to such documents and/or communications, as appropriate, unless a court of competent jurisdiction orders otherwise. For the avoidance of doubt,

the TOC, each member serving on the TOC, and each Liquidating Trust Beneficiary shall have no right, title or interest in and/or to any privilege or immunity that the Contributing Direct Claim Holders transfer, assign, and deliver to the Direct Claims Trust and the Trustee in his or her capacity as the Direct Claims Trustee, and such privilege and immunity shall only be the Direct Claims Trust's and Trustee's in its capacity as the Direct Claims Trustee to preserve, assert or waive.

1.4      **Acceptance of Assets and Assumption of Liabilities**

(a)      In furtherance of the purposes of the Liquidating Trust, the Liquidating Trust hereby expressly accepts the transfer to the Liquidating Trust of the Liquidating Trust Assets in the time and manner as, and subject to the terms, contemplated in the Plan.

(b)      In furtherance of the purposes of the Liquidating Trust, except as otherwise provided in this Trust Agreement or the Plan, the Liquidating Trust shall have and retain any and all rights and defenses the Debtors had with respect to any Cause of Action immediately before the Effective Date to the extent necessary to administer such Cause of Action in accordance with this Trust Agreement and the Plan.

(c)      Notwithstanding anything to the contrary herein, no provision herein shall be construed or implemented in a manner that would cause the Liquidating Trust to fail to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations.

(d)      In this Trust Agreement, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

(e)      The Bankruptcy Court shall have continuing jurisdiction over the Liquidating Trust, provided, however, that the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the Liquidating Trust.

## ARTICLE II

## POWERS, TRUST ADMINISTRATION, AND REPORTING

2.1    **Powers**

(a)      The Trustee is and shall act as a fiduciary to the Liquidating Trust in accordance with the provisions of the Governing Documents. The Trustee shall, at all times, administer the Liquidating Trust in accordance with the purposes set forth in Section 1.2 above and the Plan. Subject to the limitations set forth in the Governing Documents, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfil the purposes of the Liquidating Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2 below, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)      Except as required by applicable law or as otherwise specified herein or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)      Without limiting the generality of Section 2.1(a) above, and except as limited herein, including as set forth in Sections 4.14 and 4.15 of this Trust Agreement, or by the Plan, the Trustee shall have the power to:

(i)        receive and hold the Liquidating Trust Assets and exercise all rights with respect thereto;

(ii)       invest the monies held from time to time by the Liquidating Trust in accordance with the Investment Guidelines pursuant to Section 3.2 below;

(iii)      incur expenses and other obligations of the Liquidating Trust necessary to carry out the purposes of the Liquidating Trust in accordance with this Trust Agreement and the Plan, and pay or satisfy such obligations from the Liquidating Trust Assets as set forth in this Trust Agreement and the Plan;

(iv)      to borrow such sums of money or enter into litigation funding agreements, at any time and from time to time, for such periods of time, upon such terms and conditions, from such Persons, for such purposes as the Trustee deems reasonable;

(v)       establish such funds, reserves, and accounts within the Liquidating Trust, as the Trustee deems useful in carrying out the purposes of the Liquidating Trust;

(vi)      investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtors held against any Entity;

(vii)     establish, supervise, and administer the Liquidating Trust and make distributions to Liquidating Trust Beneficiaries pursuant to the terms of Governing Documents;

(viii)    appoint such officers and retain such consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Liquidating Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her

discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(ix)     pay reasonable compensation from the Liquidating Trust Assets for any of the Liquidating Trust's consultants, advisors, independent contractors, experts, and agents for legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Liquidating Trust requires, as well as the fees and expenses of the TOC and TOC Professionals, in each case, subject to the procedures set forth herein;

(x)     pay reasonable compensation from the Liquidating Trust Assets for the Trustee, the Delaware Trustee, consultants, advisors, independent contractors, experts and agents, and reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder, in each case, subject to the procedures set forth herein;

(xi)     enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the Liquidating Trust, provided such arrangements are not material and do not conflict with any other provision of this Trust Agreement or the Plan;

(xii)     in accordance with Section 4.4 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 4.4 below), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, and

representatives. No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below;

(xiii)    commence and pursue viable Causes of Action in accordance with the Plan and this Trust Agreement;

(xiv)    object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; and

(xv)    exercise any and all other rights, and take any and all other actions as are permitted, of the Trustee in accordance with the terms of this Trust Agreement and the Plan.

(d)    The Liquidating Trust shall not have the power to guarantee any debt of other persons.

(e)    The Trustee shall endeavour to make timely distributions and not unduly prolong the duration of the Liquidating Trust.

(f)    The Trustee shall consult with the TOC on the matters set forth in Section 4.14 below. The Trustee shall obtain the consent of the TOC prior to taking action with respect to the matters set forth in Section 4.15 below, as and to the extent set forth therein.

2.2    **General Administration**

(a)    The Trustee shall act in accordance with the Governing Documents. In the event of a conflict between the terms of this Trust Agreement and the Plan, the terms of the Plan shall control. For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

10

(b)    The Trustee shall (i) timely file such tax returns and pay any taxes imposed on the Liquidating Trust in accordance with Section 5.3, (ii) comply with all applicable reporting and withholding obligations in accordance with Section 5.4, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Liquidating Trust as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund, and (iv) take no action that could cause the Liquidating Trust to fail to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund or the WARN Act Claim Reserve.

(c)    Other than the obligations of the Trustee specifically set forth in the Governing Documents, the Trustee shall have no obligations of any kind or nature with respect to his or her position as such.

(d)    The Liquidating Trust and the Direct Claims Trust shall fully cooperate with each other with respect to their respective investigation and/or prosecution of any Causes of Action. As indicated in Article I, Section 1.3 of this Trust Agreement, cooperation shall include, but not be limited to, sharing and/or exchanging documents obtained in discovery and such other forms of mutual cooperation that, in the sole discretion of the Trustee is appropriate and in the best interest of the Liquidating Trust and the Direct Claims Trust. Such cooperation shall be subject to all available common interest protection and/or privileges applicable to the foregoing investigation and/or prosecution.

(e)    In the event that (i) the Liquidating Trust and the Direct Claims Trust prosecute related claims against a single defendant, (ii) a recovery is received related to such claims, and (iii)

11

the Trustee determines in his or her commercially reasonable judgment that there is no clear allocation of such recovery between claims brought by the Liquidating Trust and claims brought by the Direct Claims Trust, the Trustee shall allocate such recovery to the Liquidating Trust and the Direct Claims Trust in accordance with the Direct Claims Trust Agreement.

2.3    **Reporting**

(a)    The Trustee shall timely prepare, file and distribute such statements, reports and submissions to the extent required by applicable law.

(b)    The Trustee shall cause to be prepared and filed with the Bankruptcy Court, no later than thirty-one (31) days after June 30 and December 31 of each calendar year, a semi-annual report (the "**Semi-Annual Report**") regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it and other matters relating to the implementation of the Plan.

