# **EXHIBIT G**

(Liquidation Analysis)

<u>Powin, LLC – Liquidation Analysis</u>                                                                                                                11/7/2025

I. Introduction

As part of the chapter 11 process, section 1129(a)(7) of the Bankruptcy Code requires a bankruptcy court to determine that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (i) has accepted the plan or (ii) will receive or retain under the plan, value that is not less than the amount that the holder would receive if the debtors had liquidated under chapter 7. As explained below, the Debtors and Committee respectfully submit that the Plan satisfies the requirement of section 1129(a)(7) because, upon the Effective Date, the Plan will provide all Holders of Allowed Claims and interests with a recovery (if any) that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

However, the Debtors and the Committee must explain their reasons for their conclusion that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Upon conversion of the cases to chapter 7, it is anticipated that a chapter 7 trustee would primarily focus on liquidating remaining assets, reconciling liabilities and effectuating the wind-down of the Estates. Remaining assets may include accounts receivable, vendor deposits and refunds, sales tax refunds and litigation claims.

THE INFORMATION SET FORTH IN THIS HYPOTHETICAL LIQUIDATION ANALYSIS PRESENTED AS A SCHEDULE BELOW IS SUBJECT TO MODIFICATION AND SUPPLEMENTATION BY THE DEBTORS AT ANY TIME UP TO THE CONFIRMATION HEARING. THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE DEBTORS WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION UNDER CHAPTER 7, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE. THE FINANCIAL INFORMATION CONTAINED HEREIN WAS NOT EXAMINED BY ANY INDEPENDENT ACCOUNTANTS AND NO INDEPENDENT APPRAISALS WERE CONDUCTED IN PREPARING THE LIQUIDATION ANALYSIS. THE PRESENTATION OF CLAIMS REPRESENT ESTIMATES, WHICH ESTIMATES ARE SUBJECT TO MATERIAL CHANGE.

IN ADDITION, AS A GENERAL MATTER, WHILE THE DEBTORS HAVE ESTIMATED A RANGE OF RECOVERIES, NOTE THAT (A) FOR COSTS ASSOCIATED WITH LIQUIDATION, THE DEBTORS BELIEVE THAT A CHAPTER 7 TRUSTEE'S COSTS WILL MOST LIKELY BE AT THE HIGH END OF THE RANGE, GIVEN THE AMOUNT OF TIME A CHAPTER 7 TRUSTEE WOULD REQUIRE TO DEVELOP AN INFORMATIONAL FOUNDATION REGARDING THE DEBTORS' ASSETS AND LIABILITIES AND (B) FOR ESTIMATED DISTRIBUTIONS, THE LOW END OF THE RANGE OF ESTIMATED CLAIMS TAKES INTO ACCOUNT CLAIM SETTLEMENTS UNDER THE PLAN THAT ARE MOST LIKELY NOT AVAILABLE TO A CHAPTER 7 TRUSTEE; THEREFORE ALLOWED CLAIMS WOULD LIKELY BE HIGHER IN A HYPOTHETICAL CHAPTER 7 AND FURTHER DILUTE CREDITOR RECOVERIES.

A number of factors in a chapter 7 liquidation would affect the chapter 7 trustee's ability to monetize

**Powin, LLC – Liquidation Analysis**                                                                                                          11/7/2025

the Debtors' remaining assets. Among other things, the primary anticipated risks would include challenges associated with liquidating the assets in an expedited manner, inability to collect accounts receivables given the required negotiations with various parties, some of whom may have defenses to collection, including the ability to set off these amounts, and costs associated with the monetization of certain assets that may exceed initial expectations. Additionally, there is a risk that personnel necessary to effectuate a wind-down would be unavailable. Absent such personnel, the chapter 7 trustee may be challenged to effectuate certain asset sales and collection of the Debtors' receivables, most of which require some level of institutional knowledge and legacy data.

To achieve the maximum possible recovery, a chapter 7 trustee would need to retain professionals, likely at a cost no less than the costs to be incurred under a liquidating plan. The Debtors' Estates would also incur the additional costs of payment of a statutorily allowed commission to the chapter 7 trustee. The Debtors believe that such amounts, over the same liquidation time period, would exceed the amount of expenses that will be incurred in implementing the Plan and winding up the affairs of the Debtors in the chapter 11 cases. Under the Plan, the Debtors contemplate an orderly administration and winding down of the Estates by certain parties that will be familiar with the Debtors, their assets and affairs, and their creditors and liabilities. Such familiarity will allow the Liquidating Trust to complete liquidation of the remaining assets (including prosecution of Causes of Action) and distribute the net proceeds to creditors more efficiently and expeditiously than a chapter 7 trustee. Additionally, the Estates would likely suffer additional delays, as a chapter 7 trustee and his/her counsel would need time to develop a necessary learning curve to complete the administration of the Estates (including the prosecution of Causes of Action). Also, a new time period for the filing of claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estates.

