**DENTONS US LLP**

Lauren Macsoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macsoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
        sarah.schrag@dentons.com

*Counsel for Debtors and*
*Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
        eblander@teamtogut.com

*Counsel for Debtors and*
*Debtors in Possession*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110] . The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

US_ACTIVE\131591472

**EXPEDITED MOTION OF THE DEBTORS FOR
ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING
SETTLEMENT AGREEMENT; AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Powin, LLC ("Powin") and the affiliated debtors and debtors in possession (collectively, the "Debtors"), in the above-referenced chapter 11 cases (the "Chapter 11 Cases") hereby move (the "Motion") this Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (i) authorizing and approving that certain settlement agreement (the "Settlement Agreement")[2] under sections 105(a), 362, 363(b), 503(b), and 507(a)(2) of title 11 of the United States Code, §§ 101 *et seq.*, as amended (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Rules 9013-1 and 9019-3 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules"), by and among Powin and the Official Committee of Unsecured Creditors of the Debtors (the "Committee"), on the one hand, and ACE Engineering and Co., Ltd. ("ACE"), on the other hand;[3] and (ii) granting related relief.

In support of this Motion, the Debtors rely on the *Declaration of Gerard Uzzi in Support of Debtors' Motion to Approve Settlement Agreement* attached hereto (the "Uzzi Declaration") and the *Declaration of Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* [Docket No. 13] (the "First Day Declaration"), the contents of both of which are incorporated herein by reference, and respectfully state as follows:

---

[2] A true and correct copy of the Settlement Agreement is attached to the Order as **Exhibit 1**. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement or the Debtors' *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 914] (as amended from time to time, the "Plan"), as applicable.

[3] Each of Powin, the Committee, and ACE are sometimes referred to herein individually as a "Party," and, collectively as the "Parties."

## PRELIMINARY STATEMENT

1.      The Settlement Agreement settles and compromises, among other things, ACE's $13,520,599.26 administrative expense claim pursuant to section 503(b)(9) of the Bankruptcy Code for goods allegedly provided to the Debtors within twenty (20) days prior to the Petition Date (the "ACE Administrative Claim"), which is the largest administrative expense claim against the Debtors' estates.

2.      After extensive, good faith, arm's length negotiations between ACE, the Debtors, and the Committee, the Debtors have reached the Settlement Agreement, which provides for, among other things, that: (a) ACE shall irrevocably contribute all of its Direct Claims (to the extent of any) to the Direct Claims Trust; (b) the Parties agree that Phoenix Management shall serve as the Liquidating Trustee, and the forms of the Liquidating Trust Agreement and Direct Claims Trust Agreement shall be in a form acceptable to ACE; (c) ACE shall receive an Allowed Administrative Claim of $5,000,000.00 (the "Allowed ACE Administrative Claim"); (d) ACE shall receive an allowed unsecured claim in the amount of $105,228,644.71; (e) ACE shall receive $1,000,000.00 in cash on account of the Allowed ACE Administrative Claim on the Plan Effective Date; (f) the remaining $4,000,000.00 (the "Liquidating Trust Amount") of the Allowed ACE Administrative Claim shall be recoverable against the Liquidating Trust; and (g) distributions from the Liquidating Trust on account of the Liquidating Trust Amount shall be distributed over time, *pari passu* with other administrative claimants that have also agreed to accept deferred payments on their administrative claims, and as follows: (i) ACE shall receive 60% of each distribution from the Liquidating Trust until ACE is paid up to the full Liquidating Trust Amount; and (ii) the remaining 40% of each distribution from the Liquidating Trust shall be made to Allowed General Unsecured Claims and Allowed Priority Claims at the Liquidating Trustee's discretion.

3.      The Settlement Agreement provides significant benefits to, and is in the best interests of, the Debtors and their estates:

- First, in order to effectuate the Debtors' Plan, the Debtors must settle ACE's claims, which represent the largest administrative priority claim against the Debtors' estates. Litigation of such claims would be complex, costly, and result in significant inconvenience and delay for all parties involved. Settling ACE's claims, and securing their vote in favor of the Debtors' Plan (subject to approval of the Settlement), allows the Debtors to focus on confirming and implementing the Plan.

- Second, the Debtors believe that the Settlement Agreement presents the best possible outcome available to the Debtors and other parties in interest, given the circumstances. Not only does the Settlement Agreement substantially reduce a sizeable claim, but it provides the opportunity for greater recovery to more parties. Under the Plan, the General Unsecured Claims will only receive a *pro rata* interest in the Liquidating Trust. The Settlement Agreement provides for additional recoveries by increasing the amount of assets available to the Liquidating Trust.

- Third, the Settlement Agreement requires that ACE contribute its direct claims to the Direct Claims Trust, which, by extension, will provide ACE a release of any preference claims against it pursuant to the terms of the Direct Claim Trust Agreement. As explained in greater detail below, the Debtors may have preference claims against ACE, but such claims would likely be difficult to prosecute and collect upon, and ACE appears to have several credible defenses to the Debtors' preference claims. By providing ACE a release of preference actions, the Debtors leveraged their claims to achieve a better deal than they may otherwise have reached.

4.      In light of the above, the Debtors submit that the Settlement Agreement is in the best interests of the Debtors and their estates, and the Settlement Agreement should be approved by this Court pursuant to Bankruptcy Rule 9019 and sections 105(a), 362, 363(b), 503(b), and 507(a)(2) of the Bankruptcy Code.

## I.      <u>JURISDICTION AND VENUE</u>

5.      The United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012, as amended on June 6, 2025. The Debtors confirm their consent, pursuant to

US_ACTIVE\131591472

Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue of the Chapter 11 Cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The predicates for the relief requested herein are: sections 105(a), 362, 363(b), 503(b), and 507(a)(2) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9019, and Local Rules 9013-1 and 9019-3.

## II.    **BACKGROUND**

A. General Background

8.      On June 9, 2025 (the "Petition Date"),[4] the Debtors commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

9.      On June 26, 2025, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee. [Docket No. 174].

10.     Additional information regarding the Debtors, including their businesses and the events leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declaration, the contents of which are incorporated herein by reference.

---

[4] Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the majority of Debtors were filed shortly thereafter on June 10, 2025, except that, three additional Debtor-affiliates (Powin Energy Storage 2, Inc., Powin Energy Ontario Storage II LP, and Powin Canada B.C. Ltd.) filed for petitions on June 22, 2025, and Debtor-affiliate Powin EKS SellCo, LLC filed on October 10, 2025.

US_ACTIVE\131591472

B. <u>Specific Background</u>

11.     As noted in the Uzzi Declaration, the Debtors and ACE entered into that certain Manufacturing Services Agreement dated December 12, 2022 (the "<u>MSA</u>"), pursuant to which ACE supplied Debtors with shipments primarily composed of power units and electric components.

