**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Franklin Barbosa, Jr., Esq.
**SCHENCK, PRICE, SMITH & KING, LLP**
220 Park Avenue
P.O. Box 991
Florham Park, New Jersey 07932-0991
(973) 539-1000
fb@spsk.com

*Counsel for CS Energy, LLC*

---

In re:

POWIN, LLC, *et al.*[1]

               Debtors.

Chapter 11

Case No. 25-16137 (MBK)

(Jointly Administered)

**OBJECTION OF CS ENERGY, LLC TO CONFIRMATION OF THE JOINT COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF POWIN, LLC AND AFFILIATES THEREOF AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

      CS Energy, LLC ("CSE"), by and through its undersigned attorneys, respectfully submits this objection (the "Objection") to the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* (the "Plan") [ECF No. 942]. Specifically, CSE challenges the Plan's injunction provisions set forth in Section 15.3 as overly broad and inconsistent with established bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

law, particularly Sections 524(e) and 1141 of the Bankruptcy Code and interpretive case law.  In support of this Objection, CSE respectfully submits as follows:

## PRELIMINARY STATEMENT

1.      The Plan's sweeping injunction provisions, if approved in their current form, would produce a fundamentally unfair and legally impermissible result.  CSE faces more than $3.3 million in potential liability arising from fire damage at a project site – damage that, according to publicly available information, has been attributed to defects and failures in Powin's battery energy storage systems rather than any wrongdoing by CSE.

2.      Powin carries third-party liability insurance that may respond to these claims, and that coverage may represent a critical avenue of protection for CSE should it ultimately be required to satisfy any portion of the owner's demand.  Yet the Plan seeks to bar CSE from pursuing that insurance by prohibiting CSE (or its insurers) from naming the Debtors as nominal defendants in litigation brought solely to establish liability as a prerequisite to accessing available insurance proceeds.

3.      Section 524(e) of the Bankruptcy Code does not tolerate this outcome.  Decades of uniform authority hold that a debtor's discharge – or, in the case of a liquidating debtor, the confirmation of a Chapter 11 plan – does not extinguish the liability of third parties such as insurers, nor does it prevent a creditor from naming a debtor as a nominal defendant for the limited purpose of triggering coverage.

4.      The proposed injunction in Section 15.3 ignores this established law.  By stripping CSE (or its insurers) of the procedural mechanism available to reach Powin's insurance coverage, the Plan attempts to confer on Powin's insurers a sweeping liability shield that bankruptcy courts have repeatedly held they lack the authority to grant.

5.     The inequity is even more severe given that these Debtors are liquidating, not reorganizing.  There is no "fresh start" to protect, no post-confirmation business operations to shield, and no conceivable harm to the estate in allowing nominal-defendant litigation to proceed. Permitting CSE to pursue insurance proceeds would not burden the Debtors, diminish estate assets, or disrupt Plan implementation in any way.  The only parties who stand to benefit from the proposed injunction are Powin's insurers, who would be relieved of contractual obligations they voluntarily undertook prepetition.

6.     The Bankruptcy Code and controlling Supreme Court precedent – including Purdue Pharma, which reaffirms the prohibition on non-consensual third-party releases and injunctions – do not permit this type of outcome.  Unless Section 15.3 is modified to expressly preserve CSE's right to name the Debtors as nominal defendants for the sole purpose of establishing liability and accessing available insurance coverage, confirmation of the Plan would improperly and unjustly deprive CSE of a vital protection.

7.     For these reasons, and those set forth more fully below, confirmation should be denied unless the Plan is revised to ensure that parties, including, but not limited to, CSE and/or its insurers, may pursue Powin's insurance coverage through nominal-defendant litigation, as the Bankruptcy Code unequivocally allows.

## FACTUAL BACKGROUND

8.     CSE is an Engineering, Procurement, and Construction (EPC) contractor that designs and builds battery energy storage projects for its various customers.  In that capacity, CSE has worked closely with Powin, LLC ("Powin") on several projects to secure and/or incorporate Powin's battery storage components at the subject project sites

9.     CSE was the general contractor for a battery storage project located at 63 County Road 1A, Warwick, New York, serving as the general contractor under Engineering, Procurement and Construction Agreements dated April 22, 2022. Powin supplied the battery energy storage systems, referred to as the Centipede, at the project site (the "Warwick Project"). *See* Claim No. 407.

10.    On June 27, 2023, the Warwick Project suffered fire damage after a summer storm. Based on publicly available information, the Warwick Project owner investigated the incident and concluded that a manufacturing flaw in Powin's Centipede battery container allowed water to leak in and started electrical fires. The Warwick Project owner has demanded reimbursement of $3,330,000 in damages from CSE, asserting that CSE is responsible for the fire damages. *Ibid.*

11.    CSE maintains that it is not responsible for the fire, as it was not negligent and did not engage in any wrongdoing that contributed to the alleged damages. The fire has been, according to public reporting, attributed to potential negligence and/or product defects associated with Powin's product. To the extent CSE is deemed liable for the owner's damages arising from the fire, Powin must indemnify CSE. Ibid.

