| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>John W. Weiss<br>Leah M. Eisenberg<br>David E. Sklar<br>**PASHMAN STEIN WALDER HAYDEN, P.C.**<br>21 Main Street, Suite 200<br>Hackensack, New Jersey 07601<br>Telephone: (201) 270-5477<br>Email: jweiss@pashmanstein.com<br>      leisenberg@pashmanstein.com<br>      dsklar@pashmanstein.com<br><br>-and-<br><br>Joaquin M. C de Baca (admitted *pro hac vice*)<br>Richard A. Stieglitz (admitted *pro hac vice*)<br>Youmi Kim (admitted *pro hac vice*)<br>**MAYER BROWN LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020-1001<br>Telephone: (212) 506-2500<br>Email: jcdebaca@mayerbrown.com<br>      rstieglitz@mayerbrown.com<br>      ykim@mayerbrown.com<br><br>*Counsel for (1) Longroad Development Company, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC and (2) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC* | |
| In Re:<br><br>POWIN, LLC, *et al*.,[1]<br><br>    Debtors. | Chapter 11<br><br>Case Number: 25-16137 (MBK)<br><br>Jointly Administered |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc., [9926]; (xi) Powin Energy Ontario Storage II LP, [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**LIMITED OBJECTION OF LONGROAD DEVELOPMENT COMPANY, LLC AND LEEWARD RENEWABLE ENERGY, LLC TO CONFIRMATION OF THE JOINT COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION ARISING FROM INCLUSION OF UNSUPPORTED ROC INVOICE RECEIVABLES**

Longroad Development Company, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC (collectively, the "Longroad Parties"), and Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC (collectively, the "Leeward Parties", and, together with the Longroad Parties, the "Objectors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the confirmation of the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and The Official Committee of Unsecured Creditors* (the "Plan")[2] [Dkt No. 942]. In support of the Objection, the Objectors respectfully submit as follows:

**OBJECTION**

1. As set forth in greater detail in multiple other pleadings[3] filed in these cases, the Objectors are the owners and operators of renewable energy and/or stand-alone battery projects throughout the United States, each of which relies on large-scale battery energy storage systems that had been supplied and supported by Powin, LLC, one of the Debtors ("Powin").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Plan and Plan Supplement, as applicable.

[3] See Emergency Motion of Licensees for Entry of an Oder (I) Compelling the Debtors to Comply with Section 365(N)(4) of the Bankruptcy Code, (II) Granting Adequate Protection Under Section 363(E) of the Bankruptcy Code, and (III) Granting Other Appropriate Relief [Dkt. No. 117] (the "Motion to Compel"); Objection of Licensees to Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief [Dkt. No. 323] (the "Rejection Objection").

2

2. Prior to the Petition Date, each of the Objectors entered into an energy supply agreement or energy system supply agreement (collectively, the "ESAs") pursuant to which Powin agreed to provide an energy storage system for certain energy storage projects developed by the respective Objectors. In addition, the Leeward Parties entered into long-term services agreements (the "LTSAs") and subsequently into a Compromise Settlement Agreement and Mutual Release (the "Settlement Agreement") that modified the Leeward Parties' ESAs and LTSAs.[4] Separately, the Longroad Parties contracted with third parties, not affiliated with Powin or any of the Debtors, for long-term services.

3. On October 15, 2025, the Debtors and the Committee (together, the "Plan Proponents") filed the Plan.

4. On November 7, 2025, the Plan Proponents filed the *Notice of Filing of Plan Supplement* [Dkt. No. 1036] (the "Original Plan Supplement"), which was amended by the *Notice of Filing of Amended Plan Supplement* [Dkt. No. 1038] on November 8, 2025 (the "Plan Supplement").

5. Prior to the filing of the Original Plan Supplement and the Plan Supplement, the Debtors sent the Objectors invoices (the "ROC Invoices") on account of purported "services for monitoring" in connection with the Debtors' Remote Operations Center (the "ROC"), even though no such services had been provided to the Objectors.

