## Exhibit 1

**Hearing Transcript August 6, 2025**

```
                  IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF NEW JERSEY

IN RE:                        .  Case No. 25-16137 (MBK)
                              .  Chapter 11
POWIN, LLC, et al,            .  (Jointly Administered)
                              .
                              .  U.S. Courthouse
            Debtors.          .  402 East State Street
                              .  Trenton, NJ 08608
                              .
                              .  August 6, 2025
. . . . . . . . . . . . . .   .  11:00 a.m.
```

                    TRANSCRIPT OF MOTIONS HEARING
              BEFORE THE HONORABLE MICHAEL B. KAPLAN
               UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Dentons US LLP
                            By:  TANIA M. MOYRON, ESQ.
                                 VAN C. DURRER, II, ESQ.
                            1221 Avenue of the Americas
                            Ste. 25th Floor
                            New York, NY 10020

                            Togut, Segal & Segal LLP
                            By:  FRANK A. OSWALD, ESQ.
                            One Penn Plaza
                            Suite 3335
                            New York, NY 10119

For Ace Engineering:        Sherman Silverstein
                            By:  ARTHUR ABRAMOWITZ, ESQ.
                            East Gate Corporate Center
                            308 Harper Drive, Suite 200
                            Moorestown, NJ 08057

Audio Operator:             Wendy Quiles


Proceedings recorded by electronic sound recording, transcript
               produced by transcription service.
_____

                    **J&J COURT TRANSCRIBERS, INC.**
                       **268 Evergreen Avenue**
                     **Hamilton, New Jersey 08619**
                    **E-mail:  jjcourt@jjcourt.com**

            **(609) 586-2311     Fax No. (609) 587-3599**

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6   2025    Page 3 of 51

2

APPEARANCES (Cont'd):

For Lu Pacific                  Archer & Greiner, P.C.
Properties, LLC:                By:  NATASHA M. SONGONUGA, ESQ.
                                300 Delaware Avenue
                                Suite 1100
                                Wilmington, DE 19801-1670


For Honeywell                   Rabinowitz, Lubetkin & Tully, LLC
International Inc.:              By:  JEFFREY A. COOPER, ESQ.
                                293 Eisenhower Parkway
                                Suite 100
                                Livingston, NJ 07039


                                Adams & Reese
                                By:  SCOTT ROBERT CHEATHAM, ESQ.
                                701 Poydras Street
                                Suite 4500
                                New Orleans, LA 70139


For the U.S. Trustee:           Office of the U.S. Trustee
                                By:  LAUREN BIELSKIE, ESQ.
                                One Newark Center
                                Suite 2100
                                Newark, NJ 07102


For Mainfreight Inc.:           Benesch, Friedlander, Coplan & Aronoff
                                By:  KEVIN CAPUZZI, ESQ.
                                411 Hackensack Avenue, 3rd Floor
                                Suite 801
                                Hackensack, NJ 07601


For FlexGen Power               Latham & Watkins, LLP
Systems, LLC:                   By:  JEFFREY T. MISPAGEL, ESQ.
                                355 South Grand Avenue
                                Suite 100
                                Los Angeles, CA 90071-1560


For Longroad                    Mayer Brown
Development Company,            By:  JOAQUIN M. C de BACA, ESQ.
LLC, et al.:                     1221 Avenue of the Americas
                                New York, NY 10020-1001


For Stem, Inc.:                 Greenberg Traurig, LLP
                                By:  ALAN J. BRODY, ESQ.
                                500 Campus Drive
                                Suite 400
                                Florham Park, NJ 07932

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6   2025    Page 4 of 51

3

APPEARANCES (Cont'd):

```
For EDF Power              Orrick, Herrington & Sutcliffe LLP
Solutions, Inc.            By:  LORRAINE McGOWEN, ESQ.
and esVolta:               51 West 52nd Street
                           New York, NY 10019-6142


For Ad Hoc Customer        Vinson & Elkins LLP
Group:                     By:  LAUREN R. KANZER, ESQ.
                           The Grace Building
                           1114 Avenue of the Americas
                           32nd Floor
                           New York, NY 10036


For Spark Power            Stark & Stark
Renewables and             By:  TIMOTHY P. DUGGAN, ESQ.
THI, Inc.:                 100 American Metro Boulevard
                           Hamilton Township, NJ 08619


For Solar Carver           Riker Danzig LLP
1, LLC, et al.:            By:  JOSEPH L. SCHWARTZ, ESQ.
                           7 Giralda Farms
                           Suite 250
                           Madison, NJ 07940


For Keyframe Capital       Faegre Drinker Biddle & Reath LLP
Partners, L.P.:            By:  MICHAEL P. POMPEO, ESQ.
                           1177 Avenue of the Americas
                           41st Floor
                           New York, NY 10036


TELEPHONIC APPEARANCES:

For Specified              Fox Rothschild LLP
Technologies, Inc.:        By:  AGOSTINO A. ZAMMIELLO, ESQ.
                           49 Market Street
                           Morristown, NJ 07960


For Ulinda Park            Weil, Gotshal & Manges
Projectco, et al.:         By:  KEVIN BOSTEL, ESQ.
                           767 Fifth Avenue
                           New York, NY 10153


For Ameresco, Inc. and     Troutman Pepper Locke LLP
Kupono Solar, LLC:         By:  TORI L. REMINGTON, ESQ.
                           Hercules Plaza, Suite 1000
                           1313 N. Market Street, P.O. Box 1709
                           Wilmington, DE 09899-1709
```

- - -

4

1              THE COURT:  All right.  This is Judge Kaplan, and
2   we'll begin our somewhat long agenda on Powin.  I'll remind
3   those who are viewing and participating remotely, if you wish
4   to be heard, make sure you use the raise hand function.  I'll
5   also remind those who are sitting in court, and counsel,
6   please, to assist the recording and the transcript, if we could
7   have you announce -- give your appearance when you rise to
8   speak and when you're speaking.

9              Otherwise, I'm ready to see what you all -- we had a
10  schedule.  Now, you'll let me know what adjustments are to be
11  made, if any.

12             MS. MOYRON:  Thank you, Your Honor.  Good morning.
13  Tania Moyron of Dentons on behalf of Powin.  And thank you for
14  the brief adjournment this morning.  And you are correct, it is
15  a long agenda, Your Honor.

16             And currently there are at least ten lawyers in one
17  of your chamber's conference rooms continuing to reach an
18  agreement.  And we are hopeful that we will reach an agreement.
19  Counsel needs to call their client in order to try to get sign-
20  off.  So, we would like, Your Honor, another 30 minutes.  We
21  apologize for the request.  But, we do think that it'll likely
22  obviate testimony and the long hearing today, so we would like
23  another 30 minutes, Your Honor.

24             THE COURT:  How could I say no to that?  That's fine.
25  It's -- I guess it's 11 o'clock now.

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 6 of 51

5

1          MS. MOYRON:  Yes.

2          THE COURT:  Rather than doing this again, do we think

3  it's 30 minutes?  Should we -- will that suffice?  Do we say an

4  hour?  And then we're going to bump up into when I have to give

5  everybody lunch.  Come back in 30 minutes, you think will

6  suffice?

7          MS. MOYRON:  I think that will suffice, Your Honor.

8          THE COURT:  All right.  Then let chambers know.  Mr.

9  Abramowitz, I see you standing.

10          MR. ABRAMOWITZ:  Yes.  Is Mr. Capuzzi in court? I see

11  him.  Yes.  We want to approach the court bench for one second,

12  Your Honor.

13          THE COURT:  Sure.

14                    (Attorney discussion)

15          MR. ABRAMOWITZ:  Your Honor, we'll defer to the --

16  it's tied into the overall --

17          THE COURT:  The other issues?

18          MR. ABRAMOWITZ:  Yes.  Thank you.  Okay.

19          THE COURT:  All right.  Counsel, good morning.

20          MS. SONGONUGA:  Good morning, Your Honor.  For the

21  record, Natasha Songonuga of Archer & Greiner, counsel to Lu

22  Pacific Properties, LLC, who is the landlord of the debtor's

23  property, located in Oregon.

24          Your Honor, I actually have a flight to Canada that I

25  have to catch.  So, we filed a non-waiver of rights and

Case 25-16137-MBK   Doc 1090-1   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit 1 - Hearing Transcript August 6   2025   Page 7 of 51

6

1  reservation of rights to the notice of assume -- the

2  subcontracts.  And I just wanted to put the reservations on the

3  record today, Your Honor, before I have to run to catch a

4  flight.

