## Exhibit 2

**Hearing Transcript September 3, 2025**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | . | Case No. 25-16137 (MBK) |
| | . | Chapter 11 |
| POWIN, LLC, ET AL., | . | (Jointly Administered) |
| | . | |
| | . | U.S. Courthouse |
| Debtors. | . | 402 East State Street |
| | . | Trenton, NJ 08608 |
| | . | |
| | . | September 3, 2025 |
| . . . . . . . . . . . . . | . | 11:31 a.m. |


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

| | |
|---|---|
| For the Debtors: | Togut, Segal & Segal LLP<br>By:  FRANK A. OSWALD, ESQ.<br>One Penn Plaza<br>Suite 3335<br>New York, NY 10119 |
| | Dentons US LLP<br>By:  VAN C. DURRER, II, ESQ.<br>1221 Avenue of the Americas<br>Ste. 25th Floor<br>New York, NY 10020 |
| For Leeward Renewable<br>Energy, LLC, Longroad<br>Energy Partners, DTE<br>Electric Company: | Mayer Brown<br>By:  RICHARD A. STIEGLITZ, ESQ.<br>1221 Avenue of the Americas<br>New York, NY 10020-1001 |
| Audio Operator: | Linda Brakel |


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

2

APPEARANCES (Cont'd):

| | |
|---|---|
| For EDF Power Solutions and EsVolta, LLC: | Orrick, Herrington & Sutcliffe LLP<br>By:  LORRAINE McGOWEN, ESQ.<br>51 West 52nd Street<br>New York, NY 10019-6142 |
| For Stem, Inc.: | Greenberg Traurig, LLP<br>By:  ALAN J. BRODY, ESQ.<br>500 Campus Drive, Suite 400<br>Florham Park, NJ 07932 |
| For Lone Star Solar, LLC, et al.: | Vinson & Elkins<br>By:  LAUREN R. KANZER, ESQ.<br>1114 Avenue of the Americas, 32nd Fl.<br>New York, NY  10036 |
| For Honeywell International, Inc.: | Rabinowitz, Lubetkin & Tully, LLC<br>By:  JEFFREY A. COOPER, ESQ.<br>293 Eisenhower Parkway, Suite 100<br>Livingston, NJ 07039 |
| | Adams & Reese<br>By:  SCOTT CHEATHAM, ESQ.<br>Hancock Whitney Center<br>701 Poydras Street, Suite 4500<br>New Orleans, LA 70139-4596 |
| For FlexGen Power Systems LLC: | Latham & Watkins LLP<br>By:  JEFFREY T. MISPAGEL, ESQ.<br>355 South Grand Avenue, Suite 100<br>Los Angeles, CA 90071 |
| For Mainfreight Inc.: | Benesch, Friedlander, Coplan & Aronoff<br>By:  KEVIN CAPUZZI, ESQ.<br>411 Hackensack Avenue, 3rd Floor<br>Suite 801<br>Hackensack, NJ 07601 |
| For Ace Engineering: | Sherman Silverstein<br>By:  ARTHUR ABRAMOWITZ, ESQ.<br>East Gate Corporate Center<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057 |
| For BHER Ravenswood Solar 1, LLC: | Gibson, Dunn & Crutcher LLP<br>By:  JEFFREY C. KRAUSE, ESQ.<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197 |

```
APPEARANCES (Cont'd):

For the Committee:          Brown Rudnick, LLP
                           By:  KENNETH AULET, ESQ.
                           7 Times Square
                           New York, NY 10036

For Expeditors             Bressler, Amery & Ross, P.C.
International of           By:  DAVID H. PIKUS, ESQ.
Washington:                325 Columbia Turnpike
                           Florham Park, NJ 07932

                           Brennan Scungio & Kresge LLP
                           By:  LISA M. KRESGE, ESQ.
                           362 Broadway
                           Providence, RI 02909


                    - - -
```

Case 25-16137-MBK   Doc 1090-2   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit  2 - Hearing Transcript September 3  2025   Page 5 of 35

4

1          THE COURT:  All right.  Good morning.

2          MR. OSWALD:  Good morning, Your Honor.  I think we

3 have a light courtroom today, but, good to see you as always.

4 Frank Oswald, Togut, Segal & Segal, co-counsel for the Powin

5 debtors, here today with my colleagues from Dentons.  We've got

6 one uncontested matter, adjourned matter, which I'll handle

7 before turning over to Mr. Durrer.

8          And that first matter was for an extension of the

9 time to remove pre-petition actions.  A hundred and twenty day

10 extension was requested.  We filed the motion at Docket Number

11 725.  We've viewed that motion with the Committee and the U.S.

12 Trustee.  There were no comments to it.  And yesterday, filed a

13 certificate of no objection at Docket Number 764.

14          Unless Your Honor has any questions, we would ask

15 that that order be entered when the Court gets an opportunity.

16          THE COURT:  All right.  I think I -- the certificate

17 of no objection was Document 823, or was that a different

18 certificate?

19          MR. OSWALD:  The extension?

20          THE COURT:  No objection --

21          MR. OSWALD:  No objection, yeah.

22          THE COURT:  -- with respect to extending debtors'

23 motion -- motion for an entry of an order extending the time

24 when the debtors may remove civil actions.

25          MR. OSWALD:  Yeah.

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 6 of 35

5

1           THE COURT:  All right.  I have it.  Granted.

2           MR. OSWALD:  Thank you, Your Honor.

3           THE COURT:  Thank you.  And let me just note.  Since

4  we do have a number of participants who are appearing remotely

5  or auditing remotely, as usual, if you wish to be heard, please

6  use the raise hand function so we can identify you and call

7  upon you.

