**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street
Suite 2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
           van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
           sarah.schrag@dentons.com

*Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
           aglaubach@teamtogut.com
           eblander@teamtogut.com

*Counsel for Debtors and
Debtors in Possession*

**BROWN RUDNICK LLP**

Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Jeffrey L. Jonas, Esq.
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4924
Facsimile:  (212) 938-2924
Email:  rstark@brownrudnick.com
           kaulet@brownrudnick.com
           bsilverberg@brownrudnick.com
           jjonas@brownrudnick.com

*Counsel for the Official Committee of Unsecured
Creditors*

**GENOVA BURNS LLC**

Daniel M. Stolz (admitted)
Donald W. Clarke (admitted)
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone:  (973) 533-0777
Facsimile:  (973) 814-4045
Email:  dstolz@genovaburns.com
           dclarke@genovaburns.com

*Counsel for the Official Committee of Unsecured
Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**PLAN PROPONENTS' JOINT (I) MEMORANDUM OF LAW IN SUPPORT OF (A) FINAL APPROVAL OF THE DISCLOSURES MADE IN THE JOINT COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF POWIN, LLC AND AFFILIATES THEREOF AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; (B) CONFIRMATION OF CHAPTER 11 PLAN; AND (II) OMNIBUS REPLY TO OBJECTIONS THERETO**

---

[1] The name of Debtor Powin, LLC has changed to BESS RemainCo. The Debtors intend to file a motion to amend the caption in these chapter 11 cases. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................... 2

STATEMENT OF FACTS ................................................................................. 3

ARGUMENT ...................................................................................................... 4

I.    THE DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" AS REQUIRED BY § 1125, AND THE PLAN PROPONENTS COMPLIED WITH APPLICABLE NOTICE REQUIREMENTS. ......................................................... 4

  A.    The Disclosure Statement Contains Adequate Information. ..................... 4

  B.    The Plan Proponents Complied With The Applicable Notice And Solicitation Requirements. ......................................................................................... 6

  C.    Solicitation of the Plan Complied With The Bankruptcy Code And Was In Good Faith. ......................................................................................................... 7

II.   THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS SET FORTH IN § 1129 ....................................................................................................... 7

  A.    The Plan Complies with the Applicable Provisions of § 1129(a)(1). ........................ 8

    1.    The Plan Complies with the Requirements of § 1122. ............................. 8

    2.    The Plan Complies with the Requirements of § 1123(a). .......................... 10

    3.    Section 1123(a)(1): Designation of Classes of Claims and Interests ................. 10

    4.    Section 1123(a)(2): Classes That Are Not Impaired by the Plan ...................... 10

    5.    Section 1123(a)(3): Treatment of Classes That Are Impaired by the Plan ....... 10

    6.    Section 1123(a)(4): Equal Treatment Within Each Class ................................. 11

    7.    Section 1123(a)(5): Adequate Means for Implementation ................................. 11

    8.    Section 1123(a)(6): Prohibitions on Issuance of Non-Voting Securities ............ 12

    9.    Section 1123(a)(7): Provisions Regarding Directors and Officers ..................... 12

    10.    The Plan Complies with the Requirements of § 1123(b). ................................ 12

    11.    Section 1123(d) and Bankruptcy Rule 3016(a) ................................................ 13

  B.    The Plan Proponents have Complied with § 1129(a)(2). ............................. 13

    1.    The Plan Proponents Have Complied with § 1125. ................................. 14

    2.    The Plan Proponents Have Complied with § 1126. ................................. 15

    3.    Section 1129(a)(3): The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law. ............................................................................ 16

i

4.    **Section 1129(a)(4): The Plan Provides that Professional Fees and Expenses are Subject to Court Approval.** ............................................................................ 17

5.    **Section 1129(a)(5): The Debtors Have Disclosed All Necessary Information Regarding Directors and Officers.** ................................................................... 17

6.    **Section 1129(a)(6): The Plan Does Not Contain Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission.** ................................. 18

7.    **Section 1129(a)(7): The Plan Is in the Best Interest of Creditors.** ...................... 18

8.    **Section 1129(a)(8): Not All Impaired Classes Have Accepted the Plan.** ............ 20

9.    **Section 1129(a)(9): The Plan Provides for Payment in Full of All Allowed Administrative Claims, Priority Claims, Priority Tax Claims, and Professional Fee Claims.** ................................................................................................................ 21

10.    **Section 1129(a)(10): At Least One Impaired Class of Claims has Accepted the Plan.** ................................................................................................................ 23

11.    **Section 1129(a)(11): The Plan is Feasible.** ......................................................... 23

12.    **Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid.** ............... 25

13.    **Sections 1129(a)(13) Through 1129(a)(16) Do Not Apply to the Plan.** ............ 25

14.    **The Plan Satisfies the "Cram Down" Requirements of § 1129(b).** .................. 25

15.    **Executory Contracts** ............................................................................................ 29

16.    **The Plan Releases, Exculpations, And Injunctions Are Appropriate And Consistent With Established Precedent.** ................................................................... 30

17.    **Consensual Third-Party Releases** ....................................................................... 34

18.    **Modifications of the Plan Do Not Adversely Change the Treatment of Any Creditor or Equity Interest Holder.** ....................................................................... 38

19.    **Waiver of Bankruptcy Rules Regarding Stay of Confirmation Order** .......... 39

**REPLY TO OBJECTIONS TO CONFIRMATION** ................................................................. 39

A.    **The U.S. Trustee's Objection Should be Overruled.** ........................................... 39

1.    **The Third-Party Release is Consensual, Permissible, and Appropriate, and the Bankruptcy Court has Jurisdiction to Approve the Third-Party Release.** ............... 39

B.    **Reply to Purchaser Objection** .............................................................................. 52

C.    **Reply to Customers' Objection** ............................................................................ 52

D.    **Reply to CS Energy Objection** ............................................................................. 53

E.    **DTE Objection** ...................................................................................................... 54

F.    **Surety Objection** ................................................................................................... 56

**CONCLUSION** ................................................................................................................... **56**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 710 Long Ridge Road Op. Co., II, LLC*,
　No. 13-13653, 2014 WL 886433 (Bankr. D. N.J. Mar. 5, 2014)................................32, 34, 45

*Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Court N.Y., N.Y. (In re Chateaugay
　Corp.)*,
　89 F.3d 942 (2d Cir. 1996)......................................................................................8

*In re Alex & Ani, LLC*,
　No. 21-10918 (CTG) (Bankr. D. Del. Sept. 22, 2021) ....................................................37, 40

*In re Armstrong World Indus., Inc.*,
　432 F.3d 507 (3d Cir. 2005)....................................................................................26

*In re Arsenal Intermediate Holdings, LLC*,
　No. 23-10097 (CTG), 2023 WL 2655592 (Bankr. D. Del. Mar. 27, 2023)............................35

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
　526 U.S. 434 (1999)...........................................................................................18, 28

*In re Barney & Carey Co.*,
　170 B.R. 17 (Bankr. D. Mass 1994) ........................................................................26

*In re Bed Bath & Beyond Inc.*,
　No. 23-13359-VFP (MBK) (Bankr. D.N.J. Sept. 14, 2023)........................................... *passim*

*In re Blackhawk Mining LLC*,
　No. 19-11595 (LSS) (Bankr. D. Del. Aug. 29, 2019)...........................................................46

*In re Blockfi Inc.*,
　No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023)....................................................40, 42, 46

*In re Burns & Roe Enters., Inc.*,
　Case No. 08-4191 (GEB), 2009 WL 438694 (D.N.J. Feb. 23, 2009)....................................38

*In re Buttonwood Partners, Ltd.*,
　111 B.R. 57 (Bankr. S.D.N.Y. 1990)....................................................................27

*In re Careismatic Brands, LLC*,
　No. 24-10561 (VFP) (Bankr. D.N.J. May 31, 2024)...........................................................46

*In re Carestream Health, Inc.*,
　No. 23-10778 (JKS) (Bankr. D. Del. Sept. 28, 2022).....................................................36, 40

i

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
   860 F.2d 94 (3d Cir. 1988)...........................................................................................4

*In re Checkout Holding Corp.*,
   No. 18-12794 (KG) (Bankr. D. Del. Jan. 31, 2019) ................................................46

*In re Cineworld Group PLC*,
   No. 22-90168 (MI) (Bankr. S.D. Tex. June 28, 2023)......................................37, 41

*In re Ctr. For Autism & Related Disorders, LLC*,
   No. 23-90709 (DRJ) (Bankr. S.D. Tex. July 28, 2023) ...................................37, 41

*In re Cyxtera Techs.*,
   No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023) ......................................36, 40

*In re Dura Auto. Sys., Inc.*,
   379 B.R. 257 (Bankr. D. Del. 2007) ........................................................................26

*In re Extraction Oil & Gas, Inc.*,
   No. 20-11548 (CSS) (Bankr. D. Del. Dec. 23, 2020)..............................................41

*First Fid. Bank v. McAteer*,
   985 F.2d 114 (3d Cir. 1993)......................................................................................35

*In re Global Safety Textiles Holdings LLC*,
   Case No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009).....................38

*Harrington v. Purdue Pharma L.P.*,
   603 U.S. 204 (2024)..................................................................................................54

*In re Horsehead Holding Corp.*,
   No. 16-10287 (CSS) (Bankr. D. Del. Sep. 9, 2016) ................................................47

*In re Indianapolis Downs*,
   486 B.R. .....................................................................................................................35

*In re Indianapolis Downs, LLC*,
   486 B.R. 286 (Bankr. D. Del. 2013) ...........................................................33, 35, 43

*In re Jersey City Med. Ctr.*,
   817 F.2d 1055 (3d Cir. 1987)......................................................................................8

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986)...........................................................8, 14, 27

*In re Johns-Manville (Manville I)*,
   837 F.2d 89 (2d Cir. 1988).........................................................................................31

*Kirk v. Texaco, Inc.*,
  82 B.R. 678 (S.D.N.Y. 1988)................................................................................5

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003)................................................................................4

*In re Lambertson Truex, LLC*,
  No. 09-10747, 2009 Bankr. LEXIS 4812 (Bankr. D. Del. July 27, 2009) ............................49

*In re Lannett Co., Inc.*,
  No. 23-10559 (JKS) (Bankr. D. Del. June 8, 2023)........................................................36, 40

*In re Lernout & Hauspie Speech Prods., N.V.*,
  301 B.R. 651 (D. Del. 2003)................................................................................26, 27

*In re Lisanti Foods, Inc.*,
  329 B.R. 491 (Bankr. D. N.J. 2005) ......................................................................4, 17

*In re Mallinckrodt PLC*,
  639 B.R. 837 (Bankr. D. Del. 2022) ......................................................................35

*In re Mallinckrodt PLC*,
  No. 20-12522 (JTD) (Bankr. D. Del. Mar. 2, 2022) ................................................36, 40

*In re Metrocraft Publ'g Servs., Inc.*,
  39 B.R. 567 (Bankr. N.D. Ga. 1984) ......................................................................5

*In re Midway Gold US, Inc.*,
  575 B.R. 475 (Bankr. D. Colo. 2017) ......................................................................49

*In re NII Holdings, Inc.*,
  288 B.R. 356 (Bankr. D. Del. 2002) ......................................................................16

*In re One Aviation Corp.*,
  No. 18-12309 (CSS) (Bankr. D. Del. Sep. 18, 2019) ................................................46

*In re One2One Commc'ns, LLC*,
  Case No. 12-27311, 2016 WL 3398580 (D. N.J. June 14, 2016)......................................33

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
  848 F.2d 414 (3d Cir. 1988)................................................................................4

*In re Phx. Petroleum*,
  278 B.R. 385 (Bankr. E.D. Pa. 2001) ......................................................................6

*In re PPI Enters. (U.S.), Inc.*,
  228 B.R. 339 (Bankr. D. Del. 1998) ......................................................................16

*In re Prime Core Techs. Inc.*,
    No. 23-11161, 2025 WL 2027499 (Bankr. D. Del. July 18, 2025) ........................................53

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000)....................................................................................16, 31, 37

*In re Rite Aid Corp.*,
    No. 23-18993 (MBK) (Bankr. D.N.J. Aug. 16, 2024).................................................40, 50, 51

*In re Riverbed Tech., Inc.*,
    No. 21-11503 (CTG) (Bankr. D. Del. Dec. 4, 2021) .......................................................36, 40

*In re Rubicon U.S. REIT, Inc.*,
    434 B.R. 168 (Bankr. D. Del. 2010) .................................................................................26

*In re Samson Resources Corp.*,
    No. 14-11934 (CSS) (Bankr. D. Del. Feb. 13, 2017) ..........................................................47

*In re Scioto Valley Mortg. Co.*,
    88 B.R. 168 (Bankr. S.D. Ohio 1988)................................................................................5

*In re Seaside Eng'g & Surveying, Inc.*,
    780 F.3d 1070 (11th Cir. 2015) ......................................................................................33

*Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*,
    872 F.2d 36 (3d Cir. 1989)......................................................................................29, 30

*In re SiO2 Medical Products, Inc.*,
    No. 23-10366 (JTD) (Bankr. D. Del. July 19, 2023)........................................................36, 40

*In re SLT Holdco, Inc.*,
    No. 20-18368 (MBK) (Bankr. D.N.J. Oct. 22, 2020) .......................................................36, 40

*In re Texaco, Inc.*,
    84 B.R. 893 (Bankr. S.D.N.Y. 1988) ..................................................................................8

*In re TK Holdings Inc.*,
    No. 17-11375 (BLS) (Bankr. D. Del. Feb. 21, 2018) ...........................................................46

*In re Tribune Co.*,
    464 B.R. 126 (Bankr. D. Del. 2011) .................................................................................44

*U.S. Bank Nat'l Assoc. v. Wilmington Tr. Co. (In re Spansion, Inc.)*,
    426 B.R. 114 (Bankr. D. Del. 2010) ..............................................................................31, 35

