**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
  van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
  sarah.schrag@dentons.com

*Counsel for Debtors and Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street, Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
  eblander@teamtogut.com

Counsel for Debtors and
Debtors in Possession

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**DECLARATION OF GERARD UZZI IN SUPPORT OF CONFIRMATION OF JOINT COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF POWIN, LLC AND AFFILIATES THEREOF AND THE OFFICIAL <u>COMMITTEE OF UNSECURED CREDITORS</u>**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

I, Gerard Uzzi, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Chief Restructuring Officer (the "CRO") of Powin, LLC ("Powin") in the above-referenced chapter 11 cases ("Chapter 11 Cases"). I was appointed as CRO of Powin and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors") effective on June 9, 2025.

2. I am also a Managing Partner and Founder of CBMN Advisors LLC d/b/a Uzzi & Lall ("Uzzi & Lall"). Uzzi & Lall is an independent, boutique financial advisory firm specializing in helping clients manage acute change, financial stress, and operational disruption. Uzzi & Lall's professionals have direct experience advising and managing companies across a broad range of industries.

3. I have extensive experience advising companies, boards of directors, senior management, creditors, equity holders, and investors in stressed and distressed situations, including chapter 11, out-of-court work outs, and rescue financings across industries and jurisdictions. I also serve in a number of fiduciary capacities, including presently as the Chairman of the Celsius Litigation Oversight Committee.

4. Prior to co-founding Uzzi & Lall, I was a senior restructuring partner at Milbank LLP and White & Case LLP for over 18 years in the aggregate. During that time, I was personally involved in senior roles in some of the nation's largest and most complex chapter 11 cases, including Lehman Brothers, Washington Mutual, American Airlines, Rescap, Charter Communications, Mirant, Adelphia Communications, Purdue Pharma, and ZAIS. I have been recognized for my work in Chambers, Euromoney's IFLR, The Legal 500, and Expert Guides as one of the World's Leading Insolvency and Restructuring Professionals.

5. I am authorized to execute this declaration (the "Declaration"). I am currently serving as the Debtors' CRO and had substantial involvement with the Debtors prior to my appointment as CRO due to the Debtors' pre-petition engagement of Uzzi & Lall. On August 8, 2025, the Court entered an order authorizing the Debtors to (i) employ and retain Uzzi & Lall to provide a CRO and additional personnel and (ii) designate me as the CRO, effective as of June 9, 2025. *See* Docket No. 690.

6. I submit this declaration (the "Declaration") in support of confirmation, pursuant to section 1129 of Title 11 of the United States Code (the "Bankruptcy Code"), of the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors*, dated October 15, 2025 [Docket No. 942] (collectively with all exhibits thereto and as may be amended, modified, or supplemented from time to time, the "Plan").[2]

7. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtors' books and records, relevant documents, and other information prepared or collected by the Debtors' representatives and advisors, my opinion based on my experience with the Debtors' operations and financial condition, or upon my review of the *Declaration of Darlene S. Calderon with Respect To the Tabulation of Votes on the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors*, filed contemporaneously herewith (the "Voting Declaration"). I am authorized to submit this Declaration on behalf of the Debtors.

---

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

**A.    The Plan Complies with the Requirements of Section 1122 of the Bankruptcy Code**

8.     Section 3 of the Plan provides for the separate classification of Claims and Interests into distinct Classes based upon (a) their secured status, if applicable, (b) their legal priority against the Debtors' assets, and (c) other relevant factors:[3]

| CLASS | CLAIM/ EQUITY INTEREST |
|---|---|
| 1 | Priority Non-Tax Claims |
| 2 | Other Secured Claims |
| 3 | WARN Act Claims |
| 4 | Settled Priority Claims |
| 5 | General Unsecured Claims |
| 6 | Intercompany Claims |
| 7 | Interests |

9.     The classification scheme was not proposed principally (or otherwise) to create a consenting impaired Class and thereby manipulate voting.

10.    I understand that the legal rights of each of the Holders of Claims or Interest within a particular Class are substantially similar to other Holders of Claims or Interest within the same Class.

**B.    The Plan Satisfies Section 1129 of the Bankruptcy Code**

11.    Section 1129(a)(1). I am informed and believe that the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code (as well as other applicable provisions of the Bankruptcy Code and the Bankruptcy Rules) and, thus, satisfies the requirements of section 1129(a)(1).

12.    Section 1129(a)(2). I am informed and believe that the Debtors have complied with the applicable provisions of the Bankruptcy Code, including the provisions of sections 1125 and 1126 of the Bankruptcy Code, regarding disclosure and plan solicitation. In this regard, on October

---

[3]    In accordance with 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified. *See* Plan at § 3.1.

