**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street
Suite 2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

*Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
            aglaubach@teamtogut.com
            eblander@teamtogut.com

*Counsel for Debtors and
Debtors in Possession*

**BROWN RUDNICK LLP**

Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Jeffrey L. Jonas, Esq.
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4924
Facsimile:  (212) 938-2924
Email:  rstark@brownrudnick.com
            kaulet@brownrudnick.com
            bsilverberg@brownrudnick.com
            jjonas@brownrudnick.com

*Counsel for the Official Committee of Unsecured
Creditors*

**GENOVA BURNS LLC**

Daniel M. Stolz (admitted)
Donald W. Clarke (admitted)
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone:  (973) 533-0777
Facsimile:  (973) 814-4045
Email:  dstolz@genovaburns.com
            dclarke@genovaburns.com

*Counsel for the Official Committee of Unsecured
Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>　　　　　Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br>(Jointly Administered)<br><br>**Hearing Date: November 25, 2024**<br>**Docket No: 1062** |

**EMERGENCY MOTION OF THE DEBTORS AND THE COMMITTEE FOR ENTRY
OF AN ORDER DISALLOWING AND EXPUNGING THE ADMINISTRATIVE CLAIM
FILED BY FLEXGEN OR, IN THE ALTERNATIVE, ESTIMATING THAT CLAIM AT
$0 FOR ALL PURPOSES**

TO: THE HONORABLE CHIEF JUDGE MICHAEL B. KAPLAN UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

Powin, LLC and the affiliated debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors for the Debtors (the "Committee" and together with the Debtors, the "Movants"), in the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases"), hereby submit this *Emergency Motion Of The Debtors And The Committee For Entry Of An Order Disallowing And Expunging The Administrative Claim Filed By FlexGen or, in the Alternative, Estimating That Claim At $0 For All Purposes* (the "Motion") seeking entry of an order substantially in the form as the proposed order attached hereto as **Exhibit A** hereto (the "Proposed Order"). In support of the Motion, the Movants, respectfully represent

---

[1] The name of Debtor Powin, LLC has changed to BESS RemainCo. The Debtors intend to file a motion to amend the caption in these chapter 11 cases. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

2

as follows:

**PRELIMINARY STATEMENT**

1. Eight days before the hearing to confirm a plan in these cases, FlexGen Power Systems, LLC ("FlexGen") submitted a request [Docket No. 1062] for payment of an alleged payment of administrative expenses of just under $17 million (the "FlexGen Administrative Claim").

2. FlexGen asserts it is due $17 million based on the failure to deliver a small portion of inventory it purchased when it purchased substantially all of the Debtors' intellectual property, its customer relationships, its contracts – in essence, substantially all assets of the Debtors (other than certain litigation claims and assets that FlexGen did not want) – for a purchase price of $36 million. Asserting an administrative claim in the amount of $17 million is plainly unreasonable and absurd on its face, and the timing – eight days before a hearing on plan confirmation – a thinly-veiled attempt to create inappropriate hold-up value.

3. FlexGen's asserted claim is predicated on the Debtors' failure to deliver two buckets of inventory, (a) certain inventory held by Welldex Distribution SA de CV (the "Welldex Inventory"), and (b) certain inventory held by RH Shipping (the "RH Inventory"). With respect to the Welldex Inventory, a non-debtor third-party, CEVA, appears to have destroyed such inventory. FlexGen has asserted an administrative claim of approximately $5.8 million related to the non-delivery of the Welldex Inventory (the "Welldex Inventory Claim"). Separately, the RH Inventory has not been delivered to FlexGen because RH Shipping had previously withheld delivery pending resolution of its claims in these cases. FlexGen has similarly asserted an administrative claim of $11.1 million related to the non-delivery of the RH Inventory (the "RH Inventory Claim"). In respect of this inventory, which again, makes up a small portion of the

purchased assets, FlexGen has asked for *nearly half the purchase price as an administrative claim.*

