**<u>Exhibit 3</u>**

(Joint Combined Disclosure Statement and Chapter 11 Plan)

*SOLICITATION VERSION*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**JOINT COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF
LIQUIDATION OF POWIN, LLC AND AFFILIATES THEREOF AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

---

[1] The name of Debtor Powin, LLC has changed to BESS RemainCo.  The Debtors intend to file a motion to amend the caption in these chapter 11 cases. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

2516137251015000000000006

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street
Suite 2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:   tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:   john.beck@dentons.com
            sarah.schrag@dentons.com


*Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:   frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:   altogut@teamtogut.com
            aglaubach@teamtogut.com
            eblander@teamtogut.com

*Counsel for Debtors and
Debtors in Possession*

**BROWN RUDNICK LLP**

Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Jeffrey L. Jonas, Esq.
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4924
Facsimile:  (212) 938-2924
Email:   rstark@brownrudnick.com
            kaulet@brownrudnick.com
            bsilverberg@brownrudnick.com
            jjonas@brownrudnick.com

*Counsel for the Official Committee of
Unsecured Creditors*

**GENOVA BURNS LLC**

Daniel M. Stolz (admitted)
Donald W. Clarke (admitted)
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone:  (973) 533-0777
Facsimile:  (973) 814-4045
Email:      dstolz@genovaburns.com
            dclarke@genovaburns.com

*Counsel for the Official Committee of
Unsecured Creditors*

**TABLE OF CONTENTS**

SECTION 1 INTRODUCTION ............................................................................... 1

SECTION 2 DEFINED TERMS ............................................................................. 2

SECTION 3 SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS
    AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND
    CONFIRMATION DATES AND DEADLINES ............................................. 16

    3.1    Summary of Classification and Treatment of Claims and Interests ..................... 16

    3.2    Important Dates and Deadlines .......................................................................... 20

SECTION 4 BACKGROUND .............................................................................. 20

    4.1    General Background ........................................................................................ 20

    4.2    Events Leading to Chapter 11 Filing ................................................................. 21

SECTION 5 THE CHAPTER 11 CASES ............................................................. 22

    5.1    First Day Motions and Other Early Developments in the Chapter 11 Cases........ 22

    5.2    Prepetition Loan Facility and Cash Collateral Order............................................ 22

    5.3    DIP Financing .................................................................................................. 23

    5.4    Debtors' Retention of Professionals and Personnel............................................. 23

    5.5    Prepetition Taxes .............................................................................................. 23

    5.6    Formation of the Committee; Retention of Professionals...................................... 23

    5.7    Debtors' Schedules and Statement of Financial Affairs ...................................... 24

    5.8    Claims Bar Dates ............................................................................................. 24

    5.9    KEIP and KERP Motion .................................................................................... 24

    5.10    Rejection Motions and Related Matters............................................................. 24

    5.11    Adequate Protection Motions .......................................................................... 25

    5.12    Sale Proceedings ........................................................................................... 25

    5.13    WARN Action ................................................................................................. 26

SECTION 6 CONFIRMATION AND VOTING PROCEDURES ............................................ 27

    6.1    Confirmation Hearing ................................................................. 27

    6.2    Procedures for Objections .......................................................... 27

    6.3    Requirements for Confirmation .................................................. 27

    6.4    Classification of Claims and Interests........................................ 28

    6.5    Impaired Claims or Interests ...................................................... 30

    6.6    Confirmation Without Necessary Acceptances; Cramdown ................... 30

    6.7    Feasibility................................................................................. 31

    6.8    Best Interests Test and Liquidation Analysis............................. 31

    6.9    Eligibility to Vote on the Combined Plan and Disclosure Statement .................. 32

    6.10    Solicitation Package / Release Opt-Out Election Form........................ 32

    6.11    Voting Procedures, Voting Deadline, and Deadline to Submit the Release Opt-Out Election ............................................................... 33

    6.12    Acceptance of the Combined Plan and Disclosure Statement .............................. 34

SECTION 7 UNCLASSIFIED CLAIMS ......................................................... 34

    7.1    Unclassified Claims ................................................................... 34

    7.2    Administrative Claims ................................................................ 34

    7.3    Professional Fees ....................................................................... 35

    7.4    Priority Tax Claims.................................................................... 36

SECTION 8 CLASSIFICATION OF CLAIMS AND INTERESTS ......................................... 36

    8.1    Summary of Classification.......................................................... 36

    8.2    Special Provision Governing Unimpaired Claims............................... 37

    8.3    Vacant and Abstaining Classes................................................... 37

SECTION 9 TREATMENT OF CLAIMS AND INTERESTS ............................................ 37

    9.1    Class 1—Priority Non-Tax Claims ............................................. 37

    9.2    Class 2—Other Secured Claims................................................. 38

| | | |
|---|---|---|
| 9.3 | Class 3—WARN Act Claims | 38 |
| 9.4 | Class 4—Settled Priority Claims | 39 |
| 9.5 | Class 5—General Unsecured Claims | 39 |
| 9.6 | Class 6—Intercompany Claims | 40 |
| 9.7 | Class 7—Interests | 40 |

SECTION 10 DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS ... 40

| | | |
|---|---|---|
| 10.1 | Distribution Dates | 40 |
| 10.2 | Subsequent Distributions | 40 |
| 10.3 | Distribution Record Date | 40 |
| 10.4 | Manner of Cash Payments Under the Plan or Liquidating Trust Agreement | 41 |
| 10.5 | Time Bar to Cash Payments by Check | 41 |
| 10.6 | Liquidating Trust Assets Accounts | 41 |

SECTION 11 PROCEDURES FOR RESOLVING DISPUTED CLAIMS ... 41

| | | |
|---|---|---|
| 11.1 | No Distributions Pending Allowance | 41 |
| 11.2 | Resolution of Disputed Claims | 41 |
| 11.3 | Objection Deadline | 42 |
| 11.4 | Estimation of Claims | 42 |
| 11.5 | Disallowance of Claims | 42 |
| 11.6 | Adjustment to Claims Register Without Objection | 43 |
| 11.7 | Reserve Provisions for Disputed Claims | 43 |
| 11.8 | Rounding | 43 |
| 11.9 | No Cash Payments of Less Than $100 on Account of Allowed Claims | 43 |
| 11.10 | Delivery of Distributions and Unclaimed Property | 43 |
| 11.11 | Books and Records | 44 |

SECTION 12 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ... 44

12.1 Rejection / Assumption ........................................................................ 44

12.2 Rejection Claims ................................................................................. 45

12.3 Insurance Policies .............................................................................. 45

SECTION 13 MEANS FOR IMPLEMENTATION OF THE PLAN ......................... 45

13.1 General Settlement of Claims and Interests ...................................... 45

13.2 Dissolution of Debtors ........................................................................ 46

13.3 Trusts ................................................................................................. 46

13.4 Litigation ............................................................................................ 51

13.5 Dissolution of the Committee ............................................................. 52

13.6 Employee Payments .......................................................................... 52

13.7 WARN Act Settlement ........................................................................ 53

SECTION 14 EFFECT OF CONFIRMATION ....................................................... 54

14.1 Binding Effect of the Plan .................................................................. 54

14.2 Vesting of Property of Debtors on the Effective Date ........................ 54

14.3 Property Free and Clear ..................................................................... 54

SECTION 15 EXCULPATIONS, INJUNCTIONS, AND RELEASES ..................... 54

15.1 Exculpation ........................................................................................ 55

15.2 Releases ............................................................................................ 55

15.3 Injunction ........................................................................................... 57

15.4 Post-Confirmation Liability of Liquidating Trustee ............................. 57

15.5 Preservation of Rights of Action ........................................................ 58

15.6 No Discharge ..................................................................................... 59

SECTION 16 CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER
DISCLOSURES ............................................................................................. 59

16.1 Certain Risk Factors to be Considered .............................................. 59

16.2 Tax Treatment .................................................................................... 62

16.3    Alternatives to the Combined Plan and Disclosure Statement ............................. 65

SECTION 17 CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN .................................................................................. 66

17.1    Conditions to Confirmation of the Plan .............................................................. 66

17.2    Conditions to the Effective Date ......................................................................... 66

17.3    Waiver of Conditions Precedent .......................................................................... 67

SECTION 18 RETENTION OF JURISDICTION .................................................................. 67

SECTION 19 MISCELLANEOUS PROVISIONS ................................................................. 68

19.1    Revocation of the Combined Plan and Disclosure Statement ............................. 68

19.2    Severability of Plan Provisions ........................................................................... 68

19.3    Exhibits ............................................................................................................... 69

19.4    Notices ................................................................................................................ 69

19.5    Reservation of Rights .......................................................................................... 70

19.6    Defects, Omissions and Amendments ................................................................. 70

19.7    Filing of Additional Documents ......................................................................... 71

19.8    Successors and Assigns ....................................................................................... 71

19.9    Setoffs and Recoupments .................................................................................... 71

19.10   Tax Exemption .................................................................................................... 71

19.11   Securities Exemption .......................................................................................... 72

19.12   Implementation ................................................................................................... 72

19.13   Record Date ........................................................................................................ 72

19.14   Certain Actions ................................................................................................... 72

19.15   Substantial Consummation .................................................................................. 72

19.16   Waiver of Fourteen-Day Stay ............................................................................. 73

19.17   Governing Law ................................................................................................... 73

19.18   Entire Agreement ............................................................................................... 73

SECTION 20 RECOMMENDATION ......................................................................................... 73

## DISCLAIMERS

**EACH HOLDER OF A CLAIM AGAINST THE DEBTORS ENTITLED TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING.  NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE.  IF YOU ARE ENTITLED TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS URGE YOU TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.   THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS SUPPORTS THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND IS A JOINT PROPONENT HEREOF, AND URGES UNSECURED CREDITORS TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

**THE COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTERESTS IN THE DEBTORS SHOULD EVALUATE THE COMBINED PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.  THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS. YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

**THE COMBINED PLAN AND DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, ANTICIPATED EVENTS IN THE CHAPTER 11 CASES, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS BELIEVE THAT THE STATEMENTS AND DESCRIPTIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE TRUE AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTORY PROVISIONS. THE TERMS OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTES GOVERN IN THE EVENT OF ANY DISCREPANCY WITH THE COMBINED PLAN**

AND DISCLOSURE STATEMENT.  CREDITORS AND OTHER INTERESTED PARTIES SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND THE APPLICABLE STATUTES THEMSELVES FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE FACTUAL STATEMENTS AND REPRESENTATIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE MADE BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DISCLAIM ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT.  THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

ALL FORWARD-LOOKING STATEMENTS CONTAINED HEREIN OR OTHERWISE MADE BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS INVOLVE MATERIAL RISKS AND UNCERTAINTIES AND ARE SUBJECT TO CHANGE BASED ON NUMEROUS FACTORS, INCLUDING FACTORS THAT ARE BEYOND THE DEBTORS' AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' CONTROL.  ACCORDINGLY, THE DEBTORS' FUTURE PERFORMANCE AND FINANCIAL RESULTS MAY DIFFER MATERIALLY FROM THOSE EXPRESSED OR IMPLIED IN ANY SUCH FORWARD-LOOKING STATEMENTS.  SUCH FACTORS INCLUDE, BUT ARE NOT LIMITED TO, THOSE DESCRIBED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT.  THE DEBTORS DO NOT INTEND TO UPDATE OR REVISE THEIR FORWARD-LOOKING STATEMENTS EVEN IF EXPERIENCE OR FUTURE CHANGES MAKE IT CLEAR THAT ANY PROJECTED RESULTS EXPRESSED OR IMPLIED THEREIN WILL NOT BE REALIZED.

ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THEIR RESPECTIVE ADVISORS.  ALTHOUGH THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THEIR RESPECTIVE ADVISORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN, THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THEIR ADVISORS CANNOT

MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THIS INFORMATION.

IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT PURSUANT TO SECTION 1126(b) OF THE BANKRUPTCY CODE, THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS ARE FURNISHING A SOLICITATION PACKAGE, CONSISTING OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE EXHIBITS HERETO, CONFIRMATION NOTICE, AND A BALLOT OR RELEASE OPT-OUT ELECTION FORM, AS APPLICABLE, TO EACH RECORD HOLDER OF CLAIMS ELIGIBLE TO VOTE OR ITS COUNSEL.  THE COMBINED PLAN AND DISCLOSURE STATEMENT IS TO BE USED BY EACH SUCH ELIGIBLE HOLDER SOLELY IN CONNECTION WITH ITS EVALUATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; USE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE IS NOT AUTHORIZED. NOTHING STATED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OR ANY OTHER PARTY.  THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY NOT BE REPRODUCED OR PROVIDED TO ANYONE OTHER THAN ADVISORS TO THE RECIPIENT WITHOUT THE PRIOR WRITTEN CONSENT OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS.

# SECTION 1
# INTRODUCTION

Powin, LLC ("Powin") and the affiliated debtors and debtors in possession (collectively, the "Debtors"), in the above-referenced Chapter 11 Cases, and the Official Committee of Unsecured Creditors appointed therein (the "Committee"), hereby propose the following combined disclosure statement and plan of liquidation pursuant to sections 1121(a) and 1125(b) of the Bankruptcy Code (the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion hereof, the "Plan," as may be modified and/or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement"). Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Interests in each Debtor pursuant to the Bankruptcy Code. The Debtors and the Committee are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Capitalized terms used in the Combined Plan and Disclosure Statement and not otherwise defined have the meanings ascribed to such terms in Section 2 hereof.

The Plan proposes to pay or otherwise satisfy Allowed Administrative Claims, Allowed Secured Claims, and Allowed Priority Claims in full on the Effective Date or as soon as reasonably practicable thereafter. The Plan also proposes to establish a reserve for the benefit of holders of certain WARN Act Claims. The Plan additionally establishes two trusts: (1) the Liquidating Trust for the purpose of winding down the Debtors' estates, administering Claims, prosecuting and resolving estate causes of action, and making distributions to holders of Allowed Claims, including Allowed General Unsecured Claims; and (2) the Direct Claims Trust for the purpose of receiving and monetizing the Direct Claims Trust Assets. The holders of Allowed General Unsecured Claims shall receive their *pro rata* interests in the Liquidating Trust. Each Contributing Direct Claim Holder shall receive, in exchange for the Direct Claims Trust Assets, its *pro rata* interest in the Direct Claims Trust on account of such Direct Claims. The Plan appoints the Liquidating Trustee to, among other things: (1) continue the wind-down of the Debtors after the Effective Date; (2) liquidate the Liquidating Trust Assets and the Direct Claims Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtors hold or may hold against any Entity; and (4) make all Distributions in accordance with the Plan, the Liquidating Trust Agreement, and the Direct Claims Trust Agreement.

The Debtors will distribute the Combined Plan and Disclosure Statement to all holders of Claims and Interests in accordance with section 1125(b) of the Bankruptcy Code and Rules 2002, 3016, and 3017 of the Bankruptcy Rules, and the Bankruptcy Court's order conditionally approving the Bankruptcy Court's order conditionally approving the Combined Plan and Disclosure Statement [Docket No. 939] (the "Conditional Approval and Procedures Order"). The Combined Plan and Disclosure Statement and the exhibits hereto include a discussion of: (1) the nature and history of the Debtors' business and liabilities; (2) events during the Chapter 11 Cases; (3) the requirements for confirmation of the Plan and procedures for voting to accept or reject the Plan; (4) additional factors and disclosures to be considered, including risk factors and certain U.S. federal income tax consequences of the Plan; and (5) the terms of the Plan, including the treatment of holders of Claims and Interests under the Plan. The Disclosure Statement was prepared with the intent to provide "adequate information" (as defined in the Bankruptcy Code) to enable holders of Claims against and Interests in the Debtors to make informed judgments about the Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Combined Plan and Disclosure Statement, the Debtors expressly reserve the right to alter, amend, or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof.

*Please read the Combined Plan and Disclosure Statement, the exhibits, other supporting materials, and any appropriate ballot carefully and follow the instructions set forth below and on the appropriate ballot to vote on the Plan. The Debtors and the Committee believe that the Plan provides the best method of maximizing the recoveries for the holders of Claims and Interests against the Debtors. Therefore, the Debtors and the Committee recommend that all creditors who are entitled to vote should vote in favor of the Plan. The Committee supports the Combined Plan and Disclosure Statement and urges unsecured creditors to vote to accept the Plan.*

Unless otherwise specified, all section or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, or exhibit to, the Combined Plan and Disclosure Statement, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection, or clause contained herein. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; and (3) unless otherwise noted above, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

## SECTION 2
## DEFINED TERMS

As used in the Combined Plan and Disclosure Statement, capitalized terms not otherwise defined have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

"Administrative Claim" means a Claim for an expense of administration of the Chapter 11 Cases arising under sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by the Debtors within 20 days before the Petition Date to the extent that goods were sold to the Debtors in the ordinary course of the Debtors' business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; (f) administrative claims that were timely filed prior

-2-

to the Administrative Expense Bar Date; and (g) any Tax Claims incurred by the Debtors after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

"Administrative Expense Bar Date" means the applicable last date, at 5:00 p.m. Eastern time, set by the Bankruptcy Court for a Claimant to file a request for payment of any Administrative Claim (excluding Professional Fee Claims) arising on or after the Petition Date, through and including the Effective Date.  The Administrative Expense Bar Date shall be (i) [●] for all Administrative Claims arising or deemed to be arisen on or prior to [●]; or sixty (60) days after the Effective Date for all Administrative Claims arising or deemed to be after [●], as applicable.

