**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
        van.durrer@dentons.com


John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
        sarah.schrag@dentons.com

*Counsel for Debtors and Debtors in Possession*


**RAISNER ROUPINIAN LLP**

Gail C. Lin, Esquire (Bar No. 036752001)
Jack A. Raisner
René S. Roupinian
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

**LANKENAU & MILLER, LLP**

Johnathan Miller (New Jersey Bar #: 263592019)
Stuart J. Miller (SJM 4276)
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122
Email: stuart@lankmill.com


*Attorneys for Settlement Class
Representatives and the Settlement Class*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street, Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
        eblander@teamtogut.com


*Counsel for Debtors and
Debtors in Possession*


**THE GARDNER FIRM, PC**

Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181
Email: molsen@thegardnerfirm.com


*Attorneys for Settlement Class
Representatives and the Settlement Class*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |
| BRIAN PALOMINO, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Adv. Proc. No. 25-01249 (MBK) |
| v. | |
| POWIN, LLC, POWIN ENERGY OPERATING HOLDINGS, LLC, and POWIN ENERGY OPERATING, LLC, | |
| Defendants. | |

**JOINT MOTION OF DEBTORS AND CLASS REPRESENTATIVES, PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 9019 AND 7023 TO: (I) APPROVE THE SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019, (II) PRELIMINARILY APPROVE THE SETTLEMENT PURSUANT TO BANKRUPTCY RULE 7023, (III) APPROVE THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE SETTLEMENT, (IV) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT, (V) FINALLY APPROVE THE SETTLEMENT FOLLOWING THE <u>FAIRNESS HEARING, AND (VI) GRANT RELATED RELIEF</u>**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].

Powin, LLC and the affiliated debtors and debtors in possession (collectively, the
"Debtors"), on the one hand, and Brian Palomino and Luis Santiago (together, the "Settlement
Class Representatives," and, collectively with the Debtors, the "Parties"), on behalf of themselves
and the Settlement Class , on the other hand, by and through their respective counsel, hereby jointly
submit this Motion, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy
Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and
Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), applicable hereto by
Bankruptcy Rule 7023, for the entry of an Order: (1) approving the *Settlement and Release
Agreement* (the "Settlement")[2] pursuant to Bankruptcy Rule 9019; (2) preliminarily approving the
Settlement pursuant to Bankruptcy Rule 7023; (3) approving the form and manner of notice of the
Settlement to the members of the Settlement Class (the "Class Notice"); (4) scheduling a fairness
hearing to consider final approval of the Settlement (the "Fairness Hearing"); (5) finally approving
the Settlement following the fairness hearing (the "Final Settlement Order"); and (6) granting
related relief (the "Joint Motion").  In support of the Joint Motion, the Parties respectfully state:

## INTRODUCTION

1.      The Debtors, the Settlement Class Representatives, and the Official
Committee of Unsecured Creditors (the "Committee") reached a comprehensive settlement
through good faith, arms' length negotiations that resolves the claims asserted against the Debtors
for violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq.
("WARN Act") in the complaint that commenced the adversary proceeding number 25-01249
(MBK).

---

[2] A copy of the Settlement is attached hereto as Exhibit 1.  Unless otherwise defined herein, capitalized terms have
the meanings provided in the Settlement.

US_ACTIVE\131755742\V-6

2.    After informal exchanges regarding the underlying facts and applicable law, the Parties determined that further litigation and trial would needlessly result in significant and unnecessary dilution of the assets in the estate and reached the Settlement.  As disclosed in the Plan Supplement [Docket No. 1036, Ex. I], the principal terms of the Settlement  provide (i) for the appointment of Settlement Class Representatives and Class Counsel, (ii) the allowance of the aggregate 507(a)(4) claim against the Estates in the total amount of $3,500,000.00, of which $500,000 shall be paid in cash upon the Effective Date, and (iii) that the remaining Allowed WARN Act Claim Amount shall be paid from net recoveries of the Liquidating Trust in accordance with the Liquidating Trust Agreement.

3.    In light of these factors, the terms of the settlement, as set forth in the Settlement, are well within the range of reasonableness.  For the same reasons, the Settlement is also fair and reasonable to the Settlement Class Members.  Accordingly, the Parties respectfully submit that the Bankruptcy Court should approve the settlement under Bankruptcy Rule 9019.

4.    In connection with approval of the Settlement, the Parties request a two-step approval process to facilitate notice to Settlement Class Members consistent with Civil Rule 23 and Bankruptcy Rule 7023.  After preliminary approval of the Settlement and the form of the Class Notice, Class Counsel, or their designee, will provide the Settlement Class Notice to each Settlement Class Member, which describes the Settlement, and informs the Settlement Class Members of their right to object to the Settlement or opt-out, and the related deadlines.  After service of the Class Notice, the Parties request that the Bankruptcy Court hold a Fairness Hearing no sooner than 45 days of entry of the preliminary approval order, at which the Parties will request final approval of the Settlement.

5.      Based on the foregoing, and as set forth more fully below, the Parties submit that the Bankruptcy Court should approve the Settlement and the procedures proposed in this Joint Motion.

