**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**EVERSHEDS SUTHERLAND (US) LLP**

Sameer M. Alifarag (NJ No. 353692021)
sameeralifarag@eversheds-sutherland.com
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 389-5000

David A. Wender (admitted *pro hac vice*)
davidwender@eversheds-sutherland.com
999 Peachtree Street NE, Suite 2300
Atlanta, Georgia 30309
Tel: (404) 853-8175
Fax: (404) 853-8806

*Counsel to Pulse Clean Energy SPV Watt Limited*

| | |
|---|---|
| In re:<br><br>POWIN, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br>(Jointly Administered)<br><br>Honorable Michael B. Kaplan |

**MOTION OF PULSE CLEAN ENERGY SPV WATT LIMITED FOR RELIEF FROM THE AUTOMATIC STAY AND AUTHORIZING ACTIONS CONSISTENT THEREWITH**

Pulse Clean Energy SPV Watt Limited (the "Movant"), by and through their undersigned counsel, Eversheds Sutherland (US) LLP, files this *Motion of Pulse Clean Energy SPV Watt*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue, Tualatin, OR 97062.

1

*Limited for Relief from the Automatic Stay and Authorizing Actions Consistent Therewith* (the "Motion"), requesting entry of an order, pursuant to §§ 362(d)(1) and 105(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), lifting or otherwise modifying the automatic stay, for cause, to permit recovery of certain escrowed funds and authorizing actions consistent therewith, as described herein. For the reasons set forth below and in support thereof, the Movant respectfully represents as follows:[2]

**Preliminary Statement**

1. The Movant and Debtor Powin, LLC ("Debtor" or "Powin" and, together with its affiliated chapter 11 debtors, the "Debtors") were parties to an Energy Equipment Supply Agreement, dated December 22, 2023 (as amended, supplemented or otherwise modified from time to time, the "ESA"),[3] pursuant to which the Debtor agreed to, among other things, design, engineer, procure, manufacture, supply, test and commission the Supply and Commissioning Works forming part of the battery energy storage project in Scotland. Relevant to this Motion is an escrow account wherein the Movant deposited approximately $5,783,042.25 (now totaling approximately $6,763,904.96, inclusive of additional amounts escrowed and interest accrued thereon to the January 10, 2025) into an escrow account.[4] Pursuant to the ESA, the Movant is

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the ESA or the Escrow Agreement, as applicable.

[3] A true and correct copy of the ESA is attached hereto as **Exhibit B**. However, due to confidentiality restrictions in the ESA, the Movant intends to simultaneously file a motion requesting authority to file Exhibit B under seal.

[4] The amount in the escrow account is based on the following calculation: (a) an initial escrow payment in the amount of $1,927,662.75, made on June 11, 2023 *plus* (b) a combined second and third escrow payment, which were subject to a 20% VAT charge, in the amount of $4,626,415.80, made on March 12, 2024 *plus* (c) interest accrued on the payments set forth in (a) and (b) through January 10, 2025 in the amount of $209,826.41. The escrow payments described in (b) were combined based on deliveries made by Powin under the ESA.

entitled to "make a unilateral demand for payment" upon, among other events, Powin's material breach of the ESA.[5]  Ultimately, the Debtor failed to complete its work pursuant to the terms of and on the timeline under the ESA and, thereafter, rejected the ESA.  Given the Debtor's failure to complete the project as required and due to its rejection of the ESA, in addition to being liable for damages,[6] the Movant is now entitled to a return of the escrowed proceeds.

2.     "Cause" exists to lift the automatic stay, to the extent the stay applies, because the Escrow Property is not property of the estate and the balance of hardships tips significantly in the Movant's favor given its substantial damages exceeding $12 million.  Accordingly, though the ESA is clear that the Movant is entitled to unilaterally demand return of the escrowed proceeds, the Movant respectfully requests that this Court grant relief from the automatic stay out of an abundance of caution to permit the Movant to seek release of the Escrow Amount from the Escrow Agent and take any other actions consistent therewith.

