**RAISNER ROUPINIAN LLP**
Gail C. Lin, Esquire (Bar No. 036752001)
Jack A. Raisner
René S. Roupinian
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

**LANKENAU & MILLER, LLP**
Johnathan Miller (New Jersey Bar #: 263592019)
Stuart J. Miller (SJM 4276)
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122
Email: stuart@lankmill.com

*Attorneys for Settlement Class Representatives and the Settlement Class*

**THE GARDNER FIRM, PC**
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181
Email: molsen@thegardnerfirm.com

*Attorneys for Settlement Class Representatives and the Settlement Class*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |
| BRIAN PALOMINO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>POWIN, LLC, POWIN ENERGY OPERATING HOLDINGS, LLC, and POWIN ENERGY OPERATING, LLC,<br><br>Defendants. | Adv. Proc. No. 25-01249 (MBK) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].

## DECLARATION OF RENÉ S. ROUPINIAN IN SUPPORT OF PRELIMINARY AND FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS

René S. Roupinian hereby declares the following under penalty of perjury:

1.       I am a partner of Raisner Roupinian LLP, one of the law firms that represent Brian Palomino and Luis Santiago (together, the "Settlement Class Representatives"), on behalf of themselves and the Settlement Class.

2.       This action arises out of the termination of the Settlement Class Representatives and approximately 278 other similarly situated Settlement Class Members who were abruptly separated from their employment as a result of the alleged mass layoffs and/or plant closings ordered and implemented by Debtors beginning on or about June 6, 2025.

3.       On or about June 9, 2025 (the "Petition Date"), the Debtors each commenced a voluntary Bankruptcy Case for relief under chapter 11 of title 11 of the United States Code, §§ 101 et seq., as amended (the "Bankruptcy Code"), which are being jointly administered as Case No. 25-16137 (MBK).

4.       Following the Petition Date, Luis Santiago filed a class proof of claim on June 10, 2025, against Powin, LLC and related debtors, alleging WARN Act violations and asserting a priority claim in the amount of $5,145,000.00 pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. (Claim 1, the "WARN Class POC").  On June 12, 2025, Brian Palomino filed a class adversary proceeding against Powin, LLC and related debtors, also alleging WARN violations and asserting sixty days of WARN damages for each putative class member pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. (Adv. Proc. No. 25-01249, the "WARN Class Adversary," and collectively with the WARN Class POC, the "WARN Claims").

5.       After informal exchanges regarding the underlying facts and applicable law, the Parties determined that further litigation and trial would needlessly result in significant and

2

unnecessary dilution of the assets in the estate. The Settlement Class Representatives and the Debtors reached a settlement through good faith, arms' length negotiations that includes certification of the Settlement Class, and appointment of the Settlement Class Representatives and Class Counsel and allowance of an aggregate 507(a)(4) claim against the Bankruptcy Estates of the Debtors in the total amount of $3,500,000.00, of which $500,000 shall be paid in cash upon the Effective Date. The remaining Allowed WARN Act Claim Amount shall be paid from net recoveries of the Liquidating Trust in accordance with the Liquidating Trust Agreement.

6.     The Parties have agreed and stipulated that a class should be certified in this matter comprised of the Settlement Class Representatives and the similarly situated employees of one or more of Powin Energy Operating, LLC, Powin Energy Operating Holdings, LLC or Powin, LLC identified by Debtors from their books and records, and specified by individual name on the Schedule 1 to the Settlement Agreement (the "Settlement"), who were involuntarily separated from employment on or about June 6, 2025 (each a "Settlement Class Member"), but excluding any such individuals who timely elect to opt out of the Class (the "Settlement Class"). The Parties also agree to the appointment of Brian Palomino and Luis Santiago as the Settlement Class Representatives and appointment of Raisner Roupinian LLP, The Gardner Firm, PC and Lankenau & Miller, LLP as class counsel ("Class Counsel").

