**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
         sarah.schrag@dentons.com

*Counsel for Debtors and*
*Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
         eblander@teamtogut.com

*Counsel for Debtors and*
*Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: <br><br> Powin, LLC, *et al.*,[1] <br><br><div align="center">Debtors.</div> | Chapter 11 <br><br> Case No. 25-16137 (MBK) <br><br> (Jointly Administered) |

## NOTICE OF FILING OF PROPOSED FORM OF CONFIRMATION ORDER

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].

**PLEASE TAKE NOTICE** that Powin, LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases hereby file the proposed form of *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors*, which is attached hereto as **Exhibit A**.

Dated: November 24, 2025

**DENTONS US LLP**

*/s/ Tania M. Moyron*
Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email: tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email: john.beck@dentons.com
         sarah.schrag@dentons.com
- and -

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald (admitted)
550 Broad Street, Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email: frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email: altogut@teamtogut.com
         eblander@teamtogut.com

*Counsel to Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Confirmation Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
(I) APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS AND (II)
CONFIRMING THE JOINT COMBINED DISCLOSURE STATEMENT AND
CHAPTER 11 PLAN OF LIQUIDATION OF POWIN, LLC AND AFFILIATES
THEREOF AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Upon consideration of the final approval of the disclosures and plan of liquidation

contained in the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of*

*Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket

No. 942] attached hereto as **Exhibit A** (together with all exhibits thereto, and as may be amended,

modified, or supplemented[2], the "Plan") jointly proposed by the above-captioned debtors and

debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured

Creditors (the "Committee" and together with the Debtors, the "Proponents"); the disclosures

contained in the Plan having been approved on an interim basis pursuant to that certain *Order*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc., [9926]; (xi) Powin Energy Ontario Storage II LP, [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and Powin EKS SellCo, LLC [9110]. Powin, LLC has formally changed its name to BESS RemainCo, LLC.

[2] The Plan Supplement is filed at Docket No. 1036. The Amended Plan Supplement is filed at Docket No. 1038 and the Amended Exhibits to the Amended Plan Supplement are filed at Docket No. 1055 (collectively, the "Plan Supplement").

*Approving (I) The Adequacy of the Disclosure Statement on Conditional Basis, (II) The Solicitation and Notice Procedures, (III) The Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 939] (the "<u>Disclosure Statement Order</u>") pursuant to the relief sought in the *Joint Motion of the Plan Proponents for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement on Conditional Basis, (II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 915]; and upon the *Declaration of Darlene S. Calderon with Respect to the Tabulation of Votes on the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1095] (the "<u>Voting and Procedures Confirmation Declaration</u>"); and upon the *Declaration of Gerard Uzzi in Support of Confirmation of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1102] (the "<u>Uzzi Confirmation Declaration</u>") and upon the *Memorandum of Law in Support of Confirmation of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1097] (the "<u>Confirmation Memorandum</u>"); and upon the *United States Trustee's Objection to the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1070] (the "<u>UST Objection</u>"), the *Objection of CS Energy, LLC to Confirmation of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1072] (the "<u>CS Objection</u>"), the *Objection of DTE Electric Company to the Joint Combined Disclosure Statement and Chapter 11*

*Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1073] (the "DTE Objection"), the *Limited Objection of Longroad Development Company, LLC and Leeward Renewable Energy, LLC to Confirmation of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation Arising From Inclusion of Unsupported ROC Invoice Receivables* [Docket No. 1075] (the "Longroad Objection"), the *Limited Objection of FlexGen Power Systems, LLC to Chapter 11 Plan of Powin, LLC and its Affiliates* [Docket No. 942] (the "FlexGen Objection"), the *Reservation of Rights of Trilantic Capital Management L.P. and Greenbelt Capital Management, L.P. to the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1078] (the "Trilantic/Greenbelt Objection"), and the *Limited Objection of Applied Surety Underwriters, Siriuspoint America Insurance Company and Pennsylvania Insurance Company to Joint Combined Disclosure Statemetn* [sic] *and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1082] (the "Surety Objection"), each having been resolved and/or overruled by this Court pursuant to this Confirmation Order; and a hearing to consider Confirmation having been commenced on November 25, 2025 and concluded (the "Confirmation Hearing"); and upon the evidence adduced and proffered and the arguments of counsel made at the Confirmation Hearing; and this Court having reviewed all documents in connection with Confirmation and having heard all parties desiring to be heard; and upon the record of the Chapter 11 Cases; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; this Court hereby makes the following:

### Findings of Fact and Conclusions of Law

A.      **Findings of Fact and Conclusions of Law.** The findings and conclusions set forth herein and in the Disclosure Statement Order, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings pursuant to Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      **Capitalized Terms.** Capitalized terms used herein, but not defined herein, shall have the respective meanings attributed to such terms in the Plan.

C.      **Jurisdiction and Venue.** This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984 and amended on September 18, 2012 (Simandle, C.J.). The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Approval of the Disclosure Statement and confirmation of the Plan constitute a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) with the Bankruptcy Court having jurisdiction to enter a final order with respect thereto consistent with Article III of the United States Constitution.

D.      **Chapter 11 Petitions.** On June 9, 2025 (the "Petition Date"),[3] each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  No party has requested the appointment of a trustee or examiner in the Chapter 11 Cases.  On June 27, 2025, the Committee was appointed.  [Docket No. 174].

E.      **Judicial Notice.** This Court takes judicial notice of the docket in the Chapter 11 Cases, including the dockets of any adversary proceedings initiated in the cases, maintained by the Clerk of this Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the Chapter 11 Cases, including, without limitation, the Confirmation Hearing.

F.      **Disclosures.**  The disclosures within the Plan provides holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with Section 1125 of the Bankruptcy Code.

G.      **Plan Supplement.** Prior to the Confirmation Hearing, the Debtors filed the Plan Supplement, as has been amended from time to time including in connection with any amendments made at the Confirmation Hearing. The Plan Supplement complies with the terms of the Plan, and the filing and notice of the Plan Supplement was appropriate and complied with the requirements of the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be

---

[3] Powin Project LLC filed for voluntary relief under Chapter 11 of the Bankruptcy Code on June 9, 2025.  Powin Canada B.C. Ltd., Powin Energy Ontario Storage II LP, and Powin Energy Storage 2, Inc., filed on June 22, 2025. Powin EKS SellCo, LLC filed on October 10, 2025, and the remaining Debtors filed on June 10, 2025.

required. The Debtors are authorized to modify the Plan Supplement documents following entry of this Confirmation Order in a manner consistent with this Confirmation Order and/or the Plan.

H.   **Mailing of Solicitation and Confirmation Materials.** As is evidenced by the Voting and Procedures Confirmation Declaration, the transmittal and service of the Plan, the Ballots and the Confirmation Hearing Notices were adequate and sufficient under the circumstances, and all parties required to be given notice of the Plan and the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan and final approval of the disclosures contained within the Plan) have been given due, proper, timely, and adequate notice thereof in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice of the Plan and the Confirmation Hearing is required.

I.   **Voting.** The procedures by which the Ballots for acceptance or rejection of the Plan and Release Opt-Out Forms were distributed and tabulated under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law and the Disclosure Statement Order.

J.   **Bankruptcy Rule 3016(a).** In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Proponents as the plan proponents.

K.   **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L.   **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In addition to

Administrative Claims, Priority Tax Claims, which need not be classified, the Plan designates seven (7) Classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

M.     **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Section 8 of the Plan specifies that Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are Unimpaired under the Plan. Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.

