**DENTONS US LLP**
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email:  lauren.macksoud@dentons.com


Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street
Suite 2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
             van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
             sarah.schrag@dentons.com

*Counsel for Debtors and*
*Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com


Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
             eblander@teamtogut.com


*Counsel for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

### NOTICE OF FILING SETTLEMENT AGREEMENT
### WITH FLEXGEN POWER SYSTEMS, LLC RESOLVING THE WELLDEX DISPUTE

**PLEASE TAKE NOTICE** that Powin, LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors") hereby file the Settlement Agreement, attached hereto as **Exhibit "A,"** between the Debtors and FlexGen Power Systems, LLC ("FlexGen," together with the Debtors, the "Parties"), which resolves the Parties' dispute related to certain inventory associated with the Welldex third-party storage location arising from that certain Asset Purchase Agreement previously approved by the Court [*see* Docket No. 751].

**PLEASE TAKE FURTHER NOTICE** that the Settlement Agreement resolves the Welldex dispute raised in FlexGen's *Request for Payment of Administrative Expense* [Docket No. 1062], the *Limited Objection of FlexGen Power Systems, LLC to Chapter 11 Plan of Powin, LLC and its Affiliates* [Docket No. 1100], and the *Emergency Motion of the Debtors and the Committee for Entry of an Order Disallowing and Expunging the Administrative Claim Filed by FlexGen or, in the Alternative, Estimating That Claim at $0 for All Purposes* [Docket No. 1103].

**PLEASE TAKE FURTHER NOTICE** that the Debtors shall seek approval of the Settlement Agreement in connection with the hearing scheduled on November 25, 2025, at 11:30 a.m. (prevailing Eastern Time), on confirmation of the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 942].

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

Dated:    November 25, 2025

**DENTONS US LLP,**

*/s/ Lauren Macksoud*
Lauren Macksoud (admitted)
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: lauren.macksoud@dentons.com

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the America
New York, NY 10020
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

- and -

TOGUT, SEGAL & SEGAL
Frank A. Oswald
550 Broad Street
Suite 1507
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, NY 10119
Telephone: (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
            eblander@teamtogut.com

*Counsel for Debtors and Debtors-in-Possession*

# Exhibit A

## (Settlement Agreement)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| POWIN, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement"), dated November 24, 2025, is entered into by and between (i) the Debtors in the above-referenced bankruptcy cases (the "Debtors"), and (ii) FlexGen Power Systems, LLC ("FlexGen"), each of which is referred to herein as a "Party" (and, collectively, the "Parties"). Subject to approval of the U.S. Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), this Agreement is intended by the Parties to constitute a full, final and complete compromise and settlement of only the specific dispute outlined below.

WHEREAS, reference is made to that certain Sale Order [Docket No. 751] (the "Sale Order"), entered by the Bankruptcy Court on August 18, 2025, pursuant to which the Debtors and FlexGen entered into an *Asset Purchase Agreement*, dated July 6, 2025 (the "APA"), under which FlexGen purchased certain assets from the Debtors. Schedule 2.1(a) of the APA lists the "Purchased Inventory," which includes inventory from a variety of warehouses and third-party locations, including Welldex;

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

WHEREAS, FlexGen alleges that the Debtors failed to satisfy their obligations to deliver to FlexGen that certain subset of Purchased Inventory (as defined in the APA) associated with the Welldex third-party storage location in accordance with the terms and conditions of the APA, despite receiving payment in full from FlexGen for the same at the Closing (as defined in the APA). That inventory is identified on Exhibit A, annexed hereto (the "Welldex Inventory").

WHEREAS, on October 27, 2025, FlexGen sent the Debtors a notice, in accordance with the APA, alleging certain breaches of the APA by the Debtors, including, without limitation, with respect to the Welldex Inventory; and

WHEREAS, the Parties desire to avoid the cost, expense, and uncertainty with regard to continuing to pursue disputes between or among them arising out of or related to the Welldex Inventory (the "Welldex Dispute"), and, accordingly, the Parties have reached an agreement to resolve their dispute under the APA solely with respect to the Welldex Inventory, on the terms outlined below, subject to approval by the Bankruptcy Court.

