## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

### FEE APPLICATION COVER SHEET

| | | | |
|---|---|---|---|
| Debtor: | In re Powin, LLC, et al.,[1] | Applicant: | Kurtzman Carson Consultants, LLC dba Verita Global, Administrative Agent to the Debtors and Debtors in Possession |
| Case No.: | 25-16137 (MBK) (Jointly Administered) | Client: | Debtors and Debtors in Possession |
| Chapter: | 11 | Case Filed: | June 9, 2025 |

## SECTION 1
## FEE SUMMARY

☒Interim Fee Application No. 1 or  ☐ Final Fee Application

| | FEES | EXPENSES |
|---|---|---|
| Total Previous Fee Requested: | $ 0 | $0 |
| Total Fees Allowed To Date: | $ 0 | $0 |
| Total Retainer (If Applicable) | $ n/a | $0 |
| Total Holdback (If Applicable) | $ 0 | $0 |
| Total Received By Applicant | $ 0 | $0 |

| NAME OF PROFESSIONAL & TITLE | YEAR ADMITTED (Or Years Of Professional Service) | HOURS | RATE | FEE |
|---|---|---|---|---|
| 1. Daniel McSwigan | 30 years | 69 | $220.50 | $15,214.50 |
| 2. Darlene Calderon | 17 years | 65.1 | $225.00 | $14,647.50 |
| 3. Jonathan Thomson | 5 years | 4.4 | $220.50 | $970.20 |
| 4. Travis Buckingham | 9 years | 10.6 | $220.50 | $2,337.30 |
| 5. William Gruber | 33 years | 66.6 | $225.00 | $14,985.00 |

Fee Totals:  $48,154.50

Disbursements Totals:  $0

Total Fee Application  $48,154.50

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5746]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holding 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110]. The Debtors' mailing address is 20550 SW 115th Avenue, Tualatin, OR 97062.

**SECTION II**
**SUMMARY OF SERVICES**

| SERVICES RENDERED | HOURS | FEE |
|---|---|---|
| a) **Asset Analysis and Recovery:**<br>Identification and review of potential assets including causes of action and non-litigation recoveries. | 0 | $0.00 |
| b) **Asset Disposition**<br>Sales, leases, abandonment and related transaction work. | 0 | $0.00 |
| c) **Avoidance Action Litigation**<br>Preference and fraudulent transfer litigation. | 0 | $0.00 |
| d) **Business Operations**<br>Issues related to debtor-in-possession operating in chapter 11 such as employee, vendor, tenant issues and other similar problems. | 0 | $0.00 |
| e) **Case Administration**<br>Coordination and compliance activities, including preparation of statement of financial affairs, schedules, list of contracts, United States Trustee interim statements and operating reports; contacts with the United States Trustee; general creditor inquires. | 215.7 | $48,154.50 |
| f) **Claims Administration and Objections**<br>Specific claim inquiries; bar date motions; analyses, objections and allowance of claims. | 0 | $0.00 |
| g) **Employee Benefits/Pensions**<br>Review issues such as severance, retention, 401K coverage and continuance of pension plan. | 0 | $0.00 |
| h) **Fee/Employment Applications**<br>Preparations of employment and fee applications for self or others; motions to Establish interim procedures. | 0 | $0.00 |
| i) **Fee/Employment Objections**<br>Review of an objections to the employment and fee applications of others. | 0 | $0.00 |
| j) **Financing**<br>Matters under 361, 363 and 364 including cash collateral and secured clams; loan document analysis. | 0 | $0.00 |
| k) **Litigation**<br>Other than Avoidance Action Litigation (there should be a separate category established for each major matter). | 0 | $0.00 |
| l) **Meetings of Creditors**<br>Preparing for and attending the conference of creditors, the 341(a) meeting and other creditors' committee meetings. | 0 | $0.00 |
| m) **Plan and Disclosure Statement**<br>Formulation, presentation and confirmation; compliance with the plan confirmation order, related orders and rules; disbursement and case closing activities, except those related to allowance and objections to allowance of claims. | 0 | $0.00 |

| SERVICES RENDERED | HOURS | FEE |
|---|---|---|
| n) **Relief from Stay Proceedings**<br>Matters relating to termination or continuation of automatic stay under 362. | 0 | $0.00 |
| o) **Accounting/Auditing**<br>Activities related to maintaining and auditing books of account, preparation of financial statements and account analysis. | 0 | $0.00 |
| p) **Business Analysis**<br>Preparation and review of company business plan; development and review of strategies; preparation and review of cash flow forecasts and feasibility studies. | 0 | $0.00 |
| q) **Corporate Finance**<br>Review financial aspects of potential mergers, acquisitions and disposition of company or subsidiaries. | 0 | $0.00 |
| r) **Data Analysis**<br>Management information systems review, installation and analysis, construction, maintenance and reporting of significant case financial data, lease rejection, claims, etc. | 0 | $0.00 |
| s) **Litigation Consulting**<br>Providing consulting and expert witness services related to various bankruptcy matters such as insolvency, feasibility, avoiding actions; forensic accounting, etc. | 0 | $0.00 |
| t) **Reconstruction Accounting**<br>Reconstructing books and records from past transactions and brining accounting current. | 0 | $0.00 |
| u) **Tax Issues**<br>Analysis of tax issues and preparation of state and federal tax returns. | 0 | $0.00 |
| v) **Valuation**<br>Appraise or review appraisals of assets. | 0 | $0.00 |
| w) **Travel Time** | 0 | $0.00 |
| **SERVICE TOTALS:** | 215.7 | $48,154.50 |

**SECTION III**
**SUMMARY OF DISBURSEMENTS**

| DISBURSEMENTS | AMOUNT |
|---|---|
| a) **Filing Fees**<br>Payable to Clerk of Court. | $0.00 |
| b) **Computer Assisted Legal Research**<br>Westlaw, Lexis and a description of manner calculated. | $0.00 |
| c) **Pacer Fees**<br>Payable to the Pacer Service Center for search and/or print. | $0.00 |
| d) **Fax**<br>Include per page fee charged. | $0.00 |
| e) **Case Specific Telephone/Conference Call Charges**<br>Exclusive of overhead charges. | $0.00 |
| f) **In-house Reproduction Services**<br>Exclusive of overhead charges. | $0.00 |
| g) **Outside Reproduction Services**<br>Including scanning services. | $0.00 |
| h) **Other Research**<br>Title searches, UCC searches, Asset searches, Accurint. | $0.00 |
| i) **Court Reporting**<br>Transcripts. | $0.00 |
| j) **Travel**<br>Mileage, tolls, airfare, parking. | $0.00 |
| k) **Courier & Express Carriers**<br>Overnight and personal delivery. | $0.00 |
| l) **Postage** | $0.00 |
| m) **Other (specify)** | $0.00 |
| **DISBURSEMENTS TOTAL:** | $0.00 |

I certify under penalty of perjury that the above is true.

Date: 11/26/2025                                    /Drake Foster
                                                     Signature

*rev. 10/1/15*

4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re Powin, LLC, *et al.*,[1] | Applicant: Kurtzman Carson Consultants, LLC dba Verita Global, Administrative Agent to the Debtors and Debtors in Possession |
| Case No. 25-16137 (MBK) (Jointly Administered) | Client: Debtors and Debtors in Possession |
| Chapter 11 | Case Filed: June 9, 2025[2] |

**FIRST INTERIM FEE APPLICATION OF KURTZMAN CARSON CONSULTANTS, LLC DBA VERITA GLOBAL FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED DURING THE INTERIM FEE PERIOD FROM JUNE 17, 2025 THROUGH SEPTEMBER 30, 2025**

**TO: HONORABLE MICHAEL B. KAPLAN**
    **UNITED STATES BANKRUPTCY JUDGE**

Pursuant to sections 327, 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rues for the District of New Jersey (the "Local Rules"), Kurtzman Carson Consultants, LLC dba Verita Global ("Verita"), administrative advisor for the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits its first interim fee application (this "Fee Application") for allowance of

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5746]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holding 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].  The Debtors' mailing address is 20550 SW 115th Avenue, Tualatin, OR 97062.

[2]   Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the remaining Debtors, with the exception of Powin EKS SellCo, LLC Case No. 25-20757 (MBK) which was filed for joint administration on October 30, 2025, were filed shortly thereafter on June 10, 2025 and June 22, 2025.

compensation for professional services provided in the amount of $48,154.50 for the period from

June 17, 2025 through and including September 30, 2025 (the "Fee Period").  In support of this

Fee Application, Verita represents as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of

Reference to the Bankruptcy Court Under Title 11 dated as of September 18, 2012.  This matter is

a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      On the June 9, 2025 (the "Petition Date")[3], the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating

their businesses and managing their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code. On June 13, 2025, the Court entered an order [Docket

No. 58] authorizing procedural consolidation and joint administration of these Chapter 11 Cases

pursuant to Bankruptcy Rule 1015(b). No trustee or examiner has been appointed in these Chapter

11 Cases.

4.      On June 10, 2025, the Debtors filed an application to employ Verita as its claims

and noticing agent (in such capacity, the "Claims and Noticing Agent") pursuant to 28 U.S.C.

§ 156(c) [Docket No. 9] (the "Section 156(c) Application"), which was approved by the Court on

June 13, 2025 [Docket No. 66] (the "Section 156(c) Order").

---

[3]     Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the
remaining Debtors, with the exception of Powin EKS SellCo, LLC Case No. 25-20757 (MBK) which was filed
for joint administration on October 30, 2025, were filed shortly thereafter on June 10, 2025 and June 22, 2025.

