**Order Filed on December 1, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
(I) APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS AND (II)
CONFIRMING THE JOINT COMBINED DISCLOSURE STATEMENT AND
CHAPTER 11 PLAN OF LIQUIDATION OF POWIN, LLC AND AFFILIATES
THEREOF AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The relief set forth on the following pages, numbered [3] through [55], is **ORDERED.**

**DATED: December 1, 2025**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

(Page 2)
Debtors:                        Powin, LLC, *et al.*
Case No.                       25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

## Caption in Compliance with D.N.J. LBR 9004-1(b)

### DENTONS US LLP

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street
Suite 2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

*Counsel for Debtors and*
*Debtors in Possession*

### BROWN RUDNICK LLP

Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Jeffrey L. Jonas, Esq.
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4924
Facsimile:  (212) 938-2924
Email:  rstark@brownrudnick.com
            kaulet@brownrudnick.com
            bsilverberg@brownrudnick.com
            jjonas@brownrudnick.com

*Counsel for the Official Committee of Unsecured*
*Creditors*

### TOGUT, SEGAL & SEGAL LLP

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
            aglaubach@teamtogut.com
            eblander@teamtogut.com

*Counsel for Debtors and*
*Debtors in Possession*

### GENOVA BURNS LLC

Daniel M. Stolz (admitted)
Donald W. Clarke (admitted)
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone:  (973) 533-0777
Facsimile:  (973) 814-4045
Email:  dstolz@genovaburns.com
            dclarke@genovaburns.com

*Counsel for the Official Committee of Unsecured*
*Creditors*

(Page 3)
Debtors:                 Powin, LLC, *et al.*
Case No.                 25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Upon consideration of the final approval of the disclosures and plan of liquidation

contained in the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of*

*Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket

No. 942] attached hereto as **Exhibit A** (together with all exhibits thereto, and as may be amended,

modified, or supplemented[2], the "Plan") jointly proposed by the above-captioned debtors and

debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured

Creditors (the "Committee" and together with the Debtors, the "Proponents"); the disclosures

contained in the Plan having been approved on an interim basis pursuant to that certain *Order*

*Approving (I) The Adequacy of the Disclosure Statement on Conditional Basis, (II) The*

*Solicitation and Notice Procedures, (III) The Forms of Ballots and Notices in Connection*

*Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 939] (the "Disclosure

Statement Order") pursuant to the relief sought in the *Joint Motion of the Plan Proponents for*

*Entry of an Order Approving (I) the Adequacy of the Disclosure Statement on Conditional Basis,*

*(II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices in Connection*

*Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 915]; and upon the

*Declaration of Darlene S. Calderon with Respect to the Tabulation of Votes on the Joint Combined*

*Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof*

*and the Official Committee of Unsecured Creditors* [Docket No. 1095] (the "Voting and

---

[2] The Plan Supplement is filed at Docket No. 1036. The Amended Plan Supplement is filed at Docket No. 1038 and
the Amended Exhibits to the Amended Plan Supplement are filed at Docket No. 1055 (collectively, the "Plan
Supplement").

(Page 4)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Procedures Confirmation Declaration"); and upon the *Declaration of Gerard Uzzi in Support of*

*Confirmation of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of*

*Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket

No. 1102] (the "Uzzi Confirmation Declaration") and upon the *Memorandum of Law in Support*

*of Confirmation of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation*

*of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket

No. 1097] (the "Confirmation Memorandum"); and upon the *United States Trustee's Objection to*

*the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and*

*Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1070] (the

"UST Objection"), the *Objection of CS Energy, LLC to Confirmation of the Joint Combined*

*Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof*

*and the Official Committee of Unsecured Creditors* [Docket No. 1072] (the "CS Objection"), the

*Objection of DTE Electric Company to the Joint Combined Disclosure Statement and Chapter 11*

*Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured*

*Creditors* [Docket No. 1073] (the "DTE Objection"), the *Limited Objection of Longroad*

*Development Company, LLC and Leeward Renewable Energy, LLC to Confirmation of the Joint*

*Combined Disclosure Statement and Chapter 11 Plan of Liquidation Arising From Inclusion of*

*Unsupported ROC Invoice Receivables* [Docket No. 1075] (the "Longroad Objection"), the

*Limited Objection of FlexGen Power Systems, LLC to Chapter 11 Plan of Powin, LLC and its*

*Affiliates* [Docket No. 942] (the "FlexGen Objection"), the *Reservation of Rights of Trilantic*

*Capital Management L.P. and Greenbelt Capital Management, L.P. to the Joint Combined*

(Page 5)

Debtors:                Powin, LLC, *et al.*

Case No.                25-16137 (MBK)

Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

*Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof
and the Official Committee of Unsecured Creditors* [Docket No. 1078] (the "Trilantic/Greenbelt
Objection"), and the *Limited Objection of Applied Surety Underwriters, Siriuspoint America
Insurance Company and Pennsylvania Insurance Company to Joint Combined Disclosure
Statemetn* [sic] *and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors* [Docket No. 1082] (the "Surety Objection"), each
having been resolved and/or overruled by this Court pursuant to this Confirmation Order; and a
hearing to consider Confirmation having been commenced on November 25, 2025 and concluded
(the "Confirmation Hearing"); and upon the evidence adduced and proffered and the arguments of
counsel made at the Confirmation Hearing; and this Court having reviewed all documents in
connection with Confirmation and having heard all parties desiring to be heard; and upon the
record of the Chapter 11 Cases; and after due deliberation and consideration of all of the foregoing;
and sufficient cause appearing therefor; this Court hereby makes the following:

### Findings of Fact and Conclusions of Law

A.      **Findings of Fact and Conclusions of Law.** The findings and conclusions set forth
herein and in the Disclosure Statement Order, together with the findings of fact and conclusions
of law set forth in the record of the Confirmation Hearing, constitute this Court's findings of fact
and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made
applicable to these proceedings pursuant to Bankruptcy Rules 7052 and 9014. To the extent any
of the following findings of fact constitute conclusions of law, they are adopted as such. To the

(Page 6)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

extent that any of the following conclusions of law constitute findings of fact, they are adopted as

such.

B.     **Capitalized Terms.** Capitalized terms used herein, but not defined herein, shall

have the respective meanings attributed to such terms in the Plan.

C.     **Jurisdiction and Venue.** This Court has jurisdiction over the Chapter 11 Cases

pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy*

*Court Under Title 11* of the United States District Court for the District of New Jersey, entered

July 23, 1984 and amended on September 18, 2012 (Simandle, C.J.). The Bankruptcy Court has

exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with

the applicable provisions of the Bankruptcy Code and should be approved and confirmed,

respectively. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Approval of the Disclosure

Statement and confirmation of the Plan constitute a core proceeding within the meaning of 28

U.S.C. § 157(b)(2) with the Bankruptcy Court having jurisdiction to enter a final order with respect

thereto consistent with Article III of the United States Constitution.

D.     **Chapter 11 Petitions.** On June 9, 2025 (the "Petition Date"),[3] each of the Debtors

filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue

to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes

---

[3] Powin Project LLC filed for voluntary relief under Chapter 11 of the Bankruptcy Code on June 9, 2025.  Powin
Canada B.C. Ltd., Powin Energy Ontario Storage II LP, and Powin Energy Storage 2, Inc., filed on June 22, 2025.
Powin EKS SellCo, LLC filed on October 10, 2025, and the remaining Debtors filed on June 10, 2025.

(Page 7)
Debtors:                     Powin, LLC, *et al.*
Case No.                     25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

only pursuant to Bankruptcy Rule 1015(b). No party has requested the appointment of a trustee

or examiner in the Chapter 11 Cases. On June 27, 2025, the Committee was appointed. [Docket

No. 174].

E.     **Judicial Notice.** This Court takes judicial notice of the docket in the Chapter 11

Cases, including the dockets of any adversary proceedings initiated in the cases, maintained by the

Clerk of this Court and/or its duly appointed agent, including, without limitation, all pleadings,

notices, and other documents filed, all orders entered, and all evidence and arguments made,

proffered or adduced at the hearings held before this Court during the Chapter 11 Cases, including,

without limitation, the Confirmation Hearing.

F.     **Disclosures.** The disclosures within the Plan provides holders of Claims entitled

to vote on the Plan with adequate information to make an informed decision as to whether to vote

to accept or reject the Plan in accordance with Section 1125 of the Bankruptcy Code.

G.     **Plan Supplement.** Prior to the Confirmation Hearing, the Debtors filed the Plan

Supplement, as has been amended from time to time including in connection with any amendments

made at the Confirmation Hearing. The Plan Supplement complies with the terms of the Plan, and

the filing and notice of the Plan Supplement was appropriate and complied with the requirements

of the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be

required. The Debtors are authorized to modify the Plan Supplement documents following entry

of this Confirmation Order in a manner consistent with this Confirmation Order and/or the Plan.

H.     **Mailing of Solicitation and Confirmation Materials.** As is evidenced by the

Voting and Procedures Confirmation Declaration, the transmittal and service of the Plan, the

(Page 8)
Debtors:                    Powin, LLC, *et al.*
Case No.                   25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Ballots and the Confirmation Hearing Notices were adequate and sufficient under the circumstances, and all parties required to be given notice of the Plan and the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan and final approval of the disclosures contained within the Plan) have been given due, proper, timely, and adequate notice thereof in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice of the Plan and the Confirmation Hearing is required.

I.      **Voting.** The procedures by which the Ballots for acceptance or rejection of the Plan and Release Opt-Out Forms were distributed and tabulated under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law and the Disclosure Statement Order.

J.      **Bankruptcy Rule 3016(a).** In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Proponents as the plan proponents.

K.      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L.      **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In addition to Administrative Claims, Priority Tax Claims, which need not be classified, the Plan designates seven (7) Classes of Claims and Interests. The Claims or Interests placed in each Class are

(Page 9)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid

business, factual, and legal reasons exist for separately classifying the various Classes of Claims

and Interests created under the Plan, and such Classes do not unfairly discriminate between

Holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the

Bankruptcy Code.

M.      **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Section 8 of the

Plan specifies that Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are

Unimpaired under the Plan. Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.

N.      **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**

Section 8 of the Plan designates Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims),

Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims) and Class 7 (Interests) as

Impaired and specifies the treatment of Claims and Interests in such Classes. Thus, section

1123(a)(3) of the Bankruptcy Code is satisfied.

O.      **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same

treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of

a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

P.      **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).** The Plan and the

Liquidating Trust Agreement and the Direct Claims Trust Agreement provide adequate and proper

means for the Plan's implementation. Thus, section 1123(a)(5) of the Bankruptcy Code is satisfied.

(Page 10)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Q.      **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).** The Plan does not

provide for the issuance of any securities, including non-voting securities, and the Debtors are

being dissolved as soon as practicable after the Effective Date. Therefore, section 1123(a)(6) of

the Bankruptcy Code is satisfied.

R.      **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).** Section 13.3 of the

Plan provides that the Liquidating Trust and the Direct Claims Trust shall be governed by the

Liquidating Trustee in consultation with the Oversight Committee. On the Effective Date, the

Debtors have appointed Phoenix Management as the Liquidating Trustee, to oversee the

Liquidating Trust, the Direct Claims Trust, and the wind-down of the Debtors' estates.  In the

event the Liquidating Trustee is removed by the Bankruptcy Court, resigns or is replaced pursuant

to the Liquidating Trust Agreement and/or Direct Claims Trust Agreement, or otherwise vacates

its position, a successor Liquidating Trustee shall be appointed as set forth in the Liquidating Trust

Agreement and the Direct Claims Trust Agreement.   Therefore, section 1123(a)(7) of the

Bankruptcy Code is satisfied.

S.      **Additional Plan Provisions (11 U.S.C. § 1123(b)).** The Plan's provisions are

appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable

provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

T.      **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** The

Debtors have exercised reasonable business judgment in determining to either assume, assume and

assign, or reject each of the Debtors' remaining Executory Contracts and Unexpired Leases as

provided for in the Plan, the Plan Supplement, and this Confirmation Order, and any such

(Page 11)
Debtors:                   Powin, LLC, *et al.*
Case No.                   25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

assumptions and rejections are justified and appropriate in the Chapter 11 Cases. The Debtors'

exercise of reasonable business judgment in determining to either assume, assume and assign, or

reject each of the Debtors' remaining Executory Contracts and Unexpired Leases is justified and

appropriate in the Chapter 11 Cases for the reasons set forth in the Disclosure Statement, the

Confirmation Memorandum, and the Uzzi Confirmation Declaration.

U.     **Compromises and Settlements Under and in Connection with the Plan (11**

**U.S.C. § 1123(b)(3)).** All of the settlements and compromises pursuant to and in connection with

the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and

Bankruptcy Rule 9019. The Plan, Plan Supplement, and/or this Confirmation Order provide for,

among other things, the ACE Settlement, the WARN Act Settlement, the FlexGen

Welldex/Confirmation Settlement, the RH Settlement the Debtor/Estate Release, and the Third

Party Release.  Accordingly, the Plan is consistent with section 1123(b) of the Bankruptcy Code.

a.     **WARN Act and ACE Settlements**.  The WARN Act and ACE

Settlements, as the principle terms are reflected in the Plan and Plan Supplement, are in accordance

with section 1123(b)(3)(A) of the Bankruptcy Code and represents a valid exercise of the Debtors'

business judgment.  The WARN Act and ACE Settlements were entered into in good faith and are:

(a) the product of extensive arms'-length negotiations by and between the Debtors, the Committee,

and the WARN Act Claimants and ACE; (b) in the best interests of the Debtors, their Estates, and

the holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) an integral element of

the transactions incorporated into the Plan; and (e) consistent with sections 105, 1123, and 1129

(Page 12)

Debtors:              Powin, LLC, *et al.*

Case No.             25-16137 (MBK)

Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors

of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

b.    **FlexGen Welldex/Confirmation Settlement.** The FlexGen Welldex/Confirmation Settlement, as provided for in Sections 44 through 51 hereof, is in accordance with section 1123(b)(3)(A) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment. The FlexGen Welldex/Confirmation Settlement was entered into in good faith and is: (a) the product of extensive arms'-length negotiations by and between the Debtors, the Committee, and FlexGen; (b) in the best interests of the Debtors, their Estates, and the holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) an integral element of the transactions incorporated into the Plan; and (e) consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

c.    **RH Settlement**. The RH Settlement, as provided for in Section 53 hereof, is in accordance with section 1123(b)(3)(A) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment. The RH Settlement was entered into in good faith and is: (a) the product of extensive arms'-length negotiations by and between the Debtors, the Committee, and RH; (b) in the best interests of the Debtors, their Estates, and the holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) an integral element of the transactions incorporated into the Plan; and (e) consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

(Page 13)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

      d.      **Released and Exculpated Parties**.   The Plan's definition of "Released

Parties" shall be amended to strike clauses (d), (e) and (g) and the definition of "Exculpated

Parties" shall be amended to strike clauses (d) and (g); provided that, notwithstanding the

foregoing, the definition of Released and Exculpated Parties shall expressly include Brian Kane

and Chad Paulson for all purposes under the Plan and this Confirmation Order.

      e.      **Debtor/Estate Release**.   The Debtor/Estate Release set forth in Section

15.2(a) of the Plan is in accordance with section 1123(b) of the Bankruptcy Code and represents a

valid exercise of the Debtors' business judgment.   The Debtor/Estate Release is fair and equitable,

is a key component of the Plan, and is in the best interests of the Debtors, the Estates, and Holders

of Claims and Interests. Releases of the Released Parties by the Debtors and the other

Debtor/Estate Releasors are critically important to the success of the Plan, which embodies the

settlement of certain claims with the Debtors' primary stakeholders, including the Committee and

implements the concessions and compromises made by the parties to the restructuring transactions

contemplated by the Plan.  Each of the Released Parties afforded value and provided consideration

to the Debtors and Estates, aided in the reorganization process and played an integral role in the

formulation and implementation of the Plan. The Plan includes the settlement and resolution of

several complex issues, and the Debtor/Estate Release is an integral part of the consideration to be

provided in exchange for the compromises and resolutions embodied in the Plan. Entry of the

Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b)

of the Bankruptcy Code, of the Debtor/Estate Release, which includes by reference each of the

related provisions and definitions contained in the Plan, and further, shall constitute the

(Page 14)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and

valuable consideration provided by the Released Parties, including, without limitation, the

Released Parties' contributions to facilitating the restructuring and implementing the Plan; (b) in

the best interests of the Debtors, the  Estates and all holders of Claims and Interests; (c) fair,

equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and

(e) a bar to any of the Debtors, the Liquidating Trust, or the Debtors' respective Estates asserting

any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

       f.     **Third Party Release**. The Third Party Release set forth in Section 15.2(b)

of the Plan is an essential provision of the Plan.  The Confirmation Hearing Notices, Ballots,

Release Opt-Out Forms, and Voting Instructions explicitly and conspicuously stated that potential

Releasing Parties could opt out of the Third Party Release and included the language of the Third

Party Release.   Thus, each Releasing Party was given due and adequate notice that they would be

granting the Third Party Release by failing to opt out of the Third Party Release prior to the

deadline to do so.  Accordingly, the Third Party Release is consensual.  The Confirmation Order

shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by

reference each of the related provisions and definitions contained in the Plan, and, further, shall

constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b)

essential to the Confirmation of the Plan, important to the overall objectives of the Plan and an

essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code;

(c) given in exchange for the good and valuable consideration provided by the Released Parties,

including, without limitation, the Released Parties' contributions to facilitating the restructuring

(Page 15)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

and implementing the Plan; (d) materially beneficial to, and in the best interests of the Debtors and

their respective Estates and stakeholders; (e) fair, equitable, and reasonable; (f) given and made

after due notice and opportunity for hearing; (g) a bar to any of the Releasing Parties asserting any

Claim or Cause of Action released pursuant to the Third-Party Release; (h) within the jurisdiction

of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); and (i) consistent with the

Bankruptcy Code.

g.     **Exculpation**.  The exculpation provisions set forth in Section 15.1 of the

Plan are essential to the Plan.  The record in these Chapter 11 Cases fully supports the exculpation

provisions set forth in Section 15.1 of the Plan.

h.     **Injunction.**  The injunction provisions set forth in Section 15.3 of the Plan

are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the

Debtor/Estate Release, the Third Party Release, and the exculpation provisions in  Section 15.1 of

the Plan.

V.     **Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Proponents have complied with the

applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123,

1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the

Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the

Plan, the Plan Supplement, and all other matters considered by this Court in connection with the

Chapter 11 Cases.

(Page 16)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

W.      **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C.**

**§ 1129(a)(3)).** The Proponents have proposed the Plan in good faith and not by any means

forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining

that the Plan has been proposed in good faith, this Court has examined the totality of the

circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process

leading to its formulation. The Plan is the result of extensive arm's length negotiations among the

Debtors, the Committee and certain of its key constituents like the WARN Act Claimants and

ACE. The Plan promotes the objectives and purposes of the Bankruptcy Code.

X.      **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).** The

procedures set forth in the Plan for this Court's approval of the fees, costs, and expenses to be paid

in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter

11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the

Bankruptcy Code.

Y.      **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** Upon the occurrence

of the Effective Date, the employment, retention, or appointment and authority of each of the

Debtors' members, managers, directors, officers, employees and professionals shall be deemed to

have terminated; except that certain employees who may be necessary as determined by the

Liquidating Trustee shall act as the Debtors' authorized representative. The initial Liquidating

Trustee is identified in Exhibit C of the Plan Supplement.  The initial TOC members as provided

for in Exhibit C to the Plan Supplement shall be the following:  ACE Engineering & Co., Ltd.,

(Page 17)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Celestica LLC, Contemporary Amperex Technology Co., Limited, JMS Wind Energy, LLC and

GreEnergy Resources LLC.  Thus, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

   Z. **No Rate Changes (11 U.S.C. § 1129(a)(6)).** After the Confirmation Date, the

Debtors will not have any businesses involving the establishment of rates over which any

regulatory commission has or will have jurisdiction.   Therefore, the provisions of section

1129(a)(6) do not apply to the Plan.

   AA. **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).** The "best interests" test is

satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Interest in such

Impaired Classes will receive or retain property of a value, as of the Effective Date, that is not less

than the amount that such Holder would so receive or retain if the Debtors were liquidated under

chapter 7 of the Bankruptcy Code.

   BB. **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** Class 1 (Priority Non-

Tax Claims) and Class 2 (Other Secured Claims) are left unimpaired under the Plan.  Each of Class

3 (WARN Act Claims), Class 4 (Settled Priority Claims) and Class 5 (General Unsecured Claims)

have voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section

1129(a)(8) as to those Classes. Class 6 (Intercompany Claims) and Class 7 (Interests), are deemed

to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (together, the

"Deemed Rejecting Classes"). Accordingly, section 1129(a)(8) of the Bankruptcy Code has not

and cannot be satisfied. The Plan, however, is still confirmable because it satisfies the

nonconsensual confirmation provisions of section 1129(b), as set forth below.

(Page 18)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

CC.    **Treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims and Priority Tax Claims pursuant to Sections 7 and 9 of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

DD.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).** Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims) and Class 5 (General Unsecured Claims) are Impaired Classes of Claims that voted to accept the Plan, determined without including any acceptance of the Plan by any insider. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

EE.    **Feasibility (11 U.S.C. § 1129(a)(11)).** The Plan provides for the dissolution of the Debtors as soon as practicable after the Effective Date and the liquidation of the Debtors' property. Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.  The Debtors have sold substantially all their assets pursuant to the *Order (I) Authorizing the Debtors to Enter into and Perform Under the FlexGen Power Systems, LLC Asset Purchase Agreement, (II) Approving the Sale of Purchases Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance with the Assumption and Assignment Procedures, and (IV) Granting Related Relief* [Docket No. 751] (the "Sale Order") and have ceased conducting business and have started the process of winding down their businesses prior to the Confirmation Hearing.

(Page 19)

Debtors:            Powin, LLC, *et al.*

Case No.            25-16137 (MBK)

Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors

FF.   **Payment of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to the Plan, thus satisfying section 1129(a)(12) of the Bankruptcy Code.

GG.   **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)).** Sections 1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors (i) are not obligated to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) (section 1129(a)(13)), (ii) have no domestic support obligations (section 1129(a)(14)), (iii) are not individuals (section 1129(a)(15)), and (iv) are not nonprofit corporations (section 1129(a)(16)).

HH.   **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).** The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect to both of the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Further, to the extent Class 6 (Intercompany Claims) or Class 7 (Interests) are Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Interests, and will not alter the treatment provided for any other Holder of any Claim or

(Page 20)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in

the Deemed Rejecting Classes. Third, the Plan does not discriminate unfairly with respect to the

Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive

substantially similar treatment on account of their Claims or Interests, as applicable, in such class.

The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in Uzzi

Confirmation Declaration filed in connection with, the Confirmation Hearing regarding the

Debtors' classification and treatment of Claims and Interests (x) is reasonable persuasive, credible,

and accurate; (y) utilizes reasonable and appropriate methodologies and assumptions; and (z) has

not been controverted by other credible evidence.

II.     **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only chapter 11 plan

currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is

therefore satisfied.

JJ.     **Principal Purpose (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is

neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities

Act of 1933, and no governmental unit has objected to Confirmation on any such grounds.

Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

KK.     **Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Plan

satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and

should be confirmed.

LL.     **Good Faith Solicitation (11 U.S.C. § 1125(e)).** The Debtors and their officers,

directors, employees, advisors, Professionals Persons, and agents have acted in good faith within

(Page 21)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure

Statement Order in connection with all of their respective activities relating to the solicitation of

acceptances of the Plan, and they are entitled to the protections afforded by section 1125(e) of the

Bankruptcy Code and the injunction and exculpation provisions set forth in Article 13 of the Plan

and in this Confirmation Order.

MM.   **Implementation**.   All documents and agreements necessary to implement

transactions contemplated by the Plan, including those contained or summarized in the Plan

Supplement (including, among others, the Liquidating Trust Agreement and the Direct Claims

Trust Agreement), have been negotiated in good faith and at arms'-length, are in the best interests

of the Debtors and their Estates, and shall, upon completion of documentation and execution, be

valid, binding, and enforceable documents and agreements not in conflict with any federal, state,

or local law.  The Debtors and the Liquidating Trustee, as applicable, are authorized to take any

action reasonably necessary or appropriate to consummate such agreements and the transactions

contemplated thereby.

NN.   **Retention of Jurisdiction.** This Court may properly retain jurisdiction over the

matters set forth in Section 18 of the Plan and/or section 1142 of the Bankruptcy Code.

**Based upon the foregoing findings, and upon the record made before this Court at**

**the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby**

**ORDERED, ADJUDGED AND DECREED THAT:**

(Page 22)

Debtors:                    Powin, LLC, *et al.*

Case No.                    25-16137 (MBK)

Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors

## Confirmation of the Plan

1.      The Plan, as and to the extent modified by this Confirmation Order, is approved and confirmed pursuant to section 1129 of the Bankruptcy Code. Any objections to the Plan not withdrawn, resolved, or otherwise disposed of are overruled and denied.

2.      The terms of the Plan are incorporated by reference into (except to the extent modified by this Confirmation Order), and are an integral part of, this Confirmation Order.

## Final Approval of the Disclosures

3.      The disclosures provided in the Plan are approved as adequate on a final basis pursuant to Section 1125 of the Bankruptcy Code.

## Compromises and Settlements Under the Plan

4.      Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, upon the Effective Date, all settlements and compromises set forth in the Plan, including the WARN Act Settlement, the ACE Settlement, the FlexGen Welldex/Confirmation Settlement, and the RH Settlement or announced on the record at the Confirmation Hearing are approved in all respects, and constitute good faith compromises and settlements.

## Classification and Treatment

5.      The Plan's classification scheme is approved. The classifications set forth on the Ballots (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any Holder as representing the actual classification of such Claim under the Plan

(Page 23)
Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

for distribution purposes, and (d) shall not be binding on the Debtors and the Liquidating Trustee

except for Plan voting purposes.

### **Authorization to Implement the Plan**

6.      The Debtors and the Liquidating Trustee, as applicable, are authorized to take or

cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and

to consummate, the Plan, and to execute, enter into, or otherwise make effective all documents

arising in connection therewith, including, without limitation, all Plan Documents, prior to, on,

and after the Effective Date.

7.      On the Effective Date, the officers of the Debtors and the Liquidating Trustee are

authorized to do all things and to execute and deliver all agreements, documents, instruments,

notices, and certificates contemplated by the Plan and to take all necessary actions required in

connection therewith, in the name of and on behalf of the Debtors.  In accordance with Bankruptcy

Code section 1142(b), upon the entry of this Confirmation Order, the Debtors, and the Liquidating

Trustee, each acting by and through its respective officers and agents, are authorized to take any

and all actions necessary or appropriate to implement the Plan, including, without limitation, (i)

consummating the WARN Act Settlement, the ACE Settlement, the FlexGen

Welldex/Confirmation Settlement and the RH Settlement; (ii) forming the Liquidating Trust,

entering into the Liquidating Trust Agreement (substantially in the form attached hereto as **Exhibit**

**B**), and complying with, and satisfying the obligations set forth under, the Liquidating Trust

Agreement; (iii) forming the Direct Claims Trust, entering into the Direct Claims Trust Agreement

(substantially in the form attached hereto as **Exhibit C**), and complying with, and satisfying the

(Page 24)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

obligations set forth under, the Direct Claims Trust Agreement; and (iv) complying with, and

satisfying the obligations set forth under, the Plan, in each case, without any further order of the

Court.  The Liquidating Trust and the Direct Claims Trust shall be deemed for all purposes to have

been created in connection with the Plan and this Confirmation Order.  On the Effective Date, each

of the Debtors' then-current directors and officers shall be deemed to have resigned and the

Liquidating Trustee shall automatically be the sole remaining officer and director of the Debtors,

without the need for any meeting of or resolution by any board of directors or manager.  Following

the Effective Date, the Liquidating Trustee is given full power of attorney and has authority to

execute and/or endorse any documentation on behalf of the Debtors in furtherance of the Plan and

the Debtors' liquidation.

8.      The approvals and authorizations specifically set forth in this Confirmation Order

are not intended to limit the authority of the Liquidating Trustee, the Debtors, or any officer thereof

to take any and all actions necessary or appropriate to implement, effectuate, and consummate any

and all documents or transactions contemplated by the Plan or this Confirmation Order.

9.      For the avoidance of doubt, the Plan and this Confirmation Order in no way

authorize or approve any incentive payments under sections 105 or 503 of the Bankruptcy Code.

**Enforceability of the Plan**

10.      Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code, the Plan

and all Plan Documents (including, but not limited to, the Liquidating Trust Agreement and the

Direct Claims Trust Agreement) shall be, and hereby are, valid, binding and enforceable.  The

(Page 25)
Debtors:          Powin, LLC, *et al.*
Case No.          25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

current form of the Liquidating Trust Agreement and the Direct Claims Trust Agreement are

attached to this Order as **Exhibit B** and **Exhibit C**, respectively.

11.     Except to the extent otherwise provided in this Confirmation Order and the Plan,

and pursuant to Section 14 of the Plan, on the Effective Date, the Debtors shall irrevocably transfer

and shall be deemed to have irrevocably transferred to the Liquidating Trust all of their rights, title,

and interest in and to all of the Liquidating Trust Assets, then held by the Debtors free and clear

of all liens, claims, and encumbrances.  For the avoidance of doubt, the Plan shall also effectuate

the transfer to the Liquidating Trust of all of the Debtors' rights, title, and interest under that certain

*Amended Order Authorizing (I) Abandonment or Sale of Remaining Inventory and (II) Granting*

*Related Relief* [Docket No. 1031] (the "Remaining Inventory Order"); *provided, that,*

notwithstanding anything to the contrary in the Remaining Inventory Order, Section 4 of the

Remaining Inventory Order is hereby deemed modified solely to the extent necessary to provide

that, following the Effective Date, the Liquidating Trustee shall have full authority, without the

requirement to consult with the Committee or the U.S. Trustee, to accept offers for, sell, or abandon

any Miscellaneous Inventory (as defined in the Remaining Inventory Order). All other provisions

of the Remaining Inventory Order shall remain in full force and effect except as expressly modified

herein.

## Preservation of Causes of Action and Litigation

12.     Except as otherwise provided in the Plan or this Confirmation Order (a) in

accordance with Section 1123(b)(3) of the Bankruptcy Code  and Sections 13 and 14.2 of the Plan,

any retained Causes of Action or Litigation that the Debtors may hold against any Entity shall vest

(Page 26)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

upon the Effective Date in the Liquidating Trust and (b) after the Effective Date, the Liquidating

Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file,

prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any

such retained Causes of Action and Litigation, in accordance with the terms of the Plan and the

Liquidating Trust Agreement and without further order of this Bankruptcy Court, in any court or

other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the

Chapter 11 Cases.

### Reservation of Causes of Action and Litigation

13.     Unless a Cause of Action or Litigation against a holder or other Entity is expressly

waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including

this Confirmation Order), including pursuant to the Debtor/Estate Release or the Third Party

Release, the Debtors and the Liquidating Trustee expressly reserve such Cause of Action or

Litigation for later adjudication by the Liquidating Trustee, including, without limitation, Causes

of Action or Litigation not specifically identified or described in the Plan Supplement or elsewhere

or of which the Debtors may presently be unaware or which may arise or exist by reason of

additional facts or circumstances unknown to the Debtors at this time or facts or circumstances

which may change or be different from those the Debtors now believe to exist. No preclusion

doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue

preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall

apply to such Causes of Action or Litigation upon, after, or as a consequence of the Confirmation

or Consummation or after the entry of this Confirmation Order or Effective Date based on the

(Page 27)
Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Plan, or this Confirmation Order, except where such Causes of Action or Litigation have been

released in the Plan or any other Final Order. The Debtors and Liquidating Trustee's rights to

pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an

interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-

defendants in such lawsuits, are expressly reserved.

**Wind-Up and Dissolution of the Debtors**

14.     The Debtors shall be dissolved as provided in the Plan and this Confirmation Order.

On the Effective Date, the Liquidating Trustee shall wind-up the affairs of the Debtors, if any,

subject to the Plan, the Confirmation Order and the Liquidating Trust Agreement, and the

Liquidating Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the

Debtors, all tax returns, reports, certificates, forms, or similar statements or documents

(collectively, "Tax Returns") required to be filed or that the Liquidating Trustee otherwise deems

appropriate, including the filing of amended Tax Returns or requests for refunds, for all taxable

periods ending on, prior to, or after the Effective Date. In connection therewith, the Debtors and

the Liquidating Trustee are authorized to surrender to the applicable governmental authorities all

licenses that the Debtors used to operate their business to the extent they have not already done so

to date.

**Cancellation of Interests, Existing Securities, and Agreements**

15.     On the Effective Date, except to the extent otherwise provided in the Plan or in this

Confirmation Order, all notes, instruments, certificates, and other documents evidencing Claims

or Interests, shall be deemed cancelled and surrendered without any need for a holder of a Claim

(Page 28)
Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

or Interest (a "Holder") to take further action with respect thereto and the obligations of the Debtors

thereunder or in any way related thereto shall be deemed satisfied in full and discharged; *provided*,

*however*, that notwithstanding Confirmation or Consummation, any such agreement that governs

the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders

to receive distributions under the Plan; *provided further*, *however*, that on the Effective Date all

Interests shall be deemed cancelled and extinguished. Holders of Interests shall not receive any

distribution or retain any property pursuant to the Plan.

**<u>Method of Distribution Under the Plan</u>**

16.     The Liquidating Trustee shall make all distributions required to be made to Holders

of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating

Trust shall hold and distribute the Liquidating Trust Assets, the Liquidating Trust Professional Fee

Reserve, and the Disputed Claim Reserve in accordance with the provisions of the Plan and the

Liquidating Trust Agreement.

17.     The Liquidating Trustee shall make all distributions required to be made to such

Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The

Liquidating Trustee shall not be required to give any bond or surety or other security for the

performance of the Liquidating Trustee's duties as disbursing agent unless otherwise ordered by

this Court.  At the option of the Liquidating Trustee, any Cash payment to be made from the

Liquidating Trust by any means deemed appropriate by the Liquidating Trustee, including by

check or wire transfer or as otherwise required or provided in applicable agreements.

(Page 29)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

### The Liquidating Trust

18.     **Administration of the Liquidating Trust**.  The Liquidating Trust Agreement,
substantially in the form attached hereto as **Exhibit B**, is hereby approved.  The appointment of
Phoenix Management as the initial Liquidating Trustee on the terms set forth in the Plan and
Liquidating Trust Agreement, is hereby approved.  The Liquidating Trustee shall be compensated
in the manner set forth in and consistent with the Liquidating Trust Agreement. The Liquidating
Trustee and the Oversight Committee shall both have all powers, rights, duties and protections
afforded the Liquidating Trustee and the Oversight Committee, respectively, under the Plan, this
Confirmation Order, and the Liquidating Trust Agreement.

19.     **Interests in the Liquidating Trust**. There shall be one class of interests in the
Liquidating Trust. The Liquidating Trust shall issue the Liquidating Trust Interests to the Holders
of Allowed Administrative and Priority Claims who have agreed to accept deferred distributions
from the Liquidating Trust after the Effective Date (including the WARN Act Claimants and Ace),
Settled Priority Claims, General Unsecured Claims, and the Contributing Direct Claim Holders in
accordance with sections 9.5(b) and 13.3(i) of the Plan. Liquidating Trust Interests shall be
uncertificated. Beneficiaries of the Liquidating Trust Interests shall be bound by the Liquidating
Trust Agreement.

20.     **Liquidating Trust Assets**.  The Liquidating Trust shall consist of the Liquidating
Trust Assets. On the Effective Date, the Liquidating Trust Assets shall vest in the Liquidating
Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise provided
in the Plan, including, without limitation, pursuant to Sections 13.3(b) and (c) of the Plan or in this

(Page 30)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Confirmation Order. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall not

affect any attorney-client privilege, the work-product privilege, and any other applicable

evidentiary privileges of the Debtors, which such privileges shall be expressly transferred and

assumed by the Liquidating Trust.

21.    **Distribution of Liquidating Trust Assets**.    The Liquidating Trustee shall

distribute the appropriate net proceeds of the Liquidating Trust Assets to the Beneficiaries pursuant

to the terms of the Plan and the Liquidating Trust Agreement.

22.    The Liquidating Trustee shall utilize, in accordance with the Liquidating Trust

Agreement, the Plan and the Trust Budget, Cash from the Liquidating Trust Assets Account in

amounts sufficient to (i) fund costs and expenses of the Liquidating Trust, including, without

limitation, the fees and expenses of the Liquidating Trustee, its professionals, and the professionals

retained in these cases, (ii) compensate the Liquidating Trustee, and (iii) satisfy other liabilities

incurred by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement

(including any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust

Assets).

## The Direct Claims Trust

23.    **Administration of the Direct Claims Trust**.    The Direct Claims Trust Agreement,

substantially in the form attached hereto as **Exhibit C**, is hereby approved.    The appointment of

Phoenix Management as the initial Direct Claims Trustee on the terms set forth in the Plan and

Direct Claims Trust Agreement, is hereby approved.    The Direct Claims Trustee shall be

compensated in the manner set forth in and consistent with the Direct Claims Trust Agreement.

(Page 31)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

The Direct Claims Trustee and the Oversight Committee shall both have all powers, rights, duties

and protections afforded the Direct Claims Trustee and the Oversight Committee, respectively,

under the Plan, this Confirmation Order, and the Direct Claims Trust Agreement.

24.     **Interests in the Direct Claims Trust**. There shall be one class of interests in the

Direct Claims Trust. The Direct Claims Trust shall issue the Direct Claims Trust Interests to

Contributing Direct Claim Holders in accordance with Sections 9.5(b) and 13.3(b) of the Plan.

Direct Claim Trust Interests shall be uncertificated. Beneficiaries of the Direct Claim Trust

Interests shall be bound by the Direct Claim Trust Agreement.

25.     **Direct Claim Trust Assets**.  The Direct Claim Trust shall consist of the Direct

Claim Trust Assets. On the Effective Date, the Direct Claim Trust Assets shall vest in the Direct

Claim Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise

provided in the Plan, including, without limitation, pursuant to Section 13.3(b) of the Plan or in

this Confirmation Order.

26.     **Distribution of Direct Claims Trust Assets**.  The Direct Claims Trustee shall

distribute the appropriate net proceeds of the Direct Claims Trust Assets to the Beneficiaries

pursuant to the terms of the Plan and the Liquidating Trust Agreement.

## Executory Contracts and Unexpired Leases

27.     The assumption of the executory contracts or unexpired leases identified on the list

filed with the Plan Supplement or separately (the "Assumed Executory Contract and Unexpired

Leases List") is approved.

31

(Page 32)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

28.    Except any executory contract or unexpired lease (a) identified on the Assumed
Executory Contracts and Unexpired Leases List, (b) which is the subject of a separate motion or
notice to assume or reject filed by the Debtors and pending as of the Confirmation Hearing, (c)
that previously expired or terminated pursuant to its own terms, or (d) that was previously assumed
or rejected by any of the Debtors, each of the Debtors' other executory contracts and unexpired
leases shall be deemed rejected as of the Effective Date in accordance with the provisions and
requirements of sections 365 and 1123 of the Bankruptcy Code and such rejection is approved;
provided, however, that rejection of that certain unexpired lease between Lu Pacific Properties,
LLC and Debtor Powin, LLC f/k/a Powin Energy Corporation, as tenant, for the premises located
at 20550 SW 115th Avenue, Tualatin, OR 97062, is hereby deemed rejected effective as of October
31, 2025.

29.    Each executory contract and unexpired lease assumed pursuant to the Plan or by
Order of this Court, and not assigned to a third party on or prior to the Effective Date, shall be
transferred to the Liquidating Trust and be deemed a Liquidating Trust Asset.

30.    **Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim
arising from the rejection of executory contracts or unexpired leases ("__Rejection Claims__")
pursuant to Confirmation of the Plan or otherwise must be Filed with the Claims and
Balloting Agent no later than the later of 30 days after the Effective Date or 30 days after the
effective date of rejection. Rejection Claims shall be classified as Class 5 General Unsecured
Claims and shall be treated in accordance with Section 9.5 of the Plan, as applicable. Any**

(Page 33)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

**Rejection Claims that are not timely filed pursuant to Section 12 of the Plan or this**

**Confirmation Order shall be forever disallowed and barred**.

### Disputed Claims

31.     Except as otherwise provided in the Plan, the Liquidating Trustee shall have the

right to object to Claims on any basis.  Subject to further extension by the Bankruptcy Court with

or without notice, the Liquidating Trustee may object to the allowance of all Claims on or before

the Claim Objection Deadline. From and after the Effective Date, the Liquidating Trust shall

succeed to all of the rights, defenses, offsets, and counterclaims of the Debtors and the Estates in

respect of all Claims, and in that capacity shall have the exclusive power to prosecute, defend,

compromise, settle, and otherwise deal with all such objections.

32.     **All objections to Claims shall be Filed by the Claims Objection Deadline;**

***provided*, that no such objection may be filed with respect to any Claim or Interest after a**

**Final Order has been entered Allowing such Claim or Interest.**

### Administrative Claims

33.     **All requests for payment of an Administrative Claim (other than a**

**Professional Fee Claim) arising or deemed to have arisen after the Petition Date must be filed**

**with this Court and served to the Debtors and the Liquidating Trustee on or before the date**

**that is 60 days after the Effective Date.**  In the event of an objection to allowance of an

Administrative Claim, this Court shall determine the Allowed amount of such Administrative

Claim.  Nothing herein shall be deemed to extend existing deadlines established for filing certain

Administrative Claims, including pursuant to the Bar Date Order.

(Page 34)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

34.    For the avoidance of doubt, each Administrative Claim shall be asserted, allowed,

and paid solely against the specific Debtor that incurred, is liable for, or received the benefit of the

services giving rise to such Administrative Claim. No Administrative Claim asserted against any

particular Debtor shall constitute, or be deemed to constitute, an Administrative Claim against any

other Debtor or their respective estates, and no joint and several liability is created or implied by

the Plan or this Confirmation Order.

**Liquidating Trust Professional Fee Reserve and Professional Fee Claims**

35.    On or as soon as practicable after the Effective Date, Liquidating Trustee shall

establish the Liquidating Trust Professional Fee Reserve and fund such reserve in an amount equal

to the estimated anticipated Professional Fee Claims provided by Professionals for services render

and expenses incurred prior to the Effective Date estimated to be in excess of the Debtor

Professional Fee Reserve (collectively with the Liquidating Trust Professional Fee Reserve, the

"Professional Fee Reserves"); provided, that the Liquidating Trustee shall not be required to fund

the Liquidating Trust Professional Fee Reserve to the extent the Debtor Professional Fee Reserve

contains adequate amounts to cover the estimated Professional Fee Claims.  The Liquidating Trust

Professional Fee Reserve shall be used solely for the payment of Allowed Professional Fee Claims

in accordance with Section 7.3 of the Plan.  For the avoidance of doubt, Professionals shall not be

required to allocate their Professional Fee Claims among one or more individual Debtors.

36.    **All final applications for payment of Professional Fee Claims must be Filed**

**with this Court and served on the Debtors,  the Liquidating Trustee, and the U.S. Trustee on**

**or before 45 days after the Effective Date or such later date as may be agreed to by the**

(Page 35)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

**Liquidating Trustee.**    Upon approval of the fee applications by the Bankruptcy Court, the

applicable fee applications shall first be paid from the Debtor Professional Fee Reserve and Stretto

shall be authorized to release from the Debtor Professional Fee Reserve to the applicable

Professional, an amount equal to the Allowed Professional Fee Claims of such Professional. To

the extent the Debtor Professional Fee Reserve is insufficient to satisfy the Allowed Professional

Fee Claim in full, the Liquidating Trustee shall pay such Professionals from the Liquidating

Trustee Professional Fee Reserve the remainder of their respective Allowed Professional Fee

Claims.

37.    The Professional Fee Reserves shall be closed once all required payments have

been made.  Any funds remaining in the Professional Fee Reserves after all required payments

have been made shall be transferred to the Liquidating Trust.

## **Release, Injunction, Exculpation and Related Provisions**

38.    The release, injunction, exculpation, and related provisions set forth in Article 15

of the Plan are hereby approved and authorized in their entirety, and such provisions are effective

and binding on all Persons and Entities as and to the extent provided for therein.

39.    **Debtors' Releases**. Notwithstanding anything in the Plan to the contrary, and

pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and

after and subject to the occurrence of the Effective Date, the Debtors and the Estates, in each case

on behalf of themselves and their respective successors, assigns, and representatives, and any and

all other entities who may purport to assert any cause of action, by, through, for, or because of the

foregoing entities (collectively, the "Debtor/Estate Releasors"), hereby release (the "Debtor/Estate

(Page 36)
Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Release") each Released Party, and each Released Party is deemed released by the Debtor/Estate

Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies,

and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any

of the Debtor/Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen,

asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable,

disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter

arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have been legally

entitled to assert in its own right, or on behalf of the holder of any Claim or Interest or other entity,

based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including

the management, ownership, or operation thereof), the Debtors' liquidation, the Chapter 11 Cases,

the purchase, sale, transfer of any security, asset, right, or interest of the Debtors and the ownership

thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that

is treated in the Plan, the business or contractual arrangements between the Debtors and any

Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the

negotiation, formulation, or preparation of, or solicitation of votes on, the Plan or related

agreements, instruments, or other documents, or any other act or omission, transaction, agreement,

event, or other occurrence taking place on and before the Effective Date, other than claims or

liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful

misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of

such by final order of a court of competent jurisdiction) but in all respects such Released Parties

shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and

(Page 37)
Debtors:                 Powin, LLC, *et al.*
Case No.                 25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

responsibilities pursuant to the Plan; provided, that the foregoing Debtor/Estate Release shall not

operate to waive or release any obligations of any party under the Plan or any other document,

instrument, or agreement executed to implement the Plan; and further provided that nothing herein

shall act as a discharge of the Debtor.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, of the

Debtor/Estate Release, which includes by reference each of the related provisions and definitions

contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the

Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the

Released Parties; (b) in the best interests of the Debtors, the Estates and all holders of Claims and

Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity

for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of

Action released pursuant to the Debtor/Estate Release.

40.     **Release by Holders of Claims and Interests**. Notwithstanding anything in the

Plan to the contrary, on and after and subject to the occurrence of the Effective Date, each of the

Releasing Parties hereby release (the "<u>Third Party Release</u>") each Released Party, and each of the

Debtors, the Estates, and the Released Parties is hereby deemed released from, any and all claims,

interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities

whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors

or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or

unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or

undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in

(Page 38)
Debtors:                    Powin, LLC, *et al.*
Case No.                   25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether

individually or collectively), based on or relating to, or in any manner arising from, in whole or in

part, the Debtors (including the management, ownership, or operation thereof), the Debtors'

liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or

interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or

events giving rise to, any Claim or Interest that is treated in the Combined Plan and Disclosure

Statement, the business or contractual arrangements between the Debtor and any Released Party,

the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation,

formulation, or preparation of, or solicitation of votes on, the Plan or related agreements,

instruments, or other documents or any other act or omission, transaction, agreement, event, or

other occurrence relating to the Debtors taking place on and before the Effective Date, other than

claims or liabilities arising out of or relating to any act or omission of a Released Party that

constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to

determination of such by final order of a court of competent jurisdiction) but in all respects such

Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to

their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in

the foregoing, the Third Party Release shall not release any obligations of any party under the Plan

or any other document, instrument, or agreement executed to implement the Plan.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the

Third Party Release, which includes by reference each of the related provisions and definitions

contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third

(Page 39)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Party Release is: (a) in exchange for the good and valuable consideration provided by the Released

Parties; (b) in the best interests of the Debtors and all holders of Claims and Interests; (c) fair,

equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and

(e) a bar to any of the Releasing parties asserting any Claim or Cause of Action released pursuant

to the Third Party Release.

41.     **Release of Liens**. Except as otherwise provided in the Plan, this Confirmation

Order or in any contract, instrument, release, or other agreement or document created pursuant to

the Plan, on the Effective Date and upon the transfer of the Liquidating Trust Assets to the

Liquidating Trust, all mortgages, deeds of trust, Liens, pledges, or other security interests against

any property of the Debtors and their Estates shall be fully released and discharged, and all of the

right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other

security interests shall revert to the Debtors and their successors and assigns, including the

Liquidating Trust, in accordance with the Plan.

42.     **Exculpation**. The Exculpated Parties will neither have nor incur any liability (the

"Exculpation") to any entity for any action taken or omitted to be taken between the Petition Date

and Effective Date in connection with or related to the Chapter 11 Cases, the sale or other

disposition of the Debtors' assets or the formulation, preparation, dissemination, implementation,

Confirmation, or Consummation of the Plan or any agreement created or entered into in connection

with the Plan; provided, however, that this limitation will not affect or modify the obligations

created under the Plan, or the rights of any holder of an Allowed Claim to enforce its rights under

the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, bad

(Page 40)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

faith, or gross negligence (in each case subject to determination of such by final order of a court

of competent jurisdiction); provided that any Exculpated Party shall be entitled to reasonably rely

upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan,

and such reasonable reliance may be asserted as a  form a defense to any such claim, Cause of

Action, or liability.   The Exculpated Parties have acted in compliance with the applicable

provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and,

therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule,

or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions

made pursuant to the Plan. The Exculpation will be in addition to, and not in limitation of, all other

releases, indemnities, exculpations, and any other applicable law or rules protecting such

Exculpated Parties from liability. Without limiting the generality of the foregoing, each Debtor,

each Estate, and each Exculpated Party shall be entitled to and granted the protections and benefits

of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary in the

foregoing, the releases and exculpations set forth above do not release any post-Effective Date

obligations of any party under the Plan or any document, instrument, or agreement (including those

set forth in the Plan Supplement) executed or deemed executed to implement the Plan, or any

executory contract or unexpired lease assumed during the Chapter 11 Cases or under the Plan.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the

Exculpation, which includes by reference each of the related provisions and definitions contained

in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Exculpation is: (a)

in exchange for the good and valuable consideration provided by the Exculpated Parties; (b) in the

(Page 41)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

best interests of the Debtors and all holders of Claims and Interests; (c) fair, equitable, and

reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any

party from asserting any Claim or Cause of Action released pursuant to the Exculpation.  For the

avoidance of doubt, the Exculpated Parties do not include employees of the Debtors.  Neither the

Liquidating Trustee nor the Indemnified Parties will receive prospective exculpation for post-

Effective Date acts or omissions.

43.    **Injunction**. In implementation of the Plan, except as otherwise expressly provided

in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms

of the Plan or any documents provided for or contemplated in the Plan, all entities who have held,

hold or may hold Claims against or Interests in the Debtors, the Liquidating Trust, or the Estates

that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing

in any manner, directly or indirectly, any action or other proceeding of any kind against the

Debtors, the Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to

any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner

or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the

Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such

Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or

encumbrance of any kind against the Debtors, the Estates, the Liquidating Trust, or any of the

Liquidating Trust Assets with respect to any such Claim or Interest; and (d) any act, in any manner,

in any place whatsoever, that does not conform to or comply with the provisions of the Plan with

respect to such Claim or Interest, including, without limitation, the Debtor/Estate Release, the

(Page 42)
Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Third Party Release, or the Exculpation.  Nothing contained in this Section shall prohibit the holder

of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an

Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or

prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors

or the Liquidating Trust under the Plan.

**Resolution of Formal Objections to the Plan**

44.    **FlexGen Welldex/Confirmation Settlement**. In resolution of certain disputes

arising under the transactions (the "FlexGen Sale") described in the Asset Purchase Agreement,

dated July 6, 2025 (the "FlexGen APA"), the Debtors, FlexGen Power Systems, LLC ("FlexGen"),

and the Committee, have agreed to certain terms included in this Confirmation Order below and

otherwise memorialized in a Settlement Agreement filed on  November 25, 2025 [Docket No.

1136] and presented in evidence at the Confirmation Hearing (the "FlexGen

Welldex/Confirmation Settlement") and such Settlement Agreement, the "FlexGen Welldex

Settlement Agreement").

45.    The Debtors have agreed to transfer the inventory described on Exhibit "A" to the

FlexGen Welldex Settlement Agreement (the "Substitute Inventory") to FlexGen, free and clear

of any liens, claims and interests, including, without limitation, any interests described in the

objection [Docket No. 619] filed by Solar Carver 1, LLC and Solar Carver 3, LLC (collectively,

"Solar Carver") in connection with the Sale Order entered by the Court on August 18, 2025

[Docket No. 751].  Pursuant to the Remaining Inventory Order, the Debtors offered the Substitute

Inventory to Solar Carver, and Solar Carver declined to purchase the Substitute Inventory.  Solar

(Page 43)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Carver has been provided notice of this Confirmation Order and of the Debtors' intention to

transfer the Substitute Inventory free and clear of any liens, claims and interests, and Solar Carver

has not objected to such transfer. Accordingly, the FlexGen Welldex/Confirmation Settlement

and the FlexGen Welldex Settlement Agreement are approved under Fed. R. Bank. P. 9019, and

the transfer of the Substitute Inventory to FlexGen free and clear of any liens, claims and interests,

including, but not limited to, any interests of Solar Carver, is likewise authorized and approved.

46.    For purposes of the Plan, any claims of FlexGen arising in connection with the

FlexGen Sale (the "FlexGen Sale Claims") shall be Administrative Claims, if Allowed.

47.    For purposes of the Plan, the definition of "Released Parties" shall be deemed to

include FlexGen, the DIP Lenders, the Administrative Agent, and the Collateral Agent, provided,

however, that, except to the extent set forth in the FlexGen Welldex/Confirmation Settlement and

FlexGen Welldex Settlement Agreement, nothing in the Plan shall operate to waive or release

FlexGen from any obligations under the FlexGen APA, including, without limitation, obligations

expressly assumed by FlexGen under the FlexGen APA which shall remain enforceable by parties

to whom such obligations are due.

48.    On the Effective Date, the Debtors shall reserve, as an additional Effective Date

Cash Transfer, the sum of $3,000,000 on account of the FlexGen Sale Claims (the "FlexGen

Reserve") pending further order of the Court. In the event that any FlexGen Sale Claims are

Allowed, they shall be payable upon the entry of an order allowing such FlexGen Sale Claim

without the requirement that such order be a Final Order of the Bankruptcy Court, provided such

payment shall not waive any rights of the Debtors to recover such payment if such FlexGen Sale

(Page 44)
Debtors:               Powin, LLC, *et al.*
Case No.               25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

Claim ceases to be Allowed.  For the avoidance of doubt, the amount required to be reserved on

account of FlexGen Sale Claims pursuant to this paragraph shall not limit the amount of any

FlexGen Sale Claim or FlexGen's ability to recover from the Debtors or the Liquidating Trust on

account of any FlexGen Sale Claim, to the extent Allowed; provided, that FlexGen Sale Claims in

excess of the FlexGen Reserve must be Allowed by a Final Order.  Nothing in this Confirmation

Order shall in any way limit FlexGen's ability to assert, or recover on account of, any FlexGen

Sale Claims that are not explicitly settled, waived or released in the FlexGen Welldex Settlement

Agreement.

49.    In the event that the FlexGen Welldex Settlement Agreement is not approved by

the Bankruptcy Court or does not become effective on or before the Effective Date of the Plan,

then the Debtors and/or the Liquidating Trustee shall not make any distributions on account of

General Unsecured Claims or dispose of the Substitute Inventory until a reserve is established by

agreement of the Parties. If agreement cannot be reached, the parties shall jointly request that the

Court set a hearing and briefing schedule to determine such reserve amount.

50.    The *Emergency Motion of the Debtors and the Committee for Entry of an Order

Disallowing and Expunging the Administrative Claim filed by FlexGen or, in the Alternative,

Estimating the Claim at $0 for All Purposes* [Docket No. 1103 (the "FlexGen Administrative

Claim Disallowance Motion") shall be set for hearing on December 17, 2025 at 2:00 p.m. Eastern

Time, with any responses to the FlexGen Administrative Claim Disallowance Motion shall be filed

on or before December 10, 2025, and any reply due on or before December 15, 2025.

(Page 45)
Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

51.     **Surety Settlement**. Prior to the Petition Date and in the ordinary course of business,

the Applied Surety Underwriters, Siriuspoint America Insurance Company and Pennsylvania

Insurance Company (together, the "Surety") issued a surety bond on behalf of the Debtors. Powin,

LLC executed an indemnity agreement (the "Surety Bond Agreement") and caused cash collateral

to be pledged to the Surety (the "Cash Collateral").   Entry of this Confirmation Order and

confirmation of the Plan shall not modify or affect: (a) the Surety's rights under the Surety Bond

Agreement or with respect to the Cash Collateral (or any proceeds thereof), or (b) any right of

subrogation of the surety to the rights of a paid claimant, except as provided by the Term Sheet

dated Term Sheet dated November 25, 2025 [Docket No. 1137] (the "Surety Term Sheet") and

satisfaction of the conditions precedent set forth therein.  The Surety Term Sheet is approved under

Fed. R. Bank. P. 9019.

52.     **CS Energy Resolution**.  The injunction in Section 43 hereof and section 15.3 of

the Plan does not operate as a bar to the commencement, continuation or maintenance of litigation

or arbitration, by CS Energy, LLC, or any of its affiliates, successors, or insurers, naming any of

the Debtors as a nominal defendant and seeking to establish a Debtor's liability for the express and

limited purpose of assessing that Debtor's alleged responsibility for claimed injuries or property

damage, or contribution or indemnification in relation thereto, along with the liquidation of their

claims, and to proceed against third parties and insurance policies and proceeds as appropriate;

provided however, parties are expressly prohibited from taking any action to enforce such

determination of liability in any way against any Debtors or their assets and waive any right to

enforce such claim against the Debtors, as same is subject to the Discharge Injunction as provided

(Page 46)
Debtors:              Powin, LLC, *et al.*
Case No.              25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

by law; provided however, Debtors and Liquidation Trustee shall not be required to appear in any

litigation and defend against the merits of any claims brought against Debtors or incur costs and

expenses related to defense of the merits and nothing herein shall otherwise limit or affect the

rights or obligations of the Liquidating Trustee under the Plan, Confirmation Order or Liquidating

Trust Agreement in any way.  The Debtors and/or Liquidation Trust shall neither take any action,

nor fail to take any ministerial action that would amount to non-cooperation with Debtors' insurers

or that would place at risk any insurance coverage or proceeds available to the claimant where

taking such action would impose de minimis costs on the estate.  For the avoidance of doubt, in

order for a party to bring an action against the Debtors or the Liquidating Trust as a nominal

defendant, it must (a) limit its collection of a judgment or settlement to the proceeds of the

applicable insurance polic(ies) and (b) acknowledge that neither the Debtors nor the Liquidating

Trust shall have any duty or obligation to appear, defend, or otherwise participate in such litigation

or arbitration, and shall incur no costs or expenses in connection therewith except as set forth above

unless they elect to do so in their sole discretion, except that all parties' rights with respect to

discovery and to object to discovery are preserved.  The right of any party availing itself of this

provision to seek further relief from the Court to advance the intent and purpose of this provision

is expressly reserved.

     53.     **Customer Resolutions**. The Plan Injunction does not operate as a bar to any party's

commencement, continuation or maintenance of litigation or arbitration naming any of the Debtors

as a nominal defendant and seeking to establish a Debtor's liability for the express and limited

purpose of assessing that Debtor's alleged responsibility for claimed injuries or property damage,

(Page 47)
Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

or contribution or indemnification in relation thereto, along with the liquidation of their claims,

and to proceed against third parties and insurance policies and proceeds as appropriate. However,

parties are expressly prohibited from taking any action (i) to enforce such determination of liability

in any way against any Debtor or its assets, as same is subject to the Discharge Injunction as

provided by law, or (ii) that would make the Debtors anything other than a nominal defendant or

(iii) that would require the Debtors to take any action or defend the merits of any such claims in

litigation or arbitration.

54.    Notwithstanding anything in the Liquidating Trust Agreement to the contrary, upon

notice to (x) the Bankruptcy Court, (y) the TOC and (z) the parties to any pending Claims or

Causes of Action pursued, or reasonably anticipated to be pursued, on behalf of the Debtors or the

Liquidating Trust in which such books and records may be relevant, the Trustee shall be free, in

his or her discretion to abandon, destroy or otherwise dispose of any books and records in his

possession that the Trustee deems not necessary for the continued administration of the Plan and

not required to be retained under applicable law (including, for the avoidance of doubt, any

requirement to retain books and records that may be relevant to any pending or reasonably

anticipated litigation), without the need for any order of the Bankruptcy Court, and shall have no

liability for same. This notice provision shall not create any right by any third party to access to

privileged or confidential information held by the Liquidating Trust.

55.    On the Effective Date, the Liquidating Trust shall succeed to all of the Debtors'

rights, title and interest with respect to the Liquidating Trust Assets; provided, however, with

respect to any Cause of Action asserted by the Liquidating Trust, any defendant may assert any

(Page 48)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

and all defenses and other rights that could have been asserted against the Debtors immediately

prior to the Effective Date, and the Liquidating Trust shall be subject to such defenses and other

rights to the same extent as the Debtors.

56.    **RH Settlement**.   The Debtors and RH Shipping and Chartering USA, L.L.C.

("RH") have contemporaneously herewith entered into a *Stipulation and Agreed Order Regarding*

*R.H. Shipping and Chartering, S. De R.L. De C.V. Claim No. 311 and RH Shipping and Chartering*

*USA, L.L.C. Claim No. 312* [Docket No. 1132] (the "RH Settlement") that, among other things,

resolves Claim Nos. 311 and 312 and certain other asserted administrative claims against the

Debtors' estate, as provided in the RH Settlement.

57.    **Warranty Issues**. The Debtor previously announced its intent to assign by

quitclaim deed its rights under various warranties and guaranties under the authority of the *Order*

*Granting Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Enter Into*

*New Customer Program with Existing Customers and (II) Granting Related Relief* [Docket No.

62], and such assignments are hereby further approved.

58.    **U.S. Trustee Objections**. The term "good faith" in Section 15.1 of the Plan shall

be deemed stricken such that it provides in its entirety as follows:

The Exculpated Parties will neither have nor incur any liability to any entity for any
action taken or omitted to be taken between the Petition Date and Effective Date in
connection with or related to the Chapter 11 Cases, the sale or other disposition of
the Debtors' assets or the formulation, preparation, dissemination, implementation,
Confirmation, or Consummation of the Plan, the Disclosure Statement, or any
agreement created or entered into in connection with the Plan; provided, however,
that this limitation will not affect or modify the obligations created under the Plan,
or the rights of any holder of an Allowed Claim to enforce its rights under the Plan,
and shall not release any action (or inaction) constituting willful misconduct, fraud,

(Page 49)
Debtors:                Powin, LLC, *et al.*
Case No.                25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

bad faith, or gross negligence (in each case subject to determination by final order
of the Bankruptcy Court); provided that any Exculpated Party shall be entitled to
reasonably rely upon the advice of counsel with respect to its duties and
responsibilities (if any) under the Plan, and such reasonable reliance shall form a
defense to any such claim, Cause of Action, or liability. Without limiting the
generality of the foregoing, each Exculpated Party shall be entitled to and granted
the protections of section 1125(e) of the Bankruptcy Code.

59.     Section 15.3 of the Plan shall be deemed amended and restated in its entirety as to

add the following bolded language as follows:

In implementation of the Plan, except as otherwise expressly provided in the
Confirmation Order or the Plan, and except in connection with the enforcement of
the terms of the Plan or any documents provided for or contemplated in the Plan,
all entities who have held, hold or may hold Claims against or Interests in the
Debtors, the Liquidating Trust, the Direct Claims Trust, or the Estates that arose
prior to the Effective Date are permanently enjoined ~~from~~ **and precluded, from
and after the Effective Date, through and until the date upon which all
remaining property of the Debtors' Estates vested in the Liquidating Trust
and/or the Direct Claims Trust has been liquidated and distributed in
accordance with the terms of the Plan, from taking any of the following actions
against, as applicable, the Debtors, the Released Parties, or the Exculpated
Parties including**: (a) commencing or continuing in any manner, directly or
indirectly, any action or other proceeding of any kind against the Debtors, the
Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts'
Assets with respect to any such Claim or Interest; (b) the enforcement, attachment,
collection, or recovery by any manner or means, directly or indirectly, of any
judgment, award, decree, or order against the Debtors, the Estates, the Liquidating
Trust, the Direct Claims Trust, or any of Such Trusts' Assets with respect to any
such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly,
any Lien or encumbrance of any kind against the Debtors, the Estates, the
Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with
respect to any such Claim or Interest; and (d) any act, in any manner, in any place
whatsoever, that does not conform to or comply with the provisions of the Plan with
respect to such Claim or Interest. Nothing contained in this Section shall prohibit
the holder of a timely filed Proof of Claim from litigating its right to seek to have
such Claim declared an Allowed Claim and paid in accordance with the distribution
provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the
Claimant of any of the obligations of the Debtors or any Trust under the Plan.

(Page 50)

Debtors:              Powin, LLC, *et al.*

Case No.              25-16137 (MBK)

Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors

Notwithstanding any ~~other~~ provision of this Plan, the Debtors shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).

60.      In each of Sections 9.1(b) and 9.2(b) of the Plan, the following words shall be stricken: "compromise, settlement, release and discharge of and in exchange".

61.      Section 19.15 of the Plan shall be amended and restated as follows: "The Plan shall be deemed substantially consummated when the requirements of Sections 1101 and 1127(b) of the Bankruptcy Code have been met."

## Resolution of Informal Comments to the Plan

62.      Notwithstanding anything in the Plan, the Confirmation Order, or the Direct Claims Trust Agreement to the contrary, nothing in the Plan, the Confirmation Order, or the Direct Claims Trust Agreement waives, modifies, or otherwise impairs the rights of Trilantic Capital Management L.P. (together with its managed funds, limited partners, subsidiaries and/or affiliates) and Greenbelt Capital Management, L.P. (together with its managed funds, limited partners, subsidiaries and/or affiliates) to (a) contest the Bankruptcy Court's jurisdiction to hear and determine any lawsuit brought against them, either individually or collectively, on account of a Direct Claim or (b) file a motion with the Bankruptcy Court pursuant to LBR 7016-1(e) seeking a determination as to whether the Bankruptcy Court may adjudicate to final judgment any or all claims and defenses brought against them, either individually or collectively, on account of a Direct Claim.

63.      The Debtors shall pay $114,036.92 (the "Voya Payment") to Voya Benefits Company and ReliaStar Life Insurance Company (together, "Voya") in consideration for services

(Page 51)
Debtors:            Powin, LLC, *et al.*
Case No.            25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

related to the Debtors' Employee Compensation & Benefits (as defined in Docket No. 7) within

10 business days of the Effective Date.  Voya may file an unsecured proof of claim for any other

alleged, pre-petition amounts owed under its contracts with the Debtors (the "Voya POC"), which

will be and will be deemed timely filed if filed by November 24, 2025.  The Voya Payment and

Voya POC represent the full and final satisfaction to Voya regarding claims relating to the

Employee Compensation & Benefits.

### Waiver of Powin EKS SellCo Section 341 Requirements

64.     Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, or other applicable law, the Court finds and concludes that cause exists

under sections 105(a) and 341(e) of the Bankruptcy Code to waive Debtor Powin EKS SellCo,

LLC's requirement to convene a meeting of creditors pursuant to section 341(a) of the Bankruptcy

Code. Accordingly, a meeting of creditors under section 341(a) shall not be held for Powin EKS

SellCo, LLC, and such requirement is hereby permanently waived.

### Payment of Statutory Fees

65.     All fees payable pursuant to 28 U.S.C. § 1930(a)(6) and any interest assessed

pursuant to 31 U.S.C. § 3717 ("Quarterly Fees") that are owed prior to the Effective Date shall be

paid by the Debtors in full in cash on the Effective Date. After the Effective Date, any and all

Quarterly Fees shall be paid in full in cash when due and payable. The Debtors shall file all

monthly operating reports due prior to the Effective Date when they become due, using UST Form

11-MOR. After the Effective Date, the Liquidating Trustee and each of the post-Effective Date

Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they

(Page 52)
Debtors:             Powin, LLC, *et al.*
Case No.             25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

become due. Each and every one of the Debtors, whether existing pre- or post-Effective Date, and

Liquidating Trust shall remain obligated to pay Quarterly Fees until the earliest of that particular

Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy

Code. The U.S. Trustee shall not be treated as providing any release under the Plan. The U.S.

Trustee shall not be required to file any proof of claim or any request for administrative expense

for Quarterly Fees. The provisions of this paragraph shall control notwithstanding any other

provision(s) in the Combined Plan and Disclosure Statement to the contrary.

## Trust Professionals

66.     The Liquidating Trustee may retain counsel to the Liquidating Trust and/or the

Direct Claims Trust (the "Retained Trust Professionals") pursuant to the Liquidating Trust

Agreement and the Direct Claim Trust Agreement.  Any Retained Trust Professional may be

compensated pursuant to the terms of the Liquidating Trust Agreement or the Direct Claims Trust,

as applicable, for the avoidance of doubt, shall not be required to comply with sections 330 and

331 of the Bankruptcy Code solely with respect to such Retained Trust Professional's retention

and compensation or payment for work performed for the Liquidating Trust or the Direct Claim

Trust.

## Notice of Entry of Confirmation Order and Effective Date

67.     Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors are hereby authorized

to serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date,

substantially in the form attached hereto as **Exhibit D** (the "Notice of Confirmation and Effective

Date") on the Effective Date, on all Holders of Claims against or Interests in the Debtors and all

(Page 53)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

other Persons on whom the Confirmation Hearing Notice was served. The form of the Notice of

Confirmation and Effective Date is hereby approved in all respects. The Notice of Confirmation

and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation

Order and of the relief granted herein, including, without limitation, any bar dates and deadlines

established under the Plan and this Confirmation Order, and no other or further notice of the entry

of this Confirmation Order, the occurrence of the Effective Date, and any such bar dates and

deadlines need be given.

## Retention of Jurisdiction

68.     Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry

of this Confirmation Order and the occurrence of the Effective Date, on and after the Effective

Date, this Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the

Chapter 11 Cases, the Plan, and each of the Plan Documents, to the extent provided under

applicable law, including, among other things, to take the actions specified in Section 18 of the

Plan.

## References to Plan Provisions

69.     The failure to specifically include or to refer to any particular article, section, or

provision of the Plan or any related document in this Confirmation Order shall not diminish or

impair the effectiveness of such article, section, or provision, and such article, section, or provision

shall have the same validity, binding effect, and enforceability as every other article, section, or

provision of the Plan, it being the intent of this Court that the Plan (as and to the extent modified

by this Confirmation Order) be confirmed in its entirety.

(Page 54)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order:Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

## Rules Governing Conflicts Between Documents

70.    In the event that any provision of the Plan is inconsistent with the provisions of the

Plan Supplement, and any other Order in the Chapter 11 Cases, or any other agreement to be

executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take

precedence; *provided*, *however*, that this Confirmation Order shall control and take precedence in

the event of any inconsistency between this Confirmation Order, any provision of the Plan, and

any of the foregoing documents.

## Extension of Injunctions and Stays

71.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions

or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code

or otherwise, and extant on the Confirmation Date (including any injunctions or stays contained in

or arising from the Plan or this Confirmation Order), shall remain in full force and effect in

accordance with their terms.

## Section 1146 Exemption

72.    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or

exchange of any security under the Plan or the making or delivery of any instrument of transfer

pursuant to, in implementation of, or as contemplated by the Plan, or the re-vesting, transfer or

sale of any real or personal property of the Debtors pursuant to, in implementation of, or as

contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax,

transfer tax or any similar tax or fee.

(Page 55)
Debtors:                    Powin, LLC, *et al.*
Case No.                    25-16137 (MBK)
Caption of the Order: Findings of Fact, Conclusions of Law, and Order (I) Approving the
Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure
Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the
Official Committee of Unsecured Creditors

## Headings

73.     Headings utilized herein are for convenience and reference only, and do not

constitute a part of the Plan or this Confirmation Order for any other purpose.

## No Stay of Confirmation Order

74.     The requirements of Bankruptcy Rules 3020(e) and 6004(h) are hereby waived to

the extent necessary to permit this Confirmation Order to become effective and enforceable on

December 5, 2025. To the extent the Effective Date of the Plan does not occur on December 5,

2025, the stay shall continue until the earlier of the Effective Date and fourteen (14) days after

entry of this Confirmation Order.

# EXHIBIT A

## Plan

*SOLICITATION VERSION*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br>Powin, LLC, *et al.*,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**JOINT COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF
LIQUIDATION OF POWIN, LLC AND AFFILIATES THEREOF AND THE OFFICIAL
<u>COMMITTEE OF UNSECURED CREDITORS</u>**

---

[1] The name of Debtor Powin, LLC has changed to BESS RemainCo.  The Debtors intend to file a motion to amend the caption in these chapter 11 cases. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; and (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street
Suite 2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:   tania.moyron@dentons.com
         van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:   john.beck@dentons.com
         sarah.schrag@dentons.com

*Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:   frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Amanda C. Glaubach (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:   altogut@teamtogut.com
         aglaubach@teamtogut.com
         eblander@teamtogut.com

*Counsel for Debtors and
Debtors in Possession*

**BROWN RUDNICK LLP**

Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Jeffrey L. Jonas, Esq.
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4924
Facsimile:   (212) 938-2924
Email:   rstark@brownrudnick.com
         kaulet@brownrudnick.com
         bsilverberg@brownrudnick.com
         jjonas@brownrudnick.com

*Counsel for the Official Committee of
Unsecured Creditors*

**GENOVA BURNS LLC**

Daniel M. Stolz (admitted)
Donald W. Clarke (admitted)
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone:  (973) 533-0777
Facsimile:  (973) 814-4045
Email:      dstolz@genovaburns.com
            dclarke@genovaburns.com

*Counsel for the Official Committee of
Unsecured Creditors*

# TABLE OF CONTENTS

SECTION 1 INTRODUCTION ................................................................................... 1

SECTION 2 DEFINED TERMS ................................................................................ 2

SECTION 3 SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS
AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND
CONFIRMATION DATES AND DEADLINES ............................................. 16

    3.1    Summary of Classification and Treatment of Claims and Interests ..................... 16

    3.2    Important Dates and Deadlines ........................................................................... 20

SECTION 4 BACKGROUND ................................................................................... 20

    4.1    General Background ........................................................................................... 20

    4.2    Events Leading to Chapter 11 Filing .................................................................. 21

SECTION 5 THE CHAPTER 11 CASES ................................................................. 22

    5.1    First Day Motions and Other Early Developments in the Chapter 11 Cases........ 22

    5.2    Prepetition Loan Facility and Cash Collateral Order............................................ 22

    5.3    DIP Financing .................................................................................................... 23

    5.4    Debtors' Retention of Professionals and Personnel............................................. 23

    5.5    Prepetition Taxes ................................................................................................ 23

    5.6    Formation of the Committee; Retention of Professionals..................................... 23

    5.7    Debtors' Schedules and Statement of Financial Affairs ....................................... 24

    5.8    Claims Bar Dates ............................................................................................... 24

    5.9    KEIP and KERP Motion..................................................................................... 24

    5.10    Rejection Motions and Related Matters............................................................... 24

    5.11    Adequate Protection Motions ............................................................................. 25

    5.12    Sale Proceedings ................................................................................................ 25

    5.13    WARN Action .................................................................................................... 26

SECTION 6 CONFIRMATION AND VOTING PROCEDURES ............................................. 27

   6.1    Confirmation Hearing ............................................................ 27

   6.2    Procedures for Objections ....................................................... 27

   6.3    Requirements for Confirmation .................................................. 27

   6.4    Classification of Claims and Interests ........................................... 28

   6.5    Impaired Claims or Interests .................................................... 30

   6.6    Confirmation Without Necessary Acceptances; Cramdown ................................. 30

   6.7    Feasibility ................................................................... 31

   6.8    Best Interests Test and Liquidation Analysis ...................................... 31

   6.9    Eligibility to Vote on the Combined Plan and Disclosure Statement ................... 32

   6.10   Solicitation Package / Release Opt-Out Election Form .............................. 32

   6.11   Voting Procedures, Voting Deadline, and Deadline to Submit the Release
        Opt-Out Election ............................................................ 33

   6.12   Acceptance of the Combined Plan and Disclosure Statement ........................... 34

SECTION 7 UNCLASSIFIED CLAIMS ............................................................ 34

   7.1    Unclassified Claims ........................................................... 34

   7.2    Administrative Claims ......................................................... 34

   7.3    Professional Fees ............................................................. 35

   7.4    Priority Tax Claims ........................................................... 36

SECTION 8 CLASSIFICATION OF CLAIMS AND INTERESTS ......................................... 36

   8.1    Summary of Classification ..................................................... 36

   8.2    Special Provision Governing Unimpaired Claims .................................. 37

   8.3    Vacant and Abstaining Classes ................................................. 37

SECTION 9 TREATMENT OF CLAIMS AND INTERESTS .............................................. 37

   9.1    Class 1—Priority Non-Tax Claims ............................................. 37

   9.2    Class 2—Other Secured Claims ............................................... 38

9.3      Class 3—WARN Act Claims.................................................................. 38

9.4      Class 4—Settled Priority Claims .......................................................... 39

9.5      Class 5—General Unsecured Claims..................................................... 39

9.6      Class 6—Intercompany Claims ............................................................. 40

9.7      Class 7—Interests ................................................................................. 40

SECTION 10 DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS........................... 40

10.1     Distribution Dates ................................................................................. 40

10.2     Subsequent Distributions ...................................................................... 40

10.3     Distribution Record Date ...................................................................... 40

10.4     Manner of Cash Payments Under the Plan or Liquidating Trust Agreement ....... 41

10.5     Time Bar to Cash Payments by Check ................................................... 41

10.6     Liquidating Trust Assets Accounts ........................................................ 41

SECTION 11 PROCEDURES FOR RESOLVING DISPUTED CLAIMS............................. 41

11.1     No Distributions Pending Allowance ..................................................... 41

11.2     Resolution of Disputed Claims .............................................................. 41

11.3     Objection Deadline ............................................................................... 42

11.4     Estimation of Claims............................................................................. 42

11.5     Disallowance of Claims ......................................................................... 42

11.6     Adjustment to Claims Register Without Objection ................................. 43

11.7     Reserve Provisions for Disputed Claims ................................................ 43

11.8     Rounding............................................................................................... 43

11.9     No Cash Payments of Less Than $100 on Account of Allowed Claims .............. 43

11.10    Delivery of Distributions and Unclaimed Property ................................. 43

11.11    Books and Records ................................................................................ 44

SECTION 12 TREATMENT OF EXECUTORY CONTRACTS   AND UNEXPIRED
          LEASES........................................................................................... 44

12.1    Rejection / Assumption .................................................................................. 44

12.2    Rejection Claims .......................................................................................... 45

12.3    Insurance Policies ........................................................................................ 45

SECTION 13 MEANS FOR IMPLEMENTATION OF THE PLAN ......................................... 45

13.1    General Settlement of Claims and Interests ...................................................... 45

13.2    Dissolution of Debtors .................................................................................. 46

13.3    Trusts ........................................................................................................ 46

13.4    Litigation ................................................................................................... 51

13.5    Dissolution of the Committee ........................................................................ 52

13.6    Employee Payments ..................................................................................... 52

13.7    WARN Act Settlement .................................................................................. 53

SECTION 14 EFFECT OF CONFIRMATION ................................................................... 54

14.1    Binding Effect of the Plan ............................................................................. 54

14.2    Vesting of Property of Debtors on the Effective Date .......................................... 54

14.3    Property Free and Clear ................................................................................. 54

SECTION 15 EXCULPATIONS, INJUNCTIONS, AND RELEASES ...................................... 54

15.1    Exculpation ................................................................................................ 55

15.2    Releases ..................................................................................................... 55

15.3    Injunction .................................................................................................. 57

15.4    Post-Confirmation Liability of Liquidating Trustee ........................................... 57

15.5    Preservation of Rights of Action ..................................................................... 58

15.6    No Discharge ............................................................................................. 59

SECTION 16 CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER
DISCLOSURES ........................................................................................................ 59

16.1    Certain Risk Factors to be Considered .............................................................. 59

16.2    Tax Treatment ............................................................................................. 62

16.3    Alternatives to the Combined Plan and Disclosure Statement ............................. 65

SECTION    17    CONDITIONS    PRECEDENT    TO    CONFIRMATION    AND
CONSUMMATION OF THE PLAN ................................................................................... 66

17.1    Conditions to Confirmation of the Plan ................................................................. 66

17.2    Conditions to the Effective Date ............................................................................. 66

17.3    Waiver of Conditions Precedent ............................................................................. 67

SECTION 18 RETENTION OF JURISDICTION ................................................................ 67

SECTION 19 MISCELLANEOUS PROVISIONS ................................................................ 68

19.1    Revocation of the Combined Plan and Disclosure Statement ............................. 68

19.2    Severability of Plan Provisions .............................................................................. 68

19.3    Exhibits .................................................................................................................... 69

19.4    Notices ..................................................................................................................... 69

19.5    Reservation of Rights .............................................................................................. 70

19.6    Defects, Omissions and Amendments .................................................................... 70

19.7    Filing of Additional Documents ............................................................................. 71

19.8    Successors and Assigns ........................................................................................... 71

19.9    Setoffs and Recoupments ........................................................................................ 71

19.10    Tax Exemption ........................................................................................................ 71

19.11    Securities Exemption .............................................................................................. 72

19.12    Implementation ....................................................................................................... 72

19.13    Record Date ............................................................................................................. 72

19.14    Certain Actions ....................................................................................................... 72

19.15    Substantial Consummation ..................................................................................... 72

19.16    Waiver of Fourteen-Day Stay ................................................................................ 73

19.17    Governing Law ........................................................................................................ 73

19.18    Entire Agreement .................................................................................................... 73

SECTION 20 RECOMMENDATION ......................................................................................... 73

US_ACTIVE\131476713

## DISCLAIMERS

EACH HOLDER OF A CLAIM AGAINST THE DEBTORS ENTITLED TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING.  NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE.  IF YOU ARE ENTITLED TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.  THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS URGE YOU TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.   THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS SUPPORTS THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND IS A JOINT PROPONENT HEREOF, AND URGES UNSECURED CREDITORS TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTERESTS IN THE DEBTORS SHOULD EVALUATE THE COMBINED PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.  THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS.  YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, ANTICIPATED EVENTS IN THE CHAPTER 11 CASES, AND FINANCIAL INFORMATION.  ALTHOUGH THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS BELIEVE THAT THE STATEMENTS AND DESCRIPTIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE TRUE AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTORY PROVISIONS.  THE TERMS OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTES GOVERN IN THE EVENT OF ANY DISCREPANCY WITH THE COMBINED PLAN

AND DISCLOSURE STATEMENT. CREDITORS AND OTHER INTERESTED PARTIES SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND THE APPLICABLE STATUTES THEMSELVES FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE FACTUAL STATEMENTS AND REPRESENTATIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE MADE BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DISCLAIM ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

ALL FORWARD-LOOKING STATEMENTS CONTAINED HEREIN OR OTHERWISE MADE BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS INVOLVE MATERIAL RISKS AND UNCERTAINTIES AND ARE SUBJECT TO CHANGE BASED ON NUMEROUS FACTORS, INCLUDING FACTORS THAT ARE BEYOND THE DEBTORS' AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' CONTROL. ACCORDINGLY, THE DEBTORS' FUTURE PERFORMANCE AND FINANCIAL RESULTS MAY DIFFER MATERIALLY FROM THOSE EXPRESSED OR IMPLIED IN ANY SUCH FORWARD-LOOKING STATEMENTS. SUCH FACTORS INCLUDE, BUT ARE NOT LIMITED TO, THOSE DESCRIBED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTORS DO NOT INTEND TO UPDATE OR REVISE THEIR FORWARD-LOOKING STATEMENTS EVEN IF EXPERIENCE OR FUTURE CHANGES MAKE IT CLEAR THAT ANY PROJECTED RESULTS EXPRESSED OR IMPLIED THEREIN WILL NOT BE REALIZED.

ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THEIR RESPECTIVE ADVISORS. ALTHOUGH THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THEIR RESPECTIVE ADVISORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN, THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THEIR ADVISORS CANNOT

**MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THIS INFORMATION.**

       **IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT PURSUANT TO SECTION 1126(b) OF THE BANKRUPTCY CODE, THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS ARE FURNISHING A SOLICITATION PACKAGE, CONSISTING OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE EXHIBITS HERETO, CONFIRMATION NOTICE, AND A BALLOT OR RELEASE OPT-OUT ELECTION FORM, AS APPLICABLE, TO EACH RECORD HOLDER OF CLAIMS ELIGIBLE TO VOTE OR ITS COUNSEL.  THE COMBINED PLAN AND DISCLOSURE STATEMENT IS TO BE USED BY EACH SUCH ELIGIBLE HOLDER SOLELY IN CONNECTION WITH ITS EVALUATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; USE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE IS NOT AUTHORIZED. NOTHING STATED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OR ANY OTHER PARTY.  THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY NOT BE REPRODUCED OR PROVIDED TO ANYONE OTHER THAN ADVISORS TO THE RECIPIENT WITHOUT THE PRIOR WRITTEN CONSENT OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS.**

# SECTION 1
# INTRODUCTION

Powin, LLC ("Powin") and the affiliated debtors and debtors in possession (collectively, the "Debtors"), in the above-referenced Chapter 11 Cases, and the Official Committee of Unsecured Creditors appointed therein (the "Committee"), hereby propose the following combined disclosure statement and plan of liquidation pursuant to sections 1121(a) and 1125(b) of the Bankruptcy Code (the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion hereof, the "Plan," as may be modified and/or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement"). Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Interests in each Debtor pursuant to the Bankruptcy Code. The Debtors and the Committee are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Capitalized terms used in the Combined Plan and Disclosure Statement and not otherwise defined have the meanings ascribed to such terms in Section 2 hereof.

The Plan proposes to pay or otherwise satisfy Allowed Administrative Claims, Allowed Secured Claims, and Allowed Priority Claims in full on the Effective Date or as soon as reasonably practicable thereafter. The Plan also proposes to establish a reserve for the benefit of holders of certain WARN Act Claims. The Plan additionally establishes two trusts: (1) the Liquidating Trust for the purpose of winding down the Debtors' estates, administering Claims, prosecuting and resolving estate causes of action, and making distributions to holders of Allowed Claims, including Allowed General Unsecured Claims; and (2) the Direct Claims Trust for the purpose of receiving and monetizing the Direct Claims Trust Assets. The holders of Allowed General Unsecured Claims shall receive their *pro rata* interests in the Liquidating Trust. Each Contributing Direct Claim Holder shall receive, in exchange for the Direct Claims Trust Assets, its *pro rata* interest in the Direct Claims Trust on account of such Direct Claims. The Plan appoints the Liquidating Trustee to, among other things: (1) continue the wind-down of the Debtors after the Effective Date; (2) liquidate the Liquidating Trust Assets and the Direct Claims Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtors hold or may hold against any Entity; and (4) make all Distributions in accordance with the Plan, the Liquidating Trust Agreement, and the Direct Claims Trust Agreement.

The Debtors will distribute the Combined Plan and Disclosure Statement to all holders of Claims and Interests in accordance with section 1125(b) of the Bankruptcy Code and Rules 2002, 3016, and 3017 of the Bankruptcy Rules, and the Bankruptcy Court's order conditionally approving the Bankruptcy Court's order conditionally approving the Combined Plan and Disclosure Statement [Docket No. 939] (the "Conditional Approval and Procedures Order"). The Combined Plan and Disclosure Statement and the exhibits hereto include a discussion of: (1) the nature and history of the Debtors' business and liabilities; (2) events during the Chapter 11 Cases; (3) the requirements for confirmation of the Plan and procedures for voting to accept or reject the Plan; (4) additional factors and disclosures to be considered, including risk factors and certain U.S. federal income tax consequences of the Plan; and (5) the terms of the Plan, including the treatment of holders of Claims and Interests under the Plan. The Disclosure Statement was prepared with the intent to provide "adequate information" (as defined in the Bankruptcy Code) to enable holders of Claims against and Interests in the Debtors to make informed judgments about the Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Combined Plan and Disclosure Statement, the Debtors expressly reserve the right to alter, amend, or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof.

***Please read the Combined Plan and Disclosure Statement, the exhibits, other supporting materials, and any appropriate ballot carefully and follow the instructions set forth below and on the appropriate ballot to vote on the Plan. The Debtors and the Committee believe that the Plan provides the best method of maximizing the recoveries for the holders of Claims and Interests against the Debtors. Therefore, the Debtors and the Committee recommend that all creditors who are entitled to vote should vote in favor of the Plan. The Committee supports the Combined Plan and Disclosure Statement and urges unsecured creditors to vote to accept the Plan.***

Unless otherwise specified, all section or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, or exhibit to, the Combined Plan and Disclosure Statement, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection, or clause contained herein. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; and (3) unless otherwise noted above, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

## SECTION 2
## DEFINED TERMS

As used in the Combined Plan and Disclosure Statement, capitalized terms not otherwise defined have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

"Administrative Claim" means a Claim for an expense of administration of the Chapter 11 Cases arising under sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by the Debtors within 20 days before the Petition Date to the extent that goods were sold to the Debtors in the ordinary course of the Debtors' business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; (f) administrative claims that were timely filed prior

-2-

to the Administrative Expense Bar Date; and (g) any Tax Claims incurred by the Debtors after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

"Administrative Expense Bar Date" means the applicable last date, at 5:00 p.m. Eastern time, set by the Bankruptcy Court for a Claimant to file a request for payment of any Administrative Claim (excluding Professional Fee Claims) arising on or after the Petition Date, through and including the Effective Date. The Administrative Expense Bar Date shall be (i) [●] for all Administrative Claims arising or deemed to be arisen on or prior to [●]; or sixty (60) days after the Effective Date for all Administrative Claims arising or deemed to be after [●], as applicable.

"Affiliate" means with respect to any specified Entity, any other Entity directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Entity. For purposes of this definition, "control" (including, with correlative meanings, the terms "controlling," "controlled by," and "under common control with") as used with respect to any Entity, shall mean the possession, directly or indirectly, of the right or power to direct or cause the direction of the management or policies of such Entity, whether through the ownership of voting securities, by agreement, or otherwise.

"Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors on the Schedules as other than disputed, contingent, or unliquidated and, as to which, the Debtors, the Liquidating Trustee or other party in interest has not filed an objection on or before the Claims Objection Deadline; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been filed and which is not otherwise a Disputed Claim; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Liquidating Trustee on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Non-Tax Claim, or Priority Tax Claim executed by (y) the Debtors and approved by the Bankruptcy Court, or (z) the Liquidating Trustee; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by the Debtors in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely filed by the Claimant before the applicable rejection Bar Date for such claim or has otherwise been deemed timely filed under applicable law; or (f) a Claim that is allowed pursuant to the terms of the Plan. For the purpose of determining distributions pursuant to the Plan, allowance under subsections (a) and (b) only is applicable once any of the following occur (1) before the Claims Objection Deadline, the Debtors or the Liquidating Trustee, as applicable, determine not to object to the Claim, (2) the Claims Objection Deadline passes without an objection being filed, or (3) after the Debtors or Liquidating Trustee timely objects to the Claim, the Claim is allowed as provided in subparagraphs (c), (d) or (e) above.

"Allowed Claim" or "Allowed […] Claim" means a Claim that has been Allowed.

"Avoidance Actions" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the Estates, or other appropriate party in

US_ACTIVE\131476713

interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

"Ballots" mean the ballots upon which the holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

"Bankruptcy Code" means sections 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Cases.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075.

"Bar Date" means, as applicable, the General Claims Bar Date, the Administrative Expense Bar Date, or any other applicable deadline to file Claims referenced in the Plan.

"Bar Date Order" means the *Order Establishing Deadlines For Filing Proofs Of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 758].

"Beneficiaries" means holders of Allowed Claims entitled to receive Distributions from any Trust under the Plan, whether or not such Claims were Allowed on the Effective Date.

"Bidding Procedures Order" means the *Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections, (II) Approving Bidding Procedures By Which Interested Parties May Bid and an Auction Sale Format in Connection With the Sale of Substantially All of the Debtors' Assets; (III) Approving Form of Asset Purchase Agreement, (IV) Approving From of Noice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of the Debtors' Property Fee and Clear of all Causes of Action and Claims* [Docket No. 413] implementing procedures to solicit and, if applicable, select bids from interested parties to purchase some or all of the Debtors' assets under section 363 of the Bankruptcy Code.

"Business Day" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

"Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

"Causes of Action" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions of the Debtors and Estates

-4-

(unless the context expressly states that such Causes of Action belong to another Entity) against Creditors, insiders, and/or any other Entities under the Bankruptcy Code, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

"Chapter 11 Cases" means the Chapter 11 cases commenced when the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date (each a "Chapter 11 Case") and jointly administered under the lead case number: 25-16137 (MBK).

"Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors, including, but not limited to: (a) any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claimant" means the holder of a Claim.

"Claims Agent" means Kurtzman Carson Consultants LLC, dba Verita Global, which was appointed as the Debtors' claims, noticing, and balloting agent.

"Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) 180 days after the Effective Date, or (b) such other period as may be fixed by an order of the Bankruptcy Court for objecting to Claims upon request of the Liquidating Trustee.

"Class" means a category of holders of Claims or Interests, as set forth in Sections 8 and 9 hereof.

"Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases on June 27, 2025.

"Confirmation" means the entry of the Confirmation Order, subject to all terms and conditions therein.

"Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing at which the Bankruptcy Court will consider final approval of the disclosures contained in the Disclosure Statement and confirmation of the Plan.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Consummation" or "Consummate" means the occurrence of the Effective Date.

"<u>Contingent Claim</u>" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed, or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

"<u>Creditor</u>" means any holder of a Claim against any Debtor as specified in section 101(10) of the Bankruptcy Code.

"<u>Customer Program Motion</u>" has the meaning set forth in Section 5.10 hereof.

"<u>Debt</u>" means liability on a Claim.

"<u>Debtors</u>" means, collectively, as debtors and debtors-in-possession in the Chapter 11 Cases: (i) Powin Project LLC; (ii) Powin, LLC; (iii) PEOS Holdings, LLC; (iv) Powin China Holdings 1, LLC; (v) Powin China Holdings 2, LLC; (vi) Charger Holdings, LLC; (vii) Powin Energy Ontario Storage, LLC; (viii) Powin Energy Operating Holdings, LLC; (ix) Powin Energy Operating, LLC; (x) Powin Energy Storage 2, Inc.; (xi) Powin Energy Ontario Storage II LP; (xii) Powin Canada B.C. Ltd; and (xiii) Powin EKS SellCo LLC.[2]

"<u>Debtor/Estate Release</u>" has the meaning set forth in Section 15 hereof.

"<u>Debtor/Estate Releasors</u>" has the meaning set forth in Section 15 hereof.

"<u>Debtor Professional Fee Reserve</u>" means the reserve fund currently held by the Stretto Inc. and established by the Debtors in connection with the DIP Order and the Cash Collateral Order to pay any accrued and unpaid (a) Professional Fee Claims incurred by a Professional and which have not yet been approved by the Bankruptcy Court; and (b) Professional Fee Claims approved by the Bankruptcy Court. The amounts deposited into the Debtor Professional Fee Reserve shall be free and clear of all liens, claims and encumbrances of any Persons or Entities except to the extent that any excess amounts remain in the Debtor Professional Fee Reserve after payment of all Allowed Professional Fee Claims, such excess amounts shall be distributed in accordance with the Plan.

"<u>DIP Agreement</u>" means that certain Debtor-In-Possession Credit and Guaranty Agreement dated July 28, 2025, among Powin LLC, a Delaware limited liability company, certain other affiliated Borrowers and Guarantors (each, as defined therein), from time to time party thereto, the Lenders from time to time party thereto (the "<u>DIP Lenders</u>"), FlexGen Power Systems, LLC, as Administrative Agent for the Lenders (in such capacity, the "<u>Administrative Agent</u>") and FlexGen Power Systems, LLC as Collateral Agent for the Secured Parties (in such capacity, the "<u>Collateral Agent</u>") as the same may be amended, restated, supplemented or otherwise modified from time to time.

---

[2] The Debtors anticipate filing a voluntary petition for Powin EKS SellCo LLC prior to solicitation of the Combined Joint Plan and Disclosure Statement and intend to include that entity as a Debtor under, and within the scope of, this Combined Joint Plan and Disclosure Statement.

"DIP Documents" means the Final DIP Order, the DIP Agreement, and other agreements and other documents entered into, or delivered, on connection with the DIP Facility.

DIP Facility" means the financing facility pursuant to the Final DIP Order and the DIP Agreement.

"Direct Claims" has the meaning set forth in Section 13 hereof.

"Direct Claims Trust" means the post-confirmation trust established pursuant to the terms of the Direct Claims Trust Agreement for the purpose of receiving and monetizing the Direct Claims Trust Assets.

"Direct Claims Trust Assets" has the meaning set forth in Section 13 hereof.

"Direct Claims Trust Agreement" means the agreement, substantially in the form included in the Plan Supplement, governing the Direct Claims Trust, as it may be subsequently modified from time to time.

"Direct Claims Trustee" means the Liquidating Trustee in its capacity as trustee of the Direct Claims Trust pursuant to the terms of the Direct Claims Trust Agreement.

"Direct Claims Trust Interests" means the non-transferable beneficial interests in the Direct Claims Trust.

"Disputed" means, with respect to any Claim or Interest, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed, or contingent and as to which no Proof of Claim has been filed; or (b) as to which the Debtors, the Liquidating Trustee, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors or the Liquidating Trustee, as applicable, in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

"Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of any deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim scheduled by the Debtors in the Schedules as disputed, contingent, or unliquidated and as to which no Proof of Claim has been timely filed; or (iii) a Claim that is not listed in the Schedules and as to which no Proof of Claim has been timely filed.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

"Distribution Agent" means the Liquidating Trustee, or its designees or agents.

"Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

"Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

US_ACTIVE\131476713

"Distributions" means the distributions of Cash to be made in accordance with the Plan and the Liquidating Trust Agreement, as applicable.

"Effective Date" means the date selected by the Debtors, which is a Business Day after the Confirmation Date on which no stay of the Confirmation Order is in effect.  Within five (5) business days after the Effective Date, notice of the Effective Date shall be filed with the Bankruptcy Court by the Debtors or the Liquidating Trustee, as applicable.

"Effective Date Cash Transfers" has the meaning set forth in Section 13 hereof.

"EKS Sale" has the meaning set forth in Section 5.9 hereof.

"Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

"Estates" means the estates of the Debtors in the Chapter 11 Cases created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"Exculpated Parties" means collectively (a) the Debtors, (b) John Brecker in any capacity, including, without limitation, his capacity as Independent Manager of Powin LLC, (c) Gerard Uzzi in any capacity, including, without limitation, in his capacity as Chief Restructuring Officer of Powin, LLC and as former Independent Manager of Powin, LLC, (d) Brian Kane, Chad Paulson, any others agreed to between the Committee and the Debtors, in any capacity, subject to approval by the Committee based on the results of its investigation and (if required by the Committee) execution of an agreement satisfactory to the Committee to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, (e) members of the Committee (solely in their capacities as Committee members), (f) Bankruptcy Court-approved Estate and Committee professionals, and (g) any other party, subject to approval by the Committee, which may be withheld for any reason or conditioned on execution of any appropriate agreement to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, for whom the Debtors determine exculpation is appropriate.

"Final DIP Order" means *the Final Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 520].

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

"Final Distribution" means the last payment to holders of Allowed Claims in accordance with the provisions of the Plan.

"Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

-8-

"First Day Declaration" means the *Declaration of Gerard Uzzi In Support of Emergency First Day Motions of the Debtors* [Docket No. 13].

"FlexGen Sale" has the meaning set forth in Section 5.9 hereof.

"General Claims Bar Date" means September 29, 2025, at 5:00 p.m., prevailing Eastern Time, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtors that arose prior to the Petition Date.

"General Unsecured Claim" means any unsecured Claim against the Debtors or the Estates, that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, or a Priority Non-Tax Claim.

"Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

"Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Indemnified Parties" has the meaning set forth in Section 15 hereof.

"Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial distribution of Cash shall be made to the holders of Allowed Claims, as determined by the Debtors or the Liquidating Trustee, as applicable, and taking into account any applicable required reserves.

"Initial Trust Cash" has the meaning set forth in Section 13 hereof.

"Initial WARN Act Claim Reserve Amount" means [$●] funded by the Debtors to establish the WARN Act Claim Reserve.

"Insider" means an insider of the Debtors, as defined in section 101(31) of the Bankruptcy Code.

"Insurance Policies" means all insurance policies maintained by the Debtors as of the Petition Date, including but not limited to director and officer insurance policies.

"Intercompany Claim" means any Claim held by a Debtor against another Debtor, including any Claim arising under, or related to, any cash management arrangement, shared services arrangement, tax sharing agreement, intercompany loan, advance, receivable, payable, guaranty, allocation, contribution, reimbursement right, or other intercompany transaction, whether arising prior to or after the Petition Date.

-9-

"Interest" means any equity interest in the Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock, whether vested or non-vested, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

"Interim DIP Order" means the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superiority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (V) Granting Related Relief* [Docket No. 169].

"Interim Fee Order" means the *Administrative Fee Order Establishing Procedures for Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* [Docket No. 519], entered by the Bankruptcy Court in the Chapter 11 Cases.

"KEIP/KERP Order" has the meaning set forth in Section 5.8 hereof.

"Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

"Liquidating Trust" means the trust established on the Effective Date in accordance with the Liquidating Trust Agreement for the purpose of liquidating and distributing the assets of the Estates, in accordance with 26 C.F.R. § 301.7701-4(d).

"Liquidating Trust Assets" means any and all assets of the Estates of every kind and character, wherever located, whether real or personal, tangible or intangible, transferred to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries pursuant to the Plan and the Liquidating Trust Agreement, including, without limitation, to the extent not otherwise excluded by this definition: (i) all remaining cash; (ii) all Causes of Action, and the proceeds from the prosecution therefrom or the settlement thereof; (iii) all rights, claims and/or assets under any and all contracts, agreements, and licenses (whether or not executory contracts, and whether or not rejected or assumed) of the Debtors, including all rights and/or assets retained by any of the Debtors under any asset purchase agreement with third-party purchasers approved by the Bankruptcy Court prior to the Effective Date; (iv) any proceeds of the foregoing; and (v) all files, books and records relating to the Debtors' businesses or the administration of the Plan. Notwithstanding the foregoing, any assets received for distribution to holders of allowed WARN Act Claims, including but not limited to the Initial WARN Act Claim Reserve Amount, shall not be considered Liquidating Trust Assets.

"Liquidating Trust Assets Account" means an interest-bearing bank account or money-market account to be established and held in trust by the Liquidating Trustee on or after the Effective Date for the purpose of holding the Liquidating Trust Assets to be distributed pursuant to the Plan.

"Liquidating Trust Agreement" means the agreement, substantially in the form included in the Plan Supplement, governing the Liquidating Trust, as it may be subsequently modified from time to time.

"Liquidating Trust Beneficiaries" means holders of Allowed General Unsecured Claims that receive beneficial interests in the Liquidating Trust under the Plan.

"Liquidating Trust Interests" means the non-transferable beneficial interests in the Liquidating Trust.

"Liquidating Trust Professional Fee Reserve" means a reserve fund to be established by the Liquidating Trustee to pay any accrued and unpaid (a) Professional Fee Claims incurred by a Professional and which have not yet been approved by the Bankruptcy Court; and (b) Professional Fee Claims approved by the Bankruptcy Court, in each case, in excess of the Debtor Professional Fee Reserve. The amounts deposited into the Liquidating Trust Professional Fee Reserve shall be free and clear of all liens, claims and encumbrances of any Persons or Entities except to the extent that any excess amounts remain in the Liquidating Trust Professional Fee Reserve after payment of all Allowed Professional Fee Claims, such excess amounts shall be distributed in accordance with the Plan.

"Liquidating Trustee" means the Person selected by the Committee, with the consent of the Debtors which may not be unreasonably withheld, to act as trustee of each of the Liquidating Trust and the Direct Claims Trust, in accordance with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement or the Direct Claims Trust Agreement, as applicable, or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement or the Direct Claims Trust Agreement, as applicable.

"Liquidation Proceeds" means any Cash or other consideration paid to or realized by the Debtors or the Liquidating Trustee, as applicable, upon the collection, sale, transfer, assignment, or other disposition of the Liquidating Trust Assets.

"Litigation" means the interest of the Estates, the Debtors, or the Liquidating Trust, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtors or the Liquidating Trustee, as applicable, except to the extent concerning any Released Parties. Litigation includes, without limitation not otherwise stated herein, any action: (i) for recovery of an Avoidance Action; (ii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors or the Liquidating Trust, as applicable; (iii) for compensation for damages incurred by the Debtors; and (iv) equitable subordination actions against Creditors.

"Litigation Recovery" means any Cash or other property received by the Debtors or the Liquidating Trust, as applicable, from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest, and punitive damages, whether recovered by way of settlement, execution on judgment, or otherwise. If any Litigation is pursued on a contingent-fee basis, the Litigation Recovery will be net of any contingent fee paid to legal counsel.

"Mainfreight Sale" has the meaning set forth in Section 5.11 hereof.

"Oversight Committee" has the meaning set forth in Section 13 hereof.

US_ACTIVE\131476713

"<u>Person</u>" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

"<u>Petition Date</u>" means the date each Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code and with respect to Powin Project LLC, shall mean June 9, 2025, with respect to Powin EKS SellCo LLC, shall mean [●], 2025, with respect to Powin Canada B.C. Ltd., Powin Energy Ontario Storage II LP, and Powin Energy Storage 2, Inc., shall mean June 22, 2025, and with respect to the remaining Debtors shall mean June 10, 2025.

"<u>Plan Documents</u>" means the Plan, the Disclosure Statement, the Plan Supplement, the Direct Claims Trust Agreement, the Liquidating Trust Agreement, any plan support letters, or other documents or pleadings filed by the Debtors relating to the Plan.

"<u>Plan Objection Deadline</u>" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

"<u>Plan Supplement</u>" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court not later than seven (7) calendar days prior to the Plan Objection Deadline, which shall include certain exhibits and schedules to the Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

"<u>Prepetition Loan Agreement</u>" means that Loan Agreement, dated as of October 1, 2024, among Powin, LLC, Powin Energy Intermediate, LLC, the Subsidiary Guarantors party thereto, the Lenders party thereto (the "<u>Prepetition Lenders</u>" and each a "<u>Prepetition Lender</u>"), and GLAS USA LLC, as administrative agent and collateral agent (in such capacities, the "<u>Prepetition Administrative Agent</u>" and the "<u>Prepetition Collateral Agent</u>").

"<u>Prepetition Loan Documents</u>" means all promissory notes, guarantees, security agreements, filings, deposit account control agreements, intellectual property security agreements and other instruments and documents delivered in connection with the Prepetition Loan Agreement.

"<u>Prepetition Loan Facility</u>" means the financing facility pursuant to the Prepetition Loan Agreement.

"<u>Priority Claim</u>" means a Priority Non-Tax Claim or a Priority Tax Claim.

"<u>Priority Non-Tax Claim</u>" means any Claim, other than an Administrative Claim, a Priority Tax Claim, or a WARN Act Claim, as set forth herein, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

"<u>Priority Tax Claim</u>" means a Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"<u>Pro Rata</u>" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all

Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

"Professional" means an Entity:  (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

"Proof of Claim" means a proof of claim filed pursuant to section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

"Rejection Bar Date" means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease to file a proof of claim for damages related to such rejection.  The Rejection Bar Date for such Claims will be, (i) with respect to executory contracts and unexpired leases rejected pursuant to a Bankruptcy Court order other than the Confirmation Order, the date provided by an order approving the rejection, and, (ii) with respect to executory contracts and unexpired leases rejected pursuant to the Confirmation Order, the date that is thirty (30) days after the Effective Date.

"Rejection Motion" has the meaning set forth in Section 5.9 hereof.

"Related Persons" means, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's successors and assigns, and as applicable, its current and former shareholders, Affiliates, subsidiaries, employees, agents, investment managers, subagents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants.

"Release Opt-Out Election Form" means a form for holders of Claims to opt out of being a Releasing Party in connection with the Third Party Release.

"Released Parties" means collectively (a) the Debtors, (b) the Debtors' respective current officers and managers, including John Brecker, in any capacity, including, without limitation, his capacity as Independent Manager of Powin LLC, (c) Gerard Uzzi, in any capacity, including, without limitation, his capacity as Chief Restructuring Officer of Powin, LLC and former Independent Manager of Powin, LLC, (d) Brian Kane, Chad Paulson, any others agreed to between the Committee and the Debtors, in any capacity, subject to approval by the Committee based on the results of its investigation and (if required by the Committee) execution of an agreement satisfactory to the Committee to cooperate with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, (e) members of the Committee (solely in their capacities as Committee members), (f) Bankruptcy Court-approved Estate and Committee professionals, and (g) any other party, subject to approval by the Committee, which may be withheld for any reason or conditioned on execution of any appropriate agreement to cooperate

with the Liquidating Trust and the Direct Claims Trust in their investigation and prosecution of claims, for whom the Debtors determine a release is appropriate.

"Releasing Parties" means, individually and collectively: (i) each holder of a Claim or Interest that does not opt out of the Third Party Release; (ii) the Committee and each of its members in such capacity; and (iii) with respect to each of the foregoing Entities in clauses (i) and (ii), such Entities' or Persons' successors, assigns, transferees, and such Entities' or Persons' officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), and any and all other entities who may purport to assert any cause of action, by, through, for, or because of such Entities or Persons.

"Sale Transactions" means collectively, the FlexGen Sale, the Mainfreight Sale and the EKS Sale pursuant to section 363 of the Bankruptcy Code, the procedures established under the terms of the Bidding Procedures Order, and an order of the Bankruptcy Court approving such sales.

"Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtors to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and the Debtors' statements of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court required the Debtors to file pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time [Docket Nos. 414-437].

"Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

"Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

"Settled Priority Claim" means a claim for priority asserted under section 503(b)(9) or 546(c) of the Bankruptcy Code which is settled consistent with this Combined Plan and Disclosure Statement by the Debtors and the party asserting such claim.

"Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Liquidating Trust makes a distribution to any holders of Allowed Administrative, Secured, Priority, or General Unsecured Claims.

"Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax.

"Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

"Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtors.

"Third Party Release" has the meaning set forth in Section 15.2(c) hereof.

"Trust" shall mean either the Liquidating Trust or the Direct Claims Trust, as applicable.

"Trust Budget" means a budget for the payment by the Liquidating Trust of post-Effective Date costs and expenses of the Liquidating Trust and Direct Claims Trust. The initial Trust Budget shall be filed with the Plan Supplement. The Liquidating Trustee may amend the Trust Budget only with the consent of the Oversight Committee.

"Trust Funding Amount" means a one-time transfer of cash to the Liquidating Trust for the administration of the Liquidating Trust, in the amount set forth in the initial Trust Budget to be attached to the Plan Supplement.

"Unimpaired Claim" means an unimpaired Claim within the meaning of section 1124 of the Bankruptcy Code.

"U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

"Voting Classes" means Classes 3, 4, and 5.

"Voting Deadline" means November 18, 2025 at 4:00 p.m. (prevailing Eastern Time).

"Voting Instructions" means the instructions for voting on the Plan contained on the Ballots.

"Voting Record Date" means the date as of which the identity of holders of Claims is set by the Bankruptcy Court for purposes of determining the Entities entitled to receive and vote on the Plan.

"WARN Act Claims" means the Claims alleged in the WARN Action.

"WARN Act Claims Administrator" means the Liquidating Trustee.

"WARN Act Claim Reserve" means the reserve related to the WARN Action as set forth in Section 13.7 hereof.

"WARN Act Claim Reserve Account" means the escrow or other segregated account maintained and administered by the Liquidating Trustee for the benefit of the Allowed WARN Act Claims if the settlement with respect to WARN Act Claims is approved or the Class 5A General Unsecured Claims held by holders of WARN Act Claims if so determined by an order of the Bankruptcy Court if such settlement is not approved.

"WARN Action" means that certain adversary proceeding pending before the Bankruptcy Court, captioned at *Brian Palomino, on behalf of himself and all others similarly situated v. Powin,*

*LLC, Powin Energy Operating Holdings, LLC and Powin Energy Operating, LLC*, Adv. No. 25-01249 (MBK) (Bankr. D. N.J.).

## SECTION 3
## SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND CONFIRMATION DATES AND DEADLINES

3.1     Summary of Classification and Treatment of Claims and Interests.  All Claims against or Interests in the Debtors are classified for purposes of voting and distributions under the Plan.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor, and each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Interests shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.  Further, the Plan groups the Debtors together solely for purposes of describing treatment under the Plan, confirmation of the Plan, voting on the Plan, and making distributions in accordance with the Plan. Accordingly, for such limited purposes only, the Debtors will be deemed, and not actually, consolidated.  Notwithstanding the foregoing, such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets or liabilities among them.  No substantive consolidation of the Debtors or their Estates shall be deemed to have occurred for any purpose other than the limited consolidation solely for voting and distributions under the Plan described herein.  Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

A summary of the classification of these Claims and Interests, the proposed treatment of each Class of Claims or Interests, and the voting status of each Class of Claims or Interests follows.

| Class | Treatment | Status |
|-------|-----------|--------|
| Unclassified: Administrative Claims, estimated to total approx. $[●]<br><br>**Estimated Recovery: 100%** | Except to the extent that a holder of an Allowed Administrative Claim agrees to less favorable treatment, each holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the holder of such Claim and the Debtors or the Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law. | Unclassified – not entitled to vote |
| Unclassified: Priority Tax Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery: 100%** | Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall be paid the full unpaid amount of such Allowed Priority Tax Claim as follows: (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Debtors shall have agreed upon in writing. | Unclassified – not entitled to vote |
| Class 1: Priority Non-Tax Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery: [●]** | Except to the extent a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, on the later of (i) the Effective Date or (ii) the date such Priority Non-Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, payment in full in Cash in an amount equal to the | Unimpaired – deemed to accept the Plan |

| Class | Treatment | Status |
|---|---|---|
| | Allowed amount of such Claim. | |
| Class 2: Other Secured Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery: [●]** | Except to the extent a holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the later of (i) the Effective Date or (ii) the date such Other Secured Claim becomes Allowed, or as soon as reasonably practicable thereafter, each holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, at the discretion of the Distribution Agent (x) payment in full in Cash in an amount equal to the Allowed amount of such Claim; (y) such other treatment sufficient to render such Other Secured Claim Unimpaired; or (z) return of the applicable collateral or authorization of a setoff in satisfaction of the Allowed amount of such Other Secured Claim. | Unimpaired – deemed to accept the Plan |
| Class 3: WARN Act Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery: [●]** | This Combined Plan and Disclosure Statement proposes a settlement with respect to WARN Act Claims. Specifically, if the representatives of the holders of WARN Act Claims agree on a binding basis to such settlement as memorialized in the Plan Supplement, such holders will receive the following treatment: (a) the allowance of the WARN Act Claims in the amount set forth in the Plan Supplement (the "Allowed WARN Act Claims"); (b) the certification of a class pursuant to Fed. R. Bankr. P. 7023 with respect to the Allowed WARN Act Claims; (c) the payment of an initial cash payment on the Effective Date on account of the Allowed WARN Act Claims to the designated class representative of such Allowed WARN Act Claims identified in the Plan Supplement to be distributed by such class representative to members of the class; and (d) the payment of additional cash payments to the class representative to be distributed to members of the class as described in the Plan Supplement following the Effective Date on the occurrence of certain milestone events disclosed in the Plan Supplement until the Allowed WARN Act Claims are satisfied in full. In the event a settlement with holders of WARN Act Claims is not reached, each WARN Act Claim shall be treated as either a Class 1 Priority Non-Tax Claim or a Class 5 General Unsecured Claim, as determined by an order of the | Impaired – entitled to vote |

-18-

| Class | Treatment | Status |
|---|---|---|
| | Bankruptcy Court. | |
| Class 4: Settled Priority Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery:** [●] | This Combined Plan and Disclosure Statement proposes a settlement for Settled Priority Claims. Specifically, if holders of a Settled Priority Claim agree on a binding basis to such settlement as memorialized in the Plan Supplement, such holders will receive the following treatment: (a) the allowance of the Settled Priority Claim in the amount set forth in the Plan Supplement (the "<u>Allowed Settled Priority Claim</u>"); (b) the payment of the documented professional fees incurred by the holder of the Allowed Settled Priority Claim, as agreed by the Debtors and disclosed in the Plan Supplement, on the Effective Date; and (c) the treatment of the Allowed Settled Priority Claim as a Class 5 General Unsecured Claim except for the foregoing payment of such documented professional fees on the Effective Date. | Impaired – entitled to vote |
| Class 5: General Unsecured Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery:** [●] | Class 5A: Each holder of an Allowed General Unsecured Claim shall receive in exchange for its Allowed General Unsecured Claim, a Pro Rata interest in the Liquidating Trust. | Impaired – entitled to vote |
| | Class 5B: Each holder of an Allowed General Unsecured Claim, who is also a Contributing Direct Claim Holder, shall receive, in addition to the treatment afforded to it as a Class 5A Claim Holder, a Pro Rata interest in the Direct Claims Trust on account of the Direct Claims contributed to the Direct Claims Trust. | |
| Class 6: Intercompany Claims, estimated to total approx. [$●]<br><br>**Estimated Recovery: 0%** | There shall be no Distribution on account of Intercompany Claims, except as necessary or appropriate for tax efficiency, provided, however, that no Distribution will be in Cash. Upon the Effective Date, all Intercompany Claims will be deemed cancelled, released, and discharged, subject to the foregoing. | Impaired – deemed to reject the Plan |
| Class 7: Interests<br><br>**Estimated** | There shall be no Distribution on account of Interests. Upon the Effective Date, all Interests will be deemed | Impaired – deemed to reject |

-19-

| Class | Treatment | Status |
|---|---|---|
| **Recovery: 0%** | cancelled and will cease to exist. | the Plan |

### 3.2 Important Dates and Deadlines.

| Event | Proposed Date |
|---|---|
| Disclosure Statement Conditional Approval Objection Deadline | October 8, 2025 at 4:00 p.m. |
| Disclosure Statement Reply Deadline | October 9, 2025 |
| Voting Record Date | October 10, 2025 |
| Proposed Hearing Date for Conditional Approval of Disclosure Statement | October 10, 2025 |
| Expected Entry of Conditional DS Approval Order/Delivery to Verita | October 13, 2025 |
| Deadline to Serve Notice and Solicitation Package | Five business days following entry of Conditional DS Approval Order |
| Publication Deadline[3] | Five business days following entry of Conditional DS Approval Order |
| Deadline to file Plan Supplement | November 7, 2025 at 4:00 p.m. |
| Deadline for Creditors to File Rule 3018 Motions | November 11, 2025 at 4:00 p.m. |
| Voting Deadline | November 18, 2025 at 4:00 p.m. |
| Combined Plan and Disclosure Statement Objection Deadline | November 18, 2025 at 4:00 p.m. |
| Deadline to File Confirmation Brief and Other Evidence Supporting the Combined Plan and Disclosure Statement | November 21, 2025 at 4:00 p.m. |
| Deadline to File Voting Tabulation Affidavit | November 21, 2025 at 4:00 p.m. |
| Confirmation Hearing | November 25, 2025 at 11:30 a.m. |

## SECTION 4
## BACKGROUND

### 4.1 General Background.

(a)   Debtors' Prepetition Business and Operations.

Prior to the Petition Date, the Debtors operated as a leading energy storage integrator at the forefront of the clean energy revolution, based in Portland, Oregon, and with offices around the world in Vietnam, China, Canada, Australia, and Spain.  The Debtors focused their business on advancing the next frontier of energy by ensuring access to clean, reliable, resilient, and affordable power through cutting-edge technology. The Debtors' business model targeted innovations in energy storage, which are essential to the planet's transition to a sustainable, carbon-free world.

-20-

At a high level, the Debtors' business model had two lines of business:  (i) the engineering and installation of battery energy storage systems, which are governed by various energy supply agreements (each, an "ESA"); and (ii) the warranties, servicing and maintenance of battery energy storage systems, which are governed by various long term servicing agreements (each, an "LTSA").  To implement the Debtors' business plan, the Debtors entered into these ESAs and LTSAs with its customers, and then used suppliers and vendors to support performance under the ESAs and LTSAs.

(b) <u>Corporate Organizational Structure</u>.

The Debtors' prepetition organization structure is attached to the First Day Declaration as Exhibit A.

(c) <u>Debtors' Prepetition Debt Structure</u>.

(i) <u>Prepetition Secured Debt</u>

As of the Petition Date, the outstanding secured obligations under the Loan Agreement were no less than $25,612,281.51, plus any other fees, expenses, and other obligations owed under the Prepetition Loan Documents.  On August 20, 2025, the Prepetition Secured Debt was satisfied in full with proceeds from the FlexGen Sale transaction.

(ii) <u>Unsecured Debt</u>

As of the Petition Date, the Debtors estimate that unsecured claims against the Debtors are at least $300,000,000, including:  (i) accrued and unpaid amounts owed to the Debtors' trade vendors and customers and other unsecured debt incurred in the ordinary course of the Debtors' business; and (ii) certain ongoing or threatened litigation claims, which are disputed.

(d) <u>Debtors' Tax Status</u>.

The Debtors' tax filing obligations vary by entity. Debtors Powin Energy Operating Holdings LLC and Powin Energy Operating LLC were required to file U.S. federal tax returns. Powin Project, LLC, which was newly formed in 2025, has not yet filed any federal tax returns. Certain affiliates—Powin Energy Storage 2, Inc., Powin Energy Ontario Storage II LP, and Powin Canada B.C. Ltd.—file separate tax returns under Canadian law. The remaining Debtors—Powin, LLC; PEOS Holdings, LLC; Powin China Holdings 1, LLC; Powin China Holdings 2, LLC; Charger Holdings, LLC; Powin Energy Ontario Storage, LLC; Powin Energy Operating Holdings, LLC; Powin Energy Operating, LLC; and Powin EKS SellCo, LLC—are pass-through entities and their tax reporting is included in the combined federal tax return of non-Debtor Powin Energy Holdings LLC. For the avoidance of doubt, any tax liabilities attributable to such pass-through Debtors are obligations of Powin Energy Holdings LLC and/or its equity holders, and the Debtors expressly disclaim any liability in connection therewith.

<u>4.2</u> <u>Events Leading to Chapter 11 Filing</u>.

The Debtors commenced these Chapter 11 Cases as a result of certain historical challenges to the Debtors' business, including severe liquidity constraints, an extreme overdependence on

-21-

trade credit, increasing assertions of liquidated damages entitlements by customers aggrieved by alleged performance delays, and damaged credibility with customers.  The Debtors commenced these Chapter 11 Cases in order to, among other things, pursue a value-maximizing sale process for their assets.

# SECTION 5
# THE CHAPTER 11 CASES

The following is a brief description of certain material events that have occurred during the Chapter 11 Cases.

5.1     <u>First Day Motions and Other Early Developments in the Chapter 11 Cases</u>.

The Debtors filed a number of motions after the Petition Date to, among other things, help stabilize operations and establish procedures for the Chapter 11 Cases:

(i)      joint administration motion [Docket No. 3] and order thereon [Docket No. 58];

(ii)     application to appoint Kurtzman Carson Consultants, LLC dba Verita Global as the Debtors' claims and noticing agent [Docket No. 9] and order thereon [Docket No. 66];

(iii)    motion for authorization to use certain cash management procedures, bank accounts, and certain payment methods, and to modify requirements imposed by section 345(b) of the Bankruptcy Code [Docket No. 12], interim order thereon [Docket No. 60], and final order thereon [Docket No. 397];

(iv)     motion for authorization to continue insurance programs and prepetition surety bonds and pay obligations arising thereunder [Docket No. 8], interim order thereon [Docket No. 61], and final order thereon [Docket No. 394];

(v)      motion to provide procedures to deal with utility providers [Docket No. 112], interim order thereon [Docket No. 399], and final order thereon [Docket No. 679]; and

(vi)     motion to pay certain prepetition employee obligations, and to continue certain employee benefits programs [Docket No. 7], interim order thereon [Docket No. 63], and final order thereon [Docket No. 395].

5.2     <u>Prepetition Loan Facility and Cash Collateral Order</u>.

(i)      Prior to the Petition Date, certain of the Debtors entered into the Prepetition Loan Agreement with the Prepetition Lenders.  Pursuant to the Prepetition Loan Agreement, the Prepetition Lenders provided the Debtors with up to $200,000,000 in total commitments.  As of the Petition Date, the outstanding secured obligations under the Prepetition Loan Agreement were no less than $25,612,281.51, plus any other fees, expenses, and other obligations owed under the Prepetition Loan Documents.

-22-

(ii)    On June 10, 2025, the Debtors filed a motion for authority to use cash collateral and to provide the Prepetition Secured Parties with adequate protection [Docket No. 11]. On June 13, 2025, the Bankruptcy Court approved such motion on an interim basis [Docket No. 68]. On July 16, 2025, the Bankruptcy Court approved such motion on a final basis [Docket No. 400]. On August 20, 2025, the Debtors paid in full the secured obligations under the Prepetition Loan Agreement.

5.3    DIP Financing.

On June 21, 2025, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final DIP Hearing; and (V) Granting Related Relief* [Docket No. 120] (the "DIP Motion"). The Debtors filed the DIP Motion in order to obtain critical liquidity necessary to continue operations. By the DIP Motion, the Debtors sought, among other things, authorization and approval of the DIP Facility from the Lenders, with up to $27.5 million in new money borrowing capacity. The DIP Facility was market tested and evaluated by the Debtors and their professionals. On June 26, 2025, the Bankruptcy Court entered the Interim DIP Order and on July 25, 2025, the Bankruptcy Court entered the Final DIP Order. On August 19, the DIP Facility was fully satisfied when the DIP Lender applied the outstanding obligations as a credit against its purchase price in the FlexGen Sale transaction.

5.4    Debtors' Retention of Professionals and Personnel.

The Bankruptcy Court granted the Debtors' applications or motions, as applicable, to employ certain professionals, including (i) Dentons US LLP and Togut, Segal & Segal LLP as bankruptcy co-counsel in the Chapter 11 Cases (Docket Nos. 753 and 596); and (ii) Uzzi & Lall, a restructuring advisory firm, to provide Gerard Uzzi as the Debtors' Chief Restructuring Officer and additional personnel as of the Petition Date (Docket No. 690).

5.5    Prepetition Taxes.

On June 18, 2025, the Debtors filed the *Motion of the Debtors for Entry of an Interim and Final Order (I) Granting Authority to Pay Certain Prepetition Taxes; and (II) Granting Related Relief* [Docket No. 99] (the "Tax Motion"), which the Court granted on an final basis on August 7, 2025 [Docket No. 675].

5.6    Formation of the Committee; Retention of Professionals.

On June 27, 2025, the U.S. Trustee formed the Committee, comprised of (i) Ace Engineering & Co. Ltd., (ii) Celestica LLC, (iii) Contemporary Amperex Technology Co., Limited (CATL), (iv) Kupono Solar, LLC, (v) Formosa Electronic Industries Inc., (vi) JMS Wind Energy, LLC, (vii) R.H. Shipping & Chartering S de RL de CV, (viii) Brian Palomino, and (iv) GreEnergy Resources LLC [Docket No. 174]. The Committee retained Brown Rudnick LLP and Genova Burns LLC as bankruptcy co-counsel, and Alvarez & Marsal North America, LLC as its financial advisor.

5.7     <u>Debtors' Schedules and Statement of Financial Affairs</u>.

Upon the Debtors' motion, pursuant to an order entered on June 13, 2025 [Docket No. 65], the Bankruptcy Court extended the Debtors' time to file the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs until July 17, 2025.

On July 17, 2025, the Debtors filed their respective Schedules and Statements of Financial Affairs [Docket Nos. 414-437]. The *General Global Notes And Statement Of Limitations, Methodology And Disclaimers Regarding The Debtors' Schedules Of Assets And Liabilities And Statements Of Financial Affairs* provided, among other things, a comprehensive explanation regarding the limitations on the Debtors' financial reporting and processes and explained that the Schedules and Statements contained unaudited financial information that may be inaccurate and/or incomplete.

The Debtors intend to imminently file various amendments to their Schedules and Statements of Financial Affairs.

5.8     <u>Claims Bar Dates</u>.

On August 20, 2025, the Bankruptcy Court entered the Bar Date Order setting September 29, 2025, as the general claims bar date for the filing of proofs of claim; and December 8, 2025, as the claims bar date for governmental units.

5.9     <u>KEIP and KERP Motion</u>.

On July 23, 2025, the Debtors filed the *Motion of the Debtors for Entry of Order (I) Approving Key Employee Retention Plan and Key Employee Incentive Plan and (II) Granting Related Relief* [Docket No. 493], which was approved by order of the Bankruptcy Court entered on August 7, 2025 [Docket No. 665] (the "<u>KEIP/KERP Order</u>").

5.10     <u>Rejection Motions and Related Matters</u>.

(i)     <u>Customer Contract Rejection Motion</u>

On June 17, 2025, the Debtors filed the *Omnibus Motion of the Debtors for Entry of an Order (I) Authorizing the Rejection of Legacy Customer Contracts and (II) Granting Related Relief* [Docket No. 88] (the "<u>Customer Contract Rejection Motion</u>"). Through the Customer Contract Rejection Motion, the Debtors sought authority, pursuant to section 365 of the Bankruptcy Code, to reject in their entirety all of the Debtors' Energy Supply Agreements, Long Term Service Agreements, and related contractual arrangements with their customers (the "<u>Customer Contracts</u>"). The Debtors explained that these agreements had become unduly burdensome to the estates, no longer provided a net economic benefit, and, in many instances, obligated the Debtors to perform under contracts that were heavily out of the money and inconsistent with the Debtors' restructuring objectives.

After notice and an opportunity for parties in interest to be heard, and following consideration by the Court, the Court entered an order on September 9, 2025 [Docket No. 843] granting the Customer Contract Rejection Motion. Numerous parties in interest filed responses to

-24-

the Customer Contract Rejection Motion; however, all objections to the requested relief were either consensually resolved or overruled by the Court. The Court's order authorized the rejection of the Customer Contracts, thereby relieving the estates of the ongoing administrative and financial burdens associated with those legacy customer agreements and aligning the Debtors' contractual obligations with their restructuring strategy.

(ii)      Omnibus Rejection Motions

The Debtors intend to imminently file various omnibus rejection motions (the Omnibus Rejection Motions, and, together with the Customer Contract Rejection Motion, the "Rejection Motions"), which motions shall seek authority to reject certain contracts that were not assigned in the Sale Transactions and were not needed by the Debtors.

5.11    Adequate Protection Motions.

In connection with the Customer Contract Rejection Motion, two separate groups of the Debtors' customers filed motions [Docket Nos. 117 and 297] (collectively, the "Adequate Protection Motions") seeking (i) to compel the Debtors to take certain actions related to intellectual property pursuant to Section 365(n) of the Bankruptcy Code and (ii) adequate protection under Section 363(e) of the Bankruptcy Code. The Adequate Protection Motions remain pending and, absent further continuance or consensual resolution, are scheduled to be heard by the Court on September 25, 2025.

5.12    Sale Proceedings. The Debtors commenced these Chapter 11 Cases in order to, among other things, engage in a value-maximizing sale process for their assets. To that end, on July 1, 2025, the Debtors filed the *Motion of the Debtors for Entry of an Order (I) Designating a Stalking Horse Bidder and Approving Stalking Horse Bidder Protections, (II) Approving Bidding Procedures By Which Interested Parties May Bid and an Auction Sale Format in Connection With the Sale of Substantially All of the Debtors' Assets; (III) Approving Form of Asset Purchase Agreement, (IV) Approving From of Noice to be Provided to Interested Parties, (V) Authorizing the Assumption and Assignment of Assumed Contracts and Notice Procedures Thereto, (VI) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest and Best Bidder, and (VII) Authorizing the Sale of the Debtors' Property Fee and Clear of all Causes of Action and Claims* [Docket No. 228] (the "Bidding Procedures Motion"), which the Bankruptcy Court granted through entry of the Bidding Procedures Order on July 17, 2025. In accordance therewith, on July 30, 2025, the Debtors conducted an auction of their assets after receiving three qualified bids, all as more detailed in the *Notice of Winning Bidders* [Docket No. 591] ("Notice of Winning Bidders") filed by the Debtors on July 31, 2025. Upon the conclusion of the auction, the Debtors filed the Notice of Winning Bidders announcing the winning bidders for their assets, as more fully detailed therein. The transactions contemplated thereunder are outlined below.

(i)      Mainfreight Sale.

Pursuant to that certain bill of sale made in favor of Mainfreight Distribution Pty Ltd. ("Mainfreight") by the Debtors ("Mainfreight Bill of Sale"), attached as Exhibit A to the Notice of Winning Bidders, the Debtors agreed to sell certain of its assets, described on Exhibit A to the Mainfreight Bill of Sale, constituting collateral of Mainfreight to Mainfreight via credit bid in the

amount of $3,000,000.00 (the "Mainfreight Sale").  On August 8, 2025, the Bankruptcy Court entered an order approving the Mainfreight Sale [Docket No. 592].

(ii)     FlexGen Sale.

Pursuant to that certain asset purchase agreement by and between FlexGen Power Systems, LLC ("FlexGen") and the Debtors ("FlexGen APA"), attached as Exhibit B to the Notice of Winning Bidders, the Debtors agreed to sell the Purchased Assets, as defined in the FlexGen APA, to FlexGen for a purchase price of $36,000,000, comprised in FlexGen's discretion of a credit bid and cash, assumption by FlexGen of certain liabilities described in the FlexGen APA, and the Retention Fund, as defined in the FlexGen APA (the "FlexGen Sale").  On August 18, 2025, the Bankruptcy Court entered an order approving the FlexGen Sale [Docket No. 751], and the FlexGen Sale closed thereafter on August 19, 2025.  In connection therewith, on August 20, 2025, the Debtors changed the name Powin, LLC to BESS RemainCo LLC.

(iii)     EKS Sale.

Pursuant to that certain Sale and Release Agreement by and between Hitachi Energy Ltd., Hitachi Energy Power Conversion Solutions (together with Hitachi Energy Ltd., "Hitachi"), Powin, LLC, and Powin EKS Sellco LLC (together with Powin, LLC, the "Powin Parties") ("EKS Sale Agreement"), attached as Exhibit C to the *Notice of Revised Order Approving Sale of Shares in EKS Holdco LLC and Filing of Release and Sale Agreement* [Docket No. 649], the Powin Parties agreed to enter into a comprehensive transaction with Hitachi, whereby Hitachi would acquire the Remaining Units, as defined in the EKS Sale Agreement, from Powin EKS Sellco LLC and receive certain releases from the Powin Parties, as described in the EKS Sale Agreement, in exchange for providing the Powin Parties with a fixed sum of $15,000,000 (the "EKS Sale").  On August 8, 2025, the Bankruptcy Court entered an order approving the EKS Sale [Docket No. 691].

Following the consummation of the EKS Sale, the Debtors determined that the most efficient way to wind down Powin EKS Sellco was to commence a chapter 11 case for that entity, administer it jointly with the chapter 11 cases of the other Debtors, and include Powin EKS Sellco within the scope of this Combined Plan and Disclosure Statement.  Accordingly, Powin EKS Sellco LLC filed a petition for voluntary relief under chapter 11 of the Bankruptcy Code, with such case being jointly administered with the chapter 11 cases of the remaining Debtors.  The wind-down of Powin EKS Sellco LLC shall be governed by this Combined Plan and Disclosure Statement.

5.13     WARN Action.

On June 12, 2025, plaintiff Brian Palomino, individually and on behalf of a purported putative class of alleged similarly situated former employees of certain Debtors (the "Plaintiffs"), commenced the WARN Action styled as *Class Action Adversary Proceeding Complaint for Violation of WARN Act 29 U.S.C. § 2101, et seq.*, Adv. Case No. 25-01249, [Adv. Docket No. 1] against Debtors Powin, LLC, Powin Energy Operating Holdings, LLC, and Powin Energy Operating, LLC.  The Debtors submit that they have strong defenses to the WARN Action and do not bear any liability in connection therewith.  Counsel to the Plaintiffs asserts that payment in full of any WARN Act Claim, as an Allowed Priority Non-Tax Claim is due on the effective date,

-26-

unless the holder(s) of the WARN Act Claim agree to accept less favorable treatment. However, the Debtors have actively engaged, and continue to actively engage, with the Plaintiffs on the WARN Action in an effort to reach a resolution. Accordingly, a global settlement structure in resolution of the WARN Action is proposed herein.

## SECTION 6
## CONFIRMATION AND VOTING PROCEDURES

6.1    Confirmation Hearing.

On October 14, 2025, the Bankruptcy Court entered the Conditional Approval and Procedures Order. The Confirmation Hearing has been scheduled for **November 25, 2025, at 11:30 a.m. (prevailing Eastern Time)** to consider (a) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtors and Committee without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

6.2    Procedures for Objections.

Any objection to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Combined Plan and Disclosure Statement must be made in writing and filed with the Bankruptcy Court by no later than **November 18, 2025, at 4:00 p.m. (prevailing Eastern Time)** and be served in accordance with the local rules of the Bankruptcy Court on the following parties: (i) the Debtors c/o Uzzi & Lall, One Liberty Plaza, 165 Broadway 23rd Floor, New York, NY Attn: Gerard Uzzi (guzzi@uzzilall.com); (ii) counsel for the Debtors, (1) Dentons US LLP, 601 S. Figueroa St., Suite 2500, Los Angeles, CA 90018, Attn: Tania M. Moyron (tania.moyron@dentons.com) and Van C. Durrer, II (van.durrer@dentons.com); (2) Togut, Segal & Segal LLP, 550 Broad Street, Suite 1508, Newark, NJ 07102 Attn: Frank A. Oswald (frankowswald@teamtogut.com); (iii) counsel for the Official Committee of Unsecured Creditors, (1) Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attn: Robert J. Stark (rstark@brownrudnick.com), Kenneth J. Aulet (kaulet@brownrudnick.com), and Bennett S. Silverberg (bsilverberg@brownrudnick.com), and (2) Genova Burns LLC, 110 Allen Rd., Suite 304, Basking Ridge, NJ 07920, Attn: Daniel M. Stolz (DStolz@genovaburns.com); and (iv) the Office of the United States Trustee, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Jeffrey M. Sponder (jeffrey.m.sponder@usdoj.gov). **Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court.**

6.3    Requirements for Confirmation.

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in the Chapter 11 Cases is that the Combined Plan and Disclosure Statement be: (i) accepted by all Impaired Classes of Claims and Interests or, if rejected by an Impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly"

against, and is "fair and equitable" with respect to, such Class; and (ii) feasible. The Bankruptcy Court must also find that:

a. the Combined Plan and Disclosure Statement has classified Claims and Interests in a permissible manner;

b. the Combined Plan and Disclosure Statement complies with the requirements of Chapter 11 of the Bankruptcy Code; and

c. the Combined Plan and Disclosure Statement has been proposed in good faith.

The Debtors and the Committee believe that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

6.4    _Classification of Claims and Interests._

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the Bankruptcy Code, the Combined Plan and Disclosure Statement divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class. The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with Priority Non-Tax Claims, various Secured Claims, General Unsecured Claims, and Interests. The Debtors and the Committee believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Interests in the same Class and, thus, meet the requirements of section 1122 of the Bankruptcy Code.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Debtors and the Committee believe that the Combined Plan and Disclosure Statement complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Combined Plan and Disclosure Statement if the holders of Claims or Interests affected do not consent to the treatment afforded them under the Combined Plan and Disclosure Statement.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Combined Plan and Disclosure Statement only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

US_ACTIVE\131476713

The Debtors and the Committee believe that the Combined Plan and Disclosure Statement has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law.  It is possible that a holder of a Claim or Interest may challenge the classification of Claims or Interests herein and that the Bankruptcy Court may find that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed.  If such a situation develops, the Debtors and Committee  intend, in accordance with the terms of the Combined Plan and Disclosure Statement, to make such permissible modifications to the Combined Plan and Disclosure Statement as may be necessary to permit its confirmation.  Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Combined Plan and Disclosure Statement.

**EXCEPT AS SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE COMBINED PLAN AND DISCLOSURE STATEMENT'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class.  Thus, the actual recovery ultimately received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class.  Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by creditors.  The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' and Committee's views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein.  The Debtors and Committee believe that the consideration, if any, provided under the Combined Plan and Disclosure Statement to holders of Allowed Claims reflects an appropriate resolution of their Allowed Claims taking into account the differing nature and priority of such Claims and Interests.  The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Combined Plan and Disclosure Statement.  Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Combined Plan and Disclosure Statement, or do not vote to accept the Combined Plan and Disclosure Statement, but who will be bound by the provisions of the Combined Plan and Disclosure Statement if it is confirmed by the Bankruptcy Court.

6.5    <u>Impaired Claims or Interests</u>.

Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims in Classes Impaired by the Combined Plan and Disclosure Statement and receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote to accept or reject the Combined Plan and Disclosure Statement. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be Impaired if the Combined Plan and Disclosure Statement alters the legal, equitable, or contractual rights of the holders of such Claims or Interests treated in such Class. The holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement. The holders of Claims or Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote. Finally, the holders of Claims or Interests whose Claims or Interests are not classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

Under the Combined Plan and Disclosure Statement, holders of Claims in the Voting Classes – Classes 3, 4, and 5 – are Impaired and are entitled to vote to accept or reject the Combined Plan and Disclosure Statement. Holders of Claims in Classes 1 and 2 are Unimpaired and, therefore, not entitled to vote on the Combined Plan and Disclosure Statement and are deemed to accept the Combined Plan and Disclosure Statement. Holders of Claims and Interests in Classes 6 and 7 are Impaired and will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement and, therefore, are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN THE VOTING CLASSES.**

6.6    <u>Confirmation Without Necessary Acceptances; Cramdown</u>.

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, determined without including any acceptance of the plan by any insider holding a claim in that class, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. Here, because holders of Claims and Interests in Classes 6 and 7 are deemed to reject the Combined Plan and Disclosure Statement, the Debtors and Committee will seek confirmation of the Combined Plan and Disclosure Statement from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. The Debtors and Committee believe that such requirements are satisfied, as no holder of a Claim or Interest junior to those in the Impaired Classes is entitled to receive any property under the Combined Plan and Disclosure Statement.

The concept of "unfair discrimination" is not defined in the Bankruptcy Code, but case law suggests it exists when a difference in a plan's treatment of two classes of equal priority results in a materially lower percentage recovery for the non-accepting class. The Debtors and Committee do not believe that the Plan unfairly discriminates against any Class of Claims.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors, and equity holders, as follows:

a.   <u>Secured Creditors</u>.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

b.   <u>Unsecured Creditors</u>.  Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

c.   <u>Interests</u>.  Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

As discussed above, the Debtors and Committee believe that the distributions provided under the Combined Plan and Disclosure Statement satisfy the absolute priority rule, where required.

6.7   <u>Feasibility</u>.

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Plan and Disclosure Statement).  Based on the Debtors' and the Committee's analysis, the Liquidating Trustee will have sufficient assets to accomplish its tasks under the Combined Plan and Disclosure Statement.  Therefore, the Debtors and Committee believe that the liquidation pursuant to the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code.

6.8   <u>Best Interests Test and Liquidation Analysis</u>.

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests

of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses, and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.

The Debtors, with the assistance of their advisors, have prepared a liquidation analysis that summarizes the Debtors' best estimate of recoveries by holders of Claims if the Chapter 11 Cases were converted to cases under chapter 7 (the "Liquidation Analysis"), which shall be filed with the Plan Supplement.

Based upon the Debtors' current projections, holders of Allowed Administrative Claims, Priority Claims and Other Secured Claims will be paid in full under the Plan, while holders of Allowed General Unsecured Claims will receive a projected distribution to be determined based on various assumptions. *See* Liquidation Analysis.

Based upon the Liquidation Analysis, the Debtors and Committee believe that creditors will receive at least as much or more under the Plan than they would receive if the Chapter 11 Cases were converted to chapter 7 cases.

6.9    Eligibility to Vote on the Combined Plan and Disclosure Statement.

Unless otherwise ordered by the Bankruptcy Court, only holders of Allowed Claims in the Voting Classes may vote on the Combined Plan and Disclosure Statement. Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Plan and Disclosure Statement, you must hold an Allowed Claim in the Voting Classes, or be the holder of a Claim that has been temporarily Allowed for voting purposes only pursuant to the approved tabulation procedures or under Bankruptcy Rule 3018(a).

6.10    Solicitation Package / Release Opt-Out Election Form.

All holders of Allowed Claims in the Voting Classes will receive a solicitation package (the "Solicitation Package"). The Solicitation Packages will contain: (i) the Combined Plan and Disclosure Statement; (ii) the Conditional Approval and Procedures Order; (iii) notice of the Confirmation Hearing; (iv) a form of Ballot, including voting instructions and a pre-addressed

-32-

return envelope; (v) a Release Opt-Out Election Form; and (vi) such other materials as the Bankruptcy Court may direct or approve or that the Debtors and Committee deem appropriate.

All other Creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will receive only a copy of the notice of Confirmation Hearing and a Release Opt-Out Election Form.

Copies of the Combined Plan and Disclosure Statement shall be available on the Claims and Balloting Agent's website at https://www.veritaglobal.net/powin. Any creditor or party-in-interest can request a hard copy of the Combined Plan and Disclosure Statement be sent to them by regular mail by calling the Claims and Balloting Agent at (866) 381-9100 (U.S.) during regular business hours.

**IN ADDITION TO OTHER PARTIES WHO WILL BE CONSIDERED RELEASING PARTIES, ANY HOLDER OF A CLAIM OR INTEREST THAT DOES NOT AFFIRMATIVELY OPT-OUT OF THE THIRD PARTY RELEASE PROVISION CONTAINED HEREIN BY TIMELY AND PROPERLY COMPLETING AND RETURNING A RELEASE OPT-OUT ELECTION FORM WILL BE CONSIDERED A RELEASING PARTY IN RELATION TO THE THIRD PARTY RELEASE UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

6.11    <u>Voting Procedures, Voting Deadline, and Deadline to Submit the Release Opt-Out Election</u>.

The Voting Record Date for determining which holders of Claims in the Voting Classes may vote on the Combined Plan and Disclosure Statement is October 10, 2025.

In order for your Ballot to count, you must (1) complete, date, and properly execute the Ballot and (2) properly deliver the Ballot to the Claims and Balloting Agent by either (a) mailing the Ballot to the Claims and Balloting Agent at the following address: Powin Ballot Processing c/o Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; and/or (b) uploading the Ballot on the Claims and Balloting Agent's online balloting platform at https://www.veritaglobal.net/powin. Instructions for casting a Ballot will be available on the Claims and Balloting Agent's website.

Ballots must be submitted electronically, or the Claims and Balloting Agent must actually receive physical, original Ballots by mail or overnight delivery, on or before the Voting Deadline, which is **November 18, 2025 at 4:00 p.m. (prevailing Eastern Time)**. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a Ballot is submitted electronically or the Claims and Balloting Agent receives your original paper Ballot. Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any Ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Combined Plan and Disclosure Statement.

In order to be effective, Release Opt-Out Election Form for holders of Claims or Interests entitled to opt out of being a Releasing Party in connection with the Third Party Release contained herein must be received by the Claims and Balloting Agent by the Voting Deadline. Each Release

-33-

Opt-Out Election Form must be properly delivered to the Claims and Balloting Agent by either (a) mailing the Release Opt-Out Election Form to the Claims and Balloting Agent at the following address:  Powin Ballot Processing c/o Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (b) uploading the Release Opt-Out Election Form on the Claims and Balloting Agent's online opt-out portal at https://www.veritaglobal.net/powin.

**IF YOU ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL OR UPLOAD THE BALLOT YOU RECEIVE.  PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY.  IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT OR PROCEDURES FOR VOTING ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE CLAIMS AND BALLOTING AGENT BY (I) TELEPHONE AT (866) 381-9100 (U.S.) OR (II) EMAIL AT powininfo@veritaglobal.com.   THE CLAIMS AND BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

6.12    Acceptance of the Combined Plan and Disclosure Statement.

If you are a holder of a Claim in the Voting Classes, your acceptance of the Combined Plan and Disclosure Statement is important.  In order for the Combined Plan and Disclosure Statement to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement.  Although Class 5 is  subdivided into Classes 5A and 5B, the entirety of Class 5 shall vote as one class for purposes of determining the foregoing voting thresholds.  At least one Impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement.  The Debtors and Committee urge that you vote to accept the Combined Plan and Disclosure Statement.

**SECTION 7
UNCLASSIFIED CLAIMS**

7.1    Unclassified Claims.

In accordance with section 1123(a)(1) of the Bankruptcy Code, the following claims have not been classified for purposes of voting or receiving Distributions.  Rather, all such Claims are treated separately as unclassified Claims as set forth in this Section, and the holders thereof are not entitled to vote on the Combined Plan and Disclosure Statement.

7.2    Administrative Claims.

(a)    Except to the extent that a holder of an Allowed Administrative Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive from Available Cash, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective

-34-

Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the holder of such Claim and the Debtors or the Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

(b)     Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code) that do not file such requests by the applicable deadline provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtors, the Estates, the Liquidating Trust, or their successors or assigns, or their property.  Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

(c)     All fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date.

7.3     <u>Professional Fees</u>.

(a)     Professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than forty five (45) days after the Effective Date.  All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.  For avoidance of doubt, the Liquidating Trustee is not authorized under the Plan to object to applications for final allowance of compensation and reimbursement of expenses.

(b)     On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee shall establish an appropriate Liquidating Trust Professional Fee Reserve based upon estimates of anticipated fees provided by Professionals for services rendered and expenses incurred prior to the Effective Date estimated to be in excess of the Debtor Professional Fee Reserve, including estimated fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date. The Liquidating Trustee shall supplement the Liquidating Trust Professional Fee Reserve if the amount originally established is insufficient to pay Allowed Professional Fee Claims.

(c)     Upon approval of the fee applications by the Bankruptcy Court, the applicable fee applications shall first be paid from the Debtor Professional Fee Reserve and Stretto shall be authorized to release from the Debtor Professional Fee Reserve to the applicable Professional, an amount equal to the Allowed Professional Fee Claims of such Professional.  To

the extent the Debtor Professional Fee Reserve is insufficient to satisfy the Allowed Professional Fee Claim in full, the Liquidating Trustee shall pay such Professionals from the Liquidating Trustee Professional Fee Reserve the remainder of their respective Allowed Professional Fee Claims.

(d)     If there are amounts in excess of all Allowed Professional Fee Claims remaining in the Debtor Professional Fee Reserve and/or the Liquidating Trust Professional Fee Reserve, such amounts shall be transferred to the Liquidating Trust and shall, only upon transfer thereto, constitute Liquidating Trust Assets.

7.4     Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall be paid the full unpaid amount of such Allowed Priority Tax Claim as follows: (a) Cash equal to the unpaid portion of the Allowed Priority Tax Claim on the later of the Effective Date or thirty (30) days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) such other treatment as to which the holder of an Allowed Priority Tax Claim and the Debtors shall have agreed upon in writing.

With respect to sales taxes, the Debtors collected sales taxes applicable to inventory delivered to customers in the ordinary course of business. In most cases, the Debtors were required to remit sales taxes to the underlying taxing authorities on a periodic (quarterly or semiannually) following the occurrence of two triggering events: (a) delivery of product to a customer; and (b) collection of the underlying sales tax from that customer. Accordingly, the actual sales tax due may differ from what the Debtors reported where, either (a) delivery of product to a customer did not occur as estimated, or (b) where the customer did not remit the sales tax consistent with the Debtors' reporting or estimates. The Debtors continue to reconcile their sales tax reporting against what is actually due, but, on balance, the Debtors believe that the Plan sufficiently provides for the sales taxes due on a priority basis. It is possible that the applicable sales tax authorities may dispute the Debtors' reconciliation or assert an alternative amount is due.

## SECTION 8
## CLASSIFICATION OF CLAIMS AND INTERESTS

8.1     Summary of Classification.

The provisions of this Section 8 govern Claims against and Interests in the Debtors. Any Class that is vacant will be treated in accordance with Section 8.3.

The following table designates the Classes of Claims against, and Interests in, the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Combined Plan and Disclosure Statement in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Combined Plan and Disclosure Statement. A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is

-36-

classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No |
| 2 | Other Secured Claims | Unimpaired | No |
| 3 | WARN Act Claims | Impaired | Yes |
| 4 | Settled Priority Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes (Class 5A and Class 5B voting as one class) |
| 6 | Intercompany Claims | Impaired | No (presumed to reject) |
| 7 | Interests | Impaired | No (presumed to reject) |

8.2    <u>Special Provision Governing Unimpaired Claims</u>.

Except as otherwise provided in the Combined Plan and Disclosure Statement, nothing under the Combined Plan and Disclosure Statement shall affect the rights of the Debtors or the Liquidating Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

8.3    <u>Vacant and Abstaining Classes</u>.

Any Class of Claims or Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or Interest or a Claim or Interest temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Combined Plan and Disclosure Statement for purposes of voting to accept or reject the Combined Plan and Disclosure Statement and for purposes of determining acceptance or rejection of the Combined Plan and Disclosure Statement by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## SECTION 9
## TREATMENT OF CLAIMS AND INTERESTS

9.1    <u>Class 1—Priority Non-Tax Claims</u>.

(a)    <u>Classification</u>.  Class 1 consists of all Priority Non-Tax Claims.

(b)    <u>Treatment</u>.  Except to the extent a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, on the later of (i) the Effective Date or (ii) the date such Priority Non-Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter, each

Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, payment in full in Cash in an amount equal to the Allowed amount of such Claim.

(c)    Impairment and Voting. Class 1 is Unimpaired under the Plan. Each Holder of an Allowed Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to Priority Non-Tax Claims.

9.2    Class 2—Other Secured Claims.

(a)    Classification. Class 2 consists of Other Secured Claims.

(b)    Treatment. Except to the extent a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the later of (i) the Effective Date or (ii) the date such Other Secured Claim becomes Allowed, or as soon as reasonably practicable thereafter, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Claim, at the discretion of the Distribution Agent (x) payment in full in Cash in an amount equal to the Allowed amount of such Claim; (y) such other treatment sufficient to render such Other Secured Claim Unimpaired; or (z) return of the applicable collateral or authorization of a setoff in satisfaction of the Allowed amount of such Other Secured Claim.

(c)    Impairment and Voting. Class 2 is Unimpaired under the Plan. Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to Other Secured Claims.

9.3    Class 3—WARN Act Claims.

(a)    Classification. Class 3 consists of WARN Act Claims.

(b)    Treatment. This Combined Plan and Disclosure Statement proposes a settlement with respect to WARN Act Claims. Specifically, if the representatives of the Holders of WARN Act Claims agree on a binding basis to such settlement as memorialized in the Plan Supplement, such Holders will receive the following treatment: (i) the allowance of the WARN Act Claims in the amount set forth in the Plan Supplement (the "Allowed WARN Act Claims"); (ii) the certification of a class pursuant to Fed. R. Bankr. P. 7023 with respect to the Allowed WARN Act Claims; (iii) the payment of an initial cash payment on the Effective Date on account of the Allowed WARN Act Claims to the designated class representative of such Allowed WARN Act Claims identified in the Plan Supplement to be distributed by such class representative to members of the class; and (iv) the payment of additional cash payments to the class representative to be distributed to members of the class as described in the Plan Supplement following the Effective Date on the occurrence of certain milestone events disclosed in the Plan Supplement until the Allowed WARN Act Claims are satisfied in full. In the event a settlement with Holders of WARN Act Claims is not reached, each WARN Act Claim shall be treated as either a Class 1

-38-

Priority Non-Tax Claim or a Class 5 General Unsecured Claim, as determined by an order of the Bankruptcy Court.

(c)  <u>Impairment and Voting</u>.  Class 3 is Impaired, and the Holders of Class 3 Claims are entitled to vote on the Plan.

9.4  <u>Class 4—Settled Priority Claims</u>.

(a)  <u>Classification</u>.  Class 4 consists of Settled Priority Claims.

(b)  <u>Treatment</u>.  This Combined Plan and Disclosure Statement proposes a settlement for Settled Priority Claims.  Specifically, if Holders of a Settled Priority Claim agree on a binding basis to such settlement as memorialized in the Plan Supplement, such Holders will receive the following treatment: (a) the allowance of the Settled Priority Claim in the amount set forth in the Plan Supplement (the "<u>Allowed Settled Priority Claim</u>"); (b) the payment of the documented professional fees incurred by the Holder of the Allowed Settled Priority Claim, as agreed by the Debtors and disclosed in the Plan Supplement, on the Effective Date; and (c) the treatment of the Allowed Settled Priority Claim as a Class 5 General Unsecured Claim except for the foregoing payment of such documented professional fees on the Effective Date.

(c)  <u>Impairment and Voting</u>.  Class 4 is Impaired, and the Holders of the Class 4 Claims are entitled to vote on the Plan.

9.5  <u>Class 5—General Unsecured Claims</u>.

(a)  <u>Classification</u>.

(i)  Class 5A: Class 5A is comprised of all General Unsecured Claims.

(ii)  Class 5B: Class 5B is comprised of Holders of Class 5A Claims that also contribute Direct Claims to the Direct Claims Trust.  The treatment afforded Holders of Class 5B Claims is in addition to the treatment afforded them as Holders of Class 5A Claims.

(b)  <u>Treatment</u>.

(i)  Class 5A: Each Holder of an Allowed General Unsecured Claim shall receive in exchange for its Allowed General Unsecured Claim, its Pro Rata share of the Liquidating Trust Interests.

(ii)  Class 5B: Each Contributing Direct Claim Holder shall receive, in exchange for its Direct Claims, and in addition to its Pro Rata share of the Liquidating Trust Interests, its share of the Direct Claims Trust Interests on account of such Direct Claims.

(c)  <u>Impairment and Voting</u>.  Class 5 is Impaired, and the Holders of Class 5A and Class 5B Claims are entitled to vote on the Plan as one combined Class 5 for voting purposes.

9.6     Class 6—Intercompany ClaimsClassification: Class 6 consists of all Intercompany Claims.

(b)     Treatment: There shall be no Distribution on account of Intercompany Claims, except as necessary or appropriate for tax efficiency, provided, however, that no Distribution will be in Cash.   Upon the Effective Date, all Intercompany Claims will be deemed cancelled, released, and discharged, subject to the foregoing.

(c)     Impairment and Voting: Class 6 is Impaired and holders of Class 6 Claims are deemed to have rejected the Plan, and are not entitled to vote.

9.7     Class 7—InterestsClassification.  Class 7 consists of all Interests.

(b)     Treatment.  There shall be no Distribution on account of Class 7 Interests. Upon the Effective Date, all Interests will be deemed cancelled and will cease to exist.

(c)     Impairment and Voting.  Holders of Interests are deemed to have rejected the Plan, and are not entitled to vote.

# SECTION 10
# DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS

10.1     Distribution Dates.

The Debtors or the Liquidating Trustee, as applicable, shall make Distributions to holders of Claims, and with respect to General Unsecured Claims, may, in their discretion, make a full or partial Pro Rata Distribution to the holders of General Unsecured Claims on the Initial Distribution Date or a Subsequent Distribution Date.

10.2     Subsequent Distributions.

Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Distribution Agent on any Subsequent Distribution Date after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution.

10.3     Distribution Record Date.

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  The Distribution Agent shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any Distribution with respect to any Claim, the Distribution Agent shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the

Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Distribution Agent as of the Distribution Record Date.

10.4    Manner of Cash Payments Under the Plan or Liquidating Trust Agreement.

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Distribution Agent, or by wire transfer from a domestic bank, at the option of the Distribution Agent.

10.5    Time Bar to Cash Payments by Check.

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Section shall be made directly to the Distribution Agent by the holder of the Allowed Claim to which the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six months from the Effective Date or 90 days after the date of issuance thereof. After that date, all Claims in respect of voided checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidating Trust, as unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

10.6    Liquidating Trust Assets Accounts.

Unless otherwise provided in the Confirmation Order, the Liquidating Trust Assets Account shall be invested by the Liquidating Trustee in a manner consistent with the objectives of section 345(a) of the Bankruptcy Code and in its reasonable and prudent exercise of discretion; provided, however, that in no event shall the Liquidating Trust Assets Account be invested in a manner that is inconsistent with the provisions of Revenue Procedure 94-45. The Liquidating Trustee shall have no obligation or liability to the Liquidating Trust Beneficiaries in connection with such investments in the event of any unforeseeable insolvency of any financial institution where such funds are held.

## SECTION 11
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

11.1    No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, the Debtors and the Liquidating Trustee, as applicable, shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

11.2    Resolution of Disputed Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, subject to the Liquidating Trust Agreement, the Liquidating Trustee shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims.

US_ACTIVE\131476713

The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust. From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

11.3    Objection Deadline.

All objections to Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court.

11.4    Estimation of Claims.

At any time, (a) prior to the Effective Date, the Debtors, and (b) after the Effective Date, the Liquidating Trustee may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trust have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Liquidating Trustee, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.    All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

11.5    Disallowance of Claims.

Except as otherwise agreed or ordered by the Bankruptcy Court, any and all proofs of claim filed after the Bar Date shall not be treated as an Allowed Claim for purposes of Distribution without any further notice or action, and holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed.

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Liquidating Trust shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtors hold or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estates by that Entity have been turned over or paid to the Debtors or the Liquidating Trust.

US_ACTIVE\131476713

11.6    <u>Adjustment to Claims Register Without Objection</u>.

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register at the direction of the Debtors or the Liquidating Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

11.7    <u>Reserve Provisions for Disputed Claims</u>.

On or by each Distribution Date, the Debtors or the Liquidating Trustee, as applicable, shall reserve Cash required for distribution on Disputed Claims as if such Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Debtors or the Liquidating Trustee (the "<u>Disputed Claim Reserve</u>").

The property in the Disputed Claim Reserve shall be held in trust for the benefit of the holders of Disputed Claims that are ultimately determined to be Allowed. Each Disputed Claim Reserve shall be closed and extinguished when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms of the Plan.

11.8    <u>Rounding</u>.

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

11.9    <u>No Cash Payments of Less Than $100 on Account of Allowed Claims</u>.

Notwithstanding anything herein to the contrary, except with respect to Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims and Other Secured Claims, if a Distribution to be made to a holder of an Allowed Claim on the Initial Distribution Date or any Subsequent Distribution Date would be $100 or less in the aggregate, no such Distribution will be made to that holder unless a request therefor is made in writing to the Distribution Agent. If such request is made, such Cash shall be held for such holder until the earlier of (i) the next time an interim distribution is made to the holders of Allowed Claims (unless the distribution would still be less than $100, in which case this Section shall again apply), or (ii) the date on which Final Distributions are made to the holders of Allowed Claims.

11.10   <u>Delivery of Distributions and Unclaimed Property</u>.

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Debtors or the Liquidating Trustee have been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Distribution Agent may, in its discretion, make reasonable efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made, but no Distribution to any such holder shall be made unless and until the Distribution Agent has determined the then-current address of such holder, at which time the Distribution to

-43-

such holder shall be made without interest. Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Distribution Agent, until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code. The Distribution Agent shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or, if applicable, the Liquidating Trust Agreement. On or about the time that the Final Distribution is made, the Distribution Agent may make a charitable donation with undistributed funds if, in its reasonable judgment, the cost of calculating and making the Final Distribution of the remaining funds is excessive in relation to the benefits to the holders of Claims that would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtors or the Liquidating Trustee. Except with respect to property not distributed because it is being held in a Disputed Reserve, Distributions that are not claimed by the later of the expiration of six (6) months from the Effective Date or (90) days after the date of a Distribution shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest or revest in the Liquidating Trust, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of that period, the claim of any Entity to those Distributions shall be cancelled. Nothing contained in the Plan shall require the Debtors or the Liquidating Trust to attempt to locate any holder of an Allowed Claim. All funds or other property that vest or revest in the Liquidating Trust pursuant to this Section shall be distributed to the other holders of Allowed Claims in accordance with the provisions of the Plan or the Liquidating Trust Agreement, as applicable.

The Distribution Agent may require any Claimant to provide a duly executed IRS Form W-9 or such other documentation or information as the Distribution Agent reasonably deems necessary to effectuate a Distribution. If a Claimant fails to provide the requested information within ninety (90) days after written request, the Distribution Agent may, in its discretion, deem the Distribution to such Claimant undeliverable and administer such Distribution in accordance with the terms of the Plan.

11.11   Books and Records.

The Debtors shall transfer dominion and control over all of their books and records, in whatever form, manner or media, to the Liquidating Trustee on or as soon as reasonably practicable after the Effective Date.

### SECTION 12
### TREATMENT OF EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES

12.1   Rejection / Assumption.

Except with respect to (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, (ii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, or (iii) executory contracts or unexpired leases that are scheduled by the Debtors to be assumed as of the Effective Date, as set forth in the Plan Supplement, on the Effective Date,

-44-

each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed <u>rejected</u> pursuant to section 365 of the Bankruptcy Code; *provided, however,* that nothing in this Section shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and directors and/or the Liquidating Trust.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.  Nothing in this Section shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.

The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtors nor the Liquidating Trust shall bear any liability for costs associated with such matters.

12.2    <u>Rejection Claims.</u>

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Claims Agent within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection.  Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection.  All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as General Unsecured Claims.

12.3    <u>Insurance Policies.</u>

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the Insurance Policies.  To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtors hold or may hold against any Entity, the Debtors shall, to the extent permissible under each Insurance Policy, assign all of their rights thereunder with respect to such Causes of Action to the Liquidating Trust.  All net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of Insurance Policies received by the Liquidating Trust or Direct Claims Trust shall be treated as proceeds of such Causes of Action for all purposes under the Plan.  Neither the Debtors nor the Committee shall take any action to or otherwise impair the Insurance Policies.  Nothing herein shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtors or any other Entity.

## SECTION 13
## MEANS FOR IMPLEMENTATION OF THE PLAN

13.1    <u>General Settlement of Claims and Interests</u>.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, settlements contained in the Plan shall constitute a good-faith compromise and settlement of all

-45-

Claims and Interests and controversies resolved pursuant to the relevant Plan provisions. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromises and settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlements and compromises are fair, equitable, reasonable, and in the best interests of the Debtors and the Estates. All Plan Distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final. For the avoidance of doubt, the Plan itself shall not be deemed to be a settlement.

13.2    <u>Dissolution of Debtors</u>.  As soon as practicable, the Debtors shall be dissolved, without any further action required on the part of the Debtors or the Debtors' members, managers, officers, directors, interest holders, and/or any other parties; provided, however, the Liquidating Trustee in his or her discretion shall be authorized to take any and all actions necessary or desirable in relation to dissolution of the Debtors.   On the Effective Date, the employment, retention, appointment and authority of all managers, officers, directors, employees and professionals of the Debtors shall be deemed to terminate: except for certain employees that may be necessary as determined by the Liquidating Trustee and as otherwise set forth herein.  Pending the Debtors' dissolution, the Liquidating Trustee shall act as the Debtors' authorized representative (the "<u>Authorized Representative</u>").  The Authorized Representative shall (i) liquidate any remaining assets, the liquidation of which requires action by the Debtors or its employees and (ii) determine the date for the Debtors' dissolution.

13.3    <u>Trusts</u>.

(a)    <u>Appointment of the Liquidating Trustee</u>.  The Committee shall select the initial Liquidating Trustee, with the consent of the Debtors which may not be unreasonably withheld,.  The Liquidating Trustee shall also serve as the Direct Claims Trustee, in accordance with the Direct Claims Trust Agreement.  From and after the Effective Date, professionals may be retained by the Liquidating Trustee as set forth in the Liquidating Trust Agreement, without further need for documentation or Bankruptcy Court approval.  All fees and expenses incurred by the professionals retained by the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement; provided, however, that any such fees and expenses attributable to the WARN Act Claim Reserve Account, as determined by the Liquidating Trustee in its reasonable discretion, shall be paid only out of assets held in the WARN Act Claim Reserve Account.

(b)    On the Effective Date, the Liquidating Trust and the Direct Claims Trust shall be established for the following purposes and in accordance with the following terms, subject to the Liquidating Trust Agreement and the Direct Claims Trust Agreement, respectively:

(i)    <u>Liquidating Trust</u>.

a.    On the Effective Date, the Liquidating Trust shall be established in accordance with the Liquidating Trust Agreement for the purpose of liquidating and distributing the assets of the Estates, in accordance with 26 C.F.R. § 301.7701-4(d), this Plan, the Liquidating Trust Agreement, the

-46-

Confirmation Order, and the Bankruptcy Code's priority scheme, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The primary functions of the Liquidating Trust are as follows: (i) to liquidate, sell, or dispose of the Liquidating Trust Assets; (ii) to cause all net proceeds of the Liquidating Trust Assets, including proceeds of Causes of Action on behalf of the Liquidating Trust, to be deposited into the Liquidating Trust; (iii) to initiate actions to resolve any remaining issues regarding the allowance and payment of Claims including, as necessary, initiation and/or participation in proceedings before the Court; (iv) to take such actions as are necessary or useful to maximize the recoveries to the Liquidating Trust Beneficiaries; (v) to effectuate the wind-down of the Debtors as set forth in the Plan; and (vi) in its capacity as Distribution Agent, to make the payments and distributions to Holders of Allowed Claims, including Holders of Allowed Administrative, Priority, and General Unsecured Claims.  The Liquidating Trustee will pay post-Effective Date costs and expenses of the Liquidating Trust and Direct Claims Trust in accordance with the Trust Budget, which may be amended with the consent of the Oversight Committee.  All Avoidance Actions that do not constitute "IP and Customer Claims" (as defined in the FlexGen APA) will vest in the Liquidating Trust to the extent identified on a retained action schedule (to be provided in the Plan Supplement); provided, however, that specified avoidance actions against Holders of General Unsecured Claims may be excluded from the retained action schedule in the discretion of the Committee.

(ii)     <u>Direct Claims Trust</u>.

b.      On the Effective Date, the Direct Claims Trust shall be established in accordance with the Direct Claims Trust Agreement for the purpose of receiving and monetizing the Direct Claims Trust Assets.  Pursuant to the Direct Claims Trust Agreement, all Holders of General Unsecured Claims with affirmative, direct claims against non-Debtor parties who are not Released Parties hereunder (the "<u>Direct Claims</u>") related to or in connection with these Chapter 11 cases, including those which may be asserted against the Debtors' Prepetition Lenders and their affiliates, or the former directors, officers, shareholders or insiders of the Debtors, or the prepetition advisors or professionals retained by the Debtors in each case to the extent they are not otherwise Released Parties hereunder, that have not made an election on their Ballot as of the Voting Deadline to opt out of contributing such Direct Claims to the Direct Claims Trust (each contributor, a "<u>Contributing Direct Claim Holder</u>") shall be deemed, without further action required, to have contributed to the Direct Claims Trust all of their Direct Claims and any privileges related to such Direct Claims (collectively, the "<u>Direct Claims Trust Assets</u>"); provided that a Contributing Direct Claim Holder may at any time thereafter either (a) withdraw its Direct Claim(s) from the Direct Claims Trust or (b) choose not to participate in the litigation of such

-47-

claim(s), in each case as and to the extent permitted by applicable law and in accordance with the terms of the Direct Claims Trust Agreement. For the avoidance of doubt, no Direct Claim against a Released Party hereunder shall be contributed to or brought by the Direct Claims Trust against a Released Party; provided, that, nothing herein shall prohibit a third party that opts out of the Third Party Release from bringing a direct claim on its own behalf (and at its own cost and expense) against any party.

c.      The Direct Claims Trustee shall have the exclusive right to investigate, prosecute, settle and resolve any of the Direct Claims which constitute Direct Claims Trust Assets until such time, if any, that such Direct Claims are withdrawn from the Direct Claims Trust. Contributing Direct Claim Holders shall use reasonable efforts to cooperate with the Direct Claims Trustee in the prosecution of their respective Direct Claims, including complying with discovery requests in accordance with applicable law.

d.      Contributing Direct Claim Holders who incur expenses in connection with their Direct Claims, including producing documents, sitting for depositions, or testifying at trial, shall be reimbursed for such expenses by the Direct Claims Trust, subject to such restrictions as the Direct Claims Trust Agreement may provide. The Direct Claims Trust expenses will be advanced by the Liquidating Trust and will be repaid upon realization of a recovery of Direct Claims Trust Assets before distribution of any proceeds to the beneficiaries of the Direct Claims Trust or any cooperation payment to the Liquidating Trust as set forth herein.

e.      Each Contributing Direct Claim Holder shall receive, in exchange for contributing its Direct Claims, its Direct Claims Trust Interests on account of such Direct Claims as set forth in the Direct Claims Trust Agreement. In the event that (i) the Liquidating Trust and the Direct Claims Trust prosecute related claims against a single defendant, (ii) a recovery is received related to such claims, and (iii) the Liquidating Trustee determines in his or her commercially reasonable judgment that there is no clear allocation of such recovery between claims brought by the Liquidating Trust and claims brought by the Direct Claims Trust, the Liquidating Trustee shall allocate such recovery to the Liquidating Trust and the Direct Claims Trust in accordance with the Direct Claims Trust Agreement.

(c)      <u>Liquidating Trust Assets</u>. On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust. The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief. The transfer of the Liquidating Trust Assets shall be made for the benefit and on behalf of the Liquidating Trust Beneficiaries. The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Liquidating Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Liquidating Trust Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the

Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets.

(d)     Direct Claims Trust Assets.  On the Effective Date, the Direct Claims Trust Assets shall vest automatically in the Direct Claims Trust.  The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The Beneficiaries of the Direct Claims Trust shall be treated as the grantors and owners of the Direct Claims Trust.

(e)     Valuation.  Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets and such valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trust, and the Liquidating Trust Beneficiaries) for all federal income tax purposes.

(f)     Rights and Powers of the Liquidating Trustee.  The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement and the Direct Claims Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004 to act on behalf of the Liquidating Trust and the Direct Claims Trust.  Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan, the Liquidating Trust Agreement, and the Direct Claims Trust Agreement; (2) liquidate the Liquidating Trust Assets and the Direct Claims Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtors hold or may hold against any Entity; (4) make all Distributions in accordance with the Plan, the Liquidating Trust Agreement, and the Direct Claims Trust Agreement; (5) administer the Liquidating Trust and the Direct Claims Trust and pursue viable Causes of Action in accordance with the Plan and the Liquidating Trust Agreement and the Direct Claims Trust Agreement; (6) establish and administer any necessary reserves for Disputed Claims that may be required; (7) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (8) assert or waive any attorney-client privilege on behalf of the Debtors and Estates with regard to acts or events during time periods prior to the Petition Date; and (9) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtors or the Committee in accordance with the Liquidating Trust Agreement or the Plan, *provided, however*, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

(g)     Oversight Committee.  The Liquidating Trust and the Direct Claims Trust shall each have a separate oversight committee comprised of three members selected by the

-49-

Committee in its sole discretion (each, an "Oversight Committee," and together, the "Oversight Committees"). The Oversight Committees shall have approval rights over certain key decisions by the Liquidating Trustee or the Direct Claims Trustee, as applicable, all as set forth in the Plan Supplement. In the event of a conflict of interest between the Direct Claims Trust and the Liquidating Trust with respect to litigation strategy, settlement, or resource allocation, the Oversight Committees and the Liquidating Trustee will implement procedures to ensure that decisions are made consistent with the respective fiduciary duties owed to each trust, including, if necessary, recusal of conflicted members or consultation with independent counsel.

(h)    Fees and Expenses of the Trusts. Expenses incurred by the Liquidating Trust, and the Direct Claims Trust, on or after the Effective Date shall be paid by the Liquidating Trustee, from the Liquidating Trust, in accordance with the Liquidating Trust Agreement, and Direct Claims Trust Agreement, as applicable, without further order of the Bankruptcy Court.

(i)    Transfer of Beneficial Interests in the Trusts. Neither Liquidating Trust Interests nor Direct Claims Trust Interests shall be transferable except upon death of the interest holder or by operation of law. Neither Trust shall not have any obligation to recognize any transfer of Claims or Interests occurring after the Distribution Record Date.

(j)    Effective Date Cash Transfers. On or as soon after the Effective Date as is reasonably practical, the Debtors shall use any available Cash to (i) fund payments to be made pursuant to or otherwise consistent with the Plan and the Confirmation Order, including distributions to holders of Allowed Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims and (ii) transfer to the Liquidating Trust the (A) Trust Funding Amount and (B) an amount necessary to establish appropriate reserves (including the Liquidating Trust Professional Fee Reserve) to pay Administrative Claims, Priority Tax Claim, and Priority Non-Tax Claims that become Allowed after the Effective Date (collectively, the "Effective Date Cash Transfers"). To the extent the Debtors' available Cash is insufficient to fund the Effective Date Cash Transfers, such transfers will be made pursuant to the terms hereof. Notwithstanding any other provision herein, the Effective Date Cash Transfers will be used in the first instance by the Liquidating Trustee to pay or reserve for all unpaid Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims (including any Disputed Claims until such Claims are resolved), prior to use of the available Cash for purposes of the Liquidating Trust. Subject to the restrictions set forth herein, the Liquidating Trust Assets will be used by the Liquidating Trustee to pay for the expenses of the Liquidating Trust in accordance with the Liquidating Trust Agreement.

On or as soon as practicable following the Effective Date, the Liquidating Trust Assets Account shall be opened by the Liquidating Trustee and funded with the amount set forth in clause (ii) of the first sentence of the preceding paragraph (the "Initial Trust Cash"), which shall constitute Liquidating Trust Assets.

(k)    Certain Tax Matters.

(i)    The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) and in accordance with the Plan. The Liquidating Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items is respect of any assets allocable to, or retained on account of, Disputed

-50-

Claims) will be allocated to each holder in accordance with their relative ownership of Liquidating Trust Interests.

(ii)    The Liquidating Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Liquidating Trust for all taxable periods through the dissolution thereof. Nothing in this Article shall be deemed to determine, expand, or contract the jurisdiction of the Bankruptcy Court under section 505 of the Bankruptcy Code.

(iii)    The Liquidating Trustee (1) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Liquidating Trustee and the holders of Liquidating Trust Interests) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing. The Liquidating Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

13.4    <u>Litigation</u>.

Except as otherwise provided herein (including with respect to the Exculpation and Release provisions hereof), all Litigation is retained, vested in the Liquidating Trust, or Direct Claims Trust, as applicable, and preserved pursuant to section 1123(b) of the Bankruptcy Code. From and after the Effective Date, all Litigation will be prosecuted or settled by the Liquidating Trustee.

To the extent any Litigation is already pending on the Effective Date, the Liquidating Trustee will continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtors or the Estates pursuant to the Plan and the Confirmation Order on the Effective Date, without need for any further motion practice or notice in any case, action, or matter.

Although the Debtors and the Committee are unable to predict with certainty the value or outcome of any particular Litigation, the Liquidating Trustee will evaluate and pursue only those Causes of Action that, in the exercise of its reasonable judgment, are expected to yield a net positive recovery to the Liquidating Trust, taking into account the anticipated costs of prosecution, including Liquidating Trustee fees and expenses.

By way of example only, the following Causes of Action are currently known to the Debtors as of the date hereof and are expected to be pursued by the Liquidating Trustee:

- **Recovery of Receivables**. The Debtors are analyzing outstanding receivables to determine collectability; however, no assurance can be given as to the amount or timing of any recovery.

- **Cash Collateral Accounts**. The Debtors maintain certain cash collateral accounts securing bonds, credit card programs, and other financing obligations. The

US_ACTIVE\131476713

Liquidating Trustee intends to seek turnover to the extent applicable of these accounts for the benefit of the Liquidating Trust.

- ***Powin LLC v. United States.*** Powin has asserted claims against the United States for refunds of tariffs it contends were improperly assessed and overpaid. The Liquidating Trustee intends to continue the prosecution of this action for the benefit of creditors.

- **Committee Investigations**. The Committee is investigating potential causes of action which might be asserted against third parties, and which might be held either by the Debtors or by individual claimants.  Any estate claims and causes of action held by the Debtors, to the extent not released in the Plan, shall be automatically contributed to the Liquidating Trust for the benefit of all Holders of General Unsecured Claims in Class 5A.  Any Direct Claims held by individual claimants shall be automatically contributed to the Direct Claims Trust to be pursued by the Direct Claims Trustee in their business judgment for the benefit of all Contributing Direct Claim Holders in Class 5B, unless such Holder has either (a) made an election on their Ballow as of the Voting Deadline to opt out of contributing such Direct Claims to the Direct Claims Trust, or (b) has withdrawn their Direct Claims contributed to the Direct Claims Trust in accordance with the Direct Claims Trust Agreement.  The Committee's investigation is ongoing and at this time no further information can be provided regarding potential claims or causes of action, or the value thereof at this time.

13.5    <u>Dissolution of the Committee</u>.

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Cases, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto).  The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date.  Nothing in the Plan shall prohibit or limit the ability of the Committee's or Debtors' Professionals to represent the Liquidating Trustee or to be compensated or reimbursed per the Plan, the Liquidating Trust Agreement, and/or the Direct Claims Trust Agreement in connection with such representation.

13.6    <u>Employee Payments</u>.

On the Effective Date, the Debtors or the Liquidating Trustee shall be authorized to pay certain compensation to eligible employees (the "<u>Employee Payments</u>") in order to incentivize such employees to continue their employment with the Debtors throughout the wind-down period and to assist in the orderly implementation and effectuation of the Plan, which compensation shall be subject to approval by the Committee.  The Employee Payments shall be made only to those

-52-

employees identified as eligible in, and shall be subject in all respects to, the terms and conditions set forth in the Plan Supplement.

13.7    WARN Act Settlement.

(a)    Funding and Distribution of the WARN Act Claim Reserve. The WARN Act Claim Reserve shall be formed on the Effective Date and funded in the amount of [$●], consisting of (i) the Initial WARN Act Claim Reserve Amount, to be distributed on the Effective Date to the designated class representative of the Allowed WARN Act Claims identified in the Plan Supplement for the benefit of members of the class; and (ii) following the transfer of the Liquidating Trust Assets to the Liquidating Trust, [$●] in net recoveries from the liquidation of the Liquidating Trust Assets, to be distributed to the class representative for the benefit of members of the class as described in the Plan Supplement following the Effective Date on the occurrence of certain milestone events disclosed in the Plan Supplement until the Allowed WARN Act Claims are satisfied in full.

(b)    Unused WARN Act Claim Reserve Funds. To the extent all or a portion of the funds in the WARN Act Claim Reserve are not used to pay WARN Act Claims (or taxes thereon), such unused funds shall be distributed in accordance with the terms of this Combined Plan and Disclosure Statement.

(c)    Related Considerations. The WARN Act Claim Reserve does not limit in any manner the potential allowed amount of any WARN Act Claim, to which the Holders thereof and the Liquidating Trustee reserve all their respective rights. The WARN Act Claim Reserve funds shall be maintained and not disbursed until the WARN Action has been fully resolved pursuant to a further order of the Bankruptcy Court.

(d)    Reservation of Rights. Notwithstanding the foregoing, the Liquidating Trustee reserves the right to object to, estimate, or otherwise resolve any WARN Act Claim, and the Holders of the WARN Act Claims reserve their rights to oppose any relief sought by the Liquidating Trustee.

(e)    Certain Tax Matters.

(i)    The WARN Act Claim Reserve Account is intended to be treated, and shall be reported, as a "qualified settlement fund" for U.S. federal income tax purposes and shall be treated consistently for state and local tax purposes to the extent applicable. The WARN Act Claims Administrator shall be the "administrator" of the WARN Act Claim Reserve Account within the meaning of Treasury Regulations section 1.468B-2(k)(3).

(ii)    The WARN Act Claims Administrator shall be responsible for filing all tax returns of the WARN Act Claim Reserve Account and the payment, solely out of the assets of the WARN Act Claim Reserve Account, of any taxes due by or imposed on the WARN Act Claim Reserve Account. The WARN Act Claims Administrator shall ensure that any distributions made in respect of Claims that are in the nature of compensation for services are subject to appropriate payroll withholding and reporting, and that any applicable payroll taxes associated therewith (including employer-side and employee-side payroll taxes) are properly remitted. Any such taxes shall be payable solely out of the assets held in the WARN Act Claim Reserve Account.

## SECTION 14
## EFFECT OF CONFIRMATION

14.1    <u>Binding Effect of the Plan</u>.

The provisions of the confirmed Plan shall bind the Debtors, the Committee, the Liquidating Trust, the Direct Claims Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Interest holder, whether or not such Creditor or Interest holder has filed a Proof of Claim or Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Interest of such Interest holder is impaired under the Plan, and whether or not such Creditor or Interest holder has accepted or rejected the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to the Plan.  The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in section 1146(a) of the Bankruptcy Code.

14.2    <u>Vesting of Property of Debtors on the Effective Date</u>.

Upon the Effective Date, title to all property constituting Liquidating Trust Assets or Direct Claims Trust Assets (including, without limitation, all Causes of Action) of the Estates shall vest in the Liquidating Trust, or the Direct Claims Trust, as applicable, and shall be retained by the applicable Trust for the purposes contemplated under the Plan pursuant to the Liquidating Trust Agreement and/or the Direct Claims Trust Agreement, as applicable.

14.3    <u>Property Free and Clear</u>.

Except as otherwise provided in the Plan or the Confirmation Order, all property that shall vest in the Liquidating Trust, or the Direct Claims Trust, shall be free and clear of all Claims, Interests, Liens, charges, or other encumbrances of Creditors or Interest holders, other than as set forth herein, in the Liquidating Trust Agreement, in the Direct Claims Trust Agreement, and in relevant documents, agreements, and instruments contained in the Plan Supplement.  Following the Effective Date, the Liquidating Trustee may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

## SECTION 15
## EXCULPATIONS, INJUNCTIONS, AND RELEASES

This Combined Plan and Disclosure Statement contains certain releases, exculpations, and injunction language.  Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan will affect any Claim, interest, right, or action with regard to the Debtor and certain third parties.

**THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS TO THE FULLEST EXTENT**

US_ACTIVE\131476713

**AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW**

15.1    Exculpation.

The Exculpated Parties will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, the sale or other disposition of the Debtors' assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; *provided, however*, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, bad faith, or gross negligence (in each case subject to determination by final order of the Bankruptcy Court); *provided that* any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reasonable reliance shall form a defense to any such claim, Cause of Action, or liability.  Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code.

15.2    Releases.

(a)    **Debtor Releases**.

**Notwithstanding anything in the Combined Plan and Disclosure Statement to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, by, through, for, or because of the foregoing entities (collectively, the "Debtor/Estate Releasors"), shall release (the "Debtor/Estate Release") each Released Party, and each Released Party is deemed released by the Debtor/Estate Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor/Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have been legally entitled to assert in its own right, or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of, or solicitation of votes on, the Combined Plan and Disclosure**

-55-

Statement or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; provided, that the foregoing Debtor/Estate Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and further provided that nothing herein shall act as a discharge of the Debtor.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

(b)   **Third Party Release**.

Notwithstanding anything in the Plan to the contrary, on and after and subject to the occurrence of the Effective Date, each of the Releasing Parties shall release (the "**Third Party Release**") each Released Party, and each of the Debtors, the Estates, and the Released Parties shall be deemed released from, any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Combined Plan and Disclosure Statement, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of, or solicitation of votes on, the Combined Plan and Disclosure Statement or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall

-56-

**be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Combined Plan and Disclosure Statement. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligations of any party under the Combined Plan and Disclosure Statement or any other document, instrument, or agreement executed to implement the Combined Plan and Disclosure Statement. For the avoidance of doubt, the Third Party Release shall not be effective upon any party that executes and returns a Release Opt-Out Election Form in accordance with the terms of this Combined Plan and Disclosure Statement.**

15.3    <u>Injunction</u>.

**In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, the Liquidating Trust, the Direct Claims Trust, or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or any Trust under the Plan. Notwithstanding any other provision of this Plan, the Debtors shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).**

15.4    <u>Post-Confirmation Liability of Liquidating Trustee</u>.

The Liquidating Trustee, together with its consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "<u>Indemnified Parties</u>") shall not be liable for any and all liabilities, losses, damages, claims, Causes of Action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the holders of Claims or Interests for any action or inaction in connection with the performance or discharge of their duties under the Plan, except the Indemnified Parties will be liable for actions or inactions that constitute willful misconduct, fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute willful misconduct, fraud,

bad faith, or gross negligence. In addition, the Liquidating Trust, the Direct Claims Trust, and the Estates shall, to the fullest extent permitted by the laws of the State of New Jersey, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust, the Direct Claims Trust, and the Estates or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Trust, the Direct Claims Trust, and the Estates. To the extent the Liquidating Trust or the Direct Claims Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidating Trust Expenses. All rights of the Persons indemnified pursuant hereto shall survive confirmation of the Plan. For the avoidance of doubt, the Liquidating Trustee shall not be deemed an Exculpated Party under this Plan, nor shall this provision be read to grant the Liquidating Trustee an exculpation under this Plan.

15.5    Preservation of Rights of Action.

(a)    Vesting of Causes of Action.

Except as otherwise provided in the Plan or Confirmation Order, including any Cause of Action that is expressly waived, relinquished, exculpated, released, settled, or compromised under the Plan or Confirmation Order (including, without limitation, pursuant to the Debtor/Estate Release), (i) in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors hold or may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust or Direct Claims Trust, as applicable; (ii) after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action the Estates hold or may hold against any Entity constituting Liquidating Trust Assets or Direct Claims Trust Assets, in accordance with the terms of the Plan, the Liquidating Trust Agreement, or the Direct Claims Trust Agreement, as applicable, and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases; and (iii) Causes of Action and recoveries therefrom shall remain the sole property of the Liquidating Trust or the Direct Claims Trust, as applicable, and holders of Claims shall have no direct right or interest in to any such Causes of Action or recoveries.

(b)    Preservation of All Causes of Action Not Expressly Settled or Released.

Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan (including, without limitation, pursuant to the Debtor/Estate Release) and/or or any Final Order (including the Confirmation Order), the Debtors and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Debtors or the Liquidating Trustee, as applicable (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or

-58-

circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order).  In addition, the Debtors and Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which a Debtor is a defendant or interested party against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, any Entity to which the Debtors have incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtors or a transfer of money or property of the Debtors, or that has received services from the Debtors or a transfer or money or property of the Debtors, or that has transacted business with the Debtors, or that has leased property from the Debtors, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Liquidating Trustee have objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent, or unliquidated; or (vi) the Debtors have identified any potential claim or Cause of Action against such Entity herein.

15.6    No Discharge.

Nothing contained in the Combined Plan and Disclosure Statement shall be deemed to constitute a discharge of the Debtors under section 1141(d)(3) of the Bankruptcy Code.

## SECTION 16
## CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES

16.1    Certain Risk Factors to be Considered.

THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW.  HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT.   THESE FACTORS SHOULD NOT, HOWEVER, BE

REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION.

(a)     The Combined Plan and Disclosure Statement May Not Be Accepted.

The Debtors and Committee can make no assurances that the requisite acceptances of the Combined Plan and Disclosure Statement will be received, and the Debtors may need to obtain acceptances of an alternative plan for the Debtors, or otherwise, that may not have the support of the creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.  There can be no assurance that the terms of any alternative arrangement or plan would be similar to or as favorable to creditors as those proposed in the Combined Plan and Disclosure Statement.

(b)     The Combined Plan and Disclosure Statement May Not Be Confirmed.

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Plan and Disclosure Statement.  Even if the Bankruptcy Court determined that the Combined Plan and Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Combined Plan and Disclosure Statement if it finds that any of the statutory requirements for confirmation had not been met.  As is described in greater detail herein, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan.  While, as more fully set forth herein, the Debtors believe that the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Bankruptcy Court will agree.

Section 1129(a) of the Bankruptcy Code requires that, except to the extent that the holder of an Administrative Claim agrees to a different treatment of such claim, holders of Administrative Claims receive on account of such claim cash equal to the allowed amount of such claim (i.e., "with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such will receive on account of such claim cash equal to the allowed amount of such claim.").  In these chapter 11 cases, the requests for Administrative Claims filed by the Administrative Expense Bar Date exceed the Debtors' estimate of Allowed Administrative Claims and are the subject of ongoing review and reconciliation by the Debtors.  The Debtors will seek to reach an agreement on those Administrative Claims and/or object to those requests if appropriate; however, there is no guarantee that holders of Administrative Claims will agree to a different treatment and/or the Court will sustain each or all of the objection(s) filed by the Debtors, if any.

Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes.  If the Combined Plan and Disclosure Statement is not confirmed, it is unclear what distributions holders of Claims ultimately would receive with respect to their Claims in a subsequent plan of liquidation.  If an alternative could not be agreed to, it is possible that the Debtors would have to liquidate their remaining assets in chapter 7, in which case it is likely that the holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Combined Plan and Disclosure Statement.

(c)     Distributions to Holders of Allowed Claims Under the Combined Plan and
Disclosure Statement May be Inconsistent with Projections.

Projected Distributions are based upon good faith estimates of the total amount of Claims
ultimately Allowed and the funds available for Distribution.  There can be no assurance that the
estimated Claim amounts set forth in the Combined Plan and Disclosure Statement are correct.
These estimated amounts are based on certain assumptions with respect to a variety of factors.
Both the actual amount of Allowed Claims in a particular Class and the funds available for
distribution to such Class may differ from the Debtors' estimates.  If the total amount of Allowed
Claims in a Class is higher than the Debtors' estimates, or the funds available for distribution to
such Class are lower than the Debtors' estimates, the percentage recovery to holders of Allowed
Claims in such Class will be less than projected.

(d)     Estimated Recoveries for General Unsecured Claims are Difficult to Predict
and May be Inconsistent with Projections.

The estimated recoveries for General Unsecured Claims are derived from the Debtors'
books and records and related financial data. While the Debtors have undertaken reasonable
diligence to ensure the accuracy of these estimates, such figures are inherently based on numerous
assumptions and remain subject to material revision. In addition, a material portion of such
recoveries is expected to be derived from potential litigation claims, the value and outcome of
which are inherently uncertain and difficult to predict. Subsequent developments, including
adjustments to the Debtors' books and records or changes in circumstances, may significantly alter
projected recoveries. These estimates are provided for illustrative purposes only and do not
constitute, and should not be construed as, a prediction, representation, or guarantee of actual
recoveries to any Class.

(e)     Objections to Classification of Claims.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity
interest in a particular class only if such claim or equity interest is substantially similar to the other
claims or equity interests in such class.  As is described in greater detail herein, the Debtors and
Committee believe that the classification of Claims and Interests under the Combined Plan and
Disclosure Statement complies with the requirements set forth in the Bankruptcy Code.
Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

To the extent that the Bankruptcy Court finds that a different classification is required for
the Combined Plan and Disclosure Statement to be confirmed, the Debtors and Committee would
seek to (i) modify the Combined Plan and Disclosure Statement to provide for whatever
classification might be required for Confirmation and (ii) use the acceptances received from any
holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class
or Classes of which such holder ultimately is deemed to be a member.  Any such reclassification
of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could
adversely affect the Class in which such holder was initially a member, or any other Class under
the Combined Plan and Disclosure Statement, by changing the composition of such Class and the
vote required for approval of the Combined Plan and Disclosure Statement.  There can be no
assurance that the Bankruptcy Court, after finding that a classification was inappropriate and

requiring a reclassification, would approve the Combined Plan and Disclosure Statement based upon such reclassification. Except to the extent that modification of classification in the Combined Plan and Disclosure Statement requires re-solicitation, the Debtors and Committee will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Combined Plan and Disclosure Statement by any holder of Claims pursuant to this solicitation will constitute a consent to the Combined Plan and Disclosure Statement's treatment of such holder, regardless of the Class as to which such holder is ultimately deemed to be a member. The Debtors and Committee believe that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Combined Plan and Disclosure Statement only when a modification adversely affects the treatment of the Claim or Interest of any holder.

The Bankruptcy Code also requires that the Combined Plan and Disclosure Statement provide the same treatment for each Claim or Interest of a particular Class unless the holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtors and Committee believe that the Combined Plan and Disclosure Statement complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Combined Plan and Disclosure Statement does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Combined Plan and Disclosure Statement. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Combined Plan and Disclosure Statement and could increase the risk that the Combined Plan and Disclosure Statement will not be consummated.

      (f)    <u>Failure to Consummate the Combined Plan and Disclosure Statement.</u>

Although the Debtors and Committee believe that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

      (g)    <u>The Releases May Not Be Approved.</u>

There can be no assurance that the releases provided herein will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan that differs from the Combined Plan and Disclosure Statement or the Plan not being confirmed.

      (h)    <u>Reductions to Estimated Creditor Recoveries.</u>

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially. The amount of cash realized from the monetization of the Debtors' remaining assets could be less than anticipated, which could cause the amount of distributions to creditors to be reduced substantially.

16.2   <u>Tax Treatment</u>.

      (a)    <u>Tax Treatment of Liquidating Trust</u>

It is intended that that the Liquidating Trust shall qualify as a "liquidating trust" for U.S. federal income tax purposes. Accordingly, (i) the terms of the Liquidating Trust shall be set forth in the Liquidating Trust Agreement; (ii) the Liquidating Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code to the Holders of Claims receiving beneficial interests in the Liquidating Trust (whether Allowed on or after the Effective Date), consistent with the terms of the Plan; (iii) the Holders of Allowed General Unsecured Claims shall be treated as the grantors and deemed owners of the Liquidating Trust; (iv) the primary purpose of the Liquidating Trust shall be the liquidation and distribution of the Liquidating Trust Assets in accordance with Treas. Reg. § 301.7701-4(d), including the resolution of Allowed Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidating Trust's liquidating purpose; (v) all parties shall report consistently with such treatment as a liquidating trust, including treating the transfer of the Liquidating Trust Assets to the Liquidating Trust as (A) the deemed transfer of the Liquidating Trust Assets (subject to applicable liabilities and obligations) by the Debtor to the Liquidating Trust Beneficiaries, followed by (B) the deemed transfer of such assets by the Liquidating Trust Beneficiaries to the Liquidating Trust in exchange for beneficial interests therein; (vi) all parties shall report consistently with the valuation of the Assets transferred to the Liquidating Trust as determined by the Liquidating Trustee; (vii) the Liquidating Trustee shall be responsible for filing returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a); (viii) the Liquidating Trustee shall annually provide to each Liquidating Trust Beneficiary a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes; and (ix) all items of income, deductions, and credit loss of the Liquidating Trust shall be allocated for federal income tax purposes to the Liquidating Trust Beneficiaries in accordance with their relative ownership of Liquidating Trust interests.

In general, a beneficiary of the Liquidating Trust will recognize gain or loss with respect to its Allowed General Unsecured Claim in an amount equal to the difference between (i) the fair market value of its undivided interest in the Liquidating Trust Assets consistent with its economic rights in the Liquidating Trust received in respect of its Claim and (ii) the adjusted tax basis of the Allowed General Unsecured Claim exchanged therefor. Any gain or loss recognized with respect to an Allowed General Unsecured Claim may be classified as ordinary income unless the Claim disposed of is a capital asset in the hands of the Holder and has been held for more than one year, in which case such gain or loss may be treated as long-term capital gain or loss.

A Holder's aggregate tax basis in its undivided interest in the Liquidating Trust Assets (other than those allocable to Disputed Claims) will generally equal the fair market value of such interest, and a Holder's holding period in such assets generally will begin the day following establishment of the Liquidating Trust.

The U.S. federal income tax obligations of a holder with respect to its Liquidating Trust interests are not dependent on the Liquidating Trust distributing any cash or other proceeds. Thus, a holder may incur a U.S. federal income tax liability with respect to its allocable share of the Liquidating Trust's income even if the Liquidating Trust does not make a concurrent distribution to the holder. In general, other than in respect of cash retained on account of Disputed Claims and

-63-

distributions resulting from undeliverable distributions, a distribution of cash by the Liquidating Trust will not be separately taxable to a holder of Liquidating Trust interest as the beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the cash was earned or received by the Liquidating Trust).

The Liquidating Trustee will comply with all applicable governmental withholding requirements.  Thus in the case of any non-U.S. Holders, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is subject to a lower treaty rate or is otherwise excluded from withholding).  Non-U.S. Holders are urged to consult their tax advisors with respect to the U.S. federal income tax consequences of the Plan, including holding Liquidating Trust Interests.

Holders of Liquidating Trust interests are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of cash originally retained by the Liquidating Trust on account of Disputed Claims.

(b)      Tax Treatment of Direct Claims Trust

The Direct Claims Trust shall be established as a "grantor trust" for federal income tax purposes, pursuant to sections 671 through 679 of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business. The Direct Claims Trust shall be governed by the Plan and the Direct Claims Trust Agreement. The Direct Claims Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, without limitation, any and all provisions necessary to ensure the continued treatment of the Direct Claims Trust as a grantor trust and the Direct Claims Trust Beneficiaries as the grantors and owners thereof for federal income tax purposes. The Direct Claims Trustee shall file returns for the Direct Claims Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with this Plan.

The U.S. federal income tax obligations of a holder with respect to its Direct Claims Trust interests are not dependent on the Direct Claims Trust distributing any cash or other proceeds. Thus, a holder may incur a U.S. federal income tax liability with respect to its allocable share of the Direct Claims Trust's income even if the Direct Claims Trust does not make a concurrent distribution to the holder. In general, a distribution of cash by the Direct Claims Trust will not be separately taxable to a holder of Direct Claims Trust interest as the beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the cash was earned or received by the Direct Claims Trust).

(c)      Tax Treatment of WARN Act Claim Reserve Account

The WARN Act Claim Reserve Account is intended to be treated as a qualified settlement fund for U.S. federal income tax purposes, and the remainder of this discussion assumes that this treatment is respected.  All parties will be required to treat the WARN Act Claim Reserve Account as a qualified settlement fund for all applicable tax reporting purposes.

The WARN Act Claim Reserve Account will be subject to U.S. federal income tax on its modified gross income, if any.  The WARN Act Claim Reserve Account's modified gross income

-64-

means its gross income less certain allowed deductions, including but not limited to administration fees, expenses for accounting and legal services, claims processing expenses and other expenses. The WARN Act Claims Administrator, as administrator, will be required to file tax returns on behalf of the WARN Act Claim Reserve Account and will be responsible for causing the WARN Act Claim Reserve Account to pay all taxes, if any, imposed on its modified gross income.

The WARN Act Claims Administrator will ensure that any distributions made in respect of Claims that are in the nature of compensation for services are subject to appropriate payroll withholding and reporting, and that any applicable payroll taxes associated therewith (including employer-side and employee-side payroll taxes) are properly remitted.  Any such taxes shall be payable solely out of the assets held in the WARN Act Claim Reserve Account.  Holders of such Claims are urged to consult their tax advisors with respect to the U.S. federal, state and local income tax consequences of this Plan.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE COMPLEX.   THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

16.3    Alternatives to the Combined Plan and Disclosure Statement.

If the requisite acceptances are not received or the Combined Plan and Disclosure Statement is not confirmed and consummated, the theoretical alternatives to the Combined Plan and Disclosure Statement would be (a) formulation of an alternative chapter 11 plan, (b) conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or (c) dismissal of the Chapter 11 Cases.  As discussed below, the Debtors and Committee do not believe that any of these alternatives, even if viable, would afford holders of Claims or Interests a greater recovery than what is provided by the Combined Plan and Disclosure Statement.

If the Combined Plan and Disclosure Statement is not confirmed, then the Debtors, Committee or any other party in interest could attempt to formulate a different plan.  The additional costs, including, among other amounts, additional professional fees, all of which would constitute Administrative Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to chapter 7.  At this time, the Debtors and Committee do not believe that there are viable alternative plans available to the Debtors.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate and distribute the Debtors' remaining assets in accordance with the priorities established by the Bankruptcy Code.  As discussed above and indicated in the Liquidation Analysis, the Debtors and Committee believe that the Combined Plan

-65-

and Disclosure Statement provides a better outcome for holders of Claims than a chapter 7 liquidation would provide.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases also could be dismissed. Among other effects, dismissal would result in the termination of the automatic stay, thus permitting creditors to assert state-law rights and remedies against the Debtors and their assets, likely to the detriment of other creditors. While it is impossible to predict precisely what would happen in the event the Chapter 11 Cases are dismissed, it is unlikely that dismissal would result in a ratable distribution of the Debtors' assets among creditors as provided in the Combined Plan and Disclosure Statement. Thus, the vast majority of creditors could expect to receive less in the dismissal scenario than they would receive under the Combined Plan and Disclosure Statement.

## SECTION 17
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

17.1    <u>Conditions to Confirmation of the Plan</u>.

Confirmation of the Combined Plan and Disclosure Statement is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors in consultation with the Committee: (i) the Bankruptcy Court shall have approved a disclosure statement to the Plan, which may be this Combined Plan and Disclosure Statement, in form and substance acceptable to the Debtors and the Committee, (ii) the Debtors shall have determined that there will be sufficient Cash on the Effective Date to pay (or with respect to Disputed Claims to reserve for as required pursuant to the Plan) Allowed Administrative Claims, Priority Non-Tax Claims, and Priority Tax Claims in full (or in such lesser amount as may be agreed to by the Claimant), (iii) the Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtors and the Committee in form and substance, and (iv) the final version of the schedules, documents, and exhibits contained in the Plan Supplement, and all other schedules, documents, supplements and exhibits to the Combined Plan and Disclosure Statement, shall be in form and substance acceptable to the Debtors and the Committee.

17.2    <u>Conditions to the Effective Date</u>.

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors in consultation with the Committee: (i) a Confirmation Order in form and substance acceptable to the Debtors and the Committee shall have been entered by the Bankruptcy Court and become a Final Order which is not subject to any stay of effectiveness; (ii) the Liquidating Trust and the Direct Claims Trust shall have been created pursuant to the terms of the Plan, the Liquidating Trustee shall have been appointed by order of the Bankruptcy Court (which may be the Confirmation Order), and the Liquidating Trust Agreement and the Direct Claims Trust Agreement shall have been executed by the Liquidating Trustee; (iii) the Initial Trust Cash shall have been fully funded and released to the Liquidating Trustee upon the Effective Date; and (iv) all actions, documents,

-66-

and agreements necessary to implement and consummate the Plan shall have been effected or executed and binding on all parties thereto.

      17.3   <u>Waiver of Conditions Precedent</u>.

      To the fullest extent permitted by law, the conditions to the Effective Date set forth herein may be waived or modified in whole or in part at any time in writing by the Debtors, in consultation with the Committee, without leave from or an order of the Court.

**SECTION 18**
**RETENTION OF JURISDICTION**

      From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

      (a)    To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

      (b)    To administer the Plan, the Liquidating Trust, the Direct Claims Trust, the Liquidating Trust Assets, the Direct Claims Trust Assets, and the proceeds thereof;

      (c)    To estimate or liquidate any Disputed Claims;

      (d)    To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation; provided, however, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

      (e)    To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

      (f)    To hear and determine any and all applications by Professionals for an award of Professional Fees;

      (g)    To enable the Liquidating Trustee to commence and prosecute any Litigation which may be brought after the Effective Date;

      (h)    To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

      (i)    To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

      (j)    To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in

-67-

the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(k)     To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

(l)     To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable;

(m)     To enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

(n)     To enforce, and hear and determine all disputes involving, the injunction, release, and exculpation provisions provided in Section 15; and

(o)     To close the Chapter 11 Cases when administration of the Liquidating Trust, the Direct Claims Trust, and the Chapter 11 Cases has been completed.

## SECTION 19
## MISCELLANEOUS PROVISIONS

19.1    <u>Revocation of the Combined Plan and Disclosure Statement</u>.

The Debtors reserve the right to revoke and withdraw the Combined Plan and Disclosure Statement at any time on or before the Confirmation Date.  If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

19.2    <u>Severability of Plan Provisions</u>.

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

19.3    Exhibits.

All exhibits to the Combined Plan and Disclosure Statement and Plan Supplement are, by this reference, hereby incorporated herein.  The Debtors reserve the right to make non-substantive changes and corrections to such exhibits in advance of the Confirmation Hearing.  If any exhibits are changed or corrected, the replacement exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

19.4    Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

Counsel for Debtors:

Dentons US LLP
601 S. Figueroa Street, #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Attn:    Tania. M. Moyron, Esq.
         Van C. Durrer, II, Esq.
         tania.moyron@dentons.com
         van.durrer@dentons.com

         -and-

Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
United States
Attn:    John D. Beck
         john.beck@dentons.com
-and-

Togut, Segal & Segal LLP
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone: 302-652-4100
Attn:    Frank A. Oswald, Esq.
         frankoswald@teamtogut.com

Counsel for the Committee

Brown Rudnick LLP
Seven Times Square

-69-

New York, NY 10036
Telephone: (212) 209-10036
Attn:    Robert J. Stark, Esq.
            Kenneth J. Aulet, Esq.
            Ben S. Silverberg, Esq.
            rstark@brownrudnick.com
            kaulet@brownrudnick.com
            bsilverberg@brownrudnick.com
            -and-

Genova Burns LLC
100 Allen Rd.
Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 533-0777
Attn:    Daniel M. Stolz
            Donald W. Clarke
            dstolz@genovaburns.com
            dclarke@genovaburns.com

Liquidating Trustee:

[●]

19.5    Reservation of Rights.

Neither the filing of the Combined Plan and Disclosure Statement nor any statement or provision contained in the Combined Plan and Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Combined Plan and Disclosure Statement nor any statement contained in the Combined Plan and Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Cases involving the Debtors, except with respect to Confirmation of the Plan.

19.6    Defects, Omissions and Amendments.

The Debtors may, with the approval of the Bankruptcy Court and without notice to all holders of Claims or Interests, insofar as it does not materially and adversely affect holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan.  The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely

affect the interests of holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtors have complied with section 1125 of the Bankruptcy Code and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under section 1129 of the Bankruptcy Code.

### 19.7   Filing of Additional Documents.

The Debtors shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 19.8   Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

### 19.9   Setoffs and Recoupments.

The Debtors, the Liquidating Trust, and the Direct Claims Trust may, but shall not be required to, set off against or recoup from the payments to be made pursuant to the Plan in respect of a Claim, any claim of any nature whatsoever that the Debtors, the Liquidating Trust, the Direct Claims Trust, or the Estates, as applicable, may have against the holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtors, the Liquidating Trust, the Direct Claims Trust, or the Estates, against such holder.

### 19.10   Tax Exemption.

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the execution, delivery, or recording of an  instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, of the Debtors' property in implementation of or as contemplated by the Plan (including, without limitation, any subsequent transfer of property by the Liquidating Trust) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

19.11   Securities Exemption.

To the extent the Trust Interest is deemed or asserted to constitute securities, such Interest and the issuance and distribution thereof shall be exempt from Section 5 of the Securities Act, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, section 1145 of the Bankruptcy Code.

19.12   Implementation.

Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

19.13   Record Date.

To the extent a "Record Date" is required for implementation of the Plan, the record date shall be the voting record date established by the Bankruptcy Court in the Conditional Approval and Procedures Order.

19.14   Certain Actions.

By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of members, managers or other interest holders of the Debtors under the Plan, including, without limitation, (i) the distributions of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable corporation/limited liability company laws, without any requirement of further action by the members, managers or other interest holders of the Debtors, irrespective of whether the Confirmation Order specifically authorizes any such action.

Effective upon the Effective Date, the Debtors' formation documents shall each be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or as soon as practicable following the Effective Date, the Liquidating Trustee shall be authorized to cancel, annul, and extinguish all Interests.

19.15   Substantial Consummation.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

-72-

19.16    <u>Waiver of Fourteen-Day Stay</u>.

The Debtors and Committee request as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

19.17    <u>Governing Law</u>.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws thereof.

19.18    <u>Entire Agreement</u>.

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## SECTION 20
## RECOMMENDATION

The Debtors and Committee strongly recommend that all creditors receiving a Ballot vote in favor of the Plan.  The Debtors and Committee believe that the Plan is in the best interests of creditors.  The Plan as structured, among other things, allows creditors with Allowed Claims to participate in distributions believed to be in excess of those that would otherwise be available were the Chapter 11 Cases dismissed or converted under chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to creditors.  The Committee supports the Combined Plan and Disclosure Statement and strongly urges unsecured creditors to vote to accept the Combined Plan and Disclosure Statement.

FOR ALL THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE DEBTORS AND THE COMMITTEE BELIEVE THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES. THE DEBTORS AND THE COMMITTEE URGE ALL CREDITORS ENTITLED TO VOTE TO ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY WILL BE RECEIVED BY 4:00 P.M. EASTERN TIME ON NOVEMBER 18, 2025 AT 4:00 P.M.

Dated: October 15, 2025

Respectfully submitted,

POWIN, LLC AND ITS AFFILIATES AS
DEBTORS AND DEBTORS-IN-POSSESSION

*/s/ Gerard Uzzi*
Gerard Uzzi
Chief Restructuring Officer

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF POWIN, LLC AND ITS
AFFILIATES AS DEBTORS AND DEBTORS-IN-
POSSESSION

*/s/ Carl Kim*
Carl Kim on behalf of ACE Engineering & Co. Ltd.,
solely in its capacity as Chair of the Official
Committee of Unsecured Creditors of Powin, LLC,
et al.

## EXHIBIT B

**Final Form of Liquidating Trust Agreement**

**POWIN LIQUIDATING TRUST**

US_ACTIVE\131662214

**POWIN LIQUIDATING TRUST AGREEMENT**

**Dated as of [●], 2025**

*Pursuant to the Joint Combined Disclosure Statement and*

*Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof*

*and the Official Committee of Unsecured Creditors*

*Dated October 15, 2025*

# TABLE OF CONTENTS

**Page**

ARTICLE I AGREEMENT OF TRUST ...................................................................................3

    1.1        Creation and Name ...............................................................................3

    1.2        Purpose ..................................................................................................3

    1.3        Transfer of Assets ................................................................................4

    1.4        Acceptance of Assets and Assumption of Liabilities .....................6

ARTICLE II POWERS, TRUST ADMINISTRATION, AND REPORTING ..............................7

    2.1        Powers ...................................................................................................7

    2.2        General Administration ......................................................................10

    2.3        Reporting ............................................................................................12

ARTICLE III ACCOUNTS, INVESTMENTS, AND PAYMENTS ...........................................13

    3.1        Accounts .............................................................................................13

    3.2        Investment Guidelines ......................................................................14

    3.3        Payment of Operating Expenses.......................................................14

    3.4        Distributions to Liquidating Trust Beneficiaries.............................15

ARTICLE IV TRUSTEE; DELAWARE TRUSTEE ................................................................18

    4.1        Number ...............................................................................................18

    4.2        Term of Service ..................................................................................18

    4.3        Compensation and Expenses of the Trustee.................................20

    4.4        Standard of Care; Exculpation .......................................................20

i

4.5        Protective Provisions ...............................................................................222

4.6        Indemnification ...........................................................................................23

4.7        Trustee Independence ...................................................................................25

4.8        No Bond ........................................................................................................25

4.9        Burden of Proof ............................................................................................25

4.10       Reliance by the Trustee ................................................................................26

4.11       Books and Records .......................................................................................27

4.12       Delaware Trustee ..........................................................................................27

4.13       Trust Meetings...............................................................................................32

4.14       Matters Requiring Consultation with TOC ..................................................34

4.15       Matters Requiring Consent of TOC ..............................................................34

4.16       Trustee's and TOC's Employment of Professionals. ...................................35

ARTICLE V TAX MATTERS.................................................................................................37

5.1        Treatment of Settlement Consideration Transfer .........................................37

5.2        Income Tax Status ........................................................................................37

5.3        Tax Returns ...................................................................................................38

5.4        Withholding of Taxes and Reporting Related to Liquidating Trust

           Operations .....................................................................................................39

5.5        Valuation .......................................................................................................40

5.6        Expedited Determination of Taxes ...............................................................41

5.7        WARN Act Claim Reserve ...........................................................................41

ii

ARTICLE VI LIQUIDATING TRUST OVERSIGHT COMMITTEE ........................................43

    6.1        Members; Action by Members. ....................................................................43

    6.2        Duties...........................................................................................................44

    6.3        TOC Information Rights; Reports ................................................................44

    6.4        [Reserved.] .................................................................................................45

    6.5        Term of Office............................................................................................454

    6.6        Appointment of Successor...........................................................................46

    6.7        Compensation and Expenses of the TOC....................................................46

    6.8        Procedures for Consultation with and Obtaining the Consent of the TOC. 47

ARTICLE VII GENERAL PROVISIONS .........................................................................49

    7.1        Irrevocability ..............................................................................................49

    7.2        Term; Termination ......................................................................................49

    7.3        Amendments................................................................................................50

    7.4        Severability.................................................................................................51

    7.5        Notices ........................................................................................................51

    7.6        Successors and Assigns ..............................................................................54

    7.7        Limitation on Liquidating Trust Interests for Securities Laws Purposes....54

    7.8        Exemption from Registration .....................................................................554

    7.9        Entire Agreement; No Waiver .....................................................................55

    7.10      Headings .....................................................................................................56

    7.11      Governing Law............................................................................................56

    7.12      Dispute Resolution .....................................................................................57

    7.13      Waiver of Conflicts ....................................................................................59

7.14        Effectiveness ........................................................................................59

7.15        Counterpart Signatures ............................................................................598

7.16        Waiver of Trial by Jury ...........................................................................609

EXHIBIT 1 DEBTORS WIND-DOWN ADMINISTRATION ....................................................63

EXHIBIT 2 CERTIFICATE OF TRUST OF THE POWIN LIQUIDATING TRUST ................65

EXHIBIT 3 INVESTMENT GUIDELINES .................................................................67

iv

## POWIN LIQUIDATING TRUST AGREEMENT

This Powin Liquidating Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into pursuant to the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates thereof and the Official Committee of Unsecured Creditors Docket No. [939] (as may be further amended or modified, the "**Plan**"),[1] in Case No. 25-16137 (MBK) in the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**") by the Trustee identified on the signature pages hereof (the "**Trustee**") and [_____] (the "**Delaware Trustee**"), and the members of the Oversight Committee who are the individuals further identified on the signature page hereto (together with any successors serving in such capacity, the "**TOC**" and, together with the Trustee and the Delaware Trustee, the "**Parties**").

## <u>RECITALS</u>

**WHEREAS**, the Plan contemplates the creation of the Powin Liquidating Trust (the "**Liquidating Trust**");

**WHEREAS**, the Confirmation Order has been entered by the Bankruptcy Court;

**WHEREAS**, pursuant to the Plan, the Liquidating Trust is established to (i) receive and liquidate, sell, or dispose of the Liquidating Trust Assets as set forth in the Plan; (ii) cause all net proceeds of the Liquidating Trust Assets, including proceeds of Causes of Action on behalf of the Liquidating Trust, to be deposited into the Liquidating Trust; (iii) initiate actions to resolve any

---

[1]    All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

remaining issues regarding the allowance and payment of Claims including, as necessary, initiation and/or participation in proceedings before the Court; (iv) to take such actions as are necessary or useful to maximize the recoveries to holders of Allowed General Unsecured Claims (the "**Liquidating Trust Beneficiaries**" and the interests in the Liquidating Trust held by such Liquidating Trust Beneficiaries, the "**Liquidating Trust Interests**"); (v) effectuate the wind-down of the Debtors as set forth in the Plan; and (vi) in its capacity as Distribution Agent, to make the payments and distributions ("**Liquidating Trust Distributions**") to Holders of Allowed Claims, including Holders of Allowed Administrative, Priority, and General Unsecured Claims in accordance with the Plan, the Confirmation Order and this Trust Agreement (the "**Governing Documents**") and otherwise implement the Plan;

**WHEREAS**, the Trustee shall administer the Liquidating Trust in accordance with the terms of the Governing Documents;

**WHEREAS**, pursuant to the Plan, the Liquidating Trust is intended to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, and a "grantor trust" for United States federal income tax purposes, pursuant to Sections 671-679 of the Internal Revenue Code (the "**IRC**"), with the Liquidating Trust Beneficiaries treated as the grantors of the Liquidating Trust, except with respect to any Disputed Ownership Fund pursuant to Section 5.3(c); and

**WHEREAS**, pursuant to the Plan, the Trustee shall also serve in the capacity of Wind-Down Officer of the Debtors and their affiliated entities in accordance with the terms of the Confirmation Order, the Plan, and the terms set forth in **<u>Exhibit 1</u>**.

**NOW, THEREFORE,** it is hereby agreed as follows:

## ARTICLE I

## AGREEMENT OF TRUST

1.1    **Creation and Name**

There is hereby created a trust known as the "Powin Liquidating Trust." The Trustee of the Liquidating Trust may transact the business and affairs of the Liquidating Trust in the name of the Liquidating Trust, and references herein to the Liquidating Trust shall include the Trustee acting on behalf of the Liquidating Trust. It is the intention of the Parties that the Liquidating Trust qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations and that this Trust Agreement constitute the governing instrument of the Liquidating Trust, except with respect to any Disputed Ownership Fund. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Exhibit 2**.

1.2    **Purpose**

The purposes of the Liquidating Trust are to:

(a)    receive and liquidate the Liquidating Trust Assets pursuant to the terms of the Plan and the Confirmation Order;

(b)    pursue, and if applicable, resolve (by way of settlement, judgment, or otherwise) the Causes of Action, in accordance with the Plan;

3

(c)     hold, manage, protect and invest the Liquidating Trust Assets, together with any income or gain earned thereon and proceeds derived therefrom (collectively, the "**Trust Assets**"), and monetize any non-liquid Trust Assets, in accordance with the terms of the Governing Documents for the benefit of the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Liquidating Trust;

(d)     make distributions of Trust Assets to Liquidating Trust Beneficiaries in accordance with and subject to the terms of this Trust Agreement and the Plan;

(e)     qualify at all times as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund; and

(f)     engage in any lawful activity that is appropriate and in furtherance of the purposes of the Liquidating Trust to the extent consistent with the Governing Documents.

1.3     **Transfer of Assets**

Pursuant to, and in accordance with Article 13.3(c) of the Plan, the Liquidating Trust has received the Liquidating Trust Assets to fund the Liquidating Trust. The Liquidating Trust Assets and any other assets to be transferred to the Liquidating Trust under the Plan will be transferred to the Liquidating Trust free and clear of any liens or other claims by the Debtors, any creditor, or other entity.

Notwithstanding anything to the contrary herein or in the Plan, the Liquidating Trust shall waive, and shall not pursue or seek to monetize, any and all preference actions, including which may be asserted pursuant to section 547 of the Bankruptcy Code, against any Contributing Direct

4

Claim Holder. For the avoidance of doubt, all preference actions against entities that are not a Contributing Direct Claim Holder shall not be waived.

The Direct Claims Trust and this Liquidating Trust have a common, joint interest in the Causes of Action. Pursuant to the terms of this Trust Agreement, the Trustee is authorized to utilize any privileged documents or communications in his or her capacity as Direct Claims Trustee, and the Trustee is authorized to utilize any privileged documents belonging to the Direct Claims Trust in his or her capacity as Trustee, in each case without any prior notification to the Contributing Direct Claim Holders, and the Trustee is authorized to receive and utilize any such privileged documents or communications in his or her discretion, in connection with the Causes of Action.

For purposes of this Section 1.3, "privilege" means attorney-client privilege or work product protection (or both as the case may be) as those terms are defined in Federal Rule of Evidence 502(g) or any other privilege or immunity available under any applicable law. All communications between the Trustee and the TOC shall be deemed privileged and confidential communications, it being acknowledged that the subject matter of such communications is with respect to common litigation interests. Such communications shall not be disclosed to any third parties except as may be required by an order of a court of competent jurisdiction upon prior notice to the Trustee or to the extent permitted under the cooperation provisions of this Section 1.3; provided, however, that the Trustee may reference or utilize such communications in a complaint or other court pleading; provided, further, that the Trustee takes customary precautions to preserve the confidentiality of such documents including but not limited to filing such complaints or other court pleadings under seal or redact references to such documents and/or communications, as appropriate, unless a court of competent jurisdiction orders otherwise. For the avoidance of doubt,

5

the TOC, each member serving on the TOC, and each Liquidating Trust Beneficiary shall have no right, title or interest in and/or to any privilege or immunity that the Contributing Direct Claim Holders transfer, assign, and deliver to the Direct Claims Trust and the Trustee in his or her capacity as the Direct Claims Trustee, and such privilege and immunity shall only be the Direct Claims Trust's and Trustee's in its capacity as the Direct Claims Trustee to preserve, assert or waive.

1.4     **Acceptance of Assets and Assumption of Liabilities**

(a)     In furtherance of the purposes of the Liquidating Trust, the Liquidating Trust hereby expressly accepts the transfer to the Liquidating Trust of the Liquidating Trust Assets in the time and manner as, and subject to the terms, contemplated in the Plan.

(b)     In furtherance of the purposes of the Liquidating Trust, except as otherwise provided in this Trust Agreement or the Plan, the Liquidating Trust shall have and retain any and all rights and defenses the Debtors had with respect to any Cause of Action immediately before the Effective Date to the extent necessary to administer such Cause of Action in accordance with this Trust Agreement and the Plan.

(c)     Notwithstanding anything to the contrary herein, no provision herein shall be construed or implemented in a manner that would cause the Liquidating Trust to fail to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations.

(d)     In this Trust Agreement, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

US_ACTIVE\131662214

(e)     The Bankruptcy Court shall have continuing jurisdiction over the Liquidating Trust, provided, however, that the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the Liquidating Trust.

## ARTICLE II

## POWERS, TRUST ADMINISTRATION, AND REPORTING

2.1     **Powers**

(a)     The Trustee is and shall act as a fiduciary to the Liquidating Trust in accordance with the provisions of the Governing Documents. The Trustee shall, at all times, administer the Liquidating Trust in accordance with the purposes set forth in Section 1.2 above and the Plan. Subject to the limitations set forth in the Governing Documents, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfil the purposes of the Liquidating Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2 below, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)     Except as required by applicable law or as otherwise specified herein or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)     Without limiting the generality of Section 2.1(a) above, and except as limited herein, including as set forth in Sections 4.14 and 4.15 of this Trust Agreement, or by the Plan, the Trustee shall have the power to:

7

(i)    receive and hold the Liquidating Trust Assets and exercise all rights with respect thereto;

(ii)    invest the monies held from time to time by the Liquidating Trust in accordance with the Investment Guidelines pursuant to Section 3.2 below;

(iii)    incur expenses and other obligations of the Liquidating Trust necessary to carry out the purposes of the Liquidating Trust in accordance with this Trust Agreement and the Plan, and pay or satisfy such obligations from the Liquidating Trust Assets as set forth in this Trust Agreement and the Plan;

(iv)    to borrow such sums of money or enter into litigation funding agreements, at any time and from time to time, for such periods of time, upon such terms and conditions, from such Persons, for such purposes as the Trustee deems reasonable;

(v)    establish such funds, reserves, and accounts within the Liquidating Trust, as the Trustee deems useful in carrying out the purposes of the Liquidating Trust;

(vi)    investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtors held against any Entity;

(vii)    establish, supervise, and administer the Liquidating Trust and make distributions to Liquidating Trust Beneficiaries pursuant to the terms of Governing Documents;

(viii)    appoint such officers and retain such consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Liquidating Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her

8

discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(ix)    pay reasonable compensation from the Liquidating Trust Assets for any of the Liquidating Trust's consultants, advisors, independent contractors, experts, and agents for legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Liquidating Trust requires, as well as the fees and expenses of the TOC and TOC Professionals, in each case, subject to the procedures set forth herein;

(x)    pay reasonable compensation from the Liquidating Trust Assets for the Trustee, the Delaware Trustee, consultants, advisors, independent contractors, experts and agents, and reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder, in each case, subject to the procedures set forth herein;

(xi)    enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the Liquidating Trust, provided such arrangements are not material and do not conflict with any other provision of this Trust Agreement or the Plan;

(xii)    in accordance with Section 4.4 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 4.4 below), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, and

9

representatives. No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below;

(xiii)   commence and pursue viable Causes of Action in accordance with the Plan and this Trust Agreement;

(xiv)   object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; and

(xv)   exercise any and all other rights, and take any and all other actions as are permitted, of the Trustee in accordance with the terms of this Trust Agreement and the Plan.

(d)   The Liquidating Trust shall not have the power to guarantee any debt of other persons.

(e)   The Trustee shall endeavour to make timely distributions and not unduly prolong the duration of the Liquidating Trust.

(f)   The Trustee shall consult with the TOC on the matters set forth in Section 4.14 below. The Trustee shall obtain the consent of the TOC prior to taking action with respect to the matters set forth in Section 4.15 below, as and to the extent set forth therein.

2.2   **General Administration**

(a)   The Trustee shall act in accordance with the Governing Documents. In the event of a conflict between the terms of this Trust Agreement and the Plan, the terms of the Plan shall control. For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

10

US_ACTIVE\131662214

(b)      The Trustee shall (i) timely file such tax returns and pay any taxes imposed on the Liquidating Trust in accordance with Section 5.3, (ii) comply with all applicable reporting and withholding obligations in accordance with Section 5.4, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Liquidating Trust as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund, and (iv) take no action that could cause the Liquidating Trust to fail to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations, except with respect to any Disputed Ownership Fund or the WARN Act Claim Reserve.

(c)      Other than the obligations of the Trustee specifically set forth in the Governing Documents, the Trustee shall have no obligations of any kind or nature with respect to his or her position as such.

(d)      The Liquidating Trust and the Direct Claims Trust shall fully cooperate with each other with respect to their respective investigation and/or prosecution of any Causes of Action. As indicated in Article I, Section 1.3 of this Trust Agreement, cooperation shall include, but not be limited to, sharing and/or exchanging documents obtained in discovery and such other forms of mutual cooperation that, in the sole discretion of the Trustee is appropriate and in the best interest of the Liquidating Trust and the Direct Claims Trust. Such cooperation shall be subject to all available common interest protection and/or privileges applicable to the foregoing investigation and/or prosecution.

(e)      In the event that (i) the Liquidating Trust and the Direct Claims Trust prosecute related claims against a single defendant, (ii) a recovery is received related to such claims, and (iii)

11

the Trustee determines in his or her commercially reasonable judgment that there is no clear allocation of such recovery between claims brought by the Liquidating Trust and claims brought by the Direct Claims Trust, the Trustee shall allocate such recovery to the Liquidating Trust and the Direct Claims Trust in accordance with the Direct Claims Trust Agreement.

2.3    **Reporting**

(a)    The Trustee shall timely prepare, file and distribute such statements, reports and submissions to the extent required by applicable law.

(b)    The Trustee shall cause to be prepared and filed with the Bankruptcy Court, no later than thirty-one (31) days after June 30 and December 31 of each calendar year, a semi-annual report (the "**Semi-Annual Report**") regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it and other matters relating to the implementation of the Plan.

(c)    The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event no later than one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing special-purpose financial statements of the Liquidating Trust (including, without limitation, a special-purpose statement of assets, liabilities and net claimants' equity, a special-purpose statement of changes in net claimants' equity and a special-purpose statement of cash flows). The Trustee shall not be required to obtain an audit of the Annual Report by a firm of independent certified public accountants.  The Annual Report shall be made available to the Liquidating Trust Beneficiaries by means of actual notice, provided, however, the Trustee may post the Annual Report on a website maintained by

12

the Liquidating Trust in lieu of actual notice to each Liquidating Trust Beneficiary (unless otherwise required by law) (the "**Website**").

# ARTICLE III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

3.1    **Accounts**

(a)    The Trustee shall maintain one or more accounts (the "**Trust Accounts**") on behalf of the Liquidating Trust with one or more financial depository institutions (each a "**Financial Institution**").

(b)    The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to the considerations set forth in Section 3.1(a) above.

(c)    The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the Liquidating Trust Beneficiaries and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and, except as specifically designated as such in accordance with the provisions of Section 5.3(c) or 5.7 below, are not intended to be subject to separate entity tax treatment as a "disputed claims reserve," a "disputed ownership fund," or a "qualified settlement fund" within the meaning of the IRC or Treasury Regulations.

13

3.2    **Investment Guidelines**

(a)    The Trustee may invest the Trust Assets in accordance with the Investment Guidelines, attached hereto as **Exhibit 3** (the "**Investment Guidelines**").

(b)    In the event the Liquidating Trust holds any non-liquid assets, the Trustee shall own, protect, oversee, and monetize such non-liquid assets in accordance with the Governing Documents. This Section 3.2(b) is intended to modify the application to the Liquidating Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

(c)    Cash proceeds received by the Liquidating Trust in connection with its monetization of the non-liquid Trust Assets shall be invested in accordance with the Investment Guidelines until needed for the purposes of the Liquidating Trust as set forth in Section 1.2 above.

3.3    **Payment of Operating Expenses**

(a)    All operating expenses of the Liquidating Trust shall be paid from the Liquidating Trust as provided in the Plan. The Direct Claims Trust expenses will be advanced by the Liquidating Trust and will be repaid upon realization of a recovery of Direct Claims Trust Assets before distribution of any proceeds to the beneficiaries of the Direct Claims Trust or any cooperation payment to the Liquidating Trust. None of the Trustee, Delaware Trustee, the TOC, the Liquidating Trust Beneficiaries, nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any operating expense or other liability of the Liquidating Trust. Except as expressly set forth in the Plan, none of the Debtors, nor any of their officers, agents, advisors, professionals or employees shall be liable for the payment of any

14

operating expense or other liability of the Liquidating Trust, the Trustee, the Delaware Trustee or the TOC. To the extent that the Trustee determines that the Liquidating Trust is likely to incur a cash shortfall prior to the termination and winding up of the Liquidating Trust, the Trustee may determine to establish cash reserves from the corpus of the Liquidating Trust, which cash reserves shall be allocated equitably to the Liquidating Trust Beneficiaries by the Trustee in his or her judgment. Notwithstanding the foregoing, any fees and expenses attributable to the WARN Act Claim Reserve Account, as determined by the Liquidating Trustee in its reasonable discretion, shall be paid only out of assets held in the WARN Act Claim Reserve Account.

3.4    **Distributions to Liquidating Trust Beneficiaries**

(a)    The Trustee will make distributions to Liquidating Trust Beneficiaries in a fair, consistent and equitable manner in accordance with the Governing Documents.

(b)    Distributions to Liquidating Trust Beneficiaries shall be made, as determined by the Trustee in his or her discretion subject to the terms of the Plan, provided, however, the Liquidating Trust must distribute at least annually to the Liquidating Trust Beneficiaries its net income plus all net proceeds from the sale of assets, except that the Liquidating Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its assets or to meet claims and contingent liabilities (including disputed claims).  To the extent there is not sufficient Cash transferred to the Liquidating Trust on the Effective Date to satisfy the Distributions required to be made to the holders of Allowed Administrative and Priority Claims, holders of such Allowed Claims shall be considered Liquidating Trust Beneficiaries (including, but not limited to, for purposes of Articles III, V, and VII) until such time as the shortfall is satisfied

15

and their Allowed Claims are paid in full in accordance with the Plan. Thereafter, distributions should be made pro rata based on their Liquidating Trust Interests.

(c)     The Liquidating Trust may withhold or deduct from amounts distributable to any Person any and all amounts, determined in the Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement (including, without limitation, tax withholding in accordance with Section 5.4 below). Any Trust Assets which are undistributable in accordance with this Section 3.4 as of the termination of the Liquidating Trust shall (i) revert to the Liquidating Trust (notwithstanding any applicable foreign, federal or state escheat, abandoned, or unclaimed property laws to the contrary); (ii) the Allowed General Unsecured Claim with respect to such undistributable amount shall be released, settled, compromised and forever barred, and (iii) the undistributable amount shall be reallocated to the other Allowed General Unsecured Claims, in accordance with provisions of the Governing Documents.

(d)     The Trustee may retain a distribution agent for the effective administration and distribution of amounts payable to Liquidating Trust Beneficiaries; provided, however, that such distribution agent shall have no greater authority than, and shall be subject to the same restrictions as, the Trustee under this Trust Agreement.

(e)     Subject to Bankruptcy Rule 9010, any distribution to a Liquidating Trust Beneficiary shall be made: (1) at the addresses set forth on the respective proofs of Claim filed by such holders; (2) at the address set forth in any written notices of address changes delivered to the Trustee after the date of any related proof of Claim; or (3) at the address reflected in the schedules if no proof of Claim is filed with the Trustee and the Trustee has not received a written notice of a

16

change of address.  Except as set forth in the Plan, if any Liquidating Trust Distribution or other communication from the Liquidating Trust is returned as undeliverable, no further Liquidating Trust Distribution shall be made to such holder unless the Trustee is notified in writing of such holder's then current address.  Undeliverable Liquidating Trust Distributions shall remain in the possession of the Trustee until the earlier of (i) such time as a Liquidating Trust Distribution becomes deliverable or (ii) such undeliverable Liquidating Trust Distribution becomes unclaimed property pursuant to the provisions of the Plan and this Trust Agreement.  Except as required by law, the Trustee (or its duly authorized agent) shall have no obligation to locate any Liquidating Trust Beneficiary.

(f)     After final Liquidating Trust Distributions have been made in accordance with the Governing Documents, and adequate provision has been made for all final obligations of the Liquidating Trust, the Trustee shall have the authority to direct the remaining Trust Assets to a tax-exempt organization as selected by the Trustee in his or her discretion.

(g)     Checks issued to Liquidating Trust Beneficiaries shall be null and void if not negotiated within one hundred eighty (180) calendar days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Trustee by the Liquidating Trust Beneficiary to whom such check was originally issued.  Any Allowed General Unsecured Claim in respect of such a voided check shall be made within one hundred eighty (180) calendar days after the date of issuance of such check.  If no request is made as provided in the preceding sentence, the check shall be deemed undistributable and shall be subject to the provisions of Section 3.4(c).

17

(h)     Cash payments to foreign Liquidating Trust Beneficiaries may be made, at the option of the Trustee, in such funds and by such means as are necessary or customary in the foreign jurisdiction of such foreign holder.

(i)     The Trustee shall have the discretion to determine the timing of Liquidating Trust Distributions in the most efficient and cost-effective manner possible; provided, however, that the Trustee's discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

(j)     Notwithstanding any provision in the Governing Documents to the contrary, the Trustee, in the Trustee's sole discretion, may decline to make any distribution of $100 or less, due to the economic inefficiency of making a distribution of such a de minimis amount.

## ARTICLE IV

## TRUSTEE; DELAWARE TRUSTEE

### 4.1     **Number**

In addition to the Delaware Trustee appointed pursuant to Section 4.12 below, there shall be one (1) Trustee who shall be the person named on the signature pages hereof.

### 4.2     **Term of Service**

(a)     The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the Liquidating Trust pursuant to Section 7.2 below.

18

(b)      The Trustee may resign at any time upon written notice filed with the Bankruptcy Court and delivered to the TOC. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)      The Trustee may be removed by the Bankruptcy Court upon motion by the TOC in the event the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause. Other good cause shall include, without limitation, (i) fraud, self-dealing, intentional misrepresentation, wilful misconduct, indictment for or conviction of a felony, in each case whether or not connected to the Liquidating Trust, or (ii) a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder.

(d)      In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee, such vacancy shall be filled by the TOC as set forth herein. The TOC will nominate an individual to serve as successor Trustee.  If the majority of the TOC then in office agree upon a successor Trustee, then, subject to the approval of the Bankruptcy Court, such individual shall become the Trustee.  In the event that a majority of the TOC then in office cannot agree on a successor Trustee, the matter will be resolved pursuant to Section 7.12 below.

(e)      Immediately upon the appointment of any successor Trustee pursuant to Section 4.2(d) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No

19

predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(f)      Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) above, (iii) his or her removal pursuant to Section 4.2(c) above, and (iv) the termination of the Liquidating Trust pursuant to Section 6.2 below.

4.3      **Compensation and Expenses of the Trustee**

(a)      The Trustee shall receive compensation on an hourly basis for its service as Trustee on matters related to the operation of the Trust.  The hourly rate shall be the Trustee's usual and customary rate then in effect, which is currently $855 per hour (subject to the consent of the TOC, which consent shall not be unreasonably withheld or delayed).

(i)      The Liquidating Trust will promptly reimburse the Trustee for all reasonable and documented out-of-pocket costs and expenses incurred by the Trustee in connection with the performance of his or her duties hereunder.

4.4      **Standard of Care; Exculpation**

(a)      As used herein, the term "**Trust Indemnified Party**" shall mean each of (i) the Trustee, (ii) the Delaware Trustee, (iii) the TOC and (iv) the officers, employees, consultants, advisors, and agents of each of the Liquidating Trust, the Trustee and the TOC, including the Trustee Professionals and the TOC Professionals.

20

(b)    To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall not have or incur any liability for actions taken or omitted in their capacities as Trust Indemnified Parties, or on behalf of the Liquidating Trust, except those acts found by a final order of a court of competent jurisdiction ("**Final Order**") to be arising out of their wilful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Liquidating Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or this Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case except for any actions or inactions found by Final Order to be arising out of their wilful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Liquidating Trust.

(c)    To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Liquidating Trust or the Liquidating Trust Beneficiaries, it is hereby understood and agreed by the Parties that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties; provided, however, that with respect to the Trust Indemnified Parties other than the Delaware Trustee the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 4.4 and its subparts.

US_ACTIVE\131662214

4.5    **Protective Provisions**

(a)    Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 4.5.

(b)    In the event the Trustee retains counsel (including at the expense of the Liquidating Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder. Such attorney-client privilege shall be vested solely in the Trustee, on behalf of the Liquidating Trust, and not in the TOC, or any other person, committee or subcomponent of the Liquidating Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of an Allowed General Unsecured Claim. A successor Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Party or other person may raise any exception to the attorney-client privilege described herein as any such exceptions are hereby waived by all Parties.

(c)    No Trust Indemnified Party shall be personally liable under any circumstances, except for his or her own wilful misconduct, bad faith, gross negligence or fraud as determined by a Final Order.

22

(d)      No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties and powers hereunder.

(e)      In the exercise or administration of the Liquidating Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

4.6    **Indemnification**

(a)      To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall be entitled to indemnification and reimbursement for reasonable fees and expenses (including attorneys' fees and costs but excluding taxes in the nature of income taxes imposed on compensation paid to the Trust Indemnified Parties) in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Liquidating Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case, except for any actions or inactions found by Final Order to be arising out of their wilful misconduct, bad faith,

23

gross negligence or fraud. Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Trust Assets.

(b)      Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Liquidating Trust shall be paid by the Liquidating Trust from the Liquidating Trust Assets in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by Final Order that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Liquidating Trust. The Trustee may, in his or her discretion, authorize an advance of reasonable expenses, costs and fees (including attorneys' fees and costs) to be incurred by or on behalf of the Trust Indemnified Parties, as set forth herein.

(c)      The Trustee shall purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include insurance with respect to liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)      The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party

24

hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)      The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

## 4.7      **Trustee Independence**

The Trustee shall not act as an attorney, agent, or other professional for any Liquidating Trust Beneficiary or any holder of any Allowed General Unsecured Claim. For the avoidance of doubt, this Section 4.7 shall not be applicable to the Delaware Trustee.

## 4.8      **No Bond**

Neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## 4.9      **Burden of Proof**

In any proceeding brought by any of the Debtors, or any other person who is bound by this Trust Agreement challenging any action, determination or failure to act of the Trustee in discharge of his or her duties under this Trust Agreement on the basis that such action, determination or failure constitutes gross negligence, wilful misconduct or fraud, the person bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act

25

constituted gross negligence, wilful misconduct, or fraud. Notwithstanding anything to the contrary in this Trust Agreement or any duty otherwise existing at law or equity, each determination, action or failure to act of the Trustee in the discharge of his or her duties under this Trust Agreement is, to the extent consistent with this Trust Agreement, hereby deemed to not constitute a breach of this Trust Agreement or any duty hereunder or existing at law, in equity or otherwise.

4.10    **Reliance by the Trustee**

The Trustee may absolutely rely, and shall be fully protected in acting or refraining from acting if he or she relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that he or she has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.  In the absence of gross negligence, wilful misconduct, or fraud in respect of the Trustee's duties as found by a final and non-appealable court of competent jurisdiction, or material breach of this Trust Agreement, the Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon. The Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Trust Agreement, the Plan or any other document executed in connection therewith, and the Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

US_ACTIVE\131662214

4.11    **Books and Records**

Upon notice to the Bankruptcy Court and the TOC, the Trustee shall be free, in his or her discretion to abandon, destroy or otherwise dispose of any books and records in his possession that the Trustee deems not necessary for the continued administration of the Plan and not required to be retained under applicable law, without the need for any order of the Bankruptcy Court, and shall have no liability for same. This notice provision shall not create any right by any third party to access to privileged or confidential information held by the Liquidating Trust.

4.12    **Delaware Trustee**

(a)     There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act. The Delaware Trustee shall either be (i) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 4.12, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.12(c) below. For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)     The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein. The

27

Delaware Trustee shall be a trustee of the Liquidating Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of Chapter 38 of title 12 of the Delaware Code, 12 Del. C. Section 3801 *et seq.* (the "**Act**") and for taking such actions as are required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to accepting legal process served on the Liquidating Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act. There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. These duties shall be deemed purely ministerial in nature, and the Delaware Trustee shall not be liable except for the performance of such duties, and no implied covenants or obligations shall be read into this Trust Agreement against the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the Liquidating Trust or the Liquidating Trust Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware Trustee shall have no liability for the acts or omissions of any Trustee. Any permissive rights of the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its wilful misconduct, bad faith, gross negligence or fraud. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement at the request or direction of the Trustee or any other person pursuant to the provisions of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the

28

costs, expenses and liabilities that may be incurred by it in compliance with such request or direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee. The Delaware Trustee may conclusively rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties, not only as to due execution, validity and effectives, but also as to the truth and accuracy of any information contained therein. The Delaware Trustee may, at the expense of the Liquidating Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(c)     The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 4.12(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.12(d) below; provided further that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee. If the Trustee does not act within such sixty (60) day period,

29

the Delaware Trustee, at the expense of the Liquidating Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)    Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement. The successor Delaware Trustee shall make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the Liquidating Trust in accordance with Section 3810 of the Act.

(e)    Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

30

(f)     The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the Liquidating Trust and the Delaware Trustee, which compensation shall be paid by the Liquidating Trust. Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement. The terms of this paragraph shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)     The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or non-performance of any provision of any other agreement, instrument or document, other than this Trust Agreement. Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Liquidating Trust, the Trustee or any other person, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party. The Delaware Trustee may assume performance by all such persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person. The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

31

(h)      The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

(i)      In no event shall the Delaware Trustee be responsible or liable for special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Delaware Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

4.13    **Trust Meetings.**

(a)      **Regular Meeting**. Unless otherwise agreed to by the TOC, The Trustee shall hold regular Liquidating Trust meetings with the TOC not less than quarterly, which may be held at such times and at such places (including remotely by phone or video conference) as may be determined from time to time by the Trustee, in consultation with the TOC. For the avoidance of doubt, the Delaware Trustee shall not be required or permitted to attend any meetings of the Trustee contemplated by this Section 4.13.

(b)      **Special Meetings**. Special meetings of the Trustee may be called by the Trustee by giving written notice to the TOC not less than one (1) Business Day prior to the date of the

32

meeting. Any such notice shall include the time, place, and purpose of the meeting, given by overnight courier, personal delivery, facsimile, electronic mail or other similar means of communication. Notice shall be addressed or delivered to the address as shown upon the records of the Trust or as may have been given to the Trustee for purposes of notice. Notice by overnight courier shall be deemed to have been given one (1) Business Day after the time that written notice is provided to such overnight courier. Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or actually transmitted by the person giving the notice by electronic means to the recipient.

(c)      **Participation in Meetings by Telephone Conference**. The Trustee may convene, and persons may participate in, a meeting by conference telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all persons participating in such meeting can hear one another. Participation in a meeting pursuant to this Section 4.13(c) shall constitute presence in person at such meeting.

(d)      **Waiver of Notice**. Notice of a meeting need not be given to any person who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed with the Trust records or made a part of the minutes of the meeting. Attendance at a meeting shall constitute a waiver of notice of such meeting. Neither the business to be transacted at, nor the purpose of, any Trust meeting need be specified in any waiver of notice.

(e)      **Adjournment**. A meeting may be adjourned by the Trustee to another time and place.

33

4.14    **Matters Requiring Consultation with TOC**

The Trustee shall consult with the TOC on any extraordinary circumstance which could have a material impact on the Liquidating Trust, including without limitation, entering into arrangements not specified in Section 2.1(c) with third parties that the Trustee may deem useful in carrying out the purposes of the Liquidating Trust, subject in all respects to such arrangements not conflicting with any other provision of this Trust Agreement or the Plan.

4.15    **Matters Requiring Consent of TOC**

The Trustee shall obtain the consent of the TOC, or, otherwise, Bankruptcy Court approval in the event of a dispute in accordance with Section 7.12 hereof, for the items listed below:

(a)    Any proposed procedures to ensure that decisions are made consistent with the respective fiduciary duties owed to the Liquidating Trust and the Direct Claims Trust in the event of a conflict between the Liquidating Trust and the Direct Claims Trust with respect to litigation strategy, settlement or resource allocation;

(b)    Settlement, abandonment, or dismissal of any Claim or Cause of Action asserted by the Liquidating Trust in an amount greater than $2,500,000;

(c)    Settlement of (i) any disputed General Unsecured Claim against the Estates in an amount that is either greater than or reduces the face amount of such Claim by $5,000,000, or (ii) an asserted Administrative Claim or Priority Claim in an amount greater than $1,000,000 or outside the anticipated range provided by the Committee's financial advisor on the Effective Date, provided that the TOC has the power to increase but not reduce these requirements if they prove to be too low;

(d)      Any Distribution on Claims other than those required on the Effective Date under claim settlements;

(e)      Any proposed modification to the indemnification provisions of the Trust Agreement;

(f)      Any proposed sale, transfer or exchange of Liquidating Trust Assets above $5,000,000 (any proposed sale of Liquidating Trust Assets below such amount shall not require TOC consent);

(g)      Retention of litigation professionals to pursue Claims and Causes of Action on behalf of the Liquidating Trust, other than Liquidating Trust general/local counsel, and terms of such retention;

(h)      To borrow such sums of money or enter into litigation funding agreements;

(i)      Any proposed material modifications to the Trust Agreement; and

(j)      Any proposed modification to the compensation of the Trustee other than routine hourly rate increases.

The consent of the TOC shall not be unreasonably withheld, conditioned, or delayed.

4.16    **Trustee's and TOC's Employment of Professionals.**

(a)      Subject to the limitations set forth in Section 4.15 of this Agreement, the Trustee may, but is not required to, retain and/or consult accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties (the "**Trustee Professionals**")

35

deemed appropriate by the Trustee to assist in matters for the Liquidating Trust within the Trustee's purview.

(b)  The TOC may, but is not required to, retain and/or consult, legal counsel and such other parties deemed appropriate by the TOC to assist in matters within the TOC's purview (the "**TOC Professionals,**" and with Trustee Professionals, the "**Liquidating Trust Professionals**") where such retention of separate professionals (other than existing Trust professionals) is necessary to discharge the TOC's duties, provided that no TOC Professionals may be retained to act on behalf of any holder of an Allowed General Unsecured Claim. The fees of such counsel, if retained, shall be reasonable and shall not exceed $15,000 on a monthly basis in the absence of a dispute.

(c)  Prior to payment of any fees of a professional retained by the Truste or the TOC, the professional shall circulate a monthly fee statement detailing the compensation sought, including time records with a description of the tasks performed, and expenses incurred for which reimbursement is sought to the Trustee and the TOC.  The Trustee and the TOC shall have 10 days to review and dispute such monthly fee statements, and following such review the Trustee is authorized to pay any undisputed portion of such fee statements.  If any amount is disputed and cannot be resolved consensually, the Bankruptcy Court shall resolve the disputed fees on motion by the professional, the Trustee, or the TOC.

US_ACTIVE\131662214

## ARTICLE V

## TAX MATTERS

### 5.1     Treatment of Settlement Consideration Transfer

For all United States federal income tax purposes, all Parties shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (i) a transfer of the Liquidating Trust Assets (subject to any obligations related to those assets) directly to the Liquidating Trust Beneficiaries, followed by (ii) the transfer by such Liquidating Trust Beneficiaries of such Liquidating Trust Assets to the Liquidating Trust in exchange for Liquidating Trust Interests (other than the Trust Assets held as a "disputed ownership fund" within the meaning of Section 1.468B-9 of the Treasury Regulations, if any ("**Disputed Ownership Fund**")). Accordingly, the Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes (and, to the extent permitted, for state and local income tax purposes) as the grantors and owners of their respective shares of the Liquidating Trust Assets (other than the Trust Assets allocable to the Disputed Ownership Fund, if any).

### 5.2     Income Tax Status

(a)     For United States federal income tax purposes (and for purposes of all state, local and other jurisdictions to the extent applicable) and other than as provided pursuant to Section 5.3(c), this Liquidating Trust shall be treated as a liquidating trust pursuant to Section 301.7701-4(d) of the Treasury Regulations and as a grantor trust pursuant to Sections 671-679 of the IRC. To the extent consistent with Revenue Procedure 94-45 and not otherwise inconsistent with this

37

Trust Agreement, this Trust Agreement shall be construed so as to satisfy the requirements for liquidating trust status.

(b)    The Liquidating Trust shall at all times to be administered so as to constitute a domestic trust for United States federal income tax purposes.

5.3    **Tax Returns**

(a)    In accordance with Section 6012 of the IRC and Section 1.671-4(a) of the Treasury Regulations, the Trustee shall file with the IRS annual tax returns for the Liquidating Trust on Form 1041 as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. In addition, the Trustee shall file in a timely manner for the Liquidating Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. Allocations of Liquidating Trust taxable income among the holders of Liquidating Trust Interests (other than taxable income allocable to, or retained on account of, a disputed claims reserve or disputed ownership fund) shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its assets (valued at their tax book values, and other than assets allocable to any disputed claims reserve) to the holders of the Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidation distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Effective Date,

38

or, if later, the date such assets were acquired by the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements. Notwithstanding anything to the contrary in this Section 5.3(a), the Trustee shall be entitled to make such adjustments to allocations of Liquidating Trust taxable income and taxable loss as it believes would be fair and equitable to reflect the sharing of economics among the holders of Liquidating Trust Interests.

(b)     The Liquidating Trust shall be responsible for payment, from the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust (including any taxes imposed on the Disputed Ownership Fund) or the Liquidating Trust Assets. In accordance therewith, any taxes imposed on the Disputed Ownership Fund or its assets will be paid from the Liquidating Trust Assets.

(c)     The Trustee may timely elect to treat any Liquidating Trust Assets allocable to Disputed General Unsecured Claims to a Disputed Ownership Fund, and to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a Disputed Ownership Fund election is made, all parties (including the Trustee and the holders of Liquidating Trust Interests) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing. The Liquidating Trust shall file all income tax returns with respect to any income attributable to the Disputed Ownership Fund and shall pay from the Liquidating Trust Assets all U.S. federal, state and local income taxes attributable to such Disputed Ownership Fund based on the items of income, deduction, credit, or loss allocable thereto.

39

5.4      **Withholding of Taxes and Reporting Related to Liquidating Trust Operations**

The Liquidating Trust shall comply with all withholding, deduction and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions made by the Liquidating Trust shall be subject to any applicable withholding, deduction and reporting requirements. The Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such withholding, deduction, payment, and reporting requirements. All amounts properly withheld or deducted from distributions to a Liquidating Trust Beneficiary as required by applicable law and paid over to the applicable taxing authority for the account of such Liquidating Trust Beneficiary shall be treated as part of the Liquidating Trust Distribution to such Liquidating Trust Beneficiary. To the extent that the operation of the Liquidating Trust or the liquidation of the Liquidating Trust Assets creates a tax liability imposed on the Liquidating Trust, the Liquidating Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Liquidating Trust payable without Bankruptcy Court order. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Liquidating Trust Beneficiaries shall be required to provide any information necessary to effect the withholding and reporting of such taxes. The Trustee may require each Liquidating Trust Beneficiary to furnish to the Liquidating Trust (or its designee) its social security number or employer or taxpayer identification number as assigned by the IRS and complete any related documentation (including but not limited to a Form W-8BEN, Form W-8BENE-E, or Form W-9) (the "**Tax Documents**"). The Trustee may condition any and all distributions to any Liquidating Trust Beneficiary upon the timely receipt of properly executed Tax Documents and receipt of such other documents as the Trustee reasonably requests, and in accordance with the Plan.

40

5.5   **Valuation**

Within 180 days after the Effective Date, the Trustee shall make a good faith valuation of the Liquidating Trust Assets.  Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties for all United States federal income tax purposes. The Trustee also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidating Trust that are required by any governmental unit.

5.6   **Expedited Determination of Taxes**

The Trustee may request an expedited determination of taxes of the Liquidating Trust, under Section 505 of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the termination of the Liquidating Trust.

5.7   **WARN Act Claim Reserve**

The Trustee shall deposit into the WARN Act Claim Reserve an aggregate amount of $500,000 on the Effective Date, which shall be distributed to the WARN Act Class Representative for the benefit of members of the class; and following the transfer of the Liquidating Trust Assets to the Liquidating Trust, the WARN Act Class Representative shall be entitled to recover against the Liquidating Trust, for the benefit of members of the class, $3,000,000.00 in net recoveries subject to the distribution procedures set forth in the Plan, Plan Supplement, and the settlement agreement resolving the WARN Action, as applicable.

The WARN Act Claim Reserve is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 of the U.S. Treasury Regulations (the "**QSF Regulations**").  The Trustee shall be the "administrator" of the Trust within the meaning of

41

Section 1.468B-2(k)(3) of the Treasury Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the WARN Act Claim Reserve solely out of the assets held in the WARN Act Claim Reserve, which assets may be sold by the Trustee to the extent necessary to satisfy such tax liabilities, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of Trust as a qualified settlement fund, within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.

The Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any applicable tax withholding, deduction, payment, and reporting requirements. All amounts properly withheld or deducted from distributions made out of the WARN Act Claim Reserve and paid over to the applicable taxing authority for the account of a holder of an Allowed WARN Act Claim shall be treated as part of the Distribution to such holder. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All holders of Allowed WARN Act Claims shall be required to provide any information necessary to effect the withholding and reporting of such taxes, including but not limited to any Tax Documents. The Trustee may condition any and all distributions to any holder of an Allowed WARN Act Claim upon the timely receipt of properly executed Tax Documents and receipt of such other documents as the Trustee reasonably requests, and in accordance with the Plan.

US_ACTIVE\131662214

If the Trustee determines it would be cost effective to retain the services of a third-party administrator to administer the distributions to the holders of Allowed WARN Act Claims, then, in consultation with the counsel for such holders, the Trustee may retain the services of a settlement administrator (the "**Settlement Administrator**").    The Settlement Administrator shall be responsible for handling class noticing and all aspects of the administration of the distribution of the WARN Act Claim Reserve and any other amounts distributable to the holders of WARN Act Claims pursuant to the Plan, including, but not limited to: (a) the formation of a qualified settlement fund as authorized by Treasury Regulation 1.486B-1(c) to accept, distribute, and otherwise administer the WARN Act Claim Reserve; (b) the preparation and mailing of settlement checks to each Class member; (c) the preparation and mailing of  all W-2 and 1099 Forms and the compliance with any tax withholding obligations imposed by applicable law with respect to distributions to Class Members; (d) the processing of returned settlement checks as undeliverable, including re-mailing to forwarding addresses and tracing of current addresses; and (e) any other duties of the WARN Act Claims Administrator as set forth in the Plan.

## ARTICLE VI

## LIQUIDATING TRUST OVERSIGHT COMMITTEE

6.1    **Members; Action by Members.**

The TOC shall be composed of five (5) members appointed to represent the interests of holders of Allowed General Unsecured Claims.  The initial TOC members shall be the following: ACE Engineering & Co., Ltd., Celestica LLC, Contemporary Amperex Technology Co., Limited, JMS Wind Energy, LLC and GreEnergy Resources LLC.  Except as otherwise set forth in the Governing Documents, the TOC shall act by majority vote of TOC members then serving,

43

provided, however, the TOC may continue to act in the event of one or more vacancies on the TOC, in which case majority vote of the TOC members then serving shall be required for action by the TOC.

6.2     **Duties.**

The members of the TOC shall serve in a fiduciary capacity representing holders of Allowed General Unsecured Claims. The TOC shall not have any fiduciary duties or responsibilities to any party other than Liquidating Trust Beneficiaries.  Except for the duties and obligations expressed in this Trust Agreement, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TOC.  To the extent that, at law or in equity, the TOC has duties (including fiduciary duties) and liabilities relating thereto to the Liquidating Trust, the other parties hereto, or any Liquidating Trust Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the TOC expressly set forth in this Trust Agreement.

6.3     **TOC Information Rights; Reports**

(a)     The TOC shall have reasonable access to the Liquidating Trust's consultants and other advisors retained by the Liquidating Trust and its staff (if any), and information available to the Trustee, which access shall be made available as determined by the Trustee in his or her discretion.

(b)     The TOC shall receive monthly reports concerning professional fees charged and annual reports on the Liquidating Trust's budget. Any disputes concerning same shall be brought before the Bankruptcy Court.

44

6.4      **[Reserved.]**

6.5      **Term of Office.**

(a)      Each member of the TOC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) below, (iii) his or her removal pursuant to Section 6.5(c) below, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(b)      A member of the TOC may resign at any time by written notice to the other members of the TOC and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)      A member of the TOC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the member of the TOC has received reasonable notice and an opportunity to be heard. Other good cause shall mean, without limitation, fraud, self-dealing, intentional misrepresentation, wilful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Liquidating Trust or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings. Such removal shall require the majority vote of the other members of the TOC and such removal shall take effect only upon the approval of the Bankruptcy Court.

6.6     **Appointment of Successor.**

(a)     In the event of a TOC member vacancy, the remaining TOC members shall propose an individual as successor, subject to the approval of the Trustee, which approval may not be unreasonably withheld.  In the event a successor TOC member is not appointed within sixty (60) days following the occurrence of such vacancy, the Bankruptcy Court may appoint a successor TOC member upon motion of the Trustee.

(b)     Each successor member of the TOC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) above, (iii) his or her removal pursuant to Section 6.5(c) above, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(c)     No successor TOC member shall be liable personally for any act or omission of his or her predecessor TOC member.  No successor TOC member shall have any duty to investigate the acts or omissions of his or her predecessor TOC member.  No TOC member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

6.7     **Compensation and Expenses of the TOC.**

The members of the TOC shall not be entitled to compensation for their services but shall be reimbursed promptly for all reasonable and documented ordinary and customary out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder (which, for the avoidance of doubt, will not include professionals retained by an individual member of the TOC to advise such member).  The Trust shall include a description of the amounts paid under this

46

Section 6.7 in the Annual Report to be filed with the Bankruptcy Court and posted on the Trust's Website.

6.8    **Procedures for Consultation with and Obtaining the Consent of the TOC.**

(a)    Consultation Process.

(i)    In the event the Trustee is required to consult with the TOC pursuant to Section 4.14 above, the Trustee shall provide the TOC with written advance notice of the matter under consideration, to the extent practicable, and with all relevant information and documents concerning the matter as is reasonably practicable under the circumstances.  The Trustee shall also provide the TOC with such reasonable access to the consultants and other advisors retained by the Liquidating Trust and its staff (if any) as the TOC may reasonably request during the time that the Trustee is considering such matter, and shall also provide the TOC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee, to the extent practicable.

(ii)    In determining when to take definitive action on any matter subject to the consultation procedures set forth in this Section 6.8(a), the Trustee shall take into consideration the time required for the TOC to meet and consult as to such matter.  In any event, the Trustee shall not take definitive action on any such matter until at least five (5) Business Days after providing the TOC with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived in writing by the TOC or at a meeting where the TOC and Trustee are present, or the Trustee determines in his reasonable discretion that definitive action is required earlier. Notwithstanding the

47

foregoing, the TOC shall have the authority to waive the consultation procedure or any component thereof set forth in this Section 6.8(a).

(b)     <u>Consent Process</u>.

(i)     In the event the Trustee is required to obtain the consent of the TOC pursuant to the Governing Documents or Section 4.15 hereof, the Trustee shall provide the TOC with a written notice stating that its consent is being sought, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the TOC as much relevant additional information concerning the proposed action as is requested by the TOC and as is reasonably practicable under the circumstances.  The Trustee shall also provide the TOC with such reasonable access to the Liquidating Trust consultants and other advisors retained by the Liquidating Trust and its staff (if any) as the TOC may reasonably request during the time that the Trustee is considering such action, and shall also provide the TOC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii)     For matters requiring the consent of the TOC:

(A)     The TOC must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee, in writing, of its consent or its objection to the proposed action within five (5) Business Days of receiving the original request for consent from the Trustee, unless the Trustee extends the time for such response. The TOC may not withhold its consent unreasonably. If the TOC decides to withhold its consent, it must explain in detail

48

its objections to the proposed action.  If the TOC does not advise the Trustee, in writing, of its consent or its objections to the action within five (5) Business Days of receiving notice regarding such request (or within such additional time as may be granted by the Trustee in his or her discretion), the TOC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(B)      If, after following the procedures specified in this Section 6.8(b), the TOC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and the TOC shall resolve their dispute pursuant to Section 7.12 below, provided, however in that event the TOC shall have the burden of proof to show the validity of the TOC's objection.

(c)      <u>Disputes</u>. Any disputes between the TOC and the Trustee shall be resolved by the Bankruptcy Court.

## ARTICLE VII

## **GENERAL PROVISIONS**

7.1   **Irrevocability**

To the fullest extent permitted by applicable law, the Liquidating Trust is irrevocable.

49

7.2    **Term; Termination**

(a)    The term for which the Liquidating Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of this Section 7.2.

(b)    The Trustee shall make continuing efforts to monetize any non-liquid Liquidating Trust Assets.

(c)    The Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (a) the Trustee determines that there is no longer a need to initiate actions to resolve any remaining issues regarding the allowance and payment of Claims, or (b) all distributions of Cash and other Liquidating Trust Assets required to be made by the Trustee under the Plan and this Trust Agreement have been made in accordance with provisions of the Plan and this Trust Agreement, provided, however, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made by a party in interest within the six (6) month period prior to such fifth (5th) anniversary (and, in the event of further extension, at least six (6) months prior to the end of any extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery on and liquidation of the Liquidating Trust Assets (the "**Dissolution Date**").

(d)    On the Dissolution Date or as soon as reasonably practicable thereafter, after the wind-up of the affairs of the Liquidating Trust by the Trustee and payment of all of the liabilities have been provided for as required by applicable law including Section 3808 of the Act, all monies

50

remaining in the Liquidating Trust shall be distributed or disbursed in accordance with Section 3.4 and Section 5.3(c) above.

(e)    Following the dissolution and distribution of the assets of the Liquidating Trust, the Liquidating Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Liquidating Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Liquidating Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation. A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

7.3    **<u>Amendments</u>**

Any amendment to or modification of this Trust Agreement may be made in writing and only with the consent of the Trustee, the TOC (which consent in each case shall not be unreasonably withheld, conditioned or delayed) and subject to the approval of the Bankruptcy Court; <u>provided</u>, <u>however</u>, the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make: (i) minor modifications or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; or (ii) modifications to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order, statute, ruling or regulation of any federal, state or foreign governmental entity. Notwithstanding the foregoing, no amendment or modification of this Trust Agreement shall modify this Trust Agreement in a manner that is inconsistent with the Plan or the Confirmation Order other than to make minor modifications or clarifying amendments as necessary to enable the Trustee to effectuate the provisions of this Trust

51

Agreement. Notwithstanding the foregoing, neither this Trust Agreement, nor any Exhibit to this Trust Agreement, shall be modified or amended in any way that could jeopardize, impair, or modify the Liquidating Trust's "liquidating trust" status. Any amendment affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent. Notwithstanding any other provision of this Trust Agreement, no material modifications may be made to this Section 7.3 of this Trust Agreement without the consent of the Trustee, the unanimous consent of the TOC, and subject to the approval of the Bankruptcy Court.

7.4    **Severability**

Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

7.5    **Notices**

(a)    Notices to Liquidating Trust Beneficiaries shall be given in accordance with such person's claims form submitted to the Liquidating Trust.

(b)    Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the Liquidating Trust:



52

With a copy (which shall not constitute notice) to:

[_____]

To the Delaware Trustee:

[_____]

With a copy (which shall not constitute notice) to:

[_____]

To the TOC:

ACE Engineering & Co., Ltd.

[_____]

Celestica LLC

[_____]

Contemporary Amperex Technology Co., Limited

[_____]

JMS Wind Energy, LLC

[_____]

53

GreEnergy Resources LLC

[_____]

(c)     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses.

7.6     **Successors and Assigns**

The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Liquidating Trust, the Delaware Trustee, the Trustee, the TOC and their respective successors and assigns, except that neither the Liquidating Trust, the Delaware Trustee, nor the Trustee, may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in the case of the Delaware Trustee in accordance with Section 4.12 (d), and in the case of the Trustee in accordance with Section 4.2(d) above.

7.7     **Limitation on Liquidating Trust Interests for Securities Laws Purposes**

Liquidating Trust Interest (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of descent and distribution or otherwise by operation of law; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

54

7.8    **Exemption from Registration**

The Parties hereto intend that the interests of the Liquidating Trust Beneficiaries under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the Liquidating Trust Interests will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

7.9    **Entire Agreement; No Waiver**

The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein, and in the documents referred to herein (including the Plan), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

7.10   **Headings**

The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

7.11   **Governing Law**

The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Liquidating Trust, the Trustee, the Delaware Trustee, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial

56

owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the TOC or the Delaware Trustee set forth or referenced in this Trust Agreement. Section 3540 of the Act shall not apply to the Liquidating Trust.

7.12    **Dispute Resolution**

(a)    Unless otherwise expressly provided for herein, the dispute resolution procedures of this Section 7.12 shall be the exclusive mechanism to resolve any dispute arising under or with respect to this Trust Agreement. For the avoidance of doubt, this Section 7.12 shall not apply to the Delaware Trustee in any respect.

(b)    **Informal Dispute Resolution**. Any dispute under this Trust Agreement shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**"). Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties. If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

(c)    **Formal Dispute Resolution**. The disputing party shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving

57

on the counterparty or counterparties a written statement of position regarding the matter in dispute ("**Statement of Position**"). The Statement of Position shall include, but need not be limited to, any factual data, analysis or opinion supporting the disputing party's position and any supporting documentation and legal authorities relied upon by the disputing party. Each counterparty shall serve its Statement of Position within thirty (30) days of receipt of the disputing party's Statement of Position, which shall also include, but need not be limited to, any factual data, analysis or opinion supporting the counterparty's position and any supporting documentation and legal authorities relied upon by the counterparty. If the disputing party and the counterparty or counterparties are unable to consensually resolve the dispute within thirty (30) days after the last of all counterparties have served its Statement of Position on the disputing party, the disputing party may file with the Bankruptcy Court a motion for judicial review of the dispute in accordance with Section 7.12(d) below.

(d)      **Judicial Review**. The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over such dispute, such court as has jurisdiction pursuant to Section 1.4 above) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute. The motion must be filed within forty-five (45) days of receipt of the last counterparty's Statement of Position pursuant to the preceding subparagraph. The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration of the Liquidating Trust. Each counterparty shall respond to the motion within the time period

58

allowed by the rules of the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court.

(e)    Notwithstanding anything to the contrary in this Trust Agreement, the Liquidating Trust shall bear the reasonable costs and expenses of the TOC in connection with any material dispute that arises under this Trust Agreement.

7.13    **Waiver of Conflicts**

To the extent that the Trustee or the TOC seek to retain any Liquidating Trust Professionals, the Parties agree to waive any conflict of interest claims against such professionals related to such professionals' prior representation of the Committee or any individual member of the Committee during the Debtors' Chapter 11 Cases.

7.14    **Effectiveness**

This Trust Agreement shall become effective on the Effective Date.

7.15    **Counterpart Signatures**

This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

US_ACTIVE\131662214

7.16   **Waiver of Trial by Jury**

Each of the parties hereto hereby waives the right to trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Trust Agreement.

US_ACTIVE\131662214

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this _____ day of _____, 2025.


**TRUSTEE**


_____

Brian F. Gleason


61

**DELAWARE TRUSTEE**

[_____]


By:_____

    Name:

    Title:

62

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**EXHIBIT 1**

**DEBTORS WIND-DOWN ADMINISTRATION**The individual designated as the Trustee under this Trust Agreement shall also perform duties related to the Wind-Down of the Debtors, in his or her capacity as a Wind-Down Officer.  The Wind-Down Officer shall be named as an insured in connection with his or her role as Wind-Down Officer during the wind down period of the Debtors' Estate or until the termination of the Debtors' corporate or other existence, with such insurance to provide a tail period thereafter for the Wind-Down Officer.

A.      **Administration of the Wind-Down**.  Post-Effective Date the Trustee, in his or her capacity as Wind-Down Officer, shall administer the responsibilities of the Debtors, including, but not limited to:

    i.      effectuating the process to wind down, dissolve and liquidate the Estates and distribute any remaining assets in accordance with the Plan, including taking any steps to dissolve, liquidate, bankrupt or take other similar action with respect to the Debtors and any direct or indirect subsidiary of a Debtor, if and to the extent necessary, including by terminating the corporate or organizational existence of the Debtors and each such subsidiary;

    ii.     implementing, enforcing, complying with and effectuating, as applicable, all provisions of the Plan and the obligations under the Plan;

    iii.    preparing and filing appropriate tax returns and other reports on behalf of the Debtors and paying taxes or other obligations owed by the Debtors;

    iv.     entering into and consummating any transactions for the purpose of dissolving the Debtors;

    v.      winding down the affairs of the Debtors, if and to the extent necessary, including establishing any administrative reserves necessary, and taking any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to the Debtors, including by terminating the corporate or organizational existence of the Debtors;

    vi.     taking such actions as are necessary or appropriate to close the Debtors' Chapter 11 Cases;

    vii.    maintaining the books and records and accounts of the Debtors and resolving issues pertaining to the retention or disposal of the books and records of the Debtors;

    viii.   providing periodic reports and updates to the Liquidating Trust, no less than quarterly, regarding the status of the administration of the Wind-Down of the Debtors;

    ix.     to the extent not made on or prior to the Effective Date, making distributions on behalf of the Debtors, including through the disbursing agents, to all parties that are entitled to distributions pursuant to the Plan from funds of the Debtors, including to the Liquidating Trust and/or the Direct Claims Trust as set forth in the Plan; and

    x.      paying the expenses of the Wind-Down from the Debtors' assets, including insurance for the Wind-Down Officer.

B.      **Books and Records of Wind-Down**. The Trustee, in his or her capacity as Wind-Down Officer, shall maintain, in respect of the Wind-Down of the Debtors' Estates, all books and records of the Debtors, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.

C.     **Tax Reporting and Payments for Wind-Down**.  The Trustee, in his or her capacity as Wind-Down Officer, may request an expedited determination of taxes of the Debtors, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for all taxable periods through dissolution.

D.     **Wind-Down Fees**.  The Trustee, in his or her capacity as Wind-Down Officer, shall be entitled to charge his or her standard hourly rates for time spent performing duties related to the Wind-Down of the Debtors.  Fees charged for time spent performing duties related to the Wind-Down of the Debtors shall be paid in addition to fees charged for time spent performing duties related to the Liquidating Trust.

**EXHIBIT 2**

**CERTIFICATE OF TRUST OF THE**

**POWIN LIQUIDATING TRUST**

This Certificate of Trust of the POWIN LIQUIDATING TRUST (the "*Trust*") is being

duly executed and filed by the undersigned Trustees of the Trust, to form a statutory trust under

the Delaware Statutory Trust Act (12 Del. Code § 3801 *et seq.*) (the "*Act*").

Name. The name of the statutory trust formed hereby is:

**POWIN LIQUIDATING TRUST**

Delaware Trustee. The name and business address of the Delaware Trustee of the Trust in

the State of Delaware is:

[•]

Effective Date. This Certificate of Trust shall be effective on _____ ___, 2025.

IN WITNESS WHEREOF, the undersigned, being all of the trustees of the Trust, have

duly executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

TRUSTEE:

[•], not in its individual capacity, but
solely as
Delaware Trustee

By: _____

_____

[_____], in his capacity as a trustee and
not individually.

Name:
Title:

**EXHIBIT 3**

**INVESTMENT GUIDELINES**

Consistent with the provisions of Rev. Proc. 94-45 and notwithstanding any other provision of the Trust Agreement, the investment powers of the Trustee, other than those reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the trust, must be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

# **EXHIBIT C**

**Final Form of Direct Claims Trust Agreement**

**POWIN DIRECT CLAIMS TRUST**

**POWIN DIRECT CLAIMS TRUST AGREEMENT**

**Dated as of [●], 2025**

*Pursuant to the Joint Combined Disclosure Statement and*

*Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof*

*and the Official Committee of Unsecured Creditors*

*Dated October 15, 2025*

## TABLE OF CONTENTS

**Page**

ARTICLE I AGREEMENT OF TRUST .......................................................................................2

    1.1        Creation and Name ...................................................................................2

    1.2        Purpose .....................................................................................................3

    1.3        Transfer of Assets ....................................................................................3

    1.4        Acceptance of Assets and Assumption of Liabilities .................................5

ARTICLE II POWERS, TRUST ADMINISTRATION, AND REPORTING .............................6

    2.1        Powers ......................................................................................................6

    2.2        General Administration .............................................................................9

    2.3        Reporting ................................................................................................11

ARTICLE III ACCOUNTS, INVESTMENTS, AND PAYMENTS ..........................................12

    3.1        Accounts .................................................................................................12

    3.2        Investment Guidelines ............................................................................12

    3.3        Payment of Operating Expenses ..............................................................13

    3.4        Distributions to Direct Claims Trust Beneficiaries ...................................14

ARTICLE IV TRUSTEE; DELAWARE TRUSTEE ...................................................................17

    4.1        Number ...................................................................................................17

    4.2        Term of Service ......................................................................................17

    4.3        Compensation and Expenses of the Trustee .............................................18

    4.4        Standard of Care; Exculpation ................................................................19

i

4.5        Protective Provisions ...................................................................20

4.6        Indemnification ...........................................................................22

4.7        Trustee Independence...................................................................23

4.8        No Bond .......................................................................................24

4.9        Burden of Proof ...........................................................................24

4.10      Reliance by the Trustee ...............................................................24

4.11      Books and Records .......................................................................25

4.12      Delaware Trustee .........................................................................25

4.13      Trust Meetings..............................................................................31

4.14      Matters Requiring Consultation with TOC ...............................32

4.15      Matters Requiring Consent of TOC ...........................................32

4.16      Trustee's and TOC's Employment of Professionals. ................34

ARTICLE V TAX MATTERS................................................................................35

5.1        Treatment of Direct Claims Transfer .........................................35

5.2        Income Tax Status .......................................................................35

5.3        Tax Returns ..................................................................................35

5.4        Withholding of Taxes and Reporting Related to Direct Claims Trust

            Operations ....................................................................................36

ARTICLE VI DIRECT CLAIMS TRUST OVERSIGHT COMMITTEE...................37

6.1        Members; Action by Members....................................................37

6.2        Duties............................................................................................37

6.3        TOC Information Rights; Reports ...............................................38

6.4        [Reserved.] ...................................................................................38

6.5      Term of Office.................................................................................38

6.6      Appointment of Successor.............................................................39

6.7      Compensation and Expenses of the TOC.....................................40

6.8      Procedures for Consultation with and Obtaining the Consent of the TOC.

         ..........................................................................................................400

ARTICLE VII GENERAL PROVISIONS.......................................................43

7.1      Irrevocability .................................................................................43

7.2      Term; Termination .........................................................................43

7.3      Amendments...................................................................................44

7.4      Severability....................................................................................45

7.5      Notices............................................................................................45

7.6      Successors and Assigns .................................................................47

7.7      Limitation on Direct Claims Trust Interests for Securities Laws Purposes 47

7.8      Exemption from Registration ........................................................48

7.9      Entire Agreement; No Waiver .......................................................48

7.10     Headings.........................................................................................49

7.11     Governing Law...............................................................................49

7.12     Dispute Resolution.........................................................................50

7.13     Waiver of Conflicts .......................................................................52

7.13     Effectiveness ..................................................................................52

7.14     Counterpart Signatures ..................................................................52

7.15     Waiver of Trial by Jury ..................................................................52

EXHIBIT 1 CERTIFICATE OF TRUST OF THE POWIN DIRECT CLAIMS TRUST ............56

EXHIBIT 2 INVESTMENT GUIDELINES ................................................................................58

## POWIN DIRECT CLAIMS TRUST AGREEMENT

This Powin Direct Claims Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into pursuant to the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates thereof and the Official Committee of Unsecured Creditors Docket No. [939] (as may be further amended or modified, the "**Plan"**),[1] in Case No. 25-16137 (MBK) in the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**") by the Trustee identified on the signature pages hereof (the "**Trustee**") and [_____] (the "**Delaware Trustee**"), and the members of the Oversight Committee who are the individuals further identified on the signature page hereto (together with any successors serving in such capacity, the "**TOC**" and, together with the Trustee and the Delaware Trustee, the "**Parties**").

## <u>RECITALS</u>

**WHEREAS**, the Plan contemplates the creation of the Powin Direct Claims Trust (the "**Direct Claims Trust**");

**WHEREAS**, the Confirmation Order has been entered by the Bankruptcy Court;

**WHEREAS**, pursuant to the Plan, the Direct Claims Trust is established to receive and monetize the Direct Claims Trust Assets;

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

**WHEREAS**, the Trustee shall administer the Direct Claims Trust in accordance with the terms of the Plan, the Confirmation Order and this Trust Agreement (the "**Governing Documents**"); and

**WHEREAS**, pursuant to the Plan, the Direct Claims Trust is intended to qualify as a "grantor trust" for United States federal income tax purposes, pursuant to Sections 671-679 of the Internal Revenue Code (the "**IRC**"), with the contributors of Direct Claims to the Direct Claims Trust (the "**Direct Claims Trust Beneficiaries**" and the interests in the Direct Claims Trust held by such Direct Claims Trust Beneficiaries, the "**Direct Claims Trust Interests**") treated as the grantors of the Direct Claims Trust.

**NOW, THEREFORE,** it is hereby agreed as follows:

## ARTICLE I

## AGREEMENT OF TRUST

### 1.1    Creation and Name

There is hereby created a trust known as the "Powin Direct Claims Trust." The Trustee of the Direct Claims Trust may transact the business and affairs of the Direct Claims Trust in the name of the Direct Claims Trust, and references herein to the Direct Claims Trust shall include the Trustee acting on behalf of the Direct Claims Trust. It is the intention of the Parties that the Direct Claims Trust qualify as a "grantor trust" within the meaning of Sections 671-677 of the IRC and that this Trust Agreement constitute the governing instrument of the Direct Claims Trust. The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as **Exhibit 1**.

2

1.2     **Purpose**

The purposes of the Direct Claims Trust are to:

(a)     receive and monetize the Direct Claims Trust Assets pursuant to the terms of the Plan and the Confirmation Order;

(b)     pursue, and if applicable, resolve (by way of settlement, judgment, or otherwise) the Direct Claims which constitute Direct Claims Trust Assets;

(c)     hold, manage, protect and invest the Direct Claims Trust Assets, together with any income or gain earned thereon and proceeds derived therefrom (collectively, the "**Trust Assets**"), and monetize any non-liquid Trust Assets, in accordance with the terms of the Governing Documents for the benefit of the Direct Claims Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purposes of the Direct Claims Trust;

(d)     make distributions of Trust Assets ("**Direct Claims Trust Distributions**") to Direct Claims Trust Beneficiaries in accordance with and subject to the terms of this Trust Agreement and the Plan; and

(e)     engage in any lawful activity that is appropriate and in furtherance of the purposes of the Direct Claims Trust to the extent consistent with the Governing Documents.

1.3     **Transfer of Assets**

Pursuant to, and in accordance with Article 13.3(b)(ii) of the Plan, the Direct Claims Trust has received the Direct Claims Trust Assets. The Direct Claims Trust Assets and any other assets

3

to be transferred to the Direct Claims Trust under the Plan will be transferred to the Direct Claims Trust free and clear of any liens or other claims by the Debtors, any creditor, or other entity.

The Contributing Direct Claim Holders shall automatically be deemed to transfer, assign, and deliver to the Direct Claims Trust, or the Trustee on behalf of the Direct Claims Trust, all of their respective rights, title and interests in and to their Direct Claims and any privilege or immunity attaching to any document or communications (whether written or oral) associated with any of the contributed Direct Claims, provided, however, that such Contributing Direct Claim Holders shall retain a co-equal interest in any assigned privilege or immunity and shall not waive such privilege or immunity without such Contributing Direct Claim Holders' consent. Contributing Direct Claim Holders shall only be permitted to withdraw their Direct Claims from the Direct Claims Trust by providing written notice to the Trustee prior to the Effective Date of the Plan, where upon such withdrawal such previously Contributing Direct Claim Holder shall no longer be a Direct Claims Trust Beneficiary.

The Liquidating Trust and this Direct Claims Trust have a common, joint interest in the Causes of Action. Pursuant to the terms of this Trust Agreement, the Trustee is authorized to utilize any privileged documents or communications in his or her capacity as Liquidating Trustee, and the Trustee is authorized to utilize any privileged documents belonging to the Liquidating Trust in his or her capacity as Trustee, in each case without any prior notification to the Liquidating Trust Beneficiaries, and the Trustee is authorized to receive and utilize any such privileged documents or communications in his or her discretion, in connection with the Causes of Action.

For purposes of this Section 1.3, "privilege" means attorney-client privilege or work product protection (or both as the case may be) as those terms are defined in Federal Rule of

Evidence 502(g) or any other privilege or immunity available under any applicable law. All communications between the Trustee and the TOC shall be deemed privileged and confidential communications, it being acknowledged that the subject matter of such communications is with respect to common litigation interests. Such communications shall not be disclosed to any third parties except as may be required by an order of a court of competent jurisdiction upon prior notice to the Trustee or to the extent permitted under the cooperation provisions of this Section 1.3; provided, however, that the Trustee may reference or utilize such communications in a complaint or other court pleading; provided, further, that the Trustee takes customary precautions to preserve the confidentiality of such documents including but not limited to filing such complaints or other court pleadings under seal or redact references to such documents and/or communications, as appropriate, unless a court of competent jurisdiction orders otherwise. For the avoidance of doubt, the TOC, each member serving on the TOC, and each Direct Claims Trust Beneficiary shall have no right, title or interest in and/or to any privilege or immunity that the Direct Claims Trust Beneficiaries transfer, assign, and deliver to the Direct Claims Trust and the Trustee in his or her capacity as the Trustee, and such privilege and immunity shall only be the Direct Claims Trust's and Trustee's in its capacity as the Trustee to preserve, assert or waive.

1.4     **<u>Acceptance of Assets and Assumption of Liabilities</u>**

(a)     In furtherance of the purposes of the Direct Claims Trust, the Direct Claims Trust hereby expressly accepts the transfer to the Direct Claims Trust of the Direct Claims Trust Assets in the time and manner as, and subject to the terms, contemplated in the Plan.

(b)      In this Trust Agreement, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

(c)      The Bankruptcy Court shall have continuing jurisdiction over the Direct Claims Trust, provided, however, that the courts of the State of Delaware, including any federal court located therein, shall also have jurisdiction over the Direct Claims Trust.

## ARTICLE II

## POWERS, TRUST ADMINISTRATION, AND REPORTING

2.1      **Powers**

(a)      The Trustee is and shall act as a fiduciary to the Direct Claims Trust in accordance with the provisions of the Governing Documents. The Trustee shall, at all times, administer the Direct Claims Trust in accordance with the purposes set forth in Section 1.2 above and the Plan. Subject to the limitations set forth in the Governing Documents, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfil the purposes of the Direct Claims Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2 below, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)      Except as required by applicable law or as otherwise specified herein or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)     Without limiting the generality of Section 2.1(a) above, and except as limited herein, including as set forth in Sections 4.14 and 4.15 of this Trust Agreement, or by the Plan, the Trustee shall have the power to:

(i)     receive and monetize the Direct Claims Trust Assets and exercise all rights with respect thereto;

(ii)     invest the monies held from time to time by the Direct Claims Trust in accordance with the Investment Guidelines pursuant to Section 3.2 below;

(iii)     incur expenses and other obligations of the Direct Claims Trust necessary to carry out the purposes of the Direct Claims Trust in accordance with this Trust Agreement and the Plan, and arrange for such expenses to be advanced by the Liquidating Trust as set forth in this Trust Agreement and the Plan;

(iv)     to borrow such sums of money or enter into litigation funding agreements, at any time and from time to time, for such periods of time, upon such terms and conditions, from such Persons, for such purposes as the Trustee deems reasonable;

(v)     establish such funds, reserves, and accounts within the Direct Claims Trust, as the Trustee deems useful in carrying out the purposes of the Direct Claims Trust;

(vi)     commence, pursue, investigate, prosecute, settle and resolve any of the Direct Claims which constitute Direct Claims Trust Assets;

(vii)     establish, supervise, and administer the Direct Claims Trust and make distributions to Direct Claims Trust Beneficiaries pursuant to the terms of Governing Documents;

(viii)     appoint such officers and retain such consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative,

7

accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Direct Claims Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(ix)    pay reasonable compensation for any of the Direct Claims Trust's consultants, advisors, independent contractors, experts, and agents for legal, financial, administrative, accounting, investment, auditing, forecasting, and alternative dispute resolution services and activities as the Direct Claims Trust requires, as well as the fees and expenses of the TOC and TOC Professionals, in each case, subject to the procedures set forth herein;

(x)    pay reasonable compensation for the Trustee, the Delaware Trustee, consultants, advisors, independent contractors, experts and agents, and reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder, in each case, subject to the procedures set forth herein;

(xi)    enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the Direct Claims Trust, provided such arrangements are not material and do not conflict with any other provision of this Trust Agreement or the Plan;

(xii)    in accordance with Section 4.4 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 4.4 below), to the fullest extent that a statutory trust organized under the laws of the State

8

of Delaware is from time to time entitled to defend, indemnify, hold harmless, and/or insure its directors, trustees, officers, employees, consultants, advisors, agents, and representatives. No party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 below; and

(xiii)   exercise any and all other rights, and take any and all other actions as are permitted, of the Trustee in accordance with the terms of this Trust Agreement and the Plan.

(d)      The Direct Claims Trust shall not have the power to guarantee any debt of other persons.

(e)      The Trustee shall endeavour to make timely distributions and not unduly prolong the duration of the Direct Claims Trust.

(f)      The Trustee shall consult with the TOC on the matters set forth in Section 4.14 below. The Trustee shall obtain the consent of the TOC prior to taking action with respect to the matters set forth in Section 4.15 below, as and to the extent set forth therein.

2.2      **General Administration**

(a)      The Trustee shall act in accordance with the Governing Documents. In the event of a conflict between the terms of this Trust Agreement and the Plan, the terms of the Plan shall control. For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

(b)      The Trustee shall (i) timely file such tax returns and pay any taxes imposed on the Direct Claims Trust in accordance with Section 5.3, (ii) comply with all applicable reporting and

9

withholding obligations in accordance with Section 5.4, and (iii) satisfy all requirements necessary to qualify and maintain qualification of the Direct Claims Trust as a "grantor trust" pursuant to Sections 671-677 of the IRC.

(c)     Other than the obligations of the Trustee specifically set forth in the Governing Documents, the Trustee shall have no obligations of any kind or nature with respect to his or her position as such.

(d)     The Liquidating Trust and the Direct Claims Trust shall fully cooperate with each other with respect to their respective investigation and/or prosecution of any Causes of Action. As indicated in Article I, Section 1.3 of this Trust Agreement, cooperation shall include, but not be limited to, sharing and/or exchanging documents obtained in discovery and such other forms of mutual cooperation that, in the sole discretion of the Trustee is appropriate and in the best interest of the Liquidating Trust and the Direct Claims Trust. Such cooperation shall be subject to all available common interest protection and/or privileges applicable to the foregoing investigation and/or prosecution.

(e)     In the event that (i) the Liquidating Trust and the Direct Claims Trust prosecute related claims against a single defendant, (ii) a recovery is received related to such claims, and (iii) the Trustee determines in his or her commercially reasonable judgment that there is no clear allocation of such recovery between claims brought by the Liquidating Trust and claims brought by the Direct Claims Trust, the Trustee shall in its discretion allocate between 40-60% of such recovery to the Trust with the remainder to be allocated to the Liquidating Trust.

2.3     **Reporting**

(a)     The Trustee shall timely prepare, file and distribute such statements, reports and submissions to the extent required by applicable law.

(b)     The Trustee shall cause to be prepared and filed with the Bankruptcy Court, no later than thirty-one (31) days after June 30 and December 31 of each calendar year, a semi-annual report (the "**Semi-Annual Report**") regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it and other matters relating to the implementation of the Plan.

(c)     The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event no later than one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing special-purpose financial statements of the Direct Claims Trust (including, without limitation, a special-purpose statement of assets, liabilities and net claimants' equity, a special-purpose statement of changes in net claimants' equity and a special-purpose statement of cash flows). The Trustee shall not be required to obtain an audit of the Annual Report by a firm of independent certified public accountants.  The Annual Report shall be made available to the Direct Claims Trust Beneficiaries by means of actual notice, provided, however, the Trustee may post the Annual Report on a website maintained by the Direct Claims Trust in lieu of actual notice to each Direct Claims Trust Beneficiary (unless otherwise required by law) (the "**Website**").

11

## ARTICLE III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

3.1    **Accounts**

(a)    The Trustee shall maintain one or more accounts (the "**Trust Accounts**") on behalf of the Direct Claims Trust with one or more financial depository institutions (each a "**Financial Institution**").

(b)    The Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to the considerations set forth in Section 3.1(a) above.

(c)    The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for distributions to the Direct Claims Trust Beneficiaries and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve," a "disputed ownership fund," or a "qualified settlement fund" within the meaning of the IRC or Treasury Regulations.

3.2    **Investment Guidelines**

(a)    The Trustee may invest the Trust Assets in accordance with the Investment Guidelines, attached hereto as **Exhibit 2** (the "**Investment Guidelines**").

12

(b)      In the event the Direct Claims Trust holds any non-liquid assets, the Trustee shall own, protect, oversee, and monetize such non-liquid assets in accordance with the Governing Documents. This Section 3.2(b) is intended to modify the application to the Direct Claims Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

(c)      Cash proceeds received by the Direct Claims Trust in connection with its monetization of the non-liquid Trust Assets shall be invested in accordance with the Investment Guidelines until needed for the purposes of the Direct Claims Trust as set forth in Section 1.2 above.

3.3      **Payment of Operating Expenses**

(a)      All operating expenses of the Direct Claims Trust shall be paid by the Trustee from the proceeds of Trust Assets in accordance with this Trust Agreement.  In the event that amounts need to be advanced to the Direct Claims Trust by the Liquidating Trust in order to pay Trust expenses, such advances shall be repaid to the Liquidating Trust in full upon realization of a recovery of Direct Claims Trust Assets before distribution of any proceeds to the Direct Claims Trust Beneficiaries.[2] None of the Trustee, Delaware Trustee, the TOC, the Direct Claims Trust Beneficiaries, nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any operating expense or other liability of the Direct Claims Trust. Except as expressly set forth in the Plan, none of the Debtors, nor any of their officers, agents, advisors, professionals or employees shall be liable for the payment of any operating

---

[2] The Direct Claims Trust will not make any additional payments the Liquidating Trust, including but not limited to cooperation payments as referenced in the Plan, without the approval of the TOC.

13

expense or other liability of the Direct Claims Trust, the Trustee, the Delaware Trustee or the TOC. To the extent that the Trustee determines that the Direct Claims Trust is likely to incur a cash shortfall prior to the termination and winding up of the Direct Claims Trust, the Trustee may determine to establish cash reserves from the corpus of the Direct Claims Trust, which cash reserves shall be allocated equitably to the Direct Claims Trust Beneficiaries by the Trustee in his or her judgment.

(b)     Direct Claims Trust Beneficiaries who incur out-of-pocket expenses from and after the Effective Date in connection with the Trust's pursuit of their Direct Claims, including out-of-pocket expenses for producing documents, sitting for depositions, or testifying at trial, shall be reimbursed their reasonable costs, subject to review and objection by the Trustee and TOC.

3.4     **Distributions to Direct Claims Trust Beneficiaries**

(a)     The Trustee will make distributions to Direct Claims Trust Beneficiaries in a fair, consistent and equitable manner in accordance with the Governing Documents.

(b)     Distributions to Direct Claims Trust Beneficiaries shall be made, as determined by the Trustee in his or her discretion subject to the terms of the Plan, provided, however, the Direct Claims Trust must distribute at least annually to the Direct Claims Trust Beneficiaries its net income plus all net proceeds from the sale of assets, except that the Direct Claims Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its assets or to meet claims and contingent liabilities (including disputed claims). Such distributions shall be made to the Direct Claims Trust Beneficiaries pro rata in proportion to the amount of their Allowed Claims.

14

(c)     The Direct Claims Trust may withhold or deduct from amounts distributable to any

Person any and all amounts, determined in the Trustee's reasonable sole discretion, required by

any law, regulation, rule, ruling, directive, or other governmental requirement (including, without

limitation, tax withholding in accordance with Section 5.4 below).

(d)     The Trustee may retain a distribution agent for the effective administration and

distribution of amounts payable to Direct Claims Trust Beneficiaries; provided, however, that such

distribution agent shall have no greater authority than, and shall be subject to the same restrictions

as, the Trustee under this Trust Agreement.

(e)     Subject to Bankruptcy Rule 9010, any distribution to a Direct Claims Trust

Beneficiary shall be made: (1) at the addresses set forth on the respective proofs of Claim filed by

such holders; (2) at the address set forth in any written notices of address changes delivered to the

Trustee after the date of any related proof of Claim; or (3) at the address reflected in the schedules

if no proof of Claim is filed with the Trustee and the Trustee has not received a written notice of a

change of address.  Except as set forth in the Plan, if any Direct Claims Trust Distribution or other

communication from the Direct Claims Trust is returned as undeliverable, no further Direct Claims

Trust Distribution shall be made to such holder unless the Trustee is notified in writing of such

holder's then current address.  Undeliverable Direct Claims Trust Distributions shall remain in the

possession of the Trustee until the earlier of (i) such time as a Direct Claims Trust Distribution

becomes deliverable or (ii) such undeliverable Direct Claims Trust Distribution becomes

unclaimed property pursuant to the provisions of the Plan and this Trust Agreement.  Except as

required by law, the Trustee (or its duly authorized agent) shall have no obligation to locate any

Direct Claims Trust Beneficiary.

(f)      After final Direct Claims Trust Distributions have been made in accordance with the Governing Documents, and adequate provision has been made for all final obligations of the Direct Claims Trust, the Trustee shall have the authority to direct the remaining Trust Assets to a tax-exempt organization as selected by the Trustee in his or her discretion.

(g)      Checks issued to Direct Claims Trust Beneficiaries shall be null and void if not negotiated within one hundred eighty (180) calendar days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Trustee by the Direct Claims Trust Beneficiary to whom such check was originally issued.  Any Direct Claim in respect of such a voided check shall be made within one hundred eighty (180) calendar days after the date of issuance of such check.  If no request is made as provided in the preceding sentence, the check shall be deemed undistributable and shall be subject to the provisions of Section 3.4(c).

(h)      Cash payments to foreign Direct Claims Trust Beneficiaries may be made, at the option of the Trustee, in such funds and by such means as are necessary or customary in the foreign jurisdiction of such foreign holder.

(i)      The Trustee shall have the discretion to determine the timing of Direct Claims Trust Distributions in the most efficient and cost-effective manner possible; provided, however, that the Trustee's discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

(j)      Notwithstanding any provision in the Governing Documents to the contrary, the Trustee, in the Trustee's sole discretion, may decline to make any distribution of $100 or less, due to the economic inefficiency of making a distribution of such a de minimis amount.

16

# ARTICLE IV

## TRUSTEE; DELAWARE TRUSTEE

### 4.1 __Number__

In addition to the Delaware Trustee appointed pursuant to Section 4.12 below, there shall be one (1) Trustee who shall be the person named on the signature pages hereof.

### 4.2 __Term of Service__

(a) The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) below, (iii) his or her removal pursuant to Section 4.2(c) below, or (iv) the termination of the Direct Claims Trust pursuant to Section 7.2 below.

(b) The Trustee may resign at any time upon written notice filed with the Bankruptcy Court and delivered to the TOC. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c) The Trustee may be removed by the Bankruptcy Court upon motion by the TOC in the event the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause. Other good cause shall include, without limitation, (i) fraud, self-dealing, intentional misrepresentation, wilful misconduct, indictment for or conviction of a felony, in each case whether or not connected to the Direct Claims Trust, or (ii) a consistent pattern of neglect and failure to perform or participate in performing the duties of Trustee hereunder.

17

(d)      In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee, such vacancy shall be filled by the TOC as set forth herein. The TOC will nominate an individual to serve as successor Trustee.  If the majority of the TOC then in office agree upon a successor Trustee, then, subject to the approval of the Bankruptcy Court, such individual shall become the Trustee.  In the event that a majority of the TOC then in office cannot agree on a successor Trustee, the matter will be resolved pursuant to Section 7.12 below.

(e)      Immediately upon the appointment of any successor Trustee pursuant to Section 4.2(d) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(f)      Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 4.2(b) above, (iii) his or her removal pursuant to Section 4.2(c) above, and (iv) the termination of the Direct Claims Trust pursuant to Section 6.2 below.

4.3      **Compensation and Expenses of the Trustee**

(a)      The Trustee shall receive compensation on an hourly basis for its service as Trustee on matters related to the operation of the Trust.  The hourly rate shall be the Trustee's usual and customary rate then in effect, which currently range from $855 per hour (subject to the consent of the TOC, which consent shall not be unreasonably withheld or delayed).

18

(b)     The Direct Claims Trust will promptly reimburse the Trustee for all reasonable and documented out-of-pocket costs and expenses incurred by the Trustee in connection with the performance of his or her duties hereunder.

4.4     **Standard of Care; Exculpation**

(a)     As used herein, the term "**Trust Indemnified Party**" shall mean each of (i) the Trustee, (ii) the Delaware Trustee, (iii) the TOC and (iv) the officers, employees, consultants, advisors, and agents of each of the Direct Claims Trust, the Trustee and the TOC, including the Trustee Professionals and the TOC Professionals.

(b)     To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall not have or incur any liability for actions taken or omitted in their capacities as Trust Indemnified Parties, or on behalf of the Direct Claims Trust, except those acts found by a final order of a court of competent jurisdiction ("**Final Order**") to be arising out of their wilful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Direct Claims Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or this Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case except for any actions or inactions found by Final Order to be arising out of their wilful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Direct Claims Trust.

(c)     To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Direct Claims Trust or the Direct Claims Trust Beneficiaries, it is hereby understood and agreed by the Parties that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties; provided, however, that with respect to the Trust Indemnified Parties other than the Delaware Trustee the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 4.4 and its subparts.

4.5     **Protective Provisions**

(a)     Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 4.5.

(b)     In the event the Trustee retains counsel (including at the expense of the Direct Claims Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder. Such attorney-client privilege shall be vested solely in the Trustee, on behalf of the Direct Claims Trust, and not in the TOC, or any other person, committee or subcomponent of the Direct Claims Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of Direct Claim. A successor Trustee shall

20

succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Party or other person may raise any exception to the attorney-client privilege described herein as any such exceptions are hereby waived by all Parties.

(c)    No Trust Indemnified Party shall be personally liable under any circumstances, except for his or her own wilful misconduct, bad faith, gross negligence or fraud as determined by a Final Order.

(d)    No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties and powers hereunder.

(e)    In the exercise or administration of the Direct Claims Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

4.6    **Indemnification**

(a)    To the maximum extent permitted by applicable law, the Trust Indemnified Parties shall be entitled to indemnification and reimbursement for reasonable fees and expenses (including attorneys' fees and costs but excluding taxes in the nature of income taxes imposed on compensation paid to the Trust Indemnified Parties) in defending any and all of their actions or inactions in their capacity as Trust Indemnified Parties, or on behalf of the Direct Claims Trust, and for any other liabilities, losses, damages, claims, costs and expenses arising out of or due to the implementation or administration of the Plan or the Trust Agreement (other than taxes in the nature of income taxes imposed on compensation paid to such persons), in each case, except for any actions or inactions found by Final Order to be arising out of their wilful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of any of the Trust Indemnified Parties shall be satisfied from the Trust Assets.

(b)    Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Direct Claims Trust shall be paid by the Direct Claims Trust from the Direct Claims Trust Assets in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by Final Order that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Direct Claims Trust. The Trustee may, in his or her discretion, authorize an advance of reasonable expenses, costs and fees (including attorneys' fees and costs) to be incurred by or on behalf of the Trust Indemnified Parties, as set forth herein.

(c)      The Trustee shall purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include insurance with respect to liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)      The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)      The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

4.7      **Trustee Independence**

The Trustee shall not act as an attorney, agent, or other professional for any Direct Claims Trust Beneficiary or any holder of a Direct Claim. For the avoidance of doubt, this Section 4.7 shall not be applicable to the Delaware Trustee.

23

4.8    **No Bond**

Neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

4.9    **Burden of Proof**

In any proceeding brought by any of the Debtors, or any other person who is bound by this Trust Agreement challenging any action, determination or failure to act of the Trustee in discharge of his or her duties under this Trust Agreement on the basis that such action, determination or failure constitutes gross negligence, wilful misconduct or fraud, the person bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act constituted gross negligence, wilful misconduct, or fraud. Notwithstanding anything to the contrary in this Trust Agreement or any duty otherwise existing at law or equity, each determination, action or failure to act of the Trustee in the discharge of his or her duties under this Trust Agreement is, to the extent consistent with this Trust Agreement, hereby deemed to not constitute a breach of this Trust Agreement or any duty hereunder or existing at law, in equity or otherwise.

4.10    **Reliance by the Trustee**

The Trustee may absolutely rely, and shall be fully protected in acting or refraining from acting if he or she relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that he or she has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper

party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of gross negligence, wilful misconduct, or fraud in respect of the Trustee's duties as found by a final and non-appealable court of competent jurisdiction, or material breach of this Trust Agreement, the Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon. The Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Trust Agreement, the Plan or any other document executed in connection therewith, and the Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

4.11   **Books and Records**

Upon notice to the Bankruptcy Court and the TOC, the Trustee shall be free, in his or her discretion to abandon, destroy or otherwise dispose of any books and records in his possession that the Trustee deems not necessary for the continued administration of the Plan and not required to be retained under applicable law, without the need for any order of the Bankruptcy Court, and shall have no liability for same. This notice provision shall not create any right by any third party to access to privileged or confidential information held by the Direct Claims Trust.

4.12   **Delaware Trustee**

(a)    There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act. The Delaware Trustee shall either be (i) a natural person who is at least twenty-one (21) years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of

applicable Delaware law to be eligible to serve as the Delaware Trustee, and shall act through one or more persons authorized to bind such entity. If at any time the Delaware Trustee shall cease to be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 4.12, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.12(c) below. For the avoidance of doubt, the Delaware Trustee will only have such rights, duties and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Trustee shall have no liability for the acts or omissions of any Delaware Trustee.

(b)      The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities of the Trustee set forth herein. The Delaware Trustee shall be a trustee of the Direct Claims Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of Chapter 38 of title 12 of the Delaware Code, 12 Del. C. Section 3801 *et seq.* (the "**Act**") and for taking such actions as are required to be taken by a Delaware Trustee under the Act. The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to accepting legal process served on the Direct Claims Trust in the State of Delaware and the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act. There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. These duties shall be deemed purely ministerial in nature, and the Delaware Trustee shall not be liable except for the performance of such duties, and no implied covenants or obligations shall be read into this Trust Agreement against the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating to the Direct Claims Trust or the Direct Claims Trust Beneficiaries, such duties and liabilities are replaced by the duties and

26

liabilities of the Delaware Trustee expressly set forth in this Trust Agreement. The Delaware Trustee shall have no liability for the acts or omissions of any Trustee. Any permissive rights of the Delaware Trustee to do things enumerated in this Trust Agreement shall not be construed as a duty and, with respect to any such permissive rights, the Delaware Trustee shall not be answerable for other than its wilful misconduct, bad faith, gross negligence or fraud. The Delaware Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Trust Agreement at the request or direction of the Trustee or any other person pursuant to the provisions of this Trust Agreement unless the Trustee or such other person shall have offered to the Delaware Trustee security or indemnity (satisfactory to the Delaware Trustee in its discretion) against the costs, expenses and liabilities that may be incurred by it in compliance with such request or direction. The Delaware Trustee shall be entitled to request and receive written instructions from the Trustee and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Trustee. The Delaware Trustee may conclusively rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties, not only as to due execution, validity and effectives, but also as to the truth and accuracy of any information contained therein. The Delaware Trustee may, at the expense of the Direct Claims Trust, request, rely on and act in accordance with officer's certificates and/or opinions of counsel, and shall incur no liability and shall be fully protected in acting or refraining from acting in accordance with such officer's certificates and opinions of counsel.

(c)     The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustee in accordance with the terms of Section 4.12(d) below. The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; provided that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.12(d) below; provided further that if any amounts due and owing to the Delaware Trustee hereunder remain unpaid for more than ninety (90) days, the Delaware Trustee shall be entitled to resign immediately by giving written notice to the Trustee. If the Trustee does not act within such sixty (60) day period, the Delaware Trustee, at the expense of the Direct Claims Trust, may apply to the Court of Chancery of the State of Delaware or any other court of competent jurisdiction for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee, and any fees and expenses due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of his or her duties and obligations under this Trust Agreement. The successor Delaware Trustee shall

28

make any related filings required under the Act, including filing a Certificate of Amendment to the Certificate of Trust of the Direct Claims Trust in accordance with Section 3810 of the Act.

(e)      Notwithstanding anything herein to the contrary, any business entity into which the Delaware Trustee may be merged or converted or with which it may be consolidated or any entity resulting from any merger, conversion or consolidation to which the Delaware Trustee shall be a party, or any entity succeeding to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor of the Delaware Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(f)      The Delaware Trustee shall be entitled to compensation for its services as agreed pursuant to a separate fee agreement between the Direct Claims Trust and the Delaware Trustee, which compensation shall be paid by the Direct Claims Trust. Such compensation is intended for the Delaware Trustee's services as contemplated by this Trust Agreement. The terms of this paragraph shall survive termination of this Trust Agreement and/or the earlier resignation or removal of the Delaware Trustee.

(g)      The Delaware Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document, other than this Trust Agreement, whether or not, an original or a copy of such agreement has been provided to the Delaware Trustee. The Delaware Trustee shall have no duty to know or inquire as to the performance or non-performance of any provision of any other agreement, instrument or document, other than this Trust Agreement. Neither the Delaware Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Direct Claims Trust, the Trustee or any other person, or any of

29

their directors, members, officers, agents, affiliates or employee, nor shall it have any liability in connection with the malfeasance or nonfeasance by such party. The Delaware Trustee may assume performance by all such persons of their respective obligations. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other person. The Delaware Trustee shall have no responsibilities (except as expressly set forth herein) as to the validity, sufficiency, value, genuineness, ownership or transferability of any Trust Asset, written instructions, or any other documents in connection therewith, and will not be regarded as making, nor be required to make, any representations thereto.

(h)    The Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Trust Agreement arising out of, or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

(i)    In no event shall the Delaware Trustee be responsible or liable for special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Delaware Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

4.13   **Trust Meetings.**

(a)      **Regular Meeting**.  Unless otherwise agreed to by the TOC, the Trustee shall hold regular Direct Claims Trust meetings with the TOC not less than quarterly, which may be held at such times and at such places (including remotely by phone or video conference) as may be determined from time to time by the Trustee, in consultation with the TOC.  For the avoidance of doubt, the Delaware Trustee shall not be required or permitted to attend any meetings of the Trustee contemplated by this Section 4.13.

(b)      **Special Meetings**.  Special meetings of the Trustee may be called by the Trustee by giving written notice to the TOC not less than one (1) Business Day prior to the date of the meeting.  Any such notice shall include the time, place, and purpose of the meeting, given by overnight courier, personal delivery, facsimile, electronic mail or other similar means of communication.  Notice shall be addressed or delivered to the address as shown upon the records of the Trust or as may have been given to the Trustee for purposes of notice.  Notice by overnight courier shall be deemed to have been given one (1) Business Day after the time that written notice is provided to such overnight courier.  Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or actually transmitted by the person giving the notice by electronic means to the recipient.

(c)      **Participation in Meetings by Telephone Conference**.  The Trustee may convene, and persons may participate in, a meeting by conference telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all persons participating in such meeting can hear one another. Participation in a meeting pursuant to this Section 4.13(c) shall constitute presence in person at such meeting.

(d)     **Waiver of Notice**.  Notice of a meeting need not be given to any person who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed with the Trust records or made a part of the minutes of the meeting. Attendance at a meeting shall constitute a waiver of notice of such meeting. Neither the business to be transacted at, nor the purpose of, any Trust meeting need be specified in any waiver of notice.

(e)     **Adjournment**.  A meeting may be adjourned by the Trustee to another time and place.

## 4.14    Matters Requiring Consultation with TOC

The Trustee shall consult with the TOC on any extraordinary circumstance which could have a material impact on the Direct Claims Trust, including without limitation, entering into arrangements not specified in Section 2.1(c) with third parties that the Trustee may deem useful in carrying out the purposes of the Direct Claims Trust, subject in all respects to such arrangements not conflicting with any other provision of this Trust Agreement or the Plan.

## 4.15    Matters Requiring Consent of TOC

The Trustee shall obtain the consent of the TOC, or, otherwise, Bankruptcy Court approval in the event of a dispute in accordance with Section 7.12 hereof, for the items listed below:

(a)     Any proposed procedures to ensure that decisions are made consistent with the respective fiduciary duties owed to the Liquidating Trust and the Direct Claims Trust in the event of a conflict between the Liquidating Trust and the Direct Claims Trust with respect to litigation strategy, settlement or resource allocation;

(b)      Settlement, abandonment, or dismissal of any Claim or Cause of Action asserted by the Direct Claims Trust in an amount greater than $2,500,000;

(c)      Any Distribution on Claims other than those required on the Effective Date under claim settlements;

(d)      Any proposed modification to the indemnification provisions of the Trust Agreement;

(e)      Any proposed sale, transfer or exchange of Direct Claims Trust Assets above $5,000,000 (any proposed sale of Direct Claims Trust Assets below such amount shall not require TOC consent);

(f)      Retention of litigation professionals to pursue Claims and Causes of Action on behalf of the Direct Claims Trust, other than Direct Claims Trust general/local counsel, and terms of such retention;

(g)      To borrow such sums of money or enter into litigation funding agreements;

(h)      Any proposed material modifications to the Trust Agreement; and

(i)      Any proposed modification to the compensation of the Trustee other than routine hourly rate increases.

The consent of the TOC shall not be unreasonably withheld, conditioned, or delayed.

4.16    **Trustee's and TOC's Employment of Professionals.**

(a)    Subject to the limitations set forth in Section 4.15 of this Agreement, the Trustee may, but is not required to, retain and/or consult accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties (the "**Trustee Professionals**") deemed appropriate by the Trustee to assist in matters for the Direct Claims Trust within the Trustee's purview.

(b)    The TOC may, but is not required to, retain and/or consult, legal counsel and such other parties deemed appropriate by the TOC to assist in matters within the TOC's purview (the "**TOC Professionals**," and with Trustee Professionals, the "**Direct Claims Trust Professionals**") where such retention of separate professionals (other than existing Trust professionals) is necessary to discharge the TOC's duties, provided that no TOC Professionals may be retained to act on behalf of any holder of a Direct Claim. The fees of such counsel, if retained, shall be reasonable and shall not exceed $15,000 on a monthly basis in the absence of a dispute.

(c)    Prior to payment of any fees of a professional retained by the Truste or the TOC, the professional shall circulate a monthly fee statement detailing the compensation sought, including time records with a description of the tasks performed, and expenses incurred for which reimbursement is sought to the Trustee and the TOC.  The Trustee and the TOC shall have 10 days to review and dispute such monthly fee statements, and following such review the Trustee is authorized to pay any undisputed portion of such fee statements.  If any amount is disputed and cannot be resolved consensually, the Bankruptcy Court shall resolve the disputed fees on motion by the professional, the Trustee, or the TOC.

# ARTICLE V

# TAX MATTERS

## 5.1    Treatment of Direct Claims Transfer

For all United States federal income tax purposes, all Parties shall treat the transfer of the Direct Claims Trust Assets to the Direct Claims Trust, including any amounts or other assets subsequently transferred to the Direct Claims Trust, as the transfer by such persons, as grantors, to the Direct Claims Trust in exchange for Direct Claims Trust Interests.

## 5.2    Income Tax Status

(a)    For United States federal income tax purposes (and for purposes of all state, local and other jurisdictions to the extent applicable) this Direct Claims Trust shall be treated as a grantor trust pursuant to IRC Sections 671-677.

(b)    The Direct Claims Trust shall at all times to be administered so as to constitute a domestic trust for United States federal income tax purposes.

## 5.3    Tax Returns

In accordance with Section 6012 of the IRC and Section 1.671-4(a) of the Treasury Regulations, the Trustee shall file with the IRS annual tax returns for the Direct Claims Trust on Form 1041 as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. In addition, the Trustee shall file in a timely manner for the Direct Claims Trust such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon. Within a reasonable time following the end of the taxable year, the Direct Claims

35

Trust shall send to each Direct Claims Trust Beneficiary a separate statement setting forth such Direct Claims Trust Beneficiary's share of items of income, gain, loss, deduction or credit and will instruct each such Direct Claims Trust Beneficiary to report such items on his or her applicable income tax return.

5.4    **Withholding of Taxes and Reporting Related to Direct Claims Trust Operations**

The Direct Claims Trust shall comply with all withholding, deduction and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions made by the Direct Claims Trust shall be subject to any applicable withholding, deduction and reporting requirements. The Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such withholding, deduction, payment, and reporting requirements. All amounts properly withheld or deducted from distributions to a Direct Claims Trust Beneficiary as required by applicable law and paid over to the applicable taxing authority for the account of such Direct Claims Trust Beneficiary shall be treated as part of the Direct Claims Trust Distribution to such Direct Claims Trust Beneficiary. To the extent that the operation of the Direct Claims Trust creates a tax liability imposed on the Direct Claims Trust, the Direct Claims Trust shall timely pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Direct Claims Trust payable without Bankruptcy Court order. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Direct Claims Trust Beneficiaries shall be required to provide any information necessary to effect the withholding and reporting of such taxes. The Trustee may require each Direct Claims Trust Beneficiary to furnish to the Direct Claims Trust (or its designee) its social security number or employer or taxpayer identification number as assigned by the IRS and complete any related documentation (including but not limited

36

to a Form W-8BEN, Form W-8BENE-E, or Form W-9) (the "**Tax Documents**"). The Trustee may condition any and all distributions to any Direct Claims Trust Beneficiary upon the timely receipt of properly executed Tax Documents and receipt of such other documents as the Trustee reasonably requests, and in accordance with the Plan.

**ARTICLE VI**

**DIRECT CLAIMS TRUST OVERSIGHT COMMITTEE**

6.1     **Members; Action by Members.**

The TOC shall be composed of five (5) members appointed to represent the interests of holders of Direct Claims.  The initial TOC members shall be the following: ACE Engineering & Co., Ltd., Celestica LLC, Contemporary Amperex Technology Co., Limited, JMS Wind Energy, LLC and GreEnergy Resources LLC.  Except as otherwise set forth in the Governing Documents, the TOC shall act by majority vote of TOC members then serving, provided, however, the TOC may continue to act in the event of one or more vacancies on the TOC, in which case majority vote of the TOC members then serving shall be required for action by the TOC.

6.2     **Duties.**

The members of the TOC shall serve in a fiduciary capacity representing holders of Direct Claims. The TOC shall not have any fiduciary duties or responsibilities to any party other than Direct Claims Trust Beneficiaries.  Except for the duties and obligations expressed in this Trust Agreement, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TOC.  To the extent that, at law or in equity, the TOC has duties (including fiduciary duties) and liabilities relating thereto to the Direct Claims Trust, the other

parties hereto, or any Direct Claims Trust Beneficiaries, such duties and liabilities are replaced by the duties and liabilities of the TOC expressly set forth in this Trust Agreement.

6.3     **TOC Information Rights; Reports**

(a)     The TOC shall have reasonable access to the Direct Claims Trust's consultants and other advisors retained by the Direct Claims Trust and its staff (if any), and information available to the Trustee, which access shall be made available as determined by the Trustee in his or her discretion.

(b)     The TOC shall receive monthly reports concerning professional fees charged and annual reports on the Direct Claims Trust's budget. Any disputes concerning same shall be brought before the Bankruptcy Court.

6.4     **[Reserved.]**

6.5     **Term of Office.**

(a)     Each member of the TOC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) below, (iii) his or her removal pursuant to Section 6.5(c) below, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(b)     A member of the TOC may resign at any time by written notice to the other members of the TOC and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(c)     A member of the TOC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the member of the TOC has received reasonable notice and an opportunity to be heard. Other good cause shall mean, without limitation, fraud, self-dealing, intentional misrepresentation, wilful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Direct Claims Trust or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings. Such removal shall require the majority vote of the other members of the TOC and such removal shall take effect only upon the approval of the Bankruptcy Court.

6.6     **Appointment of Successor.**

(a)     In the event of a TOC member vacancy, the remaining TOC members shall propose an individual as successor, subject to the approval of the Trustee, which approval may not be unreasonably withheld.  In the event a successor TOC member is not appointed within sixty (60) days following the occurrence of such vacancy, the Bankruptcy Court may appoint a successor TOC member upon motion of the Trustee.

(b)     Each successor member of the TOC shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 6.5(b) above, (iii) his or her removal pursuant to Section 6.5(c) above, and (iv) the termination of the Trust pursuant to Section 7.2 below.

(c)     No successor TOC member shall be liable personally for any act or omission of his or her predecessor TOC member.  No successor TOC member shall have any duty to investigate the acts or omissions of his or her predecessor TOC member.  No TOC member shall be required

to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

6.7    **Compensation and Expenses of the TOC.**

The members of the TOC shall not be entitled to compensation for their services but shall be reimbursed promptly for all reasonable and documented ordinary and customary out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder (which, for the avoidance of doubt, will not include professionals retained by an individual member of the TOC to advise such member).  The Trust shall include a description of the amounts paid under this Section 6.7 in the Annual Report to be filed with the Bankruptcy Court and posted on the Trust's Website.

6.8    **Procedures for Consultation with and Obtaining the Consent of the TOC.**

(a)    Consultation Process.

(i)    In the event the Trustee is required to consult with the TOC pursuant to Section 4.14 above, the Trustee shall provide the TOC with written advance notice of the matter under consideration, to the extent practicable, and with all relevant information and documents concerning the matter as is reasonably practicable under the circumstances.  The Trustee shall also provide the TOC with such reasonable access to the consultants and other advisors retained by the Direct Claims Trust and its staff (if any) as the TOC may reasonably request during the time that the Trustee is considering such matter, and shall also provide the TOC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee, to the extent practicable.

(ii)     In determining when to take definitive action on any matter subject to the consultation procedures set forth in this Section 6.8(a), the Trustee shall take into consideration the time required for the TOC to meet and consult as to such matter.  In any event, the Trustee shall not take definitive action on any such matter until at least five (5) Business Days after providing the TOC with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived in writing by the TOC or at a meeting where the TOC and Trustee are present, or the Trustee determines in his reasonable discretion that definitive action is required earlier. Notwithstanding the foregoing, the TOC shall have the authority to waive the consultation procedure or any component thereof set forth in this Section 6.8(a).

(b)     <u>Consent Process</u>.

(i)     In the event the Trustee is required to obtain the consent of the TOC pursuant to the Governing Documents or Section 4.15 hereof, the Trustee shall provide the TOC with a written notice stating that its consent is being sought, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the TOC as much relevant additional information concerning the proposed action as is requested by the TOC and as is reasonably practicable under the circumstances.  The Trustee shall also provide the TOC with such reasonable access to the Direct Claims Trust consultants and other advisors retained by the Direct Claims Trust and its staff (if any) as the TOC may reasonably request during the time that the Trustee is considering such action, and shall also provide the TOC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

41

(ii)    For matters requiring the consent of the TOC:

(A)    The TOC must consider in good faith and in a timely fashion any request for its consent by the Trustee, and must in any event advise the Trustee, in writing, of its consent or its objection to the proposed action within five (5) Business Days of receiving the original request for consent from the Trustee, unless the Trustee extends the time for such response. The TOC may not withhold its consent unreasonably. If the TOC decides to withhold its consent, it must explain in detail its objections to the proposed action.  If the TOC does not advise the Trustee, in writing, of its consent or its objections to the action within five (5) Business Days of receiving notice regarding such request (or within such additional time as may be granted by the Trustee in his or her discretion), the TOC's consent to the proposed actions shall be deemed to have been affirmatively granted.

(B)    If, after following the procedures specified in this Section 6.8(b), the TOC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and the TOC shall resolve their dispute pursuant to Section 7.12 below, provided, however in that event the TOC shall have the burden of proof to show the validity of the TOC's objection.

(c)    <u>Disputes</u>. Any disputes between the TOC and the Trustee shall be resolved by the Bankruptcy Court.

## ARTICLE VII

## GENERAL PROVISIONS

7.1    **Irrevocability**

To the fullest extent permitted by applicable law, the Direct Claims Trust is irrevocable.

7.2    **Term; Termination**

(a)    The term for which the Direct Claims Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of this Section 7.2.

(b)    The Trustee shall make continuing efforts to monetize the Direct Claims Trust Assets.

(c)    The Trustee and the Direct Claims Trust shall be discharged or dissolved, as the case may be, at such time as (a) the Trustee determines that there is no longer a need to initiate actions to resolve any remaining issues regarding the allowance and payment of Claims, or (b) all distributions of Cash and other Direct Claims Trust Assets required to be made by the Trustee under the Plan and this Trust Agreement have been made in accordance with provisions of the Plan and this Trust Agreement, provided, however, that in no event shall the Direct Claims Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made by a party in interest within the six (6) month period prior to such fifth (5th) anniversary (and, in the event of further extension, at least six (6) months prior to the end of any extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery on and liquidation of the Direct Claims Trust Assets (the "**Dissolution Date**").

43

(d)     On the Dissolution Date or as soon as reasonably practicable thereafter, after the wind-up of the affairs of the Direct Claims Trust by the Trustee and payment of all of the liabilities have been provided for as required by applicable law including Section 3808 of the Act, all monies remaining in the Direct Claims Trust shall be distributed or disbursed in accordance with Section 3.4.

(e)     Following the dissolution and distribution of the assets of the Direct Claims Trust, the Direct Claims Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the Direct Claims Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Direct Claims Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation. A certified copy of the Certificate of Cancellation shall be given to the Delaware Trustee for its records promptly following such filing.

7.3   **Amendments**

Any amendment to or modification of this Trust Agreement may be made in writing and only with the consent of the Trustee, the TOC (which consent in each case shall not be unreasonably withheld, conditioned or delayed) and subject to the approval of the Bankruptcy Court; provided, however, the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make: (i) minor modifications or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement; or (ii) modifications to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order, statute, ruling or regulation of any federal, state or foreign governmental entity. Notwithstanding the foregoing, no amendment or

modification of this Trust Agreement shall modify this Trust Agreement in a manner that is inconsistent with the Plan or the Confirmation Order other than to make minor modifications or clarifying amendments as necessary to enable the Trustee to effectuate the provisions of this Trust Agreement. Notwithstanding the foregoing, neither this Trust Agreement, nor any Exhibit to this Trust Agreement, shall be modified or amended in any way that is inconsistent the nature and purpose of the Trust set forth in Section 1.2 hereof. Any amendment affecting the rights, duties, immunities or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent. Notwithstanding any other provision of this Trust Agreement, no material modifications may be made to this Section 7.3 of this Trust Agreement without the consent of the Trustee, the unanimous consent of the TOC, and subject to the approval of the Bankruptcy Court.

7.4     **Severability**

Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

7.5     **Notices**

(a)     Notices to Direct Claims Trust Beneficiaries shall be given in accordance with such person's claims form submitted to the Direct Claims Trust.

(b)     Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the Direct Claims Trust:

[_____]

With a copy (which shall not constitute notice) to:

[_____]

To the Delaware Trustee:

[_____]

With a copy (which shall not constitute notice) to:

[_____]

To the TOC:

ACE Engineering & Co., Ltd.

[_____]

Celestica LLC

[_____]

Contemporary Amperex Technology Co., Limited

[_____]

JMS Wind Energy, LLC

[_____]


GreEnergy Resources LLC

[_____]


(c)      All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses.

7.6     **Successors and Assigns**

The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Direct Claims Trust, the Delaware Trustee, the Trustee, the TOC and their respective successors and assigns, except that neither the Direct Claims Trust, the Delaware Trustee, nor the Trustee, may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except in the case of the Delaware Trustee in accordance with Section 4.12 (d), and in the case of the Trustee in accordance with Section 4.2(d) above.

7.7     **Limitation on Direct Claims Trust Interests for Securities Laws Purposes**

Direct Claims Trust Interest (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of descent and distribution or otherwise by operation of law; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

7.8     **Exemption from Registration**

The Parties hereto intend that the interests of the Direct Claims Trust Beneficiaries under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the Direct Claims Trust Interests will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

7.9     **Entire Agreement; No Waiver**

The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein, and in the documents referred to herein (including the Plan), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

7.10  **Headings**

The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

7.11  **Governing Law**

The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; provided, however, that the Parties hereto intend that the provisions hereof shall control and there shall not be applicable to the Direct Claims Trust, the Trustee, the Delaware Trustee, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for the Trustee, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to the Trustee, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial

49

owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of the Trustee or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the TOC or the Delaware Trustee set forth or referenced in this Trust Agreement. Section 3540 of the Act shall not apply to the Direct Claims Trust.

7.12    **Dispute Resolution**

(a)    Unless otherwise expressly provided for herein, the dispute resolution procedures of this Section 7.12 shall be the exclusive mechanism to resolve any dispute arising under or with respect to this Trust Agreement. For the avoidance of doubt, this Section 7.12 shall not apply to the Delaware Trustee in any respect.

(b)    **Informal Dispute Resolution**. Any dispute under this Trust Agreement shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when a disputing party sends to the counterparty or counterparties a written notice of dispute ("**Notice of Dispute**"). Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the Notice of Dispute is received by the counterparty or counterparties, unless that period is modified by written agreement of the disputing party and counterparty or counterparties. If the disputing party and the counterparty or counterparties cannot resolve the dispute by informal negotiations, then the disputing party may invoke the formal dispute resolution procedures as set forth below.

(c)    **Formal Dispute Resolution**. The disputing party shall invoke formal dispute resolution procedures, within the time period provided in the preceding subparagraph, by serving on the counterparty or counterparties a written statement of position regarding the matter in dispute

("**Statement of Position**"). The Statement of Position shall include, but need not be limited to, any factual data, analysis or opinion supporting the disputing party's position and any supporting documentation and legal authorities relied upon by the disputing party. Each counterparty shall serve its Statement of Position within thirty (30) days of receipt of the disputing party's Statement of Position, which shall also include, but need not be limited to, any factual data, analysis or opinion supporting the counterparty's position and any supporting documentation and legal authorities relied upon by the counterparty. If the disputing party and the counterparty or counterparties are unable to consensually resolve the dispute within thirty (30) days after the last of all counterparties have served its Statement of Position on the disputing party, the disputing party may file with the Bankruptcy Court a motion for judicial review of the dispute in accordance with Section 7.12(d) below.

(d)      **Judicial Review**. The disputing party may seek judicial review of the dispute by filing with the Bankruptcy Court (or, if the Bankruptcy Court shall not have jurisdiction over such dispute, such court as has jurisdiction pursuant to Section 1.4 above) and serving on the counterparty or counterparties and the Trustee, a motion requesting judicial resolution of the dispute. The motion must be filed within forty-five (45) days of receipt of the last counterparty's Statement of Position pursuant to the preceding subparagraph. The motion shall contain a written statement of the disputing party's position on the matter in dispute, including any supporting factual data, analysis, opinion, documentation and legal authorities, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly administration of the Direct Claims Trust. Each counterparty shall respond to the motion within the time period allowed by the rules of the court, and the disputing party may file a reply memorandum, to the extent permitted by the rules of the court.

(e)      Notwithstanding anything to the contrary in this Trust Agreement, the Direct Claims Trust shall bear the reasonable costs and expenses of the TOC in connection with any material dispute that arises under this Trust Agreement.

7.13   **Waiver of Conflicts**

To the extent that the Trustee or the TOC seek to retain any Direct Claims Trust Professionals, the Parties agree to waive any conflict of interest claims against such professionals related to such professionals' prior representation of the Committee or any individual member of the Committee during the Debtors' Chapter 11 Cases.

7.14   **Effectiveness**

This Trust Agreement shall become effective on the Effective Date.

7.15   **Counterpart Signatures**

This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

7.16   **Waiver of Trial by Jury**

Each of the parties hereto hereby waives the right to trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Trust Agreement.

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this _____ day of _____, 2025.


**TRUSTEE**


_____

Brian F. Gleason

**DELAWARE TRUSTEE**

[_____]


By:_____

   Name:

   Title:

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**TOC MEMBER**

By:_____

**EXHIBIT 1**

**CERTIFICATE OF TRUST OF THE**

**POWIN DIRECT CLAIMS TRUST**

This Certificate of Trust of the POWIN DIRECT CLAIMS TRUST (the "*Trust*") is being

duly executed and filed by the undersigned Trustees of the Trust, to form a statutory trust under

the Delaware Statutory Trust Act (12 Del. Code § 3801 *et seq.*) (the "*Act*").

<u>Name</u>. The name of the statutory trust formed hereby is:

**POWIN DIRECT CLAIMS TRUST**

<u>Delaware Trustee</u>. The name and business address of the Delaware Trustee of the Trust in

the State of Delaware is:

[•]

<u>Effective Date</u>. This Certificate of Trust shall be effective on _____ ___, 2025.

IN WITNESS WHEREOF, the undersigned, being all of the trustees of the Trust, have

duly executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

TRUSTEE:

[•], not in its individual capacity, but
solely as
Delaware Trustee

By: _____

_____
[_____], in his capacity as a trustee and
not individually.

Name:
Title:

**EXHIBIT 2**

**INVESTMENT GUIDELINES**

Consistent with the provisions of Rev. Proc. 94-45 and notwithstanding any other provision of the Trust Agreement, the investment powers of the Trustee, other than those reasonably necessary to maintain the value of the assets and to further the direct claims purpose of the trust, must be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

## **EXHIBIT D**

**Notice of Confirmation and Effective Date**

**DENTONS US LLP**

Tania M. Moyron (admitted *pro hac vice*)
Van C. Durrer, II (admitted *pro hac vice*)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
            van.durrer@dentons.com

John D. Beck (admitted *pro hac vice*)
Sarah M. Schrag (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
            sarah.schrag@dentons.com

*Counsel for Debtors and
Debtors in Possession*

**TOGUT, SEGAL & SEGAL LLP**

Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted *pro hac vice*)
Eitan Blander (admitted *pro hac vice*)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  altogut@teamtogut.com
            eblander@teamtogut.com

*Counsel for Debtors and
Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>Powin, LLC, *et al.*,[1]<br><br>　　　　　Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered) |

**NOTICE OF (I) CONFIRMATION AND EFFECTIVE DATE OF THE JOINT COMBINED
DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION
OF POWIN LLC AND AFFILIATES THEREOF AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS AND (II) DEADLINES
UNDER THE PLAN AND CONFIRMATION ORDER TO FILE ADMINISTRATIVE
CLAIMS, PROFESSIONAL FEE CLAIMS, AND REJECTION CLAIMS**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [15241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].  The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. **Entry of Confirmation Order**. On _____ __, 2025, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.[•]] (the "Confirmation Order") confirming the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 942] attached as Exhibit A to the Confirmation Order (together with all exhibits thereto, and as may be amended, modified or supplemented, the "Plan")[2] in the Chapter 11 Cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. **Effective Date of the Plan**. The Effective Date of the Plan was _____, 2025.

3. **Administrative Claim Bar Date**. As provided for in Section 7 of the Plan (defined term Administrative Expense Bar Date) and in the Confirmation Order, all requests for payment of an Administrative Claim incurred after [●] must be filed with this Court and served on counsel to the Liquidating Trustee, counsel to the Debtors, and counsel to the U.S. Trustee **no later than _____ __, 2025 (the date that is 60 days after the Effective Date);** *provided*, *however*, that Persons that asserted administrative claims with a timely filed Proof of Claim for prepetition Claims or Rejection Claims do not need to file additional requests for payment of such Administrative Claims. Nothing herein shall be deemed to extend existing deadlines established for filing certain Administrative Claims accrued as of [●] pursuant to the previous Administrative Claims bar date established as to such Administrative Claims. [Docket No. 758].

4. **Deadline to File Professional Fee Claims**. As provided for in Section 7.3 of the Plan and in the Confirmation Order, all final applications for payment of the Professional Fee Claims must be filed with this Court and served on counsel to the Debtors and the Liquidating Trustee **no later than _____ __, 2025 (the date that is 45 days after the Effective Date)**, unless otherwise ordered by this Court or such later date is agreed to by the Liquidating Trustee.

5. **Deadline to File Rejection Claims**. As provided for in Section 12.2 of the Plan and in the Confirmation Order, unless otherwise provided by a Bankruptcy Court Order, any Proofs of Claim asserting Rejection Claims pursuant to the Plan or otherwise must be Filed with the Claims Agent **by the earlier of [●], 2025 (the date that is thirty (30) days after the Effective Date) or thirty (30) days after an order of the Bankruptcy Court approving such rejection. Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan, as applicable. Any Rejection Claims that are not timely Filed pursuant to Section 12.2 of the Plan shall be forever disallowed and barred.**

6. **Inquiries by Interested Parties**. Copies of the Confirmation Order (to which the Plan is attached as Exhibit A) may be examined free of charge at https://www.veritaglobal.net/powin. The Confirmation Order is also on file with the Bankruptcy Court and may be viewed by accessing the Bankruptcy Court's website at https://www.njb.uscourts.gov/. To access documents on the Bankruptcy

---

[2] Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan.

Court's website, you will need a PACER password and login, which can be obtained at www.pacer.psc.uscourts.gov.

Dated:  November [•], 2025

**DENTONS US LLP**

*/s/ DRAFT*

Tania M. Moyron (admitted pro hac vice)
Van C. Durrer, II (admitted pro hac vice)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email: tania.moyron@dentons.com
       van.durrer@dentons.com

John D. Beck (admitted pro hac vice)
Sarah M. Schrag (admitted pro hac vice)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email: john.beck@dentons.com
       sarah.schrag@dentons.com

- and -

**TOGUT, SEGAL & SEGAL LLP**
Frank A. Oswald (admitted)
550 Broad Street
Suite 1508
Newark, NJ 07102
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Email:  frankoswald@teamtogut.com

Albert Togut (admitted pro hac vice)
Eitan Blander (admitted pro hac vice)
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile:  (212) 967-4258
Email: altogut@teamtogut.com
       eblander@teamtogut.com

**<u>Exhibit 2</u>**

**(Redline)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
(I) APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS AND (II)
CONFIRMING THE JOINT COMBINED DISCLOSURE STATEMENT AND
CHAPTER 11 PLAN OF LIQUIDATION OF POWIN, LLC AND AFFILIATES
THEREOF AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Upon consideration of the final approval of the disclosures and plan of liquidation contained in the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 942] attached hereto as **Exhibit A** (together with all exhibits thereto, and as may be amended, modified, or supplemented[2], the "Plan") jointly proposed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and together with the Debtors, the "Proponents"); the disclosures contained in the Plan having been approved on an interim basis pursuant to that

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc., [9926]; (xi) Powin Energy Ontario Storage II LP, [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and Powin EKS SellCo, LLC [9110]. Powin, LLC has formally changed its name to BESS RemainCo, LLC.

[2] The Plan Supplement is filed at Docket No. 1036. The Amended Plan Supplement is filed at Docket No. 1038 and the Amended Exhibits to the Amended Plan Supplement are filed at Docket No. 1055 (collectively, the "Plan Supplement").

certain *Order Approving (I) The Adequacy of the Disclosure Statement on Conditional Basis, (II) The Solicitation and Notice Procedures, (III) The Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Docket No. 939] (the "<u>Disclosure Statement Order</u>") pursuant to the relief sought in the *Joint Motion of the Plan Proponents for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement on Conditional Basis, (II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 915]; and upon the *Declaration of Darlene S. Calderon with Respect to the Tabulation of Votes on the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1095] (the "<u>Voting and Procedures Confirmation Declaration</u>"); and upon the *Declaration of Gerard Uzzi in Support of Confirmation of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1102] (the "<u>Uzzi Confirmation Declaration</u>") and upon the *Memorandum of Law in Support of Confirmation of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1097] (the "<u>Confirmation Memorandum</u>"); and upon the *United States Trustee's Objection to the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1070] (the "<u>UST Objection</u>"), the *Objection of CS Energy, LLC to Confirmation of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1072] (the "<u>CS Objection</u>"), the *Objection of DTE Electric Company to*

2

*the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1073] (the "DTE Objection"), the *Limited Objection of Longroad Development Company, LLC and Leeward Renewable Energy, LLC to Confirmation of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation Arising From Inclusion of Unsupported ROC Invoice Receivables* [Docket No. 1075] (the "Longroad Objection"), the *Limited Objection of FlexGen Power Systems, LLC to Chapter 11 Plan of Powin, LLC and its Affiliates* [Docket No. 942] (the "FlexGen Objection"), the *Reservation of Rights of Trilantic Capital Management L.P. and Greenbelt Capital Management, L.P. to the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1078] (the "Trilantic/Greenbelt Objection"), and the *Limited Objection of Applied Surety Underwriters, Siriuspoint America Insurance Company and Pennsylvania Insurance Company to Joint Combined Disclosure Statemetn* [sic] *and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1082] (the "Surety Objection"), each having been resolved and/or overruled by this Court pursuant to this Confirmation Order; and a hearing to consider Confirmation having been commenced on November 25, 2025 and concluded (the "Confirmation Hearing"); and upon the evidence adduced and proffered and the arguments of counsel made at the Confirmation Hearing; and this Court having reviewed all documents in connection with Confirmation and having heard all parties desiring to be heard; and upon the record of the Chapter 11 Cases; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; this Court hereby makes the following:

## Findings of Fact and Conclusions of Law

A.    **Findings of Fact and Conclusions of Law.** The findings and conclusions set forth herein and in the Disclosure Statement Order, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings pursuant to Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Capitalized Terms.** Capitalized terms used herein, but not defined herein, shall have the respective meanings attributed to such terms in the Plan.

C.    **Jurisdiction and Venue.** This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984 and amended on September 18, 2012 (Simandle, C.J.). The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Approval of the Disclosure Statement and confirmation of the Plan constitute a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) with the Bankruptcy Court having jurisdiction to enter a final order with respect thereto consistent with Article III of the United States Constitution.

D.      **Chapter 11 Petitions.** On June 9, 2025 (the "<u>Petition Date</u>"),[3] each of the

Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The

Debtors continue to manage their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered

for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  No party has requested the

appointment of a trustee or examiner in the Chapter 11 Cases.  On June 27, 2025, the Committee

was appointed.  [Docket No. 174].

E.      **Judicial Notice.** This Court takes judicial notice of the docket in the Chapter 11

Cases, including the dockets of any adversary proceedings initiated in the cases, maintained by

the Clerk of this Court and/or its duly appointed agent, including, without limitation, all

pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments

made, proffered or adduced at the hearings held before this Court during the Chapter 11 Cases,

including, without limitation, the Confirmation Hearing.

F.      **Disclosures.**  The disclosures within the Plan provides holders of Claims entitled

to vote on the Plan with adequate information to make an informed decision as to whether to

vote to accept or reject the Plan in accordance with Section 1125 of the Bankruptcy Code.

G.      **Plan Supplement.** Prior to the Confirmation Hearing, the Debtors filed the Plan

Supplement, as has been amended from time to time including in connection with any

amendments made at the Confirmation Hearing. The Plan Supplement complies with the terms

of the Plan, and the filing and notice of the Plan Supplement was appropriate and complied with

the requirements of the Bankruptcy Code and the Bankruptcy Rules, and no other or further

---

[3] Powin Project LLC filed for voluntary relief under Chapter 11 of the Bankruptcy Code on June 9, 2025.  Powin Canada B.C. Ltd., Powin Energy Ontario Storage II LP, and Powin Energy Storage 2, Inc., filed on June 22, 2025. Powin EKS SellCo, LLC filed on October 10, 2025, and the remaining Debtors filed on June 10, 2025.

notice is or shall be required. The Debtors are authorized to modify the Plan Supplement documents following entry of this Confirmation Order in a manner consistent with this Confirmation Order and/or the Plan.

H.    **Mailing of Solicitation and Confirmation Materials.** As is evidenced by the Voting and Procedures Confirmation Declaration, the transmittal and service of the Plan, the Ballots and the Confirmation Hearing Notices were adequate and sufficient under the circumstances, and all parties required to be given notice of the Plan and the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan and final approval of the disclosures contained within the Plan) have been given due, proper, timely, and adequate notice thereof in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice of the Plan and the Confirmation Hearing is required.

I.    **Voting.** The procedures by which the Ballots for acceptance or rejection of the Plan and Release Opt-Out Forms were distributed and tabulated under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law and the Disclosure Statement Order.

J.    **Bankruptcy Rule 3016(a).** In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Proponents as the plan proponents.

K.    **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L.        **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In addition to Administrative Claims, Priority Tax Claims, which need not be classified, the Plan designates seven (7) Classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

M.        **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Section 8 of the Plan specifies that Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are Unimpaired under the Plan. Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.

N.        **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Section 8 of the Plan designates Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims) and Class 7 (Interests) as Impaired and specifies the treatment of Claims and Interests in such Classes. Thus, section 1123(a)(3) of the Bankruptcy Code is satisfied.

O.        **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

P.        **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).** The Plan and the Liquidating Trust Agreement and the Direct Claims Trust Agreement provide adequate and

7

proper means for the Plan's implementation. Thus, section 1123(a)(5) of the Bankruptcy Code is satisfied.

Q.     **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).** The Plan does not provide for the issuance of any securities, including non-voting securities, and the Debtors are being dissolved as soon as practicable after the Effective Date. Therefore, section 1123(a)(6) of the Bankruptcy Code is satisfied.

R.     **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).** Section 13.3 of the Plan provides that the Liquidating Trust and the Direct Claims Trust shall be governed by the Liquidating Trustee in consultation with the Oversight Committee. On the Effective Date, the Debtors have appointed Phoenix Management as the Liquidating Trustee, to oversee the Liquidating Trust, the Direct Claims Trust, and the wind-down of the Debtors' estates.  In the event the Liquidating Trustee is removed by the Bankruptcy Court, resigns or is replaced pursuant to the Liquidating Trust Agreement and/or Direct Claims Trust Agreement, or otherwise vacates its position, a successor Liquidating Trustee shall be appointed as set forth in the Liquidating Trust Agreement and the Direct Claims Trust Agreement.  Therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

S.     **Additional Plan Provisions (11 U.S.C. § 1123(b)).** The Plan's provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

T.     **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** The Debtors have exercised reasonable business judgment in determining to either assume, assume and assign, or reject each of the Debtors' remaining Executory Contracts and Unexpired Leases as provided for in the Plan, the Plan Supplement, and this Confirmation Order, and any such

assumptions and rejections are justified and appropriate in the Chapter 11 Cases. The Debtors'

exercise of reasonable business judgment in determining to either assume, assume and assign, or

reject each of the Debtors' remaining Executory Contracts and Unexpired Leases is justified and

appropriate in the Chapter 11 Cases for the reasons set forth in the Disclosure Statement, the

Confirmation Memorandum, and the Uzzi Confirmation Declaration.

U.     **Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3)).** All of the settlements and compromises pursuant to and in connection with

the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and

Bankruptcy Rule 9019. The Plan, Plan Supplement, and/or this Confirmation Order provide for,

among other things, the ACE Settlement, the WARN Act Settlement, the FlexGen

Welldex/Confirmation Settlement, the RH Settlement the Debtor/Estate Release, and the Third

Party Release.  Accordingly, the Plan is consistent with section 1123(b) of the Bankruptcy Code.

a.     **WARN Act and ACE Settlements**.  The WARN Act and ACE

Settlements, as the principle terms are reflected in the Plan and Plan Supplement, are in

accordance with section 1123(b)(3)(A) of the Bankruptcy Code and represents a valid exercise of

the Debtors' business judgment.  The WARN Act and ACE Settlements were entered into in

good faith and are: (a) the product of extensive arms'-length negotiations by and between the

Debtors, the Committee, and the WARN Act Claimants and ACE; (b) in the best interests of the

Debtors, their Estates, and the holders of Claims and Interests; (c) fair, equitable, and reasonable;

(d) an integral element of the transactions incorporated into the Plan; and (e) consistent with

sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code,

Bankruptcy Rule 9019, and other applicable law.

b.      **FlexGen    Welldex/Confirmation    Settlement.**    The    FlexGen Welldex/Confirmation Settlement, as provided for in Sections 44 through 51 hereof,  is in accordance with section 1123(b)(3)(A) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment.  The FlexGen Welldex/Confirmation Settlement was entered into in good faith and is: (a) the product of extensive arms'-length negotiations by and between the Debtors, the Committee, and FlexGen; (b) in the best interests of the Debtors, their Estates, and the holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) an integral element of the transactions incorporated into the Plan; and (e) consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

c.      **RH Settlement**. The RH Settlement, as provided for in Section 53 hereof, is in accordance with section 1123(b)(3)(A) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment.  The RH Settlement was entered into in good faith and is: (a) the product of extensive arms'-length negotiations by and between the Debtors, the Committee, and RH; (b) in the best interests of the Debtors, their Estates, and the holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) an integral element of the transactions incorporated into the Plan; and (e) consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

d.      **Released _and Exculpated_ Parties**.   The Plan's definition of "Released Parties" shall be ~~deemed to~~_amended to strike clauses (d), (e) and (g) and the definition of "Exculpated Parties" shall be amended to strike clauses (d) and (g); provided that, notwithstanding the foregoing, the definition of Released and Exculpated Parties shall expressly_

include Brian Kane and Chad Paulson for all purposes under the Plan and this Confirmation Order.

      e.    **Debtor/Estate Release**.  The Debtor/Estate Release set forth in Section 15.2(a) of the Plan is in accordance with section 1123(b) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment ~~under Bankruptcy Rule 9019~~.  The Debtor/Estate Release is fair and equitable, is a key component of the Plan, and ~~otherwise constitutes a settlement~~ is in the best interests of the Debtors, the Estates, and Holders of Claims and ~~Causes of Action under section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019~~ Interests. Releases of the Released Parties by the Debtors and the other Debtor/Estate Releasors are critically important to the success of the Plan, which embodies the settlement of certain claims with the Debtors' primary stakeholders, including the Committee and implements the concessions and compromises made by the parties to the restructuring transactions contemplated by the Plan.  Each of the Released Parties afforded value and provided consideration to the Debtors and Estates, aided in the reorganization process and played an integral role in the formulation and implementation of the Plan. The Plan ~~reflects~~ includes the settlement and resolution of several complex issues, and the Debtor/Estate Release is an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b) of the Bankruptcy Code ~~and Bankruptcy Rule 9019~~, of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to

facilitating the restructuring and implementing the Plan; (b) ~~a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor/Estate Release; (c)~~ in the best interests of the Debtors, the  Estates and all holders of Claims and Interests; (~~d~~c) fair, equitable, and reasonable; (~~e~~d) given and made after due notice and opportunity for hearing; and (~~f~~e) a bar to any of the Debtors, the Liquidating Trust, or the Debtors' respective Estates asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

       f.    **Third Party Release**.  The Third Party Release set forth in Section 15.2(b) of the Plan is an essential provision of the Plan.  The Confirmation Hearing Notices, Ballots, Release Opt-Out Forms, and Voting Instructions explicitly and conspicuously stated that potential Releasing Parties could opt out of the Third Party Release and included the language of the Third Party Release.   Thus, each Releasing Party was given due and adequate notice that they would be granting the Third Party Release by failing to opt out of the Third Party Release prior to the deadline to do so.   Accordingly, the Third Party Release is consensual.   The Confirmation Order shall constitute the Bankruptcy Court's approval~~, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019,~~ of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan, important to the overall objectives of the Plan and an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) ~~a good faith settlement and compromise of the Claims released by the Third-Party Release; (e)~~ materially beneficial to, and in the best interests

of the Debtors and their respective Estates and stakeholders; (f~e~) fair, equitable, and reasonable; (g~f~) given and made after due notice and opportunity for hearing; (h~g~) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (i~h~) within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); and (j~i~) consistent with ~~sections 105, 1123, 1129, and 1141 and other applicable provisions of~~ the Bankruptcy Code.

      g.      **Exculpation**.  The exculpation provisions set forth in Section 15.1 of the Plan are essential to the Plan.  The record in these Chapter 11 Cases fully supports the exculpation provisions set forth in Section 15.1 of the Plan.

      h.      **Injunction.**  The injunction provisions set forth in Section 15.3 of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor/Estate Release, the Third Party Release, and the exculpation provisions in  Section 15.1 of the Plan.

      V.      **Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Proponents have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Plan Supplement, and all other matters considered by this Court in connection with the Chapter 11 Cases.

      W.      **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).** The Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In

determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Plan is the result of extensive arm's length negotiations among the Debtors, the Committee and certain of its key constituents like the WARN Act Claimants and ACE. The Plan promotes the objectives and purposes of the Bankruptcy Code.

X.      **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).** The procedures set forth in the Plan for this Court's approval of the fees, costs, and expenses to be paid in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

Y.      **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** Upon the occurrence of the Effective Date, the employment, retention, or appointment and authority of each of the Debtors' members, managers, directors, officers, employees and professionals shall be deemed to have terminated; except that certain employees who may be necessary as determined by the Liquidating Trustee shall act as the Debtors' authorized representative. The initial Liquidating Trustee is identified in Exhibit C of the Plan Supplement.  The initial TOC members as provided for in Exhibit C to the Plan Supplement shall be the following:  ACE Engineering & Co., Ltd., Celestica LLC, Contemporary Amperex Technology Co., Limited, JMS Wind Energy, LLC and GreEnergy Resources LLC.  Thus, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

Z.      **No Rate Changes (11 U.S.C. § 1129(a)(6)).**  After the Confirmation Date, the Debtors will not have any businesses involving the establishment of rates over which any regulatory commission has or will have jurisdiction.  Therefore, the provisions of section 1129(a)(6) do not apply to the Plan.

AA.    **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).** The "best interests" test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

BB.    **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are left unimpaired under the Plan.  Each of Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims) and Class 5 (General Unsecured Claims) have voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes. Class 6 (Intercompany Claims) and Class 7 (Interests), are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (together, the "Deemed Rejecting Classes"). Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below.

CC.    **Treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims and Priority Tax Claims pursuant to Sections 7 and 9 of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

DD.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).** Class 3 (WARN Act Claims), Class 4 (Settled Priority Claims) and Class 5 (General Unsecured Claims) are Impaired Classes of Claims that voted to accept the Plan, determined without including any acceptance of the Plan by any insider. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

EE.    **Feasibility (11 U.S.C. § 1129(a)(11)).** The Plan provides for the dissolution of the Debtors as soon as practicable after the Effective Date and the liquidation of the Debtors' property. Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.  The Debtors have sold substantially all their assets pursuant to the *Order (I) Authorizing the Debtors to Enter into and Perform Under the FlexGen Power Systems, LLC Asset Purchase Agreement, (II) Approving the Sale of Purchases Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of the Assumed Contracts to Purchaser and Establishing Cure Amounts Related Thereto in Accordance with the Assumption and Assignment Procedures, and (IV) Granting Related Relief* [Docket No. 751] (the "Sale Order") and have ceased conducting business and have started the process of winding down their businesses prior to the Confirmation Hearing.

FF.    **Payment of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to the Plan, thus satisfying section 1129(a)(12) of the Bankruptcy Code.

GG.    **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)).** Sections 1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors (i) are not obligated to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) (section 1129(a)(13)), (ii) have no domestic support obligations (section 1129(a)(14)), (iii) are not individuals (section 1129(a)(15)), and (iv) are not nonprofit corporations (section 1129(a)(16)).

HH.    **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).** The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan

may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect to both of the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Further, to the extent Class 6 (Intercompany Claims) or Class 7 (Interests) are Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Interests, and will not alter the treatment provided for any other Holder of any Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes. Third, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class. The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in Uzzi Confirmation Declaration filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims and Interests (x) is reasonable persuasive, credible, and accurate; (y) utilizes reasonable and appropriate methodologies and assumptions; and (z) has not been controverted by other credible evidence.

II.       **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

JJ.     **Principal Purpose (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has objected to Confirmation on any such grounds. Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

KK.     **Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and should be confirmed.

LL.     **Good Faith Solicitation (11 U.S.C. § 1125(e)).** The Debtors and their officers, directors, employees, advisors, Professionals Persons, and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan ~~and their participation in the activities described in section 1125 of the Bankruptcy Code~~, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the injunction and exculpation provisions set forth in Article 13 of the Plan and in this Confirmation Order.

MM.     **Implementation.**   All documents and agreements necessary to implement transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement (including, among others, the Liquidating Trust Agreement and the Direct Claims Trust Agreement), have been negotiated in good faith and at arms'-length, are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.   The Debtors and the Liquidating Trustee, as applicable, are

18

authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

NN.    **Retention of Jurisdiction.** This Court may properly retain jurisdiction over the matters set forth in Section 18 of the Plan and/or section 1142 of the Bankruptcy Code.

**Based upon the foregoing findings, and upon the record made before this Court at the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED AND DECREED THAT:**

<u>**Confirmation of the Plan**</u>

1.    The Plan, as and to the extent modified by this Confirmation Order, is approved and confirmed pursuant to section 1129 of the Bankruptcy Code. Any objections to the Plan not withdrawn, resolved, or otherwise disposed of are overruled and denied.

2.    The terms of the Plan are incorporated by reference into (except to the extent modified by this Confirmation Order), and are an integral part of, this Confirmation Order.

<u>**Final Approval of the Disclosures**</u>

3.    The disclosures provided in the Plan are approved as adequate on a final basis pursuant to Section 1125 of the Bankruptcy Code.

<u>**Compromises and Settlements Under the Plan**</u>

4.    Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, upon the Effective Date, all settlements and compromises set forth in the Plan, including the WARN Act Settlement, the ACE Settlement, the FlexGen Welldex/Confirmation Settlement, and the RH Settlement or announced on the record at the Confirmation Hearing are approved in all respects, and constitute good faith compromises and settlements.

<u>**Classification and Treatment**</u>

5.      The Plan's classification scheme is approved. The classifications set forth on the Ballots (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any Holder as representing the actual classification of such Claim under the Plan for distribution purposes, and (d) shall not be binding on the Debtors and the Liquidating Trustee except for Plan voting purposes.

## Authorization to Implement the Plan

6.      The Debtors and the Liquidating Trustee, as applicable, are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into, or otherwise make effective all documents arising in connection therewith, including, without limitation, all Plan Documents, prior to, on, and after the Effective Date.

7.      On the Effective Date, the officers of the Debtors and the Liquidating Trustee are authorized to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors.   In accordance with Bankruptcy Code section 1142(b), upon the entry of this Confirmation Order, the Debtors, and the Liquidating Trustee, each acting by and through its respective officers and agents, are authorized to take any and all actions necessary or appropriate to implement the Plan, including, without limitation, (i) consummating the WARN Act Settlement, the ACE Settlement, the FlexGen Welldex/Confirmation Settlement and the RH Settlement; (ii) forming the Liquidating Trust, entering into the Liquidating Trust Agreement (substantially in the form attached hereto as

**Exhibit B**), and complying with, and satisfying the obligations set forth under, the Liquidating Trust Agreement; (iii) forming the Direct Claims Trust, entering into the Direct Claims Trust Agreement (substantially in the form attached hereto as **Exhibit C**), and complying with, and satisfying the obligations set forth under, the Direct Claims Trust Agreement; and (iv) complying with, and satisfying the obligations set forth under, the Plan, in each case, without any further order of the Court.  The Liquidating Trust and the Direct Claims Trust shall be deemed for all purposes to have been created in connection with the Plan and this Confirmation Order.  On the Effective Date, each of the Debtors' then-current directors and officers shall be deemed to have resigned and the Liquidating Trustee shall automatically be the sole remaining officer and director of the Debtors, without the need for any meeting of or resolution by any board of directors or manager.  Following the Effective Date, the Liquidating Trustee is given full power of attorney and has authority to execute and/or endorse any documentation on behalf of the Debtors in furtherance of the Plan and the Debtors' liquidation.

8.      The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Liquidating Trustee, the Debtors, or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

9.      For the avoidance of doubt, the Plan and this Confirmation Order in no way authorize or approve any incentive payments under sections 105 or 503 of the Bankruptcy Code.

**Enforceability of the Plan**

10.      Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code, the Plan and all Plan Documents (including, but not limited to, the Liquidating Trust Agreement and the

Direct Claims Trust Agreement) shall be, and hereby are, valid, binding and enforceable.  The

current form of the Liquidating Trust Agreement and the Direct Claims Trust Agreement are

attached to this Order as **Exhibit B** and **Exhibit C**, respectively.

11.     Except to the extent otherwise provided in this Confirmation Order and the Plan,

and pursuant to Section 14 of the Plan, on the Effective Date, the Debtors shall irrevocably

transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust all of their

rights, title, and interest in and to all of the Liquidating Trust Assets, then held by the Debtors

free and clear of all liens, claims, and encumbrances.  For the avoidance of doubt, the Plan shall

also effectuate the transfer to the Liquidating Trust of all of the Debtors' rights, title, and interest

under that certain *Amended Order Authorizing (I) Abandonment or Sale of Remaining Inventory*

*and (II) Granting Related Relief* [Docket No. 1031] (the "Remaining Inventory Order");

*provided, that*, notwithstanding anything to the contrary in the Remaining Inventory Order,

Section 4 of the Remaining Inventory Order is hereby deemed modified solely to the extent

necessary to provide that, following the Effective Date, the Liquidating Trustee shall have full

authority, without the requirement to consult with the Committee or the U.S. Trustee, to accept

offers for, sell, or abandon any Miscellaneous Inventory (as defined in the Remaining Inventory

Order). All other provisions of the Remaining Inventory Order shall remain in full force and

effect except as expressly modified herein.

### Preservation of Causes of Action and Litigation

12.     Except as otherwise provided in the Plan or this Confirmation Order (a) in

accordance with Section 1123(b)(3) of the Bankruptcy Code  and Sections 13 and 14.2 of the

Plan, any retained Causes of Action or Litigation that the Debtors may hold against any Entity

shall vest upon the Effective Date in the Liquidating Trust and (b) after the Effective Date, the

Liquidating Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such retained Causes of Action and Litigation, in accordance with the terms of the Plan and the Liquidating Trust Agreement and without further order of this Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

### Reservation of Causes of Action and Litigation

13.     Unless a Cause of Action or Litigation against a holder or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including this Confirmation Order), including pursuant to the Debtor/Estate Release or the Third Party Release, the Debtors and the Liquidating Trustee expressly reserve such Cause of Action or Litigation for later adjudication by the Liquidating Trustee, including, without limitation, Causes of Action or Litigation not specifically identified or described in the Plan Supplement or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action or Litigation upon, after, or as a consequence of the Confirmation or Consummation or after the entry of this Confirmation Order or Effective Date based on the Plan, or this Confirmation Order, except where such Causes of Action or Litigation have been released in the Plan or any other Final Order. The Debtors and Liquidating Trustee's rights to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant

or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, are expressly reserved.

### Wind-Up and Dissolution of the Debtors

14.     The Debtors shall be dissolved as provided in the Plan and this Confirmation Order.  On the Effective Date, the Liquidating Trustee shall wind-up the affairs of the Debtors, if any, subject to the Plan, the Confirmation Order and the Liquidating Trust Agreement, and the Liquidating Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the Debtors, all tax returns, reports, certificates, forms, or similar statements or documents (collectively, "Tax Returns") required to be filed or that the Liquidating Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds, for all taxable periods ending on, prior to, or after the Effective Date. In connection therewith, the Debtors and the Liquidating Trustee are authorized to surrender to the applicable governmental authorities all licenses that the Debtors used to operate their business to the extent they have not already done so to date.

### Cancellation of Interests, Existing Securities, and Agreements

15.     On the Effective Date, except to the extent otherwise provided in the Plan or in this Confirmation Order, all notes, instruments, certificates, and other documents evidencing Claims or Interests, shall be deemed cancelled and surrendered without any need for a holder of a Claim or Interest (a "Holder") to take further action with respect thereto and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full and discharged; *provided*, *however*, that notwithstanding Confirmation or Consummation, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan; *provided further*, *however*,

that on the Effective Date all Interests shall be deemed cancelled and extinguished. Holders of

Interests shall not receive any distribution or retain any property pursuant to the Plan.

**Method of Distribution Under the Plan**

16.     The Liquidating Trustee shall make all distributions required to be made to

Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The

Liquidating Trust shall hold and distribute the Liquidating Trust Assets, the Liquidating Trust

Professional Fee Reserve, and the Disputed Claim Reserve in accordance with the provisions of

the Plan and the Liquidating Trust Agreement.

17.     The Liquidating Trustee shall make all distributions required to be made to such

Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The

Liquidating Trustee shall not be required to give any bond or surety or other security for the

performance of the Liquidating Trustee's duties as disbursing agent unless otherwise ordered by

this Court.  At the option of the Liquidating Trustee, any Cash payment to be made from the

Liquidating Trust by any means deemed appropriate by the Liquidating Trustee, including by

check or wire transfer or as otherwise required or provided in applicable agreements.

**The Liquidating Trust**

18.     **Administration of the Liquidating Trust**.  The Liquidating Trust Agreement,

substantially in the form attached hereto as **Exhibit B**, is hereby approved.  The appointment of

Phoenix Management as the initial Liquidating Trustee ~~and the retention of the professionals by~~

~~the Liquidating Trust,~~ on the terms set forth in the Plan and Liquidating Trust Agreement, is

hereby approved.  The Liquidating Trustee shall be compensated in the manner set forth in and

consistent with the Liquidating Trust Agreement. The Liquidating Trustee and the Oversight

Committee shall both have all powers, rights, duties and protections afforded the Liquidating

Trustee and the Oversight Committee, respectively, under the Plan, this Confirmation Order, and the Liquidating Trust Agreement.

19. **Interests in the Liquidating Trust**. There shall be one class of interests in the Liquidating Trust. The Liquidating Trust shall issue the Liquidating Trust Interests to the Holders of Allowed Administrative and Priority Claims who have agreed to accept deferred distributions from the Liquidating Trust after the Effective Date (including the WARN Act Claimants and Ace), Settled Priority Claims, General Unsecured Claims, and the Contributing Direct Claim Holders in accordance with sections 9.5(b) and 13.3(i) of the Plan. Liquidating Trust Interests shall be uncertificated. Beneficiaries of the Liquidating Trust Interests shall be bound by the Liquidating Trust Agreement.

20. **Liquidating Trust Assets**. The Liquidating Trust shall consist of the Liquidating Trust Assets. On the Effective Date, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise provided in the Plan, including, without limitation, pursuant to Sections 13.3(b) and (c) of the Plan or in this Confirmation Order. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall not affect any attorney-client privilege, the work-product privilege, and any other applicable evidentiary privileges of the Debtors, which such privileges shall be expressly transferred and assumed by the Liquidating Trust.

21. **Distribution of Liquidating Trust Assets**. The Liquidating Trustee shall distribute the appropriate net proceeds of the Liquidating Trust Assets to the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

22. The Liquidating Trustee shall utilize, in accordance with the Liquidating Trust Agreement, the Plan and the Trust Budget, Cash from the Liquidating Trust Assets Account in

amounts sufficient to (i) fund costs and expenses of the Liquidating Trust, including, without limitation, the fees and expenses of the Liquidating Trustee, its professionals, and the professionals retained in these cases, (ii) compensate the Liquidating Trustee, and (iii) satisfy other liabilities incurred by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement (including any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets).

### The Direct Claims Trust

23.    **Administration of the Direct Claims Trust**.    The Direct Claims Trust Agreement, substantially in the form attached hereto as **Exhibit C**, is hereby approved.    The appointment of Phoenix Management as the initial Direct Claims Trustee ~~and the retention of the professionals by the Direct Claims Trust,~~ on the terms set forth in the Plan and Direct Claims Trust Agreement, is hereby approved.    The Direct Claims Trustee shall be compensated in the manner set forth in and consistent with the Direct Claims Trust Agreement. The Direct Claims Trustee and the Oversight Committee shall both have all powers, rights, duties and protections afforded the Direct Claims Trustee and the Oversight Committee, respectively, under the Plan, this Confirmation Order, and the Direct Claims Trust Agreement.

24.    **Interests in the Direct Claims Trust**. There shall be one class of interests in the Direct Claims Trust. The Direct Claims Trust shall issue the Direct Claims Trust Interests to Contributing Direct Claim Holders in accordance with Sections 9.5(b) and 13.3(b) of the Plan. Direct Claim Trust Interests shall be uncertificated. Beneficiaries of the Direct Claim Trust Interests shall be bound by the Direct Claim Trust Agreement.

25.    **Direct Claim Trust Assets**.  The Direct Claim Trust shall consist of the Direct Claim Trust Assets. On the Effective Date, the Direct Claim Trust Assets shall vest in the Direct

Claim Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise provided in the Plan, including, without limitation, pursuant to Section 13.3(b) of the Plan or in this Confirmation Order.

26.     **Distribution of Direct Claims Trust Assets**.  The Direct Claims Trustee shall distribute the appropriate net proceeds of the Direct Claims Trust Assets to the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

## Executory Contracts and Unexpired Leases

27.     The assumption of the executory contracts or unexpired leases identified on the list filed with the Plan Supplement or separately (the "Assumed Executory Contract and Unexpired Leases List") is approved.

28.     Except any executory contract or unexpired lease (a) identified on the Assumed Executory Contracts and Unexpired Leases List, (b) which is the subject of a separate motion or notice to assume or reject filed by the Debtors and pending as of the Confirmation Hearing, (c) that previously expired or terminated pursuant to its own terms, or (d) that was previously assumed or rejected by any of the Debtors, each of the Debtors' other executory contracts and unexpired leases shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code and such rejection is approved; provided, however, that rejection of that certain unexpired lease between Lu Pacific Properties, LLC and Debtor Powin, LLC f/k/a Powin Energy Corporation, as tenant, for the premises located at 20550 SW 115th Avenue, Tualatin, OR 97062, is hereby deemed rejected effective as of October 31, 2025.

29.     Each executory contract and unexpired lease assumed pursuant to the Plan or by Order of this Court, and not assigned to a third party on or prior to the Effective Date, shall be transferred to the Liquidating Trust and be deemed a Liquidating Trust Asset.

30.     **Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim arising from the rejection of executory contracts or unexpired leases ("Rejection Claims") pursuant to Confirmation of the Plan or otherwise must be Filed with the Claims and Balloting Agent no later than the later of 30 days after the Effective Date or 30 days after the effective date of rejection. Rejection Claims shall be classified as Class 5 General Unsecured Claims and shall be treated in accordance with Section 9.5 of the Plan, as applicable. Any Rejection Claims that are not timely filed pursuant to Section 12 of the Plan or this Confirmation Order shall be forever disallowed and barred**.

### Disputed Claims

31.     Except as otherwise provided in the Plan, the Liquidating Trustee shall have the right to object to Claims on any basis.  Subject to further extension by the Bankruptcy Court with or without notice, the Liquidating Trustee may object to the allowance of all Claims on or before the Claim Objection Deadline. From and after the Effective Date, the Liquidating Trust shall succeed to all of the rights, defenses, offsets, and counterclaims of the Debtors and the Estates in respect of all Claims, and in that capacity shall have the exclusive power to prosecute, defend, compromise, settle, and otherwise deal with all such objections.

32.     **All objections to Claims shall be Filed by the Claims Objection Deadline; *provided*, that no such objection may be filed with respect to any Claim or Interest after a Final Order has been entered Allowing such Claim or Interest.**

### Administrative Claims

33.      **All requests for payment of an Administrative Claim (other than a Professional Fee Claim) arising or deemed to have arisen after the Petition Date must be filed with this Court and served to the Debtors and the Liquidating Trustee on or before the date that is 60 days after the Effective Date.**  In the event of an objection to allowance of an Administrative Claim, this Court shall determine the Allowed amount of such Administrative Claim.  Nothing herein shall be deemed to extend existing deadlines established for filing certain Administrative Claims, including pursuant to the Bar Date Order.

34.      For the avoidance of doubt, each Administrative Claim shall be asserted, allowed, and paid solely against the specific Debtor that incurred, is liable for, or received the benefit of the services giving rise to such Administrative Claim. No Administrative Claim asserted against any particular Debtor shall constitute, or be deemed to constitute, an Administrative Claim against any other Debtor or their respective estates, and no joint and several liability is created or implied by the Plan or this Confirmation Order.

**Liquidating Trust Professional Fee Reserve and Professional Fee Claims**

35.      On or as soon as practicable after the Effective Date, Liquidating Trustee shall establish the Liquidating Trust Professional Fee Reserve and fund such reserve in an amount equal to the estimated anticipated Professional Fee Claims provided by Professionals for services render and expenses incurred prior to the Effective Date estimated to be in excess of the Debtor Professional Fee Reserve (collectively with the Liquidating Trust Professional Fee Reserve, the "Professional Fee Reserves"); provided, that the Liquidating Trustee shall not be required to fund the Liquidating Trust Professional Fee Reserve to the extent the Debtor Professional Fee Reserve contains adequate amounts to cover the estimated Professional Fee Claims.  The Liquidating Trust Professional Fee Reserve shall be used solely for the payment of Allowed

Professional Fee Claims in accordance with Section 7.3 of the Plan.  For the avoidance of doubt, Professionals shall not be required to allocate their Professional Fee Claims among one or more individual Debtors.

36.      **All final applications for payment of Professional Fee Claims must be Filed with this Court and served on the Debtors,  the Liquidating Trustee, and the U.S. Trustee on or before 45 days after the Effective Date or such later date as may be agreed to by the Liquidating Trustee.**   Upon approval of the fee applications by the Bankruptcy Court, the applicable fee applications shall first be paid from the Debtor Professional Fee Reserve and Stretto shall be authorized to release from the Debtor Professional Fee Reserve to the applicable Professional, an amount equal to the Allowed Professional Fee Claims of such Professional. To the extent the Debtor Professional Fee Reserve is insufficient to satisfy the Allowed Professional Fee Claim in full, the Liquidating Trustee shall pay such Professionals from the Liquidating Trustee Professional Fee Reserve the remainder of their respective Allowed Professional Fee Claims.

37.      The Professional Fee Reserves shall be closed once all required payments have been made.  Any funds remaining in the Professional Fee Reserves after all required payments have been made shall be transferred to the Liquidating Trust.

<u>**Release, Injunction, Exculpation and Related Provisions**</u>

38.      The release, injunction, exculpation, and related provisions set forth in Article 15 of the Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities as and to the extent provided for therein.

39.      **Debtors' Releases**. Notwithstanding anything in the Plan to the contrary, and pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and

after and subject to the occurrence of the Effective Date, the Debtors and the Estates, in each

case on behalf of themselves and their respective successors, assigns, and representatives, and

any and all other entities who may purport to assert any cause of action, by, through, for, or

because of the foregoing entities (collectively, the "Debtor/Estate Releasors"), hereby release

(the "Debtor/Estate Release") each Released Party, and each Released Party is deemed released

by the Debtor/Estate Releasors from any and all claims, obligations, rights, suits, damages,

Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted

or assertable on behalf of any of the Debtor/Estate Releasors, as applicable, whether known or

unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or

unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or

due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the

Debtor/Estate Releasors would have been legally entitled to assert in its own right, or on behalf

of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner

arising from, in whole or in part, the Debtors (including the management, ownership, or

operation thereof), the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of

any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter

of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the

business or contractual arrangements between the Debtors and any Released Party, the

restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation,

formulation, or preparation of, or solicitation of votes on, the Plan or related agreements,

instruments, or other documents, or any other act or omission, transaction, agreement, event, or

other occurrence taking place on and before the Effective Date, other than claims or liabilities

arising out of or relating to any act or omission of a Released Party that constitutes willful

misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of

such by final order of a court of competent jurisdiction) but in all respects such Released Parties

shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and

responsibilities pursuant to the Plan; provided, that the foregoing Debtor/Estate Release shall not

operate to waive or release any obligations of any party under the Plan or any other document,

instrument, or agreement executed to implement the Plan; and further provided that nothing

herein shall act as a discharge of the Debtor.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, of the

Debtor/Estate Release, which includes by reference each of the related provisions and definitions

contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the

Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by

the Released Parties; (b) in the best interests of the Debtors, the Estates and all holders of Claims

and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and

opportunity for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim

or Cause of Action released pursuant to the Debtor/Estate Release.

40.      **Release by Holders of Claims and Interests**. Notwithstanding anything in the

Plan to the contrary, on and after and subject to the occurrence of the Effective Date, each of the

Releasing Parties hereby release (the "Third Party Release") each Released Party, and each of the

Debtors, the Estates, and the Released Parties is hereby deemed released from, any and all

claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities

whatsoever, including any derivative claims asserted or assertable on behalf of any of the

Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen,

asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or

determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Combined Plan and Disclosure Statement, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of, or solicitation of votes on, the Plan or related agreements, instruments, or other documents or any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third

Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Releasing parties asserting any Claim or Cause of Action released pursuant to the Third Party Release.

41.    **Release of Liens**. Except as otherwise provided in the Plan, this Confirmation Order or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors and their Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns, including the Liquidating Trust, in accordance with the Plan.

42.    **Exculpation**. The Exculpated Parties will neither have nor incur any liability (the "Exculpation") to any entity for any action ~~in good faith~~ taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, the sale or other disposition of the Debtors' assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction); provided that any Exculpated Party shall be

entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reasonable reliance may be asserted as a form a defense to any such claim, Cause of Action, or liability. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability. Without limiting the generality of the foregoing, each Debtor, each Estate, and each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary in the foregoing, the releases and exculpations set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed or deemed executed to implement the Plan, or any executory contract or unexpired lease assumed during the Chapter 11 Cases or under the Plan.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Exculpation, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Exculpation is: (a) in exchange for the good and valuable consideration provided by the Exculpated Parties; (b) in the best interests of the Debtors and all holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any party from asserting any Claim or Cause of Action released pursuant to the Exculpation. For the

avoidance of doubt, the Exculpated Parties do not include employees of the Debtors. Neither the Liquidating Trustee nor the Indemnified Parties will receive prospective exculpation for post-Effective Date acts or omissions.

43. **Injunction**. In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, the Liquidating Trust, or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest, including, without limitation, the Debtor/Estate Release, the Third Party Release, or the Exculpation. Nothing contained in this Section shall prohibit the holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or the Liquidating Trust under the Plan.

**Resolution of Formal Objections to the Plan**

44.     **FlexGen Welldex/Confirmation Settlement**. In resolution of certain disputes arising under the transactions (the "FlexGen Sale") described in the Asset Purchase Agreement, dated July 6, 2025 (the "FlexGen APA"), the Debtors, FlexGen Power Systems, LLC ("FlexGen"), and the Committee, have agreed to certain terms included in this Confirmation Order below and otherwise memorialized in a Settlement Agreement filed on  November ~~24~~25, 2025 [Docket No. ~~——~~1136] and presented in evidence at the Confirmation Hearing (the "FlexGen Welldex/Confirmation Settlement") and such Settlement Agreement, the "FlexGen Welldex Settlement Agreement").

45.     The Debtors have agreed to transfer the inventory described on Exhibit "A" to the FlexGen Welldex Settlement Agreement (the "Substitute Inventory") to FlexGen, free and clear of any liens, claims and interests, including, without limitation, any interests described in the objection [Docket No. 619] filed by Solar Carver 1, LLC and Solar Carver 3, LLC (collectively, "Solar Carver") in connection with the Sale Order entered by the Court on August 18, 2025 [Docket No. 751].  Pursuant to the Remaining Inventory Order, the Debtors offered the Substitute Inventory to Solar Carver, and Solar Carver declined to purchase the Substitute Inventory.  Solar Carver has been provided notice of this Confirmation Order and of the Debtors' intention to transfer the Substitute Inventory free and clear of any liens, claims and interests, and Solar Carver has not objected to such transfer.  Accordingly, the FlexGen Welldex/Confirmation Settlement and the FlexGen Welldex Settlement Agreement are approved under Fed. R. Bank. P. 9019, and the transfer of the Substitute Inventory to FlexGen free and clear of any liens, claims and interests, including, but not limited to, any interests of Solar Carver, is likewise authorized and approved.

46.    For purposes of the Plan, any claims of FlexGen arising in connection with the FlexGen Sale (the "FlexGen Sale Claims") shall be Administrative Claims, if Allowed.

47.    For purposes of the Plan, the definition of "Released Parties" shall be deemed to include FlexGen, the DIP Lenders, the Administrative Agent, and the Collateral Agent, provided, however, that, except to the extent set forth in the FlexGen Welldex/Confirmation Settlement and FlexGen Welldex Settlement Agreement, nothing in the Plan shall operate to waive or release FlexGen from any obligations under the FlexGen APA, including, without limitation, obligations expressly assumed by FlexGen under the FlexGen APA which shall remain enforceable by parties to whom such obligations are due.

48.    On the Effective Date, the Debtors shall reserve, as an additional Effective Date Cash Transfer, the sum of $3,000,000 on account of the FlexGen Sale Claims (the "FlexGen Reserve") pending further order of the Court. In the event that any FlexGen Sale Claims are Allowed, they shall be payable upon the entry of an order allowing such FlexGen Sale Claim without the requirement that such order be a Final Order of the Bankruptcy Court, provided such payment shall not waive any rights of the Debtors to recover such payment if such FlexGen Sale Claim ceases to be Allowed. For the avoidance of doubt, the amount required to be reserved on account of FlexGen Sale Claims pursuant to this paragraph shall not limit the amount of any FlexGen Sale Claim or FlexGen's ability to recover from the Debtors or the Liquidating Trust on account of any FlexGen Sale Claim, to the extent Allowed; provided, that FlexGen Sale Claims in excess of the FlexGen Reserve must be Allowed by a Final Order. Nothing in this Confirmation Order shall in any way limit FlexGen's ability to assert, or recover on account of, any FlexGen Sale Claims that are not explicitly settled, waived or released in the FlexGen Welldex Settlement Agreement.

49.     In the event that the FlexGen Welldex Settlement Agreement is not approved by the Bankruptcy Court or does not become effective on or before the Effective Date of the Plan, then the Debtors and/or the Liquidating Trustee shall not make any distributions on account of General Unsecured Claims or dispose of the Substitute Inventory until a reserve is established by agreement of the Parties. If agreement cannot be reached, the parties shall jointly request that the Court set a hearing and briefing schedule to determine such reserve amount.

50.     The *Emergency Motion of the Debtors and the Committee for Entry of an Order Disallowing and Expunging the Administrative Claim filed by FlexGen or, in the Alternative, Estimating the Claim at $0 for All Purposes* [Docket No. 1103 (the "FlexGen Administrative Claim Disallowance Motion") shall be set for hearing on December 17, 2025 at 2:00 p.m. Eastern Time, with any responses to the FlexGen Administrative Claim Disallowance Motion shall be filed on or before December [10], 2025, and any reply due on or before December [15], 2025.

51.     **Surety Settlement**. Prior to the Petition Date and in the ordinary course of business, the Applied Surety Underwriters, Siriuspoint America Insurance Company and Pennsylvania Insurance Company (together, the "Surety") issued a surety bond on behalf of the Debtors. Powin, LLC executed an indemnity agreement (the "Surety Bond Agreement") and caused cash collateral to be pledged to the Surety (the "Cash Collateral"). Entry of this Confirmation Order and confirmation of the Plan shall not modify or affect: (a) the Surety's rights under the Surety Bond Agreement or with respect to the Cash Collateral (or any proceeds thereof), or (b) any right of subrogation of the surety to the rights of a paid claimant, except as provided by the Term Sheet dated Term Sheet dated November ——25, 2025 [Docket No. 1137]

(the "Surety Term Sheet") and satisfaction of the conditions precedent set forth therein.  The Surety Term Sheet is approved under Fed. R. Bank. P. 9019.

52.    ~~CES~~CS Energy **Resolution**.  The injunction in Section 43 hereof and section 15.3 of the Plan does not operate as a bar to ~~CES's~~the commencement, continuation or maintenance of litigation or arbitration, by CS Energy, LLC, or any of its affiliates, successors, or insurers, naming any of the Debtors as a nominal defendant and seeking to establish a Debtor's liability for the express and limited purpose of assessing that Debtor's alleged responsibility for claimed injuries or property damage, or contribution or indemnification in relation thereto, along with the liquidation of their claims, and to proceed against third parties and insurance policies and proceeds as appropriate; provided however, parties are expressly prohibited from taking any action to enforce such determination of liability in any way against any Debtors or their assets and waive any right to enforce such claim against the Debtors, as same is subject to the Discharge Injunction as provided by law; provided however, Debtors and Liquidation Trustee shall not be required to appear in any litigation and defend against the merits of any claims brought against Debtors or incur costs and expenses related to defense of the merits and nothing herein shall otherwise limit or affect the rights or obligations of the Liquidating Trustee under the Plan, Confirmation Order or Liquidating Trust Agreement in any way.  The Debtors and/or Liquidation Trust shall neither take any action, nor fail to take any ministerial action that would amount to non-cooperation with Debtors' insurers or that would place at risk any insurance coverage or proceeds available to the claimant where taking such action would impose de minimis costs on the estate.  For the avoidance of doubt, in order for ~~CES~~a party to bring an action against the Debtors or the Liquidating Trust as a nominal defendant, it must (a) ~~waive any right to recover or assert any claim against the Debtors, their~~

estates, or the Liquidating Trust, (b) limit all recovery exclusively to limit its collection of a judgment or settlement to the proceeds of the applicable insurance policies and their proceeds,polic(ies) and (eb) acknowledge that neither the Debtors nor the Liquidating Trust shall have any duty or obligation to appear, defend, or otherwise participate in such litigation or arbitration, and shall incur no costs or expenses in connection therewith except as set forth above unless they elect to do so in their sole discretion., except that all parties' rights with respect to discovery and to object to discovery are preserved.  The right of any party availing itself of this provision to seek further relief from the Court to advance the intent and purpose of this provision is expressly reserved.

53.    **Customer Resolutions**. The Plan Injunction does not operate as a bar to any party's commencement, continuation or maintenance of litigation or arbitration naming any of the Debtors as a nominal defendant and seeking to establish a Debtor's liability for the express and limited purpose of assessing that Debtor's alleged responsibility for claimed injuries or property damage, or contribution or indemnification in relation thereto, along with the liquidation of their claims, and to proceed against third parties and insurance policies and proceeds as appropriate.  However, parties are expressly prohibited from taking any action (i) to enforce such determination of liability in any way against any Debtor or its assets, as same is subject to the Discharge Injunction as provided by law, or (ii) that would make the Debtors anything other than a nominal defendant or (iii) that would require the Debtors to take any action or defend the merits of any such claims in litigation or arbitration.

54.    Notwithstanding anything in the Liquidating Trust Agreement to the contrary, upon notice to (x) the Bankruptcy Court, (y) the TOC and (z) the parties to any pending Claims or Causes of Action pursued, or reasonably anticipated to be pursued, on behalf of the Debtors or

the Liquidating Trust in which such books and records may be relevant, the Trustee shall be free, in his or her discretion to abandon, destroy or otherwise dispose of any books and records in his possession that the Trustee deems not necessary for the continued administration of the Plan and not required to be retained under applicable law (including, for the avoidance of doubt, any requirement to retain books and records that may be relevant to any pending or reasonably anticipated litigation), without the need for any order of the Bankruptcy Court, and shall have no liability for same. This notice provision shall not create any right by any third party to access to privileged or confidential information held by the Liquidating Trust.

55.    On the Effective Date, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest with respect to the Liquidating Trust Assets; provided, however, with respect to any Cause of Action asserted by the Liquidating Trust, any defendant may assert any and all defenses and other rights that could have been asserted against the Debtors immediately prior to the Effective Date, and the Liquidating Trust shall be subject to such defenses and other rights to the same extent as the Debtors.

5356.    **RH Settlement**.  The Debtors and RH Shipping and Chartering USA, L.L.C. ("RH") have contemporaneously herewith entered into a *Stipulation and Agreed Order Regarding R.H. Shipping and Chartering, S. De R.L. De C.V. Claim No. 311 and RH Shipping and Chartering USA, L.L.C. Claim No. 312* [Docket No. 1132] (the "RH Settlement") that, among other things, resolves Claim Nos. 311 and 312 and certain other asserted administrative claims against the Debtors' estate, as provided in the RH Settlement.

5457.    **Warranty Issues**. The Debtor previously announced its intent to assign by quitclaim deed its rights under various warranties and guaranties under the authority of the *Order Granting Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Enter Into*

*New Customer Program with Existing Customers and (II) Granting Related Relief* [Docket No.

62], and such assignments are hereby further approved.

> ~~55~~58.  **U.S. Trustee Objections**. The term "good faith" in Section 15.1 of the Plan shall

be deemed stricken such that it provides in its entirety as follows:

> The Exculpated Parties will neither have nor incur any liability to any entity for
> any action taken or omitted to be taken between the Petition Date and Effective
> Date in connection with or related to the Chapter 11 Cases, the sale or other
> disposition of the Debtors' assets or the formulation, preparation, dissemination,
> implementation, Confirmation, or Consummation of the Plan, the Disclosure
> Statement, or any agreement created or entered into in connection with the Plan;
> provided, however, that this limitation will not affect or modify the obligations
> created under the Plan, or the rights of any holder of an Allowed Claim to enforce
> its rights under the Plan, and shall not release any action (or inaction) constituting
> willful misconduct, fraud, bad faith, or gross negligence (in each case subject to
> determination by final order of the Bankruptcy Court); provided that any
> Exculpated Party shall be entitled to reasonably rely upon the advice of counsel
> with respect to its duties and responsibilities (if any) under the Plan, and such
> reasonable reliance shall form a defense to any such claim, Cause of Action, or
> liability. Without limiting the generality of the foregoing, each Exculpated Party
> shall be entitled to and granted the protections of section 1125(e) of the
> Bankruptcy Code.

> ~~56~~59.  Section 15.3 of the Plan shall be deemed amended and restated in its entirety as to

add the following bolded language as follows:

> In implementation of the Plan, except as otherwise expressly provided in the
> Confirmation Order or the Plan, and except in connection with the enforcement of
> the terms of the Plan or any documents provided for or contemplated in the Plan,
> all entities who have held, hold or may hold Claims against or Interests in the
> Debtors, the Liquidating Trust, the Direct Claims Trust, or the Estates that arose
> prior to the Effective Date are permanently enjoined ~~from~~ **and precluded, from
> and after the Effective Date, through and until the date upon which all
> remaining property of the Debtors' Estates vested in the Liquidating Trust
> and/or the Direct Claims Trust has been liquidated and distributed in
> accordance with the terms of the Plan, from taking any of the following
> actions against, as applicable, the Debtors, the Released Parties, or the
> Exculpated Parties including**: (a) commencing or continuing in any manner,
> directly or indirectly, any action or other proceeding of any kind against the
> Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of
> such Trusts' Assets with respect to any such Claim or Interest; (b) the
> enforcement, attachment, collection, or recovery by any manner or means, directly

or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of Such Trusts' Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, the Liquidating Trust, the Direct Claims Trust, or any of such Trusts' Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or any Trust under the Plan. Notwithstanding any ~~other~~ provision of this Plan, the Debtors shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).

~~57~~60.    In each of Sections 9.1(b) and 9.2(b) of the Plan, the following words shall be stricken: "compromise, settlement, release and discharge of and in exchange".

~~58~~61.    Section 19.15 of the Plan shall be amended and restated as follows: "The Plan shall be deemed substantially consummated when the requirements of Sections 1101 and 1127(b) of the Bankruptcy Code have been met."

**Resolution of Informal Comments to the Plan**

~~59~~62.    Notwithstanding anything in the Plan, the Confirmation Order, or the Direct Claims Trust Agreement to the contrary, nothing in the Plan, the Confirmation Order, or the Direct Claims Trust Agreement waives, modifies, or otherwise impairs the rights of Trilantic Capital Management L.P. (together with its managed funds, limited partners, subsidiaries and/or affiliates) and Greenbelt Capital Management, L.P. (together with its managed funds, limited partners, subsidiaries and/or affiliates) to (a) contest the Bankruptcy Court's jurisdiction to hear and determine any lawsuit brought against them, either individually or collectively, on account of a Direct Claim or (b) file a motion with the Bankruptcy Court pursuant to LBR 7016-1(e) seeking a determination as to whether the Bankruptcy Court may adjudicate to final judgment

any or all claims and defenses brought against them, either individually or collectively, on account of a Direct Claim.

6063.   The Debtors shall pay $114,036.92 (the "Voya Payment") to Voya Benefits Company and ReliaStar Life Insurance Company (together, "Voya") in consideration for services related to the Debtors' Employee Compensation & Benefits (as defined in Docket No. 7) within 10 business days of the Effective Date.  Voya may file an unsecured proof of claim for any other alleged, pre-petition amounts owed under its contracts with the Debtors (the "Voya POC"), which will and will be deemed timely filed if filed by November 24, 2025.  The Voya Payment and Voya POC represent the full and final satisfaction to Voya regarding claims relating to the Employee Compensation & Benefits.

## Waiver of Powin EKS SellCo Section 341 Requirements

6164.   Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or other applicable law, the Court finds and concludes that cause exists under sections 105(a) and 341(e) of the Bankruptcy Code to waive Debtor Powin EKS SellCo, LLC's requirement to convene a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code. Accordingly, a meeting of creditors under section 341(a) shall not be held for Powin EKS SellCo, LLC, and such requirement is hereby permanently waived.

## Payment of Statutory Fees

6265.   All fees payable pursuant to 28 U.S.C. § 1930(a)(6) and any interest assessed pursuant to 31 U.S.C. § 3717 ("Quarterly Fees") that are owed prior to the Effective Date shall be paid by the Debtors in full in cash on the Effective Date. After the Effective Date, any and all Quarterly Fees shall be paid in full in cash when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST

Form 11-MOR. After the Effective Date, the Liquidating Trustee and each of the post-Effective Date Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, whether existing pre- or post-Effective Date, and Liquidating Trust shall remain obligated to pay Quarterly Fees until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be treated as providing any release under the Plan. The U.S. Trustee shall not be required to file any proof of claim or any request for administrative expense for Quarterly Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Combined Plan and Disclosure Statement to the contrary.

### **Trust Professionals**

~~63~~66.    The Liquidating Trustee may retain counsel to the Liquidating Trust and/or the Direct Claims Trust (the "Retained Trust Professionals") pursuant to the Liquidating Trust Agreement and the Direct Claim Trust Agreement.  Any Retained Trust Professional may be compensated pursuant to the terms of the Liquidating Trust Agreement or the Direct Claims Trust, as applicable, for the avoidance of doubt, shall not be required to comply with sections 330 and 331 of the Bankruptcy Code solely with respect to such Retained Trust Professional's retention and compensation or payment for work performed for the Liquidating Trust or the Direct Claim Trust.

### **Notice of Entry of Confirmation Order and Effective Date**

~~64~~67. Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors are hereby authorized to serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit D** (the "Notice of Confirmation and Effective Date") on the Effective Date, on all Holders of Claims against or

Interests in the Debtors and all other Persons on whom the Confirmation Hearing Notice was served. The form of the Notice of Confirmation and Effective Date is hereby approved in all respects. The Notice of Confirmation and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, any bar dates and deadlines established under the Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date, and any such bar dates and deadlines need be given.

## **Retention of Jurisdiction**

6568.  Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, the Plan, and each of the Plan Documents, to the extent provided under applicable law, including, among other things, to take the actions specified in Section 18 of the Plan.

## **References to Plan Provisions**

6669.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of this Court that the Plan (as and to the extent modified by this Confirmation Order) be confirmed in its entirety.

## **Rules Governing Conflicts Between Documents**

6770.  In the event that any provision of the Plan is inconsistent with the provisions of the Plan Supplement, and any other Order in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided*, *however*, that this Confirmation Order shall control and take precedence in the event of any inconsistency between this Confirmation Order, any provision of the Plan, and any of the foregoing documents.

### Extension of Injunctions and Stays

6871.  Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (including any injunctions or stays contained in or arising from the Plan or this Confirmation Order), shall remain in full force and effect in accordance with their terms.

### Section 1146 Exemption

6972.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or any similar tax or fee.

### Headings

7073.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

### No Stay of Confirmation Order

71.    Notwithstanding Bankruptcy Rules 3020(e) and 6004(h) and any other Bankruptcy Rule to the contrary, to the extent applicable, there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

74.    The requirements of Bankruptcy Rules 3020(e) and 6004(h) are hereby waived to the extent necessary to permit this Confirmation Order to become effective and enforceable on December 5, 2025. To the extent the Effective Date of the Plan does not occur on December 5, 2025, the stay shall continue until the earlier of the Effective Date and fourteen (14) days after entry of this Confirmation Order.