

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)
**STEPTOE LLP**
Timothy W. Walsh (admitted *pro hac vice*)
Joseph Archambeau (admitted *pro hac vice*)
114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900
Email:  twwalsh@steptoe.com
            jarchambeau@steptoe.com

Order Filed on January 14, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey

*Counsel for the Powin Liquidating Trust*

| | |
|---|---|
| In re: | Chapter 11 |
| POWIN, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |
| | Honorable Michael B. Kaplan, U.S.B.J. |

**STIPULATION AND CONSENT ORDER**
**RESOLVING MOTION AND ORDER APPROVING SAME**

The relief set forth on the following pages, numbered two (2) through eight (8), shall be

and hereby is **ORDERED**.

**DATED: January 14, 2026**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

1

(Page 2)
Debtor:            Powin, LLC, et al.
Case No.           Case No. 25-16137 (MBK)
Caption:           Stipulation and Consent Order Resolving Motion and Order Approving Same

WHEREAS, on June 9, 2025 (the "Petition Date"),[2] the Debtors commenced a voluntary

case for relief under Title 11 of the United States Code, §§ 101 et seq., as amended (the

"Bankruptcy Code"); and

WHEREAS, on December 1, 2025, the Joint Combined Disclosure Statement and Chapter

11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of

Unsecured Creditors [Docket No. 914] (the "Plan") was confirmed pursuant to the Findings of

Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and

(II) Confirming the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of

Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors [Docket

No. 1165] (the "Confirmation Order"). In accordance with the Plan, the Powin Liquidating Trust

(the "Trust") was established to, among other things: (1) continue the wind-down of the Debtors;

(2) liquidate various assets; (3) investigate, prosecute, settle, abandon or compromise the Debtors'

remaining causes of action; and (4) make distributions in accordance with the Plan; and

WHEREAS, the Plan went effective on December 5, 2025 [Docket No. 1187] (the

"Effective Date"); and

WHEREAS, on August 18, 2025, the Court entered that certain Sale Order [Docket No.

751] (the "Sale Order"), pursuant to which the Court authorized the Debtors to enter into, with

FlexGen Power Systems, LLC ("FlexGen"), an Asset Purchase Agreement, dated July 6, 2025 (the

"APA"), under which FlexGen purchased certain assets from the Debtors. Schedule 2.1(a) of the

---

[2] Lead Debtor Case No. 25-16137 (MBK) for Debtor Powin Project LLC was filed on June 9, 2025, and the majority
of Debtors were filed shortly thereafter on June 10, 2025, except that, three additional Debtor-affiliates (Powin Energy
Storage 2, Inc., Powin Energy Ontario Storage II LP, and Powin Canada B.C. Ltd.) filed for petitions on June 22,
2025, and Debtor-affiliate Powin EKS SellCo, LLC filed on October 10, 2025.

(Page 3)
Debtor:          Powin, LLC, et al.
Case No.         Case No. 25-16137 (MBK)
Caption:         Stipulation and Consent Order Resolving Motion and Order Approving Same

APA lists the "Purchased Inventory," which includes inventory from a variety of warehouses and third-party locations; and

WHEREAS, on November 17, 2025, FlexGen filed a *Request for Payment of Administrative Expenses* [Docket No. 1062] (the "Administrative Claim") which, among other things, asserted an administrative claim for allegedly undelivered inventory. That inventory is identified on **Exhibit A** to the Agreement[3] (the "RH Inventory"); and

WHEREAS, on November 21, 2025, FlexGen filed its Limited Objection of FlexGen Power Systems, LLC to Chapter 11 Plan of Powin, LLC and its Affiliates [Docket No. 1100]; and

WHEREAS, on November 21, 2025, the Debtors and the Official Committee of Unsecured Creditors filed the *Emergency Motion of the Debtors and the Committee for Entry of an Order Disallowing and Expunging the Administrative Claim Filed by FlexGen or, in the Alternative, Estimating that Claim at $0 for All Purposes* [Docket No. 1103] (the "FlexGen Administrative Claim Disallowance Motion") challenging the Administrative Claim; and

