## **Exhibit B**

Uzzi Declaration

| | |
|---|---|
| **DENTONS US LLP** | **TOGUT, SEGAL & SEGAL LLP** |
| Tania M. Moyron (admitted *pro hac vice*) | Frank A. Oswald (admitted) |
| Van C. Durrer, II (admitted *pro hac vice*) | 550 Broad Street |
| 601 S. Figueroa Street #2500 | Suite 1508 |
| Los Angeles, CA 90017 | Newark, NJ 07102 |
| Telephone: (213) 623-9300 | Telephone: (212) 594-5000 |
| Facsimile: (213) 623-9924 | Facsimile: (212) 967-4258 |
| Email: tania.moyron@dentons.com | Email: frankoswald@teamtogut.com |
| van.durrer@dentons.com | |
| | Albert Togut (admitted *pro hac vice*) |
| John D. Beck (admitted *pro hac vice*) | Eitan Blander (admitted *pro hac vice*) |
| Sarah M. Schrag (admitted *pro hac vice*) | One Penn Plaza, Suite 3335 |
| 1221 Avenue of the Americas | New York, New York 10119 |
| New York, NY 10020-1089 | Telephone: (212) 594-5000 |
| Telephone: (212) 768-6700 | Facsimile: (212) 967-4258 |
| Facsimile: (212) 768-6800 | Email: altogut@teamtogut.com |
| Email: john.beck@dentons.com | eblander@teamtogut.com |
| sarah.schrag@dentons.com | |

*Counsel for Debtors and*  *Counsel for Debtors and*
*Debtors in Possession*  *Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Powin, LLC, *et al.*,[1] | Case No. 25-16137 (MBK) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF GERARD UZZI IN SUPPORT OF
JOINT MOTION OF DEBTORS' PROFESSIONALS FOR
<u>ENHANCEMENT OF PROFESSIONAL FEES</u>**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

I, Gerard Uzzi, hereby state and declare as follows:

1. I previously served as the Chief Restructuring Officer (the "CRO") of Powin, LLC ("Powin") and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors"). I testify in support of the *Joint Motion of Debtors' Professionals for Enhancement of Professional Fees* (the "Motion").[2]

2. Except as otherwise indicated herein, this declaration (the "Declaration") is based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors or the Debtors' advisors, my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and this industry. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3. I incorporate my testimony in the First Day Declaration.

**A. Circumstances Leading to the Filing of the Chapter 11 Cases**

4. Prior to the Petition Date, the Debtors operated as a leading energy storage integrator at the forefront of the clean energy revolution, based in Portland, Oregon, and with offices around the world in Vietnam, China, Canada, Australia, and Spain. The Debtors focused their business on advancing the next frontier of energy by ensuring access to clean, reliable, resilient, and affordable power through cutting-edge technology. The Debtors' business model targeted innovations in energy storage.

5. The Debtors' business model had two lines of business: (i) the engineering and installation of BESS, which were governed by the ESAs; and (ii) the warranties, servicing and maintenance of battery energy storage systems, which are governed by the LTSAs. To implement the Debtors' business plan, the Debtors entered into these ESAs and LTSAs with their customers,

---

[2] Unless otherwise defined herein, all capitalized terms shall have the same meaning as in the Motion.

2

and then used suppliers and vendors to support performance under the ESAs and LTSAs. As of immediately prior to the Petition Date, the Debtors were installing a BESS in the largest solar energy plant in the world in Australia and separately managed an approximate twenty percent (20%) market share in the LTSA business line worldwide.

6. As of the Petition Date, the outstanding secured obligations under that certain loan agreement were no less than $25,612,281.51, plus any other fees, expenses, and other obligations owed under the Prepetition Loan Documents, and at least $350,000,000 in unsecured claims, including: (i) accrued and unpaid amounts owed to the Debtors' trade vendors and customers and other unsecured debt incurred in the ordinary course of the Debtors' business; and (ii) certain then ongoing or threatened litigation claims. The Debtors had also reduced their workforce precipitously in the weeks leading up to the Petition Date and so incurred substantial potential liabilities for the WARN Claims.

