| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br>**GENOVA BURNS LLC**<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 533-0777<br>**DANIEL M. STOLZ, ESQ.**<br>**DONALD W. CLARKE, ESQ.**<br>**SUSAN A. LONG, ESQ.**<br>**JACLYNN N. MCDONNELL, ESQ.**<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>slong@genovaburns.com<br>jmcdonnell@genovaburns.com<br>*Counsel to Liquidating Trust Oversight Committee* | |
| In re:<br><br>POWIN, LLC, *et al.*,[1]<br><br><br><br>Debtors. | Chapter 11<br><br>Case No.: 25-16137 (Jointly Administered)<br><br>Honorable Michael B. Kaplan<br><br>Hearing Date and Time: February 24, 2026<br>                               at 11:00 a.m. |

**LIQUIDATING TRUST OVERSIGHT COMMITTEE'S OBJECTION TO DEBTORS'
JOINT MOTION FOR ENHANCEMENT OF PROFESSIONAL FEES**

The Liquidating Trust Oversight Committee ("TOC"), appointed pursuant to the confirmed and effective Plan in these Chapter 11 cases, acting in its fiduciary capacity on behalf of holders of Allowed Unsecured Claims, hereby objects to the Joint Motion of Debtors' Professionals for Enhancement of Professional Fees (the "Enhancement Motion") and respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]. The Debtors' mailing address is 20550 SW 115th Avenue, Tualatin, OR 97062.

1

**PRELIMINARY STATEMENT**

The Enhancement Motion seeks an award of additional compensation in a case that resulted in no reorganization, minimal recoveries for unsecured creditors, and substantial post-confirmation cleanup. After billing these estates more than Sixteen Million Dollars ($16,000,000.00) in professional fees, Debtors' professionals now request an additional $651,500.64, asserting that they achieved an "exceptional result." The record does not support that characterization.

These Chapter 11 cases proceeded as an orderly liquidation, followed by significant administrative fallout. Unsecured creditors will receive only nominal recoveries, and the Liquidating Trustee was left with numerous unresolved matters requiring additional professional expense. Fee enhancements, however, are reserved for *rare* and *extraordinary* circumstances—not for cases that are merely complex, expedited, or professionally demanding.

The Supreme Court has made clear that enhancements above the lodestar are permissible only in "rare" and "exceptional" circumstances supported by specific evidence that the lodestar fails to adequately compensate counsel. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554–55 (2010). The Third Circuit likewise applies a strong presumption that the lodestar represents reasonable compensation. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305–06 (3d Cir. 2005). That presumption has not been rebutted here. On the contrary, the outcome of these cases confirms that enhancement is unwarranted. Accordingly, the Enhancement Motion should be denied in its entirety.

**FACTUAL BACKGROUND**

1. On June 9, 2025, the above-captioned Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the

"Court").

2. By Order dated December 1, 2025, the Court confirmed the Debtors' Chapter 11 Plan (the "Plan").

3. Pursuant to Article VI of the Plan, the TOC was formed and consists of five former members of the Official Committee of Unsecured Creditors, and now serves as the fiduciary representative for holders of Allowed Unsecured Claims.

4. On January 28, 2026, Dentons US LLP, Togut, Segal & Segal LLP, and CBMN Advisors LLC d/b/a Uzzi & Lall (collectively, the "Debtors' professionals") filed the Enhancement Motion seeking an aggregate fee enhancement of $651,500.64, asserting that they achieved an "exceptional result" warranting compensation beyond their already-approved lodestar fees.

5. After reviewing the Enhancement Motion, the TOC **unanimously** voted to oppose any enhancement of professional fees.

6. Throughout these cases, Debtors' professionals consistently characterized the proceedings as an "orderly liquidation," at times even acknowledging that a Chapter 7 filing had been contemplated.

7. The sale process conducted by Debtors' professionals produced a remarkably limited bidder pool and disappointing proceeds, followed by numerous unresolved "loose ends" that required hundreds of thousands of dollars in additional professional fees.

8. From the outset, Debtors' professionals advised that they conducted no retrospective investigation of prepetition conduct, while simultaneously seeking Plan provisions insulating management.

