| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(b) <br> **STEPTOE LLP** <br><br> Timothy W. Walsh (admitted *pro hac vice*) <br> Joseph Archambeau (admitted *pro hac vice*) <br> 114 Avenue of the Americas <br> New York, NY 10036 <br> Tel: (212) 506-3900 <br> Email: twwalsh@steptoe.com <br>       jarchambeau@steptoe.com <br><br> *Counsel for the Powin Liquidating Trust* | **SHERMAN, SILVERSTEIN,** <br> **KOHL, ROSE & PODOLSKY, P.A.** <br> Arthur J. Abramowitz <br> Ross J. Switkes <br> 308 Harper Drive, Suite 200 <br> Moorestown, NJ 08057 <br> Tel: (856) 662-0700 <br> Email: aabramowitz@shermansilverstein.com <br>       rswitkes@shermansilverstein.com <br><br> *Counsel for the Powin Liquidating Trust* |
| In re: <br><br> POWIN, LLC, *et al.*,[1] <br><br>     Debtors. | Chapter 11 <br><br> Case No. 25-16137 (MBK) <br><br> (Jointly Administered) <br><br> Honorable Michael B. Kaplan, U.S.B.J. |

**TRUST'S OBJECTION TO MOTION OF
PULSE CLEAN ENERGY SPV WATT LIMITED FOR RELIEF FROM THE
AUTOMATIC STAY AND AUTHORIZING ACTIONS CONSISTENT THEREWITH**

TO THE HONORABLE MICHAEL B. KAPLAN, UNITED STATES BANKRUPTCY JUDGE:

The Powin Liquidating Trust (the "Trust"), successor in interest to Powin, LLC ("Powin") and the above-referenced affiliated debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (this "Objection") to the *Motion for Relief from the Automatic Stay and Authorizing Actions Consistent Therewith*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110] . The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

(the "Motion")[2] [Dkt No. 1127] filed by of Pulse Clean Energy SPV Watt Limited ("Pulse"). In support of this Objection, the Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1. Pulse's contention that all of the Escrow Property belongs to Pulse, so the automatic stay does not apply, boils down to a faulty premise. Under Pulse's interpretation of the ESA and Escrow Agreement, because the Debtors filed for bankruptcy and rejected the ESA rather than finishing the Project,[3] Pulse became immediately entitled to the full amount of the escrow *in addition to* rejection damages arising under the ESA. This interpretation of the ESA and Escrow Agreement runs contrary to basic tenants of bankruptcy law, which do not permit *ipso facto* clauses that punish a party for seeking the lawful protection of bankruptcy. Instead, before drawing down on the Escrow, Pulse must prove with reasonable certainty to this Court and the Trustee that it has actual damages arising from the Debtors' failure to complete the Project, and the Court should set an evidentiary hearing accordingly. To read the ESA and Escrow Agreement otherwise would be to interpret the agreements in a manner inconsistent with applicable law and provide Pulse with a windfall at the expense of other creditors in the Debtors' cases.

2. The Trust does not dispute that the Escrow was established with the intent of providing security for Pulse. However, Pulse's claim to have funded the Escrow and therefore have legal title to the funds is misleading, as these funds were amounts diverted from payments made by Pulse to the Debtors for completing Milestones under the ESA. *See, e.g.*, ▮

---

[2] Capitalized terms not otherwise defined herein have the meaning set forth in the Motion.

[3] As set forth in greater detail in the Motion, prior to the Petition Date, Pulse and Powin were parties to an Energy Equipment Supply Agreement (the "ESA") governing, among other things, the design, manufacture, delivery, commissioning, and acceptance of the battery energy storage project at Overhill Farm, Rothienorman, Scotland, AB51 8YN (the "Project"). In an effort to secure the Debtors' performance under the ESA, the Parties entered into the Escrow Agreement dated October 25, 2023 (the "Escrow Agreement"). Upon the accrual of interest, the Escrow Account (as defined in the Motion) currently holds approximately $6,763,904.96 in escrow (the "Escrow Property").

