UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esquire
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Email: jeffrey.m.sponder@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 25-16137 (MBK) |
| | jointly administered |
| Powin, LLC, *et al.*,[1] | Chapter 11 |
| | The Honorable Michael B. Kaplan |
| Debtors. | |
| | Hearing Date: February 24, 2026 at 11:00 a.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO THE JOINT MOTION OF DEBTORS' PROFESSIONALS FOR ENHANCEMENT OF PROFESSIONAL FEES**

Andrew R. Vara, the United States Trustee for Region Three (the "U.S. Trustee"), by and through his undersigned counsel, hereby objects (the "Objection") to the *Joint Motion of Debtors' Professionals For Enhancement of Professional Fees* [Dkt. 1312] (the "Motion"), and in support of this Objection respectfully states:

**PRELIMINARY STATEMENT**

1. Through the Motion, counsel to the Debtors, Dentons US LLP ("Dentons"), seeks a fee enhancement of $323,636.65, co-counsel to the Debtors, Togut, Segal & Segal LLP

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110]. The Debtors' mailing address is 20550 SW 115th Avenue Tualatin, OR 97062.

("Togut"), seeks a fee enhancement of $47,864.00, and the Debtors' chief restructuring officer, Gerard Uzzi of CBMN Advisors LLC d/b/a Uzzi & Lall ("U&L" and together with Dentons and Togut, the "Debtor Professionals"), seeks a fee enhancement of $280,000.00, for a total fee enhancement request of $651,500.65.

2. Dentons has filed a final fee application seeking a fee of $6,081,151.15 and expenses of $66,092.12, Togut has filed a final fee application seeking a fee of $399,783.00 and expenses of $1,619.04, and U&L has filed monthly fee statements through November 2025 that reveals that U&L has been paid $6,213,762.50.

3. The results obtained in these cases do not rise to the level necessary to justify a fee enhancement. In recent cases where courts have awarded fee enhancements, unsecured creditors received full payment. Indeed, in some cases, equity received distributions. In these cases, distributions to unsecured creditors are projected to be significantly less than full payment. This is not the rare and exceptional case supporting fee enhancement.

4. The Debtor Professionals have received the market-rate hourly fees that they agreed to when they were retained to represent the Debtors. There is no basis for modifying the agreed-upon fee structure; on the contrary, modifying that fee structure would be inappropriate.

5. The circumstances described in the Motion appear to be within the scope of services for which the Debtor Professionals were retained. Accordingly, the Court should deny the Motion insofar as it seeks fee enhancement.

**JURISDICTION AND STANDING**

6. This Court has jurisdiction to hear and determine approval of the Supplemental Application and this Objection under: (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court of the District of Delaware issued under 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2).

7. Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. The duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the Courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

8. The U.S. Trustee has standing to be heard with regard to the Supplemental Application under 11 U.S.C. § 307. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

**Background**

**A.    The Chapter 11 Cases**

9. On June 10, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, (the "Bankruptcy Code," or "Code"), in the United States Bankruptcy Court for the District of New Jersey (this "Court"), thereby commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). *See* for example Case No. 25-16137/MBK at Dkt. 1.

10. On June 27, 2025, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee"). *See* Dkt. 174.

11. Since the Petition Date, the Debtors have liquidated their assets.

**B.    The Plan and Disclosure Statement**

12. On October 6, 2025, the Debtors and the Committee filed the *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* (the "Plan"). *See* Dkt. 914. Also, on October

6, 2025, the Debtors filed a *Joint Motion of the Plan Proponents for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement on Conditional Basis, (II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices in Connection therewith, and (IV) Certain Dates with Respect thereto* (the "Joint Motion").  *See* Dkt. 915

13. On October 14, 2025, the Bankruptcy Court entered its *Order Approving (I) the Adequacy of the Disclosure Statement on a Conditional Basis, (II) the Solicitation and Notice Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* (the "Solicitation Procedures Order").  *See* Dkt. 939.

14. On October 15, 2025, the Debtors filed a *Notice of Filing of Solicitation Version of Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and The Official Committee of Unsecured Creditors* (the "Plan Solicitation Version").  *See* Dkt. 943.

15. On December 1, 2025, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* (the "Confirmation Order").  *See* Dkt. 1165.

16. On December 5, 2025, the Debtors filed a *Notice of (I) Confirmation and Effective Date of the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors and (II) Deadlines Under the Plan and Confirmation Order to File Administrative Claims, Professional Fee Claims, and Rejection Claims* (the "Notice of Effective Date").  *See* Dkt. 1187.

