**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**


**Caption in Compliance with D.N.J. LBR 9004-1(b)**
**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**

Arthur J. Abramowitz
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
Email: aabramowitz@shermansilverstein.com
rswitkes@shermansilverstein.com

*Co-Counsel for the Powin Liquidating Trust*

**STEPTOE LLP**

Timothy W. Walsh (admitted *pro hac vice*)
Joseph Archambeau (admitted *pro hac vice*)
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900
Email: twwalsh@steptoe.com
jarchambeau@steptoe.com

*Co-Counsel for the Powin Liquidating Trust*


| | |
|---|---|
| In re:<br><br>POWIN, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-16137 (MBK)<br><br>(Jointly Administered)<br><br>Honorable Michael B. Kaplan, U.S.B.J. |

**TRUST'S OBJECTION TO RH SHIPPING'S MOTION TO COMPEL PAYMENT OF AGREED-UPON STORAGE AND ASSOCIATED FEES [DOCKET NO. 1436]**

J.S. Held LLC as the Liquidating Trustee of the Powin Liquidating Trust (the "**Trustee**" of the "**Trust**"), successor in interest to Powin, LLC and its co-debtors (the "**Debtors**"), by and through their undersigned counsel, hereby submits this objection (this "**Objection**") to *RH Shipping's Motion to Compel Payment of Agreed-Upon Storage and Associated Fees* [Docket No.

[1] The Debtors in these "**Chapter 11 Cases**", along with the last four digits of each Debtor's federal tax identification number, are: (i) Powin Project LLC [1583]; (ii) Powin, LLC [0504]; (iii) PEOS Holdings, LLC [5476]; (iv) Powin China Holdings 1, LLC [1422]; (v) Powin China Holdings 2, LLC [9713]; (vi) Charger Holdings, LLC [5241]; (vii) Powin Energy Ontario Storage, LLC [8348]; (viii) Powin Energy Operating Holdings, LLC [2495]; (ix) Powin Energy Operating, LLC [6487]; (x) Powin Energy Storage 2, Inc. [9926]; (xi) Powin Energy Ontario Storage II LP [5787]; (xii) Powin Canada B.C. Ltd. [2239]; and (xiii) Powin EKS SellCo, LLC [9110].

1436] (the "**Motion**")[2] filed by RH Shipping (USA), L.L.C. and R.H. Shipping & Chartering, S. de R.L. de C.V. (together, "**RH Shipping**"). In support of this Objection, the Trust respectfully states as follows:

## <u>Preliminary Statement</u>

1. The Trust agrees that RH Shipping has an allowed administrative claim in the amount of $675,000 pursuant to the **RH Consent Order**[3] (the "**Allowed Administrative Claim**"). By its Motion, RH Shipping now asserts an additional administrative claim in the amount of $701,280 (the "**Additional Administrative Claim**").[4] The Additional Administrative Claim is composed of: (i) a second pre-confirmation administrative claim for storage costs arising between September and November of 2025 in the amount of $262,980 (the "**Pre-Confirmation Claim**"); and (ii) an administrative claim for post-confirmation storage costs arising since April 2026 in the amount of $438,300 (the "**Post-Confirmation Claim**").

2. The RH Consent Order clearly resolved all storage costs for the period prior to December 2, 2025, in exchange for the Allowed Administrative Claim. The RH Consent Order provides a release of all other claims, known or unknown, prior to that date, including the Pre-Confirmation Claim.

[2] Capitalized terms not otherwise defined herein have the meaning set forth in the Motion.

[3] On November 24, 2025, the Debtors and RH Shipping agreed to a settlement of administrative claims. The Court approved this stipulation on December 2, 2025, entering its *Stipulation and Agreed Order Regarding R.H. Shipping and Chartering, S. de R.L. de C.V. Claim No. 311 and RH Shipping and Chartering USA, L.L.C. Claim No. 312* December 2, 2025 [Docket No. 1174] (the "**RH Consent Order**").

[4] RH Shipping contends that the RH Consent Order only addresses administrative claims arising before September 2025. The Motion asserts that RH Shipping is entitled to keep the Allowed Administrative Claim and add another Additional Administrative Claim in the amount of $701,280.