(c)    The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event no later than one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing special-purpose financial statements of the Liquidating Trust (including, without limitation, a special-purpose statement of assets, liabilities and net claimants' equity, a special-purpose statement of changes in net claimants' equity and a special-purpose statement of cash flows). The Trustee shall not be required to obtain an audit of the Annual Report by a firm of independent certified public accountants. The Annual Report shall be made available to the Liquidating Trust Beneficiaries by means of actual notice, provided, however, the Trustee may post the Annual Report on a website maintained by

the Liquidating Trust in lieu of actual notice to each Liquidating Trust Beneficiary (unless otherwise required by law) (the "**Website**").

# ARTICLE III

# ACCOUNTS, INVESTMENTS, AND PAYMENTS

3.1     **Accounts**

(a)     The Trustee shall maintain one or more accounts (the "**Trust Accounts**") on behalf of the Liquidating Trust with one or more financial depository institutions (each a "**Financial Institution**").

(b)     The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to the considerations set forth in Section 3.1(a) above.

(c)     The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the Liquidating Trust Beneficiaries and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and, except as specifically designated as such in accordance with the provisions of Section 5.3(c) or 5.7 below, are not intended to be subject to separate entity tax treatment as a "disputed claims reserve," a "disputed ownership fund," or a "qualified settlement fund" within the meaning of the IRC or Treasury Regulations.

3.2    **Investment Guidelines**

(a)    The Trustee may invest the Trust Assets in accordance with the Investment Guidelines, attached hereto as **Exhibit 3** (the "**Investment Guidelines**").

(b)    In the event the Liquidating Trust holds any non-liquid assets, the Trustee shall own, protect, oversee, and monetize such non-liquid assets in accordance with the Governing Documents. This Section 3.2(b) is intended to modify the application to the Liquidating Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

(c)    Cash proceeds received by the Liquidating Trust in connection with its monetization of the non-liquid Trust Assets shall be invested in accordance with the Investment Guidelines until needed for the purposes of the Liquidating Trust as set forth in Section 1.2 above.

3.3    **Payment of Operating Expenses**

(a)    All operating expenses of the Liquidating Trust shall be paid from the Liquidating Trust as provided in the Plan. The Direct Claims Trust expenses will be advanced by the Liquidating Trust and will be repaid upon realization of a recovery of Direct Claims Trust Assets before distribution of any proceeds to the beneficiaries of the Direct Claims Trust or any cooperation payment to the Liquidating Trust. None of the Trustee, Delaware Trustee, the TOC, the Liquidating Trust Beneficiaries, nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any operating expense or other liability of the Liquidating Trust. Except as expressly set forth in the Plan, none of the Debtors, nor any of their officers, agents, advisors, professionals or employees shall be liable for the payment of any

14

operating expense or other liability of the Liquidating Trust, the Trustee, the Delaware Trustee or the TOC. To the extent that the Trustee determines that the Liquidating Trust is likely to incur a cash shortfall prior to the termination and winding up of the Liquidating Trust, the Trustee may determine to establish cash reserves from the corpus of the Liquidating Trust, which cash reserves shall be allocated equitably to the Liquidating Trust Beneficiaries by the Trustee in his or her judgment. Notwithstanding the foregoing, any fees and expenses attributable to the WARN Act Claim Reserve Account, as determined by the Liquidating Trustee in its reasonable discretion, shall be paid only out of assets held in the WARN Act Claim Reserve Account.

3.4    **Distributions to Liquidating Trust Beneficiaries**

(a)    The Trustee will make distributions to Liquidating Trust Beneficiaries in a fair, consistent and equitable manner in accordance with the Governing Documents.

(b)    Distributions to Liquidating Trust Beneficiaries shall be made, as determined by the Trustee in his or her discretion subject to the terms of the Plan, provided, however, the Liquidating Trust must distribute at least annually to the Liquidating Trust Beneficiaries its net income plus all net proceeds from the sale of assets, except that the Liquidating Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its assets or to meet claims and contingent liabilities (including disputed claims). To the extent there is not sufficient Cash transferred to the Liquidating Trust on the Effective Date to satisfy the Distributions required to be made to the holders of Allowed Administrative and Priority Claims, holders of such Allowed Claims shall be considered Liquidating Trust Beneficiaries (including, but not limited to, for purposes of Articles III, V, and VII) until such time as the shortfall is satisfied

15

and their Allowed Claims are paid in full in accordance with the Plan. Thereafter, distributions should be made pro rata based on their Liquidating Trust Interests.

(c)    The Liquidating Trust may withhold or deduct from amounts distributable to any Person any and all amounts, determined in the Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement (including, without limitation, tax withholding in accordance with Section 5.4 below). Any Trust Assets which are undistributable in accordance with this Section 3.4 as of the termination of the Liquidating Trust shall (i) revert to the Liquidating Trust (notwithstanding any applicable foreign, federal or state escheat, abandoned, or unclaimed property laws to the contrary); (ii) the Allowed General Unsecured Claim with respect to such undistributable amount shall be released, settled, compromised and forever barred, and (iii) the undistributable amount shall be reallocated to the other Allowed General Unsecured Claims, in accordance with provisions of the Governing Documents.

(d)    The Trustee may retain a distribution agent for the effective administration and distribution of amounts payable to Liquidating Trust Beneficiaries; provided, however, that such distribution agent shall have no greater authority than, and shall be subject to the same restrictions as, the Trustee under this Trust Agreement.

(e)    Subject to Bankruptcy Rule 9010, any distribution to a Liquidating Trust Beneficiary shall be made: (1) at the addresses set forth on the respective proofs of Claim filed by such holders; (2) at the address set forth in any written notices of address changes delivered to the Trustee after the date of any related proof of Claim; or (3) at the address reflected in the schedules if no proof of Claim is filed with the Trustee and the Trustee has not received a written notice of a

16

change of address.  Except as set forth in the Plan, if any Liquidating Trust Distribution or other communication from the Liquidating Trust is returned as undeliverable, no further Liquidating Trust Distribution shall be made to such holder unless the Trustee is notified in writing of such holder's then current address.  Undeliverable Liquidating Trust Distributions shall remain in the possession of the Trustee until the earlier of (i) such time as a Liquidating Trust Distribution becomes deliverable or (ii) such undeliverable Liquidating Trust Distribution becomes unclaimed property pursuant to the provisions of the Plan and this Trust Agreement.  Except as required by law, the Trustee (or its duly authorized agent) shall have no obligation to locate any Liquidating Trust Beneficiary.

(f)      After final Liquidating Trust Distributions have been made in accordance with the Governing Documents, and adequate provision has been made for all final obligations of the Liquidating Trust, the Trustee shall have the authority to direct the remaining Trust Assets to a tax-exempt organization as selected by the Trustee in his or her discretion.