## II. Overview and General Assumptions

Hypothetical chapter 7 recoveries set forth in this Liquidation Analysis were determined through multiple steps, as set forth below. The basis of the Liquidation Analysis is the Debtors' projected cash balance and assets as of December 5, 2025 (the "Conversion Date" or the "Effective Date") and the net costs to execute the administration of the wind-down of the Estates. The Liquidation Analysis assumes that the Debtors would commence a chapter 7 liquidation on or about the Conversion Date under the supervision of a court-appointed chapter 7 trustee. The Liquidation Analysis reflects the wind-down and liquidation of the Debtors' remaining assets not included in the sale, and the distribution of available proceeds to holders of allowed claims during the period after the Conversion Date (the "Wind-Down").

Underlying this Liquidation Analysis are numerous estimates and assumptions that are subject to significant uncertainties. Many of these uncertainties are beyond the control of the Debtors or a chapter 7 trustee. Additionally, various liquidation decisions upon which certain assumptions are based are subject to change. Therefore, there can be no assurance that the assumptions and estimates employed

2

**Powin, LLC – Liquidation Analysis**                                                                                                       11/7/2025

in determining the liquidation values of the Debtors' assets will result in an accurate estimate of the proceeds which would be realized were the Debtors to undergo an actual chapter 7 liquidation. The actual amounts of claims against the Estates could vary significantly from the Debtors' estimate, depending on the claims asserted during the pendency of the chapter 7 case. This Liquidation Analysis does not include liabilities that may arise as a result of litigation, certain new tax assessments or other potential claims.

In addition to the issues discussed above, KPMG historically served as the Debtors' primary external accounting advisor.  Without KPMG's support, the Debtors cannot prepare an accurate set of financial statements. Given the Debtors are no longer engaged with KPMG, there are inherent limitations in the accuracy and completeness of the current financial information.[1]

For the purposes of this Liquidation Analysis, the book value of the Debtors' assets (the "Adjusted Book Value") have been adjusted to reflect certain purchasers' acquisition of the Debtors' assets pursuant to various orders authorizing the sale of such assets in these chapter 11 cases, including the sale of substantially all of the Debtors' assets to FlexGen Power Systems LLC ("Purchaser"). While every effort has been made to ensure that the Adjusted Book Value provides an accurate presentation of the book value of the Debtors' assets of closing as of these sales, no audit or other procedures have been performed.

The Debtors' Adjusted Book Value was then analyzed to identify potential recoverable value ("Potential Recoverable Value"), taking into consideration impediments to monetization, such as, among other things, known encumbrances on assets, defenses to collection, offset rights and failed conditions precedent.  After determining Potential Recoverable Value, probabilities of the likelihood of success of monetization were applied to arrive at distributable value.  Given the inherent uncertainty of predicting litigation outcomes, no value has been assigned to potential litigation recoveries; however, such recoveries may be material.  For instance, among other things, pursuant to Powin, LLC vs. United States, the Debtors are seeking recovery of up to $[81 million] on account of [Customs reclassification]. There can be no assurance of the likelihood of success of such litigation.

As part of the liquidation analysis, administrative and priority claims were analyzed, including a determination of the likelihood of certain administrative and priority claims to be allowed and paid prior to any distributions to general unsecured creditors. While an analysis of general unsecured claims has not yet been performed, the low-case recoveries assume full allowance of all claims filed as liquidated claims. The high-case recoveries assume the midpoint between the Debtors' initial books and records and filed claims, assuming that claims reconciliation will lead to the reduction or disallowance of some filed claims.

---

1   See Global Notes to SOFA/SOALs for more information.

Powin, LLC – Liquidation Analysis                                                                                                     11/7/2025

Additionally, the Plan contains a number of settlements, designed to facilitate consummation of the Plan, with certain holders of asserted administrative and priority claims. In the event of a chapter 7 liquidation, it is highly unlikely that the holders of such claims would settle on such terms. Accordingly, the liquidation analysis assumes that recoveries for Class 5 General Unsecured Claims would be further diluted by the realization of additional administrative and priority claims resulting from less favorable settlements.