12.     Before the Petition Date, the Debtors purchased various electrical components (the "<u>Goods</u>") from ACE, including Goods ordered between April 4 and April 11, 2025 (the "<u>Final Shipment</u>"). In April 2025, the Debtors accepted delivery of the Final Shipment at ACE's Vietnam facility, and instructed Mainfreight Inc. to transport the Final Shipment to Mainfreight's warehouse in Norfolk, Virginia, where it ultimately arrived on or about May 30, 2025. Prior to the Petition Date, the Debtors transferred legal title to the Final Shipment to BHER Ravenswood Solar 1, LLC, but the Final Shipment at all times remained in Mainfreight's possession and subject to its possessory lien.

13.     For purposes of the Settlement Agreement, the Debtors and ACE dispute when "delivery" of the Final Shipment occurred for purposes of ACE's claims under sections 546(c) and 503(b)(9). The Debtors contend that under the relevant purchase orders legal title transferred to the Debtors in April 2025 when Mainfreight took possession on the Debtors' behalf of the Final Shipment in Vietnam—which places delivery outside the relevant look-back periods. ACE maintains that delivery occurred on or about May 30, 2025, when the Final Shipment reached Mainfreight's Virginia facility.

14.     As of the Petition Date, the Debtors listed ACE as holding a general unsecured claim in the total amount of $100,104,820.79. *See List of Consolidated Creditors Who Have the*

6

*50 Largest Unsecured Claims and Are Not Insiders* attached to *Voluntary Petition* [Docket No. 1]

(listing ACE as the largest unsecured creditor).

15.     On August 20, 2025, the Court entered its *Order Establishing Deadlines for Filing*

*Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 758] (the

"Bar Date Order"), which set September 29, 2025 at 5:00 p.m. (Prevailing Eastern Time) as the

deadline to file certain claims (the "General Bar Date").

16.     On June 27, 2025, Mainfreight Inc. ("Mainfreight") filed *Mainfreight Inc.'s Motion*

*to Confirm that the Automatic Stay Pursuant to 11 U.S.C. § 362(A) Does Not Apply to Certain*

*Goods in its Possession* [Docket No. 180] (the "Mainfreight Stay Motion"), which sought, among

other things, confirmation that the automatic stay was inapplicable to the Goods such that

Mainfreight could proceed with exercising its lien rights against the Goods.

17.     On June 30, 2025, ACE sent the Debtors a section 546(c)(1) reclamation demand

regarding the Final Shipment.  Additionally, in response to the Mainfreight Stay Motion, on July

8, 2025, ACE filed a limited objection [Docket No. 282], in which ACE also alleged an interest in

the Goods and an additional $10,232,822.69 due and owing against the Debtors, in addition to the

$100,104,820.79 debt acknowledged by the Debtors in Powin's Voluntary Petition. That same

day, the Debtors filed an objection [Docket No. 294] requesting the Court deny the Mainfreight

Stay Motion.

18.     After a hearing, on September 3, 2025, the Court granted [Docket No. 826] the

Mainfreight Stay Motion, and specifically permitted Mainfreight to, among other things, sell the

Goods.

19.     On September 29, 2025, ACE filed Proof of Claim No. 434, which seeks a total of

$110,337,643.48 in various claims, including the ACE Administrative Claim in the amount of

$13,520,599.26 pursuant to section 503(b)(9) of the Bankruptcy Code.

20.     Notwithstanding the foregoing, the Debtors may have certain claims against ACE, including preference claims for payments made to ACE in the ninety (90) days prior to the Petition Date totaling at least $14,057,150.70. *See* p. 1 of Attachment 3 to *Statement of Financial Affairs for Powin, LLC* [Docket No. 415].

21.     On October 6, 2025, the Debtors and the Committee filed their joint Plan. [Docket No. 914]. Through the Plan, the Debtors seek to implement an orderly distribution of the proceeds from their various sales and other recoveries in accordance with the Bankruptcy Code's priority scheme. The Plan also provides for the wind-down of the Debtors' estates and the establishment of appropriate distribution and reconciliation mechanisms to ensure value is returned to creditors as efficiently as possible.

C.   The Proposed Settlement

22.     Over the course of these Chapter 11 Cases, the Parties have engaged in extensive discussions to try to resolve the disputes among the Parties. Those discussions ultimately culminated in the execution of the Settlement Agreement, which, if approved, would resolve all outstanding issues among the Parties. Under the Settlement Agreement, the Debtors and the Committee have agreed to resolve the ACE Administrative Claim, subject to Court approval, as follows:

    a.   ACE shall irrevocably contribute all of its Direct Claims (to the extent of any) to the Direct Claims Trust;

    b.   The Liquidating Trustee shall be Phoenix Management and the forms of the Liquidating Trust Agreement and Direct Claims Trust Agreement shall be in a form acceptable to ACE;

    c.   ACE shall receive the Allowed ACE Administrative Claim in the amount of $5,000,000.00;

    d.  ACE shall receive an allowed unsecured claim in the amount of $105,228,644.71;

    e.  ACE shall receive $1,000,000.00 in cash on account of the Allowed ACE Administrative Claim on the Plan Effective Date;

    f.  The remaining $4,000,000.00 (*i.e.*, the Liquidating Trust Amount) of the Allowed ACE Administrative Claim shall be recoverable against the Liquidating Trust;

    g.  Distributions from the Liquidating Trust on account of the Liquidating Trust Amount shall be distributed over time, *pari passu* with other administrative claimants that have also agreed to accept deferred payments on their administrative claims, and as follows:

        i.  ACE shall receive 60% of each distribution from the Liquidating Trust until ACE is paid the full Liquidating Trust Amount; and

       ii.  The remaining 40% of each distribution from the Liquidating Trust shall be made to Allowed General Unsecured Claims and Allowed Priority Claims at the Liquidating Trustee's discretion; and

    h.  The Parties agree that this Motion must be heard before a hearing on confirmation of the Plan, and ACE shall timely submit one or more ballots, as applicable, in support of the Plan (contingent upon Bankruptcy Court approval of the Settlement Agreement).

### III.    RELIEF REQUESTED

23.    By this Motion, pursuant to sections 105(a), 362, 363(b), 503(b), and 507(a)(2) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 2006, and 9019, and Local Rules 9013-1 and 9019-3, the Debtors seek entry of the Order: (i) authorizing and approving the Settlement Agreement; and (ii) granting related relief.

### IV.    BASIS FOR RELIEF

24.    As detailed below, entry into the Settlement Agreement falls well above the lowest level of reasonableness and provides several direct benefits to the Debtors' estates. For these reasons, the Settlement Agreement satisfies all of the requirements for approval under Bankruptcy Rule 9019 and sections 105(a), 362, 363(b), 503(b), and 507(a)(2) of the Bankruptcy Code and

should be approved.

    A.   The Proposed Settlement Satisfies Bankruptcy Rule 9019 and Should Be Approved.

25.    Bankruptcy Rule 9019(a) provides, in relevant part:

On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). In addition, section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

26.    Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996).

27.    Under Bankruptcy Rule 9019(a), the Court has authority, after notice and a hearing, to approve a settlement that is fair, reasonable, and in the best interest of the estate. *See In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) ("The decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."); *In re Princeton Alternative Income Fund, LP*, No. 18-14603, 2019 WL 4127148, at *2 (Bankr. D.N.J. Aug. 29, 2019) ("In essence, a court will approve a settlement when it is fair and equitable and in the best interests of the estate.") (citations omitted).