12.    The types of coverage that fit here include, but may not be limited to, coverage under policies for professional liability and general liability.

**Powin Files for Chapter 11 Protection**

13.    On June 9, 2025, and thereafter, Powin and affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). [ECF No. 1].

14.    The cases are jointly administered under Case No. 25-16137 before the Honorable Michael B. Kaplan, in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

**CSE Files a Proof of Claim relating to the Warwick Project**

15.    On September 29, 2025, CSE filed a proof of claim in the amount of $3,300,000 against Powin relating to the fire at the Warwick Project.  *See* Claim No. 407.

16.    On October 15, 2025, Debtors and the Committee of Unsecured Creditors ("Committee") filed the Plan.  [ECF No. 942].

17.    Section 15.3 of the Plan sets forth a plan injunction providing as follows:

**In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, the Liquidating Trust, the Direct Claims Trust, or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of Such Trusts' Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or**

> **enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or any Trust under the Plan. Notwithstanding any other provision of this Plan, the Debtors shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).**

[ECF No. 942, at Sec. 15.3, pg. 57 (emphasis in original)].

## LEGAL ARGUMENT

### A.  The Proposed Injunction Violates Section 524(e) by Preventing Recovery against Insurance Proceeds.

18.     Section 524(e) of the Bankruptcy Code provides that "[e]xcept as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524.

19.     Courts have recognized that "discharge of the debtor does not eradicate in rem liability that may exist against assets, nor liability of third persons, including insurance companies." *In re Walker*, 151 B.R. 1006, 1008 (Bankr. E.D. Ark. 1993); *In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995), *cert. denied*, 517 U.S. 1243 (1996) ("This court has repeatedly held without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors."); *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir .1995) ("[A] temporary stay prohibiting a creditor's suit against a nondebtor . . . may not be extended post-confirmation in the form of a permanent injunction that effectively relieves the nondebtor from its own liability to the creditor.").

20.     Consistent therewith, Section 524(e) has been interpreted by courts across the country to permit creditors to pursue claims against discharged debtors solely to establish liability as a prerequisite to recovery from the debtor's insurers.  *Walker*, 151 B.R. at 1008 ("The discharge injunction does not prevent a claimant from establishing liability against an insurance policy, and

6

"it is permissible to continue prosecution against a debtor if such action is necessary to prove liability as a prerequisite to recovery from the liability insurer.").

21.    By way of illustration, the Second Circuit in *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992) established that Section 524(e)'s "broadly worded limitation on the effect of discharge permitted the plaintiff to proceed against the debtor" to establish liability as a precondition for recovery against the debtor's liability insurer. The court emphasized that neither the fresh-start policy nor Section 524 was designed to immunize third parties such as insurers. *Id.* at 33; *see also In re Fine Air Servs. Corp.*, 2005 Bankr. LEXIS 2849, at *11 (Bankr. S.D. Fl. May 17, 2005) ("Like the creditor in Green, even though MEDINA filed a Proof of Claim and did not seek relief from the automatic stay prior to the issuance of a discharge injunction, MEDINA is not barred from pursuing an action against the Debtors to establish his right to recover from the Debtors' insurer."); *OakFabco, Inc. v. Am. Std., Inc. (In re Kewanee Boiler Corp.*, 297 B.R. 720, 735 (Bankr. N.D. Ill. Aug. 29, 2003) ("American Standard is permitted to pursue any claims it may have for coverage under OakFabco's insurance policies.").

22.    Courts within the Third Circuit have also adopted this approach.  For example, in *In re Weiand Auto. Indus.*, the Bankruptcy Court for the District of Delaware found that the interpretation of Section 524(e) permitting a party to name a debtor as a nominal defendant to pursue insurance proceeds is harmonious with Bankruptcy Code and consistent with "contractual rights agreed to by the parties outside of bankruptcy":

> Section 524 has been uniformly interpreted by Circuit Courts in part because this interpretation balances the fundamental tenets of bankruptcy law and business economics. Permitting a creditor to establish debtor liability and collect the judgment from a third-party is consistent with the principle of non-intervention with the bankruptcy estate. Separating the ownership of the policy from the ownership of the proceeds does not "[c]reate a personal liability of the debtor, because only the insurance company would be asked to

7

pay anything, and hence such a suit would not infringe on the discharge." This interpretation of § 524 is also consistent with the Bankruptcy Code policy of granting the debtor a fresh start.