6. The Objectors, through counsel, contacted the Debtors' counsel to dispute and ultimately attempt to resolve their issues with the ROC Invoices, but the Debtors did not respond

---

[4] Copies of the ESAs and LTSAs were submitted to the Court in connection with the Motion to Compel. A copy of the Settlement Agreement was attached as an exhibit to Leeward's Limited Objection and Reservation of Rights Regarding Notice of Potentially Assumed Executory Contracts and Unexpired Leases [Dkt No. 552].

to the Objectors' numerous attempts to engage and have been left with no choice but to file this Objection.

7. Even though the Debtors were aware of these disputes, certain ROC receivables, including those from the ROC Invoices, were included in the liquidation analysis attached as Exhibit G to the Plan Supplement.

**I. The Plan Supplement Improperly Includes Funds from the ROC Invoices in the Liquidation Analysis.**

8. As part of their liquidation analysis, the Plan Proponents have identified approximately $1.6 million due from, among other things, receivables for invoices owing from post-petition services from the ROC, that may be available for distribution under the Plan. *See* Plan Supplement, Ex. G. The ROC Invoices sent to the Objectors total about $1.2 million in the aggregate, and therefore comprise the vast majority of these purported receivables. The Debtors' choice to include the ROC Invoices as distributable assets assumes a valid legal entitlement and contractual basis to invoice the Objectors for ROC services, even though they are on notice of the Objectors' position that no such bases exist.

9. Indeed, the Objectors dispute the Debtors' entitlement to any payment for purported ROC monitoring/services for their projects. First, the ROC Invoices do not identify for which of the Objectors' projects services were purportedly performed. The ROC Invoices also do not adequately identify what services were allegedly performed, and it was only in the Plan Supplement that the Debtors provided any information regarding such ROC services. The scant information provided in these ROC Invoices renders it impossible for the Objectors to even identify what possible services could have been provided to them. More importantly, however, there are no legal or contractual bases for the Debtors to have sent the ROC Invoices to the

4

Objectors, and no such bases have been provided despite the Objectors' repeated requests for such information.

10. In particular, the Longroad Parties' ESAs do not even provide for ROC monitoring/services, and the Longroad Parties contract with third parties for long-term services. The Longroad Parties also have reason to believe such third parties were not receiving ROC services pursuant to their applicable LTSAs during the period identified by the ROC Invoice received by the Longroad Parties, and the Debtors have not provided any evidence to the contrary. In any event, there is no contractual basis for Debtors' invoicing for services to the Longroad Parties.

11. Moreover, for the Leeward Parties, remote monitoring and services from the Debtors' ROC are included under their LTSAs, which were still in effect during the period of the purported services. Additionally, under the Settlement Agreement, the Leeward Parties were entitled to free LTSA services for at least five years.

12. Based on the foregoing, the Objectors do not believe any amount is owed to the Debtors on the ROC Invoices.

13. Counsel for the Objectors raised these issues with counsel for the Debtors, as they were directed to do, on multiple occasions, but received no response. Despite knowing the Objectors disputed the ROC Invoices, the Debtors filed the Plan Supplement that includes ROC receivables that they knew were disputed and for which there may not have been a factual basis to include.

14. For the foregoing reasons, the Objectors respectfully request that any amounts associated with the Objectors' ROC Invoices be removed from the liquidation analysis and as a

5

possible source for distribution when this Court considers where the Plan as proposed may be confirmable.

    II.    **Inclusion of Unsupported ROC Amounts Calls Other Figures Into Question and Skews the Best Interests of Creditors Test Pursuant to Section 1129(a)(7) of the Bankruptcy Code.**

    15.    Section 1129(a)(7) of the Bankruptcy Code requires a bankruptcy court to determine that a chapter 11 plan provides, with respect to each impaired class, that each holder of a claim or equity interest in such class has either (i) accepted the plan or (ii) will receive or retain under the plan, value that is not less than the amount that holder would receive if the debtor had liquidated under chapter 7.  11 U.S.C. § 1129(a)(7); *Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 500 (D.N.J. 2005), *aff'd sub nom*. *In re Lisanti Foods Inc.*, 241 F. App'x 1 (3d Cir. 2007).  This is commonly referred to as the "best interests of creditors" test, and the Plan Proponents have the burden of proving that the Plan complies with section 1129(a)(7).  *Id.* ("It is the plan proponent's burden to prove that the plan complies with section 1129(a)(7)").  To show that creditors would receive equal value under a plan, there must be a liquidation analysis that is "based on evidence and not mere assumptions or assertions." *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 366 (S.D.N.Y. 2007); *In re W.R. Grace & Co.*, 475 B.R. 34, 142 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 532 F. App'x 264 (3d Cir. 2013), and *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 729 F.3d 311 (3d Cir. 2013) (Discussing that the court should make a "well-reasoned estimate of the liquidation value that is supported by the evidence on the record.").