5            THE COURT:  That's fine.

6            MS. SONGONUGA:  Will that be okay?  Okay.  So, again,

7  Your Honor, for the record, Natasha Songonuga of Archer and

8  Greiner for Lu Pacific Properties, LLC.  Your Honor, the client

9  is the landlord for the property located in Oregon.  This is

10 where the debtor stores lithium battery, as well as testing the

11 batteries.  There's a significant amount of batteries stored on

12 the property.

13           And so we filed a non-waiver and reservation of

14 rights.  We do not object to the cure amount.  But,

15 specifically, Your Honor, we filed the reservation of rights

16 just to put on the record that on July 7th, the landlord was

17 allowed access to the premises to conduct a health and safety

18 inspection.  There was a letter sent by counsel to the landlord

19 outlining a number of health and safety concerns, Your Honor.

20 And that was attached to the reservation of rights, and that's

21 Docket Number 523.

22           There are a number of issues listed, including lack

23 of sufficient staffing, other health inspection and code

24 violations.  As I stand here today, Your Honor, I learned

25 yesterday that the client and the proposed purchaser have been

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6   2025    Page 8 of 51

7

1  in communications and are discussing the outstanding issues,

2  but have not reached any resolution on those issues.

3         And so I merely wanted to make it clear to the Court

4  that we still reserve the rights under the lease, not only to

5  inspect -- to continue to inspect, but to have the purchaser

6  and the debtors bring the property up to code should the

7  parties not be able to come to consensus on that.

8         THE COURT:  Fair enough.  All right.  Noted.  Have a

9  safe travels.

10         MS. SONGONUGA:  Thank you, Your Honor.

11         THE COURT:  Mr. Cooper?

12         MR. COOPER:  Thank you, Judge.  Jeffrey Cooper,

13  Rabinowitz, Lubetkin & Tully.  And together with Scott

14  Cheatham, Adams & Reese, counsel for Honeywell International.

15  I rise, Judge, just to let Your Honor know that we are

16  representing one of, I think many, the licensees whose

17  agreements are being -- proposed to be rejected today.

18         And my understanding is that the discussions that are

19  ongoing with the people for Mayor Brown and so forth often go

20  to our issues.  We have not been involved with those

21  negotiations.  But, very specifically, we need to deal with the

22  issues of the 365(n) relief, both temporarily and going

23  forward, and specifically with regard to a certain operating

24  system called Cobalt, which I understand is integral to the

25  operation of the licenses.

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 9 of 51

8

1        And it seems to me, a controlling argument at a later

2   time, that the code and 365(n) envisions that these, if you

3   will, ancillary contracts that go to implement the license are

4   included in the term of embodiment, not unlike in the real

5   estate context, the term apartment 2 with regard to 365(h).

6        So, I just wanted to raise the issue so the parties

7   know that we're here.  Hopefully the resolution will be able to

8   be something that's applicable to our client as well.  But, we

9   have an independent interest in making sure that it's resolved

10  today.

11        THE COURT:  All right.  Thank you, Mr. Cooper.

12        MR. COOPER:  Thank you, Judge.

13        MS. MOYRON:  Thank you, Your Honor.  With those

14  comments being made, perhaps I'm going to take you up, Your

15  Honor, on your suggestion that we do this for -- maybe adjourn

16  for an hour, and then we come back.  And we're happy to speak

17  with counsel, and Mr. Kane, the CEO, is here.  And, again,

18  these are issues that we are trying to resolve, and so --

19        THE COURT:  Why don't we adjourn 'til noon, then

20  we'll discuss -- see where you're at, see what our schedule

21  will be.

22        MS. MOYRON:  Perfect.

23        THE COURT:  And what we have to accomplish for the

24  rest of the day.

25        MS. MOYRON:  Perfect.

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 10 of 51

9

1          THE COURT:  All right?

2          MS. MOYRON:  Thank you, Your Honor.

3          THE COURT:  Thank you, counsel.

4          MS. MOYRON:  Thank you.

5          THE COURT:  We are adjourned.

6                    (Off the record)

7          THE COURT:  All right.  We are ready to go.  Welcome

8   back, everyone.  It's Judge Kaplan on the Powin matters.  Mr.

9   Durrer?

10         MR. DURRER:  Good afternoon, Your Honor.  Van Durrer,

11  Dentons, for the debtors, the Powin debtors.  I'm going to give

12  a brief statement and then turn over the podium to Mr. Oswald

13  to walk through the uncontested matters.  But, in fairness and,

14  thank you, I should say at the outset, for the time.  I think

15  it's been well used.

16         Powin, as you know, Your Honor, has dozens of

17  customers.  Those customers are very focused on their 365(n)

18  rights.  We've been working throughout the last many days and

19  this morning to develop a framework that everybody's

20  comfortable with.  That process remains ongoing.  We do hope to

21  conclude it soon.

22         But, we thought that while we had everybody, that we

23  would proceed with those uncontested matters, with Your Honor's

24  permission, and we'll keep working.  And then, you know, we

25  will still probably need some time.  But, the design is to have

Case 25-16137-MBK   Doc 1090-1   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit 1 - Hearing Transcript August 6   2025   Page 11 of 51

10

1  those -- the framework for those 365(n) rights resolved.  The

2  framework, not the details.  And then the sale as well.  The

3  sale will be subject to those rights.  And, again, I don't want

4  to presume anything, but that's the game plan.

5          So, with that, I'll turn it over to Mr. Oswald.

6          THE COURT:  So, the Court will hear the lease issues,

7  the licensing issues, with the sale motion.  You're not going

8  to do one without the other at this juncture?

9          MR. DURRER:  They're very closely related.  Yes, Your

10 Honor.

11         THE COURT:  Okay.  And so, we're going to -- we'll

12 address the other matters on the agenda?

13         MR. DURRER:  Yes, Your Honor.

14         THE COURT:  Sounds good.

15         MR. DURRER:  Thank you very much.

16         THE COURT:  Thank you.

17         MR. OSWALD:  Thank you, Your Honor.  Frank Oswald,

18 Togut, Segal & Segal, co-counsel for the debtors.  Again, I

19 appreciate the Court's patience today.  We do have a few

20 uncontested matters on the calendar.  I'll just go in order of

21 the agenda, if that's okay with the Court?

22         THE COURT:  All right.

23         MR. OSWALD:  These are matters that teed up.  The

24 first one, dealing with a specific lease and landlord issue.

25 We had agreed with that landlord to turn back possession at the

1  end of June, and ultimately entered into a stipulation with the

2  lessor reflecting a rejection date of June 30.

3       We had some minimal office equipment and furnishings

4  in the premises, which we've deemed abandoned to the landlord.

5  I shared that stipulation with counsel for the Committee and

6  U.S. Trustee.  They're okay with the form of order.  No

7  objections were submitted.  And we filed a certificate of no

8  objection at Docket Number 623.

9       So, if that stipulation is satisfactory to the Court,

10 we'd respectfully request that it be so ordered.

11      THE COURT:  All right.  So then, we're not getting

12 another order?  We're just going to so order the stipulation?

13      MR. OSWALD:  Yes.

14      THE COURT:  All right.  And I reviewed it on the

15 docket.  Wendy, this is Docket 214, is the motion.  The Court

16 approves the rejection on the lease pursuant to the terms of

17 the stipulation.

18      MR. OSWALD:  Thank you.  Item 2, Your Honor, was our

19 motion to –- for an interim and final order regarding the

20 payment of accrued pre-petition taxes, which had not yet come

21 due.  That was at Docket Entry 99.  Your Honor entered the

22 interim order previously.

23      We've submitted a form of final order.  Again,

24 reviewed that in advance with Committee counsel, the U.S.

25 Trustee.  They're satisfied with the form of that order.  No

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 13 of 51

12

1    other objections or responses were filed.

2         And I believe we have -- earlier today, it's not

3    reflected on the agenda, but I think earlier we did get a

4    certificate of no objection on file.  I just don't have that

5    docket number handy.

6         THE COURT:  Here.  Let me see what -- 652, I believe.

7    All right.  The Court approves.

8         MR. OSWALD:  Thank you.  Item 3 on the agenda, Your

9    Honor, deals with the standard motion for the utilities,

10   adequate assurance.  And that was at Docket Entry 112.  Your

11   Honor entered the interim order.  We have since established an

12   escrow account for the utility deposit funds.