8           MR. OSWALD:  With that, Your Honor, we'll turn it

9  over to Mr. Durrer.  I know you had originally on the agenda

10  the ordinary course professionals motion.  We're working

11  through some issues with the U.S. Trustee's Office, so --

12           THE COURT:  Right.

13           MR. OSWALD:  -- we'll want to deal with that at a

14  later time.

15           THE COURT:  And I think that -- yes, that was

16  carried?

17           MR. OSWALD:  Yeah.

18           THE COURT:  Let's make sure I have it.  Carried to

19  September 25.

20           MR. OSWALD:  Thank you, Your Honor.

21           UNIDENTIFIED SPEAKER:  Something to think about.

22           THE COURT:  Oh.  That will help.  They want to see

23  me.  There I am.  All right.  Good morning.

24           MR. DURRER:  Good morning, Your Honor.  Van Durrer,

25  Dentons, on behalf of the debtors.  I'm just here to introduce

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 7 of 35

6

1  the next set of motions, which are a couple of the motions to

2  compel and adequate protection motions regarding Section 365(n)

3  rights.  I believe that there's a bunch of piece that's broken

4  out, but I'll defer to Mr. Stieglitz to start with their

5  motion, which is Number 2 on the agenda, Your Honor.

6          THE COURT:  All right.  Thank you.  Good morning, Mr.

7  Stieglitz.

8          MR. STIEGLITZ:  Good morning, Your Honor.  Richard

9  Stieglitz from Mayer Brown on behalf of the various licensees

10  and customers set forth in our motion to compel.  As we have

11  mentioned over several past status conferences, and I'll take a

12  quick break and again thank Your Honor for those status

13  conferences, both before the past hearing and over the last

14  couple weeks.  They were incredibly helpful in resolving our

15  issues.

16          And I think you may actually be undefeated, because I

17  think some other people are going to come up here and also say

18  they've resolved issues since our last status conference.  But,

19  I, am in no way speaking for them.  As I mentioned before, I

20  only speak for my clients.

21          THE COURT:  Okay.

22          MR. STIEGLITZ:  I will mention that we are prepared

23  to adjourn our motion as we previewed over the status

24  conferences.  I believe there's an omnibus hearing on the 25th.

25  We think it makes sense to move it to that date, both to give

Case 25-16137-MBK   Doc 1090-2   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 8 of 35

7

1 us some time to finalize documentation and also hopefully keep

2 people's feet to the fire to, you know, dot the I's and cross

3 the T's.  I will mention --

4          THE COURT:  Could I just stop you just for a second?

5          MR. STIEGLITZ:  Sure.

6          THE COURT:  Becca, I mean, I'm looking on our 9/25

7 calendar.

8          MR. STIEGLITZ:  I could have messed up the date, Your

9 Honor.

10          THE COURT:  No, no.  That's -- because that's the

11 date I just adjourned a matter to.  I'm just -- I don't -- I

12 want to make sure --

13          LAW CLERK:  I have 11:30.

14          THE COURT:  You have 11:30?

15          LAW CLERK:  For Powin.  And then (indiscernible).

16          THE COURT:  I don't see it on CHAP.  But, all right.

17 We'll work out those details.

18          LAW CLERK:  I don't think we have anything filed that

19 we can link a hearing to yet.

20          THE COURT:  Oh, okay.  All right.

21          LAW CLERK:  I think it's just been reserved.

22          THE COURT:  That's fine.

23          UNIDENTIFIED SPEAKER:  We had thought it was reserved

24 as an omnibus.

25          LAW CLERK:  Yes.  Yeah, but there's --

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 9 of 35

8

1    THE COURT:  For the afternoon?  Oh, at 11:30.

2    LAW CLERK:  11:30 is what we have.

3    THE COURT:  11:30?

4    LAW CLERK:  Is that what we have?

5    THE COURT:  I'll defer to her.

6    MR. STIEGLITZ:  I will defer to both of you.  I'm

7    just glad the date was actually right and I wasn't making up

8    dates.  I've already spoken more than I meant to.  The only

9    thing I'm going to say is, and I sort of previewed this at the

10   status conference, folks who joined our motion are going to

11   come up and make representations.

12       If they start arguing facts or substance, I may come

13   back up, because we have, you know, extensively briefed and

14   prepared for those hearings.  And our arguments aren't

15   necessarily the same.  So, I just reserve my right to come back

16   up if anything potentially contradictory or prejudicial may be

17   said with respect to our client's motion.

18       THE COURT:  Fair enough.  But, as far as your

19   client's motion, we're carrying it to the 25th?

20       MR. STIEGLITZ:  Yes, Your Honor.

21       THE COURT:  All right.

22       MR. STIEGLITZ:  Thank you.

23       THE COURT:  You're welcome.  Thank you.

24       MS. McGOWEN:  Good morning, Your Honor.

25       THE COURT:  Good morning.

1          MS. McGOWEN:  Lorraine McGowen from Orrick,

2   Herrington & Sutcliffe on behalf of EsVolta, LLC and EDF Power

3   Solutions.  Your Honor, we're one of those customers that Mr.

4   Stieglitz mentioned may have reached agreement.  And so we had

5   joined the motion that was filed by Mr. Stieglitz, and we're

6   happy to report that we have reached an agreement that resolves

7   the issues.  We're working on documentation.

8          THE COURT:  I've heard that before.

9          MS. McGOWEN:  And so we do ask that our joinder, as

10  well as the 365(n) rights that was also going to be addressed

11  today be put off to the next omnibus.

12          THE COURT:  All right.  Fair enough.  So, we'll carry

13  that as well.