*In re U.S. Brass Corp.*,
    194 B.R. 420 (Bankr. E.D. Tex. 1996) ................................................................................5

*v. Powin, LLC, Powin Energy Operating Holdings, LLC and Powin Energy
    Operating, LLC,*
    Adv. No. 25-01249 (MBK) (Bankr. D. N.J.) .............................................................2

*In re Washington Mut., Inc.,*
    442 B.R 314 (Bankr. D. Del. 2011) ...........................................................33, 34, 35

*Westland Oil Dev. Corp. v. MCorp Mgmt. Sols., Inc.,*
    157 B.R. 100 (S.D. Tex. 1993) ...................................................................................5

*In re WeWork Inc.,*
    No. 23-19865 (JKS) (Bankr. D.N.J. May 30, 2024)....................................40, 46, 50

*In re Whittaker Clark & Daniels Inc.,*
    No. 24-2210, 2025 WL 2611753 (3d Cir. Sept. 10, 2025) .....................................55

*In re WorldCom, Inc.,*
    2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. Oct. 31, 2003) ..................................14

*In re Zenith Elecs. Corp.,*
    241 B.R. 92 (Bankr. D. Del. 1999) ................................................................. *passim*

**Statutes**

U.S.C. § 1129(a)(9)...........................................................................................21, 22

U.S.C. § 1129(a)(11).....................................................................................23, 25, 52

U.S.C. §1129(b)(1) .....................................................................................................26

11 U.S.C. § 541 (a)(1)................................................................................................31

11 U.S.C. § 1101(2) ..............................................................................................49, 50

11 U.S.C. § 1125(a)(1).................................................................................................4

11 U.S.C. § 1125(b) ....................................................................................................14

11 U.S.C. § 1129(a)(14)..............................................................................................25

11 U.S.C. § 1129(a)(15)..............................................................................................25

11 U.S.C. § 1129(a)(16)..............................................................................................25

11 U.S.C. § 1129(b)(2)(B)(ii) .....................................................................................28

11 U.S.C. § 1129(b)(2)(C)(ii) .....................................................................................28

28 U.S.C. § 1930..........................................................................................................25

28 U.S.C. § 1930(a)(6) .................................................................................................. 51

United States Code title 11 ............................................................................................ 1

Bankruptcy Code amendments ...................................................................................... 10

Bankruptcy Code chapter 7 ................................................................................... *passim*

Bankruptcy Code Chapter 11 ................................................................................ *passim*

Bankruptcy Code Section 1102 ..................................................................................... 3

Bankruptcy Code Section 1123(b)(3)(A) ..................................................................... 31

Bankruptcy Code sections 1125 and 1126 ............................................................. 14, 16

Bankruptcy Code Section 1125(e) ..................................................................... 7, 37, 48

Bankruptcy Code § 1125 and § 1126 ........................................................................... 14

Bankruptcy Code § 1129(a) ...................................................................................14, 26

Code §§ 1122 and 1123 ....................................................................................8, 13, 38

Securities Act Section 5 ................................................................................................ 29

UCC .............................................................................................................................. 53

WARN Act .............................................................................................................*passim*

**Other Authorities**

*Adequacy of the Disclosure Statement on Conditional Basis, (II)* ................................. 7

Bankruptcy Rule 3016 ................................................................................................... 38

Bankruptcy Rule 3016(a) .............................................................................................. 13

Bankruptcy Rule 3019 ................................................................................................... 38

Bankruptcy Rule 3020(e) .........................................................................................39, 50

Bankruptcy Rule 7001(i) ............................................................................................... 53

Bankruptcy Rules 2002(b) and 3017(d)-(f) .................................................................. 15

Powin, LLC and the affiliated debtors and debtors in possession (collectively, the "Debtors"), in the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases"), together with the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "Committee" and together with the Debtors, the "Plan Proponents"), submit this joint memorandum of law (the "Memorandum"): (i) in support of the final approval of the disclosures made in the Disclosure Statement (defined below); (ii) in support of confirmation of the *Joint Combined Disclosure Statement And Chapter 11 Plan of Powin, LLC And Affiliates Thereof And The Official Committee of Unsecured Creditors* [Docket No. 942], dated October 15, 2025 (collectively, with all exhibits thereto and as may be amended, modified, or supplemented from time to time, the "Disclosure Statement" or "Plan," as applicable), pursuant to §[2] 1129 of title 11 of the United States Code (the "Bankruptcy Code"),[3] and in accordance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (iii) in reply to all objections submitted in connection therewith. In support thereof, the Plan Proponents rely upon (i) the *Declaration of Gerard Uzzi in Support of Confirmation of Joint Combined Disclosure Statement And Chapter 11 Plan of Powin, LLC And Affiliates Thereof And The Official Committee of Unsecured Creditors* (the "Uzzi Declaration"); and (ii) the *Declaration of Darlene S. Calderon with Respect to the Tabulation of Votes on the Joint Combined Disclosure Statement And Chapter 11 Plan of Powin, LLC And Affiliates Thereof And The Official Committee of Unsecured Creditors* [Docket No. 1095] (the "Voting Declaration," together with the Uzzi Declaration, the "Declarations"), filed contemporaneously herewith. In further support of confirmation of the Plan, the Plan Proponents respectfully state as follows:

---

[2] All references to "§" or "section" herein are to sections of the Bankruptcy Code.

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan and Disclosure Statement.

## PRELIMINARY STATEMENT

1.      The Debtors filed these Chapter 11 Cases under severe liquidity constraints and exigent circumstances. Although the ability to stabilize operations and maximize value at that time was not clear, the Debtors, working closely with their advisors and the Official Committee of Unsecured Creditors, overcame significant  hurdles, secured debtor in possession financing, and maximized value through the sale of their assets, which paved the way for confirmation of this Plan.

2.      The Plan establishes the Liquidating Trust and the Direct Claims Trust and appoints the Liquidating Trustee to: (1) continue the wind-down of the Debtors after the Effective Date; (2) liquidate the Liquidating Trust Assets and the Direct Claims Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtors hold or may hold against any Entity; and (4) make all Distributions in accordance with the Plan, the Liquidating Trust Agreement, and the Direct Claims Trust Agreement. The Plan proposes to pay or otherwise satisfy Allowed Administrative Claims, Allowed Secured Claims, and Allowed Priority Claims in full on the Effective Date or as soon as reasonably practicable thereafter. The Plan further contemplates the Debtor entering into various settlements that will be approved pursuant to Federal Rule of Bankruptcy Procedure 9019, including the settlement of WARN claims asserted in that certain adversary proceeding pending before the Bankruptcy Court, captioned at *Brian Palomino, on behalf of himself and all others similarly situated v. Powin, LLC, Powin Energy Operating Holdings, LLC and Powin Energy Operating, LLC,* Adv. No. 25-01249 (MBK) (Bankr. D. N.J.).

3.      The Plan Proponents respectfully submit that (i) they have satisfied their burden under law with respect to the disclosures made in the Disclosure Statement, and (ii) all impaired

classes that are entitled to vote support the Plan, as more fully set forth below and in the Voting

Declaration.

4.        Accordingly, and for the reasons set forth below, the Plan Proponents respectfully

request the entry of the proposed order approving the disclosures made in the Disclosure Statement

on a final basis, confirming the Plan (the "Confirmation Order"), and overruling all objections

with respect thereto.

**STATEMENT OF FACTS**

5.        On June 9, 2025 (the "Petition Date"),[4] the Debtors filed voluntary petitions for

relief under Chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their

businesses, and the facts and circumstances supporting the Debtors' Chapter 11 cases are set forth

in greater detail in the *Declaration of Gerald Uzzi in Support of Emergency First Day Motions of

the Debtors* [Docket No. 13] (the "First Day Declaration"), which is incorporated by reference

herein.

6.        On June 27, 2025, the United States Trustee for the District of New Jersey (the "US

Trustee") appointed the Committee pursuant to Section 1102 of the Bankruptcy Code. Docket No.

174.

7.        On October 14, 2025, the Court conditionally approved the Disclosure Statement

and the solicitation of the Plan [Docket No. 939] (the "Disclosure Statement Order"). The

Disclosure Statement Order schedule a hearing on confirmation of the Plan for November 25, 2025

(the "Confirmation Hearing"). On October 15, 2025, the Debtors filed the solicitation version of

the Plan [Docket No. 942].

---

[4] Powin Project LLC filed for voluntary relief under Chapter 11 of the Bankruptcy Code on June 9, 2025. Powin
Canada B.C. Ltd., Powin Energy Ontario Storage II LP, and Powin Energy Storage 2, Inc., filed on June 22, 2025,
and the remaining Debtors (other than Powin EKS SellCo, LLC) filed on June 10, 2025. Powin EKS SellCo, LLC
filed on October 10, 2025.

8.      The additional facts relevant to confirmation of the Plan are set forth in the Plan,

the Declarations, and any evidence presented or testimony that may be adduced at Confirmation

Hearing, all of which are incorporated herein by this reference.

## ARGUMENT

**I.      THE DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" AS REQUIRED BY § 1125, AND THE PLAN PROPONENTS COMPLIED WITH APPLICABLE NOTICE REQUIREMENTS.**

**A.  The Disclosure Statement Contains Adequate Information.**

9.      The purpose of a disclosure statement is to provide "adequate information" that

allows parties entitled to vote on a proposed plan to make an informed decision as to whether to

vote to accept the plan.  *See e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors

Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain

"adequate information to enable a creditor to make an informed judgment about the Plan" (internal

quotations omitted)); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir.

1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked

for its vote.").  "Adequate information" is a flexible standard, based on the facts and circumstances

of each case.  11 U.S.C. § 1125(a)(1) ("'adequate information' means information of a kind, and

in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor

and the condition of the debtor's books and records"); *see also Oneida Motor Freight, Inc. v.

United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we

discern that adequate information will be determined by the facts and circumstances of each

case.").  Courts within the Third Circuit and elsewhere acknowledge that determining what

constitutes "adequate information" for the purpose of satisfying § 1125 resides within the broad

discretion of the bankruptcy court.  *See e.g., In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr.

D. N.J. 2005) ("The information required will necessarily be governed by the circumstances of the

case."); *Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a): 'Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case.'" (quoting H.R. Rep. No. 595, at 408–09 (1977))).

10.      Courts look for certain information when evaluating the adequacy of disclosures in a proposed disclosure statement, including: (i) the events which led to the filing of a bankruptcy petition; (ii) the relationship of a debtor with its affiliates; (iii) a description of the available assets and their value; (iv) the anticipated future of the company; (v) the source of information stated in the disclosure statement; (vi) the present condition of a debtor while in chapter 11; (vii) the claims asserted against a debtor; (viii) the estimated return to creditors under a chapter 7 liquidation; (ix); the future management of a debtor; (x) the chapter 11 plan or a summary thereof; (xi) the financial information, valuations, and projections relevant to the claimants' decision to accept or reject the chapter 11 plan; (xii) the information relevant to the risks posed to claimants under the plan; (xiii) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (xiv) the litigation likely to arise in a nonbankruptcy context; and (xv) the tax attributes of a debtor. *In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996) (listing factors courts have considered in determining the adequacy of information provided in a disclosure statement); *Westland Oil Dev. Corp. v. MCorp Mgmt. Sols., Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993) (same); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (same); *In re Metrocraft Publ'g Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Disclosure regarding all topics "is not necessary in every case." *In re U.S. Brass Corp.*, 194 B.R.

at 425; *see also In re Phx. Petroleum*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("[C]ertain

categories of information which may be necessary in one case may be omitted in another […]").

11.     The Disclosure Statement, which was previously approved on a conditional basis,

contains adequate information.   *See* Disclosure Statement Order.   The Disclosure Statement

contains descriptions and summaries of, among other things: (i) the Debtors' business operations

and capital structure; (ii) certain events preceding the commencement of these Chapter 11 Cases;

(iii) key events in these Chapter 11 Cases; (iv) the Debtors' sale and reorganization efforts; (v) an

overview of the Plan; (vi) the classification and treatments of claims and interests; (vii) a

liquidation analysis, filed as <u>Exhibit G</u> to the Plan Supplement, which sets forth the estimated

return that holders of claims and interests would receive in a hypothetical chapter 7 liquidation;

(viii) a description of the release, exculpation, and injunction provisions contained in the Plan; (ix)

risk factors affecting the Plan; and (x) the federal tax consequences of the Plan.

12.     As discussed above, § 1125(a) requires only "adequate information" sufficient for

parties entitled to vote on a proposed plan to make an informed decision about whether to vote to

accept or reject the plan.   As set forth herein, the Plan Proponents have more than satisfied this

burden and the Disclosure Statement should be approved on a final basis.

**B.  The Plan Proponents Complied With The Applicable Notice And Solicitation
     Requirements.**

13.     On October 14, 2025, the Court entered the Disclosure Statement Order which

granted interim approval of the adequacy of the disclosures in the Plan and approved the

procedures for the transmittal of the Plan and other solicitation materials.   In addition to

conditionally approving the adequacy of the Disclosure Statement, the Disclosure Statement Order

granted final relief regarding solicitation and noticing procedures and materials.   The Plan

Proponents have complied with the procedures approved in the Disclosure Statement Order and the related timeline.  Any objections to non-compliance therewith should be overruled.

   **C.  Solicitation of the Plan Complied With The Bankruptcy Code And Was In Good Faith.**

   14.    Section 1125(e) of the Bankruptcy Code provides that "a person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title . . . is not liable" on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan." 11 U.S.C. § 1125(e).

   15.    As set forth in the Disclosure Statement and the *Joint Motion of the Plan Proponents For Entry of an Order Approving (I) the Adequacy of the Disclosure Statement on Conditional Basis, (II) The Solicitation and Notice Procedures, (III) the Forms and Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 915], and as demonstrated by the Plan Proponents' compliance with the Disclosure Statement Order, the Plan Proponents at all times took appropriate actions in connection with the solicitation of the Plan in compliance with § 1125.  Therefore, the Plan Proponents request that the Court grant the parties the protections provided under § 1125(e).