14, 2025, the Court entered an order granting conditional approval of the adequacy of the disclosures in the Plan and approving the procedures for the transmittal of the Plan and other solicitation materials [Docket No. 939] (the "Disclosure Statement Order").

13. As more fully described in the Voting Declaration, commencing on October 20, 2025, the Debtors, through the Claims Agent, caused solicitation materials to be transmitted in accordance with the Disclosure Statement Order. To the best of my knowledge and belief, and as evidenced by the Disclosure Statement Order, prior orders of the Bankruptcy Code, and the filings submitted by the Debtors, the Debtors have complied with all of the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice, disclosure, and solicitation in connection with the Plan, the disclosures therein, and all other matters considered by the Bankruptcy Court in connection with these Chapter 11 Cases. To the best of my knowledge and belief, the Debtors timely filed their Schedules. Finally, I believe that good, sufficient, and timely notice of the confirmation hearing and all other hearings in these Chapter 11 Cases have been provided to all Holders of Claims and Interests and all other parties in interest to whom notice was required to have been provided.

14. I am informed and believe that the Debtors have also complied with the requirements of section 1126 of the Bankruptcy Code. Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are unimpaired under the Plan and, because I understand that these Classes are conclusively deemed to accept the Plan, Holders of such Claims have not been solicited to vote on the Plan. Holders of Class 6 (Intercompany Claims) and Interests in Class 7 (Interests) are not entitled to receive or retain any property under the Plan, and, because I understand that such Classes are deemed to reject the Plan, Holders of such Claims and Interests have not been solicited to vote on the Plan. Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims), and Class 5 (General Unsecured Claims) are impaired under the Plan, and Holders of Class 3, Class 4,

- 5 -

and Class 5 Claims are entitled to receive property under the Plan. Accordingly, Holders of Class 3, Class 4, and Class 5 Claims have been solicited to accept or reject the Plan.

15. <u>Section 1129(a)(3)</u>. I believe that the Debtors have proposed the Plan in good faith. Throughout these Chapter 11 Cases, the Debtors have worked to build consensus among the various creditor constituencies. The Plan and the process leading up to its formulation are the result of extensive arm's length negotiations among the Debtors, the Committee, and other parties in interest. Accordingly, I believe that the Plan has been proposed by the Debtors for legitimate and honest purposes and is in the best interests of the Debtors' stakeholders.

16. <u>Section 1129(a)(4)</u>. It is my understanding that all payments made or to be made by the Debtors for services or for costs or expenses in connection with these Chapter 11 Cases incurred prior to the Effective Date have already been approved by, or are subject to approval of the Bankruptcy Court. More specifically, I understand that the Plan provides for the payment of only Allowed Professional Fee Clams and all applications for payment of Professional Fee Claims must be filed with the Bankruptcy Court within forty five (45) days after the Effective Date. Accordingly, I believe that the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

17. <u>Section 1129(a)(5)</u>. It is my understanding that the requirement of section 1129(a)(5) of the Bankruptcy Code, providing that the Debtors disclose all necessary information regarding directors, officers, and insiders is satisfied. The Plan provides for the liquidation and distribution of the Debtors' remaining assets by a Liquidating Trust and for the Direct Claims Trust to receive and monetize the Direct Claims Trust Assets. As set forth in the Plan, following the Effective Date, the Liquidating Trustee, who will also serve as the Direct Claims Trustee, is subject to the oversight of the Oversight Committee and will operate pursuant to the terms set forth in the Liquidating Trust Agreement and Direct Claims Trust Agreement. I am aware of no holder of a

Claim or Interest, or other party in interest, that has objected to the creation of the Liquidating Trust or Direct Claims Trust or the method of selecting the Liquidating Trustee and believe that such procedures are not contrary to public policy.

18. <u>Section 1129(a)(6)</u>. I am unaware of any government regulatory commission with jurisdiction over any rate charged by the post-confirmation Debtors.

19. <u>Section 1129(a)(7)</u>. I am informed and believe that the Plan complies with the "best interest of the creditors test" in section 1129(a)(7) of the Bankruptcy Code. I believe that the best interest test is satisfied as to each Holder of an Impaired Claim or Interest, and I am unaware of any party in interest that has argued otherwise or provided any evidence to the contrary. With respect to each impaired Class of Claims of the Debtor, I am informed and believe that each holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code. For the reasons discussed in Section 6.8 of the Plan and in the Liquidation Analysis (attached to the Plan Supplement as <u>Exhibit G</u>), the best interests of creditors test is satisfied in this case.