4. Nowhere in the FlexGen Administrative Claim does FlexGen provide any legitimate basis for claiming nearly $17 million on a small-scale inventory dispute on a $36 million deal. Indeed, the FlexGen Administrative Claim, which is pegged to the purported *book value* of the inventory assets, seeks to avoid taking responsibility for the outsized claim amount – claiming that "book value" is a reasonable basis in a footnote stating that "[a]ll book values discussed herein were provided by Debtors, and were the only value data points provided to FlexGen, pre-closing." This is absurd: *FlexGen purchased the inventory at issue*. It knows what it is worth. It knows it is not worth close to the amount demanded. Nonetheless, FlexGen claimed a number it *knows* is not legitimate, seeking to require the Debtors to reserve nearly $17 million eight days before the hearing on plan confirmation.

5. Not only is the claim amount absurd, it is fully without merit. The FlexGen APA makes clear that risk associated with the assets purchased thereunder rests with FlexGen, not the Debtors. First, Section 4.7 of the FlexGen APA states that "Buyer will accept the Purchased Assets … at the Closing 'AS IS,' 'WHERE IS' and 'WITH ALL FAULTS.'" (emphasis in original) (the "As-Is Clause"). Second, the FlexGen APA is wholly devoid of any obligation to physically deliver the inventory to FlexGen. As with any asset purchase agreement, the obligation was to deliver a bill of sale which was delivered to FlexGen. To the extent that inventory was destroyed prior to execution of the FlexGen APA, FlexGen is compelled under its terms to accept the inventory in its destroyed form. If, however, inventory was not delivered because it was destroyed after execution or because of noncompliance by a third-party custody, FlexGen may have a cause of action vis-à-vis that third-party. But, there is no interpretation of the contract that requires the

4

Debtors to insure FlexGen's purchase.

6. What's more, as to each bucket of inventory, the Debtors have made a good faith effort, despite absolutely no obligation, to amicably resolve the issue. As to the Welldex Inventory, the Debtors have sourced replacement goods. And with respect to the RH Inventory, the Debtors have worked diligently to resolve the dispute with RH Shipping, and in fact did facilitate a resolution in principal three weeks ago whereby RH Shipping agreed to promptly release the RH Inventory to FlexGen.

7. FlexGen, however, has declined the accommodations (again, which the Debtors are in no way obligated to extend) in both instances, refusing the replacement Welldex Inventory (for unspecified reasons), and refusing delivery of the RH Inventory (again, without any justifiable basis or assertion of resulting harm). Instead, FlexGen has invoked a "time is of the essence" clause in the APA, alleging that the Debtors have failed to perform under the contracts for failing to deliver the subject inventory. In so doing, FlexGen implies that the Debtors have some obligation with respect to the physical delivery of the inventory, which both ignores the express As-Is Clause, and otherwise invents an obligation on the part of the Debtors where no such obligation is express or even fairly inferred from the contract.

8. FlexGen's position amounts to an effort to "sell" inventory back to the estates – at a price *far* above the price FlexGen paid for it. The reason for FlexGen's about face is not material to this dispute, although Movants suspect it is the result of little more than buyer's remorse. Rather than accept the inventory it agreed to purchase, which, again, represents a small percentage of the total, FlexGen has sought hold-up value eight days before this Court's consideration of a carefully

5

negotiated Plan.

9. The FlexGen Administrative Claim should be disallowed and expunged, with prejudice. In the alternative, this Court should estimate it at $0 for all purposes, including plan confirmation, required reserves, and distributions (contingent on delivery of replacement inventory for the Walldex Inventory, and delivery of the RH Inventory). This Court should not countenance FlexGen's tactics and allow it to threaten to collapse these Chapter 11 cases at the finish line.

## JURISDICTION AND VENUE

10. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12. The bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, the Plan, and related legal bases further described herein.