"Affiliate" means with respect to any specified Entity, any other Entity directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Entity.  For purposes of this definition, "control" (including, with correlative meanings, the terms "controlling," "controlled by," and "under common control with") as used with respect to any Entity, shall mean the possession, directly or indirectly, of the right or power to direct or cause the direction of the management or policies of such Entity, whether through the ownership of voting securities, by agreement, or otherwise.

"Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors on the Schedules as other than disputed, contingent, or unliquidated and, as to which, the Debtors, the Liquidating Trustee or other party in interest has not filed an objection on or before the Claims Objection Deadline; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been filed and which is not otherwise a Disputed Claim; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Liquidating Trustee on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Non-Tax Claim, or Priority Tax Claim executed by (y) the Debtors and approved by the Bankruptcy Court, or (z) the Liquidating Trustee; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by the Debtors in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely filed by the Claimant before the applicable rejection Bar Date for such claim or has otherwise been deemed timely filed under applicable law; or (f) a Claim that is allowed pursuant to the terms of the Plan.  For the purpose of determining distributions pursuant to the Plan, allowance under subsections (a) and (b) only is applicable once any of the following occur (1) before the Claims Objection Deadline, the Debtors or the Liquidating Trustee, as applicable, determine not to object to the Claim, (2) the Claims Objection Deadline passes without an objection being filed, or (3) after the Debtors or Liquidating Trustee timely objects to the Claim, the Claim is allowed as provided in subparagraphs (c), (d) or (e) above.

"Allowed Claim" or "Allowed […] Claim" means a Claim that has been Allowed.

"Avoidance Actions" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the Estates, or other appropriate party in

interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

"Ballots" mean the ballots upon which the holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

"Bankruptcy Code" means sections 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Cases.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075.

"Bar Date" means, as applicable, the General Claims Bar Date, the Administrative Expense Bar Date, or any other applicable deadline to file Claims referenced in the Plan.

"Bar Date Order" means the *Order Establishing Deadlines For Filing Proofs Of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 758].

"Beneficiaries" means holders of Allowed Claims entitled to receive Distributions from any Trust under the Plan, whether or not such Claims were Allowed on the Effective Date.

"Bidding Procedures Order" means the *Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections, (II) Approving Bidding Procedures By Which Interested Parties May Bid and an Auction Sale Format in Connection With the Sale of Substantially All of the Debtors' Assets; (III) Approving Form of Asset Purchase Agreement, (IV) Approving From of Noice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of the Debtors' Property Fee and Clear of all Causes of Action and Claims* [Docket No. 413] implementing procedures to solicit and, if applicable, select bids from interested parties to purchase some or all of the Debtors' assets under section 363 of the Bankruptcy Code.

"Business Day" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

"Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

"Causes of Action" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions of the Debtors and Estates

-4-

(unless the context expressly states that such Causes of Action belong to another Entity) against Creditors, insiders, and/or any other Entities under the Bankruptcy Code, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

"Chapter 11 Cases" means the Chapter 11 cases commenced when the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date (each a "Chapter 11 Case") and jointly administered under the lead case number: 25-16137 (MBK).

"Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors, including, but not limited to: (a) any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claimant" means the holder of a Claim.

"Claims Agent" means Kurtzman Carson Consultants LLC, dba Verita Global, which was appointed as the Debtors' claims, noticing, and balloting agent.

"Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) 180 days after the Effective Date, or (b) such other period as may be fixed by an order of the Bankruptcy Court for objecting to Claims upon request of the Liquidating Trustee.

"Class" means a category of holders of Claims or Interests, as set forth in Sections 8 and 9 hereof.

"Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases on June 27, 2025.

"Confirmation" means the entry of the Confirmation Order, subject to all terms and conditions therein.

"Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing at which the Bankruptcy Court will consider final approval of the disclosures contained in the Disclosure Statement and confirmation of the Plan.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Consummation" or "Consummate" means the occurrence of the Effective Date.

US_ACTIVE\131476713

"Contingent Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed, or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

"Creditor" means any holder of a Claim against any Debtor as specified in section 101(10) of the Bankruptcy Code.

"Customer Program Motion" has the meaning set forth in Section 5.10 hereof.

"Debt" means liability on a Claim.

"Debtors" means, collectively, as debtors and debtors-in-possession in the Chapter 11 Cases: (i) Powin Project LLC; (ii) Powin, LLC; (iii) PEOS Holdings, LLC; (iv) Powin China Holdings 1, LLC; (v) Powin China Holdings 2, LLC; (vi) Charger Holdings, LLC; (vii) Powin Energy Ontario Storage, LLC; (viii) Powin Energy Operating Holdings, LLC; (ix) Powin Energy Operating, LLC; (x) Powin Energy Storage 2, Inc.; (xi) Powin Energy Ontario Storage II LP; (xii) Powin Canada B.C. Ltd; and (xiii) Powin EKS SellCo LLC.[2]

"Debtor/Estate Release" has the meaning set forth in Section 15 hereof.

"Debtor/Estate Releasors" has the meaning set forth in Section 15 hereof.

"Debtor Professional Fee Reserve" means the reserve fund currently held by the Stretto Inc. and established by the Debtors in connection with the DIP Order and the Cash Collateral Order to pay any accrued and unpaid (a) Professional Fee Claims incurred by a Professional and which have not yet been approved by the Bankruptcy Court; and (b) Professional Fee Claims approved by the Bankruptcy Court. The amounts deposited into the Debtor Professional Fee Reserve shall be free and clear of all liens, claims and encumbrances of any Persons or Entities except to the extent that any excess amounts remain in the Debtor Professional Fee Reserve after payment of all Allowed Professional Fee Claims, such excess amounts shall be distributed in accordance with the Plan.

"DIP Agreement" means that certain Debtor-In-Possession Credit and Guaranty Agreement dated July 28, 2025, among Powin LLC, a Delaware limited liability company, certain other affiliated Borrowers and Guarantors (each, as defined therein), from time to time party thereto, the Lenders from time to time party thereto (the "DIP Lenders"), FlexGen Power Systems, LLC, as Administrative Agent for the Lenders (in such capacity, the "Administrative Agent") and FlexGen Power Systems, LLC as Collateral Agent for the Secured Parties (in such capacity, the "Collateral Agent") as the same may be amended, restated, supplemented or otherwise modified from time to time.

---

[2] The Debtors anticipate filing a voluntary petition for Powin EKS SellCo LLC prior to solicitation of the Combined Joint Plan and Disclosure Statement and intend to include that entity as a Debtor under, and within the scope of, this Combined Joint Plan and Disclosure Statement.

"DIP Documents" means the Final DIP Order, the DIP Agreement, and other agreements and other documents entered into, or delivered, on connection with the DIP Facility.

DIP Facility" means the financing facility pursuant to the Final DIP Order and the DIP Agreement.

"Direct Claims" has the meaning set forth in Section 13 hereof.

"Direct Claims Trust" means the post-confirmation trust established pursuant to the terms of the Direct Claims Trust Agreement for the purpose of receiving and monetizing the Direct Claims Trust Assets.

"Direct Claims Trust Assets" has the meaning set forth in Section 13 hereof.

"Direct Claims Trust Agreement" means the agreement, substantially in the form included in the Plan Supplement, governing the Direct Claims Trust, as it may be subsequently modified from time to time.

"Direct Claims Trustee" means the Liquidating Trustee in its capacity as trustee of the Direct Claims Trust pursuant to the terms of the Direct Claims Trust Agreement.

"Direct Claims Trust Interests" means the non-transferable beneficial interests in the Direct Claims Trust.

"Disputed" means, with respect to any Claim or Interest, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed, or contingent and as to which no Proof of Claim has been filed; or (b) as to which the Debtors, the Liquidating Trustee, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors or the Liquidating Trustee, as applicable, in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

"Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of any deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim scheduled by the Debtors in the Schedules as disputed, contingent, or unliquidated and as to which no Proof of Claim has been timely filed; or (iii) a Claim that is not listed in the Schedules and as to which no Proof of Claim has been timely filed. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

"Distribution Agent" means the Liquidating Trustee, or its designees or agents.

"Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

"Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

-7-

"Distributions" means the distributions of Cash to be made in accordance with the Plan and the Liquidating Trust Agreement, as applicable.

"Effective Date" means the date selected by the Debtors, which is a Business Day after the Confirmation Date on which no stay of the Confirmation Order is in effect.  Within five (5) business days after the Effective Date, notice of the Effective Date shall be filed with the Bankruptcy Court by the Debtors or the Liquidating Trustee, as applicable.

"Effective Date Cash Transfers" has the meaning set forth in Section 13 hereof.

"EKS Sale" has the meaning set forth in Section 5.9 hereof.

"Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

"Estates" means the estates of the Debtors in the Chapter 11 Cases created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"Exculpated Parties" means collectively (a) the Debtors, (b) John Brecker in any capacity, including, without limitation, his capacity as Independent Manager of Powin LLC, (c) Gerard Uzzi in any capacity, including, without limitation, in his capacity as Chief Restructuring Officer of Powin, LLC and as former Independent Manager of Powin, LLC, (d) Brian Kane, Chad Paulson, any others agreed to between the Committee and the Debtors, in any capacity, subject to approval by the Committee based on the results of its investigation and (if required by the Committee) execution of an agreement satisfactory to the Committee to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, (e) members of the Committee (solely in their capacities as Committee members), (f) Bankruptcy Court-approved Estate and Committee professionals, and (g) any other party, subject to approval by the Committee, which may be withheld for any reason or conditioned on execution of any appropriate agreement to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, for whom the Debtors determine exculpation is appropriate.

"Final DIP Order" means *the Final Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 520].

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

"Final Distribution" means the last payment to holders of Allowed Claims in accordance with the provisions of the Plan.

"Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

"First Day Declaration" means the *Declaration of Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* [Docket No. 13].

"FlexGen Sale" has the meaning set forth in Section 5.9 hereof.

"General Claims Bar Date" means September 29, 2025, at 5:00 p.m., prevailing Eastern Time, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtors that arose prior to the Petition Date.

"General Unsecured Claim" means any unsecured Claim against the Debtors or the Estates, that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, or a Priority Non-Tax Claim.

"Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

"Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Indemnified Parties" has the meaning set forth in Section 15 hereof.

"Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial distribution of Cash shall be made to the holders of Allowed Claims, as determined by the Debtors or the Liquidating Trustee, as applicable, and taking into account any applicable required reserves.

"Initial Trust Cash" has the meaning set forth in Section 13 hereof.

"Initial WARN Act Claim Reserve Amount" means [$●] funded by the Debtors to establish the WARN Act Claim Reserve.

"Insider" means an insider of the Debtors, as defined in section 101(31) of the Bankruptcy Code.

"Insurance Policies" means all insurance policies maintained by the Debtors as of the Petition Date, including but not limited to director and officer insurance policies.

"Intercompany Claim" means any Claim held by a Debtor against another Debtor, including any Claim arising under, or related to, any cash management arrangement, shared services arrangement, tax sharing agreement, intercompany loan, advance, receivable, payable, guaranty, allocation, contribution, reimbursement right, or other intercompany transaction, whether arising prior to or after the Petition Date.

-9-

"Interest" means any equity interest in the Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock, whether vested or non-vested, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

"Interim DIP Order" means the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superiority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (V) Granting Related Relief* [Docket No. 169].

"Interim Fee Order" means the *Administrative Fee Order Establishing Procedures for Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* [Docket No. 519], entered by the Bankruptcy Court in the Chapter 11 Cases.

"KEIP/KERP Order" has the meaning set forth in Section 5.8 hereof.

"Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

"Liquidating Trust" means the trust established on the Effective Date in accordance with the Liquidating Trust Agreement for the purpose of liquidating and distributing the assets of the Estates, in accordance with 26 C.F.R. § 301.7701-4(d).

"Liquidating Trust Assets" means any and all assets of the Estates of every kind and character, wherever located, whether real or personal, tangible or intangible, transferred to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries pursuant to the Plan and the Liquidating Trust Agreement, including, without limitation, to the extent not otherwise excluded by this definition: (i) all remaining cash; (ii) all Causes of Action, and the proceeds from the prosecution therefrom or the settlement thereof; (iii) all rights, claims and/or assets under any and all contracts, agreements, and licenses (whether or not executory contracts, and whether or not rejected or assumed) of the Debtors, including all rights and/or assets retained by any of the Debtors under any asset purchase agreement with third-party purchasers approved by the Bankruptcy Court prior to the Effective Date; (iv) any proceeds of the foregoing; and (v) all files, books and records relating to the Debtors' businesses or the administration of the Plan. Notwithstanding the foregoing, any assets received for distribution to holders of allowed WARN Act Claims, including but not limited to the Initial WARN Act Claim Reserve Amount, shall not be considered Liquidating Trust Assets.

"Liquidating Trust Assets Account" means an interest-bearing bank account or money-market account to be established and held in trust by the Liquidating Trustee on or after the Effective Date for the purpose of holding the Liquidating Trust Assets to be distributed pursuant to the Plan.

"Liquidating Trust Agreement" means the agreement, substantially in the form included in the Plan Supplement, governing the Liquidating Trust, as it may be subsequently modified from time to time.

-10-

"Liquidating Trust Beneficiaries" means holders of Allowed General Unsecured Claims that receive beneficial interests in the Liquidating Trust under the Plan.

"Liquidating Trust Interests" means the non-transferable beneficial interests in the Liquidating Trust.

"Liquidating Trust Professional Fee Reserve" means a reserve fund to be established by the Liquidating Trustee to pay any accrued and unpaid (a) Professional Fee Claims incurred by a Professional and which have not yet been approved by the Bankruptcy Court; and (b) Professional Fee Claims approved by the Bankruptcy Court, in each case, in excess of the Debtor Professional Fee Reserve.  The amounts deposited into the Liquidating Trust Professional Fee Reserve shall be free and clear of all liens, claims and encumbrances of any Persons or Entities except to the extent that any excess amounts remain in the Liquidating Trust Professional Fee Reserve after payment of all Allowed Professional Fee Claims, such excess amounts shall be distributed in accordance with the Plan.

"Liquidating Trustee" means the Person selected by the Committee, with the consent of the Debtors which may not be unreasonably withheld, to act as trustee of each of the Liquidating Trust and the Direct Claims Trust, in accordance with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement or the Direct Claims Trust Agreement, as applicable, or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement or the Direct Claims Trust Agreement, as applicable.

"Liquidation Proceeds" means any Cash or other consideration paid to or realized by the Debtors or the Liquidating Trustee, as applicable, upon the collection, sale, transfer, assignment, or other disposition of the Liquidating Trust Assets.

"Litigation" means the interest of the Estates, the Debtors, or the Liquidating Trust, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtors or the Liquidating Trustee, as applicable, except to the extent concerning any Released Parties.  Litigation includes, without limitation not otherwise stated herein, any action: (i) for recovery of an Avoidance Action; (ii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors or the Liquidating Trust, as applicable; (iii) for compensation for damages incurred by the Debtors; and (iv) equitable subordination actions against Creditors.

"Litigation Recovery" means any Cash or other property received by the Debtors or the Liquidating Trust, as applicable, from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest, and punitive damages, whether recovered by way of settlement, execution on judgment, or otherwise.  If any Litigation is pursued on a contingent-fee basis, the Litigation Recovery will be net of any contingent fee paid to legal counsel.

"Mainfreight Sale" has the meaning set forth in Section 5.11 hereof.

"Oversight Committee" has the meaning set forth in Section 13 hereof.

-11-

"Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

"Petition Date" means the date each Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code and with respect to Powin Project LLC, shall mean June 9, 2025, with respect to Powin EKS SellCo LLC, shall mean [●], 2025, with respect to Powin Canada B.C. Ltd., Powin Energy Ontario Storage II LP, and Powin Energy Storage 2, Inc., shall mean June 22, 2025, and with respect to the remaining Debtors shall mean June 10, 2025.

"Plan Documents" means the Plan, the Disclosure Statement, the Plan Supplement, the Direct Claims Trust Agreement, the Liquidating Trust Agreement, any plan support letters, or other documents or pleadings filed by the Debtors relating to the Plan.

"Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

"Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court not later than seven (7) calendar days prior to the Plan Objection Deadline, which shall include certain exhibits and schedules to the Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

"Prepetition Loan Agreement" means that Loan Agreement, dated as of October 1, 2024, among Powin, LLC, Powin Energy Intermediate, LLC, the Subsidiary Guarantors party thereto, the Lenders party thereto (the "Prepetition Lenders" and each a "Prepetition Lender"), and GLAS USA LLC, as administrative agent and collateral agent (in such capacities, the "Prepetition Administrative Agent" and the "Prepetition Collateral Agent").

"Prepetition Loan Documents" means all promissory notes, guarantees, security agreements, filings, deposit account control agreements, intellectual property security agreements and other instruments and documents delivered in connection with the Prepetition Loan Agreement.

"Prepetition Loan Facility" means the financing facility pursuant to the Prepetition Loan Agreement.

"Priority Claim" means a Priority Non-Tax Claim or a Priority Tax Claim.

"Priority Non-Tax Claim" means any Claim, other than an Administrative Claim, a Priority Tax Claim, or a WARN Act Claim, as set forth herein, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

"Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all

Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

"Professional" means an Entity:  (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

"Proof of Claim" means a proof of claim filed pursuant to section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

"Rejection Bar Date" means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease to file a proof of claim for damages related to such rejection.  The Rejection Bar Date for such Claims will be, (i) with respect to executory contracts and unexpired leases rejected pursuant to a Bankruptcy Court order other than the Confirmation Order, the date provided by an order approving the rejection, and, (ii) with respect to executory contracts and unexpired leases rejected pursuant to the Confirmation Order, the date that is thirty (30) days after the Effective Date.

"Rejection Motion" has the meaning set forth in Section 5.9 hereof.