## JURISDICTION

6.      The Bankruptcy Court has jurisdiction over the Joint Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023.

## BACKGROUND

7.      On or about June 9, 2025 (the "Petition Date"), the Debtors each commenced a voluntary Bankruptcy Case for relief under chapter 11 of title 11 of the United States Code, §§ 101 et seq., as amended (the "Bankruptcy Code"), which are being jointly administered as Case No. 25-16137 (MBK).

8.      Prior to the Petition Date, the Debtors operated as a leading energy storage integrator, employing more than 400 employees, including the Settlement Class Members, in their business operations.

9.      On or about June 6, 2025, Debtors terminated the employment of approximately 280 employees.

10.     Following the Petition Date, Luis Santiago filed a class proof of claim on June 10, 2025, against Powin, LLC and related debtors, alleging WARN Act violations and asserting a priority claim in the amount of $5,145,000.00 pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. (Claim 1, the "WARN Class POC").  On June 12, 2025, Brian Palomino filed a class adversary proceeding against Powin, LLC and related debtors, also alleging WARN violations and asserting sixty days of WARN damages for each putative class member pursuant to

Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. (Adv. Proc. No. 25-01249, the "WARN Class Adversary," and collectively with the WARN Class POC, the "WARN Claims").  The time to answer was extended several times through various stipulations. [Docket Nos. 3, 12, 14, 17].

11.    On or about June 27, 2025, the Committee was appointed in this matter by the Office of the United States Trustee.  Plaintiff Brian Palomino was appointed to the Committee.

12.    Following the filing of the WARN Claims, the Parties worked to efficiently resolve the class WARN Act claims raised in the WARN Claims and as described in the Settlement.

13.    The WARN Claims involve numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, *inter alia*: (i) whether the Debtors were a covered employer under the WARN Act at the time of the alleged plant closing or mass layoff; (ii) whether the Debtors complied with the notice requirements under the WARN Act; (iii) whether the Debtors were entitled to give fewer than sixty (60) days' written notice because of the applicability of any of the statutory defenses contained in the WARN Act;  (iv) whether the Debtors have other defenses to the application of the WARN Act; (v) whether the Debtors gave "as much notice as practicable"; (vi) whether the Debtors constitute a "single employer" under the provisions of the WARN Act such that they would be jointly and severally liable for some or all of the alleged damages; (vii) the computation of the amount of damages; and (viii) whether the Debtors are entitled to any reduction of damages based on "good faith."  The Plaintiffs have the burden of proof on some of these issues and the Debtors have the burden on others, including any affirmative defenses, and the trial of this matter would likely be lengthy, adding to cost and potential delay, with an uncertain outcome.

14.    On October 15, 2025, the Debtors and the Committee filed their *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation Plan of Liquidation* [Dkt. No. 942], the "Plan"].  The Debtors and Committee filed a supplement to the Plan on November 7, 2025, which

was further amended thereafter (the "<u>Supplement</u>").  The Plan Supplement disclosed the principal

terms of the Settlement to creditors. *See* Docket No. 1036, Ex. I.

15.    The Plan and the Supplement provided an overview of the proposed resolution of

the WARN Claims.

16.    On November 22, 2025, the Parties entered into the Settlement, subject to

Bankruptcy Court approval, which resolves the WARN Claims.

**<u>ESSENTIAL TERMS OF THE PROPOSED SETTLEMENT</u>**

17.    The primary terms of the Settlement are as follows[3]:

i.    The Parties agree, for purposes of the Settlement only, that a settlement class should be
certified consisting of the employees of one or more of Powin Energy Operating, LLC,
Powin Energy Operating Holdings, LLC or Powin, LLC identified by Debtors from their
books and records, and specified by individual name on <u>Schedule 1 (attached to the
Settlement),</u> who were involuntarily separated from employment on or about June 6, 2025
(each a "<u>Class Member</u>" or "<u>Settlement Class Member</u>"), but excluding any such
individuals who timely elect to opt out of the Class (the "<u>Settlement Class</u>").  The Parties
also agree to the appointment of Plaintiffs Brian Palomino and Luis Santiago as the Class
Representatives and appointment of Raisner Roupinian LLP, The Gardner Firm, PC and
Lankenau & Miller, LLP as class counsel ("<u>Class Counsel</u>").

ii.    The Parties agree that the Settlement Class shall have an allowed Section 507(a)(4) claim
of $3,500,000 (the "<u>Allowed WARN Act Claim Amount</u>") against the Estates of the
Debtors, of which $500,000  shall be paid in cash by the Liquidating Trustee or its designee
upon the Effective Date to the Qualified Settlement Fund for distribution to the Class
Members (the "<u>Initial Distribution</u>").  The $3,000,000 balance of the Allowed WARN Act
Claim Amount shall be paid by Liquidating Trustee or its designee  to the Qualified
Settlement Fund for distribution to the Class Members from net recoveries of the Liquidating
Trust in accordance with the priority scheme set forth in the Bankruptcy Code
(the "<u>Remaining Distribution Payments</u>"). The Parties agree that the Initial Distribution
and Remaining Distribution Payments shall be inclusive of any and all required payments
by the Liquidating Trustee and the Debtors under this Settlement Agreement, including,
but not limited to, any employer taxes that might otherwise be due, except for the cost of
administering their distribution. For the avoidance of doubt, any costs incurred by the
Bankruptcy Estates, the Liquidating Trustee or its designee, in administering the
settlement, as set forth in paragraphs 6 and 9, of the Settlement shall not be paid from the
Allowed WARN Act Claim Amount.