**Jurisdiction**

3.     The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of New Jersey dated as of September 18, 2012.  The Movant confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later

---

[5] *See, e.g.*, ESA §§ 3.2.7(c), 12.2.1(a); *infra* ¶¶ 27-29.
[6] *See* Proof of Claim of Pulse Clean Energy SPV Watt Limited, No. 290, In re Powin, LLC, No. 25-16137 (Bankr. D.N.J. June 9, 2025). The claim arises from Powin's failure to perform its contractual obligations under the ESA, relating to a project at Rothienorman, Scotland, which has been rejected by court order on June 17, 2025.  The claimed damages include estimated costs of £2,500,000 to find a replacement contractor and complete the project, £1,300,000 for replacement warranties, £450,000 for a replacement technical contractor, £1,412,056.90 to reinsure certain warranties and products, £100,000 for spare parts, and £3,301,465.26 in other damages resulting from termination of the agreements, plus additional unliquidated claims for breach of contract, fees and expenses of counsel and professionals.

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue of the chapter 11 cases and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### Background

**A. The Parties and the Energy Equipment Supply Agreement**

5. On December 22, 2023, the Movant and Powin became parties to, among other contracts, that certain ESA.

6. Among other contractual obligations, pursuant to the ESA, the Debtor was required to design, engineer, procure, manufacture, supply, test and commission the Supply and Commissioning Works forming part of the battery energy storage project at Overhill Farm, Rothienorman, Scotland, AB51 8YN (the "Project").

**B. The Escrow Agreement and the Escrow Amount**

7. In accordance with the ESA, the Movant and the Debtor are also parties to that certain Escrow Agreement dated October 25, 2023 (the "Escrow Agreement"),[7] pursuant to which the Movant deposited approximately $5,783,042.25 (the "Initial Escrow Amount") in an account managed by HSBC Bank USA, National Association (the "Escrow Agent" or "HSBC"). *See* Escrow Agreement at § 2.

8. Per the Escrow Agreement, the Initial Escrow Amount is to be held as the "Escrow Property," *id.*, to secure the Debtor's performance under the ESA, such that the Escrow Agent would retain the Escrow Property until instructed to release the funds. *Id*. at § 4. The funds

---

[7] A true and correct copy of the Escrow Agreement is attached hereto as **Exhibit C**. However, due to confidentiality restrictions in the Escrow Agreement, the Movant intends to simultaneously file a motion requesting authority to file Exhibit C under seal.

currently total $6,763,904.96, inclusive of additional escrowed amounts and accrued interest thereon through January 10, 2025 (the "Escrow Amount"). *See supra*, n. 4.

9. The Escrow Agreement provides that HSBC shall hold the Escrow Property until instructed to release funds either (a) by a joint written release signed by both the Movant and the Debtor, to be issued once Powin achieved or otherwise satisfied the Project milestones set forth in Schedule 1 of the ESA (the "Payment Schedule") or (b) by a written release signed by the Movant alone specifying that certain events entitling release have occurred, in accordance with the ESA. *Id*. at § 4.

**C. The Movant's Contractual Right to Demand Release of the Escrow Funds**

10. The ESA expressly permits the Movant to make a "unilateral demand" for payment under the Escrow Agreement upon specified events, including: (a) the Debtor's failure to pay any amounts due to the Movant; (b) losses or expenses incurred by the Movant arising from the Debtor's default or breach; (c) *circumstances entitling the Movant to terminate the ESA*; or (d) the Movant's entitlement to Delay Liquidated Damages and/or a Recovery Payment. *See* ESA at § 3.2.7.

**D. The Payment Schedule and the Escrow Release Conditions**

11. The Payment Schedule demonstrates that the escrow was always intended for the Movant's benefit, not as the Debtor's working capital. Specifically, the Payment Schedule establishes milestone payments tied to specific deliverables and performance benchmarks, with portions of the Contract Price held back and deposited into the Escrow Account.

12. The escrow holdbacks were imbedded in Milestones 1, 4, and 5, with scheduled releases contingent upon Commissioning and 1,095 days after the Guaranteed Commissioning Date. These release conditions were designed to ensure that the Debtor fully performed its

5

obligations under the ESA, including successful commissioning and a substantial post-commissioning warranty period. Because the Debtor never achieved Commissioning and has now rejected the ESA, the conditions for releasing the escrow to the Debtor were never satisfied and cannot be satisfied. Conversely, as noted herein, Section 3.2.7 of the ESA expressly authorizes the Movant to demand payment from the Escrow Account upon the occurrence of defaults and circumstances entitling the Movant to terminate—precisely the situation that exists here.

### E. The Debtors' Bankruptcy Filing and the Rejection of the ESA

13. On June 9, 2025, and thereafter (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Court, commencing these chapter 11 cases.