7.     As noted above, the Settlement provides that the Settlement Class shall have an allowed Section 507(a)(4) claim of $3,500,000 (the "Allowed WARN Act Claim Amount") against the Bankruptcy Estates of the Debtors, of which $500,000 shall be paid in cash by the Liquidating Trustee or its designee upon the Effective Date to the Qualified Settlement Fund for distribution to the Class Members (the "Initial Distribution"). The $3,000,000 balance shall be paid by the Liquidating Trustee or its designee to the Qualified Settlement Fund for distribution to the Class Members from net recoveries of the Liquidating Trust (the "Remaining Distribution

3

Payments"). The Parties agree that the Initial Distribution and Remaining Distribution Payments shall be inclusive of any and all required payments by the Liquidating Trustee and the Debtors under the Settlement Agreement, including, but not limited to, any employer taxes that might otherwise be due, except for the cost of administering their distribution. For the avoidance of doubt, any costs incurred by the Bankruptcy Estates, the Liquidating Trustee or its designee, in administering the settlement, as set forth in paragraphs 6 and 9 of the Settlement shall not be paid from the Allowed WARN Act Claim Amount.

8.     The Settlement provides that the Settlement Class Members' settlement distributions shall be included under the Settlement Class Member's name and social security number on an IRS Form and any applicable state or local tax form to be distributed by the Liquidating Trustee or its designee.  The Service Payments, Class Counsel's Fees and Class Counsel's Expenses shall be reflected on IRS Form 1099s.  By accepting his or her portion of the settlement, each Settlement Class Member agrees that he or she will be solely responsible for any and all tax liabilities stemming from the payment of his or her claim under the Settlement Agreement. Class Counsel shall determine the timing of distributions to the Settlement Class Members in consultation with the Liquidating Trustee or its designee.

9.     The Settlement provides that, except for the rights arising out of, provided for, or reserved in this Settlement Agreement, upon the final approval of this Settlement Agreement, the Settlement Class Members, for and on behalf of themselves, and their respective predecessors, successors, assigns, affiliates and subsidiaries (collectively, the "Releasing Parties"), do hereby fully and forever release and discharge (a) the Debtors, their estates, their current and former directors, parents, subsidiaries, partners, members, lenders, accountants, attorneys, representatives, the  Liquidating Trust, the Liquidating Trustee, and all other agents, respective predecessors, successors and assigns (collectively, the "Released Parties"), of and from any and

all claims, obligations, demands, rights, debts, liabilities, liens, actions and causes of action, costs,

expenses, attorneys' fees and damages of whatever kind or nature, character, and description,

whether in law or in equity, whether sounding in tort, contract, federal, state and/or local law,

statute, ordinance, regulation, common law, or other source of law, whether known or unknown,

and whether anticipated or unanticipated, suspected or disclosed, which the Releasing Parties may

now have against the Released Parties, which relate to or are based on the WARN Act, or any

federal, state or local law or regulation applying to plant closings (collectively, the "Released

Claims").  The Parties agree, however, that the following claims and/or rights do not fall within

the scope of the Released Claims and shall not be affected by this Settlement Agreement: (i) any

claim for continuation of health or medical coverage, at the Class Member's expense, or at the

expense of a beneficiary or dependent of a Class Member, to the extent required by the relevant

provisions of the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"); (ii) any pre-

petition, non-priority claims for expense reimbursement due individual Class Members; (iii) rights,

if any unrelated to the individual Class Members' WARN Act claims, arising under the Debtors'

401(k) retirement plans; and (iv) any claim of individual Class Members which the law clearly

states may not be released by settlement. The Released Parties waive the right to assert any

avoidance claims against Class Members arising under chapter 5 of the Bankruptcy Code or

applicable state law to the extent such claims relate to transfers of less than $15,000.

10.    The Settlement provides that, upon the final approval of this Settlement Agreement,

the Settlement Class Members agree that the release of the Settlement Class Members' Released

Claims shall become effective without further notice or Order of the Court and any claims that

have been scheduled on behalf of, or filed by, the Settlement Class Representatives or the

Settlement Class Members in the Chapter 11 Cases, on account of any Released Claims are

disallowed in their entirety and the Debtors' schedules or claims register may be revised accordingly, as appropriate, without further order of the Court.

11.     The Settlement provides that the Settlement Class Representatives shall, subject to final Court approval of the Settlement Agreement, receive an initial combined payment of fifteen thousand dollars ($15,000) from the Initial Distribution for their service on behalf of the Settlement Class Members ("Service Payments") to be allocated as follows: $9,000 to Brian Palomino and $6,000 to Luis Santiago.  The Class Representatives shall, subject to final approval, receive a supplemental combined payment of Ten Thousand Dollars from the Remaining Distribution Payments to be allocated as follows: $6,000 to Brian Palomino and $4,000 to Luis Santiago. The Service Payments will be made in addition to the Settlement Class Representatives' pro rata share of the settlement.