N.     **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Section 8 of the Plan designates Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims) and Class 7 (Interests) as Impaired and specifies the treatment of Claims and Interests in such Classes. Thus, section 1123(a)(3) of the Bankruptcy Code is satisfied.

O.     **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

P.     **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).** The Plan and the Liquidating Trust Agreement and the Direct Claims Trust Agreement provide adequate and proper means for the Plan's implementation. Thus, section 1123(a)(5) of the Bankruptcy Code is satisfied.

Q.     **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).** The Plan does not provide for the issuance of any securities, including non-voting securities, and the Debtors are being dissolved as soon as practicable after the Effective Date. Therefore, section 1123(a)(6) of the Bankruptcy Code is satisfied.

R.     **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).** Section 13.3 of the Plan provides that the Liquidating Trust and the Direct Claims Trust shall be governed by the Liquidating Trustee in consultation with the Oversight Committee. On the Effective Date, the Debtors have appointed Phoenix Management as the Liquidating Trustee, to oversee the Liquidating Trust, the Direct Claims Trust, and the wind-down of the Debtors' estates.  In the event the Liquidating Trustee is removed by the Bankruptcy Court, resigns or is replaced pursuant to the Liquidating Trust Agreement and/or Direct Claims Trust Agreement, or otherwise vacates its position, a successor Liquidating Trustee shall be appointed as set forth in the Liquidating Trust Agreement and the Direct Claims Trust Agreement.   Therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

S.     **Additional Plan Provisions (11 U.S.C. § 1123(b)).** The Plan's provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

T.     **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** The Debtors have exercised reasonable business judgment in determining to either assume, assume and assign, or reject each of the Debtors' remaining Executory Contracts and Unexpired Leases as provided for in the Plan, the Plan Supplement, and this Confirmation Order, and any such assumptions and rejections are justified and appropriate in the Chapter 11 Cases. The Debtors' exercise of reasonable business judgment in determining to either assume, assume and assign, or

reject each of the Debtors' remaining Executory Contracts and Unexpired Leases is justified and appropriate in the Chapter 11 Cases for the reasons set forth in the Disclosure Statement, the Confirmation Memorandum, and the Uzzi Confirmation Declaration.

U.    **Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3)).** All of the settlements and compromises pursuant to and in connection with the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. The Plan, Plan Supplement, and/or this Confirmation Order provide for, among other things, the ACE Settlement, the WARN Act Settlement, the FlexGen Welldex/Confirmation Settlement, the RH Settlement the Debtor/Estate Release, and the Third Party Release.  Accordingly, the Plan is consistent with section 1123(b) of the Bankruptcy Code.

a.    **WARN Act and ACE Settlements**.    The WARN Act and ACE Settlements, as the principle terms are reflected in the Plan and Plan Supplement, are in accordance with section 1123(b)(3)(A) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment.  The WARN Act and ACE Settlements were entered into in good faith and are: (a) the product of extensive arms'-length negotiations by and between the Debtors, the Committee, and the WARN Act Claimants and ACE; (b) in the best interests of the Debtors, their Estates, and the holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) an integral element of the transactions incorporated into the Plan; and (e) consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

b.    **FlexGen    Welldex/Confirmation    Settlement.**    The    FlexGen Welldex/Confirmation Settlement, as provided for in Sections 44 through 51 hereof,  is in accordance with section 1123(b)(3)(A) of the Bankruptcy Code and represents a valid exercise of

the Debtors' business judgment.  The FlexGen Welldex/Confirmation Settlement was entered into in good faith and is: (a) the product of extensive arms'-length negotiations by and between the Debtors, the Committee, and FlexGen; (b) in the best interests of the Debtors, their Estates, and the holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) an integral element of the transactions incorporated into the Plan; and (e) consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

       c.      **RH Settlement**. The RH Settlement, as provided for in Section 53 hereof, is in accordance with section 1123(b)(3)(A) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment.  The RH Settlement was entered into in good faith and is: (a) the product of extensive arms'-length negotiations by and between the Debtors, the Committee, and RH; (b) in the best interests of the Debtors, their Estates, and the holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) an integral element of the transactions incorporated into the Plan; and (e) consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

       d.      **Released Parties**.   The Plan's definition of "Released Parties" shall be deemed to include Brian Kane and Chad Paulson for all purposes under the Plan and this Confirmation Order.

       e.      **Debtor/Estate Release**.  The Debtor/Estate Release set forth in Section 15.2(a) of the Plan is in accordance with section 1123(b) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019.  The Debtor/Estate Release is fair and equitable, is a key component of the Plan, and otherwise constitutes a settlement of Claims and Causes of Action under section 1123(b) of the Bankruptcy Code and Bankruptcy

Rule 9019. Releases of the Released Parties by the Debtors and the other Debtor/Estate Releasors are critically important to the success of the Plan, which embodies the settlement of certain claims with the Debtors' primary stakeholders, including the Committee and implements the concessions and compromises made by the parties to the restructuring transactions contemplated by the Plan. Each of the Released Parties afforded value and provided consideration to the Debtors and Estates, aided in the reorganization process and played an integral role in the formulation and implementation of the Plan. The Plan reflects the settlement and resolution of several complex issues, and the Debtor/Estate Release is an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor/Estate Release; (c) in the best interests of the Debtors, the Estates and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Liquidating Trust, or the Debtors' respective Estates asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

   f.  **Third Party Release**. The Third Party Release set forth in Section 15.2(b) of the Plan is an essential provision of the Plan.  The Confirmation Hearing Notices, Ballots,

Release Opt-Out Forms, and Voting Instructions explicitly and conspicuously stated that potential

Releasing Parties could opt out of the Third Party Release and included the language of the Third

Party Release.   Thus, each Releasing Party was given due and adequate notice that they would be

granting the Third Party Release by failing to opt out of the Third Party Release prior to the

deadline to do so.   Accordingly, the Third Party Release is consensual.   The Confirmation Order

shall constitute the Bankruptcy Court's approval, pursuant to section 1123 of the Bankruptcy Code

and Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the

related provisions and definitions contained in the Plan, and, further, shall constitute the

Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the

Confirmation of the Plan, important to the overall objectives of the Plan and an essential means of

implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) given in

exchange for the good and valuable consideration provided by the Released Parties, including,

without limitation, the Released Parties' contributions to facilitating the restructuring and

implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the

Third-Party Release; (e) materially beneficial to, and in the best interests of the Debtors and their

respective Estates and stakeholders; (f) fair, equitable, and reasonable; (g) given and made after

due notice and opportunity for hearing; (h) a bar to any of the Releasing Parties asserting any

Claim or Cause of Action released pursuant to the Third-Party Release; (i) within the jurisdiction

of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); and (j) consistent with sections

105, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

g.      **Exculpation**.  The exculpation provisions set forth in Section 15.1 of the

Plan are essential to the Plan.  The record in these Chapter 11 Cases fully supports the exculpation

provisions set forth in Section 15.1 of the Plan.

h.      **Injunction.**  The injunction provisions set forth in Section 15.3 of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor/Estate Release, the Third Party Release, and the exculpation provisions in  Section 15.1 of the Plan.

V.      **Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Proponents have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Plan Supplement, and all other matters considered by this Court in connection with the Chapter 11 Cases.

W.      **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).** The Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Plan is the result of extensive arm's length negotiations among the Debtors, the Committee and certain of its key constituents like the WARN Act Claimants and ACE. The Plan promotes the objectives and purposes of the Bankruptcy Code.