NOW THEREFORE, the Parties, intending to be legally bound, and acknowledging the sufficiency of the consideration and undertakings set forth herein, do hereby agree to compromise and settle their disputes as to the Welldex Inventory, as follows:

1.    _Definitions_. All capitalized terms not otherwise defined in this Agreement have the meanings ascribed thereto in the APA.

2    Agreement _Effective Date_. The Parties agree that this Agreement will become effective and binding upon all Parties upon the latest to occur of (such date, the "Agreement Effective Date"): (a) the due execution and delivery of this Agreement by all Parties; (b) Bankruptcy Court approval of this Agreement and the transactions contemplated hereby (this

Agreement and the implementation of the transactions described herein, collectively, the "Settlement") and (c) the "Effective Date" as defined in the Plan (hereinafter defined).

3.   <u>Settlement Deliverables</u>.  On the Agreement Effective Date:

a)   The Debtors will pay to FlexGen, by wire transfer of immediately available funds to an account designated by FlexGen in writing, the sum of US$469,000, representing a refund for inventory lien cure costs previously paid by FlexGen to the Debtors at the Closing associated with the Welldex Inventory.

b)   The Debtors will transfer, assign, convey, and deliver to FlexGen all of the Debtors' right, title, and interest in and to the inventory described on Exhibit B, annexed hereto (the "Substitute Inventory"), free and clear of all Liens. The Debtors represent that they own the Substitute Inventory free and clear of all Liens.  Further, notwithstanding the *Limited Objection of Solar Carver 1, LLC and Solar Carver 3, LLC to Approval of Sale and Entry of Order Authorizing the Sale of Debtors' Property Free and Clear of All Causes of Action and Claims* [Docket No. 619], the Debtors will amend the proposed Confirmation Order to include language satisfactory to FlexGen confirming that all right, title, and interest in the Substitute Inventory shall belong solely to FlexGen, and the Debtors will provide prompt notice to Solar Carver's counsel (prior to the Confirmation Hearing in these bankruptcy cases).[2] The Parties will execute and

---

[2] "Confirmation Order" and "Confirmation Hearing" shall have the meanings ascribed to them in the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 943] (the "Plan"). Should Solar Carver object to the transfer to FlexGen and/or the Bankruptcy Court fails to approve this Settlement Agreement or the Parties' agreed Confirmation Order language, then this Settlement Agreement shall be deemed null and void and the parties shall revert to their positions prior to this Settlement Agreement.

3

deliver their respective counterparts to the bill of sale in the form attached hereto as Exhibit C .

c)  For the avoidance of doubt, the Debtors will pay in full to all applicable parties, on or prior to the Agreement Effective Date, any and all (i) costs and expenses for storage and maintenance services provided prior to the Agreement Effective Date and (ii) costs and expenses to cure all Liens, in each case, associated with Substitute Inventory.

d)  FlexGen will transfer, assign, convey, and deliver to the Debtors, on an as-is, where-is basis, all of its right, title, and interest in and to the Welldex Inventory. The Parties will execute and deliver their respective counterparts to the bill of sale in the form attached hereto as Exhibit D.

4.  <u>Other Agreements</u>. Each of the Parties acknowledges and agrees as follows:

a)  Other than execution and delivery of its counterpart to the bill of sale referenced in Section 3(c), FlexGen will have no obligation – whether under the APA, this Agreement, or otherwise – with respect to the Welldex Inventory.

b)  FlexGen will have no responsibility for any costs or expenses related to curing any Liens associated with the Substitute Inventory.

c)  FlexGen will have no payment, reimbursement, or other responsibilities for any storage or maintenance costs of any kind associated with the Welldex Inventory, including, without limitation, any costs described in Section 6.11 of the APA.

d)  FlexGen will have no responsibility for any storage or maintenance costs of any kind associated with the Substitute Inventory incurred prior to the Agreement

4

Effective Date but shall assume responsibility for such costs incurred for such services provided to FlexGen commencing from and after the Agreement Effective Date.