5.      Given that the administration of these chapter 11 cases would require Verita to perform duties outside the scope of 28 U.S.C. § 156(c), the Debtors supplemented the Section 156(c) Application with an application to retain Verita to perform certain services as the Debtors' administrative advisor in these chapter 11 cases (in such capacity, the "Administrative Advisor"). On June 17, 2025, the Debtor filed the *Debtors' Application for Entry of an Order Authorizing the Debtors to Employ Kurtzman Carson Consultants, LLC dba Verita Global as Administrative Advisor Effective as of the Petition Date* [Docket No. 412].  On July 24, 2025, the Court entered the *Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Administrative Advisor Effective as of June 17, 2025* [Docket No. 500] (the "Retention Order").  The Retention Order authorized the Debtors to compensate Verita in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

6.      The Retention Order authorizes Verita to provide the following services:

(a)  assist with among other things, the preparation of confidential online workspaces and data rooms;

(b)  assist with, among other things, the preparation of the Debtors' Schedules and Statements and the gathering of data in conjunction therewith;

(c)  assist with, among other things, solicitation, balloting and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties-in-interest, including, if applicable, brokerage firms, bank back-offices, and institutional holders;

(d)  prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

(e)  manage and coordinate any distributions pursuant to a chapter 11 plan; and

(f)  provide such other processing, solicitation, balloting and other administrative services described in the Services Agreement, but not included in the Claims Agent Application, as may be requested from time to time by the Debtors or the Court.

7.      The amounts sought in this Application do not include any fees that may be payable by the Debtors for services provided by Verita under the Section 156(c) Order.  Procedures for the payment of such fees and disbursements are separately addressed in the Section 156(c) Order. Additionally, no fees and disbursements for services provided to the Debtor under the Retention Order are or will be sought to be paid under the Section 156(c) Order.

8.      On July 25, 2025, the Court entered the *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* [Docket No. 519] (the "Interim Compensation Order").  Pursuant to the Interim Compensation Order, Professionals (as defined therein), are authorized to be paid eighty (80%) percent of fees and one-hundred (100%) percent of expenses requested in monthly fee statements that are to be filed with the Court, subject to a fourteen-day objection deadline.  The Interim Compensation Order further provides that at four-month intervals or such other intervals directed by the Court, Professionals (as defined therein) may file interim applications for allowance of compensation and reimbursement of expenses of the amount sought in the monthly fee statements, including the twenty (20%) percent holdback, pursuant to section 331 of the Bankruptcy Code.

9.      As disclosed in the *Declaration of Evan J. Gershbein in Support of the Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Administrative Advisor Effective as of the Petition Date* [Docket No. 412, Exhibit B], Verita does not have any materially adverse connection to the Debtors, its creditors or other relevant parties and is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  Verita may have rendered and may continue to render services to certain of these creditors

in matters unrelated to the chapter 11 case, either as vendors or in cases where Verita serves in a

neutral capacity as a bankruptcy claims and noticing agent or class action settlement administrator.

10.     On May 1, 2023, funds affiliated with GCP Capital Partners LLC ("GCP")

indirectly acquired a controlling equity interest in Verita (the "Acquisition").  Pursuant to the

Acquisition, an indirect, non-controlling, beneficial minority interest in Verita was acquired by

funds affiliated with J.P. Morgan Investment Management Inc. ("JPMIM").   GCP is a

middle-market private equity investment firm based in New York.  GCP has made investments in

a number of industries, including tech-enabled business services, payments, and select financials.

JPMIM is a U.S. registered investment adviser.  Designees of GCP are members of the Board of

Managers (the "Board") of Verita's ultimate parent company, KCC Parent LLC dba Verita Parent

("Parent").  Parent wholly owns Verita Intermediate, LLC, which in turn wholly owns Verita

Global, LLC, which in turn wholly owns Verita Global Services, LLC, which in turn wholly owns

Verita.  One representative of JPMIM is entitled to attend and observe (but not vote) at all meetings

of the Board, but no designee of JPMIM is a member of the Board.

11.     Verita searched all entities listed in the list of Potential Parties in Interest against

an internal database that includes (i) Verita's parent entities, affiliates, and subsidiaries and (ii)

GCP, GCP's funds, and each such fund's respective portfolio companies and investments as set

forth in the list most recently provided to Verita by GCP.  Based solely on the foregoing search,

Verita has determined, to the best of its knowledge, that there are no material connections.

12.     Verita has working relationships with certain of the professionals retained by the

Debtors and other parties herein, but such relationships, except to the extent that Verita and counsel

to the Debtors have communicated concerning the preparations for these Chapter 11 Cases, are

unrelated to these Chapter 11 Cases. Francine Gordon Durrer, a Senior Managing Director of

Corporate Restructuring Services at Verita, is married to Van C. Durrer, II, a partner with the law firm of Dentons, proposed counsel to the Debtors. Ms. Durrer will not be utilized by Verita to perform services for the Debtors.

13.     All services for which compensation is requested by Verita were performed on behalf of the Debtors.

## DISCLOSURE OF COMPENSATION AND REQUESTED AWARD

14.     By this Fee Application, Verita requests (a) an award of compensation for professional services provided in the amount of $48,154.50 for the Fee Period; and (b) payment of $48,154.50, which, as of the date hereof, is the total amount of fees for services rendered during the Fee Period for which Verita has not yet been paid.

15.     Verita prepared monthly fee applications as filed with this Court at Docket Nos. 628 and 806 (each a "Monthly Fee Statement," and collectively, the "Monthly Fee Statements") for the months of June 2025 and July 2025.  The Monthly Fee Statements sought approval of fees in the aggregate amount of $48,154.50 and expenses in the aggregate amount of $0.00.

16.     The amount of time spent by each employee providing services to the Debtors for the Fee Period is detailed in line item listings of time entries and descriptive detail set forth herein and in the invoices attached to the Monthly Fee Statements.  These are Verita's normal hourly rates of compensation for work of this character.  The reasonable value of the services rendered by Verita for the Final Fee Period as Administrative Advisor to the Debtors in these chapter 11 case is $48,154.50.  Verita is not seeking reimbursement for any expenses in this Fee Application. Verita professionals expended 215.7 hours of work during the Fee Period at a blended hourly rate of $223.25.

## SUMMARY OF PROFESSIONAL SERVICES[4]

17.    During the Fee Period, Verita professionals spent 215.7 hours assisting the Debtors and their professionals with the preparation of the Debtors' Schedules and Statements and amended Schedules and Statements, including frequent communication regarding data, timelines, preparation status, and updates.  Verita also gathered, organized, and tracked the Schedule and Statement data, prepared and updated multiple templates for and drafts of the Schedules and Statements.

18.    Verita believes that the time entries included in **Exhibit B** are in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

19.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, Verita submits that the amount requested is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.

## BASIS FOR RELIEF

20.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 327.

---

[4]    This summary of services rendered during the Fee Period is not intended to be a detailed or exhaustive description of the work performed by Verita.  More detailed descriptions of the work performed in the Fee Period, categorized by subject matter, and those day-to-day services and the time expended in performing such services are set forth in the detailed time records attached hereto as **Exhibit B**.

21.     Section 330 of the Bankruptcy Code contains two separate criteria, and before determining the reasonableness of the services rendered, the Court must make a threshold inquiry into its necessity.  See *In re Engle*, 190 B.R. 206, 209 (Bankr. D.N.J. 1995); see also *In re Fleming Cos.*, 304 B.R. 85, 89 (D. Del. 2003) (discussing a two-tiered approach to determine whether compensation should be allowed–first "the court must be satisfied that the attorney performed actual and necessary services" and second, "the court must assess a reasonable value for those services.").  The majority of courts that have interpreted section 330 of the Bankruptcy Code have held that an element of whether such services are "necessary" is whether they benefitted the bankruptcy estate.  Engel, 190 B.R. at 209.  Further, the test for determining necessity is objective, focusing on what services a reasonable lawyer would have performed under the same circumstances.  See *In re APW Enclosure Sys., Inc.*, No. 06-11378 (MFW), 2007 WL 3112414, at *3 (Bankr. D. Del. 2007) (citing *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996)).  This test does not rely on hindsight to determine the ultimate success or failure of the attorneys' actions.  *See id*. (citing *Keate v. Miller* (*In re Kohl*), 95 F.3d 713, 714 (8th Cir. 1996)).

22.     Once the Court determines that the services were necessary, it also assesses the reasonable value of the services.  See 11 U.S.C. § 330(a)(3).  Specifically, section 330(a)(3) of the Bankruptcy Code sets forth the criteria for the award of such compensation and reimbursement.  In determining the amount of reasonable compensation to be awarded, the Court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including:

    a.   the time spent on such services;

    b.   the rates charged for such services;

    c.   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    d.   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed;

    e.   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    f.   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

23.     In determining the reasonableness of fees, courts in this Circuit routinely "employ the twelve factors set forth in *Johnson v. GA Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)." *Staino v. Cain* (*In re Lan Assocs. XI, L.P.*), 192 F.3d 109, 123 (3d Cir. 1999). These factors include: (i) the time and labor required; (ii) the novelty and difficulty of the questions involved; (iii) the skill required to perform the legal service properly; (iv) the preclusion of employment by the attorney due to acceptance of the case; (v) the customary fee charged; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *Id*. at 123 n.8.

24.     In the instant case, Verita respectfully submits that the services for which it seeks compensation in this Fee Application were necessary for and beneficial to the Debtors during the pendency of this chapter 11 case. Verita respectfully submits that the services rendered to the Debtors were performed economically, effectively and efficiently and the results obtained have benefited not only the Debtors, but also creditors and parties in interest as a whole. Verita further submits that the compensation requested herein is reasonable in light of the nature, extent and value of such services to the Debtors.

25.     In sum, the services rendered by Verita were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the complexity, importance, novelty and nature of the issues involved.  Accordingly, approval of the compensation sought herein is warranted.

## <u>CONCLUSION</u>

26.     The administrative services summarized by this Fee Application and rendered by Verita to the Debtors during the Fee Period were substantial, professional, and beneficial to the Debtors.

27.     As demonstrated throughout this Fee Application, the other factors typically considered in determining compensation – including complexity, results achieved, special expertise, magnitude of the matter, and professional standing – all militate toward the conclusion that the amount of compensation requested by Verita is necessary, fair, and reasonable.

28.     All services for which compensation is sought were performed for and on behalf of the Debtors.  Verita is charging its standard hourly rate for professionals performing services. Verita has not entered into any agreement, express or implied, with any other party in interest for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in this chapter 11 case.