WHEREAS, on December 1, 2025, the Court entered the Confirmation Order, establishing an escrow of $3,000,000 to address FlexGen's assertions regarding the RH Inventory (the "Reserve"), pending further order of the Court; and

WHEREAS, the Confirmation Order approved the *Stipulation and Agreed Order Regarding R.H. Shipping and Chartering, S. DE R.L. DE C.V. Claim No. 311 and RH Shipping and Chartering USA, L.L.C Claim No. 312* [Docket No. 1132] (the "Debtors' RH Settlement"), pursuant to which the Debtors entered into a settlement with R.H. Shipping and Chartering, S. DE

---

[3] A true and correct copy of the Agreement is attached to the Order as **Exhibit 1**. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

3

(Page 4)
Debtor:           Powin, LLC, et al.
Case No.         Case No. 25-16137 (MBK)
Caption:          Stipulation and Consent Order Resolving Motion and Order Approving Same

R.L. DE C.V. and RH Shipping and Chartering USA, L.L.C. (collectively, "RH") relating to the

Debtors' dispute with RH regarding alleged unpaid storage fees and access to the RH Inventory.

The Debtors' RH Settlement required a $425,000 payment to RH, which was made by the Debtors

on the Effective Date; and

WHEREAS, the Trust disputes FlexGen's allegations regarding the RH Inventory, and

FlexGen disputes the Trust's allegations regarding the RH Inventory in the Trust's FlexGen Claim

Disallowance Motion; and

WHEREAS, immediately following confirmation, the Trust and FlexGen engaged in

discussions to try to resolve the disputes relating to the RH Inventory. Those discussions ultimately

culminated in the Agreement and the implementation of the transactions described therein

(collectively, the "Settlement"), which resolves all outstanding issues among the Parties relating

to the RH Inventory. Under the Settlement, the Trust has agreed, subject to Court approval, as

follows:[4]

NOW THEREFORE, INTENDING TO BE LEGALLY BOUND, THE PARTIES

HEREBY AND AGREE AND IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Agreement, attached as Exhibit 1, is approved.

2.      The APA's purported transfer of the RH Inventory is null and void as of the APA's

effective date of July 6, 2025 but, for clarity, FlexGen has executed a Bill of Sale transferring any

right, title, and interest in the RH Inventory to the Trust on an "as is, where is" basis.

3.      FlexGen shall have no payment, reimbursement, delivery, or other obligations with

---

[4] If there are any inconsistencies between this Order and the Settlement, the Settlement shall control.

(Page 5)
Debtor:         Powin, LLC, et al.
Case No.        Case No. 25-16137 (MBK)
Caption:        Stipulation and Consent Order Resolving Motion and Order Approving Same

respect to the RH Inventory, except as specifically set forth in the Agreement.

4.      The Trustee confirms the $425,000 payment to RH required by the Debtors' RH

Settlement was made and agrees that the Trust will bear all storage and maintenance costs for four

months from and after the Agreement Effective Date (as defined in the Agreement), including any

post-closing amounts RH may assert.

5.      Except as otherwise set forth in the Agreement, FlexGen will have (i) no payment,

reimbursement, or other responsibilities for any storage or maintenance costs of any kind

associated with the RH Inventory, including, without limitation, any costs described in Section

6.11 of the APA, and (ii) no delivery responsibilities or any other obligations or liabilities of any

kind to any party associated with ownership of, or as a purchaser of, the RH Inventory.

6.      The Reserve created by the Confirmation Order, reserved on account of the

FlexGen Sale Claims (as defined in the Confirmation Order) in the amount of $3,000,000 shall be

released to the Trust as follows:

    i.      $1,000,000 of the Reserve shall be released to the Trust upon the Agreement
            Effective Date;

    ii.     $1,000,000 of the Reserve shall be released to the Trust four weeks (28
            days) after the Agreement Effective Date, upon the Trustee providing—and
            FlexGen having reasonable opportunity to receive and review—the
            Verification of Inventory (as defined below); and

    iii.    the remaining $1,000,000 of the Reserve shall be released to the Trust four
            (4) months after the Agreement Effective Date, regardless of whether any
            sale occurs, so long as the condition of Section 4(d)(ii) of the Agreement

(Page 6)

| | |
|---|---|
| Debtor: | Powin, LLC, et al. |
| Case No. | Case No. 25-16137 (MBK) |
| Caption: | Stipulation and Consent Order Resolving Motion and Order Approving Same |

(copied above) has been satisfied, as well as all amounts owed pursuant to Section 4(h)(i)-(ii) of the Agreement, copied as paragraph 8 below.