7. The Debtors commenced these Chapter 11 Cases as a result of certain historical challenges to the Debtors' business, including severe liquidity constraints, an extreme overdependence on trade credit, increasing assertions of liquidated damages entitlements by customers aggrieved by alleged performance delays, and damaged credibility with customers.

**B. Filing of the Chapter 11 Cases**

8. The Debtors, with the assistance of the Debtors' Professionals, filed numerous first day motions, the DIP Motion, and the KERP/KEIP Motion, among others, which allowed the Debtors to fund their Chapter 11 Cases and satisfy requirements related thereto while continuing to operate their businesses as debtors in possession.

9. Additionally, in advance of the filing of the DIP Motion, the Debtors' only source of liquidity for funding their Chapter 11 Cases consisted of precious-little cash collateral. As a

3

consequence, among the first day filings, the Debtors' Professionals launched and obtained final approval on the first day of the Debtors' new customer program as an interim measure to finance these Chapter 11 Cases, as described in the Customer Program Motion. Approval of the Customer Program Motion was necessary to avoid a liquidating transaction and avoid enormous harm to the Debtors. The Court approved the Customer Program Motion on June 13, 2025 [Docket No. 62]. In the week following the approval of the Customer Program Motion, the Debtors' Professionals hosted a customer summit at Dentons' Dallas offices, attended by approximately one hundred (100) customer representatives (both in person and virtually), and such summit yielded a written proposal for customer financing of these Chapter 11 Cases

### C. Retention of U&L

10. On July 5, 2025, the Debtors filed the *Debtors' Application for Entry of an Order (I) Authorizing the Debtors to Employ and Retain Uzzi & Lall to Provide the Debtors and Chief Restructuring Officer and Certain Additional Personnel, (II) Designating Gerard Uzzi as Chief Restructuring Officer for the Debtors Effective as of the Petition Date, and (III) Granting Related Relief* [Docket No. 268] (the "U&L Retention Application"), seeking authorization for the Debtors to employ U&L to provide the Debtor with a Chief Restructuring Officer and other personnel pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. The Court granted the U&L Retention Application on August 8, 2025 [Docket No. 690].

### D. Sale Process

11. As stated in the Motion and in my First Day Declaration, the Debtors commenced these Chapter 11 Cases in order to, among other things, engage in a value-maximizing sale process for their assets. To that end, on July 1, 2025, the Debtors filed the Bidding Procedures Motion, which the Bankruptcy Court granted through entry of the Bidding Procedures Order on July 17,

4

2025. In accordance therewith, on July 30, 2025, the Debtors conducted an auction of their assets after receiving three qualified bids, all as more detailed in the Notice of Winning Bidders filed by the Debtors on July 31, 2025. Upon the conclusion of the auction, the Debtors filed the Notice of Winning Bidders announcing the winning bidders for their assets, as more fully detailed therein.

12. Pursuant to the Mainfreight Bill of Sale made in favor of Mainfreight by the Debtors, attached as Exhibit A to the Notice of Winning Bidders, the Debtors agreed to sell certain of its assets, described on Exhibit A to the Mainfreight Bill of Sale, constituting collateral of Mainfreight to Mainfreight via credit bid in the amount of $3,000,000.00. On August 8, 2025, the Bankruptcy Court entered an order approving the Mainfreight Sale [Docket No. 592].

13. Pursuant to the FlexGen APA by and between FlexGen and the Debtors, attached as Exhibit B to the Notice of Winning Bidders, the Debtors agreed to sell the Purchased Assets, as defined in the FlexGen APA, to FlexGen for a purchase price of $36,000,000, comprised in FlexGen's discretion of a credit bid and cash, assumption by FlexGen of certain liabilities described in the FlexGen APA, and the Retention Fund, as defined in the FlexGen APA. On August 18, 2025, the Bankruptcy Court entered an order approving the FlexGen Sale [Docket No. 751], and the FlexGen Sale closed thereafter on August 19, 2025.