9. Even without enhancement, Debtors' professionals have billed these estates in excess of Sixteen Million Dollars ($16,000,000.00).

10. The Liquidating Trustee has advised the TOC that Debtors' professionals left substantial unresolved matters, requiring materially greater post-confirmation work than anticipated.

11. The result of this $16+ million professional effort, a recovery of *pennies on the dollar* for unsecured creditors.

12. Nevertheless, Debtors' professionals now characterize their performance as "exceptional" and deserving of enhancement.

13. Against this backdrop, the Enhancement Motion fails to meet the legal standard governing fee enhancements.

14. Accordingly, and as set forth below, Debtors' professionals have not established the *rare* and *exceptional* circumstances required to warrant compensation beyond the lodestar, and the Enhancement Motion should be denied in its entirety.

## **ARGUMENT**

15. Fee enhancements are reserved for rare and exceptional cases in which professionals demonstrate, with specific evidence, that the lodestar fails to adequately compensate them for extraordinary results. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554–55 (2010); *In re FAH Liquidating Corp.*, 2015 Bankr. LEXIS 190, at *12, *21–22 (Bankr. D. Del. Jan. 21, 2015); 11 U.S.C. § 330.

16. This standard has **not** been met. The Debtors' professionals were compensated at premium market rates for work performed in connection with an anticipated orderly liquidation—yet that process yielded disappointing recoveries for unsecured creditors and necessitated substantial post-confirmation cleanup. These outcomes fall far short of the type of exceptional results required to justify an enhancement.

4

17. Accordingly, and for the reasons discussed herein, the Enhancement Motion should be denied in its entirety.

**A. Debtors' Professionals Fail to Establish Rare and Exceptional Circumstances Required for Fee Enhancement**

18. The Supreme Court has made clear that fee enhancements are permissible only in "rare" and "exceptional" circumstances, and only upon specific evidence demonstrating that the lodestar does not adequately compensate counsel. *Perdue*, 559 U.S. at 554–55.

19. The Third Circuit similarly recognizes a strong presumption that the lodestar represents reasonable compensation. See *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305–06 (3d Cir. 2005).

20. Here, Debtors' professionals have failed to rebut that presumption.

21. No business was reorganized. Instead, these cases culminated in an orderly liquidation that produced disappointing sale proceeds and a limited bidder pool, followed by substantial unresolved matters left to the Liquidating Trustee—requiring additional professional expense. Unsecured creditors will receive only nominal recoveries.

22. These results fall far short of the extraordinary outcomes required to justify compensation beyond the lodestar.

23. Courts routinely deny enhancement where professionals competently perform anticipated work in difficult cases but fail to deliver exceptional economic results for creditors. See *In re Engel*, 190 B.R. 206, 214 (Bankr. D.N.J. 1995) (denying enhancement where counsel performed capably but results were not extraordinary); *In re Worldwide Direct, Inc.*, 334 B.R. 112, 130 (D. Del. 2005).

24. This case closely mirrors *In re FAH Liquidating Corp.*, where the court denied enhancement notwithstanding compressed timelines and professional effort, holding that

5

professionals compensated at market rates for anticipated work in a liquidation are not entitled to a bonus merely for performing their duties. 2015 Bankr. LEXIS 190, at *21–22.

25.     Having failed to overcome the strong presumption that the lodestar represents reasonable compensation, Debtors' Professionals likewise cannot demonstrate that this case produced the type of "exceptional result" necessary to warrant an enhancement. The record reflects an anticipated liquidation—not an extraordinary recovery or transformative outcome for the estate. As discussed below, the results achieved do not approach the level of economic benefit or case-altering success required to justify compensation beyond the lodestar.

**B. Application of Section 330 Factors Confirms Enhancement is Unwarranted**

26.     Section 330 requires courts to evaluate professional compensation based on, among other things, whether services were necessary or beneficial to the estate, whether they were performed efficiently, and whether the fees requested are reasonable in light of the results achieved. 11 U.S.C. § 330(a)(3); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 849 (3d Cir. 1994).

27.     Section 330(a)(4) further prohibits compensation for services that were not reasonably likely to benefit the estate. 11 U.S.C. § 330(a)(4)(A).