████████████████████████████████████████. Rather than paying Powin immediately for services rendered, portions of the payments owed to Powin under the ESA were instead paid into the Escrow Account to serve as security for future performance. This diversion was voluntary by the Debtors, as the ESA permitted Powin to substitute other security in place of the Escrow Property. *See* ██████████. Pulse therefore incorrectly claims to have legal rights to the Escrow Property as the grantor since they were merely sending funds earned by Powin to an alternative location at Powin's direction. Powin, which had earned the money through services provided, held title to the funds at the time of the transfer and therefore is the grantor of the Escrow.[4]

3. Prior to drawing down on the Escrow, Pulse must establish that it has actual damages resulting from the Debtors' breach, *i.e.,* amounts paid in excess of the amount that Pulse would otherwise have paid the Debtors to complete the Project.[5] Unfortunately, the Motion itself provides no evidence regarding the damages that Pulse has allegedly incurred. Although Pulse points to its' proof of claim, the proof of claim includes damages arising from the rejection of both the ESA and the LTSA, and does not clearly distinguish between the two. Under the plain terms of the ESA and the Escrow Agreement, only damages arising from the ESA may be claimed from the Escrow. Pulse must provide evidence of actual damages under the ESA in order to demonstrate entitlement to any of the Escrow Property.

---

[4] The "grantor" of an escrow is the party entitled to funds who relinquishes control of such funds to a third-party depository. *See Mortgage Elec. Registration Sys., Inc. v. Maniscalco*, 46 A.D.3d 1279, 1281 (N.Y.A.D. 3 Dept., Dec. 27, 2007); *Rock Oak Estates v. Katahdin Corp.*, 280 A.D.2d 960, 962 (N.Y.A.D. 4 Dept., Feb. 07, 2001). Being that Powin had earned the funds via services rendered and had the option to substitute the escrow funds for another form of security, Powin was the grantor funding the Escrow Account.

[5] The Trustee recognizes and appreciates that Pulse has provided information informally to the Trustee. Since the establishment of the Trust, counsel for Pulse and the Trust have engaged in discussions in an effort to settle this matter but were unable to reach an agreement prior to the deadline to file this Objection. The Trustee hopes that the parties can continue to work together to resolve this matter consensually.

4. Pulse arguably concedes that this is the correct method of determining what portion of the Escrow that Pulse is entitled to, mentioning that, after an accounting, any amount that remains in the Escrow must be returned to the Trust. *See* Motion, Section C, n.10. However, Pulse's suggestion that they are entitled to pull the entire escrow, conduct an internal accounting of its damages, and then turn over any leftover funds to the Trust is completely backwards. The accounting must be done in advance, and provided to the Trust for approval before any Escrow Property is distributed.

5. Based upon the information provided therein, Pulse has failed to satisfy its burden of showing either that (i) the Escrow Property is not subject to the automatic stay or (ii) cause exists to lift the automatic stay and for these reasons, as well as those set forth below, the Motion must be denied.

## OBJECTION

I.  **Pulse Fails to Meet its Burden of Demonstrating that the Escrow Property is Not Property of the Estate**

   a. While the Escrow Agreement is Governed by New York Law, the ESA is Governed by English Law and Controls

6. Pulse argues that New York state law governs the determination of the Parties' respective interests in the Escrow Property. However, the ESA controls the issue of the Parties' property rights and is governed by English Law. *See* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As the Motion states, although section 541 of the Bankruptcy Code defines property of the estate, courts must look to applicable non-bankruptcy law in order to determine whether the right or interest in question is estate property. Motion, ¶ 20.

7. Pulse has not provided any information regarding the Parties' respective interests in the Escrow Property under English Law, giving the Court and the Trustee no guidance on the

4

proper handling of the property at issue. As the burden of showing cause to lift the automatic stay is on Pulse, the failure to cite applicable law is fatal to the Motion.

                b.        <u>Pulse fails to Show that the Estate has no interest in the Escrow Property</u>

8.        Moreover, even if New York law applies, Pulse fails to demonstrate that the Estate has no interest in the Escrow Property.

9.        Pulse contends that, because it initially made the deposits comprising the Escrow Amount, it has legal title to the entire Escrow Account. Motion ¶ 24. On that basis, Pulse argues that the Escrow Account is not property of the estate. Pulse has improperly framed the issue. In reality, the Escrow Amount was funded by diverting milestone payments owed to Powin under the ESA to the Escrow Account at Powin's request. In other words, notwithstanding that Pulse technically made the deposits to the Escrow Account, those funds belonged to Powin. Powin earned these amounts by reaching the "Milestones" listed in Schedule 1 of the ESA (the "<u>Payment Schedule</u>") prior to the Petition Date. Rather than paying Powin immediately for services rendered, portions of the payments owed to Powin under the ESA were instead paid into the Escrow Account to serve as security for future performance.