C. **Denton's Retention**

17. On July 7, 2025, the Debtors filed the *Application For Entry of an Order Authorizing the Employment and Retention of Dentons US LLP as Counsel for the Debtors and Debtors In Possession, Effective as of the Petition Date* (the "Dentons Retention Application"). *See* Dkt. 277.

18. On August 19, 2025, the Court entered the *Order Authorizing the Employment and Retention of Dentons US LLP as Counsel for the Debtors and Debtors in Possession, Effective as of the Petition Date* (the "Dentons Retention Order"). *See* Dkt. 753.

19. Pursuant to the Dentons Retention Order and in accordance with the Dentons Retention Application, the services to be rendered by Dentons in these Chapter 11 Cases include the following:

   a. advise the Debtors with respect to their powers and duties as debtors and debtors in possession in the continued management and operation of their businesses and property;

   b. represent the Debtors and take all necessary actions with regard to obtaining the use of cash collateral and DIP Financing and administration of the same;

   c. advise, consult with, and assist the Debtors with regard to any asset sale, any plan of reorganization or liquidation, if necessary, or any other means of satisfying creditors' claims, including filing a motion under § 363 of the Bankruptcy Code to sell the Debtor's assets;

   d. respond to due diligence requests from potential buyers and aid in finalizing stalking-horse bids for the Debtors' assets;

   e. evaluate, object to, or otherwise resolve claims against the Debtors' estates;

   f. advise the Debtors with respect to executory contracts and unexpired leases and, where appropriate, to assist the Debtors to assume or reject such executory contracts and unexpired leases;

  g.  represent the Debtors in hearings and all contested matters before this Court;

  h.  assist in and render advice with respect to the preparation of contracts, monthly operating reports, accounts, applications, and orders;

  i.  advise the Debtors with respect to the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Court, and the Office of the United States Trustee, as they pertain to the Debtors; and

  j.  advise, consult with, and otherwise represent the Debtors in connection with such other matters as may be necessary for the duration of these Chapter 11 Cases.

*See* Dkt. 277 at ¶ 11.

  20.  Pursuant to the Dentons Retention Application, "Dentons US has proposed to charge the Debtors for its legal services primarily on an hourly basis in accordance with its ordinary and customary rates that are in effect on the date the services are rendered." *See id.* at ¶ 16. In addition, pursuant to the June 9, 2025 Engagement Letter, the Debtors and Dentons agreed that Dentons could seek an amount in excess of the hourly charges subject to Court approval:

> If this engagement results in one or more transactions or a direct economic benefit to the Client, with your concurrence as provided below, our fee would reflect a variety of factors. These factors include our hourly time charges, as noted above, the overall benefit to the Client of such transactions, the Client's subjective appraisal of our contribution to such transactions, the cost-control and efficiency exercised in our execution of the engagement, the personal contribution of our partners coordinating and managing the engagement, our success in collaboration with the Client's management and integration with the Client's legal staff and co-counsel and the view of the Client. As to each of these factors, we consider it very important and would not submit a final statement for services rendered in excess of our hourly time charges without having discussed our fee in advance with the Client based on the factors mentioned above and obtaining your concurrence. Our representation of you also will involve costs, which are reviewed in the Terms. Of course, all fees and expenses incurred in connection with any Chapter 11 Case will also be subject to approval of the United States Bankruptcy Court.

*See* Dkt. 277 at page 58 of 63.

**D.    Togut's Retention**

21.    On July 7, 2025, the Debtors filed the *Application For Entry of an Order Authorizing the Employment and Retention of Togut, Segal & Segal LLP as Co-Counsel to the Debtors Nunc Pro Tunc to the Petition Date* (the "Togut Retention Application").  *See* Dkt. 276.

22.    On August 1, 2025, the Court entered the *Order Authorizing the Employment and Retention of Togut, Segal & Segal LLP as Co-Counsel to the Debtors Nunc Pro Tuc to the Petition Date* (the "Togut Retention Order").  *See* Dkt. 596.