3. Moreover, even if the RH Consent Order did not contain a release, RH Shipping did not file a claim for the costs associated with the Pre-Confirmation Claim before the Administrative Claim Bar Date (defined *infra*) and is now barred from doing so.

4. Additionally, RH Shipping's contention that the Trust is responsible for the Post-Confirmation Claim for storage costs from April 2026 forward is simply incorrect. The Trust complied with all provisions of the FlexGen Consent Order, which required the Trust to pay for storage costs for the first four months following the Effective Date, *i.e.*, December 2025 through March 2026. All storage costs arising after April 2026 are the responsibility of FlexGen, not the Trust—a fact which RH Shipping is well aware of, having directed and sent all invoices to FlexGen as opposed to the Trust. It is only because FlexGen failed to pay these invoices that RH Shipping now alleges the unpaid amounts are due from the Trust.

5. The Trust's only obligation to RH Shipping is the Allowed Administrative Claim. The Motion does not even mention the Allowed Administrative Claim, much less provide any basis why the Trust should pay RH Shipping's deferred Allowed Administrative Claim before paying all other deferred administrative claims. RH Shipping has also failed to establish that the Trust is liable for any other storage costs giving rise to an Additional Administrative Claim. There is simply no justification for RH Shipping's request for immediate payment and there is certainly no basis to award costs and attorneys' fees to RH Shipping.

6. For these and other reasons, the Motion should be denied.

## Objection

### I. The Storage Costs for September Through November 2025 Were Addressed in the RH Consent Order.

7. By the Motion, RH Shipping seeks payment of an Additional Administrative Claim of more than $700,000 from the Trust, arguing that the Trust's failure to pay certain storage costs violates a Court Order. With respect to three of these months (September, October, and November 2025), however, RH Shipping's request is barred by the RH Consent Order.

8. Prior to the Petition Date, RH Shipping and the Debtors had an ongoing business relationship wherein RH Shipping arranged for the shipment of goods and provided certain ancillary services, including but not limited to storage. In August 2025, the Debtors sold substantially all of their inventory – including the inventory currently at issue – to FlexGen. [Docket No. 751]. Following this sale, RH Shipping asserted various claims against the Debtors, which culminated in the RH Consent Order, approved by the Court on December 2, 2025. The RH Consent Order was not a simple stipulation—it was a global resolution addressing RH Shipping's objection to the Plan, lien claims, cure claims, pre-petition claims, administrative claims, and the transfer of inventory. Among other things, the RH Consent Order provides RH Shipping with a $675,000 Allowed Administrative Claim that would be paid over time, *pari passu* with other deferred administrative creditors. RH Consent Order, ¶ 4(a). The RH Consent Order further provided for the transfer of certain inventory by the Debtors to RH Shipping. The RH Consent Order specifically provides: "RH Shipping also hereby ***releases any and all claims, whether known or unknown, against*** the Debtors, their estates, and any post-confirmation trustee, plan administrator, or similar entity related to the Services." RH Consent Order, ¶ 10 (emphasis added).[5]

[5] The "Services" are defined in the RH Consent Order as: "the shipment of goods from the Debtors' suppliers in Asia to the Debtors or the Debtors' customers in the ordinary course of business, and provided certain ancillary services

9. Notwithstanding the clear language of the RH Consent Order, RH Shipping is now seeking an *additional* $262,980 for pre-confirmation storage costs for the months of September, October, and November 2025. To the extent that the Pre-Confirmation Claim is properly asserted against either the Debtors or the Trust, it was released under the RH Consent Order and cannot now be asserted against the Trust. RH appears to take the position that the release contained in the RH Consent Order does not apply to the storage costs sought in the Motion and relates only to storage costs for August 2025 and prior. On its face, this reading defies logic.

10. The settlement memorialized in the RH Consent Order was executed on November 24, 2025, and the RH Consent Order itself was entered on December 2, 2025. There is no language specifying that it only addresses claims prior to September 2025. Under RH Shipping's reading, the parties would have settled only a subset of RH Shipping's administrative claims while leaving known administrative liabilities for the period of September through November 2025 unresolved and omitted from the RH Consent Order. Nothing in the RH Consent Order suggests that the parties intended such a piecemeal and incomplete resolution.[6]

11. Based on the clear language in the RH Consent Order, all claims relating to the period prior to December 2, 2025 were released, including the Pre-Confirmation Claim sought in the Motion. For that reason alone, the Motion must be denied as to the Pre-Confirmation Claim.