(g)      Checks issued to Liquidating Trust Beneficiaries shall be null and void if not negotiated within one hundred eighty (180) calendar days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Trustee by the Liquidating Trust Beneficiary to whom such check was originally issued.  Any Allowed General Unsecured Claim in respect of such a voided check shall be made within one hundred eighty (180) calendar days after the date of issuance of such check.  If no request is made as provided in the preceding sentence, the check shall be deemed undistributable and shall be subject to the provisions of Section 3.4(c).

(h)     Cash payments to foreign Liquidating Trust Beneficiaries may be made, at the option of the Trustee, in such funds and by such means as are necessary or customary in the foreign jurisdiction of such foreign holder.

(i)     The Trustee shall have the discretion to determine the timing of Liquidating Trust Distributions in the most efficient and cost-effective manner possible; provided, however, that the Trustee's discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

(j)     Notwithstanding any provision in the Governing Documents to the contrary, the Trustee, in the Trustee's sole discretion, may decline to make any distribution of $100 or less, due to the economic inefficiency of making a distribution of such a de minimis amount.

## ARTICLE IV

## TRUSTEE; DELAWARE TRUSTEE

### 4.1     Number

In addition to the Delaware Trustee appointed pursuant to Section 4.12 below, there shall be one (1) Trustee who shall be the person named on the signature pages hereof.

### 4.2     Term of Service

(a)     The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the Liquidating Trust pursuant to Section 7.2 below.

18

(b)      The Trustee may resign at any time upon written notice filed with the Bankruptcy Court and delivered to the TOC. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)      The Trustee may be removed by the Bankruptcy Court upon motion by the TOC in the event the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause. Other good cause shall include, without limitation, (i) fraud, self-dealing, intentional misrepresentation, wilful misconduct, indictment for or conviction of a felony, in each case whether or not connected to the Liquidating Trust, or (ii) a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder.

(d)      In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee, such vacancy shall be filled by the TOC as set forth herein. The TOC will nominate an individual to serve as successor Trustee.  If the majority of the TOC then in office agree upon a successor Trustee, then, subject to the approval of the Bankruptcy Court, such individual shall become the Trustee.  In the event that a majority of the TOC then in office cannot agree on a successor Trustee, the matter will be resolved pursuant to Section 7.12 below.

(e)      Immediately upon the appointment of any successor Trustee pursuant to Section 4.2(d) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No

19

predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(f)     Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) above, (iii) his or her removal pursuant to Section 4.2(c) above, and (iv) the termination of the Liquidating Trust pursuant to Section 6.2 below.

## 4.3     **Compensation and Expenses of the Trustee**

(a)     The Trustee shall receive compensation on an hourly basis for its service as Trustee on matters related to the operation of the Trust.  The hourly rate shall be the Trustee's usual and customary rate then in effect, which is currently $855 per hour (subject to the consent of the TOC, which consent shall not be unreasonably withheld or delayed).

(i)     The Liquidating Trust will promptly reimburse the Trustee for all reasonable and documented out-of-pocket costs and expenses incurred by the Trustee in connection with the performance of his or her duties hereunder.

## 4.4     **Standard of Care; Exculpation**

(a)     As used herein, the term "**Trust Indemnified Party**" shall mean each of (i) the Trustee, (ii) the Delaware Trustee, (iii) the TOC and (iv) the officers, employees, consultants, advisors, and agents of each of the Liquidating Trust, the Trustee and the TOC, including the Trustee Professionals and the TOC Professionals.

(b)     To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall not have or incur any liability for actions taken or omitted in their capacities as Trust Indemnified Parties, or on behalf of the Liquidating Trust, except those acts found by a final order of a court of competent jurisdiction ("**Final Order**") to be arising out of their wilful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Liquidating Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or this Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case except for any actions or inactions found by Final Order to be arising out of their wilful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Liquidating Trust.

(c)     To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Liquidating Trust or the Liquidating Trust Beneficiaries, it is hereby understood and agreed by the Parties that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties; provided, however, that with respect to the Trust Indemnified Parties other than the Delaware Trustee the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 4.4 and its subparts.

21

4.5     **Protective Provisions**

(a)     Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 4.5.

(b)     In the event the Trustee retains counsel (including at the expense of the Liquidating Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder. Such attorney-client privilege shall be vested solely in the Trustee, on behalf of the Liquidating Trust, and not in the TOC, or any other person, committee or subcomponent of the Liquidating Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of an Allowed General Unsecured Claim. A successor Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Party or other person may raise any exception to the attorney-client privilege described herein as any such exceptions are hereby waived by all Parties.

(c)     No Trust Indemnified Party shall be personally liable under any circumstances, except for his or her own wilful misconduct, bad faith, gross negligence or fraud as determined by a Final Order.

(d)    No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties and powers hereunder.

(e)    In the exercise or administration of the Liquidating Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

4.6    **Indemnification**

(a)    To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall be entitled to indemnification and reimbursement for reasonable fees and expenses (including attorneys' fees and costs but excluding taxes in the nature of income taxes imposed on compensation paid to the Trust Indemnified Parties) in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Liquidating Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case, except for any actions or inactions found by Final Order to be arising out of their wilful misconduct, bad faith,

gross negligence or fraud. Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Trust Assets.

(b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Liquidating Trust shall be paid by the Liquidating Trust from the Liquidating Trust Assets in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by Final Order that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Liquidating Trust. The Trustee may, in his or her discretion, authorize an advance of reasonable expenses, costs and fees (including attorneys' fees and costs) to be incurred by or on behalf of the Trust Indemnified Parties, as set forth herein.

(c)     The Trustee shall purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include insurance with respect to liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)     The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party

24

hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)    The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

## 4.7    **Trustee Independence**

The Trustee shall not act as an attorney, agent, or other professional for any Liquidating Trust Beneficiary or any holder of any Allowed General Unsecured Claim. For the avoidance of doubt, this Section 4.7 shall not be applicable to the Delaware Trustee.

## 4.8    **No Bond**

Neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## 4.9    **Burden of Proof**

In any proceeding brought by any of the Debtors, or any other person who is bound by this Trust Agreement challenging any action, determination or failure to act of the Trustee in discharge of his or her duties under this Trust Agreement on the basis that such action, determination or failure constitutes gross negligence, wilful misconduct or fraud, the person bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act

constituted gross negligence, wilful misconduct, or fraud. Notwithstanding anything to the contrary in this Trust Agreement or any duty otherwise existing at law or equity, each determination, action or failure to act of the Trustee in the discharge of his or her duties under this Trust Agreement is, to the extent consistent with this Trust Agreement, hereby deemed to not constitute a breach of this Trust Agreement or any duty hereunder or existing at law, in equity or otherwise.

4.10    **Reliance by the Trustee**

The Trustee may absolutely rely, and shall be fully protected in acting or refraining from acting if he or she relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that he or she has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.  In the absence of gross negligence, wilful misconduct, or fraud in respect of the Trustee's duties as found by a final and non-appealable court of competent jurisdiction, or material breach of this Trust Agreement, the Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon. The Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Trust Agreement, the Plan or any other document executed in connection therewith, and the Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

4.11    **Books and Records**

Upon notice to the Bankruptcy Court and the TOC, the Trustee shall be free, in his or her

discretion to abandon, destroy or otherwise dispose of any books and records in his possession that

the Trustee deems not necessary for the continued administration of the Plan and not required to

be retained under applicable law, without the need for any order of the Bankruptcy Court, and shall

have no liability for same.  This notice provision shall not create any right by any third party to

access to privileged or confidential information held by the Liquidating Trust.