III. LIQUIDATION ANALYSIS

The schedule below presents the net liquidation proceeds available for distribution in an illustrative chapter 7 wind-down of the Debtors as of the Conversion Date. This Liquidation Analysis should be reviewed with the accompanying notes as well as the other introductory material above.

**Conclusion** – The Debtors have determined, as summarized in the table below, that, upon the Effective Date, the Plan will provide all Holders of Allowed Claims and Interests with a recovery (if any) that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code. Accordingly, the Debtors believe that the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code.

| Results of Best interests Test by Plan Class | | | | | | |
|---|---|---|---|---|---|---|
| Class Name | Class | Chapter 11 Recovery | | Chapter 7 Recovery | | Pass / Fail |
| | | Low (%) | High (%) | Low (%) | High (%) | |
| Administrative Claims | Unclassified | 100.0% | 100.0% | 100.0% | 100.0% | Pass |
| Priority Tax Claims | Unclassified | 100.0% | 100.0% | 100.0% | 100.0% | Pass |
| Settled Priority Claims | Class 4 | 100.0% | 100.0% | 100.0% | 100.0% | Pass |
| Priority Non-Tax Claims | Class 1 | 100.0% | 100.0% | 100.0% | 100.0% | Pass |
| WARN Act Claims | Class 3 | 100.0% | 100.0% | 100.0% | 100.0% | Pass |
| Other Secured Claims | Class 2 | n/a | n/a | n/a | n/a | n/a |
| General Unsecured Claims | Class 5 | 0.8% | 4.5% | 0.0% | 2.5% | Pass |
| Intercompany Claims | Class 6 | n/a | n/a | n/a | n/a | n/a |
| Interests | Class 7 | n/a | n/a | n/a | n/a | n/a |

**Powin, LLC – Liquidation Analysis**  11/7/2025

| Estimated Recovery - Assets | Adj BV ($) | Potential Recoverable Value ($) | 1129(a)(7) - Estimated Recovery ||||  Note |
|---|---|---|---|---|---|---|---|
| | | | Low (%) | Low ($) | High (%) | High ($) | |
| **Proceeds for Distribution** | | | | | | | |
| Cash & Cash Equivalents | 11,469,000 | 11,469,000 | 100.0% | 11,500,000 | 100.0% | 11,500,000 | 1 |
| Accounts Receivable - Net | 76,904,848 | 15,661,730 | 0.0% | - | 50.0% | 7,800,000 | 2 |
| Contract assets | 22,451,208 | - | 0.0% | - | 0.0% | - | 3 |
| Advances to suppliers | 22,293,257 | 2,616,866 | 0.0% | - | 25.0% | 700,000 | 4 |
| Inventory | 22,916,868 | 3,513,797 | 0.0% | - | 50.0% | 1,800,000 | 5 |
| Other current assets (prepaid expenses and vendor deposits) | 2,532,153 | 1,262,237 | 20.0% | 300,000 | 50.0% | 600,000 | 6 |
| Net restricted cash | 6,733,840 | 6,733,840 | 0.0% | - | 10.0% | 700,000 | 7 |
| Property and equipment, net | 4,019,395 | 849,764 | 0.0% | - | 10.0% | 100,000 | 8 |
| Investment in subsidiaries | 18,596,308 | - | 0.0% | - | 0.0% | - | 9 |
| Other non-current assets (surety bonds and lease deposits) | 15,161,485 | 14,455,000 | 50.0% | 7,200,000 | 90.0% | 13,000,000 | 10 |
| Additional assets (ROC Invoicing, sales tax refund and others) | 1,594,095 | 1,594,095 | 30.0% | 500,000 | 70.0% | 1,100,000 | 11 |
| **Gross Proceeds for Distribution** | **204,672,456** | **58,156,329** | **33.5%** | **19,500,000** | **64.1%** | **37,300,000** | 12 |
| **Costs Associated with Liquidation** | | | | | | | |
| Professional Fees | | | | 3,300,000 | | 5,100,000 | |
| Wind-down & Sale Costs | | | | 700,000 | | 700,000 | |
| **Total Costs Associated with Liquidation / Sale** | | | | **4,000,000** | | **5,800,000** | 13 |
| **Net Proceeds** | | | | **15,500,000** | | **31,500,000** | 14 |
| Chapter 7 Trustee Fees | | | | 600,000 | | 1,100,000 | 15 |
| **Total Net Proceeds for Distribution** | | | | **14,900,000** | | **30,400,000** | 16 |