28.    The Third Circuit applies a four-factor balancing test when evaluating settlements under Bankruptcy Rule 9019: "(1) the probability of success in litigation; (2) the likely difficulties

in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393. A settlement should be approved if it falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008). "[C]ourts should not have a 'mini-trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.R. Grace & Co.*, 475 B.R. 34, 77–78 (Bankr. D. Del. 2012).

29.     Here, the Settlement Agreement is fair, reasonable, and in the best interests of the Debtors' estates. It brings certainty to previously disputed and contingent liabilities, materially reduces the Debtors' claim exposure, and enables confirmation and implementation of the Plan in a value-maximizing manner. By bringing greater certainty to the Debtor's estates and enhancing recoveries for all creditor constituencies, the Settlement Agreement plainly serves the collective interests of all parties in interest.

### i.     *The Probability of Success in Litigation*

30.     The Settlement Agreement eliminates the substantial litigation risk and expense that would otherwise accompany a protracted litigation between the Debtors and ACE regarding the validity, priority, and amount of ACE's asserted claims. Although the Debtors believe that they have strong legal and factual defenses to portions of the alleged $13.5 million ACE Administrative Claim under section 503(b)(9) and the other asserted claims exceeding $110 million in the aggregate, there can be no guarantee of success if the matter were litigated. The claims at issue involve complex factual questions—such as the precise timing of the transfer of title to the Final Shipment, the proper characterization of the transactions under the MSA, and the scope of ACE's

reclamation and administrative rights—as well as unsettled legal issues regarding the intersection of section 503(b)(9), reclamation demands under section 546(c), and competing lien and ownership interests in the Goods. Protracted litigation over these issues would require extensive discovery, expert testimony, and evidentiary hearings and would likely entail significant delay and expense, all while the estates continue to accrue administrative costs.

31.     Moreover, if the Debtors were unsuccessful in defending against ACE's administrative claims, the resulting judgment could exceed the Debtors' ability to satisfy other allowed administrative and priority claims, materially impairing recoveries for all other creditors and jeopardizing confirmation of the Plan. The Settlement Agreement mitigates these risks by fixing ACE's administrative expense claim at $5 million—significantly less than half of the amount originally asserted—and by deferring the majority of that claim to post-Effective Date recoveries against the Liquidating Trust, with forty percent being made to other creditor constituencies. In light of the magnitude of ACE's claims and the uncertainty inherent in litigating cross-border commercial disputes with a major foreign counterparty, the Debtors reasonably determined that the Settlement Agreement represents a superior outcome compared to the unpredictable, costly, and potentially value-destructive alternative of continued litigation. Accordingly, this factor weighs heavily in favor of approving the Settlement Agreement as fair, reasonable, and in the best interests of the estates.

### ii. *The Likely Difficulties in Collection*

32.     The Settlement Agreement contemplates a settlement and release of the Debtors' causes of action against ACE, including potential preference actions.[5]  As described below, such

---

[5] The Settlement Agreement requires ACE to contribute its direct claims to the Direct Claims Trust, which, in accordance with the Direct Claims Trust Agreement, also provides ACE a release of any causes of actions against it.

causes of action, even if successful, may ultimately be difficult to collect from ACE and therefore are more valuable to the Debtors' estates as part of a comprehensive settlement.

33.     Although the Debtors' books and records reflect payments totaling approximately $14 million to ACE during the ninety days preceding the Petition Date, any attempt to recover those amounts through preference litigation would face significant procedural and substantive challenges. As a threshold matter, ACE is a foreign entity with operations and assets primarily located outside the United States, making the enforcement and collection of any judgment potentially difficult and expensive. Moreover, ACE has asserted several credible defenses under section 547 of the Bankruptcy Code, including the ordinary-course-of-business, contemporaneous-exchange, and new-value defenses, which could substantially offset or even eliminate any recoverable preference exposure.

34.     Compounding these litigation and collection risks, ACE has also asserted a $13.5 million administrative expense claim which, even if the Debtors were to prevail in whole or in part on their preference actions, could allow ACE to offset any resulting recoveries against its allowed administrative claims, thereby substantially reducing or eliminating any meaningful recovery for the estates. In contrast, the Settlement Agreement achieves a more certain and value-maximizing result by resolving all such claims comprehensively and fixing ACE's administrative claim at $5 million (significantly less than half of the amount asserted) and waiving the need for costly litigation to pursue potentially uncollectible preference recoveries. This certainty and efficiency benefit all creditor constituencies and weigh strongly in favor of approving the Settlement Agreement.

### iii.   *The Complexity of the Litigation Involved, the Expense, Inconvenience and Delay Necessarily Attending It*

35.     The disputes resolved by the Settlement Agreement are factually and legally

13

complex, involving a web of interrelated contractual, commercial, and cross-border issues that would be difficult and time-consuming to litigate. Resolution would require adjudication of (i) the timing and effect of title transfer of the Final Shipment under the MSA and applicable commercial law, (ii) the enforceability and scope of ACE's asserted reclamation rights under section 546(c) of the Bankruptcy Code, (iii) the validity and priority of ACE's claimed administrative expense under section 503(b)(9), and (iv) the Debtors' affirmative claims for avoidance and recovery of prepetition transfers under sections 547 and 550 of the Bankruptcy Code. Each of these issues is fact-intensive, would require extensive document discovery and deposition testimony across multiple jurisdictions, and would likely necessitate expert analysis of international shipping, supply chain, and accounting practices.

36.     Further, a central dispute between the Parties concerns the point at which the Final Shipment was "delivered" under the applicable purchase orders and governing law. If the Debtors are correct that delivery occurred in April, when the Debtors contend they took legal title, then ACE would have no administrative claim. If, on the other hand, ACE is correct that delivery occurred on May 30, 2025 when the Final Shipment was delivered to Virginia, then ACE's entire asserted administrative claim would likely be valid and entitled to priority status in an amount that could threaten confirmation of the Debtors' plan. The issue is therefore binary, presenting a high-stakes, winner-take-all outcome. The proposed Settlement Agreement represents a pragmatic and balanced resolution of that dispute and reflects a fair allocation of risk and consequences by both sides.

37.     Moreover, both the Debtors and ACE are sophisticated enterprises represented by experienced counsel who would vigorously litigate every aspect of these disputes. The resulting proceedings would almost certainly involve competing summary judgment motions, potential

evidentiary hearings, and appeals that would impose substantial administrative costs and consuming the Debtors' limited resources at a critical juncture in the Chapter 11 process. Given the cross-border nature of ACE's operations and the international shipment of the Goods, coordination of discovery and enforcement could further complicate and prolong the litigation.

38.     Accordingly, the complexity, expense, and delay that would otherwise attend litigation weigh decisively in favor of approving the Settlement Agreement.