This interpretation of § 524 is also embraced by courts because it honors the contractual rights agreed to by the parties outside of bankruptcy. "When the permanent injunction is modified to permit a pending action to continue for the purpose of seeking recovery from the debtor's insurer . . . the insurer's obligation remains commensurate with the underlying insurance contract." If courts did not to honor contractual rights in bankruptcy it would create unique problems. As Judge Posner points out:

> Ordinarily a liability insurance policy obligates the insurance company to pay only the sums that the insured becomes legally obligated to pay as damages. If by virtue of having been discharged from his listed debts the insured has no legal obligation to pay damages, it is not obvious where the insurance company's liability comes from.

This interpretation of § 524 ensures that insurance companies cannot escape their contractual obligations as a result of a bankruptcy filing; it also ensures that they cannot be prejudiced by it.

Statutory law and case law uniformly provide that § 524(a) and § 524(e) allow a creditor to recover from a third-party who may be liable for the debt of the debtor. The Reorganized Debtors have not challenged this interpretation of § 524. Additionally, the Reorganized Debtors have not provided any indication that any of the underlying policy interests that support this interpretation will be frustrated by the Plaintiffs' suit.

612 B.R. 824, 859-860 (Bankr. D. Del. Feb. 25, 2020) (internal citations omitted).

23.     Federal courts have established a clear precedent allowing creditors to pursue discharged debtors as nominal defendants to access insurance coverage. The principle extends beyond modification requests to recognition that such actions are inherently permitted under Section 524(e). Courts have consistently held that allowing such nominal defendant actions "will not in any material way prejudice" the debtor because the creditor seeks no recovery from the

debtor's assets and instead seeks an opportunity to secure a recovery from insurance. *OakFabco*, 297 B.R. at 735.

24.     CSE seeks such relief in this case. CSE respectfully submits that the Plan injunction set forth in Section 15.3 of the Plan should make clear that parties are permitted to name any of the Debtors as nominal defendants in litigation solely for the purposes of establishing liability to trigger insurance coverage and recovering against available proceeds. The utility of CSE's requested relief is amplified by the fact that Debtors are liquidating their assets and not seeking to reorganize; as such, there is no danger posed to a "fresh start."

25.     The proposed injunction, as drafted, impermissibly provides insurance companies with protection they would not otherwise enjoy under state law or federal bankruptcy law. They would be shielded from any liability by virtue of the fact that Debtors cannot be named as defendants in any lawsuits. The injunction effectively releases insurers from all potential liability. This exceeds the scope of permissible injunctive relief and violates Section 524(e).

26.     CSE will face irreparable harm if its requested relief is denied. CSE faces a $3,330,000 demand from the project owner for damages potentially caused by Powin's defective products. CSE's ability to access potential insurance coverage through nominal defendant actions may represent a key avenue for protection against this appreciable exposure. The proposed injunction would eliminate this protection, forcing CSE to potentially bear a substantial full financial burden for damages caused by Powin's alleged product defects. This result contradicts the established principle that bankruptcy should not immunize third parties or prevent recovery from insurance assets.

### B. The Proposed Injunction Conflicts with the Principles Underlying Purdue Pharma's Prohibition on Non-Consensual Third-Party Releases.

27.     The Supreme Court's decision in Purdue Pharma definitively established that bankruptcy courts cannot confirm plans providing non-consensual third-party releases. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 227 (2024). The Court held that the Bankruptcy Code does not authorize bankruptcy courts to confirm plans that provide for a nonconsensual third-party "release and injunction." *Ibid.*

28.     While Purdue Pharma addressed permanent releases, its underlying principle applies equally to injunctions that effectively shield third parties from liability. The proposed injunction here would impermissibly protect Debtors' insurers from legitimate claims by preventing CSE (or its insurers) from establishing the necessary predicate liability through a nominal defendant action.

## RESERVATION OF RIGHTS

29.     CSE reserves its right to supplement this Objection and make such other and further objections as it deems necessary or appropriate.

30.     CSE reserves the right to withdraw all or any portion of this Objection.

31.     CSE hereby joins any other objections to the extent such objections are not inconsistent with the relief sought herein.

## STATEMENT WHY NO BRIEF IS NECESSARY

In accordance with D.N.J. LBR 9013-1(a)(3), it is respectfully submitted that no brief is necessary in the court's consideration of this motion, as it does not involve complex issues of law.

**WHEREFORE,** CSE respectfully requests that the Court deny confirmation of the Plan unless and until the Plan injunction set forth in Section 15.3 of the Plan is clarified to provide that Debtors made be sued, in name only, to allow for establishment of liability and recovery against insurance proceeds only; and (ii) granting such other and further relief as this Court deems just and proper.

Date:  November 18, 2025
      Florham Park, NJ

**SCHENCK, PRICE, SMITH & KING, LLP**

By:   */s/ Franklin Barbosa, Jr.*
      Franklin Barbosa, Jr.
      220 Park Avenue
      P.O. Box 991
      Florham Park, New Jersey 07932-0991
      Telephone: (973) 539-1000
      Facsimile: (973) 540-7300
      fb@spsk.com
      *Counsel for CS Energy, LLC*