    16.    The Plan Proponents have asserted that the Plan satisfies this requirement because the Plan will provide all holders of allowed claims more than what they would otherwise receive in a chapter 7 liquidation.  *See* Plan Supplement, Ex. G.  The liquidation analysis is expressly

6

presented as evidence for that required finding. The liquidation analysis, however, includes receivables that have no legal or contractual footing—such as the ROC Invoices. The inclusion of the disputed ROC Invoices in the liquidation analysis highlights a broader concern: if one category of figures is unsupported, other figures and assumptions may be equally unfounded.

17. The Plan Proponents have not provided any factual support for the figures and assumptions they include in the liquidation analysis and have clearly included speculative figures that may lack required evidentiary support. If these deficiencies affect a substantial portion, or all of the figures in the liquidation analysis, the Debtors may lack sufficient funds to satisfy their administrative expenses. In that event, the Plan Proponents cannot satisfy section 1129(a)(9)(A) of the Bankruptcy Code, which mandates payment in full of administrative claims on the Effective Date as a condition to confirmation. 11 U.S.C. § 1129(a)(9)(A). The Objectors therefore respectfully submit that the Court should not confirm the Plan unless and until the Plan Proponents provide documentary support for all material inputs to the liquidation analysis, and demonstrate that, after removing unsupported amounts, the Plan still satisfies section 1129(a)(7) for each impaired class, and section 1129(a)(9)(A).

## RESERVATION OF RIGHTS

18. The Objectors hereby reserve all of their rights to further object, seek discovery, and be heard on any revised liquidation analysis or evidentiary presentation, including, without limitation, the right to amend, modify, or supplement this Objection and to raise additional objections during any hearings on the Plan or Plan Supplement.

## CONCLUSION

WHEREFORE, the Objectors respectfully request that the Court, (i) deny confirmation of the Plan, (ii) preclude confirmation of the Plan until the Plan Proponents provide documentary support for all material inputs to the liquidation analysis, and demonstrate that, after removing

unsupported amounts, the Plan still satisfies section 1129(a)(7) for each impaired class, and section 1129(a)(9)(A) and (iii) grant such other and further relief as the Court may deem necessary and proper under the circumstances.

[*Remainder of page intentionally left blank.*]

| | |
|---|---|
| Dated: November 18, 2025 | Respectfully submitted,<br><br>/s/ Leah M. Eisenberg<br>John W. Weiss<br>Leah M. Eisenberg<br>David E. Sklar<br>**PASHMAN STEIN WALDER HAYDEN, P.C.**<br>21 Main Street, Suite 200<br>Hackensack, New Jersey 07601<br>Telephone: (201) 270-5477<br>Email: jweiss@pashmanstein.com<br>         leisenberg@pashmanstein.com<br>         dsklar@pashmanstein.com<br><br>-and-<br><br>Joaquin C de Baca (admitted *pro hac vice*)<br>Richard A. Stieglitz (admitted *pro hac vice*)<br>Youmi Kim (admitted *pro hac vice*)<br>**MAYER BROWN LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 506-2500<br>Facsimile: (212) 262-1910<br>Email: JCdeBaca@mayerbrown.com<br>         RStieglitz@mayerbrown.com<br>         YKim@mayerbrown.com<br><br>*Counsel for (1) Longroad Development Company, LLC, on behalf of Serrano Solar, LLC, Sun Streams PVS, LLC, and Sun Streams Expansion, LLC and (2) Leeward Renewable Energy, LLC, on behalf of Rabbitbrush Solar, LLC, Chaparral Springs, LLC, and Antelope Valley BESS, LLC* |