13        The form of final order, likewise, is the other

14   motion shared with the U.S. Trustee, counsel to the Committee.

15   They had no issue with that order.  No other responses were

16   received.  We filed a certificate of no objection at Docket

17   Number 387.

18        If that form of order is satisfactory to the Court,

19   we ask that it be entered at your convenience.

20        THE COURT:  All right.  Just for the record, I think

21   the certificate of no objection is 653.

22        MR. OSWALD:  Item 4, Your Honor, was a customer

23   settlement.  Again, the Court dealt with something similar at

24   the last hearing.  This is known as the Idaho Power 9019

25   Settlement.  The motion was filed at Docket 355.  Objection

Case 25-16137-MBK   Doc 1090-1   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit 1 - Hearing Transcript August 6   2025   Page 14 of 51

13

1  deadline was July 30.  No objections or responses were filed.

2          Again, the settlement was reviewed in advance with

3  Committee counsel.  Form of order also reviewed and signed off

4  by Committee counsel, as well as the U.S. Trustee.  We have

5  filed a certificate of no objection, again, earlier today.  I

6  know the agenda doesn't reflect the number, but I think that

7  came in within the last couple of hours.

8          THE COURT:  All right.  So, will we be getting a new

9  order or --

10          MR. OSWALD:  Yes.

11          THE COURT:  All right.  And let me just check one

12  thing on this.  There was also a, I think, an application to

13  seal the company -- the settlement.

14          MR. OSWALD:  Yes, yes.  I'm sorry, Your Honor.  We

15  did have the application sealed.  Reviewed that as well with

16  Committee counsel and the U.S. Trustee.  No objections to that.

17          THE COURT:  All right.  The Court will grant the

18  motion to seal, and we'll grant -- and grant approval of the

19  settlement, and await the submission of the order.

20          MR. OSWALD:  Thank you, Your Honor.  The next item,

21  Item 5, is our motion to implement a KERP and KEIP program.  I

22  think that it's one of the leanest programs that I've seen

23  certainly in quite some time.  And we do know that oftentimes

24  these motions bring concerns of the -- of the creditors and the

25  U.S. Trustee.  Pleased to say that this one has not.

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 15 of 51

14

1          I know the U.S. Trustee counsel would like to put a

2    statement on the record.  But, in substance, no objections to

3    this motion.  The employees, from the executives down, as you

4    know, how active this case has been, has really been working

5    tirelessly both pre-petition and since we filed the case.  And

6    so we're very grateful for all of their time and services.

7          With that, maybe I will turn it over to the U.S.

8    Trustee for their statement.  But, there are no objections to

9    this motion and the form of order is satisfactory to the

10   Committee and the U.S. Trustee.

11         THE COURT:  All right.  Thank you.  Here I was

12   looking on the screen for Ms. Bielskie.  You're here.

13         MS. BIELSKIE:  You had to check, Your Honor.

14         THE COURT:  Live.

15         MS. BIELSKIE:  Good afternoon.  Lauren Bielskie with

16   the Office of the United States Trustee.  As counsel stated,

17   Your Honor, the U.S. Trustee did not object to the pending KERP

18   and KEIP motion.  Counsel did provide our office with

19   additional information, including the titles of the individuals

20   that are subject to the KERP.

21         And I just want to be on the record saying, Your

22   Honor, that our decision not to object was based on the facts

23   and circumstances of this case, including the relative dollar

24   amounts, and should not be construed by any party as a policy

25   change by the U.S. Trustee, precedent for future cases, or

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 16 of 51

15

1  anything more than a determination on this particular motion.

2  And that's all, Your Honor.

3        THE COURT:  For wanting for other cases.  Okay.

4        MS. BIELSKIE:  Thank you.

5        THE COURT:  Thank you.  Motion is granted.

6        MR. OSWALD:  Thank you, Your Honor.  I believe that

7  takes care of the uncontested matters.

8        While I'm up, Your Honor, just as a housekeeping

9  measure, I would like to let the Court know, if you haven't

10 seen it, we did file timely last month our schedules and

11 statements.  The U.S. Trustee conducted an extensive first

12 meeting of creditors.  Closed that meeting, subject to our

13 providing some additional information.

14       We're working with the Committee currently on a

15 motion to have a claims bar date set.  We'd like to move ahead

16 quickly with that.  We'll share with the U.S. Trustee.  We've

17 already got a form of customized claim form in the works.  And

18 we'll also share it with the clerk.

19       And so, you'll see that in hopefully short order

20 following the sale, and hopefully we get that sale approved and

21 closed.  We'll move quickly to get the bar date entered, and

22 then move to a plan.  So, I just wanted to let the Court know

23 that.

24       THE COURT:  All right.  Thank you for the update.

25 Just one matter.  We also had as an adjourned matter, the

Case 25-16137-MBK   Doc 1090-1   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit 1 - Hearing Transcript August 6   2025   Page 17 of 51

16

1  Mainfreight, we'll call it, the motion.

2          MR. CAPUZZI:  Good afternoon, Your Honor.

3          THE COURT:  Good afternoon.

4          MR. CAPUZZI:  For the record, Kevin Capuzzi, Benesch,

5  Friedlander, Coplan & Aronoff, counsel for the Mainfreight

6  entities.  Your Honor, the Mainfreight motion is reflected at

7  Item 10 of the agenda.

8          THE COURT:  Correct.

9          MR. CAPUZZI:  It is adjourned with the consent of the

10 debtors, BHER and Ace, who were all of the responding parties.

11 We're hoping to use the time between now and September 3rd to

12 have some business discussions.  And if not, we'll be back to

13 you on the 3rd.  While I'm up here, Your Honor --

14         THE COURT:  Yes?

15         MR. CAPUZZI:  -- one of the three sale orders is the

16 Mainfreight sale order.  There's no objection to that one, so

17 I'm wondering, is there any reason why we can't take that up

18 now?  Okay.

19         THE COURT:  Exasperation noted.

20                      (Laughter)

21         UNIDENTIFIED ATTORNEY:  There's plenty enough to go

22 around.

23         MR. CAPUZZI:  Can we put our stipulation on the

24 record, at least, that resolves Mr. Abramowitz's limited

25 objection?  That was the only objection to the Mainfreight

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 18 of 51

17

1  order.

2        THE COURT:  I don't have a problem if you want to put

3  something on the record so you could free up counsel to go

4  elsewhere.

5        MR. CAPUZZI:  Yeah, it's -- it's not going to be

6  earth shattering.

7        THE COURT:  Go ahead.

8        MR. CAPUZZI:  So, Your Honor, just to set the stage.

9  The sale in this case resulted in three different sale orders.

10 One for not to seal the debtor's funder, but to the stalking

11 horse purchaser, Mainfreight credit bidded on a certain lot --

12        THE COURT:  Right.

13        MR. CAPUZZI:  -- of assets which were subject to

14 Mainfreight's possessor in maritime liens.  Those do not

15 involve any of the goods that relate to the BHER goods that are

16 subject to the motion that we've adjourned.  These are totally

17 separate debtor owned goods that we credit bidded on and we're

18 the winning bidder.

19        So, that -- that proposed order was uploaded at

20 Docket Number 608.  It was Exhibit B to that.  And the only

21 objection or response was by Ace, who Mr. Abramowitz

22 represents.

23        THE COURT:  All right.

24        MR. ABRAMOWITZ:  Thank you, Your Honor.  Ace is not

25 objecting to Mainfreight's purchase, but does reserve its

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 19 of 51

18

1  rights.  And does not waive any rights stemming from its

2  reclamation claims for assets purchased in the sale.  So,

3  that's the extent of our stipulation.  But, I just felt -- I

4  appreciate the Court allowing us to put it on an expedited

5  basis.

6            THE COURT:  Not a problem.

7            MR. ABRAMOWITZ:  Thank you.

8            THE COURT:  Thank you.  All right.  Then we'll take

9  -- so, the game plan, how much time anticipate?  What are your

10  thoughts?

11            MR. OSWALD:  Shall we say two o'clock, Your Honor?

12            THE COURT:  You could say two o'clock.  If that's

13  enough, that's fine for me.  If it looks like more, rather than

14  reconvening, just reach out to my chambers.

15            UNIDENTIFIED ATTORNEY:  Will do, Your Honor.

16            THE COURT:  Okay?

17            UNIDENTIFIED ATTORNEY:  Thank you so much.

18            THE COURT:  All right.  Thanks.  We'll be back at two

19  o'clock.