14          MR. BRODY:  Good morning, Your Honor.

15          THE COURT:  Good morning, Mr. Brody.

16          MR. BRODY:  Alan Brody, Greenberg Traurig, on behalf

17  of Stem, Inc., one of the other customers.  Your Honor, the

18  simple answer is ditto.  But, for purposes of the record, Stem

19  and FlexGen have worked out an agreement principle.  We are

20  memorializing that agreement.

21          Stem had also filed a joinder.  Therefore, for

22  purposes of today, we would simply ask that the joinder be

23  carried along with the other motion, all of the motions with

24  respect to 365(n), so that the parties could finalize and

25  memorialize the agreement.

10

1          THE COURT:  Fair enough.

2          MR. BRODY:  Thank you.

3          THE COURT:  You also are added to the party on the

4    25th.

5          MR. BRODY:  Thank you.

6          MS. KANZER:  Good morning, Your Honor.

7          THE COURT:  Good morning, counsel.

8          MS. KANZER:  Lauren Kanzer of Vinson & Elkins, LLP,

9    on behalf of an Ad Hoc Customer Group that includes Lone Star

10   Solar, Idaho Power, and West Warwick entities.  My clients are

11   licensees of intellectual property, filed a number of pleadings

12   in these cases aimed at insuring that their rights under

13   Section 365(n) are preserved and protected, including the

14   motion for adequate protection that is Agenda Item Number 3.

15         Similar to others, while we -- you heard from

16   customers at the status conferences last week that we lacked

17   clarity on Section 365(n) rights and access to Cloud services,

18   which could leave clients in an untenable position.  My clients

19   share these concerns, but we have made progress with FlexGen

20   regarding the provision of intellectual property.  And we

21   appreciate their efforts over the last few days to get there.

22         We're still subject to documentation, and so

23   similarly, our -- adjourning our motion, I have a slightly

24   different request, which is to adjourn ours to September 15th

25   if the Court has availability.  Similarly, we'd like to keep

11

1  people's feet to the fire, but on a maybe shorter timeline than

2  others.

3          THE COURT:  Let's see.  Well, timing is going to be

4  difficult on the 15th.

5          MS. KANZER:  Okay.

6          THE COURT:  And then, I guess my question becomes, if

7  there are –- if you're the only licensee that I'm hearing from,

8  or presenting the argument to make sense.  But, if I'm –- if

9  I'm adjourning others to the 25th, why would I –- it doesn't

10  make sense to hear it in pieces, which is my concern.

11          MS. KANZER:  Yeah, no.  I understand, Your Honor.

12          THE COURT:  And I understand the goal, you know.

13  Nobody's –- nobody's satisfied we keep pushing it down the

14  road.

15          MS. KANZER:  Right.  And I think the other concern

16  from my clients' perspective is just ensuring that Cloud

17  services are kept on during the time period while our motion is

18  outstanding.  And so, you know, to the extent that we need to

19  come back sooner, I'm happy to reach out to chambers.  That's

20  really the main concern.

21          THE COURT:  Why don't we do this?  Why don't we carry

22  it to the 25th?  If there's a concern during –-

23          MS. KANZER:  Yep.

24          THE COURT:  –- the interim, a disagreement on the

25  continuation of services –-

12

1          MS. KANZER:  Yep.

2          THE COURT:  -- reach out for my chambers, and I can

3   schedule an initial call and then see about scheduling to get

4   on.

5          MS. KANZER:  Yep.

6          THE COURT:  Rather than just putting off on a

7   separate date.

8          MS. KANZER:  That makes sense.

9          THE COURT:  All right.

10         MS. KANZER:  That works, Your Honor.  Thank you.

11         THE COURT:  You're welcome.

12         MS. KANZER:  And then the other thing I just wanted

13  to flag.  At the status conferences last week, Mr. Durrer had

14  noted that customers have raised other issues related to

15  contracts, including the assignment of warranties and

16  guarantees that are related to the agreements that are subject

17  to rejection.

18         These assignments of warranties are important to

19  customers, so that if a component part of one of the batteries

20  isn't working, that the warranty work can be done on behalf of

21  that customer.  Maintaining these warranties, we don't think

22  has any value to the debtors and should be assigned to the

23  customers.

24         We have not been able to get to a final agreement on

25  that assignment, and so we may come back before Your Honor on

13

1  that.  But, I'm hoping that we'll be able to work that out with

2  the debtors.

3          THE COURT:  All right.  I guess my question on that

4  is, does that implicate third parties, those providing

5  services?

6          MS. KANZER:  I think the request is to have an

7  assignment to the extent that it is assignable.  So, to the

8  extent that the warranty agreement that the debtors have with a

9  supplier is assignable, we're asking for that to be assigned to

10 us.

11         THE COURT:  All right.  Then we'll wait --

12         MS. KANZER:  Okay.

13         THE COURT:  -- and we'll see.  Thank you.

14         MS. KANZER:  Thank you, Your Honor.

15         THE COURT:  Thank you, counsel.  Mr. Cooper?  Mr.

16 Durrer --

17         MR. COOPER:  Thank you, Judge.

18         THE COURT:  Good morning, Mr. Cooper.

19         MR. COOPER:  Good morning, Judge.  Jeffrey Cooper,

20 Rabinowitz, Lubetkin & Tully, together with Scott Cheatham at

21 Adams & Reese, representing Honeywell International.  I'm glad

22 I came in the latter part of the group, because I like to join

23 in virtually the different issues that were raised by the other

24 customers, that is, my understanding is that the business

25 people from our client and FlexGen are literally talking as of

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 15 of 35

14

1  now, or at least earlier this morning, and that we would

2  believe that we have an agreement hopefully in principle, but

3  we'd like to use that September 25th date in the event that

4  things don't work out.  Therefore, I think, technically

5  speaking, we have to continue our joinder to the various

6  motions that are outstanding.