   16.    For the foregoing reasons, the Court should enter an order approving the Disclosure Statement on a final basis.

## II.    THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS SET FORTH IN § 1129.

   17.    Section 1129 sets forth the requirements that must be satisfied for a plan to be confirmed.  Through evidence to be presented at the Confirmation Hearing, as set forth in the Declarations, and as demonstrated herein, the Plan Proponents will establish, by a preponderance of the evidence, that the Plan satisfies all confirmation requirements.

**A.  The Plan Complies with the Applicable Provisions of § 1129(a)(1).**

18.     Pursuant to § 1129(a)(1), a plan may be confirmed only if it "complies with applicable provisions of [the Bankruptcy Code]."  It is well-established that the requirement in § 1129(a)(1) primarily focuses on compliance with § 1122 (governing classification of claims and interests) and § 1123 (governing necessary and permissible provisions).  *See In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986) (stating that "[o]bjections to confirmation raised under § 1129(a)(1) generally involve the failure of a plan to conform to the requirements of § 1122(a) or § 1123)"), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987); *In re Texaco, Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with § 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization.") (citing *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988).  As demonstrated below, the Plan fully complies with all of the applicable provisions of the Bankruptcy Code, as required by § 1129(a)(1), including, without limitation, §§ 1122 and 1123.

**1.      The Plan Complies with the Requirements of § 1122.**

19.     Pursuant to § 1122, claims or interests within a given class must be "substantially similar" to the other claims or interests in that class.  Section 1122, however, does not require that all substantially similar claims or equity interest must be classified together.  Instead, courts have recognized that similar claims may be classified separately, provided that there is a basis for doing so.  *See, e.g., Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Court N.Y., N.Y. (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996).  Courts are also afforded broad discretion in approving a plan proponent's classification structure and should consider the specific facts of each case when making a determination regarding classification.  *See, e.g., In re Jersey City Med. Ctr.*, 817 F.2d

1055, 1060–61 (3d Cir. 1987) (observing that "Congress intended to afford bankruptcy judges broad discretion [under § 1122] to decide the propriety of plans in light of the facts of each case").

20.     Section 9 of the Plan provides for the separate classification of Claims and Interests into seven distinct Classes based upon (a) their secured status, if applicable, (b) their legal priority against the Debtors' assets, and (c) other relevant factors:

| Class | Designation |
|---|---|
| 1 | Priority Non-Tax Claims |
| 2 | Other Secured Claims |
| 3 | WARN Act Claims |
| 4 | Settled Priority Claims |
| 5 | General Unsecured Claims |
| 6 | Intercompany Claims |
| 7 | Interests |

*See* Plan, at § 9.

21.     The Plan's classification scheme complies with § 1122 because each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class.  Accordingly, the legal rights of each of the holders of Claims or Interests within a particular Class are substantially similar to other holders of Claims or Interests within that Class, and the Plan satisfies the requirements of § 1122.

### 2.    The Plan Complies with the Requirements of § 1123(a).

22.    As applicable, § 1123(a) sets forth seven (7) requirements for every chapter 11 plan.[5] The Plan complies with each such requirement.

### 3.    Section 1123(a)(1): Designation of Classes of Claims and Interests

23.    Section 1123(a)(1) requires that a chapter 11 plan designate classes of claims and equity interests subject to § 1122, other than the kinds specified in §§ 507(a)(2) (administrative expenses claims), 507(a)(3) (claims arising during the "gap" period in an involuntary case), and 507(a)(8) (unsecured tax claims).  As discussed above, and subject to § 1122, Section 9 of the Plan designates six Classes of Claims and one Class of Interests, not including the Claims of the kinds specified in §§ 507(a)(2), (3), and (8).  Thus, the Plan satisfies the requirements of § 1123(a)(2).

### 4.    Section 1123(a)(2): Classes That Are Not Impaired by the Plan

24.    Section 1123(a)(2) requires that a chapter 11 plan specify which classes of claims or equity interests are unimpaired under such plan.  The Plan specifies that Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are Unimpaired.  *See* Plan at §§ 9.1 and 9.2.  Thus, the Plan satisfies the requirement of § 1123(a)(2).

### 5.    Section 1123(a)(3): Treatment of Classes That Are Impaired by the Plan

25.    Section 1123(a)(3) requires that a chapter 11 plan specify how the classes of claims or equity interests that are impaired under such plan will be treated.  The Plan designates Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), and Class 7 (Interests) as Impaired and specifies the treatment of Claims

---

[5] Section 1123(a)(8), added with the enactment of the 2005 Bankruptcy Code amendments, is only applicable to individual debtor cases and, therefore, not addressed herein.

and Interests in such Classes.  *See* Plan at §§ 9.3-9.7.  Thus, the Plan satisfies the requirement of § 1123(a)(3).

### 6.      Section 1123(a)(4): Equal Treatment Within Each Class

26.      Section 1123(a)(4) requires that a chapter 11 plan provide the same treatment for each claim or equity interest within a particular class, unless the holder of a claim or interest agrees to receive less favorable treatment.  Pursuant to the Plan, the treatment of each Claim against or Interest in the Debtors in each respective Class is the same as the treatment of each other Claim or Interest in such Class, unless the holder has agreed to receive less favorable treatment.  *See* Plan at § 6.4.  Thus, the Plan satisfies the requirement of § 1123(a)(4).

### 7.      Section 1123(a)(5): Adequate Means for Implementation

27.      Section 1123(a)(5) requires that a chapter 11 plan provide "adequate means for the plan's implementation" and provide certain non-exclusive examples.  Section 14 of the Plan, as well as the Liquidating Trust Agreement attached to the Plan Supplement as Exhibit C [Docket No. 1038-3], and the Direct Claims Trust Agreement attached to the Plan Supplement as Exhibit D [Docket No. 1038-4], provides a detailed description of, and framework for, the transactions, actions, and events that are contemplated by the Plan.  More specifically, the Plan provides adequate means for its implementation through, among other things, (i) procedures for voting on and confirming the Plan, (ii) the vesting of all of the Debtors' Property in the Liquidating Trust; (iii) the appointment of the Liquidating Trustee; (iv) the creation of a Direct Claims Trust, whereby holders of direct claims against non-debtor entities may contribute their claims in exchange for a share of such trust; and (v) the making of Distributions by the Liquidating Trust in accordance with the terms and conditions of the Plan.  Thus, the Plan satisfies the requirement of § 1123(a)(5).

### 8.      Section 1123(a)(6): Prohibitions on Issuance of Non-Voting Securities

28.      Section 1123(a)(6) requires that a plan provide that the debtor's corporate constituent documents prohibit the issuance of nonvoting equity securities.  Here, the Plan provides that upon the Effective Date, the Debtors' formation documents shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities under § 1123(a)(6).  *See* Plan at § 19.14.  Thus, the Plan satisfies the requirements of § 1123(a)(6).

### 9.      Section 1123(a)(7): Provisions Regarding Directors and Officers

29.      Section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee."   Upon the Effective Date, the Liquidating Trustee will be the representative of the Estates, subject to the oversight of Oversight Committee, as set forth in the Plan and Liquidating Trust Agreement.  The Oversight Committee will be comprised of the members appointed by the Committee.  *See* Plan at § 13.3.  The affiliations and compensation of the Liquidating Trustee and the Oversight Committee are described in the Plan and Liquidating Trust Agreement.  *See* Plan at § 13.3.  The Liquidating Trustee will also serve as the trustee of the Direct Claims Trust, pursuant to, and all as fully described in, the Plan and the Direct Claims Trust Agreement.  *See* Plan at § 13.3.  The Plan satisfies the requirements of § 1123(a)(7).

### 10.      The Plan Complies with the Requirements of § 1123(b).

30.      Section 1123(b) identifies various discretionary provisions that may be included in a chapter 11 plan.  The Plan contains certain of these provisions specifically contemplated by § 1123(b), including provisions regarding: (a) impairment and unimpairment of Classes of Claims and Interests (Plan at § 9) as contemplated by § 1123(b)(1); (b) the assumption or rejection of executory contracts and unexpired leases (Plan at § 12) as contemplated by § 1123(b)(2); and (c)

settlement or retention of claims belonging to the Estates (Plan at § 13) as contemplated by § 1123(b)(3).

31.     Moreover, the Plan contains other provisions that fall within the catch-all discretionary provision in § 1123(b)(6), which permits a plan to include other provisions not inconsistent with the applicable provisions of the Bankruptcy Code.  *See*, *e.g.*, Plan at § 18 (providing for the Court's retention of jurisdiction on certain specified matters); and Plan at § 10 (setting forth provisions regarding distributions under the Plan).  Thus, the Plan complies with § 1123(b).

### 11.     Section 1123(d) and Bankruptcy Rule 3016(a)

32.     The Plan complies with § 1123(d),[6] which provides that if a plan proposes to cure a default, "the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law."  The Plan does not provide otherwise.  Moreover, the Plan complies with Bankruptcy Rule 3016(a) because it is dated October 15, 2025 and identifies the Debtors and the Committee as the Plan Proponents.

* * * * *

33.     Accordingly, the Plan complies with the requirements of §§ 1122 and 1123, as well as with other applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  Thus, the Plan satisfies the requirements of § 1129(a)(1).

### B.  The Plan Proponents have Complied with § 1129(a)(2).

34.     Section 1129(a)(2) requires that a plan proponent "compl[y] with the applicable provisions of the [Bankruptcy Code]."  Whereas § 1129(a)(1) focuses on the form and content of

---

[6] Because the Debtors are not individuals, § 1123(c) is inapplicable to the Plan.

a plan itself, § 1129(a)(2) is concerned with the activities of plan proponents. 7 Collier on

Bankruptcy ¶ 1129.02[2] (16th ed. 2018). That is, the inquiry under § 1129(a)(2) focuses on

whether a plan proponent has complied with the disclosure and solicitation requirements of §§

1125 and 1126. *See* S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787,

5912 ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the

applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No.

95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368; *see also In re WorldCom, Inc.*,

2003 Bankr. LEXIS 1401 at *137 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that "[t]he legislative

history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure

and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code."); *In re*

*Johns-Manville*, 68 B.R. at 630 ("Objections to confirmation raised under § 1129(a)(2 generally

involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the

Bankruptcy Code"). Here, the Plan Proponents have complied with the applicable provisions of

the Bankruptcy Code, including, without limitation, §§ 1125 and 1126 and the applicable

Bankruptcy Rules regarding plan disclosures and solicitation.

### 1.  The Plan Proponents Have Complied with § 1125.

35.    Section 1125(b) prohibits the solicitation of acceptance or rejections of a plan from

holders of claims or equity interests "unless, at the time of or before such solicitation, there is

transmitted to such holder the plan or a summary of the plan, and a written disclosure statement

approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b).

36.    After entry of the Disclosure Statement Order, the Debtors though their claims and

noticing agent, Vertia Global, transmitted Solicitation Packages (as defined in the Solicitation

Procedures Motion) to those holders of claims entitled to vote on the Combined Plan and

Disclosure Statement as of the October 10, 2025 voting record date, as well as those creditors who

timely filed proofs of claim.  Specifically, Verita Global caused copies of the Solicitation Packages

to be served, via U.S. First Class Mail, on holders of Claims in Classes 3, 4, and 5.  Additionally,

Verita Global served holders of Claims and Interests in Classes 6 and 7 with the Notice of Non-

Voting Status Due to No Recovery and the Combined Hearing Notice.  Holders of Class 1 and

Class 2 Claims were served with the Notice of Non-Voting Status Due to Non-Impairment.

37.    Because the holders of Claims and Interests in each Class received the same

materials in accordance with the terms of the Disclosure Statement Order, the Plan Proponents

have complied with § 1125(c).  Furthermore, the Uzzi Declaration and the Voting Declaration

demonstrate that the Debtors served the solicitation materials in accordance with the requirements

of Bankruptcy Rules 2002(b) and 3017(d)-(f), as well as the Disclosure Statement Order.  As such,

the Plan Proponents have complied with § 1125.

## 2.    The Plan Proponents Have Complied with § 1126.

38.    Section 1126 specifies the requirements for acceptance of a plan and generally

provides that holders of claims or equity interests are entitled to vote on such plan; however, an

unimpaired class is conclusively deemed to accept the plan,[7] and a class that will not receive or

retain any property under the plan is deemed to reject the plan.[8]

39.    The Plan Proponents have complied with the requirements of § 1126.  Class 1

(Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are unimpaired under the Plan and,

pursuant to § 1126(f), these Classes are conclusively deemed to accept the Plan and have not been

solicited to vote on the Plan.  Holders of Claims in Class 6 (Intercompany Claims) and Class 7

---

[7] Section 1126(f) provides that "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required."

[8] Section 1126(g) provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests."

(Interests) are not entitled to receive or retain any property under the Plan, and, pursuant to §

1126(g), Class 6 and Class 7 are deemed to reject the Plan and have not been solicited to vote on

the Plan.  Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims), and Class 5 (General

Unsecured Claims) are impaired under the Plan, and holders of Class 3, 4, and 5 Claims are entitled

to receive property under the Plan.  Accordingly, holders of Class 3, 4, and 5 Claims have been

solicited to accept or reject the Plan.

40.     In this regard, the Debtors' solicitation of votes with respect to the Plan was

undertaken in conformity with §§ 1125 and 1126 and the Disclosure Statement Order.  The Plan

Proponents, therefore, have complied with the applicable provisions of the Bankruptcy Code and

have satisfied the requirements of § 1129(a)(2).

> ### 3.      Section 1129(a)(3): The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law.