20. The Plan is expected to provide a greater recovery for Allowed Claims than would a chapter 7 liquidation, as detailed in the Liquidation Analysis attached to the Plan Supplement as <u>Exhibit G</u>. Further, in a chapter 7 case, the value available for satisfaction of Claims would be reduced by the costs, fees and expenses of the liquidation under chapter 7, which would include disposition expenses, the sliding scale fees and compensation of a chapter 7 trustee, the fees of his or her counsel and other professionals, and certain other costs arising from conversion of the chapter 11 case to a case under chapter 7. The addition of a chapter 7 trustee at this late stage in the Chapter 11 Cases would likely provide no substantial benefit, as the majority of the Debtors'

assets were liquidated during these Chapter 11 Cases and the Plan provides for the vesting of all of the assets of the Debtors in the Liquidating Trust to liquidate all remaining unliquidated assets and distribute the proceeds in accordance with the Plan in a cost efficient manner.

21. <u>Sections 1129(a)(8) – (9)</u>.  I am informed and believe that the Plan satisfies the requirements of sections 1129(a)(8) and (9) of the Bankruptcy Code.

22. <u>Section 1129(a)(10)</u>.  As set forth in the Voting Declaration, I understand that the Holders of Classes 3 (WARN Act Claims), Class 4 (Settled Priority Claims) and Class 5 (General Unsecured Claims), such classes being impaired, as determined without including any acceptance by an insider in such Class, have voted to accept the Plan.  Accordingly, I believe that the Plan has met the requirements of section 1129(a)(10) of the Bankruptcy Code.

23. <u>Section 1129(a)(11)</u>.  I believe that the Plan is feasible and comports with section 1129(a)(11) of the Bankruptcy Code.  The Plan provides for the vesting of all of the Debtors' remaining assets into the Liquidating Trust for the purpose of liquidation and distribution to creditors as trust beneficiaries under the Plan.  I have analyzed, along with other Uzzi & Lall professionals and the Plan Proponents, the ability of the Liquidating Trustee to meet its obligations under the Plan and respectfully submit that the Liquidating Trust will be sufficiently funded on the Effective Date.  Furthermore, after analyzing Administrative Claims, I believe there is sufficient cash to pay or reserve for Allowed Administrative Claims on the Effective Date or as otherwise agreed to by holders of any Allowed Administrative Claims, as set forth below and as reflected in the sources and uses of cash attached hereto as **Exhibit 1** (the "<u>Effective Date Sources & Uses</u>").

24. As I noted in my first-day declaration [Docket No. 13] and as the Debtors have represented to the Court throughout these Chapter 11 Cases, the Debtors faced severe liquidity constraints since before these Chapter 11 Cases were commenced.  As a consequence, the Debtors deployed various measures to address these constraints while pursuing multiple sale transactions

during the summer of 2025. For example, the Debtors negotiated with key administrative and priority creditors and secured deferrals of their respective administrative and priority claims. Under the agreements with such creditors, the largest holders of various Administrative and Priority Claims have agreed to defer payments until after the Effective Date, at such point as the Liquidating Trust has determined to release such deferred payments. I understand that in making such determination, the Liquidating Trustee will exercise business judgment in the evaluation of the cost and timing of monetizing the Debtors' remaining assets, including potential claims against third parties.

25. As such, it is my understanding that the Plan Proponents will be able to satisfy all Effective Date obligations and transfer remaining funds to the Liquidating Trust in excess of its initial budget. Specifically, on the Effective Date, the Debtors will make (i) Effective Date Payments in the approximate amount of $2,446,000.00 to holders of Allowed Administrative Claims, (ii) fund various reserves in the approximate amount of $4,583,000.00, including funding the initial WARN Act Claim Reserve, and (iii) transfer to the Liquidating Trust approximately $9,909,000.00. *See* Exhibit 1.

26. Additionally, the Liquidating Trust will have substantial non-cash assets supporting feasibility. Specifically, the Debtors have sought relief from the Court to release excess collateral held by certain surety providers. The Debtors have not included recoveries of such excess collateral in the Effective Date Sources & Uses, but the Plan Proponents anticipate receiving that excess collateral. Further, I understand that during a period of substantial revenue for the Debtors, the Debtors paid over $85 million in customs tariffs to the United States government. The Debtors timely lodged protests with respect to those tariffs because they were based on a point of origin (China) which carries a much higher tariff than other points of origin (such as Vietnam and Mexico) where the goods passed before entering the United States. Because the Debtors believe

that the goods were altered in Vietnam and Mexico, I understand that such material alterations allow for a reduced tariff. The Liquidating Trust has access to this source of recovery and other sources of recovery from other litigation as set forth in the Plan, including potential causes of action that might be asserted against third parties.