## BACKGROUND

### A. The Bankruptcy Case.

13. On June 9, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.

14. On July 25, 2025, this Court entered *Final Order (I) Authorizing the Debtors to*

6

*Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (the "DIP Order") [Docket No. 520] authorizing the Debtors to enter into a post-petition financing facility in an amount of $27.5 million provided by FlexGen.

15. On July 17, 2025, this Court entered the *Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections, (II) Approving Bidding Procedures By Which Interested Parties May Bid and an Auction Sale Format in Connection with the Sale of Substantially All of the Debtors' Assets, (III) Approving Form of Asset Purchase Agreement, (IV) Approving Form of Notice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of the Debtors' Property Free and Clear of All Causes of Action and Claims* (the "Bidding Procedures Order") [Docket No. 413] approving certain bidding procedures and designation of FlexGen as stalking horse bidder.

16. On July 30, 2025, the Debtors conducted an auction, following which, the Debtors announced FlexGen as the winning bidder with respect to certain Purchased Assets (as defined in the FlexGen APA [Docket No. 591, Ex. B]), including: inventory, assumed contracts, intellectual property, and machinery and equipment – in essence, substantially all of the assets of the business – for a purchase price of $36 million comprised of a credit bid of its DIP obligations and cash [Docket No. 591].

17. On October 15, 2025, Movants filed the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* (the "Plan") [Docket No. 942]. On November 7, 2025, Movants filed the

7

*Notice of Filing of Plan Supplement* (the "Plan Supplement") [Docket No. 1036, as amended by Docket Nos. 1038, 1055]. The Plan and Plan Supplement contain resolutions with a number of the significant case parties, including the Debtors' single largest creditor and WARN priority class claimants, which represent considerable concessions by these parties in order to get these cases through to a confirmation hearing. A hearing to consider the Plan is currently scheduled for November 25, 2025 at 11:30 a.m. ET.

### B. The Welldex and RH Shipping Inventory.

18. As set forth on Schedule 2.1(a) to the FlexGen APA, FlexGen agreed to purchase the Welldex Inventory and the RH Inventory, with cure amounts of $469,000.00 and $2,998,000.00, respectively. *See Notice of Deadline to Assert Liens in Connection With Bidding Procedures and Upcoming Sale and Auction* ("Lien Notice") [Docket No. 318]. Pursuant to Section 4.7 of the FlexGen APA, all property (including the Welldex Inventory and the RH Inventory) was taken on an "as-is" basis.

19. Following determination of FlexGen as the winning bidder, CEVA, the third-party non-debtor entity holding the Welldex Inventory inexplicably destroyed it such that it could not be transferred to FlexGen. To be clear: this action by CEVA was entirely unauthorized and taken without the knowledge of the Debtors. The Debtors did not instruct or permit CEVA to take that action.

20. With respect to the RH Inventory, again through no fault of the Debtors, RH Shipping has refused to release that inventory to FlexGen, even after the Debtors paid RH Shipping the cure costs in the amount of $2.998 million, as set forth in the Lien Notice, which RH Shipping never filed any objection to. Despite that the Debtors have no liability for RH Shipping's actions, as of October 31, 2025, the Debtors had reached agreement with RH Shipping to resolve their

8

dispute, whereupon RH Shipping was prepared to immediately release the RH Inventory to FleexGen. FlexGen was made aware of the resolution and that RH would transfer the RH Inventory substantially contemporaneously with that resolution, but FlexGen has refused to accept transfer of such inventory. FlexGen's purported rationale for refusing acceptance of the RH Inventory appears based solely on its reliance upon the "time is of the essence" clause in the FlexGen APA. *See* FlexGen APA, Section 9.22. FlexGen has otherwise offered no justification to refuse to accept the RH Inventory from RH Shipping beyond the alleged contractual breach, nor has it provided any calculations as to damages. Rather than accept the inventory that has been made available for weeks, FlexGen asserted a more than $11 million administrative claim based on book value.