"Related Persons" means, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's successors and assigns, and as applicable, its current and former shareholders, Affiliates, subsidiaries, employees, agents, investment managers, subagents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants.

"Release Opt-Out Election Form" means a form for holders of Claims to opt out of being a Releasing Party in connection with the Third Party Release.

"Released Parties" means collectively (a) the Debtors, (b) the Debtors' respective current officers and managers, including John Brecker, in any capacity, including, without limitation, his capacity as Independent Manager of Powin LLC, (c) Gerard Uzzi, in any capacity, including, without limitation, his capacity as Chief Restructuring Officer of Powin, LLC and former Independent Manager of Powin, LLC, (d) Brian Kane, Chad Paulson, any others agreed to between the Committee and the Debtors, in any capacity, subject to approval by the Committee based on the results of its investigation and (if required by the Committee) execution of an agreement satisfactory to the Committee to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, (e) members of the Committee (solely in their capacities as Committee members), (f) Bankruptcy Court-approved Estate and Committee professionals, and (g) any other party, subject to approval by the Committee, which may be withheld for any reason or conditioned on execution of any appropriate agreement to cooperate

-13-

with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, for whom the Debtors determine a release is appropriate.

"Releasing Parties" means, individually and collectively: (i) each holder of a Claim or Interest that does not opt out of the Third Party Release; (ii) the Committee and each of its members in such capacity; and (iii) with respect to each of the foregoing Entities in clauses (i) and (ii), such Entities' or Persons' successors, assigns, transferees, and such Entities' or Persons' officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), and any and all other entities who may purport to assert any cause of action, by, through, for, or because of such Entities or Persons.

"Sale Transactions" means collectively, the FlexGen Sale, the Mainfreight Sale and the EKS Sale pursuant to section 363 of the Bankruptcy Code, the procedures established under the terms of the Bidding Procedures Order, and an order of the Bankruptcy Court approving such sales.

"Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtors to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and the Debtors' statements of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court required the Debtors to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time [Docket Nos. 414-437].

"Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

"Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

"Settled Priority Claim" means a claim for priority asserted under section 503(b)(9) or 546(c) of the Bankruptcy Code which is settled consistent with this Combined Plan and Disclosure Statement by the Debtors and the party asserting such claim.

"Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Liquidating Trust makes a distribution to any holders of Allowed Administrative, Secured, Priority, or General Unsecured Claims.

"Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax.

"Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

-14-

"Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtors.

"Third Party Release" has the meaning set forth in Section 15.2(c) hereof.

"Trust" shall mean either the Liquidating Trust or the Direct Claims Trust, as applicable.

"Trust Budget" means a budget for the payment by the Liquidating Trust of post-Effective Date costs and expenses of the Liquidating Trust and Direct Claims Trust. The initial Trust Budget shall be filed with the Plan Supplement. The Liquidating Trustee may amend the Trust Budget only with the consent of the Oversight Committee.

"Trust Funding Amount" means a one-time transfer of cash to the Liquidating Trust for the administration of the Liquidating Trust, in the amount set forth in the initial Trust Budget to be attached to the Plan Supplement.

"Unimpaired Claim" means an unimpaired Claim within the meaning of section 1124 of the Bankruptcy Code.

"U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

"Voting Classes" means Classes 3, 4, and 5.

"Voting Deadline" means November 18, 2025 at 4:00 p.m. (prevailing Eastern Time).

"Voting Instructions" means the instructions for voting on the Plan contained on the Ballots.

"Voting Record Date" means the date as of which the identity of holders of Claims is set by the Bankruptcy Court for purposes of determining the Entities entitled to receive and vote on the Plan.

"WARN Act Claims" means the Claims alleged in the WARN Action.

"WARN Act Claims Administrator" means the Liquidating Trustee.

"WARN Act Claim Reserve" means the reserve related to the WARN Action as set forth in Section 13.7 hereof.

"WARN Act Claim Reserve Account" means the escrow or other segregated account maintained and administered by the Liquidating Trustee for the benefit of the Allowed WARN Act Claims if the settlement with respect to WARN Act Claims is approved or the Class 5A General Unsecured Claims held by holders of WARN Act Claims if so determined by an order of the Bankruptcy Court if such settlement is not approved.

"WARN Action" means that certain adversary proceeding pending before the Bankruptcy Court, captioned at *Brian Palomino, on behalf of himself and all others similarly situated v. Powin,*

*LLC, Powin Energy Operating Holdings, LLC and Powin Energy Operating, LLC*, Adv. No. 25-01249 (MBK) (Bankr. D. N.J.).

## SECTION 3
## SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND CONFIRMATION DATES AND DEADLINES

 3.1 <u>Summary of Classification and Treatment of Claims and Interests</u>.  All Claims against or Interests in the Debtors are classified for purposes of voting and distributions under the Plan.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor, and each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Interests shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.  Further, the Plan groups the Debtors together solely for purposes of describing treatment under the Plan, confirmation of the Plan, voting on the Plan, and making distributions in accordance with the Plan.  Accordingly, for such limited purposes only, the Debtors will be deemed, and not actually, consolidated.  Notwithstanding the foregoing, such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets or liabilities among them.  No substantive consolidation of the Debtors or their Estates shall be deemed to have occurred for any purpose other than the limited consolidation solely for voting and distributions under the Plan described herein.  Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

 A summary of the classification of these Claims and Interests, the proposed treatment of each Class of Claims or Interests, and the voting status of each Class of Claims or Interests follows.

| Class | Treatment | Status |
|---|---|---|
| Unclassified: Administrative Claims, estimated to total approx. $[●]<br><br>**Estimated Recovery: 100%** | Except to the extent that a holder of an Allowed Administrative Claim agrees to less favorable treatment, each holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the holder of such Claim and the Debtors or the Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law. | Unclassified – not entitled to vote |
| Unclassified: Priority Tax Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery: 100%** | Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall be paid the full unpaid amount of such Allowed Priority Tax Claim as follows: (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Debtors shall have agreed upon in writing. | Unclassified – not entitled to vote |
| Class 1: Priority Non-Tax Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery: [●]** | Except to the extent a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, on the later of (i) the Effective Date or (ii) the date such Priority Non-Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, payment in full in Cash in an amount equal to the | Unimpaired – deemed to accept the Plan |

US_ACTIVE\131476713

| Class | Treatment | Status |
|-------|-----------|--------|
| | Allowed amount of such Claim. | |
| Class 2: Other Secured Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery: [●]** | Except to the extent a holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the later of (i) the Effective Date or (ii) the date such Other Secured Claim becomes Allowed, or as soon as reasonably practicable thereafter, each holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, at the discretion of the Distribution Agent (x) payment in full in Cash in an amount equal to the Allowed amount of such Claim; (y) such other treatment sufficient to render such Other Secured Claim Unimpaired; or (z) return of the applicable collateral or authorization of a setoff in satisfaction of the Allowed amount of such Other Secured Claim. | Unimpaired – deemed to accept the Plan |
| Class 3: WARN Act Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery: [●]** | This Combined Plan and Disclosure Statement proposes a settlement with respect to WARN Act Claims. Specifically, if the representatives of the holders of WARN Act Claims agree on a binding basis to such settlement as memorialized in the Plan Supplement, such holders will receive the following treatment: (a) the allowance of the WARN Act Claims in the amount set forth in the Plan Supplement (the "Allowed WARN Act Claims"); (b) the certification of a class pursuant to Fed. R. Bankr. P. 7023 with respect to the Allowed WARN Act Claims; (c) the payment of an initial cash payment on the Effective Date on account of the Allowed WARN Act Claims to the designated class representative of such Allowed WARN Act Claims identified in the Plan Supplement to be distributed by such class representative to members of the class; and (d) the payment of additional cash payments to the class representative to be distributed to members of the class as described in the Plan Supplement following the Effective Date on the occurrence of certain milestone events disclosed in the Plan Supplement until the Allowed WARN Act Claims are satisfied in full. In the event a settlement with holders of WARN Act Claims is not reached, each WARN Act Claim shall be treated as either a Class 1 Priority Non-Tax Claim or a Class 5 General Unsecured Claim, as determined by an order of the | Impaired – entitled to vote |

US_ACTIVE\131476713

| Class | Treatment | Status |
|---|---|---|
|  | Bankruptcy Court. |  |
| Class 4: Settled Priority Claims, estimated to total approx. [$●] **Estimated Recovery:** [●] | This Combined Plan and Disclosure Statement proposes a settlement for Settled Priority Claims. Specifically, if holders of a Settled Priority Claim agree on a binding basis to such settlement as memorialized in the Plan Supplement, such holders will receive the following treatment: (a) the allowance of the Settled Priority Claim in the amount set forth in the Plan Supplement (the "Allowed Settled Priority Claim"); (b) the payment of the documented professional fees incurred by the holder of the Allowed Settled Priority Claim, as agreed by the Debtors and disclosed in the Plan Supplement, on the Effective Date; and (c) the treatment of the Allowed Settled Priority Claim as a Class 5 General Unsecured Claim except for the foregoing payment of such documented professional fees on the Effective Date. | Impaired – entitled to vote |
| Class 5: General Unsecured Claims, estimated to total approx. [$●] **Estimated Recovery:** [●] | Class 5A: Each holder of an Allowed General Unsecured Claim shall receive in exchange for its Allowed General Unsecured Claim, a Pro Rata interest in the Liquidating Trust. | Impaired – entitled to vote |
|  | Class 5B: Each holder of an Allowed General Unsecured Claim, who is also a Contributing Direct Claim Holder, shall receive, in addition to the treatment afforded to it as a Class 5A Claim Holder, a Pro Rata interest in the Direct Claims Trust on account of the Direct Claims contributed to the Direct Claims Trust. |  |
| Class 6: Intercompany Claims, estimated to total approx. [$●] **Estimated Recovery: 0%** | There shall be no Distribution on account of Intercompany Claims, except as necessary or appropriate for tax efficiency, provided, however, that no Distribution will be in Cash. Upon the Effective Date, all Intercompany Claims will be deemed cancelled, released, and discharged, subject to the foregoing. | Impaired – deemed to reject the Plan |
| Class 7: Interests **Estimated** | There shall be no Distribution on account of Interests. Upon the Effective Date, all Interests will be deemed | Impaired – deemed to reject |

-19-

| Class | Treatment | Status |
|-------|-----------|--------|
| **Recovery: 0%** | cancelled and will cease to exist. | the Plan |

### 3.2 Important Dates and Deadlines.

| Event | Proposed Date |
|-------|---------------|
| Disclosure Statement Conditional Approval Objection Deadline | October 8, 2025 at 4:00 p.m. |
| Disclosure Statement Reply Deadline | October 9, 2025 |
| Voting Record Date | October 10, 2025 |
| Proposed Hearing Date for Conditional Approval of Disclosure Statement | October 10, 2025 |
| Expected Entry of Conditional DS Approval Order/Delivery to Verita | October 13, 2025 |
| Deadline to Serve Notice and Solicitation Package | Five business days following entry of Conditional DS Approval Order |
| Publication Deadline[3] | Five business days following entry of Conditional DS Approval Order |
| Deadline to file Plan Supplement | November 7, 2025 at 4:00 p.m. |
| Deadline for Creditors to File Rule 3018 Motions | November 11, 2025 at 4:00 p.m. |
| Voting Deadline | November 18, 2025 at 4:00 p.m. |
| Combined Plan and Disclosure Statement Objection Deadline | November 18, 2025 at 4:00 p.m. |
| Deadline to File Confirmation Brief and Other Evidence Supporting the Combined Plan and Disclosure Statement | November 21, 2025 at 4:00 p.m. |
| Deadline to File Voting Tabulation Affidavit | November 21, 2025 at 4:00 p.m. |
| Confirmation Hearing | November 25, 2025 at 11:30 a.m. |

## SECTION 4
## BACKGROUND

### 4.1 General Background.

(a)    Debtors' Prepetition Business and Operations.

Prior to the Petition Date, the Debtors operated as a leading energy storage integrator at the forefront of the clean energy revolution, based in Portland, Oregon, and with offices around the world in Vietnam, China, Canada, Australia, and Spain. The Debtors focused their business on advancing the next frontier of energy by ensuring access to clean, reliable, resilient, and affordable power through cutting-edge technology. The Debtors' business model targeted innovations in energy storage, which are essential to the planet's transition to a sustainable, carbon-free world.

US_ACTIVE\131476713

At a high level, the Debtors' business model had two lines of business:  (i) the engineering and installation of battery energy storage systems, which are governed by various energy supply agreements (each, an "ESA"); and (ii) the warranties, servicing and maintenance of battery energy storage systems, which are governed by various long term servicing agreements (each, an "LTSA").  To implement the Debtors' business plan, the Debtors entered into these ESAs and LTSAs with its customers, and then used suppliers and vendors to support performance under the ESAs and LTSAs.

        (b)      Corporate Organizational Structure.

The Debtors' prepetition organization structure is attached to the First Day Declaration as Exhibit A.

        (c)      Debtors' Prepetition Debt Structure.

        (i)      Prepetition Secured Debt

As of the Petition Date, the outstanding secured obligations under the Loan Agreement were no less than $25,612,281.51, plus any other fees, expenses, and other obligations owed under the Prepetition Loan Documents.  On August 20, 2025, the Prepetition Secured Debt was satisfied in full with proceeds from the FlexGen Sale transaction.

        (ii)      Unsecured Debt

As of the Petition Date, the Debtors estimate that unsecured claims against the Debtors are at least $300,000,000, including:  (i) accrued and unpaid amounts owed to the Debtors' trade vendors and customers and other unsecured debt incurred in the ordinary course of the Debtors' business; and (ii) certain ongoing or threatened litigation claims, which are disputed.

        (d)      Debtors' Tax Status.

The Debtors' tax filing obligations vary by entity. Debtors Powin Energy Operating Holdings LLC and Powin Energy Operating LLC were required to file U.S. federal tax returns. Powin Project, LLC, which was newly formed in 2025, has not yet filed any federal tax returns. Certain affiliates—Powin Energy Storage 2, Inc., Powin Energy Ontario Storage II LP, and Powin Canada B.C. Ltd.—file separate tax returns under Canadian law. The remaining Debtors—Powin, LLC; PEOS Holdings, LLC; Powin China Holdings 1, LLC; Powin China Holdings 2, LLC; Charger Holdings, LLC; Powin Energy Ontario Storage, LLC; Powin Energy Operating Holdings, LLC; Powin Energy Operating, LLC; and Powin EKS SellCo, LLC—are pass-through entities and their tax reporting is included in the combined federal tax return of non-Debtor Powin Energy Holdings LLC. For the avoidance of doubt, any tax liabilities attributable to such pass-through Debtors are obligations of Powin Energy Holdings LLC and/or its equity holders, and the Debtors expressly disclaim any liability in connection therewith.

4.2      Events Leading to Chapter 11 Filing.

The Debtors commenced these Chapter 11 Cases as a result of certain historical challenges to the Debtors' business, including severe liquidity constraints, an extreme overdependence on

trade credit, increasing assertions of liquidated damages entitlements by customers aggrieved by alleged performance delays, and damaged credibility with customers. The Debtors commenced these Chapter 11 Cases in order to, among other things, pursue a value-maximizing sale process for their assets.

## SECTION 5
## THE CHAPTER 11 CASES

The following is a brief description of certain material events that have occurred during the Chapter 11 Cases.

5.1    <u>First Day Motions and Other Early Developments in the Chapter 11 Cases</u>.

The Debtors filed a number of motions after the Petition Date to, among other things, help stabilize operations and establish procedures for the Chapter 11 Cases:

(i)    joint administration motion [Docket No. 3] and order thereon [Docket No. 58];

(ii)    application to appoint Kurtzman Carson Consultants, LLC dba Verita Global as the Debtors' claims and noticing agent [Docket No. 9] and order thereon [Docket No. 66];

(iii)    motion for authorization to use certain cash management procedures, bank accounts, and certain payment methods, and to modify requirements imposed by section 345(b) of the Bankruptcy Code [Docket No. 12], interim order thereon [Docket No. 60], and final order thereon [Docket No. 397];

(iv)    motion for authorization to continue insurance programs and prepetition surety bonds and pay obligations arising thereunder [Docket No. 8], interim order thereon [Docket No. 61], and final order thereon [Docket No. 394];

(v)    motion to provide procedures to deal with utility providers [Docket No. 112], interim order thereon [Docket No. 399], and final order thereon [Docket No. 679]; and

(vi)    motion to pay certain prepetition employee obligations, and to continue certain employee benefits programs [Docket No. 7], interim order thereon [Docket No. 63], and final order thereon [Docket No. 395].

5.2    <u>Prepetition Loan Facility and Cash Collateral Order</u>.

(i)    Prior to the Petition Date, certain of the Debtors entered into the Prepetition Loan Agreement with the Prepetition Lenders. Pursuant to the Prepetition Loan Agreement, the Prepetition Lenders provided the Debtors with up to $200,000,000 in total commitments. As of the Petition Date, the outstanding secured obligations under the Prepetition Loan Agreement were no less than $25,612,281.51, plus any other fees, expenses, and other obligations owed under the Prepetition Loan Documents.

-22-

(ii)    On June 10, 2025, the Debtors filed a motion for authority to use cash collateral and to provide the Prepetition Secured Parties with adequate protection [Docket No. 11]. On June 13, 2025, the Bankruptcy Court approved such motion on an interim basis [Docket No. 68]. On July 16, 2025, the Bankruptcy Court approved such motion on a final basis [Docket No. 400]. On August 20, 2025, the Debtors paid in full the secured obligations under the Prepetition Loan Agreement.

5.3    <u>DIP Financing</u>.