---

[3] This Joint Motion contains a summary of certain provisions of the Settlement.  In the event of any conflict, the
Settlement itself shall govern over any description contained in the Joint Motion.

7

iii.     The Parties shall seek the preliminary approval of the Settlement Agreement and the form of notice to be given to Settlement Class Members ("Class Members").

iv.     Class Counsel shall provide notice to each Class Member within ten (10) business days following entry of the order preliminarily approving this Agreement, which describes the Agreement, informs the Class Members of their right to opt-out or object to the Settlement Agreement and identifies the deadline for doing so.

v.     The Parties shall request the Court hold a Fairness Hearing to consider final approval of this Settlement Agreement.

vi.     The Liquidating Trustee or its designee shall be responsible for distribution of the settlement including, but not limited to: (a) the formation of a qualified settlement fund (the "Qualified Settlement Fund") as authorized by Treasury Regulation 1.486B-1(c) to accept, distribute, and otherwise administer the Settlement, including wiring Class Counsel's Fees and Class Counsel's Expenses to Class Counsel, according to such wiring instructions provided by Class Counsel; (b) the preparation and mailing of settlement checks to each Class member; (c) the preparation and mailing of all tax forms, where applicable, and (d) the processing of returned settlement checks as undeliverable, including re-mailing to forwarding addresses and tracing of current addresses. Within two business days of entry of an Order granting preliminary approval of the settlement, the Debtors shall securely provide the Liquidating Trustee or its designee with a social security number for each Class Member for use in locating any Class Member whose address is stale and/or for use in administration of the settlement. Prior to the Effective Date, the Liquidating Trustee or its designee shall provide the Debtors with wiring instructions for the Qualified Settlement Fund. Should the Liquidating Trustee, in consultation with Class Counsel, choose to designate a Settlement Administrator to establish a Qualified Settlement Fund and administer the settlement, the cost of the settlement administrator shall be borne by the Bankruptcy Estates

vii.     The Settlement Class Members' settlement distributions shall be included under the Settlement Class Member's name and social security number on an any IRS Form and any applicable state or local tax form to be distributed by the Liquidating Trustee or its designee. The Service Payments, Class Counsel's Fees and Class Counsel's Expenses shall be reflected on IRS Form 1099s. By accepting his or her portion of the Settlement, each Class Member agrees that he or she will be solely responsible for any and all tax liabilities stemming from the payment of his or her claim under the Settlement Agreement. With respect to any distribution made by the Liquidating Trustee, or its designee, of the Initial Distribution or Remaining Distribution Payments, Class Counsel shall determine the timing of such distributions in consultation with the Liquidating Trustee or its designee, and Class Counsel shall calculate each Settlement Class Member's pro-rata share of the distribution

viii.     The Settlement Class Representatives agree they shall not submit a ballot voting to reject the Plan. In the event the Bankruptcy Court declines to approve this Agreement, the Settlement Class Representatives and Class Members shall have no obligation to vote.

ix.    Upon entry of the Final Approval Order, the WARN Class Adversary shall be deemed settled, released and dismissed in its entirety, on the merits, with prejudice, and the Court shall simultaneously, or the Clerk of the Court shall, enter a Notice of Dismissal to that effect in the form attached to the Settlement as Exhibit C, or in substantially similar form acceptable to the Parties.

x.    The Settlement Class Representatives shall, subject to final Court approval of this Settlement Agreement, receive an initial combined payment of fifteen thousand dollars ($15,000) from the Initial Distribution for their service on behalf of the Settlement Class Members ("Service Payments") to be allocated as follows: $9,000 to Brian Palomino and $6,000 to Luis Santiago.  The Class Representatives shall, subject to final approval, receive a supplemental combined payment of Ten Thousand Dollars from the Remaining Distribution Payments to be allocated as follows: $6,000 to Brian Palomino and $4,000 to Luis Santiago. The Service Payments will be made in addition to the Settlement Class Representatives' pro rata share of the settlement.