14. On June 27, 2025, the United States Trustee appointed an official committee of unsecured creditors.

15. A description of the Debtors, their business, and the reasons for the commencement of the chapter 11 cases are set forth in greater detail in the *Declaration of Gerard Uzzi in Support of Emergency First Day Motions of the Debtors* [Docket No. 13].

16. The ESA, among other agreements, has been deemed rejected as of June 17, 2025. *See Order Granting Debtors' Motion to Reject* [Docket No. 843] (the "Rejection Order").[8] The Debtor did not complete the work required under the ESA and, as a result of its rejection pursuant to the Rejection Order, is deemed to have breached the ESA as of the Petition Date.

---

[8] *Notice of Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief*, Schedule 1, CN 254-55, In re Powin, LLC, No. 25-16137-MBK (Bankr. D.N.J. June 17, 2025), Docket No. 88.

**F. The Movant's Damages**

17. On September 22, 2025, the Movant filed Proof of Claim No. 290 (the "Filed Claim"), asserting a claim in the aggregate amount of not less than $12,152,823.70 (or £9,036,522.17) (the "Claim Amount"), plus additional unliquidated amounts.

18. The Movant's Filed Claim represents damages incurred in connection with rejection of the ESA and LTSA (as defined herein), including estimated costs to find a replacement contractor and complete the Project, obtain replacement warranties, find a replacement technical contractor, reinsure certain warranties, procure spare parts, and other damages caused by the Debtor's rejection.[9] Given that the terms and conditions of the Escrow Agreement are separate and apart from the damages incurred as a result of the Debtors' rejection of contracts under the Rejection Order, the Filed Claim expressly stipulates that the Escrow Amount are excluded from the calculation of the Claim Amount.

**G. Efforts to Obtain a Consensual Release of the Escrow Amount**

19. Following the Rejection Order, though the ESA gives the Movant the unilateral right to demand the return of the Escrow Amount, the Movant attempted to obtain a consensual agreement with the Debtor that would facilitate the release of the Escrow Amount without court intervention. As of the date hereof, the parties have been unable to reach a consensual resolution regarding the release of the Escrow Amount.

## Legal Argument

**A. New York Law Governs the Determination of the Parties' Respective Interests in the Escrow Property and Establishes that the Escrow Agreement Created a Valid Escrow.**

    **i. State Law Governs the Determination of the Movant's and the Debtor's Respective Interests in the Escrow Property**

---

[9] The damages asserted by the Movant in its Filed Claim includes damages related to the Debtors' rejection of that certain Long Term Services Agreement, dated December 22, 2023 (the "LTSA"). The LTSA is neither relevant nor applicable to the relief requested herein.

20. Property of the estate includes "all legal and equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, although section 541 defines property of the estate, courts "must look to state law to determine if a property right exists and to stake out its dimensions, with the principal question being whether the substance of the right or interest in question brings it within the scope of estate property under the Bankruptcy [Code]." *TTS, Inc. v. Citibank, N.A. (In re TTS, Inc.)*, 158 B.R. 583, 586 (D. Del. 1993) ("TTS") (citing *In re Nejberger*, 934 F.2d 1300, 1302 (3d Cir. 1991), *Butner v. United States*, 440 U.S. 48, 54-55, 59 L. Ed. 2d 136, 99 S. Ct. 914 (1979), and *In re Roach*, 824 F.2d 1370, 1374 (3d Cir. 1987)).

21. Accordingly, given that the Escrow Agreement is governed by New York law, New York state law determines each of the Movant's and the Debtor's interests in the Escrow Property. *See TTS*, 158 B.R. at 586 (applying New York law to make a similar determination regarding an escrow dispute).

### ii. The Escrow Agreement Created a Valid Escrow Under New York Law

22. Under New York law, a valid escrow transaction exists when there is "(i) an agreement (formal or nonformal) covering the subject matter and delivery of the same, (ii) a third party depositary, (iii) delivery of the subject matter to a third party conditioned upon the performance of some act or the happening of the event, and (iv) relinquishment by the promisor." *DeFlora Lake Dev. Assocs. v. Hyde Park (In re DeFlora Lake Dev. Assocs.)*, 628 B.R. 189, 198 (Bankr. S.D.N.Y. 2021) ("DeFlora"). Even in the absence of a formal or written agreement, an escrow may still be created as long as the second and third conditions referenced above are met. *Id.*; *see In re Odonata Ltd.*, 658 B.R. 62, 71 (Bankr. S.D.N.Y. 2024).