12.     The Settlement provides that Class Counsel shall, subject to final Court approval of the Settlement Agreement, receive payment in the amount of one-third (1/3) of any distributions of the Allowed WARN Act Claim Amount ("Class Counsel's Fees"), plus litigation costs and expenses related to the WARN Claims ("Class Counsel's Expenses"). Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

13.     As set forth in the Joint Motion, and as further supported by this declaration, and legal arguments set forth in the Joint Motion, I submit that the proposed Class meets the requirements of Rule 7023 of the Federal Rules of Bankruptcy and Rule 23 of the Federal Rules of Civil Procedure.

14.     I submit that the proposed class of two hundred eighty Settlement Class Members meets the numerosity requirement and joinder of all Class Members is impractical.

6

15.     The commonality requirement requires existence of at least one question of law or fact common to the Class.  Fed. R. Civ. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low, (*Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)), and does not require "an identity of claims or facts among class members," *Behrend*, 245 F.R.D. at 202.  Further, the existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory. Here, fundamental issues of law and fact regarding notice of termination, applicability of several defenses, measure of damages and priority of claims and attorneys' fees are common to all Class Members.  For these reasons, I submit that the commonality factor of Fed. R. Civ. P. 23(a)(2) is met.

16.     Typicality requires that the "named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (*quoting Baby Neal*, 43 F.3d at 55); *see* Fed. R. Civ. P. 23(a)(3).  "Typicality requires a strong similarity of legal theories to ensure that the class representatives' pursuit of their own goals will work to benefit the entire class." *Powers*, 245 F.R.D. at 236.  "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-96 (*quoting Baby Neal*, 43 F.3d at 55).  The Settlement Class Representatives do not allege that they were singled out for disparate treatment in the manner in which they were terminated.  Instead, they allege they suffered harm as a result of the same conduct that allegedly injured the absentee Class Members – they were allegedly terminated on or about June 6, 2025, without receiving notice that complied with the WARN Act.  Accordingly, the Bankruptcy Court should find that the typicality requirement is met.

17.     In my experience, in having been appointed as class counsel in more than one hundred fifty (150) WARN class actions, commonality has been found for class certification where class members had different degrees of injury or even where defenses might exist only as to particular individuals.

18.     In my experience, class action suits under the WARN Act almost always involve a class of plaintiffs who held different positions, were paid different amounts, and frequently were terminated on different dates.

19.     With respect to adequacy, class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Gates*, 248 F.R.D. at 441. The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185. I submit that the requirements of Fed. R. Civ. P. 23(a)(4) are met here based on the following. I submit that the Settlement Class Representatives have no conflict of interest with the other Settlement Class Members and have and will diligently pursue the WARN claims and represent the interests of the Settlement Class. I submit that the Settlement Class Representatives are suitable to serve as the representatives for the Class. I submit that the Settlement Class Representatives were terminated during the relevant period and without sixty days advance written notice of termination. I submit that the Settlement Class Representatives had no involvement in any decision to terminate the employees, nor did they have any involvement in the decision regarding the provision of WARN notices to the employees. The Settlement Class Representatives have engaged counsel who have extensive experience in WARN class action litigation, having collectively been appointed class counsel in hundreds of

WARN Act cases.  The Settlement Class Representatives' counsel have diligently investigated the facts relating to the terminations in this matter. I submit that the Court should find that the Settlement Class Representatives and Class Counsel adequately represent the interests of the Settlement Class Members.