X.      **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).** The procedures set forth in the Plan for this Court's approval of the fees, costs, and expenses to be paid in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter

11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

Y.  **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** Upon the occurrence of the Effective Date, the employment, retention, or appointment and authority of each of the Debtors' members, managers, directors, officers, employees and professionals shall be deemed to have terminated; except that certain employees who may be necessary as determined by the Liquidating Trustee shall act as the Debtors' authorized representative. The initial Liquidating Trustee is identified in Exhibit C of the Plan Supplement. The initial TOC members as provided for in Exhibit C to the Plan Supplement shall be the following:  ACE Engineering & Co., Ltd., Celestica LLC, Contemporary Amperex Technology Co., Limited, JMS Wind Energy, LLC and GreEnergy Resources LLC.  Thus, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

Z.  **No Rate Changes (11 U.S.C. § 1129(a)(6)).**  After the Confirmation Date, the Debtors will not have any businesses involving the establishment of rates over which any regulatory commission has or will have jurisdiction.  Therefore, the provisions of section 1129(a)(6) do not apply to the Plan.

AA.  **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).** The "best interests" test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

BB.  **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are left unimpaired under the Plan.  Each of Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims) and Class 5 (General Unsecured Claims)

have voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes. Class 6 (Intercompany Claims) and Class 7 (Interests), are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (together, the "Deemed Rejecting Classes"). Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below.

CC.    **Treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims and Priority Tax Claims pursuant to Sections 7 and 9 of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

DD.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).** Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims) and Class 5 (General Unsecured Claims) are Impaired Classes of Claims that voted to accept the Plan, determined without including any acceptance of the Plan by any insider. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

EE.    **Feasibility (11 U.S.C. § 1129(a)(11)).** The Plan provides for the dissolution of the Debtors as soon as practicable after the Effective Date and the liquidation of the Debtors' property. Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied. The Debtors have sold substantially all their assets pursuant to the *Order (I) Authorizing the Debtors to Enter into and Perform Under the FlexGen Power Systems, LLC Asset Purchase Agreement, (II) Approving the Sale of Purchases Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance with the Assumption and Assignment Procedures, and (IV) Granting Related Relief* [Docket No. 751] (the "Sale Order") and have ceased conducting

business and have started the process of winding down their businesses prior to the Confirmation

Hearing.

FF.     **Payment of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under 28 U.S.C.

§ 1930 have been paid or will be paid on or before the Effective Date pursuant to the Plan, thus

satisfying section 1129(a)(12) of the Bankruptcy Code.

GG.     **Miscellaneous   Provisions   (11   U.S.C.   §§ 1129(a)(13)-(16)).**   Sections

1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors (i) are

not obligated to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) (section

1129(a)(13)), (ii) have no domestic support obligations (section 1129(a)(14)), (iii) are not

individuals (section 1129(a)(15)), and (iv) are not nonprofit corporations (section 1129(a)(16)).

HH.     **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C.**

**§ 1129(b)).** The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan

may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. First, all of the

requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been

met. Second, the Plan is fair and equitable with respect to both of the Deemed Rejecting Classes.

The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no

Holder of any Claim or Interest that is junior to each such Class will receive or retain any property

under the Plan on account of such junior Claim or Interest, and (b) no Holder of a Claim or Interest

in a Class senior to such Classes is receiving more than payment in full on account of its Claim or

Interest. Further, to the extent Class 6 (Intercompany Claims) or Class 7 (Interests) are Reinstated,

such treatment is provided for administrative convenience and efficiency, and not on account of

such Interests, and will not alter the treatment provided for any other Holder of any Claim or

Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes. Third, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class. The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in Uzzi Confirmation Declaration filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims and Interests (x) is reasonable persuasive, credible, and accurate; (y) utilizes reasonable and appropriate methodologies and assumptions; and (z) has not been controverted by other credible evidence.

II.    **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

JJ.    **Principal Purpose (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has objected to Confirmation on any such grounds. Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

KK.    **Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and should be confirmed.

LL.    **Good Faith Solicitation (11 U.S.C. § 1125(e)).** The Debtors and their officers, directors, employees, advisors, Professionals Persons, and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure

Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the injunction and exculpation provisions set forth in Article 13 of the Plan and in this Confirmation Order.

MM.   **Implementation**.   All documents and agreements necessary to implement transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement (including, among others, the Liquidating Trust Agreement and the Direct Claims Trust Agreement), have been negotiated in good faith and at arms'-length, are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.   The Debtors and the Liquidating Trustee, as applicable, are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

NN.   **Retention of Jurisdiction.** This Court may properly retain jurisdiction over the matters set forth in Section 18 of the Plan and/or section 1142 of the Bankruptcy Code.

**Based upon the foregoing findings, and upon the record made before this Court at the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED AND DECREED THAT:**

## Confirmation of the Plan

1.   The Plan, as and to the extent modified by this Confirmation Order, is approved and confirmed pursuant to section 1129 of the Bankruptcy Code. Any objections to the Plan not withdrawn, resolved, or otherwise disposed of are overruled and denied.

2.      The terms of the Plan are incorporated by reference into (except to the extent modified by this Confirmation Order), and are an integral part of, this Confirmation Order.

**Final Approval of the Disclosures**

3.      The disclosures provided in the Plan are approved as adequate on a final basis pursuant to Section 1125 of the Bankruptcy Code.

**Compromises and Settlements Under the Plan**

4.      Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, upon the Effective Date, all settlements and compromises set forth in the Plan, including the WARN Act Settlement, the ACE Settlement, the FlexGen Welldex/Confirmation Settlement, and the RH Settlement or announced on the record at the Confirmation Hearing are approved in all respects, and constitute good faith compromises and settlements.

**Classification and Treatment**

5.      The Plan's classification scheme is approved. The classifications set forth on the Ballots (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any Holder as representing the actual classification of such Claim under the Plan for distribution purposes, and (d) shall not be binding on the Debtors and the Liquidating Trustee except for Plan voting purposes.

**Authorization to Implement the Plan**

6.      The Debtors and the Liquidating Trustee, as applicable, are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into, or otherwise make effective all documents

arising in connection therewith, including, without limitation, all Plan Documents, prior to, on, and after the Effective Date.

7.      On the Effective Date, the officers of the Debtors and the Liquidating Trustee are authorized to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors.  In accordance with Bankruptcy Code section 1142(b), upon the entry of this Confirmation Order, the Debtors, and the Liquidating Trustee, each acting by and through its respective officers and agents, are authorized to take any and all actions necessary or appropriate to implement the Plan, including, without limitation, (i) consummating the WARN Act Settlement, the ACE Settlement, the FlexGen Welldex/Confirmation Settlement and the RH Settlement; (ii) forming the Liquidating Trust, entering into the Liquidating Trust Agreement (substantially in the form attached hereto as **Exhibit B**), and complying with, and satisfying the obligations set forth under, the Liquidating Trust Agreement; (iii) forming the Direct Claims Trust, entering into the Direct Claims Trust Agreement (substantially in the form attached hereto as **Exhibit C**), and complying with, and satisfying the obligations set forth under, the Direct Claims Trust Agreement; and (iv) complying with, and satisfying the obligations set forth under, the Plan, in each case, without any further order of the Court.  The Liquidating Trust and the Direct Claims Trust shall be deemed for all purposes to have been created in connection with the Plan and this Confirmation Order.  On the Effective Date, each of the Debtors' then-current directors and officers shall be deemed to have resigned and the Liquidating Trustee shall automatically be the sole remaining officer and director of the Debtors, without the need for any meeting of or resolution by any board of directors or manager.  Following the Effective Date, the Liquidating Trustee is given full power of attorney and has authority to

execute and/or endorse any documentation on behalf of the Debtors in furtherance of the Plan and the Debtors' liquidation.