e)  Until title to the Substitute Inventory transfers to FlexGen in accordance with Section 3(b), the Debtors will cause the Substitute Inventory to be maintained in the same condition as when inspected by FlexGen and its agents, including, without limitation, maintaining configured stacks in the original equipment manufacturer shipping crates.

f)  Effective upon the performance in full by the Parties of this Agreement, the Parties, on behalf of themselves, their affiliates, assigns, and each and all of the foregoing parties' respective owners, members, management, agents, attorneys, and representatives, as well as their respective legal representatives, hereby release and discharge the other Party, together with their affiliates, assigns, and each and all of the foregoing parties' respective owners, members, management, agents, attorneys, and representatives, as well as their respective legal representatives, from all claims, liabilities, damages, actions, causes of action, suits, demands, costs, and losses, of any nature whatsoever, which either Party has, or may have had, against the other Party, for any acts or omissions related to or arising from the Welldex Dispute; *provided, however,* that the foregoing shall not release any party for claims or liabilities arising out of or relating to any act or omission of such party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) or for

breaches of any of the representations, warranties, covenants, or other obligations set forth in this Agreement.

g) The performance in full by the Parties of this Agreement constitute a full, final and complete compromise and settlement of all claims or losses of whatsoever kind or character that the Parties have, or may ever have had, against the other party with respect to the Welldex Dispute.

6.     Representations and Warranties.

a) Each Debtor represents and warrants that:

i. None of the execution, delivery, or performance of this Agreement will conflict with, or result in any violation of or constitute a breach or default under, any order of any Governmental Entity applicable to the Debtors, including, without limitation, the Sale Order;

ii. The Debtors have good and valid title in the Substitute Inventory, free and clear of all Liens of any kind, including, without limitation, any Liens which would impede or preclude transfer of title to any Substitute Inventory to FlexGen or access to any Substitute Inventory by FlexGen; and

iii. No Person other than Debtors are engaged in the operation of, or hold rights, title and interest in, the Substitute Inventory.

b) FlexGen represents and warrants that, notwithstanding Section 3(c), (i) subject to the Debtors having transferred good and valid title to the Welldex Inventory to FlexGen at the Closing, FlexGen has good and valid title to the Welldex Inventory, and (ii) FlexGen has not sold, assigned, transferred, conveyed, or otherwise disposed of, or purported to sell, assign, transfer, convey, or

6

otherwise dispose of, any right, title, or interest in the Welldex Inventory to any other Person.

7.   <u>Miscellaneous Provisions</u>.

a)   <u>Voluntary Agreement</u>.  The Parties represent, warrant and declare that each has carefully read this Agreement, knows its contents and believes that it accurately reflects the terms of their agreement.  The Parties further represent that each has signed this Agreement freely and voluntarily.

c)   <u>Authority to Execute</u>.  Each Party, subject only to the Bankruptcy Court's approval of the Settlement, warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party,  that the Party's execution of this Agreement is not in violation of any bylaws, covenants, and/or other restrictions placed upon them by their respective entities, and that the Party has all requisite corporate and/or limited liability company power and authority to execute, deliver, and perform this Agreement.

b)   <u>Independent Advice of Counsel</u>.  Each of the Parties represents and declares that it has participated in the drafting of this Agreement in consultation with its own independently selected legal counsel.  The Parties agree that this Agreement shall not be construed in favor of or against a Party based on the identity of the preparer.

c)    <u>Costs and Attorney's Fees</u>.  Each Party shall bear its own attorney's fees and other expenses in connection with this Settlement and obtaining Bankruptcy Court approval thereof.

d)  <u>Ongoing Cooperation</u>.  The Debtors shall seek and obtain Bankruptcy Court approval authorizing their entrance into, and performance of, this Settlement on the terms provided herein. The Debtors and their counsel shall execute all documents and perform all acts necessary and proper to effectuate the terms and conditions of this Agreement.

e)  <u>Binding Effect</u>.  Upon the Agreement Effective Date, (i) this Agreement shall be binding upon and shall inure to the benefit of each Party, together with its respective heirs, successors or assigns;  (ii) all representations, warranties, agreements, and promises stated herein are binding upon and shall inure to the benefit of each Party, together with its respective heirs, successors, or assigns; and any purchaser or transferee of any Party's rights under the Agreement shall be bound by all the terms and provisions of the Agreement.