**WHEREFORE**, Verita respectfully requests that this Court enter an order:  (a) awarding compensation for professional services provided in the amount of $48,154.50 for the Fee Period; (b) authorizing payment of $48.154.50, which, as of the date hereof, is the total amount of fees for services rendered during the Fee Period for which Verita has not yet been paid; and (c) granting such other and further relief as this Court deems just and proper.

Dated:  November 25, 2025
        El Segundo, California

                                    /s/ Sarah Harbuck
                                    SARAH HARBUCK
                                    Assistant General Counsel
                                    Kurtzman Carson Consultants, LLC
                                    dba Verita Global

## Exhibit A

**Retention Order**

Docket #0500   Date Filed: 07/24/2025

**Order Filed on July 24, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

In re:

Powin, LLC, *et al.*,[1]

             Debtors.

Chapter 11

Case No. 25-16137 (MBK) (Jointly Administered)

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KURTZMAN CARSON CONSULTANTS, LLC DBA VERITA GLOBAL AS ADMINISTRATIVE ADVISOR EFFECTIVE AS OF JUNE 17, 2025

The relief set forth on the following pages, numbered three (3) through six (6), is **ORDERED**.

**DATED: July 24, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062

2516137250724000000000006

(Page | 2)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Administrative Advisor Effective as of the Petition Date |

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
        van.durrer@dentons.com

John D. Beck (*pro hac vice* pending)
Sarah M. Schrag (*pro hac vice* pending)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
        sarah.schrag@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
        aglaubach@teamtogut.com
        eblander@teamtogut.com

*Proposed Counsel for Debtors and Debtors in Possession*

Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of Order:       Order Authorizing the Employment and Retention of Kurtzman Carson
                        Consultants, LLC dba Verita Global as Administrative Advisor
                        Effective as of the Petition Date

---

Upon consideration of the application (the "Application")[1], of the above-captioned debtors
and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order")
authorizing the Debtors to employ and retain Kurtzman Carson Consultants, LLC dba Verita
Global ("Verita") as administrative advisor in the Debtors' Chapter 11 Cases (the "Administrative
Advisor"), effective as of June 17, 2025, pursuant to section 327(a) of the Bankruptcy Code,
Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, all as more fully described
in the Application; and upon the Gershbein Declaration; and the Court having jurisdiction to
consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334 and the
Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District
Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012
(Simandle, C.J.) and consideration of the Application and the relief requested therein being a core
proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this
proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;
and this Court having found that the Debtors' notice of the Application was appropriate under the
circumstances and no other notice need be provided; and this Court having reviewed the
Application and having heard the statements in support of the relief requested therein at a hearing
before this Court; and this Court being satisfied, based on the representations made in the
Application and the Gershbein Declaration, that (a) Verita does not hold or represent an interest
adverse to the Debtors' estates and (b) Verita is a "disinterested person" as defined in section
101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and this
Court having determined that the legal and factual bases set forth in the Application establish just

(Page | 4)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Administrative Advisor Effective as of the Petition Date |

cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor

**IT IS HEREBY ORDERED THAT**:

1.      The Application is **GRANTED** as set forth herein.

2.      The Debtors are authorized to retain Verita as Administrative Advisor pursuant to section 327(a) of the Bankruptcy Code effective as of the Petition Date under the terms of the Services Agreement attached hereto as Exhibit 1, and Verita is authorized to perform the bankruptcy administration services described in the Application and set forth in the Services Agreement.

3.      Any services Verita will provide relating to the Debtors' schedules of assets and liabilities and statements of financial affairs shall be limited to administrative and ministerial services.  The Debtors shall remain responsible for the content and accuracy of their schedules of assets and liabilities and statements of financial affairs.

4.      Verita is authorized to take all actions necessary to comply with its duties as Administrative Advisor as described in the Application and set forth in the Services Agreement.

5.      Verita shall apply to the Court for allowance of compensation and reimbursement of expenses incurred in its capacity as Administrative Advisor in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in these cases regarding professional compensation and reimbursement of expenses.  The

---

1

(Page | 5)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Administrative Advisor Effective as of the Petition Date |

indemnification, contribution and reimbursement provisions in the Services Agreement are approved, subject to the following modifications, applicable during the pendency of these Chapter 11 Cases:

(a) Verita shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement unless the indemnification, contribution, or reimbursement is approved by the Court.

(b) Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify Verita, or provide contribution or reimbursement to Verita, for any claim or expense that is either: (i) judicially determined (that determination having become final) to have arisen from Verita's gross negligence, willful misconduct, bad faith, self-dealing, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Verita's obligations under the Services Agreement, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtors' consent prior to a judicial determination as to subclauses (i) or (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which Verita should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement, as modified by this Order.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 Cases, Verita believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement, as modified by this Order, including, without limitation, the advancement of defense costs, Verita must file an application therefor in this Court, and the Debtors may not pay any such amounts to Verita before the entry of an order of this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Verita for indemnification contribution, and/or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify or make contributions or reimbursements to Verita. All parties in interest shall retain the right to object to any demand by Verita for indemnification, contribution, or reimbursement.

(Page | 6)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Administrative Advisor Effective as of the Petition Date |

6.      Notwithstanding anything to the contrary contained in the Application, the Gershbein Declaration, or the Services Agreement, during the Chapter 11 Cases, any limitation of liability including, but not limited to, section IX of the Services Agreement shall be of no force or effect.

7.      Notwithstanding anything to the contrary contained in the Application, Gershbein Declaration, or the Services Agreement, including paragraph II(A) thereof, Verita shall provide at least thirty (30) days' notice of any increases in its billing rates, subject to the parties-in-interest's right to object to any such increases.

8.      Notwithstanding anything to the contrary contained in the Application, Gershbein Declaration, or the Services Agreement, in the event that any of these Chapter 11 Cases convert to a case under chapter 7 of the Bankruptcy Code, the chapter 7 trustee appointed to such case or cases shall have no obligation to continue the engagement of Verita.

9.      Notwithstanding anything to the contrary contained in the Application, the Gershbein Declaration, or the Services Agreement, Verita shall seek reimbursement from the Debtors' estates for its engagement-related expenses at the firm's actual costs paid.

Notwithstanding, anything to the contrary contained in the Application, the Gershbein Declaration or the Services Agreement, to the extent Verita uses the services of independent contractors or subcontractors (collectively, the "**Contractors**") in these chapter 11 cases, Verita shall (a) pass through the cost of such Contractors to the Debtors at the same rate that Verita pays the Contractors; (b) seek reimbursement for actual costs of the Contractors only; (c) ensure that the Contractors perform the conflicts check required by Bankruptcy Rule 2014 and file with the

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Administrative Advisor Effective as of the Petition Date |

Court such disclosures as required by Bankruptcy Rule 2014; and (d) attach any such Contractor invoices to its monthly fee statements, interim fee applications and/or final fee applications filed in these chapter 11 cases.

12.     Notwithstanding anything to the contrary contained in the Application, Gershbein Declaration, or the Services Agreement, (i) the 2.5% late charge in paragraph II(E) of the Service Agreement shall not be assessed during the pendency of these chapter 11 cases and (ii) the payment of invoices upon receipt in paragraph II(E) of the Services Agreement shall not be applicable during the pendency of these cases.

13.     Notwithstanding anything to the contrary contained in the Application, the Gershbein Declaration, or the Services Agreement, including section VI thereof, termination of Verita's retention shall only commence upon entry of an order by this Court terminating Verita's retention.

14.     Notwithstanding anything to the contrary contained in the Application, Gershbein Declaration, or the Services Agreement, including section XIII thereof, the Court shall have exclusive jurisdiction over Verita's engagement during the pendency of these chapter 11 cases.

15.     Notwithstanding anything to the contrary contained in the Application, the Gershbein Declaration, or the Services Agreement, including section VIII thereof, Verita is not authorized to establish accounts with financial institutions in the name of and as agent for the Debtors.

16.     Notwithstanding anything to the contrary contained in the Application, Gershbein Declaration, or the Services Agreement, solely during the pendency of these chapter 11 cases, if

(Page | 8)

| | |
|---|---|
| Debtors: | Powin, LLC, *et al.* |
| Case No. | 25-16137 (MBK) |
| Caption of Order: | Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Administrative Advisor Effective as of the Petition Date |

any advance payment of an invoice is reasonably expected to exceed $10,000 in any single month as set forth in paragraph II(E) of the Services Agreement, at the time Verita requests advance payment from the Debtors, Verita shall also provide notice to the U.S. Trustee and the Committee.

17.     Notwithstanding anything to the contrary contained in the Application, Gershbein Declaration, or the Services Agreement, solely during the pendency of these Chapter 11 Cases, prior to any prepayment of fees and expenses for print notice and media publication as set forth in paragraph II(E) of the Services Agreement, Verita shall provide three (3) business days' notice to the U.S. Trustee and the Committee.

10.     Verita shall not seek reimbursement of any fees or costs arising from the defense of its fee applications in the above-captioned cases.

11.     The Debtors and Verita are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

12.     In the event of any inconsistency between the Application, the Gershbein Declaration, the Services Agreement and this Order, this Order shall govern.

13.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

14.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>EXHIBIT 1</u>**

Services Agreement

# VERITA AGREEMENT FOR SERVICES

This Agreement is entered into as of the <u>8</u> day of June 2025, between Powin, LLC (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants, LLC dba Verita Global (together with its affiliates and subcontractors, "Verita"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.   SERVICES

A.   Verita agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.   Verita further agrees to provide (i) computer software support and training in the use of the support software, (ii) Verita's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "Verita Fee Structure").

C.   Without limiting the generality of the foregoing, Verita may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by Verita and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.   The price listed for each service in the Verita Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part. Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders. Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by Verita.

E.   The Company acknowledges and agrees that Verita will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement. The parties agree that Verita may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company. The Company agrees and understands that Verita shall not provide the Company or any other party with any legal advice.