7. "Verification of Inventory" shall require that the Trustee provide to FlexGen time-stamped, labeled photos depicting all SKUs of the RH Inventory. If FlexGen is not provided with the Verification of Inventory as required by Section 4(d)(ii) of the Agreement, the releases set forth in the Agreement shall be null and void as set forth in Section 4(k) of the Agreement, the Parties shall revert to their respective claims, and the remaining $2,000,000 of the Reserve shall not be released. The Trustee agrees to take full responsibility for liquidating, monetizing, and/or otherwise disposing of the RH Inventory. FlexGen agrees that certain individuals acceptable to FlexGen may work as independent contractors with the Trustee to assist with liquidating the RH Inventory, provided that FlexGen shall have sole responsibility of identifying the independent contractors and have the right to remove and replace any independent contractors, subject to the consent of the Trustee within five (5) business days. The Parties agree that approved contractors include, but are not limited to, Brian Kane, subject to FlexGen's foregoing rights. In the event that consent is not granted within five (5) business days, consent will be deemed granted. The Trustee and FlexGen agree that the Trustee's consent must not be unreasonably withheld.

8. All sales of RH Inventory will be made on an as-is, where-is basis such that neither the Trustee nor FlexGen will be responsible for any out-of-pocket costs related to any sale or other disposition (whether due to customs, duties, or otherwise) or any other obligations or liabilities unless expressly agreed to by FlexGen and the Trustee in writing, as applicable. Any such obligations or liabilities that are not expressly agreed to by FlexGen and/or the Trustee, as applicable, are void.

6

(Page 7)
Debtor:        Powin, LLC, et al.
Case No.       Case No. 25-16137 (MBK)
Caption:       Stipulation and Consent Order Resolving Motion and Order Approving Same

9.      All proposals for sales or dispositions of RH Inventory, including all pricing and settlement terms, must be expressly approved in writing by FlexGen prior to being proposed to any prospective purchasers. All sales or other dispositions of RH Inventory must be expressly approved or rejected by FlexGen, in writing, within five (5) business days of FlexGen being presented with a complete proposal in writing, inclusive of all terms and conditions. The Parties agree that FlexGen's consent must not be unreasonably withheld.

10.     All proceeds of such sale or disposition shall be applied via the following waterfall:

    i.      First, to sale costs, such as the payment of independent contractors,

    ii.     Second, to Trustee Storage Costs owed to RH for the four months following the Agreement Effective Date,

    iii.    Third, to reimburse the Trustee up to $425,000 for the RH cure payment,

    iv.     And the remainder to FlexGen.

11.     To the extent RH requires a backstop or current pay, the Trustee will backstop or pay the first four (4) months commencing on the Agreement Effective Date, subject to reimbursement from the proceeds of any sale of RH Inventory in accordance with Section 4(g) (the "Trustee Storage Costs"). If all RH Inventory is not sold or contracted by the end of this four (4) months period, FlexGen can opt, in its sole discretion, to extend the storage agreement or propose an alternative commercial resolution to address the balance of the inventory.

12.     Except as otherwise set forth in the Agreement, the Parties mutually release all claims arising out of or related to the RH Inventory (the "RH Inventory Dispute") (subject to carve outs for willful misconduct, fraud, bad faith, gross negligence, and breaches of the Agreement). FlexGen's Administrative Claim is disallowed to the extent it relates to the RH Inventory Dispute,

(Page 8)
Debtor:        Powin, LLC, et al.
Case No.        Case No. 25-16137 (MBK)
Caption:        Stipulation and Consent Order Resolving Motion and Order Approving Same

and any future court proceedings are to be expedited.