14. Pursuant to the EKS Sale Agreement by and between Hitachi and the Powin Parties, attached as Exhibit C to the Notice of Revised Order Approving Sale of Shares in EKS Holdco LLC and Filing of Release and Sale Agreement [Docket No. 649], the Powin Parties agreed to enter into a comprehensive transaction with Hitachi, whereby Hitachi would acquire the Remaining Units, as defined in the EKS Sale Agreement, from Powin EKS Sellco, LLC and receive certain releases from the Powin Parties, as described in the EKS Sale Agreement, in

5

exchange for providing the Powin Parties with a fixed sum of $15,000,000. On August 8, 2025, the Court entered an order approving the EKS Sale [Docket No. 691].

    **E. The Plan**

    15.    The Debtors' Professionals, in conjunction with the Committee focused their efforts on confirming a chapter 11 plan of liquidation after the aforementioned sales closed. On October 15, 2025, the Debtors' Professionals and the Committee filed the Plan.

    16.    On December 1, 2025, the Court entered the Confirmation Order. On December 5, 2025, the Debtors filed the Effective Date Notice. As set forth in the Effective Date Notice, the Plan went effective on December 5, 2025.

    17.    Prior to confirmation and the Effective Date, the Debtors' Professionals worked to reconcile numerous claims filed against the Debtors and were successful in reaching consensual resolutions of certain substantial claims, including, among others, the largest unsecured claim and priority WARN Claims asserted in that certain adversary proceeding commenced on the petition date. Moreover, given the continued liquidity constraints the Debtors faced, the Debtors' Professionals also successfully negotiated deferrals of certain administrative and priority claims which deferral was essential for confirmation of the Plan. For the avoidance of doubt, in the event that the Motion is granted, the proposed form of order provides that the Debtors' Professionals will not receive payment from the Liquidating Trust for any amounts in excess of the remaining funds in the Professional Fee Reserve until such deferred creditors also receive payment of their administrative and priority claims from the Liquidating Trust.

    18.    Additionally, the Debtors' Professionals developed a novel approach to retrieve eight million dollars ($8,000,000) of excess collateral from certain surety providers in order to strengthen the liquidity of the liquidating trust to be established under the Plan. Absent the

6

Debtors' Professionals filing the Surety Bond Motion, it could potentially have taken years for such funds to be returned to the liquidating trust under the Plan. Such relief was granted by the Court [Docket No. 1155] without opposition, coincident with confirmation of the Plan.

19. Finally, the Debtors negotiated a settlement of the WARN Claims alleged in the Adversary Proceeding which obviated the need for lengthy, complicated litigation which would have been costly to the Debtors' estates

20. At the inception of these Chapter 11 Cases, and as authorized by the Court, the Debtors established the Professional Fee Reserve. The Professional Fee Reserve was funded from time to time based on estimates provided in good faith by the Debtors' Professionals and the advisors to the Committee. As provided in the Plan, I have retained control of the Professional Fee Reserve in my capacity as CRO. As of the date of this Motion, the Professional Fee Reserve has an estimated surplus of approximately $149,000.

21. Immediately prior to the Petition Date, U&L waived approximately $280,000 in professional fees due to the hurried nature of the filing and the Debtors' severe liquidity constraints.

22. The Debtors' independent manager, John Brecker, has approved the relief sought in the Motion. The Debtors advised the Liquidating Trustee of this request for relief in advance of filing the Motion. In light of the extraordinary results reached in this case, by way of the Motion, U&L seeks approval and allowance of a fee augmentation in the amount of $280,000.00.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed this 28th day of January 2026, at Sea Bright, New Jersey.

>*/s/ Gerard Uzzi*
>Gerard Uzzi

8