28.     Applied here, each statutory factor weighs decisively against any enhancement.

   a. **Benefit to the Estate Was Minimal.** Despite more than $16 million in professional fees, unsecured creditors will receive only pennies on the dollar. Courts consistently hold that minimal creditor recoveries weigh heavily against enhanced compensation. *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 849 (3d Cir. 1994); *see also FAH Liquidating*, 2015 Bankr. LEXIS 190, at *12, *22. The economic outcome here reflects an expected liquidation—not an exceptional benefit to the estates.

b. **Premium Market Rates Already Compensate Skill, Experience and Risk.** Debtors' professionals billed at the highest end of prevailing market rates[2] which already account for reputation, expertise and assumed risk. *Perdue,* 559 U.S. at 553; *FAH Liquidating*, 2015 Bankr. LEXIS 190, at *22. Granting an enhancement would impermissibly double-count factors already embedded in the lodestar.

c. **Extensive Staffing Reflects Inefficiency**. The fee applications reflect heavy partner and associate involvement across routine Chapter 11 matters. Such staffing is typical in large cases and does not evidence exceptional efficiency or results warranting enhanced compensation.

d. **Post-Confirmation Cleanup Undercuts Any Enhancement Claim**. The Liquidating Trustee has advised the TOC that Debtors' professionals left substantial unresolved matters, requiring materially greater post-confirmation professional involvement than anticipated. Courts routinely deny enhancement where successor fiduciaries must perform cleanup work. *See Worldwide Direct*, 334 B.R. at 130; *FAH Liquidating*, 2015 Bankr. LEXIS 190, at *21–22.

29. Taken together, these factors confirm that Debtors' professionals have not come close to satisfying the "rare" and "exceptional" standard required for fee enhancement. The professionals were fully compensated at premium market rates for anticipated liquidation work, yet the case yielded minimal recoveries for unsecured creditors, required significant post-confirmation cleanup, and produced no extraordinary economic or case-altering results. Under *Perdue* and Section 330, enhancement is reserved for outcomes that materially exceed expectations—not for routine performance in a difficult case. No such showing has been made

---

[2] Debtors' professionals billed at elite market rates: Van C. Durrer, II: $1,800/hour; John Harrington: $1,690/hour; Tonya Moyron: $1,545/hour; Local counsel Frank A. Oswald: $1,590/hour.

here.

### C. The Requested Enhancement Would Operate as an Improper Wealth Transfer from Creditors to Professionals

30. Unsecured creditors are owed hundreds of millions of dollars and will recover only nominal distributions, while Debtors' professionals have already received more than $16 million in compensation from these estates.

31. Granting an enhancement under these circumstances would not reward extraordinary value creation; it would simply redistribute additional estate funds from impaired creditors to already fully compensated professionals. That result is inconsistent with the principles underlying Section 330 and fundamental bankruptcy equity. *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 849 (3d Cir. 1994); *In re FAH Liquidating Corp.*, 2015 Bankr. LEXIS 190, at *22.

32. Professional compensation is not divorced from creditor outcomes. Where unsecured creditors realize only minimal recoveries, courts routinely decline to award enhanced compensation. No equitable or statutory basis exists to do otherwise here.

## CONCLUSION

33. For the foregoing reasons, the TOC respectfully submits that the Enhancement Motion fails to satisfy the legal standard governing fee enhancements.

34. Debtors' professionals have not demonstrated the rare and exceptional circumstances required to justify compensation beyond their already-approved lodestar fees under 11 U.S.C. § 330, *Perdue* or *FAH Liquidating.*

35. Instead, the record reflects an anticipated orderly liquidation resulting in disappointing recoveries for unsecured creditors and substantial post-confirmation cleanup, following the payment of more than $16 million in professional fees.

36. Accordingly, the TOC respectfully requests that the Court deny the Enhancement Motion in its entirety and grant such other and further relief as the Court deems just and proper.

**GENOVA BURNS LLC**
*Counsel to Liquidating Trust Oversight Committee*

Dated: February 11, 2026        By: _____
                                              DANIEL M. STOLZ