10.       This is clearly established by the Payment Schedule. Pulse describes these payments as "holdbacks", but this is not consistent with the language of the Payment Schedule, which is titled "Payment and Termination Payment Schedule". Rather, at the applicable Milestones, there are separate line items showing first the full payment of the milestone payment to Powin, and then a separate line showing diversion of portions of that payment to the escrow account (*e.g.*, "Escrow from Milestone #1, Escrow from Milestone #4), which are shown as negative balances in parenthesis. This demonstrates that the escrow deposits had already been earned by Powin as of the Petition Date but were being held in escrow as security for Pulse. The

5

positive line items in the Payment Schedule relating to payments to Powin from the Escrow Property are described as "Escrow Release(s)" (rather than, *e.g.*, disbursements), again indicating that the escrow amounts are being returned to the effective depositor. The Escrow Account served essentially in lieu of a performance bond, and as the project progressed, less funds needed to be held in escrow as security for completion of the project.

11. Pulse appears to acknowledge this in the Motion, stating "[s]pecifically, the Payment Schedule establishes milestone payments tied to specific deliverables and performance benchmarks, with portions of the Contract Price held back and deposited into the Escrow Account". Motion ¶ 11.

12. The ESA and the Payment Schedule confirm that the funds sent to the Escrow belonged to Powin, but placed into the Escrow as security for Powin's future performance. Powin is entitled to the residuum of the Escrow Property after Pulse's damages claims under the ESA have been determined and paid. *See* ▊▊▊▊▊▊▊. Indeed, this is the only sensical interpretation of the ESA and the Payment Schedule—the intention was that Powin would acquire title to the underlying funds when earned at the applicable milestone payment, notwithstanding that it would be diverted to the Escrow Account and would serve as security for Pulse. Otherwise, there would be no purpose in diverting the funds to the Escrow Account, Pulse could have just withheld the funds (rather than diverting them to escrow) and then paid the funds directly to Powin at the appropriate milestone according to the Payment Schedule.

13. The Escrow Agreement itself says little about the relative title of the Parties, but what it does say suggests that superior interest lies with Powin. ▊▊▊▊▊ the Escrow Agreement ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ provides that "[a]ny income shall be deemed income of [Powin] for all tax purposes, whether or not the income was disbursed by the Escrow Agent

6

during any particular year." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[6] Similarly, section (9)(r) provides that "[Powin] shall pay or reimburse the Escrow Agent upon request for any transfer taxes or other taxes relating to the Escrow Property incurred in connection herewith and shall indemnify and hold harmless the Escrow Agent from any amounts that it is obligated to pay in the way of such taxes." This strongly suggests that Powin had superior legal title to the Escrow Account. An obligation to pay taxes on interest weighs in favor of that party having superior title to escrow property. *See, e.g., In re Drexel Burnham Lambert Grp., Inc.,* 138 B.R. 687, 709 (Bankr. S.D.N.Y. 1992) (finding the fact that a party was "obliged to pay taxes on the interest earned on [escrow amounts]" weighed in favor of such a party's superior title to escrow property).

14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This provision also suggests that legal title to the Escrow Property lies with Powin, while Pulse only has a beneficial interest in the Escrow Account for purposes of asserting damage claims.

15. While Powin acknowledges that damages may flow from its rejection and consequent breach of the ESA, Pulse only enjoys an interest in that portion of the Escrow Property required to satisfy such damages. Pulse has not proven any such damages.

16. Pulse cites *In re Atl. Gulf Communities Corp.*, 369 B.R. 156, 163 (Bankr. D. Del. 2007) in the Motion, but this case actually cuts against their argument. In *Atlantic Gulf*, "[t]he issue is whether the Debtor has a present right to the funds in Escrow." *Id.* (emphasis added). Courts have consistently determined that the only party with an interest in escrowed funds is the

---

[6] This language is repeated again in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

party entitled to them before the completion of every contingency necessary to transfer the funds to a grantee. *In re Atl. Gulf Communities Corp.*, 369 B.R. 156, 163 (Bankr. D. Del. 2007). Other courts have similarly rejected this argument.[7]

17. Pulse claims that because it has legal title to the Escrow Account (which is incorrect, for the reasons set forth above), it is entitled to draw-down the Escrow Amount in full upon breach or termination of the ESA. However, the court in *Atlantic Gulf* appropriately ruled that the correct question is who has a present interest in the Escrow Property, and to what extent the contingent interest was entitled to payment under the underlying agreement. *See also Matter of TTS, Inc.,* 158 B.R. 583, 586 (D. Del. 1993) ("This Court must consider what rights each party had under the escrow agreement at the time TTS filed for bankruptcy.").