23.    Pursuant to the Togut Retention Order and in accordance with the Togut Retention Application, the services to be rendered by Togut in these Chapter 11 Cases include the following:

   a.    Acting as local counsel;

   b.    assisting the Debtors with the retention of their case professionals and their ordinary course professionals ("OCP") and the filing of verified as well as their statements of fees and disbursements;

   c.    assisting certain of the Debtors' professionals with preparing monthly fee statements and interim fee applications in accordance with the Appendix B Guidelines;

   d.    assisting with certain landlord related issues for premises where the Debtors are tenants;

   e.    assisting the Debtors with preparing their Schedules and Statements;

   f.    advising the Debtors regarding their powers and duties as debtors in possession for the tasks assigned;

   g.    preparing and filing on the Debtors' behalf motions, applications, answers, proposed orders, reports, and papers necessary for the Assigned Matters;

   h.    attending meetings and negotiations with representatives of creditors and other parties in interest that affect the Assigned Matters;

    i.    appearing before this Court and any appellate courts, if necessary, to protect the interests of the Debtors' estates in connection with the Assigned Matters;

    j.    responding to inquiries and calls from creditors and counsel to interested parties regarding pending Assigned Matters;

    k.    performing other necessary legal services for assigned matters, or any other discrete matters assigned to the Togut Firm, and providing other necessary legal advice to the Debtors in connection with these Chapter 11 Cases; and

    l.    In the event that the Debtors are pursuing a position that would cause a connection with a client of Dentons that has the potential to mature into and become a conflict of interest (a "Conflict Matter"), the Togut Firm shall become involved in such matter so that the Togut Firm can advise the Debtors in such Conflict Matter. If such Conflict Matter becomes an actual conflict, the Togut Firm shall take over such matter advise the Debtors with respect to their powers and duties as debtors and debtors in possession in the continued management and operation of their businesses and property;

*See* Dkt. 276 at ¶¶ 12 and 17.

24. Pursuant to the Togut Retention Application, "The Debtors and the Togut Firm have agreed that the Togut Firm will be paid its customary hourly rates for services rendered that are in effect from time to time, as set forth in the Togut Declaration and the Engagement Letter, and that it will be reimbursed according to the Togut Firm's customary reimbursement policies." *See id.* at ¶ 23. In addition, pursuant to the June 5, 2025 Engagement Letter, the Debtors and Togut agreed that Togut could seek an amount in excess of the hourly charges subject to Court approval:

> As with any Chapter 11 case, there is a risk to us and if we achieve an extraordinary result for you, we reserve the right to seek additional fees, subject to the Independent Manager's and Bankruptcy Court approval.

*See* Dkt. 276 at page 33 of 59.

**E.    U&L's Retention**

25.   On July 5, 2025, the Debtors filed the *Application For Entry of an Order (I) Authorizing the Debtors to Employ and Retain Uzzi & Lall to Provide a Chief Restructuring Officer and Certain Additional personnel, (II) Designating Gerard Uzzi as Chief Restructuring Officer for the Debtors Effective as of the Petition Date, and (III) Granting Related Relief* (the "U&L Retention Application").  *See* Dkt. 268.

26.   On August 8, 2025, the Court entered the *Order Authorizing the Debtors to (I) Employ and Retain Uzzi & Lall to Provide the Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Gerard Uzzi as Chief Restructuring Officer for the Debtors Effective as of the Petition Date* (the "U&L Retention Order").  *See* Dkt. 690.

27.   Pursuant to the U&L Retention Order and in accordance with the U&L Retention Application, the services to be rendered by U&L in these Chapter 11 Cases include the following:

   a.   Assisting with the management of all aspects of the Debtors' operations, including all initiatives related to managing financial operations;

   b.   Evaluating cash and liquidity requirements, including assisting the Debtors in preparing and reporting on appropriate cash and liquidity forecasts, such as a rolling 13-week cash flow forecast;

   c.   Working with the Debtors' management to preserve and maximize cash availability while preserving value in the business;

   d.   Assisting with the evaluation of strategic alternatives, including evaluating the sale or wind-down of the Debtors' assets;

   e.   Assisting with the preparation of reports required by the Bankruptcy Code and Bankruptcy Rules, including, statements of financial affairs, schedules of assets and liabilities, and monthly operating reports;

   f.   Assisting the Debtors' management in responding to requests from, and negotiation with, investors, lenders, creditors, any official committees, and other stakeholders as requested by the Company;

  g. Assisting in the Debtors' strategic communications with employees, vendors and other stakeholders, as needed;

  h. Directing the efforts of external professionals, consultants, and advisors in connection with liquidation initiatives, including the negotiation of any agreements with asset purchasers, potential investors, or funding sources; and,

  i. Performing such other services as may be reasonably requested by the Debtors, and are customary in this type of engagement.

*See* Dkt. 268 at ¶ 15.

28. Pursuant to the U&L Retention Application, "The CRO, Mr. Uzzi, and the Hourly Temporary Staff will continue to bill time at their standard hourly rates." *See id.* at ¶ 19. In addition, pursuant to the June 9, 2025 Engagement Letter, the Debtors and U&L agreed that U&L could seek an amount in excess of the hourly charges subject to Court approval:

> As with any chapter 11 case, there is a risk to us, and if we achieve an extraordinary result for you, we reserve the right to seek additional fees, subject to the approval of the Independent Manager and the Bankruptcy Court.