---

to shipment of the goods, including but not limited to unloading, drayage, customs clearance, and storage." RH Consent Order, Recitals.

[6] To the extent RH's counsel seeks to introduce discussions with Debtors' counsel, the Trust would note that, in light of the clear text of the RH Consent Order, the admission of certain evidence would both violate the parol evidence rule and frustrate the meaning of the contract. *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 n.9 (3d Cir. 1980) ("If the written contract is unambiguous, the Parol Evidence Rule ... bar[s] the use of extrinsic evidence for interpretation.").

## II. RH Shipping Did Not Assert the Pre-Confirmation Claim Before the Administrative Claim Bar Date.

12. Furthermore, even if the Pre-Confirmation Claim was not released by the terms of RH Consent Order, had RH Shipping truly believed several months of post-petition storage fees remained unpaid, it would have asserted such claims prior to the Administrative Claim Bar Date. It did not.

13. The **Confirmation Order**[7] provides that all requests for payment of an administrative claim arising after the Petition Date must be filed with the Court and served no later than February 3, 2026 (the "**Administrative Claim Bar Date**"). Confirmation Order, ¶ 33. Yet the Administrative Claim Bar Date came and went, occurring 60 days after the Effective Date—63 days after the RH Consent Order was entered—and RH Shipping did nothing. RH Shipping was duly notified of the Administrative Claim Bar Date but chose not to act until six months later when FlexGen refused to pay the storage fees. The Pre-Confirmation Claim is thus barred by both the language of the RH Consent Order *and* the Confirmation Order.

14. RH Shipping is only just now seeking an additional $262,980 for pre-confirmation storage costs. For the better part of a year, the Trust relied upon its common-sense interpretation of the RH Consent Order in combination with passage of the Administrative Claim Bar Date to conduct business and calculate its outstanding debts. The addition of such a substantial administrative claim may force the Trust to recalculate administrative claims and the timing of distributions to the detriment of creditors who complied with all dates and deadlines. RH Shipping is consequently estopped from asserting the Pre-Confirmation Claim.

[7] *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Powin, LLC and Affiliates Thereof and the Official Committee of Unsecured Creditors* [Docket No. 1165].

15. RH Shipping has only one pre-confirmation Administrative Claim: the $675,000 claim allowed under the RH Consent Order. Even if the RH Consent Order did not stipulate so by its terms, any additional claim is barred by the Administrative Claim Bar Date. The only real dispute raised by the Motion is whether the Trust is responsible for the Post-Confirmation Claim based on the FlexGen Consent Order.

## III. The Trust Has Complied With All Obligations Under the FlexGen Consent Order.

16. The Post-Confirmation Claim for $438,300 with respect to storage costs for the period of April 2026 forward is not owed by the Trust but, rather, FlexGen.

17. In the Motion, RH Shipping simultaneously claims that the Trust is in violation of the *Stipulation and Consent Order Resolving Motion and Order Approving the Same* [Docket No. 1267] (the "**FlexGen Consent Order**") between the Trust and FlexGen Power Systems, LLC ("**FlexGen**") while *admitting* that the Trust complied with its obligations to pay storage costs for the period of December 2025 through March 2026 as set forth in the FlexGen Consent Order.

18. Despite RH Shipping's efforts to twist its language, the FlexGen Consent Order only requires the Trust to pay for four months of storage costs, from December 2025 through March 2026, which the Trust has done.[8] RH Shipping admits in their Motion that the Trust has paid the storage costs for December through March. *Id*. ¶ 12. RH Shipping also acknowledges that "the [FlexGen] Consent Order failed to address who would pay the RH Charges after those four (4) months…." Motion, ¶ 24. Therefore, there is, in fact, no dispute that the Trust satisfied its stated obligation under the FlexGen Consent Order.