4.12    **Delaware Trustee**

(a)    There shall at all times be a Delaware Trustee to serve in accordance with the

requirements of the Act. The Delaware Trustee shall either be (i) a natural person who is at least

twenty-one (21) years of age and a resident of the State of Delaware or (ii) a legal entity that has

its principal place of business in the State of Delaware, otherwise meets the requirements of

applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one

or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to

be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 4.12, it

shall resign immediately in the manner and with the effect hereinafter specified in Section 4.12(c)

below. For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and

obligations as expressly provided by reference to the Delaware Trustee hereunder. The Trustee

shall have no liability for the acts or omissions of any Delaware Trustee.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the

Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein. The

Delaware Trustee shall be a trustee of the Liquidating Trust for the sole and limited purpose of

27

fulfilling the requirements of Section 3807(a) of Chapter 38 of title 12 of the Delaware Code, 12

Del. C. Section 3801 *et seq.* (the "**Act**") and for taking such actions as are required to be taken by

a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and

obligations of the Delaware Trustee shall be limited to accepting legal process served on the

Liquidating Trust in the State of Delaware and the execution of any certificates required to be filed

with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute

under Section 3811 of the Act. There shall be no other duties (including fiduciary duties) or

obligations, express or implied, at law or in equity, of the Delaware Trustee. These duties shall be

deemed purely ministerial in nature, and the Delaware Trustee shall not be liable except for the

performance of such duties, and no implied covenants or obligations shall be read into this Trust

Agreement against the Delaware Trustee. To the extent that, at law or in equity, the Delaware

Trustee has duties (including fiduciary duties) and liabilities relating to the Liquidating Trust or

the Liquidating Trust Beneficiaries, such duties and liabilities are replaced by the duties and

liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware

Trustee shall have no liability for the acts or omissions of any Trustee. Any permissive rights of

the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a

duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable

for other than its wilful misconduct, bad faith, gross negligence or fraud. The Delaware Trustee

shall be under no obligation to exercise any of the rights or powers vested in it by this Trust

Agreement at the request or direction of the Trustee or any other person pursuant to the provisions

of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware

Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the

costs, expenses and liabilities that may be incurred by it in compliance with such request or

direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee. The Delaware Trustee may conclusively rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties, not only as to due execution, validity and effectives, but also as to the truth and accuracy of any information contained therein. The Delaware Trustee may, at the expense of the Liquidating Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(c)     The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 4.12(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.12(d) below; provided further that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee. If the Trustee does not act within such sixty (60) day period, the Delaware Trustee, at the expense of the Liquidating Trust, may apply to the Court of Chancery

of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)    Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement. The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the Liquidating Trust in accordance with Section 3810 of the Act.

(e)    Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(f)      The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the Liquidating Trust and the Delaware Trustee, which compensation shall be paid by the Liquidating Trust. Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement. The terms of this paragraph shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)      The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or non-performance of any provision of any other agreement, instrument or document, other than this Trust Agreement. Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Liquidating Trust, the Trustee or any other person, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party. The Delaware Trustee may assume performance by all such persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person. The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

(h)    The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

(i)    In no event shall the Delaware Trustee be responsible or liable for special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Delaware Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

4.13    **Trust Meetings.**

(a)    **Regular Meeting**.  Unless otherwise agreed to by the TOC, The Trustee shall hold regular Liquidating Trust meetings with the TOC not less than quarterly, which may be held at such times and at such places (including remotely by phone or video conference) as may be determined from time to time by the Trustee, in consultation with the TOC.  For the avoidance of doubt, the Delaware Trustee shall not be required or permitted to attend any meetings of the Trustee contemplated by this Section 4.13.

(b)    **Special Meetings**.  Special meetings of the Trustee may be called by the Trustee by giving written notice to the TOC not less than one (1) Business Day prior to the date of the meeting.  Any such notice shall include the time, place, and purpose of the meeting, given by

32

overnight courier, personal delivery, facsimile, electronic mail or other similar means of communication.  Notice shall be addressed or delivered to the address as shown upon the records of the Trust or as may have been given to the Trustee for purposes of notice.  Notice by overnight courier shall be deemed to have been given one (1) Business Day after the time that written notice is provided to such overnight courier.  Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or actually transmitted by the person giving the notice by electronic means to the recipient.

(c)    **Participation in Meetings by Telephone Conference**.  The Trustee may convene, and persons may participate in, a meeting by conference telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all persons participating in such meeting can hear one another. Participation in a meeting pursuant to this Section 4.13(c) shall constitute presence in person at such meeting.

(d)    **Waiver of Notice**.  Notice of a meeting need not be given to any person who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed with the Trust records or made a part of the minutes of the meeting. Attendance at a meeting shall constitute a waiver of notice of such meeting. Neither the business to be transacted at, nor the purpose of, any Trust meeting need be specified in any waiver of notice.

(e)    **Adjournment**.  A meeting may be adjourned by the Trustee to another time and place.

4.14    **Matters Requiring Consultation with TOC**

The Trustee shall consult with the TOC on any extraordinary circumstance which could have a material impact on the Liquidating Trust, including without limitation, entering into arrangements not specified in Section 2.1(c) with third parties that the Trustee may deem useful in carrying out the purposes of the Liquidating Trust, subject in all respects to such arrangements not conflicting with any other provision of this Trust Agreement or the Plan.

4.15    **Matters Requiring Consent of TOC**

The Trustee shall obtain the consent of the TOC, or, otherwise, Bankruptcy Court approval in the event of a dispute in accordance with Section 7.12 hereof, for the items listed below:

(a)    Any proposed procedures to ensure that decisions are made consistent with the respective fiduciary duties owed to the Liquidating Trust and the Direct Claims Trust in the event of a conflict between the Liquidating Trust and the Direct Claims Trust with respect to litigation strategy, settlement or resource allocation;

(b)    Settlement, abandonment, or dismissal of any Claim or Cause of Action asserted by the Liquidating Trust in an amount greater than $2,500,000;

(c)    Settlement of (i) any disputed General Unsecured Claim against the Estates in an amount that is either greater than or reduces the face amount of such Claim by $5,000,000, or (ii) an asserted Administrative Claim or Priority Claim in an amount greater than $1,000,000 or outside the anticipated range provided by the Committee's financial advisor on the Effective Date, provided that the TOC has the power to increase but not reduce these requirements if they prove to be too low;

34

(d)     Any Distribution on Claims other than those required on the Effective Date under claim settlements;

(e)     Any proposed modification to the indemnification provisions of the Trust Agreement;

(f)     Any proposed sale, transfer or exchange of Liquidating Trust Assets above $5,000,000 (any proposed sale of Liquidating Trust Assets below such amount shall not require TOC consent);

(g)     Retention of litigation professionals to pursue Claims and Causes of Action on behalf of the Liquidating Trust, other than Liquidating Trust general/local counsel, and terms of such retention;

(h)     To borrow such sums of money or enter into litigation funding agreements;

(i)     Any proposed material modifications to the Trust Agreement; and

(j)     Any proposed modification to the compensation of the Trustee other than routine hourly rate increases.