| Estimated Distributions | 1129(a)(7) - Estimated Distributions ||  |
|---|---|---|---|
| Claims Waterfall | Low | High | |
| *Remaining Liquidation Proceeds Available for Distribution* | 14,900,000 | 30,400,000 | |
| **Administrative Claims** | **1,800,000** | **1,800,000** | 17 |
| *Recovery Percentage* | *100.0%* | *100.0%* | |
| *Remaining Liquidation Proceeds Available for Distribution* | 13,100,000 | 28,600,000 | |
| **Priority Tax Claims** | **20,000** | **20,000** | 18 |
| *Recovery Percentage* | *100.0%* | *100.0%* | |
| *Remaining Liquidation Proceeds Available for Distribution* | 13,080,000 | 28,580,000 | |
| **Class 4 - Settled Priority Claims** | **3,780,000** | **3,780,000** | 19 |
| *Recovery Percentage* | *100.0%* | *100.0%* | |
| *Remaining Liquidation Proceeds Available for Distribution* | 9,300,000 | 24,800,000 | |
| **Class 1 - Priority Non-Tax Claims** | **530,000** | **530,000** | |
| **Class 3 - WARN Act Claims** | **3,500,000** | **3,500,000** | |
| **Priority Non-Tax and WARN Act Claims - Total** | **4,030,000** | **4,030,000** | 20 |
| *Recovery Percentage* | *100.0%* | *100.0%* | |
| *Remaining Liquidation Proceeds Available for Distribution* | 5,270,000 | 20,770,000 | |
| **Class 2 - Other Secured Claims** | **0** | **0** | 21 |
| *Recovery Percentage* | *100.0%* | *100.0%* | |
| *Remaining Liquidation Proceeds Available for Distribution* | 5,270,000 | 20,770,000 | |
| **Additional Dilution - Less Favorable Administrative and Priority Claims Settlements** | **8,720,000** | **8,720,000** | 22 |
| *Remaining Liquidation Proceeds Available for Distribution* | 0 | 12,050,000 | |
| **Class 5 - General Unsecured Claims** | **741,800,000** | **482,000,000** | 23 |
| *Recovery Percentage* | *0.0%* | *2.5%* | |
| *Remaining Liquidation Proceeds Available for Distribution* | 0 | 0 | |
| **Class 6 - Intercompany Claims** | **0** | **0** | |
| *Recovery Percentage* | *N/A* | *N/A* | |
| *Remaining Liquidation Proceeds Available for Distribution* | 0 | 0 | |
| **Class 7 - Interests** | **0** | **0** | |
| *Recovery Percentage* | *N/A* | *N/A* | |

5

**Powin, LLC – Liquidation Analysis**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　11/7/2025

Footnotes to Recovery Analysis

1. **Cash and Cash Equivalents (as of 12/5/2025) –** Represents the Debtors' estimated ending unrestricted cash of $11,500,000 as of the Conversion Date. Ending accessible cash excludes amounts for professional fees incurred during the chapter 11 case as such amounts are separately escrowed. This analysis assumes liquidation proceeds from Cash and Cash Equivalents are 100% of the unaudited book value.

2. **Accounts Receivables, Net –** Includes Trade AR, Unbilled Receivables and Intercompany Receivables. The accounts are comprised of balances outstanding from ~30 customers. To assess the Potential Recoverable Value of balances, the outstanding AR amounts for balances greater than $1.0 million, as indicated in the Company's books and records as of the petition date, were reviewed. Potential liquidated damages, potential other unrecorded adjustments, potential offset rights, conditions to collections and potential known defenses were analysed to determine the Potential Recoverable Value. Based on this analysis, the Debtors expect an effective recovery of 0.0% to 50.0% of the Potential Recoverable Value.

3. **Contract Assets –** Represents amounts allowed to be recognized as revenue in excess of the amounts that could be invoiced to the customer based upon milestones achieved. The Debtors do not expect to realize any value from the Contract Assets due to unmet billing milestones as of the Petition Date. Accordingly, no recovery is included for these assets in the Hypothetical Chapter 7 Liquidation Schedule.