### iv.     *The Paramount Interest of the Creditors*

39.     Finally, the paramount interests of creditors strongly support approval of the Settlement Agreement. The Settlement Agreement achieves a global resolution of the Debtors' largest administrative and unsecured claims, thereby reducing overall claim exposure and increasing the certainty and efficiency of distributions under the Plan. By fixing ACE's administrative claim at $5 million—significantly less than half of the amount asserted—and structuring a portion of that recovery to flow through the Liquidating Trust after the Effective Date, the Settlement preserves estate liquidity and enhances the pool of assets available for distribution to other creditor constituencies. The Settlement Agreement also significantly bolsters support for confirmation of the Plan with ACE agreeing to timely submit a ballot for each class in which it is entitled to vote accepting the Plan (subject to approval of the Settlement Agreement). Additionally, ACE's contribution of its Direct Claims to the Direct Claims Trust allows the broader creditor body to benefit from additional viable claims against third parties that ACE was under no obligation to contribute.  Moreover, the fact that forty percent of its Liquidating Trust recoveries will be distributed to priority and general unsecured creditors ensures that the benefits of the compromise extend beyond a single claimant and inure directly to the broader creditor body. In short, the Settlement Agreement maximizes value, minimizes litigation expense, and expedites

implementation of the Plan, thereby advancing the collective interests of all stakeholders.

40.    For all of these reasons—and as demonstrated by the foregoing analysis of the *Martin* factors—the Settlement Agreement easily satisfies the applicable standard for approval. It resolves highly complex disputes through an arm's-length, good-faith negotiation, eliminates significant litigation risk, and produces a result that is fair, equitable, and well above the lowest point in the range of reasonableness.

> B.    Entry Into and Performance Under the Settlement Agreement is a Sound Exercise of the Debtors' Business Judgment.

41.    Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350–51 (3d Cir. 1999); *see also In re Martin*, 91 F.3d 389, 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). Courts normally defer to the debtor's business judgment so long as there is a legitimate business justification. *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (Bankr. D. Del. 1999) (holding that the trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)). A court must approve a debtor's exercise of business judgment "unless it is the product of bad faith, whim, or caprice." *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 182 (Bankr. E.D. Pa. 2010).

42.    The Debtors respectfully submit that substantial business justification exists for

US_ACTIVE\131591472

their entry into the Settlement Agreement. As detailed above, the Settlement Agreement provides a fair, reasonable, and value-maximizing resolution to complex and potentially costly disputes between the Debtors and ACE. Rather than engaging in protracted litigation that would divert management attention, deplete estate resources, and delay confirmation of the Plan, the Debtors negotiated a comprehensive compromise that brings certainty and finality to the largest outstanding administrative and unsecured claims against the estates, and achieves ACE's acceptance of the Plan (subject to approval of the Settlement Agreement). This resolution allows the Debtors to redirect their efforts toward confirmation and implementation of the Plan, thereby advancing the efficient wind-down of the Chapter 11 Cases to the benefit of all parties in interest.

43.    The Debtors also believe that the value realized through the Settlement— principally the reduction of ACE's asserted administrative expense claim from approximately $13.5 million to $5 million—is both fair and commercially reasonable, particularly in light of the concessions ACE has made. By accepting a materially reduced allowed claim and allowing distributions of a substantial portion of that amount through the Liquidating Trust, ACE has provided meaningful liquidity relief to the estates. These concessions preserve substantial funds for distribution to other creditor constituencies, directly increasing overall recoveries and facilitating timely Plan implementation.

44.    The Debtors further recognize that, although their preference claims against ACE total roughly $14 million, the likelihood of realizing any meaningful recovery from such litigation is uncertain. ACE's total claims against the Debtors' estates far exceed any potential preference exposure, and ACE has asserted multiple statutory defenses that would make successful recovery uncertain and expensive to pursue. Under these circumstances, the Debtors appropriately determined that leveraging those avoidance claims as part of a broader negotiated resolution

17

produces a superior economic result and maximizes value for the estates.

45.      The Settlement Agreement is also the product of extensive, good-faith, and arm's-length negotiations among the Debtors, ACE, and the Committee. Each party was represented by experienced and sophisticated counsel, and the final terms reflect a balanced compromise achieved after weeks of substantive dialogue. The Debtors believe the Settlement Agreement represents the most favorable terms attainable under the circumstances, as it materially reduces ACE's administrative claim, resolves all related disputes, and eliminates significant litigation risk. In the exercise of their sound business judgment, the Debtors have determined that entry into the Settlement Agreement is necessary and appropriate to preserve estate value and to advance the best interests of the Debtors' creditors and other stakeholders.

## V.      WAIVER OF STAY

46.      To the extent the requested relief constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h) regarding the use, sale, or lease of property and the stay of an order authorizing the assignment of an executory contract or unexpired lease under Bankruptcy Rule 6006(d), in each case, to the extent applicable. The Debtors intend to consummate the Settlement Agreement as soon as practicable following entry of the Order. Accordingly, cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h) and 6006(d), to the extent such stay applies.

## VI.      WAIVER OF MEMORANDUM OF LAW

47.      The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## VII.    <u>RESERVATION OF RIGHTS</u>

48.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted in connection with this Motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any other claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any other claim on any grounds; (c) a promise or requirement to pay any other particular claim; (d) an implication, admission or finding that any other particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## VIII.    <u>NO PRIOR REQUEST</u>

49.     No prior request for the relief sought in this motion has been made to this or any other court.

## IX.    <u>NOTICE</u>

50.     Notice of this Motion shall be given to the following parties: (a) the U.S. Trustee; (b) counsel for ACE; (c) the Debtors' fifty largest unsecured creditors on a consolidated basis; (d)  counsel to the Committee; (e) the United States Internal Revenue Service; (f) the United States

Attorney's Office for the District of New Jersey; and (g) all parties entitled to service under Rule 2002 or who have requested notice in these Chapter 11 Cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## X.    <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Order as set forth herein; and (ii) grant the Debtors such other and further relief is just and proper under the circumstances.

[*Signature Page Follows*]

Dated: November 17, 2025

**DENTONS US LLP**

*/s/ Lauren Macksoud*
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted pro hac vice)
Van C. Durrer, II (admitted pro hac vice)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
van.durrer@dentons.com

John D. Beck (admitted pro hac vice)
Sarah M. Schrag (admitted pro hac vice)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
sarah.schrag@dentons.com

- and -

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street, Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted pro hac vice)
Eitan Blander (admitted pro hac vice)
One Penn Plaza, Suite 3335
New York, New York 10119

Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email: altogut@teamtogut.com
          aglaubach@teamtogut.com
          eblander@teamtogut.com

*Counsel for Debtors and Debtors in Possession*

1

## DECLARATION OF GERARD UZZI IN SUPPORT OF
## DEBTORS' MOTION TO APPROVE SETTLEMENT AGREEMENT

I, Gerard Uzzi, hereby state and declare as follows:

1.      I am the Chief Restructuring Officer (the "CRO") of Powin, LLC ("Powin"). I am

appointed as CRO of Powin and the above-referenced affiliated debtors and debtors in possession

(collectively, the "Debtors") effective on June 9, 2025.