20            MR. ABRAMOWITZ:  Thank you, Your Honor.

21            THE COURT:  You're welcome.

22                          (Recess)

23            THE COURT:  We are back.  It's 3:30.  Mr. Durrer?

24            MR. DURRER:  Good afternoon, Your Honor.  Van Durrer,

25  Dentons, on behalf of the debtors.  Let me give you the order

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 20 of 51

19

1  of go here.  First of all, we're going to start with Item

2  Number 6 on the agenda.  The agenda is Docket 645.  Item Number

3  6 is the debtor's omnibus rejection motion, which is Docket 88.

4  The plan, Your Honor, and then we'll -- we'll turn to the sale

5  stuff.

6          With respect to the rejection motion, there's been a

7  ton of very construction conversations.  We are very, very

8  close.  The plan is that we do have a general agreement on the

9  rejection framework.  I'll use that word again from this

10 morning, or early this afternoon.  And our design would be to

11 submit a proposed form of order on the rejection motion close

12 of business tomorrow.

13         We want to give everybody one more chance to look

14 through it.  Because there's a lot of people that are here.

15 There's a lot of people that have been on Zoom and on e-mail.

16 I just want to make sure that everybody gets a look.  But, in

17 broad strokes, it appears to be generally agreed.

18         Now, let me give you some high level components of

19 that.  And then I'm going to invite other stakeholders to come

20 forward and give their views, which hopefully will be largely

21 consistent with what I'm about to tell you.

22         So, first of all, the debtors are not seeking

23 rejection today.  We're seeking rejection effect -- you know,

24 we had originally filed this as a nunc pro tunc.

25         THE COURT:  Nunc pro tunc.  Right.

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 21 of 51

20

1          MR. DURRER:  We're seeking rejection effective as of

2    the closing, or such earlier date that parties agree to.  But,

3    it won't be earlier than the closing, which is presently

4    contemplated for Monday, August 11.

5          The parties who have filed adequate protection or

6    motions to compel 365(n) rights, those motions will be

7    continued to September 3rd, which is our next omnibus hearing.

8    But, if people have an emergency, they know how to contact

9    chambers and Your Honor.  Hopefully we won't have any

10   emergencies, but people have their rights to pursue that.

11         The rejection order will carve out -- there was a

12   provision in the rejection order that said there's no adequate

13   protection issue, because the contracts are rejected.  That

14   will carve out those continuing motions to compel/adequate

15   protection motions.

16         In addition, and this is really important, the motion

17   will reserve, as will any sale order, irrelevant to

18   intellectual property, the rejection order will reserve all

19   365(n) rights.  We've included additional language, because

20   people have different views about what is covered.  But, the

21   high level point that everybody needs to grasp is, whatever

22   365(n) rights you have, they're preserved.

23         We actually made a lot of progress in defining what

24   365(n) rights are and are not.  But, for today, that is a TBD.

25   If we work it out in the order and there's more clarity, great.

Case 25-16137-MBK   Doc 1090-1   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit 1 - Hearing Transcript August 6   2025   Page 22 of 51

21

1    If not, that'll be for another day.

2          Parties have also expressed some concerns about

3    continuity in the post-closing period.  I think it's helpful

4    for Your Honor to hear that from our buyer, FlexGen, in the

5    context of this.  It's more relevant to the sale.  But, my

6    vision is, let's just do it once.

7          So, I'm going to invite FlexGen's counsel to say what

8    they're going to say about continuity issues.  And then I'll

9    let people chime in on issues that are important to them from a

10   365(n) perspective.  And then I think we're good on rejection.

11         But, with that, Jeff.  So, Mr. Mispagel from Latham &

12   Watkins is here for FlexGen.  He's going to speak to

13   continuity.  And then I think Mr. Sedebach (phonetic) --

14         THE COURT:  Good afternoon, counsel.  Just let me

15   have -- for those who are coming up to the podium, appearances.

16         MR. MISPAGEL:  Good afternoon, Your Honor.  I guess

17   Mr. Durrer already introduced me.  But, for the record, Jeff

18   Mispagel from Latham & Watkins on behalf of FlexGen, the

19   debtor's DIP lender and proposed purchaser.  Your Honor,

20   FlexGen fully intends to provide customers with continuity of

21   service, including access to Cobalt and AWS and continued

22   services from the ROC, which is remote operations center.

23         FlexGen looks forward to providing services to the

24   debtor's customers, that is why FlexGen is acquiring the assets

25   to be acquired under the APA.  And FlexGen expects to negotiate

Case 25-16137-MBK   Doc 1090-1   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit 1 - Hearing Transcript August 6   2025   Page 23 of 51

22

1  agreements with customers, likely short-term to start, with an

2  eye towards longer term agreements, so that FlexGen can

3  continue to provide services to the debtor's customers

4  following the closing of the sale and hopefully for a long time

5  after that.

6         As Mr. Durrer noted, there have been some disputes

7  regarding what -- what counterparties are entitled to under

8  Section 365(n) of the Bankruptcy Code.  One thing to make

9  clear, Your Honor, is that FlexGen is not seeking to override

10 Section 365(n) rights, and the proposed sale order and the

11 asset purchase agreement make that clear.

12        But, as debtor's counsel also noted, 365 disputes --

13 or 365(n) disputes are going to be continued until September

14 3rd.  And in the interim, we want it to be clear that FlexGen

15 does not think it is obligated to provide services to customers

16 between now and September 3rd, whether that's by, you know,

17 under 365(n) or otherwise.  But, FlexGen does intend to and

18 will provide services to customers through September 3rd while

19 we wait for those disputes to be heard.

20        THE COURT:  All right.  Thank you.  Thank you for

21 putting it on the record.

22        MR. MISPAGEL:  Thank you, Your Honor.

23        THE COURT:  Now, we'll hear from others who wish to

24 be heard.  Good afternoon.

25        MR. C de BACA:   Good afternoon, Your Honor.  Joaquin

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 24 of 51

23

1  C de Baca from Mayer Brown.  And Mayer Brown represents certain

2  projects owned by Longroad Development Company, LLC, certain

3  projects owned by Leeward Renewable Energy, LLC, and DTE

4  Electric Company.

5           And, Your Honor, the reason that Mr. Durrer's

6  explanation of why this -- the proposed order works for us

7  today is because it reflects, I think, what we have been saying

8  in our papers in terms of the way 365(n) is supposed to work in

9  terms of what licensees are entitled to, both prior to

10  rejection and after rejection, (n)(4) and (n)(3) of Section

11  365.

12           And what that means is that there are things we are

13  entitled to prior to rejection.  And I think that it hopefully

14  came across clearly in our papers when this was fully briefed.

15  We don't think there's any ambiguity about that, at all.  And I

16  should note also that the reason this is so important is -- is

17  a lot of what is not visible in the papers is that all this

18  goes to the operation of physical plants.

19           This IP is more than just an idea in a hard drive

20  somewhere.  This stuff goes to our customer's ability to make

21  sure that their projects stay fully operational, there's not

22  portions of them that go down.  There's real money at issue

23  here, as these things are operational -- are or not.  And that

24  is what's at stake in terms of whether this IP gets handed

25  over, and how quickly it gets handed over.

Case 25-16137-MBK   Doc 1090-1   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit 1 - Hearing Transcript August 6   2025   Page 25 of 51

24

1          So, that means under (n)(4), in particular, that --

2 and I think that you'll see as you'll see in the order, and as

3 a result of the fact that contracts are not being rejected nunc

4 pro tunc, there are things that need to be handed over now.  I

5 think that -- that's -- that is simply the way the statute

6 operates.  I think that as a result of the discussions we've

7 had today, that's where we're landing.

8          But, what that means is, that if we don't get things

9 after today, and I understand people need to go back and

10 examine what they -- what, you know, the -- essentially sort

11 through their differences to what they think is covered here.

12 But, nonetheless, if we don't start getting those things,

13 they're, you know, those projects aren't going to be able to

14 operate.  There's going to be loss as a result of that.  And we

15 think the Court should be aware of that.

16          And also, if this continues to be a contested issue,

17 we are going to be back here very, very quickly.  This is --

18 this continues to be an emergency basis, and we cannot let it

19 linger.  This has to be -- the IP has to start flying.