7        And although this may open a hornet's nest, given

8  your comments in the last presentation, my understanding is

9  that the services now being provided by FlexGen will continue

10  until the new date.  But, from what Your Honor had just said,

11  apparently if there's a problem with those services, we can

12  contact the Court and deal with that issue.

13        THE COURT:  Whenever I make comments like that, it

14  comes back to bite me.  So, we'll see.

15        MR. COOPER:  And also, the one issue that I do want

16  to raise and I'm glad prior counsel did, has to do with this

17  concept of the assignment of certain warranties and guarantees.

18  Just so Your Honor knows, we were talking with representatives

19  of FlexGen, including the, you know, the technology people,

20  with regard to concepts that I understand to be called

21  performance guarantees or capacity guarantees.

22        And I'm sort of advised by my client that those are

23  separate things.  I'm not quite sure they are.  But, I do think

24  that those are the types of things that prior counsel had

25  mentioned and that we also are interested in having an

15

1 assignment of the debtors' rights in those warranties and

2 guarantees.

3        It's my understanding that -- and I could be

4 incorrect, that the debtor has actually paid for these things

5 already.  And if the debtor doesn't need them and they can be

6 assigned as part of the transaction, we're looking to do that.

7 When I spoke briefly with the FlexGen people, they suggested

8 that the guarantee issue was really a Powin issue.  I mentioned

9 it to Mr. Durrer, and we can talk more about that as well.

10 But, I just wanted to put that on the record.

11        THE COURT:  Fair enough.  All right.  Thank you.

12        MR. COOPER:  Thank you, Judge.

13        MR. MISPAGEL:  Good morning, Your Honor.  Jeff

14 Mispagel from Latham & Watkins on behalf of FlexGen, the

15 purchaser of certain of the debtors' assets, including the

16 debtors' intellectual property.  I am formerly the debtors' DIP

17 lender.  Your Honor, I don't have a lot to say fortunately.  I

18 think that's good news for everyone.  I will say first that,

19 with us in the court, is Flex Gen's chief technology officer,

20 Hugh Scott.

21        We heard Your Honor last week.  You wanted decision

22 makers here.  You wanted people to reach agreements.

23 Fortunately, we've made enough progress over the past few days

24 that, you know, I don't think we need to spend a lot of time in

25 your courtroom or in the hallway working things out.  Because I

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 17 of 35

16

1  think, as you've heard from a lot of the customers, we think we

2  have agreements in principle.

3          The only other thing I'll add is, I guess, thinking

4  Your Honor, I would propose the same solution in terms of

5  services between now and when the hearing is adjourned to the

6  25th, that we don't expect any issues with any of these

7  customers.  If there are any issues, they're welcome to come

8  back to the Court.  And we think that's all that needs to be

9  said on that point.  And that's all -- that's all I have, Your

10  Honor.

11          THE COURT:  All right.

12          MR. MISPAGEL:  Thank you.

13          THE COURT:  Well, thank you.  I appreciate it.  All

14  right.  Any others?  Let me just check remotely.  Any --

15  anybody wish to be heard who's appearing remotely?

16                  (No audible response)

17          THE COURT:  Mr. Durrer?

18          MR. DURRER:  Thank you, Your Honor.  So, that

19  actually addresses Items 2 and 3 on the agenda.  Three was Ms.

20  Kanzer's motion.  And then the next couple of items are stay

21  relief motions and related matters, the first being 4 and 5,

22  which are Mainfreight, so I'll defer to Mr. Capuzzi.

23          MR. CAPUZZI:  Good morning, Your Honor.

24          THE COURT:  Good morning.

25          MR. CAPUZZI:  For the record, Kevin Capuzzi, Benesch,

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 18 of 35

17

1  Friedlander, Coplan & Aronoff, counsel for the Mainfreight

2  entities.  Your Honor, we are at Items 4 and 5 on the agenda.

3  With respect to Item Number 4, that's Docket 180, this is

4  Mainfreight's motion to confirm that the automatic stay is not

5  in effect with respect to certain goods that were transferred

6  from the debtors to an entity that we refer to as BHER,

7  B-H-E-R, prior to the petition date.

8       Your Honor, I'm happy to report that that motion is

9  uncontested, subject to a couple of reservation of rights that

10 I'll put on the record, and then invite the debtors or BHER to

11 make any confirmations or clarifications.

12       So, Your Honor, just briefly as background, I think

13 you recall, but Mainfreight was a transportation provider and

14 warehouse meant for the debtors.  It was holding certain goods

15 as of the petition date.  Those are classified into two sets.

16 One set of goods were owned by the debtors.  They were subject

17 to our credit bid a couple weeks ago, and are now owned by

18 Mainfreight.  The other set of goods are what we refer to as

19 the BHER goods.  Those are the goods that are subject to the

20 motion.  Those are still being held by Mainfreight at a lay-

21 down facility in West Virginia, and remain subject to

22 Mainfreight's lien.

23       The motion sought primarily two things.  One, a

24 declaration that the stay doesn't apply to those goods, because

25 title was transferred pre-petition to BHER.  And, two, that

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 19 of 35

18

1  because the stay doesn't apply, Mainfreight can enforce its

2  contractual and statutory lien rights.

3      So, as I noted, the motion is uncontested.  However,

4  the debtors and BHER reserve all rights as to the commercial

5  reasonableness of any sale or disposition of those assets that

6  Mainfreight undertakes.  For example, the amount and scope of

7  the notice that we're going to send out before we undertake a

8  sale of those goods.