41.     Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any

means forbidden by law."  Good faith is generally interpreted to mean that there is a reasonable

likelihood that the "plan will fairly achieve a result consistent with the objective and purposes of

the Bankruptcy Code."  *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000).  Good faith

is to be viewed in light of the particular facts and circumstances of the case.  *See, e.g., In re NII

Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002); *In re PPI Enters. (U.S.), Inc.*,

228 B.R. 339 (Bankr. D. Del. 1998).

42.     The Plan Proponents have proposed the Plan in good faith.  Throughout these

Chapter 11 Cases, the Plan Proponents have worked to build consensus among the various creditor

constituencies.  The Plan and the process leading up to its formulation are the result of extensive

arm's length negotiations among the Debtors, the Committee, and other parties in interest.  In this

regard, the Plan has been proposed by the Plan Proponents for legitimate and honest purposes and

is in the best interests of the Debtors' stakeholders.  Accordingly, the requirement of § 1129(a)(3) has been satisfied.

### 4.    Section 1129(a)(4): The Plan Provides that Professional Fees and Expenses are Subject to Court Approval.

43.    Section 1129(a)(4) requires that any payments by a debtor "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," either be approved by the court as reasonable or subject to the approval of the court as reasonable.  Section 1129(a)(4) has been construed to require that all payment on account of professional fees and expenses from estate assets be subject to the Bankruptcy Court's review and approval.  *See, e.g., Lisanti Foods, Inc. v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 503 (D.N.J. 2005); *Resorts Int'l, Inc.*, 145 B.R. 412, 476 (Bankr. D.N.J. 1990).

44.    In accordance with § 1129(a)(4), no payment will be made from assets of the Estates on account of Professional Fee Claims other than payments that are authorized by order of the Bankruptcy Court.  Pursuant to Section 7.3 of the Plan, all applications for payment of Professional Fee Claims must be filed with the Bankruptcy Court within forty-five (45) days after the Effective Date.  Such Professional Fee Claims are only payable to the extent approved by the Bankruptcy Court. Accordingly, the requirement of § 1129(a)(4) has been satisfied.

### 5.    Section 1129(a)(5): The Debtors Have Disclosed All Necessary Information Regarding Directors and Officers.

45.    Section 1129(a)(5) requires that (i) the plan proponents disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor, the identity of any insider to be employed or retained by the reorganized debtor, and the nature of any compensation proposed to be paid to such insider, and (ii) that appointment or continuance of such individual in such office be consistent with the interest of creditors, equity holders, and public policy.  Because the Plan provides for the liquidation and distribution of the Debtors' remaining assets by a

Liquidating Trust, the requirements imposed by § 1129(a)(5) are largely inapplicable.  Based upon

the foregoing, the Plan Proponents have satisfied the requirements of § 1129(a)(5) to the extent

applicable to the Plan.

> **6.      Section 1129(a)(6): The Plan Does Not Contain Rate Changes Subject
> to the Jurisdiction of Any Governmental Regulatory Commission.**

46.      Section 1129(a)(6) requires that any governmental regulatory commission having

jurisdiction over the rates charged by the post-confirmation debtor in the operation of its business

approve any rate change provided for in a plan.  Here, there is not any governmental regulatory

commission having jurisdiction over the pricing of the services offered by the Debtors in the

marketplace.  Further, this Plan does not propose any pricing or rate change, consequently

§ 1129(a)(6) does not apply to the Plan.

> **7.      Section 1129(a)(7): The Plan Is in the Best Interest of Creditors.**

47.      Section 1129(a)(7), often referred to the as the "best interest of the creditors test,"

requires that holders of impaired claims or interests which do not vote to accept the chapter 11

plan at issue "receive or retain under the plan on account of such claim or interest property of a

value, as of the effective date of the plan, that is not less than the amount that such holder would

so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such

date."  The test focuses on individual creditors' claims rather than classes of claims.  *See Bank of*

*Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999).

48.      The best interest test applies to the holders of Claims and Interest in Classes 3, 4,

5, 6, and 7 all of which are impaired under the Plan.  Consequently, each of those holders must

either vote to accept the plan or must otherwise receive the requisite level of recovery under the

Plan in order to satisfy the best interest of creditors test.

49.     The Plan Proponents submit that the best interest test is satisfied as to each holder of an Impaired Claim or Interest, and no party in interest has argued otherwise or provided any evidence to the contrary.  As an initial matter, the Plan is a plan of liquidation.  As such, it is difficult to conceive how creditors in these Chapter 11 Cases would do better in a chapter 7, where there would be a negative impact on the ultimate proceeds available for distribution to creditors, including, without limitation, as a result of (i) the increased costs of liquidation under chapter 7, which would include, *inter alia*, the fees payable to a chapter 7 trustee and the fees that would be payable to additional attorneys and other professionals that such a trustee may engage, all of whom would need to get up to speed on the Debtors' affairs and the history of these Chapter 11 Cases, and (ii) the establishment of a new claims bar date, diluting any potential recoveries of holders of Claims.  Moreover, the addition of a chapter 7 trustee at this late stage would likely provide no benefit, as substantially all of the Debtors' assets will be liquidated during these Chapter 11 Cases and the Plan provides for the vesting of all of the assets of the Debtors in the Liquidating Trust under the direction of the Liquidating Trustee to liquidate all remaining unliquidated assets and distribute the proceeds in accordance with the Plan in a cost efficient manner.  Furthermore, given the magnitude of senior claims, certain priority and general unsecured creditors are expected to receive no recovery if the Chapter 11 Cases were converted to chapter 7 cases.  *See* Plan Supplement at Exhibit G (Liquidation Analysis).

50.     Section 6.8 of the Plan as well as the Liquidation Analysis, attached to the Plan Supplement as Exhibit G, further supports the satisfaction of the best interest of creditors test. Impaired Classes entitled to receive a distribution under the Plan, Classes 3, 4, and 5, will receive greater recoveries under the Plan than in a hypothetical chapter 7 liquidation.  *See* Plan Supplement at Exhibit G (Liquidation Analysis).    Holders of Claims and Interests in Class 6 (Intercompany

Claims) and Class 7 (Interests) will not receive a distribution in either a chapter 7 liquidation or under the Plan.  As a result, the Plan satisfies the requirements of § 1129(a)(7).

### 8.    Section 1129(a)(8): Not All Impaired Classes Have Accepted the Plan.

51.    Section 1129(a)(8) requires either that each class of claims and interests under a plan must either (a) accept the plan, or (b) be rendered unimpaired under the plan.

52.    All unimpaired Classes of Claims under the Plan (*i.e.,* Classes 1 and 2) are conclusively deemed to have accepted the Plan, pursuant to § 1126(f).  As set forth in the Voting Declaration, the following chart provides a summary of votes cast by holders of Classes 3, 4 and 5.  Each such Class has voted to accept the Plan:

| Class Name | Class Description | Members Voted | Members Accepted | Members Rejected | % Members Accepted | % Members Rejected | Total $ Voted | $ Accepted | $ Rejected | % $ Accepted | % $ Rejected |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | WARN Act Claims | 60 | 59 | 1 | 98.33% | 1.67% | $1,545,070.79 | $1,527,920.79 | $17,150.00 | 98.89% | 1.11% |
| 4 | Settled Priority Claims | 6 | 6 | 0 | 100.00% | 0.00% | $16,037,421.80 | $16,037,421.80 | $0.00 | 100.00% | 0.00% |
| 5 | General Unsecured Claims | 137 | 123 | 14 | 89.78% | 10.22% | $798,123,530.91 | $578,108,577.35 | $220,014,953.56 | 72.43% | 27.57% |

53.    As set forth in more detail below, the Holders of Impaired Claims and Interests in Class 6 and Class 7 (the "Rejecting Classes") will not receive or retain any property under the Plan and, as such, such holders are deemed to reject the Plan, consistent with § 1126(g).  Accordingly, the requirements of § 1129(a)(8) are not met with respect to the Rejecting Classes.  The Plan, nonetheless, can be confirmed because the Rejecting Classes can be crammed-down pursuant to § 1129(b), as set forth herein.

**9.     Section 1129(a)(9): The Plan Provides for Payment in Full of All
Allowed Administrative Claims, Priority Claims, Priority Tax Claims,
and Professional Fee Claims.**

54.     Section 1129(a)(9) requires that entities holding allowed claims entitled to priority

under § 507(a)(1)-(8) receive specified cash payments under a plan.  Unless the holder of a

particular claim agrees to a different treatment with respect to such claim, § 1129(a)(9) requires a

plan to provide as follows:

> (A) with respect to a claim of the kind specified in section 507(a)(2) or
> 507(a)(3) of [the Bankruptcy Code], on the effective date of the plan, the
> holder of such claim will receive on account of such claim cash equal to the
> allowed amount of such claim;

> (B) with respect to a class of claims of a kind specified in section 507(a)(1),
> 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of [the Bankruptcy Code], each
> holder of claim of such class will receive—

>> (i) if such class has accepted the plan, deferred cash payments of a
>> value, as of the effective date of the plan, equal to the allowed
>> amount of such claim; or

>> (ii) if such class has not accepted the plan, cash on the effective date
>> of the plan equal to the allowed amount of such claim;

> (C) with respect to a claim of a kind specified in section 507(a)(8) of [the
> Bankruptcy Code], the holder of such claim will receive on account of such
> claim regular installment payments in cash—

>> (i) of a total value, as of the effective date of the plan, equal to the
>> allowed amount of such claim;

>> (ii) over a period ending not later than 5 years after the date of the order
>> for relief under section 301, 302, or 303; and

>> (iii) in a manner not less favorable than the most favored nonpriority
>> unsecured claim provided for by the plan (other than cash payments
>> made to a class of creditors under section 1122(b)); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

11 U.S.C. § 1129(a)(9).

55.     The Plan satisfies each of the requirements of § 1129(a)(9).  First, consistent with § 1129(a)(9)(A), the Plan provides for all Allowed Administrative Claims to be paid on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim.  *See* Plan at § 7.2.

56.     Second, with respect to § 1129(a)(9)(B), all Allowed Priority Non-Tax Claims will be paid as soon as practicable following the later of: (a) the Effective Date or (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law).  *See* Plan at § 9.1.

57.     Third, with respect to § 1129(a)(9)(C), all Allowed Priority Tax Claims shall be paid the full unpaid amount of such Allowed Priority Tax Claim as follows: (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Debtors shall have agreed upon in writing.  *See* Plan at § 7.4.

58.     With respect to § 1129(a)(9)(D), the Plan Proponents do not believe the Debtors have any governmental secured claims, but in the event that there are, the Plan proposes to pay any such creditor faster than the five years permitted under § 1129(a)(9)(D).  *See* Plan at § 9.2.

59.     Accordingly, the Plan meets the requirements of § 1129(a)(9).

10.     **Section 1129(a)(10): At Least One Impaired Class of Claims has Accepted the Plan.**

60.     Section 1129(a)(10) requires that, if a class of claims is impaired under a plan, at least one class of impaired claims must have voted to accept the plan, as determined without including any acceptance of the plan by an insider.  As set forth in the Voting Declaration, the holders of Claims in Classes 3, 4, and 5, the impaired Classes, as determined without including any acceptance by an insider in such Classes, have voted to accept the Plan.  Accordingly, the Plan meets the requirements of § 1129(a)(10).

11.     **Section 1129(a)(11): The Plan is Feasible.**

61.     Section 1129(a)(11) requires the Court to determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or such other successor to the debtor under the plan, unless liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).

62.     The Plan provides for the vesting of all of the Debtors' remaining assets into the Liquidating Trust for the purpose of liquidation and distribution to creditors as trust beneficiaries under the Plan.  The Plan Proponents have analyzed the ability for the Liquidating Trustee to meet its obligations under the Plan.  Based upon the Plan Proponents' analysis, the Liquidating Trust will have sufficient assets to satisfy its obligations under the Plan. The Plan Proponents have analyzed the filed Administrative Claims, Priority Claims and other claims (including anticipating claims based upon the Plan Proponents' understanding of the Debtors' business including the fact that the Debtors have not been engaged in operational activities since late August 2025) and have estimated the reserves necessary to satisfy such claims, as set forth below and more fully set forth in the Uzzi Declaration and related sources and uses (the "Effective Date Sources & Uses").

63.     As the Debtors have represented to the Court throughout these cases, the Debtors struggled with liquidity constraints since before these cases were commenced.  As a consequence, the Debtors deployed various measures to address these constraints while pursuing multiple sale transactions during the summer of 2025.  For example, the Debtors negotiated with key administrative and priority creditors and secured deferrals of their respective administrative and priority claims, as described in more detail in the Uzzi Declaration.  Under the agreements with such creditors, the largest holders of various Administrative and Priority Claims have agreed to defer payments until after the Effective Date, at such point as the Liquidating Trust has determined to release such deferred payments.  In making such determination, the Liquidating Trustee will exercise business judgment in the evaluation of the cost and timing of monetizing the Debtors' remaining assets, including potential claims against third parties.

64.     As a consequence of these actions, the Plan Proponents have determined that they will be able to satisfy all Effective Date obligations and transfer remaining funds to the Liquidating Trust in excess of its initial budget.  Specifically, on the Effective Date, the Debtors will make (i) Effective Date Payments in the approximate amount of $2,446,000 to holders of Allowed Administrative Claims, (ii) fund various reserves in the approximate amount of $4,583,000, including funding the initial WARN Act Claim Reserve, and (iii) transfer to the Liquidating Trust approximately $9,909,000.

65.     Beyond the initial cash contribution to the Liquidating Trust, the Liquidating Trust will also have substantial non-cash assets supporting feasibility.  More specifically, the Debtors also sought relief from the Court to release excess collateral held by certain surety providers.  In an abundance of caution, the Debtors have not included recoveries of such excess collateral in the Effective Date Sources & Uses, but the Plan Proponents anticipate receiving that excess collateral.

Further, during a period of substantial revenue for the Debtors, the Debtors paid over $85 million in customs tariffs to the United States government.  The Debtors timely lodged protests with respect to those tariffs because they were based on a point of origin (China) which carries a much higher tariff than other points of origin (such as Vietnam and Mexico) where the goods passed before entering the United States.  Under customs law, if a good is altered in a material way, the last point of origin (where the goods were altered) controls for tariff duties.  In the various protests regarding that $85 million, the Debtors believe that the goods were altered in Vietnam and Mexico to allow for the reduced tariff.  Accordingly, the Liquidating Trust has access to this source of recovery and other sources of recovery from other litigation as set forth in the Plan, including potential causes of action that might be asserted against third parties.