27. Accordingly, I believe that the Plan is feasible and comports with section 1129(a)(11) of the Bankruptcy Code.

28. <u>Section 1129(a)(12)</u>. It is my understanding that the Debtors have paid all chapter 11 statutory and operating fees or will pay such fees on the Effective Date under the Plan, to the extent such fees are currently unpaid. Accordingly, I believe the Plan has met the requirement of section 1129(a)(12).

29. <u>Sections 1129(a)(13) – (16)</u>. I am informed and believe that sections 1129(a)(13) through (16) are inapplicable to the Debtors or the Plan because (i) the Debtors do not provide any retiree benefits, (ii) have no domestic support obligations, (iii) are not individuals, and (iv) are not non-profit corporations.

C.  **Section 1129(c) of the Bankruptcy Code**

30. I understand that the Plan is the only plan that has been filed in the Chapter 11 Cases, and I believe the Plan is the only plan that satisfies the requirements of section 1129(a)-(b) of the Bankruptcy Code. Accordingly, I believe that the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

D.  **Section 1129(d) of the Bankruptcy Code**

31. I believe that the Plan was not proposed to avoid taxes or section 5 of the Securities Act and am aware of no governmental unit that has argued otherwise.

E.  **Section 1129(e) of the Bankruptcy Code**

32. The Chapter 11 Cases are not small business chapter 11 cases.

**F.     Executory Contracts**

33.     The Debtors have reviewed and analyzed their portfolio of executory contracts and unexpired leases. Given that the Debtors have ceased all business operations and all of their remaining assets will be vested in the Liquidating Trust under the Plan for liquidation, I believe that all the Debtors' executory contracts and unexpired leases, to the extent not already rejected or assumed and assigned, should be rejected; provided, however, that the Landlord in connection with that certain unexpired lease between Lu Pacific Properties, LLC and Debtor Powin, LLC f/k/a Powin Energy Corporation, as tenant, for the premises located at 20550 SW 115th Avenue, Tualatin, OR 97062, has consent to rejection of such lease as of October 31, 2025.

**G.     Inventory Issues**

34.     In resolution of certain disputes arising under the Asset Purchase Agreement, dated July 6, 2025 among the Debtors and FlexGen Power Systems, LLC ("FlexGen"), the Debtors have agreed to transfer certain inventory (the "Substitute Inventory") to FlexGen, free and clear of any liens, claims and interests. The Substitute Inventory was the subject of an objection [Docket No. 619] by Solar Carver 1, LLC and Solar Carver 3, LLC (collectively, "*Solar Carver*") in connection with the Sale Order entered by the Court on August 18, 2025 [Docket No. 751]. Pursuant to the Remaining Inventory Order, the Debtors offered the Substitute Inventory to Solar Carver, and Solar Carver declined to purchase the Substitute Inventory. Accordingly, I believe the transfer of the Substitute Inventory to FlexGen free and clear of any liens, claims and interests, including, but not limited to, any interests of Solar Carver, is a reasonable and proper exercise of the Debtors' business judgment and should be authorized and approved.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 21, 2025
New York, New York.

*/s/ Gerard Uzzi*
Gerard Uzzi

**<u>Exhibit 1</u>**

# Effective Date Sources and Uses

| (Amounts in $'000s) | |
|---|---|
| **Effective Date Sources and Uses** | **Amount** |
| **Effective Date Starting Cash** | **16,938** |
| | |
| **Effective Date Payments** | |
| FlexGen CEVA Settlement Payment | (469) |
| ACE Engineering Payment | (1,000) |
| RH - US Payment | (77) |
| RH - Mexico Payment | (425) |
| MMI-Machineworks Payment | (32) |
| Plan Payments to Remaining Support Staff (Contractors) | (443) |
| **Effective Date Payments - Total** | **(2,446)** |
| | |
| **Remaining Cash Balance** | **14,492** |
| | |
| **Effective Date Reserves** | |
| Debtor Professional Fee Reserve [1] | 683 |
| Initial WARN Act Claim Reserve Amount | 500 |
| Sales Tax | 2,600 |
| Expeditors International of Washington, Inc. | 700 |
| Reserve for Additional Allowed Admin Claims [2] | 100 |
| **Effective Date Reserves - Total** | **4,583** |
| | |
| **Effective Date Ending Cash to be transferred to Liquidating Trust** | **9,909** |

[1] This amount is in addition to the amount in the Debtor Professional Fee Reserve.
[2] Additional Allowed Admin Claims include Resilience360, Step Function, and Others.

1