### C.      The Administrative Claim.

21.     On November 17, 2025, FlexGen filed the Administrative Claim seeking approximately $17 million, including approximately $11 million on account of the RH Shipping Claim based on the $2,998,000 cure amount, and a book value of the RH Inventory of $8,131,784.54. The Debtors have repeatedly met with FlexGen to resolve the the FlexGen Administrative Claim, but have been unable to reach the terms of a resolution.

### ARGUMENT

### I.     This Court has Jurisdiction to Adjudicate FlexGen's Admin Claim, or, Alternatively, Estimate Such Claim at $0.

22.     As a threshold matter, Movants submit that this Court has jurisdiction to adjudicate the Administrative Claim on the merits pursuant to 28 U.S.C. § 157. Specifically, 28 U.S.C. § 157(b) vests bankruptcy courts with jurisdiction over core proceedings, which include the "allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 […]" 28 U.S.C. § 157(b)(2)(B). As the Administrative Claim unequivocally

9

concerns the allowance or disallowance of a claim against the estate, this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and this Court has exclusive jurisdiction to hear and determine the merits.

23. While jurisdiction conferred under 28 U.S.C. § 157(b)(2)(B) is itself sufficient, in the alternative, 11 U.S.C. § 502(c) requires this Court to estimate the Administrative Claim under the facts here. 11 U.S.C. § 502(c) requires estimation of a contingent or unliquidated claim where failure to do so would unduly delay the administration of the case, both factors clearly present here.

24. As discussed herein, Movant's dispute both the validity and amount of the asserted Administrative Claim. The Administrative Claim requests $17 million, of which the RH Inventory Claim is more than $11 million. These amounts are far in excess of any amount reasonably owing to FlexGen (Movants submit nothing is owed). What's more, these amounts would make up a significant portion of the Administrative Claims pool in a case that simply does not have sufficient cushion to take on legitimate claims of this size, let alone superfluous claims as FlexGen has asserted. And, FlexGen submits this outsized, meritless claim little more than one week before this Court's hearing to consider confirmation of the Plan that encompasses significant concessions on the part of many other major stakeholders. The Administrative Claim, in sum, would crater the carefully negotiated Plan, severely delay these cases, and possibly cause their conversion. This situation falls squarely within the scope of Section 502(c), and as such, estimation of the Administrative Claim is required under Section 502(c) as an alternative to adjudication on the merits.

**II.    This Court Should Find that FlexGen
Is Entitled to No Recovery Concerning the Administrative Claim.**

25. FlexGen's Administrative Claim is a brazen attempt to weaponize the confirmation

process to retread on its purchase.  The Administrative Claim should be denied as baseless.

26.     As to the Welldex Inventory, as the Debtors have made FlexGen aware that a third-party appears to have destroyed the Welldex Inventory without authorization.  FlexGen points to Section 6.11 of the APA to hold Powin responsible, but that clause is specific: "**the Sellers** shall not relocate, sell, or otherwise dispose of any Purchased Assets[.]"  The Debtors did not.  The Debtors did not become the insurer of FlexGen's property by virtue of Section 6.11, and so the Debtors cannot be held to have breached their agreements with FlexGen by virtue of CEVA's wrongful action. Rather, the Debtors performed faithfully under the APA by delivering the bill of sale with respect to the inventory.

27.     A small portion of the assets purchased by FlexGen in respect of the $36 million purchase price relates to assets in the possession of RH Shipping.  As this Court is aware, RH Shipping asserted a possessory lien over certain assets in its possession, including the RH Inventory, which has delayed the transfer of these assets to FlexGen.  Movants have been working with all parties, including RH Shipping, to consensually resolve these and other issues, and, as of October 31, 2025, believed that they had reached agreement with RH Shipping that would allow transfer of the RH Inventory.  In other words, as of approximately three weeks ago, this issue could, and should, have been resolved substantially in accordance with the terms of the FlexGen APA.