On June 21, 2025, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (V) Granting Related Relief* [Docket No. 120] (the "<u>DIP Motion</u>"). The Debtors filed the DIP Motion in order to obtain critical liquidity necessary to continue operations. By the DIP Motion, the Debtors sought, among other things, authorization and approval of the DIP Facility from the Lenders, with up to $27.5 million in new money borrowing capacity. The DIP Facility was market tested and evaluated by the Debtors and their professionals. On June 26, 2025, the Bankruptcy Court entered the Interim DIP Order and on July 25, 2025, the Bankruptcy Court entered the Final DIP Order. On August 19, the DIP Facility was fully satisfied when the DIP Lender applied the outstanding obligations as a credit against its purchase price in the FlexGen Sale transaction.

5.4    <u>Debtors' Retention of Professionals and Personnel</u>.

The Bankruptcy Court granted the Debtors' applications or motions, as applicable, to employ certain professionals, including (i) Dentons US LLP and Togut, Segal & Segal LLP as bankruptcy co-counsel in the Chapter 11 Cases (Docket Nos. 753 and 596); and (ii) Uzzi & Lall, a restructuring advisory firm, to provide Gerard Uzzi as the Debtors' Chief Restructuring Officer and additional personnel as of the Petition Date (Docket No. 690).

5.5    <u>Prepetition Taxes</u>.

On June 18, 2025, the Debtors filed the *Motion of the Debtors for Entry of an Interim and Final Order (I) Granting Authority to Pay Certain Prepetition Taxes; and (II) Granting Related Relief* [Docket No. 99] (the "Tax Motion"), which the Court granted on an final basis on August 7, 2025 [Docket No. 675].

5.6    <u>Formation of the Committee; Retention of Professionals</u>.

On June 27, 2025, the U.S. Trustee formed the Committee, comprised of (i) Ace Engineering & Co. Ltd., (ii) Celestica LLC, (iii) Contemporary Amperex Technology Co., Limited (CATL), (iv) Kupono Solar, LLC, (v) Formosa Electronic Industries Inc., (vi) JMS Wind Energy, LLC, (vii) R.H. Shipping & Chartering S de RL de CV, (viii) Brian Palomino, and (iv) GreEnergy Resources LLC [Docket No. 174]. The Committee retained Brown Rudnick LLP and Genova Burns LLC as bankruptcy co-counsel, and Alvarez & Marsal North America, LLC as its financial advisor.

5.7    <u>Debtors' Schedules and Statement of Financial Affairs</u>.

Upon the Debtors' motion, pursuant to an order entered on June 13, 2025 [Docket No. 65], the Bankruptcy Court extended the Debtors' time to file the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs until July 17, 2025.

On July 17, 2025, the Debtors filed their respective Schedules and Statements of Financial Affairs [Docket Nos. 414-437]. The *General Global Notes And Statement Of Limitations, Methodology And Disclaimers Regarding The Debtors' Schedules Of Assets And Liabilities And Statements Of Financial Affairs* provided, among other things, a comprehensive explanation regarding the limitations on the Debtors' financial reporting and processes and explained that the Schedules and Statements contained unaudited financial information that may be inaccurate and/or incomplete.

The Debtors intend to imminently file various amendments to their Schedules and Statements of Financial Affairs.

5.8    <u>Claims Bar Dates</u>.

On August 20, 2025, the Bankruptcy Court entered the Bar Date Order setting September 29, 2025, as the general claims bar date for the filing of proofs of claim; and December 8, 2025, as the claims bar date for governmental units.

5.9    <u>KEIP and KERP Motion</u>.

On July 23, 2025, the Debtors filed the *Motion of the Debtors for Entry of Order (I) Approving Key Employee Retention Plan and Key Employee Incentive Plan and (II) Granting Related Relief* [Docket No. 493], which was approved by order of the Bankruptcy Court entered on August 7, 2025 [Docket No. 665] (the "<u>KEIP/KERP Order</u>").

5.10   <u>Rejection Motions and Related Matters</u>.

(i)    <u>Customer Contract Rejection Motion</u>

On June 17, 2025, the Debtors filed the *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88] (the "<u>Customer Contract Rejection Motion</u>"). Through the Customer Contract Rejection Motion, the Debtors sought authority, pursuant to section 365 of the Bankruptcy Code, to reject in their entirety all of the Debtors' Energy Supply Agreements, Long Term Service Agreements, and related contractual arrangements with their customers (the "<u>Customer Contracts</u>"). The Debtors explained that these agreements had become unduly burdensome to the estates, no longer provided a net economic benefit, and, in many instances, obligated the Debtors to perform under contracts that were heavily out of the money and inconsistent with the Debtors' restructuring objectives.

After notice and an opportunity for parties in interest to be heard, and following consideration by the Court, the Court entered an order on September 9, 2025 [Docket No. 843] granting the Customer Contract Rejection Motion. Numerous parties in interest filed responses to

the Customer Contract Rejection Motion; however, all objections to the requested relief were either consensually resolved or overruled by the Court.  The Court's order authorized the rejection of the Customer Contracts, thereby relieving the estates of the ongoing administrative and financial burdens associated with those legacy customer agreements and aligning the Debtors' contractual obligations with their restructuring strategy.

(ii)    Omnibus Rejection Motions

The Debtors intend to imminently file various omnibus rejection motions (the Omnibus Rejection Motions, and, together with the Customer Contract Rejection Motion, the "Rejection Motions"), which motions shall seek authority to reject certain contracts that were not assigned in the Sale Transactions and were not needed by the Debtors.

5.11    Adequate Protection Motions.

In connection with the Customer Contract Rejection Motion, two separate groups of the Debtors' customers filed motions [Docket Nos. 117 and 297] (collectively, the "Adequate Protection Motions") seeking (i) to compel the Debtors to take certain actions related to intellectual property pursuant to Section 365(n) of the Bankruptcy Code and (ii) adequate protection under Section 363(e) of the Bankruptcy Code. The Adequate Protection Motions remain pending and, absent further continuance or consensual resolution, are scheduled to be heard by the Court on September 25, 2025.

5.12    Sale Proceedings.The Debtors commenced these Chapter 11 Cases in order to, among other things, engage in a value-maximizing sale process for their assets.  To that end, on July 1, 2025, the Debtors filed the *Motion of the Debtors for Entry of an Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections, (II) Approving Bidding Procedures By Which Interested Parties May Bid and an Auction Sale Format in Connection With the Sale of Substantially All of the Debtors' Assets; (III) Approving Form of Asset Purchase Agreement, (IV) Approving From of Noice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of the Debtors' Property Fee and Clear of all Causes of Action and Claims* [Docket No. 228] (the "Bidding Procedures Motion"), which the Bankruptcy Court granted through entry of the Bidding Procedures Order on July 17, 2025.  In accordance therewith, on July 30, 2025, the Debtors conducted an auction of their assets after receiving three qualified bids, all as more detailed in the *Notice of Winning Bidders* [Docket No. 591] ("Notice of Winning Bidders") filed by the Debtors on July 31, 2025. Upon the conclusion of the auction, the Debtors filed the Notice of Winning Bidders announcing the winning bidders for their assets, as more fully detailed therein.  The transactions contemplated thereunder are outlined below.

(i)    Mainfreight Sale.

Pursuant to that certain bill of sale made in favor of Mainfreight Distribution Pty Ltd. ("Mainfreight") by the Debtors ("Mainfreight Bill of Sale"), attached as Exhibit A to the Notice of Winning Bidders, the Debtors agreed to sell certain of its assets, described on Exhibit A to the Mainfreight Bill of Sale, constituting collateral of Mainfreight to Mainfreight via credit bid in the

amount of $3,000,000.00 (the "Mainfreight Sale").  On August 8, 2025, the Bankruptcy Court entered an order approving the Mainfreight Sale [Docket No. 592].

(ii)   <u>FlexGen Sale</u>.

Pursuant to that certain asset purchase agreement by and between FlexGen Power Systems, LLC ("FlexGen") and the Debtors ("FlexGen APA"), attached as Exhibit B to the Notice of Winning Bidders, the Debtors agreed to sell the Purchased Assets, as defined in the FlexGen APA, to FlexGen for a purchase price of $36,000,000, comprised in FlexGen's discretion of a credit bid and cash, assumption by FlexGen of certain liabilities described in the FlexGen APA, and the Retention Fund, as defined in the FlexGen APA (the "FlexGen Sale").  On August 18, 2025, the Bankruptcy Court entered an order approving the FlexGen Sale [Docket No. 751], and the FlexGen Sale closed thereafter on August 19, 2025.  In connection therewith, on August 20, 2025, the Debtors changed the name Powin, LLC to BESS RemainCo LLC.

(iii)   <u>EKS Sale</u>.

Pursuant to that certain Sale and Release Agreement by and between Hitachi Energy Ltd., Hitachi Energy Power Conversion Solutions (together with Hitachi Energy Ltd., "Hitachi"), Powin, LLC, and Powin EKS Sellco LLC (together with Powin, LLC, the "Powin Parties") ("EKS Sale Agreement"), attached as Exhibit C to the *Notice of Revised Order Approving Sale of Shares in EKS Holdco LLC and Filing of Release and Sale Agreement* [Docket No. 649], the Powin Parties agreed to enter into a comprehensive transaction with Hitachi, whereby Hitachi would acquire the Remaining Units, as defined in the EKS Sale Agreement, from Powin EKS Sellco LLC and receive certain releases from the Powin Parties, as described in the EKS Sale Agreement, in exchange for providing the Powin Parties with a fixed sum of $15,000,000 (the "EKS Sale").  On August 8, 2025, the Bankruptcy Court entered an order approving the EKS Sale [Docket No. 691].

Following the consummation of the EKS Sale, the Debtors determined that the most efficient way to wind down Powin EKS Sellco was to commence a chapter 11 case for that entity, administer it jointly with the chapter 11 cases of the other Debtors, and include Powin EKS Sellco within the scope of this Combined Plan and Disclosure Statement.  Accordingly, Powin EKS Sellco LLC filed a petition for voluntary relief under chapter 11 of the Bankruptcy Code, with such case being jointly administered with the chapter 11 cases of the remaining Debtors.  The wind-down of Powin EKS Sellco LLC shall be governed by this Combined Plan and Disclosure Statement.

5.13   <u>WARN Action</u>.

On June 12, 2025, plaintiff Brian Palomino, individually and on behalf of a purported putative class of alleged similarly situated former employees of certain Debtors (the "Plaintiffs"), commenced the WARN Action styled as *Class Action Adversary Proceeding Complaint for Violation of WARN Act 29 U.S.C. § 2101, et seq.*, Adv. Case No. 25-01249, [Adv. Docket No. 1] against Debtors Powin, LLC, Powin Energy Operating Holdings, LLC, and Powin Energy Operating, LLC.  The Debtors submit that they have strong defenses to the WARN Action and do not bear any liability in connection therewith.  Counsel to the Plaintiffs asserts that payment in full of any WARN Act Claim, as an Allowed Priority Non-Tax Claim is due on the effective date,

-26-

unless the holder(s) of the WARN Act Claim agree to accept less favorable treatment. However, the Debtors have actively engaged, and continue to actively engage, with the Plaintiffs on the WARN Action in an effort to reach a resolution. Accordingly, a global settlement structure in resolution of the WARN Action is proposed herein.

## SECTION 6
## CONFIRMATION AND VOTING PROCEDURES

6.1    Confirmation Hearing.

On October 14, 2025, the Bankruptcy Court entered the Conditional Approval and Procedures Order. The Confirmation Hearing has been scheduled for **November 25, 2025, at 11:30 a.m. (prevailing Eastern Time)** to consider (a) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtors and Committee without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

6.2    Procedures for Objections.

Any objection to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Combined Plan and Disclosure Statement must be made in writing and filed with the Bankruptcy Court by no later than **November 18, 2025, at 4:00 p.m. (prevailing Eastern Time)** and be served in accordance with the local rules of the Bankruptcy Court on the following parties: (i) the Debtors c/o Uzzi & Lall, One Liberty Plaza, 165 Broadway 23rd Floor, New York, NY Attn: Gerard Uzzi (guzzi@uzzilall.com); (ii) counsel for the Debtors, (1) Dentons US LLP, 601 S. Figueroa St., Suite 2500, Los Angeles, CA 90018, Attn: Tania M. Moyron (tania.moyron@dentons.com) and Van C. Durrer, II (van.durrer@dentons.com); (2) Togut, Segal & Segal LLP, 550 Broad Street, Suite 1508, Newark, NJ 07102 Attn: Frank A. Oswald (frankowswald@teamtogut.com); (iii) counsel for the Official Committee of Unsecured Creditors, (1) Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attn: Robert J. Stark (rstark@brownrudnick.com), Kenneth J. Aulet (kaulet@brownrudnick.com), and Bennett S. Silverberg (bsilverberg@brownrudnick.com), and (2) Genova Burns LLC, 110 Allen Rd., Suite 304, Basking Ridge, NJ 07920, Attn: Daniel M. Stolz (DStolz@genovaburns.com); and (iv) the Office of the United States Trustee, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder (jeffrey.m.sponder@usdoj.gov). **Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court.**

6.3    Requirements for Confirmation.

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in the Chapter 11 Cases is that the Combined Plan and Disclosure Statement be: (i) accepted by all Impaired Classes of Claims and Interests or, if rejected by an Impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly"

against, and is "fair and equitable" with respect to, such Class; and (ii) feasible. The Bankruptcy Court must also find that:

      a.      the Combined Plan and Disclosure Statement has classified Claims and Interests in a permissible manner;

      b.      the Combined Plan and Disclosure Statement complies with the requirements of Chapter 11 of the Bankruptcy Code; and

      c.      the Combined Plan and Disclosure Statement has been proposed in good faith.

The Debtors and the Committee believe that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

6.4     Classification of Claims and Interests.

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the Bankruptcy Code, the Combined Plan and Disclosure Statement divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class. The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with Priority Non-Tax Claims, various Secured Claims, General Unsecured Claims, and Interests. The Debtors and the Committee believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Interests in the same Class and, thus, meet the requirements of section 1122 of the Bankruptcy Code.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Debtors and the Committee believe that the Combined Plan and Disclosure Statement complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Combined Plan and Disclosure Statement if the holders of Claims or Interests affected do not consent to the treatment afforded them under the Combined Plan and Disclosure Statement.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Combined Plan and Disclosure Statement only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

US_ACTIVE\131476713

The Debtors and the Committee believe that the Combined Plan and Disclosure Statement has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a holder of a Claim or Interest may challenge the classification of Claims or Interests herein and that the Bankruptcy Court may find that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed. If such a situation develops, the Debtors and Committee intend, in accordance with the terms of the Combined Plan and Disclosure Statement, to make such permissible modifications to the Combined Plan and Disclosure Statement as may be necessary to permit its confirmation. Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Combined Plan and Disclosure Statement.

**EXCEPT AS SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE COMBINED PLAN AND DISCLOSURE STATEMENT'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by creditors. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' and Committee's views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein. The Debtors and Committee believe that the consideration, if any, provided under the Combined Plan and Disclosure Statement to holders of Allowed Claims reflects an appropriate resolution of their Allowed Claims taking into account the differing nature and priority of such Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Combined Plan and Disclosure Statement. Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Combined Plan and Disclosure Statement, or do not vote to accept the Combined Plan and Disclosure Statement, but who will be bound by the provisions of the Combined Plan and Disclosure Statement if it is confirmed by the Bankruptcy Court.

6.5    Impaired Claims or Interests.

Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims in Classes Impaired by the Combined Plan and Disclosure Statement and receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote to accept or reject the Combined Plan and Disclosure Statement.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be Impaired if the Combined Plan and Disclosure Statement alters the legal, equitable, or contractual rights of the holders of such Claims or Interests treated in such Class.  The holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement.  The holders of Claims or Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.  Finally, the holders of Claims or Interests whose Claims or Interests are not classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

Under the Combined Plan and Disclosure Statement, holders of Claims in the Voting Classes – Classes 3, 4, and 5 – are Impaired and are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.  Holders of Claims in Classes 1 and 2 are Unimpaired and, therefore, not entitled to vote on the Combined Plan and Disclosure Statement and are deemed to accept the Combined Plan and Disclosure Statement.  Holders of Claims and Interests in Classes 6 and 7 are Impaired and will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement and, therefore, are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN THE VOTING CLASSES.**

6.6    Confirmation Without Necessary Acceptances; Cramdown.

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan.  A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, determined without including any acceptance of the plan by any insider holding a claim in that class, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests.  Here, because holders of Claims and Interests in Classes 6 and 7 are deemed to reject the Combined Plan and Disclosure Statement, the Debtors and Committee will seek confirmation of the Combined Plan and Disclosure Statement from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  The Debtors and Committee believe that such requirements are satisfied, as no holder of a Claim or Interest junior to those in the Impaired Classes is entitled to receive any property under the Combined Plan and Disclosure Statement.

-30-

The concept of "unfair discrimination" is not defined in the Bankruptcy Code, but case law suggests it exists when a difference in a plan's treatment of two classes of equal priority results in a materially lower percentage recovery for the non-accepting class. The Debtors and Committee do not believe that the Plan unfairly discriminates against any Class of Claims.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors, and equity holders, as follows:

    a.    <u>Secured Creditors</u>. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

    b.    <u>Unsecured Creditors</u>. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

    c.    <u>Interests</u>. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

As discussed above, the Debtors and Committee believe that the distributions provided under the Combined Plan and Disclosure Statement satisfy the absolute priority rule, where required.

    6.7    <u>Feasibility</u>.

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Plan and Disclosure Statement). Based on the Debtors' and the Committee's analysis, the Liquidating Trustee will have sufficient assets to accomplish its tasks under the Combined Plan and Disclosure Statement. Therefore, the Debtors and Committee believe that the liquidation pursuant to the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code.