xi.    Class Counsel shall, subject to final Court approval of this Settlement Agreement, receive payment in the amount of one-third (1/3) of any distributions of the Allowed WARN Act Claim Amount ("Class Counsel's Fees"), plus reasonable litigation costs and expenses related to the WARN Claims ("Class Counsel's Expenses"). Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

xii.    Except for the rights arising out of, provided for, or reserved in the Settlement Agreement, upon the final approval of this Settlement Agreement, the Class Members, for and on behalf of themselves, and their respective predecessors, successors, assigns, affiliates and subsidiaries (collectively, the "Releasing Parties"), do hereby fully and forever release and discharge (a) the Debtors, their estates, their current and former directors, parents, subsidiaries, partners, members, lenders, accountants, attorneys, representatives, the Liquidating Trust, the Liquidating Trustee, and all other agents, respective predecessors, successors and assigns (collectively, the "Released Parties"), of and from any and all claims, obligations, demands, rights, debts, liabilities, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, character, and description, whether in law or in equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, whether known or unknown, and whether anticipated or unanticipated, suspected or disclosed, which the Releasing Parties may now have against the Released Parties, which relate to or are based on the WARN Act, or any federal, state or local law or regulation applying to plant closings (collectively, the "Released Claims").  The Parties agree, however, that the following claims and/or rights do not fall within the scope of the Released Claims and shall not be affected by the Settlement Agreement: (i) any claim for continuation of health or medical coverage, at the Class Member's expense, or at the expense of a beneficiary or dependent of a Class Member, to the extent required by the relevant provisions of the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"); (ii) any pre-petition, non-priority claims for expense reimbursement due individual Class Members; (iii) rights, if any unrelated to the individual Class Members' WARN Act claims, arising under the Debtors' 401(k) retirement plans; and (iv) any claim of individual Class

Members which the law clearly states may not be released by settlement. The Released Parties waive the right to assert any avoidance claims against Class Members arising under chapter 5 of the Bankruptcy Code or applicable state law to the extent such claims relate to transfers of less than $15,000.

xiii.   Upon the final approval of the Settlement Agreement, the Class Members agree that the release of the Class Members' Released Claims shall become effective without further notice or Order of the Court and any claims that have been scheduled on behalf of, or filed by, the Class Representatives or the Class Members in the Chapter 11 Cases, on account of any Released Claims are disallowed in their entirety and the Debtors' schedules or claims register may be revised accordingly, as appropriate, without further order of the Court.

xiv.   The Settlement Agreement is for the benefit of the Parties themselves, along with any heirs, executors or attorneys in fact, and not for the benefit of any third parties, including commercial third parties who purport to obtain claims of the Settlement Class Representatives or Settlement Class Members through assignment, transfer or otherwise. Absent an order from the Bankruptcy Court, Class Counsel or the Defendants, shall be under no obligation to distribute payments from the Settlement Amount or otherwise.

## RELIEF REQUESTED

18.   By this Joint Motion, the Parties request that the Bankruptcy Court enter orders: (1) approving the Settlement pursuant to Bankruptcy Rule 9019; (2) preliminarily approving the Settlement pursuant to Bankruptcy Rule 7023; (3) approving the form and manner of notice of the Class Notice; (4) scheduling the Fairness Hearing; (5) finally approving the Settlement following the Fairness Hearing; and (6) granting related relief.

## BASIS FOR RELIEF REQUESTED

**A.   The Bankruptcy Court Should Approve the Settlement Pursuant to Rule 9019 of the Bankruptcy Rules.**

19.   The United States Court of Appeals for the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also, *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and … much of litigation in bankruptcy estates results in settlements"). Bankruptcy Rule 9019 authorizes a

bankruptcy court to approve a compromise or settlement after notice and a hearing, Fed. R. Bankr.

P. 9019(a), and section 105 of the Bankruptcy Code empowers a court to issue any order that is

"necessary or appropriate." 11 U.S.C. § 105(a).

20. "[T]he authority to approve a compromise settlement is within the sound discretion

of the bankruptcy court." *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005);

see also, *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). When exercising such discretion,

the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best

interest [sic] of the estate." *Key3Media,* 336 B.R. 87, 92; see also, *Fry's Metals, Inc. v. Gibbons*

*(In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211 B.R. at

801; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del. 1998).

21. The bankruptcy court is not required to determine that the proposed settlement is

the best possible compromise. *In re Key3Media Group*, 336 B.R. at 92-93 (citing *In re Coram*

*Healthcare Corp.,* 315 B.R. 321, 329 (Bankr. D. Del. 2004)). Rather, the settlement should be

approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff*

*v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). In this respect, it is

unnecessary for the court to consider the information necessary to resolve the factual dispute, nor

is it necessary for the bankruptcy court to "conclusively determine claims subject to a

compromise." *Key3Media Group*, 336 B.R. at 92 (quoting *In re Martin*, 212 B.R. 316, 319 (BAP

8th Cir. B.A.P. 1997)).

**B. Standards for Approval of the Settlement.**

22. Courts consider the following four factors when determining whether a settlement

is in the best interests of the estate: (i) the probability of success in the litigation; (ii) the difficulties,

if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attendant thereto; and (iv) the paramount

interest of the creditors and a proper deference to their reasonable opinions. *Martin*, 91 F.3d at 393; *Aetna Casualty & Surety v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119, 123 (Bankr. D.N.J. 1999); *Key3Media Group*, 336 B.R. at 93; *In re Marvel*, 222 B.R. at 249.