23. The Escrow Agreement in this case unquestionably created a valid escrow under New York law. The Escrow Agreement satisfies all requirements: (i) there is a written agreement covering the Escrow Property, *see supra* ¶ 5; (ii) HSBC serves as the third-party Escrow Agent, *id.*; (iii) Movant delivered the Initial Escrow Amount to HSBC to secure the Debtor's performance under the ESA, *see supra* ¶¶ 5-6; and (iv) the Escrow Agreement clarifies that the Escrow Agent has no beneficial interest in the Escrow Property and serves solely as escrow holder to facilitate the arrangement between the Movant and the Debtor. *See supra* ¶ 7.

**B. Under Applicable New York Law, Movant Retains Legal Title to the Escrow Amount, Whereas the Debtor, and Hence the Bankruptcy Estate after the Commencement of These Cases, Had Only a Contingent Future Interest in the Escrowed Funds that has since been Extinguished Given the Debtor's Rejection of the ESA.**

   i. **Under New York Law, Movant Retains Legal Title to the Escrow Property**

24. Under New York law, a party that deposits property in escrow retains legal title to the property ownership until the escrow conditions are met. *DeFlora*, 628 B.R. at 203-04 (citing *Musso v. N.Y. State Higher Education Srvs Corp. (In re Royal Business School, Inc.)*, 157 B.R. 932, 940 (Bankr. E.D.N.Y. 1993)); *Cohen v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 138 B.R. 687, 710 (Bankr. S.D.N.Y. 1992) ("[U]nder New York law legal title to property placed in escrow remains with the grantor until the occurrence of the condition specified in the escrow agreement." (quoting *Hassett v. Blue Cross and Blue Shield of Greater New York (In re O.P.M. Leasing Servs., Inc.)*, 46 B.R. 661, 667 (Bankr. S.D.N.Y. 1985)).); *see Estate of Harry Reichenbaum*, 1997 NYLJ LEXIS 7182, at 7-8 (Sur. Ct. Nassau County Mar. 5, 1997) (holding that full legal title to escrowed funds remains with the grantor until performance of conditions specified in the escrow agreement, and where conditions were not met, the other party had no right to the funds).

25. Here, the Debtor has no right or other claim to the Escrow Amount. The Debtor's right to receive the Escrow Property was contingent upon achieving Commissioning and satisfying the performance milestones set forth in the Payment Schedule. The Debtor never achieved Commissioning, never satisfied the milestones, and has now rejected the ESA, making performance impossible. The Debtor's contingent interest therefore never vested and cannot vest. Accordingly, the estate has no greater right to the Escrow Property than the Debtor had on the Petition Date, which is to say, no present right at all. The Movant therefore retains legal title to the Escrow Property under New York law and is entitled to their return.

26. Moreover, even if the Debtor's contingent interest could be considered property of the estate as of the Petition Date, that interest has been extinguished by the rejection of the ESA. Rejection constitutes a breach as of the Petition Date, eliminating any possibility that the conditions for release to the Debtor could be satisfied, and such an act cannot rescind rights that the contract previously granted. *Mission Prods. Holdings, Inc. v. Tempnology, LLC*, 139 S.Ct. 1652, 1657-66 (2019) (noting that a debtor's rejection is deemed a breach as of the bankruptcy petition date and that such rejection does not otherwise extinguish contract rights); 11 U.S.C. § 365(g). The estate therefore cannot claim any ongoing interest in funds that were conditioned upon performance of a contract that the estate has chosen to reject.

      ii. **The Debtor, and therefore the Bankruptcy Estate, Only Held at the Start of this Case a Contingent Future Interest in, Not Legal Title to, the Escrow Property**

27. When a contract party is only entitled to funds in an escrow account upon its satisfaction of certain requirements for which the escrowed funds secure performance, that party only has a contingent interest in the funds—not a present right to the funds. *See In re Atl. Gulf Cmtys. Corp.*, 369 B.R. 156, 163 (Bankr. D. Del. 2007) (concluding that the dispositive consideration for whether escrow property ought to be property of the estate under New York law

is whether the debtor has any present right to the property, and finding that if a debtor is only entitled to the escrow property when it fulfilled some condition, then the property would not be part of the estate).