20.      Further, I submit that the Settlement Class Representatives performed important services for the benefit of the Class by commencing the WARN Claims and willingly assisting counsel throughout the litigation. The Settlement Class Representatives stepped forward to bring the WARN Claims in their own names on behalf of their former co-workers.  No other employees have asserted claims for the Settlement Class. The Settlement Class Representatives were willing to be deposed and testify if there were hearings or a trial. The Settlement Class Representatives agreed to do so at a point when their futures were uncertain and employment prospects potentially dimmed by suing their former employer. Ultimately, without the efforts of the Settlement Class Representatives there would not have been any recovery for the Settlement Class. As the Court is likely aware, this case is searchable on the Internet and may become known to prospective employers evaluating the Settlement Class Representatives for employment. The Settlement Class Representatives expended time and effort to assist with this matter. After filing his adversary complaint, Plaintiff was appointed to the Official Committee of Unsecured Creditors in the Debtors' bankruptcy cases and he participated in all key meetings. (Bankr. No. 25-16137-MBK, D.I. 174).  I submit that the amount of the Service Payments agreed to here are also consistent and on scale with amounts awarded in WARN class actions in bankruptcy courts here in this Circuit and across the country.  See, *D'Amico, et al. v. Tweeter, OPCO, LLC and Schultze Asset Management, LLC,* Adv. Pro. No. 08-51800 (Del. Bankr. 2008) (one class representative received $15,000, the other two received $10,000 each. Service payments were approximately 3% of common fund); *Kettell v. Bill Heard Enterprises, Inc.*, Adv. Pro. No. 08-80153 (N.D. Ala.

Bankr. 2008) (court approved service payments for two class representatives in the amount of $10,000 each. Service payments were approximately 1% of common fund); *Kohlstadt, et al, v. Solyndra*, Adv. Pro. No. 11-53155 (Del. Bankr. 2011)(class representatives received $7500 and $12,500, respectively, as service payments, which were approximately .6% of common fund); *Capizzi, et al., v. AWTR Liquidation Inc., f/k/a Rhythm and Hues, Inc.*, Adv. Pro. No. 2:13-ap-01209-NB (C.D. Cal. Bankr. 2013)(class representatives received $10,000 each as service payments, which were approximately 2% of the common fund); *Daveler v. Worley & Obetz, Inc., et al.*, Case No. 18-00132-MDC (Bank. E.D. Pa.) ($20,000 to each of two class representatives in $2.2 million settlement); *Gair, et al. v. Great Star Tools USA, Inc.*, Case No. 4:21-CV-00976-MWB (M.D.Pa.) ($25,000 combined service award to two class representatives in $1 million settlement).

21.     I submit that the proposed Settlement Class meets the requirements of Fed. R. Civ. P. 23(b)(3).  I submit that common questions of law and fact predominate over the individual issues.  Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09.  The proper predominance inquiry "trains on the legal and factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement."  *Amchem*, 521 U.S. at 623.  "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims or defenses of the classes."  *Community Ban*k, 418 F.3d at 309.

22.     I submit that, just as typicality exists, predominance also exists.  All of the claims arise from alleged violations of the WARN Act resulting from the mass layoffs or plant closings that occurred on or about June 6, 2025.  Accordingly, the Court should find that the predominance requirement is met.

23.    I submit that the "superiority" element of Fed. R. Civ. P. 23(b) is met.  I submit that

the common questions of law and fact that affect all members of the proposed Settlement Class

predominate over any questions affecting only individual members.  I submit that a class action is

superior to other available methods for the fair and efficient adjudication of the controversy for the

following reasons: no proposed Settlement Class member has an interest in individually

controlling the prosecution of a separate action under the WARN Act; no other Settlement Class

Member has commenced litigation asserting the WARN Claims of the proposed Settlement Class

Members other than the Settlement Class Representatives; concentrating all potential litigation

concerning the claims under the WARN Act of the proposed Settlement Class Members in this

Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the

Parties, and is the most efficient means of resolving the WARN Act rights of all proposed

Settlement Class Members and administration of this action as a class action will not be

complicated or difficult.

24.    I, along with the following attorneys, have had and will have responsibility for this

matter: Jack A. Raisner (Raisner Roupinian LLP), Mary Olsen (The Gardner Firm, PC) and Stuart

Miller and Johnathan Miller (Lankenau & Miller, LLP).

25.    I am a founding partner of Raisner Roupinian LLP. I have actively litigated cases

on behalf of employees under the WARN Act for almost two decades. Prior to forming Raisner

Roupinian LLP, I spent over a decade as the co-chair of the WARN practice group at an employee

rights firm in New York City. Since 2002, I have devoted 100% of my practice to the litigation of

WARN cases.  I have served as counsel in more than 150 WARN class actions, representing tens

of thousands of employees.