8.     The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Liquidating Trustee, the Debtors, or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

9.     For the avoidance of doubt, the Plan and this Confirmation Order in no way authorize or approve any incentive payments under sections 105 or 503 of the Bankruptcy Code.

**Enforceability of the Plan**

10.    Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code, the Plan and all Plan Documents (including, but not limited to, the Liquidating Trust Agreement and the Direct Claims Trust Agreement) shall be, and hereby are, valid, binding and enforceable.  The current form of the Liquidating Trust Agreement and the Direct Claims Trust Agreement are attached to this Order as **Exhibit B** and **Exhibit C**, respectively.

11.    Except to the extent otherwise provided in this Confirmation Order and the Plan, and pursuant to Section 14 of the Plan, on the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust all of their rights, title, and interest in and to all of the Liquidating Trust Assets, then held by the Debtors free and clear of all liens, claims, and encumbrances.  For the avoidance of doubt, the Plan shall also effectuate the transfer to the Liquidating Trust of all of the Debtors' rights, title, and interest under that certain *Amended Order Authorizing (I) Abandonment or Sale of Remaining Inventory and (II) Granting Related Relief* [Docket No. 1031] (the "Remaining Inventory Order"); *provided, that*, notwithstanding anything to the contrary in the Remaining Inventory Order, Section 4 of the Remaining Inventory Order is hereby deemed modified solely to the extent necessary to provide

that, following the Effective Date, the Liquidating Trustee shall have full authority, without the requirement to consult with the Committee or the U.S. Trustee, to accept offers for, sell, or abandon any Miscellaneous Inventory (as defined in the Remaining Inventory Order). All other provisions of the Remaining Inventory Order shall remain in full force and effect except as expressly modified herein.

### Preservation of Causes of Action and Litigation

12.     Except as otherwise provided in the Plan or this Confirmation Order (a) in accordance with Section 1123(b)(3) of the Bankruptcy Code and Sections 13 and 14.2 of the Plan, any retained Causes of Action or Litigation that the Debtors may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust and (b) after the Effective Date, the Liquidating Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such retained Causes of Action and Litigation, in accordance with the terms of the Plan and the Liquidating Trust Agreement and without further order of this Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

### Reservation of Causes of Action and Litigation

13.     Unless a Cause of Action or Litigation against a holder or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including this Confirmation Order), including pursuant to the Debtor/Estate Release or the Third Party Release, the Debtors and the Liquidating Trustee expressly reserve such Cause of Action or Litigation for later adjudication by the Liquidating Trustee, including, without limitation, Causes of Action or Litigation not specifically identified or described in the Plan Supplement or elsewhere

or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action or Litigation upon, after, or as a consequence of the Confirmation or Consummation or after the entry of this Confirmation Order or Effective Date based on the Plan, or this Confirmation Order, except where such Causes of Action or Litigation have been released in the Plan or any other Final Order. The Debtors and Liquidating Trustee's rights to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, are expressly reserved.

### Wind-Up and Dissolution of the Debtors

14.    The Debtors shall be dissolved as provided in the Plan and this Confirmation Order. On the Effective Date, the Liquidating Trustee shall wind-up the affairs of the Debtors, if any, subject to the Plan, the Confirmation Order and the Liquidating Trust Agreement, and the Liquidating Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the Debtors, all tax returns, reports, certificates, forms, or similar statements or documents (collectively, "Tax Returns") required to be filed or that the Liquidating Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds, for all taxable periods ending on, prior to, or after the Effective Date. In connection therewith, the Debtors and the Liquidating Trustee are authorized to surrender to the applicable governmental authorities all

licenses that the Debtors used to operate their business to the extent they have not already done so to date.

## Cancellation of Interests, Existing Securities, and Agreements

15.     On the Effective Date, except to the extent otherwise provided in the Plan or in this Confirmation Order, all notes, instruments, certificates, and other documents evidencing Claims or Interests, shall be deemed cancelled and surrendered without any need for a holder of a Claim or Interest (a "Holder") to take further action with respect thereto and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full and discharged; *provided*, *however*, that notwithstanding Confirmation or Consummation, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan; *provided further*, *however*, that on the Effective Date all Interests shall be deemed cancelled and extinguished. Holders of Interests shall not receive any distribution or retain any property pursuant to the Plan.

## Method of Distribution Under the Plan

16.     The Liquidating Trustee shall make all distributions required to be made to Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trust shall hold and distribute the Liquidating Trust Assets, the Liquidating Trust Professional Fee Reserve, and the Disputed Claim Reserve in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

17.     The Liquidating Trustee shall make all distributions required to be made to such Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of the Liquidating Trustee's duties as disbursing agent unless otherwise ordered by this Court.  At the option of the Liquidating Trustee, any Cash payment to be made from the

Liquidating Trust by any means deemed appropriate by the Liquidating Trustee, including by check or wire transfer or as otherwise required or provided in applicable agreements.

## The Liquidating Trust

18.     **Administration of the Liquidating Trust**.  The Liquidating Trust Agreement, substantially in the form attached hereto as **Exhibit B**, is hereby approved.  The appointment of Phoenix Management as the initial Liquidating Trustee and the retention of the professionals by the Liquidating Trust, on the terms set forth in the Plan and Liquidating Trust Agreement, is hereby approved.  The Liquidating Trustee shall be compensated in the manner set forth in and consistent with the Liquidating Trust Agreement. The Liquidating Trustee and the Oversight Committee shall both have all powers, rights, duties and protections afforded the Liquidating Trustee and the Oversight Committee, respectively, under the Plan, this Confirmation Order, and the Liquidating Trust Agreement.

19.     **Interests in the Liquidating Trust**. There shall be one class of interests in the Liquidating Trust. The Liquidating Trust shall issue the Liquidating Trust Interests to the Holders of Allowed Administrative and Priority Claims who have agreed to accept deferred distributions from the Liquidating Trust after the Effective Date (including the WARN Act Claimants and Ace), Settled Priority Claims, General Unsecured Claims, and the Contributing Direct Claim Holders in accordance with sections 9.5(b) and 13.3(i) of the Plan. Liquidating Trust Interests shall be uncertificated. Beneficiaries of the Liquidating Trust Interests shall be bound by the Liquidating Trust Agreement.

20.     **Liquidating Trust Assets**.  The Liquidating Trust shall consist of the Liquidating Trust Assets. On the Effective Date, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise provided in the Plan, including, without limitation, pursuant to Sections 13.3(b) and (c) of the Plan or in this

Confirmation Order. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall not affect any attorney-client privilege, the work-product privilege, and any other applicable evidentiary privileges of the Debtors, which such privileges shall be expressly transferred and assumed by the Liquidating Trust.

21. **Distribution of Liquidating Trust Assets**. The Liquidating Trustee shall distribute the appropriate net proceeds of the Liquidating Trust Assets to the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

22. The Liquidating Trustee shall utilize, in accordance with the Liquidating Trust Agreement, the Plan and the Trust Budget, Cash from the Liquidating Trust Assets Account in amounts sufficient to (i) fund costs and expenses of the Liquidating Trust, including, without limitation, the fees and expenses of the Liquidating Trustee, its professionals, and the professionals retained in these cases, (ii) compensate the Liquidating Trustee, and (iii) satisfy other liabilities incurred by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement (including any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets).