f)  <u>Reservation of Rights</u>. For the avoidance of doubt, this Agreement does not address or resolve any other disputes among the Parties unrelated to the Welldex Inventory, including as to other alleged breaches of the APA described in FlexGen's October 27, 2025 notice to the Debtors, and the Debtors and FlexGen expressly reserve all rights with respect to such other alleged breaches and any other matters not expressly resolved pursuant to this Agreement.

g)  <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties, and all prior or contemporaneous agreements, understandings, negotiations, and drafts are merged into and superseded by this Agreement. No Party has made any representation, agreement, or promise material to this

8

Agreement, other than the representations, warranties, agreements, and promises stated herein.

h) <u>Headings</u>. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

i) <u>Applicable Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to conflict of law rules.

j) <u>Duplicate Originals/Counterparts</u>.  The Parties shall sign two copies of this Agreement and each such copy shall be considered an original.  This Agreement may be signed in one or more counterparts.  All executed copies of this Agreement, and photocopies thereof (including facsimile or pdf copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of this 24th

day of November 2025.


**DEBTORS AND DEBTORS IN POSSESSION**

By: _____
    Name: Gerard Uzzi
    Title:  Chief Restructuring Officer


**FLEXGEN POWER SYSTEMS, LLC**

By: _____
    Name:  Gary Cristini
    Title:   Chief Financial Officer

**Exhibit A**

**Welldex Inventory**

| Physical Address of Stock Ledger Location | Location Parent | Location | Location Type | Item | Item Description | Sum of Quantity | Sum of Amount | Item Rate | Title/Owner ship | Items Counted | Remaining Items | Remaining Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welldex Distribution S.A. de C.V. RFC WDI140429V95 San Luis Mexico 78426 | CEVA | Welldex Distribution SA de CV | 3rd Party Logistics/Storage - 3PL | A10400-00005-750 | FGA BATTERY CABINET ASSEMBLY | 219.00 | $ 1,241,784.59 | $ 5,670.25 | Powin | 0 | 219.00 | 1,241,784.59 |
| Welldex Distribution S.A. de C.V. RFC WDI140429V95 San Luis Mexico 78426 | CEVA | Welldex Distribution SA de CV | 3rd Party Logistics/Storage - 3PL | A10400-00005-758 | CENTIPEDE-UPPER BATTERY SEGMENT ENCLOSURE ASSEMBLY | 112.00 | $ 624,711.36 | $ 5,577.78 | Powin | 0 | 112.00 | 624,711.36 |
| Welldex Distribution S.A. de C.V. RFC WDI140429V95 San Luis Mexico 78426 | CEVA | Welldex Distribution SA de CV | 3rd Party Logistics/Storage - 3PL | E40101-10806-022 | CELL BATTERY, MODULE B, .3P, 280K, 2 HR, EVE | 1,169.00 | $ 940,325.65 | $ 804.38 | Powin | 376 | 793.00 | 637,877.02 |
| Welldex Distribution S.A. de C.V. RFC WDI140429V95 San Luis Mexico 78426 | CEVA | Welldex Distribution SA de CV | 3rd Party Logistics/Storage - 3PL | E40101-10806-042 | CELL BATTERY, MODULE B, .67P, 280Ah, 2 & 3+ HR, REPT | 90.00 | $ 97,462.66 | $ 1,082.92 | Powin | 310 | (220.00) | (238,242.06) |
| Welldex Distribution S.A. de C.V. RFC WDI140429V95 San Luis Mexico 78426 | CEVA | Welldex Distribution SA de CV | 3rd Party Logistics/Storage - 3PL | Itemized Detail Unavilable | Energy Segment Components | | $ 1,988,620.00 | | TBD | 0 | - | 1,988,620.00 |
| Welldex Distribution S.A. de C.V. RFC WDI140429V95 San Luis Mexico 78426 | CEVA | Welldex Distribution SA de CV | 3rd Party Logistics/Storage - 3PL | Itemized Detail Unavilable | Energy Segment Components | | $ 466,200.00 | | TBD | 0 | - | 466,200.00 |
| Welldex Distribution S.A. de C.V. RFC WDI140429V95 San Luis Mexico 78426 | CEVA | Welldex Distribution SA de CV | 3rd Party Logistics/Storage - 3PL | M00106-02002-003 | BERGSTROM A05GD-C02 Heat Pump, 1003278245 HVAC UNIT, 220V / 50Hz | 384.00 | $ 341,452.80 | $ 889.20 | Powin | 0 | 384.00 | 341,452.80 |
| Welldex Distribution S.A. de C.V. RFC WDI140429V95 San Luis Mexico 78426 | CEVA | Welldex Distribution SA de CV | 3rd Party Logistics/Storage - 3PL | M00106-02002-003 | BERGSTROM A05GD-C02 Heat Pump, 1003278245 HVAC UNIT, 220V / 50Hz | 178.00 | $ 158,277.60 | $ 889.20 | Powin | 0 | 178.00 | 158,277.60 |
| | | | | | | | $ 5,858,834.66 | | | | | 5,220,681.32 |
| | | | | | | | | | | | Cure Cost | 469,000 |
| | | | | | | | | | | | Pro rata Cure Cost | 417,916 |