II.   PRICES, CHARGES AND PAYMENT

A.   Verita agrees to charge and the Company agrees to pay Verita for its services at the rates and prices set by Verita that are in effect as of the date of this Agreement and in accordance with the Verita Fee Structure. Verita's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges. Verita reserves the right to reasonably increase its

---

[1]   The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

# VERITA AGREEMENT FOR SERVICES

prices, charges and rates; provided, however, that if any such increase exceeds 15%, Verita will give thirty (30) days written notice to the Company.

B.      In addition to fees and charges for services, the Company agrees to pay Verita's reasonable transportation, lodging, and meal expenses incurred in connection with services provided under this Agreement.

C.      In addition to all fees for services and expenses hereunder, the Company shall pay to Verita (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by Verita and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by Verita or paid by Verita to a taxing authority.

D.      Where the Company requires services that are unusual or beyond the normal business practices of Verita, or are otherwise not provided for in the Verita Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.      Verita agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. Verita's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and Verita reasonably believes it will not be paid, Verita may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as two and one-half percent (2-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, the Company shall give written notice to Verita within ten (10) days of receipt of the invoice by the Company. The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice. Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.      In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that Verita shall be employed pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention Order"). The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to Verita. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Verita will continue to be paid for its services in accordance with the terms of this Agreement. The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

G.      To the extent permitted by applicable law, Verita shall receive a retainer in the amount of $0.00 (the "Retainer") that may be held by Verita as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. In the event of a Chapter 11 Filing,

# VERITA AGREEMENT FOR SERVICES

Verita will first apply the Retainer to all pre-petition invoices, and thereafter, will have the Retainer replenished to the original amount. Verita shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Verita shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## III.    RIGHTS OF OWNERSHIP

A.    The parties understand that the software programs and other materials furnished by Verita pursuant to this Agreement and/or developed during the course of this Agreement by Verita are the sole property of Verita. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.    The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or Verita's performance of its services developed or utilized during the term of this Agreement by Verita shall be the exclusive property of Verita. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by Verita under this Agreement.

## IV.    NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of Verita during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless Verita provides prior written consent to such solicitation or retention.

## V.    CONFIDENTIALITY

Each of Verita and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

## VI.    SUSPENSION OF SERVICE AND TERMINATION

A.    This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of Verita that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Verita invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by Verita where Verita reasonably believes it will not be paid.

B.    In the event that this contract is terminated, regardless of the reason for such termination, Verita shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to

# VERITA AGREEMENT FOR SERVICES

maintain an orderly transfer of record keeping functions and Verita shall provide all necessary staff, services and assistance required for an orderly transfer. The Company agrees to pay for such services in accordance with Verita's then existing prices for such services. If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to Verita) that discharges Verita from service and responsibility in the Company's bankruptcy case.

C.      Any data, programs, storage media or other materials furnished by the Company to Verita or received by Verita in connection with the services provided under the terms of this Agreement may be retained by Verita until the services provided are paid for, or until this Agreement is terminated with the services paid in full. The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by Verita. Verita shall dispose of the data and media in the manner requested by the Company. The Company agrees to pay Verita for reasonable expenses incurred as a result of the disposition of data or media. If the Company has not utilized Verita's services under this Agreement for a period of at least ninety (90) days, Verita may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice. Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by Verita shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

## VII.    SYSTEM IMPROVEMENTS

Verita strives to provide continuous improvements in the quality of service to its clients. Verita, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the Verita data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

## VIII.   BANK ACCOUNTS

At the Company's request and subject to Court approval following any chapter 11 filing, Verita may be authorized to establish accounts with financial institutions in the name of and as agent for the Company. To the extent that certain financial products are provided to the Company pursuant to Verita's agreement with financial institutions, Verita may receive compensation from such financial institutions for the services Verita provides pursuant to such agreement.

## IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.      ~~The Company shall indemnify and hold Verita, its affiliates, members, directors, officers,~~ employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to Verita's performance under this Agreement. Such indemnification shall exclude Losses resulting from Verita's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify Verita in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with

# VERITA AGREEMENT FOR SERVICES

respect to the services provided by Verita under this Agreement. The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.      Except as provided herein, Verita's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if Verita has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of Verita, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss. In no event shall Verita be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement. In no event shall Verita's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to Verita for the services contemplated under the Agreement; provided, however, that this limitation shall not apply to the Company during any chapter 11 case in which the Company is a debtor.

C.      The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to Verita and for the output of such information. Verita does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; Verita bears no responsibility for the accuracy or contents therein. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to Verita.

D.      The Company agrees that except as expressly set forth herein, Verita makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## X.      FORCE MAJEURE

Verita will not be liable for any delay or failure in performance when such delay or failure arises from circumstances beyond its reasonable control, including without limitation acts of God, acts of government in its sovereign or contractual capacity, acts of public enemy or terrorists, acts of civil or military authority, war, riots, civil strife, terrorism, blockades, sabotage, rationing, embargoes, epidemics, pandemics, outbreaks of infectious diseases or any other public health crises, earthquakes, fire, flood, other natural disaster, quarantine or any other employee restrictions, power shortages or failures, utility or communication failure or delays, labor disputes, strikes, or shortages, supply shortages, equipment failures, or software malfunctions.

## XI.      INDEPENDENT CONTRACTORS

The Company and Verita are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

## XII.      NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:


# VERITA AGREEMENT FOR SERVICES

KCC/Verita Global, LLC
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA 90245
Attn: Drake D. Foster
Tel: (310) 823-9000
Fax: (310) 823-9133
E-Mail: dfoster@veritaglobal.com

Togut Segal & Segal LLP
One Penn Plaza
New York, NY 10119
Attn: Frank Oswald
Tel: (212) 594-5000
Fax: (212) 967-4258
E-Mail: foswald@teamtogut.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

## XIII.   APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

## XIV.   ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement. The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of Verita.

## XV.   COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

## XVI.   ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by Verita to a wholly-owned subsidiary or affiliate of Verita.


# VERITA AGREEMENT FOR SERVICES

## XVII.   ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants, LLC dba Verita Global

*Evan J. Gershbein*

BY: Evan Gershbein                    DATE: 08-Jun-2025 | 11:36:36 AM EDT
TITLE:  EVP, Corporate Restructuring Services

Powin, LLC

BY: Gerard Uzzi                        DATE: 6/7/25
TITLE: Chief Restructuring Officer

Form order − ntcorder

# UNITED STATES BANKRUPTCY COURT

District of New Jersey
402 East State Street
Trenton, NJ 08608

|  |  |
|---|---|
|  | Case No.:  25−16137−MBK |
|  | Chapter:  11 |
|  | Judge:  Michael B. Kaplan |

In Re: Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
    Powin, LLC
    20550 SW 115th Avenue
    Tualatin, OR 97062

Social Security No.:

Employer's Tax I.D. No.:
    86−2270504

## NOTICE OF JUDGMENT OR ORDER
### Pursuant to Fed. R. Bankr. P. 9022

        Please be advised that on July 24, 2025, the court entered the following judgment or order on the court's
docket in the above−captioned case:

Document Number: 500 − 412
Order Granting Application to Employ Kurtzman Carson Consultants, LLC d/b/a Verita Global as
ADMINISTRATIVE ADVISOR (Related Doc # 412). Service of notice of the entry of this order pursuant to Rule
9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 7/24/2025. (wiq)

        Parties may review the order by accessing it through PACER or the court's electronic case filing system
(CM/ECF). Public terminals for viewing are also available at the courthouse in each vicinage.

Dated: July 24, 2025
JAN: wiq

                                                                    Jeanne Naughton
                                                                    Clerk

**<u>Exhibit B</u>**

**Detailed Time Records**

222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**verita**

July 16, 2025

Powin, LLC, et al.
Frank Oswald
Togut, Segal & Segal, LLP
One Penn Plaza
New York NY 10119
United States

       Re: Powin, LLC, et al.
       USBC Case No. 25-16137

Dear Frank Oswald,

Enclosed please find Kurtzman Carson Consultants, LLC dba Verita Global's ("Verita's") invoice for the period June 1, 2025 to June 30, 2025 in the amount of $2,051.55 for the above referenced matter.
Pursuant to our services agreement, Verita's invoice is due upon receipt.

If you have any questions, please contact me at (310) 751-1803 or EGershbein@VeritaGlobal.com

Sincerely,
Verita Global, LLC

Evan Gershbein
EVP Restructuring

Enclosures

US-RESTR2710454

222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245



7/16/2025

Contact Parties

Brown Rudnick
Bennett S Silverberg
7 Times Square
New York NY 10036
United States

Genova Burns LLC
Daniel Stolz
494 Mayor Kenneth A. Gibson Blvd.
Newark NJ 07102
United States

Darlene Calderon
222 N. Pacific Coast Highway, 3rd Floor
El Segundo CA 90245
United States

Genova Burns LLC
Donald Clarke
494 Mayor Kenneth A. Gibson Blvd.
Newark NJ 07102
United States

Brown Rudnick
Eric R. Goodman
7 Times Square
New York NY 10036
United States

Gerard Uzzi
20550 SW 115th Avenue
Tualatin OR 97062
United States

Genova Burns LLC
Jaclynn N. McDonnell
494 Mayor Kenneth A. Gibson Blvd.
Newark NJ 07102
United States

US-RESTR2710454                                                                                                2 of 9

222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245



Jeffrey Sponder
Office of The United States Trustee
One Newark Center
1085 Raymond Boulevard. Suite 2100
Newark, New Jersey 7102
United States

Dentons US LLP
John D. Beck
1221 Avenue of the Americas
New York NY 10020-1089
United States

Brown Rudnick
Kenneth J Aulet
7 Times Square
New York NY 10036
United States

U.S. Trustee for the District of New Jersey
Lauren Bielskie
One Newark Center, Suite 2100
Newark NJ 07102
United States

Dentons US LLP
Sarah M. Schrag
1221 Avenue of the Americas
New York NY 10020-1089
United States

Genova Burns LLC
Susan A. Long
494 Mayor Kenneth A. Gibson Blvd.
Newark NJ 07102
United States

Dentons US LLP
Tania M. Moyron
601 S. Figueroa Street #2500
Los Angeles CA 90017
United States

222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

verita

Dentons US LLP

Van C. Durrer

601 S. Figueroa Street #2500

Los Angeles CA 90017

United States

## *Verita Global LLC*

| Account Number | 2516137FA | Invoice Date | July 16, 2025 |
|---|---|---|---|
| **Invoice Number** | US-RESTR2710454 | **Due Date** | Due upon receipt |

### *Powin, LLC, et al.*
#### *Summary*

| Description | Amount |
|---|---|
| **Hourly Fees** | |
| Hourly Fees Charged | $2,051.55 |
| ***Total of Hourly Fees*** | $2,051.55 |
| | |
| **Expenses** | |
| Expenses | $0.00 |
| ***Total Expenses*** | $0.00 |
| | |
| **Invoice Subtotal** | $2,051.55 |
| Sales and Use Tax | $0.00 |
| ***Total Invoice*** | $2,051.55 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please detach and return this portion of the statement with your check to KCC.