13.    In the event that proof of the RH Inventory's existence is not provided to FlexGen within four weeks (28 days) of the Agreement Effective Date, as required in Section 4(e)(ii) of the Agreement, the Settlement shall be deemed vacated. For the avoidance of doubt, in such an event, the releases contemplated in Section 4(j) of the Agreement shall be void, and all relevant claims held by the Parties shall revert to their status before the Agreement Effective Date, except that the Trust shall have the right to retain the $1 million released from the Reserve upon the Agreement Effective Date.

14.    The performance in full by the Parties of the Settlement constitute a full, final, and complete compromise and settlement of all claims or losses of whatsoever kind or character that the Parties have, or may ever have had, against the other party with respect to the RH Inventory Dispute. For the avoidance of doubt, FlexGen agrees that the Administrative Claim is hereby disallowed to the extent that it seeks amounts related to the RH Inventory Dispute. The Court will retain exclusive jurisdiction to hear and determine all matters arising under or in connection with this Stipulation, including the interpretation, implementation, or enforcement of the within Stipulation.

The undersigned consent to the terms, conditions, and entry of this Stipulation and Order, and represent that they have authority to execute same on behalf of their respective clients.

*(Signature Page to Follow)*

8

(Page 9)

| | |
|---|---|
| Debtor: | Powin, LLC, et al. |
| Case No. | Case No. 25-16137 (MBK) |
| Caption: | Stipulation and Consent Order Resolving Motion and Order Approving Same |

**STIPULATED AND AGREED TO BY:**

**LATHAM AND WATKINS, LLP**
*Counsel to FlexGen Power Systems, LLC*

By: /s/ _____
     Blake Denton

Dated: January 9, 2026

**SHERMAN, SILVERSTEIN,**
**KOHL, ROSE, & PODOLSKY, P.A.**
*Co-counsel to the Trustee for the Powin*
*Liquidating Trust*

By: /s/ _____
     Arthur J. Abramowitz

Dated: January 9, 2026

## Exhibit 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| POWIN, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("Agreement"), dated December 24, 2025, is entered into by and between (i) the Trustee for the Powin Liquidating Trust (the "Trustee"), in its capacity as the successor-in-interest to the above-captioned Debtors, and (ii) FlexGen Power Systems, LLC ("FlexGen"), each of which is referred to herein as a "Party" (and, collectively, the "Parties"). Subject to approval of the U.S. Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), this Agreement is intended by the Parties to constitute a full, final, and complete compromise and settlement of only the specific dispute outlined below.

WHEREAS, reference is made to that certain Sale Order [Docket No. 751] (the "Sale Order"), entered by the Bankruptcy Court on August 18, 2025, pursuant to which the Debtors and FlexGen entered into an *Asset Purchase Agreement*, dated July 6, 2025 (the "APA"), under which FlexGen purchased certain assets from the Debtors. Schedule 2.1(a) of the APA lists the "Purchased Inventory," which includes inventory from a variety of warehouses and third-party locations, including "RH;"

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; and (ix) Powin Energy Operating, LLC [6487]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

1

WHEREAS, FlexGen alleges that the Debtors failed to satisfy their obligations to deliver to FlexGen that certain subset of Purchased Inventory (as defined in the APA) associated with the RH third-party storage location in accordance with the terms and conditions of the APA, despite receiving payment in full from FlexGen for the same at the Closing (as defined in the APA). That inventory is identified on Exhibit A, annexed hereto (the "RH Inventory").