18. Based on the foregoing, it is evident that Powin had superior title to the Escrow Account. Pulse only has an interest in the Escrow Property to the extent that it establishes damages under the ESA that are reimbursable from the Escrow Property, held to secure Powin's performance. For these reasons, Pulse has failed to establish that the Debtors have no interest in the Escrow Property such that the automatic stay does not apply.

**II.    The Escrow Property is Not Entirely Forfeited Upon Breach as it was Intended to Secure Performance Under the ESA, Not to Penalize the Debtors**
    a. <u>Allowing Pulse to Recover the Escrow Property and Rejection Damages Results in an Impermissible Penalty</u>

---

[7] *See also In re Palm Beach Heights Dev. & Sales Corp.*, 52 B.R. 181, 183 (Bankr.S.D.Fla.1985) ("Said fund is a trust or escrow to assure the completion of the road and drainage improvements on the property and only upon completion of the improvements, would debtor have any interest in the fund. Any claim, contingency or chose in action against the trust fund is the property of the estate but the fund itself is not. The debtor may not have any part of said fund until such time as the debtor establishes that all prior claims in the fund have been paid and that a residuum remains to which it is entitled.") (cited by *Atlantic Gulf* for authority); *In re Cedar Rapids Meats, Inc.*, 121 B.R. 562, 569 (Bankr. N.D. Iowa 1990 ("The C.R. Meats bankruptcy estate contains the claim against the fund for any residuum which may remain after all worker's compensation claims are paid but not the fund itself. Hence, C.R. Meats will get the funds when it can establish 'that all prior claims in the fund have been paid and that a residuum remains to which it is entitled.') (citing *Palm Beach*, 52 B.R. at 183).

19. Pulse asserts that because the Debtors rejected the ESA, Pulse is entitled to *both* (i) payment of the entirety of the Escrow Property, essentially as liquidated damages for breach and termination of the ESA, and (ii) rejection damages arising from the breach and termination of the ESA. According to Pulse, the Escrow is entirely unrelated to claims for damages for termination of the ESA. Motion ¶ 18 ("Given that the terms and conditions of the Escrow Agreement are separate and apart from the damages incurred as a result of the Debtors' rejection of contracts under the Rejection Order, the Filed Claim expressly stipulates that the Escrow Amount are excluded from the calculation of the Claim Amount.").

20. As a preliminary matter, this argument is contrary to the agreement between the parties. The language of the ESA clearly establishes that the purpose of the Escrow Account is to serve as security for damages arising to Pulse under the ESA or, in other words, to make Pulse whole—the exact same basis for the rejection damages claims.

21. ██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████

22. ██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

23.  ██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████

24. While the ESA and Escrow Agreement contain gaps in how the Escrow Account should be treated in the event of breach or termination, it requires a tortured reading of the ESA to conclude that it intends to reward Pulse with the entirety of the Escrow Property *in addition to* all damages that Pulse is otherwise entitled to in the event of the Debtors' breach. The ESA much more naturally reads that the damages provided therein are intended to be paid from the security provided by the Escrow Property.

25. Pulse presumably makes this tortured argument in an effort to obtain the full amount of the Escrow Property without first establishing having to prove its damages under the ESA before this Court. Even Pulse seems to acknowledge the limitation of its logic in footnote 10 of the Motion, where it concedes: "Though not required under the express terms of the ESA, the Movant will credit the Escrow Amount to reduce amounts owing by the Debtor arising out of its failure to perform." Even if Pulse were correct, however, Pulse's request for payment of the Escrow would still fail as a clear penalty.