*See* Dkt. 268-3 at page 4 of 9.

**F. The Motion**

29. On January 28, 2026, the Debtors filed the Motion. In support, the Motion attaches (i) as Exhibit A the *Declaration of Van C. Durrer, II in Support of Joint Motion of Debtors' Professionals for Enhancement of Professional Fees* (the "Durrer Declaration"), (ii) as Exhibit B the *Declaration of Gerard Uzzi in Support of Joint Motion of Debtors' Professionals for Enhancement of Professional Fees* (the "Uzzi Declaration"), and (iii) as Exhibit C the *Declaration of Frank A. Oswald in Support of Joint Motion of Debtors' Professionals for Enhancement of Professional Fees* (the "Oswald Declaration").

30. The Debtors' Professionals through the Motion seek to increase their fees in the total amount of $651,500.65, with $3,23,636.65 proposed to Dentons, $280,000 proposed to U&L and $47,864 proposed to Togut. *See* Dkt. 1312 at ¶ 26.

31. The Debtors' Professionals assert that "the results obtained in these Chapter 11 Cases were indeed exceptional." *See id.* at ¶ 36. Some of those results included (i) negotiating the use of cash collateral, (ii) negotiating a junior DIP facility, (iii) consummation of three sales, (iv) payment of the Debtors' secured creditors in full, and (v) confirming a joint plan of liquidation. *See id.* However, the negotiations concerning cash collateral and DIP financing, consummation of sales, payment of secured creditors, and confirmation of a plan are normal services provided by debtor professionals in most large chapter 11 bankruptcy cases.

## OBJECTION

32. Section 330(a)(3) of the Bankruptcy Code provides that, "in determining the amount of compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, considering all relevant factors, including:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the service was rendered toward the completion of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*See* 11 U.S.C. § 330(a)(3).

33. Bankruptcy Code Section 330(a)(2) provides:

> The court may, on its own motion or on the motion of the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

*See* 11 U.S.C. § 330(a)(2).

34. The "lodestar" approach of "hours times rate" embodied in 11 U.S.C. § 330 has its roots in common fund cases and fee-shifting statutes. *See In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 849 n.21 (3d Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

35. *Hensley* is but one case in a line of Supreme Court decisions which addressed results-based enhancements under the "lodestar" approach in the fee-shifting context. In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court held that the quality of a professional's service is generally reflected in the reasonable hourly rate, and upward adjustment is justified only "in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *See* 465 U.S. at 899, *citing Hensley*.

36. In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) ("*DelVal*"), the Supreme Court reaffirmed the strong presumption that the lodestar embodies a reasonable fee and it is unnecessary to enhance that fee for superior performance: "Because considerations concerning the quality of a prevailing counsel's representation normally are reflected in the reasonable hourly rate, the overall performance ordinarily should not be used to adjust the lodestar, thus removing any danger of 'double counting.'" *See DelVal*, 478 U.S. at 566.

37. While the Third Circuit has not directly addressed the issue of fee enhancements for retained professionals under 11 U.S.C. § 330, several circuit courts have concluded that fee-shifting statutes (as opposed to common fund cases) provide a suitable model for evaluating

requests for fee enhancements. *See, e.g., In re UNR Indus., Inc.*, 986 F.2d 207, 209-10 (7th Cir. 1993); *In re Apex Oil Co.*, 960 F.2d 728 (8th Cir. 1992); *In re Manoa Fin. Co.*, 853 F.2d 687 (9th Cir. 1988). Thus, in *UNR*, the court held that fee enhancements were not proper when the compensation awarded at hourly rates under a lodestar approach was reasonable. *Id.* at 211. In *Manoa Finance*, the court held that a Section 330 fee may be enhanced only if it does not adequately compensate the professional for the services performed. *See* 853 F.2d at 688.

38.  The Fifth Circuit has addressed the issue of fee enhancements, and has adopted analysis modeled on the fee-shifting statute approach. The Fifth Circuit has opined that fee enhancements "are proper only in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings." *See In re Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012) (quoting *In re Fender*, 12 F.3d 480, 488 (5th Cir. 1994)). In evaluating what circumstances constitute rare and exceptional cases meriting a fee enhancement, courts have often set the bar at 100% recoveries for unsecured creditors. *See e.g.*, *In re ASARCO, L.L.C. (ASARCO II)*, 751 F.3d 291, 297 (5th Cir. 2014) ("[o]ne hundred percent dividend cases are rare in Chapter 11, and rarer still in large cases such as this.") (quoting *Pilgrim's Pride*, 690 F.3d at 653); *see also In re Nucentrix Broadband Networks, Inc.*, 314 B.R. 574, 579 (Bankr. N.D. Tex. 2004) (approving a fee enhancement from discounted hourly rate where unsecured creditors received a 100% payout and equity holders also received a substantial return).