[8] The FlexGen Consent Order provides: "To the extent RH requires a backstop or current pay, the Trustee will backstop or pay the first four (4) months commencing on the Agreement Effective Date, subject to reimbursement from the proceeds of any sale of RH Inventory in accordance with Section 4(g) (the "Trustee Storage Costs"). If all RH Inventory is not sold or contracted by the end of this four (4) months period, FlexGen can opt, in its sole discretion, to extend the storage agreement or propose an alternative commercial resolution to address the balance of the inventory." FlexGen Consent Order ¶ 11.

19. Rather, the *only* dispute is whether the Trust is *also* responsible for the Post-Confirmation Claim representing storage costs for the period from April 2026 through the present – even though the FlexGen Consent Order states that, "[i]f all RH Inventory is not sold or contracted by the end of this four (4) month period, FlexGen can opt, ***in its sole discretion***, to extend the storage agreement or propose an alternative commercial resolution to address the balance of the inventory." FlexGen Consent Order, ¶ 11.

20. RH Shipping dismisses this language, instead arguing that "the Consent Order makes clear that the RH Inventory is the property of the Trust and therefore, the Trust remains responsible for the RH Charges." Motion, ¶ 25. RH Shipping's contrived reading of the FlexGen Consent Order is untenable.

21. While the Trust does not dispute that the RH Inventory is the property of the Trust, the Trust does dispute that, because the FlexGen Consent Order provides the Trust with an ownership interest in the inventory at issue, the Trust is thus obligated to pay for amounts that FlexGen failed to pay. RH Shipping's position is completely inconsistent with the actions of the parties. RH Shipping addressed the invoices (which are attached to its own Motion) to "FlexGen Power Systems," not the Trust. RH Shipping also sent those invoices to "FlexGen Power Systems" rather than the Trust. In fact, the invoices were not provided to the Trust until July 10, 2026, when counsel for RH Shipping emailed counsel for the Trust stating "[t]here are over $600K of unpaid warehousing charges, which FlexGen has stopped paying and is now ignoring my client."

22. As the foregoing plainly demonstrates, it is FlexGen—not the Trust—who is responsible for storage costs from April 2026 forward and is liable for the amounts sought by RH Shipping. Any other reading of the FlexGen Consent Order would mean that FlexGen was authorized to *unilaterally* commit the Trust to undertake a sales effort, assuming all storage costs,

for an indefinite period as FlexGen had *sole discretion* to extend the sale period past March 2026. Such an interpretation would be absurd.

23. The foregoing demonstrates that all parties, including RH Shipping, understood that FlexGen, rather than the Trust, was obligated to make such payments starting in April 2026 and took action consistent with that understanding. The current situation is no more than a commercial dispute between two non-debtor parties – RH Shipping and FlexGen – that the Trust has been dragged into. RH Shipping's argument is inconsistent with its actions and should accordingly be estopped from asserting the Post-Confirmation Claim.

24. In many ways, the current situation is a problem of RH Shipping's own making. In the Motion, RH Shipping acknowledges that "RH Shipping is in possession and control of the RH Inventory at RH Shipping's storage facility in Mexico." Motion, ¶ 11. In fact, when the Trust attempted to remove the remaining inventory in August 2026 (after being informed of FlexGen's failure to pay), RH Shipping refused to release the inventory to the Trust. Additionally, RH Shipping rejected the Trust's prior offer to abandon the inventory to RH Shipping. In other words, RH Shipping has refused all of the Trust's reasonable attempts to address the RH Inventory or, at least, eliminate future charges for storage costs. Considering RH Shipping's refusal to cooperate, the Trust has filed a notice of abandonment contemporaneously herewith, abandoning substantially all of the Trust's property stored by RH Shipping into RH Shipping's custody.

25. Finally, it must be noted that the August 13, 2026 deadline referenced by RH Shipping in the Motion is a date selected by RH Shipping and which was communicated to the Trust's counsel on August 11, 2026 – only two days prior to the payment deadline imposed by RH Shipping and three days before the Motion was filed. Additionally, the invoice from August 2026

is dated August 11, 2026, again addressed to FlexGen, giving the Trust almost no notice of this invoice before the Motion was filed.