The consent of the TOC shall not be unreasonably withheld, conditioned, or delayed.

4.16    **Trustee's and TOC's Employment of Professionals.**

(a)     Subject to the limitations set forth in Section 4.15 of this Agreement, the Trustee may, but is not required to, retain and/or consult accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties (the "**Trustee Professionals**")

deemed appropriate by the Trustee to assist in matters for the Liquidating Trust within the Trustee's purview.

(b)      The TOC may, but is not required to, retain and/or consult, legal counsel and such other parties deemed appropriate by the TOC to assist in matters within the TOC's purview (the "**TOC Professionals,**" and with Trustee Professionals, the "**Liquidating Trust Professionals**") where such retention of separate professionals (other than existing Trust professionals) is necessary to discharge the TOC's duties, provided that no TOC Professionals may be retained to act on behalf of any holder of an Allowed General Unsecured Claim. The fees of such counsel, if retained, shall be reasonable and shall not exceed $15,000 on a monthly basis in the absence of a dispute.

(c)      Prior to payment of any fees of a professional retained by the Truste or the TOC, the professional shall circulate a monthly fee statement detailing the compensation sought, including time records with a description of the tasks performed, and expenses incurred for which reimbursement is sought to the Trustee and the TOC.  The Trustee and the TOC shall have 10 days to review and dispute such monthly fee statements, and following such review the Trustee is authorized to pay any undisputed portion of such fee statements.  If any amount is disputed and cannot be resolved consensually, the Bankruptcy Court shall resolve the disputed fees on motion by the professional, the Trustee, or the TOC.

## ARTICLE V

## TAX MATTERS

### 5.1    Treatment of Settlement Consideration Transfer

For all United States federal income tax purposes, all Parties shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (i) a transfer of the Liquidating Trust Assets (subject to any obligations related to those assets) directly to the Liquidating Trust Beneficiaries, followed by (ii) the transfer by such Liquidating Trust Beneficiaries of such Liquidating Trust Assets to the Liquidating Trust in exchange for Liquidating Trust Interests (other than the Trust Assets held as a "disputed ownership fund" within the meaning of Section 1.468B-9 of the Treasury Regulations, if any ("**Disputed Ownership Fund**")). Accordingly, the Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes (and, to the extent permitted, for state and local income tax purposes) as the grantors and owners of their respective shares of the Liquidating Trust Assets (other than the Trust Assets allocable to the Disputed Ownership Fund, if any).

### 5.2    Income Tax Status

(a)    For United States federal income tax purposes (and for purposes of all state, local and other jurisdictions to the extent applicable) and other than as provided pursuant to Section 5.3(c), this Liquidating Trust shall be treated as a liquidating trust pursuant to Section 301.7701-4(d) of the Treasury Regulations and as a grantor trust pursuant to Sections 671-679 of the IRC. To the extent consistent with Revenue Procedure 94-45 and not otherwise inconsistent with this Trust Agreement, this Trust Agreement shall be construed so as to satisfy the requirements for liquidating trust status.

(b)    The Liquidating Trust shall at all times to be administered so as to constitute a domestic trust for United States federal income tax purposes.

5.3    **Tax Returns**

(a)    In accordance with Section 6012 of the IRC and Section 1.671-4(a) of the Treasury Regulations, the Trustee shall file with the IRS annual tax returns for the Liquidating Trust on Form 1041 as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. In addition, the Trustee shall file in a timely manner for the Liquidating Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. Allocations of Liquidating Trust taxable income among the holders of Liquidating Trust Interests (other than taxable income allocable to, or retained on account of, a disputed claims reserve or disputed ownership fund) shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its assets (valued at their tax book values, and other than assets allocable to any disputed claims reserve) to the holders of the Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidation distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Effective Date, or, if later, the date such assets were acquired by the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, applicable Treasury Regulations, and other

applicable administrative and judicial authorities and pronouncements.  Notwithstanding anything

to the contrary in this Section 5.3(a), the Trustee shall be entitled to make such adjustments to

allocations of Liquidating Trust taxable income and taxable loss as it believes would be fair and

equitable to reflect the sharing of economics among the holders of Liquidating Trust Interests.

(b)    The Liquidating Trust shall be responsible for payment, from the Liquidating Trust

Assets, of any taxes imposed on the Liquidating Trust (including any taxes imposed on the

Disputed Ownership Fund) or the Liquidating Trust Assets.  In accordance therewith, any taxes

imposed on the Disputed Ownership Fund or its assets will be paid from the Liquidating Trust

Assets.

(c)    The Trustee may timely elect to treat any Liquidating Trust Assets allocable to

Disputed General Unsecured Claims to a Disputed Ownership Fund, and to the extent permitted

by applicable law, shall report consistently for state and local income tax purposes.  If a Disputed

Ownership Fund election is made, all parties (including the Trustee and the holders of Liquidating

Trust Interests) shall report for U.S. federal, state and local income tax purposes consistently with

the foregoing.  The Liquidating Trust shall file all income tax returns with respect to any income

attributable to the Disputed Ownership Fund and shall pay from the Liquidating Trust Assets all

U.S. federal, state and local income taxes attributable to such Disputed Ownership Fund based on

the items of income, deduction, credit, or loss allocable thereto.

5.4    **Withholding of Taxes and Reporting Related to Liquidating Trust Operations**

The Liquidating Trust shall comply with all withholding, deduction and reporting

requirements imposed by any federal, state, local or foreign taxing authority, and all distributions

made by the Liquidating Trust shall be subject to any applicable withholding, deduction and

reporting requirements. The Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such withholding, deduction, payment, and reporting requirements. All amounts properly withheld or deducted from distributions to a Liquidating Trust Beneficiary as required by applicable law and paid over to the applicable taxing authority for the account of such Liquidating Trust Beneficiary shall be treated as part of the Liquidating Trust Distribution to such Liquidating Trust Beneficiary. To the extent that the operation of the Liquidating Trust or the liquidation of the Liquidating Trust Assets creates a tax liability imposed on the Liquidating Trust, the Liquidating Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Liquidating Trust payable without Bankruptcy Court order. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Liquidating Trust Beneficiaries shall be required to provide any information necessary to effect the withholding and reporting of such taxes. The Trustee may require each Liquidating Trust Beneficiary to furnish to the Liquidating Trust (or its designee) its social security number or employer or taxpayer identification number as assigned by the IRS and complete any related documentation (including but not limited to a Form W-8BEN, Form W-8BENE-E, or Form W-9) (the "**Tax Documents**"). The Trustee may condition any and all distributions to any Liquidating Trust Beneficiary upon the timely receipt of properly executed Tax Documents and receipt of such other documents as the Trustee reasonably requests, and in accordance with the Plan.