4. **Advances to Suppliers –** Advances to Suppliers represent prepaid amounts made by the Debtors to vendors. U&L reviewed supplier balances and offset outstanding payables against corresponding advances to determine net positions. Suppliers with a positive net recoverable value after the offset were accordingly considered as Potential Recoverable Value. Based on this analysis, the Debtors expect an effective recovery of 0.0% to 25.0% of the Potential Recoverable Value.

5. **Inventory –** Represents inventory remaining after the sale to Purchaser. U&L reviewed the corresponding accounts payable ("AP") for each vendor and deducted those amounts from the Adjusted Book Value. This approach ensures that the residual inventory value is not overstated and that recoveries are measured net of related obligations and liabilities. Based on this analysis, the Debtors expect an effective recovery of 0.0% to 50.0% of the Potential Recoverable Value.

6. **Other Current Assets –** Includes software vendor payments and other prepaid expenses, such as prepaid insurance, security deposits for leases and tax receivables. U&L reviewed the vendor prepayments and identified outstanding payables owed to these vendors. These outstanding payables were offset against the corresponding advances to determine the Potential Recoverable Value. Vendors with potential net recoverable value have been considered in the analysis. Based on this analysis, the Debtors estimate an effective recovery of 0.0% to 50.0% of the Potential Recoverable Value for all Other Current Assets.

7. **Net Restricted Cash –** Represents the Debtors' restricted cash as of the Conversion Date, comprised of customer escrow accounts. The Debtors expect an effective recovery of 0.0% to 10.0% of the Potential Recoverable Value.

8. **Property & Equipment –** Represents the machinery and equipment, furniture and fixtures, and leasehold improvements located at the Debtors leased facilities.

**Powin, LLC – Liquidation Analysis**                                                                                                           11/7/2025

    a. **Machinery and Equipment and Furniture and Fixtures:** In the low-case scenario, the costs to access and remove the equipment are assumed to exceed its resale value. In the high-case scenario, it is assumed that the machinery and equipment can be accessed and removed at a reasonable cost within a reasonable timeframe, with a significant portion of the assets expected to have value only as scrap or salvage.

    b. **Leasehold Improvements:** Represents the leasehold improvements made to the Tualatin, Miami and Irvine facilities. Since the facilities are leased and not owned by the Debtors and the leasehold improvements are not transferable, we do not expect any recovery from these improvements.

Based on this analysis, the Debtors expect an effective recovery of 0.0% to 10.0% of the Potential Recoverable Value.

9. **Investment in Subsidiaries –** Represents investments made in other subsidiaries. These subsidiaries are no longer operating and have no equity value. Accordingly, no Potential Recoverable Value is identified.

10. **Other Non-Current Assets –** Includes bond collateral deposits, prepaid lease deposits and other vendor deposits. The Debtors expect an effective recovery of 50.0% to 90.0% of the Potential Recoverable Value.

11. **Additional Assets –** Includes items not recorded in the statement of assets but identified as potentially recoverable. These include litigation claims, sales tax refunds, insurance claims, receivables for post-petition services and deposit returns. The receivables for post-petition services reflect continued service of Powin's Remote Operations Center ("ROC") from the Petition Date to August 18, 2025, the date which Powin was sold to Purchaser. During this period, the ROC continued to provide full system monitoring, data analytics, alerts, and support – helping maintain uptime and safety of customer assets. Based on this analysis, the Debtors expect an effective recovery of 30.0% to 70.0% of the Potential Recoverable Value for all Additional Assets.

12. **Gross Proceeds for Distribution –** Represents the gross value generated through the sale / disposition of the Debtors' assets prior to payment of wind-down Expenses, other chapter 7 administrative claims, and other claims.

13. **Wind-down & Sale Costs –** Represents the expenses related to maintaining systems during the wind-down, professional fees and other costs of the Estates. Professional fees are assumed to include counsel fees, accountants and other professionals. Other wind-down costs represent software & IT, insurance and the costs required to employ a portion of the Debtors' employee base as independent contractors to support the liquidation. These individuals will primarily be responsible for providing historical knowledge and insight to the chapter 7 Trustee regarding the Debtors' businesses and concluding the administrative liquidation of the businesses after the sale of substantially all of the Debtors' assets. The Debtors estimate that wind-down, sale and professional fee expenses will be up to approximately $7 million.

14. **Net Proceeds –** Represents the net value generated through the sale and disposition of the Debtors' assets after professional fees and wind-down expenses.