2.      I am also a Managing Partner and Founder of CBMN Advisors LLC d/b/a Uzzi &

Lall ("Uzzi & Lall"). I have extensive experience advising companies, boards of directors, senior

management, creditors, equity holders, and investors in stressed and distressed situations,

including chapter 11, out-of-court work outs, and rescue financings across industries and

jurisdictions. I also serve in a number of fiduciary capacities, including presently as the Chairman

of the Celsius Litigation Oversight Committee.

3.      Prior to co-founding Uzzi & Lall, I was a senior restructuring partner at Milbank

LLP and White & Case LLP for over 18 years in the aggregate. During that time, I was personally

involved in senior roles in some of the nation's largest and most complex chapter 11 cases,

including Lehman Brothers, Washington Mutual, American Airlines, Rescap, Charter

Communications, Mirant, Adelphia Communications, Purdue Pharma, and ZAIS. I have been

recognized for my work in Chambers, Euromoney's IFLR, The Legal 500, and Expert Guides as

one of the World's Leading Insolvency and Restructuring Professionals.

4.      On June 9, 2025 (the "Petition Date"),[1] Powin and certain of its subsidiaries

(collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the

---

[1] Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the majority of Debtors were filed shortly thereafter on June 10, 2025, *except that*, three additional Debtor-affiliates (Powin Energy Storage 2, Inc., Powin Energy Ontario Storage II LP, and Powin Canada B.C. Ltd.) filed for petitions on June 22, 2025, and Debtor-affiliate Powin EKS SellCo, LLC filed on October 10, 2025.

United States Code, §§ 101 *et seq.*, as amended (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>"). I am knowledgeable and familiar with the Debtors' day-to-day operations, business and financial affairs, and the circumstances leading to the commencement of these chapter 11 cases (the "<u>Chapter 11 Cases</u>").

5.       I submit this declaration (the "<u>Declaration</u>") in support of *Expedited Motion of the Debtors for Entry of an Order (I) Authorizing and Approving Settlement Agreement; and (II) Granting Related Relief* (the "<u>Motion</u>").[2]

6.       Except as otherwise indicated herein, this Declaration is based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors or the Debtors' advisors, my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and this industry. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

7.       The Debtors and ACE entered into that certain MSA dated December 12, 2022, pursuant to which ACE supplied Debtors with shipments primarily composed of power units and electric components.

8.       Before the Petition Date, the Debtors purchased various electrical components (the "<u>Goods</u>") from ACE, including Goods ordered between April 4 and April 11, 2025 (the "<u>Final Shipment</u>"). In April 2025, the Debtors accepted delivery of the Final Shipment at ACE's Vietnam facility, and instructed Mainfreight Inc. to transport the Final Shipment to Mainfreight's warehouse in Norfolk, Virginia, where it ultimately arrived on or about May 30, 2025. Prior to the Petition Date, the Debtors transferred legal title to the Final Shipment to BHER Ravenswood Solar

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

1, LLC, but the Final Shipment at all times remained in Mainfreight's possession and subject to its possessory lien.

9.      For purposes of the Settlement Agreement, the Debtors and ACE dispute when "delivery" of the Final Shipment occurred for purposes of ACE's claims under sections 546(c) and 503(b)(9). The Debtors contend that under the relevant purchase orders legal title transferred to the Debtors in April 2025 when Mainfreight took possession on the Debtors' behalf of the Final Shipment in Vietnam—which places delivery outside the relevant look-back periods. ACE maintains that delivery occurred on or about May 30, 2025, when the Final Shipment reached Mainfreight's Virginia facility.

10.     As of the Petition Date, the Debtors listed ACE as holding a general unsecured claim in the total amount of $100,104,820.79.

11.     On June 30, 2025, ACE sent the Debtors a section 546(c)(1) reclamation demand regarding the Final Shipment.

12.     The Debtors may have certain claims against ACE, including preference claims for payments made to ACE in the ninety (90) days prior to the Petition Date.

13.     Through the Plan, the Debtors seek to implement an orderly distribution of the proceeds from their various sales and other recoveries in accordance with the Bankruptcy Code's priority scheme. The Plan also provides for the wind-down of the Debtors' estates and the establishment of appropriate distribution and reconciliation mechanisms to ensure value is returned to creditors as efficiently as possible.

14.     Over the course of these Chapter 11 Cases, the Parties have engaged in extensive discussions to try to resolve the disputes among the Parties. Those discussions ultimately culminated in the execution of the Settlement Agreement, which, if approved, would resolve all

2

outstanding issues among the Parties. Under the Settlement Agreement, the Debtors and the Committee have agreed to resolve the ACE Administrative Claim, subject to Court approval, as follows:

    a.   ACE shall irrevocably contribute all of its Direct Claims (to the extent of any) to the Direct Claims Trust;

    b.   Selection of the Liquidating Trustee and the forms of the Liquidating Trust Agreement and Direct Claims Trust Agreement shall be in a form acceptable to ACE;

    c.   ACE shall receive an Allowed Administrative Claim of $5,000,000.00 (the "Allowed ACE Administrative Claim");

    d.   ACE shall receive an allowed unsecured claim in the amount of $105,228,644.71;

    e.   ACE shall receive $1,000,000.00 in cash on account of the Allowed ACE Administrative Claim on the Plan Effective Date;

    f.   The remaining $4,000,000.00 (the "Liquidating Trust Amount") of the Allowed ACE Administrative Claim shall be recoverable against the Liquidating Trust; and

    g.   Distributions from the Liquidating Trust on account of the Liquidating Trust Amount shall be distributed over time, *pari passu* with other administrative claimants that have also agreed to accept deferred payments on their administrative claims, and as follows:

        i.   ACE shall receive 60% of each distribution from the Liquidating Trust until ACE is paid the full Liquidating Trust Amount; and

        ii.   The remaining 40% of each distribution from the Liquidating Trust shall be made to Allowed General Unsecured Claims and Allowed Priority Claims at the Liquidating Trustee's discretion; and

    h.   The Parties' agree that this Motion must be head before a hearing on confirmation of the Plan, and ACE shall timely submit one or more ballots, as applicable, in support of the Plan contingent upon Bankruptcy Court approval of the Settlement Agreement.

15.    For the reasons that follow, the Debtors and I believe that entry into the Settlement Agreement is supported by substantial business justifications, is fair and reasonable, provides several direct benefits to the Debtors' estates, and is in the best interests of the Debtors' estates.

3

16.     Among other things, the Settlement Agreement creates certainty to previously disputed and contingent liabilities, materially reduces the Debtors' claim exposure, and enables confirmation and implementation of the Plan in a value-maximizing manner.