20          THE COURT:  All right.  Thank you, counsel.  Mr.

21 Cooper?

22          MR. COOPER:  Thank you, Judge.  Jeffrey Cooper,

23 Rabinowitz, Lubetkin & Tully, together with Adams & Reese, for

24 Honeywell.  Your Honor, we understand the proposed language and

25 understand we're going to have a chance to be able to look at

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6   2025    Page 26 of 51

25

1  the order and make suggestions as –– through tomorrow to get it

2  before Your Honor.

3          But, we had a couple specific thoughts.  One of the

4  things that we had talked about was that –– and I think this is

5  probably fine with the buyer, that the services and the

6  continuity will be as currently provided to each of the various

7  licensees.  So, the idea is that whatever's now in existence

8  will just continue going forward.  And I think that was

9  probably acceptable.

10          With regard to the language of saying the continuity

11  lasts until September 3rd, we've got a problem with that.  Only

12  because right now there's a hearing scheduled on Nov –– I'm

13  sorry, on September 3rd, to hear some of the underlying issues

14  that is what's included within the intellectual property,

15  what's the concept of embodiment, whether the source codes go

16  with it or not.  All those things we hope to work out in the

17  interim.

18          But, if we don't, we need to have the continuity go

19  through either in agreement of the parties or further order

20  from Your Honor.  Perhaps the hearing won't be held on the 3rd,

21  perhaps something else might happen.  But, as I understand the

22  way that these things work, the services that we provide to our

23  customers includes things like air conditioning and things like

24  that, that we really can't not have.

25          So, I had –– the language I had suggested was until

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6   2025    Page 27 of 51

26

1  agreement of the parties or an order of the Court.  I don't

2  know if that's acceptable.  That's what I'm going to suggest we

3  put in the language for tomorrow in the proposed order.

4        And with regard to the underlying issues that come

5  before Your Honor, again, we are -- we may be able to agree

6  with those.  Right now, among the issues that's out there, is

7  what, I think we as bankruptcy lawyers, are calling services,

8  which may not actually be intellectual property.  And we're

9  trying to work that out as to whether the actual IT plus the

10 embodiment is -- is all that's required by 365(n) or whether

11 there's some other requirement.  And secondarily, whether the

12 payments being made now for royalties and other things include

13 these services.

14       But, I just highlight that to say that those are

15 issues that I'm very confident we can work out in the interim.

16 But, we do need to have the continuity last until either we

17 agree or Your Honor rules one way or the other.  Thank you.

18       THE COURT:  All right.  Fair enough.

19       MR. BRODY:  Good afternoon, Your Honor.  Alan Brody,

20 Greenberg Traurig, on behalf of Stem, Inc.  Stem, Inc. is also

21 a customer who uses very much the same as Mr. Cooper has said

22 with his client.  Your Honor, we echo exactly what Mr. Cooper

23 has stated.  But, I want to be specific as to one item, which

24 is the continuity of service, which include the access to the

25 software, Colbalt and HW.  The parties are going to try

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 28 of 51

27

1  to work everything out prior to September 3rd and that is the

2  hopes and I think it's good to be able to put this off through

3  another date, but yet hold everybody's feet to the fire with

4  the September 3rd date, keeping -- allowing the customers to

5  continue with the access, to the extent they already have, to

6  continue with an access.

7          But just as Mr. Cooper had mentioned, want to make it

8  clear that if for some reason the parties cannot work things

9  out and we come before Your Honor, the customers are not

10  agreeing that September 3rd is the cutoff date for access.  So

11  that's why Mr. Cooper was asking for September 3rd or any other

12  order that the Court gives.  Again, we hope to work it out, but

13  we just want Your Honor to know that September 3rd is not a

14  cutoff date from the view of the customers.  Thank you.

15          THE COURT:  Fair enough.  Thank you, Mr. Brody.

16  Counsel?

17          MS. McGOWEN:  Good afternoon, Your Honor, I'm

18  Lorraine McGowen from Orrick Herrington on behalf of EsVolta,

19  LLC and EDF Power Solutions.  And like the other gentlemen

20  before you, we represent customers who rely on this

21  intellectual properly and we hope to resolve the issues

22  regarding access, particularly to Cobalt and AWS, as has been

23  mentioned.  It is critical for the operation of the systems and

24  for public safety because if the systems don't work, then the

25  systems will be in danger of fire and other grid issues.

28

1          In addition, Your Honor, in our limited objections on

2  behalf of EsVolta and EDF, we noted a number of other requests

3  for resourcing assistance.  We understand based on discussions

4  with counsel for the debtor that a number of our issues will be

5  addressed in the order, the rejection order that's being

6  circulated.  That includes access to books and records, the

7  access to warehouses to the extent permissible so that our

8  client that purchased a number of equipment and spare parts can

9  retrieve those spare parts and equipment and also access to the

10 assignment of warranties to the extent that that's permissible.

11         And then, lastly, Your Honor, the debtors noted that

12 they provided a number of technical assistance to other

13 customers.  I believe the debtors have agreed to provide that

14 to our clients and others.

15         THE COURT:  All right.  Thank you.  Thank you,

16 counsel.

17         MS. KANZER:  Good afternoon, Your Honor.

18         THE COURT:  Good afternoon.

19         MS. KANZER:  Lauren Kanzer of Vinson & Elkins on

20 behalf of an Ad Hoc Customer Group.  My group includes Lonestar

21 Solar, Idaho Power and West Warwick.  As everyone else has

22 expressed, my clients are customers of the debtors, licensees

23 of intellectual property and they filed a number of pleadings

24 in these cases aimed at ensuring their rights under 365(n) are

25 preserved and protected, including a motion for adequate

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 30 of 51

29

1    protection.  That was filed at Docket Number 297.

2            As Mr. Durrer noted, we'll be adjourning that

3    consensually until September 3rd, but reserving rights to come

4    back earlier if we can't reach resolution with the debtors and

5    with FlexGen.  I think that's all I had, Your Honor.

6            THE COURT:  All right.

7            MS. KANZER:  Thank you.

8            THE COURT:  Thank you.

9            MR. DUGGAN:  Good afternoon, Your Honor.

10           THE COURT:  Good afternoon.

11           MR. DUGGAN:  Timothy Duggan of Stark & Stark on

12   behalf of Spark Power Renewables.  We have a very limited

13   objection to EDF and EsVolta.  Two minutes ago, they asked for

14   an assignment and transfer of the --

15           THE COURT:  Warranties.

16           MR. DUGGAN:  -- unidentified warranties.  There's no

17   assumption and assignment here.  To the extent the contract

18   with my client ultimately gets assumed and warranties are part

19   of it, we can have at it.  But to have the rejection

20   conditioned upon an assignment of a collateral agreement, we

21   have no privity with these people.

22           If they believe they're third-party beneficiaries or

23   they have some sort of State Court rights, they can have at it.

24   But it's not a party here and we'd like to make sure that

25   that's not going to be included in the rejection order, some

1    sort of assignment of these warranty claims.

2         THE COURT:  All right.  Thank you.  Fair enough.  Mr.

3    Schwartz.

4         MR. SCHWARTZ:  Thank you, Your Honor.  For the

5    record, Your Honor, Joseph Schwartz, Riker Danzig, on behalf of

6    Solar Carver 1, LLC and Solar Carver 3, LLC.  Your Honor, I

7    rise not because I am a counter party that with respect to

8    365(n) or not because I'm objecting to the rejection motion.

9    But, instead, I just wanted to point out a few things to Your

10   Honor.  My clients are parties to two different contracts with

11   the debtors.  They're both called battery supply -- battery

12   equipment supply agreements.  They were entered into back in

13   2021.

14        The schedule that's attached to the rejection motion

15   talks about energy storage agreements and it talks about that

16   those agreements relate to two separate projects, one in

17   Rochester, one in Tremont.  I don't know whether or not those

18   two agreements are my client's agreements.  It's unclear.  But

19   the debtors then filed at Docket Number 446 a notice of

20   potentially assumed contacts, as Your Honor I'm sure is well

21   aware.  And on that notice, the debtor lists two battery

22   equipment supply agreements with my client.

23        And so we have two separate notices, one of

24   potentially a rejection of these contacts, again, not clear if

25   they're the same contracts.  Then we have a potentially assumed

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 32 of 51

31

1   assumption of those two contracts.  And so my client was

2   confused as a result of that, reached out to the debtors, tried

3   to engage with the debtors concerning the debtors' intentions

4   and hasn't received any sort of satisfaction with respect to

5   that outreach.