9      So, with that reservation that all party's rights as

10  to commercial reasonableness, including Mainfreight's, to argue

11  that it is commercially reasonable, I would ask Your Honor to

12  enter the order in the form that we submitted at Docket Number

13  180, subject to any comments anyone else wants to make.

14      THE COURT:  So, nothing else is going in the order?

15      MR. CAPUZZI:  Nothing else is going in the order.

16      THE COURT:  I don't recall the language of the order.

17  Was it -- was it a blanket, the automatic stay doesn't apply?

18  Or is it more refined, automatic stay under 363(a)(3)?

19      MR. CAPUZZI:  I can grab the order and we can check.

20      THE COURT:  And do you have a preference?  I don't

21  want somebody coming down the road on another case to make an

22  argument there was an issue whether 362(a)(6) would apply.

23      MR. CAPUZZI:  Right.

24      THE COURT:  I'm trying to leave it so it doesn't get

25  shoved back in front of me.

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 20 of 35

19

1          MR. CAPUZZI:  I believe --

2          THE COURT:  You can --

3          MR. CAPUZZI:  -- the order as drafted, just referred

4  to the automatic stay without a particular subset.  So, I would

5  like it to remain that way, if the Court's okay with that.

6          THE COURT:  All right.  Let me take a look at it.

7          MR. CAPUZZI:  Okay.

8          THE COURT:  If I have an issue, I'll reach out.

9          MR. CAPUZZI:  All right.  And I could also take a

10  look at it while we wrap up the other things.

11          THE COURT:  Thank you.

12          MR. CAPUZZI:  So, I'll cede the podium to BHER and to

13  the debtors, and then I'll come back up with respect to Item

14  Number 5.

15          THE COURT:  All right.  For BHER, come up.  Mr.

16  Abramowitz, good morning.

17          MR. ABRAMOWITZ:  Good morning, Your Honor.  Arthur

18  Abramowitz of Sherman Silverstein representing Ace Engineering.

19  Your Honor, Ace Engineering is withdrawing its limited

20  objection without prejudice with regard to reclamation rights

21  and its right to pursue an administrative claim.

22          Counsel for Ace and the debtor have agreed to engage

23  in limited discovery, after which time Ace will make a

24  determination as to what it believes would be appropriate for a

25  course of action.  Thank you.

Case 25-16137-MBK   Doc 1090-2   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit  2 - Hearing Transcript September 3   2025   Page 21 of 35

20

1    THE COURT:  Fair enough.  Thank you, Mr. Abramowitz.

2  Mr. Krause, good morning.

3    MR. KRAUSE:  Good morning, Your Honor.  Jeffrey

4  Krause of Gibson, Dunn & Crutcher on behalf of BHER Ravenswood,

5  the entity that Mr. Capuzzi refers to as BHER.  Your Honor, my

6  understanding is that the agreement that was reached addresses

7  both motions, so I'm not really sure why we're dealing with

8  Item 4 and not Item 5.  Our agreement was that we would not

9  contest them proceeding with a sale, so long as we reserve our

10  rights on commercial reasonableness.

11    We have filed pleadings at 286 and 621 that we think

12  demonstrate the stay does apply, but we're not objecting to

13  them having relief from the stay or that they should have to

14  file a separate motion for relief.  The parties tried to use

15  the time we've had over the last couple of months to reach an

16  agreement.  Unfortunately, that has not yet happened.  We hope

17  that during the marketing period it may still be possible to

18  have constructive discussions and to reach an agreement, but

19  we're not there yet.

20    And we recognize that the fact that Mainfreight has

21  bought the other goods in their possession, so there's no

22  longer cross collateralization of the debtors' other assets

23  obviates the need for this Court to deal with the dispute,

24  which is now essentially a dispute between Mainfreight and

25  BHER.

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 22 of 35

21

1          Item 5 is a request that BHER be compelled to pay

2    storage costs with respect to the goods that Mainfreight is now

3    going to conduct a foreclosure sale for.  And our understanding

4    of the discussions among counsel was that our consent to the

5    right to foreclose, whether that's because the stay is being

6    lifted or the Court is determining the stay did not apply, was

7    a global resolution.

8          And that the storage charges that we do not think we

9    are obligated to pay, they may be part of the lien and that

10   Mainfreight can credit bid them in at the foreclosure, are what

11   the next motion deals with.  And our understanding was it was a

12   package agreement that we are not obligated to pay those.  They

13   can add them to their debt.  They can conduct a foreclosure

14   sale.  So, I'm not a hundred percent sure why they've been

15   broken out separately today.

16          THE COURT:  All right.  Well, before I turn to Mr.

17   Aulet, Mr. Capuzzi, you want to address that?

18          MR. CAPUZZI:  Yes, Your Honor.  With respect to Item

19   Number 5, there was no agreement that that was wrapped in to

20   Item Number 4.  With that said, I understand Your Honor has not

21   yet entered the order shortening notice.  I am more than happy

22   to carry that to the September 25th hearing and see if we can

23   come to ground on that between now and September 25th.  But,

24   it's apples and oranges.

25          In June, we were before you.  BHER and the debtors

22

1   requested an adjournment.  And one of the terms of that

2   adjournment was that BHER would pay storage.  Their argument

3   now that that's only conditioned upon them becoming the

4   eventual owner of the goods is found nowhere in the record.

5   So, I'm not willing to merge those two issues.  But, I am

6   willing to put off Item Number 5 to September 25th so that we

7   can, you know, brief that on regular notice rather than on the

8   shortened notice.

9           THE COURT:  All right.  Clearly, I'm not hearing that

10  motion today.  Mr. Krause, your thoughts?