66.     Accordingly, the Plan is feasible and meets the requirements of § 1129(a)(11).

### 12.     Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid.

67.     Section 1129(a)(12) requires that fees payable under 28 U.S.C. § 1930 have been paid or will be paid on the effective date of the plan.  The Plan provides that all fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date.  See Plan, at § 8.2.  Accordingly, the Plan complies with the requirements of § 1129(a)(12).

### 13.     Sections 1129(a)(13) Through 1129(a)(16) Do Not Apply to the Plan.

68.     Sections 1129(a)(14)-(16) are inapplicable to the Debtors and the Plan, as the Debtors (i) have no domestic support obligations (see 11 U.S.C. § 1129(a)(14)); (ii) are not individuals (see 11 U.S.C. § 1129(a)(15)); and (iii) are not non-profit corporations (see 11 U.S.C. § 1129(a)(16)).

### 14.     The Plan Satisfies the "Cram Down" Requirements of § 1129(b).

69.     Section 1129(b) provides a mechanism for confirmation of a chapter 11 plan in

circumstances where not all impaired classes of claims and equity interest vote to accept that plan.

This mechanism is known colloquially as "cram down."

 More specifically, § 1129(b)(1) provides:

> [I]f all the applicable requirements of [§ 1129(a) of the Bankruptcy
> Code] other than [the requirement contained in § 1129(a)(8) that a plan
> must be accepted by all impaired classes] are met with respect to a plan,
> the court, on the request of the proponent of the plan, shall confirm the
> plan, notwithstanding the requirements of such paragraph if the plan
> does not discriminate unfairly and is fair and equable with respect to
> each class of claims or interest that is impaired under, and has not
> accepted, the plan.

11  U.S.C. §1129(b)(1).

70.     Thus, under § 1129(b), the Bankruptcy Court may cram down a plan so long as the

plan does not "discriminate unfairly" and is "fair and equitable" with respect to the impaired

classes that did not vote to accept the plan.  *See, e.g., In re Armstrong World Indus., Inc.*, 432 F.3d

507, 512 (3d Cir. 2005); *In re Dura Auto. Sys., Inc.,* 379 B.R. 257, 271–72 (Bankr. D. Del. 2007);

*In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 660 (D. Del. 2003).

### a.   The Plan Does Not Discriminate Unfairly.

71.     The unfair discrimination standard of § 1129(b) requires that a chapter 11 plan does

not unfairly discriminate against a dissenting class with respect to the value it will receive under a

plan when compared to the value given to all other similarly-situated classes.  *See, e.g., In re*

*Barney & Carey Co.*, 170 B.R. 17, 25 (Bankr. D. Mass 1994).  Generally, a plan unfairly

discriminates in violation of § 1129(b) only if similar classes are treated differently without a

reasonable basis for the disparate treatment.  *See, e.g., In re Rubicon U.S. REIT, Inc.*, 434 B.R.

168, 175 (Bankr. D. Del. 2010) (noting that courts generally look to whether "[v]alid business,

factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity

Interests created under the Plan"); *see also Lernout & Hauspie*, 301 B.R. at 660 ("The hallmarks

of the various [unfair discrimination] tests have been whether there is a reasonable basis for the

discrimination, and whether the debtor can confirm and consummate a plan without the proposed

discrimination").  Accordingly, as between two classes of claims or two classes of equity interests,

there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests,

or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable

basis for such disparate treatment.  *See, e.g., In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr.

S.D.N.Y. 1986), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y. 1987), aff'd,

*In re Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988);  *In re Buttonwood Partners, Ltd.*, 111

B.R. 57, 63 (Bankr. S.D.N.Y. 1990).

72.     Here, the Plan does not discriminate unfairly with respect to the Rejecting Classes.

A threshold inquiry to assessing whether a proposed plan unfairly discriminates against a

dissenting class is whether the dissenting class is equally situated to the class allegedly receiving

more favorable treatment.  The holders of such Claims and Interests are distinct from each other.

 Furthermore, holders of Claims and Interests in the Rejecting Classes are deemed to reject the

Plan.  As such, the Plan Proponents will seek confirmation of the Plan from the Bankruptcy Court

by satisfying the "cramdown" requirements set forth in § 1129(b).  The Plan Proponents submit

that such requirements are satisfied, as no holder of a Claim or Interest junior to those in the

Impaired Classes is entitled to receive any property under the Plan.  Accordingly, the Plan does

not "discriminate unfairly" with respect to any Impaired Classes of Claims or Interests under the

Plan that did not accept the Plan.

### b.  The Plan Is Fair and Equitable.

73.     For a plan to be "fair and equitable" with respect to an impaired class of unsecured

claims or interests that rejects a plan (or is deemed to reject a plan), the plan must follow the

"absolute priority" rule and, if the impaired rejecting class consists of unsecured clams, satisfy one of the requirements of § 1129(b)(2)(B), or, if the impaired rejecting class consists of interest, satisfy one of the requirements of § 1129(b)(2)(C).  *See* 11 U.S.C. § 1129(b)(2)(B)(ii); 11 U.S.C. § 1129(b)(2)(C)(ii); *see also LaSalle*, 526 U.S. at 441-42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'").  Generally, this requires that (a) no class of claims recover more than the amount of their allowed claims and (b) the impaired rejecting class of claims or interests either be paid in full or that any class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.  *See id.*

74.     The Plan satisfies the requirements of §§ 1129(b)(2)(B) and 1129(b)(2)(C) for each of the Rejecting Classes, because (a) there are no Claims or Interests junior to the Claims and Interests in the Rejecting Classes and accordingly no such junior Claims or Interests will receive or retain any property under the Plan; and (b) no Classes will receive more than full payment on account of their Claims.  Accordingly, the requirements of § 1129(b) are satisfied with respect to the Rejecting Classes.

c.   **Section 1129(c): The Plan Is the Only Plan Filed in the Chapter 11 Cases.**

75.     Section 1129(c) provides that, with a limited exception, a Bankruptcy Court may only confirm one plan.  The Plan is the only plan that has been filed in the Chapter 11 Cases and

is the only plan that satisfies the requirements of subsections (a) and (b) of § 1129. Accordingly, the requirements of § 1129(c) are satisfied.

### d. Section 1129(d): The Principal Purpose of the Plan is Not to Avoid Taxes or Section 5 of the Securities Act.

76.     Section 1129(d) provides that on request of a party in interest that is a governmental unit, which holds the burden of proof on this issue, the Bankruptcy Court may not confirm a plan if the principle purpose of the plan is the avoidance of taxes or the application of section 5 of the Securities Act. The Plan was not proposed to avoid taxes or section 5 of the Securities Act, and no governmental unit has argued otherwise. Accordingly, the Plan satisfies the requirements of § 1129(d).

### e. Section 1129(e): The Debtors are Not a Small Business.

77.     Section 1129(e) is inapplicable to the Plan because the Chapter 11 Cases are not small business chapter 11 cases.

### 15.     Executory Contracts

78.     Section 1123(b)(2) allows a chapter 11 plan to provide for the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases. Section 12.1 of the Plan provides that, on the Effective Date, all executory contracts and unexpired leases that have not expired or terminated pursuant to their own terms, except with respect to those (i) previously assumed or rejected by order of the Bankruptcy Court, (ii) that are the subject of a pending motion to assume or reject or (iii) scheduled by the Debtors to be assumed as of the Effective Date, shall be deemed rejected, pursuant to the Confirmation Order, as of the Effective Date. *See* Plan at § 12.1.

79.     Assumption or rejection of an executory contract or unexpired lease of a debtor is subject to judicial review under the business judgment standard. *See, e.g., Sharon Steel Corp. v.*

*Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989). This standard is satisfied when a debtor determines that assumption or rejection will benefit the estate. *See, e.g., id.* The Plan Proponents have reviewed and analyzed the Debtors' portfolio of executory contracts and unexpired leases. Given the Debtors' limited operational activity and that all of their remaining assets will be vested in the Liquidating Trust under the Plan for liquidation, the Plan Proponents have concluded that all the Debtors' executory contracts and unexpired leases, to the extent not already rejected or assumed and assigned, should be rejected. The Debtors have thus exercised their sound business judgment in their decision to reject all remaining executory contracts and unexpired leases. Accordingly, the proposed rejection of executory contracts should be approved in connection with confirmation.

### 16. The Plan Releases, Exculpations, And Injunctions Are Appropriate And Consistent With Established Precedent.

80. The Plan includes certain customary release, exculpation, and injunction provisions. Plan at § 15. These provisions are proper because, among other things, they are the product of arm's length negotiations, have been important to obtaining the support of various constituencies and parties in interest, are supported by both the Debtors and the Committee. Such release, exculpation, and injunction provisions are an appropriate exercise of the Debtors' business judgment, are fair and equitable, given for valuable consideration, and in the best interests of the

Estates.  These provisions are consistent with the Bankruptcy Code and, thus, the requirements of

§ 1123(b) are satisfied.

### a.        The Releases of the Estates' Claims

81.        Under the Plan, the Plan Proponents propose the release of certain parties—the

Released Parties[9]—from claims or causes of action that the Estates may possess (the

"Debtor/Estate Release").  *See* Plan at § 15.2.  Claims held by a debtor against third parties are

property of the estate and may be released in exchange for settlement.  *See PWS Holding Corp.*,

228 F.3d at 242; *In re Johns-Manville* (*Manville I*), 837 F.2d 89, 91-92 (2d Cir. 1988); *see also* 11

U.S.C. § 541 (a)(1).  Section 1123(b)(3)(A) of the Bankruptcy Code allows a plan to provide for

"the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."  11

U.S.C. § 1123(b)(3)(A).

82.        When considering releases by a debtor of non-debtor third parties pursuant to

§ 1123(b)(3)(A), the appropriate standard is whether the release is a valid exercise of the debtor's

business judgment and is fair, reasonable, and in the best interests of the estate.  *U.S. Bank Nat'l*

*Assoc. v. Wilmington Tr. Co.* (*In re Spansion, Inc.*), 426 B.R. 114, 143 (Bankr. D. Del. 2010) ("[A]

debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release

is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests

of the estate.")

---

[9] "Released Parties" is defined in the Plan as "collectively (a) the Debtors, (b) the Debtors' respective current officers and managers, including John Brecker, in any capacity, including, without limitation, his capacity as Independent Manager of Powin LLC, (c) Gerard Uzzi, in any capacity, including, without limitation, his capacity as Chief Restructuring Officer of Powin, LLC and former Independent Manager of Powin, LLC, (d) Brian Kane, Chad Paulson, any others agreed to between the Committee and the Debtors, in any capacity, subject to approval by the Committee based on the results of its investigation and (if required by the Committee) execution of an agreement satisfactory to the Committee to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, (e) members of the Committee (solely in their capacities as Committee members), (f) Bankruptcy Court-approved Estate and Committee professionals, and (g) any other party, subject to approval by the Committee, which may be withheld for any reason or conditioned on execution of any appropriate agreement to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, for whom the Debtors determine a release is appropriate."

83.     Although the Plan Proponents believe the appropriate standard to consider a debtor

release is business judgment, in considering whether a debtor's release of claims is appropriate,

some courts have applied the following list of non-exclusive and disjunctive factors

(the "Zenith Factors" or individually, a "Zenith Factor"):

> (1) an identity of interest between the debtor and the third party, such that a suit
> against the non-debtor is, in essence, a suit against the debtor or will deplete assets
> of the estate; (2) substantial contribution by the non-debtor of assets to the
> reorganization; (3) the essential nature of the injunction to the reorganization to the
> extent that, without the injunction, there is little likelihood of success; (4) an
> agreement by a substantial majority of creditors to support the injunction,
> specifically if the impacted class or classes "overwhelmingly" votes to accept the
> plan; and (5) provision in the plan for payment of all or substantially all of the
> claims of the class or classes affected by the injunction.

*In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999); *see also In re 710 Long Ridge*

*Road Op. Co., II, LLC*, No. 13-13653, 2014 WL 886433, at *14 (Bankr. D. N.J. Mar. 5, 2014)

(providing that although the Zenith Factors are not requirements for the approval of third-party

releases, they may be instructive to the court).

84.     Applying either standard—business judgment or the Zenith Factors—this Court

should approve the Debtor/Estate Release.  The Debtor/Estate Release is an essential component

of the Plan and constitutes a sound exercise of the Debtors' business judgment.  Indeed, the Plan

represents a fully-integrated resolution of these difficult cases that provides substantial benefit to

the Debtors and their estates, creditors, and other stakeholders.  It is also the result of extensive

negotiations with, and embodies a settlement reached by myriad parties in interest.  Under these

circumstances, the Debtor/Estate Release is a sound exercise of the Debtors' business judgment

and should be approved.

85.     In addition to being an integral component of the Plan and a sound exercise of the

Debtors' business judgement, the Debtor/Estate Release, satisfies the Zenith Factors.

86.     First, an identity of interest exists between the Debtors and certain of the Released
Parties. An identity of interest may be established where the non-debtor is entitled to
indemnification from the debtor. *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D.
Del. 2013) ("An identity of interest exists when, among other things, the debtor has a duty to
indemnify the nondebtor receiving the release."). The Debtors owe indemnification obligations to
their current and former officers, directors, agents, or employees. Thus, the Debtor/Estate Release
satisfies the first Zenith Factor. *In re Indianapolis Downs, LLC,* 486 B.R. at 303; *see In re
Washington Mut., Inc.*, 442 B.R 314, 349 (Bankr. D. Del. 2011).