28.     However, FlexGen has refused to accept delivery of the RH Inventory.  In so doing, FlexGen has failed to offer any credible explanation or rationale for refusing delivery of assets it purchased.  FlexGen's only purported basis for refusal boils down to its reliance on the "time is of the essence" clause in the FlexGen APA, and the resulting alleged breach of contract caused by the delay.  Notably, FlexGen has not (because Movants suspect it cannot) allege any damages as

11

a result of the delay. Movants suspect that FlexGen has simply changed its mind, and is leveraging what may (or may not) be a technical breach of contract to get out of a deal it has buyer's remorse regarding.

29. These facts do not give rise to a valid administrative claim. Indeed, it is Movant's position that FlexGen's refusal to accept delivery of the RH Inventory may give rise to a claim by the estates against FlexGen for the attendant storage costs.

30. Further, although FlexGen notes that the Debtors were required to release all liens associated with purchased inventory within 5 days of closing pursuant to APA Section 2.7(d), this was satisfied. The inventory was sold "free and clear" of all liens, with such liens attaching to the funds in the estate by operation of this Court's order approving the APA. *See* Docket No 751 (the "Sale Order") at ¶ 5 ("Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, upon Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Purchased Assets, including any Assumed Contracts, shall be transferred to the Purchaser, free and clear of any and all Claims or Interests, with all such Claims or Interests to attach solely to the proceeds of the Sale held by the Debtors upon and after the Closing in the order of their priority[.]")

31. RH Shipping has refused access to FlexGen, so that FlexGen can access its purchased goods. But again: this is not a violation of the APA *by the Debtors*. This is a dispute between FlexGen and RH Shipping that may implicate this Court's APA order – or may require FlexGen to commence a tort action against RH Shipping. Either way, the Debtors have committed no breach of the APA and have no liability for RH Shipping's conduct. Pursuant to the As-Is Clause, FlexGen bought assets as-is and where-is: the Debtors are not an insurer of their former property, nor for the conduct of RH Shipping

32. Even if FlexGen were to articulate some valid contractual basis for its asserted Administrative Claim (which again, it has so far failed to do), the asserted amount borders on absurd for several reasons. First, FlexGen tries to claim *both* what it paid for the inventory *and* what the inventory was worth. For example, the RH Inventory Claim is comprised of approximately $3 million paid in lien cure costs, and $8.1 million based on the book value of the RH Inventory. FlexGen cannot both recover on both the cure amounts paid and the value of the inventory it has rejected – it must pick one. Second, it goes without saying that the book value of an asset is a wholly unreliable measure of value. The value of the RH Inventory is not settled, but it is almost certainly less $8.1 million (and likely materially so). Similarly, the true value of the WellDex inventory is likely far less than $5.2 million. Two data points in particular strongly suggest a relatively de minimis value: (i) FlexGen's refusal to accept delivery of the RH Inventory notwithstanding its prior decision to purchase these assets; and (ii) that the RH Inventory and Welldex Inventory makes up a small fraction of the schedule of purchased assets on Schedule 2.1(a) ("Purchased Inventory), which is only a fraction of the assets purchased by FlexGen for approximately $36 million.4 pages. Notwithstanding, FlexGen now asks for a *refund of more than 36% of its entire purchase price.*

33. For the reasons stated above, there is simply no basis for FlexGen to assert an administrative claim in any amount. Consequently, the FlexGen Administrative Claim should be disallowed and expunged, with prejudice. In the alternative, this Court should estimate it at $0 or a nominal amount such as $469,000, which is the amount of the lien payment FlexGen advanced on account of Welldex's asserted lien.

## NOTICE

34. Movants will provide notice of this Motion to the following parties and/or their

respective counsel, as applicable: (a) FlexGen; (b) the office of the U.S. Trustee for the District of New Jersey; and (c) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002.