    6.8    <u>Best Interests Test and Liquidation Analysis</u>.

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests

of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses, and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.

The Debtors, with the assistance of their advisors, have prepared a liquidation analysis that summarizes the Debtors' best estimate of recoveries by holders of Claims if the Chapter 11 Cases were converted to cases under chapter 7 (the "Liquidation Analysis"), which shall be filed with the Plan Supplement.

Based upon the Debtors' current projections, holders of Allowed Administrative Claims, Priority Claims and Other Secured Claims will be paid in full under the Plan, while holders of Allowed General Unsecured Claims will receive a projected distribution to be determined based on various assumptions. *See* Liquidation Analysis.

Based upon the Liquidation Analysis, the Debtors and Committee believe that creditors will receive at least as much or more under the Plan than they would receive if the Chapter 11 Cases were converted to chapter 7 cases.

6.9     Eligibility to Vote on the Combined Plan and Disclosure Statement.

Unless otherwise ordered by the Bankruptcy Court, only holders of Allowed Claims in the Voting Classes may vote on the Combined Plan and Disclosure Statement. Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Plan and Disclosure Statement, you must hold an Allowed Claim in the Voting Classes, or be the holder of a Claim that has been temporarily Allowed for voting purposes only pursuant to the approved tabulation procedures or under Bankruptcy Rule 3018(a).

6.10     Solicitation Package / Release Opt-Out Election Form.

All holders of Allowed Claims in the Voting Classes will receive a solicitation package (the "Solicitation Package"). The Solicitation Packages will contain: (i) the Combined Plan and Disclosure Statement; (ii) the Conditional Approval and Procedures Order; (iii) notice of the Confirmation Hearing; (iv) a form of Ballot, including voting instructions and a pre-addressed

-32-

return envelope; (v) a Release Opt-Out Election Form; and (vi) such other materials as the Bankruptcy Court may direct or approve or that the Debtors and Committee deem appropriate.

All other Creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will receive only a copy of the notice of Confirmation Hearing and a Release Opt-Out Election Form.

Copies of the Combined Plan and Disclosure Statement shall be available on the Claims and Balloting Agent's website at https://www.veritaglobal.net/powin. Any creditor or party-in-interest can request a hard copy of the Combined Plan and Disclosure Statement be sent to them by regular mail by calling the Claims and Balloting Agent at (866) 381-9100 (U.S.) during regular business hours.

**IN ADDITION TO OTHER PARTIES WHO WILL BE CONSIDERED RELEASING PARTIES, ANY HOLDER OF A CLAIM OR INTEREST THAT DOES NOT AFFIRMATIVELY OPT-OUT OF THE THIRD PARTY RELEASE PROVISION CONTAINED HEREIN BY TIMELY AND PROPERLY COMPLETING AND RETURNING A RELEASE OPT-OUT ELECTION FORM WILL BE CONSIDERED A RELEASING PARTY IN RELATION TO THE THIRD PARTY RELEASE UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

6.11    <u>Voting Procedures, Voting Deadline, and Deadline to Submit the Release Opt-Out Election</u>.

The Voting Record Date for determining which holders of Claims in the Voting Classes may vote on the Combined Plan and Disclosure Statement is October 10, 2025.

In order for your Ballot to count, you must (1) complete, date, and properly execute the Ballot and (2) properly deliver the Ballot to the Claims and Balloting Agent by either (a) mailing the Ballot to the Claims and Balloting Agent at the following address: Powin Ballot Processing c/o Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; and/or (b) uploading the Ballot on the Claims and Balloting Agent's online balloting platform at https://www.veritaglobal.net/powin. Instructions for casting a Ballot will be available on the Claims and Balloting Agent's website.

Ballots must be submitted electronically, or the Claims and Balloting Agent must actually receive physical, original Ballots by mail or overnight delivery, on or before the Voting Deadline, which is **November 18, 2025 at 4:00 p.m. (prevailing Eastern Time)**. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a Ballot is submitted electronically or the Claims and Balloting Agent receives your original paper Ballot. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any Ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Combined Plan and Disclosure Statement.

In order to be effective, Release Opt-Out Election Form for holders of Claims or Interests entitled to opt out of being a Releasing Party in connection with the Third Party Release contained herein must be received by the Claims and Balloting Agent by the Voting Deadline. Each Release

-33-

Opt-Out Election Form must be properly delivered to the Claims and Balloting Agent by either (a) mailing the Release Opt-Out Election Form to the Claims and Balloting Agent at the following address: Powin Ballot Processing c/o Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (b) uploading the Release Opt-Out Election Form on the Claims and Balloting Agent's online opt-out portal at https://www.veritaglobal.net/powin.

**IF YOU ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL OR UPLOAD THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT OR PROCEDURES FOR VOTING ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE CLAIMS AND BALLOTING AGENT BY (I) TELEPHONE AT (866) 381-9100 (U.S.) OR (II) EMAIL AT powininfo@veritaglobal.com. THE CLAIMS AND BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

6.12    Acceptance of the Combined Plan and Disclosure Statement.

If you are a holder of a Claim in the Voting Classes, your acceptance of the Combined Plan and Disclosure Statement is important. In order for the Combined Plan and Disclosure Statement to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement. Although Class 5 is subdivided into Classes 5A and 5B, the entirety of Class 5 shall vote as one class for purposes of determining the foregoing voting thresholds. At least one Impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement. The Debtors and Committee urge that you vote to accept the Combined Plan and Disclosure Statement.

## SECTION 7
## UNCLASSIFIED CLAIMS

7.1    Unclassified Claims.

In accordance with section 1123(a)(1) of the Bankruptcy Code, the following claims have not been classified for purposes of voting or receiving Distributions. Rather, all such Claims are treated separately as unclassified Claims as set forth in this Section, and the holders thereof are not entitled to vote on the Combined Plan and Disclosure Statement.

7.2    Administrative Claims.

(a)    Except to the extent that a holder of an Allowed Administrative Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive from Available Cash, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective

-34-

Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the holder of such Claim and the Debtors or the Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

(b)     Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code) that do not file such requests by the applicable deadline provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtors, the Estates, the Liquidating Trust, or their successors or assigns, or their property. Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

(c)     All fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date.

7.3     <u>Professional Fees</u>.

(a)     Professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than forty five (45) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court. For avoidance of doubt, the Liquidating Trustee is not authorized under the Plan to object to applications for final allowance of compensation and reimbursement of expenses.

(b)     On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee shall establish an appropriate Liquidating Trust Professional Fee Reserve based upon estimates of anticipated fees provided by Professionals for services rendered and expenses incurred prior to the Effective Date estimated to be in excess of the Debtor Professional Fee Reserve, including estimated fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date. The Liquidating Trustee shall supplement the Liquidating Trust Professional Fee Reserve if the amount originally established is insufficient to pay Allowed Professional Fee Claims.

(c)     Upon approval of the fee applications by the Bankruptcy Court, the applicable fee applications shall first be paid from the Debtor Professional Fee Reserve and Stretto shall be authorized to release from the Debtor Professional Fee Reserve to the applicable Professional, an amount equal to the Allowed Professional Fee Claims of such Professional. To

-35-

the extent the Debtor Professional Fee Reserve is insufficient to satisfy the Allowed Professional Fee Claim in full, the Liquidating Trustee shall pay such Professionals from the Liquidating Trustee Professional Fee Reserve the remainder of their respective Allowed Professional Fee Claims.

(d)     If there are amounts in excess of all Allowed Professional Fee Claims remaining in the Debtor Professional Fee Reserve and/or the Liquidating Trust Professional Fee Reserve, such amounts shall be transferred to the Liquidating Trust and shall, only upon transfer thereto, constitute Liquidating Trust Assets.

7.4     Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall be paid the full unpaid amount of such Allowed Priority Tax Claim as follows: (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Debtors shall have agreed upon in writing.

With respect to sales taxes, the Debtors collected sales taxes applicable to inventory delivered to customers in the ordinary course of business. In most cases, the Debtors were required to remit sales taxes to the underlying taxing authorities on a periodic (quarterly or semiannually) following the occurrence of two triggering events: (a) delivery of product to a customer; and (b) collection of the underlying sales tax from that customer. Accordingly, the actual sales tax due may differ from what the Debtors reported where, either (a) delivery of product to a customer did not occur as estimated, or (b) where the customer did not remit the sales tax consistent with the Debtors' reporting or estimates. The Debtors continue to reconcile their sales tax reporting against what is actually due, but, on balance, the Debtors believe that the Plan sufficiently provides for the sales taxes due on a priority basis. It is possible that the applicable sales tax authorities may dispute the Debtors' reconciliation or assert an alternative amount is due.

## SECTION 8
## CLASSIFICATION OF CLAIMS AND INTERESTS

8.1     Summary of Classification.

The provisions of this Section 8 govern Claims against and Interests in the Debtors. Any Class that is vacant will be treated in accordance with Section 8.3.

The following table designates the Classes of Claims against, and Interests in, the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Combined Plan and Disclosure Statement in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Combined Plan and Disclosure Statement. A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is

-36-

classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No |
| 2 | Other Secured Claims | Unimpaired | No |
| 3 | WARN Act Claims | Impaired | Yes |
| 4 | Settled Priority Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes (Class 5A and Class 5B voting as one class) |
| 6 | Intercompany Claims | Impaired | No (presumed to reject) |
| 7 | Interests | Impaired | No (presumed to reject) |

8.2     Special Provision Governing Unimpaired Claims.

Except as otherwise provided in the Combined Plan and Disclosure Statement, nothing under the Combined Plan and Disclosure Statement shall affect the rights of the Debtors or the Liquidating Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

8.3     Vacant and Abstaining Classes.

Any Class of Claims or Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or Interest or a Claim or Interest temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Combined Plan and Disclosure Statement for purposes of voting to accept or reject the Combined Plan and Disclosure Statement and for purposes of determining acceptance or rejection of the Combined Plan and Disclosure Statement by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## SECTION 9
## TREATMENT OF CLAIMS AND INTERESTS

9.1     Class 1—Priority Non-Tax Claims.

(a)     Classification.  Class 1 consists of all Priority Non-Tax Claims.

(b)     Treatment.  Except to the extent a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, on the later of (i) the Effective Date or (ii) the date such Priority Non-Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, each

-37-

Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, payment in full in Cash in an amount equal to the Allowed amount of such Claim.

(c)    Impairment and Voting.  Class 1 is Unimpaired under the Plan.  Each Holder of an Allowed Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to Priority Non-Tax Claims.

9.2    Class 2—Other Secured Claims.

(a)    Classification.  Class 2 consists of Other Secured Claims.

(b)    Treatment.  Except to the extent a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the later of (i) the Effective Date or (ii) the date such Other Secured Claim becomes Allowed, or as soon as reasonably practicable thereafter, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, at the discretion of the Distribution Agent (x) payment in full in Cash in an amount equal to the Allowed amount of such Claim; (y) such other treatment sufficient to render such Other Secured Claim Unimpaired; or (z) return of the applicable collateral or authorization of a setoff in satisfaction of the Allowed amount of such Other Secured Claim.

(c)    Impairment and Voting.  Class 2 is Unimpaired under the Plan.  Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to Other Secured Claims.

9.3    Class 3—WARN Act Claims.

(a)    Classification.  Class 3 consists of WARN Act Claims.

(b)    Treatment.  This Combined Plan and Disclosure Statement proposes a settlement with respect to WARN Act Claims.  Specifically, if the representatives of the Holders of WARN Act Claims agree on a binding basis to such settlement as memorialized in the Plan Supplement, such Holders will receive the following treatment: (i) the allowance of the WARN Act Claims in the amount set forth in the Plan Supplement (the "Allowed WARN Act Claims"); (ii) the certification of a class pursuant to Fed. R. Bankr. P. 7023 with respect to the Allowed WARN Act Claims; (iii) the payment of an initial cash payment on the Effective Date on account of the Allowed WARN Act Claims to the designated class representative of such Allowed WARN Act Claims identified in the Plan Supplement to be distributed by such class representative to members of the class; and (iv) the payment of additional cash payments to the class representative to be distributed to members of the class as described in the Plan Supplement following the Effective Date on the occurrence of certain milestone events disclosed in the Plan Supplement until the Allowed WARN Act Claims are satisfied in full.  In the event a settlement with Holders of WARN Act Claims is not reached, each WARN Act Claim shall be treated as either a Class 1

-38-

Priority Non-Tax Claim or a Class 5 General Unsecured Claim, as determined by an order of the Bankruptcy Court.

        (c)    <u>Impairment and Voting</u>.  Class 3 is Impaired, and the Holders of Class 3 Claims are entitled to vote on the Plan.

    9.4    <u>Class 4—Settled Priority Claims</u>.

        (a)    <u>Classification</u>.  Class 4 consists of Settled Priority Claims.

        (b)    <u>Treatment</u>.  This Combined Plan and Disclosure Statement proposes a settlement for Settled Priority Claims.  Specifically, if Holders of a Settled Priority Claim agree on a binding basis to such settlement as memorialized in the Plan Supplement, such Holders will receive the following treatment: (a) the allowance of the Settled Priority Claim in the amount set forth in the Plan Supplement (the "<u>Allowed Settled Priority Claim</u>"); (b) the payment of the documented professional fees incurred by the Holder of the Allowed Settled Priority Claim, as agreed by the Debtors and disclosed in the Plan Supplement, on the Effective Date; and (c) the treatment of the Allowed Settled Priority Claim as a Class 5 General Unsecured Claim except for the foregoing payment of such documented professional fees on the Effective Date.

        (c)    <u>Impairment and Voting</u>.  Class 4 is Impaired, and the Holders of the Class 4 Claims are entitled to vote on the Plan.

    9.5    <u>Class 5—General Unsecured Claims</u>.

        (a)    <u>Classification</u>.

        (i)    Class 5A: Class 5A is comprised of all General Unsecured Claims.

        (ii)    Class 5B: Class 5B is comprised of Holders of Class 5A Claims that also contribute Direct Claims to the Direct Claims Trust.  The treatment afforded Holders of Class 5B Claims is in addition to the treatment afforded them as Holders of Class 5A Claims.

        (b)    <u>Treatment</u>.

        (i)    Class 5A: Each Holder of an Allowed General Unsecured Claim shall receive in exchange for its Allowed General Unsecured Claim, its Pro Rata share of the Liquidating Trust Interests.

        (ii)    Class 5B: Each Contributing Direct Claim Holder shall receive, in exchange for its Direct Claims, and in addition to its Pro Rata share of the Liquidating Trust Interests, its share of the Direct Claims Trust Interests on account of such Direct Claims.

        (c)    <u>Impairment and Voting</u>.  Class 5 is Impaired, and the Holders of Class 5A and Class 5B Claims are entitled to vote on the Plan as one combined Class 5 for voting purposes.

9.6    <u>Class 6—Intercompany Claims</u>Classification: Class 6 consists of all Intercompany Claims.

(b)    <u>Treatment</u>: There shall be no Distribution on account of Intercompany Claims, except as necessary or appropriate for tax efficiency, provided, however, that no Distribution will be in Cash.  Upon the Effective Date, all Intercompany Claims will be deemed cancelled, released, and discharged, subject to the foregoing.

(c)    <u>Impairment and Voting</u>: Class 6 is Impaired and holders of Class 6 Claims are deemed to have rejected the Plan, and are not entitled to vote.

9.7    <u>Class 7—Interests</u>Classification.  Class 7 consists of all Interests.

(b)    <u>Treatment</u>.  There shall be no Distribution on account of Class 7 Interests. Upon the Effective Date, all Interests will be deemed cancelled and will cease to exist.

(c)    <u>Impairment and Voting</u>.  Holders of Interests are deemed to have rejected the Plan, and are not entitled to vote.

## SECTION 10
## DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS

10.1    <u>Distribution Dates</u>.

The Debtors or the Liquidating Trustee, as applicable, shall make Distributions to holders of Claims, and with respect to General Unsecured Claims, may, in their discretion, make a full or partial Pro Rata Distribution to the holders of General Unsecured Claims on the Initial Distribution Date or a Subsequent Distribution Date.

10.2    <u>Subsequent Distributions</u>.

Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Distribution Agent on any Subsequent Distribution Date after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution.

10.3    <u>Distribution Record Date</u>.

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  The Distribution Agent shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any Distribution with respect to any Claim, the Distribution Agent shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the

-40-

Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Distribution Agent as of the Distribution Record Date.

    10.4    <u>Manner of Cash Payments Under the Plan or Liquidating Trust Agreement</u>.

    Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Distribution Agent, or by wire transfer from a domestic bank, at the option of the Distribution Agent.

    10.5    <u>Time Bar to Cash Payments by Check</u>.

    Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Section shall be made directly to the Distribution Agent by the holder of the Allowed Claim to which the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of six months from the Effective Date or 90 days after the date of issuance thereof.  After that date, all Claims in respect of voided checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidating Trust, as unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

    10.6    <u>Liquidating Trust Assets Accounts</u>.

    Unless otherwise provided in the Confirmation Order, the Liquidating Trust Assets Account shall be invested by the Liquidating Trustee in a manner consistent with the objectives of section 345(a) of the Bankruptcy Code and in its reasonable and prudent exercise of discretion; provided, however, that in no event shall the Liquidating Trust Assets Account be invested in a manner that is inconsistent with the provisions of Revenue Procedure 94-45.  The Liquidating Trustee shall have no obligation or liability to the Liquidating Trust Beneficiaries in connection with such investments in the event of any unforeseeable insolvency of any financial institution where such funds are held.

## SECTION 11
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

    11.1    <u>No Distributions Pending Allowance</u>.

    Notwithstanding any other provision of the Plan, the Debtors and the Liquidating Trustee, as applicable, shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.  Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

    11.2    <u>Resolution of Disputed Claims</u>.

    Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, subject to the Liquidating Trust Agreement, the Liquidating Trustee shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims.

The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust. From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

11.3     Objection Deadline.

All objections to Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court.

11.4     Estimation of Claims.

At any time, (a) prior to the Effective Date, the Debtors, and (b) after the Effective Date, the Liquidating Trustee may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trust have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Liquidating Trustee, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

11.5     Disallowance of Claims.

Except as otherwise agreed or ordered by the Bankruptcy Court, any and all proofs of claim filed after the Bar Date shall not be treated as an Allowed Claim for purposes of Distribution without any further notice or action, and holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed.

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Liquidating Trust shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtors hold or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estates by that Entity have been turned over or paid to the Debtors or the Liquidating Trust.

11.6    Adjustment to Claims Register Without Objection.

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register at the direction of the Debtors or the Liquidating Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

11.7    Reserve Provisions for Disputed Claims.

On or by each Distribution Date, the Debtors or the Liquidating Trustee, as applicable, shall reserve Cash required for distribution on Disputed Claims as if such Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Debtors or the Liquidating Trustee (the "Disputed Claim Reserve").

The property in the Disputed Claim Reserve shall be held in trust for the benefit of the holders of Disputed Claims that are ultimately determined to be Allowed. Each Disputed Claim Reserve shall be closed and extinguished when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms of the Plan.

11.8    Rounding.

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

11.9    No Cash Payments of Less Than $100 on Account of Allowed Claims.

Notwithstanding anything herein to the contrary, except with respect to Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims and Other Secured Claims, if a Distribution to be made to a holder of an Allowed Claim on the Initial Distribution Date or any Subsequent Distribution Date would be $100 or less in the aggregate, no such Distribution will be made to that holder unless a request therefor is made in writing to the Distribution Agent. If such request is made, such Cash shall be held for such holder until the earlier of (i) the next time an interim distribution is made to the holders of Allowed Claims (unless the distribution would still be less than $100, in which case this Section shall again apply), or (ii) the date on which Final Distributions are made to the holders of Allowed Claims.

11.10    Delivery of Distributions and Unclaimed Property.

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Debtors or the Liquidating Trustee have been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Distribution Agent may, in its discretion, make reasonable efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made, but no Distribution to any such holder shall be made unless and until the Distribution Agent has determined the then-current address of such holder, at which time the Distribution to

-43-

such holder shall be made without interest.  Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Distribution Agent, until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code.  The Distribution Agent shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or, if applicable, the Liquidating Trust Agreement.  On or about the time that the Final Distribution is made, the Distribution Agent may make a charitable donation with undistributed funds if, in its reasonable judgment, the cost of calculating and making the Final Distribution of the remaining funds is excessive in relation to the benefits to the holders of Claims that would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtors or the Liquidating Trustee.  Except with respect to property not distributed because it is being held in a Disputed Reserve, Distributions that are not claimed by the later of the expiration of six (6) months from the Effective Date or (90) days after the date of a Distribution shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest or revest in the Liquidating Trust, and the Claims with respect to which those Distributions are made shall be automatically cancelled.  After the expiration of that period, the claim of any Entity to those Distributions shall be cancelled.  Nothing contained in the Plan shall require the Debtors or the Liquidating Trust to attempt to locate any holder of an Allowed Claim.  All funds or other property that vest or revest in the Liquidating Trust pursuant to this Section shall be distributed to the other holders of Allowed Claims in accordance with the provisions of the Plan or the Liquidating Trust Agreement, as applicable.

The Distribution Agent may require any Claimant to provide a duly executed IRS Form W-9 or such other documentation or information as the Distribution Agent reasonably deems necessary to effectuate a Distribution. If a Claimant fails to provide the requested information within ninety (90) days after written request, the Distribution Agent may, in its discretion, deem the Distribution to such Claimant undeliverable and administer such Distribution in accordance with the terms of the Plan.

11.11   Books and Records.

The Debtors shall transfer dominion and control over all of their books and records, in whatever form, manner or media, to the Liquidating Trustee on or as soon as reasonably practicable after the Effective Date.

## SECTION 12
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

12.1   Rejection / Assumption.

Except with respect to (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, (ii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, or (iii) executory contracts or unexpired leases that are scheduled by the Debtors to be assumed as of the Effective Date, as set forth in the Plan Supplement, on the Effective Date,

each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed <u>rejected</u> pursuant to section 365 of the Bankruptcy Code; *provided, however,* that nothing in this Section shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and directors and/or the Liquidating Trust. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Nothing in this Section shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.

The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtors nor the Liquidating Trust shall bear any liability for costs associated with such matters.

12.2    <u>Rejection Claims.</u>

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Claims Agent within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection. All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as General Unsecured Claims.

12.3    <u>Insurance Policies.</u>

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the Insurance Policies. To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtors hold or may hold against any Entity, the Debtors shall, to the extent permissible under each Insurance Policy, assign all of their rights thereunder with respect to such Causes of Action to the Liquidating Trust. All net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of Insurance Policies received by the Liquidating Trust or Direct Claims Trust shall be treated as proceeds of such Causes of Action for all purposes under the Plan. Neither the Debtors nor the Committee shall take any action to or otherwise impair the Insurance Policies. Nothing herein shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtors or any other Entity.

## SECTION 13
## MEANS FOR IMPLEMENTATION OF THE PLAN

13.1    <u>General Settlement of Claims and Interests.</u> Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, settlements contained in the Plan shall constitute a good-faith compromise and settlement of all

-45-

Claims and Interests and controversies resolved pursuant to the relevant Plan provisions. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromises and settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlements and compromises are fair, equitable, reasonable, and in the best interests of the Debtors and the Estates. All Plan Distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final. For the avoidance of doubt, the Plan itself shall not be deemed to be a settlement.

13.2   <u>Dissolution of Debtors</u>.   As soon as practicable, the Debtors shall be dissolved, without any further action required on the part of the Debtors or the Debtors' members, managers, officers, directors, interest holders, and/or any other parties; provided, however, the Liquidating Trustee in his or her discretion shall be authorized to take any and all actions necessary or desirable in relation to dissolution of the Debtors.   On the Effective Date, the employment, retention, appointment and authority of all managers, officers, directors, employees and professionals of the Debtors shall be deemed to terminate: except for certain employees that may be necessary as determined by the Liquidating Trustee and as otherwise set forth herein.   Pending the Debtors' dissolution, the Liquidating Trustee shall act as the Debtors' authorized representative (the "<u>Authorized Representative</u>").   The Authorized Representative shall (i) liquidate any remaining assets, the liquidation of which requires action by the Debtors or its employees and (ii) determine the date for the Debtors' dissolution.

13.3   <u>Trusts</u>.

(a)   <u>Appointment of the Liquidating Trustee</u>.   The Committee shall select the initial Liquidating Trustee, with the consent of the Debtors which may not be unreasonably withheld,.   The Liquidating Trustee shall also serve as the Direct Claims Trustee, in accordance with the Direct Claims Trust Agreement.   From and after the Effective Date, professionals may be retained by the Liquidating Trustee as set forth in the Liquidating Trust Agreement, without further need for documentation or Bankruptcy Court approval.   All fees and expenses incurred by the professionals retained by the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement; provided, however, that any such fees and expenses attributable to the WARN Act Claim Reserve Account, as determined by the Liquidating Trustee in its reasonable discretion, shall be paid only out of assets held in the WARN Act Claim Reserve Account.

(b)   On the Effective Date, the Liquidating Trust and the Direct Claims Trust shall be established for the following purposes and in accordance with the following terms, subject to the Liquidating Trust Agreement and the Direct Claims Trust Agreement, respectively:

(i)   <u>Liquidating Trust</u>.

a.   On the Effective Date, the Liquidating Trust shall be established in accordance with the Liquidating Trust Agreement for the purpose of liquidating and distributing the assets of the Estates, in accordance with 26 C.F.R. § 301.7701-4(d), this Plan, the Liquidating Trust Agreement, the

-46-

Confirmation Order, and the Bankruptcy Code's priority scheme, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The primary functions of the Liquidating Trust are as follows: (i) to liquidate, sell, or dispose of the Liquidating Trust Assets; (ii) to cause all net proceeds of the Liquidating Trust Assets, including proceeds of Causes of Action on behalf of the Liquidating Trust, to be deposited into the Liquidating Trust; (iii) to initiate actions to resolve any remaining issues regarding the allowance and payment of Claims including, as necessary, initiation and/or participation in proceedings before the Court; (iv) to take such actions as are necessary or useful to maximize the recoveries to the Liquidating Trust Beneficiaries; (v) to effectuate the wind-down of the Debtors as set forth in the Plan; and (vi) in its capacity as Distribution Agent, to make the payments and distributions to Holders of Allowed Claims, including Holders of Allowed Administrative, Priority, and General Unsecured Claims.  The Liquidating Trustee will pay post-Effective Date costs and expenses of the Liquidating Trust and Direct Claims Trust in accordance with the Trust Budget, which may be amended with the consent of the Oversight Committee.  All Avoidance Actions that do not constitute "IP and Customer Claims" (as defined in the FlexGen APA) will vest in the Liquidating Trust to the extent identified on a retained action schedule (to be provided in the Plan Supplement); provided, however, that specified avoidance actions against Holders of General Unsecured Claims may be excluded from the retained action schedule in the discretion of the Committee.

(ii)     <u>Direct Claims Trust</u>.

b.       On the Effective Date, the Direct Claims Trust shall be established in accordance with the Direct Claims Trust Agreement for the purpose of receiving and monetizing the Direct Claims Trust Assets.  Pursuant to the Direct Claims Trust Agreement, all Holders of General Unsecured Claims with affirmative, direct claims against non-Debtor parties who are not Released Parties hereunder (the "<u>Direct Claims</u>") related to or in connection with these Chapter 11 cases, including those which may be asserted against the Debtors' Prepetition Lenders and their affiliates, or the former directors, officers, shareholders or insiders of the Debtors, or the prepetition advisors or professionals retained by the Debtors in each case to the extent they are not otherwise Released Parties hereunder, that have not made an election on their Ballot as of the Voting Deadline to opt out of contributing such Direct Claims to the Direct Claims Trust (each contributor, a "<u>Contributing Direct Claim Holder</u>") shall be deemed, without further action required, to have contributed to the Direct Claims Trust all of their Direct Claims and any privileges related to such Direct Claims (collectively, the "<u>Direct Claims Trust Assets</u>"); provided that a Contributing Direct Claim Holder may at any time thereafter either (a) withdraw its Direct Claim(s) from the Direct Claims Trust or (b) choose not to participate in the litigation of such

-47-

claim(s), in each case as and to the extent permitted by applicable law and in accordance with the terms of the Direct Claims Trust Agreement. For the avoidance of doubt, no Direct Claim against a Released Party hereunder shall be contributed to or brought by the Direct Claims Trust against a Released Party; provided, that, nothing herein shall prohibit a third party that opts out of the Third Party Release from bringing a direct claim on its own behalf (and at its own cost and expense) against any party.

c.      The Direct Claims Trustee shall have the exclusive right to investigate, prosecute, settle and resolve any of the Direct Claims which constitute Direct Claims Trust Assets until such time, if any, that such Direct Claims are withdrawn from the Direct Claims Trust. Contributing Direct Claim Holders shall use reasonable efforts to cooperate with the Direct Claims Trustee in the prosecution of their respective Direct Claims, including complying with discovery requests in accordance with applicable law.

d.      Contributing Direct Claim Holders who incur expenses in connection with their Direct Claims, including producing documents, sitting for depositions, or testifying at trial, shall be reimbursed for such expenses by the Direct Claims Trust, subject to such restrictions as the Direct Claims Trust Agreement may provide. The Direct Claims Trust expenses will be advanced by the Liquidating Trust and will be repaid upon realization of a recovery of Direct Claims Trust Assets before distribution of any proceeds to the beneficiaries of the Direct Claims Trust or any cooperation payment to the Liquidating Trust as set forth herein.

e.      Each Contributing Direct Claim Holder shall receive, in exchange for contributing its Direct Claims, its Direct Claims Trust Interests on account of such Direct Claims as set forth in the Direct Claims Trust Agreement. In the event that (i) the Liquidating Trust and the Direct Claims Trust prosecute related claims against a single defendant, (ii) a recovery is received related to such claims, and (iii) the Liquidating Trustee determines in his or her commercially reasonable judgment that there is no clear allocation of such recovery between claims brought by the Liquidating Trust and claims brought by the Direct Claims Trust, the Liquidating Trustee shall allocate such recovery to the Liquidating Trust and the Direct Claims Trust in accordance with the Direct Claims Trust Agreement.

(c)      Liquidating Trust Assets. On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust. The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief. The transfer of the Liquidating Trust Assets shall be made for the benefit and on behalf of the Liquidating Trust Beneficiaries. The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Liquidating Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Liquidating Trust Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the

Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets.

(d)     Direct Claims Trust Assets.  On the Effective Date, the Direct Claims Trust Assets shall vest automatically in the Direct Claims Trust.  The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The Beneficiaries of the Direct Claims Trust shall be treated as the grantors and owners of the Direct Claims Trust.

(e)     Valuation.  Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets and such valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trust, and the Liquidating Trust Beneficiaries) for all federal income tax purposes.

(f)     Rights and Powers of the Liquidating Trustee.  The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement and the Direct Claims Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004 to act on behalf of the Liquidating Trust and the Direct Claims Trust.  Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan, the Liquidating Trust Agreement, and the Direct Claims Trust Agreement; (2) liquidate the Liquidating Trust Assets and the Direct Claims Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtors hold or may hold against any Entity; (4) make all Distributions in accordance with the Plan, the Liquidating Trust Agreement, and the Direct Claims Trust Agreement; (5) administer the Liquidating Trust and the Direct Claims Trust and pursue viable Causes of Action in accordance with the Plan and the Liquidating Trust Agreement and the Direct Claims Trust Agreement; (6) establish and administer any necessary reserves for Disputed Claims that may be required; (7) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (8) assert or waive any attorney-client privilege on behalf of the Debtors and Estates with regard to acts or events during time periods prior to the Petition Date; and (9) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtors or the Committee in accordance with the Liquidating Trust Agreement or the Plan, *provided, however*, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

(g)     Oversight Committee.  The Liquidating Trust and the Direct Claims Trust shall each have a separate oversight committee comprised of three members selected by the

-49-

Committee in its sole discretion (each, an "Oversight Committee," and together, the "Oversight Committees"). The Oversight Committees shall have approval rights over certain key decisions by the Liquidating Trustee or the Direct Claims Trustee, as applicable, all as set forth in the Plan Supplement. In the event of a conflict of interest between the Direct Claims Trust and the Liquidating Trust with respect to litigation strategy, settlement, or resource allocation, the Oversight Committees and the Liquidating Trustee will implement procedures to ensure that decisions are made consistent with the respective fiduciary duties owed to each trust, including, if necessary, recusal of conflicted members or consultation with independent counsel.

(h)    Fees and Expenses of the Trusts.  Expenses incurred by the Liquidating Trust, and the Direct Claims Trust, on or after the Effective Date shall be paid by the Liquidating Trustee, from the Liquidating Trust, in accordance with the Liquidating Trust Agreement, and Direct Claims Trust Agreement, as applicable, without further order of the Bankruptcy Court.

(i)    Transfer of Beneficial Interests in the Trusts.  Neither Liquidating Trust Interests nor Direct Claims Trust Interests shall be transferable except upon death of the interest holder or by operation of law. Neither Trust shall not have any obligation to recognize any transfer of Claims or Interests occurring after the Distribution Record Date.

(j)    Effective Date Cash Transfers.  On or as soon after the Effective Date as is reasonably practical, the Debtors shall use any available Cash to (i) fund payments to be made pursuant to or otherwise consistent with the Plan and the Confirmation Order, including distributions to holders of Allowed Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims and (ii) transfer to the Liquidating Trust the (A) Trust Funding Amount and (B) an amount necessary to establish appropriate reserves (including the Liquidating Trust Professional Fee Reserve) to pay Administrative Claims, Priority Tax Claim, and Priority Non-Tax Claims that become Allowed after the Effective Date (collectively, the "Effective Date Cash Transfers").  To the extent the Debtors' available Cash is insufficient to fund the Effective Date Cash Transfers, such transfers will be made pursuant to the terms hereof.  Notwithstanding any other provision herein, the Effective Date Cash Transfers will be used in the first instance by the Liquidating Trustee to pay or reserve for all unpaid Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims (including any Disputed Claims until such Claims are resolved), prior to use of the available Cash for purposes of the Liquidating Trust.  Subject to the restrictions set forth herein, the Liquidating Trust Assets will be used by the Liquidating Trustee to pay for the expenses of the Liquidating Trust in accordance with the Liquidating Trust Agreement.

On or as soon as practicable following the Effective Date, the Liquidating Trust Assets Account shall be opened by the Liquidating Trustee and funded with the amount set forth in clause (ii) of the first sentence of the preceding paragraph (the "Initial Trust Cash"), which shall constitute Liquidating Trust Assets.

(k)    Certain Tax Matters.

(i)    The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) and in accordance with the Plan. The Liquidating Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items is respect of any assets allocable to, or retained on account of, Disputed

-50-

Claims) will be allocated to each holder in accordance with their relative ownership of Liquidating Trust Interests.

         (ii)      The Liquidating Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Liquidating Trust for all taxable periods through the dissolution thereof.  Nothing in this Article shall be deemed to determine, expand, or contract the jurisdiction of the Bankruptcy Court under section 505 of the Bankruptcy Code.