23.      In addition to these criteria, courts have also scrutinized additional factors, such as (i) the competency and experience of counsel who support the settlement; (ii) the relative benefits to be received by individuals or groups within the class; (iii) the nature and breadth of releases to be obtained by the parties to the settlement; and (iv) the extent to which the settlement is the product of arm's length bargaining. *See Fischer v. Pereira (In re 47-49 Charles Street, Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re Dow Corning Corp.*, 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

## C.      Application of the *Martin* Factors.

### i.      The Probability of Success in Litigation

24.      The Settlement Class Representatives allege that the Debtors did not comply with the WARN Act in terminating approximately 280 employees on June 6, 2025 and contend that they would likely have been able to establish damages at trial.

25.      The Debtors believe that they have valid defenses, including, but not limited to, the "liquidating fiduciary" exception because the Debtors were not "employers" under the WARN Act on June 6, 2025, the "unforeseen business circumstance" exception because it was not probably in the months prior to June 6, 2025 that layoffs would be necessary, and because the Debtors operated, at all relevant times, in good faith. Although each side maintains confidence in the strength of its legal and factual positions, the Settlement provides a pragmatic and value-maximizing resolution by eliminating the substantial litigation risk, cost, and delay inherent in continued WARN Act litigation. Absent settlement, the parties would face extensive discovery, motion practice, and a complex, fact-intensive trial involving disputed issues of notice, exceptions,

US_ACTIVE\131755742\V-6

damages, and potential class-wide remedies. The outcome of such litigation is inherently uncertain, and any adverse ruling could materially increase administrative expenses and divert estate resources away from creditors. The Settlement avoids these risks and ensures a prompt, efficient, and equitable resolution of the asserted WARN Act claims.

ii.    <u>The Likely Difficulties in Collection</u>

26.    The Settlement resolves the Settlement Class Representatives' WARN Act claims against the Debtors. Even if the Settlement Class Representatives were to prevail at trial, any resulting judgment would likely be difficult to collect given the Debtors' limited resources and the constraints of these Chapter 11 cases, including the fact that a large, adverse ruling, could jeopardize the assets of the Liquidating Trust to the detriment of all beneficiaries thereof. Conversely, if the Debtors were successful, they would still incur significant attorneys' fees and costs that would be borne by the Liquidating Trust (and its beneficiaries) with little to no ability to recover attorneys' fees from the plaintiffs. In short, both sides face practical barriers to realizing any meaningful recovery through continued litigation. This mutual collectability risk further supports approval of the Settlement as a fair and efficient resolution under the circumstances.

iii.    <u>The Complexity of Litigation Involved, the Expense, Inconvenience and Delay</u>

27.    The Parties agree that any litigation involving the Settlement Class Representatives' claims and the Debtors defenses thereto would likely incur substantial cost to the estate, and each of the Parties would suffer from some uncertainty as to what the damages or costs associated with prosecuting or defending such an action would ultimately be.  The Settlement, however, eliminates any further accrual of litigation expenses, on all sides, associated with the WARN Claims.  Accordingly, the Parties respectfully submit that approval of the Settlement is warranted because the Settlement obviates the need for the Parties to take on substantial cost and

risk in prosecuting or defending an action involving the Settlement Class Representatives' claims. Accordingly, this factor weighs strongly in favor of approving the Settlement.

iv.    The Paramount Interest of the Creditors

28.    Finally, the paramount interests of creditors strongly support approval of the Settlement.  The Settlement was the product of good faith, arms' length negotiations between the Parties and the Committee and provides the Settlement Class with an allowed Section 507(a)(4) claim of $3,500,000 against the Bankruptcy Estates of the Debtors, of which $500,000, shall be paid in cash by the Liquidating Trustee or its designee upon the Effective Date to the Qualified Settlement Fund for distribution to the Class Members.  The Settlement spares the Debtors' estates and, by extension, the Debtors' creditors the significant expense and uncertainty associated with the litigation of the issues raised in the WARN Claims.

29.    When determining whether a compromise is in the best interests of an estate, the Bankruptcy Court must "'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'"  *In re Key3Media Group*, 336 B.R. at 93 (quoting *In re Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))); *see also*, *In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to approve a particular compromise, courts utilize various criteria designed to achieve the objective of having the Defendant or debtor in possession act in [the] best interests of the estate").  To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise." *In re Marvel*, 222 B.R. at 249 (quoting *TMT Trailer Ferry, Inc.*, 390 U.S. at 424); *see also*, *Key3Media Group*, 336 B.R. at 92 ("[t]he bankruptcy court must be "apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.") (quoting *In re Martin*, 91 F.3d at 393).

14

30.     Accordingly, in light of each of the *Martin* factors, the Settlement should be approved.

**D.     The Bankruptcy Court Should Certify the Class, Appoint Class Counsel, and Preliminarily Approve the Settlement Agreement Pursuant to Rule 23 of the Federal Rules of Civil Procedure**

31.     Where, as in this case, the Bankruptcy Court has not already certified a class, before approving a class settlement pursuant to Civil Rule 23, the Bankruptcy Court must determine whether the proposed settlement class satisfies the certification requirements of Civil Rule 23. *Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3rd Cir. 2005).