28. New York case law is replete with rulings finding escrowed funds to fall outside the property of the estate where the debtor had no more than a mere contingent future interest in the funds. *See e.g. id.* at 163-65 (collecting cases and concluding that "the property acquired by the estate is no greater than what the [d]ebtor had, namely the right to receive the [e]scrow funds when the water and sewer facilities have been completed.").

29. Here, the conditions for release of the Escrow Property to the Debtor—namely, the Debtor's *full* performance under the ESA—had not been satisfied as of the commencement of these chapter 11 cases. Furthermore, because the Debtor, at no point, had a legal right to the Escrow Amount, it had no legal or even an equitable interest in the Escrow Property. Consequently, only the Debtor's contingent right to receive some or all of the escrowed assets can be considered property of the estate.

30. Moreover, under Section 541 of the Bankruptcy Code, the bankruptcy estate succeeds the debtor only to "legal or equitable interests of the debtor . . . as of the commencement of the case." 11 U.S.C. § 541(a)(1); *Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 748 (3d Cir. 2013) ("It is a given that '[t]he trustee [or debtor-in-possession] can assert no greater rights than the debtor himself had on the date the [bankruptcy] case was commenced.'").

31. Accordingly, the Debtor's bankruptcy estate only held, as of the Petition Date, a contingent future interest in the Escrow Property, which such interest has since been extinguished as a result of the Debtors' rejection of the ESA.

11

### iii. The Movant is Entitled to the Escrow Amount

32. As mentioned above and as otherwise set forth herein, the ESA permits the Movant to make a unilateral demand and receive the Escrow Amount upon, among other events, the Debtor's commission of some material breach, *see supra* at n.3 *and* ESA at §§ 3.2.7(c), 12.2.1(a), and Movant's incurrence of damages as a result of "any default or breach of contract by [Powin]" of the ESA, *see supra* ¶ 8; ESA at § 3.2.7(b).

33. Here, in rejecting the ESA, the Debtor is deemed to have breached the agreement, thereby triggering a termination event, causing Movant damages, *see supra* at n.4, and entitling the Movant to demand and ultimately recover the Escrow Amount.

34. Therefore, the Movant is entitled to unilaterally demand the Escrow Agent return the Escrow Amount to the Movant.

**C. Cause Exists to Lift the Automatic Stay to Permit Movant to Seek Release of the Escrow Amount**

35. The Bankruptcy Code provides that the bankruptcy court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). Section 362(d)(1) does not define "cause," leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case. *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997). "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Manley Toys Ltd.*, No. 16-15374 (JNP), 2020 Bankr. LEXIS 902, at *14 (Bankr. D.N.J. 31 Mar. 2020). "To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in [its] favor.'" *Id.* (internal citations omitted). Courts have found that cause exists where the debtor has been adjudicated to have no right, title, or interest in escrowed funds. *In re 7710 SW 59th Court, LLC*, 2009 Bankr. LEXIS 1515, at *4-6

(Bankr. S.D. Fla. 28 May 2009) (holding that sufficient cause existed to lift the stay upon finding that the escrow property was not part of the estate).

36. In this case, cause exists to lift the automatic stay because the totality of the circumstances demonstrates that the Escrow Property is not property of the estate and the balance of hardships tips significantly in the Movant's favor.

37. First, it is indisputable that the Escrow Property itself was never part of the estate. The Movant had, prior to the Petition Date, and continues to have, legal and equitable title to the Escrow Property as the depositor and the party entitled to unilateral release upon the Debtor's default or breach. *See supra* ¶¶ 5-6, 8. The Debtor held only a contingent future interest—the right to receive the funds upon satisfying the performance conditions under the ESA. *See supra* ¶ 5. Even this contingent interest has been extinguished because the Debtor did not perform, the ESA has been rejected and the Debtor no longer intends to perform. *See supra* ¶ 14. The Debtor's estate therefore has no interest whatsoever in the Escrow Property, meriting a lift of stay result as was the case in *In re 7710 SW 59th Court, LLC*.