26.    In *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 197 L.Ed.2d 398 (2017), a

WARN case Jack Riasner and I litigated to the U.S. Supreme Court, our WARN team won a

notable victory in a decision that restored high priority under the Bankruptcy Code for employee wages. We appealed a bankruptcy court order affirmed by the U.S. Court of Appeals for the Third Circuit approving a structured dismissal distribution that skipped over payment of the wage priority claim held by the class of WARN Act creditors. In a 6-2 decision, the Court sided with the WARN Act class and reversed the lower courts, holding that structured dismissals cannot be approved when they violate the priority rules of the Bankruptcy Code absent the consent of affected creditors.  Further protecting the priority rule, after a two-day trial in *FAH Liquidating Corp*., we won priority treatment for WARN claims that accrued more than 180 days prior to the petition filing – under the rarely-litigated "cessation of business" provision of the Bankruptcy Code. *In re FAH Liquidating Corp.*, 13-13087-KG, 2019 WL 8269114 (Bankr. D. Del. Dec. 27, 2019).

27.    We have testified at the request of lawmakers on Capitol Hill and in state legislatures to strengthen the notice law for employees facing mass layoffs and shutdowns. In fact, our attorneys helped establish the first state law providing notice and mandatory severance for workers facing mass firings and layoffs in New Jersey.

28.    In 2019, Jack Raisner and I attended hearings before New Jersey state legislative committees on the proposed Senate Bill 3170, which arose out of the 2018 collapse of Toys 'R Us. In that bankruptcy, we represented, and settled, the severance claims of the 33,000 terminated employees.  The New Jersey "Toys R' Us" law expands the protections of the New Jersey WARN Act workers, by increasing the notice period from 60 to 90 days, increasing covered sites, and requiring an additional amount of severance-type pay for lack of notice. Jack Raisner helped draft and testified twice before the Legislature in favor of the measure, which has received national attention.

29.     Our WARN practice has helped give WARN Act claims its foothold in the bankruptcy process. We have obtained decisions approving the use of adversary proceedings in many jurisdictions, including Delaware and New York bankruptcy courts. *See In re Dewey & LeBoeuf LLP*, 487 B.R. 169 (Bankr. S.D.N.Y. 2013); *In re TSC Glob., LLC,* No. 12-10505-KG, 2013 WL 6502168 (Bankr. D. Del. June 26, 2013) (Chapter 7).

30.     In addition, Mr. Raisner and I obtained a reversal from the U.S. Court of Appeals for the Second Circuit in a Chapter 7 WARN Act Case.  *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221 (2d Cir. 2013) (vacating summary judgment awarded to single employer parent).

31. I have written numerous articles and lectured on WARN class action litigation. I have spoken on federal and state WARN rights and the litigation of WARN class claims before the American Bar Association, the New York State Bar Association, the National Employment Lawyers Association, the Midwest Regional Bankruptcy Seminar and other organizations, including presenting at the National Conference of Bankruptcy Judges on *Jevic – The Insider Story and the Impact on Future Chapter 11s*.  The following is a partial list of my WARN presentations and publications:

**Presentations:**

2020
Speaker: "What Every Employment Attorney Needs to Know About Bankruptcy, But is Afraid to Ask", National Employment Lawyers Association New York Fall Conference

2025
Co-Presenter – WARN Act Basics for New Employment Attorneys: Guiding Clients Through the Mass Layoff Process, Webinar, Strafford/BARBRI

2022
Speaker: "Reevaluating and Revisiting Class Claims," American Bankruptcy Institute Annual Spring Meeting, Washington, D.C.

2020
Speaker: "What Every Employment Attorney Needs to Know About Bankruptcy, But is Afraid to Ask", National Employment Lawyers Association New York Fall Conference

2019

Speaker: – Class Action and Bankruptcy Convergence; American Bankruptcy Institute Southeast Workshop

2017
Speaker: *Jevic* – The Insider Story and the Impact on Future Chapter 11s; National Conference of Bankruptcy Judges

Speaker: How will *Jevic* Change Chapter 11 Practice? ABI's Midwest Regional Bankruptcy Seminar

2016
Speaker: "WARN Act Issues in Bankruptcy," 36th Annual ABI Midwestern Bankruptcy Institute

Speaker: "WARN Act Update: What Labor and Employment Lawyers Need to Know," 53rd Annual Midwest Labor & Employment Law Seminar