## The Direct Claims Trust

23. **Administration of the Direct Claims Trust**. The Direct Claims Trust Agreement, substantially in the form attached hereto as **Exhibit C**, is hereby approved. The appointment of Phoenix Management as the initial Direct Claims Trustee and the retention of the professionals by the Direct Claims Trust, on the terms set forth in the Plan and Direct Claims Trust Agreement, is hereby approved. The Direct Claims Trustee shall be compensated in the manner set forth in and consistent with the Direct Claims Trust Agreement. The Direct Claims Trustee and the Oversight Committee shall both have all powers, rights, duties and protections afforded the Direct Claims

Trustee and the Oversight Committee, respectively, under the Plan, this Confirmation Order, and the Direct Claims Trust Agreement.

24.      **Interests in the Direct Claims Trust**. There shall be one class of interests in the Direct Claims Trust. The Direct Claims Trust shall issue the Direct Claims Trust Interests to Contributing Direct Claim Holders in accordance with Sections 9.5(b) and 13.3(b) of the Plan. Direct Claim Trust Interests shall be uncertificated. Beneficiaries of the Direct Claim Trust Interests shall be bound by the Direct Claim Trust Agreement.

25.      **Direct Claim Trust Assets**.  The Direct Claim Trust shall consist of the Direct Claim Trust Assets. On the Effective Date, the Direct Claim Trust Assets shall vest in the Direct Claim Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise provided in the Plan, including, without limitation, pursuant to Section 13.3(b) of the Plan or in this Confirmation Order.

26.      **Distribution of Direct Claims Trust Assets**.  The Direct Claims Trustee shall distribute the appropriate net proceeds of the Direct Claims Trust Assets to the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

### Executory Contracts and Unexpired Leases

27.      The assumption of the executory contracts or unexpired leases identified on the list filed with the Plan Supplement or separately (the "Assumed Executory Contract and Unexpired Leases List") is approved.

28.      Except any executory contract or unexpired lease (a) identified on the Assumed Executory Contracts and Unexpired Leases List, (b) which is the subject of a separate motion or notice to assume or reject filed by the Debtors and pending as of the Confirmation Hearing, (c) that previously expired or terminated pursuant to its own terms, or (d) that was previously assumed or rejected by any of the Debtors, each of the Debtors' other executory contracts and unexpired

leases shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code and such rejection is approved; provided, however, that rejection of that certain unexpired lease between Lu Pacific Properties, LLC and Debtor Powin, LLC f/k/a Powin Energy Corporation, as tenant, for the premises located at 20550 SW 115th Avenue, Tualatin, OR 97062, is hereby deemed rejected effective as of October 31, 2025.

29.     Each executory contract and unexpired lease assumed pursuant to the Plan or by Order of this Court, and not assigned to a third party on or prior to the Effective Date, shall be transferred to the Liquidating Trust and be deemed a Liquidating Trust Asset.

30.     **Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim arising from the rejection of executory contracts or unexpired leases ("<u>Rejection Claims</u>") pursuant to Confirmation of the Plan or otherwise must be Filed with the Claims and Balloting Agent no later than the later of 30 days after the Effective Date or 30 days after the effective date of rejection. Rejection Claims shall be classified as Class 5 General Unsecured Claims and shall be treated in accordance with Section 9.5 of the Plan, as applicable. Any Rejection Claims that are not timely filed pursuant to Section 12 of the Plan or this Confirmation Order shall be forever disallowed and barred**.

## Disputed Claims

31.     Except as otherwise provided in the Plan, the Liquidating Trustee shall have the right to object to Claims on any basis.  Subject to further extension by the Bankruptcy Court with or without notice, the Liquidating Trustee may object to the allowance of all Claims on or before the Claim Objection Deadline. From and after the Effective Date, the Liquidating Trust shall succeed to all of the rights, defenses, offsets, and counterclaims of the Debtors and the Estates in

respect of all Claims, and in that capacity shall have the exclusive power to prosecute, defend, compromise, settle, and otherwise deal with all such objections.

32.     **All objections to Claims shall be Filed by the Claims Objection Deadline; *provided*, that no such objection may be filed with respect to any Claim or Interest after a Final Order has been entered Allowing such Claim or Interest.**

## Administrative Claims

33.     **All requests for payment of an Administrative Claim (other than a Professional Fee Claim) arising or deemed to have arisen after the Petition Date must be filed with this Court and served to the Debtors and the Liquidating Trustee on or before the date that is 60 days after the Effective Date.**   In the event of an objection to allowance of an Administrative Claim, this Court shall determine the Allowed amount of such Administrative Claim.  Nothing herein shall be deemed to extend existing deadlines established for filing certain Administrative Claims, including pursuant to the Bar Date Order.

34.     For the avoidance of doubt, each Administrative Claim shall be asserted, allowed, and paid solely against the specific Debtor that incurred, is liable for, or received the benefit of the services giving rise to such Administrative Claim. No Administrative Claim asserted against any particular Debtor shall constitute, or be deemed to constitute, an Administrative Claim against any other Debtor or their respective estates, and no joint and several liability is created or implied by the Plan or this Confirmation Order.

## Liquidating Trust Professional Fee Reserve and Professional Fee Claims

35.     On or as soon as practicable after the Effective Date, Liquidating Trustee shall establish the Liquidating Trust Professional Fee Reserve and fund such reserve in an amount equal to the estimated anticipated Professional Fee Claims provided by Professionals for services render and expenses incurred prior to the Effective Date estimated to be in excess of the Debtor

Professional Fee Reserve (collectively with the Liquidating Trust Professional Fee Reserve, the "Professional Fee Reserves"); provided, that the Liquidating Trustee shall not be required to fund the Liquidating Trust Professional Fee Reserve to the extent the Debtor Professional Fee Reserve contains adequate amounts to cover the estimated Professional Fee Claims. The Liquidating Trust Professional Fee Reserve shall be used solely for the payment of Allowed Professional Fee Claims in accordance with Section 7.3 of the Plan. For the avoidance of doubt, Professionals shall not be required to allocate their Professional Fee Claims among one or more individual Debtors.

36. **All final applications for payment of Professional Fee Claims must be Filed with this Court and served on the Debtors, the Liquidating Trustee, and the U.S. Trustee on or before 45 days after the Effective Date or such later date as may be agreed to by the Liquidating Trustee.** Upon approval of the fee applications by the Bankruptcy Court, the applicable fee applications shall first be paid from the Debtor Professional Fee Reserve and Stretto shall be authorized to release from the Debtor Professional Fee Reserve to the applicable Professional, an amount equal to the Allowed Professional Fee Claims of such Professional. To the extent the Debtor Professional Fee Reserve is insufficient to satisfy the Allowed Professional Fee Claim in full, the Liquidating Trustee shall pay such Professionals from the Liquidating Trustee Professional Fee Reserve the remainder of their respective Allowed Professional Fee Claims.

37. The Professional Fee Reserves shall be closed once all required payments have been made. Any funds remaining in the Professional Fee Reserves after all required payments have been made shall be transferred to the Liquidating Trust.

**Release, Injunction, Exculpation and Related Provisions**

38.     The release, injunction, exculpation, and related provisions set forth in Article 15 of the Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities as and to the extent provided for therein.