**EXHIBIT B**

**SUBSTITUTE INVENTORY**

| Item | Item Material Group | Item Description | Quantity |
|------|--------------------|--------------------|----------|
| A10400-00003-300 | Stack Component | CATL BPC- Stacks 225, 230, 230P | 18 |
| E40101-10804-001 | Module | 1P8S 280Ah Module (A) Stack 230 | 4 |
| E40101-10804-002 | Module | 1P8S 280Ah Module (B) Stack 230 | 4 |
| M60102-40308-020 | Fasteners | CAPTIVE HARDWARE SET SOCKET HEAD HEX DRIVE CAP SCREW M8X20 WITH LARGE WASHER A2-70 STAINLESS STEEL | 69 |
| M60102-30308-020 | Fasteners | CAPTIVE HARDWARE SET, SOCKET HEAD CAP SCREW & WASHER, M8X20, STAINLESS STEEL | 29 |
| A11501-01001-600 | Stack Component | Vertical Copper Bus Bar Assembly, Stack 225,230 | 15 |
| P10900-02000-102 V2.0 | Busbars | BusBar 30X3 Stack 225,230 | 35 |
| E21703-00001-008 | Stack Component | AC Fuses Assembly- Stack 225,230 | 2 |
| E21703-00000-127 V2.0 | Stack Component | BP (A) balance cable (left) Stack 225, 230 230P | 10 |
| E21703-00000-129 V2.0 | Stack Component | BP (A) balance cable (right) Stack 225, 230 230P | 10 |
| E21703-00000-128 V2.0 | Stack Component | BP (A) balance cable (middle) Stack 225, 230 230P | 10 |
| M60102-30308-040 | Stack Component | Hexagon screws w/washers Stack 225,230 | 20 |
| E21703-00000-135 V2.0 | Stack Component | BP (B) balance cable (left) Stack 225, 230 230P | 8 |
| E21703-00000-137 V2.0 | Stack Component | BP (B) balance cable (right) Stack 225, 230 230P | 8 |
| E21703-00000-136 V2.0 | Stack Component | BP (B) balance cable (middle) Stack 225, 230 230P | 8 |
| S22-230-140-1000-C280-110 | Stack | Configured Stack 230E, CATL | 64 |
| E21703-00124-000 V1.1 | Stack Component | BP (A) - Thermistor cable (middle), Stacks 225, 230, 230P | 10 |
| E21703-00125-000 V1.1 | Stack Component | BP (A) - Thermistor cable (right), Stacks 225, 230, 230P | 10 |
| E21703-00140-000 V1.1 | Stack Component | BP (B) - Thermistor cable (right), Stacks 225, 230, 230P | 8 |
| E21703-00000-113 V2.0 | Stack Component | BPCP-BPC2.5 Connecting Cable- Stack 225,230,230P | 18 |
| E21703-00001-015 V2.0 | Stack Component | Stack Fan- Stack 225,230E | 7 |
| E21703-00000-103 | Stack Component | AC Cable from BP to BP, Stack 225,230 | 16 |
| E21703-00000-106 | Stack Component | CAN Cable From BP to BP Stack 225,230 | 26 |