Please reference your Account Number and Invoice Number on your Remittance.

| | | Check Payments to: | Wire Payments to: |
|---|---|---|---|
| **Account Number** | 2516137FA | | |
| **Invoice Number** | US-RESTR2710454 | Verita Global LLC<br>Department 2211<br>PO Box 4110<br>Woburn, MA 01888-4110 | Verita Global LLC<br>Grasshopper Bank, N.A.<br>261 5th Avenue Suite 610<br>New York, NY 10016<br>Account # 02329451396<br>FED ABA # 026015024 |
| **Total Amount Due** | $2,051.55 | | |
| | | | |
| **Amount Paid** | $ | | |

## *Verita Global LLC*

6/1/2025 - 6/30/2025

### *Total Hourly Fees by Employee*

| Initial | Employee Name | Position Type | Hours | Rate | Total |
|---------|---------------|---------------|-------|------|-------|
| DPM | Daniel McSwigan | SOL | 2.3 | $220.50 | $507.15 |
| DSC | Darlene Calderon | SOL | 2.4 | $225.00 | $540.00 |
| TBM | Travis Buckingham | SOL | 1.8 | $220.50 | $396.90 |
| WRG | William Gruber | SOL | 2.7 | $225.00 | $607.50 |

## *Verita Global LLC*

6/1/2025 - 6/30/2025

### *Time Detail*

| Date | Employee | Description | Position Type | Category | Hours |
|------|----------|-------------|---------------|----------|-------|
| 6/17/2025 | DPM | Prepare custom SOFA and Schedule templates and provide to client | SOL | Schedules & SOFA | 0.9 |
| 6/17/2025 | DPM | Tele video with Uzzi & Lall, Dentons, company, Verita team re: Schedule and SOFA preparation | SOL | Schedules & SOFA | 0.5 |
| 6/17/2025 | DPM | Discussion with Verita Case team regarding Schedule and SOFA preparation | SOL | Schedules & SOFA | 0.3 |
| 6/17/2025 | DSC | Conference call with Dentons and Uzzi & Lall re schedules timeline and data required | SOL | Schedules & SOFA | 0.5 |
| 6/17/2025 | DSC | Review SOAL and SOFA forms to prepare for Schedules Kick Off Call | SOL | Schedules & SOFA | 0.3 |
| 6/17/2025 | DSC | Call with Verita Team to discuss schedules timeline | SOL | Schedules & SOFA | 0.3 |
| 6/17/2025 | TBM | Meeting with counsel and company regarding preparation for upcoming schedules filing | SOL | Schedules & SOFA | 0.8 |
| 6/17/2025 | WRG | Prepare Status and Email trackers | SOL | Schedules & SOFA | 0.7 |
| 6/17/2025 | WRG | Teleconference with Uzzi & Lall, Dentons, company, Verita team re: Schedule and SOFA preparation | SOL | Schedules & SOFA | 0.5 |
| 6/17/2025 | WRG | Prepare correspondence to Uzzi & Lall regarding form instruction memos | SOL | Schedules & SOFA | 0.3 |
| 6/17/2025 | WRG | Teleconference with Verita case team regarding SOFA and SOAL preparation | SOL | Schedules & SOFA | 0.2 |
| 6/17/2025 | WRG | Prepare correspondence to Uzzi & Lall regarding master template and forms | SOL | Schedules & SOFA | 0.2 |
| 6/18/2025 | DPM | Discussion with scheduling team regarding the status of Schedule and SOFA preparation | SOL | Schedules & SOFA | 0.2 |
| 6/24/2025 | DSC | Conference call with Dentons and Uzzi & Lall re schedules data | SOL | Schedules & SOFA | 0.5 |
| 6/24/2025 | DSC | Correspond with J Wang re Change Orders and potential descriptions for Schedule G | SOL | Schedules & SOFA | 0.3 |
| 6/24/2025 | TBM | Meeting with counsel regarding upcoming schedules filings | SOL | Schedules & SOFA | 0.5 |
| 6/24/2025 | WRG | Teleconference with company, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 0.4 |
| 6/27/2025 | DPM | Discussion with Uzzi & Lall, Dentons, company regarding schedule and SOFA preparation | SOL | Schedules & SOFA | 0.4 |
| 6/27/2025 | DSC | Call with Uzzi & Lall, Dentons and client to discuss Schedules and Statements data | SOL | Schedules & SOFA | 0.5 |
| 6/27/2025 | TBM | Meeting with counsel regarding upcoming schedules filings | SOL | Schedules & SOFA | 0.5 |
| 6/27/2025 | WRG | Teleconference with company, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 0.4 |

## *Verita Global LLC*

6/1/2025 - 6/30/2025

### *Expenses*

| Description | Units | Rate | Amount |
|---|---|---|---|
| Printing and Mailing Expenses | | | $0.00 |
| | | *Total Expenses* | *$0.00* |

US-RESTR2710454

# *Verita Global LLC*

6/1/2025 - 6/30/2025

## *Printing and Mailing Expenses*

| Post Date | Mailing Name | Quantity | Description | Rate | Total |
|-----------|--------------|----------|-------------|------|-------|
| | | | *Total Printing and Mailing Expenses* | | *$0.00* |

222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

**verita**

August 14, 2025

Powin, LLC, et al.
Frank Oswald
Togut, Segal & Segal, LLP
One Penn Plaza
New York NY 10119
United States

       Re: Powin, LLC, et al.
       USBC Case No. 25-16137

Dear Frank Oswald,

Enclosed please find Kurtzman Carson Consultants, LLC dba Verita Global's ("Verita's") invoice for the period July 1, 2025 to July 31, 2025 in the amount of $46,102.95 for the above referenced matter.
Pursuant to our services agreement, Verita's invoice is due upon receipt.

If you have any questions, please contact me at (310) 751-1803 or EGershbein@VeritaGlobal.com

Sincerely,
Verita Global, LLC

Evan Gershbein
EVP Restructuring

Enclosures

**Verita Global LLC 222 N Pacific Coast Hwy, El Segundo, CA, 90245 Phone 310-823-9000 Fax 310-823-9133 VeritaGlobal.com**

US-RESTR2710594                                                                                                1 of 17

222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245



8/14/2025

<u>Contact Parties</u>

Brown Rudnick
Bennett S Silverberg
7 Times Square
New York NY 10036
United States

Genova Burns LLC
Daniel Stolz
494 Mayor Kenneth A. Gibson Blvd.
Newark NJ 07102
United States


Darlene Calderon
222 N. Pacific Coast Highway, 3rd Floor
El Segundo CA 90245
United States

Genova Burns LLC
Donald Clarke
494 Mayor Kenneth A. Gibson Blvd.
Newark NJ 07102
United States

Brown Rudnick
Eric R. Goodman
7 Times Square
New York NY 10036
United States


Gerard Uzzi
20550 SW 115th Avenue
Tualatin OR 97062
United States

Genova Burns LLC
Jaclynn N. McDonnell
494 Mayor Kenneth A. Gibson Blvd.
Newark NJ 07102
United States

222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245



Jeffrey Sponder
Office of The United States Trustee
One Newark Center
1085 Raymond Boulevard. Suite 2100
Newark, New Jersey 7102
United States

Dentons US LLP
John D. Beck
1221 Avenue of the Americas
New York NY 10020-1089
United States

Brown Rudnick
Kenneth J Aulet
7 Times Square
New York NY 10036
United States

U.S. Trustee for the District of New Jersey
Lauren Bielskie
One Newark Center, Suite 2100
Newark NJ 07102
United States

Dentons US LLP
Sarah M. Schrag
1221 Avenue of the Americas
New York NY 10020-1089
United States

Genova Burns LLC
Susan A. Long
494 Mayor Kenneth A. Gibson Blvd.
Newark NJ 07102
United States

Dentons US LLP
Tania M. Moyron
601 S. Figueroa Street #2500
Los Angeles CA 90017
United States

222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

verita

Dentons US LLP

Van C. Durrer

601 S. Figueroa Street #2500

Los Angeles CA 90017

United States

## *Verita Global LLC*

| Account Number | 2516137FA | Invoice Date | August 14, 2025 |
|---|---|---|---|
| Invoice Number | US-RESTR2710594 | Due Date | Due upon receipt |

### *Powin, LLC, et al.*
#### *Summary*

| Description | Amount |
|---|---|
| **Hourly Fees** | |
| Hourly Fees Charged | $46,102.95 |
| *Total of Hourly Fees* | $46,102.95 |
| | |
| **Expenses** | |
| Expenses | $0.00 |
| *Total Expenses* | $0.00 |
| | |
| **Invoice Subtotal** | $46,102.95 |
| Sales and Use Tax | $0.00 |
| *Total Invoice* | $46,102.95 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please detach and return this portion of the statement with your check to KCC.
Please reference your Account Number and Invoice Number on your Remittance.

| | | Check Payments to: | Wire Payments to: |
|---|---|---|---|
| Account Number | 2516137FA | | |
| Invoice Number | US-RESTR2710594 | Verita Global LLC<br>Department 2211<br>PO Box 4110<br>Woburn, MA 01888-4110 | Verita Global LLC<br>Grasshopper Bank, N.A.<br>261 5th Avenue Suite 610<br>New York, NY 10016<br>Account # 02329451396<br>FED ABA # 026015024 |
| Total Amount Due | $46,102.95 | | |
| Amount Paid | $ | | |