WHEREAS, on October 27, 2025, FlexGen sent the Debtors a notice, in accordance with the APA, alleging certain breaches of the APA by the Debtors, including, without limitation, with respect to the RH Inventory;

WHEREAS, on November 17, 2025, FlexGen filed a *Request for Payment of Administrative Expenses* [Docket No. 1062] (the "Administrative Claim"), which, among other things, asserted an administrative claim for the undelivered RH Inventory, consisting of the book value provided by Debtors of the RH Inventory plus Lien cure costs paid by FlexGen to Debtors at Closing;

WHEREAS, the *Emergency Motion of the Debtors and the Committee for Entry of an Order Disallowing and Expunging the Administrative Claim Filed by FlexGen or, in the Alternative, Estimating that Claim at $0 for All Purposes* (the "Estimation Motion") [Docket No. 1103] challenged the Administrative Claim, including the portion related to the RH Inventory;

WHEREAS, in the *Stipulation and Agreed Order Regarding R.H. Shipping and Chartering, S. DE R.L. DE C.V. Claim No. 311 and RH Shipping and Chartering USA, L.L.C Claim No. 312* [Docket No. 1132], which was approved by the Court in the Confirmation Order dated December 1, 2025 [Docket No. 1165] (the "Confirmation Order"), the Debtors entered into a settlement with RH relating to the Debtors' dispute with RH regarding alleged unpaid storage

2

fees and access to the RH Inventory, which included a $425,000 payment to RH made on the Effective Date of the Debtors' confirmed Plan of Reorganization (the "Debtors' RH Settlement").

WHEREAS, the Parties desire to avoid the cost, expense, and uncertainty of continuing to pursue disputes between or among them arising out of or related to the RH Inventory (the "RH Inventory Dispute"), and, accordingly, the Parties have reached an agreement with respect to the RH Inventory Dispute, on the terms outlined below, subject to approval by the Bankruptcy Court.

NOW THEREFORE, the Parties, intending to be legally bound, and acknowledging the sufficiency of the consideration and undertakings set forth herein, do hereby agree to compromise and settle the RH Inventory Dispute, as follows:

1.      Definitions. All capitalized terms not otherwise defined in this Agreement have the meanings ascribed thereto in the APA.

2      Agreement Effective Date. The Parties agree that this Agreement will become effective and binding upon all Parties upon the later of (such date, the "Agreement Effective Date"): (a) the due execution and delivery of this Agreement by all Parties; and (b) Bankruptcy Court approval of this Agreement and the transactions contemplated hereby (this Agreement and the implementation of the transactions described herein, collectively, the "Settlement").

3.      Settlement Deliverables. On the Agreement Effective Date:

a)    The Parties agree that the purported transfer of the RH Inventory to FlexGen via the APA is null and void as of that contract's effective date of July 6, 2025, but for the sake of clarity, the Parties will execute and deliver their respective counterparts to the Bill of Sale in the form attached hereto as Exhibit B, through which FlexGen shall transfer, assign, convey, and deliver to the Trustee, on an

3

as-is, where-is basis, any right, title, and interest FlexGen has in and to the RH Inventory.

4.    <u>Other Agreements</u>. Each of the Parties acknowledges and agrees as follows:

a)  Other than execution and delivery of its counterpart to the Bill of Sale referenced in Section 3(a), FlexGen will have no obligation – whether under the APA, this Agreement, or otherwise – with respect to the RH Inventory, except as expressly stated herein in Sections 4(e)-(i) below.

b)  The Trustee confirms that $425,000 has been paid to RH in accordance with the Debtors' RH Settlement, and that FlexGen will have no payment, reimbursement, or other responsibilities for any storage or maintenance costs associated with the RH Inventory. For the avoidance of doubt, to the extent that RH successfully asserts post-APA closing costs notwithstanding the Debtors' RH Settlement, the Trustee agrees the Powin Liquidating Trust will be fully responsible for such costs.

c)  For avoidance of doubt, FlexGen will have (i) no payment, reimbursement, or other responsibilities for any storage or maintenance costs of any kind associated with the RH Inventory, including, without limitation, any costs described in Section 6.11 of the APA, and (ii) no delivery responsibilities or any other obligations or liabilities of any kind to any party associated with ownership of, or as a purchaser of, the RH Inventory.

d)  The Reserve (defined below) created by the Confirmation Order, reserved on account of the FlexGen Sale Claims (as defined in the Confirmation Order) in