26. New York public policy prohibits enforcement of liquidated damages that function as penalties. *See In re Trans World Airlines, Inc*., 145 F.3d 124, 134 (3rd Cir. 1998) (quoting *Truck Rent–A–Center, Inc*., 393 N.Y.S.2d 365, 369 (1977)) ("The public policies of New York are 'firmly set against the imposition of penalties or forfeitures for which there is no statutory authority.'"). New York Courts err in favor of construing close cases as impermissible penalties. *See Rattigan v. Commodore Intern. Ltd*., 739 F.Supp. 167, 169–70 (S.D.N.Y., 1990) (quoting *City*

*of New York v. B & M Ferry Co.*, 238 N.Y. 52, 56, 143 N.E. 788 (1924)) ("Courts have tended, in doubtful cases, 'to favor the construction which makes the sum payable for breach of contract a penalty rather than liquidated damages, even where the parties have styled it liquidated damages rather than a penalty.'").[8]

27. Assuming that Pulse's interpretation of the ESA and Escrow Agreement is correct, and New York law applies as they plead, it would result in the entire amount of the Escrow Property being forfeit by the Debtors **in addition** to any actual damages upon breach of the ESA. This is exactly the situation that New York law prohibits – a penalty intended to "secure performance by the compulsion of the very disproportion". *Truck Rent–A–Center, Inc.*, 41 N.Y.2d at 424. For this reason alone, Pulse's demand for the stay to be lifted to allow Pulse to draw down the entire Escrow must be rejected. Instead, Pulse must establish its right to the Escrow Property by providing evidence of actual damages.

    b. <u>Pulse is Has Not Established Damages Entitling it to *Any* Amount from the Escrow</u>

28. While Pulse asserts rejection damages of over $12 million in its proof of claim, these amounts have not been sufficiently proven or verified. First, because the amounts are, admittedly, estimates. Motion ¶17–18.[9] Second, the proof of claim includes damages arising from the rejection of both the ESA and the LTSA and does not clearly distinguish between the two. The plain language of both the ESA and the Escrow Agreement establish that only damages arising

---

[8] "The Appellate Division, Second Department, has concluded that courts should resolve any reasonable doubt as to whether a provision constitutes an unenforceable penalty or a proper liquidated damage clause in favor of a construction which holds the provision to be a penalty." *Rattigan*, 739 F.Supp. at 170 (citing *Willner v. Willner*, 145 A.D.2d 236, 240–41 (Second Dep't 1989); *Vernitron Corp. v CF 48 Associates, No. 1886 E*, 104 A.D.2d 409, 409-10 (N.Y.A.D. 2 Dept., Aug. 13, 1984); *National Telecanvass Associates, Ltd. v. Smith*, 98 A.D.2d 796, 798 (Second Dep't 1983)).

[9] *See also* Pulse's proof of claim, Claim No. 290, describing each and every component of the claim as an estimated cost.

from the ESA may be submitted to the Escrow so, at a minimum, Pulse must amend the Proof of Claim to separate these amounts.

29. Moreover, the ESA provides a clear process for determining balance of damages under ESA. *See, e.g.,* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Once rejection damages are established, they can be offset against the Escrow Amount. *See* ▮▮▮▮.

30. Pulse is only entitled to the Escrow Amount to the extent that Pulse suffers damages flowing from the Debtors' rejection of the ESA. While it is impossible for Powin to complete performance under the ESA, thereby releasing all of the Escrow Property to the Trust, the Escrow Property may still exceed the damages Pulse incurred due to Powin's rejection of the ESA. As Pulse has failed to prove such damages, the Escrow Account remains part of the bankruptcy estate and is thus covered by the automatic stay.

## CONCLUSION

Wherefore, the Trust respectfully requests that the Court (i) deny the Motion in full; and (ii) grant such other relief that the Court sees proper.

*(Signature Page to Follow)*

|  |  |
|---|---|
| Dated: February 12, 2026 | **SHERMAN, SILVERSTEIN,**<br>**KOHL, ROSE & PODOLSKY, P.A.**<br>*/s/ Ross J. Switkes*<br>Arthur J. Abramowitz<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>            rswitkes@shermansilverstein.com<br><br>- and -<br><br>**STEPTOE LLP**<br>Timothy W. Walsh (admitted *pro hac vice*)<br>Joseph Archambeau (admitted *pro hac vice*)<br>1114 Avenue of the Americas<br>New York, NY  10036<br>Telephone: (212) 957-3085<br>Email: twwalsh@steptoe.com<br>            jarchambeau@steptoe.com<br><br>*Co-Counsel for the Powin Liquidating Trust* |