39.  One of the factors courts consider in evaluating requests for fee enhancements is whether the applicant had reduced its rates below market for purposes of the engagement. *ASARCO II*, 751 F.3d at 297. Provision of service at a below market rate is a factor that supports a fee enhancement. *See id.* at 294 ("The court's calculation was based on 'rare and exceptional' performance and results in the adversary proceeding and a finding that the standard rates charged

by [the applicant] were approximately 20% below the appropriate market rate."); *see Nucentrix Broadband*, 314 B.R. at 579.

40. Risk of non-payment lends support to a request for a fee enhancement only when the applicant can establish that the client "would have faced substantial difficulties in finding counsel in the local or other relevant market" and "that the market rate of compensation for that class of work is commensurate with the enhanced compensation sought by the applicant." *See In re One City Centre Assocs.*, 111 B.R. 872, 877 (Bankr. E.D. Cal. 1990) (citing *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 636–37 (9th Cir.1989).

41. Section 328(a) provides, "the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, [only] if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). Section 328(a) operates to limit risk against being paid less than agreed when in hindsight the amount appears excessive. But it applies with equal force to limit the risk that professionals will seek to be paid more than they agreed to accept when they obtain a better result than anticipated. *See* 3 Collier On Bankruptcy 328.03[4][b] (16th 2026). Varying compensation after approval under Section 328(a) presents a "high hurdle" as the standard requires "show[ing] not merely that a compensation adjustment is appropriate in light of subsequent developments that were previously unforeseen or unanticipated by the parties; instead, the movant is tasked with the weightier burden of proving that the subsequent developments were incapable of being anticipated at the time the engagement was approved." *See In re ASARCO, L.L.C. (ASARCO I)*, 702 F.3d 250, 258 (5th Cir. 2012). Section 328 works in conjunction with Section 330 when evaluating hourly compensation. Section 328 can be used to approve the prospective hourly rates that will be sought

at the outset of the retention, while Section 330 provides a vehicle to ensure that the time spent was indeed reasonable under the Code.

42. The burden of proving an enhancement is borne by the fee applicant and the fee applicant must produce "specific evidence" that supports the award. *See Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010).

43. Here, the compensation sought by the Debtor Professionals is more than reasonable and there is no reason for a fee enhancement. Dentons has filed a final fee application seeking a fee of $6,081,151.15 and expenses of $66,092.12, Togut has filed a final fee application seeking a fee of $399,783.00 and expenses of $1,619.04, and U&L has filed monthly fee statements through November 2025 that reveals that U&L has been paid $6,213,762.50.

44. As set forth above, in evaluating what circumstances constitute rare and exceptional cases meriting a fee enhancement, courts have often set the bar at 100% recoveries for unsecured creditors. Here, unsecured creditors did not receive a 100% recovery. Instead, pursuant to the Liquidation Analysis filed with the Amended Plan Supplement, it appears that general unsecured creditors are only projected to receive a recovery between 0.8% and 4.5%. *See* Dkt. 1036-7 at page 5 of 10.

45. Another factor weighed by courts is whether professionals reduced their rates below market value for purposes of the engagement. Here, it does not appear that rates were reduced as Dentons' partners Van C. Durrer, II, John Harrington and Tonya Moyron billed between $1,545 and $1,800 an hour, and Togut partner Frank A. Oswald billed at $1,590 an hour.

46. Again, the Debtor Professionals provided services that were included within the scope of their engagement letters and approved by their retention orders. There was nothing rare

and exceptional in moving these bankruptcy cases through a liquidation sale and through confirmation, and the distribution to unsecured creditors is less than 100%.

## CONCLUSION

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order denying the Motion and granting such other and further relief as the Court deems just and equitable.

Dated: February 17, 2026                    Respectfully submitted,

                                                  **ANDREW R. VARA**
                                                  **UNITED STATES TRUSTEE**
                                                  **REGIONS 3 AND 9**

By: */s/ Jeffrey M. Sponder*
                                                  Jeffrey M. Sponder
                                                  Trial Attorney
                                                  United States Department of Justice
                                                  Office of the United States Trustee
                                                  One Newark Center, Suite 2100
                                                  Newark, NJ 07102