26. For the foregoing reasons, there is no basis to compel the Trust to pay the Post-Confirmation Claim, as the underlying storage costs are not even owed by the Trust, and the Motion should be denied.

## IV. The Trust Cannot Pay RH Shipping's Deferred Administrative Claim Before Paying All Other Deferred Administrative Claims.

27. For the reasons set forth above, the Additional Administrative Claim is without merit.

28. The Trust's only remaining obligation to RH Shipping is the Allowed Administrative Claim. To the extent that RH Shipping demands immediate payment of the Allowed Administrative Claim, RH Shipping *agreed* to defer the payment of its Allowed Administrative Claim, including the storage charges for 2025, pursuant to the RH Consent Order. The RH Consent Order states: "$675,000 of the Amended RH Mexico Administrative Claim will be paid over time, *pari passu* with other administrative claimants that have also agreed to accept deferred payments on their administrative claims." RH Consent Order, ¶ 4.

29. As this Court will recall, confirmation of the Debtors' Plan was only possible after certain administrative and priority claimants agreed to defer payment on a portion of their claims. RH Shipping, like other creditors, agreed to defer payment of the Allowed Administrative Claim. To pay RH Shipping now, in advance of other similarly situated creditors, would violate both the Confirmation Order and the priority scheme established by the Bankruptcy Code. *See In re Johnson*, 607 B.R. 250, 252-53 (Bankr. W.D. Pa. 2019) ("The central tenets of the Code mandate that creditor distributions occur in order of priority and that similarly-situated creditors are treated equally.").

30. Upon taking over this matter, the Trustee discovered a number of matters that were not completed prior to the Effective Date. As a result, the Trust has had to spend materially more time and related expenses than anticipated to address these issues. Although the Trust believes that the Allowed Administrative Claim (as well as all other administrative claims) will be paid in full, the Trust is not yet in a position to do so. Instead, the Trust is working diligently to reconcile administrative claims, liquidate assets, and limit liabilities, to ensure that the estate is maximized for the benefit of all creditors.[9]

31. RH Shipping's Additional Administrative Claim is without merit, and the Allowed Administrative Claim will be paid at the same time as all other administrative creditors. For these reasons, the Motion must be denied, and the Allowed Administrative Claim should be paid simultaneously with the other deferred administrative claims.

**V. There is No Basis to Award Costs and Attorneys' Fees**

32. RH Shipping argues that the Trust has *willfully* failed to comply with the FlexGen Consent Order. This argument is completely manufactured and is contrary to RH Shipping's own Motion, where RH Shipping specifically recognizes that (1) the Trust paid the storage costs for December 2025 through March 2026 as required by the FlexGen Consent Order (Motion, ¶ 12)

[9] The Trust has been saddled with unexpected tasks including, but not limited to, significant litigation matters which the Trust asserts should have been completed before confirmation; administrative and priority claim matters; numerous open issues in connection with the wind-down of the Debtors' foreign subsidiaries; addressing issues concerning inventory that was not either sold, abandoned, and/or otherwise disposed of; managing several unresolved leases and their related inventory; investigating avoidance claims; and addressing issues with Customs and the sureties.

and (2) the FlexGen Consent Order does not state who will pay storage costs after March 2026 (Motion, ¶ 26).

33. There is simply no basis for the imposition of sanctions, as the Trust has complied with all obligations under the FlexGen Consent Order and every other applicable Order.

## Conclusion

**WHEREFORE**, the Trust respectfully requests that this Court deny the Motion and grant such other and further relief as it deems necessary.

Dated: September 17, 2026

**SHERMAN, SILVERSTEIN,**
**KOHL, ROSE & PODOLSKY, P.A.**

*/s/ Arthur J. Abramowitz*
Arthur J. Abramowitz
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
Email: aabramowitz@shermansilverstein.com
rswitkes@shermansilverstein.com
- and -
**STEPTOE LLP**
Timothy W. Walsh (admitted *pro hac vice*)
Joseph Archambeau (admitted *pro hac vice*)
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900
Email: twwalsh@steptoe.com
jarchambeau@steptoe.com

*Co-Counsel for the Powin Liquidating Trust*