5.5    **Valuation**

Within 180 days after the Effective Date, the Trustee shall make a good faith valuation of the Liquidating Trust Assets.  Such valuation shall be made available from time to time, to the

extent relevant, and used consistently by all parties for all United States federal income tax purposes. The Trustee also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidating Trust that are required by any governmental unit.

5.6     **Expedited Determination of Taxes**

The Trustee may request an expedited determination of taxes of the Liquidating Trust, under Section 505 of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the termination of the Liquidating Trust.

5.7     **WARN Act Claim Reserve**

The Trustee shall deposit into the WARN Act Claim Reserve an aggregate amount of $500,000 in net recoveries from the liquidation and monetization of the Liquidating Trust Assets. Such deposit shall be distributed to the class representative for the benefit of members of the class as described in the Plan Supplement following the Effective Date on the occurrence of certain milestone events disclosed in the Plan Supplement until the WARN Act Claims are satisfied in full.

The WARN Act Claim Reserve is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 of the U.S. Treasury Regulations (the "**QSF Regulations**"). The Trustee shall be the "administrator" of the Trust within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the WARN Act Claim Reserve solely out of the assets held in the WARN Act Claim Reserve, which

assets may be sold by the Trustee to the extent necessary to satisfy such tax liabilities, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of Trust as a qualified settlement fund, within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.

The Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any applicable tax withholding, deduction, payment, and reporting requirements. All amounts properly withheld or deducted from distributions made out of the WARN Act Claim Reserve and paid over to the applicable taxing authority for the account of a holder of an Allowed WARN Act Claim shall be treated as part of the Distribution to such holder. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All holders of Allowed WARN Act Claims shall be required to provide any information necessary to effect the withholding and reporting of such taxes, including but not limited to any Tax Documents. The Trustee may condition any and all distributions to any holder of an Allowed WARN Act Claim upon the timely receipt of properly executed Tax Documents and receipt of such other documents as the Trustee reasonably requests, and in accordance with the Plan.

If the Trustee determines it would be cost effective to retain the services of a third-party administrator to administer the distributions to the holders of Allowed WARN Act Claims, then, in consultation with the counsel for such holders, the Trustee may retain the services of a settlement administrator (the "**Settlement Administrator**").    The Settlement Administrator shall be responsible for handling class noticing and all aspects of the administration of the distribution of

the WARN Act Claim Reserve and any other amounts distributable to the holders of WARN Act Claims pursuant to the Plan, including, but not limited to: (a) the formation of a qualified settlement fund as authorized by Treasury Regulation 1.486B-1(c) to accept, distribute, and otherwise administer the WARN Act Claim Reserve; (b) the preparation and mailing of settlement checks to each Class member; (c) the preparation and mailing of  all W-2 and 1099 Forms and the compliance with any tax withholding obligations imposed by applicable law with respect to distributions to Class Members; (d) the processing of returned settlement checks as undeliverable, including re-mailing to forwarding addresses and tracing of current addresses; and (e) any other duties of the WARN Act Claims Administrator as set forth in the Plan.

## ARTICLE VI

## LIQUIDATING TRUST OVERSIGHT COMMITTEE

### 6.1    Members; Action by Members.

The TOC shall be composed of five (5) members appointed to represent the interests of holders of Allowed General Unsecured Claims.  The initial TOC members shall be the following: ACE Engineering & Co., Ltd., Celestica LLC, Contemporary Amperex Technology Co., Limited, JMS Wind Energy, LLC and GreEnergy Resources LLC.  Except as otherwise set forth in the Governing Documents, the TOC shall act by majority vote of TOC members then serving, provided, however, the TOC may continue to act in the event of one or more vacancies on the TOC, in which case majority vote of the TOC members then serving shall be required for action by the TOC.

6.2    **Duties.**

The members of the TOC shall serve in a fiduciary capacity representing holders of Allowed General Unsecured Claims. The TOC shall not have any fiduciary duties or responsibilities to any party other than Liquidating Trust Beneficiaries. Except for the duties and obligations expressed in this Trust Agreement, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TOC. To the extent that, at law or in equity, the TOC has duties (including fiduciary duties) and liabilities relating thereto to the Liquidating Trust, the other parties hereto, or any Liquidating Trust Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the TOC expressly set forth in this Trust Agreement.

6.3    **TOC Information Rights; Reports**

(a)    The TOC shall have reasonable access to the Liquidating Trust's consultants and other advisors retained by the Liquidating Trust and its staff (if any), and information available to the Trustee, which access shall be made available as determined by the Trustee in his or her discretion.

(b)    The TOC shall receive monthly reports concerning professional fees charged and annual reports on the Liquidating Trust's budget. Any disputes concerning same shall be brought before the Bankruptcy Court.

6.4    **[Reserved.]**

6.5    **Term of Office.**

(a)     Each member of the TOC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) below, (iii) his or her removal pursuant to Section 6.5(c) below, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(b)     A member of the TOC may resign at any time by written notice to the other members of the TOC and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)     A member of the TOC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the member of the TOC has received reasonable notice and an opportunity to be heard. Other good cause shall mean, without limitation, fraud, self-dealing, intentional misrepresentation, wilful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Liquidating Trust or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings. Such removal shall require the majority vote of the other members of the TOC and such removal shall take effect only upon the approval of the Bankruptcy Court.

45

6.6     **Appointment of Successor.**

(a)     In the event of a TOC member vacancy, the remaining TOC members shall propose an individual as successor, subject to the approval of the Trustee, which approval may not be unreasonably withheld.  In the event a successor TOC member is not appointed within sixty (60) days following the occurrence of such vacancy, the Bankruptcy Court may appoint a successor TOC member upon motion of the Trustee.

(b)     Each successor member of the TOC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) above, (iii) his or her removal pursuant to Section 6.5(c) above, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(c)     No successor TOC member shall be liable personally for any act or omission of his or her predecessor TOC member.  No successor TOC member shall have any duty to investigate the acts or omissions of his or her predecessor TOC member.  No TOC member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

6.7     **Compensation and Expenses of the TOC.**

The members of the TOC shall not be entitled to compensation for their services but shall be reimbursed promptly for all reasonable and documented ordinary and customary out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder (which, for the avoidance of doubt, will not include professionals retained by an individual member of the TOC to advise such member).  The Trust shall include a description of the amounts paid under this

Section 6.7 in the Annual Report to be filed with the Bankruptcy Court and posted on the Trust's Website.

6.8    **Procedures for Consultation with and Obtaining the Consent of the TOC.**

(a)    Consultation Process.