15. **Chapter 7 Trustee Fees –** Represents the chapter 7 trustee fees incurred for administering the liquidation pursuant to Section 326(a) of the Bankruptcy Code. The fees are determined on a tiered basis: 25% of the first $5,000, 10% of the next $45,000, 5% of amounts exceeding $50,000 up to $1,000,000, and 3% of all amounts in excess of $1,000,000. The Debtors estimate total trustee fees to range between $600,000 under a low-case

7

**Powin, LLC – Liquidation Analysis**                                                                 11/7/2025

scenario and $1,110,000 under a high-case scenario, representing approximately 3.0% of the total gross distributable values under each scenario.

16. **Total Net Proceeds for Distribution –** Represents the net value generated through the sale and disposition of the Debtors' assets after wind-down expenses and total chapter 7 trustee and professional fees.

17. **Administrative Claims –** The estimated administrative expense claims reflect expenses incurred during the post-petition period but paid on or after the Conversion Date. The Liquidation Analysis assumes that Administrative Claims would receive 100% recovery on account of such claims.

18. **Priority Tax Claims –** Represents the priority tax claims maintained in the Verita claims register, which have been reviewed and reclassified where necessary. The Liquidation Analysis assumes that Priority Tax Claims would receive 100% recovery on account of such claims.

19. **Class 4 – Settled Priority Claims –** Represents the Settled Administrative Claims with Ace Engineering, RH Shipping and Chartering and Mainfreight. The Liquidation Analysis assumes that Settled Priority Claims would receive 100% recovery on account of such claims. Each holder of a settled priority claim has agreed to reduce the amount of its asserted administrative claim; to defer recovery or account of such claim until additional liquidity proceeds are available under the Plan. As noted above, there can be no guarantee that these settlements would be available to a chapter 7 trustee.

20. **Class 1 – Priority Non-Tax Claims and Class 3 – WARN Act Claims –**

    a. **Class 1 – Priority Non-Tax Claims –** Represents the priority employee claims maintained in the Verita claims register, which have been reviewed and reclassified where necessary. The analysis includes priority employee claims maintained in the Verita claims register for employees not included in the WARN Class, but terminated within 180 days before the Petition Date, with each claim capped at the $17,150 statutory limit. The Liquidation Analysis assumes that Priority Non-Tax Claims would receive approximately 100% recovery on account of such claims.

    b. **Class 3 – WARN Act Claims –** Represents a settlement negotiated with WARN claimants for $500,000 paid at emergence and $3.0 million paid as additional funds as collected post-emergence. The Liquidation Analysis assumes that WARN Act Claims would receive 100% recovery on account of such claims. As noted above, there can be no guarantee that this settlement would be available to a chapter 7 trustee.

21. **Class 2 – Other Secured Claims –** Represents secured claims listed as per the claims maintained in the Verita claims register. These claims are listed unimpaired in line with the Plan such that the return of the applicable collateral or authorization of a setoff will satisfy the allowed amount of the Other Secured Claims. Following the return of the applicable collateral or setoff, claimants' remaining claim will be limited to a potential unsecured claim for any deficiency. Pursuant to the Plan, each holder of Other Secured Claims will receive turnover of the collateral securing its claim. The value of such collateral is not included in the determination of net proceeds. Accordingly, the satisfaction of Other Secured Claims does not impact the Liquidation Analysis.

22. **Additional Dilution –** Represents additional dilution of proceeds available for distribution to General Unsecured Creditors due to higher realization with ACE, Mainfreight, RH Shipping and WARN Act claimants resulting from the failure to achieve the settlements referenced in note 19.

**Powin, LLC – Liquidation Analysis**                                                                                                            **11/7/2025**

23. **Class 5 – General Unsecured Claims –** Represents the estimated General Unsecured Claims as maintained in the Verita claims register and estimates made on the basis of the Debtors' books and records.

    a. **Low Estimated Distributions Scenario:** The low case represents the General Unsecured Claims maintained in the Verita claims register. Duplicate claims filed across multiple entities have been removed to prevent double counting.

    b. **High Estimated Distributions Scenario:** The high case assumes the midpoint between the claims amount as per the Debtors' books and records and the claims maintained in the Verita claims register.

The Liquidation Analysis assumes that under a Chapter 7 liquidation, General Unsecured Claims would receive up to 2.6% recovery on account of such claims.