17.     The Settlement Agreement also eliminates the substantial litigation risk and expense that would otherwise accompany a protracted litigation between the Debtors and ACE regarding the validity, priority, and amount of ACE's asserted claims. Although the Debtors and I believe that the Debtors have strong legal and factual defenses to portions of the alleged $13.5 million ACE Administrative Claim under section 503(b)(9) and the other asserted claims exceeding $110 million in the aggregate, there can be no guarantee of success if the matter were litigated. The claims at issue involve complex factual questions—such as the precise timing of the transfer of title to the Final Shipment, the proper characterization of the transactions under the MSA, and the scope of ACE's reclamation and administrative rights—as well as unsettled legal issues regarding the intersection of section 503(b)(9), reclamation demands under section 546(c), and competing lien and ownership interests in the Goods. Protracted litigation over these issues would require extensive discovery, expert testimony, and evidentiary hearings and would likely entail significant delay and expense, all while the estates continue to accrue administrative costs.

18.     Moreover, if the Debtors were unsuccessful in defending against ACE's administrative claims, the Debtors and I believe the resulting judgment could exceed the Debtors' ability to satisfy other allowed administrative and priority claims, materially impairing recoveries for all other creditors and jeopardizing confirmation of the Plan. The Settlement Agreement mitigates these risks by fixing ACE's administrative expense claim at $5 million—significantly less than half of the amount originally asserted—and by deferring the majority of that claim to post-Effective Date recoveries against the Liquidating Trust, with forty percent being made

available to other creditor constituencies. In light of the magnitude of ACE's claims and the uncertainty inherent in litigating cross-border commercial disputes with a major foreign counterparty, the Debtors and its professionals, including me, reasonably determined that the Settlement Agreement represents a superior outcome compared to the unpredictable, costly, and potentially value-destructive alternative of continued litigation.

19.    Furthermore, the Settlement Agreement's construct whereby ACE contributes its direct claims to the Direct Claims Trust, which, in accordance with the Direct Claims Trust Agreement, also provides ACE a release of any preference actions against it, provides a significant benefit to the Direct Claims Trust by making a portion of additional viable claims available to all creditors and by settling ACE's preference exposure to the Debtors' estates without any litigation uncertainty or risk. Although the Debtors' books and records reflect payments totaling approximately $14 million to ACE during the ninety days preceding the Petition Date, I believe any attempt to recover those amounts through preference litigation would face significant procedural and substantive challenges. As a threshold matter, I understand that ACE is a foreign entity with operations and assets primarily located outside the United States, making the enforcement and collection of any judgment potentially difficult and expensive. Moreover, ACE has asserted several credible defenses under section 547 of the Bankruptcy Code, including the ordinary-course-of-business, contemporaneous-exchange, and new-value defenses, which I believe could substantially offset or even eliminate any recoverable preference exposure.

20.    Compounding these litigation and collection risks, ACE has also asserted a $13.5 million administrative expense claim which, even if the Debtors were to prevail in whole or in part on their preference actions, could allow ACE to offset any resulting recoveries against its allowed administrative claims, thereby substantially reducing or eliminating any meaningful recovery for

the estates. In contrast, the Settlement Agreement achieves a more certain and value-maximizing result by resolving all such claims comprehensively and fixing ACE's administrative claim at $5 million (significantly less than half of the amount asserted) and waiving the need for costly litigation to pursue potentially uncollectible preference recoveries. I believe this certainty and efficiency benefit all creditor constituencies and weigh strongly in favor of approving the Settlement Agreement.

21.     I believe the disputes resolved by the Settlement Agreement are factually and legally complex, involving a web of interrelated contractual, commercial, and cross-border issues that would be difficult and time-consuming to litigate. Resolution would require, among other things, fact-intensive document discovery and deposition testimony across multiple jurisdictions, and would likely necessitate analysis of international shipping, supply chain, and accounting practices.

22.     Further, both the Debtors and ACE are sophisticated enterprises represented by experienced counsel who would vigorously litigate every aspect of these disputes. The resulting proceedings would almost certainly involve competing summary judgment motions, potential evidentiary hearings, and appeals, imposing substantial administrative costs and consuming the Debtors' limited resources at a critical juncture in the Chapter 11 process. Given the cross-border nature of ACE's operations and the international shipment of the Goods, coordination of discovery and enforcement could further complicate and prolong the litigation.

23.     Moreover, the paramount interests of creditors strongly support approval of the Settlement Agreement. The Settlement Agreement achieves a global resolution of the Debtors' largest administrative and unsecured claims, thereby reducing overall claim exposure and increasing the certainty and efficiency of distributions under the Plan. By fixing ACE's

administrative claim at $5 million—significantly less than half of the amount asserted—and structuring a portion of that recovery to flow through the Liquidating Trust after the Effective Date, I believe the Settlement preserves estate liquidity and enhances the pool of assets available for distribution to other creditor constituencies. Additionally, ACE's agreement to permit forty percent of the Liquidating Trust Amount to be distributed on account of priority and general unsecured creditors ensures that the benefits of the compromise extend beyond a single claimant and inure directly to the broader creditor body. In short, I believe the Settlement Agreement maximizes value, minimizes litigation expense, and expedites implementation of the Plan, thereby advancing the collective interests of all stakeholders.

24.     The Debtors also believe that the value realized through the Settlement—principally the reduction of ACE's asserted administrative expense claim from approximately $13.5 million to $5 million—is both fair and commercially reasonable, particularly in light of the concessions ACE has made. By accepting a materially reduced allowed claim and agreeing to defer recovery of a substantial portion of that amount through the Liquidating Trust, ACE has provided meaningful liquidity relief to the estates. These concessions preserve substantial funds for distribution to other creditor constituencies, directly increasing over-all recoveries and facilitating timely Plan implementation.

25.     In sum, the Debtors and I believe the Settlement Agreement should be approved.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 17th day of November 2025, at Sea Bright, New Jersey in Monmouth County.

Signed by:

*Gerard Uzzi*

C933082321E44B5...

Gerard Uzzi

8

# EXHIBIT A

(Proposed Form of Order)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

## ORDER GRANTING EXPEDITED MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SETTLEMENT AGREEMENT; AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three [3] through six [6], is

**ORDERED**.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110] . The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(Page 2)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order
(I) Authorizing and Approving Settlement Agreement; and (II) Granting Related Relief

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**

Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
          van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
          sarah.schrag@dentons.com

*Counsel for Debtors and*
*Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
          eblander@teamtogut.com

*Counsel for Debtors and*
*Debtors in Possession*

2

(Page 3)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order
(I) Authorizing and Approving Settlement Agreement; and (II) Granting Related Relief

Upon consideration of the Motion[2] of the above-captioned debtors and debtors in possession
(collectively, the "Debtors") for entry of an order (this "Order"): (i) authorizing and approving that
certain settlement agreement (the "Settlement Agreement")[3] under sections 105(a), 362, 363(b),
503(b), and 507(a)(2) of title 11 of the United States Code, §§ 101 *et seq.*, as amended (the
"Bankruptcy Code"), Rules 2002, 6004, 6006, and 9019 of the Federal Rules of Bankruptcy
Procedure ("Bankruptcy Rules"), and Rules 9013-1 and 9019-3 of the Local Bankruptcy Rules for
the District of New Jersey (the "Local Rules") by and among Powin and the Official Committee
of Unsecured Creditors (the "Committee"), on the one hand, and ACE Engineering and Co., Ltd.
("ACE"), on the other hand; and (ii) granting related relief,[4] all as more fully set forth in the
Motion; and upon the First Day Declaration and the Uzzi Declaration; and this Court having
jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of
Reference* from the United States District Court for the District of New Jersey dated as of
September 18, 2012, as amended on June 6, 2025; and this Court having found that consideration
of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)
and this Order is a final order within the meaning of 28 U.S.C. § 158(a); and the Debtors having
consented to the entry of a final order with respect to the Motion; and this Court having found that
venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408
and 1409; and this Court having found that the relief requested in the Motion is in the best interests
of the Debtors' estates, their creditors, and other parties in interest; and this Court having found
that the Debtors' notice of the Motion, opportunity to object, and opportunity for a hearing on the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3] A true and correct copy of the Settlement Agreement is attached to the Order as **Exhibit 1**. Capitalized terms not
otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement or the Debtors' *Joint
Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors* [Docket No. 914] (as amended from time to time, the "Plan"), as
applicable.