6           But, more importantly, Your Honor, the two battery

7   equipment supply agreements that I'm talking about both pertain

8   to my client's purchase of substantial equipment.  My client

9   paid approximately $10 million in exchange for these large

10  pieces of equipment.  The pieces of equipment were never

11  installed and delivered and commissioned at my client's

12  buildings.  But, nonetheless, we believe and we're not sure

13  that those pieces of equipment are part of the sale.

14          And so, the sale motion is, obviously, not, you know,

15  we're not talking about that right now.  That's Agenda Item

16  Number 9.  But what I don't want to see happen here is that the

17  debtors get a rejection order entered and then later claim that

18  somehow the rejection order somehow divested my client of title

19  to these two pieces of equipment and at the same time try to

20  sell that equipment for which the debtor doesn't have a title

21  to the buyer.

22          And so, you know, again, I rise to preserve my rights

23  with respect to rejection.  You're going to hear from me again

24  with respect to the sale motion because it's our position, Your

25  Honor, and I submit that the debtors can't sell something that

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 33 of 51

32

1  they don't have title to.  Title is vested in my client.  And

2  the debtors have not, while the debtors may contest title, the

3  debtors have not procedurally brought any kind of action to

4  bring to Your Honor's attention where title properly vests and

5  lies.

6         Those two contracts are not even before the Court.

7  They've never been attached to any pleadings before the Court.

8  There's no adversary proceeding or any other proceeding that's

9  pending before the Court.  And so Your Honor doesn't have

10  enough information to make that kind of determination here

11  today.  But, again, the debtors can't sell something that they

12  don't own and that's black-letter law.

13         THE COURT:  All right.  Well, it's too late in the

14  day to hear you again on that.  I just heard you.  So --

15         MR. SCHWARTZ:  No, that's -- and that's fine, Your

16  Honor.

17         THE COURT:  Let's see how they respond.

18         MR. SCHWARTZ:  Okay.

19         THE COURT:  I appreciate it.  Thank you.

20         MR. SCHWARTZ:  Thank you, Your Honor.

21         THE COURT:  One thing's been clear, Mr. Durrer, on

22  September 3rd, I don't -- you've accomplished and gone through

23  quite a bit in this long day today.  I don't think you all

24  could have gotten where you are even at this juncture without

25  everybody being in the room, so-to-speak.

Case 25-16137-MBK   Doc 1090-1   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit 1 - Hearing Transcript August 6   2025   Page 34 of 51

33

1          MR. DURRER:  Oh, 1,000 percent agree with that, Your

2 Honor.

3          THE COURT:  So, September 3rd I'm going to have

4 in-court appearances unless everything is wrapped up in a

5 bow --

6          MR. DURRER:  Oh, we agree.

7          THE COURT:  -- without any issues.

8          MR. DURRER:  Yeah, thank you, Your Honor.

9          THE COURT:  It's scheduled now for 11:30, but that

10 ship has sailed.  We'll put it back to ten o'clock.  Okay.

11          MR. DURRER:  Understood, Your Honor.  And in response

12 to the comments made on behalf of Solar Carver, and apologies

13 that this didn't happen during the course of the long day, we

14 are not, there's no design to leverage the rejection motion to

15 accomplish something in the sale.  That's clear.  We are

16 seeking to reject those contracts to the extent they remain

17 executory.

18          And then we have agreed, no pun intended, to carve

19 out the Solar Carver alleged assets from the sale today.  If we

20 can reach an agreement, great.  But for purposes of the sale

21 today, they're carved out.

22          THE COURT:  Okay.  Thank you.

23          MR. DURRER:  Thank you.

24          THE COURT:  I don't see any raised hands remotely.  I

25 see somebody -- did you want to be heard again, counsel?

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 35 of 51

34

1          MR. MISPAGEL:  I do, Your Honor.

2          THE COURT:  Okay.

3          MR. MISPAGEL:  Just one point in response.

4          THE COURT:  Sure.

5          MR. MISPAGEL:  For the record, again, Jeff Mispagel

6  from Latham & Watkins on behalf of FlexGen.  I guess two

7  points.  One is just to echo what some of the others had said

8  which is that we are hopeful that resolutions can be reached.

9  We hope there can be agreements as to what 365(n) requires.  We

10  hope there can be agreements between our client and customers

11  regarding agreements going forward.

12          The other point is just in terms of continuing to

13  provide services, when the end date for that would be, we're

14  agreeing right now to provide services through September 3rd.

15  Come September 3rd, the Court thinks it's fair and equitable to

16  order, you know, an extension, we'll comply with that.  But we

17  would hope that the Court also understands that we can't just

18  continue to provide services indefinitely.

19          THE COURT:  Understood.

20          MR. MISPAGEL:  Thank you, Your Honor.

21          THE COURT:  All right.  Thank you.  So, with that, is

22  it fair for the Court to mark the rejection motion, Docket

23  Document 88, as an order to be submitted?

24          MR. DURRER:  Yes, Your Honor.

25          THE COURT:  Okay.  And I know there's a gulf to get

35

1  there, but and, obviously --

2           MR. DURRER:  It's a chasm, it's not a gulf.

3           THE COURT:  Chasm.  If there's a need and the Court

4  is available, if it comes down to some language, the Court

5  would certainly participate in any call just to get us over the

6  hump, over the line, rather, on that issue.

7           MR. DURRER:  Thank you, Your Honor.

8           THE COURT:  All right.

9           MR. DURRER:  So, as part of that presentation, Your

10 Honor, Items 7 and 8 are adjourned to September 3rd, that is

11 the group represented by Mr. C de Baca at Docket Number 117,

12 and then the group represented by Ms. Kanzer, Docket Number

13 297.

14          THE COURT:  Correct.

15          MR. DURRER:  And that brings up to the sale hearing

16 on Docket -- or I'm sorry, Agenda Item Number 9, Docket 413.

17          THE COURT:  All right.  Thank you.

18          MR. DURRER:  Okay.  So, just briefly, Your Honor, and

19 then we're going to tag team this a little bit so your

20 indulgence is there.  As Your Honor knows, at the last hearing,

21 Your Honor approved the bidding procedures, we had a stalking

22 horse bid submitted by Mr. Mispagel's client, FlexGen.  That

23 was the only bid with respect to those assets at the July 30

24 auction.

25          But as a consequence of pursuing the sale of

36

1   substantiality assets, getting the bidding procedures approved,

2   the outreach that Curon (phonetic) performed on behalf of the

3   company, the diligence efforts, all that jazz, we did end up

4   with a couple of additional proposals for assets that were not

5   part of the FlexGen stalking horse APA.  Those included the

6   Mainfreight credit bid.  Mainfreight, you'll recall, Your

7   Honor, is represented by Mr. Capuzzi and he put some items on

8   the record, so I'm going to cede the podium to him in a moment.

9       And then, in addition, there was some equity, there's

10  an equity interest that a non-debtor, Powin EKS Selco

11  (phonetic) owns.  We did receive a bid for that.  We made that

12  bid available to parties at the July 30 auction.  That was made

13  available to everyone in attendance, including FlexGen,

14  including our DIP lender, including Mainfreight and others.  No

15  one elected to advance a bid higher than the Hitachi proposal

16  to purchase the EKS equity.

17      So, that, plus the Mainfreight transaction, plus the

18  FlexGen transaction is what we're proposing that Your Honor

19  approve today now.  Again, the only transaction among those

20  that impacts the debtors' intellectual property is the FlexGen

21  proposal and the FlexGen proposed sale order does include

22  language that makes it clear that all 365(n) rights are

23  preserved.  In addition, the FlexGen stalking horse APA states

24  that that transaction is subject to Section 365(n) rights, as

25  well.

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 38 of 51

37

1          So, with that, I'll start maybe with Mr. Capuzzi if

2  he wants to say anything more about the Mainfreight transaction

3  and then we'll go to the EKS and finish up with FlexGen --

4          THE COURT:  Great.

5          MR. DURRER:  -- if that's okay, Your Honor.

6          THE COURT:  Thank you.  Mr. Capuzzi.

7          MR. CAPUZZI:  Thank you, Your Honor.  Again, for the

8  record, Kevin Capuzzi, Benesch Friedlander, counsel for the

9  Mainfreight entities.  Your Honor, as Mr. Durrer noted,

10 Mainfreight was the successful bidder through a credit bid for

11 certain goods owned by the debtors that are subject to

12 Mainfreight's maritime and possessory lien rights.

13         The goods in which Mainfreight credit bidded do not

14 include any of the goods that are in the West Virginia laydown

15 yard related to the BHER Project which is subject to a separate

16 motion pending before Your Honor, nor does it include any goods

17 located in two warehouses in Australia that were part of a

18 private sale that Your Honor approved earlier in these cases.