11          MR. KRAUSE:  Your Honor, I would just state that the

12  comments made about what the record shows are entirely

13  inaccurate and there is no commitment by BHER in the record to

14  pay storage charges for batteries it does not receive.  But, we

15  can address that on September 25th.  So, I don't object to that

16  being put over to normal notice.  But, it is not what the

17  record shows.

18          THE COURT:  Fair enough.  Everybody's made their

19  statements.  Why don't we carry it to the 25th?  But, that does

20  not impact -- well, you tell me, I guess, Motion Number 4, as

21  far as entry of the order --

22          MR. CAPUZZI:  It doesn't impact it --

23          THE COURT:  -- and the process.

24          MR. CAPUZZI:  -- from my perspective.  But, if Mr.

25  Krause disagrees.

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 24 of 35

23

1          THE COURT:  Mr. Krause?

2          MR. KRAUSE:  It does not.

3          THE COURT:  All right.  Then -- then I can still go

4     ahead and enter that order.

5          MR. CAPUZZI:  And, Your Honor, I grabbed a copy of

6     the proposed order while others were speaking.  I'm happy to

7     hand it up.  But, it simply states that the automatic stay does

8     not apply.  So, it doesn't get into any reference as to the

9     stay being lifted and under what section.

10          THE COURT:  All right.  We'll let it go.

11          MR. CAPUZZI:  Thank you.

12          THE COURT:  Thank you.  Mr. Aulet, do you wish to be

13     heard?

14          MR. AULET:  Yes, Your Honor.  For the record, Kenneth

15     Aulet, Brown Rudnick, for the Committee.  I just wanted to

16     confirm that the Committee is in agreement and withdraws its

17     joinder that it filed back on the 14th, given the resolution of

18     this matter.

19          THE COURT:  Great.  I appreciate that.  Thank you,

20     Mr. Aulet.  All right.  So, we have taken care of then 4 and 5

21     on today's agenda.

22          MR. DURRER:  Yeah, just for the record, Your Honor,

23     Van Durrer for the debtors.  On Item 4, our main issue is that

24     Your Honor's not making a determination of property rights

25     today, just that the stay doesn't apply.  Mainfreight's going

24

1  to do what it believes is appropriate.  There's been a

2  reservation of rights.  And we think Section 108(b) is

3  implicated, but ideally we'll still have a deal, and that's

4  definitely, I know, what is in Mr. Krause's mind and Mr.

5  Capuzzi's mind, so, it's in my mind, too.

6          THE COURT:  All right.  Thank you.

7          MR. DURRER:  So, that takes us to Item 6, which is

8  the Expeditors' motion for stay relief, Your Honor.

9          THE COURT:  Thank you.  Let me hear from counsel.

10          MR. PIKUS:  Good morning or -- yes, still good

11  morning, Your Honor.  David Pikus, P-i-k-u-s of Bressler, Amery

12  & Ross, P.C., representing the creditor, Expeditors

13  International of Washington.

14          THE COURT:  All right.  Thank you.  Good morning.

15  Other appearances?

16          MS. KRESGE:  Lisa Kresge.  I'm co-counsel with Dave

17  Pikus on this matter as well.

18          THE COURT:  All right.  Thank you.  And I guess in

19  opposition will be debtor arguing?

20          MR. DURRER:  Yes, Your Honor.

21          THE COURT:  Okay.  Thank you.  Then, Mr. Pikus, you

22  want to proceed, or counsel proceed?  I have read the motion.

23  Anything you wish to supplement or add?

24          MR. PIKUS:  May it please the Court, Your Honor.

25  Thank you for hearing us on short notice.  The one thing that I

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 26 of 35

25

1  do want to emphasize is that every constituency in this case

2  benefits by getting these goods away from the port, liquidated,

3  whatever has to be done.  Because the storage charges are

4  increasing at the rate of $4,290 a day.  That's a couple of

5  hundred less than what's in the papers, because of currency

6  fluctuations.

7         There are duties due.  It will be an administrative

8  nightmare for everybody if we have to reconcile everything

9  before the goods are moved out of the port.  And these goods

10 have not cleared Customs yet, and they can't clear Customs

11 until either they're properly abandoned or the duties are paid.

12 And the duties now are $184,000.

13         So, I want to stress that everybody benefits and

14 we've been trying to work this out since June.  So, we submit

15 that the debtor has had more than ample time, along with its

16 customers, to try to get this stuff worked out.  And as we

17 understand it, most of these goods are dedicated to ongoing

18 projects.  So, it shouldn't be all that difficult to get the

19 customers to cooperate with it.  And if not, we'll liquidate

20 them to stop the bleeding here, which is running $32,000 a

21 week.

22         I'll just quickly note the two points that have been

23 made in objection by the debtor.  One, apparently, is a claim

24 that Expeditors is over secured.  If this goes on for another

25 several days, Expeditors is going to go from over to under

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 27 of 35

26

1  secured and we're going to have problems with the duties and

2  other things getting paid.  So, that's the quick answer to

3  that.  We've got to staunch the bleeding.

4         And then the second point, I think I've already

5  addressed to some degree.  And that's that the debtor wants

6  some additional time to try to work this out.  As I mentioned

7  earlier, you know, we've been after them for two to three

8  months now to try to work something out.  And, Expeditors, this

9  is not our first rodeo in terms of goods that are stuck on the

10 dock.  We're pretty good at disposing of these goods if

11 necessary.  And we're prepared to do so.

12        And the cost of delaying this to the next hearing

13 date is almost $100,000.  And at that point, what's owed for

14 storage charges and duties will probably exceed the value of

15 the goods.

16        THE COURT:  So, when you indicated that the cargo is

17 valued at six eighty-six, what was that bottomed on?