87.     Second, the Released Parties have made a substantial contribution to the Chapter
11 Cases in exchange for the Debtor/Estate Release. Courts have emphasized that "[a]n analysis
of 'substantial contribution' is necessarily fact specific'" and must be approached on a case-by-
case basis. *In re One2One Commc'ns, LLC*, Case No. 12-27311, 2016 WL 3398580, at *8 (D.
N.J. June 14, 2016) (surveying cases and noting that courts frequently reach different conclusions
about whether similar types of contributions are substantial in the context of different cases).
Specifically, the Released Parties have (a) maximized value for the Debtors' Estates by proposing
and implementing the Plan, which, among other things, provides potential recoveries to the
unsecured creditors, (b) negotiated with the Debtors' key constituents to formulate and garner
support for the Plan, (c) worked to effectuate a value-maximizing sale; and (d) preserved value
through the expeditious resolution of these Chapter 11 Cases. All of this constitutes a substantial
contribution. *See, e.g., In re Zenith*, 241 B.R. at 111 (finding substantial contribution by officers
and directors who, among other things, designed and implemented the operational restructuring
and negotiated the financial restructuring); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070,

1079–80 (11th Cir. 2015) (debtors' professionals provided substantial contribution in the form of skilled labor and services).

88.     Third, the Debtor/Estate Release is integral.  As noted above, it is the result of extensive negotiations with the key parties.  Without the Debtor/Estate Release, confirmation of the Plan would not be possible.

89.     Fourth, as noted above, a substantial majority of the Debtors' major creditor constituencies support the Debtor/Estate Release, as evidenced by the voting results reflected in the Voting Declaration.

90.     As to the fifth Zenith Factor, the Plan does not provide for the payment of all or substantially all Claims and Interests, and thus that factor is not satisfied.

91.     Importantly, the Zenith Factors "are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *In re Wash. Mut., Inc.*, 442 B.R. at 346; *see also In re 710 Long Ridge Road Op. Co., II, LLC*, 2014 WL 886433, at *14 (citing Wash. Mut.).  Indeed, the Plan Proponents believe that pursuing claims against the Released Parties would not be in the interest of the Debtors' various stakeholders because the costs involved would likely outweigh any potential benefit derived from pursuing such claims.  Accordingly, as set forth above, the Debtor/Estate Release represents a valid exercise of the Debtors' business judgment, and the Plan Proponents respectfully submit that these provisions should be approved.

### 17.     Consensual Third-Party Releases

92.     Section 15.2 of the Plan also provides for certain third-party releases of each Released Party by the Creditors entitled to receive Distributions under the Plan (the "Third-Party Release").  In the Third Circuit, where releasing parties have consented to a provision in a plan of reorganization that releases claims against non-debtors, such releases will be approved on the basis

of general principles of contract law. *First Fid. Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir. 1993)

(noting that a consensual third-party release is no different from any other settlement or contract

and does not implicate section 524(e)); *see also In re Mallinckrodt PLC*, 639 B.R. 837, 877 (Bankr.

D. Del. 2022) (approving third-party release that applied to shareholders deemed to reject the plan

and unsecured creditors who were unimpaired or who did not return a ballot with the opt out box

checked or otherwise submit an opt out form as consensual); *In re Indianapolis Downs*, 486 B.R.

286, 304–05 (Bankr. D. Del. 2013) (approving third-party release that applied to unimpaired

holders of claims deemed to accept the plan as consensual); *U.S. Bank Nat'l Ass'n v. Wilmington

Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 144 (Bankr. D. Del. 2010) (same); *In re Wash.

Mut., Inc.*, 442 B.R. at 352 (observing that consensual third-party releases are permissible); *In re

Zenith Elecs. Corp.*, 241 B.R. at 111 (approving non-debtor releases for creditors that voted in

favor of the plan).

93.    The determination as to whether a third-party release is consensual depends on the

particular circumstances at issue in a particular case. *See In re Indianapolis Downs*, 486 B.R. at

305.    Affirmative consent to a third-party release is not required for such release to be

"consensual." *See id.*; *In re Spansion, Inc.*, 426 B.R. at 144. Rather, a third-party release is

consensual against non-debtor parties where the releasing parties have the opportunity to opt out

of the release but fail to do so. *See In re Indianapolis Downs*, 486 B.R. at 305–06; *In re Spansion,

Inc.*, 426 B.R. at 144. Courts recognize that "shareholders and creditors have an obligation to read

their mail." *In re Mallinckrodt*, 639 B.R. at 880 (quoting *In re EV Energy Partners*, No. 18-10814,

Hr'g Tr. at 214 (Bankr. D. Del. May 16, 2018) ("[S]hareholders and creditors have to read legal

notices; that's just the way it is. And if you don't know that, then you're proceeding at your own

risk when you invest in stocks and credit and bonds.")); *see also In re Arsenal Intermediate*

*Holdings, LLC*, No. 23-10097 (CTG), 2023 WL 2655592, at *7 (Bankr. D. Del. Mar. 27, 2023)

("[T]he creditor who throws away the plan unopened is barred from arguing that the third-party

release failed to meet the *Continental* standard.").

94.     Here, all parties in interest will be given ample opportunity to evaluate and opt out

of the Third-Party Release.  For example, stakeholders in the voting Classes and in the non-voting

Classes will receive notice and opportunity to "opt out" of the Third-Party Release by checking

the appropriate box on the opt-out form.

95.     Furthermore, all voting stakeholders and non-voting stakeholders will be asked to

certify that they read and understood the election they were making in the opt-out form and will

receive notice and instructions for doing so.  Such stakeholders may opt out by checking the

appropriate box on the opt-out form or objecting on or before the opt-out deadline (November 18,

2025, at 4:00 p.m., prevailing Eastern Time).  Courts in New Jersey, the Third Circuit, and across

the country have routinely held that third-party releases on the above-described terms are

consensual. *See e.g., In re Bed Bath & Beyond Inc.*, No. 23-13359-VFP (MBK) (Bankr. D.N.J.

Sept. 14, 2023); *In re BlockFi, Inc.*, No-2219361 (MBK) (Bankr. D.N.J. Oct. 4, 2023); *In re

Cyxtera Techs.*, No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023); *In re SLT Holdco, Inc.*, No.

20-18368 (MBK) (Bankr. D.N.J. Oct. 22, 2020) (confirming a plan stating that all holders of claims

or interests (whether or not they were entitled to vote), were deemed to consent to the releases

unless they affirmatively opted out or objected to the releases); *In re SiO2 Medical Products, Inc.*,

No. 23-10366 (JTD) (Bankr. D. Del. July 19, 2023) (same); *In re Lannett Co., Inc.*, No. 23-10559

(JKS) (Bankr. D. Del. June 8, 2023) (same); *In re Carestream Health, Inc.*, No. 23-10778 (JKS)

(Bankr. D. Del. Sept. 28, 2022) (same); *In re Mallinckrodt PLC*, No. 20-12522 (JTD) (Bankr. D.

Del. Mar. 2, 2022) (same); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec.

4, 2021) (same); *In re Alex & Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. Sept. 22, 2021)

(same); In re Extraction Oil & Gas, Inc., No. 20-11548 (CSS) (Bankr. D. Del. Dec. 23, 2020)

(same); *In re Ctr. For Autism & Related Disorders, LLC*, No. 23-90709 (DRJ) (Bankr. S.D. Tex.

July 28, 2023) (same); *In re Cineworld Group PLC*, No. 22-90168 (MI) (Bankr. S.D. Tex. June

28, 2023) (same).

96.     For these reasons, the Third-Party Release is consensual as to all creditors and

interest holders who did not opt out or object, including those deemed to reject the Plan.

## b.  Exculpation and Limitation of Liability

97.     The Plan provides for the exculpation of, and limitation of liability for, the

Exculpated Parties.[10]    *See* Plan at § 15.1.  The exculpation and limitation of liability are subject to

a standard carve-out for willful misconduct, fraud, bad faith, and gross negligence.  Plan at § 15.1.

98.     It is well established that exculpation is appropriate for fiduciaries of a bankruptcy

estate, including the debtor, its directors, officers, and professionals, and the official committee of

unsecured creditors, its members, and its professionals.  *In re PWS Holding Corp.*, 228 F.3d 224,

245–47 (3d Cir. 2000).  In the instant case, the Exculpated Parties have participated in good faith

in formulating and negotiating the Plan, and they are entitled to protection from exposure to claims

against them relating to their participation in these Chapter 11 Cases, consistent with § 1125(e).

---

[10] Exculpated Parties means collectively (a) the Debtors, (b) John Brecker in any capacity, including, without limitation, his capacity as Independent Manager of Powin LLC, (c) Gerard Uzzi in any capacity, including, without limitation, in his capacity as Chief Restructuring Officer of Powin, LLC and as former Independent Manager of Powin, LLC, (d) Brian Kane, Chad Paulson, any others agreed to between the Committee and the Debtors, in any capacity, subject to approval by the Committee based on the results of its investigation and (if required by the Committee) execution of an agreement satisfactory to the Committee to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, (e) members of the Committee (solely in their capacities as Committee members), (f) Bankruptcy Court-approved Estate and Committee professionals, and (g) any other party, subject to approval by the Committee, which may be withheld for any reason or conditioned on execution of any appropriate agreement to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, for whom the Debtors determine exculpation is appropriate.

As a result, the exculpation provisions of section 15.1 of the Plan are appropriate and should be approved.

### c. Injunction

99.      Finally, section 15.3 of the Plan contains an injunction provision that the Plan Proponents believe is necessary to enforce and preserve the release and exculpation provisions provided for in the Plan and should, therefore, be approved.  Furthermore, in compliance with Bankruptcy Rule 3016, all acts to be enjoined by, and all entities that are subject to, such injunction are identified in "specific and conspicuous," bolded language in the Plan and the proposed Confirmation Order. The Plan's injunction provisions are therefore appropriate and should be approved.

### 18.      Modifications of the Plan Do Not Adversely Change the Treatment of Any Creditor or Equity Interest Holder.

100.      Section 1127(a) provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of §§ 1122 and 1123. Further, when the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.  Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.  *See, e.g., In re Burns & Roe Enters., Inc.*, Case No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors"); *In re Global Safety Textiles Holdings LLC*, Case No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or re-solicitation).

101.    Any proposed modifications to the Plan incorporated in the proposed Confirmation Order will not adversely change the treatment of any Claim against the Debtors and should be approved.

### 19.    Waiver of Bankruptcy Rules Regarding Stay of Confirmation Order

102.    The Plan Proponents respectfully request that, pursuant to Bankruptcy Rule 3020(e), the Bankruptcy Court waive the 14-day stay of the Confirmation Order.  *See* Plan at § 19.16.  Such a waiver is appropriate in these circumstances to allow the Liquidating Trustee to commence fulfilling its duties as quickly as practicable, to promote prompt distributions under the Plan and Liquidating Trust Agreement for the benefit of creditors, and because a significant number of implementation activities are capable of being undertaken in short order.  Accordingly, the Plan Proponents respectfully submit that good cause exists to support the waiver of the stay imposed by Bankruptcy Rule 3020(e).

## REPLY TO OBJECTIONS TO CONFIRMATION

### A.    The U.S. Trustee's Objection Should be Overruled.

#### 1.    The Third-Party Release is Consensual, Permissible, and Appropriate, and the Bankruptcy Court has Jurisdiction to Approve the Third-Party Release.

103.    The U.S. Trustee objects to the Plan's Third-Party Release, arguing that it is not consensual. [*See* Docket No. 1070, pp. 14-30.] The Debtors respectfully disagree and submit the Third-Party Release is appropriate and consensual. As set forth above, under the terms of the Plan, each holder of a Claim or Interest that does not check the appropriate box on and timely return the Ballot or Release Opt-Out Election Form to opt-out of the Third Party Release, will be considered a Releasing Party which has consented to the Third-Party Release. All parties in interest have had ample opportunity to evaluate and opt out of the Third-Party Release by returning the Release Opt-Out Election Form and checking the opt-out box.  Consequently, the Third-Party Release is

consensual, complies with Third Circuit law, and is supported by the facts and circumstances of these Chapter 11 Cases.

104.   The Court unambiguously has the authority to approve the Third-Party Release, and courts in this District, other courts in the Third Circuit, and courts across the country routinely exercise that authority by confirming plans containing third-party releases similar to those contained in the Plan. *See, e.g., In re Rite Aid Corp*., No. 23-18993 (MBK) (Bankr. D.N.J. Aug. 16, 2024) (confirming plan and finding that all holders of claims and interests that do not check the "opt out" box on a timely returned ballot or opt-out form will have consented to the third-party release); *In re WeWork Inc*., No. 23-19865 (JKS) (Bankr. D.N.J. May 30, 2024) (same); *In re Blockfi Inc*., No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023) (confirming a plan stating that all holders of claims or interests entitled to vote on the plan or deemed to accept the plan were deemed to consent to the releases unless and until they affirmatively opted out or objected to the releases); *In re Cyxtera Technologies, Inc*., No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023) (confirming a plan stating that all holders of claims or interests (whether or not they were entitled to vote) were deemed to consent to the releases unless and until they affirmatively opted out or objected to the releases); *In re SLT Holdco, Inc*., No. 20-18368 (MBK) (Bankr. D.N.J. Oct. 22, 2020) (confirming a plan stating that all holders of claims or interests (whether or not they were entitled to vote) were deemed to consent to the releases unless they affirmatively opted out or objected to the releases); *In re SiO2 Medical Products, Inc*., No. 23-10366 (JTD) (Bankr. D. Del. July 19, 2023) (same); *In re Lannett Co., Inc*., No. 23-10559 (JKS) (Bankr. D. Del. June 8, 2023) (same); *In re Carestream Health, Inc*., No. 23-10778 (JKS) (Bankr. D. Del. Sept. 28, 2022) (same); *In re Mallinckrodt PLC*, No. 20-12522 (JTD) (Bankr. D. Del. Mar. 2, 2022) (same); *In re Riverbed Tech., Inc*., No. 21-11503 (CTG) (Bankr. D. Del. Dec. 4, 2021) (same); *In re Alex & Ani, LLC*, No. 21-10918 (CTG)

(Bankr. D. Del. Sept. 9, 2021) (same); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS)

(Bankr. D. Del. Dec. 23, 2020) (same); *In re Ctr. For Autism & Related Disorders, LLC*, No. 23-

90709 (DRJ) (Bankr. S.D. Tex. July 28, 2023) (same); *In re Cineworld Group PLC*, No. 22-90168

(MI) (Bankr. S.D. Tex. June 28, 2023) (same).