## **CONCLUSION**

**WHEREFORE**, Movants respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

[*Signature Page to Follow*]

|  |  |
|---|---|
| Dated: November 21, 2025 | Respectfully Submitted,<br>**DENTONS US LLP**<br><br>*/s/ Lauren Macksoud*<br>Lauren Macksoud (admitted)<br>101 JFK Parkway<br>Short Hills, NJ 07078<br>Telephone: (973) 912-7100<br>Facsimile: (973) 912-7199<br>Email: lauren.macksoud@dentons.com<br><br>Tania M. Moyron (admitted *pro hac vice*)<br>Van C. Durrer, II (admitted *pro hac vice*)<br>601 S. Figueroa Street #2500<br>Los Angeles, CA 90017<br>Telephone: (213) 623-9300<br>Facsimile: (213) 623-9924<br>Email: tania.moyron@dentons.com<br>     van.durrer@dentons.com<br><br>John D. Beck (admitted *pro hac vice*)<br>Sarah M. Schrag (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, NY 10020-1089<br>Telephone: (212) 768-6700<br>Facsimile: (212) 768-6800<br>Email: john.beck@dentons.com<br>     sarah.schrag@dentons.com<br><br>- and –<br><br>TOGUT, SEGAL & SEGAL LLP<br>Frank A. Oswald (admitted)<br>550 Broad Street<br>Suite 1508<br>Newark, NJ 07102<br>Telephone: (212) 594-5000<br>Facsimile: (212) 967-4258<br>Email: frankoswald@teamtogut.com<br><br>Albert Togut (admitted *pro hac vice*)<br>Amanda C. Glaubach (admitted *pro hac vice*) |

Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
aglaubach@teamtogut.com
eblander@teamtogut.com

*Counsel for Debtors and Debtors-in-Possession*

**GENOVA BURNS LLC**
*/s/ Daniel M. Stolz*
Daniel M. Stolz (admitted)
Donald W. Clarke (admitted)
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 533-0777
Facsimile: (973) 814-4045
Email:   dstolz@genovaburns.com
dclarke@genovaburns.com

- and –

**BROWN RUDNICK LLP**

Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Jeffrey L. Jonas, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4924
Facsimile: (212) 938-2924
Email: rstark@brownrudnick.com
kaulet@brownrudnick.com
bsilverberg@brownrudnick.com
jjonas@brownrudnick.com

*Counsel for the Official Committee of Unsecured Creditors*

**EXHIBIT A**

16

**(Proposed Order)**

17

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br>(Jointly Administered) |

**ORDER GRANTING EMERGENCY MOTION OF THE DEBTORS AND THE COMMITTEE FOR ENTRY OF AN ORDER DISALLOWING AND EXPUNGING THE ADMINISTRATIVE CLAIM FILED BY FLEXGEN OR, IN THE ALTERNATIVE, ESTIMATING THAT CLAIM AT $0 FOR ALL PURPOSES**

Upon Movants' *Emergency Motion of The Debtors And the Committee for Entry of an Order Disallowing and Expunging the Administrative Claim Filed by FlexGen or, in the Alternative, Estimating that Claim at $0 For All Purposes* (the "Motion")[2] pursuant to Sections 105(a) and 502(c) of title 11 of the United States Code (the "Bankruptcy Code"), requesting that this Court adjudicate the merits of the FlexGen Administrative Claim at $0, or, alternatively, estimating for all purposes the value of such claim at $0; and the Court having determined just cause exists for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The relief as set forth in the Motion is **GRANTED.**

2. The FlexGen Administrative Claim is determined to be $0 for all purposes.

---

[1] The name of Debtor Powin, LLC has changed to BESS RemainCo. The Debtors intend to file a motion to amend the caption in these chapter 11 cases. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

[2] Capitalized terms use but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, or as further described in the Plan.

4. Movants are authorized to take all actions necessary to effectuate the relief granted in this Order.