         (iii)     The Liquidating Trustee (1) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including the Liquidating Trustee and the holders of Liquidating Trust Interests) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing.  The Liquidating Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

13.4    <u>Litigation</u>.

Except as otherwise provided herein (including with respect to the Exculpation and Release provisions hereof), all Litigation is retained, vested in the Liquidating Trust, or Direct Claims Trust, as applicable, and preserved pursuant to section 1123(b) of the Bankruptcy Code.  From and after the Effective Date, all Litigation will be prosecuted or settled by the Liquidating Trustee.

To the extent any Litigation is already pending on the Effective Date, the Liquidating Trustee will continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtors or the Estates pursuant to the Plan and the Confirmation Order on the Effective Date, without need for any further motion practice or notice in any case, action, or matter.

Although the Debtors and the Committee are unable to predict with certainty the value or outcome of any particular Litigation, the Liquidating Trustee will evaluate and pursue only those Causes of Action that, in the exercise of its reasonable judgment, are expected to yield a net positive recovery to the Liquidating Trust, taking into account the anticipated costs of prosecution, including Liquidating Trustee fees and expenses.

By way of example only, the following Causes of Action are currently known to the Debtors as of the date hereof and are expected to be pursued by the Liquidating Trustee:

- **Recovery of Receivables**.  The Debtors are analyzing outstanding receivables to determine collectability; however, no assurance can be given as to the amount or timing of any recovery.

- **Cash Collateral Accounts**.  The Debtors maintain certain cash collateral accounts securing bonds, credit card programs, and other financing obligations.  The

Liquidating Trustee intends to seek turnover to the extent applicable of these accounts for the benefit of the Liquidating Trust.

- ***Powin LLC v. United States.*** Powin has asserted claims against the United States for refunds of tariffs it contends were improperly assessed and overpaid. The Liquidating Trustee intends to continue the prosecution of this action for the benefit of creditors.

- **Committee Investigations**. The Committee is investigating potential causes of action which might be asserted against third parties, and which might be held either by the Debtors or by individual claimants.  Any estate claims and causes of action held by the Debtors, to the extent not released in the Plan, shall be automatically contributed to the Liquidating Trust for the benefit of all Holders of General Unsecured Claims in Class 5A.  Any Direct Claims held by individual claimants shall be automatically contributed to the Direct Claims Trust to be pursued by the Direct Claims Trustee in their business judgment for the benefit of all Contributing Direct Claim Holders in Class 5B, unless such Holder has either (a) made an election on their Ballow as of the Voting Deadline to opt out of contributing such Direct Claims to the Direct Claims Trust, or (b) has withdrawn their Direct Claims contributed to the Direct Claims Trust in accordance with the Direct Claims Trust Agreement.  The Committee's investigation is ongoing and at this time no further information can be provided regarding potential claims or causes of action, or the value thereof at this time.

13.5    Dissolution of the Committee.

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Cases, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto).  The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date.  Nothing in the Plan shall prohibit or limit the ability of the Committee's or Debtors' Professionals to represent the Liquidating Trustee or to be compensated or reimbursed per the Plan, the Liquidating Trust Agreement, and/or the Direct Claims Trust Agreement in connection with such representation.

13.6    Employee Payments.

On the Effective Date, the Debtors or the Liquidating Trustee shall be authorized to pay certain compensation to eligible employees (the "Employee Payments") in order to incentivize such employees to continue their employment with the Debtors throughout the wind-down period and to assist in the orderly implementation and effectuation of the Plan, which compensation shall be subject to approval by the Committee.  The Employee Payments shall be made only to those

employees identified as eligible in, and shall be subject in all respects to, the terms and conditions set forth in the Plan Supplement.

13.7    <u>WARN Act Settlement</u>.

(a)    <u>Funding and Distribution of the WARN Act Claim Reserve</u>.  The WARN Act Claim Reserve shall be formed on the Effective Date and funded in the amount of [$●], consisting of (i) the Initial WARN Act Claim Reserve Amount, to be distributed on the Effective Date to the designated class representative of the Allowed WARN Act Claims identified in the Plan Supplement for the benefit of members of the class; and (ii) following the transfer of the Liquidating Trust Assets to the Liquidating Trust, [$●] in net recoveries from the liquidation of the Liquidating Trust Assets, to be distributed to the class representative for the benefit of members of the class as described in the Plan Supplement following the Effective Date on the occurrence of certain milestone events disclosed in the Plan Supplement until the Allowed WARN Act Claims are satisfied in full.

(b)    <u>Unused WARN Act Claim Reserve Funds</u>.  To the extent all or a portion of the funds in the WARN Act Claim Reserve are not used to pay WARN Act Claims (or taxes thereon), such unused funds shall be distributed in accordance with the terms of this Combined Plan and Disclosure Statement.

(c)    <u>Related Considerations</u>.  The WARN Act Claim Reserve does not limit in any manner the potential allowed amount of any WARN Act Claim, to which the Holders thereof and the Liquidating Trustee reserve all their respective rights.  The WARN Act Claim Reserve funds shall be maintained and not disbursed until the WARN Action has been fully resolved pursuant to a further order of the Bankruptcy Court.

(d)    <u>Reservation of Rights</u>.  Notwithstanding the foregoing, the Liquidating Trustee reserves the right to object to, estimate, or otherwise resolve any WARN Act Claim, and the Holders of the WARN Act Claims reserve their rights to oppose any relief sought by the Liquidating Trustee.

(e)    <u>Certain Tax Matters</u>.

(i)    The WARN Act Claim Reserve Account is intended to be treated, and shall be reported, as a "qualified settlement fund" for U.S. federal income tax purposes and shall be treated consistently for state and local tax purposes to the extent applicable.  The WARN Act Claims Administrator shall be the "administrator" of the WARN Act Claim Reserve Account within the meaning of Treasury Regulations section 1.468B-2(k)(3).

(ii)    The WARN Act Claims Administrator shall be responsible for filing all tax returns of the WARN Act Claim Reserve Account and the payment, solely out of the assets of the WARN Act Claim Reserve Account, of any taxes due by or imposed on the WARN Act Claim Reserve Account.  The WARN Act Claims Administrator shall ensure that any distributions made in respect of Claims that are in the nature of compensation for services are subject to appropriate payroll withholding and reporting, and that any applicable payroll taxes associated therewith (including employer-side and employee-side payroll taxes) are properly remitted.  Any such taxes shall be payable solely out of the assets held in the WARN Act Claim Reserve Account.

-53-

## SECTION 14
## EFFECT OF CONFIRMATION

14.1    Binding Effect of the Plan.

The provisions of the confirmed Plan shall bind the Debtors, the Committee, the Liquidating Trust, the Direct Claims Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Interest holder, whether or not such Creditor or Interest holder has filed a Proof of Claim or Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Interest of such Interest holder is impaired under the Plan, and whether or not such Creditor or Interest holder has accepted or rejected the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to the Plan.  The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in section 1146(a) of the Bankruptcy Code.

14.2    Vesting of Property of Debtors on the Effective Date.

Upon the Effective Date, title to all property constituting Liquidating Trust Assets or Direct Claims Trust Assets (including, without limitation, all Causes of Action) of the Estates shall vest in the Liquidating Trust, or the Direct Claims Trust, as applicable, and shall be retained by the applicable Trust for the purposes contemplated under the Plan pursuant to the Liquidating Trust Agreement and/or the Direct Claims Trust Agreement, as applicable.

14.3    Property Free and Clear.

Except as otherwise provided in the Plan or the Confirmation Order, all property that shall vest in the Liquidating Trust, or the Direct Claims Trust, shall be free and clear of all Claims, Interests, Liens, charges, or other encumbrances of Creditors or Interest holders, other than as set forth herein, in the Liquidating Trust Agreement, in the Direct Claims Trust Agreement, and in relevant documents, agreements, and instruments contained in the Plan Supplement.  Following the Effective Date, the Liquidating Trustee may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

## SECTION 15
## EXCULPATIONS, INJUNCTIONS, AND RELEASES

This Combined Plan and Disclosure Statement contains certain releases, exculpations, and injunction language.  Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan will affect any Claim, interest, right, or action with regard to the Debtor and certain third parties.

**THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS TO THE FULLEST EXTENT**

-54-

AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE
BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW

15.1    Exculpation.

The Exculpated Parties will neither have nor incur any liability to any entity for any action
in good faith taken or omitted to be taken between the Petition Date and Effective Date in
connection with or related to the Chapter 11 Cases, the sale or other disposition of the Debtors'
assets or the formulation, preparation, dissemination, implementation, Confirmation, or
Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in
connection with the Plan; *provided, however*, that this limitation will not affect or modify the
obligations created under the Plan, or the rights of any holder of an Allowed Claim to enforce its
rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct,
fraud, bad faith, or gross negligence (in each case subject to determination by final order of the
Bankruptcy Court); *provided that* any Exculpated Party shall be entitled to reasonably rely upon
the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such
reasonable reliance shall form a defense to any such claim, Cause of Action, or liability. Without
limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the
protections of section 1125(e) of the Bankruptcy Code.

15.2    Releases.

(a)    **Debtor Releases**.

**Notwithstanding anything in the Combined Plan and Disclosure Statement to the
contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable
consideration, on and after and subject to the occurrence of the Effective Date, the Debtors
and the Estates, in each case on behalf of themselves and their respective successors, assigns,
and representatives, and any and all other entities who may purport to assert any cause
of action, by, through, for, or because of the foregoing entities (collectively, the "Debtor/Estate
Releasors"), shall release (the "Debtor/Estate Release") each Released Party, and each
Released Party is deemed released by the Debtor/Estate Releasors from any and all claims,
obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever,
including any derivative claims, asserted or assertable on behalf of any of the Debtor/Estate
Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or
unasserted, accrued or unaccrued, matured or unmatured, determined or determinable,
disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or
hereinafter arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have
been legally entitled to assert in its own right, or on behalf of the holder of any Claim or
Interest or other entity, based on or relating to, or in any manner arising from, in whole or
in part, the Debtors (including the management, ownership, or operation thereof), the
Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset,
right, or interest of the Debtors and the ownership thereof, the subject matter of, or the
transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the
business or contractual arrangements between the Debtors and any Released Party, the
restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation,
formulation, or preparation of, or solicitation of votes on, the Combined Plan and Disclosure**

-55-

Statement or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; provided, that the foregoing Debtor/Estate Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and further provided that nothing herein shall act as a discharge of the Debtor.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

(b)    **Third Party Release**.

Notwithstanding anything in the Plan to the contrary, on and after and subject to the occurrence of the Effective Date, each of the Releasing Parties shall release (the "**Third Party Release**") each Released Party, and each of the Debtors, the Estates, and the Released Parties shall be deemed released from, any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Combined Plan and Disclosure Statement, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of, or solicitation of votes on, the Combined Plan and Disclosure Statement or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall

be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Combined Plan and Disclosure Statement. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligations of any party under the Combined Plan and Disclosure Statement or any other document, instrument, or agreement executed to implement the Combined Plan and Disclosure Statement. For the avoidance of doubt, the Third Party Release shall not be effective upon any party that executes and returns a Release Opt-Out Election Form in accordance with the terms of this Combined Plan and Disclosure Statement.

15.3    Injunction.

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, the Liquidating Trust, the Direct Claims Trust, or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or any Trust under the Plan. Notwithstanding any other provision of this Plan, the Debtors shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).

15.4    Post-Confirmation Liability of Liquidating Trustee.

The Liquidating Trustee, together with its consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, Causes of Action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the holders of Claims or Interests for any action or inaction in connection with the performance or discharge of their duties under the Plan, except the Indemnified Parties will be liable for actions or inactions that constitute willful misconduct, fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute willful misconduct, fraud,

bad faith, or gross negligence.  In addition, the Liquidating Trust, the Direct Claims Trust, and the Estates shall, to the fullest extent permitted by the laws of the State of New Jersey, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust, the Direct Claims Trust, and the Estates or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Trust, the Direct Claims Trust, and the Estates.  To the extent the Liquidating Trust or the Direct Claims Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidating Trust Expenses.  All rights of the Persons indemnified pursuant hereto shall survive confirmation of the Plan.  For the avoidance of doubt, the Liquidating Trustee shall not be deemed an Exculpated Party under this Plan, nor shall this provision be read to grant the Liquidating Trustee an exculpation under this Plan.

### 15.5    Preservation of Rights of Action.

(a)    Vesting of Causes of Action.

Except as otherwise provided in the Plan or Confirmation Order, including any Cause of Action that is expressly waived, relinquished, exculpated, released, settled, or compromised under the Plan or Confirmation Order (including, without limitation, pursuant to the Debtor/Estate Release), (i) in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors hold or may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust or Direct Claims Trust, as applicable; (ii) after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action the Estates hold or may hold against any Entity constituting Liquidating Trust Assets or Direct Claims Trust Assets, in accordance with the terms of the Plan, the Liquidating Trust Agreement, or the Direct Claims Trust Agreement, as applicable, and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases; and (iii) Causes of Action and recoveries therefrom shall remain the sole property of the Liquidating Trust or the Direct Claims Trust, as applicable, and holders of Claims shall have no direct right or interest in to any such Causes of Action or recoveries.

(b)    Preservation of All Causes of Action Not Expressly Settled or Released.

Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan (including, without limitation, pursuant to the Debtor/Estate Release) and/or or any Final Order (including the Confirmation Order), the Debtors and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Debtors or the Liquidating Trustee, as applicable (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or

-58-

circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order). In addition, the Debtors and Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which a Debtor is a defendant or interested party against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, any Entity to which the Debtors have incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtors or a transfer of money or property of the Debtors, or that has received services from the Debtors or a transfer or money or property of the Debtors, or that has transacted business with the Debtors, or that has leased property from the Debtors, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Liquidating Trustee have objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent, or unliquidated; or (vi) the Debtors have identified any potential claim or Cause of Action against such Entity herein.

15.6    No Discharge.

Nothing contained in the Combined Plan and Disclosure Statement shall be deemed to constitute a discharge of the Debtors under section 1141(d)(3) of the Bankruptcy Code.

## SECTION 16
## CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES

16.1    Certain Risk Factors to be Considered.

THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THESE FACTORS SHOULD NOT, HOWEVER, BE

REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION.

(a)    The Combined Plan and Disclosure Statement May Not Be Accepted.

The Debtors and Committee can make no assurances that the requisite acceptances of the Combined Plan and Disclosure Statement will be received, and the Debtors may need to obtain acceptances of an alternative plan for the Debtors, or otherwise, that may not have the support of the creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any alternative arrangement or plan would be similar to or as favorable to creditors as those proposed in the Combined Plan and Disclosure Statement.

(b)    The Combined Plan and Disclosure Statement May Not Be Confirmed.

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Plan and Disclosure Statement. Even if the Bankruptcy Court determined that the Combined Plan and Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Combined Plan and Disclosure Statement if it finds that any of the statutory requirements for confirmation had not been met. As is described in greater detail herein, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan. While, as more fully set forth herein, the Debtors believe that the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Bankruptcy Court will agree.

Section 1129(a) of the Bankruptcy Code requires that, except to the extent that the holder of an Administrative Claim agrees to a different treatment of such claim, holders of Administrative Claims receive on account of such claim cash equal to the allowed amount of such claim (i.e., "with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such will receive on account of such claim cash equal to the allowed amount of such claim."). In these chapter 11 cases, the requests for Administrative Claims filed by the Administrative Expense Bar Date exceed the Debtors' estimate of Allowed Administrative Claims and are the subject of ongoing review and reconciliation by the Debtors. The Debtors will seek to reach an agreement on those Administrative Claims and/or object to those requests if appropriate; however, there is no guarantee that holders of Administrative Claims will agree to a different treatment and/or the Court will sustain each or all of the objection(s) filed by the Debtors, if any.

Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Combined Plan and Disclosure Statement is not confirmed, it is unclear what distributions holders of Claims ultimately would receive with respect to their Claims in a subsequent plan of liquidation. If an alternative could not be agreed to, it is possible that the Debtors would have to liquidate their remaining assets in chapter 7, in which case it is likely that the holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Combined Plan and Disclosure Statement.

(c)    Distributions to Holders of Allowed Claims Under the Combined Plan and Disclosure Statement May be Inconsistent with Projections.

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Combined Plan and Disclosure Statement are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtors' estimates. If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for distribution to such Class are lower than the Debtors' estimates, the percentage recovery to holders of Allowed Claims in such Class will be less than projected.

(d)    Estimated Recoveries for General Unsecured Claims are Difficult to Predict and May be Inconsistent with Projections.

The estimated recoveries for General Unsecured Claims are derived from the Debtors' books and records and related financial data. While the Debtors have undertaken reasonable diligence to ensure the accuracy of these estimates, such figures are inherently based on numerous assumptions and remain subject to material revision. In addition, a material portion of such recoveries is expected to be derived from potential litigation claims, the value and outcome of which are inherently uncertain and difficult to predict. Subsequent developments, including adjustments to the Debtors' books and records or changes in circumstances, may significantly alter projected recoveries. These estimates are provided for illustrative purposes only and do not constitute, and should not be construed as, a prediction, representation, or guarantee of actual recoveries to any Class.

(e)    Objections to Classification of Claims.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. As is described in greater detail herein, the Debtors and Committee believe that the classification of Claims and Interests under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

To the extent that the Bankruptcy Court finds that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed, the Debtors and Committee would seek to (i) modify the Combined Plan and Disclosure Statement to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such holder was initially a member, or any other Class under the Combined Plan and Disclosure Statement, by changing the composition of such Class and the vote required for approval of the Combined Plan and Disclosure Statement. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and

requiring a reclassification, would approve the Combined Plan and Disclosure Statement based upon such reclassification. Except to the extent that modification of classification in the Combined Plan and Disclosure Statement requires re-solicitation, the Debtors and Committee will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Combined Plan and Disclosure Statement by any holder of Claims pursuant to this solicitation will constitute a consent to the Combined Plan and Disclosure Statement's treatment of such holder, regardless of the Class as to which such holder is ultimately deemed to be a member. The Debtors and Committee believe that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Combined Plan and Disclosure Statement only when a modification adversely affects the treatment of the Claim or Interest of any holder.