32.     "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem*, 521 U.S. at 618. *Accord Community Bank*, 418 F.3d at 299. "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification." *Community Bank*, 418 F.3d at 299. *See also*, *General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Lit*ig., 55 F.3d 768, 786 (3rd Cir. 1995) ("By specifying certification for settlement purposes only . . . the court preserves the defendant's ability to contest certification should the settlement fall apart.").

33.     Subdivisions (a) and (b) of Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class Representatives." *Amchem*, 521 U.S. at 621.

34.     To be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. FED. R. CIV. P. 23; *Community Bank*, 418 F.3d at 302. In addition, the class must satisfy the requirements of Rule 23(b)(1), (2), or (3). In this case, the Parties have agreed to request conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions." *Id.* In order to certify a class under

Rule 23(b)(3), the court must make two additional findings: predominance and superiority. That is, "[i]ssues common to the class must predominate over individual issues, and the class action device must be superior to other means of handling the litigation." *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 442-43 (E.D. Pa 2008)

35.    The proposed settlement Class meets each of the foregoing elements for the reasons discussed below.

### (i) The Rule 23(a) Criteria

36.    Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001). "No single magic number exists satisfying the numerosity requirement." *Beherend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citing *Moskovitz v. Loop*, 128 F.R.D. 624, 628 (E.D. Pa. 1989). However, the Third Circuit "typically has approved classes numbering 40 or more." *Gates*, 248 F.R.D. at 440 (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

37.    The proposed class of almost three hundred Settlement Class Members meets the numerosity requirement and joinder of all Settlement Class Members is impractical. The class is sufficiently numerous to make joinder of all members impractical and thus satisfy the numerosity requirement.    Accordingly, the Court should find that the numerosity requirement is met.

38.    The commonality requirement requires existence of at least one question of law or fact common to the Class. Fed. R. Civ. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). The commonality threshold is low, (*Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)), and does not require "an identity of claims or facts among class members," *Behrend*, 245 F.R.D. at 202. Further, the existence of individual facts and

circumstances will not defeat commonality so long as the Settlement Class Members allege harm under the same legal theory

39.     Here, fundamental issues of law and fact regarding notice of termination, applicability of several defenses, measure of damages and priority of claims and attorneys' fees are common to all Settlement Class Members.

40.     Typicality requires that the "named plaintiffs" claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  FED. R. CIV. P. 23(a)(3); *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting *Baby Neal*, 43 F.3d at 55).  "Typicality requires a strong similarity of legal theories to ensure that the class Representatives' pursuit of their own goals will work to benefit the entire class." *Powers*, 245 F.R.D. at 236.  "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-296 (quoting *Baby Neal*, 43 F.3d at 55).

41.     The Settlement Class Representatives do not allege that they were singled out for disparate treatment in the manner in which they were terminated.  Instead, they allege that they suffered harm as a result of the same conduct that allegedly injured the absentee Settlement Class Members – they were allegedly terminated just prior to the petition date without receiving notice that complied with the WARN Act.   Accordingly, the Bankruptcy Court should find that the typicality requirement is met.

42.     With respect to adequacy, class representatives must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Gates*, 248 F.R.D at 441.  The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class Representatives are experienced and qualified to prosecute the claims on behalf of the

17

entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the Representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185.

43.     The Court should find that the Settlement Class Representatives and Class Counsel adequately represent the interests of the Settlement Class Members based on the Declaration of Brian Palomino. As demonstrated by the René S. Roupinian Declaration, Class Counsel are well qualified and experienced to represent the Settlement Class Members. Collectively, they have been appointed as class counsel in more than two hundred WARN actions, many of which were in bankruptcy cases.

44.     Incentive or service payment awards to Class Representatives are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded").

45.     In this case, the Settlement Class Representatives performed important services for the benefit of the Class by commencing the WARN Claims and willingly assisting counsel throughout the litigation. The Settlement Class Representatives stepped forward to bring the WARN Claims in their own names on behalf of their former co-workers. No other employees have asserted claims for the Settlement Class. The Settlement Class Representatives were willing to be deposed and testify if there were hearings or a trial. The Settlement Class Representatives agreed to do so at a point when their futures were uncertain and employment prospects potentially dimmed by suing their former employer. Ultimately, without the efforts of the Settlement Class

Representatives there would not have been any recovery for the Settlement Class. As the Court is likely aware, this case is searchable on the Internet and may become known to prospective employers evaluating the Settlement Class Representatives for employment. Further the Settlement Class Representatives expended time and effort to assist with this matter.

46.    The amount of the Service Payments agreed to here are also consistent and on scale with amounts awarded in WARN class actions in bankruptcy courts here in this Circuit and across the country.  *See*, *D'Amico, et al. v. Tweeter, OPCO, LLC* and *Schultze Asset Management, LLC*, Adv. Pro. No. 08-51800 (Del. Bankr. 2008) (one class representative who was deposed received $15,000, the other two received $10,000 each. Service payments were approximately 3% of common fund); *Kettell v. Bill Heard Enterprises, Inc.*, Adv. Pro. No. 08-80153 (N.D. Ala. Bankr. 2008) (court approved service payments for two class representatives in the amount of $10,000 each. Service payments were approximately 1% of common fund); *Kohlstadt, et al, v. Solyndra*, Adv. Pro. No. 11-53155 (Del. Bankr. 2011)(class representatives received $7500 and $12,500, respectively, as service payments, which were approximately .6% of common fund); *Capizzi, et al., v. AWTR Liquidation Inc., f/k/a Rhythm and Hues, Inc.*, Adv. Pro. No. 2:13-ap-01209-NB (C.D. Cal. Bankr. 2013)(class representatives received $10,000 each as service payments, which were approximately 2% of the common fund).