38. Second, to the extent the Debtor argues that the Escrow Amount can only be used to satisfy damages owing to the Movant, notwithstanding paragraphs 3.2.7 and 12.2 of the ESA, the Movant has incurred substantial damages totaling an amount not less than $12,152,823.70 as a result of the Debtor's failure to perform and the rejection of the ESA. *See supra* n.4, ¶ 15. At a minimum, the Escrow Amount of $6,763,904.96, *supra* ¶¶ 5-6, represents security that Movant deposited to protect itself against precisely this scenario by encouraging the Debtor's performance. The Movant is entitled to this security under the express terms of the Escrow Agreement and the ESA, *supra* ¶¶ 6, 8.[10] By contrast, the estate has no legitimate interest in retaining property to

---

[10] Though not required under the express terms of the ESA, the Movant will credit the Escrow Amount to reduce amounts owing by the Debtor arising out of its failure to perform.

13

which it has no legal or equitable claim. Allowing the stay to prevent the Movant from accessing its own property under the present facts and circumstances imposes a significant hardship on Movant whilst providing no corresponding benefit to the estate or creditors.

39. Moreover, the Project is located in Scotland and involves critical energy infrastructure. Delays in completing the Project result in continued lost revenue, potential penalties under the Movant's agreements with third parties, and reputational harm. As the Movant has suffered a significant loss due to the Debtors' rejection of the Movant's contracts, it has been forced to replace the Debtor's role in connection with the Project with existing funds and additional third-party financing (including associated interest costs). The Movant therefore needs access to the Escrow Amount to rebalance its accounts, though the result of the Debtor's breach of the ESA is a net negative loss to the Movant.

40. The hardship to the Movant is particularly acute because the Movant is the depositor of the Escrow Amount. The Movant is not seeking to recover the Debtor's property or to obtain a preference over other creditors. The Movant is seeking to recover its own funds, which were deposited into escrow for its protection and which the Movant is contractually entitled to demand upon the Debtor's default.

41. As a result of the foregoing, the Movant respectfully submits that cause exists pursuant to 11 U.S.C. § 362(d)(1) to lift the automatic stay to permit the Movant to retrieve its escrowed funds and take any actions consistent therewith.

### Waiver of Bankruptcy Rule 4001(a)(4) and Local Rule 4001-1

42. Bankruptcy Rule 4001(a)(4) provides that an order granting relief from the automatic stay is stayed for 14 days unless the Court orders otherwise. Fed. R. Bankr. P. 4001(a)(4). To implement the foregoing successfully, the Movant seeks a waiver of the 14-day

stay of an order granting a motion for relief from the automatic stay under Bankruptcy Rule 4001(a)(4).

43. Immediate effectiveness is warranted because the Movant will suffer concrete and ongoing prejudice for each day that it is denied access to its own security. The Movant has incurred damages exceeding $12 million as a result of the Debtor's breach and rejection of the ESA and other agreements. The Movant needs to satisfy replacement costs and mitigate its damages, and the Escrow Amount was deposited by the Movant precisely to protect against this scenario.

44. The relief sought is narrowly tailored and presents no risk of harm to the estates or their creditors. The Escrow Amount is not property of the estate, and the Movant seeks only to recover its own funds held in a segregated Escrow Account. This relief is without prejudice to the allowance or disallowance of the Movant's Filed Claim and does not affect the rights of any party thereto.

45. Further, the Movant respectfully requests a waiver from the requirements of Local Rule 4001-1 as such is inapplicable under the facts and circumstances giving rise to this Motion.

## Waiver of Memorandum of Law

46. Pulse respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which Pulse relies is set forth herein and the Motion does not raise any novel issues of law.

## No Prior Request

47. No prior request for the relief sought in this Motion has been made to this Court or any other court.

**Notice**

48. The Movant will provide notice of this Motion to the following parties or their counsel: (a) the U.S. Trustee for the District of New Jersey; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to the Debtors; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Movant submits that no other or further notice is needed.

**WHEREFORE**, the Movant requests that the Court (i) enter the Proposed Order granting relief from the automatic stay and authorizing actions consistent therewith; and (ii) grant such other and further relief that the Court deems just and proper.

Dated: November 24, 2025
New York, New York

/s/ Sameer M. Alifarag

**EVERSHEDS SUTHERLAND (US) LLP**

Sameer M. Alifarag (NJ No. 353692021)
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Tel: (212) 389-5000
sameeralifarag@eversheds-sutherland.com

David A. Wender (admitted *pro hac vice*)
999 Peachtree Street NE, Suite 2300
Atlanta, Georgia 30309
Tel: (404) 853-8175
Fax: (404) 853-8806
davidwender@eversheds-sutherland.com

*Counsel to Pulse Clean Energy SPV Watt Limited*