2014
Speaker: "Seeking Your Recovery: Pre-Judgment Attachment and Bankruptcy", National Employment Lawyers Association New York Affiliate

2010
Speaker: "The Financial Crisis: Impact on WARN Act Cases," ABA Federal Labor Standards Legislation Committee Midwinter Meeting

Speaker: "The Financial Crisis: Impact on WARN Act Cases," New York County Lawyers' Association

Speaker: "Economy in Peril (Part 1): The Legal LandsCal.pe for Addressing Reductions in Force," American Bar Association teleconference

Speaker: "WARN Act Specialist Offers Advice About Layoffs Amidst Tough Economic Times," Employment & Labor LAWCAL.ST

Speaker: "Layoff Law," Fairfield County Bar Association

Speaker: "New Causes of Action: WARN Act and ERISA," National Employment Lawyers Association New York Affiliate

Speaker: "Reductions in Force in Both a Union and Non-Union Setting," New York State Bar Association

Speaker: "Attacking Mass Layoffs," National Employment Lawyers Association National Convention

Speaker: "Analyzing Employee Issues in Chapter 11," Midwest Regional Bankruptcy Seminar

Speaker: "The Last Resort: What Labor & Employment Lawyers Need to Know About Bankruptcy," American Bar Association

<u>2008</u>
Speaker: "Grasping the WARN Act through an interactive discussion addressing all the ins and outs," Tonkins Employment Law: Termination

**Publications:**

2010 Co-Author with Jack A. Raisner and Michael Scimone: "*Fair Warning for Workers*," Trial Magazine, August 2010

2008 Author: "*A Practitioner's Overview of the Deficiencies of the Worker Adjustment and Retraining Notification Act Twenty Years Following its Enactment,*" The New York Employee Advocate, Volume 14, No. 5, June 2008

32.     I have been quoted on WARN law rights and the firm's cases have been cited in such publications as the Wall Street Journal, the New York Times, American Lawyer, Associated Press, USA Today, Forbes, Newsday, Times-Gazette, The Herald News, and others.

33.     In 2008, together with Jack A. Raisner and our client, Joe Aguiar, I submitted testimony to the Senate Health Education Labor and Pensions (HELP) Committee of the U.S. Senate upon invitation from the Committee's Chair, Senator Edward Kennedy on the 20th Anniversary of the WARN Act.  My testimony highlighted from a litigator's perspective the deficiencies in the Act and its need for reform.

34.     I received my BA from the University of Michigan, and my JD from Michigan State University College of Law. Prior to 2002, I was a partner in a Detroit law firm where I litigated individual employment claims and class actions.  I am a member of the bars of New York and Michigan.  I am also admitted to practice in six federal district courts and the U.S. Supreme Court.

35.    I submit that all of the above-referenced counsel are well-suited to serve as Class Counsel, they have no conflict of interest, and, as shown herein, have diligently represented the Settlement Class Representatives and the proposed Settlement Class and should be appointed Class Counsel.

36.    I submit that the Class Notice attached to the Settlement will fairly apprise the Settlement Class members of the nature of the dispute, the terms of the Settlement, of their right to opt-out of the Class, and of the effect of their decision not to opt-out of the class, namely, that they will be bound by terms of the proposed Settlement, including the releases of claims therein. The Class Notice also includes my firm's phone number so that Class Members can call me, should they have any questions about the Settlement.

37.    I submit that the combined total Service Payments of $25,000 to the Settlement Class Representatives, amounting to less than 1% of the Allowed WARN Act Claim Amount, is appropriate and justified as part of the overall Settlement in light of the value of the Settlement Class Representatives' services to the Settlement Class and burdens and risks taken on behalf of the Class. In view of the foregoing, the Service Payments should be approved.

38.    The Settlement provides that Class Counsel shall receive, subject to Court approval, one-third (1/3) of any distributions of the Allowed WARN Act Claim Amount. Class Counsel took this case on a contingency basis. Due also to the contingent nature of the fee arrangement, Class Counsel had to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel litigates cases large and small in which they ultimately come away empty-handed.

39.    While a tremendous amount of time and energy is associated with the lodestar method, the percentage fee method incentivizes Class Counsel to cultivate efficiencies by

simplifying the litigation process. This maximizes creditor recoveries by avoiding wasteful litigation that dissipates estate assets.