39.     **Debtors' Releases**. Notwithstanding anything in the Plan to the contrary, and pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, by, through, for, or because of the foregoing entities (collectively, the "Debtor/Estate Releasors"), hereby release (the "Debtor/Estate Release") each Released Party, and each Released Party is deemed released by the Debtor/Estate Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor/Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have been legally entitled to assert in its own right, or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the

negotiation, formulation, or preparation of, or solicitation of votes on, the Plan or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; provided, that the foregoing Debtor/Estate Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and further provided that nothing herein shall act as a discharge of the Debtor.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors, the Estates and all holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

40.     **Release by Holders of Claims and Interests**. Notwithstanding anything in the Plan to the contrary, on and after and subject to the occurrence of the Effective Date, each of the Releasing Parties hereby release (the "Third Party Release") each Released Party, and each of the Debtors, the Estates, and the Released Parties is hereby deemed released from, any and all claims,

interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Combined Plan and Disclosure Statement, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of, or solicitation of votes on, the Plan or related agreements, instruments, or other documents or any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Releasing parties asserting any Claim or Cause of Action released pursuant to the Third Party Release.

41.    **Release of Liens**. Except as otherwise provided in the Plan, this Confirmation Order or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors and their Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns, including the Liquidating Trust, in accordance with the Plan.

42.    **Exculpation**. The Exculpated Parties will neither have nor incur any liability (the "Exculpation") to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, the sale or other disposition of the Debtors' assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any holder of an Allowed Claim to enforce

its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction); provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reasonable reliance may be asserted as a  form a defense to any such claim, Cause of Action, or liability.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability. Without limiting the generality of the foregoing, each Debtor, each Estate, and each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary in the foregoing, the releases and exculpations set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed or deemed executed to implement the Plan, or any executory contract or unexpired lease assumed during the Chapter 11 Cases or under the Plan.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Exculpation, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Exculpation is: (a) in exchange for the good and valuable consideration provided by the Exculpated Parties; (b) in the best interests of the Debtors and all holders of Claims and Interests; (c) fair, equitable, and

reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any

party from asserting any Claim or Cause of Action released pursuant to the Exculpation.  For the

avoidance of doubt, the Exculpated Parties do not include employees of the Debtors.  Neither the

Liquidating Trustee nor the Indemnified Parties will receive prospective exculpation for post-

Effective Date acts or omissions.

43.     **Injunction**. In implementation of the Plan, except as otherwise expressly provided

in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms

of the Plan or any documents provided for or contemplated in the Plan, all entities who have held,

hold or may hold Claims against or Interests in the Debtors, the Liquidating Trust, or the Estates

that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing

in any manner, directly or indirectly, any action or other proceeding of any kind against the

Debtors, the Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to

any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner

or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the

Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such

Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or

encumbrance of any kind against the Debtors, the Estates, the Liquidating Trust, or any of the

Liquidating Trust Assets with respect to any such Claim or Interest; and (d) any act, in any manner,

in any place whatsoever, that does not conform to or comply with the provisions of the Plan with

respect to such Claim or Interest, including, without limitation, the Debtor/Estate Release, the

Third Party Release, or the Exculpation.  Nothing contained in this Section shall prohibit the holder

of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an

Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or

prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or the Liquidating Trust under the Plan.

## Resolution of Formal Objections to the Plan

44.     **FlexGen Welldex/Confirmation Settlement**. In resolution of certain disputes arising under the transactions (the "FlexGen Sale") described in the Asset Purchase Agreement, dated July 6, 2025 (the "FlexGen APA"), the Debtors, FlexGen Power Systems, LLC ("FlexGen"), and the Committee, have agreed to certain terms included in this Confirmation Order below and otherwise memorialized in a Settlement Agreement filed on November 24, 2025 [Docket No. ___] and presented in evidence at the Confirmation Hearing (the "FlexGen Welldex/Confirmation Settlement") and such Settlement Agreement, the "FlexGen Welldex Settlement Agreement").

45.     The Debtors have agreed to transfer the inventory described on Exhibit "A" to the FlexGen Welldex Settlement Agreement (the "Substitute Inventory") to FlexGen, free and clear of any liens, claims and interests, including, without limitation, any interests described in the objection [Docket No. 619] filed by Solar Carver 1, LLC and Solar Carver 3, LLC (collectively, "Solar Carver") in connection with the Sale Order entered by the Court on August 18, 2025 [Docket No. 751]. Pursuant to the Remaining Inventory Order, the Debtors offered the Substitute Inventory to Solar Carver, and Solar Carver declined to purchase the Substitute Inventory. Solar Carver has been provided notice of this Confirmation Order and of the Debtors' intention to transfer the Substitute Inventory free and clear of any liens, claims and interests, and Solar Carver has not objected to such transfer. Accordingly, the FlexGen Welldex/Confirmation Settlement and the FlexGen Welldex Settlement Agreement are approved under Fed. R. Bank. P. 9019, and the transfer of the Substitute Inventory to FlexGen free and clear of any liens, claims and interests, including, but not limited to, any interests of Solar Carver, is likewise authorized and approved.

46.     For purposes of the Plan, any claims of FlexGen arising in connection with the FlexGen Sale (the "FlexGen Sale Claims") shall be Administrative Claims, if Allowed.

47.     For purposes of the Plan, the definition of "Released Parties" shall be deemed to include FlexGen, the DIP Lenders, the Administrative Agent, and the Collateral Agent, provided, however, that, except to the extent set forth in the FlexGen Welldex/Confirmation Settlement and FlexGen Welldex Settlement Agreement, nothing in the Plan shall operate to waive or release FlexGen from any obligations under the FlexGen APA, including, without limitation, obligations expressly assumed by FlexGen under the FlexGen APA which shall remain enforceable by parties to whom such obligations are due.

48.     On the Effective Date, the Debtors shall reserve, as an additional Effective Date Cash Transfer, the sum of $3,000,000 on account of the FlexGen Sale Claims (the "FlexGen Reserve") pending further order of the Court. For the avoidance of doubt, the amount required to be reserved on account of FlexGen Sale Claims pursuant to this paragraph shall not limit the amount of any FlexGen Sale Claim or FlexGen's ability to recover from the Debtors or the Liquidating Trust on account of any FlexGen Sale Claim, to the extent Allowed provided, that FlexGen Sale Claims in excess of the FlexGen Reserve must be Allowed by a Final Order. Nothing in this Confirmation Order shall in any way limit FlexGen's ability to assert, or recover on account of, any FlexGen Sale Claims that are not explicitly settled, waived or released in the FlexGen Welldex Settlement Agreement.

49.     In the event that the FlexGen Welldex Settlement Agreement is not approved by the Bankruptcy Court or does not become effective on or before the Effective Date of the Plan, then the Debtors and/or the Liquidating Trustee shall not make any distributions on account of General Unsecured Claims or dispose of the Substitute Inventory until a reserve is established by

agreement of the Parties. If agreement cannot be reached, the parties shall jointly request that the Court set a hearing and briefing schedule to determine such reserve amount.

50.    The *Emergency Motion of the Debtors and the Committee for Entry of an Order Disallowing and Expunging the Administrative Claim filed by FlexGen or, in the Alternative, Estimating the Claim at $0 for All Purposes* [Docket No. 1103 (the "FlexGen Administrative Claim Disallowance Motion") shall be set for hearing on December 17, 2025 at 2:00 p.m. Eastern Time, with any responses to the FlexGen Administrative Claim Disallowance Motion shall be filed on or before December [10], 2025, and any reply due on or before December [15], 2025.