1

| Item | Item Material Group | Item Description | Quantity |
|---|---|---|---|
| M50116-01116-000 | Electronics | CAN BUS TERMINAL RESISTOR 120 Ohm, 1/4 W, 1 AND 2 PIN | 2 |
| E21703-00000-105 | Stack Component | AC Cable From BP B(4) to BP B(5) Stack 225,230 | 2 |
| E21703-00000-104 | Stack Component | AC Cable From String to BP A(1) Stack 225,230 | 2 |
| E21703-00000-108 | Stack Component | CAN Cable From BP B(4) to BP B(5) Stack 225,230 | 3 |
| S22-230-140-1000-C280-110 | Stack | Configured Stack 230E, CATL | 51 |
| E21703-00000-131 | Stack Component | AS3 1-X3 a cable fan Stack 225,230 | 2 |
| E21703-00000-132 | Stack Component | AS3 2-X4 a cable fan Stack 225,230 | 2 |
| E21703-00000-133 | Stack Component | AS3 3-X1 a cable fan -Stack 225,230 | 2 |
| E21703-00000-134 | Stack Component | AS3 4-X2 a cable fan- Stack 225,230 | 2 |
| E21703-00000-107 | Stack Component | CAN Cable From String to BP A(1) Stack 225,230 | 2 |
| S22-230-180-1000-C280-110_DO NOT USE, NOT A FG | Stack | Stack230E/CATL 280Ah | 1 |
| E40101-10804-001 | Module | 1P8S 280Ah Module (A) Stack 230 | 9 |
| E40101-10804-002 | Module | 1P8S 280Ah Module (B) Stack 230 | 7 |

2

## EXHIBIT C

## BILL OF SALE FOR SUBSTITUTE INVENTORY

This Bill of Sale, dated as of November [__], 2025 (this "Bill of Sale"), is made and entered into by and among Powin, LLC, a Delaware limited liability company ("Powin"), and Powin's direct and indirect subsidiaries that are signatories below (together with Powin, "Sellers" or the "Debtors"), and FlexGen Power Systems, LLC, a Delaware limited liability company (together with its permitted successors, designees and assigns, "Buyer"), in connection with the Settlement Agreement, dated as of July 6, 2025 (the "Settlement Agreement"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Settlement Agreement and the Asset Purchase Agreement, dated as of July 6, 2025 (the "Asset Purchase Agreement").

WHEREAS, ON August 18, 2025, the Bankruptcy Court entered that certain Sale Order [Docket No. 751], pursuant to which the Debtors and FlexGen entered into the Asset Purchase Agreement, under which FlexGen purchased certain assets from the Debtors.

WHEREAS, pursuant to the Settlement Agreement, Sellers have, among other things, agreed to sell, transfer, assign, convey and deliver to Buyer and Buyer has agreed to acquire and accept from Sellers in partial satisfaction of certain prior obligations of Sellers under the Asset Purchase Agreement, all of the right, title and interest of Sellers in and to the assets listed on Exhibit B hereto (the "Substitute Inventory"), free and clear of all Liens; and

WHEREAS, Sellers desire to deliver to Buyer such instruments of sale, transfer assignment, conveyance and delivery as are required to vest in Buyer all of Sellers' right, title and interest in and to the Substitute Inventory.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the Settlement Agreement, the parties hereto, intending to be legally bound, hereby agree as follows:

Each Seller hereby sells, transfers, assigns, conveys and delivers to Buyer all of its right, title and interest in and to the Substitute Inventory, free and clear of all Liens.

From time to time after the date hereof, each Seller shall, upon the reasonable request of Buyer, execute and deliver or cause to be executed and delivered such further instruments of sale, conveyance, assignment, transfer and assumption, and take such further action, as Buyer may reasonably request in order to more effectively carry out the purposes and intent of the Asset Purchase Agreement and this Bill of Sale.