# *Verita Global LLC*

7/1/2025 - 7/31/2025

## *Total Hourly Fees by Employee*

| Initial | Employee Name | Position Type | Hours | Rate | Total |
|---------|---------------|---------------|-------|------|-------|
| DPM | Daniel McSwigan | SOL | 66.7 | $220.50 | $14,707.35 |
| DSC | Darlene Calderon | SOL | 62.7 | $225.00 | $14,107.50 |
| JTN | Jonathan Thomson | SOL | 4.4 | $220.50 | $970.20 |
| TBM | Travis Buckingham | SOL | 8.8 | $220.50 | $1,940.40 |
| WRG | William Gruber | SOL | 63.9 | $225.00 | $14,377.50 |

## *Verita Global LLC*

### 7/1/2025 - 7/31/2025

## *Time Detail*

| Date | Employee | Description | Position Type | Category | Hours |
|------|----------|-------------|---------------|----------|-------|
| 7/1/2025 | DPM | Attend teleconference call with Uzzi & Lall, Dentons, Togut, company, Verita to discuss schedule and SOFA preparation | SOL | Schedules & SOFA | 0.3 |
| 7/1/2025 | DPM | Discussion with Scheduling team re: status of SOFA/SOAL preparation | SOL | Schedules & SOFA | 0.2 |
| 7/1/2025 | DSC | Call with Uzzi & Lall, Dentons and client to discuss Schedules and Statements data | SOL | Schedules & SOFA | 0.5 |
| 7/1/2025 | WRG | Teleconference with company, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 0.3 |
| 7/3/2025 | DPM | Prepare for and attend call with Uzzi & Lall, Dentons, Togut, company regarding Schedule and SOFA preparation | SOL | Schedules & SOFA | 0.5 |
| 7/3/2025 | DSC | Research SOFA / SOAL examples and send to client along with blank forms | SOL | Schedules & SOFA | 1.0 |
| 7/3/2025 | DSC | Call with Uzzi, Dentons and company to discuss Schedules and SOFA data | SOL | Schedules & SOFA | 0.6 |
| 7/4/2025 | DSC | Follow up with T Moyron re Schedule G Lease information | SOL | Schedules & SOFA | 0.1 |
| 7/7/2025 | DSC | Review subsidiary spreadsheet provided by client (0.4); follow up re specific SOFA questions the data relates to (0.2) | SOL | Schedules & SOFA | 0.6 |
| 7/7/2025 | DSC | Prepare Schedule G template for Togut (0.3); send copy with instructions (0.1) | SOL | Schedules & SOFA | 0.4 |
| 7/7/2025 | DSC | Review global notes and forward to Verita Team | SOL | Schedules & SOFA | 0.3 |
| 7/7/2025 | DSC | Review Schedule G Lease information provided by Togut | SOL | Schedules & SOFA | 0.2 |
| 7/7/2025 | DSC | Review SOAL E/F Part 2 data and follow up with Uzzi re same | SOL | Schedules & SOFA | 0.1 |
| 7/8/2025 | DPM | Prepare for and attend conference with Dentons, Uzzi, the Company call re Schedules & SOFA updates (1.0) and review data received to date (0.5) | SOL | Schedules & SOFA | 1.5 |
| 7/8/2025 | DPM | Discussion with Verita case team re: schedule preparation | SOL | Schedules & SOFA | 0.2 |
| 7/8/2025 | DSC | Call with Dentons, Uzzi & Lall and company to discuss Schedules and SOFAs | SOL | Schedules & SOFA | 0.4 |
| 7/8/2025 | DSC | Call with Verita Team to discuss schedules data and timeline | SOL | Schedules & SOFA | 0.2 |
| 7/8/2025 | TBM | Meeting with counsel regarding filing of schedules | SOL | Schedules & SOFA | 0.5 |
| 7/8/2025 | WRG | Teleconference with company, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 0.4 |
| 7/8/2025 | WRG | Update Global Notes in drafts for all debtors | SOL | Schedules & SOFA | 0.3 |
| 7/8/2025 | WRG | Update SOFAs and SOALs per Verita Case Team review | SOL | Schedules & SOFA | 0.2 |
| 7/9/2025 | DPM | Prepare custom coversheets and global notes placeholder for all debtors | SOL | Schedules & SOFA | 2.0 |
| 7/9/2025 | DPM | Coordinate updates to Schedules and SOFA data in Verita CaseView | SOL | Schedules & SOFA | 0.5 |

## *Verita Global LLC*

7/1/2025 - 7/31/2025

### *Time Detail*

| <u>Date</u> | <u>Employee</u> | <u>Description</u> | <u>Position Type</u> | <u>Category</u> | <u>Hours</u> |
|---|---|---|---|---|---|
| 7/9/2025 | DSC | Administrative review of address updates for Schedule G leases; follow up with Togut re same | SOL | Schedules & SOFA | 0.3 |
| 7/9/2025 | DSC | Call with T Moyron re schedules timeline | SOL | Schedules & SOFA | 0.1 |
| 7/9/2025 | WRG | Update Signature Pages for SOAL | SOL | Schedules & SOFA | 0.3 |
| 7/10/2025 | DPM | Review of download Schedule and SOFA templates to compare data received to date | SOL | Schedules & SOFA | 2.0 |
| 7/10/2025 | DPM | Produced SOFA Verita CaseView to update data in Verita CaseView | SOL | Schedules & SOFA | 1.5 |
| 7/10/2025 | DPM | Review of SOFA data template received from Uzzi | SOL | Schedules & SOFA | 1.0 |
| 7/10/2025 | DPM | Discussion with Uzzi team re: schedules and SOFA templates | SOL | Schedules & SOFA | 0.2 |
| 7/10/2025 | DSC | Review Schedules and SOFA data in shared templates | SOL | Schedules & SOFA | 1.4 |
| 7/10/2025 | DSC | Format real property lease information for SOAL G | SOL | Schedules & SOFA | 1.2 |
| 7/10/2025 | DSC | Call with Uzzi & Lall re SOAL / SOFA templates and open items | SOL | Schedules & SOFA | 0.2 |
| 7/10/2025 | DSC | Call with Verita Team re SOAL / SOFA templates and open items | SOL | Schedules & SOFA | 0.2 |
| 7/10/2025 | TBM | Meeting with counsel regarding filing of schedules | SOL | Schedules & SOFA | 0.4 |
| 7/10/2025 | WRG | Review email correspondence from Uzzi & Lall regarding initial updates to SOALs | SOL | Schedules & SOFA | 2.1 |
| 7/10/2025 | WRG | Review email correspondence from Uzzi & Lall regarding initial updates to SOFAs | SOL | Schedules & SOFA | 1.5 |
| 7/10/2025 | WRG | Review email correspondence from Uzzi & Lall regarding updates to SOFAs and SOALs | SOL | Schedules & SOFA | 0.8 |
| 7/10/2025 | WRG | Teleconference with company, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 0.2 |
| 7/11/2025 | DPM | Prepare updates to Schedule A/B data in Verita CaseView per information gathered from call with Dentons, Uzzi | SOL | Schedules & SOFA | 0.9 |
| 7/11/2025 | DPM | Prepare custom exhibits to include in Schedule and SOFA drafts | SOL | Schedules & SOFA | 0.8 |
| 7/11/2025 | DPM | Prepare updates to Schedule A/B 7 data in Verita CaseView per information from call with Dentons, Uzzi | SOL | Schedules & SOFA | 0.8 |
| 7/11/2025 | DPM | Prepare updates to Schedule A/B data in Verita CaseView | SOL | Schedules & SOFA | 0.6 |
| 7/11/2025 | DPM | Prepare for and attend conference call with Dentons, Uzzi, the Company regarding Schedules & SOFA updates; review data received to date | SOL | Schedules & SOFA | 0.5 |
| 7/11/2025 | DSC | Call with Uzzi & Lall, Dentons and client to discuss Schedules and Statements data | SOL | Schedules & SOFA | 0.6 |

## *Verita Global LLC*

7/1/2025 - 7/31/2025

### *Time Detail*

| Date | Employee | Description | Position Type | Category | Hours |
|------|----------|-------------|---------------|----------|-------|
| 7/11/2025 | DSC | Administrative review of SOFA drafts prior to circulation | SOL | Schedules & SOFA | 0.5 |
| 7/11/2025 | DSC | Coordinate review of SOFA drafts | SOL | Schedules & SOFA | 0.2 |
| 7/11/2025 | TBM | Perform quality review of Schedules and SOFAs for all Debtors to ensure accuracy and completeness | SOL | Schedules & SOFA | 1.6 |
| 7/11/2025 | TBM | Meeting with counsel regarding filing of schedules | SOL | Schedules & SOFA | 0.8 |
| 7/11/2025 | WRG | Review email correspondence from Uzzi & Lall regarding initial updates to SOFAs | SOL | Schedules & SOFA | 1.9 |
| 7/11/2025 | WRG | Update SOFAs per 7/11/2025 teleconference with Dentons and Uzzi and Lall | SOL | Schedules & SOFA | 1.6 |
| 7/11/2025 | WRG | Review Verita CaseView data summaries for recent updates to SOFAs to ensure accuracy and completeness | SOL | Schedules & SOFA | 0.7 |
| 7/11/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 0.6 |
| 7/11/2025 | WRG | Prepare draft SOFAs for company review | SOL | Schedules & SOFA | 0.4 |
| 7/11/2025 | WRG | Review and update SOAL static questions | SOL | Schedules & SOFA | 0.3 |
| 7/12/2025 | DPM | Perform quality review of Schedules and SOFAs data in Verita CaseView for all Debtors to ensure accuracy and completeness | SOL | Schedules & SOFA | 1.2 |
| 7/12/2025 | DPM | Prepare updates to SOFA data in Verita CaseView per new template received | SOL | Schedules & SOFA | 1.2 |
| 7/12/2025 | DPM | Generate and review Schedule and SOFA drafts (1.0); and prepare comments and updates regarding open issues (0.2) | SOL | Schedules & SOFA | 1.2 |
| 7/12/2025 | DPM | Prepare updates to Schedule A/B data in Verita CaseView per new template received | SOL | Schedules & SOFA | 1.0 |
| 7/12/2025 | DPM | Prepare updates to Schedule H data in Verita CaseView | SOL | Schedules & SOFA | 0.9 |
| 7/12/2025 | DPM | Review of downloaded templates and status tracker | SOL | Schedules & SOFA | 0.8 |
| 7/12/2025 | DSC | Review and format data for Schedule G | SOL | Schedules & SOFA | 5.6 |
| 7/12/2025 | DSC | Oversee circulation of SOAL / SOFA drafts to Uzzi & Lall and Dentons for review | SOL | Schedules & SOFA | 0.3 |
| 7/12/2025 | WRG | Review email correspondence from Uzzi & Lall regarding initial updates to SOFAs | SOL | Schedules & SOFA | 1.5 |
| 7/12/2025 | WRG | Prepare updated draft SOALs for all debtors | SOL | Schedules & SOFA | 0.7 |
| 7/12/2025 | WRG | Prepare updated draft SOFAs for all debtors | SOL | Schedules & SOFA | 0.5 |
| 7/12/2025 | WRG | Review Verita CaseView data summaries for recent updates to SOFAs to ensure accuracy and completeness | SOL | Schedules & SOFA | 0.5 |