4

the amount of $3,000,000 (the "Reserve"), shall be released to the Powin Liquidating Trust as follows:

i. $1,000,000 of the Reserve shall be released to the Powin Liquidating Trust upon the Agreement Effective Date;

ii. $1,000,000 of the Reserve shall be released to the Powin Liquidating Trust four weeks (28 days) after the Agreement Effective Date, upon the Trustee providing—and FlexGen having reasonable opportunity to receive and review—the Verification of Inventory (as defined below); and

iii. the remaining $1,000,000 of the Reserve shall be released to the Powin Liquidating Trust four (4) months after the Agreement Effective Date, regardless of whether any sale occurs, so long as the condition of subsection (ii) above has been satisfied, as well as all amounts owed pursuant to Section 4(h)(i)-(ii), below.

"Verification of Inventory" shall require that the Trustee provide to FlexGen time-stamped, labeled photos depicting all SKUs of the RH Inventory. If FlexGen is not provided with the Verification of Inventory as required by subsection (ii) above, the releases set forth in this Settlement shall be null and void as set forth in Section 4(k) below, the Parties shall revert to their respective claims, and the remaining $2,000,000 of the Reserve shall not be released.

e) The Trustee agrees to take full responsibility for liquidating, monetizing, and/or otherwise disposing of the RH Inventory. FlexGen agrees that certain individuals acceptable to FlexGen may work as independent contractors with

5

the Trustee to assist with liquidating the RH Inventory, provided that FlexGen shall have sole responsibility of identifying the independent contractors and have the right to remove and replace any independent contractors, subject to the consent of the Trustee within five (5) business days. The Parties agree that approved contractors include, but are not limited to, Brian Kane, subject to FlexGen's foregoing rights. In the event that consent is not granted within five (5) business days, consent will be deemed granted. The Trustee and FlexGen agree that the Trustee's consent must not be unreasonably withheld.

f) All sales of RH Inventory will be made on an as-is, where-is basis such that neither the Trustee nor FlexGen will be responsible for any out-of-pocket costs related to any sale or other disposition (whether due to customs, duties, or otherwise) or any other obligations or liabilities unless expressly agreed to by FlexGen and the Trustee in writing, as applicable. Any such obligations or liabilities that are not expressly agreed to by FlexGen and/or the Trustee, as applicable, are void.

g) All proposals for sales or dispositions of RH Inventory, including all pricing and settlement terms, must be expressly approved in writing by FlexGen prior to being proposed to any prospective purchasers. All sales or other dispositions of RH Inventory must be expressly approved or rejected by FlexGen, in writing, within five (5) business days of FlexGen being presented with a complete proposal in writing, inclusive of all terms and conditions. The Trustee and FlexGen agree that FlexGen's consent must not be unreasonably withheld.

h) Proceeds from sales of RH Inventory will be distributed in the following order:

i. Reimbursement of costs associated with selling the RH Inventory, including, but not limited to, independent contractor compensation;

ii. Reimbursement to RH for Trustee Storage Costs (defined below) not otherwise satisfied pursuant to this Agreement;

iii. Reimbursement to the Trustee of up to $425,000 for the cure costs paid to RH via the Debtors' RH Settlement;

iv. All remaining amounts to FlexGen.

1. Subject to the satisfaction of Sections 4(h)(i)-(iii) above, FlexGen may elect, at any time and in its sole discretion, upon written notice to the Trustee, to require the Trustee to transfer title to the RH Inventory (that has not already been sold to third parties) to FlexGen.

2. In the event that Sections 4(h)(i)-(iii) above have not been satisfied within six (6) months of the Agreement Effective Date, the Trustee shall have the right to cause the sale of RH Inventory, subject to the conditions of Section 4(f) and Section 4(g) and apply the proceeds to such amounts outstanding as set forth in this Section 4(h), provided that FlexGen is given a right of first refusal to purchase the RH Inventory on the same terms offered by the Trustee to potential purchasers.

i) To the extent RH requires a backstop or current pay, the Trustee will backstop or pay the first four (4) months commencing on the Agreement Effective Date, subject to reimbursement from the proceeds of any sale of RH Inventory in