(i)    In the event the Trustee is required to consult with the TOC pursuant to Section 4.14 above, the Trustee shall provide the TOC with written advance notice of the matter under consideration, to the extent practicable, and with all relevant information and documents concerning the matter as is reasonably practicable under the circumstances.  The Trustee shall also provide the TOC with such reasonable access to the consultants and other advisors retained by the Liquidating Trust and its staff (if any) as the TOC may reasonably request during the time that the Trustee is considering such matter, and shall also provide the TOC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee, to the extent practicable.

(ii)    In determining when to take definitive action on any matter subject to the consultation procedures set forth in this Section 6.8(a), the Trustee shall take into consideration the time required for the TOC to meet and consult as to such matter.  In any event, the Trustee shall not take definitive action on any such matter until at least five (5) Business Days after providing the TOC with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived in writing by the TOC or at a meeting where the TOC and Trustee are present, or the Trustee determines in his reasonable discretion that definitive action is required earlier. Notwithstanding the

foregoing, the TOC shall have the authority to waive the consultation procedure or any component thereof set forth in this Section 6.8(a).

(b)      <u>Consent Process</u>.

(i)      In the event the Trustee is required to obtain the consent of the TOC pursuant to the Governing Documents or Section 4.15 hereof, the Trustee shall provide the TOC with a written notice stating that its consent is being sought, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action. The Trustee shall provide the TOC as much relevant additional information concerning the proposed action as is requested by the TOC and as is reasonably practicable under the circumstances. The Trustee shall also provide the TOC with such reasonable access to the Liquidating Trust consultants and other advisors retained by the Liquidating Trust and its staff (if any) as the TOC may reasonably request during the time that the Trustee is considering such action, and shall also provide the TOC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii)      For matters requiring the consent of the TOC:

(A)      The TOC must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee, in writing, of its consent or its objection to the proposed action within five (5) Business Days of receiving the original request for consent from the Trustee, unless the Trustee extends the time for such response. The TOC may not withhold its consent unreasonably. If the TOC decides to withhold its consent, it must explain in detail

48

its objections to the proposed action.  If the TOC does not advise the Trustee, in writing, of its consent or its objections to the action within five (5) Business Days of receiving notice regarding such request (or within such additional time as may be granted by the Trustee in his or her discretion), the TOC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(B)      If, after following the procedures specified in this Section 6.8(b), the TOC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and the TOC shall resolve their dispute pursuant to Section 7.12 below, provided, however in that event the TOC shall have the burden of proof to show the validity of the TOC's objection.

(c)      <u>Disputes</u>. Any disputes between the TOC and the Trustee shall be resolved by the Bankruptcy Court.

## ARTICLE VII

## GENERAL PROVISIONS

7.1    **Irrevocability**

To the fullest extent permitted by applicable law, the Liquidating Trust is irrevocable.

7.2     **Term; Termination**

(a)     The term for which the Liquidating Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of this Section 7.2.

(b)     The Trustee shall make continuing efforts to monetize any non-liquid Liquidating Trust Assets.

(c)     The Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (a) the Trustee determines that there is no longer a need to initiate actions to resolve any remaining issues regarding the allowance and payment of Claims, or (b) all distributions of Cash and other Liquidating Trust Assets required to be made by the Trustee under the Plan and this Trust Agreement have been made in accordance with provisions of the Plan and this Trust Agreement, provided, however, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made by a party in interest within the six (6) month period prior to such fifth (5th) anniversary (and, in the event of further extension, at least six (6) months prior to the end of any extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery on and liquidation of the Liquidating Trust Assets (the "**Dissolution Date**").

(d)     On the Dissolution Date or as soon as reasonably practicable thereafter, after the wind-up of the affairs of the Liquidating Trust by the Trustee and payment of all of the liabilities have been provided for as required by applicable law including Section 3808 of the Act, all monies remaining in the Liquidating Trust shall be distributed or disbursed in accordance with Section 3.4 and Section 5.3(c) above.

(e)     Following the dissolution and distribution of the assets of the Liquidating Trust, the Liquidating Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Liquidating Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Liquidating Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation. A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

## 7.3    **Amendments**

Any amendment to or modification of this Trust Agreement may be made in writing and only with the consent of the Trustee, the TOC (which consent in each case shall not be unreasonably withheld, conditioned or delayed) and subject to the approval of the Bankruptcy Court; provided, however, the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make: (i) minor modifications or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; or (ii) modifications to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order, statute, ruling or regulation of any federal, state or foreign governmental entity. Notwithstanding the foregoing, no amendment or modification of this Trust Agreement shall modify this Trust Agreement in a manner that is inconsistent with the Plan or the Confirmation Order other than to make minor modifications or clarifying amendments as necessary to enable the Trustee to effectuate the provisions of this Trust Agreement. Notwithstanding the foregoing, neither this Trust Agreement, nor any Exhibit to this Trust Agreement, shall be modified or amended in any way that could jeopardize, impair, or

modify the Liquidating Trust's "liquidating trust" status. Any amendment affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent. Notwithstanding any other provision of this Trust Agreement, no material modifications may be made to this Section 7.3 of this Trust Agreement without the consent of the Trustee, the unanimous consent of the TOC, and subject to the approval of the Bankruptcy Court.

7.4    **Severability**

Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

7.5    **Notices**

(a)    Notices to Liquidating Trust Beneficiaries shall be given in accordance with such person's claims form submitted to the Liquidating Trust.

(b)    Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the Liquidating Trust:

[_____]

With a copy (which shall not constitute notice) to:

[_____]

To the Delaware Trustee:

[_____]

With a copy (which shall not constitute notice) to:

[_____]

To the TOC:

ACE Engineering & Co., Ltd.

[_____]

Celestica LLC

[_____]

Contemporary Amperex Technology Co., Limited

[_____]

JMS Wind Energy, LLC

[_____]

GreEnergy Resources LLC

[_____]

(c)     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses.

7.6     **Successors and Assigns**

The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Liquidating Trust, the Delaware Trustee, the Trustee, the TOC and their respective successors and assigns, except that neither the Liquidating Trust, the Delaware Trustee, nor the Trustee, may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in the case of the Delaware Trustee in accordance with Section 4.12 (d), and in the case of the Trustee in accordance with Section 4.2(d) above.

7.7     **Limitation on Liquidating Trust Interests for Securities Laws Purposes**

Liquidating Trust Interest (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of descent and distribution or otherwise by operation of law; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

7.8     **Exemption from Registration**

The Parties hereto intend that the interests of the Liquidating Trust Beneficiaries under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests

constitute "securities," the Parties hereto intend that the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the Liquidating Trust Interests will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

7.9    **Entire Agreement; No Waiver**

The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein, and in the documents referred to herein (including the Plan), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

7.10    **Headings**

The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

7.11    **Governing Law**

The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of

the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Liquidating Trust, the Trustee, the Delaware Trustee, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the TOC or the Delaware Trustee set forth or referenced in this Trust Agreement. Section 3540 of the Act shall not apply to the Liquidating Trust.