[4] Each of Powin and ACE are sometimes referred to herein individual as a "Party", and, collectively as the "Parties."

(Page 4)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order
(I) Authorizing and Approving Settlement Agreement; and (II) Granting Related Relief

Motion were appropriate under the circumstances and that no other notice need be provided; and

this Court having determined that the legal and factual bases set forth in the Motion, the First Day

Declaration, and the Uzzi Declaration, and at the hearing thereon establish just cause for the relief

granted herein; and all objections, responses, or reservation of rights filed or asserted in response

to the Motion or the relief granted herein, if any, having been withdrawn, resolved, or overruled

on their merits in their entirety; and upon all of the proceedings before this Court; and after due

deliberation and sufficient cause appearing therefor; and after due deliberation and sufficient cause

appearing therefor, it is **HEREBY ORDERED THAT**:[5]

1.      The Motion is granted on a final basis to the extent set forth herein. Pursuant to sections

363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Settlement Agreement attached

as **Exhibit 1** is approved in its entirety as entirely fair, equitable, and reasonable, and the terms and conditions

of the Settlement Agreement are incorporated into this Order as if fully set forth herein.

2.      The Debtors and ACE are authorized to enter into, perform, execute, and deliver all

documents, and take all actions necessary to timely and fully implement and consummate the

Settlement Agreement and the relief granted in this Order.

3.      Effective from and after the Effective Date, each of the Parties hereby release any

claims they may have relating to the Settlement Agreement.

4.      The Settlement Agreement was entered into without collusion or fraud, in good

faith, and at arm's length and was not entered into for the purpose of hindering, delaying, or

---

[5] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Hearing. This Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

(Page 5)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order
(I) Authorizing and Approving Settlement Agreement; and (II) Granting Related Relief

defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United

States, any state, territory, possession thereof, or the District of Columbia, or any other applicable

law. None of the Parties entered into the Settlement Agreement with any fraudulent or otherwise

improper purpose.

5.        The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby

modified to the extent necessary, without further order of the Court, to implement the terms and

provisions of the Settlement Agreement and this Order.

6.        This Order shall be fully enforceable against each of the Debtors, their estates, and any

successors thereto, including, without limitation, any estate representative or trustee appointed in any of the

Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of the

Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the

dismissal of any of the Chapter 11 Cases or any such successor cases, in each case, in accordance with the

terms of this Order.

7.        Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any

applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be

effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy

Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

8.        In the event that there is a direct conflict between the terms of this Order, the Settlement

Agreement, and any documents executed in connection therewith, the provisions contained in this Order, the

Settlement Agreement, and any documents executed in connection therewith shall govern, in that order.

9.        This Court shall retain exclusive jurisdiction with respect to all matters arising from or related

to the implementation, interpretation, and/or enforcement of this Order.

US_ACTIVE\131591472

(Page 6)
Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of Order: Order Granting Expedited Motion of the Debtors for Entry of an Order
(I) Authorizing and Approving Settlement Agreement; and (II) Granting Related Relief

10.     All time periods set forth in this Order and the Settlement Agreement shall be calculated in

accordance with Bankruptcy Rule 9006(a).

**Exhibit 1**

(Settlement Agreement)

US_ACTIVE\131591472

*Execution Version*

## SETTLEMENT AGREEMENT

On this 17th day of November, 2025 ("Execution Date"), and subject to approval by order of the Bankruptcy Court (as defined below), Powin, LLC and its affiliated debtors (collectively, the "Debtors"), ACE Engineering and Co., Ltd. ("ACE") and the Official Committee of Unsecured Creditors (the "Committee," and together with Powin and ACE, the "Parties") in the Debtors' Chapter 11 Cases pending in the United State Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), jointly administered in Case No. 25-16137 (MBK) (collectively, the "Bankruptcy Case"), and subject to the terms, conditions, and approvals set forth herein, agree to the following (the "Agreement"):

## RECITALS

WHEREAS, on or about June 9, 2025 (the "Petition Date"), the Debtors commenced the a voluntary Bankruptcy Case for relief under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.*, as amended (the "Bankruptcy Code"). The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.;

WHEREAS, on June 26, 2025, the Office of the United States Trustee appointed the Committee [Docket No. 174];

WHEREAS, the Debtors and ACE entered into that certain Manufacturing Services Agreement dated December 12, 2022 (the "MSA"), pursuant to which ACE supplied the Debtors with shipments primarily composed of power units and electric components;

WHEREAS, prior to the Petition Date, the Debtors purchased various electrical components (the "Goods") from ACE, including Goods ordered between April 4 and April 11, 2025 (the "Final Shipment");

WHEREAS, on June 30, 2025, ACE sent the Debtors a section 546(c)(1) reclamation demand regarding the Goods;

WHEREAS, on September 29, 2025, ACE filed Proof of Claim No. 434 (the "Proof of Claim"), which seeks a total of $110,337,643.48 in various claims, including an administrative priority claim in the amount of $13,520,599.26 pursuant to section 503(b)(9) of the Bankruptcy Code (the "ACE Administrative Claim");

WHEREAS, on October 6, 2025, the Debtors and the Committee filed their *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 914] (as amended from time to time, the "Plan"),[1] which seeks to implement an orderly distribution of the Debtors' estates and the establishment of appropriate claim distribution and reconciliation mechanisms;

---

[1] Any capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

1

*Execution Version*

WHEREAS, the Debtors and ACE dispute, among other things, when "delivery" of the Final Shipment occurred for purposes of ACE's claims under sections 546(c) and 503(b)(9) of the Bankruptcy Code;

WHEREAS, the Parties agree that this Agreement will be presented to the Bankruptcy Court through a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Motion"); and

WHEREAS, the Parties agree to resolve all claims between ACE and the Debtors, including, but not limited to, the Proof of Claim, the ACE Administrative Claim, the Final Shipment, Goods, and any causes of action the Debtors have against ACE, pursuant to and conditioned upon Bankruptcy Court approval of the terms of this Agreement.

NOW THEREFORE, the Parties agree as follows:

1.      Recitals. The Recitals as set forth above are true and correct and are incorporated herein by reference and made a part of this Agreement in all respects.