19 It's pretty much everything else.

20         Your Honor, there were no objections received with

21 respect to the Mainfreight sale, other than the limited

22 objection and reservation of rights that was put on the record

23 earlier this morning by Mr. Abramowitz's client, Ace

24 Engineering, who I understand is simply reserving rights,

25 vis-a-vis, the debtors.  They allege certain administrative

38

1  claims and other rights against the debtors, but they are not

2  opposed to the free and clear sale of the Mainfreight goods to

3  Mainfreight.

4          So, with that, Your Honor, I believe the Mainfreight

5  proposed order, which is Exhibit B to Docket Number 608, is

6  unopposed and we would ask Your Honor to enter it.

7          THE COURT:  All right.  Thank you, counsel.

8          MR. CAPUZZI:  Thank you.

9          THE COURT:  Let me turn, and I probably was remiss

10 even with respect to the rejection motion, did the Committee

11 want to take a position or make a statement, be heard?  And

12 then, obviously, on this piece, as well.

13         MR. AULET:  Good morning or good afternoon, Your

14 Honor.  It's been a long day.  Kenneth Aulet of Brown Rudnick

15 for the Committee.  We have no objection, as you would expect,

16 to the rejection compromise that was announced given that, you

17 know, I confirmed with the debtors that that's not imposing

18 additional costs on the estate that are going to diminish the

19 recoveries to my constituents.

20         I will say, look, I understand the issues the

21 customers have.  But these cases are not, are looking at a very

22 low recovery at this point to unsecured creditors.  And so

23 while we are certainly hopeful that all those issues can be

24 resolved, we will be quite vehement against any attempt to

25 further pick unsecured creditors' pockets who are out 300

1 | million for the benefit of those customers.

2 |       As to the Mainfreight sale, the Committee is

3 | supportive of the Mainfreight sale, as well.

4 |       THE COURT:  All right.

5 |       MR. AULET:  And I think you'll hear the same for the

6 | subsequent sales.  But I'll be happy to address those at the

7 | appropriate time.

8 |       THE COURT:  Great.  Thank you.  Anyone else wish to

9 | be heard?

10 |               (No audible response)

11 |       THE COURT:  Hearing and seeing no one, motion will be

12 | granted.  Do we have -- now is that order that's submitted the

13 | final version or does the language have to be tweaked?

14 |       MR. MISPAGEL:  Your Honor, the version that was

15 | submitted and hopefully uploaded to Your Honor at Docket Number

16 | 608, Exhibit B, is the final version.  There were no further

17 | changes to that.

18 |       THE COURT:  All right.  If we have problems, we'll

19 | reach out.

20 |       MR. MISPAGEL:  Thank you.

21 |       THE COURT:  Thank you.

22 |       MR. DURRER:  So, Your Honor, the next on the list,

23 | Your Honor, Van Durrer for the debtors, is that Hitachi

24 | purchase of the Powin EKS Selco.  That, just to be clear, that

25 | order has also been presented.  There's no controversy or other

Case 25-16137-MBK   Doc 1090-1   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit 1 - Hearing Transcript August 6   2025   Page 41 of 51

40

1  changes.  Because that's a non-debtor, the order's a little

2  different from the traditional free and clear order.  It

3  authorizes us to undertake the transaction and cause that

4  non-debtor to perform.

5         So, it's a little different than what you might be

6  used to.  But, otherwise, it approves the relief.  And, as I

7  noted moments ago, there were no other higher or better bids

8  offered at the auction or otherwise.

9         THE COURT:  Are there any -- does anybody wish to

10 raise any issues or concerns?

11                    (No audible response)

12        THE COURT:  Motion will be granted as to the EKS

13 interest and in favor of Hitachi.  Thank you.  That brings us

14 to FlexGen.

15        MR. DURRER:  That brings us to, Your Honor, the

16 proposed sale to the stalking horse bidder FlexGen.  As noted,

17 Your Honor, the order will contain language explicitly

18 preserving the rights under Section 365(n).  In addition, there

19 are two objections raised, one by a customer Leeward and

20 another by the customer Solar Carver that Your Honor already

21 heard about that have expressed the view that some of the

22 assets proposed to be sold to FlexGen are, in fact, their

23 assets and not the debtors' assets.

24        As a consequence, we've agreed to include language in

25 the order that those assets are carved out unless the parties

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6  2025    Page 42 of 51

41

1 otherwise agree.  So, if we reach an accommodation, we don't

2 need to come back to Your Honor.  If we believe that the

3 accommodation would otherwise require further disclosure and

4 approval, obviously, we'll do that.  But we don't expect that.

5 But if we need it, we'll do that.  But, otherwise, we are

6 asking for the FlexGen transaction to be approved.

7        THE COURT:  All right.  Now, the FlexGen transaction

8 includes a smaller credit bid if I'm correct and assumption of

9 liabilities?

10        MR. DURRER:  So, yes, Your Honor.  There is -- it was

11 the original amount was $38 million and change.  Because

12 FlexGen is also our DIP lender, they're entitled to credit bid

13 the portion of the DIP loan.  And then there are specifically

14 delineated assumptions of liabilities.  I won't walk you

15 through the APA in gory detail, but trust me when I say that

16 the APA is very specific about what is assumed and what's not

17 assumed and what's sold and what's not sold.  So I'll let the

18 document speak for itself, but, yes.

19        THE COURT:  All right.  Thank you, Mr. Durrer.  Does

20 anybody wish to be heard?  Mr. Duggan?

21        MR. DUGGAN:  Thank you, Your Honor.  Timothy Duggan

22 of Stark & Stark on behalf of THI Inc.  I think this objection

23 was resolved.  On the debtors' schedules, there was some

24 deposits and prepayments listed as assets on Schedule B that

25 are tied into certain contracts.  We just want to make sure

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 43 of 51

42

1    that those are not being sold and we're going to have a

2    problem, an estoppel argument of, hey, why didn't you object at

3    the time.

4            So, I don't know if the debtors consider them as cash

5    and cash is not being sold, but when you have a security, in

6    essence, a license deposit, as well as prepayments of the tune

7    about $250,000 because they're listed on Schedule B, we just

8    want to make sure they're carved out and not being sold to the

9    extent they're considered cash or something else and that we

10    wouldn't be estopped down the road if somebody tried to collect

11    them because they don't exist.

12            THE COURT:  I was going to say, I think you took the

13    position in the papers they don't exist.

14            MR. DUGGAN:  Yes.  Thank you.

15            THE COURT:  Mr. Durrer?

16            MR. DURRER:  Yeah, that's correct, Your Honor, and

17    we're not selling cash.  And I was remiss.  I should have

18    mentioned, Your Honor, that there were a hand -- there was a

19    cure notice process.  At this time, you know, FlexGen has not

20    identified any contracts to be assumed and assigned.  So, we're

21    not litigating any cure issues today because they may be

22    completely unnecessary if that changes because FlexGen does

23    retain rights to tweak that assumption of silent schedule.

24            We'll, obviously, come back to Your Honor, but we

25    don't anticipate, well, certainly not we're dealing with any

43

1 cure today.  But if we do, we'll come back and make that clear

2 to everybody.

3         THE COURT:  All right.  Thank you.  Thank you,

4 counsel.

5         MS. McGOWEN:  Your Honor, Lorraine McGowen again from

6 Orrick on behalf of EsVolta and EDF.  We filed a limited

7 objection and notice of lien and reservation of rights, Docket

8 Numbers 558 and 559, on behalf of EsVolta and EDF noting that

9 pursuant to our contracts, both of those customers had

10 purchased certain goods and equipment, including replacement

11 parts, and asserted liens associated with that.  So to the --

12 and that notice was in connection with the sale to FlexGen.

13         So, to the extent that the FlexGen order proposes to

14 sell property that our clients have already purchased, we would

15 argue again that that's not property of the estate and should

16 not be part of the sale order.