18        MR. PIKUS:  Those are the commercial invoice numbers,

19 Your Honor, that we get from the manufacturer of the goods and

20 from the consignee of the goods, which in this case is the

21 debtor.  That's the agreed value of the goods.  That's what's

22 submitted to Customs.  That number also may change a little bit

23 due to currency fluctuations.

24        I've seen a more current number of $659,000.  But,

25 there's no question about it.  We're talking about goods that

27

1   are valued right now in excess of $600,000, and representations

2   have been made to the United States Customs and Border Patrol

3   to that effect.  So, these are numbers submitted under penalty

4   of perjury.

5             THE COURT:  And from that number, a hundred and

6   eighty-four thousand or so in duties would have to come off the

7   top?

8             MR. PIKUS:  Yeah.  There -- I can break down what's

9   owed right now, which is over half a million dollars without

10  even including what's owed to Expeditors.  We've got $54,235

11  that are due on collect freight charges.  We've got the duties,

12  which as of a couple of days ago, were at $184,867.50.  There

13  were entry fees of $250 that are due.

14            And finally, the big number is the demurrage, that's

15  basically logistics talk for storage charges and delay charges.

16  Those are $266,260.  That made the total as of August 30th,

17  $505,612.50.  And as I indicated, that's gone up by $4,290 a

18  day for the past three or four days.  So, we're probably

19  approaching $520,000 right now.

20            THE COURT:  All right.  Thank you.  Let me hear from

21  debtor's counsel.

22            MR. PIKUS:  Thank you, Your Honor.

23            MR. DURRER:  Thank you, Your Honor.  Van Durrer for

24  the debtors.  Our view, given the fact that Your Honor

25  shortened the time, which, you know, was fine.  We're all here.

28

1  We viewed this sort of as a status conference with respect to

2  stay relief, you know, pending a final evidentiary hearing.  We

3  noted that the Expeditors' filing was a bit lax in terms of the

4  documentation.  For example, what Your Honor's referred to,

5  like, having those bills of lading with the actual numbers on

6  them would be super helpful, having the invoices.

7      Our view is that notwithstanding Mr. Pikus' remarks,

8  that Expeditors remains over secured, because most of what it's

9  owed would constitute most likely administrative claims.  The

10 debtors' estates are administratively solvent.  And we have

11 actually been making payments to Expeditors in connection with

12 the FlexGen sale.  We did pay some of their invoices.  Modest,

13 I'll admit.  But, there is a flow of payment.

14      The issue -- the primary issue that the debtors are

15 concerned about, Your Honor, is, and this is very similar to

16 Mainfreight in that, if this was just one customer's goods,

17 that will be one thing.  But, we have multiple customer's

18 goods.  Those customers, we believe will be responsible for the

19 storage, tariffs, some of the Customs charges.  We need to find

20 out if they want them.

21      The one factual correction I would make to something

22 that Mr. Pikus said is, you know, the debtors are not in the

23 business of completing these projects anymore.  And nor is

24 FlexGen.  I think that FlexGen is cooperating with customers to

25 the greatest extent possible, as are the debtors.  But,

1  effectively, that business was shut down as we entered Chapter

2  11.

3          So, there are customers that still want their stuff.

4  There are customers that are figuring out if they do.  And

5  there's a process that we're engaged in.  We've been a little

6  busy up to now.  We're somewhat sympathetic to the time that

7  has passed.  But as Your Honor is very aware, there's been a

8  lot of activity filling that space.  We haven't had idle hands.

9          So, our suggestion in the papers was just to grant a

10 60-day stay of execution while we continue to work the problem.

11 As I said, I believe there's ample, adequate protection around

12 the system for Expeditors, notwithstanding that delay.  We have

13 hearings already set up, late September, late October, and I

14 think the first couple weeks in November.  So, we should be

15 able to agree on a date when we can come back, if we're not

16 able to work this out, that Expeditors would then have stay

17 relief.

18         THE COURT:  All right.  When I look at these numbers,

19 and I appreciate the effort of the debtor, and probably the

20 Committee, to get a global resolution with all of its

21 customers.  When I look at these numbers, there's not a lot of

22 room at $4,000 a day.  Sixty days out is just -- turns it

23 upside down.  If I carry this to the 25th, that adds another

24 hundred thousand, ninety-two -- my numbers, roughly ninety-two

25 thousand or so.

Case 25-16137-MBK   Doc 1090-2   Filed 11/20/25   Entered 11/20/25 19:54:09   Desc
Exhibit  2 - Hearing Transcript September 3   2025   Page 31 of 35

30

1    At that point, I mean, it would seem logical, if the

2 estate is trying to secure any benefit from these assets, that

3 somebody just comes up with a small number in between and

4 satisfy the estate to release its interest in this.  I don't

5 need to tell you how to do this.  We all in this room know how

6 to do this.  It can't go that far.

7    I'll carry this to the 25th date.  Mr. Pikus, I'll

8 come back in a second to you.  I see your hand.  That's the

9 outside limit where this makes any sense.  And hopefully not

10 even -- and hopefully there could be a resolution before that.

11 Because it just -- the dollars, it's too small a gap to afford

12 any more time in this.  Mr. Pikus?

13    MR. PIKUS:  Thank you, Your Honor.  Two points.  One,

14 I'd like to make a suggestion that if the estate is

15 administratively solvent, as we just heard it is, what they

16 should really do in the meantime is pay the duty and pay the

17 demurrage so that we can move these things off the dock.

18 That's really what's costing the money, is that they're sitting

19 there on the dock.