105.    The U.S. Trustee's contention that the Third-Party Release is not consensual is

belied by the extensive notice of the existence of the Third-Party Release, the plain language of

the Plan, and the robust service of the Court-approved Release Opt-Out Election Forms to Holders

of Claims and Interests alerting them to the Third-Party Release and the procedures for exercising

their right to opt out of the Third-Party Release. The law is clear that a release is consensual where

parties have received sufficient notice of a plan's release provisions and have had an opportunity

to object to or opt out of the release and failed to do so (including where such holder abstains from

voting altogether).

106.    Courts in this jurisdiction, including this Court, have overruled similar objections

by the U.S. Trustee in several recent cases. In *In re Bed Bath & Beyond Inc.*, for example, the

debtors sought approval of a plan that included an opt-out mechanism for holders of claims deemed

to accept the plan or those who voted to reject the plan but who did not opt out. *In re Bed Bath &*

*Beyond Inc.*, No. 23-13359-VFP (MBK) (Bankr. D.N.J. Sept. 14, 2023). The court overruled the

U.S. Trustee's objection to the third party releases, holding that:

> The requirement to check a box electronically or on paper is minimal. It's a
> minimal task to preserve one's rights when faced with the need to protect
> one's interests. Within the law, we expect that of parties all the time . . . .
> What is essential, though, is that the parties be given notice of that
> obligation. That is critical. And here there can be no question that there was
> adequate clear and conspicuous notice. The obligation to affirmatively opt
> out appears in the plan, in the disclosure statement, in the ballots. It should
> come as no surprise. And I'll note, anecdotally, again, we seem to accept a
> very low threshold for notice these days. You can scroll through on your
> phone an agreement and just scrolling through is deemed it gives you

sufficient notice. Anybody who watches TV sees the tiniest of print, disclaimers, boilerplate, that last on a screen for 25 milliseconds and that's deemed sufficient notice. Let alone, those who listen on a radio and hear voice overs do disclaimers that are virtually incomprehensible they're so quick. This is not the situation here with these notices. Again, they've been conspicuous. They've been clear. There's transparency and I don't view it as burdensome in order to protect their interests. The ability to opt out and pursue claims exists. It takes the simple task of reading a document, either digitally or in paper, and exercising opt out. So, I'm overruling the objections consistent with prior ruling within this circuit, prior rulings within this court and, specifically prior cases that I've had.

*Id.*, Hr'g Tr. at 38–40 (Bankr. D.N.J. Sept. 12, 2023).

107.    Similarly, in *In re Blockfi,* the debtors sought approval of a plan that included an

opt-out mechanism, and there, this Court overruled the U.S. Trustee's objection, holding that:

> I expect, and I think as a society -- and I said this at the *Bed Bath & Beyond* hearing -- we have a number of examples where expect action to preserve your rights. You have to answer a summons or complaint. You have to respond to a jury demand. You have to unsubscribe. You have to reject cookies. There are things you have to do, and we do it all the time. And simply checking a box to preserve your right is not onerous, is not an obstacle, and is not a hindrance as long as you're on notice of the need to do so.

*In re BlockFi Inc.*, Hr'g Tr. at 110-11, No. 22-19361 (MBK) (Bankr. D.N.J. Sept. 26, 2023).

108.    Here, the Debtors clearly and conspicuously included the Third-Party Release

language in the Release Opt-Out Election Forms, the Ballots, and the Plan, and through those

documents, have explicitly alerted parties that, unless they expressly opt out of the Third-Party

Release, they will be a Releasing Party under the Plan. Any overwhelming percentage of

stakeholders voted in favor of the Plan, which included disclosure of the mechanism to opt-out of

the Third-Party Release. *See* Voting Declaration. Also, all voting stakeholders and non-voting

stakeholders certified that they read and understood the election they were making in the Release

Opt-Out Election Form and received notice and instructions for doing so.    Accordingly, there is

no question that all applicable stakeholders had proper notice of their rights and could have chosen

to opt out of the Third-Party Release. Further, because the Third-Party Release applies only to Holders of Claims or Interests that do not opt out of the Third-Party Release, it is consensual under the weight of authority (in this district and others) of what constitutes consent in the context of a third-party release. *In re Lannett Company, Inc*., Hr'g Tr. at 36:2-8, No. 23-10559 (JKS) (Bankr. D. Del. Jun. 8, 2023) ("As I and others on this Court have previously ruled, when a disclosure is prominent and conspicuous an opt-out mechanism is a valid means of obtaining consent. It is incumbent on effected parties who have been properly served to protect their own rights. Parties that fail to act in response to a judicial process are routinely bound by the result of the process."); *In re Indianapolis Downs*, 486 B.R. at 306 ("As for those impaired creditors who abstained from voting on the Plan, or who voted to reject the Plan and did not otherwise opt out of the releases, the record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots. Under these circumstances, the Third-Party Releases may be properly characterized as consensual and will be approved.").

109.    The Third-Party Release is consensual, and the scope of the Third-Party Release here is necessary for the consummation of the Plan, warranted under the circumstances, clearly permitted by the applicable law, and should be approved as contemplated. Accordingly, this objection of the U.S. Trustee should be overruled.

### a. The Debtor/Estate Release Is Appropriate and Consensual.

110.    The U.S. Trustee argues that certain of the releases contained in the Debtor/Estate Release is overly broad because the Plan does not establish that each of the proposed Released Parties provided adequate consideration in exchange for receiving the Debtor/Estate Release and that certain of the Released Parties are not entitled to the Debtor/Estate Release under applicable case law. *See* Docket No. 1070, pp. 30-33. Support for the Debtor/Estate Release is laid out in

detail in Section 16(a) herein.  However, the Debtors respond to the U.S. Trustee's objections with respect to each *Zenith* Factor below.

111.    The U.S. Trustee asserts that the first *Zenith* Factor is not met because it is unclear whether an identity of interest exists between the Debtors and each of the Released Parties. An identity of interest clearly exists between the Debtors and the Released Parties because each of the Released Parties, as a stakeholder and critical participant in the Plan process, shares a common goal with the Debtors in seeing the Plan succeed and would have been highly unlikely to participate in the negotiations and compromises that led to the formulation of the Plan (or to participate in the ultimate implementation of it) without the Debtor/Estate Release.  Moreover, the Debtors owe indemnification obligations to their current and former officers, directors, agents, or employees. As a final point, Brian [Kane] and Chad [Paulson] have agreed to cooperate with the Litigation Trust.

112.    As for the second *Zenith* Factor, the U.S. Trustee argues that contributions related to operational restructuring or negotiating a financial restructuring do not qualify as "substantial contributions." To the contrary, courts in this district have found that a wide variety of acts, including playing an integral role in the formulation of the Plan and expending significant time and resources negotiating the Plan, constitute substantial contributions for the purposes of a debtor release. *See, e.g., In re Zenith Elecs. Corp*., 241 B.R. at 111 (finding non-debtor parties had substantially contributed where (a) officers and directors made substantial contributions by designing and implementing the operational restructuring and negotiating the financial restructuring, (b) plan sponsor funded the plan and agreed to compromise its claim, and (c) a committee negotiated the plan and assisted in the solicitation of its constituents); *In re Tribune Co*., 464 B.R. 126, 189 (Bankr. D. Del. 2011) (finding non-debtor party had substantially

contributed where non-debtor parties entered into a settlement where non-debtor parties agreed to reduce their claim); *In re Long Ridge Rd.*, 2014 WL 886433, at *14 (finding that the non-debtor party had substantially contributed by providing financial support, without which the plan would not be feasible). In this case, each the Released Parties have (a) maximized value for the Debtors' Estates by proposing and implementing the Plan, which, among other things, provides potential recoveries to the unsecured creditors, (b) negotiated with the Debtors' key constituents to formulate and garner support for the Plan, (c) worked to effectuate a value-maximizing sale; and (d) preserved value through the expeditious resolution of these Chapter 11 Cases.  All of this constitutes a substantial contribution.

113.    As for the third *Zenith* Factor, without the substantial contributions of the Released Parties, for which the Debtor/Estate Release were a material inducement, the Debtors would not have the substantial support of voting creditors, and the transactions contemplated by the Plan would not be possible. Therefore, although the Plan is a liquidating plan, the Debtor/Estate Release is integral to the confirmation of the Plan.

114.    The fourth *Zenith* Factor is clearly met given that 98.33% of holders of WARN Act Claims, 100% of holders of Settled Priority Claims, and 89.78% of holders of General Unsecured Claims (the three Voting Classes) voted to accept the Plan. *See* Voting Declaration.

115.    Finally, as to the fifth *Zenith* Factor, while the Plan does not provide for payment of all or substantially all of the unsecured creditors' claims, the Plan still provides for meaningful recoveries to unsecured creditors. As demonstrated through the Liquidation Analysis, the range of recoveries for Holders of Claims and Interests are materially higher under the Plan than they would have been in a chapter 7 liquidation scenario. [*See* Docket No. 1038, Exhibit G]. The Plan has been carefully crafted to maximize value and provides meaningful recoveries for all stakeholders.

116.    Additionally, the U.S. Trustee also argues that the Debtor/Estate Release is overly broad because it includes unknown parties. To alleviate this concern, the Plan Proponents agree to delete the following from the definition of Released Parties: "any others agreed to between the Committee and the Debtors, in any capacity, subject to approval by the Committee based on the results of its investigation and (if required by the Committee) execution of an agreement satisfactory to the Committee to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, (e) members of the Committee (solely in their capacities as Committee members)" and "any other party, subject to approval by the Committee, which may be withheld for any reason or conditioned on execution of any appropriate agreement to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, for whom the Debtors determine a release is appropriate." The Plan Proponents respectfully submit that the proposed deletions address the concerns of the U.S. Trustee.

117.    For the reasons set forth above, the Debtor/Estate Release is consistent with Third Circuit Precedent and should be approved. *See, e.g., In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. May 31, 2024) (approving a Plan providing for releases of certain former directors and officers); *In re WeWork, Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. May 30, 2024) (same); *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023); *In re Bed Bath & Beyond Inc.*, No. 23-13359-VFP (MBK) (Bankr. D.N.J. September 14, 2023) (same); *In re One Aviation Corp.*, No. 18-12309 (CSS) (Bankr. D. Del. Sep. 18, 2019) (approving Plan providing for definition of Released Parties including, among others, the Debtors' directors and officers); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 29, 2019) (same); *In re Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del. Jan. 31, 2019) (same); *In re TK*

*Holdings Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Feb. 21, 2018) (same); *In re Samson Resources Corp.*, No. 14-11934 (CSS) (Bankr. D. Del. Feb. 13, 2017) (same); *In re Horsehead Holding Corp.*, No. 16-10287 (CSS) (Bankr. D. Del. Sep. 9, 2016) (same). Taken together, the foregoing considerations provide ample support for the appropriateness of the Debtor/Estate Release under the Bankruptcy Code and applicable case law.

### b. The Plan's Exculpation Provision Should be Approved.

118.    The U.S. Trustee objects to the Plan's exculpation provision because it is allegedly overbroad and contravenes Third Circuit precedent because the Plan's definition of Exculpated Parties includes unknown persons who may not be estate fiduciaries. [Docket No. 1070, p. 33]. To alleviate this concern, the Plan Proponents have agreed to remove the following from the definition of Exculpated Parties: "any others agreed to between the Committee and the Debtors, in any capacity, subject to approval by the Committee based on the results of its investigation and (if required by the Committee) execution of an agreement satisfactory to the Committee to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims" and "any other party, subject to approval by the Committee, which may be withheld for any reason or conditioned on execution of any appropriate agreement to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, for whom the Debtors determine a release is appropriate."

119.    The U.S. Trustee also argues that the Plan's exculpation provision seeks to "deem" the Exculpated Parties as having participated in good faith, which would allegedly swallow the exception in the Plan that limits exculpatory relief for "any action (or inaction) constituting willful misconduct, fraud, bad faith, or gross negligence (in each case subject to determination by final order of the Bankruptcy Court))." [Docket No. 1070, p. 34]. The Plan's exculpation provision, however, does not "deem" that the Exculpated Parties participated in good faith.  Instead, section

15.1 merely provides that "[t]he Exculpated Parties will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, the sale or other disposition of the Debtors' assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan . . . ."  Thus, only *if* Exculpated Parties acted in good faith will they receive an exculpation under the Plan.

120.    Also, the U.S. Trustee argues that the Exculpated Parties are not entitled to the protections of section 1125(e) of the Bankruptcy Code because it is unclear whether each of the Exculpated Parties participated in solicitation of acceptances or rejections of the Plan. The Exculpated Parties in this case, however, are each related to the Plan Proponents.  The Exculpated Parties include the Debtors; certain of the Debtors' officers, Independent Manager, and Chief Restructuring Officer; the Committee members; and Committee and Estate professionals.  Because the Plan Proponents participated in the negotiation and solicitation of votes on the Plan, it is appropriate to grant the Exculpated Parties protection under section 1125(e) of the Bankruptcy Code.

121.    Accordingly, for the above reasons, the Court should overrule the U.S. Trustee objection and approve the Plan's exculpation provision.

### c.  The Injunction Provision Is Appropriate and Complies with the Bankruptcy Code.

122.    The U.S. Trustee takes the incorrect position that the injunctive provision in section 15.3 of the Plan effects a discharge. However, the U.S. Trustee's position misunderstands the concept of the Liquidating Trust. The Plan does not serve to discharge claims of creditors, rather the Liquidating Trust will assume liability for and make distributions to claimants.  Even though

the Debtors are not receiving a discharge, it is entirely permissible to provide that assets transferred

to the Liquidating Trust should be insulated from claims that might otherwise be asserted against

the Debtors. *See In re Midway Gold US, Inc*., 575 B.R. 475, 515 (Bankr. D. Colo. 2017) (denying

debtors a discharge but approving the following plan language as permissible: "Claimants may not

seek payment or recourse against or otherwise be entitled to any Distribution from the Liquidating

Trust Assets except as expressly provided in this Plan and the Liquidating Trust Agreement."); *see*

*also In re Lambertson Truex, LLC*, No. 09-10747, 2009 Bankr. LEXIS 4812, at *14 (Bankr. D.