The Bankruptcy Code also requires that the Combined Plan and Disclosure Statement provide the same treatment for each Claim or Interest of a particular Class unless the holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtors and Committee believe that the Combined Plan and Disclosure Statement complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Combined Plan and Disclosure Statement does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Combined Plan and Disclosure Statement. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Combined Plan and Disclosure Statement and could increase the risk that the Combined Plan and Disclosure Statement will not be consummated.

     (f)     Failure to Consummate the Combined Plan and Disclosure Statement.

Although the Debtors and Committee believe that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

     (g)     The Releases May Not Be Approved.

There can be no assurance that the releases provided herein will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan that differs from the Combined Plan and Disclosure Statement or the Plan not being confirmed.

     (h)     Reductions to Estimated Creditor Recoveries.

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially. The amount of cash realized from the monetization of the Debtors' remaining assets could be less than anticipated, which could cause the amount of distributions to creditors to be reduced substantially.

16.2   Tax Treatment.

     (a)     Tax Treatment of Liquidating Trust

It is intended that that the Liquidating Trust shall qualify as a "liquidating trust" for U.S. federal income tax purposes. Accordingly, (i) the terms of the Liquidating Trust shall be set forth in the Liquidating Trust Agreement; (ii) the Liquidating Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the Holders of Claims receiving beneficial interests in the Liquidating Trust (whether Allowed on or after the Effective Date), consistent with the terms of the Plan; (iii) the Holders of Allowed General Unsecured Claims shall be treated as the grantors and deemed owners of the Liquidating Trust; (iv) the primary purpose of the Liquidating Trust shall be the liquidation and distribution of the Liquidating Trust Assets in accordance with Treas. Reg. § 301.7701-4(d), including the resolution of Allowed Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidating Trust's liquidating purpose; (v) all parties shall report consistently with such treatment as a liquidating trust, including treating the transfer of the Liquidating Trust Assets to the Liquidating Trust as (A) the deemed transfer of the Liquidating Trust Assets (subject to applicable liabilities and obligations) by the Debtor to the Liquidating Trust Beneficiaries, followed by (B) the deemed transfer of such assets by the Liquidating Trust Beneficiaries to the Liquidating Trust in exchange for beneficial interests therein; (vi) all parties shall report consistently with the valuation of the Assets transferred to the Liquidating Trust as determined by the Liquidating Trustee; (vii) the Liquidating Trustee shall be responsible for filing returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a); (viii) the Liquidating Trustee shall annually provide to each Liquidating Trust Beneficiary a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes; and (ix) all items of income, deductions, and credit loss of the Liquidating Trust shall be allocated for federal income tax purposes to the Liquidating Trust Beneficiaries in accordance with their relative ownership of Liquidating Trust interests.

In general, a beneficiary of the Liquidating Trust will recognize gain or loss with respect to its Allowed General Unsecured Claim in an amount equal to the difference between (i) the fair market value of its undivided interest in the Liquidating Trust Assets consistent with its economic rights in the Liquidating Trust received in respect of its Claim and (ii) the adjusted tax basis of the Allowed General Unsecured Claim exchanged therefor. Any gain or loss recognized with respect to an Allowed General Unsecured Claim may be classified as ordinary income unless the Claim disposed of is a capital asset in the hands of the Holder and has been held for more than one year, in which case such gain or loss may be treated as long-term capital gain or loss.

A Holder's aggregate tax basis in its undivided interest in the Liquidating Trust Assets (other than those allocable to Disputed Claims) will generally equal the fair market value of such interest, and a Holder's holding period in such assets generally will begin the day following establishment of the Liquidating Trust.

The U.S. federal income tax obligations of a holder with respect to its Liquidating Trust interests are not dependent on the Liquidating Trust distributing any cash or other proceeds. Thus, a holder may incur a U.S. federal income tax liability with respect to its allocable share of the Liquidating Trust's income even if the Liquidating Trust does not make a concurrent distribution to the holder. In general, other than in respect of cash retained on account of Disputed Claims and

distributions resulting from undeliverable distributions, a distribution of cash by the Liquidating Trust will not be separately taxable to a holder of Liquidating Trust interest as the beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the cash was earned or received by the Liquidating Trust).

The Liquidating Trustee will comply with all applicable governmental withholding requirements.  Thus in the case of any non-U.S. Holders, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is subject to a lower treaty rate or is otherwise excluded from withholding).  Non-U.S. Holders are urged to consult their tax advisors with respect to the U.S. federal income tax consequences of the Plan, including holding Liquidating Trust Interests.

Holders of Liquidating Trust interests are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of cash originally retained by the Liquidating Trust on account of Disputed Claims.

(b)    Tax Treatment of Direct Claims Trust

The Direct Claims Trust shall be established as a "grantor trust" for federal income tax purposes, pursuant to sections 671 through 679 of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business. The Direct Claims Trust shall be governed by the Plan and the Direct Claims Trust Agreement. The Direct Claims Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, without limitation, any and all provisions necessary to ensure the continued treatment of the Direct Claims Trust as a grantor trust and the Direct Claims Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes. The Direct Claims Trustee shall file returns for the Direct Claims Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with this Plan.

The U.S. federal income tax obligations of a holder with respect to its Direct Claims Trust interests are not dependent on the Direct Claims Trust distributing any cash or other proceeds. Thus, a holder may incur a U.S. federal income tax liability with respect to its allocable share of the Direct Claims Trust's income even if the Direct Claims Trust does not make a concurrent distribution to the holder. In general, a distribution of cash by the Direct Claims Trust will not be separately taxable to a holder of Direct Claims Trust interest as the beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the cash was earned or received by the Direct Claims Trust).

(c)    Tax Treatment of WARN Act Claim Reserve Account

The WARN Act Claim Reserve Account is intended to be treated as a qualified settlement fund for U.S. federal income tax purposes, and the remainder of this discussion assumes that this treatment is respected.  All parties will be required to treat the WARN Act Claim Reserve Account as a qualified settlement fund for all applicable tax reporting purposes.

The WARN Act Claim Reserve Account will be subject to U.S. federal income tax on its modified gross income, if any.  The WARN Act Claim Reserve Account's modified gross income

-64-

means its gross income less certain allowed deductions, including but not limited to administration fees, expenses for accounting and legal services, claims processing expenses and other expenses. The WARN Act Claims Administrator, as administrator, will be required to file tax returns on behalf of the WARN Act Claim Reserve Account and will be responsible for causing the WARN Act Claim Reserve Account to pay all taxes, if any, imposed on its modified gross income.

The WARN Act Claims Administrator will ensure that any distributions made in respect of Claims that are in the nature of compensation for services are subject to appropriate payroll withholding and reporting, and that any applicable payroll taxes associated therewith (including employer-side and employee-side payroll taxes) are properly remitted.  Any such taxes shall be payable solely out of the assets held in the WARN Act Claim Reserve Account.  Holders of such Claims are urged to consult their tax advisors with respect to the U.S. federal, state and local income tax consequences of this Plan.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE COMPLEX.  THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES.  EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

16.3    <u>Alternatives to the Combined Plan and Disclosure Statement</u>.

If the requisite acceptances are not received or the Combined Plan and Disclosure Statement is not confirmed and consummated, the theoretical alternatives to the Combined Plan and Disclosure Statement would be (a) formulation of an alternative chapter 11 plan, (b) conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or (c) dismissal of the Chapter 11 Cases.  As discussed below, the Debtors and Committee do not believe that any of these alternatives, even if viable, would afford holders of Claims or Interests a greater recovery than what is provided by the Combined Plan and Disclosure Statement.

If the Combined Plan and Disclosure Statement is not confirmed, then the Debtors, Committee or any other party in interest could attempt to formulate a different plan.  The additional costs, including, among other amounts, additional professional fees, all of which would constitute Administrative Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to chapter 7.  At this time, the Debtors and Committee do not believe that there are viable alternative plans available to the Debtors.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate and distribute the Debtors' remaining assets in accordance with the priorities established by the Bankruptcy Code.  As discussed above and indicated in the Liquidation Analysis, the Debtors and Committee believe that the Combined Plan

and Disclosure Statement provides a better outcome for holders of Claims than a chapter 7 liquidation would provide.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases also could be dismissed. Among other effects, dismissal would result in the termination of the automatic stay, thus permitting creditors to assert state-law rights and remedies against the Debtors and their assets, likely to the detriment of other creditors. While it is impossible to predict precisely what would happen in the event the Chapter 11 Cases are dismissed, it is unlikely that dismissal would result in a ratable distribution of the Debtors' assets among creditors as provided in the Combined Plan and Disclosure Statement. Thus, the vast majority of creditors could expect to receive less in the dismissal scenario than they would receive under the Combined Plan and Disclosure Statement.

**SECTION 17**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

17.1    <u>Conditions to Confirmation of the Plan</u>.

Confirmation of the Combined Plan and Disclosure Statement is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors in consultation with the Committee: (i) the Bankruptcy Court shall have approved a disclosure statement to the Plan, which may be this Combined Plan and Disclosure Statement, in form and substance acceptable to the Debtors and the Committee, (ii) the Debtors shall have determined that there will be sufficient Cash on the Effective Date to pay (or with respect to Disputed Claims to reserve for as required pursuant to the Plan) Allowed Administrative Claims, Priority Non-Tax Claims, and Priority Tax Claims in full (or in such lesser amount as may be agreed to by the Claimant), (iii) the Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtors and the Committee in form and substance, and (iv) the final version of the schedules, documents, and exhibits contained in the Plan Supplement, and all other schedules, documents, supplements and exhibits to the Combined Plan and Disclosure Statement, shall be in form and substance acceptable to the Debtors and the Committee.

17.2    <u>Conditions to the Effective Date</u>.

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors in consultation with the Committee: (i) a Confirmation Order in form and substance acceptable to the Debtors and the Committee shall have been entered by the Bankruptcy Court and become a Final Order which is not subject to any stay of effectiveness; (ii) the Liquidating Trust and the Direct Claims Trust shall have been created pursuant to the terms of the Plan, the Liquidating Trustee shall have been appointed by order of the Bankruptcy Court (which may be the Confirmation Order), and the Liquidating Trust Agreement and the Direct Claims Trust Agreement shall have been executed by the Liquidating Trustee; (iii) the Initial Trust Cash shall have been fully funded and released to the Liquidating Trustee upon the Effective Date; and (iv) all actions, documents,

and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto.

17.3    <u>Waiver of Conditions Precedent.</u>

To the fullest extent permitted by law, the conditions to the Effective Date set forth herein may be waived or modified in whole or in part at any time in writing by the Debtors, in consultation with the Committee, without leave from or an order of the Court.

## SECTION 18
## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

(a)    To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

(b)    To administer the Plan, the Liquidating Trust, the Direct Claims Trust, the Liquidating Trust Assets, the Direct Claims Trust Assets, and the proceeds thereof;

(c)    To estimate or liquidate any Disputed Claims;

(d)    To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation; provided, however, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

(e)    To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

(f)    To hear and determine any and all applications by Professionals for an award of Professional Fees;

(g)    To enable the Liquidating Trustee to commence and prosecute any Litigation which may be brought after the Effective Date;

(h)    To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

(i)    To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

(j)    To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in

the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(k)     To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

(l)     To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable;

(m)     To enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

(n)     To enforce, and hear and determine all disputes involving, the injunction, release, and exculpation provisions provided in Section 15; and

(o)     To close the Chapter 11 Cases when administration of the Liquidating Trust, the Direct Claims Trust, and the Chapter 11 Cases has been completed.

## SECTION 19
## MISCELLANEOUS PROVISIONS

19.1     <u>Revocation of the Combined Plan and Disclosure Statement</u>.

The Debtors reserve the right to revoke and withdraw the Combined Plan and Disclosure Statement at any time on or before the Confirmation Date. If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

19.2     <u>Severability of Plan Provisions</u>.

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

US_ACTIVE\131476713

19.3    Exhibits.

All exhibits to the Combined Plan and Disclosure Statement and Plan Supplement are, by this reference, hereby incorporated herein.  The Debtors reserve the right to make non-substantive changes and corrections to such exhibits in advance of the Confirmation Hearing.  If any exhibits are changed or corrected, the replacement exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

19.4    Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

Counsel for Debtors:

Dentons US LLP
601 S. Figueroa Street, #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Attn:    Tania. M. Moyron, Esq.
         Van C. Durrer, II, Esq.
         tania.moyron@dentons.com
         van.durrer@dentons.com


         -and-

Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
United States
Attn:    John D. Beck
         john.beck@dentons.com
-and-

Togut, Segal & Segal LLP
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: 302-652-4100
Attn:    Frank A. Oswald, Esq.
         frankoswald@teamtogut.com

Counsel for the Committee

Brown Rudnick LLP
Seven Times Square

-69-

New York, NY 10036
Telephone: (212) 209-10036
Attn:    Robert J. Stark, Esq.
         Kenneth J. Aulet, Esq.
         Ben S. Silverberg, Esq.
         rstark@brownrudnick.com
         kaulet@brownrudnick.com
         bsilverberg@brownrudnick.com
         -and-

Genova Burns LLC
100 Allen Rd.
Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 533-0777
Attn:    Daniel M. Stolz
         Donald W. Clarke
         dstolz@genovaburns.com
         dclarke@genovaburns.com


Liquidating Trustee:

[●]

19.5    Reservation of Rights.

Neither the filing of the Combined Plan and Disclosure Statement nor any statement or provision contained in the Combined Plan and Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Combined Plan and Disclosure Statement nor any statement contained in the Combined Plan and Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Cases involving the Debtors, except with respect to Confirmation of the Plan.

19.6    Defects, Omissions and Amendments.

The Debtors may, with the approval of the Bankruptcy Court and without notice to all holders of Claims or Interests, insofar as it does not materially and adversely affect holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely

affect the interests of holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtors have complied with section 1125 of the Bankruptcy Code and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

### 19.7    Filing of Additional Documents.

The Debtors shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 19.8    Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

### 19.9    Setoffs and Recoupments.

The Debtors, the Liquidating Trust, and the Direct Claims Trust may, but shall not be required to, set off against or recoup from the payments to be made pursuant to the Plan in respect of a Claim, any claim of any nature whatsoever that the Debtors, the Liquidating Trust, the Direct Claims Trust, or the Estates, as applicable, may have against the holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtors, the Liquidating Trust, the Direct Claims Trust, or the Estates, against such holder.

### 19.10    Tax Exemption.

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the execution, delivery, or recording of an  instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, of the Debtors' property in implementation of or as contemplated by the Plan (including, without limitation, any subsequent transfer of property by the Liquidating Trust) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

19.11   Securities Exemption.

To the extent the Trust Interest is deemed or asserted to constitute securities, such Interest and the issuance and distribution thereof shall be exempt from Section 5 of the Securities Act, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, section 1145 of the Bankruptcy Code.

19.12   Implementation.

Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

19.13   Record Date.

To the extent a "Record Date" is required for implementation of the Plan, the record date shall be the voting record date established by the Bankruptcy Court in the Conditional Approval and Procedures Order.

19.14   Certain Actions.

By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of members, managers or other interest holders of the Debtors under the Plan, including, without limitation, (i) the distributions of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable corporation/limited liability company laws, without any requirement of further action by the members, managers or other interest holders of the Debtors, irrespective of whether the Confirmation Order specifically authorizes any such action.

Effective upon the Effective Date, the Debtors' formation documents shall each be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or as soon as practicable following the Effective Date, the Liquidating Trustee shall be authorized to cancel, annul, and extinguish all Interests.

19.15   Substantial Consummation.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

19.16   <u>Waiver of Fourteen-Day Stay</u>.

The Debtors and Committee request as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

19.17   <u>Governing Law</u>.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws thereof.

19.18   <u>Entire Agreement</u>.

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## SECTION 20
## RECOMMENDATION

The Debtors and Committee strongly recommend that all creditors receiving a Ballot vote in favor of the Plan. The Debtors and Committee believe that the Plan is in the best interests of creditors. The Plan as structured, among other things, allows creditors with Allowed Claims to participate in distributions believed to be in excess of those that would otherwise be available were the Chapter 11 Cases dismissed or converted under chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to creditors. The Committee supports the Combined Plan and Disclosure Statement and strongly urges unsecured creditors to vote to accept the Combined Plan and Disclosure Statement.

FOR ALL THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE DEBTORS AND THE COMMITTEE BELIEVE THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES. THE DEBTORS AND THE COMMITTEE URGE ALL CREDITORS ENTITLED TO VOTE TO ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY WILL BE RECEIVED BY 4:00 P.M. EASTERN TIME ON NOVEMBER 18, 2025 AT 4:00 P.M.

US_ACTIVE\131476713

Dated: October 15, 2025

Respectfully submitted,

POWIN, LLC AND ITS AFFILIATES AS
DEBTORS AND DEBTORS-IN-POSSESSION

*/s/ Gerard Uzzi*
Gerard Uzzi
Chief Restructuring Officer


OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF POWIN, LLC AND ITS
AFFILIATES AS DEBTORS AND DEBTORS-IN-
POSSESSION

*/s/ Carl Kim*
Carl Kim on behalf of ACE Engineering & Co. Ltd.,
solely in its capacity as Chair of the Official
Committee of Unsecured Creditors of Powin, LLC,
et al.