47.    Accordingly, the combined total Service Payments of $25,000 to the Settlement Class Representatives, amounting to less than 1% of the Allowed WARN Act Claim Amount, is appropriate and justified as part of the overall Settlement in light of the value of the Settlement Class Representatives' services to the Settlement Class and burdens and risks taken on behalf of the Class.[4]  Moreover, the Debtors have agreed to the proposed award of the service payments to

---

[4] In addition to the Service Payments, the Settlement Class Representatives shall be authorized to participate in the Settlement as Settlement Class Members.

the Settlement Class Representatives, so long as such service payments are payable solely from

the Qualified Settlement Fund from distributions on the Allowed WARN Act Claim Amount, as

described in the Settlement.

### (ii) The Rule 23(b)(3) Criteria

48.     Common questions of law and fact predominate over the individual issues (which

appear to be limited to each Settlement Class Members' pay and benefits under the WARN Act).

Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by

representation.  *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09.  The proper

predominance inquiry "trains on the legal or factual questions that qualify each member's case as

a genuine controversy, questions that preexist any settlement."  *Amchem*, 521 U.S. at 623.  "In this

vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses

of the named Representatives must be typical of the claims or defenses of the classes."  *Community

Bank*, 418 F.3d at 309.

49.     Just as typicality exists, predominance also exists.  All of the claims arise from an

alleged violation of the WARN Act resulting from the terminations that occurred on or about June

6, 2025.  Accordingly, the Court should find that the predominance requirement is met.

50.     Rule 23(b)(3) also requires a determination that "a class action is superior to other

available methods for the fair and efficient adjudication of the controversy."  FED. R. CIV. P.

23(b)(3); *Gates*, 248 F.R.D. at 443.  In effect, "[t]he superiority requirement asks the court to

balance, in terms of fairness and efficiency, the merits of a class action against those of alternative

available methods of adjudication."  *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148

F.3d at 283, 316 (3d Cir. 1998).

51.     Rule 23 sets forth several factors relevant to the superiority inquiry:  "(A) the class

members interests in individually controlling the prosecution or defense of separate actions; (B)

the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. However, when a class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *Gates*, 248 F.R.D. at 443.

52.    Here, a class action is superior to individual actions. First, the amount of each Class Member's claim is relatively small. Individually, there is little incentive in controlling the prosecution of separate actions. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quotation and citation omitted). It is appropriate that all the claims against the Debtors arising from the Settlement Class Representatives' allegations should be concentrated in this Court. In addition, determining the claims of some Settlement Class Members, but not all, could prejudice the claims of the remaining Settlement Class Members. Accordingly, the Bankruptcy Court should find that the superiority element is met.

53.    Based on the foregoing, the Bankruptcy Court should certify the Settlement Class for settlement purposes only, appoint Brian Palomino and Luis Santiago as the Settlement Class Representatives, and appoint Raisner Roupinian LLP, The Gardner Firm, P.C. and Lankenau & Miller, LLP as Class Counsel.

**E.    The Bankruptcy Court Should Preliminarily Approve the Settlement.**

54.    Approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates v. Rohm & Haas Co,* 248 F.R.D. 434,

438 (E.D. Pa. 2008).  "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Id.* quoting *Smith v. Professional Billing & Mgmt. Sys., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *see also*, *In re Community Bank of Northern Virginia*, 2008 WL 3833271 (W.D. Pa. Aug. 15, 2008). The preliminary approval determination requires the Bankruptcy Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp.*, 55 F.3d 768, 785-86 (3d Cir. 1995).

55.     The Settlement has no obvious deficiencies and falls well within the range of reason.  Each of the above-cited factors favors preliminary approval of the Settlement.

56.     First, the settlement is the result of good faith, arm's length negotiations between capable adversaries and provides for the <u>Allowed WARN Act Claim Amount</u> in the total amount of $3,500,000.00, of which $500,000 shall be paid in cash upon the Effective Date.  This amounts to approximately 75% of the combined priority wages of the Settlement Class as calculated by Class Counsel, from the Debtors' books and records.

57.     Second, the Parties recognized that continued litigation would further diminish the estate without benefit to either of the Parties.

58.     Third, counsel for all Parties has the experience and the skill to both vigorously litigate WARN Claims and to determine when and to what extent settlement is appropriate.  Class Counsel has collectively been appointed as class counsel in over two hundred WARN cases.