40.    In more than 150 WARN actions, Class Counsel has never been denied an application for attorneys' fees of one-third of the common fund. The following is a partial list of WARN Act cases, in bankruptcy and district courts, in which I, as Class Counsel, has been awarded attorney's fees of approximately one-third of the common fund:

- *Marvin, et al. v. Katerra Inc.*, Adv. No. 21-03440 (CML) (Bankr. S.D. Tex.)(preliminary approval of $3.8 million settlement granted);
- *Stringham v. GDC Technics, LLC*, Adv. Proc. No. 21-05035-CAG (Bankr. W.D.Tex.) ($1.375 million settlement);
- *Updike v. Kitty Hawk Cargo, Inc*., Adv. Proc. No. 07-04179-RFN (Bankr. N.D. Tex.) ($1.4 million settlement);
- *In re TWL,* Adv. Proc. No. 08-4184 (BTR) (Bankr. E.D.Tex.) ($654,000 million settlement);
- *Ien v. Transcare, Corp., et al..* Adv. Proc. No. 16−01033−DSJ (Bankr. S.D.N.Y.) ($19 million settlement);
- *Mochnal v. EOS Airlines, Inc.,* Adv. Proc. No. 08-08279-ASH (Bankr. S.D.N.Y.) ($1.7 million settlement);
- *Iannacone v. Fortunoff Holdings Inc.*, Adv. Proc. No. 09-22581-ASH (Bankr. S.D.N.Y.) ($1.3 million settlement);
- *Curry v. Caritas Health Care Inc.,* Adv. Proc. No. 09-40901-CEC (Bankr. S.D.N.Y.) ($2.65 million settlement);
- *Guippone v. BH S & B Holdings, LLC*, Case No. 09-01029-CM (S.D.N.Y.) ($900,000 settlement);
- *Schuman v. The Connaught Group, Ltd*., Adv. Proc. No. 12-01051-SMB (Bankr. S.D.N.Y.) ($675,000 settlement);
- *Hiergersell v. Level Solar*, Adv. Proc. No. 18-1012-MKV (Bankr. S.D.N.Y.) ($400,000 settlement);
- *Matzen v. Corwood Laboratories, Inc.*, Adv. Proc. No. 10-08003-AST (Bankr. E.D.N.Y.) ($500,000 settlement);
- *Garrett v. SCVRH LLC*, Case No. 4:22-cv-00358-RCC (Dist. Ariz.) ($800,000 settlement);
- *Nunn, et al. v. Bitwise Corp., et al.*, Adv. Proc. No. 23-50425 (MFW) (Bankr. D. Del.) ($6 million settlement plus additional allowed claim);
- *Binford v. First Magnus Capital, Inc.,* Adv. Proc. No. 08 -01494 – GBN (Bankr. D. Ariz.) (awarding attorneys' fees of one-third in $2.6 million settlement and $2.9 million contingent proceeds);
- *Phillips v. Munchery, Inc.*, Case No. 19-cv-00469-JSC (N.D. Cal.) ($400,000 settlement);
- *Wojciechowski v. ClearEdge Power, Inc.,* Adv. Proc. No. 14-04152-CN (Bankr.

N.D.Cal.) ($1.3 million WARN settlement);