51.    **Surety Settlement**. Prior to the Petition Date and in the ordinary course of business, the Applied Surety Underwriters, Siriuspoint America Insurance Company and Pennsylvania Insurance Company (together, the "Surety") issued a surety bond on behalf of the Debtors. Powin, LLC executed an indemnity agreement (the "Surety Bond Agreement") and caused cash collateral to be pledged to the Surety (the "Cash Collateral").   Entry of this Confirmation Order and confirmation of the Plan shall not modify or affect: (a) the Surety's rights under the Surety Bond Agreement or with respect to the Cash Collateral (or any proceeds thereof), or (b) any right of subrogation of the surety to the rights of a paid claimant, except as provided by the Term Sheet dated November ___, 2025 and satisfaction of the conditions precedent set forth therein.

52.    **CES Resolution**.  The injunction in Section 43 hereof and section 15.3 of the Plan does not operate as a bar to CES's commencement, continuation or maintenance of litigation or arbitration naming any of the Debtors as a nominal defendant and seeking to establish a Debtor's liability for the express and limited purpose of assessing that Debtor's alleged responsibility for claimed injuries or property damage, or contribution or indemnification in relation thereto, along with the liquidation of their claims, and to proceed against third parties and insurance policies and

proceeds as appropriate; provided however, parties are expressly prohibited from taking any action to enforce such determination of liability in any way against any Debtors or their assets and waive any right to enforce such claim against the Debtors, as same is subject to the Discharge Injunction as provided by law; provided however, Debtors and Liquidation Trustee shall not be required to appear in any litigation and defend against the merits of any claims brought against Debtors or incur costs and expenses related to defense of the merits and nothing herein shall otherwise limit or affect the rights or obligations of the Liquidating Trustee under the Plan, Confirmation Order or Liquidating Trust Agreement in any way.  The Liquidation Trust shall neither take any action, nor fail to take any ministerial action that would amount to non-cooperation with Debtors' insurers or that would place at risk any insurance coverage or proceeds available to the claimant where taking such action would impose *de minimis* costs on the estate.  For the avoidance of doubt, in order for CES to bring an action against the Debtors or the Liquidating Trust as a nominal defendant, it must (a) waive any right to recover or assert any claim against the Debtors, their estates, or the Liquidating Trust, (b) limit all recovery exclusively to applicable insurance policies and their proceeds, and (c) acknowledge that neither the Debtors nor the Liquidating Trust shall have any duty or obligation to appear, defend, or otherwise participate in such litigation or arbitration, and shall incur no costs or expenses in connection therewith unless they elect to do so in their sole discretion.

53. **RH Settlement**.  The Debtors and RH Shipping and Chartering USA, L.L.C. ("RH") have contemporaneously herewith entered into a *Stipulation and Agreed Order Regarding R.H. Shipping and Chartering, S. De R.L. De C.V. Claim No. 311 and RH Shipping and Chartering USA, L.L.C. Claim No. 312* [Docket No. 1132] (the "RH Settlement") that, among other things,

resolves Claim Nos. 311 and 312 and certain other asserted administrative claims against the

Debtors' estate, as provided in the RH Settlement.

54.  **Warranty Issues**. The Debtor previously announced its intent to assign by

quitclaim deed its rights under various warranties and guaranties under the authority of the *Order*

*Granting Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Enter Into*

*New Customer Program with Existing Customers and (II) Granting Related Relief* [Docket No.

62], and such assignments are hereby further approved.

55.  **U.S. Trustee Objections**. The term "good faith" in Section 15.1 of the Plan shall

be deemed stricken such that it provides in its entirety as follows:

> The Exculpated Parties will neither have nor incur any liability to any entity for any
> action taken or omitted to be taken between the Petition Date and Effective Date in
> connection with or related to the Chapter 11 Cases, the sale or other disposition of
> the Debtors' assets or the formulation, preparation, dissemination, implementation,
> Confirmation, or Consummation of the Plan, the Disclosure Statement, or any
> agreement created or entered into in connection with the Plan; provided, however,
> that this limitation will not affect or modify the obligations created under the Plan,
> or the rights of any holder of an Allowed Claim to enforce its rights under the Plan,
> and shall not release any action (or inaction) constituting willful misconduct, fraud,
> bad faith, or gross negligence (in each case subject to determination by final order
> of the Bankruptcy Court); provided that any Exculpated Party shall be entitled to
> reasonably rely upon the advice of counsel with respect to its duties and
> responsibilities (if any) under the Plan, and such reasonable reliance shall form a
> defense to any such claim, Cause of Action, or liability. Without limiting the
> generality of the foregoing, each Exculpated Party shall be entitled to and granted
> the protections of section 1125(e) of the Bankruptcy Code.

56.  Section 15.3 of the Plan shall be deemed amended and restated in its entirety as to

add the following bolded language as follows:

> In implementation of the Plan, except as otherwise expressly provided in the
> Confirmation Order or the Plan, and except in connection with the enforcement of
> the terms of the Plan or any documents provided for or contemplated in the Plan,
> all entities who have held, hold or may hold Claims against or Interests in the
> Debtors, the Liquidating Trust, the Direct Claims Trust, or the Estates that arose
> prior to the Effective Date are permanently enjoined ~~**from**~~ **and precluded, from
> and after the Effective Date, through and until the date upon which all**

**remaining property of the Debtors' Estates vested in the Liquidating Trust and/or the Direct Claims Trust has been liquidated and distributed in accordance with the terms of the Plan, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, or the Exculpated Parties including**: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of Such Trusts' Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and  paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or any Trust under the Plan. Notwithstanding any ~~other~~ provision of this Plan, the Debtors shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).

57.     In each of Sections 9.1(b) and 9.2(b) of the Plan, the following words shall be stricken: "compromise, settlement, release and discharge of and in exchange".

58.     Section 19.15 of the Plan shall be amended and restated as follows: "The Plan shall be deemed substantially consummated when the requirements of Sections 1101 and 1127(b) of the Bankruptcy Code have been met."

### Resolution of Informal Comments to the Plan

59.     Notwithstanding anything in the Plan, the Confirmation Order, or the Direct Claims Trust Agreement to the contrary, nothing in the Plan, the Confirmation Order, or the Direct Claims Trust Agreement waives, modifies, or otherwise impairs the rights of Trilantic Capital Management L.P. (together with its managed funds, limited partners, subsidiaries and/or affiliates) and Greenbelt Capital Management, L.P. (together with its managed funds, limited partners,

subsidiaries and/or affiliates) to (a) contest the Bankruptcy Court's jurisdiction to hear and determine any lawsuit brought against them, either individually or collectively, on account of a Direct Claim or (b) file a motion with the Bankruptcy Court pursuant to LBR 7016-1(e) seeking a determination as to whether the Bankruptcy Court may adjudicate to final judgment any or all claims and defenses brought against them, either individually or collectively, on account of a Direct Claim.

60.     The Debtors shall pay $114,036.92 (the "Voya Payment") to Voya Benefits Company and ReliaStar Life Insurance Company (together, "Voya") in consideration for services related to the Debtors' Employee Compensation & Benefits (as defined in Docket No. 7) within 10 business days of the Effective Date. Voya may file an unsecured proof of claim for any other alleged, pre-petition amounts owed under its contracts with the Debtors (the "Voya POC"), which will be and will be deemed timely filed if filed by November 24, 2025. The Voya Payment and Voya POC represent the full and final satisfaction to Voya regarding claims relating to the Employee Compensation & Benefits.

**Waiver of Powin EKS SellCo Section 341 Requirements**

61.     Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or other applicable law, the Court finds and concludes that cause exists under sections 105(a) and 341(e) of the Bankruptcy Code to waive Debtor Powin EKS SellCo, LLC's requirement to convene a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code. Accordingly, a meeting of creditors under section 341(a) shall not be held for Powin EKS SellCo, LLC, and such requirement is hereby permanently waived.