This Bill of Sale is being executed by Sellers and Buyer and shall be binding upon each of Sellers and Buyer, their respective successors and assigns, for the respective uses and purposes herein set forth and referred to, and shall be effective as of the date hereof.

No provision of this Bill of Sale, express or implied, is intended or shall be construed to confer upon or give to any Person, other than the parties hereto and their respective successors and permitted assigns, any remedy or claim under or by reason of this Bill of Sale or any term, covenant

Non-Public

or condition hereof, and all of the terms, covenants, conditions, promises and agreements contained in this Bill of Sale shall be for the sole and exclusive benefit of each of Sellers and Buyer, their respective successors and permitted assigns.

None of the provisions of this Bill of Sale may be amended or waived except if such amendment or waiver is in writing and is signed, in the case of an amendment, by Sellers and Buyer, or in the case of a waiver, by the party(ies) against whom the waiver is to be effective.

This Bill of Sale is subject in all respects to the terms and conditions of the Settlement Agreement and Asset Purchase Agreement (as amended or modified by the Settlement Agreement).  Nothing contained in this Bill of Sale shall be deemed to supersede, enlarge or modify any of the representations, warranties, covenants or other agreements contained in the Settlement Agreement and Asset Purchase Agreement, all of which survive the execution and delivery of this Bill of Sale as provided by, and subject to the limitations set forth in, the Settlement Agreement and Asset Purchase Agreement.  To the extent any provision of this Bill of Sale is inconsistent with the Settlement Agreement or Asset Purchase Agreement, the provisions of the Settlement Agreement and Asset Purchase Agreement shall govern and control.

This Bill of Sale shall in all aspects be governed by and construed in accordance with the internal Laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the parties shall be determined in accordance with such Laws.

This Bill of Sale may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  This Bill of Sale or any counterpart may be executed and delivered by facsimile or email with scan attachment copies, each of which shall be deemed an original.

*[Signature Page Follows]*

US_ACTIVE\131765822

IN WITNESS WHEREOF, the parties have caused this Bill of Sale to be duly executed by their respective authorized officers as of the date first above written.

**SELLERS:**

**POWIN PROJECT LLC**
**PEOS HOLDINGS, LLC**
**POWIN CHINA HOLDINGS 1, LLC**
**POWIN CHINA HOLDINGS 2, LLC**
**CHARGER HOLDINGS, LLC**
**POWIN ENERGY ONTARIO STORAGE, LLC**
**POWIN ENERGY OPERATING HOLDINGS, LLC**

With respect to each above listed entity,

By: BESS REMAINCO LLC, its sole Member

By: _____
    Name:
    Title:

**POWIN ENERGY OPERATING, LLC**

By: BESS REMAINCO LLC, its Managing Member

By: _____
    Name:
    Title:

**BESS REMAINCO LLC (F/K/A POWIN, LLC)**

By: _____
    Name:
    Title:

**BUYER:**

**FLEXGEN POWER SYSTEMS, LLC**

By: _____
Name:
Title:

*[Signature Page to Bill of Sale]*

Non-Public

# EXHIBIT D

## BILL OF SALE FOR WELLDEX INVENTORY

This Bill of Sale, dated as of November [_], 2025 (this "<u>Bill of Sale</u>"), is made and entered into by and among Powin, LLC, a Delaware limited liability company ("<u>Powin</u>"), and Powin's direct and indirect subsidiaries that are signatories below (together with Powin, "<u>Transferees</u>" or the "<u>Debtors</u>"), and FlexGen Power Systems, LLC, a Delaware limited liability company (together with its permitted successors, designees and assigns, "<u>FlexGen</u>" or "<u>Transferor</u>"), in connection with the Settlement Agreement, dated as of July 6, 2025 (the "<u>Settlement Agreement</u>"). Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Settlement Agreement and the Asset Purchase Agreement, dated as of July 6, 2025 (the "<u>Asset Purchase Agreement</u>").