## *Verita Global LLC*

7/1/2025 - 7/31/2025

### *Time Detail*

| <u>Date</u> | <u>Employee</u> | <u>Description</u> | <u>Position Type</u> | <u>Category</u> | <u>Hours</u> |
|---|---|---|---|---|---|
| 7/12/2025 | WRG | Review Verita CaseView data summaries for recent updates to SOALs to ensure accuracy and completeness | SOL | Schedules & SOFA | 0.4 |
| 7/13/2025 | DSC | Review and format data for Schedule G | SOL | Schedules & SOFA | 7.6 |
| 7/13/2025 | WRG | Review email correspondence from Dentons regarding SOFA and SOAL preparation | SOL | Schedules & SOFA | 0.4 |
| 7/14/2025 | DPM | Prepare SOFA 3 data for input into Verita CaseView | SOL | Schedules & SOFA | 1.2 |
| 7/14/2025 | DPM | Prepare SOFA 4 data for input into Verita CaseView | SOL | Schedules & SOFA | 0.9 |
| 7/14/2025 | DPM | Prepare for and attend conference call regarding Schedules & SOFA updates and review data received to date | SOL | Schedules & SOFA | 0.6 |
| 7/14/2025 | DPM | Review of newly downloaded template for modifications | SOL | Schedules & SOFA | 0.2 |
| 7/14/2025 | DSC | Review and format data for Schedule G | SOL | Schedules & SOFA | 5.0 |
| 7/14/2025 | DSC | Continue to review and format data for Schedule G | SOL | Schedules & SOFA | 3.4 |
| 7/14/2025 | DSC | Call with Uzzi re SOAL and SOFA open items | SOL | Schedules & SOFA | 0.6 |
| 7/14/2025 | JTN | Review and address research for SOAL G contract parties | SOL | Schedules & SOFA | 2.0 |
| 7/14/2025 | WRG | Review email correspondence from Uzzi & Lall re updated data room download | SOL | Schedules & SOFA | 2.8 |
| 7/14/2025 | WRG | Update SOAL Schedule D information in Verita CaseView | SOL | Schedules & SOFA | 0.7 |
| 7/14/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 0.3 |
| 7/14/2025 | WRG | Review email correspondence from Uzzi & Lall regarding updates to SOFAs and SOALs | SOL | Schedules & SOFA | 0.3 |
| 7/14/2025 | WRG | Review Status Tracker in preparation for 7/15/2025 teleconference with Dentons and Uzzi Lall | SOL | Schedules & SOFA | 0.2 |
| 7/15/2025 | DPM | Perform quality review of Schedules and SOFAs data in Verita CaseView for all Debtors to ensure accuracy and completeness | SOL | Schedules & SOFA | 2.3 |
| 7/15/2025 | DPM | Prepare for and participate in a conference call with Dentons, Uzzi, regarding Schedules and SOFA updates | SOL | Schedules & SOFA | 1.7 |
| 7/15/2025 | DPM | Prepare updates to SOFA 26D data per discission | SOL | Schedules & SOFA | 1.5 |
| 7/15/2025 | DPM | Generate and review Schedule and SOFA drafts (1.0); and prepare comments and updates regarding open issues (0.3) | SOL | Schedules & SOFA | 1.3 |
| 7/15/2025 | DPM | Prepare SOFA 3 data for input into Verita CaseView | SOL | Schedules & SOFA | 1.2 |
| 7/15/2025 | DPM | Prepare SOFA 4 data for input into Verita CaseView | SOL | Schedules & SOFA | 1.0 |

## *Verita Global LLC*

7/1/2025 - 7/31/2025

### *Time Detail*

| Date | Employee | Description | Position Type | Category | Hours |
|------|----------|-------------|---------------|----------|-------|
| 7/15/2025 | DPM | Prepare updates to SOFA 3 data per discission | SOL | Schedules & SOFA | 1.0 |
| 7/15/2025 | DPM | Perform quality review of recent updates in Verita CaseView | SOL | Schedules & SOFA | 0.9 |
| 7/15/2025 | DPM | Prepare updates to Schedule A/B 22, A/B 62 data in Verita CaseView | SOL | Schedules & SOFA | 0.8 |
| 7/15/2025 | DPM | Review of Email from Uzzi regarding updates and status of SOFAs and Schedules | SOL | Schedules & SOFA | 0.4 |
| 7/15/2025 | DPM | Discussion with Verita case team re: SOFA and Schedule preparation | SOL | Schedules & SOFA | 0.4 |
| 7/15/2025 | DPM | Prepare updates to SOFA data in Verita CaseView | SOL | Schedules & SOFA | 0.3 |
| 7/15/2025 | DPM | Prepare updates to SOAL data in Verita CaseView per internal review | SOL | Schedules & SOFA | 0.3 |
| 7/15/2025 | DSC | Review and format SOAL E/F Part 1 data | SOL | Schedules & SOFA | 2.0 |
| 7/15/2025 | DSC | Review and format SOAL E/F Part 2 data | SOL | Schedules & SOFA | 2.0 |
| 7/15/2025 | DSC | Update and send Schedule G data to Dentons for review | SOL | Schedules & SOFA | 1.9 |
| 7/15/2025 | DSC | Call with Uzzi, Dentons and company to discuss Schedules and SOFA data | SOL | Schedules & SOFA | 1.7 |
| 7/15/2025 | DSC | Format and upload Schedule G data to Verita CaseView | SOL | Schedules & SOFA | 1.4 |
| 7/15/2025 | DSC | Call with Verita Team to discuss open SOAL and SOFA items | SOL | Schedules & SOFA | 0.5 |
| 7/15/2025 | DSC | Call with Dentons and company to discuss Schedule G data | SOL | Schedules & SOFA | 0.5 |
| 7/15/2025 | TBM | Meeting with counsel regarding filing of schedules | SOL | Schedules & SOFA | 1.7 |
| 7/15/2025 | WRG | Review Verita CaseView data summaries for recent updates to SOFAs and SOALs to ensure accuracy and completeness | SOL | Schedules & SOFA | 3.8 |
| 7/15/2025 | WRG | Attention to updated SOFA and SOAL templates from Uzzi & Lall data site | SOL | Schedules & SOFA | 3.2 |
| 7/15/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 1.7 |
| 7/15/2025 | WRG | Review email correspondence from Uzzi & Lall regarding updates to SOFA question 26d | SOL | Schedules & SOFA | 1.0 |
| 7/15/2025 | WRG | Review Verita CaseView data summaries for recent updates to SOFAs to ensure accuracy and completeness | SOL | Schedules & SOFA | 0.9 |
| 7/15/2025 | WRG | Prepare updated draft SOFAs and SOALs | SOL | Schedules & SOFA | 0.6 |
| 7/15/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 0.3 |