7

accordance with Section 4(g) (the "Trustee Storage Costs"). If all RH Inventory is not sold or contracted by the end of this four (4) months period, FlexGen can opt, in its sole discretion, to extend the storage agreement or propose an alternative commercial resolution to address the balance of the inventory.

j)   Except for the obligations contained in this Agreement, and conditioned on the occurrence of the Agreement Effective Date, the Parties, on behalf of themselves and, in the case of the Trustee in his capacity as Trustee (and on behalf of all of the Debtors in the Trustee's capacity as Wind-Down Officer), their affiliates, assigns, and each and all of the foregoing parties' respective owners, members, management, agents, attorneys, and representatives, as well as their respective legal representatives, hereby release and discharge the other Party, together with their affiliates, assigns, and each and all of the foregoing parties' respective owners, members, management, agents, attorneys, and representatives, as well as their respective legal representatives, from all actual or potential claims, liabilities, damages, actions, causes of action, suits, demands, costs, and losses, of any nature whatsoever, known or unknown, which either Party has, or may have had, against the other Party, for any acts or omissions related to or arising from the RH Inventory Dispute; *provided, however,* that the foregoing shall not release any party for claims or liabilities arising out of or relating to any act or omission of such party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) or for breaches of any of the representations, warranties,

8

covenants, or other obligations set forth in this Agreement. If any dispute were to arise, the Trustee and FlexGen agree that any Court proceedings should be expedited and would propose any hearing to occur no later than seven (7) business days after bringing attention to the Court. The Trustee and FlexGen also agree that the only monetary values to be considered in any dispute will arise from sections 4g(i)-(iv) above.

k)   In the event that proof of the RH Inventory's existence is not provided to FlexGen within four weeks (28 days) of the Agreement Effective Date, as required in section 4(e)(ii) above, this Agreement shall be deemed vacated. For the avoidance of doubt, in such an event, the releases contemplated in section 4(j) above shall be void, and all relevant claims held by the Parties shall revert to their status before the Agreement Effective Date, except that the Powin Liquidating Trust shall have the right to retain the $1 million released from the Reserve upon the Agreement Effective Date.

l)   The performance in full by the Parties of this Agreement constitute a full, final, and complete compromise and settlement of all claims or losses of whatsoever kind or character that the Parties have, or may ever have had, against the other party with respect to the RH Inventory Dispute. For the avoidance of doubt, FlexGen agrees that the Administrative Claim is hereby disallowed to the extent that it seeks amounts related to the RH Inventory Dispute.

5.   <u>Representations and Warranties</u>.

a)   The Trustee represents and warrants that, to the best of its knowledge and belief, none of the execution, delivery, or performance of this Agreement will conflict

9

with, or result in any violation of or constitute a breach or default under, any order of any Governmental Entity applicable to the Trustee/Debtors, including, without limitation, the Sale Order;

b) FlexGen represents and warrants that, notwithstanding Section 3(a), (i) subject to the Debtors having transferred good and valid title to the RH Inventory to FlexGen at the Closing, FlexGen has good and valid title to the RH Inventory, and (ii) FlexGen has not sold, assigned, transferred, conveyed, or otherwise disposed of, or purported to sell, assign, transfer, convey, or otherwise dispose of, any right, title, or interest in the RH Inventory to any other Person.

6.    <u>Miscellaneous Provisions</u>.

a) <u>Voluntary Agreement</u>. The Parties represent, warrant, and declare that each has carefully read this Agreement, knows its contents and believes that it accurately reflects the terms of their agreement. The Parties further represent that each has signed this Agreement freely and voluntarily.

c) <u>Authority to Execute</u>. Each Party, subject only to the Bankruptcy Court's approval of the Settlement, warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party, that the Party's execution of this Agreement is not in violation of any bylaws, covenants, and/or other restrictions placed upon them by their respective entities, and that the Party has all requisite corporate and/or limited liability company power and authority to execute, deliver, and perform this Agreement.

b) <u>Independent Advice of Counsel</u>. Each of the Parties represents and declares that it has participated in the drafting of this Agreement in consultation with its own

10

independently selected legal counsel. The Parties agree that this Agreement shall not be construed in favor of or against a Party based on the identity of the preparer.