7.12  **Dispute Resolution**

(a)      Unless otherwise expressly provided for herein, the dispute resolution procedures of this Section 7.12 shall be the exclusive mechanism to resolve any dispute arising under or with

respect to this Trust Agreement. For the avoidance of doubt, this Section 7.12 shall not apply to the Delaware Trustee in any respect.

(b)    **Informal Dispute Resolution**. Any dispute under this Trust Agreement shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**"). Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties. If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

(c)    **Formal Dispute Resolution**. The disputing party shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving on the counterparty or counterparties a written statement of position regarding the matter in dispute ("**Statement of Position**"). The Statement of Position shall include, but need not be limited to, any factual data, analysis or opinion supporting the disputing party's position and any supporting documentation and legal authorities relied upon by the disputing party. Each counterparty shall serve its Statement of Position within thirty (30) days of receipt of the disputing party's Statement of Position, which shall also include, but need not be limited to, any factual data, analysis or opinion supporting the counterparty's position and any supporting documentation and legal authorities relied upon by the counterparty. If the disputing party and the counterparty or counterparties are unable to consensually resolve the dispute within thirty (30) days after the last

57

of all counterparties have served its Statement of Position on the disputing party, the disputing party may file with the Bankruptcy Court a motion for judicial review of the dispute in accordance with Section 7.12(d) below.

(d)     **Judicial Review**. The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over such dispute, such court as has jurisdiction pursuant to Section 1.4 above) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute. The motion must be filed within forty-five (45) days of receipt of the last counterparty's Statement of Position pursuant to the preceding subparagraph. The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration of the Liquidating Trust. Each counterparty shall respond to the motion within the time period allowed by the rules of the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court.

(e)     Notwithstanding anything to the contrary in this Trust Agreement, the Liquidating Trust shall bear the reasonable costs and expenses of the TOC in connection with any material dispute that arises under this Trust Agreement.

## 7.13    **Waiver of Conflicts**

To the extent that the Trustee or the TOC seek to retain any Liquidating Trust Professionals, the Parties agree to waive any conflict of interest claims against such professionals related to such

professionals' prior representation of the Committee or any individual member of the Committee during the Debtors' Chapter 11 Cases.

7.14    **Effectiveness**

This Trust Agreement shall become effective on the Effective Date.

7.15    **Counterpart Signatures**

This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

7.16    **Waiver of Trial by Jury**

Each of the parties hereto hereby waives the right to trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Trust Agreement.

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this _____ day of _____, 2025.


**TRUSTEE**


_____

Brian F. Gleason

**DELAWARE TRUSTEE**

[_____]

By:_____

    Name:

    Title:

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

# EXHIBIT 1

**DEBTORS WIND-DOWN ADMINISTRATION** The individual designated as the Trustee under this Trust Agreement shall also perform duties related to the Wind-Down of the Debtors, in his or her capacity as a Wind-Down Officer.  The Wind-Down Officer shall be named as an insured in connection with his or her role as Wind-Down Officer during the wind down period of the Debtors' Estate or until the termination of the Debtors' corporate or other existence, with such insurance to provide a tail period thereafter for the Wind-Down Officer.

A.     **Administration of the Wind-Down**.  Post-Effective Date the Trustee, in his or her capacity as Wind-Down Officer, shall administer the responsibilities of the Debtors, including, but not limited to:

    i.     effectuating the process to wind down, dissolve and liquidate the Estates and distribute any remaining assets in accordance with the Plan, including taking any steps to dissolve, liquidate, bankrupt or take other similar action with respect to the Debtors and any direct or indirect subsidiary of a Debtor, if and to the extent necessary, including by terminating the corporate or organizational existence of the Debtors and each such subsidiary;

    ii.     implementing, enforcing, complying with and effectuating, as applicable, all provisions of the Plan and the obligations under the Plan;

    iii.     preparing and filing appropriate tax returns and other reports on behalf of the Debtors and paying taxes or other obligations owed by the Debtors;

    iv.     entering into and consummating any transactions for the purpose of dissolving the Debtors;

    v.     winding down the affairs of the Debtors, if and to the extent necessary, including establishing any administrative reserves necessary, and taking any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to the Debtors, including by terminating the corporate or organizational existence of the Debtors;

    vi.     taking such actions as are necessary or appropriate to close the Debtors' Chapter 11 Cases;

    vii.     maintaining the books and records and accounts of the Debtors and resolving issues pertaining to the retention or disposal of the books and records of the Debtors;

    viii.     providing periodic reports and updates to the Liquidating Trust, no less than quarterly, regarding the status of the administration of the Wind-Down of the Debtors;

    ix.     to the extent not made on or prior to the Effective Date, making distributions on behalf of the Debtors, including through the disbursing agents, to all parties that are entitled to distributions pursuant to the Plan from funds of the Debtors, including to the Liquidating Trust and/or the Direct Claims Trust as set forth in the Plan; and

    x.     paying the expenses of the Wind-Down from the Debtors' assets, including insurance for the Wind-Down Officer.

B.     **Books and Records of Wind-Down**. The Trustee, in his or her capacity as Wind-Down Officer, shall maintain, in respect of the Wind-Down of the Debtors' Estates, all books and

records of the Debtors, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.

C.    **Tax Reporting and Payments for Wind-Down**.  The Trustee, in his or her capacity as Wind-Down Officer, may request an expedited determination of taxes of the Debtors, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for all taxable periods through dissolution.

D.    **Wind-Down Fees**.  The Trustee, in his or her capacity as Wind-Down Officer, shall be entitled to charge his or her standard hourly rates for time spent performing duties related to the Wind-Down of the Debtors.  Fees charged for time spent performing duties related to the Wind-Down of the Debtors shall be paid in addition to fees charged for time spent performing duties related to the Liquidating Trust.

**EXHIBIT 2**

**CERTIFICATE OF TRUST OF THE**

**POWIN LIQUIDATING TRUST**

This Certificate of Trust of the POWIN LIQUIDATING TRUST (the "*Trust*") is being duly executed and filed by the undersigned Trustees of the Trust, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. Code § 3801 *et seq.*) (the "*Act*").

<u>Name</u>. The name of the statutory trust formed hereby is:

**POWIN LIQUIDATING TRUST**

<u>Delaware Trustee</u>. The name and business address of the Delaware Trustee of the Trust in the State of Delaware is:

[•]

<u>Effective Date</u>. This Certificate of Trust shall be effective on _____ ___, 2025.

IN WITNESS WHEREOF, the undersigned, being all of the trustees of the Trust, have

duly executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

TRUSTEE:                                              [•], not in its individual capacity, but
                                                     solely as
                                                     Delaware Trustee

                                                     By: _____

_____
[_____], in his capacity as a trustee and       Name:
not individually.                                    Title:

**EXHIBIT 3**

**INVESTMENT GUIDELINES**

Consistent with the provisions of Rev. Proc. 94-45 and notwithstanding any other provision of the Trust Agreement, the investment powers of the Trustee, other than those reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the trust, must be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.