2.      The Settlement. In consideration for the mutual promises and consideration hereunder, the Parties agree that:

a.   ACE shall irrevocably contribute all of its Direct Claims (to the extent of any) to the Direct Claims Trust;

b.   The Liquidating Trustee shall be Phoenix Management;

c.   The forms of the Liquidating Trust Agreement and Direct Claims Trust Agreement shall be in a form acceptable to ACE, and it being agreed the documents attached to the Plan Supplement and the Liquidating Trustee identified in the Plan Supplement are acceptable to ACE;

d.   ACE shall receive an Allowed Administrative Claim of $5,000,000.00 (the "Allowed ACE Administrative Claim");

e.   ACE shall receive an allowed unsecured claim in the amount of $105,228,644.71;

f.   ACE shall receive $1,000,000.00 in cash on account of the Allowed ACE Administrative Claim on the Plan Effective Date;

g.   The remaining $4,000,000.00 (the "Liquidating Trust Amount") of the Allowed ACE Administrative Claim shall be recoverable against the Liquidating Trust; and

h.   Distributions from the Liquidating Trust on account of the Liquidating Trust Amount shall be distributed over time, *pari passu* with other administrative claimants that have also agreed to accept deferred payments on their administrative claims, and as follows:

    i.   ACE shall receive 60% of each distribution from the Liquidating Trust until ACE is paid the full Liquidating Trust Amount; and

    ii.   The remaining 40% of each distribution from the Liquidating Trust shall be shared by Allowed General Unsecured Claims and Allowed Priority Claims at the Liquidating Trustee's discretion.

3.    9019 Motion.

    a.   This Agreement is subject to entry of the 9019 Order;

    b.   The Parties agree that the Agreement will be presented though the Motion in settlement of all claims of ACE; and

    c.   The Parties will use their best efforts to expedite the filing of the Motion and the approval of the Agreement; and

    d.   The Parties agree that the Motion must be heard, subject to the Court's calendar, before a hearing is held on confirmation of the Plan.

4.    Plan Voting. ACE agrees that, in each class of claims under the Plan in which ACE holds a claim and is entitled to vote, ACE shall timely submit a ballot voting to accept the Plan. ACE's agreement to vote in favor of the Plan and any ballot submitted by ACE are expressly conditioned upon the Bankruptcy Court's approval of this Agreement pursuant to Bankruptcy Rule 9019. In the event the Bankruptcy Court declines to approve this Agreement, ACE shall have no obligation to vote.

5.    Mutual Releases.  ACE on the one hand, and the Debtors and the Committee on the other hand, hereby fully, finally, unconditionally, irrevocably, and completely release and forever discharge each other and each of their predecessors, successors (including, without limitation, any chapter 11 or chapter 7 trustee of the Debtors or their estates), assigns, affiliates, subsidiaries, parents, partners, constituents, current officers, directors, employees, attorneys and agents, and each of their respective heirs, successors, and assigns, of and from any and all claims, causes of action, litigation claims, and any other debts, obligations, rights, suits, damages, actions, remedies, judgments, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing, in law or at equity, whether for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstance existing or taking place prior to or on this date, relating to the Debtors or the Bankruptcy Case; *provided that*, nothing herein shall release the Parties' obligations under this Agreement or ACE's allowed claims provided under section 2 of this Agreement.

6.    Section 1542. Each Party acknowledges that it is familiar with Section 1542 of the California Civil Code, which states as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT

*Execution Version*

THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED and RELINQUISHED by each Party.  In connection with such waiver and relinquishment, each of the Parties hereby acknowledges and understands that it is executing and delivering this Agreement with full knowledge of any and all rights that each Party may have with respect to the claims resolved hereby.

7.      No Admission of Liability.  This Agreement does not constitute an admission or concession of liability by Powin, ACE, or the Committee on account of any claim by or other obligations that may be allegedly owed to ACE.

8.      Miscellaneous.

a. *One Writing/Integration*.  This Agreement constitutes the full, complete, and entire understanding and agreement between the Parties with respect to the subject matter of this Agreement and supersedes any and all prior oral and written understandings, agreements, and arrangements between them, whether oral or written, express or implied, including, but not limited to the *Notice of Settled Priority Claims* filed by Powin with the Plan Supplement on November 8, 2025.  There are no other agreements, covenants, promises, or arrangements between the Parties other than those set forth herein.  There is no other consideration for this Agreement other than the consideration set forth in this Agreement.

b. *Governing Law*.  This Agreement shall be construed in accordance with and governed by the laws of the State of New York and the Bankruptcy Code.

c. *Jurisdiction*.  The Parties expressly acknowledge and agree that the Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any and all disputes, claims, controversies, or causes of action arising out of, relating to, or in connection with this Agreement, its negotiation, execution, performance, enforcement, or interpretation, including, without limitation, any dispute concerning the validity, scope, meaning, or effect of any of its provisions.

d. *Reservation of Rights*.  The Parties reserve all rights and defenses provided to them under the Bankruptcy Code except as otherwise stated herein.

e. *Amendment, Modification, Waiver*.  This Agreement may be amended, altered, modified, or waived, in whole or in part, only in a writing executed by the Parties to this Agreement.  This Agreement may not be orally amended, altered, modified, or waived, in whole or in part.  No failure by any Party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof

4

*Execution Version*

shall constitute a waiver of any such breach of any other covenant, duty, agreement, or condition.

f.   *Counterparts*.   This Agreement may be executed in one or more original counterparts, all of which together shall constitute one and the same instrument.

g.   *No Third Party Beneficiaries*.   Except as may be specifically set forth in this Agreement, nothing in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the Parties and their respective permitted successors and assigns, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third persons to any Party, nor give any third persons any right of subrogation or action against any Party.

h.   *Authority*.   By executing below, each Party represents that it has the requisite authority to enter into an implement all terms of this Agreement.

i.   *Severability.*   In the event of any invalidity or unenforceability of any portion of this Agreement, as determined by a final judgment of the Bankruptcy Court, the remainder of this Agreement shall remain in full force and effect.

[*remainder of page left intentionally blank*]

*Execution Version*

       IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed and delivered as of the Execution Date of this Agreement as set forth above.

**Powin, LLC**

By: _Gerard Uzzi_____
          C933082321E44B9...
          Name: Gerard Uzzi
          Title:  Chief Restructuring Officer


**ACE Engineering and Co., Ltd.**

By: _____
          Name:
          Title:


**The Official Committee of Unsecured Creditors of Powin, LLC**


By: *_/s/ Kenneth J. Aulet_____*
          Name: Kenneth J. Aulet
          Title: Counsel to the Committee

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed and delivered as of the Execution Date of this Agreement as set forth above.

**Powin, LLC**

By: _____

     Name:

     Title:

**ACE Engineering and Co., Ltd.**

By: *Carl Kim*

     Name: Carl Kim

     Title: Head of U.S. Operations

**The Official Committee of Unsecured Creditors of Powin, LLC**

By: _____

     Name:

     Title:

6