17         THE COURT:  All right.  Thank you.  Counsel?

18         MR. POMPEO:  Good afternoon, Your Honor.

19         THE COURT:  Good afternoon.

20         MR. POMPEO:  Michael Pompeo on behalf of Faegre,

21 Drinker, Biddle & Reath on behalf of Keyframe, pre-petition

22 lender.  You asked a question about the credit bid.

23         THE COURT:  Right.

24         MR. POMPEO:  Just to state the obvious, Your Honor,

25 pre-petition obligations will be paid off as a part of this

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 45 of 51

44

1 sale and it's a part of Paragraph 35 of the proposed form of

2 order.

3        THE COURT:  All right.  Thank you.

4        MR. POMPEO:  Okay.

5        THE COURT:  Mr. Schwartz.

6        MR. SCHWARTZ:  Thank you, Your Honor.  Joseph

7 Schwartz, Riker Danzig.  This time is I stand on behalf of a

8 different client.  My client is Front Range-Midway Solar

9 Project, LLC.  We have two contracts with the debtor.  We filed

10 a response and our response is found at Docket Number 446.

11        I heard Mr. Durrer and my response was generally

12 directed towards cure and I understand that cure is not an

13 issue for today.  We raised another issue which was that we

14 have two contracts, one of which was terminated pre-petition

15 and I also heard Mr. Durrer when he said that the buyer

16 reserves the right to designate which contracts they want to

17 assume or take by way of assignment.  But I just want to

18 reserve rights and make sure that nothing is affecting my

19 client here today.

20        THE COURT:  Fair enough.

21        MR. SCHWARTZ:  Thank you, Your Honor.

22        THE COURT:  Thank you.  Today's been a lesson for

23 interns and law clerks on, you know, the meaning of reservation

24 of rights in all capacities.  All right.  Anyone else wish to

25 be heard?  Oh, I see a lot of raised hands on the screen.  Mr.

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 46 of 51

45

1  Aulet, do you, on behalf of the Committee, before I turn to the

2  screen?

3         MR. AULET:  Yes, Your Honor.  The Committee is

4  supportive of the FlexGen sale.  I think the auction result as

5  a whole was better than expected, but unfortunately this

6  particular portion was not.  I would just rise again to say

7  while we support the sale at this point, you know, these cases

8  are looking very rough for unsecured creditors.

9         The debtors came in with over $300 million of unpaid

10  trade vendors and the Committee is going to be very focused in

11  the days and weeks ahead on finding out exactly how that came

12  to be and what can be done to increase the quite meager

13  recoveries that unsecured creditors are looking at as a result

14  of this sale.  But this sale is critical to getting to that

15  point.  And so the Committee supports the approval of this --

16  of all three transactions, Your Honor.

17         THE COURT:  Understood and thank you, Mr. Aulet.  Let

18  me turn to those who are appearing remotely.  In no particular

19  order, Mr. Zammiello.

20         MR. ZAMMIELLO:  Good afternoon, Your Honor, Agostino

21  Zammiello from Fox Rothschild on behalf of Specified

22  Technologies, Inc.  Can you hear me okay?

23         THE COURT:  I can.  Thank you.

24         MR. ZAMMIELLO:  Perfect.  Your Honor we filed a

25  reservation of rights to the debtors' notice of winning bidders

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6   2025    Page 47 of 51

46

1  found at Docket Number 662.  The debtors and Specified

2  Technologies are parties to a master supply agreement or MSA.

3  The MSA was not previously listed on the notice of potentially

4  assumed executory contracts that was previously filed by the

5  debtors.  And we simply want to reserve our right to the extent

6  FlexGen or another party seeks to assume the MSA.

7         Specified Technologies reserves its right to assert

8  any objection related to the assumption and assignment of the

9  agreement, including but not limited to, receiving notice,

10  objecting to the notice, cure amount or any sort of adequate

11  assurance.

12         THE COURT:  All right.  Thank you.

13         MR. ZAMMIELLO:  Thank you, Your Honor.

14         THE COURT:  Noted.  Mr. Bostel.

15         MR. BOSTEL:  Good afternoon, Your Honor, Kevin

16  Bostel, Weil, Gotshal & Manges, on behalf of Munmorah Battery

17  ProjectCo and Ulinda Park ProjectCo.  Your Honor, as you're

18  aware, our clients reached a settlement with the debtors with

19  respect to certain claims relating to pre-petition agreements

20  between the parties.  Under the settlement, which was approved

21  at Docket Number 283, the project group was to receive transfer

22  of certain assets, inventory and the restatement of a license.

23         We had intended on closing that deal well in advance

24  of the sale.  But, unfortunately, some of the conditions

25  remained outstanding until late last night.  The original APA

Case 25-16137-MBK    Doc 1090-1    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit 1 - Hearing Transcript August 6    2025    Page 48 of 51

47

1  filed didn't carve out those assets and we were concerned that,

2  you know, some of those assets may inadvertently be transferred

3  or there could be confusion as to those going with the sale.

4      Fortunately, we were able to resolve and get language

5  in the order that resolved our concerns which is found at

6  Paragraph 36.  And we did, in fact, close on the settlement

7  deal late last night.  So, we're all resolved with the

8  inclusion of the language in Paragraph 36 and we'd just like to

9  thank the debtors and FlexGen for working with us through that

10  up until late last night.

11      THE COURT:  All right.  Thank you, counsel.  Ms.

12  Remington.

13      MS. REMINGTON:  Good afternoon, Your Honor, Tori

14  Remington, Troutman, Pepper, Locke, on behalf of Ameresco, Inc.

15  and Kupono Solar, LLC.  Your Honor, we were a party that filed

16  a cure objection a NDI 555.  We understand today that the cure

17  objections to the extent agreements are assumed and assigned

18  will be heard at a later date.  However, prior to the hearing

19  today, we reached agreed to language with counsel to the

20  debtors with respect to language we wanted to be included on a

21  record.

22      That language is to the extent that any contract with

23  Ameresco, Inc. or Kupono Solar, LLC for which there is a

24  disputed cure amount is designated as an assumed contract.

25  Such disputed cure amounts shall be resolved unless otherwise

48

1 resolved by agreement of the debtors and the Ameresco entities

2 at a further hearing before the Court scheduled on at least 14

3 days notice to the debtors and the Ameresco entities.

4          We just wanted to put that on the record, Your Honor.

5 Thank you.

6          THE COURT:  All right.  Thank you.  Is there anyone

7 else who wishes to be heard?

8                    (No audible response)

9          THE COURT:  All right.  Then, at this juncture, the

10 Court appreciates the work that has been undertaken by debtors'

11 counsel and the cooperation of those who have filed limited

12 objections.  The Court notes various carveouts that are going

13 to be included in the order language protecting 365(n) rights,

14 the deferral of consideration of cure amounts to another date.

15          There's no question for the Court, as the Committee

16 has noted, that the sale satisfies the <u>Abbotts Dairies</u>

17 requirements, is certainly beneficial to the estate for fair

18 value given the process that to which there has been no

19 objection raised as far as soliciting interest and the sale

20 process, the auction process itself.  I assume, and I have no

21 reason not to, grant 363(m) protections to the bidder and I

22 also assume, although I don't have the language in front of me,

23 that there are various 6006 waivers --

24          UNIDENTIFIED ATTORNEY:  Yes, Your Honor.

25          THE COURT:  -- 14-day waivers.  The Court will grant

1  those and the Court will -- I'm not going to got through the

2  litany of 363(b) and (f) requirements.  They've been satisfied,

3  they've been -- there's recitations of those in the supporting

4  briefs and the Court adopts.

5          Again, I appreciate the long day and the long nights

6  that preceded it and days.  And we're making progress.  So with

7  that, are there any other issues parties want to address?  So

8  this, the sale order is going to be approved and that's an

9  order to be submitted.  You'll reach out for chambers, again,

10  likewise if there are any issues, reach out for chambers and

11  we'll see what we can do.

12          Our next gathering together is on September 3rd, as

13  discussed, at ten o'clock.  Other than that, thank you, all.

14          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

15          THE COURT:  Take care.

16                          *  *  *  *  *

17

18

19

20

21

22

23

24

25

Case 25-16137-MBK   Doc 1090-1   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit 1 - Hearing Transcript August 6   2025   Page 51 of 51

50

# C E R T I F I C A T I O N

We, KIM WEBER and KELLI R. PHILBURN, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.


/s/ Kim Weber
KIM WEBER


/s/ Kelli Philburn
KELLI R. PHILBURN

J&J COURT TRANSCRIBERS, INC.        DATE:   August 8, 2025