20    You know, I get the sense from the Mainfreight cases

21 that Your Honor knows something about the freight business at

22 this point.  But, the most expensive place to leave these goods

23 is sitting there on the dock.  If they can be moved off and

24 placed in a warehouse somewhere, that will staunch the

25 demurrage charges and we'll get the duties paid so that

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 32 of 35

31

1  Expeditors or some other substitute can clear the Customs, so

2  that the goods can be dealt with right away.  These goods can't

3  clear Customs until the duties are paid.  So, that's one

4  reaction I had.

5           Second reaction I had is, you know, given the fact

6  that it's almost another $100,000 to wait until the 25th, I

7  might fall back on a suggestion that Your Honor grant the

8  relief today, but to stay it for a period of time, maybe three,

9  five days, so that we could move up the ladder of the debtors'

10  priorities and get this worked out and get the goods off the

11  dock.

12           THE COURT:  Let me go back to Mr. Durrer, and I don't

13  know if you can answer this.  And I'd want to hear from Mr.

14  Aulet.  I have a hearing on the 25th.  This doesn't require a

15  hearing.  This requires action, a business decision.  I don't

16  need a further legal argument.  What would be -- so I think

17  everybody's interest, what's a reasonable amount of time to try

18  to address this issue from a business perspective?

19           And then, if otherwise, just -- I would take up Mr.

20  Pikus' and say stay relief granted effective a certain date.

21  It doesn't -- I mean, the 25th is three weeks.  That is a

22  hundred grand.  Is there a date in between where the debtor and

23  the Committee and others could commit to somehow reaching a

24  resolution one way or the other or giving up the ship, so to

25  speak?

32

1          MR. DURRER:  Yeah.  Your Honor, if this just involved

2    the debtor, the Committee, and Expeditors, I would be a

3    thousand percent in agreement with that.  It doesn't.  It

4    involves, you know, a half a dozen customers.  And the problem

5    is, we don't -- we don't have a warehouse.  We sold our

6    warehouse.  So, we're a little constrained.

7          I can tell Your Honor and Your Honor won't be

8    surprised to learn that since the filing of the motion, there's

9    been quite a bit of activity at the business level.  So, people

10   are engaged, like Your Honor's suggestion of adjourning this to

11   the 25th.  And if we work it out in advance of that, terrific.

12   But, I think that's the best that we could do at this stage,

13   Your Honor.

14         And I suspect that Mr. Aulet has a similar comment to

15   make, because he wants to get his arms around this, too.

16   Because what we're really nervous about, frankly, Your Honor,

17   is exposing the estate unnecessarily to tariffs for stuff that

18   nobody wants.

19         THE COURT:  Right.

20         MR. DURRER:  So, that's -- I'm sympathetic to Mr.

21   Pikus' comments in that regard.  But, there is a universe where

22   some of this stuff gets abandoned because nobody wants to pay

23   the tariffs.  So, I just -- we haven't sorted that out with

24   every single customer that we have to talk to.

25         THE COURT:  All right.  Thank you, Mr. Durrer.  Mr.

Case 25-16137-MBK    Doc 1090-2    Filed 11/20/25    Entered 11/20/25 19:54:09    Desc
Exhibit  2 - Hearing Transcript September 3   2025    Page 34 of 35

33

1  Aulet?

2          MR. AULET:  Yes, Your Honor.  For the record, Kenneth

3  Aulet, again, for the Committee.  I agree with Mr. Van Durrer

4  that -- I appreciate where Mr. Pikus' client is at.  But, this

5  has been a very busy case with a lot of moving parts.  And

6  unfortunately the amount of money at issue here just wasn't as

7  much as the amount of money at issue in everything that we've

8  been dealing with up to now.

9          If it's, you know, all of the figures that he's cited

10  suggest that it would be, you know, useful for the debtors and

11  the Committee to get this done quickly.  And so I agree with

12  the suggestion of setting this for the 25th.  I don't agree

13  with the sort of blanket grant of a stay relief predicated on a

14  particular date without the chance for the debtors and the

15  Committee to really get their arms around this issue.

16          THE COURT:  All right.  Thank you, Mr. Aulet.  I

17  can't see any scenario where I would let it go past the 25th.

18  So, Mr. Pikus, it's not what you're looking for, but it's

19  somewhere in between.  I'll grant stay relief effective on the

20  25th, absent further order of the Court.  Which doesn't mean

21  that if you don't reach an accord before that, I'll enter an

22  order earlier and we can get it going.  But, at least we know

23  there's an ending in sight.  All right?

24          MR. PIKUS:  Thank you very much, Your Honor.

25          THE COURT:  Mr. Pikus, why don't you submit a form a

34

1  order?

2          MR. PIKUS:  We will do that.  Thank you again.

3          THE COURT:  All right.  Thank you.

4          MR. PIKUS:  Bye now.

5          THE COURT:  Take care.  I think that concludes?

6          MR. DURRER:  Other than, thanks again, Your Honor,

7  and especially chambers was super helpful since August 6th.  We

8  actually got a lot done through those host of chambers

9  conferences.  So, thank you, Your Honor.

10          THE COURT:  You're welcome.  All right.  No raised

11  hands online.  Then we will mark the -- we'll adjourn.  Thanks,

12  folks.

13          MR. DURRER:  Thank you, Your Honor.

14          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

15          THE COURT:  Take care.

16                              * * * * *

17                    **C E R T I F I C A T I O N**

18          I, KIM WEBER, court approved transcriber, certify

19  that the foregoing is a correct transcript from the official

20  electronic sound recording of the proceedings in the above-

21  entitled matter, and to the best of my ability.

22

23  /s/ Kim Weber                

24  KIM WEBER

25  J&J COURT TRANSCRIBERS, INC.      DATE:  September 8, 2025