Del. July 27, 2009) (confirming plan of liquidation with the following language: "the Debtor and

the Estate shall be deemed to have transferred and/or assigned any and all of their assets as of the

Effective Date […] to the beneficiaries of the Liquidation Trust free and clear of all Claims, Liens

and contractually imposed restrictions, except for the rights to distribution afforded to holders of

Claims under the Plan; and immediately thereafter, such assets shall be deemed transferred by such

beneficiaries to the Liquidation Trustee in trust."). This objection of the U.S. Trustee should also

be overruled.

### d.  It is Appropriate to Deem the Plan Substantially Consummated on the Effective Date.

123.    Although the U.S. Trustee argues to the contrary, it is appropriate to deem the Plan

substantially consummated on the Effective Date. *See* Plan, § 19.15.  "Substantial Consummation"

under the Bankruptcy Code "means:  (A) transfer of all or substantially all of the property proposed

by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under

the plan of the business or of the management of all or substantially all of the property dealt with

by the plan; and (C) commencement of distribution under the plan."  *See* 11 U.S.C. § 1101(2).  In

this case, on the Effective Date, the Debtors will make significant Effective Date Payments and

fund various reserves on the Effective Date, plus transfer all remaining assets of the Estates to the

Liquidating Trust.  *See* Plan, § 13.3. Also on the Effective Date, the Liquidating Trust Assets shall

vest automatically in the Liquidating Trust, which shall succeed to all of the Debtors' rights, title

and interest in the Liquidating Trust Assets.  *Id*.  Thus, on the Effective Date, the Plan shall be

substantially consummated under section 1101(2) of the Bankruptcy Code.  This Court has entered

confirmation orders in other cases which similarly find that the plan is deemed substantially

consummated upon the plan's effective date. *See, e.g., In re Rite Aid Corp*., No. 23-18993 (MBK)

(Bankr. D.N.J. Aug. 16, 2024) (confirmation order providing that plan is deemed substantially

consummated on the effective date); *In re WeWork Inc*., No. 23-19865 (JKS) (Bankr. D.N.J. May

30, 2024) (same).  Accordingly, this objection to the Plan should be overruled.

### e.  A Waiver of the Rule 3020 Stay is Appropriate.

124.    The U.S. Trustee also objects to the Plan Proponents' request for a waiver of the

14-day stay of an order confirming the Plan under Bankruptcy Rule 3020(e). However, such a

waiver is appropriate in this case to allow the Liquidating Trustee to commence fulfilling its duties

as quickly as practicable, to promote prompt distributions under the Plan and Liquidating Trust

Agreement for the benefit of creditors, and because a significant number of implementation

activities are capable of being undertaken in short order.  For these reasons, the Debtors request

that the Court overrule the U.S. Trustee's objection and approve a waiver of stay imposed by the

Bankruptcy Rule 3020(e).

### f.  The Plan's Language Concerning Compromise, Settlement, Release, and Discharge is Appropriate

125.    The U.S. Trustee argues that "compromise, settlement, release and discharge"

should be removed from the Plan provisions concerning treatment of Allowed Priority Non-Tax

Claims and Allowed Other Secured Claims because these claimants have not agreed to

compromise, settled, or released their claims and the Debtors are not entitled to a discharge.  This

Court, however, has approved the same description regarding treatment of claims in other

bankruptcy plans that is included in sections 9.1(b) and 9.2(b).  *See, e.g., In re Rite Aid Corp.*, No.

23-18993 (MBK) (Bankr. D.N.J. Aug. 16, 2024) (confirming plan which provides that certain

claimants are receiving payment "in full and final satisfaction, compromise, settlement, release of

and in exchange for such claims"); *In re Bed Bath & Beyond Inc.*, No. 23-13359-VFP (MBK)

(Bankr. D.N.J. September 14, 2023) (confirming plan which provides that payment of certain

claims is "[i]n full and final satisfaction, compromise, settlement, release, and discharge" of sch

claims). To alleviate the U.S. Trustee's objection, however, the Plan Proponents agree to remove

the reference to "discharge" of claims in sections 9.1(b) and 9.2(b) of the Plan.

> ### g.  The Plan Proponents Agree to Adopt the U.S. Trustee's Proposed Language Concerning Payment of Statutory Quarterly Fees.

126.    The Plan Proponents have agreed to adopt the following language proposed by the

U.S. Trustee regarding payment of statutory quarterly fees in sections 3.1, 7.2(a) and 7.2(c) of the

Plan:

> All statutory quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) payable on or before the Effective Date shall be paid by the Debtors in full in cash on the Effective Date.  After the Effective Date, the Debtors, any entity making disbursements on behalf of any Debtors, including the Wind-Down Officer, the Liquidating Trust and Liquidating Trustee, and the Direct Claims Trust and Direct Claims Trustee (solely in their capacity as such), or any entity making disbursements on account of an obligation of any Debtors, including the Wind-Down Officer, the Liquidating Trust and Liquidating Trustee, and the Direct Claims Trust and Direct Claims Trustee (solely in their capacity as such), shall be jointly and severally liable to pay any and all statutory quarterly fees in full in cash when due and payable in these Chapter 11 Cases for each quarter (including any fraction thereof) until the earliest of that Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11MOR. After the Effective Date, the Debtors, the Wind-Down Officer, the Liquidating Trustee, and the Direct Claims Trustee shall cause to be filed with the Bankruptcy Court post-

confirmation quarterly reports for these Chapter 11 Cases for each quarter (including any fraction thereof) that these Chapter 11 Cases are pending, using UST Form 11-PCR. The U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to statutory quarterly fees in these Chapter 11 Cases and shall not be treated as providing any release under the Plan. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

**B.    Reply to Purchaser Objection**

127.    The purchaser of substantially all of the Debtors' assets, FlexGen Power Systems, LLC, filed an objection to confirmation of the Plan, wherein it asserts that the Plan is not feasible. This objection is without merit. As set forth in Section II(B)(11) hereof, the Plan Proponents have met their burden under § 1129(a)(11) with respect to feasibility.

128.    Specifically, as more fully set forth in the Uzzi Declaration, the Plan Proponents have engaged in good faith and arm's length negotiations with the largest holders of such Administrative and Priority Claims, and such holders have agreed to defer payment thereon until after the Effective Date, at such point as the Liquidating Trust has obtained the liquidity, from litigation, releases of certain other claims, and other sources, to satisfy such Claims in full. Additionally, the Debtors have recently reached an agreement to release certain collateral which will provide them with additional liquidity.

129.    Accordingly, the objection of the purchaser of substantially all of the Debtors' assets should be overruled.

**C.    Reply to Customers' Objection**

130.    Certain of the Debtors' customers have objected to confirmation of the Plan based on the incorrect assertion that certain assets of the Debtors' estates belong to customers, and should not be administered through the Plan.

131.   First, the Plan, by its express terms, only applies to assets of the Debtors' estates. To the extent an asset does not comprise an estate asset, it will not be administered through this Plan.  Nothing in the Confirmation Order abridges any party's right to seek a determination that any asset should be considered an estate asset post-confirmation.  However, such a declaratory judgment should be sought through a properly commenced adversary proceeding pursuant to Bankruptcy Rule 7001(i), not a confirmation objection.  The fact that a dispute may or may not exist as to whether an asset constitutes an asset of the Debtors' estates is no reason to delay or deny confirmation of the Plan.

132.   Second, even notwithstanding the foregoing, the assets in question belong to the Debtors' estates.  It is well established that commingled assets are generally considered assets of a debtor's estate.  *See In re Prime Core Techs. Inc.*, No. 23-11161, 2025 WL 2027499, at *16-17 (Bankr. D. Del. July 18, 2025) (assets that were "hopelessly comingled" the debtor's assets comprised assets of the debtor's estate).  Here, the assets in question contain no distinguishing qualities from the rest of the property of the Debtors, are not earmarked in any way, shape, or form, and are therefore "hopelessly commingled" with the Debtors' assets.  In fact, upon information and belief, the customers did not even so much as file a UCC statement with respect to the property in which they assert a property interest.  Accordingly, the objection of the customers should be overruled.[11]

**D.   Reply to CS Energy Objection**

133.   CS Energy, LLC ("CSE") filed an objection to the plan [Docket No. 1072] (the "CSE Objection") that argues that CSE should be allowed to name the Debtors as a nominal

---

[11] The customers also take the position that confirmation should be denied based on certain warranty issues.  The Debtors are addressing that argument in a separate pleading and fully incorporate it herein.  For the reasons set forth therein, the objection of the customers should also be overruled with respect to that argument.

defendant in coverage actions involving CSE (the "Coverage Actions").  The Plan Proponents do not oppose CSE's request to be able to name the Debtors as nominal parties, provided that no representative of the Debtors or Liquidating Trustee, as applicable, be required to appear and participate in the Coverage Actions (which would be burdensome and expensive).

134.    The Plan Proponents are continuing to reach an agreement with CSE on appropriate language in the Confirmation Order.[12]

E.    **DTE Objection**

135.    DTE Electric Company ("DTE") asserts three objections [Docket No. 1073] (the "DTE Objection").  The Plan Proponents believe that they have resolved the DTE Objection by discussion and inclusion of language in the Confirmation Order.

136.    First, DTE objects that the Liquidating Trust must take causes of action subject to all defenses and counterclaims that could have been asserted against the Debtors.  DTE Objection ¶¶ 7-10.  As DTE notes, that a party takes causes of action subject to the defenses that could have been asserted against the Debtor is already the law, and no additional language is required.  However, DTE's proposed language inappropriately extends the law by permitting the assertion of "counterclaims" that could have been asserted "prior to the Effective Date."  The bar date has passed, and DTE's rights to assert counter-claims or setoff is thus limited by the operation of the bar date and other aspects of the Bankruptcy Code.  Reserving rights, the Plan Proponents believe they have reached agreement with DTE on Confirmation Order language to resolve this issue.

137.    Second, DTE objects that the Liquidating Trustee's authority to abandon or destroy books and records is too broad.  DTE Objection ¶¶ 11-13.  DTE appears concerned about the

---

[12] Though the Debtors believe they will resolve the CSE Objection, they object to CSE's argument that the Plan violates *Purdue Pharma* because of an alleged failure to allow CSE to name the Debtors as a as nominal defendants. CSE Objection at ¶ 27 (citing *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 227 (2024)).  The *Purdue Pharma* decision only concerned actual releases of third parties, not the effect of releases of the debtor.

potential for the Liquidating Trust to destroy evidence that would be relevant to a pending or contemplating litigation by the Liquidating Trust. *See* DTE Objection at ¶ 12. But that would be textbook spoilation, prohibited by the language DTE quotes that the Liquidating Trustee is only permitted to abandon and destroy books and records "not required to be retained under applicable law." Plan Supplement, Ex. C, §4.11. The obligation to preserve, and not spoliate, evidence *is* applicable law. The Plan Proponents do not believe further clarification is required. As to DTE's concern about current or potential litigants getting notice of potential abandonment, either (a) they are involved or potentially involved in litigation with the Liquidating Trust, and thus such abandonment is prohibited; or (b) they are involved in litigation *not* including the Liquidating Trust, in which case those parties may be unknown to the Liquidating Trust, and such parties should obtain docket alerts for this case if they believe Powin documents may be relevant to their litigation. Reserving rights, the Plan Proponents believe they have reached agreement with DTE on Confirmation Order language to resolve this issue.

138.    Third, DTE asserts that the Plan's failure to identify which Direct Claims are being contributed to the Direct Claims Trust prevents creditors from making an informed decision. DTE Objection ¶¶ 14-15. But the Plan is clear: all of them. DTE admits as much, that they cover "any and all nonreleased claims against non-Debtor entities" related to Powin. DTE Objection ¶ 14. The Plan does not identify specific potential Direct Claims, because the Committee's (and, subsequently, the Direct Claims Trust's) investigation is ongoing. Further, as this Court well knows, in the Third Circuit it can be disputed if certain claims are "direct" claims vs. "derivative" claims based on how common the injury is among the creditor body. *See In re Whittaker Clark & Daniels Inc.,* No. 24-2210, 2025 WL 2611753 (3d Cir. Sept. 10, 2025). The Direct Claims Trust acts to ensure that litigation over any claims the Direct Claims Trust and the Liquidating Trust are

pursuing does not devolve into disputes over "particularized injury" at the expense of creditors of the estate. As DTE recognized the correct scope of the Direct Claims contributed to the Direct Claims Trust, its argument additional disclosure is required must fail. The Plan Proponents believe, that, after discussion with DTE, and in connection with the entire DTE Objection, that DTE is no longer pursuing this objection.

139.    For the reasons stated above, the DTE Objection should be overruled and the Plan confirmed.

### F.    Surety Objection

140.    Applied Surety Underwriters, Siriuspoint America Insurance Company and Pennsylvania Insurance Company (together, the "Surety") filed a limited objection to the Plan [Docket No. 1082]. The Debtors and Surety have agreed on language in the Confirmation Order to resolve the Surety's objection.

## CONCLUSION

WHEREFORE, the Plan Proponents respectfully submit that the Disclosure Statement should be approved on a final basis, the Plan should be confirmed, and any and all objections thereto should be overruled.

Dated: November 21, 2025            **DENTONS US LLP**

*/s/ Lauren Macksoud*
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300

Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

- and –

TOGUT, SEGAL & SEGAL LLP
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
            aglaubach@teamtogut.com
            eblander@teamtogut.com

*Counsel for Debtors and Debtors-in-Possession*