59.     In light of the foregoing, the Bankruptcy Court should preliminarily approve the Settlement.

US_ACTIVE\131755742\V-6

**F.     The Bankruptcy Court Should Approve the Form and Manner of the Proposed Notice of the WARN Settlement.**

60.     Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members.  Federal Rule of Civil Procedure 23(e) requires that all members of the class be notified of the terms of any proposed settlement.  Civil Rule 23(e) requirements is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation." *In re Prudential*, 148 F.3d at 326-27.

61.     The proposed Class Notice, attached to the Settlement as Exhibit B, will be served by Class Counsel, or their designee, upon each Settlement Class Member.  Class Counsel proposes that within ten (10) business days following entry of the order preliminarily approving the Settlement, Class Counsel will serve the Class Notice substantially in the form attached to the Settlement, upon each Settlement Class Member at the last known addresses of each Settlement Class Member according to Debtors' books and records.  *Cf. Prudential*, 148 F.3d at 327 (holding that mailings to last known addresses of class members and publication in national newspapers sufficient to provide notice to large, multi-state class).

62.     The Class Notice includes the information required by Rule 23(c)(2)(B).  The Class Notice outlines the terms of the Settlement, including the attorneys' fees and costs proposed to be paid to Class Counsel, describes how each Settlement Class Member may obtain a copy of the Settlement.  The Class Notice also states the date, time, location and purpose of the Fairness Hearing, informs Settlement Class Members of their right to appear at the Fairness Hearing, and describes the procedure for opting out or objecting to the Settlement.  Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

**G.     The Bankruptcy Court Should Finally Approve the Settlement at the Fairness Hearing.**

63.     The Parties request the Bankruptcy Court hold a Fairness Hearing within sixty days of entry of the preliminary approval order.  At the Fairness Hearing, the Bankruptcy Court should finally approve the Settlement.

64.     Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval."  *Id.*  Final approval of a settlement pursuant to Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate."  FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).  "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished."  *Community Bank*, 2008 WL 3833271 at * 5 (quoting *General Motors*, 55 F.3d at 785.).

65.     The Third Circuit has held that the following nine factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  This list is not exhaustive.  *Community Bank*, 2008 WL 3833272 at *6.

66.     The following *Girsh* factors strongly support approval of the Settlement.

    a.     As discussed, continued litigation of the WARN Claims will be expensive.

b.    The Settlement Class Representatives support the Settlement and Class Counsel believe that all of the other Settlement Class Members will have a favorable reaction to the Settlement and will not object to it.

c.    The Settlement was reached through arms' length negotiations between the Parties and the Committee and after the Parties and the Committee thoroughly investigated the facts and weighed the importance of efficient resolution versus continued litigation that would significantly reduce the assets in the estate.

d.    When considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness. The Settlement provides for the <u>Allowed WARN Act Claim Amount</u> in the total amount of $3,500,000.00, of which $500,000 shall be paid in cash upon the Effective Date Allowed Employee. The amount of the Allowed WARN Act Claim Amount is approximately 75% of the combined priority wages of the Settlement Class as calculated by Class Counsel, from the Debtors' books and records.

67.    Based on the foregoing, the Bankruptcy Court should finally approve the Settlement.

## <u>CONCLUSION</u>

**WHEREFORE**, the Parties respectfully request the Bankruptcy Court to (i) grant the Joint Motion in its entirety; (ii) preliminarily approve the Settlement (See Exhibit A to the Settlement); (iii) approve the form and manner of the Class Notice (See Exhibit B to the Settlement); (iv) schedule a Fairness Hearing; (v) approve the Settlement on a final basis (See Exhibit 2, hereto, "<u>Final Settlement Order</u>"); and (vi) grant such other relief as the Bankruptcy Court deems necessary and appropriate.

US_ACTIVE\131755742\V-6

DATED: November 22, 2025

<table>
<tr>
<td>

*/s/ Gail C. Lin*

**RAISNER ROUPINIAN LLP**
Gail C. Lin, Esquire (Bar No. 036752001)
Jack A. Raisner
René S. Roupinian
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

**THE GARDNER FIRM, PC**
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181
Email: molsen@thegardnerfirm.com

**LANKENAU & MILLER, LLP**
Johnathan Miller (New Jersey Bar #: 263592019)
Stuart J. Miller (SJM 4276)
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122
Email: stuart@lankmill.com

*Attorneys for Settlement Class*
*Representatives and the Settlement Class*

</td>
<td>

*/s/ Tania M. Moyron*

**DENTONS US LLP**
Tania M. Moyron (admitted pro hac vice)
Van C. Durrer, II (admitted pro hac vice)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (admitted pro hac vice)
Sarah M. Schrag (admitted pro hac vice)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
        sarah.schrag@dentons.com

*and*

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Email: altogut@teamtogut.com
        eblander@teamtogut.com

*Counsel for Debtors and Debtors in*
*Possession*

</td>
</tr>
</table>

## CERTIFICATE OF SERVICE

     I hereby certify that on November 22, 2025, I caused a true and correct copy of the foregoing to be served on the parties receiving notice through the Court's ECF System.

                              */s/ Tania M. Moyron*
                               Tania M. Moyron

US_ACTIVE\131755742\V-6