- *Capizzi. v. AWTR Liquidation, Inc. f/k/a Rhythm and Hues, Inc.*, Adv. Proc. No. 13-01463-NB (Bankr. C.D. Cal.) ($1 million settlement);
- *Stone v. Pennysavers USA Publishing, LLC*, Case No. 15-50372-CTG (Bankr. D. Del.) ($1.25 million settlement);
- *Martz-Gomez v. Anna's Linens, Inc.,* Case No. 8:15-bk-13008-TA (Bankr. C.D. Cal.) ($1.2 million settlement);
- *Hansen v. PGX Holdings, Inc., et al.*, Case No. 23-50396-CTG (Bankr. D. Del.) ($1.2 million settlement);
- *Daveler v. Worley & Obetz, Inc., et al.*, Case No. 18-00132-MDC (Bankr. E.D. Pa.) ($2.2 million settlement);
- *Boyko v. Virgin Orbit, LLC*, Case No. 23-50324-KBO (Bankr. D. Del.) ($1.455 million settlement);
- *Thomay v. Klausner Lumber One, LLC,* Case No. 20-50602-KBO (Bankr. D. Del.) ($1.4 million settlement);
- *Karaniewsky v. US Investigative Services LLC*, Case No. 15-5020-KBO Bankr. D. Del.)($10.5 million settlement);
- *Miranda v. DC Solar Solutions, Inc., et al.,* Adv. Proc. No. 19-5002-GS (Bankr. D. Nev.) ($400,000 settlement);
- *Turner v. Klausner Lumber Two, LLC,* Case No. 20-115189-KBO (Bankr. D. Del.) ($540,000 million settlement);
- *Folk v. Monaco Coach Corporation,* Adv. Proc. No. 09-50402-KJC (Bankr. D. Del.) ($10 million settlement);
- *Austen v. Archway Cookies*, Adv. Proc. No. 08-51530-CSS (Bankr. D. Del.) ($4 million settlement);
- *Miller v. Columbus Steel Casting Co.*, Adv. Proc. No. 16-50997-CSS (Bankr. D. Del.) ($2.1 million settlement);
- *Primavera v. Crowne Architectural Corp.*, Adv. Proc. No. 17-1272-SML (Bankr. D.N.J.) ($900,000 settlement);
- *Bergeron v. DGI Services, LLC*, No. 11-2712-JNP (Bankr. D.N.J.) ($1.1 million settlement);
- *Etzelberger v. FAH Holdings, Inc.,* Case No. 13-13087-BLS (Bankr. D. Del.) ($1.8 million settlement);
- *Wilrich v. Charming Charlie Holdings, Inc.*, Adv. Pro. No. 19-50276-MFW (Bankr. D. Del.) (awarding attorneys' fees of one third of settlement of percentage of gross cash recoveries in Ch. 11 bankruptcy);
- *Jones v. Alliance Bancorp*, Adv. Proc. No. 07-51799-CSS (Bankr. D. Del.) ($1 million settlement);
- *Jackson v. Qimonda*, Adv. Proc. No. 09-50192-MFW (Bankr. D. Del.) ($10 million settlement);
- *Rasheed v. American Home Mortgage Corp.,* Adv. Proc. No. 07-51688-CSS (Bankr. D. Del.)($6.5 million settlement);
- *Reynolds v. Corinthian Colleges, Inc.,* Case No. 15-50309-JTD (Bankr. D. Del.) ($900,000 settlement);
- *Aguiar v. Quaker Fabric Corporation,* Adv. Proc. No. 07-51716-KG (Bankr. D. Del.) ($1 million settlement);

- *Piron v. General Dynamics Information Technology, Inc.*, No. 19-709-REP (E.D. Va.)($2.988 million settlement);
- *Federman v. ITT Educational Corp.*, Adv. Proc. No. 16-07207-JMC-7A (Bankr. S.D. Ind.) ($10 million settlement);
- *Callahan v. Taylor Bean & Whitaker Mortgage Corp.,* Adv. Proc. No.09-00439-JAF (Bankr. M.D. Fla.)($15 million settlement);
- *Bridges v. Continental AFA Dispensing Co.,* Adv. Proc. No. 08-45921-KAS (Bankr. E.D. Mo.) ($1.5 million settlement).

41.     In view of the foregoing, I submit that Class Counsel's fee of one-third is reasonable and should be approved.

42.     The parties seek approval of service of the Class Notice by first class mail sent to the address of each Settlement Class Member as shown in the records of the Debtors (or to such other address as the Settlement Class Members may indicate to Class Counsel).  As discussed in the Joint Motion, I submit that service in this manner, and according to the proposed schedule, is proper.

43.     In view of the foregoing and the Joint Motion, and the Settlement and exhibits attached thereto, I ask the Bankruptcy Court to (i) grant the Joint Motion in its entirety; (ii) preliminarily approve the Settlement (See Exhibit A to the Settlement); (iii) approve the form and manner of the Class Notice (See Exhibit B to the Settlement); (iv) schedule a Fairness Hearing; (v) approve the Settlement on a final basis (See Exhibit C to the Settlement); and (vi) grant such other relief as the Bankruptcy Court deems necessary and appropriate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on November 24, 2025.

/s/  *René S. Roupinian*
René S. Roupinian