**Payment of Statutory Fees**

62.     All fees payable pursuant to 28 U.S.C. § 1930(a)(6) and any interest assessed pursuant to 31 U.S.C. § 3717 ("Quarterly Fees") that are owed prior to the Effective Date shall be

paid by the Debtors in full in cash on the Effective Date. After the Effective Date, any and all

Quarterly Fees shall be paid in full in cash when due and payable. The Debtors shall file all

monthly operating reports due prior to the Effective Date when they become due, using UST Form

11-MOR. After the Effective Date, the Liquidating Trustee and each of the post-Effective Date

Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they

become due. Each and every one of the Debtors, whether existing pre- or post-Effective Date, and

Liquidating Trust shall remain obligated to pay Quarterly Fees until the earliest of that particular

Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy

Code. The U.S. Trustee shall not be treated as providing any release under the Plan. The U.S.

Trustee shall not be required to file any proof of claim or any request for administrative expense

for Quarterly Fees. The provisions of this paragraph shall control notwithstanding any other

provision(s) in the Combined Plan and Disclosure Statement to the contrary.

## **Trust Professionals**

63.     The Liquidating Trustee may retain counsel to the Liquidating Trust and/or the

Direct Claims Trust (the "Retained Trust Professionals") pursuant to the Liquidating Trust

Agreement and the Direct Claim Trust Agreement.  Any Retained Trust Professional may be

compensated pursuant to the terms of the Liquidating Trust Agreement or the Direct Claims Trust,

as applicable, for the avoidance of doubt, shall not be required to comply with sections 330 and

331 of the Bankruptcy Code solely with respect to such Retained Trust Professional's retention

and compensation or payment for work performed for the Liquidating Trust or the Direct Claim

Trust.

## **Notice of Entry of Confirmation Order and Effective Date**

64.     Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors are hereby authorized

to serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date,

substantially in the form attached hereto as **Exhibit D** (the "Notice of Confirmation and Effective Date") on the Effective Date, on all Holders of Claims against or Interests in the Debtors and all other Persons on whom the Confirmation Hearing Notice was served. The form of the Notice of Confirmation and Effective Date is hereby approved in all respects. The Notice of Confirmation and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, any bar dates and deadlines established under the Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date, and any such bar dates and deadlines need be given.

### Retention of Jurisdiction

65.     Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, the Plan, and each of the Plan Documents, to the extent provided under applicable law, including, among other things, to take the actions specified in Section 18 of the Plan.

### References to Plan Provisions

66.     The failure to specifically include or to refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of this Court that the Plan (as and to the extent modified by this Confirmation Order) be confirmed in its entirety.

### Rules Governing Conflicts Between Documents

45

67.     In the event that any provision of the Plan is inconsistent with the provisions of the Plan Supplement, and any other Order in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided*, *however*, that this Confirmation Order shall control and take precedence in the event of any inconsistency between this Confirmation Order, any provision of the Plan, and any of the foregoing documents.

## Extension of Injunctions and Stays

68.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (including any injunctions or stays contained in or arising from the Plan or this Confirmation Order), shall remain in full force and effect.

## Section 1146 Exemption

69.     Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or any similar tax or fee.

## Headings

70.     Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

## No Stay of Confirmation Order

71.     Notwithstanding Bankruptcy Rules 3020(e) and 6004(h) and any other Bankruptcy Rule to the contrary, to the extent applicable, there is no reason for delay in the implementation of

this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

## EXHIBIT A

**Plan**

**<u>EXHIBIT B</u>**

**Final Form of Liquidating Trust Agreement**

## EXHIBIT C

**Final Form of Direct Claims Trust Agreement**

## **EXHIBIT D**

**Notice of Confirmation and Effective Date**

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
             van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
             sarah.schrag@dentons.com

*Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
             eblander@teamtogut.com

*Counsel for Debtors and
Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>                        Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**NOTICE OF (I) CONFIRMATION AND EFFECTIVE DATE OF THE JOINT COMBINED
DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION
OF POWIN LLC AND AFFILIATES THEREOF AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS AND (II) DEADLINES
UNDER THE PLAN AND CONFIRMATION ORDER TO FILE ADMINISTRATIVE
CLAIMS, PROFESSIONAL FEE CLAIMS, AND REJECTION CLAIMS**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     **Entry of Confirmation Order**. On _____ __, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.[•]] (the "Confirmation Order") confirming the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 942] attached as Exhibit A to the Confirmation Order (together with all exhibits thereto, and as may be amended, modified or supplemented, the "Plan")[2] in the Chapter 11 Cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2.     **Effective Date of the Plan**. The Effective Date of the Plan was _____, 2025.

3.     **Administrative Claim Bar Date**. As provided for in Section 7 of the Plan (defined term Administrative Expense Bar Date) and in the Confirmation Order, all requests for payment of an Administrative Claim incurred after [●] must be filed with this Court and served on counsel to the Liquidating Trustee, counsel to the Debtors, and counsel to the U.S. Trustee **no later than _____ __, 2025 (the date that is 60 days after the Effective Date);** *provided*, *however*, that Persons that asserted administrative claims with a timely filed Proof of Claim for prepetition Claims or Rejection Claims do not need to file additional requests for payment of such Administrative Claims. Nothing herein shall be deemed to extend existing deadlines established for filing certain Administrative Claims accrued as of [●] pursuant to the previous Administrative Claims bar date established as to such Administrative Claims. [Docket No. 758].

4.     **Deadline to File Professional Fee Claims**. As provided for in Section 7.3 of the Plan and in the Confirmation Order, all final applications for payment of the Professional Fee Claims must be filed with this Court and served on counsel to the Debtors and the Liquidating Trustee **no later than _____ __, 2025 (the date that is 45 days after the Effective Date)**, unless otherwise ordered by this Court or such later date is agreed to by the Liquidating Trustee.

5.     **Deadline to File Rejection Claims**. As provided for in Section 12.2 of the Plan and in the Confirmation Order, unless otherwise provided by a Bankruptcy Court Order, any Proofs of Claim asserting Rejection Claims pursuant to the Plan or otherwise must be Filed with the Claims Agent **by the earlier of [●], 2025 (the date that is thirty (30) days after the Effective Date) or thirty (30) days after an order of the Bankruptcy Court approving such rejection. Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan, as applicable. Any Rejection Claims that are not timely Filed pursuant to Section 12.2 of the Plan shall be forever disallowed and barred.**

6.     **Inquiries by Interested Parties**. Copies of the Confirmation Order (to which the Plan is attached as Exhibit A) may be examined free of charge at https://www.veritaglobal.net/powin. The Confirmation Order is also on file with the Bankruptcy Court and may be viewed by accessing the Bankruptcy Court's website at https://www.njb.uscourts.gov/. To access documents on the Bankruptcy

---

[2] Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan.

Court's website, you will need a PACER password and login, which can be obtained at www.pacer.psc.uscourts.gov.

Dated:  November [•], 2025

**DENTONS US LLP**

*/s/ DRAFT*
Tania M. Moyron (admitted pro hac vice)
Van C. Durrer, II (admitted pro hac vice)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email: tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (admitted pro hac vice)
Sarah M. Schrag (admitted pro hac vice)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email: john.beck@dentons.com
         sarah.schrag@dentons.com

- and -

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted pro hac vice)
Eitan Blander (admitted pro hac vice)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile:  (212) 967-4258
Email: altogut@teamtogut.com
         eblander@teamtogut.com