WHEREAS, on August 18, 2025, the Bankruptcy Court entered that certain Sale Order [Docket No. 751], pursuant to which the Debtors and FlexGen entered into the Asset Purchase Agreement, under which FlexGen purchased certain assets from the Debtors. Schedule 2.1(a) of the Asset Purchase Agreement lists the "Purchased Inventory," which includes inventory from a variety of warehouses and third-party locations, including Welldex;

WHEREAS, pursuant to the Settlement Agreement, among other things, Transferor has agreed to return, transfer, assign, convey and deliver to Transferees and Transferees have agreed to acquire and accept from Transferor, all of the right, title and interest of Transferor in and to the assets listed on Exhibit A hereto (the "<u>Welldex Inventory</u>"); and

WHEREAS, Transferor desires to deliver to Transferees such instrument of sale, transfer assignment, and conveyance as is required to vest in Seller all of Transferor's right, title and interest in and to the Welldex Inventory.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the Settlement Agreement, the parties hereto, intending to be legally bound, hereby agree as follows:

Transferor hereby returns, transfers, assigns, and conveys to Transferees all of its right, title and interest in and to the Welldex Inventory, "as is, where is", with all faults, and with no representations, warranties, or guarantees of any kind, express or implied. Notwithstanding the foregoing, Transferor hereby represents and warrants that it has good and valid title to the Welldex Inventory and that it has not sold, assigned, transferred, conveyed, or otherwise disposed of, or purported to sell, assign, transfer, convey, or otherwise dispose of, any right, title, or interest in the Welldex Inventory to any other Person.

This Bill of Sale is being executed by Transferees and Transferor and shall be binding upon each of Transferees and Transferor, their respective successors and assigns, for the respective uses and purposes herein set forth and referred to, and shall be effective as of the date hereof.

No provision of this Bill of Sale, express or implied, is intended or shall be construed to confer upon or give to any Person, other than the parties hereto and their respective successors and

Non-Public

permitted assigns, any remedy or claim under or by reason of this Bill of Sale or any term, covenant or condition hereof, and all of the terms, covenants, conditions, promises and agreements contained in this Bill of Sale shall be for the sole and exclusive benefit of each of Transferees and Transferor, their respective successors and permitted assigns.

None of the provisions of this Bill of Sale may be amended or waived except if such amendment or waiver is in writing and is signed, in the case of an amendment, by Transferees and Transferor, or in the case of a waiver, by the party(ies) against whom the waiver is to be effective.

This Bill of Sale is subject in all respects to the terms and conditions of the Settlement Agreement.  Nothing contained in this Bill of Sale shall be deemed to supersede, enlarge or modify any of the representations, warranties, covenants or other agreements contained in the Settlement Agreement, all of which survive the execution and delivery of this Bill of Sale as provided by, and subject to the limitations set forth in, the Settlement Agreement.  To the extent any provision of this Bill of Sale is inconsistent with the Settlement Agreement, the provisions of the Settlement Agreement shall govern and control.

This Bill of Sale shall in all aspects be governed by and construed in accordance with the internal Laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the parties shall be determined in accordance with such Laws.

This Bill of Sale may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  This Bill of Sale or any counterpart may be executed and delivered by facsimile or email with scan attachment copies, each of which shall be deemed an original.

*[Signature Page Follows]*

Non-Public

IN WITNESS WHEREOF, the parties have caused this Bill of Sale to be duly executed by their respective authorized officers as of the date first above written.

**TRANSFEREES:**

**POWIN PROJECT LLC**
**PEOS HOLDINGS, LLC**
**POWIN CHINA HOLDINGS 1, LLC**
**POWIN CHINA HOLDINGS 2, LLC**
**CHARGER HOLDINGS, LLC**
**POWIN ENERGY ONTARIO STORAGE, LLC**
**POWIN ENERGY OPERATING HOLDINGS, LLC**

With respect to each above listed entity,

By: BESS REMAINCO LLC, its sole Member

By: _____
    Name:
    Title:

**POWIN ENERGY OPERATING, LLC**
By: BESS REMAINCO LLC, its Managing Member

By: _____
    Name:
    Title:

**BESS REMAINCO LLC (F/K/A POWIN, LLC)**
By: _____
    Name:
    Title:

**TRANSFEROR:**

**FLEXGEN POWER SYSTEMS, LLC**

By: _____
Name:
Title:

*[Signature Page to Bill of Sale]*