## Verita Global LLC

### 7/1/2025 - 7/31/2025

### *Time Detail*

| Date | Employee | Description | Position Type | Category | Hours |
|------|----------|-------------|---------------|----------|-------|
| 7/15/2025 | WRG | Review Status Tracker in preparation for 7/15/2025 teleconference with Dentons and Uzzi Lall | SOL | Schedules & SOFA | 0.2 |
| 7/15/2025 | WRG | Teleconference with Verita Case Team re SOFA and SOAL preparation status | SOL | Schedules & SOFA | 0.2 |
| 7/16/2025 | DPM | Prepare for and participate in a conference call with Dentons, Uzzi, regarding Schedules and SOFA updates | SOL | Schedules & SOFA | 3.8 |
| 7/16/2025 | DPM | Perform quality review of Schedules and SOFAs data in Verita CaseView for all Debtors to ensure accuracy and completeness | SOL | Schedules & SOFA | 2.0 |
| 7/16/2025 | DPM | Continue conference call with Dentons, Uzzi, regarding Schedules and SOFA drafts | SOL | Schedules & SOFA | 1.8 |
| 7/16/2025 | DPM | Prepare updates to Master templates with recent SOFA updates | SOL | Schedules & SOFA | 1.6 |
| 7/16/2025 | DPM | Prepare updates to Schedule A/B 55 data in Verita CaseView | SOL | Schedules & SOFA | 1.2 |
| 7/16/2025 | DPM | Prepare updates to Schedule A/B 47 data in Verita CaseView | SOL | Schedules & SOFA | 1.2 |
| 7/16/2025 | DPM | Prepare updates to SOAL data per information gathered from conference call with Dentons, Uzzi | SOL | Schedules & SOFA | 1.0 |
| 7/16/2025 | DPM | Prepare updates to SOFA data per information gathered from conference call with Dentons, Uzzi | SOL | Schedules & SOFA | 1.0 |
| 7/16/2025 | DPM | Generate and review Schedule and SOFA drafts; and prepare comments and updates regarding open issues (0.1) | SOL | Schedules & SOFA | 1.0 |
| 7/16/2025 | DPM | Continue conference call with Dentons, Uzzi, regarding Schedules and SOFA preparation | SOL | Schedules & SOFA | 1.0 |
| 7/16/2025 | DPM | Perform quality review of recent SOFAs data updates in Verita CaseView for all Debtors to ensure accuracy and completeness | SOL | Schedules & SOFA | 0.8 |
| 7/16/2025 | DPM | Attention to pending updates in preparation for Schedule and SOFAs filing | SOL | Schedules & SOFA | 0.8 |
| 7/16/2025 | DSC | Prepare updates to Schedule G based on updates from company | SOL | Schedules & SOFA | 2.5 |
| 7/16/2025 | DSC | Update entries for SOAL EF Part 2 with data provided from Uzzi | SOL | Schedules & SOFA | 2.0 |
| 7/16/2025 | DSC | Update entries for SOAL EF Part 1 with data provided from Uzzi | SOL | Schedules & SOFA | 2.0 |
| 7/16/2025 | DSC | Review Powin, LLC SOAL draft (0.4) and provide updates to Verita Team (0.2) | SOL | Schedules & SOFA | 0.6 |
| 7/16/2025 | DSC | Review Powin, LLC SOFA draft (0.4) and provide updates to Verita Team (0.1) | SOL | Schedules & SOFA | 0.5 |
| 7/16/2025 | DSC | Coordinate review of SOFA and SOAL drafts | SOL | Schedules & SOFA | 0.4 |
| 7/16/2025 | DSC | Coordinate updates for SOFA entries based on drafts | SOL | Schedules & SOFA | 0.4 |
| 7/16/2025 | DSC | Call with Verita Team re Schedules data | SOL | Schedules & SOFA | 0.3 |

US-RESTR2710594

## *Verita Global LLC*

7/1/2025 - 7/31/2025

### *Time Detail*

| Date | Employee | Description | Position Type | Category | Hours |
|------|----------|-------------|---------------|----------|-------|
| 7/16/2025 | JTN | Perform quality review of Schedules and SOFAs for all Debtors to ensure accuracy and completeness | SOL | Schedules & SOFA | 2.4 |
| 7/16/2025 | TBM | Perform quality review of Schedules and SOFAs for all Debtors to ensure accuracy and completeness | SOL | Schedules & SOFA | 1.9 |
| 7/16/2025 | WRG | Review Verita CaseView data summaries for recent updates to SOALs to ensure accuracy and completeness | SOL | Schedules & SOFA | 2.2 |
| 7/16/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 2.2 |
| 7/16/2025 | WRG | Prepare updated draft SOFAs and SOALs | SOL | Schedules & SOFA | 1.8 |
| 7/16/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 1.6 |
| 7/16/2025 | WRG | Update SOFA question 25 information in Verita CaseView | SOL | Schedules & SOFA | 1.5 |
| 7/16/2025 | WRG | Update SOFAs and SOALs from Vertia Case Team review | SOL | Schedules & SOFA | 1.3 |
| 7/16/2025 | WRG | Review Verita CaseView data summaries for recent updates to SOFAs to ensure accuracy and completeness | SOL | Schedules & SOFA | 1.2 |
| 7/16/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 1.1 |
| 7/16/2025 | WRG | Update SOAL Schedule D information in Verita CaseView | SOL | Schedules & SOFA | 1.0 |
| 7/16/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 0.9 |
| 7/16/2025 | WRG | Review email correspondence from Uzzi & Lall regarding initial updates to SOFAs | SOL | Schedules & SOFA | 0.9 |
| 7/16/2025 | WRG | Review Verita CaseView data summaries for recent updates to SOALs to ensure accuracy and completeness | SOL | Schedules & SOFA | 0.5 |
| 7/16/2025 | WRG | Review email correspondence from Uzzi & Lall regarding updates to SOFAs and SOALs | SOL | Schedules & SOFA | 0.5 |
| 7/16/2025 | WRG | Prepare updated draft SOFAs for all debtors | SOL | Schedules & SOFA | 0.5 |
| 7/16/2025 | WRG | Update SOFA question 7 information in Verita CaseView | SOL | Schedules & SOFA | 0.5 |
| 7/17/2025 | DPM | Attention to pending updates in preparation for Schedule and SOFAs filing | SOL | Schedules & SOFA | 2.4 |
| 7/17/2025 | DPM | Prepare updates to Schedule Data per meeting notes | SOL | Schedules & SOFA | 2.0 |
| 7/17/2025 | DPM | Perform quality review of Schedules and SOFAs data in Verita CaseView for all Debtors to ensure accuracy and completeness | SOL | Schedules & SOFA | 2.0 |
| 7/17/2025 | DPM | Prepare for and participate in a conference call with Dentons, Uzzi, regarding Schedules and SOFA walkthrough and concurrently update the master tracking sheet with meeting notes | SOL | Schedules & SOFA | 2.0 |
| 7/17/2025 | DPM | Generate and review Final Schedules, SOFA in preparation for filing | SOL | Schedules & SOFA | 1.3 |

## *Verita Global LLC*

7/1/2025 - 7/31/2025

### *Time Detail*

| Date | Employee | Description | Position Type | Category | Hours |
|------|----------|-------------|---------------|----------|-------|
| 7/17/2025 | DPM | Prepare updates to Schedule D Data in Verita CaseView with information provided during meeting with Dentons, Uzzi | SOL | Schedules & SOFA | 1.0 |
| 7/17/2025 | DPM | Prepare updates to SOFA data in Verita CaseView with information provided by Uzzi | SOL | Schedules & SOFA | 1.0 |
| 7/17/2025 | DSC | Prepare updates to Schedule G based on comments from company | SOL | Schedules & SOFA | 3.0 |
| 7/17/2025 | DSC | Call with Uzzi and Dentons to discuss Schedule G updates | SOL | Schedules & SOFA | 2.2 |
| 7/17/2025 | DSC | Prepare updates to SOAL EF Part 2 based on comments from Dentons and Uzzi | SOL | Schedules & SOFA | 1.3 |
| 7/17/2025 | DSC | Prepare updates to SOAL EF Part 1 based on comments from Dentons and Uzzi | SOL | Schedules & SOFA | 1.0 |
| 7/17/2025 | DSC | Call with Uzzi and Dentons to discuss Schedules and SOFA data | SOL | Schedules & SOFA | 1.0 |
| 7/17/2025 | DSC | Prepare updates to Schedule G based on comments from Dentons | SOL | Schedules & SOFA | 1.0 |
| 7/17/2025 | DSC | Prepare draft exhibit for SOAL G (0.6); send to Dentons and Uzzi for final review (0.2) | SOL | Schedules & SOFA | 0.8 |
| 7/17/2025 | DSC | Prepare final SOAL G data file (0.4) and send copy to G Miller (0.1) | SOL | Schedules & SOFA | 0.5 |
| 7/17/2025 | DSC | Call with Verita Team to discuss outstanding SOAL items | SOL | Schedules & SOFA | 0.2 |
| 7/17/2025 | TBM | Perform quality review of Schedules and SOFAs for all Debtors to ensure accuracy and completeness | SOL | Schedules & SOFA | 1.9 |
| 7/17/2025 | WRG | Attention to potential updates to file-ready SOFAs and SOALs | SOL | Schedules & SOFA | 4.2 |
| 7/17/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL draft review | SOL | Schedules & SOFA | 2.5 |
| 7/17/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 2.0 |
| 7/17/2025 | WRG | Review Verita CaseView data summaries for recent updates to SOFAs and SOALs to ensure accuracy and completeness | SOL | Schedules & SOFA | 1.5 |
| 7/17/2025 | WRG | Teleconference with company, Dentons, Uzzi & Lall, and Verita personnel regarding SOFA and SOAL preparation and status | SOL | Schedules & SOFA | 1.2 |
| 7/17/2025 | WRG | Review email correspondence from Uzzi & Lall regarding updates to SOFAs and SOALs | SOL | Schedules & SOFA | 0.5 |
| 7/17/2025 | WRG | Review email correspondence from Uzzi & Lall regarding initial updates to SOFA drafts | SOL | Schedules & SOFA | 0.4 |
| 7/17/2025 | WRG | Prepare file-ready SOFAs for all debtors | SOL | Schedules & SOFA | 0.4 |
| 7/17/2025 | WRG | Review email correspondence from Uzzi & Lall regarding updates to SOFAs and SAOLs | SOL | Schedules & SOFA | 0.3 |
| 7/18/2025 | DSC | Follow up with Verita Team re schedules request in excel | SOL | Schedules & SOFA | 0.2 |

## *Verita Global LLC*

7/1/2025 - 7/31/2025

### *Time Detail*

| Date | Employee | Description | Position Type | Category | Hours |
|------|----------|-------------|---------------|----------|-------|
| 7/20/2025 | DSC | Update SOAL EF Part 1, EF Part 2 and G in Master Tracking Sheet | SOL | Schedules & SOFA | 1.2 |
| 7/21/2025 | DPM | Prepare final SOFA and Schedule Templates per request from Uzzi | SOL | Schedules & SOFA | 2.0 |
| 7/21/2025 | WRG | Prepare Master SOFA and SOAL templates for UCC | SOL | Schedules & SOFA | 1.4 |

# *Verita Global LLC*

7/1/2025 - 7/31/2025

## *Expenses*

| Description | Units | Rate | Amount |
|---|---|---|---|
| Printing and Mailing Expenses | | | $0.00 |
| | | *Total Expenses* | *$0.00* |

## *Verita Global LLC*

7/1/2025 - 7/31/2025

### *Printing and Mailing Expenses*

| Post Date | Mailing Name | Quantity | Description | Rate | Total |
|-----------|--------------|----------|-------------|------|-------|
| | | | *Total Printing and Mailing Expenses* | | *$0.00* |