c)  Costs and Attorney's Fees. Each Party shall bear its own attorney's fees and other expenses in connection with this Settlement and obtaining Bankruptcy Court approval thereof.

d)  Ongoing Cooperation. The Trustee shall seek and obtain Bankruptcy Court approval authorizing their entrance into, and performance of, this Settlement on the terms provided herein. The Trustee and their counsel shall execute all documents and perform all acts necessary and proper to effectuate the terms and conditions of this Agreement.

e)  Binding Effect. Upon the Agreement Effective Date, (i) this Agreement shall be binding upon and shall inure to the benefit of each Party, together with its respective heirs, successors or assigns; (ii) all representations, warranties, agreements, and promises stated herein are binding upon and shall inure to the benefit of each Party, together with its respective heirs, successors, or assigns; and any purchaser or transferee of any Party's rights under the Agreement shall be bound by all the terms and provisions of the Agreement.

f)  Reservation of Rights. For the avoidance of doubt, this Agreement does not address or resolve any other disputes among the Parties unrelated to the RH Inventory.

g)  Entire Agreement. This Agreement constitutes the entire agreement between the Parties, and all prior or contemporaneous agreements, understandings,

11

negotiations, and drafts are merged into and superseded by this Agreement. No Party has made any representation, agreement, or promise material to this Agreement, other than the representations, warranties, agreements, and promises stated herein.

h) <u>Headings</u>. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

i) <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to conflict of law rules.

j) <u>Duplicate Originals/Counterparts</u>. The Parties shall sign two copies of this Agreement, and each such copy shall be considered an original. This Agreement may be signed in one or more counterparts. All executed copies of this Agreement, and photocopies thereof (including facsimile or pdf copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

[*Signature Page Follows*]

12

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of this 24th day of December 2025.

**FLEXGEN POWER SYSTEMS, LLC:**

By: _____
    Name:
    Title:

**POWIN LIQUIDATING TRUST:**

**AS SUCCESSOR-IN-INTEREST TO:**
**POWIN PROJECT LLC**
**PEOS HOLDINGS, LLC**
**POWIN CHINA HOLDINGS 1, LLC**
**POWIN CHINA HOLDINGS 2, LLC**
**CHARGER HOLDINGS, LLC**
**POWIN ENERGY ONTARIO STORAGE, LLC**
**POWIN ENERGY OPERATING HOLDINGS, LLC**

By: _____
    Name: Brian Gleason
    Title:   Trustee of the Powin Liquidating Trust

13

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of this 24th day of December 2025.

**FLEXGEN POWER SYSTEMS, LLC:**

By: _____
    Name:  Gary Cristini
    Title:   CFO

**POWIN LIQUIDATING TRUST:**

**AS SUCCESSOR-IN-INTEREST TO:**
**POWIN PROJECT LLC**
**PEOS HOLDINGS, LLC**
**POWIN CHINA HOLDINGS 1, LLC**
**POWIN CHINA HOLDINGS 2, LLC**
**CHARGER HOLDINGS, LLC**
**POWIN ENERGY ONTARIO STORAGE, LLC**
**POWIN ENERGY OPERATING HOLDINGS, LLC**

By: _____
    Name: Brian Gleason
    Title:   Trustee of the Powin Liquidating Trust

13

United States Bankruptcy Court

District of New Jersey

| In re: | Case No. 25-16137-MBK |
|---|---|
| Powin, LLC | Chapter 11 |
| Debtor | |

# CERTIFICATE OF NOTICE

| District/off: 0312-3 | User: admin | Page 1 of 1 |
|---|---|---|
| Date Rcvd: Jan 14, 2026 | Form ID: pdf903 | Total Noticed: 1 |

The following symbols are used throughout this certificate:
**Symbol        Definition**

+               Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS
                regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jan 16, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Powin, LLC, 20550 SW 115th Avenue, Tualatin, OR 97062-6857 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a
preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities
in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and
belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the
complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains
the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jan 16, 2026                    Signature:        /s/Gustava Winters